FILED
CLERK, U.S. DISTRICT COURT
5/28/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DD___ DEPUTY

JASON LO, SBN 219030
  jlo@gibsondunn.com
BROOKE WALLACE, SBN 259169
  bwallace@gibsondunn.com
CAROLINE MONROY, SBN 329018
  cmonroy@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-JAK(DFMx)<br><br>**DECLARATION OF JASON LO IN SUPPORT OF PLAINTIFF'S APPLICATION FOR LEAVE TO FILE PORTIONS OF THE COMPLAINT UNDER SEAL** |

I, Jason Lo, hereby declare as follows:

1. I am an attorney at law licensed to practice in the State of California and before this Court. I am a partner at the law firm of Gibson, Dunn & Crutcher LLP and counsel for Plaintiff Netlist Inc. ("Netlist") in the above-captioned matter. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to them under oath.

2. Pursuant to Local Rule 79-5.2.2(a), Netlist applies for leave to file portions of the Complaint under seal. I hereby submit this Declaration in support of Plaintiff's Application. I am not aware of anyone opposing the Application.

## I. APPLICABLE LEGAL STANDARD

3. Pursuant to Local Rule 79-5.2.2(a)(i), a party seeking leave of Court to file portions of a document under seal must provide a declaration "(1) establishing good cause or demonstrating compelling reasons why the strong presumption of public access in civil cases should be overcome, with citations to the applicable legal standard, and (2) informing the Court whether anyone opposes the Application."

4. "[A] 'compelling reasons' standard applies to most judicial records. This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)); *cf. Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (holding that the court applies a "good cause" standard when the documents sought to be sealed are only "tangentially related" to the underlying cause of action).

5. Under the "compelling reasons" standard, a court "must weigh 'relevant factors,' base its decision 'on a compelling reason,' and 'articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Pintos*, 605 F.3d at 679 (9th Cir. 2010) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "Relevant factors include the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Id.* at 679 n.6 (internal quotations and citation omitted).

6. "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The Ninth Circuit has defined a trade secret in this context as "any formula, pattern, device or compilation of information which is used in one's

business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." The Ninth Circuit has defined a trade secret in this context as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569, 2008 WL 4726222, at *2 (9th Cir. 2008) (unpublished opinion) (quoting Restatement of Torts § 757, cmt. b) (internal quotations omitted). With respect to sensitive business information, specific negotiated terms found in an agreement, like "the pricing terms, royalty rates, and guaranteed minimum payment terms," may constitute trade secrets. *In re Elec. Arts*, 298 F. App'x at 569, 2008 WL 476222, at *2.

## II. THE PROPOSED REDACTIONS REVEAL NETLIST'S SENSITIVE AND CONFIDENTIAL BUSINESS INFORMATION

7. In its Complaint, Netlist alleges that Samsung breached their Joint Development and License Agreement ("Agreement") to "jointly develop an interface and associate technologies for certain memory modules and promote such interface to standards-setting organizations." The Agreement itself contains a confidentiality clause that prohibits Netlist from disclosing any confidential information, including business, financial, and contractual information, to anyone without the prior written consent of Samsung.

8. More importantly, however, the proposed redactions of the Complaint reveal: (i) the purpose of the Agreement; (ii) the exact type of products that Samsung was to supply and at on what terms; and (iii) the volume of business between Netlist and Samsung. This information is sensitive to Netlist and public disclosure of these materials would permit Netlist's competitors and suppliers to use this information to gain an improper advantage over Netlist in future negotiations or dealings. Among other things, if it were to become public that Netlist is having difficulty securing specific components that are incorporated into Netlist's end products, that may make

customers cautious about ordering such products from Netlist, or might tip off a Netlist competitor to alter its market strategy.

9. Netlist describes in its Complaint that it entered into the Agreement with Samsung to "jointly develop an interface and associate technologies for certain memory modules and promote such interface to standards-setting organizations." The proposed redactions on lines 8 through 10 of paragraph 8, lines 12 through 16 in paragraph 9, lines 18 through 21 on page 4, and line 4 on page five reveal the particularities of the Agreement. Together they disclose the exact products that Samsung was to supply to Netlist under this Agreement as well as the pricing and supply terms negotiated by the parties: Samsung was to supply Netlist NAND and DRAM products "on request" and that Netlist was to pay a "competitive price." Disclosure to the public of the specific products Netlist seeks and the terms it negotiated and agreed to might place Netlist at a disadvantage in future negotiations because any competitor would know Netlist's business interests and the specific terms upon which it has obtained components from its suppliers. That might, for example, allow a competitor to strategically undercut Netlist in the marketplace.

10. Lines 17 through 24 in paragraph 10 further reveal the volume of business between Netlist and Samsung and disclose to competitors the nature of the companies' business relationship. Lines 28, 1, and 2 of paragraph 11 and lines 3 and 4 of paragraph 12 disclose the deterioration of the companies' business dealings. Finally, the proposed redactions on lines 6, 7, 11, and 12 of paragraph 13 reveal that Netlist is unable to obtain critical products at a competitive price. Again, competitors and suppliers would be able to use this information in contract negotiations against Netlist.

11. These proposed redactions reflect sensitive business information and negotiated contractual terms, such as the volume of business between Netlist and Samsung, the products supplied to Netlist, and the exact terms negotiated by the parties. The release of such information would put Netlist at a significant competitive disadvantage in future negotiations for similar agreements with other parties, who

Gibson, Dunn & Crutcher LLP

would not only know the terms to which Netlist has previously agreed, but would also be apprised of Netlist's particular requirements and inability to obtain critical products. The redactions are limited and seek only to protect Netlist's confidential business information from misuse by competitors while Netlist enforces its rights. The limited redactions allow Netlist to keep business, financial, and contractual information confidential as required by both parties under the Agreement, and protect Netlist's confidential information from misuse.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2020 in Los Angeles, California.

_____
Jason Lo