Ekwan E. Rhow - State Bar No. 174604
 erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
 mmasters@birdmarella.com
Kate S. Shin - State Bar No. 279867
 kshin@birdmarella.com
Christopher J. Lee - State Bar No. 322140
 clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,,<br><br>           Plaintiff,<br><br>     vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,,<br><br>           Defendant. | CASE NO. 8:20-cv-00993-MCS-DFM<br><br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S INFORMAL DISCOVERY BRIEF ON NETLIST'S REQUEST FOR PRODUCTION NO. 11 & INTERROGATORY NO. 8**<br><br>Date:    June 29, 2021<br>Time:   09:30 a.m.<br><br>Honorable Douglas F. McCormick<br>Courtroom 6B |

3725369.2

## I. INTRODUCTION

This discovery dispute pertains to Netlist's demand that Samsung produce sales data for *all* of its NAND and DRAM products, for *all* of its customers worldwide, for a six-year period. This demand is plainly overbroad, irrelevant, and disproportionate to the needs of the case, for the following reasons: *First*, the requested sales data is sensitive commercial information, and disclosure may severely harm the business prospects of both Samsung and its buyers. *Second*, Samsung has contractual confidentiality obligations with many of its buyers, which will have to be reviewed on a buyer-by-buyer basis prior to disclosure. *Third*, Samsung's sales data – encompassing in total as many as millions of transactions a year – is maintained separately by its numerous sales teams within its international subsidiaries, which makes it highly burdensome to aggregate and produce. *Fourth*, sales data from other buyers have no relevance to Netlist's claims, as the First Amended Compliant ("FAC") contains no allegations pertaining to any buyer other than Netlist. *Fifth*, even if produced, the sales data would be of little probative value given that Netlist is not a typical Samsung buyer: it purchases a limited subset of products in the NAND and DRAM categories, in extremely small quantities relative to most other buyers.

Sales data from other buyers is simply not relevant to Netlist's claims, and their demand for this information is little more than a tactical attempt to gain leverage on Samsung by exposing its business to a significant risk of harm, and forcing it to scour through the files of all of its myriad international subsidiaries in an extremely costly and burdensome collection effort. Samsung respectfully requests that the court put a stop to this attempted gamesmanship, and deny Netlist's demands for discovery of Samsung's sales data.

## II. PROCEDURAL BACKGROUND

The instant discovery dispute pertains to two written discovery requests – one

interrogatory and one request for production – propounded by Netlist on March 4, 2021. The relevant requests, in pertinent part, are as follows:

- **Netlist's Interrogatory No. 8**: Describe all Persons Samsung supplied NAND and DRAM Products to since November 12, 2015, including but not limited to Uber Technologies, Inc. or its affiliates and/or subsidiaries. For the purposes of this Interrogatory, identify each Person supplied and list the dollar amount of NAND and DRAM Products provided to each Person by fiscal quarter.
- **Netlist's Request for Production No. 11**: All Documents sufficient to show the quantities and prices at which Samsung sold NAND and DRAM Products to customers other than Netlist, including but not limited to Uber Technologies, Inc. or its affiliates and/or subsidiaries, since November 12, 2015.

These two requests seek substantially the same material: sales data (quantity, prices, and customer lists) for *all* NAND and DRAM products that Samsung sold to *all* of its customers during a six-year time period between November 12, 2015 to present. On April 9, 2021, Samsung objected to these requests on grounds of relevance, disproportionate burden, and the fact that the requests seek confidential, proprietary, or trade secret information. This issue was raised before the Court during the June 10, 2021 informal discovery conference. The Court subsequently ordered the Parties to brief the issue for hearing on June 29, 2021. (Dkt. No. 51).

## III. ARGUMENT

The scope of discovery is limited to non-privileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether material is proportionate to the needs of the case, the Court should consider "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

When ruling on issues involving trade secrets or other sensitive commercial information, the Court must balance the risk of disclosure against the importance of the information to the claims at issue. *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007). When the former outweighs the latter, the Court may either limit or forbid entirely discovery of such information. Fed. R. Civ. P. 26(c)(1)(G). In performing this analysis, Courts have routinely denied discovery in response to broad requests demanding commercial information when the burden of the discovery outweighs any likely benefits. *See, e.g., Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431, 434 (N.D. Cal. 2008) ("the burden of producing . . . far outweighs the limited potential of the sales data to provide insight"); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2015 WL 13655394, at *9 (N.D. Cal. 2015) ("the marginal relevance and limited potential benefit of the further discovery sought . . . is outweighed by the significant burden it would impose at a late stage in this case[.]").

Here, the Court should not allow Netlist overbroad discovery on Samsung's sales data because the burden and expense of disclosure are extremely high, while the importance of the information to Netlist's claims is minimal, if that.

### A. Production of sales data would be uniquely burdensome to Samsung due to its high sensitivity and difficulty of collection.

