Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
    mmasters@birdmarella.com
Kate S. Shin - State Bar No. 279867
    kshin@birdmarella.com
Christopher J. Lee - State Bar No. 322140
    clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>        Defendant. | CASE NO. 8:20-cv-00993-MCS-DFM<br><br>**REDACTED**<br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:    July 26, 2021<br>Time:   9:00 a.m.<br>Crtrm.: 7C<br><br>Assigned to Hon. Mark C. Scarsi |

# REDACTED

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:PLEASE TAKE NOTICE that on July 26, 2021, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Samsung Electronics Co. Ltd. will, and hereby do, move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the First, Second, and Third Causes of Action of Plaintiff Netlist Inc.'s First Amended Complaint.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and accompanying exhibits, the pleadings and papers on file in this matter, and such other matters as may be presented to the Court at the hearing.

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on June 8, 2021. (Declaration of Christopher J. Lee ¶ 2). Pursuant to the Court's direction, the Parties also conferred further on scheduling on June 17-18, 2021. (*Id.* ¶ 3).

DATED:  June 21, 2021

Ekwan E. Rhow
Marc E. Masters
Kate S. Shin
Christopher J. Lee
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____

Ekwan E. Rhow
Attorneys for Defendant Samsung
Electronics Co., Ltd.

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................3

TABLE OF AUTHORITIES ...........................................................4

I. INTRODUCTION ................................................................8

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................10

    A. The Joint Development and License Agreement ...............................10

    B. Netlist's First Breach of Contract Claim ....................................11

    C. Netlist's Second Breach of Contract Claim ..................................12

    D. Netlist's Declaratory Relief Claim ..........................................13

III. ARGUMENT ................................................................14

    A. LEGAL STANDARD ....................................................14

    B. SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S FIRST BREACH OF CONTRACT CLAIM BECAUSE THE JDLA CONTAINS NO SUPPLY OBLIGATION. ..............................................15

        1. Contracts Must Be Interpreted According To Their Plain Language ........................................15

        2. Section 6.2 of the JDLA is Unambiguously ███████ ███████████████ ........................ .......16

        3. The JDLA Cannot Be A Requirements Contract, as ██ █████████ ........................................ ...........17

        4. Netlist is barred from recovering consequential damages under the JDLA..........................18

    C. SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S SECOND BREACH OF CONTRACT CLAIM BECAUSE THE NETLIST FAILS TO ALLEGE HOW THE TAX WITHHOLDING WAS UNLAWFUL UNDER KOREAN LAW. ........................20

    D. SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S DECLARATORY RELIEF CLAIM. ........................................22

    E. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ........................24

IV. CONCLUSION ................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990)..............................................................................24

*Arnold Chevorlet LLC v. Tribune Co.*,
    418 F. Supp. 2d 172 (E.D.N.Y. 2006).............................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................20

*Bigda v. Fischbach Corp.*,
    898 F. Supp. 1004 (S.D.N.Y.1995) ................................................................23

*Buraye v. Equifax*,
    625 F. Supp. 2d 894 (C.D. Cal. 2008) ............................................................15

*Butler v. Resurgence Fin., LLC*,
    521 F. Supp. 2d 1093 (C.D. Cal. 2007) ..........................................................15

*Caltex Plastics, Inc. v. Lockheed Martin Corporation*,
    824 F.3d 1156 (9th Cir. 2016)..........................................................................20

*Calvin Klein Trademark Trust v. Wachner*,
    129 F. Supp. 2d 254 (S.D.N.Y.2001) ..............................................................23

*Carmen v. S.F. Unified Sch. Dist.*,
    982 F. Supp. 1396 (N.D. Cal. 1997)................................................................24

*Corning Inc. v. VWR Intern., Inc.*,
    2007 WL 841780 (W.D.N.Y. March 16, 2007)...........................................9, 18

*CSL Behring, LLC v. Bayer Healthcare, LLC*,
    2019 WL 4451368 (D. Del. Sep. 17, 2019)....................................................18

*de Fontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016)...........................................................................20

*Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*,
    872 F. Supp. 103 (S.D.N.Y. 1995)..................................................................23

4

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS

*Dworkin v. Hustler Magazine Inc.*,
  867 F.2d 1188 (9th Cir. 1989)........................................................................14

*DynCorp v. GTE Corp.*,
  215 F.Supp.2d 308 (S.D.N.Y. 2002) ............................................................18

