JASON C. LO, SBN 219030
  jlo@gibsondunn.com
MATTHEW BENJAMIN (*pro hac vice*)
  mbenjamin@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>           Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>           Defendant. | CASE NO. 8:20-cv-993-MSC (DFMx)<br><br>**PLAINTIFF NETLIST INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO INTERROGATORY NO. 8 AND REQUEST FOR PRODUCTION NO. 11**<br><br>*[Proposed] Order and Declaration of Raymond A. LaMagna filed concurrently herewith*<br><br>Action Filed:  May 28, 2020<br>Trial Date       November 30, 2021<br><br>Hearing Date:  June 29, 2021<br>Time:              9:30 a.m. (Telephonic)<br><br>Hon. Douglas F. McCormick<br>Courtroom 6B |

Plaintiff Netlist Inc. brought this action alleging multiple instances of material breach by Defendant Samsung Electronics Co., Ltd. of the parties' 2015 Joint Development and License Agreement ("JDLA"). The present discovery dispute concerns Netlist's request that Samsung disclose summary data by customer of monthly unit totals and pricing for NAND and DRAM products sold to other customers. Dkt. 56 at 3 [Samsung "Opp."] (quoting Netlist RFP No. 11, Interrogatory No. 8).[1] Netlist has *not* requested transaction-level data (e.g., order level data), but just seeks disclosure of summations from Samsung's relevant database records. And, despite unsupported, vague assertions of burden, neither Samsung nor its declarant say that the rolled-up summary data Netlist requests is not readily or centrally available at Samsung. This request is narrowly tailored, relevant, and should be compelled.

### A. The Discovery Sought Is Relevant and Discoverable

Netlist's First Amended Complaint ("FAC") alleges material breach of Samsung's contractual obligation to supply Netlist with NAND and DRAM products. Dkt. 23, ¶¶ 10 (quoting contract provision at issue), 20, 26. As stated in the JDLA and repeatedly stated in Netlist's FAC, that provision contains not only an obligation to supply, but also contains a specific pricing obligation *relative to other customers*. *Id*. And Netlist's First Cause of Action specifically claims that Samsung breached this provision. *Id*. Thus, it is not accurate to suggest as Samsung does that Samsung's pricing for other customers is not at issue in this case—it is. Pricing relative to other customers is a material part of the contract provision that Netlist claims was breached. Disclosure of Samsung's volumes and pricing to others is necessary to determine whether Samsung performed or breached this provision.

The fact that Netlist has *also* made specific factual allegations about *other* aspects of Samsung's conduct that gave rise to breach (e.g., its refusal of orders

---

[1] RFP No. 11 is not expressly limited to monthly totals, and Rog. No. 8 asks for quarterly data. To simplify for convenience, Netlist requests just monthly totals. Netlist can calculate quarterly totals itself, so Samsung need not also run that tally.

altogether) does not limit Netlist's Cause of Action to only those other allegations, nor limit discovery to only those other specific allegations. *See, e.g.*, *Butler v. Riverside Cty.*, 2016 WL 11525311, at *2 (C.D. Cal. Mar. 16, 2016) (discovery is "not limited to matters that fall within the four corners of a plaintiff's complaint"); *see also Pasadena Oil & Gas Wyoming LLC v. Montana Oil Props. Inc.*, 2009 WL 794678, at *1 (9th Cir. Mar. 26, 2009) ("Discovery is not limited to issues raised in [plaintiff's] complaint."). Here, Netlist is not even seeking discovery outside the four corners of its complaint— the cause of action is for breach of a contract provision that *expressly recites* a pricing obligation stated relative to other customers. Therefore, Samsung's pricing is *directly* relevant and discoverable. Fed. R. Civ. P. 26(b)(1) (permitting discovery "relevant to any party's claim").

Moreover, Netlist's Third Cause of Action seeks a declaration that, as a result of the above material breaches, the JDLA has been terminated. FAC ¶¶ 35–41. Thus, the *materiality* of the above breaches is at issue. Under New York law, which governs the parties' JDLA, the "willfulness" of the above breaches is at issue as willfulness is a factor in determining materiality. *E.g.*, *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) ("willfulness" a factor); *Levy v. Young Adult Institute, Inc.*, 2017 WL 1929505, at *3 (S.D.N.Y. May 9, 2017) (failure to act in good faith and "willful" breach "tip[ped] in favor of material breach"); *Fitzpatrick v. Am. Intern. Grp., Inc.*, 2013 WL 709048, at *21 (S.D.N.Y. Feb. 26, 2013) ("whether a breach was material" involves "a fact-specific inquiry" including "willfulness").

