JASON C. LO, SBN 219030
  jlo@gibsondunn.com
MATTHEW BENJAMIN (*pro hac vice*)
  mbenjamin@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>　　　　　Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**NETLIST INC.'S APPLICATION FOR LEAVE TO FILE UNDER SEAL**<br><br>Action Filed:  May 28, 2020<br>Trial Date:  November 30, 2021<br><br>Hon. Mark C. Scarsi |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Netlist Inc. ("Plaintiff" or "Netlist"), by and through its counsel of record, hereby applies for leave of Court pursuant to Local Civil Rule 79–5.2.2 to file under seal the following materials:

1. **Exhibit 1** to the Declaration of Raymond A. LaMagna filed in support of Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings (the "LaMagna Declaration") in full;
2. **Exhibit 2** to the LaMagna Declaration in full;
3. **Exhibit 3** to the LaMagna Declaration in full;
4. **Exhibit 4** to the LaMagna Declaration in full;
5. **Exhibit 7** to the LaMagna Declaration in full;
6. **Exhibit 10** to the LaMagna Declaration in full;
7. **Exhibit 13** to the LaMagna Declaration in full;
8. **Exhibit 14** to the LaMagna Declaration in full;
9. Specified language in **Exhibit 18** to the LaMagna Declaration (a proposed Second Amended Complaint) at page 3, lines 13-15; page 4, lines 7-15, 17-21; page 5, lines 3-6, 21-23; page 6, lines 4, 8-10, 15; and page 7, lines 8-12, 18-20;
10. Specified language in **Exhibit 19** to the LaMagna Declaration (a redline of the proposed Second Amended Complaint over the First Amended Complaint) at page 3, lines 13-15; page 4, lines 8-17, 19-24; page 5, lines 7-10, 25-27; page 6, lines 8, 12-15, 21; page 7, lines 17-21, 27; and page 8, lines 1-2;
11. Specified language in the **Declaration of C.K. Hong** at page 3, lines 13-14, 26-28; page 4, lines 1-2, 8-9, 16-19, 27-28; page 5, lines 6-8, 12-15, 17-19; and page 6, lines 5-10, 14-17; and
12. Specified language in **Netlist Inc.'s Opposition to Samsung's Motion for Judgment on the Pleadings** at page 1, lines 15-16; page 2, lines 10,

12-14; page 3, lines 1-9, 11-15; page 4, lines 12-15, 27; page 5, lines 1-2, 25-26; page 14, lines 14-15; page 16, lines 12-14; and page 18, lines 18, 22.

Netlist respectfully submits that there are compelling reasons to seal these materials, and the Court should exercise its discretion and seal this limited number of exhibits and redactions. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). "Every court has supervisory power over its own records and files. . . ." *Id.* Courts have "broad latitude to grant protective orders to prevent disclosure of many types of information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

Where a litigant seeks to seal documents in connection with a dispositive motion, the litigant must show "compelling reasons" to seal the records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178–1179 (9th Cir. 2006). In determining whether the "compelling reasons" standard is met, the Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179. Courts consider various factors in undertaking this balancing test, including the "'public interest in understanding the judicial process and whether disclosure of the material could result in improper use'" of the information. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citing *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir. 1990)).

"[A]lthough the common law right creates a strong presumption in favor of access, the presumption can be overcome by sufficiently important countervailing interests." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999); *see also In re Electronic Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (district court erred as a matter of law in failing to seal "'business information that might harm a litigant's competitive standing'" under the "compelling reasons" standard); *In re CongAgra Foods, Inc.*, 2014 WL 12577133, at *4 (C.D. Cal. Dec. 29, 2014) (sealing internal financial data concerning sales, internal company documents,

and internal information pertaining to the brand where it could put the company at competitive disadvantage); *Rich v. Shrader*, 2013 WL 6028305, at *3-*4 (S.D. Cal. Nov. 13, 2013) (finding compelling reasons to seal business documents and financial projections); *Bauer Bros. LLC v. Nike, Inc.*, 2018 WL 1899838, at *2 (S.D. Cal. May 24, 2012) (stating Nike demonstrated compelling reasons to seal "confidential business materials, including marketing strategies, sales and retailer data, product development plans [and] unused prototypes" where it posed harm with business competitors).

