1 | Ekwan E. Rhow - State Bar No. 174604
      erhow@birdmarella.com
2 | Marc E. Masters - State Bar No. 208375
      mmasters@birdmarella.com
3 | Kate S. Shin - State Bar No. 279867
      kshin@birdmarella.com
4 | Christopher J. Lee - State Bar No. 322140
      clee@birdmarella.com
5 | Jong-min Choi - State Bar No. 329474
      jmchoi@birdmarella.com
6 | BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
7 | 1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
8 | Telephone: (310) 201-2100
    Facsimile: (310) 201-2110

Attorneys for Defendant Samsung Electronics Co., Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| NETLIST INC., a Delaware corporation,,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD'S OPPOSITION TO PLAINTIFF NETLIST, INC.'S MOTION TO COMPEL DEPOSITIONS OF JUNG BAE LEE AND JOO SUN CHOI**<br><br>[Discovery Document: Referred to Magistrate Judge Autumn D. Spaeth] |

3735316.5

OPPOSITION TO MOTION TO COMPEL DEPOSITIONS

## I.  Introduction

The apex doctrine is a "judicially-created vehicle [which] seeks to limit the potential for discovery rules to serve as a tool for harassment." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Plaintiff Netlist Inc.'s ("Netlist") attempt to depose Jung Bae Lee and Joo Sun Choi – both corporate presidents who sit at the apex of multi-billion dollar businesses – is precisely the sort of conduct that the apex doctrine was created to prevent. As a threshold matter, Netlist's assertion that these depositions are critical to their case is belied by their half-hearted efforts to obtain them: despite being represented by capable counsel for over a year since the filing of this action, Netlist never even attempted to properly serve Mr. Choi – who is a resident of South Korea and no longer an employee of Defendant Samsung Electronics Co., Ltd. ("Samsung") – under the procedures of the Hague Evidence Convention. *Chevron Corp. v. Salazar*, 275 F.R.D. 422, 426 (S.D.N.Y. 2011) ("only a party may be compelled to give testimony pursuant to a simple notice.") (citing 7 Moore's Federal Practice § 30.03[2], at 30–18 (3d ed. 2010)).

Moreover, Netlist fails to demonstrate that either witness possesses unique first-hand, non-repetitive knowledge, or that it has exhausted less intrusive discovery methods. *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007). Instead, it simply asserts without legal basis that the court should skip over the relevant legal analysis because there is not much time left in fact discovery. This is largely an urgency manufactured by Netlist itself: despite filing this action in May 2020, Netlist did not notice the deposition of either apex witness – or indeed any witness at all – until June 8, 2021.

Deposition of apex witnesses carries "a tremendous potential for abuse or harassment." *Celerity Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). That potential is at its "apex" here, when such depositions are clearly being pursued in a half-hearted, hasty manner in order to gain an

improper strategic advantage. The Court should deny Netlist's motion.

## II. Mr. Choi is a Non-Party Foreign Resident, and Netlist Has Not Properly Served Him In Accordance With The Hague Evidence Convention.

Netlist's motion is misdirected as to Mr. Choi, a South Korean resident who is no longer an employee of Samsung, and who Netlist never properly subpoenaed through the Hague Evidence Convention. The Letter of Request process of the Hague Evidence Convention is the exclusive means through which discovery of testimony or documents may be compelled from ***non-party*** foreign residents not subject to the jurisdiction of U.S. Courts. *See, e.g., Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 254 F.Supp.2d 469, 474 (D. Del. 2003); *Metso Minerals Inc. v. Powerscreen Intern. Distribution Ltd.*, 2007 WL 1875560, at *3 (E.D.N.Y. June 25, 2007). South Korea is a state party to the Hague Evidence Convention, and requires that all requests for evidence be transmitted directly to the Korean Central Authority for approval.[1]

Instead, Netlist provided notice to Samsung, Mr. Choi's former employer. "[O]nly a party may be compelled to give testimony pursuant to a simple notice." *Chevron*, 275 F.R.D. at 426. As Netlist concedes, Mr. Choi is not an employee of Samsung but the President and CEO of Samsung Display ("Display")[2], a partial subsidiary of Samsung which is not a party to this action. Thus, Netlist's attempt to compel the deposition of Mr. Choi through mere notice to Samsung – not to Mr. Choi personally or even to Display – is an extralegal attempt to circumvent the

---

[1] *See* Declaration of Christopher J. Lee ("C. Lee Decl.") Exh. A, U.S. Department of State, *Judicial Assistance Country Information: South Korea*, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html, last retrieved July 27, 2021.

