Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
  mmasters@birdmarella.com
Kate S. Shin - State Bar No. 279867
  kshin@birdmarella.com
Christopher J. Lee - State Bar No. 322140
  clee@birdmarella.com
Jong-min Choi - State Bar No. 329474
  jmchoi@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,,<br><br>    Defendant. | CASE NO. 8:20-cv-00993-MCS-DFM<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:   August 16. 2021<br>Time:  9:00 am<br>Crtrm : 7C<br><br>Assigned to Hon. Mark C. Scarsi |

3737354.3

## I. INTRODUCTION

Samsung is entitled to judgment on the pleadings for the following reasons, despite Netlist's misleading and irrelevant submission of inadmissible evidence:

*First*, the Joint Development and License Agreement ("JDLA") is not a long term supply agreement. The terms of the JDLA make clear the agreement is for joint development of technologies and cross-licensing of the parties' intellectual property – as the title of the agreement plainly states. The terms of the JDLA are typical of a joint development contract, not a supply contract, including: Product Specification and Development Milestones, a Statement of Work, a Schedule for Standardization and Productization, payment of non-recurring engineering fees, and incidental supply of components related to the joint development work.

Section 6.2 of the JDLA does not require Samsung to supply all of Netlist's demand for NAND and DRAM for its third party sales business. In fact, it has *no quantity term* whatsoever. Rather, Section 6.2 only sets a *price term* for components supplied. Because there is no quantity term, Section 6.2 cannot require Samsung to sell any amount of product. Thus, under applicable law, Section 6.2 cannot transform the JDLA into a long term supply agreement. It simply lacks the material terms of either a requirements contract or an options contract. Netlist relies on inapposite law and irrelevant, misleading, and inadmissible declarations and exhibits in arguing otherwise. Moreover, Netlist cannot claim consequential damages because the express terms of the JDLA preclude that. And New York law does not permit Netlist to revive its contractually-waived consequential damages claim by alleging intentional breach.

*Second*, Netlist fails to allege Samsung breached the JDLA by withholding taxes. Netlist argues its successful appeal in the Korean tax court shows a breach, but Netlist's ultimate success in overturning the tax assessment on appeal does not show Samsung's withholding and payment to the taxing authority was improper or a breach of the JDLA. And, as Netlist concedes, the taxing authority refunded the withholding to Netlist, so the withholding cannot be a "material" breach required for termination.

*Third*, Netlist cannot avoid the effect of its own actions in continuing the contract for years after the alleged breach, then belatedly seeking to terminate in 2020.

## II. ARGUMENT

### A. Samsung Had No Obligation To Supply Netlist

Samsung is entitled to judgment on the pleadings on Netlist's claim for breach of a supply agreement because the JDLA is not a supply agreement and does not obligate Samsung to supply Netlist with product for resale to third parties.

#### 1. Plaintiff's Proffered Extrinsic Evidence Should Be Ignored.

Netlist improperly submitted declarations and a misleading sample of discovery documents in response to Samsung's motion, which seeks judgment based on the pleadings, including the contract referenced therein. Samsung objects to the Hong and LaMagna Declarations in their entirety on both substantive and procedural grounds.

First, Netlist's submission of extrinsic evidence to interpret the JDLA is improper, as both parties agree its terms are unambiguous. Under New York law, which governs the JDLA pursuant to the choice of law provision therein, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (1992). "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002).

"Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide." *Id.*; *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004) ("Our role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract. If that intent is discernable from the plain meaning of the language of the contract, there is no need to look further"); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (when contract language is unambiguous on its face, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."). And "extrinsic and parol

evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Intercontinental Plan., Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 379 (1969).

Second, the Court should not consider the declarations and exhibits submitted by Netlist in ruling on this motion as a matter of procedure. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (holding erroneous for trial court to consider declarations in connection with motion for judgment on the pleadings); *Thomas v. Fin. Recovery Servs.*, No. EDCV 12-1339 PSG OPX, 2013 WL 387968, at *2 (C.D. Cal. Jan. 31, 2013) (refusing to consider declaration attached to answer on motion for judgment on pleadings).

Accordingly, the Court should disregard all the irrelevant and misleading extrinsic evidence submitted by Netlist on the issue of contract interpretation, and interpret the JDLA according to its plain written terms.

