```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)



NETLIST, INC,                   ) CASE NO: 8:20-CV-00993-MCS-DFMx
                                )
              Plaintiff,        )            CIVIL
                                )
      vs.                       )       Santa Ana, California
                                )
SAMSUNG ELECTRONICS CO, LTD,    )     Thursday, June 10, 2021
                                )
              Defendant.        )
_____)


                  INFORMAL DISCOVERY CONFERENCE

          BEFORE THE HONORABLE DOUGLAS F. McCORMICK,
               UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:          JASON C. LO, ESQ.
                        RAYMOND A. LaMAGNA, ESQ.
                        Gibson Dunn & Crutcher, LLP
                        333 S. Grand Ave.
                        Los Angeles, CA 90071


For Defendant:          JUMIN (CHRIS) LEE, ESQ.
                        Bird Marella Boxer, et al.
                        1875 Century Park East
                        23rd Floor
                        Los Angeles, CA 90067


Court Reporter:         Recorded; AT&T; digital

Courtroom Deputy:       Nancy Boehme

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

1              <u>Santa Ana, California; Thursday, June 10, 2021</u>

2                        <u>(Remote Appearances)</u>

3                          **(Call to Order)**

4         **THE CLERK:**  We're on Case SA CV 20-00993.  It's

5    *Netlist, Inc. versus Samsung Electronics.*

6         Counsel, your appearances, please.

7         **MR. LaMAGNA:**  Hi, this is Raymond LaMagna of Gibson

8    Dunn and Crutcher on behalf of Plaintiff Netlist, Inc. and I'm

9    joined by my colleague Jason Lo.

10        **MR. LEE:**  Good morning, Your Honor.  This is Chris

11   Lee of Bird Marella for Defendant Samsung.

12        **THE COURT:**  Okay.  Counsel, this is Judge McCormick.

13   I received both sides' letters yesterday and I asked Ms. Boehme

14   to -- I think after I read your letters yesterday and thought

15   about them, I asked her to send you a resource that might help

16   us as we work through some of these issues going forward.  I

17   found it helpful in the past when things would come up.

18        I've actually used it myself to raise issues with the

19   parties and -- but I took a step forward today and actually

20   shared it with you.  And I've never done that before but before

21   I did, I actually just kind of quickly went through it and

22   highlighted some things that I thought might be helpful for us

23   to touch on or at least think about as we work through these

24   issues.

25        But before we get to that, let me get my notes from

1   my review of your letters.  I think you've identified three or

2   four discrete issues that have -- I don't want to say "ripen"

3   but at least you've told me a little bit about them and we

4   could discuss those maybe first.

5          And those are disputes about RFP 11 and Interrogatory

6   Number 8, Interrogatory Number 2, RFA Number 2 and perhaps RFA

7   Numbers 4 and 5 although maybe they're not quite -- it isn't

8   quite completely baked yet.  So if it's okay with you, I'd like

9   to start with those but tell me if there's something else we

10  should discuss first.  Mr. LaMagna?

11         **MR. LaMAGNA:**  No, that's fine, Your Honor.  We can

12  proceed as you suggest.

13         **THE COURT:**  Good to proceed.  Mr. Lee?

14         **MR. LEE:**  That's good.

15         **THE COURT:**  So I looked at RFP 11 and Interrogatory

16  Number 8 and they relate to some more topics as you guys

17  grouped them together and that is to identify the buyers by

18  dollar amounts, quantities, prices, et cetera of these NAND and

19  DRAM products and I understand Samsung's objections and

20  concerns about the burden and the competitive standing issues

21  involved here.

22         And they're, I think more -- actually critically the

23  basis for those requests and I've looked at Mr. LaMagna's

24  response or -- I guess, not -- "response" is the wrong word.

25  They kind of came in at the same time -- his assertion that the

1    requests are implicated by the agreement's competitive price

2    provision.

3              So I can give you a ruling which is based on the

4    paragraph or two you've given me.  We can discuss it and I can

5    give you a ruling which probably what I actually meant to say

6    the first time.  We can discuss it and I can give you guys a

7    ruling.  We could discuss it and we could talk about whether a

8    ruling is appropriate or whether you think there's further

9    briefing necessary.

10             Mr. LaMagna, do you want talk first?

11             **MR. LaMAGNA:**  Sure, Your Honor, absolutely.  So I

12   want to address just a couple of points that were raised in

13   opposing counsel's letter.  First of all, I'm -- I see the

14   words that appear in the short paragraph that they have

15   responded on this that this would damage their competitive

16   standing.  I don't quite understand what that actually means or

17   how that would be possible.  We're talking about a disclosure

18   subject to an attorneys'-eyes-only protective order or our

19   agreement until there's a protective order entered.  I just

20   don't understand what -- I don't think that's a cognizable

21   objection.

22             We also note that there's -- they made a burden

23   objection here in the letter to Your Honor.  I'm not sure that

24   that's actually in their discovery responses but besides that,

25   I don't think we have an actual showing here as to what it is

1   that's burdensome.

2        To be clear, we're only asking for, shall we say,

3   "summary data."  This is data that they probably have a

4   database someplace of sales or of their customers that they

5   could do an Excel chart to print this out.  They could use that

6   Excel chart in the interrogatory response to respond to us and

7   say, see the chart under Rule 33(b), for example.

8        And our understanding is that there isn't actually a

9   lot of customers in number for these products that are direct

10  customers of Samsung.  For smaller companies, Samsung deals

11  through authorized distributors and there may be a half dozen

12  or ten of those throughout the world.  There's also maybe a

13  couple of dozen large customers, Amazon, Apple, et cetera, that

14  they deal with.

15       But unlike a customer like, for example, Amazon or

16  Apple that has thousands, millions of customers around the

17  world, because this is a wholesale product -- memory product

18  that is being distributed specifically to large manufacturers

19  -- smaller companies don't buy directly from Samsung -- I don't

20  think there is a large universe here of customers.

21       Now, if Mr. Lee wants to correct me and say, we have

22  10,000 customers and that's why this is burdensome or we don't

23  have a database that has all this collected that we could

24  simply run an Excel query, then that's a discussion we can have

25  but I don't have any facts here in their opposition to suggest

1    that this is not something that could be readily done.

2         As to the relevance, as we've noted, not only do we

3    have a breach claim where the claim itself talks about a

4    comparison point with other customers making it necessary for

5    us to know what the pricing is to other customers in order to

6    put a test to whether or not there's been a breach, it's

7    important that we know who those customers are specifically by

8    name because the Clause 6.2 in the contract says that it has to

9    be customers purchasing similar volumes and products.

10        In other words, we don't contend that we're as big as

11   Apple.  So if Apple gets better pricing than Netlist, of

12   course, we would not content that that would be a breach.  So

13   we need to be able to put the customers into, shall we say --

14   or have our expert, I suppose, put the customers into tiers in

15   order to evaluate whether or not there has been a breach of

16   this clause.  That's why we would need to know the identity of

17   the customers.

18        In addition, if there's been disparate treatment as

19   we noted, we have a claim not just for breach but also a claim

20   for a declaration that there was -- that the termination was

21   appropriate and materiality there is, of course, an issue --

22   the materiality of the breach.  And a factor in that is going

