```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (SOUTHERN DIVISION - SANTA ANA)



NETLIST, INC,                  ) CASE NO: 8:20-CV-00993-MCS-DFMx
                               )
              Plaintiff,       )            CIVIL
                               )
      vs.                      )      Santa Ana, California
                               )
SAMSUNG ELECTRONICS CO, LTD,   )     Tuesday, July 13, 2021
                               )
              Defendant.       )
_____     )


                  INFORMAL DISCOVERY CONFERENCE

          BEFORE THE HONORABLE DOUGLAS F. McCORMICK,
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:            JASON C. LO, ESQ.
                          RAYMOND A. LaMAGNA, ESQ.
                          Gibson Dunn & Crutcher, LLP
                          333 S. Grand Ave.
                          Los Angeles, CA 90071

For Defendant:            JUMIN (CHRIS) LEE, ESQ.
                          JONG-MIN CHOI, ESQ.
                          Bird Marella Boxer, et al.
                          1875 Century Park East
                          23rd Floor
                          Los Angeles, CA 90067

Court Reporter:           Recorded; AT&T; digital

Courtroom Deputy:         Nancy Boehme

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

1          **Santa Ana, California; Tuesday, July 13, 2021**

2                    **(Remote Appearances**

3                       **(Call to Order)**

4          **THE CLERK:**  We're on the record on case SACV 20-00993

5   MCS(DFM).  The case is Net -- I'm sorry -- *Netlist, Inc. versus*

6   *Samsung Electronics*.

7          Counsel, your appearances, please?

8          **MR. LaMAGNA:**  Raymond LaMagna of Gibson Dunn on

9   behalf of plaintiff, Netlist, Inc., and I'm joined by my

10  colleague, Jason Lo.

11         **MR. LEE:**  Good morning, Your Honor.  Christopher Lee

12  of Bird Marella on behalf of defendant, Samsung, and I'm here

13  with my colleague, Jong-Min Choi.

14         **THE COURT:**  All right, Counsel.  This is Judge

15  McCormick.  It's been a couple weeks since we've talked, and

16  I'm having one of my favorite kind of days in this job when

17  there's, like, three or four things coming at me at once, so

18  I've got a boat in the harbor that someone wants me to help

19  them with, we've got 12 defendants being brought to the

20  courthouse -- Ms. Boehme, I just confirmed they're all on their

21  way -- and you guys have got some discovery issues.  So, let's

22  talk about them.

23         Let me start with the apex deponents, and let me tell

24  you what I suggest, and then you can tell me what you think.

25         Mr. LaMagna, it sounds like we could get something

3

1    from you on the 20th, and then if we could hear back from

2    Samsung on the 27th, what I would propose that we do is get a

3    hearing on my calendar for the 29th at 10:00 a.m.  And then

4    we'll either have these apex deponents on our agenda for August

5    or we won't.

6            **MR. LaMAGNA:**  You said 10:00 a.m., Your Honor?

7            **THE COURT:**  Yes.

8            **MR. LaMAGNA:**  On the 29th.  That sounds good.

9            **MR. LEE:**  Checking my calendar, Your Honor.  Just a

10   moment.

11           That works for Samsung, as well, Your Honor.

12           **THE COURT:**  Okay.  The next issue, I think, are the

13   issues or -- and it sounds like we're continuing to work on

14   them -- the issues related to Samsung's document production.

15           **MR. LEE:**  Your Honor, if I may interrupt for just a

16   moment, if we could -- if I could address just one thing with

17   depositions before we move on to document production?

18           **THE COURT:**  Absolutely.

19           **MR. LEE:**  So, over the weekend and yesterday Samsung

20   provided dates of availability for, I think, the bulk of its

21   witnesses.  I think we're just waiting on one or two more

22   people.  We have not gotten dates of availability from Netlist

23   yet.  Mr. LaMagna told me that he might have those for me

24   yesterday or today, I think.  I just want to confirm that we'll

25   be getting those soon from Netlist.

4

1          **THE COURT:**  All right.

2          **MR. LaMAGNA:**  Yeah.  And, as I said, we would get

3    them to you, you know -- I think I should give them to you this

4    afternoon.  I don't think that that's an issue we need to take

5    up the Court's time with.

