# EXHIBIT 93

| | |
|---|---|
| From: | Ho-jung Kim<hojung4623.kim@samsung.com> |
| Sent: | Thu, 29 Oct 2015 04:25:37 -0400 (EDT) |
| To: | Jibum Kim <jbkim@netlist.com>; Kyu-han Han<kyuhan_han@samsung.com>; Jung-bae Lee<jungbae.lee@samsung.com>; Hyun-ki Ji<hyunki.ji@samsung.com> |
| Cc: | Seung-min Sung <jeff.sung@samsung.com> |
| Subject: | Re: FW: Netlist's Revised JDLA |
| Attachments: | Applying for reduced tax rate under tax treaty_eng.pdf;Reduced Tax Form_Foriegn Corporation.doc;Vendor Code Request Form.xlsx;Netlist-Samsung_Development Agreement (SEC 102915).docx |

EVP Ji,

For your review, I am sending you the modified copy reviewed by our company based on the modified copy received from Netlist and the details agreed on during the conference call.

I am also sending you the necessary documents to remit NRE expenses, so I would appreciate it if you can include it when you send the JDLA back to us.

Attachment 1: Modified copy of JDLA
Attachment 2: Vendor registration request form
Attachment 3: Application for reduced tax rate (document necessary for discount on tax withholding)
Attachment 4: Instruction for Application for reduced tax rate

Additionally, please send a scanned copy of the invoice for NRE $8M (with signature by Netlist) (please send the original copy to the address below) and a draft of the press release.

Address: *1 Samsungjeonja-ro, Hwasung-si, Gyeonggi-do, Korea (445-330)*


Ho-jung Kim | Jay Kim

Manager | Strategic Planning Team | Memory Division | Samsung Electronics co.,Ltd.
Office +82-31-208-6159 | Mobile +82-10-5361-0001 | hojung4623.kim@samsung.com


------- **Original Message** -------
**Sender** : Jibum Kim<jbkim@netlist.com>
**Date** : 2015-10-23 09:54 (GMT+09:00)
**Title** : FW: Netlist's Revised JDLA

VP Han,

I am sending you our company's JDLA so please review and let us know of your opinion.

Agreement was reached in regard to IPR over the phone and this was reflected in a section titled <u>Solely-owned Collaboration IPR</u> and was newly introduced to eliminate any confusion going forward.

Please give me a call if you need at any time and let's discuss it early next week.

CONFIDENTIAL – ATTORNEYS' EYES ONLY



NL044878

I believe that next week, both companies would need to get together for a final wrap-up.

Best regards.

> **From:** Noel Whitley
> **Sent:** Friday, October 23, 2015 9:10 AM
> **To:** Jibum Kim <jbkim@netlist.com>
> **Subject:** Netlist's Revised JDLA
>
> Gentlemen,
>
> Netlist's markup of Samsung's last draft of the JDLA is attached in both clean and redline form. Here's an overview of Netlist's proposed changes:
>
> - PRODUCTIZATION LICENSE (Section 5.4): Samsung has reinserted a Productization License that, as mentioned previously, was never raised in prior negotiations and is completely inconsistent with the MOU's focus on collaboration. However, Netlist believes that progress was made in discussions between Mr. Kim and Mr. Han. Netlist has amended Section 5.4 as follows to reflect the understandings reached in those discussions, all of which are consistent with the MOU and prior negotiations between the parties.
>
>   - Background IPR
>     - Samsung's requested Productization License, as written, would grant Samsung rights to ALL of Netlist's non-patent IPR, including all of the preexisting designs and know-how that Netlist brings to the table. This would effectively amount to a transfer or sale of Netlist's technology to Samsung. Netlist does not believe this was Samsung's intent based on the language of the MOU which does not contemplate a sale of Netlist's technology, nor does it require the parties to license each other to background IPR. Rather, under the MOU, Samsung has the option later to acquire the technology via the ROFR (now Section 5.2 in the JDLA) in a second transaction. Mr. Kim and Mr. Han agreed on this point.
>     - Netlist has therefore amended the JDLA (in Section 5.4 and related sections) to make clear that the parties own background IPR brought to the collaboration, and that no licenses to background IPR are granted at this time. Section 5.3 of the JDLA contemplates that the parties will negotiate at a later date the details associated with commercializing an NVDIMM-P product, including further technical collaboration and securing additional IPR licenses.
>     - Netlist also reinserted its proposed language to 6.3 to make clear that confidential information of the other party cannot be used in the development of non-collaboration products. This language is clearly consistent with the understandings reached between Mr. Kim and Mr. Han. Netlist does not understand why Samsung would refuse to agree that it will not use Netlist's solely owned confidential information and technology <u>in the development of non-collaboration products</u>. This is contrary to the collaborative effort envisioned by the MOU and JDLA, and if Samsung continues to press this point will raise serious concerns about its motivations. As mentioned below, both parties would have access to Jointly-owned Collaboration IPR for use in other non-collaboration products.
>
>   - <u>Solely-owned Collaboration IPR</u>: Any IPR conceived solely by a party during the course of the collaboration will be owned by that party, but will be licensed to the other party <u>only</u> for use in products that result from the collaboration, not other non-collaboration products. Any improvements, for example, that a party makes to its solely owned IPR (without contribution from the other party) will be licensed to the other party for use in any collaboration products (though the license will not include background IPR). The licenses to Solely-owned Collaboration IPR are included in Netlist's markup to Section 5.4.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