Samsung sells semiconductor products to a large number of buyers across the world. The identity of Samsung's buyers – and the exact quantities and prices of products they purchase – is sensitive information, disclosure of which may cause loss of business opportunities that dwarf the amount in controversy of this litigation.[1] Samsung strategically offers prices and quantity commitments to its buyers based on various characteristics of the business relationship between that

---

[1] In 2020, Samsung's semiconductor revenue was in excess of $50 billion. (Lee Decl. ¶ 10).

buyer and Samsung. (Declaration of Kyong Yong Lee ("Lee Decl.") ¶ 3). Disclosure of this information would disrupt relationships between Samsung and its buyers, and thereby make it impossible for Samsung to effectively negotiate going forward – as each buyer would already know what prices and quantities their industry peers had been offered in the past. (*Id.*) Given Samsung's large market share, these disruptions could ripple out to impact supply chains in the memory market worldwide.[2]

In addition, disclosure would also have the potential to seriously harm the business prospects of Samsung's buyers – including some of the largest technology firms in the world – as the quantity, price, and specific nature of the semiconductor products they purchase would reveal information regarding their forward-looking business strategy to competitors. (Lee Decl. ¶ 4). Because of these concerns, in some cases Samsung has contractual obligations to its buyers to keep quantity and price information confidential. (*Id.*) That makes disclosure of such information inherently burdensome, as it would have to be preceded by a careful legal review of Samsung's confidentiality obligations to each of its buyers. In some cases, disclosure of this information may expose Samsung to legal liability. Even when a buyer's contractual terms contain a carve-out for disclosure in judicial proceedings, there would likely be advance notice requirements that would have to be reviewed and fulfilled on a buyer-by-buyer basis.

Finally, disclosure of this information would be highly burdensome due to the manner in which it is collected within the company. Samsung's semiconductor sales are conducted through its independent sales teams, many of which are units within international subsidies scattered across the world. (Lee Decl. ¶ 5). Sales data is maintained internally by each sales team, each according to their own policies,

---

[2] Samsung's global market share of the DRAM product category is approximately 40%. Its market share of the NAND product category is approximately 30%. (Lee Decl. ¶ 10).

3725369.2
5
DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S INFORMAL DISCOVERY BRIEF

practices, and formatting. (*Id.* ¶ 8). Such data, therefore, would need to be collected from many different sources and aggregated before it is produced. (*Id.*). The volume is expected to be extremely high, given the size of Samsung's semiconductor business (which sometimes involves millions of transactions annually) and the overbroad six-year timeframe suggested by Netlist. (*Id.*). This process would require interfacing with and collecting documents from numerous Samsung subsidiaries across the world, the overwhelming majority of which have no relevance whatsoever to this matter. (*Id.*)

### B. Relative to the high burden of collection, the probative benefit of the sales data is minimal.

Netlist's First Amended Complaint ("FAC") contains no allegations pertaining to Samsung's buyers other than Netlist. (Dkt. No. 23). Netlist's first breach of contract claim alleges that Netlist was not supplied sufficient quantities of NAND and DRAM products by Samsung. (*Id.* ¶¶ 10-14). This claim is based on an allegation that Samsung had a contractual obligation to provide Netlist with a certain amount of products. (*Id.* ¶ 10). For purposes of adjudicating this purported obligation, Samsung's other buyers are irrelevant – Samsung has either breached a contractual commitment to Netlist, or it has not, regardless of to whom and how much it sells elsewhere. The pricing information sought by Netlist is particularly irrelevant, given that Netlist has not alleged anywhere in the FAC that it was overcharged by Samsung – its first breach of contract claim pertains solely to quantity, not to pricing. (*See Id.* ¶¶ 10-14, 27).

This lack of relevance is magnified by the overbroad scope of the information demanded: Netlist wants sales data from ***all*** buyers. This data would have little probative value in this dispute, for two reasons. First, NAND and DRAM are broad categories incorporating many different types of products, which differ significantly in both availability and pricing. (Lee Decl. ¶ 6). The vast majority of Netlist's purchases were restricted to three products in particular: a type of DRAM used in

3725369.2

6

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S INFORMAL DISCOVERY BRIEF

servers, a type of DRAM used in consumer electronics, and a type of NAND used in solid-state drives. (*Id.* ¶ 7). Second, Netlist is one of Samsung's smallest buyers in terms of quantity. Many of Samsung's buyers purchase hundreds or even thousands of times more product than Netlist in any given period. (*Id.* ¶ 9). As such, the quantity and pricing offered to these buyers is unlikely to provide any meaningful comparison to Netlist.

For these reasons, the Samsung's sales data has minimal or non-existent relevance to Netlist's claims, which is far outweighed by the significant burden production would impose on Samsung.

### C. In the alternative, the Court should limit the sales data disclosed to products purchased by Netlist, to similar buyers, and to relevant time periods only.

As described in more detail above, Netlist is not a typical buyer for Samsung – it purchases only a narrow range of products in the NAND and DRAM categories, and purchases very small volume. As such, if the Court determines that Netlist's requests should not be denied outright, Samsung respectfully requests that discovery be limited to only include (1) sales data pertaining to products actually purchased by Netlist; (2) from buyers with similar characteristics (for example, in terms of types of products purchased, volume, and region); and (3) from June 2017 to December 2017, which encompasses six months of data starting with the only time period where Netlist specifically alleges a breach by Samsung. (Dkt. No. 23 ¶ 27).

## IV. CONCLUSION

For the above reasons, the Court should not allow Netlist discovery of Samsung's sales data in response to their Interrogatory No. 8 and Request for Production No. 11. In the alternative, the Court should limit discovery in response to these requests to: (1) sales data for products actually purchased by Netlist; (2) by buyers with similar characteristics to Netlist; and (3) for the time period of June

2017 to December 2017.

DATED:  June 18, 2021

Ekwan E. Rhow
Marc E. Masters
Kate S. Shin
Christopher J. Lee
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: /s/ Ekwan E. Rhow
Ekwan E. Rhow
Attorneys for Defendant Samsung
Electronics Co., Ltd.