*ESPN, Inc. v. Office of Com'r of Baseball*,
  76 F. Supp. 2d 383 (S.D.N.Y. 1999) ......................................................10, 23

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999)..........................................................................15

*Holly v. Alta Newport Hospital, Inc.*,
  2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ..............................................22

*International Gateway Exchange, LLC v. Western Union Financial
  Services, Inc.*,
  333 F.Supp.2d 131 (S.D.N.Y. 2004) ............................................................18

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990)........................................................................24

*Knappenberger v. City of Phoenix*,
  566 F.3d 936 (9th Cir. 2009)..........................................................................15

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008)..........................................................................24

*M Sports Productions v. Pay-Per-View Network, Inc.*,
  1998 WL 19998 (S.D.N.Y. Jan. 20, 1998) ...................................................18

*Mays v. Wal-Mart Stores, Inc.*,
  354 F. Supp. 3d 1136 (C.D. Cal. 2019) ........................................................15

*New Bank of New England, N.A. v. Toronto–Dominion Bank*,
  768 F. Supp. 1017 (S.D.N.Y.1991) ..............................................................17

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015)........................................................................24

*Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*,
  830 F.3d 152 (2d Cir. 2016)...........................................................................16

*Polich v. Burlington N., Inc.*,
  942 F.2d 1467 (9th Cir.1991)........................................................................24

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

*Rich v. Shrader*,
    823 F.3d 1205 (9th Cir. 2016)..........................................................24

*Sayers v. Rochester Telephone Corp. Supplemental Management
    Pension Plan*,
    7 F.3d 1091 (2d Cir. 1993).....................................................16, 19

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)........................................................15

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014)........................................22

**State Cases**

*Greenfield v. Philles Records*,
    98 N.Y.2d 562 (N.Y. 2002)....................................................16, 17

*Hudson Iron Works, Inc. v. Beys Specialty Contracting, Inc.*,
    262 A.D.2d 360 (N.Y. App. Div. 1999) ......................................16

*Ruttenberg v. Davidge Data Sys. Corp.*,
    215 A.D.2d 191 (N.Y. App. Div. 1995) ......................................16

*Scott v. Palermo*,
    233 A.D.2d 869 (N.Y. App. Div. 1998) ......................................18

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
    1 N.Y.3d 470 (N.Y. 2004) .....................................................8, 17

**Federal Statutes**

Fed. R. Civ. P. 12(b) ...............................................................14, 15

Fed. R. Civ. P. 12(c) ....................................................2, 14, 15, 24

Fed. R. Civ. P. 12(f) ........................................................................19

Fed. R. Civ. P. 15...........................................................................24

Fed. R. Civ. P. 44.1..................................................................20, 21

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS

1

**Other Authorities**

2

Convention for the avoidance of double taxation and the prevention of
    fiscal evasion with respect to taxes on income and the
    encouragement of international trade and investment, U.S.–R.O.K.,
    30 U.S.T 5253 ...................................................................................................21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This lawsuit is nothing more than a bald-faced scheme by Netlist, Inc. ("Netlist") to unilaterally terminate a fairly bargained-for contract, so that it may reap an unjust windfall by forcing renegotiation of new terms. On November 12, 2015, Netlist and Samsung Electronics, Co., Ltd. ("Samsung") – two experienced, sophisticated actors in the semiconductor industry – entered into a Joint Development and License Agreement (the "JDLA") to further their mutual interest by collaborating on joint development of memory modules, and grant each other licenses for certain intellectual property. Their business relationship under the JDLA continued without controversy for several years, before Netlist decided that it no longer wanted to be bound by the very terms of its own bargain. Now Netlist is using this litigation as leverage to terminate the JDLA.

In a clear demonstration of cherry-picking, Netlist has scoured the text of the JDLA to craft pretextual breaches tied to conduct that transpired many years ago, in an effort to terminate the agreement well ahead of its mutually-intended natural term ████████████████████████ (RJN Exh. A § 13.1; p. 4). Netlist has raised two unfounded claims for breach of contract in its First Amended Complaint ("FAC"). Both are without merit, and therefore, the FAC should be dismissed in its entirety as a matter of law.

***First***, while there is no supply obligation owed by either party under the JDLA, Netlist nonetheless makes unfounded allegations that Samsung breached its obligations under the JDLA in 2018 by failing to supply all products demanded by Netlist ████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████ The JDLA contains no supply obligation of any kind, and such an obligation cannot be written into it in contravention of its plain language. *See Vermont Teddy Bear Co., Inc. v. 538*

1  *Madison Realty Co.*, 1 N.Y.3d 470, 475 (N.Y. 2004) ("Courts may not by

2  construction add or excise terms, nor distort the meaning of those used and thereby

3  make a new contract for the parties under the guise of interpreting the writing")[1].