Thus, the requested discovery is also needed to show if Samsung's rejections of product requests from Netlist were typical of its treatment of others. For example, when Samsung cut sales to Netlist by 90% or more, did it do the same to others? Will fulfillment patterns for other customers match Netlist's, or was Netlist willfully singled out? These questions directly bear on willfulness and on the requested discovery.

If Samsung were to admit that it intentionally rejected Netlist's product requests differentially from requests from other customers, and that it did not comply with its

pricing obligations, then this discovery might be avoided. But Samsung has not done so, and thus these issues remain in dispute.[2] And thus, the requested data remains subject to discovery. "[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (internal quotations omitted); *see also Big Baboon Corp. v. Dell, Inc.*, 2010 WL 3955831, at *2 (C.D. Cal. Oct. 8, 2010) ("Ninth Circuit law generally favors a broad scope of discovery.").

**B.    Confidentiality Concerns Are Without Merit ("AEO" Treatment Applies)**

One of Samsung's primary objections is that, according to Samsung, its customers' names and pricing is highly confidential. In an unsupported lawyers' argument, Samsung asserts that "the identity of Samsung's buyers—and the exact quantities and prices of products they purchase—is sensitive information, disclosure of which may cause loss of business opportunities that dwarf the amount of controversy of this litigation." Opp. at 4 & n.1 (citing "revenue in excess of $50 billion"). Samsung asserts that disclosing this information would "make it impossible for Samsung to effectively negotiate going forward—as each buyer would already know what prices and quantities their industry peers had been offered in the past," which could "ripple out to impact supply chains in the memory market worldwide." *Id.* at 5.

The Court need not worry about this frightening tale. Netlist sent Samsung a draft protective order weeks ago (to which Samsung has never responded). And, Netlist has also agreed to treat this information on an Attorneys'-Eyes-Only basis, with circulation only to counsel and Netlist's damages expert. In fact, regardless of the

---

[2] In fact, Samsung's opposition now admits for the first time that it "strategically offers prices and quantity commitments to its buyers based on various characteristics of the business relationship between that buyer and Samsung." Opp. at 4–5. Thus, Samsung now concedes that it offers different customers ***different pricing and access to product*** not simply based on the amount of their purchases (i.e., not simply based on, for example, volume tiers). If Samsung's representation is true, then sales data for other companies would be highly relevant to Netlist's claims, as that data would show that Samsung does not give similar companies the same pricing or access to product. If Netlist is disfavored in product or pricing, that would be evidence supporting Netlist's claim of material breach.

scope of any protective order, ***Netlist represents that it will handle this material according to that higher "AEO" standard.*** It is a foundation of discovery that, "with respect to claims of confidentiality, [] protective order[s] [] more than adequately address the objections." *Antiaging Institute of Cal., Inc. v. Solonova, LLC*, 2016 WL 6920676, at *2 (C.D. Cal. June 28, 2016); *see also Vargas v. Cty. of Los Angeles*, 2020 WL 4032671, at *3 (C.D. Cal. May 11, 2020) (overruling confidentiality objection due to protective order); *General Electric Co. v. Liang*, 2014 WL 12844840, at *2 (C.D. Cal. Aug. 25, 2014) (same).

Moreover, Samsung's lawyers' argument here is not likely aligned with the facts. For example, the identities of Samsung's customers are not a secret. Samsung prominently marks its memory chips and modules with "SEC" (Samsung Electronics Corp.) or "Samsung"—any product assembled or sold by Samsung's customers can be opened up and the source of the memory readily and publicly identified, for example:

[3]

Samsung itself publishes lists of memory products it offers.[4] And, while Samsung says that "in some cases" its pricing is subject to confidentiality obligations with customers, Opp. at 5 (citing Lee Dec. ¶ 4), it does not even attempt to argue that it has such obligations with all or even most customers.

To be clear, Samsung's own interest in keeping its pricing confidential is addressed by the AEO treatment promised above. But so is that of Samsung's

---

[3] Images taken from, left to right, https://news.samsung.com/global/samsung-electronics-begins-mass-producing-industry-first-256-gigabit-3d-v-nand-flash-memory; https://www.samsung.com/semiconductor/dram/module/; https://news.samsung.com/medialibrary/global/photo/34593?&page=29.

[4] *See, e.g.*, https://www.samsung.com/semiconductor/dram/module/ (including DRAM module "Product Selector" and list of part numbers and features).