As discussed in the accompanying Declaration of Raymond A. LaMagna, there are compelling reasons to seal Exhibits 1, 2, 3, 4, 7, 10, 13, 14, and specified language in Exhibits 18 and 19, the Declaration of C.K. Hong, and Netlist Inc.'s Opposition to Samsung's Motion for Judgment on the Pleadings.

1. **Exhibit 1** is an email produced by Netlist with Bates No. NL107804. It includes correspondence between Samsung and Netlist regarding a proposal Netlist made to Samsung during negotiation of the Joint Development and License Agreement ultimately entered into between Samsung and Netlist (the "JDLA Agreement"), with the proposal attached. References to the JDLA itself were previously sealed by the Court (Dkt. 20); and material, substantive negotiation communications regarding it should be treated the same.
2. **Exhibit 2** is an email chain produced by Netlist with Bates No. NL107793. It includes correspondence between Samsung and Netlist regarding a term sheet Samsung sent to Netlist to negotiate the JDLA, with the term sheet attached. It is thus subject to seal for the same reasons as Exhibit. 1.
3. **Exhibit 3** is an email chain produced by Netlist with Bates No. NL045848. It includes correspondence between Samsung and Netlist regarding a draft of the JDLA Agreement, with the draft attached. It is thus subject to seal for the same reasons as Exhibits 1 and 2 above.
4. **Exhibit 4** is an email chain produced by Netlist with Bates No. NL045876. It includes correspondence between Samsung and Netlist regarding a draft of

the JDLA Agreement, with the draft attached. It is thus subject to seal for the same reasons as Exhibits 1, 2, and 3 above.

5. **Exhibit 7** is an email produced by Netlist with Bates No. NL000037. It discloses non-public, confidential sales and forecasts of sales of Samsung products under the JDLA Agreement, and attaches a presentation addressing the same subject, including disclosing confidential, non-public lists of customers, projects, and pricing for NAND and DRAM products.

6. **Exhibit 10** is an email chain produced by Netlist with Bates No. NL062754. It includes correspondence between Samsung and Netlist regarding Samsung products that Netlist was seeking to purchase pursuant to the JDLA Agreement, along with related non-public pricing data.

7. **Exhibit 13** is a decision from the Korean Tax Tribunal produced by Netlist with Bates No. NL108731. This decision is not made public under Korean law, and it discusses and discloses detailed aspects of the JDLA Agreement.

8. **Exhibit 14** is a non-public questionnaire response submitted by Samsung to the Korean Tax Tribunal, produced by Netlist with Bates No. NL107764. This questionnaire is not made public under Korean law, and it discusses and discloses detailed aspects of the sealed JDLA Agreement.

9. The specified language at page 3, lines 13-15; page 4, lines 7-15, 17-21; page 5, lines 3-6, 21-23; page 6, lines 4, 8-10, 15; and page 7, lines 8-12, 18-20 in **Exhibit 18** quotes from the documents sought to be sealed in paragraphs (1)-(8) above. A redacted copy of Exhibit 18 is being filed contemporaneously herewith.

10. The specified language at page 3, lines 13-15; page 4, lines 8-17, 19-24; page 5, lines 7-10, 25-27; page 6, lines 8, 12-15, 21; page 7, lines 17-21, 27; and page 8, lines 1-2 in **Exhibit 19** quotes from the documents sought to be sealed in paragraphs (1)-(8) above. A redacted copy of Exhibit 19 is being filed contemporaneously herewith.

11. The specified language at page 3, lines 13-14, 26-28; page 4, lines 1-2, 8-9, 16-19, 27-28; page 5, lines 6-8, 12-15, 17-19; and page 6, lines 5-10, 14-17 in the **Declaration of C.K. Hong** reveals the consideration Netlist originally sought from Samsung under the JDLA Agreement.  It further provides information about how the events at issue impacted Netlist, Inc., a public company, and includes information that has not yet been made public.  A redacted copy of the declaration is being filed contemporaneously herewith.

12. The specified language at page 1, lines 15-16; page 2, lines 10, 12-14; page 3, lines 1-9, 11-15; page 4, lines 12-15, 27; page 5, lines 1-2, 25-26; page 14, lines 14-15; page 16, lines 12-14; and page 18, lines 18, 22 in **Netlist Inc.'s Opposition to Samsung's Motion for Judgment on the Pleadings** quotes from the documents sought to be sealed in paragraphs (1)-(8) above.  A redacted copy of the Opposition is being filed contemporaneously herewith.