[2] *See* C. Lee Decl. Exh. B, Samsung Display, *Greetings from the CEO*, available at https://www.samsungdisplay.com/eng/intro/message.jsp, last retrieved July 27, 2021.

Hague Evidence Convention and South Korea's sovereign right to control service of foreign evidence requests within its borders. *See Ethypharm S.A. France v. Abbott Lab'ys*, 271 F.R.D. 82, 92 (D. Del. 2010).

The plaintiff in *Ethypharm* made exactly the same argument that Netlist is making here: that "litigating corporate parents are deemed to control the current employees of their subsidiaries and affiliates for deposition purposes[,]" and thus a party's ownership of a foreign subsidiary "obviates the necessity of seeking discovery [from employees of that subsidiary] under the protocols of the Hague Convention." 271 F.R.D. at 88. The *Ethypharm* Court squarely rejected that argument, holding that "Rule 30 of the Federal Rules of Civil Procedure does not require a party to litigation to produce persons for deposition who are merely alleged to be in the party's control . . . If the person sought for deposition is not within the subpoena power of a United States court, ***then procedures according to international treaty must be followed.***" *Id.* at 92 (emphasis added). Notably, the Court reached this conclusion despite the fact that the relevant entity was a wholly-owned foreign subsidiary – unlike Display, which is only partially owned by Samsung. Thus, Netlist's case for circumvention of the Hague Convention here is even weaker than that in *Ethypharm*, and fails for the same reasons.[3]

This case was filed over a year ago. If Netlist had a genuine need for Mr.

---

[3] ***Even if*** the Hague Convention were disregarded, and ***even if*** Netlist were seeking only document discovery from Display, it would still be required to demonstrate that Samsung's relationship with Display gives Samsung a legal right to obtain such documents on demand. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999); *see also Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986) (discovery from adversary's foreign subsidiary requires factual showing as to (1) the parent's ownership share in the subsidiary; (2) interlocking management structures; and (3) control exercised by the parent over the subsidiary's directors, officers, and employees). Netlist does not attempt to make even this lesser showing other than citing to the two words "controlling Company" buried in the midst of an auditor's report translated from the original Korean. (*See* Dkt. No. 84-7).

Choi's deposition, it has had more than enough time to serve him based on the proper procedures under the Hague Evidence Convention. Netlist chose not to do so, and the Court should not reward its lack of diligence by facilitating this last-minute attempt to make an end-run around both U.S. and international law.

### III. Netlist Has Not Demonstrated That The Apex Witnesses Have Unique Personal Knowledge

#### A. Legal Standard

"When determining whether to allow an apex deposition, courts often consider: (1) whether or not the high-level deponent has ***unique first-hand, non-repetitive knowledge*** of the facts at issue in the case; and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees." *WebSideStory*, 2007 WL 1120567, at *2 (emphasis added). Generalized statements that fail to show how the knowledge is "unique" to the witness fall short of satisfying the first factor. *Dauth v. Convenience Retailers, LLC*, 2013 WL 4103443, at *2 (N.D. Cal. Aug. 12, 2013). Even where an "apex" witness is subject to a deposition due to "personal knowledge of facts relevant to the lawsuit," that is limited to situations where that personal knowledge is unique to the witness. *Apple v. Samsung*, 282 F.R.D. at 263, *citing WebSideStory*, 2007 WL 1120567 at *2-3.

"Additionally, courts generally refuse to allow the immediate deposition of a high level executive . . . before the testimony of lower level employees with more intimate knowledge of the case has been secured." *Iacono v. Int'l Bus. Machines Corp.*, 2019 WL 2932638, at *3 (C.D. Cal. Jan. 8, 2019). Courts also evaluate the questions that the party seeking depositions claims to need answered to determine if the deposition is likely to yield "unique and relevant information" and is not sought for an improper purpose, such as "simply to embarrass." *See Rookaird v. BNSF Ry. Co.*, 2015 WL 11233096, at *2 (W.D. Wash. July 8, 2015).