### B. The JDLA Is Not A Supply Contract

Netlist argues the phrase "will supply" in Section 6.2 makes the JDLA a long-term supply contract for third party sales, even though the contract lacks the material terms necessary to make an enforceable supply contract, including an agreement on the *quantity* to be purchased and sold. Netlist's attempt to transform the JDLA into a supply contract is based on Netlist's misinterpretation of a single phrase in a single provision taken out of context. Contracts, however, must be read as a whole. *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003) ("A written contract 'will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose. ... The meaning of a writing may be distorted where undue force is given to single words or phrases"). When read as a whole, the JDLA simply cannot be construed as a supply contract because there is *no quantity term* (see below).

Netlist also argues Samsung's course of performance shows the parties intended the JDLA to be a supply contract. But even were such extrinsic evidence admissible to

construe an unambiguous contract term on a motion for judgment on the pleadings, and it is not, Samsung's performance shows no such thing. Samsung had the right, but *not the obligation*, to sell product to Netlist. The only obligation imposed by Section 6.2 was that Samsung sell products to Netlist *at competitive prices*, such that Netlist was not disfavored relative to other customers purchasing similar volumes of similar products.

In short, Section 6.2 does not create a valid supply contract because it lacks a *quantity term* agreed by the parties as to purchases and sales. Netlist attempts to cure this defect by arguing the JDLA is a requirements contract or an options contract, and by asking the Court to imply a quantity term where none exists. None of these arguments, however, are supported by governing New York law.

### 1. The JDLA Is Not A Requirements Contract

Recognizing that Section 6.2 does not have a definite quantity term, Netlist argues this provision may be enforced as a requirements contract, effectively asking the Court to imply a requirements term into the JDLA where none is stated. Netlist's argument fails because the JDLA does not include a promise by Netlist to buy all of the chipsets it requires from Samsung, and indeed expressly does *not* require Netlist to purchase any chipsets from Samsung at all. (*See also* JDLA § 6.4: "Nothing in this Agreement shall be deemed to require either Party to purchase any products from the other Party.")

There cannot be a valid requirements contract without agreement as to price, identity of the goods sold, quantity, delivery, and time and method of payment. *Goaltex Corp. v. Ass'n for Blind & Visually Impaired,* 979 N.Y.S.2d 481, 488 (2014) (finding no requirements contract where such terms did not exist). A majority of jurisdictions, including New York, require the buyer to purchase its requirements *exclusively* from the seller for an indefinite quantity term to be made definite as a requirements term. *Embedded Moments, Inc. v. Int'l Silver Co.*, 648 F. Supp. 187, 192 n. 3 (E.D.N.Y. 1986) ("Absent [the promise of exclusivity], the agreement is an indefinite quantities contract, where without more, the buyer's promise is illusory and the contract unenforceable

against the seller.") (internal citations and quotation marks omitted); *see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prod., Inc.*, 212 F.3d 373, 377 (7th Cir. 2000) ("In many American jurisdictions . . . a requirements contract exists only when the contract . . . obligates the buyer to buy all of its requirements for goods of a particular kind from the seller.") (internal quotation marks omitted); *Merritt-Campbell, Inc. v. RxP Prod., Inc.*, 164 F.3d 957, 963 (5th Cir. 1999) ("An essential element of a requirements contract is the promise of the buyer to purchase exclusively from the seller either the buyer's entire requirements or up to a specified amount."). Accordingly, under New York law, the Court cannot find a requirements contract unless there is exclusivity, and no such exclusivity exists under the JDLA.

Ignoring governing New York law, Netlist cites inapposite cases from other jurisdictions holding exclusivity is not an essential element of a requirements contract. But even in those non-binding cases, there can be no valid requirements contract absent a commitment from the buyer to purchase some *minimum amount or percentage* of the buyer's requirements. *Amber Chem., Inc. v. Reilly Indus., Inc.*, No. 106CV06090OWWSMS, 2007 WL 512410, at *8 (E.D. Cal. Feb. 14, 2007) ("It is not essential that a requirements contract containing *a minimum purchase quantity* also be for exclusive dealings.") (emphasis added); *Hoover's Hatchery, Inc. v. Utgaard*, 447 N.W.2d 684, 688 (Iowa Ct. App. 1989) (the exclusivity requirement "can be satisfied if the buyer contracts to purchase up to a *specified amount exclusively* from the seller.") (emphasis added). No such minimum exists under the JDLA.