23   to be whether or not the breach is willful.

24        So I think that the potential for disparate treatment

25   here for Netlist versus other customers is an issue that we

7

1    need to inquire into in order to evaluate the D.J. Claim.  And

2    I'll --

3           THE COURT:  Mr. LaMagna, you mentioned the protective

4    order.  What's the status of the protective order?  Where do we

5    stand with that?

6           MR. LaMAGNA:  We had sent over a draft to opposing

7    counsel earlier this week and we have not heard back.

8           THE COURT:  Okay.

9           MR. LEE:  That's right, Your Honor.

10          THE COURT:  Mr. Lee, go ahead.

11          MR. LEE:  Your Honor, I want to address this issue by

12   first trying to contextualizing what kind of information that

13   we're talking about here.  Netlist wants to know the identity,

14   the quantity and pricing for every single one of Samsung's NAND

15   and DRAM customers.

16          Now, as Your Honor knows, Samsung is one of the

17   world's largest producers of these products and, honestly, this

18   sort of information would be probably incredibly sensitive and

19   possibly one of the most closely kept secrets internally in the

20   company because it's obvious the company will have different

21   prices for different customers and that information will be

22   incredibly sensitive.

23          So I think the idea here is that, of course, we do

24   have a stipulated protective order which we plan to respond to

25   soon but there has to be some kind of baseline level of

1  relevance to -- for Samsung to produce this incredibly

2  sensitive information even if it is going to be under any

3  conditions and that we would contend that that baseline level

4  of relevance does not exist here.

5          Let me respond to Mr. LaMagna's argument in a couple

6  of ways.  First of all, he mentioned the comparative price

7  provision.  Netlist is not alleging in their complaint that

8  Samsung overcharged them or failed to provide products at a

9  competitive price.  They're just alleging that they've been

10  undersupplied.  So the competitive price aspect of Section 6.2

11  is not relevant at all to their claims.

12          Second, they mentioned intent.  Again, I don't see

13  how intent is relevant here at all.  If Samsung did have an

14  obligation to supply Netlist with all of these products that

15  they require, then I think it's pretty clear that it would be a

16  material breach if Samsung failed to meet that obligation.  But

17  we contend that it doesn't have that obligation but I don't

18  think intent really plays a large part in that analysis.

19          So I simply don't see the need or the relevance of

20  this information for Netlist and to the extent that Your Honor

21  believes that there is some baseline level of merit to these

22  demands, I would say that I think this is not an issue that is

23  appropriate for ruling at an IDC and as Mr. LaMagna has said,

24  it is a fact-based analysis.  We would want to provide specific

25  facts in briefing about how burdensome it is to get this

1    information and how sensitive this information is.

2             So we would want this to be fully briefed in a

3    noticed motion, the decision to which would also be appealable.

4             **THE COURT:**  Okay.  We're not going to have a noticed

5    motion in this case, guys.  We're not going to do that.  I

6    mean, I think I was clear about that last time, that first of

7    all, you don't have a right to a noticed motion, due process or

8    otherwise.  So I decide whether we're going to have noticed

9    motions in this case.

10            I'll -- so don't rattle the noticed motion saber with

11   me, Mr. Lee, because it won't get you anywhere.  I'm now going

12   to run the show here and I'll decide how these issues get

13   presented.

14            Now, if you want to present the issue to me in a

15   formal way, we'll brief it and we'll get that done but I'm not

16   going to go through the whole Local Rule 37 process.  I don't

17   find it helpful and I don't think it's consistent with Rule 1.

18   And if and when the Court wants to get rid of Local Rule 37, I

19   would support getting rid of it.  So let's just abandon that as

20   a tactic going forward.

21            If you do need time, Mr. Lee, or you do want to place

22   in front of me some information about this burden and you do

23   want to discuss the -- and you do want to put in front of me

24   some information about why this isn't relevant and you do -- or

25   I guess maybe the better discussion would be, why the

1  proportionality of this information is not warranted by the

2  relevance of the claims and defenses.

3          Let's discuss a briefing schedule for that because

4  I'd like to get this teed up pretty quickly.  I think it's

5  something that can be done pretty quickly.  So we can do it one

6  of two ways.  Either you guys can go offline and say, hey, we

7  can get a brief to the judge by X date and we can get a brief

8  to the judge by Y date or we can talk about it right now.  What

9  do you think sounds better?

10         And let me put a pin in that.  Maybe we should wait

11  and see how many of these issues we have because there may be

12  other of these written discovery requests which we have to put

13  in this same bucket.

14         **MR. LaMAGNA:**  Sure.  Why don't we circle back to this

15  point at the end of our conversation in case there's anything

16  else that we want to put in this bucket?

17         **THE COURT:**  I don't know who was speaking but you

18  broke up a little bit.

19         **MR. LaMAGNA:**  Sorry, Your Honor.  This is Mr. LaMagna

20  for Netlist.  Why don't we circle back at the end of the

21  conversation in case there happens to be, as you point out, any

22  other items that require updating the Court in writing?

23         **THE COURT:**  Okay, let's do that.  Let's move then to

24  Interrogatory Number 2.  And I've reviewed that also and I'll

25  sort of briefly characterize it, is make a list of all the

1   orders, Samsung, that you wouldn't fill and why they -- why you

2   wouldn't fill them.  That's what -- how I read the

3   interrogatory.

4          And as I understand, Mr. Lee, Samsung's position is

5   that you have the invoices.  You have the purchase orders.  You

6   could make that list.  And I would characterize that, I guess,

7   as in the equally-available-to-you objection category.  If

8   there's something I don't understand or something I'm missing

9   here, let me make sure I get it.

10          Mr. LaMagna, why don't I let you start again?

11          **MR. LaMAGNA:**  Thank you, Your Honor.  I mean, I think

12   that that's right.  This is, I believe, clearly discoverable

13   from both parties.  Now, of course, we will be reviewing our

14   records and identifying instances in which, based on our

15   records -- and this goes back several years -- that we contend

16   that there was a refusal to provide products.

17          I don't know that our records necessarily that we

18   have every example of that.  They may not have every example of

19   that.  Presumably we give them our list.  They are going to

20   internally take issue with whether our list is correct or not.

21   All we're saying is that both parties should create a list.  We

22   will create our own internal understanding as to what happened.

23   They should have an internal understanding as to what happened

24   and we can compare notes.

25          I don't think Mr. Lee is going to accept our list

12

1  when we go through and say, here are the 100 times or the 200

2  times this happened.  I don't think he's going to take that as

3  being dispositive of that factually.  I assume that they are

4  going to want internally to come back and say, no, no, here's

5  the times that this did or did not happen.

6         So, number one, we think that at the get-go, we

7  should get started on that and both sides should put their

8  cards on the table and identify the times when they contend

9  there was or perhaps Mr. Lee would disagree.  Maybe he'd only

10 five times and I'd have a hundred times but we should put those

11 cards on the table.

12        Secondly, regarding something unique about Rog 2, Rog

13 2 asks why Samsung declined to fill orders.  Now, I certainly

14 can't answer from Netlist's perspective that question for

15 Samsung.  So no matter what I do, if I identify -- we will, of

16 course, be providing our expert and the Court with