6          **MR. LEE:**  If that's the case, Your Honor, then we can

7    move on.

8          **THE COURT:**  All right.  Well, let me know if that

9    doesn't work out.  I think we're going to end up having maybe

10   at least two, if not three, follow-up calls.  I'm not trying

11   to, you know, run up the fees in your case or anything like

12   that, but we have a couple loose ends, and I want to make sure

13   we jump on them expeditiously.  So -- and you have -- you have

14   a few issues that are sort of identified in your letters as

15   being potential future issues.  And as I think I may have told

16   you, and if I didn't tell you before, I'll tell you now, I'm

17   out the first week of August, which means I kind of want to get

18   all of this resolved or tidied up in the next two and a half

19   weeks.

20         The next -- but the next topic is Samsung's document

21   production, and, my, how the summer is flying by, and all of a

22   sudden we have a discovery cutoff that's less than five weeks

23   away from today.  So, I am concerned that we start to, you

24   know, figure out some deadlines and some end dates for

25   Samsung's document production.

1          What I would propose that we do, and I'll let each of

2   you comment on it, I would propose that Netlist submit to me a

3   proposed order on any document production issues that they want

4   to see resolved by an order by noon on Thursday.  And then I'll

5   ask Samsung to file any objections they have to that order, or

6   their own order if they think that there is something they can

7   work with in Netlist's order, by 5:00 p.m. Friday, and then I'd

8   like to talk to you all Monday morning at 10:00 a.m.  And,

9   then, by Monday morning at 11:00 a.m. we'll have an order, and

10  we'll have, you know, still a little more than four weeks to

11  get all the documents done.

12          Mr. LaMagna?

13          **MR. LaMAGNA:**  No, that's sounds -- that sounds

14  doable, Your Honor.  So, just to recap -- and I think this is

15  mostly in our letter -- you know, we served our discovery, I

16  believe it was the first week of March.  We gave the -- you

17  know, Samsung extensions to respond, but yet we got back only

18  objections and no documents.  We started this process the --

19  well, we started conferring with them forthwith in April.  We

20  started the process with scheduling the IHC in May.  Our first

21  letter to you was June 3rd, and here we are now halfway through

22  July, and we still don't even have, you know, search terms.

23          I think at this point, what we have to look at,

24  working backwards from the fact that we have depositions that

25  they have -- they've given us some deposition dates starting at

6

1   the end of July, around July 27th, 28th or so, and then, as you

2   can appreciate, depositions march on after that.  We have to

3   have the documents in hand -- you know, if we have depositions

4   starting at the end of the month, at the twenty -- and 28th is

5   two weeks from now -- we need to have the documents basically

6   about a week.

7          And, so, I think that we've given the other side

8   ample time to work through this possibility of using search

9   terms or not using search terms, and as you can appreciate,

10  Your Honor, you've seen that has not -- that yet hasn't gotten

11  off the ground.  I think the time has come for them to simply

12  produce documents.

13         Now, those documents fall into two categories.  The

14  first category, as I described in my letter, are documents

15  where you have an email.  The email -- whoever is the vendor

16  that's controlling their document collection can readily do a

17  search for the word Netlist in the "to" or the "from" or the

18  "cc" metadata.  That will pop up immediately on a search, and

19  this is a search that a computer can run in 10 minutes, five

20  minutes, whatever it is.  This is a very simple search.  That

21  will pop up communications that were exchanged between the

22  parties.  Those are categorically not privileged.  Those could

23  be produced to us immediately.  Mr. Lee could have those in our

24  hands, if he wanted, tomorrow.  So (**audio glitch**) question on

25  those documents.

1          Now, I appreciate that there may be some privilege

2   screens to be done for wholly internal documents.  I assume

3   that they have been collecting relevant documents and doing

4   some of that work already, that they are not at ground zero on

5   that, and I think that it would make sense -- given, like I

6   said, that we have depositions in two weeks, we would ask for

7   those documents in basically a week.  You know, so, to the

8   extent that it's not a "to," "from," "cc" Netlist document,

9   that I think really should be ordered now, then, you know,

10  that -- I think the second documents, the internal documents,

11  need to be set for production immediately.  But, you know, say

12  for production in about (**audio glitch**).