NL044879

- o <u>Jointly-owned Collaboration IPR</u>: Any IPR that is jointly developed by the parties will be jointly owned, and both parties can use this IPR in any of their products.

- STANDARDIZATION (Section 5.1): Netlist is of course willing to abide by the terms of the IP policy of the relevant standards body. However, Netlist will not agree to license anything beyond the form factor and interface protocol, as agreed in the MOU. Netlist has amended Section 5.1 accordingly.

- ROFR (Section 5.2): Netlist returned the language to mirror what was agreed upon in the MOU, as originally proposed by Samsung in the first draft JDLA.

- PAYMENT (Section 3.1): The parties contemplated throughout the negotiation that consideration would be exchanged at closing. For example, the licenses becoming effective when the JDLA is signed, and funds under the convertible debt are transferred at close. There is no reason why NRE should be treated differently, so should be paid at the close of this transaction.

- PRODUCT DEFINITIONS (Section 1): Samsung again deleted the qualifier "Netlist-branded" or "Samsung-branded" from the definition of Licensed Products in the JDLA. These limitations were clearly stated in Sections III.1 and III.2 of the MOU, and should therefore remain in the JDLA.

- MISCELLANEOUS
    - o Taxes (Section 3.2). Netlist simply asks for Samsung's reasonable cooperation to achieve the most favorable tax treatment, which costs Samsung nothing and inures to the benefit of both parties. Please provide the rationale for deleting this provision.
    - o Releases (Sections 7.1 and 7.2). Netlist clarified that the releases only apply to the conduct of the parties (and their subsidiaries). Samsung's proposed language was unclear and could potentially apply to (and release) the conduct of a third party.
    - o Subsidiaries (Section 8.5). Netlist does not understand Samsung's objection to the second sentence, which is consistent with the agreed upon language in the first sentence. Neither party should be required to provide a license and a release to a subsidiary of the other party, if that subsidiary is unwilling to provide a reciprocal license and release back. Please provide the rationale for deleting this language.
    - o Term (Section 11.3). The protections afforded both parties under the Confidentiality terms of Section 11 should be consistent with the useful life of the information being exchanged by the parties. Netlist believes that 5 years is too short, so suggested a 10 year term. However, Netlist is willing to compromise with a 5 year term as the default, but a longer 10 year term for highly confidential information designated by either party as Restricted Information.

Best Regards,

Noel



**Noel Whitley**
VP, IP & Licensing
175 Technology
Irvine, CA 92618
Direct: 949-679-0115
Email: nwhitley@netlist.com

Tel:949.435.0025
Fax:949.435.0031
www.netlist.com

The above message is intended solely for the named addressee and may contain trade secret, industrial technology or privileged and confidential information otherwise protected under applicable law including the Unfair Competition Prevention and Trade Secret Protection Act. Any unauthorized dissemination, distribution, copying or use of the information contained in this communication is strictly prohibited. If you have received this communication in error, please notify the sender by email and delete this communication immediately.

The above message is intended solely for the named addressee and may contain trade secret, industrial technology or privileged and confidential information otherwise protected under applicable law including the Unfair Competition Prevention and Trade Secret Protection Act. Any unauthorized dissemination, distribution, copying or use of the information contained in this communication is strictly prohibited. If you have received this communication in error, please notify the sender by email and delete this communication immediately.