4  Moreover, because there is no explicit quantity term in Section 6.2, even if the Court

5  were to write in a supply obligation, it could only be an obligation to supply all of

6  Netlist's requirements. To interpret the JDLA to be a requirements contract, which

7  is the only way the Section 6.2 cause of action could survive this motion, would be

8  contrary to law.  Exclusivity is a prerequisite for requirements contracts, and the

9  JDLA ████████████████████ (RJN Exh. A §§ 6.3-6.4); *see Corning Inc. v.*

10 *VWR Intern., Inc.*, 2007 WL 841780, at *6 (W.D.N.Y. March 16, 2007) (exclusivity

11 necessary for requirements contracts)[2].

12 　　　**Second**, Netlist's baseless allegation that Samsung breached the JDLA in

13 2015 by withholding 16.5% of a $8 million contractual payment relies on an

14 erroneous legal conclusion completely unsupported by factual allegations: that the

15 "$8 million payment to Netlist was not properly taxable in Korea." (Dkt. No. 18-2 ¶

16 16). The JDLA explicitly states that ████████████████████████████

17 ████████████████████████████████ (RJN Exh. A § 3.2).

18 Netlist cannot allege what Korean law Samsung violated by withholding taxes,

19 because Samsung had a legal basis for its withholding at the time it was made: a

20 foreign company without a domestic base of operations in Korea, like Netlist,

21 nevertheless owes taxes on payments for the transfer of "patent rights . . . [or]

22

23

24 [1] ████████████████████████████████████████

25 ████████████████ (RJN Exh. A § 14).

26 [2]   In addition, the First Breach of Contract Claim impermissibly seeks
consequential damages, ██████████████████████. (RJN Exh. A §

27 3.2).

28

information and know-how[.]" (RJN Exh. B art. 93, subpara. 8)[3]. Therefore, Samsung lawfully withheld ▉▉▉▉ and transmitted it to the Korean National Tax Service.

*Third*, even if Netlist could allege material breaches of the JDLA, its attempt at early termination is invalid. Both purported breaches occurred several years ago, and Netlist has already elected to continue on with the contract despite them. Allowing Netlist "to now terminate the [JDLA] based on breaches that occurred . . . years ago would violate important principles of contract law." *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 391-92 (S.D.N.Y. 1999) (holding that attempted termination was invalid based on the doctrine of election.)

As each of Netlist's claims are fully preempted by operation of law, additional efforts to amend would be futile. Netlist's legally deficient and pretextual claims are nothing more than a vehicle for its scheme to seek early termination of the JDLA, so that it may extract an undeserved windfall from Samsung at the negotiating table. Netlist should not be permitted to further waste the time and resources of both parties and the Court with its thinly-veiled gamesmanship. Accordingly, the Court should grant judgment on the pleadings in Samsung's favor without leave to amend.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Joint Development and License Agreement

Samsung is a company based in South Korea that manufactures and sells NAND and DRAM products. Netlist is a California-based company that for the past 20 years has designed, manufactured, and sold memory modules – many of which utilize NAND and DRAM products – to customers worldwide. On November 12,

---

[3]    Beobinsaebeob [Corporate Tax Act], Act No. 11758, amended December 31, 2018, *available at* https://elaw.klri.re.kr/kor_service/lawView.do?hseq=49689&lang=ENG

2015, Samsung and Netlist entered into the JDLA, and formed a business relationship where the Parties would, among other things, collaborate to jointly develop memory modules, and grant each other licenses for certain intellectual property. Thereafter, this business relationship continued productively and without controversy for more than four years until May 2020, when Netlist unilaterally decided that the terms of the JDLA were no longer to its liking and commenced this litigation as leverage for renegotiation of the contract.

On May 28, 2020, Netlist filed its complaint in this action in the U.S. District Court for the Central District of California, (Dkt. No. 1), and a First Amended Complaint ("FAC") on July 22, 2020. (Dkt. No. 18-2). The FAC alleges three claims against Samsung: (1) a breach of contract claim based on Samsung's alleged failure to supply Netlist with NAND and DRAM products ███████ (*Id.* ¶¶ 25-29); (2) a breach of contract claim based on Samsung's tax withholding for a ███████████████████, (*Id.* ¶¶ 30-34); and (3) a declaratory relief claim for termination of the JDLA based on the two alleged breaches. (*Id.* ¶¶ 35-41).