1  customers (should any such confidentiality provisions exist).  Samsung cannot contract
2  around the Federal Rules, its discovery obligations, or the authority of this Court with
3  customers by promising that it will not disclose pricing that is *subject to discovery*
4  *obligations or a court order*.  In the hierarchy of authority, Samsung's legal
5  obligations to abide by Federal discovery rules and this Court's discovery rulings
6  trump its freedom to contract confidentiality with customers.  Of course, Samsung can
7  provide notice to customers of the need for disclosure (as is typical in litigation) if any
8  such confidentiality provisions exist, but it cannot withhold discovery on this basis.

**C.    Samsung's Burden Objection Lacks Specificity and Was Waived**

To start, Samsung's specific objections to RFP No. 11 and Interrogatory No. 8 do not mention "burden" much less articulate any of the arguments Samsung sets forth now in opposition.  *See* LaMagna Decl., Ex. A at response to RFP 11, Ex. B at response to Rog 8.  Such objections are thus now waived.  *E.g.*, *Colonies Partners LP v. Cty. of San Bernardino*, 2019 WL 2895187, at *5 (C.D. Cal. May 1, 2019) (objection waived as it was not asserted in timely response); *see also Meggit (Orange Cnty.), Inc. v. Nie*, 2015 WL 12743695, at *1 (C.D. Cal. Feb. 17, 2015) ("The practice of making boilerplate general objections couched in terms of 'to the extent' and then incorporating those general objections into each interrogatory response is improper.").

Regardless, Samsung's opposition and accompanying declaration allege burden in such abstract terms as to be useless for supporting or evaluating its objection. Samsung knows how many customers it has, how many databases have responsive information, etc., yet it withholds all of these specifics from its opposition.  Such nebulous, hand-waving objections are routinely overruled, as they should be here.

**1.    Non-Specific Notice Obligations Are Not a Basis to Prevent Discovery**

Samsung argues that it would be unduly burdensome for it to disclose pricing data because it would be difficult to identify which customers it has a contractual obligation to provide notice to.  As noted above, Samsung does not argue that all or

even most of its customers might be implicated, just "some." Opp. at 5:11–13. But dispositive here, Samsung's declarant **Mr. Lee does not support this objection**.

Mr. Lee nowhere says that Samsung does not know which customers require notice, nor offers any evidence that determining this is burdensome, nor that sending notices is burdensome. Lee Decl. ¶ 4. That argument is tellingly made by counsel without citation to any support (i.e., as just lawyers' argument). Opp. at 5:13–19.

This is certainly not Samsung's first U.S. litigation rodeo. Samsung is one of the largest technology companies in the world—presumably it is more sophisticated than its counsel presently lets on. Presumably, it knows how to identify its customers, knows with whom it has supply contracts, knows to whom it promises confidentiality in pricing or sales, and to whom it owes notice. Samsung is not likely addressing these issues for the first time now, and **nothing in Mr. Lee's declaration is to the contrary**.

Thus, Samsung has offered no factual basis to sustain any assertion of burden here for it to provide notice (if needed) to third-party customers. There is no way for the Court to quantify this alleged burden, and the objection should thus be overruled.

**2.    Samsung's Assertion of Collection Difficulties Is Mere Conjecture**

Samsung next argues that mere collection of this data is too burdensome because sales are conducted by "independent" teams. Opp. 5:21–23. Yet "independent" is again counsel's gloss word. Samsung's declarant Mr. Lee offers no evidence that Samsung does not control or cannot readily obtain sales data from its sales teams—i.e., there are no facts to support that sales data is maintained "independent" from Samsung. Indeed, it would seem difficult if not impossible for Samsung to operate or perform financial reporting, etc., if that were the case.

Samsung next asserts that sales data is maintained by each team according to their own policies, practices, and formatting," which it asserts would have to be "aggregated" to be produced. Opp. at 5:23–6:2. First, and most telling here, neither Samsung nor its declarant actually state that Samsung does not *also* maintain central, aggregated, rolled-up data for customer sales (in addition to having data localized with

its sales teams). It is highly improbable that Samsung as a company does not have such centralized data, and *Mr. Lee does not say otherwise*.

But regardless, neither Samsung nor its declarant identify how many different data sets exist, a deficiency that itself merits overruling the objection. Nor should this be an issue—if Samsung has multiple sources of data (e.g., sales data for the U.S., data for Europe, etc.), it can output the data from each regional group and produce that. No need to produce one master set—Netlist will accept the data by regional sales team.