Exhibits 1, 2, 3, 4, 7, 10, and the specified language in the Declaration of C.K. Hong reflect sensitive and confidential information concerning a non-public license agreement and negotiations between Samsung and Netlist.  *See* LaMagna Decl. ¶¶ 6(a)-(f), (k), 7.  Exhibits 13 and 14 reflect non-public correspondence with and findings from the Korean Tax Tribunal, which also disclose details of the JDLA already sealed by the Court and not made public under Korean law.  These documents thus likewise reflect sensitive and confidential information concerning the JDLA Agreement.  *Id.* ¶¶ 6(g)-(h), 7.  The specified language in Exhibits 18 and 19, and Netlist Inc.'s Opposition to Samsung's Motion for Judgment on the Pleadings quote from Exhibits 1, 2, 3, 4, 7, 10, 13, and 14 sought to be sealed and detailed above.  *Id.* ¶¶ 6(i)-(j), (l), 7.

As noted above, references to the JDLA have already been sealed.  *See* Dkt. 20. This is because the JDLA Agreement and correspondence between the parties pursuant to that agreement, such as drafts thereof or pricing and product orders placed thereunder, contain highly sensitive commercial information, the disclosure of which

1  would reveal confidential information of both Samsung and Netlist.  If third parties
2  were privy to the specific provisions, or draft provisions, of the JDLA Agreement, it
3  could impact both parties' negotiations and relationships with third parties when
4  entering into other, similar agreements.  Those third parties would be given non-public
5  confidential knowledge of the terms on which Netlist, for example, would agree to
6  purchase products or enter into contracts of this type, which would severely and
7  irreparably erode Netlist's negotiating and bargaining power.
8        Courts have ruled that disclosure of this type of sensitive material may result in
9  competitive harm.  *See In re Electronic Arts*, 298 Fed. App'x at 569 (noting "pricing
10 terms, royalty rates, and guaranteed minimum payment terms" found in a license
11 agreement are the exact type of information that should be filed under seal); *Instant
12 Brands Inc. v. DSV Solutions*, Inc., 2020 WL 7872200, at *3 (C.D. Cal. June 11, 2020)
13 (granting motion to seal information that "depict[ed] the confidential agreement" at
14 issue and that "listed pricing figures and operative contractual terms that could benefit
15 competitors").
16       The particular harm that will befall the parties from a denial of this Application
17 clearly outweighs any legitimate interest for the public to access such sealed
18 documents.  Sealing the documents will simply serve to protect the confidential nature
19 of the information in the documents, but will not otherwise affect the public's ability to
20 monitor this action or its outcome.  Indeed, there is no particular benefit to the general
21 public to have access to the information that Plaintiff seeks to seal.
22       *    *    *
23       Netlist respectfully requests that the Court grant this Application, which is
24 carefully limited and narrowly tailored to only material that, if disclosed, could cause
25 the parties competitive harm.  More general statements and details relevant to the
26 matter submitted to the Court are provided in Netlist's public filing of its Opposition—
27 disclosure of more detailed non-public pricing and contracting terms is thus not
28 necessary.  This Application is supported by the Declaration of Raymond A. LaMagna,

a proposed order, which is narrowly tailored to seal only the proposed sealable material, slip-sheeted and full versions of Exhibits 1, 2, 3, 4, 7, 10, 13, and 14, and redacted and unredacted copies of Exhibits 18 and 19, the Declaration of C.K. Hong, and Netlist Inc.'s Opposition to Samsung's Motion for Judgment on the Pleadings.

Dated: July 26, 2021               GIBSON, DUNN & CRUTCHER LLP

                                   By:  */s/ Raymond A. LaMagna*
                                           Raymond A. LaMagna

                                   Attorneys for Defendants

# CERTIFICATE OF SERVICE

I, Raymond A. LaMagna, an attorney, hereby certify that **NETLIST INC.'S APPLICATION FOR LEAVE TO FILE UNDER SEAL,** was emailed to counsel for Samsung Electronics Inc., Ltd., on July 26, 2021.

By: _____*/s/ Raymond A. LaMagna*_____
Raymond A. LaMagna

Attorney for Plaintiff Netlist Inc.