### B. Both Witnesses Are Sufficiently Highly Placed To Trigger the Balancing Test Under the Apex Doctrine.

The apex doctrine calls for a balancing test between the apex status of a witness on the one hand, and "the materiality of the proposed deponent's knowledge of pertinent facts and the availability of other means for the party to access that knowledge" on the other. *Apple v. Samsung*, 282 F.R.D. at 263. Given the "tremendous potential for abuse or harassment" involved in deposing high-level executives, once a witness is shown to be near "the apex of some particular peak in the corporate mountain range," a showing of unique personal knowledge must be made. *Id.* There is no requirement that the proposed deponent be the highest-ranking officer, and because "abuse and harassment" would occur at the time of deposition, it is the proposed deponent's current position that is relevant to the inquiry. *See id.* at 264-65 (denying deposition of a current "President" of Samsung because he currently "inhabits a key, high-level position"). The fact that Samsung is a multinational conglomerate that encompasses many separate entities and thus has many high-level executives does not by itself deprive its executives of apex status. Notably, the court in *Apple v. Samsung* found that "Presidents" and "Executive Vice Presidents" at Samsung have sufficient apex status to trigger the balancing test against "unique personal knowledge." *Id.* at 265-67.

Assuming for the sake of argument that Samsung can somehow be compelled to produce Mr. Choi, a non-party and a non-employee, he indisputably sits at the apex of his own corporate mountain range with approximately 73,000 employees worldwide. He is President and Chief Executive Officer of Display, a corporation that, according to an exhibit submitted by Netlist, recorded approximately $6 billion in sales in the first quarter of 2021 alone. (Dkt. No. 84-7 at 23). It is difficult to conceive of a more "apex" witness.

On the other hand, Mr. Lee is the President and General Manager of Samsung's Memory Business. (Declaration of Jung Bae Lee ("Jung Bae Lee

Decl."), ¶ 2). In this capacity, Mr. Lee is the highest ranking officer of a $47-billion-dollar international enterprise which encompasses 30,000 employees in 33 offices across the world. (*Id.* ¶¶ 2, 3). His role in Samsung's corporate structure is only one level removed from the CEO. (*Id.* ¶ 2). Mr. Lee is clearly near the peak of his corporate ladder.

In sum, both of these individuals are either at or near the apex of their respective corporate peaks. Therefore, to justify their deposition despite the risk of abuse and harassment, Netlist must demonstrate two things: (1) that they possess unique personal knowledge; and (2) other discovery methods have been exhausted and no less intrusive means of discovery is practical. Netlist has done neither.

### C. Neither Witness Has Unique Personal Knowledge

Netlist has not shown that either Mr. Choi or Mr. Lee has unique first-hand, non-repetitive knowledge of the facts at issue in the case. While Netlist alleges that Mr. Lee was involved in the negotiation of the JDLA and some aspects of its performance, these generalized assertions are not sufficient to carry their burden of showing how Mr. Lee's knowledge is unique. *Dauth*, 2013 WL 4103443 at *2.

In his sworn declaration attached to this opposition, Mr. Lee testifies that he does not have any unique personal information relevant to this litigation that could not be obtained from others at Samsung. Jung Bae Lee Decl. ¶ 9. While Mr. Lee was included on some emails relating to the JDLA due to his position at the time, he had minimal involvement in the substance of the negotiation, and no involvement whatsoever regarding the terms at issue here (regarding supply or taxation). *Id*. ¶ 5. Mr. Lee was chosen to sign the JDLA due to his position at the time, but his decision to sign was based on information given to him by others in the company. *Id.* ¶ 6. After signing, he had no direct involvement with the sale of NAND and DRAM products to Netlist. *Id.* ¶ 8. While Mr. Lee recalls meeting with Netlist executives in April 2015, none of the relevant terms of the JDLA were discussed. *Id.* ¶ 7. In any case, Netlist has less intrusive means to discover what was discussed at

this meeting given that Indong Kim was also at the meeting, and will be produced for deposition in this matter. *Id.*

As for Mr. Choi, who in any case was never properly served, Netlist's argument relies entirely on a hearsay statement in a declaration provided by a Netlist executive, who claims that he heard from Neal Knuth (a Samsung employee) that Mr. Choi had decreased Netlist's allocation. (Dkt. 84-18 at ¶ 8). Netlist never alleges that it ever met or contacted Mr. Choi personally. And, to the extent that Mr. Choi was actually involved in this decision, relevant information could be obtained through the testimony of Mr. Knuth, who is being deposed in this matter.