Netlist erroneously argues the Court may imply exclusivity if the term is missing from the contract. But that argument mischaracterizes the governing law. For example, Netlist cites *Edison Elec. v. Thacher*, 229 N.Y. 172, 176 (1920), for the proposition that "courts regularly infer exclusivity based on the circumstances surrounding the parties' dealings." But the contract at issue in *Edison* included provisions that expressed the parties' intent to enter into a requirements contract in that case, including that the "Contractor agreed to furnish all materials and labor necessary . . ." and that the

"Company will notify the Contractor, as far as possible in advance of any probable requirements of such manhole castings, in order to aid the Contractor in maintaining sufficient supply of same to meet the orders of the Company." *Id*, 229 N.Y. at 175. There is no similar language in the JDLA from which the Court can reasonably infer the parties intended the JDLA to be a requirements contract.

### 2. The JDLA Is Not An Option Contract.

Alternatively, Netlist contends Section 6.2 creates a buyer's option. Not so. An option contract is not exempt from the rule that a valid and enforceable contract must state an *ascertainable quantity*. *See* N.Y.U.C.C. § 2-311 (an option contract must still be "otherwise sufficiently definite"); *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 590-91 (1999) (an option contract requires definiteness).

A contract must have "manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus.*, 93 N.Y.2d at 589. A contract of sale must be definite as to the quantity of the goods sold, or provide fixed means by which the quantities can be determined. *Mar-Jon Mach. & Tool Co. v. Eastman Kodak Co.*, 534 N.Y.S.2d 47, 48 (1988). An option to buy "all," or at least, "an ascertainable minimum," of a buyer's requirements could supply the requisite definiteness. *Heyman Cohen & Sons v. M. Lurie Woolen Co.*, 232 N.Y. 112, 115 (1921) (option contract not invalid for indefinite quantity term because "[t]he privilege to order more is coupled with the promise and obligation to accept a stated minimum"). Here, Section 6.2 does not have any quantity term, let alone a *definite* quantity term or even a "stated minimum," and any such term cannot be read into the contract because there is no basis to do so. Thus, without any ascertainable quantity, the JDLA cannot be an option contract. Even if Netlist were correct that an option contract is "an agreement to hold an offer open," Section 6.2 is not an offer at all because it is *indefinite* as to quantity.

### 3. The Court May Not Supply A Missing Quantity Term

Samsung had no obligation to supply Netlist "on request" because Section 6.2

contains no agreement on the amount of product to be supplied and the Court may not imply such a term. Netlist argues Samsung waived this argument by failing to plead the Statute of Frauds, but this is not a Statute of Frauds argument. Netlist is not seeking to enforce an oral supply agreement. Accordingly, *Rosenfeld v. Basquiat*, 78 F.3d 84, 93 (2d Cir. 1996), and the other cited cases are inapposite.

Acknowledging the hole at the center of its theory, Netlist asks the Court to *supply the missing quantity term*. But New York law is clear that "courts may not by construction add or excise terms . . . and thereby make a new contract for the parties under the guise of interpreting the writing." *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001). This obligation to enforce the contract as written applies "with even greater force in commercial contracts negotiated at arm's length by sophisticated, counseled businesspeople." *Ashwood Capital, Inv. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (2012). Under these circumstances, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004). Thus, the Court may not imply a quantity term here.

### 4. The JDLA Does Not Allow Consequential Damages

Samsung showed in its motion that (1) the JDLA precludes recovery of consequential damages but (2) Netlist's complaint seeks consequential damages for breach of contract. Netlist concedes both points, and also does not argue the exclusion of consequential damages in the JDLA is unconscionable. Instead, Netlist seeks to avoid the effect of this express provision of the JDLA by alleging intentional breach of contract, but that does not suffice under New York law. Netlist erroneously cites *McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1198 n. 9 (2d Cir. 1995), in support of its argument that allegations of intentional breach suffice to avoid the exclusion of consequential damages, but that is not the holding of the case. Rather, as the court wrote in footnote 9, "We need *not* resolve the source or viability of the bad faith exception, however, because we find that NYSEG fails to raise a genuine

issue of material fact as to McNally's bad faith under any theory." *Id.* (emphasis added).

New York law requires more than allegations of intentional breach to avoid the exclusion. In *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 438–39 (1994), the Court of Appeals of New York interpreted an exclusion of consequential damages clause to mean "the parties intended to narrowly exclude from protection truly culpable, harmful conduct, not merely intentional nonperformance of the Agreement motivated by financial self-interest." This is consistent with the Court of Appeals' holding in *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554 (1992), that the conduct necessary "to pierce an agreed-upon limitation of liability in a commercial contract, must 'smack[ ] of intentional wrongdoing.'"