17 identification of instances when we contend there's a breach

18 but we can't fill in the why.

19        Only they can and that's one of the critical things

20 we need from Rog 2 and I don't see how they answer the why

21 unless they answer the when.  In other words, how would you

22 write an interrogatory response that says why they shorted

23 orders without identifying what the predicate event was that

24 you're answering the why for?

25        So in sum, I think it's clearly relevant the idea --

1    and it is true.  It is our burden to prove breach, of course,

2    but I don't think discovery under Rule 26 is limited to the

3    issues on which we have the burden and then they have to

4    produce discovery on the stuff where they have the burden.

5           I'll turn it back over to Mr. Lee.

6           **MR. LEE:**  Thank you, Your Honor.  You understand this

7    issue, well, it's simply an issue of the information is equally

8    available to both sides and there's a proportionality issue

9    here because both parties are going to be looking at the same

10    sets of invoices and purchase orders and both parties will be

11    exchanging productions.  I assume that those productions will

12    be consolidated in a way so everybody has the same set of ten

13    or a hundred or a thousand invoices and purchase orders.

14           And we just don't think it's necessary to have

15    Samsung duplicate work that Netlist will evidently going to be

16    doing and especially because Netlist is not going to be relying

17    on any representation Samsung makes in terms of instances where

18    we believe there was an undersupply.

19           Now, I think Mr. LaMagna has focused on the point of

20    intent and here as well, I would contend that intent is simply

21    not relevant.  This is a breach of contract claim.  There is no

22    punitive damages issue.  So the issue of why Samsung did not

23    supply in certain instances, if that happened at all, is not

24    relevant to Netlist's damages.

25           Now, of course, as an accommodation to the extent

14

1   that Netlist wants to identify specific instances and ask us to

2   describe why we did not supply in that instance, I think that's

3   something that -- an interrogatory my client would be willing

4   to answer.  But I think kind of the intent issue is being used

5   as, oh, kind of a Trojan Horse here to get Samsung to answer a

6   discovery request that's just not proportional to the needs of

7   the case.

8           **MR. LaMAGNA:**  If I could respond momentarily to that,

9   Your Honor, this is Ray again for Netlist.  I think there is a

10  difference between whether we say something and whether they

11  say something.  So, obviously, if Netlist puts forward a fact

12  that we contend on an issue that we have to prove, it is

13  something that Samsung could disagree with.  It is then

14  disputed.

15          If Samsung puts forward a list and says, here are ten

16  times that we did not fill orders, then that becomes -- if we

17  agree with that list, that becomes an undisputed fact.  And so

18  the value of them responding and identifying the undisputed

19  times when they at least agree on the fact that orders were

20  shorted or rejected, et cetera -- now, they may have -- they

21  may say that they're not under an obligation to have done

22  otherwise.

23          They may write that there was a good reason for that.

24  I'm not trying to put words in their mouth on that but if they

25  at least identify factually the times when it happened, then --

15

1    and we agree with that, then we basically are able to take

2    those facts out of dispute.  So that's the value from a fact

3    discovery point of having an interrogatory here.

4            Regarding the point of materiality and intent, my

5    understanding here -- and I think you probably shared this,

6    Your Honor -- is that every time that there is a breach, that

7    is not necessarily a material breach.  Now, here Netlist has

8    terminated the contract because we contend that the breach that

9    occurred was a material breach.

10           And so we have to show that there is more than just a

11   garden-variety breach but that the breach goes to the -- sort

12   of the heart of the agreement and one of the factors that is

13   looked at there is the intent or the willfulness of the breach.

14           Now, if Samsung would like to concede that so long as

15   we prove that there is a breach that that will be deemed a

16   material breach regardless of that inquiry, then I think that

17   we could consider whether we should be taking some of these

18   questions of materiality or of willfulness or intent off the

19   table.

20           I don't think they're going to do that.  In other

21   words, we have to prove for our declaration that the

22   termination was appropriate.  We have to prove more than --

23   that there was just a mere foot fault breach in the agreement.

24   And like I said, if Samsung wants to relieve us of that burden,

25   then I think we'd be open to discussing that with them but if

16

1    they're not going to relieve us of that burden, then we need

2    discovery that allows us to make our case.

3           **THE COURT:**  All right.  Do you guys want more

4    briefing on this or do you feel comfortable with what you've

5    stated?

6           **MR. LaMAGNA:**  I don't know that this is a topic that

7    really is going to be illuminated by further ink but -- unless

8    Your Honor, of course, feels like there's not -- you are not

9    being given something that you need here.

10          **MR. LEE:**  Your Honor, this is Mr. Lee.  The same

11   here, I think we're ready for a ruling on this issue unless

12   Your Honor wants more.

13          **THE COURT:**  Okay.  All right.  I have probably

14   written half a dozen times in various discovery orders that the

15   objection and a response to a written discovery request, that

16   that information is equally available to you is -- I think I

17   write that it's not appropriate or it's not about objections,

18   probably like most things in any discovery dispute that there

19   probably should be a little caveat in there and I should

20   probably couch that a little better because I'm going to have

21   someone cite it back to me someday and I'm not going to like it

22   in that case.

23          But I think here it probably is applicable that the

24   equally available fee objection is not appropriate.  I do tend

25   to agree that -- with Mr. LaMagna that Netlist really can't

17

1    answer the why and it doesn't make a lot of sense to answer the

2    why without telling Netlist which episodes are implicated by

3    the why.  And I suspect quite strongly that Mr. LaMagna is

4    correct and that the issue of materiality is not going to go

5    away.

6              And so we can't have -- would you use -- use a tennis

7    term.  Football -- okay, I'm not a tennis player but I think

8    that's probably correct.

9              So I think, Mr. Lee, your client does need to provide

10   a supplemental response to Interrogatory Number 2 that

11   identifies these orders you wouldn't fill and why.  Give me an

12   estimate of what -- how much time you think you'll need to

13   complete that.

14             **MR. LEE:**  Your Honor, for this I think we'd need

15   about 30 days.

16             **THE COURT:**  Okay.  Can you live with 28 days,

17   Mr. LaMagna?

18             **MR. LaMAGNA:**  Well, I suppose we'll have to live with

19   what we can live with.  I do have some concerns.  We have

20   depositions coming up.  My only caveat to that, Your Honor -- I

21   mean, is that we hope that what we get is a fulsome response.

22   In other words, if what we get in 28 days is a complete

23   response, that's helpful.  We can proceed straight to any

24   depositions at that point.  If we -- where that's critical but

25   if we need to come back in front of your --

18

1          **THE COURT:**  If you don't, I have a feeling we'll be

2    talking with some regularity over the next several weeks.

3    We'll raise it -- you can raise it with me then.

4          **MR. LaMAGNA:**  Okay, thank you, Your Honor.

5          **THE COURT:**  All right.  So I'm going to order Samsung

6    to provide a supplemental response to Interrogatory Number 2

7    within 28 days.

8          Let's then talk about RFA Number 2 and this is one I