13          **THE COURT:**  I understood that, and let's -- let's get

14  a proposed order from you, and -- and, look, if I -- I don't

15  have to talk to you on Monday if -- if I get something from

16  Netlist on Friday, I'm happy to look at everything Friday

17  night, and we can have an order earlier.  But we need to get

18  everything set forth.  I'm not going to just start flying off

19  oral rulings that involve the production of documents across

20  the ocean.  And, then, so, let's get something in writing that

21  I can look at and tweak if I need to, and then Netlist can work

22  with -- I'm sorry.  Yeah.  I'm sorry; that Samsung can take

23  shots at as the case may be, but we're going to do that on an

24  expedited schedule, as I indicated up front.  We have (**audio

25  glitch**) coming up.  I have reviewed the entire trial schedule

8

1    this morning.  And, obviously, Judge Scarsi has -- has you guys

2    on a tight schedule, and that's great, and so we need to work

3    with that.

4            I've never met Judge Scarsi.  I don't want to be the

5    first time he sees my name to be us going in front of him and

6    saying, "We spent a bunch of time with Judge McCormick, and we

7    need more time for discovery."  That's not the impression I

8    want him to have of me, and I'm sure it's not the impression

9    you want him to have of you.  So, let's get this done, and

10   we'll march forward.

11           Let me go back, then, to Interrogatory Number 2.

12           **MR. LEE:**  Your Honor, if I could just address this

13   issue for just a moment before we move on to the written

14   discovery.

15           **THE COURT:**  Sure.

16           **MR. LEE:**  Your Honor, so, we have no objection with

17   moving document production along.  I mean, we understand that

18   deadlines are very tight in this case.  And, you know, we're

19   prioritizing getting things done on our end, as well.  So, no

20   objections to proceeding as you've provided, but I just want

21   to -- I want to dispel the notion that this is a unilateral

22   issue.  I'm willing to state, through no fault of counsel on

23   either side, discovery in this case has become incredibly

24   compressed.  And I think it's fair to say neither side has made

25   the bulk of their document production.  And a big part of the

1    hang-up there is search terms, custodians, hit counts.

2         Now, we have not heard a list of custodians and

3    search terms from Netlist.  I mean, they represented to me that

4    they're conducting a diligent search internally, and I

5    certainly believe them; I'm not trying to impugn the integrity

6    of my opposing counsel.  But if the Court's priority is getting

7    document production done, I think we have to do this one of two

8    ways.  Either Netlist needs to disclose its search terms and

9    custodians to Samsung, and we need to have that negotiation in

10   parallel; or, if the Court would order Samsung to just go ahead

11   with document production, conduct a diligent internal search

12   based on its own search terms, without kind of going through

13   this blow-by-blow process with Netlist just to get it done as

14   soon as possible, I mean, that's certainly something we're

15   willing to -- willing to do, and we're able to do.  I just want

16   to prevent the situation where Samsung discloses all of its

17   search terms and Netlist doesn't.

18         **MR. LaMAGNA:**  So, if I could just respond to that for

19   a moment, and I think there is a -- that's -- I don't think

20   that that's an issue.  So, as I described to Mr. Lee in

21   conferring, we will have substantially completed our production

22   in the coming week or so probably.  I anticipate hopefully for

23   this Friday; if not, by, you know, over the weekend or Monday

24   we will probably have the lion's share of our production out to

25   them.  That will be at least a week or 10 days before our

1 written objections on their RFPs are even due.  We will

2 probably complete -- I would say near all; probably all that we

3 can find, at least at this stage.  We're still, obviously,

4 looking, but we will have more substantial compliance, probably

5 overwhelming compliance with what we're getting out the door

6 before our written objections are even in their hands, within

7 the 30 days of their RFPs being served, because we've been

8 working on this from before they served the RFPs.

9         As I said to him, we are not limiting our search

10 efforts by search terms.  Now, we are -- we have searched for

11 documents within the custodial set that include a reference to

12 Samsung.  We are collecting and providing all emails with

13 relevant custodians that are sent to or from Samsung, you know,

14 related to this litigation without using -- other than needing

15 to identify that it's an email going to Samsung, but we are not

16 then further curating down those emails to exclude them based

17 on search terms.