 Applying for reduced tax rate under tax

CONFIDENTIAL – ATTORNEYS' EYES ONLY

NL044881

# CERTIFICATION OF TRANSLATION

# and

# DECLARATION

State of California            )
                               )    S. S.
Los Angeles County             )

      I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated <u>Document with Bates No. NL044879 – NL044881</u> from Korean to English and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

**<u>Description of Translated Documents</u>**

<u>Document with Bates No. NL044879 – NL044881</u>

Executed on July 19, 2021

*[signature]*

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

| | |
|---|---|
| From: | 김호정 <hojung4623.kim@samsung.com> |
| Sent: | Thu, 29 Oct 2015 04:25:37 -0400 (EDT) |
| To: | Jibum Kim <jbkim@netlist.com>; 한규한<kyuhan_han@samsung.com>; 이정배<jung-bae.lee@samsung.com>; 지현기<hyunki.ji@samsung.com> |
| Cc: | 성승민 <jeff.sung@samsung.com> |
| Subject: | Re: FW: Netlist's Revised JDLA |
| Attachments: | Applying for reduced tax rate under tax treaty_eng.pdf;Reduced Tax Form_Foriegn Corporation .doc;Vendor Code Request Form.xlsx;Netlist-Samsung_Development Agreement (SEC 102915).docx |

김지범부사장님,

Netlist에서 보내주신 수정본과 컨퍼런스콜 時 합의된 내용을 바탕으로
자사에서 리뷰한 수정본을 송부드리오니 검토 부탁드립니다.

또한 NRE 비용 송금을 위해 필요한 서류를 보내드리오니,
JDLA 재송부 時 함께 보내주시면 감사하겠습니다.

첨부1 : JDLA 수정본
첨부2 : Vendor 등록 신청서
첨부3 : 제한세율적용신청서(원천세 할인을 위해 필요한 서류)
첨부4 : 제한세율적용신청서 작성 가이드

추가로 NRE $8M에 대한 Invoice (Netlist 서명이 된) 스캔본 (원본도 하기 주소로 보내주세요.) 및
Press-release 초안도 송부해 주시길 바랍니다.

주소 : 1 Samsungjeonja-ro, Hwasung-si, Gyeonggi-do, Korea (445-330)

김호정 | Jay Kim

Manager | Strategic Planning Team | Memory Division | Samsung Electronics co.,Ltd.
Office +82-31-208-6159 | Mobile +82-10-5361-0001 | hojung4623.kim@samsung.com

------- Original Message -------
Sender : Jibum Kim<jbkim@netlist.com>
Date : 2015-10-23 09:54 (GMT+09:00)
Title : FW: Netlist's Revised JDLA

한상무님,

자사의 JDLA를 보내니 검토 후 의견 주시기 바랍니다.

IPR 내용은 유선상으로 기 합의되었고 이를 Solely-owned Collaboration IPR라는 항목으로 반영하여
향후 혼선되는 부분을 사전에 제거토록 새로 도입하였습니다.

필요하시면 언제든지 연락 주시기 바라며 다음주 초에 논의토록 하시죠.

CONFIDENTIAL - ATTORNEYS' EYES ONLY
NL044878

아마도 다음주에는 양사가 함께 해서 최종 마무리 짓는 것이 필요할 것으로 생각됩니다.

Best regards.

---

**From:** Noel Whitley
**Sent:** Friday, October 23, 2015 9:10 AM
**To:** Jibum Kim <jbkim@netlist.com>
**Subject:** Netlist's Revised JDLA

Gentlemen,

Netlist's markup of Samsung's last draft of the JDLA is attached in both clean and redline form. Here's an overview of Netlist's proposed changes:

- PRODUCTIZATION LICENSE (Section 5.4): Samsung has reinserted a Productization License that, as mentioned previously, was never raised in prior negotiations and is completely inconsistent with the MOU's focus on collaboration. However, Netlist believes that progress was made in discussions between Mr. Kim and Mr. Han. Netlist has amended Section 5.4 as follows to reflect the understandings reached in those discussions, all of which are consistent with the MOU and prior negotiations between the parties.

    o Background IPR
        - Samsung's requested Productization License, as written, would grant Samsung rights to ALL of Netlist's non-patent IPR, including all of the preexisting designs and know-how that Netlist brings to the table. This would effectively amount to a transfer or sale of Netlist's technology to Samsung. Netlist does not believe this was Samsung's intent based on the language of the MOU which does not contemplate a sale of Netlist's technology, nor does it require the parties to license each other to background IPR. Rather, under the MOU, Samsung has the option later to acquire the technology via the ROFR (now Section 5.2 in the JDLA) in a second transaction. Mr. Kim and Mr. Han agreed on this point.
        - Netlist has therefore amended the JDLA (in Section 5.4 and related sections) to make clear that the parties own background IPR brought to the collaboration, and that no licenses to background IPR are granted at this time. Section 5.3 of the JDLA contemplates that the parties will negotiate at a later date the details associated with commercializing an NVDIMM-P product, including further technical collaboration and securing additional IPR licenses.
        - Netlist also reinserted its proposed language to 6.3 to make clear that confidential information of the other party cannot be used in the development of non-collaboration products. This language is clearly consistent with the understandings reached between Mr. Kim and Mr. Han. Netlist does not understand why Samsung would refuse to agree that it will not use Netlist's solely owned confidential information and technology <u>in the development of non-collaboration products</u>. This is contrary to the collaborative effort envisioned by the MOU and JDLA, and if Samsung continues to press this point will raise serious concerns about its motivations. As mentioned below, both parties would have access to Jointly-owned Collaboration IPR for use in other non-collaboration products.