## B.   Netlist's First Breach of Contract Claim

Netlist alleges that Samsung breached Section 6.2 of the JDLA by failing to supply Netlist with products ███████ (Dkt. No. 18-2 ¶¶ 25-29). Section 6.2 provides, in relevant part, as follows:

███████████████████████████████████

███████████████████████████████

███████████████████████████████

(RJN Exh. A § 6.2).

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████ (*See generally* RJN Exh. A). In addition, ████████

████████████████████████████████████

1 ██████████████████████████████████████████████████

2 (*See id.* §§ 6.3-6.4).

3       Netlist attempts to read a supply obligation into the JDLA that does not exist

4 on the face of the contract, and for that purpose alleges irrelevant and incoherent

5 supply-related facts. (Dkt. No. 18-2 ¶¶ 11-12). The FAC is self-contradictory and

6 unclear as to when the purported failure to supply occurred. Netlist alleges that "in

7 2018, Samsung began not to fulfill Netlist's requests or Orders." (*Id.* ¶ 12).

8 However, Netlist also alleges that the failure to supply ████████ began in June

9 2017, and "continue[s] to this day[,]" (*Id.* ¶ 27). Despite this conclusory allegation

10 of continuing breach, Netlist does not allege facts indicating that it was

11 undersupplied at any time other than 2018.[4]

12     **C.**    **Netlist's Second Breach of Contract Claim**

13       Netlist also claims that Samsung breached the JDLA by ████████████████

14 ████████████████████████████████████████ owed to Netlist.

15 Sections 3.1 and 3.2 of the JDLA provide, in relevant part, as follows:

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 █████████████████████████████

20 ████████████████████████████████████████

21 ████████████████████████████████

22 ██████████████████████████████████

23

24 _____

[4]   Netlist also claims that it has lost business opportunities, and that it paid higher

25 prices for smaller volumes of NAND and DRAM products on the secondary market

26 due to Samsung's conduct. (Dkt. No. 18-2 ¶ 14). However, other than that

conclusory statement, it offers no information as to what business opportunities

27 were lost, or why the failure to obtain products from Samsung – only one of many

28 sellers in the market – would have resulted in higher prices for Netlist.



7    (RJN Exh. A §§ 3.1-3.2) (emphasis added).

8    Netlist alleges that Samsung withheld ▮▮▮▮▮▮▮▮▮ and paid it to the

9    "Korean tax authority" "shortly after entering the agreement" in November 2015.

10   ((Dkt. No. 18-2 ¶ 16)). Netlist claims, *ipse dixit*, that "on information and belief" the

11   payment was not taxable, and that the withholding came as a "surprise" because it

12   "had understood that the amount would not be taxed in Korea under the applicable

13   law." (*Id.*) Aside from this unsupported legal conclusion, Netlist pleads nothing on

14   how the withholding supposedly violated Korean law.

15        In addition, Netlist claims that Samsung breached the obligation to

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Section 3.2 by notifying Netlist that the tax

17   withholding was proper, "delay[ing] or declin[ing]" to provide cooperation, and not

18   being "forthcoming to Netlist regarding what it has done or could do to help." (*Id.* ¶

19   17). Aside from these general statements, which do little more than restate the

20   contractual language in a conclusory manner, Netlist provides no explanation of

21   how Samsung failed to reasonably cooperate. (*Id.* ¶ 32). Netlist does not allege that

22   it ever informed Samsung that it considered either the withholding or the purported

23   lack of cooperation to be a material breach, or that it attempted to terminate the

24   JDLA on that basis, at any time in the intervening six years.

25        **D.    Netlist's Declaratory Relief Claim**

26        Netlist's third claim requests declaratory relief that it properly terminated the

27   JDLA. Section 13.2 of the JDLA provides, in relevant part, as follows:

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ██████████████████████████████████████████████████

2    ████████████████████████████████████████████████

3    ██████████████████

4        (RJN Exh. A § 13.2) (emphasis added). Netlist alleges that it notified

5    Samsung of the purported material breaches of the JDLA on May 27, 2020 (Dkt.

6    No. 18-2 ¶ 19)[5] – ***over two years after*** the purported failure to supply ████████

7    and ***nearly five years after*** the tax withholding. Netlist makes no allegation that it