Samsung further objects that the discovery is made burdensome by the "large number of buyers and transactions (sometimes numbering in the millions annually)." Lee Decl. ¶ 8. According to Samsung, "the volume is expected to be extremely high, given the size of Samsung's semiconductor business." Opp. 6:2–5. Yet again, Samsung and its declarant fail to identify even basic supporting facts, like how many customers Samsung has. Surely Samsung has a rough idea. But Mr. Lee only vaguely states that there "numerous buyers," "groups of buyers," "a small number of large buyers," a "large number of buyers," and "many buyers." Lee Decl. ¶¶ 5, 8–9.[5]

Nevertheless, this is a red herring. Netlist is not seeking transaction-level data. Netlist has only asked for *monthly totals* by customer and product. For example, assume Samsung has 1,000 sales transactions with Amazon in a month for a DRAM product totaling $50 million. Netlist is asking for a database output of just the total—which should be a standard database query—i.e., an Excel with a line entry identifying the total units and total sales (which can readily be divided to an average per unit cost). Databases and Excel are agnostic as to small or large numbers. It is no more burden to output a line of data for 50 units for $50 as for 50 million units for $50 million. Nor does a database care if the output is ten lines or ten thousand. This is not burden.[6]

---

[5] In fact, because Samsung does not sell these products direct to consumers, the number of institutional buyers is likely relatively limited.

[6] It is entirely possible—and indeed likely—that Samsung's various sales teams have simple rolled-up data already, which contains a summary of transactions for all of its customers. Again, *Mr. Lee does not declare otherwise*.

Where information is easily accessible from a database (or a number of different databases), courts routinely hold there is no undue burden. *See Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 302 (S.D. Cal. 2015) (no undue burden where complicated data can be obtained with little "human intervention"); *Excelligence Learning Corp. v. Oriental Trading Co., Inc.*, 2004 WL 2452834, at *7 (N.D. Cal. June 14, 2004) (granting motion because "the requested information is available on a database and may be quickly accessed, copied and provided").

In sum, burden objections must be concrete and particularized. Samsung's are not. Samsung and its declarant offer only conclusory assertions—no numbers, estimates, or even orders of magnitude are proffered. Stating by fiat that something is complex does not make it so. *E.g.*, *Bresk v. Unimerica Ins. Co.*, 2017 WL 10439831, at *3 n.3 (C.D. Cal. Nov. 16, 2017) (rejecting an undue burden argument where "[d]efendant did not offer any details . . . about why it would be burdensome to collect the requested statistical information"); *see also Prado v. Wal-Mart Stores, Inc.*, 2018 WL 3487057, at *2 (C.D. Cal. July 18, 2018) ("General or boilerplate objections such as overly burdensome and harassing are improper" especially when a party fails to submit a declaration supporting such objections) (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)) (quotes omitted).

What Netlist requests is reasonable and narrowly tailored to just summary data by month. Samsung's objection should therefore be overruled.

### D. Samsung's Proposal to Self-Limit Discovery Is Unworkable

Lastly, Samsung asserts it should be allowed to cull the data before production to limit it in its unilateral estimation to companies "with similar characteristics" to Netlist or to purchases for "similar" products. Opp. at 6:23–7:21. But discovery does not work that way—Samsung and Netlist (and their experts) may not agree on which companies have "similar characteristics" or on which products are "similar." Discovery is intended to shine daylight on a disputed fact, which can only be done if there is disclosure. Here, given that there is no tangible basis to allege undue burden,

and that Netlist seeks only summary data, there is no basis to allow Samsung to make unilateral "relevance" determinations in deciding which customers' data to produce.[7]

Moreover, while Samsung's pricing obligation to Netlist may implicate only similar purchasers, the inquiry concerning the willfulness of Samsung's conduct is not so limited. If Netlist received disparate treatment because it was, for example, a small company, that is still relevant to show willfulness and materiality. Thus, providing data with respect to even Samsung's larger customers is still highly relevant.

\* \* \*

For the foregoing reasons, Samsung respectfully requests that the Court grant its motion to compel full responses to Interrogatory No. 8 and RFP No. 11.

Dated: June 25, 2021

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Raymond LaMagna
Raymond LaMagna
333 South Grand Avenue
Los Angeles, CA 90071
213.229.7153
rlamagna@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.

---

[7] It is reported that Apple has purchased memory from Samsung, likely on terms and pricing not as relevant here. Samsung can omit data concerning purchases by Apple or its subsidiaries from Samsung's response to Netlist's requests.

Samsung also argues that the time period covered here is too long. Opp. at 3:16–17, 6:5, 7:19–21; Lee Decl. ¶ 8. The period covered by these requests should be construed to be the term of the parties' JDLA agreement up to termination—November 2015 to July 2020 (just over four-and-a-half years). Samsung need not produce data after July 2020 when the JDLA was terminated. But in no way has Netlist ever limited its claim for breach or allegations to just "June 2017 to December 2017" as Samsung asserts. See Opp. 7:19–20. And there is no legitimate basis to limit discovery to just those months either.