In short, while Mr. Lee and/or Mr. Choi may have some knowledge of relevant facts, Netlist has not carried its burden to show that such knowledge is unique or non-repeatable. *WebSideStory,* 2007 WL 1120567, at *2.[4]

### D.   Other Discovery Methods Have Not Been Exhausted

Moreover, other less intrusive discovery methods have not been exhausted in this case. Netlist has noticed depositions for eight other witnesses, all of which Samsung has offered to produce. Netlist offers no specific information as to what the apex witnesses know that these eight deponents would not.

Further, Netlist's argument that the apex witnesses must be produced because of purportedly inadequate interrogatory responses from Samsung is factually untrue and in any event, irrelevant here. Samsung has separately identified four other people who were involved in and have knowledge of the negotiations of the JDLA

---

[4] Netlist argues that the state of mind of the apex witnesses is relevant, but this is a red herring. What matters here is whether Samsung breached the two operative provisions of the JDLA: the supply provision of Section 6.2, and the taxation provision of Sections 3.1-2. This is not a fraud case that turns on intent. Even assuming *in arguendo* that the apex witnesses were involved in the conduct that resulted in the purported breaches, the state of mind of an individual executive is not relevant in determining the factual question of whether Samsung breached the JDLA or not.

3735316.5

8

OPPOSITION TO MOTION TO COMPEL DEPOSITIONS

in its supplemental response to Netlist's Interrogatory No. 1, none of whom was Mr. Lee.[5] Samsung has given a detailed response explaining the reasons that some of Netlist's orders were not accepted in its supplemental response to Netlist's Interrogatory No. 2.[6] Moreover, even if Samsung had been uncooperative with written discovery, that does not support granting improper apex witness depositions. The correct remedy would be a motion to compel. *Hayes Healthcare Servs., LLC v. Meacham*, 2019 WL 7708240, at *2 (S.D. Fla. July 1, 2019) ("Defendants' remedy when presented with inadequate discovery responses is not to seek the depositions of apex witnesses, but to avail themselves of legal remedies to acquire the discovery to which they may be entitled."). If Netlist believes that Samsung's responses to its written discovery were inadequate, then it can move to compel responses, as it has already done on several occasions. In effect, Netlist asks the Court to sanction Samsung for purported misbehavior by punishing a senior executive (and another senior executive who is not even a Samsung employee) with a deposition that would otherwise be improper. No legal basis exists for such a sanction.

Further, the amount of time remaining until the close of fact discovery is immaterial here, particularly given that the situation is Netlist's own making. Netlist has not been, as it claims, exceedingly diligent: it noticed depositions for the very first time on June 8, 2021[7], nearly a year after this action was filed. If these depositions were so important for Netlist, it could have noticed them earlier – but it did not. If the deposition of Mr. Choi was central to its case, Netlist had months to serve him properly under the Hague Evidence Convention – it did not. The Court should not permit Netlist to capitalize on its own delay by deposing apex witnesses

---

[5] C. Lee Decl. Exh. C

[6] C. Lee Decl. Exh. D

[7] C. Lee Decl. Exh. E

without exhausting less intrusive methods. *See Dauth*, 2013 WL 4103443, at *2 (denying request to depose an apex witness, but holding that it may be granted if the deposition of other witnesses proves insufficient).

Netlist's lack of diligence in attempting to obtain the deposition of these witnesses, coupled with its inability to articulate what unique information is sought that cannot be obtained from other depositions or document production, implies an improper purpose to gain a strategic advantage in this litigation by harassing Samsung's senior executives (including a former employee). *See Rookaird*, 2015 WL 11233096, at *2. If, after exhausting less intrusive discovery methods such as taking the deposition of other witnesses, Netlist identifies specific information that leads it to believe that an apex deposition would be necessary as to Mr. Lee, then the court may potentially give it leave to revisit this motion then. As of now, however, Netlist comes nowhere near satisfying the heavy burden imposed upon Parties seeking deposition of apex witnesses.

## IV. Conclusion

For the foregoing reasons, Samsung respectfully requests that the Court deny Netlist's motion to compel depositions. Mr. Choi was never properly served with a lawful subpoena, and neither individual has been demonstrated to have "unique, first-hand, non-repeatable knowledge." *WebSideStory*, 2007 WL 1120567 at *2.

DATED: July 27, 2021

Respectfully submitted,

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: ___*/s/ Ekwan E. Rhow*___
Ekwan E. Rhow
Attorneys for Defendant Samsung Electronics Co., Ltd.