Accordingly, Netlist's allegations that Samsung intentionally breached the contract do not render the exclusion clause unenforceable on public policy grounds, and the request for consequential damages should be stricken.

### C. Samsung Did Not Breach The JDLA By Withholding Taxes

Samsung is also entitled to judgment on the pleadings on Netlist's claim that Samsung breached the JDLA by withholding taxes from the NRE fee, as the JDLA permits Samsung to withhold for taxes. Netlist asks the Court to take judicial notice of its successful appeal to the Korean tax court in its motion.[1] If the Court takes notice of the decision, the Court will see the Korean tax court did not rule on whether Samsung's withholding was proper, but only on whether the tax was owed. Indeed, Netlist's successful tax appeal ensured Netlist received a full refund, plus interest, thus mitigating any damage claim that Netlist could have asserted for the alleged breach.

### D. Netlist's Declaratory Relief Claim Fails

Netlist seeks a declaration the JDLA be terminated based on the alleged

---

[1] Samsung did not mention the Korean tax court decision because it was beyond the scope of the pleadings. Samsung was not a party to the tax appeal, so did not litigate or lose in that proceeding.

8

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

breaches, but no breach has been pleaded, and its request to terminate years after the alleged breach is barred by the doctrines of waiver and election of remedies.

### 1. Netlist Has Not Alleged A Material Breach Of The JDLA

Under the express terms of the JDLA, Netlist can terminate the contract only if there is a *material* breach that is not cured following notice. Even assuming, *arguendo*, the allegations in its complaint are true, Netlist has no right to a declaration that it is entitled to terminate.

First, Netlist has not alleged a breach of any supply obligation because no such duty exists for the reasons argued in Section II.B. above.

Second, Netlist has not alleged any material breach in connection with the tax withholding. Even accepting as true (which they are not) the allegations Samsung should not have withheld and did not cooperate with Netlist to obtain a refund, Netlist received a full refund, including interest, so these allegations cannot constitute a *material* breach sufficient to terminate the JDLA. *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) ("Whether a failure to perform constitutes a 'material breach' turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract."). For a breach to be material, it must "go to the root of the agreement between the parties." *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989). That clearly is not the case here.

### 2. Termination Is Barred By Doctrine Of Election Of Remedies

Even if Netlist had alleged a viable breach claim, which it did not, it would be barred from terminating the JDLA because it waited years to assert the right, all the while accepting benefits from the contract. Whether called election of remedies or waiver, Netlist's decision to continue performance bars its attempt to terminate.

Netlist alleges Samsung improperly withheld taxes shortly after entering into the JDLA in 2015, and that it failed to supply products requested in 2018. Yet Netlist chose to continue its performance under the JDLA until 2020, when it purported to

3737354.3

9

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

terminate the contract. This is exactly what the doctrine of election of remedies precludes. "When a party materially breaches a contract, the non-breaching party must choose between two remedies: it can elect to terminate the contract or continue it. If it chooses the latter course, it loses its right to terminate the contract because of the default." *Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S.2d 147, 156 (2007); *see ESPN, Inc. v. Off. of Com'r of Baseball*, 76 F. Supp. 2d 383, 391-92 (S.D.N.Y. 1999) ("allowing [non-breaching party] to now terminate the contract based on breaches that occurred almost two years ago would violate important principles of contract law[.]").

Netlist argues the "no waiver" provision of the JDLA excuses its failure to seek termination. But a "standard 'no-waiver' provision does not immunize or excuse parties from the requirements and consequences of election." *ESPN*, 76 F. Supp. 2d at 390.[2]

## III.   CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court grant its motion for judgment on the pleadings in full.

DATED:  August 2, 2021              Bird, Marella, Boxer, Wolpert, Nessim,
                                    Drooks, Lincenberg & Rhow, P.C.


                                    By:      */s/ Ekwan E. Rhow*
                                             Ekwan E. Rhow
                                    Attorneys for Defendant Samsung
                                    Electronics Co., Ltd.

---

[2] Netlist argues Samsung is barred from asserting election of remedies because it did not plead it separately. But the Court may consider the election of remedies defense on this motion since Netlist was not prejudiced in its ability to respond. *Lockheed Martin Transportation Sec. Sols. v. MTA Cap. Constr. Co.*, No. 09 CIV. 4077 (PGG), 2014 WL 12560686, at *19 (S.D.N.Y. Sept. 16, 2014) (court considered election of remedies defense first raised in summary judgment motion).