9    haven't seen in at least a few years.  So I had to kind of dust

10   off my memory about Rule 36(a)(1)(A).  And I'll characterize

11   this as the -- admit that the agreement requires X versus admit

12   that the agreement provides quote (indisc./phonetic) from the

13   agreement.

14         There's some cases out there from both my district

15   and -- our district and others addressing this.  I looked at

16   one as recently as early this year from my neighbor Judge

17   Early.  And I've -- to be candid, I've never found all these

18   cases really that helpful but -- and I always sort of had to

19   muddle through on a case-by-case or even RFA-by-RFA basis.

20         So I'm hoping that you guys can say something that

21   will illuminate it a little better for me but -- and we can

22   kind of go from there.

23         **MR. LaMAGNA:**  Thank you, Your Honor.  The request --

24   I'll just read it.  It's very short.  It says, "Admit that

25         Section 6.2 of the agreement requires Samsung to

19

1        supply NAND and DRAM products to Netlist on Netlist's

2        request at a competitive price."

3            And that is what the agreement says.  And I think the

4   question that we have here is simply, is Samsung's position

5   that the agreement requires that or doesn't.

6            And my understanding is that they are going to be

7   taking a position in this litigation one way or the other.  I'm

8   not sure why it's a secret.  I -- put it this way, I understand

9   why in a complicated situation you would not want to be using -

10  - of course, the Court would not allow us to use discovery to

11  get behind someone's work product or someone's litigation

12  strategy, et cetera, to require legal conclusions.

13           But this is just a fundamental point that goes to the

14  center of what our dispute about.  Is there -- do they agree

15  that this -- that the parties -- that this is required or not?

16           **THE COURT:**  Well, the problem with your framing,

17  Mr. LaMagna, is that your framing sort of paraphrases from the

18  language of the agreement.  And the agreement -- and you say,

19  at a competitive price.  And the agreement says, at a

20  competitive price (i.e., among customers producing similar

21  volumes of similar products).

22           And as you alluded, I think, 10 or 15 minutes ago,

23  there might be some customers out there who are in a different

24  universe and get different kinds of pricing.  And so I thought

25  I understood yesterday and I think I even understand better now

1    why Samsung might be, like, a little uncomfortable with just

2    slapping an admission to you -- on to your request.

3          **MR. LaMAGNA:**  I think if that's the concern, Your

4    Honor, but at a competitive price, we could just sort of

5    redline out those last four words.  I think that the issue that

6    we are trying to understand here is, do they agree or disagree

7    that the agreement requires them to supply the products?

8          So maybe we should just for the purpose of this RFA,

9    so we're not basically -- as you would, I think Your Honor has

10   identified is that the RFA accidentally is having an

11   intersection of two issues which is always problematic in an

12   RFA.  Here, we have the intersection of, is there an obligation

13   to supply and also, and at what price.  And so maybe if we just

14   make this about one thing, that would make this simpler.

15         **THE COURT:**  Mr. LaMagna -- I'm sorry.  Mr. Lee -- you

16   guys -- counsel with two names that start with the same letter

17   is always a problem for me.  I'll confess it up front.

18         Mr. Lee.

19         **MR. LEE:**  Yes, Your Honor.  I think you identified

20   the issue with this RFA quite accurately.  The problem is this

21   is an RFA that paraphrases language that's in the contract very

22   closely.  So in a way, it could mean one of two different

23   things.  It could be asking, does the contract say what it

24   says, which we're happy to admit to but it could also be

25   asking, does the contract mean what we say it means?

1        And, say, if the RFA had this language in quotation

2   marks to make it clear that it's just asking, does the contract

3   say what it says, I'd think we'd be more comfortable answering

4   that but because it's a paraphrase, it's very difficult for us

5   to just give a straight admission or a straight denial on that.

6        So I think our answer right now, which simply

7   clarifies that we understand this RFA to be asking, does the

8   contract say this is sufficient?  And we did cite to the case

9   of *K-Loft* (phonetic) in our short paragraph which said,

10  requests for admission cannot be used to compel on admissions

11  to a conclusion of law.  And to the extent that this RFA asks

12  to agree to interpretation of the contract, it would certainly

13  be that.

14        **THE COURT:**  Mr. LaMagna, I invite you to proffer

15  another RFA.  I mean, I think that another RFA would be

16  appropriate and, frankly, given that there's already been an

17  RFA on this topic, I don't see why Samsung would need 30 days

18  to respond to it.  So if you gave another RFA -- and I would

19  direct Mr. Lee to provide a response to that within 14 days.

20        So if you want to take a shot at wordsmithing another

21  RFA that gets at what you're trying to get at here with Request

22  Number 2 that you didn't get already, I think that would keep

23  this moving forward and be as productive as we can be.

24        **MR. LaMAGNA:**  Okay, thank you, Your Honor.  We'll go

25  back to the chalkboard on that.

 1          **THE COURT:**  Okay.  RFA Numbers 4 and 5 were addressed

 2   in Mr. LaMagna's letter and I'll paraphrase those.  It's

 3   basically, in short, did Samsung have a ceiling or an

 4   allocation for Netlist sales?  That's probably a bit of an

 5   over-gloss but that's what got into my notes because I see RFA

 6   4 and 5 here -- sitting here that looks a little more

 7   complicated than that.  Maybe it isn't.

 8          And, Mr. Lee, I think you were not able to discuss or

 9   didn't feel like you had enough time to discuss those.  Do you

10   want to do that now?  I have a solid half-hour further to give

11   you guys and we do want to move back around to a couple of

12   other things.  But we can also put this on our next call's

13   agenda.

14          **MR. LEE:**  Yes, Your Honor.  So these issues didn't

15   come up in detail during the meet and confer.  So to the extent

16   that we're going to be talking again soon, I think it would be

17   helpful for us to discuss it then.

18          **THE COURT:**  Okay.  Will you make sure that you guys

19   discuss these before we get back on the phone so that we are

20   making some progress on them?  I would appreciate that.

21          **MR. LEE:**  Yes, Your Honor.

22          **MR. LaMAGNA:**  Yeah.  And I -- we will do so, Your

23   Honor, but we have now, I think, conferred multiple times on

24   RFA 4 and 5.  So I don't want to belabor the point.  It's not

25   something we have to decide today but I do take issue with the

23

1   characterization of the letter to suggest that we sort of

2   sprung this and didn't confer on it.

3           **THE COURT:**  All right.  But we -- frankly, sometimes

4   what happens on these cases is counsel that's on the call are

5   not the same counsel that are having the meet and confer.  I

6   don't know if that's the case here.  If it is, to the extent

7   this kind of thing persists and there is some disconnect

8   between the meet and confers and how they're getting

9   characterized with me, I'll have to solve it by making sure

10  that you two meet and confer.

11          I won't do that yet but I'm just -- and that may not

12  be the case here.  Maybe all the meet and confers are happening

13  directly between Mr. Lee and Mr. LaMagna.  But if that's the

14  situation, we'll have to put a stop to that.  I don't want to

15  do that because, frankly, I know you probably have teams and,

16  frankly, it's important that the more junior members of the

17  team do the work and get experience and so on and so forth but

18  we also can't have those disconnects.

19          **MR. LaMAGNA:**  Yeah.  And we -- it has been just --

20  Mr. Lee and I have been common to all of the calls.  We've been

21  on all the calls.

22          **THE COURT:**  Okay.  That's -- I think that's helpful

23  and that allays my concern.

24          Let's move back around to the custodians and search