18         One of the problems that we've had that Mr. Lee and I

19 disagree on is that Samsung would like to use search terms in a

20 way that I think disingenuously excludes documents.  For

21 example, they would like to search for -- if they're looking

22 for Netlist orders, they want to look for -- or requests, they

23 want to look for the word "Netlist" within five words of the

24 word "order."  And as I described to Mr. Lee, I said, well,

25 what if the email comes in and says, you know, "Dear Samsung,

1    can we get" -- using the verb "get" -- "a thousand units of

2    this, you know, DRAM module?"  Or, "We'd like to receive a

3    thousand units of this by February first," or et cetera.  We

4    could go through this game with English, and I could think of

5    dozens or a hundred synonyms for different -- you know,

6    different words or verbs that could be used to order product.

7    They don't necessarily use the word "order," O-R-D-E-R, in all

8    of these emails.

9           So, I said to him, "Look, I think the thing to do is

10   just simply produce all of the emails that are exchanged

11   between your contact person and our procurement guy, and that

12   should cover, you know, providing us all those emails."  And so

13   far, Mr. Lee has refused to do that.  He would rather go

14   through this process of using search terms and reviewers to try

15   to narrow those down, which is actually more laborious, because

16   at the end of the day, that will severely narrow the responsive

17   documents.

18          So, to clarify, we are not asking the Court to order

19   that Samsung use their internal search terms, which we have

20   never gotten hit counts from from them, which we have argued

21   from the beginning are artificially and narrowly constrained to

22   provide production.  We are asking that all responsive

23   documents be produced.

24          **MR. LEE:**  Your Honor, just two sentences added on to

25   that.  I mean, Netlist can complain about our search terms

12

1   because we've disclosed them.  We cannot complain about

2   Netlist's search terms because they have not disclosed them.

3   If the standard here is just that both parties can conduct

4   their own diligent search, then we can get that started

5   immediately, and we can make the document production very

6   quickly.

7           **MR. LaMAGNA:**  I don't -- and again, I don't know how

8   I can make this more plain.  If I am looking for all documents

9   related to the relationship with Samsung, we're reviewing all

10  of these people's email for those documents.  So, it's not

11  Samsung plus some other word.  It's Samsung.  It's all of the

12  documents that we have reviewers looking at.  We started with a

13  terabyte of documents, of email documents, and I've had -- I

14  have had a team of a dozen reviewers working on going through

15  those documents for -- I don't know how long; six weeks?  I

16  mean, we've been working diligently to try to screen through

17  and screen for privilege and et cetera those documents.

18          So, there isn't -- what Mr. Lee is setting up here is

19  a bit of a strawman argument.  He's suggesting that there's

20  these search terms that we haven't identified for him.  That's

21  because we are brute force going through all of the documents

22  that we think are potentially relevant and trying to make sure

23  that we are capturing everything that is potentially relevant

24  or responsive to this relationship.  And I -- you know, I think

25  that you will see when we talk about final hit counts here or

1 document counts, you will see a stark order of magnitude

2 difference in what we're going to be producing and what they're

3 going to be producing.

4          **THE COURT:**  Okay.

5          **MR. LaMAGNA:**  As I described --

6          **THE COURT:**  You know, so -- so, I appreciate your

7 comments, and we have been a little bit of talking around and

8 around, and I'm not going to -- I'm not going to file this one

9 off.  Mr. Lee, we need to do better from Samsung's end, and we

10 need to do better by the end of the week.  Okay?  And if there

11 is not, you're going to find yourself on the receiving end of

12 an order that's drafted by Mr. LaMagna.  Do you understand?

13          **MR. LEE:**  Yes, Your Honor.

14          **THE COURT:**  All right.  Mr. LaMagna, give me an order

15 by Thursday at 5:00 -- at noon.  Mr. Lee, give me a -- new

16 responses, a response to that on Friday, and we'll have a

17 hearing on Monday at 10:00.  Like I said, we're going to have a

18 hearing -- we're going to have an order by Monday, next Monday

19 morning.

20          **MR. LaMAGNA:**  Yes, Your Honor.  No issue with that.