    o <u>Solely-owned Collaboration IPR</u>: Any IPR conceived solely by a party during the course of the collaboration will be owned by that party, but will be licensed to the other party <u>only</u> for use in products that result from the collaboration, not other non-collaboration products. Any improvements, for example, that a party makes to its solely owned IPR (without contribution from the other party) will be licensed to the other party for use in any collaboration products (though the license will not include background IPR). The licenses to Solely-owned Collaboration IPR are included in Netlist's markup to Section 5.4.

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                           NL044879

- ○ <u>Jointly-owned Collaboration IPR</u>: Any IPR that is jointly developed by the parties will be jointly owned, and both parties can use this IPR in any of their products.

- STANDARDIZATION (Section 5.1): Netlist is of course willing to abide by the terms of the IP policy of the relevant standards body. However, Netlist will not agree to license anything beyond the form factor and interface protocol, as agreed in the MOU. Netlist has amended Section 5.1 accordingly.

- ROFR (Section 5.2): Netlist returned the language to mirror what was agreed upon in the MOU, as originally proposed by Samsung in the first draft JDLA.

- PAYMENT (Section 3.1): The parties contemplated throughout the negotiation that consideration would be exchanged at closing. For example, the licenses becoming effective when the JDLA is signed, and funds under the convertible debt are transferred at close. There is no reason why NRE should be treated differently, so should be paid at the close of this transaction.

- PRODUCT DEFINITIONS (Section 1): Samsung again deleted the qualifier "Netlist-branded" or "Samsung-branded" from the definition of Licensed Products in the JDLA. These limitations were clearly stated in Sections III.1 and III.2 of the MOU, and should therefore remain in the JDLA.

- MISCELLANEOUS
    - ○ Taxes (Section 3.2). Netlist simply asks for Samsung's reasonable cooperation to achieve the most favorable tax treatment, which costs Samsung nothing and inures to the benefit of both parties. Please provide the rationale for deleting this provision.
    - ○ Releases (Sections 7.1 and 7.2). Netlist clarified that the releases only apply to the conduct of the parties (and their subsidiaries). Samsung's proposed language was unclear and could potentially apply to (and release) the conduct of a third party.
    - ○ Subsidiaries (Section 8.5). Netlist does not understand Samsung's objection to the second sentence, which is consistent with the agreed upon language in the first sentence. Neither party should be required to provide a license and a release to a subsidiary of the other party, if that subsidiary is unwilling to provide a reciprocal license and release back. Please provide the rationale for deleting this language.
    - ○ Term (Section 11.3). The protections afforded both parties under the Confidentiality terms of Section 11 should be consistent with the useful life of the information being exchanged by the parties. Netlist believes that 5 years is too short, so suggested a 10 year term. However, Netlist is willing to compromise with a 5 year term as the default, but a longer 10 year term for highly confidential information designated by either party as Restricted Information.

Best Regards,

Noel



Tel:949.435.0025
Fax:949.435.0031
www.netlist.com

**Noel Whitley**
VP, IP & Licensing
175 Technology
Irvine, CA 92618
Direct: 949-679-0115
Email: nwhitley@netlist.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                                                   NL044880

The above message is intended solely for the named addressee and may contain trade secret, industrial technology or privileged and confidential information otherwise protected under applicable law including the Unfair Competition Prevention and Trade Secret Protection Act. Any unauthorized dissemination, distribution, copying or use of the information contained in this communication is strictly prohibited. If you have received this communication in error, please notify the sender by email and delete this communication immediately.

상기 메일은 지정된 수신인만을 위한 것이며 부정경쟁 방지 및 영업비밀 보호에 관한 법률을 포함하여 관련 법령에 따라 보호의 대상이 되는 **영업비밀, 산업기술 등을 포함**하고 있을 수 있습니다. 본 문서에 포함된 정보의 전부 또는 일부를 **무단으로 제3자에게 공개, 배포, 복사 또는 사용하는 것은 엄격히 금지**됩니다. 본 메일이 잘못 전송된 경우, 발신인에게 알려 주시고 즉시 삭제하여 주시기 바랍니다.

✉ Applying for reduced tax rate under tax

CONFIDENTIAL - ATTORNEYS' EYES ONLY          NL044881