8    raised its supply issues with Samsung at any point in the intervening years, or that it

9    ever communicated to Samsung its position that the tax withholding was a breach of

10   contract. Indeed, Netlist's lack of genuine interest in these issues – other than as a

11   pretextual basis for litigation and unlawful termination of the JDLA – is evident

12   from the timing of its filing: on May 28, 2020, the day after its purported notice of

13   breach and just one day into the ██████ cure period triggered under Section 13.2 of

14   the JDLA, Netlist filed its complaint without offering Samsung any opportunity to

15   cure. Netlist alleges that, on July 15, 2020, after the cure period for the purported

16   material breaches had passed, it sent Samsung a purported notice of termination. (*Id.*

17   ¶ 22). Based on the purported breaches, Netlist seeks a determination that the JDLA

18   is terminated as of July 20, 2020. (*Id.* ¶ 41).

19   **III.   ARGUMENT**

20        **A.   LEGAL STANDARD**

21        "After the pleadings are closed—but early enough not to delay trial—a party

22   may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for

23   judgment on the pleadings is "functionally identical" to a motion to dismiss under

24   Fed. R. Civ. P. 12(b), other than the time of filing. *Dworkin v. Hustler Magazine*

25

26   _____

27   [5]   While factual disputes are not ripe for adjudication in a motion for judgment on the pleadings, Samsung disagrees with Netlist's contention that it served proper

28   notice under the JDLA.

*Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, "[t]he standard applied [to the former] is essentially the same as that applied [to the latter]." *Butler v. Resurgence Fin., LLC*, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007).

As with Rule 12(b) motions, courts may consider only the complaint, the answer, exhibits attached to the complaint, and matters subject to judicial notice when deciding a motion for judgment on the pleadings. *Buraye v. Equifax*, 625 F. Supp. 2d 894, 897 (C.D. Cal. 2008). The moving party will prevail if, when "taking all allegations in the pleading as true, [it is] entitled to judgment as a matter of law." *Knappenberger v. City of Phoenix,* 566 F.3d 936, 939 (9th Cir. 2009) (internal quotation marks omitted); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999) (same). The non-moving party, in turn, can only defeat the motion if its claims amount to more than "conclusory allegations and unwarranted inferences" *Butler*, 521 F. Supp. 2d at 1095; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept as true "[conclusory allegations], unwarranted deductions of fact, or unreasonable inferences"). "A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim." *Mays v. Wal-Mart Stores, Inc.*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal. 2019).

## B.     SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S FIRST BREACH OF CONTRACT CLAIM BECAUSE THE JDLA CONTAINS NO SUPPLY OBLIGATION.

### 1.     Contracts Must Be Interpreted According To Their Plain Language

Under New York law,[6] "[t]he proper interpretation of contract language may

---

[6] ████████████████████████████████████████████████████████

be determined as a matter of law[.]" *Hudson Iron Works, Inc. v. Beys Specialty Contracting, Inc.*, 262 A.D.2d 360, 362 (N.Y. App. Div. 1999). For purposes of interpretation, the court may consider the contractual text in its entirety, even when plaintiff includes only selective quotations in its complaint. *Arnold Chevorlet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 191 (E.D.N.Y. 2006) (citing *International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"The primary objective in contract interpretation is to give effect to the intent of the contract parties as revealed by the language they chose to use." *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (internal quotations and citations omitted); *see also Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (N.Y. 2002) ("The best evidence of what parties to a written agreement intend is what they say in their writing") (same). Thus, when the text of a contract is unambiguous, the mere assertion by one party that the contract actually means something different is not on its own sufficient to create ambiguity. *Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 193 (N.Y. App. Div. 1995).

**2.      Section 6.2 of the JDLA is Unambiguously** ███████████
███████████████

A contract is unambiguous when the terms "suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

Here, Section 6.2 provides only that ██████████████████████
████████████████████████████████████ (RJN Exh. A
████████████████ (RJN Exh. A § 14).

§ 6.2). ███████████████████████████████████████████

██████████████████████████████████. A plain reading of the

JDLA, therefore, demonstrates that Samsung has no obligation to supply a quantity

of products to Netlist, or any products at all. Netlist asks the Court to write in a non-

existing supply obligation into the JDLA based on nothing more than its own

wishful thinking. *See Vermont Teddy Bear*, 1 N.Y.3d at 475 ("Courts may not by

construction add or excise terms, nor distort the meaning of those used and thereby

make a new contract for the parties under the guise of interpreting the writing"); *see

also Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 573 (N.Y. 2002) ("silence

does not equate to contractual ambiguity.")