25  terms and the -- Judge Goddard's checklist that I sent to you.

24

1    I sent that to you because I thought after my last call, I

2    probably should have been thinking more in those terms, more

3    globally and then the discussion of the custodians and the non-

4    email sources and so on and so forth that were touched on in

5    the letter that Mr. LaMagna sent got me thinking about these

6    concerns.

7           Mr. Lee, you had a concern, I think, in the letter

8    about needing a little more time to respond to Samsung's search

9    terms -- I'm sorry -- Netlist's search terms.  I don't know

10   where that stands and whether you're prepared to discuss that.

11   That's kind of -- the search-term ball seems like is in

12   Samsung's court.  I don't know how many search terms were

13   proposed.  I don't know how -- whether you've gotten down to

14   talking about custodians yet and I don't know where we stand.

15          **MR. LEE:**  Yes, Your Honor, you are correct.  The

16   search-term ball is in our court right now and we received

17   these -- I think it was either on Tuesday or Wednesday.  So, I

18   mean, we're ready to -- we're discussing internally how to

19   respond.  We think we'll do so pretty soon.  I just don't think

20   we'll be able to respond by tomorrow which I think is when that

21   list is asked for in their letter.

22          **THE COURT:**  Okay.  When do you think we could?

23   Because I think we need to have a follow-up conversation soon

24   and make sure that we're making some progress on this.  And

25   then I do kind of want to go over some of these other things or

1   want to make sure you guys go over some of these other things.

2   I don't necessarily need to be involved -- and make sure that

3   you touch on them.

4          And if there are going to be areas of dispute or

5   discord that we discuss them.  And I think it would be

6   appropriate for you guys to go over that together and, by the

7   way, let me say.  I don't view that checklist as the be-all

8   end-all.  There may be other things out there that are

9   implicated here that aren't on the checklist.  That doesn't

10  mean you shouldn't discuss them.

11         And there also may be things on the checklist that

12  are inapplicable here.  You don't need to discuss them if

13  they're not called for.

14         So, Mr. Lee, when do you think we -- you -- do you

15  think you could complete that if we got back on the phone, say,

16  the middle part of next week?

17         **MR. LEE:**  Your Honor, I think we'd need a little bit

18  more time than that but not too much.  So we are --

19         **THE COURT:**  Well, let me anticipate what Mr. LaMagna

20  is going to say because I told him last time that we would get

21  this ball rolling and by the middle of the month, we'd have a

22  process moving.  And he's going to complain that I'm not

23  meeting my end of the bargain.  So help me blunt that

24  counterattack he's about to make against us by telling me that

25  you don't need much more time than next Wednesday.

26

1          **MR. LEE:**  Yes, Your Honor, of course, we're always

2   happy to do.  So I think we can definitely keep the process

3   moving.  I think the issue here is that we kind of have three

4   separate pieces of information to provide to Mr. LaMagna.  The

5   first is the counterproposal on the search terms.  The second

6   is the list of custodians.  The third is the -- kind of a

7   narrative describing, I think, much of the information that

8   Your Honor offered in your highlighted checklist.

9          I think if we were to approach that a bit piecemeal,

10  we could certainly make a lot of progress by the middle part of

11  next week.  For example, I think we'll certainly be ready to

12  make an initial counterproposal on the search terms perhaps

13  maybe one week by now -- one week from now.  Custodians might

14  take a little bit longer.

15         And I just want to clarify so there's no kind of

16  confusion.  When we make that initial counterproposal on search

17  terms, what we envision the workflow being is that the parties

18  will agree on search terms and then after that, we will run hit

19  counts when our document database is fully set up and the

20  agreement will be provisional so that if we end up with a

21  million hits for whatever reason, then we may want to revisit

22  that issue.  But, otherwise, I think we're going to be able to

23  make a proposal on that basis within about a week.

24         **THE COURT:**  Well, let me say -- if I didn't say this

25  last time -- and I am virtually certain I did which is I -- the

1    parties should understand that the process of working through

2    search terms is always -- well, I know I said this because I

3    remember using -- saying I learned a fancy word and I did.  I

4    learned a fancy word in this case.  It's iterative -- an

5    iterative process.

6          And so we're going to have to work through these and

7    if one of Mr. LaMagna's search terms returns a billion hits,

8    then, yeah, we have to refine that search term.  At the same

9    time, if Mr. LaMagna's search terms return single-digit hits,

10   well, then we have a concern that they're not robust enough and

11   we may have to work through them a little better.  And that's,

12   I think, why we engage in this process that Judge Goddard has

13   helpfully set out in this checklist.

14         Unfortunately, next Wednesday is a bad day for me.  I

15   am stuck with back-to-back hearing with very litigious and --

16   they're just litigious counsel.  On Thursday, the 17th, it

17   looks like we have a matter at 10:00 a.m. and so if we were

18   going to do that next Thursday, I'd want to do it at 11:00 a.m.

19   So let's put the pin in that just for a second and then I'll

20   ask Mr. LaMagna to comment.  And I -- I've already anticipated

21   what you're going to say.  So --

22         **MR. LaMAGNA:**  No.  Yes, Your Honor, you've done a

23   great job of sort of pre-butting all of my points.  I just want

24   to note a few additional points.  What appears to be the case

25   here, unfortunately, is we're a year into this litigation and

1    Samsung has yet even internally, I think, to identify who the

2    custodians would be.

3            Who are the people that are interacting with Netlist?

4    Who's taking the orders?  Who inside the company is deciding

5    whether or not those orders can be fulfilled or not?  If

6    there's limitations placed on Netlist's orders, who is the

7    executive or the boss or whoever that made those decisions?

8    Who negotiated the deal?  So we're looking for negotiation

9    history.  Whose email would we be looking at or whose laptop or

10   computer files or whatever?

11           And so one challenge here that we have is that I

12   think that the propriety of search terms really is going to be

13   dependent upon who the -- what the universe of custodians are.

14   If I ask to search someone who works in licensing, for example,

15   who is -- was involved in negotiating a deal for the word

16   "Netlist," that may be an appropriate search where searching

17   all electronic documents within Samsung Electronics

18   Corporation, one of the world's largest manufacturers, for the

19   word "Netlist," that may not be appropriate.

20           And so I feel like what's causing us to be behind the

21   ball here is that Samsung has yet to do any internal

22   investigation into where documents may be found.  My other

23   concern, which you talked about last week, is that I don't

24   think the search terms are the be-all and end-all way of

25   identifying documents.  They are a tool but not the sole and

29

1    exclusive tool which I fear that Samsung is using this as.

2          We have -- by way of example, if we're talking about

3    orders between Netlist or communications between Netlist and

4    Samsung regarding requests for orders, those are the kinds of

5    documents, invoices and so forth that they should be able to

6    identify and produce to us without search terms.

7          And put differently on our own side, we are doing our

8    own internal investigation to try to identify those -- our

9    version of those communications.  And we're not using search

10   terms for that.

11         We are going into the right people's emails and

12   looking at communications with Samsung and trying to look and

13   identify the material using our own, not based on any search