21          **THE COURT:**  Okay.  Let's turn, then, to Interrogatory

22 Number 2.  I recall our previous discussion about it, and I've

23 reviewed carefully Samsung's supplemental answer, and on the

24 one hand, Mr. LaMagna, I understand you're -- you're

25 probably -- it's not the answer you'd hoped for or the details

14

1    you wished for.  At the same time, it attributes Samsung's

2    inability to fulfill your client's requests to -- to some

3    pretty specific things, and I guess by that, disclaims other

4    issues by not attributing it to those things.

5           So, I guess the way I would describe that is Samsung

6    has put itself in a lane, and that -- that gives you, I guess,

7    the ability, then, to explore whether that lane is accurate or

8    not.  I don't know that additional -- additional response would

9    really serve any interest.  I mean, certainly you can explore

10   with the -- in the documents or with individual deponents

11   individual requests that maybe may appear in the documents, but

12   I guess I'm not -- I'm not inclined to have Samsung do anything

13   additional with this one.

14           **MR. LaMAGNA:**  Thank you, Your Honor.  Well, just to

15   address that briefly, recall that Samsung objected that it

16   would be hugely burdensome and difficult for them to respond to

17   Interrogatory Number 2 because they'd have to go through and

18   identify all the times that they told us no, basically, to

19   product requests.  And, then, notwithstanding that, because we

20   are undergoing that effort as well, we have to go and sort of

21   articulate what we -- the times that product requests were

22   denied, because that's going to be -- have to be the basis of

23   our damages claim and our claim that the breach was material.

24   You ordered them to do the same.

25           So, what we've responded here is there's basically

1   two operative sentences:  the sentence on page six where they

2   say that they told us, like they told other people, that they

3   were unable to support individual requests; and a sentence at

4   the end of that response that says that in 2017 they told us,

5   you know, that we canceled some orders.

6          Now, this can't be the response that Mr. Lee was

7   objecting to providing, because if it were, well, why are we

8   having the dispute before Your Honor?  Why didn't he just write

9   this the first time?  When he responded and said, hey, we can't

10  do this, this is going to be a lot of burden for us, he must

11  have been thinking about having to go through and articulate,

12  for that first sentence I was talking about, all of the

13  instances when they actually told us no.  And that is, I think,

14  what Your Honor ordered.  So, what they basically did, as a

15  matter of self-help, is they defaulted back to not doing the

16  thing that he said initially that he didn't want to do that the

17  Court then later ordered him to do.

18          The reason I think it's important is we will have

19  to -- like I said, we have our own internal records.  Those

20  may -- because we're going back over a course of years, they

21  may not be complete; they may not match Samsung's records.  We

22  will have to provide a list for damages purposes and for

23  materiality of the specific instances in which, you know, to

24  support our claim and we've said, here, we'd like a certain

25  amount of product, and they told us no.  That's that sentence

1    he said here that we told them, quote -- you know, that Samsung

2    is, quote, "unable to support individual requests for

3    products."

4         Now, when you look at my list, what do I have to

5    compare that to?  All I have is four or five words.  I don't

6    actually have a list from them of the times when they say that

7    that happened.  Now, like I said, I have my records, which

8    maybe are 85, 90 percent complete; I don't know.  You know,

9    there may be stuff from years gone by where we just don't have

10   a record of the communication and Samsung does.  I think we're

11   entitled as a matter of fact discovery to have a more -- you

12   know, a disclosure of the instances of the times when they say

13   that this happened, and that is what Mr. Lee said he did not

14   want to provide, and it is what was initially ordered.  Because

15   now what we're going to have is my list, which is more -- will

16   be more fulsome, and their sentence.  And I guess that's okay,

17   so long as they don't get to challenge my list.  So long as

18   they don't say my list is wrong in some way, or whatever,

19   then -- then, you know, that that will, I suppose limit the

20   damage.  But if they're not going to provide their own list in

21   comparison to our list, then I think that they need to be, at

22   minimum, prevented from challenging the completeness or

23   accuracy of my list.

24              **THE COURT:**  All right.  Mr. Lee?