   Samsung and Netlist are both sophisticated corporate actors. Both have

extensive experience in the semiconductor industry, and are well-versed in the

market conditions surrounding the sale and purchase of NAND and DRAM products

– including the limited supply and frequent shortages. If Samsung and Netlist

wanted to create an obligation to supply products, they knew exactly how to do so:

by putting that explicitly in the text. They certainly would not have intended to

create one by mere implication. *See New Bank of New England, N.A. v. Toronto–

Dominion Bank*, 768 F. Supp. 1017, 1022 (S.D.N.Y.1991) ("an agreement among

sophisticated parties . . . does not become ambiguous simply because one of the

parties later asserts that it intended a different interpretation").

### 3.    The JDLA Cannot Be A Requirements Contract, as ███████

██████

   The FAC does not allege any specific quantity of product Samsung was

required to provide, but instead argues that the phrase ████████ single-handedly

transmutes the JDLA into a requirements contract, so that Samsung's failure to

satisfy any portion of any of Netlist's requests or orders must necessarily constitute

a breach.

   This argument fails as a matter of law, because the ███████████████

████████████████████████. There can be no valid requirements contract without exclusivity. *Corning Inc.*, 2007 WL 841780, at *6 ("[b]ecause section 2-306 depends on exclusivity to determine the quantity, there can be no valid requirements contract without it."); *see also CSL Behring, LLC v. Bayer Healthcare, LLC*, 2019 WL 4451368 at *2 (D. Del. Sep. 17, 2019) (applying New York law, holding that under requirements contract, buyer must buy all of its requirements from a single exclusive seller.) ████████████████████████████████████████████████████████████████████████████████████████████ (RJN Exh. A § 6.4). Because it is not a requirements contract, as a matter of law Samsung had no obligation to provide more product to Netlist, which means Netlist's first cause of action fails to state a claim for relief and should be dismissed.

### 4. Netlist is barred from recovering consequential damages under the JDLA.

"Under New York law, consequential damages are recoverable only if they were reasonably within the contemplation of the parties at the time the contract was made." *M Sports Productions v. Pay-Per-View Network, Inc.*, 1998 WL 19998, at *2 (S.D.N.Y. Jan. 20, 1998). Thus, when the parties to a contract seek to bar recovery of consequential damages through explicit contractual terms, courts will routinely enforce those terms. *See, e.g., International Gateway Exchange, LLC v. Western Union Financial Services, Inc.*, 333 F.Supp.2d 131, 149 (S.D.N.Y. 2004); *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 217-8 (S.D.N.Y. 2002). In particular, when a contract is negotiated between experienced commercial parties – as the JDLA is – a clause limiting consequential damages is not unconscionable, and is fully enforceable. *Scott v. Palermo*, 233 A.D.2d 869, 872 (N.Y. App. Div. 1998). On this basis, when an "[a]greement bars consequential damages on its face[,]" causes of action demanding consequential damages should be dismissed. *See M Sports Productions*, 1998 WL 19998, at *2 *citing Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F.Supp. 1012, 1017 (E.D.N.Y.1996).

The JDLA contains an explicit provision limiting each party's liability for

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████ (RJN Exh. A § 3.2)

(capitalization in original, emphasis added). Not only did the parties – both of whom are highly sophisticated business entities – not reasonably contemplate recovery for consequential damages, they demonstrated their unmistakable intent to bar such recovery. *Sayers*, 7 F.3d at 1094 ("The primary objective in contract interpretation is to give effect to the intent of the contract parties *as revealed by the language they chose to use.*") (emphasis added, internal quotations and citations omitted).

In describing its alleged damages under the first breach of contract claim, Netlist states that "[it] could not supply its customers and lost business opportunities and profits it otherwise would have earned." (Dkt. No. 18-2 ¶ 14). These are plainly consequential damages, explicitly carved out from recovery under the JDLA by the Parties. Thus, to the extent it seeks such consequential damages, Netlist's first breach of contract claim should be dismissed.[7]

For these reasons, Samsung is entitled to judgment on the pleadings on Netlist's first breach of contract claim.