14   terms that Samsung is giving us.

15         So I do think that we -- they should be making

16   collection efforts for non-custodial documents and for other

17   documents here that are relevant and responsive to our RFPs

18   without using search terms.

19         And then we can circle -- we can still be negotiating

20   search terms, but they shouldn't be standing still on

21   collection until perfection in search terms is achieved.

22         **MR. LEE:**  Your Honor, if I may address that?

23         **THE COURT:**  Yes.

24         **MR. LEE:**  (**Audio glitch**) dispute the characterization

25   that there's been no internal investigation on Samsung.  And

30

1   we've been acting very diligently to get this set up and

2   moving.

3           As Your Honor mentioned on the call last week, there

4   is kind of a well-oiled machine present at Samsung.  The

5   machine is very well-oiled, Your Honor, but it just takes a bit

6   of time to stand up.  I think we're at that stage right now.

7   And things are moving at pace.  So, again, I don't foresee any

8   unreasonable delays going forward.

9           Fully agree with Your Honor that search terms are

10  derivative.  If the hit counts are either too low or too high,

11  we are certainly willing to modify it going forward.  And I

12  think, in a lot of cases, search terms get modified as the

13  document preview is progressing.

14          Because you start noticing something in the documents

15  that should be picked up but isn't.  And, of course, we're

16  always happy to meet and confer with opposing Counsel about

17  further reciting the search terms as the review progresses.

18          I think the only issue here, really, is the timing of

19  the custodian disclosure.  As I mentioned, we were prepared to

20  offer a counter-proposal on search terms within seven days.

21  The custodians will take just a bit longer than that.  We're

22  not saying that, you know, the custodians -- we're not going to

23  disclose custodians until the eve of trial.

24          I think we'll be prepared to disclose our initial

25  list of custodians within 14 days.  Just the issue here is

1 Samsung is a very large company with a lot of tentacles.  So we

2 want to be in a position where we can say we're reasonably sure

3 that the universe of people we need to look at before we give

4 them a list as opposed to giving them kind of a half-baked list

5 that needs to be recanted and revised several times as we go

6 forward.

7       And, finally, just to briefly address the issue of

8 search terms being the be-all and end-all, I think, Your Honor,

9 we never are -- we never argued that.  And on that (**audio**

10 **glitch**) call, we made it very clear.  You know, we are

11 fulfilling our obligations to identify documents which we have

12 knowledge of independent (**audio glitch**).

13       **MR. LaMAGNA:**  And if could just respond to that very

14 briefly.  We met and conferred on Tuesday.

15       Opposing Counsel was unable to provide to us, or

16 would not provide to us, the name of a single custodian that

17 they were considering in this case or a single effort that was

18 made to identify a single document or any other parameter that

19 they're using for any sort of non -- either non-custodial or

20 non-search-term based searches, nor would they identify a

21 single search term that they would consider.

22       I think, as Your Honor well knows I'm sure, often,

23 perfection is the enemy of the good.  I don't need from them a

24 list of every possible custodian.

25       I think I'd be happy to take their top three or four

1    or five to start with.  And then we can -- they can get back to

2    us and, you know, a couple of days with a few more.  And in two

3    weeks, they can get back to us with a master list if they need

4    to.

5         But we have to have -- number one, there need to be a

6    start in identifying at least the most relevant custodians.

7         And, number two, there needs to be a start on

8    collecting documents without search terms.  Just asking people,

9    "Where are your files related to your, you know, orders from

10   Netlist?  How is that material, you know, channeled inside the

11   company?"

12        **MR. LEE:**  Your Honor, just to briefly address that --

13        **THE COURT:**  Guys, guys, guys -- guys, hold on.  You

14   guys are doing a great job, and I really appreciate it.

15        Let's do this.  I want the following when we talk

16   next time.  I do want some response from Netlist on search

17   terms.  I do agree with Mr. LaMagna.  We need to get some

18   identification of custodians by next week.

19        I'm not going to hold, Mr. Lee, you or Samsung to

20   that list as the final list or anything like that.  But we do

21   need to -- you know, finding who the principal folks at Samsung

22   who dealt with Netlist is not going to -- should not take 14

23   days frankly, particularly when this case has been pending for

24   as long as it's been pending.

25        I'm sure the folks in the legal department with

1    Samsung already know who, as Mr. LaMagna characterizes, the top

2    three or four principal players are.

3            And, you know, hopefully -- again, it's on the

4    checklist.  Hopefully, the document retention or litigation

5    hold -- or whatever you want to call it -- went out to those

6    principal folks a long, long time ago.

7            So let's make sure we advance the ball on those

8    things.  I also want the two of you to go through that

9    checklist, and at least talk about the highlighted items as

10   well as anything else that either side feels is implicated.

11   And have a discussion.

12           And if there's going to be areas of big discord, I

13   want you to flag those for me when we talk next Thursday.

14   Because I do want to keep everything moving along here and

15   doing that.

16           And then, finally, I agree with Mr. LaMagna.  We

17   don't want to focus so much on search terms that we lose, you

18   know, our -- the idea that there might be either other ways to

19   collect ESI or non-ESI items that are responsive.

20           I don't know.  Is there still a world out there where

21   paper files exist?  There may be some non-ESI that needs to be

22   collected.

23           And, you know, Mr. Lee, I think you are -- you should

24   be on notice that Mr. LaMagna has got a laser focus on your

25   collection efforts, and they'll be continued to be questions

34

1    and so forth directed at you and Samsung for what they've done.

2    There's nothing wrong with that.  That doesn't mean you've done

3    anything wrong.

4           You heard it already.  You're going to get asked a

5    lot of questions.  That's what happens when Netlist goes out

6    and hires very capable and persistent Counsel.

7           **MR. LEE:**  Understood, Your Honor.

8           **THE COURT:**  Okay.  Let's then talk about briefing.

9    Do you guys want to get on the phone after this call and talk

10   about a briefing schedule for -- I closed the screen that had

11   the numbers on there.  Can you get it back up?

12          **MR. LaMAGNA:**  RFP 11 and interrogatory --

13          **THE COURT:**  RFP 11 and Interrogatory Number Eight, or

14   do you want to discuss that now?

15          **MR. LaMAGNA:**  I'm happy to discuss it now, if Your

16   Honor likes.  I guess the question would be, since really the

17   ball in Samsung's camp, is how much time do they require to

18   respond.

19          **THE COURT:**  Mr. Lee?

20          **MR. LEE:**  Your Honor, I think briefing on this

21   doesn't need to be extremely extensive.  I imagine it would be

22   something to the effect of five pages per party.

23          In terms of --

24          **THE COURT:**  I'll tell you what, I don't want to keep

25   you guys from writing.  And, again, I suspect probably your

35

1   team has been writing some long briefs.

2           I'll give you ten.  How about ten pages per side?  If

3   you've got ten pages to work with, how long do you need?

4           **MR. LEE:**  I imagine -- so, Your Honor, which would --

5   I imagine that list would be filed in the first brief on this

6   issue.  So I think we --

7           **THE COURT:**  I think I'd like you to do that.  I think

8   you need to tell me why there's no basis for the request.

9           Because I think I understand at least the *prima facie*

10  argument that there is.  And, frankly, then the burdensome