25              **MR. LEE:**  Yes, Your Honor.  I think Mr. LaMagna's

1    misrepresenting the discussion we had on this previously, but I

2    won't go into much into that.  Your Honor, I think you're

3    very -- you're correct in saying that Samsung has put itself in

4    a lane by making this response, and, you know, obviously, it's

5    a lane that's quite favorable to Mr. LaMagna's client, because

6    ultimately the purpose of this interrogatory was to ask, when

7    did Samsung reject individual product requests from Netlist

8    during that time period from 2015 to the present.  And

9    essentially what Samsung answered -- and this is the result of

10   a diligent investigation on our part of what communications

11   went back and forth between Samsung and Netlist -- is that we

12   rejected requests during that entire period, all the time,

13   routinely, because that is what this relationship is like, and

14   that is what this market is like.  So, I don't really

15   understand why Mr. LaMagna thinks that this is -- this response

16   is inadequate when I think -- I think his client is getting

17   precisely the response they wanted when propounding this

18   interrogatory.

19             **THE COURT:**  All right.  Yeah, my -- I understand your

20   concerns, Mr. LaMagna, and I think they're -- they're

21   understandable.  You know, written discovery often leaves the

22   parties, you know, a little less than a full tank, I guess is

23   the way I would describe it, 75, 80 percent satisfied.  And I

24   understand that that additional 20, 25 percent you're feeling

25   unsatisfied about, and you're concerned that your list is going

18

1  to get challenged.  It's going to be hard to do that given this

2  response, I think, unless it's amended or supplemented.  But I

3  don't want to get into that, because that's really an issue for

4  a trier of fact, or if there is some sort of dispute about

5  whether it's proper to amend or supplement the response.  So, I

6  think we need to leave number two -- the answer to number two

7  as is, and then jump ahead to the other interrogatories that

8  Samsung has described as contention interrogatories.

9          **MR. LaMAGNA:**  Thank you, Your Honor.  Yeah, I think

10  that those are probably the more urgent issue.  I mean, as you

11  can appreciate, the goal of discovery here is to identify the

12  facts, and part of the purpose of discovery is to know what

13  facts the other side is asserting as the basis for various

14  aspects of the claims or defenses in the case.  So, as is

15  commonly the case, you know, parties will serve

16  interrogatories, and I think -- I'm not sure that this is

17  entirely fair to call these all contention interrogatories, but

18  basically saying, what facts, you know, are you asserting, you

19  know, support this point or that point, which we've done in

20  that string of -- you know, of interrogatories.  These -- I'm

21  sure as Your Honor reads the interrogatories themselves, you'll

22  be familiar with that -- seeing these kinds of questions.  And

23  we have gotten, as you saw, zero response.

24          It's -- they have just clearly, I think, stepped

25  outside of what the rules require.  We are entitled to know --

19

1   for example, you know, take if somebody raises an affirmative

2   defense, that they say, you know, I think that you've -- you

3   know, the termination notice was ineffective, or something like

4   that.  Well, why?  You know, what is it; are you saying that we

5   didn't mail it?  We didn't stamp it right?  We didn't address

6   it to the right person?  You know, what are the facts that you

7   are using to support these various different, you know, points

8   in your case?

9           And in light of that, I think that the easy solution

10  here is to simply put it on to Samsung to comply with their

11  obligations, is to set a deadline for them.  It can be, say --

12  you know, I requested at the end of the week; if Your Honor

13  wants to roll it to the beginning of next week -- but to, you

14  know, identify a date, say a week from now, where they respond,

15  and they put whatever facts that they are aware of.  Now, if

16  something comes out in discovery later, that's fine.  They

17  wouldn't be, you know, prevented from using that, but I think

18  we need to draw a fence around the facts that they are going to

19  rely on based on what they know.

20          They have our complaint from a year ago.  Fact

21  discovery has been going on for, you know, nearly six months

22  now.  We're five weeks, as you pointed out, from the end of

23  fact discovery.  We have depositions in two weeks.  We have a

24  30(b) -- we'll have a 30(b)(6) deposition coming up in a couple

25  of weeks.  How can we handle those depositions if we don't know

20

1    the facts on which they are basing their defenses in this case?

2            **THE COURT:**  Let me stop you there, Mr. LaMagna,

3    because I am not going to quarrel with one thing that you said.