---

[7]   In the alternative, Samsung moves for the Court to strike any allegations seeking consequential damages from the FAC. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")

**C.     SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S SECOND BREACH OF CONTRACT CLAIM BECAUSE THE NETLIST FAILS TO ALLEGE HOW THE TAX WITHHOLDING WAS UNLAWFUL UNDER KOREAN LAW.**

Section 3.2 of the JDLA permits Samsung to ████████████████ ████████████████████████████████████████████████████ ████████████████████ (RJN Exh. A § 3.2). Thus, in order to adequately plead a breach of Section 3.2, Netlist must allege a cognizable theory as to how Samsung's ████ withholding violated Korean law. *See Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016) (dismissal for failure to state a claim proper when complaint "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories").

The FAC alleges no such theory. Instead, it merely presents the unsupported legal conclusion that "on information and belief, the ████████ payment to Netlist was not properly taxable in Korea." (Dkt. No. 18-2 ¶ 16). There is no information whatsoever in the FAC that puts Samsung on notice of what Korean law Netlist alleges that it violated by withholding the ████, and on what basis it may defend itself against such allegations. Therefore, Netlist's second breach of contract claim is deficient on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Moreover, Netlist fails to allege a specific legal violation because one does not exist: an analysis of the relevant Korean law demonstrates that Samsung's withholding was legal. When ruling on issues of foreign law, courts may "consider any relevant material or other source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Per this Rule, a foreign law issue is considered a question of law, and therefore should be

adjudicated in the context of the instant motion. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 995-96 (9th Cir. 2016) ("courts do not transgress the broad boundaries established by Rule 44.1 when considering foreign legal materials . . . at the pleading stage[.]" )

Samsung's withholding was lawful, as Korean law imposes tax liability on payments for the transfer of "patent rights . . . [or] information and know-how" paid to foreign corporations, so long as the rights, information, or know-how are used in Korea, *or* the payment itself is made in Korea. (RJN Exh. B art. 93, subpara. 8). The JDLA describes the ████████ payment as a "████████████████████ ██" (Dkt. No. 18-2 ¶ 15). This indicates that the payment was made in exchange for Netlist's engineering expertise, whether in the form of patent rights or non-patent "industrial, commercial, or scientific knowledge and experience." (RJN Exh. B art. 93, subpara. 8). The payment was made in Korea (by Samsung), and the expertise was used in Korea (also by Samsung).

Because Netlist is a U.S. corporation, their income tax for these payments is capped at 15%.[8] Added to this 15% is a 1.5% local government tax withholding mandated by Korean law, (RJN Exh. C. art. 103-13, para. 1),[9] for a total of 16.5% – ████████████████████████████. (Dkt. No. 18-2 ¶ 18). Accordingly, Samsung's ████ withholding was lawful. As such, Samsung's representation that it properly withheld taxes cannot constitute a "fail[ure] to reasonably cooperate with Netlist" as it sought a refund. (Dkt. No. 18-2 ¶ 17).

Netlist's other allegation that Samsung failed to "reasonably cooperate" is too

---

[8]   Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and the encouragement of international trade and investment, U.S.–R.O.K., art. 14, para. 1, June 4, 1976, 30 U.S.T. 5253.

[9]   Jibangsaebeob [Local Tax Act], Act No. 17769, amended December 31, 2018, *available at* https://elaw.klri.re.kr/kor_service/lawView.do?hseq=50974&lang=ENG

vague and conclusory to support a claim. Netlist contends that Samsung "delayed" or "declined" to provide cooperation, and was not "forthcoming to Netlist regarding what it has done or could do to help." (Dkt. No. 18-2 ¶ 17). This is little more than a conclusory restatement of the contractual language – in other words, Netlist is saying that Samsung failed to reasonably cooperate because it failed to reasonably cooperate. "[C]onclusory allegations are insufficient to support a claim for breach of contract." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 981 (C.D. Cal. 2014). Moreover, these allegations are rendered a nullity due to lack of actual damages. "[C]onclusory and vague allegations are not sufficient to establish . . . actual damages to support [a] breach of contract claim." *See Holly v. Alta Newport Hospital, Inc.*, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020). Here, Netlist offers no facts whatsoever that demonstrate that it was damaged specifically by any conduct by Samsung – reasonable or otherwise – that post-dates the initial withholding. Netlist does not, for example, allege that the lack of cooperation impeded its efforts to obtain a refund from Korean tax authorities in any way.

Therefore, Samsung is entitled to judgment on the pleadings on Netlist's second breach of contract claim.