11  objection or the proportionality objection's really going to

12  depend on you giving me some context as to why it's burdensome.

13          And, you know, because there's going to be a

14  balancing.  That's what Rule 26(b), blah, blah, blah, requires

15  is for some balancing of the relevance of the information

16  versus the burden implicated.

17          **MR. LEE:**   In that case, Your Honor, I think 14 days

18  should be sufficient for our first brief.

19          **THE COURT:**  Okay.  How about end of next week,

20  Friday, the 18th?

21          Mr. LaMagna, if you get a brief on the 18th, when

22  could you respond?

23          **MR. LaMAGNA:**  Why don't we say the -- I ordinarily

24  would say a week.  I mean, I wonder what I'm going to get.

25          **THE COURT:**  You're only going to get ten pages.

1          **MR. LaMAGNA:**  Is that -- Your Honor, just for

2    clarity, is that a letter brief in the form of ten pages or --

3          **THE COURT:**  No.

4          **MR. LaMAGNA:**  -- (**audio glitch**) paper?

5          **THE COURT:**  We need to put this on the docket.

6          **MR. LaMAGNA:**  Okay.  Thank you, Your Honor.

7          **THE COURT:**  But we need to put it on the docket, and

8    you can call it, you know, "Supplemental Memoranda regarding

9    Discovery Issues."

10          You know, be creative.  I know you have to find a

11   category on PACER.  We'll find it if you can get it filed.

12          **MR. LaMAGNA:**  Thank you, Your Honor.  So that would

13   be -- we would be receiving theirs on the 18th?  Like I said,

14   ordinarily --

15          **THE COURT:**  Yes.  And I presume there's going to be a

16   ten-page memo, and then there's going to be some stuff

17   attached.  There's going to be some declarations or whatnot,

18   probably from some people at Samsung -- and some other

19   attachments.

20          So it may be -- you know, it may end up being 300

21   pages of stuff.

22          **MR. LaMAGNA:**  Well, I hope not.  But we'll see.  I

23   guess what I'd say -- just because Your Honor is probably not

24   going to be looking at this on Friday night, the 25th.  So

25   maybe we should just say the 28th, to give us until Monday just

37

1    as a wiggle room in case there's something more voluminous than

2    we anticipate.

3             **MR. LEE:**  Your Honor, if that list is getting to

4    Monday, could we have the Monday as well?

5             **THE COURT:**  No, no.  I'll tell you what, I won't give

6    either of you the Monday.  How about we have the Netlist brief

7    on the 18th -- I'm sorry -- Samsung's brief on the 18th; I want

8    Netlist's on the 25th.  And then we'll find a time on the 29th

9    for you folks.  Because once I have it on the 28th, I'll be

10   ready to go.

11            **MR. LaMAGNA:**  That's great, Your Honor.  Thank you.

12            **MR. LEE:**  That works perfect.

13            **THE COURT:**  Let me see what we got on the twenty --

14   ninth looks open, Ms. Boehme; is that correct?

15            **THE CLERK:**  Yes, Your Honor.

16            **THE COURT:**  Let's give them 9:30 then; 9:30 on the

17   29th.  I'll be probably here in my beautiful non-Santa Ana

18   location.

19            **MR. LaMAGNA:**  Thank you, Your Honor.  And I think --

20            **THE COURT:**  All right.

21            **MR. LaMAGNA:**  The only other question that we had in

22   our letters was at the bottom of our first page, is that I

23   think we've reached agreement in general on, you know, RFPs and

24   interrogatories.  But we don't have any deadlines set.

25            I don't know if the Court would be inclined, in

1   particular for the ROGs, to set a deadline.  I understand that,

2   on the RFPs, we are going to be having at least an iterative or

3   a rolling process based on the search terms.

4         THE COURT:  Mr. Lee, you've agreed to supplement some

5   interrogatories.  How long do you need to do that?

6         MR. LEE:  Your Honor, you set a time limit for the

7   supplementation of Interrogatory Number Two at 28 days.  These

8   are all part of the same set.  But I think it would probably be

9   most efficient if we did everything at the same time.

10         THE COURT:  Okay.  Mr. LaMagna, is there anything you

11   can't live with 28 days on?  Because if you had a particular

12   interrogatory that you thought was super-hot, now is the time.

13         MR. LaMAGNA:  Yeah.  I think that -- again, we -- the

14   pattern here seems to be that we're prioritizing perfection,

15   you know, and neatness over the good.

16         THE COURT:  Now, just so -- I want to just highlight

17   something for you.  I'm not going to say anything you don't

18   already know.

19         But you're part of the problem here, which is you're

20   really persistent, and you're really going to catch every

21   little, you know, crack in what Mr. Lee and Samsung provides.

22         So, you know, that's going to be par for the course,

23   I think.

24         MR. LaMAGNA:  So I think, Your Honor, if you look at

25   Interrogatory Number One and Interrogatory Number Three, these

39

require the identification of the persons responsible for
fulfilling orders.  You know, that's Interrogatory Number
Three.

         Interrogatory Number One is the people who are
responsible for negotiating and implementing and performing and
so forth and their roles.  I think this is all information that
you would have to identify as part of the custodian search
where they're going to be finalizing for us in 14 days.

         So I think, on Interrogatory One and Three, if
they're already doing that effort to find these people and
investigate who is involved, that's basically at least an
initial response to Interrogatory One and Three would be
appropriate in 14 days.

         Obviously, they can supplement if they get other
information in their investigation.  It doesn't have to be
their -- you know, they may uncover more material, and that's
fine.

         Interrogatory Four is a slightly different topic that
I think is probably a little bit less important.  Interrogatory
Five -- so maybe we can put Interrogatory Four on the slower
side, to the 28 days.

         Interrogatory Number Five is asking them basically to
confirm whether or not they received our termination letter and
our notice to cure letter.

         And we've been discussing this with them for months.

1   They say that they've been investigating it for months.  They

2   should have that information.  We don't need a long response

3   here, I don't think.  They just determine what they know about

4   the receipt of this material.

5          So I think that should go on the shorter boat.  And

6   that also sort of collapses into identifying the appropriate

7   custodians because it's going to be an issue in the case.  And

8   so they're going to have to investigate who knows where this

9   mail or these emails came into.  So I'd put that in the 14-day

10  category.

11         I think Interrogatory Six is similar to Four.  It

12  involves the research.  I'd put that on the 28-day category.

13         And, you know, Interrogatory Seven I think we could

14  probably, you know, live with something, you know, in between,

15  let's just say.

16         This is an issue that isn't quite as -- where Four

17  and Six are, but it's a matter that is potentially going to

18  implicating depositions coming up.  So maybe it would be

19  appropriate to do, you know, three weeks for that one.

20         So I guess I would say, for Four and Six, I think we

21  can live with the 28 days.

22         For One, Three, and Five, we would ask for the 14

23  days or whatever is consistent with when they're giving us

24  their disclosure of custodians.

25         And for Seven, three weeks, then.

41

1          **THE COURT:**  Mr. Lee?

2          **MR. LEE:**  Your Honor, in terms of the custodian, I

3    just want to clarify before I respond to Mr. LaMagna's

4    proposal.  Do we owe you a list of custodians in seven days or

5    14 days?  I thought I heard seven earlier.

6          **THE COURT:**  You need to get a list of custodians in

7    seven days.

8          I guess what I'm saying is I'm not going to beat my

9    chest or order any sort of recriminations or anything like this

10   as to that if that turns out to be a partial list or not the

11   final list.

12         But I think we need to get the -- I don't want to say

13   -- I don't want to use terms that are going to -- I don't want