4    And I -- my preparatory comments would have been here, you

5    know, it is -- it is very common for parties to contend that

6    interrogatories are contention interrogatories and that they

7    cannot be answered at this early stage of discovery.  I'm

8    generally skeptical of that objection, even at the earliest

9    stage of discovery, in a long fact discovery period, because,

10   you know, my general response is, responses can be amended or

11   supplemented if additional facts are learned through discovery,

12   and that's why the rules permit that.  So, I generally don't

13   let parties forestall answering interrogatories because they

14   are so-called contention interrogatories at even -- at even

15   much earlier stages of the case.  But we are, obviously, at a

16   very late stage.  And I think you're entitled to a substantive

17   response.

18           So, I mean, my only question to Mr. Lee is going to

19   be, when are you going to -- when can you give me a substantive

20   response to these so-called contention interrogatories?

21           **MR. LEE:**  Your Honor, obviously, our preference would

22   be that -- so, we have a set of interrogatories we're waiting

23   on from Netlist.  If Your Honor would like a supplement to

24   these interrogatories, I think we can do so within a week.  So,

25   probably by the -- by the end --

1    **THE COURT:**  Then, that's what I'll order.  And if you

2  have problems with Netlist's responses to your interrogatories,

3  let's discuss those, and I'm going to set a time next week for

4  us to -- so, we have -- we have one follow-up call next Monday,

5  which is to discuss Samsung -- I'm sorry -- Netlist's proposed

6  order regarding document production.  I'll invite both parties

7  to submit to me any issues with respect to other discovery

8  responses that are ripe for my -- discussion with me by the end

9  of the day Friday, by the same two-page letter process, and we

10  can discuss those on Monday.

11    But then, in addition, let's schedule another call

12  next Thursday for -- next Thursday would be the -- I need to

13  find a calendar -- 22nd.  And then we'll have a call next

14  Thursday, on the 22nd, we'll have a call on the 29th, both at

15  10:00 a.m., and we'll make sure we run all of these issues to

16  ground before the 29th.  And that way we're getting all of this

17  resolved, and you're going to complete the discovery by the

18  fact discovery cutoff and get this case ready for trial before

19  your trial date.

20    **MR. LEE:**  Your Honor, just one thing on that.  So,

21  Samsung's discovery -- written discovery requests, the

22  responses are due by, I believe, the 28th.  So, if we could

23  perhaps have that last call on the 30th, that would at least

24  give the parties a small amount of time to meet and confer on

25  those responses prior to that call.

1            THE COURT:  Um, that's --

2            MR. LaMAGNA:  I think, Your Honor, given the number

3    of issues that we've had and balls in the air, if there are

4    deficiencies or problems, you know, I don't mind having an

5    additional call, you know, subject to the Court's availability,

6    but I think we should keep the existing calls that we have,

7    because we certainly have a lot of issues.  I don't think --

8            THE COURT:  Yeah --

9            MR. LaMAGNA:  -- that Mr. Lee is going to have a

10   problem with our responses.

11           THE COURT:  So, we have a hearing on the 19th, we

12   have a hearing on the 22nd and (**audio glitch**) hearing on the

13   29th.  Let's keep it that way for now.  I'm going to be

14   juggling a number of things on the 30th.  You're not my only --

15   you're not my only customer getting in under the wire before my

16   trip the first week of August, so let's try to keep that clear

17   for now.

18           Are there any other issues, Mr. LaMagna, that we

19   should address today?

20           MR. LaMAGNA:  I believe that that covers it.  I think

21   the other items in our letter were just kind of FYI, as the

22   points that we think are percolating, you know, for the next

23   call.

24           THE COURT:  Well, let's percolate them as quickly as

25   we can and make sure we take care of them next week if

23

1    possible.

2           **MR. LaMAGNA:**  Absolutely.

3           **THE COURT:**  Mr. Lee.

4           **MR. LEE:**  Nothing further from us, Your Honor.

5           **THE COURT:**  Okay.  Thank you very much.  I've got to

6    get back to my boat so it doesn't get sailed out of the harbor.

7           **MR. LaMAGNA:**  Thank you, Your Honor.

8           **THE COURT:**  All right.  Thank you.

9           **MR. LEE:**  Thank you.

10          **(Proceeding adjourned)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **August 5, 2021**

                Signed                                      Dated


                    *TONI HUDSON, TRANSCRIBER*