### D.   SAMSUNG IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON NETLIST'S DECLARATORY RELIEF CLAIM.

The JDLA permits termination for cause only when a ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (RJN Exh. A. § 13.2). As such, Netlist's declaratory relief claim rises and falls with its two breach of contract claims. As both claims are invalid for the reasons discussed above, Netlist's declaratory relief claim fails as well.

Moreover, even assuming *arguendo* that Netlist properly alleges breach of

contract claims, it cannot terminate on that basis because it has long since elected an alternative remedy – to continue on with the JDLA. As of a matter of law, termination on the basis of material breaches "must be sought promptly." *Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*, 872 F. Supp. 103, 110 (S.D.N.Y. 1995). Thus, the doctrine of election dictates that a non-breaching party that chooses to continue with a contract despite the other party's material breach waives its right to terminate. *See, e.g., Calvin Klein Trademark Trust v. Wachner*, 129 F. Supp. 2d 254, 258 (S.D.N.Y.2001) (non-breaching party waived right to terminate by continuing to accept royalties); *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011–12 (S.D.N.Y.1995) (employee waived right to terminate by continuing to accept salary); *ESPN*, 76 F. Supp.2d at 391-92 ("***allowing [non-breaching party] to now terminate the contract based on breaches that occurred almost two years ago would violate important principles of contract law[.]***") (internal quotations omitted) (emphasis added).

Pursuant to Netlist's own allegations in the FAC, the tax withholding occurred "shortly after entering the JDLA[,]" (Dkt. No. 18-2 ¶¶ 16) presumably in late 2015 or in early 2016 at the latest. Netlist claims that this was a material breach, yet it chose not to terminate the JDLA. Aside from two conclusory, unsupported allegations that Samsung's breach of Section 6.2 continues to the present (*Id.* ¶ 13, 27) – recitations so nakedly perfunctory that their inclusion itself betrays Netlist's furtive attempt to make an end-run around the doctrine of election – Netlist's allegations that Samsung failed to supply products are limited to the first quarter of 2018. (*Id.* ¶ 12). According to Netlist, this was also a material breach. Yet again, it did not terminate.

Having chosen to continue on with the JDLA – and to reap the resulting benefits – for years after the purported material breaches, Netlist cannot go back on its decision now in a belated effort to get out of its bargain. Accordingly, Samsung is entitled to judgment on the pleadings on Netlist's declaratory judgment claim.

### E.   THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

"Courts have discretion to grant leave to amend in conjunction with Rule 12(c) motions[.]" *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001) (internal quotation marks omitted). While courts generally grant leave to amend freely "when justice so requires[,]" Fed. R. Civ. P. 15, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). In particular, leave may be denied on the basis of "futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is futile when "the complaint [cannot] be saved by amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991), and "futility alone can justify a court's refusal to grant leave to amend." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

Netlist has already had one opportunity to amend its complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (district courts have "wide discretion in granting or refusing leave to amend after the first amendment") (internal quotations omitted). Further amendment would be futile, as the text of the JDLA and the operation of the relevant Korean statutes are clear. No matter how many times Netlist amends its complaint, both of its contract claims are destined to fail as a matter of law: Netlist cannot alter the JDLA's plain language, nor can it rewrite Korean tax statutes. *See, e.g.*, *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (denying leave to amend on basis that applicable statutes could not give rise to cause of action "no matter what facts are alleged"); *Leadsinger*, 512 F.3d at 532 (amendment was futile because Plaintiff's legal theory was plainly non-viable under Copyright Act).

Netlist can allege no set of facts that would make their claims legally viable. Another opportunity to amend will accomplish nothing other than subjecting

1   Samsung to further prejudice as it will have to put its resources into yet again

2   defending itself against the same doomed claims. Accordingly, the Court should

3   grant judgment for Samsung without leave to amend.

4   **IV.   CONCLUSION**

5       For the foregoing reasons, Samsung respectfully requests that the Court grant

6   judgment on the pleadings in its favor with regards to Netlist's First Amended

7   Complaint, in its entirety, and without leave to amend.

8

9   DATED:  June 21, 2021            Ekwan E. Rhow

10                                   Marc E. Masters
                                     Kate S. Shin
11                                   Christopher J. Lee
                                     Bird, Marella, Boxer, Wolpert, Nessim,
12                                   Drooks, Lincenberg & Rhow, P.C.

13

14

15                          By: _____

16                                   Ekwan E. Rhow
                               Attorneys for Defendant Samsung
17                             Electronics Co., Ltd.

18

19

20

21

22

23

24

25

26

27

28