14   to use terms that other people are going to come back and quote

15   me -- quote at me later.

16         But at the risk of doing that, I think we need to

17   main players identified within seven days.

18         **MR. LEE:**  Yes, Your Honor.  There's no problem at all

19   for the provisional list within days with the understanding

20   that it may be supplemented.

21         In terms of the interrogatories themselves -- in

22   terms of Interrogatory One and Three, I think Mr. LaMagna is

23   right in that this probably covers the same information as the

24   custodian list.

25         So we don't have issue with providing this

42

1  information in seven days.  We just don't want to have to serve

2  multiple rounds of supplemental interrogatories to the same set

3  of interrogatories.

4       So I think --

5       **THE COURT:**  Let's do this.  For One and Three, let's

6  get a supplemental response within 14 days.  For all the

7  others, I think 28 days is appropriate.

8       I'm certainly not going to -- I certainly don't want

9  to have the parties, you know, having it 14 days and 21 days

10  and 28 days.  At some point, we have to pick a number of lanes

11  and stick with it.  And I think two is probably plenty.

12       So let's get One and Three within 14 days, the

13  remainder in 28 days.  And we'll get the --

14       **MR. LEE:**  Understood, Your Honor.  That works.

15       **THE COURT:**  -- process moving that way.

16       And, Mr. LaMagna, you have any other concerns about

17  timing?

18       **MR. LaMAGNA:**  I think just within -- I know that

19  Mr. Lee identified, you know, One and Three as related to the

20  custodians.  And I just wanted to confirm that it's actually

21  One, Three, and Five that are related to custodians.

22       **THE COURT:**  I don't think Five is --

23       **MR. LaMAGNA:**  Okay.

24       **THE COURT:**  -- the same as One and Three, as I read

25  them.  So I'm going to put the Five in the 28-day camp.

43

1        **MR. LaMAGNA:**  That's fine, Your Honor.  Thank you.

2    One of the --

3        **THE COURT:**  And let's --

4        **MR. LaMAGNA:**  And one of --

5        **THE COURT:**  Is there anything you have?

6        **MR. LaMAGNA:**  Yeah.  So just to -- one last point in

7    this -- in terms of RFPs.

8        You know, as Mr. Lee said, they don't want to respond

9    to the interrogatories.  You know, they want to respond once,

10   and only once, once they are done with information.  And,

11   obviously, that's problematic.

12       It's equally problematic if that same logic is

13   applied to RFPs.  I don't want to get in this case, on the last

14   day of discovery, an omnibus production of 500,000 pages.

15       If they are doing any efforts, and they have a

16   rolling production available, we think that they should be

17   making that -- you know, they can make a rolling production

18   available, we think that they should.

19       And so I think it's not unreasonable for us to be

20   requesting some, at least, non-custodial documents be flowing

21   to us in the next couple of weeks.

22       **THE COURT:**  I tend to agree with that.  So let's get

23   an update on the rolling production efforts next week when we

24   talk.

25       And if there -- if rolling productions are another

44

1    way, then we'll talk about whether we need to start sending

2    benchmarks or other type posts -- you know, all kinds of fancy

3    words we can use for getting a production.

4           Because it is not feasible in this kind of manner --

5    matter, or even most matters, to have the entire production

6    occur in the last couple days of the discovery period.

7           **MR. LaMAGNA:**  No issue from Samsung with that, Your

8    Honor.

9           **THE COURT:**  Okay.  Where did we land next week,

10   Ms. Boehme?

11          **MR. LEE:**  Your Honor, before we discuss -- before we

12   conclude, there is one minor issue I wanted to discuss.

13          **THE COURT:**  Okay.  Is it an issue about a minor or

14   just a small issue?

15          **MR. LEE:**  It's a small issue, Your Honor.

16          **THE COURT:**  Okay, perfect.  Go ahead.

17          **MR. LEE:**  We did lay this out in our letter to you.

18   There is an issue of the Korean language search terms.  Now,

19   Your Honor, that list hasn't proposed any Korean language

20   search terms.

21          In the spirit of keeping things moving, we're not

22   opposed to the idea of us making the first cut on the Korean

23   language stuff.

24          But I just want to make sure there's not a precedent

25   being set here where the burden for Korean language efforts is

**EXCEPTIONAL REPORTING SERVICES, INC**

1  kind of placed on Samsung on the basis that we are a Korean

2  company and I happen to be ethnically Korean Counsel.

3           I think both parties should have the burden of

4  handling their own language needs (**audio glitch**) that they

5  arrive.

6           **MR. LaMAGNA:**  And I think Your Honor --

7           **THE COURT:**  Okay.

8           **MR. LaMAGNA:**  I don't think we disagree with --

9           **THE COURT:**  I don't have a --

10          **MR. LaMAGNA:**  -- (**audio glitch**).  We're fine, I --

11          **THE COURT:**  Yeah.

12          **MR. LaMAGNA:**  -- think both cooperatively doing.  I

13  think it's on both parties.  Like to go back to tennis, we need

14  to be bouncing things back and forth and working together on

15  refining, you know, what the Korean is.

16          What I can't do is I can't guess myself here what

17  words in Korean internally they use for certain ideas at

18  Samsung.

19          **THE COURT:**  Yeah.  And I think that's true whether

20  it's Korean or any other language.

21          There are going to be internal words or nomenclature

22  used that are relevant to a case.  And whether that's in

23  English or any number of other languages, it's -- you know,

24  it's -- that's part of this iterative process.

25          Because you may get a document and you may say, you

46

1   know, "We see a term here used and it seems to be used with

2   some regularity, and we're going to have to add it to the

3   search term list to make sure that we're getting all the

4   documents that involve that term.  Because it sure seems to be

5   implicated by what's going on here."

6          So I understand your concern, Mr. Lee.  And it's

7   something we'll keep in mind as we go forward.

8          Let's go back to where I was a second ago.

9   Ms. Boehme, are we on for next Thursday, at 11:00?

10         **THE CLERK:**  The 29th, Your Honor, Tuesday.

11         **THE COURT:**  No, we also need a next Thursday, at

12  11:00, I think.

13         **THE CLERK:**  Oh, I'm sorry.  That's fine.  We have a

14  10:00 o'clock hearing that day.

15         **THE COURT:**  Right.  We have a -- with our Parma

16  folks, correct?

17         **THE CLERK:**  Correct.

18         **THE COURT:**  It would be great if they had to -- it

19  would be great if we had an in point with them.  So this works

20  for me for multiple reasons.

21         All right.  So Ms. Boehme will send call-in

22  information for you for next Thursday, at 11:00 o'clock unless

23  someone has a concern about that time and raises it with me in

24  the next, like, four or five seconds.

25         **MR. LaMAGNA:**  That's fine, Your Honor.  Thank you.

47

```
 1              THE COURT:  Okay.  Mr. Lee?

 2              MR. LEE:  That's fine, Your Honor.  So, yes.

 3              THE COURT:  Okay.  You guys have -- if you guys would

 4    do me the favor -- you guys did a great job yesterday -- just

 5    send me a couple pages the night before.  It can be the end of

 6    the day.  That's fine.

 7              I'll just look at it in the morning on Thursday, and

 8    just make sure we're making some progress.

 9              And we'll talk then, all right?

10              MR. LEE:  Thank you, Your Honor.

11              MR. LaMAGNA:  Thank you.

12              THE COURT:  All right.  Thank you, Ms. Boehme.

13              THE CLERK:  This Court is now adjourned.

14          (Proceeding adjourned)

15

16

17

18

19

20

21

22

23

24

25
```

<u>**CERTIFICATION**</u>

      **I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

 

 

<u>_____</u>                              <u>**August 5, 2021**</u>

         **Signed**                                             **Dated**

 

               *TONI HUDSON, TRANSCRIBER*