Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
  mmasters@birdmarella.com
David I. Hurwitz - State Bar No. 174632
  dhurwitz@birdmarella.com
Kate S. Shin - State Bar No. 279867
  kshin@birdmarella.com
Christopher J. Lee - State Bar No. 322140
  clee@birdmarella.com
Jong-min Choi - State Bar No. 329474
  jmchoi@birdmarella.com
Joyce J. Choi - State Bar No. 256165
  jchoi@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**<br><br>[Filed Concurrently with: (1) Defendant's Reply Brief ISO Motion for Summary Judgment Defendant's; (2) Defendant's Responses to Plaintiff's Objections to Samsung's Evidence in Support of its Motion for Summary Judgment and (3) Request for Judicial Notice]<br><br>Date:    September 20, 2021<br>Time:    9:00 a.m.<br>Crtrm.:  7C<br><br>Assigned to Hon. Mark C. Scarsi<br>Courtroom 7C |

Defendant Samsung Electronics Co., Ltd. ("Samsung") hereby submits its Reply to Netlist Inc.'s ("Netlist") Statement of Genuine Disputes of Material Fact in response to Defendant Samsung's Statement of Uncontroverted Facts and Genuine Issues.

## I.

## SAMSUNG'S REPLY TO PLAINTIFF'S GENUINE DISPUTES OF MATERIAL FACT

**Defendant's Allegation that Samsung is Entitled to Judgment on Plaintiff's First Cause of Action for Breach of Contract (Supply)**

1.     **Defendants' Allegation that Section 6.2 Is Limited To the Supply and Pricing Of Components For The Joint Development Project**

    a.     **Defendant's Allegation that The Parties Long Standing Business Relationship Involved $200 Million of Purchases Over 15 Years**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 1. Netlist has been a customer of Samsung since at least 2001, purchasing over $200 million of products, including NAND and DRAM components.<br><br>Declaration of Joyce J. Choi filed concurrently | Undisputed but immaterial.<br><br>The fact that Netlist purchased products from Samsung in prior years does not illuminate whether Netlist had a supply obligation that was breached. | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. This fact is material to course of dealing. |

2

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| herewith ("Choi Decl.") ¶ 2, Exh. 1 at p. SEC008161; ¶ 3, Exh. 2 at 11:21-12:12, 13:10-20, 14:8-15. | | |
| 2. Both before and after the JDLA and to the present, Samsung has been a significant and continuous supplier of NAND and DRAM to Netlist, as reflected in Netlist's annual reports.<br><br>Choi Decl. ¶ 4, Exh. 3 at p.6; ¶ 5, Exh. 4 at p.8; ¶ 6, Exh. 5 at 294:4-18; ¶ 7, Exh. 6 at p.F-36; ¶ 3, Exh. 2 at 185:10-186:1, 187:21- | Disputed and immaterial.  It is immaterial because the fact that Samsung and Netlist had an at-will sales relationship prior to the JDLA is immaterial to whether Samsung had a contractual obligation under the JDLA and whether Samsung breached it.<br><br>Also, the amount of products Netlist purchased from Samsung varied dramatically from year to year. Samsung was **not** "continuous[ly]" a "significant" supplier of NAND and DRAM | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. Plaintiff concedes that Netlist has been supplied with NAND and DRAM product by Samsung both before and after the JDLA.<br><br>Plaintiff adopts an arbitrary definition of the terms "continuous" and "significant" in order to |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 188:5. | to Netlist before the parties entered into the JDLA.<br><br>For example, in the year leading up to the execution of the JDLA, Samsung was a relatively minor supplier for Netlist and did not consistently supply products to Netlist.<br><br>Evidence:<br>• Ex. 75 to the August 30, 2021 LaMagna Declaration ("8-30-21 LaMagna Decl. (Samsung invoices from 2015 prior to signing of the JDLA, totaling $23,343.00)<br>• Chuck Hong Decl. [Dkt. 145-3], ¶ 8 ("Before the JDLA was signed, Samsung supplied effectively no product to Netlist and the relationship was ad hoc."). | manufacture a dispute. None of the evidence cited by Plaintiff disputes the uncontroverted evidence that Samsung supplied product to Netlist in every quarter from 2015 through present, as demonstrated by a document produced by Netlist itself. Choi Decl. ¶ 52, Exh. 51. (This exhibit also covers the post-2018 time frame).<br><br>In addition, the Chuck Hong Declaration is not admissible evidence. See Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | | Motion for Partial Summary Judgment) at 9:2-16. |
| | To the extent that SUF No. 2 is read as covering the period during the contract (November 2015 through July 2020), Samsung was also not "continuous[ly]" a "significant" supplier of NAND and DRAM to Netlist during the breach period because they also periodically cut supply, including setting Netlist's allocation at times to zero. See Defendant's response and evidence to SUF No. 58 incorporated herein.

Evidence:
• Ex. 76 to 8-30-21 LaMagna Decl. (Akemann Report), ¶¶ 123, 127, Exhibit 4 (Monthly Samsung Orders)
• Chuck Hong Decl. [Dkt. 145- 3], ¶ 10 ("In the quarters | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | after Samsung's zero-allocation decision, Samsung's supply to Netlist of DRAM and NAND dropped by more than two thirds. By the third quarter after this decision, the supply from Samsung trickled to virtually nothing.")<br><br>Defendant's cited supporting evidence does not support the alleged fact.<br><br>Evidence:<br>• Dkt. 150-2 [Samsung MSJ Ex. 4] at p.8 indicates that among Netlist's suppliers in 2018, Samsung was the smallest supplier.<br>• Dkt. 151-1 [Samsung MSJ Ex. 5] (Gail Sasaki Dep. Tr.) at 294:4-18 states that Samsung comprised "more than 10% of | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | our total purchases in 2013." • None of Defendant's exhibits cited covers post-2018 time frame. | |
| 3. Netlist also purchased NAND and DRAM products from SK Hynix and Micron, as well as from sellers who purchased the products from the manufacturers for resale. Choi Decl. ¶ 4, Exh. 3 at p.6; ¶ 6, Exh. 5 at 194:2-22, 294:4-18; ¶ 3, Exh. 2 at 205:23-206:18, 207:21-208:10. | Undisputed but immaterial. The fact that Netlist purchased products from other manufacturers when Netlist's customers needed a product specifically manufactured by SK Hynix or Micron, where Samsung's product was not qualified, is immaterial to the motion. Evidence: • Chuck Hong Decl. [Dkt. 145- 3], ¶¶ 6 ("Therefore, a server or storage manufacturer cannot simply replace a Hynix or Micron server memory for a Samsung server memory without re-qualification or, in some cases, a redesign of their server | Undisputed. Plaintiff does not dispute that they purchased product from SK Hynix and Micron. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. Whether a manufacturer is able to replace a Samsung part with a Hynix or Micron part as long as they go through the qualification process is irrelevant to Defendant's SUF No. 3. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | systems. Further, NAND and DRAM sourced in secondary channels from a third party are often of inferior quality compared to those components procured directly from the manufacturer. It would thus be risky to buy Samsung products from a third party without screening those products ahead of manufacturing and shipment."), 7 ("For these reasons, after the JDLA was signed, Netlist attempted to fill its entire requirement for Samsung- qualified NAND and DRAM from Samsung."). <br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) 218:17-220:2. | In addition, the Chuck Hong Declaration is not admissible evidence. *See* Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's Motion for Partial Summary Judgment) at 6:9-27; 8:18-28. |
| 4. The amount of NAND and DRAM product that | Disputed and immaterial. <br><br>There is no allegation of | No genuine dispute of material fact. There is no dispute that Samsung's |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Samsung can manufacture for sale is limited and demand for its products oftentimes exceeds available supply.<br><br>Choi Decl. ¶ 8, Exh. 7 at 121:24-122:13; Dkt. 89-21 at ¶ 4. | breach based on Netlist's requests for products that exceeded Samsung's manufacturing capacity. Nor is there evidence that Netlist's demand for products "often times" exceeded Samsung's supply.<br>To the extent there was ever a supply constraint, Netlist should have been prioritized over other customers to whom Samsung did not have a supply obligation.<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001), § 6<br>• Ex. 77 to 8-30-21 LaMagna Decl. (Harrison Yoo Dep. Tr.) at 68:11-18 (testifying that the allocation for Netlist was moved to Ma | manufacturing capacity is limited, as Plaintiff does not offer any evidence to the contrary. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>The purported fact that Samsung did not always ship to Netlist when they had availability, instead choosing to allocate product to other customers, does not dispute Defendant's SUF No. 4. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Lab) | |
| | • Ex. 78 to 8-30-21 LaMagna Decl. (SEC0003842) ("We should make a decision for Netlist support, then we can utilize Netlist SSD PA for Ma Lab support.") | |
| | • Dkt. 142-8 [Netlist MSJ Ex. 21] (SEC116009) ("As of now, we pulled all PAs for Netlist and distributed them to other customers such as Ma Lab.") | |
| | • Ex. 79 to 8-30-21 LaMagna Decl. (SEC060292) ("We don't have Q3 PA to support Netlist. All of PA is assigned for Corsair and Ma Labs support."). | |
| | While Samsung was scaling back allocation for Netlist, it was increasing allocation for its other customers. | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • Dkt. 142-12 [Netlist MSJ Ex. 33] (SEC126794) (Southwest Region slide deck, titled "JS CHOI Final 3.pptx," in which Samsung projected that Virtium and Smart Modular's forecasts would increase, unlike Netlist's forecasts).<br><br>Netlist is one of the few customers that has a supply agreement with Samsung; Samsung does not have a supply agreement with most of its customers.<br><br>Evidence:<br>• Samsung's Interrogatory Response No. 22 ("Excluding individual purchase orders, none of the Similarly Situated Customers currently has an agreement with Samsung that | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | obligates Samsung to supply any quantity of NAND or DRAM products.") <br> • Ex. 77 to LaMagna Decl. (Harrison Yoo Dep. Tr.) at 13:4-24 (identifying only Ma Lab as a customer other than Netlist with a supply agreement). | |
| 5. Due to the nature of the industry, Netlist, like other customers, provides Samsung with forecasts of the amount of product it wishes to purchase, and Samsung lets Netlist know how much product it can allocate to Netlist for purchase. <br><br> Choi Decl. ¶ 9, Exh. 8; ¶ 10, Exh. 9; | Undisputed in part that Netlist submitted forecasts for the amount of products requested. Disputed in part that Netlist submitted the forecasts "due to the nature of the industry." Netlist did so because Samsung demanded that this be the process. <br><br> Evidence: <br> • Ex. 81 to 8-30-21 LaMagna Decl. (Lane Kim Dep. Tr.) at | No genuine dispute of material fact. Plaintiff does not dispute that it submitted forecasts, and whether or not these forecasts were submitted at the "demand" of Samsung does not dispute Defendant's SUF No. 5. <br><br> Moreover, Plaintiff offers no evidence that supports the assertion that the forecasts were |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| ¶ 3, Exh. 2 at 35:10-36:13, 37:9-22, 61:25-62:5. | 27:21-29:23 (testifying about Samsung's forecast and purchase order process). <br><br> • Ex. 82 to 8-30-21 LaMagna Decl. (Raymond Jiang Dep. Tr.) at 32:18-33:9 (testifying that in addition to submitting forecasts via email, he would also call Samsung to ask about product availability). | demanded by Samsung. |
| 6. Following these discussions regarding allocations and availability, Netlist issued purchase orders for specific amounts of product that Samsung approved | Disputed. <br><br> Samsung did not engage in "discussions regarding allocations and availability" with Netlist. <br><br> Between November 15, 2015 until Q2 2017, Samsung | No genuine dispute of material fact. Plaintiff does not dispute that Netlist issued purchase orders for pre-approved amounts of product. <br><br> The purported fact that the amounts of product |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| beforehand.<br><br>Choi Decl. ¶ 12, Exh. 11 at 23:23-24:5;<br>¶ 3, Exh. 2 at 62:6-14;<br>¶ 13, Exh. 12 at 28:4-25. | agreed to allow Netlist to submit purchase orders for amounts commensurate with Netlist's requests.<br><br>Evidence:<br>• Ex. 81 to 8-30-21 LaMagna Decl. at (Lane Kim Dep. Tr.) 27:21-29:23 (testifying about forecast and purchase order process).<br>• P.K. Hong Decl. [Dkt. 145-2], ¶¶ 3-4.<br>• Chuck Hong Decl. [Dkt. 145- 3], ¶ 8.<br><br>From Q3 2017 onward, Samsung unliterally determined what it would or would not sell to Netlist (there were no "discussions"). See | approved by Samsung were "commensurate with Netlist's requests" during a certain time period, and then ceased to be commensurate during a later period, does not dispute the fact that pre-approval occurred, or that such pre-approval was prefaced by discussions regarding allocations and availability.<br><br>None of the evidence cited to by Plaintiff supports the assertion that "there were no discussions."<br><br>Likewise, the purported fact that Samsung |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Defendant's response and evidence to SUF No. 58 incorporated herein. | unilaterally determined what quantities would be approved is immaterial for the same reasons, and Netlist offers no evidence that controverts Samsung's evidence showing that discussions took place. In addition, the Chuck Hong and P.K. Hong Declarations are not admissible evidence. *See* Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's Motion for Partial Summary Judgment) at 9:2-16; 20:2-21:13 |
| 7. Samsung accepted | Undisputed that Samsung | No genuine dispute of |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| and fulfilled some of the purchase orders, put some on backlog, and rejected others, just as it did with other customers.

Choi Decl. ¶ 12, Exh. 11 at 36:8-11; Choi Decl. ¶ 3, Exh. 2 at 45:2-46:8, 62:6-14. | put "some on backlog, and rejected others." Undisputed but immaterial that Samsung "fulfilled some of the purchase orders." Netlist's claims concern the requests and purchase orders that Samsung *did not* fulfill.

Disputed as to the comparison to "other customers." The evidence shows that Samsung treated Netlist worse than other customers, by unilaterally capping and cutting supply. *See* Defendant's response and evidence to SUF No. 58 incorporated herein.

In addition, with respect to backlogs, Samsung frequently did not carry over backlog for Netlist. | material fact. Plaintiff does not dispute that Samsung fulfilled some purchase orders, put some on backlog, and rejected others.

Moreover, Plaintiff offers no evidence that Samsung did not engage in this same process with other customers.

Whether or not Samsung frequently cancelled Netlist's orders on backlog does not dispute Defendant's SUF No. 7. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence: | |
| | • Dkt. 142-3 [Netlist MSJ Ex. 15] (SEC005294) (June 2017 email in which Knuth reports that he convinced Netlist to cancel $2 million in backlog). | |
| | Defendant's cited supporting evidence does not support the fact. | |
| | Evidence: | |
| | • Defendant cites to the deposition testimony of Netlist witnesses (Steven Yu and P. K. Hong deposition transcripts, respectively). Neither exhibit speaks to what Samsung did with "other customers." | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 8. This business protocol—the use of backlogs, forecasts, allocations, and purchases orders— remained the same throughout the parties' long standing business relationship and even after the JDLA was executed.<br><br>Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 62:6-14; ¶ 14, Exh. 13 at p.NL004680. | As to the parties' dealings outside of the contract period, those dealings are irrelevant to Samsung's breach during the contract period.<br><br>Disputed as to the "business protocol," which per Defendant's responses to SUF Nos. 5-7 incorporated herein, is disputed between the parties.<br><br>In particular, during the contract period, the use of backlogs, forecasts, allocations, and purchases orders did not "remain the same." See Defendant's response and evidence to SUF Nos. 5-7 incorporated herein.<br><br>During the term of the JDLA, in Q2 2017, notwithstanding any | No genuine dispute of material fact. Contrary to Plaintiff's mischaracterization of Defendant's supporting evidence, that same evidence shows that the business protocol between the parties remained consistent before and after the JDLA. Choi Decl. ¶ 3, Exh. 2 at 47:24-48:4 ("Q: So after November 2015, did the protocol that we've talked about, in general, that includes backlog, forecasts, allocations, purchase orders, did that general protocol continue? A: That protocol was in place after that period, |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | historical business protocol, Samsung began to refuse to supply any products to Netlist, regardless of protocol, and/or capped the amount of products that could be purchased. See Defendant's response and evidence to SUF No. 58 incorporated herein.<br><br>Defendant's cited supporting evidence does not support the proposition that the "business protocol . . . remained the same throughout the parties' longstanding business relationship." | yes.")<br><br>Plaintiff's Responses and Evidence to SUF Nos. 5-7 and 58 do not dispute Defendant's SUF No. 8. Nevertheless, to the extent necessary, Defendant incorporates its replies to SUF Nos. 5-7 and 58. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

**Defendant's Allegation that the JDLA Involved Joint Development of a "Game Changing" Product Based On the NVDIMM-P Standard**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 9. In early 2015, Netlist approached Samsung to discuss a strategic partnership involving joint development of a product based on a new standard called NVDIMM-P and licensing of Netlist's patents.<br><br>Choi Decl. ¶ 15, Exh. 14 at p. 13, RFA No. 18. | Disputed but immaterial. Samsung initiated the discussion that led to the JDLA.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 61:22-62:16 ("they came to us to discuss patents")<br><br>There were also multiple aspects to a strategic partnership discussed in early 2015, including joint development, financing, license to patents, supply of products to Netlist. Evidence:<br>• Dkt. 144-3 [Netlist MSJ Ex. 3] (NL108668-69) (May 18, 2015 Technology Partnership and IP Cooperation Agreement). | No genuine dispute of material fact. None of the evidence cited to in Plaintiff's response disputes that Netlist wanted "to discuss a strategic partnership involving joint development of a product based on a new standard called NVDIMM-P and licensing of Netlist's patents."<br><br>To the extent that Plaintiff argues that Samsung approached Netlist first, none of their cited evidence supports that. *See* 8-30- |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 43:19-44:17.<br><br>Defendant's cited supporting evidence does not support the fact. Netlist's interrogatory response simply states that "in 2015, it informed Samsung that Netlist is the owner and assignee of standard essential patents as shown in, for example, NL107804 and its attachment." Evidence:<br>• Dkt. 150-3 [Samsung MSJ Ex. 14] at p. 13, RFA No. 18. | 21 LaMagna Decl., Exh. 84 (Chuck Hong deposition testimony) at 61:22-62:16 ("they came to us to discuss patents" refers to a specific visit from Samsung, but does not suggest that Samsung initiated discussion that led to the JDLA); 43:19-44:17 (noting only that the Parties "started to have conversations.") |
| 10. The NVDIMM-P-related product was a "game changer" according to Chuck Hong and, based on presentation materials, was | Undisputed that the NVDIMM-P related product discussed in the cited testimony was intended to be a "game changer."<br><br>Disputed as to the characterization that the | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

21

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| designed to take market share in a $15 billion industry.<br><br>Choi Decl. ¶ 8, Exh. 7 at 139:7-25; ¶ 17, Exh. 16 at SEC008159. | NVDIMM-P related product "was" a game changer because it never *became* a product. (i.e., it was *expected* to become a game changer).<br><br>Evidence:<br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 139:7-25. | |
| 11. At that time, Netlist also raised a licensing component and the potential that Samsung would be subject to an injunction for infringement of Netlist's patents.<br><br>Choi Decl. ¶ 18, Exh. 17 at NL107807; ¶ 8, Exh. 7 at 42:4- | Disputed.<br><br>First, Samsung is the one that raised a licensing component.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 61:22-62:16 ("they came to us to discuss patents").<br><br>Second, Netlist never threatened | No genuine dispute of material fact. Plaintiff's response does not dispute that Netlist raised a licensing component, regardless of whether or not Samsung also raised one.<br><br>To the extent that Plaintiff argues that Samsung raised a licensing component |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 14. | Samsung with an infringement claim or an injunction.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 45:20-24 ("Q: "[D]o you recall ever mentioning the potential that Samsung might be infringing [Netlist's] patent? A: No, no.")<br><br>Defendant's cited supporting evidence does not support the alleged fact. The cited testimony of Chuck Hong does not reference any claim of infringement by Samsung of Netlist's patents (the discussion of litigation and infringement concerns allegations directed to Hynix). | first, none of their cited evidence supports that. *See* 8-30-21 LaMagna Decl., Exh. 84 (Chuck Hong deposition testimony) at 61:22-62:16 ("they came to us to discuss patents" refers to a specific visit from Samsung, but does not suggest that Samsung initiated discussions regarding a licensing component).<br><br>Plaintiff's response also fails to offer any evidence that Netlist *never* threatened Samsung with an infringement claim or an injunction. In particular, Plaintiff selectively edits |

23

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br>•    Dkt. 151-1 [Samsung MSJ Ex. 17 (NL107804-809) at NL107807.<br>•    Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 42:4-14 (testifying that the April 2015 proposal was for "the patent license" and for "other components of an overall strategic relationship with Samsung."). | Chuck Hong's deposition testimony to misrepresent its content. *See* 8-30-21 LaMagna Decl. Exh. 84 (Chuck Hong deposition testimony) at 45:20-24 ("Q: *In the two meetings, the one in Seoul, the one in Irvine, leading up to Exhibit 70*, do you recall ever mentioning the potential that Samsung might be infringing [Netlist's] patent? A: No, no.") (emphasis added to portion of testimony omitted in Plaintiff's citation). |
| 12. Around this time, Netlist was | Disputed and immaterial.<br><br>Defendant's cited supporting | No genuine dispute of material fact. Plaintiff's response is an argument, |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| having cash flow issues.<br><br>Choi Decl. ¶ 19, Exh. 18 at F-7. | evidence does not state the characterization ascribed to it by Defendant. The document speaks for itself. | not a statement of fact, and should be disregarded. |
| 13. On November 12, 2015, after months of negotiations, Samsung and Netlist entered into the JDLA.<br><br>Choi Decl. ¶ 20, Exh. 19 at p. 1. | Undisputed. | Undisputed. |
| 14. The structure and terms of the JDLA reflect that the parties intend "to work together to jointly develop an interface and associated technologies for certain memory modules and promote such interface to standards- setting | Undisputed that the quoted language appears in the recital to the contract, but disputed that the "structure and terms" of the JDLA are defined by that recital. The structure in terms of the JDLA on their face contain rights and obligations beyond the subject matter of that recital. See Dkt. 148-1 [Samsung MSJ Ex. 19] in *passim*. | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

3746305.1

25

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| organizations." <br><br> Choi Decl. ¶ 20, Exh. 19 at p. 1. | | |
| 15. The "Developed Product" in the JDLA means an NVDIMM-P Product developed by the Parties hereunder pursuant the Statement of Work that meets the Product Specifications. <br><br> Choi Decl. ¶ 20, Exh. 19 at p. 2. | Undisputed. | Undisputed. |
| 16. The JDLA also includes a grant of cross-licenses and a release of threatened claims. | Undisputed that the JDLA includes a grant of license (Section 8) and a release of claims (Section 7), but disputed as to the characterization of | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Choi Decl. ¶ 20, Exh. 19 at p. 7, § 7. | "threatened" claims as no claims were threatened.<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at pp. 7-8, §§ 7-8.<br><br>See also Defendant's response and evidence to SUF No. 11 incorporated herein. | Defendant's reply to SUF No. 11 is incorporated herein. |
| 17. The JDLA states that Netlist was to receive $8 million for non-recurring engineering on the NVDIMM-P development work, and concurrently with the JDLA, provide an additional $15 million convertible loan at 2% interest that | Undisputed that the JDLA states that Netlist was to receive $8 million for in non-recurring engineering fees and that Netlist entered into "an agreement for convertible note financing."<br><br>Disputed as to the characterization— the JDLA does not identify the amount or interest rate of the debt, which was entered into in a separate contact with a | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Moreover, Plaintiff's response does not dispute that the convertible loan referenced in the JDLA is a $15 million convertible loan at 2% interest that allowed |

3746305.1

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| allowed Netlist to pay off existing debt with less favorable financial terms.<br><br>Choi Decl. ¶ 20, Exh. 19 at p. 5, § 3.1; ¶ 21, Exh. 20 at p. 2; ¶ 22, Exh. 21 at NL069669, § II.7. | separate entity that is not Defendant.<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001).<br>• Dkt. 151-2 [Samsung MSJ Ex. 72] (NL000341). | Netlist to pay off existing debt with less favorable financial terms. In fact, Plaintiff cites to the very document in which those terms are provided, and concedes that this is the document referenced in the JDLA. |
| 18. In addition to its receipt of cash and financing from Samsung, Netlist stood to benefit from the relationship, especially if the parties were able to develop this "game changing" standard for NVDIMM-P and produce a commercially | Undisputed that in addition to its receipt of cash, Netlist stood to benefit from the relationship defined in the JDLA.<br><br>Disputed that Netlist received financing from Defendant.  Netlist receives secured debt financing (a loan) from a different entity.<br>Evidence:<br>• See Dkt. 151-2 | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Plaintiff appears to be implying that the convertible loan (issued by a Samsung affiliate) was unrelated to the JDLA. However, it is undisputed that this loan |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| feasible product under this standard.<br><br>Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 33:12-34:6, 79:6-80:23, 139:7-25. | [Samsung MSJ Ex. 72] (NL000341).<br><br>Also disputed as to the characterization imposed by the phrase "especially if." Netlist stood to benefit from the relationship regardless of the joint development, as did Samsung.<br><br>Defendant's cited supporting evidence does not support the fact. Defendant mischaracterizes Chuck Hong's deposition testimony regarding "HybriDIMM," which is what Mr. Hong was referring to by the "game changing" reference. See also | is explicitly referenced in the text of the JDLA.<br><br>Plaintiff argues without basis that Samsung mischaracterizes Chuck Hong's Testimony. Chuck Hong testified that HybriDIMM was an NVDIMM-P product. Choi Decl. ¶ 8, Exh. 7 at 139:17-19. ("Q: Now, hybriDIMM, as you mentioned, this is the dash P product we've been talking about; correct? A: Yeah, dash P[.]") |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Defendant's response and evidence to SUF No. 10 incorporated herein. | |
| 19. The terms of the JDLA seek to implement these objectives, including terms for the collaborative development work in accordance with product specification and development milestones and a Statement of Work (Section 2, Appendices A and B); development costs (Section 3); IPR ownership (Section 4); schedule for standardization and productization (Section 5); supply | Netlist does not dispute the terms of what is written in the JDLA, which contains the various sections described in SUF No. 19. The document speaks for itself. Disputed as to Defendant's reference of "these objectives" which is not defined here. The parties dispute the objective of the JDLA.  Plaintiff asserts that one objective of the JDLA was to obtain a supply obligation from Samsung, which is disputed by Samsung.

Evidence:
• Complaint, Dkt 13, at 4.
• Answer, Dkt. 27 at 2-3. | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. Plaintiff's response is also unsupported by any admissible evidence. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| (Section 6); a mutual release of claims (Section 7); and licensing of intellectual property (Section 8).<br><br>Choi Decl. ¶ 20, Exh. 19 at pp. 4-8. | | |

**Defendant's Allegation that Section 6.2 Is Limited To Joint Development Work Under The JDLA**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 20. Pursuant to the JDLA, Samsung and Netlist agreed to supply components to each other for the NVDIMM-P product which they had agreed to jointly | Undisputed that Sections 6.1 and 6.2 of the JDLA contain the language quoted by Defendant.<br><br>Disputed that Section 6.2 is a "parallel" provision to Section 6.1. | No genuine dispute of material fact. Plaintiff does not dispute that the JDLA contains the parallel provisions described in Defendant's SUF No. 20. Plaintiff offers no evidence to |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| develop and therefore did not yet exist. Specifically, Section 6.1 states: "Supply by Netlist. Netlist will provide Samsung any NVDIMM-P controller on Samsung's request at a price lower than the price Netlist provides to any other buyer." Section 6.2, the parallel provision, states: "Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (i.e., among customers purchasing | Disputed as to Samsung's characterization and contention that Section 6.2 is limited to components for the NVDIMM-P products. Nothing in Section 6.2 referring to such a limitation.<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at § 6.2.<br><br>Samsung's own employees also recognized that the supply obligation was **not** limited to components for the NVDIMM-P product.<br><br>Evidence:<br>• Dkt. 142-10 [Netlist MSJ Ex. 23] (SEC000263) | support its contention that Section 6.1 and Section 6.2 are not "parallel."<br><br>In addition, none of Plaintiff's evidence supports its contention that Section 6.2 is an unlimited supply obligation. None of the cited emails explicitly state that the JDLA creates a supply obligation outside of NVDIMM-P products.<br><br>Moreover, the two emails from Mr. Hwangbo are not admissible evidence, as they are *post hoc* statements by a Samsung |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| similar volumes of similar products)." <br><br> Choi Decl. ¶ 20, Exh. 19 at p. 6, §§ 6.1, 6.2. | (February 2018 email from Yong Hwangbo, "there is an obligation to supply NAND/DRAM at a competitive price if N company makes a request.") <br> • Dkt. 145-12 [Netlist MSJ Ex. 8] (SEC000315) (February 2018 email from Yong Hwangbo, "there is an obligation to supply NAND/DRAM at a competitive price if N company makes a request.") <br> • Dkt. 145-11 [Netlist MSJ Ex. 7] (SEC001269) (January 2018 email from Hojung Kim, "Pursuant to the agreement, supply for NAND and DRAM products is necessary if there is a request from Netlist.") <br><br> Netlist has publicly, over | employee "not even alleged to have participated in drafting or negotiating [Section 6.2 of the JDLA]", and are therefore inadmissible "and may not be considered on a motion for summary judgment." *Faulkner v. National Geographic Soc.*, 452 F.Supp.2d 369, 379 (S.D.N.Y. 2006). <br><br> In addition, Plaintiff's cherry-picked quotes from Netlist's public disclosures omit the fact that Netlist has repeatedly and consistently disclosed the risks associated with not having a long-term |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | multiple years, indicated that the Section 6.2 supply obligation was not limited to merely components for NVDIMM-P.<br><br>Evidence:<br>• E.g., Dkt. 150-4 [Samsung MSJ Ex. 37] at p.5 ("We also resell certain Samsung products that we purchase under the terms of our JDLA"); p.7 ("we resell certain Samsung products that we purchase under the terms of our JDLA"), p.8 ("[O]ur JDLA with Samsung contractually commits Samsung to supply NAND flash and DRAM products to us upon our request at competitive prices.")<br>• Dkt. 150-2 [Samsung MSJ Ex. 6] at p.5 ("We have | supply contract for DRAM and NAND in its annual reports before and after execution of the JDLA, each time stating that Netlist had "no long-term supply contracts" for these products. Choi Decl. ¶ 74, Exh. 73 at p. 18; ¶ 75, Exh. 74 at p. 22; ¶ 4, Exh. 3 at p. 14; ¶ 37, Exh. 36 at p. 13; ¶ 19, Exh. 18 at p.13; ¶ 38, Exh. 37 at p. 19; ¶ 7, Exh. 6 at p.  20; ¶ 5, Exh. 4 at p. 21; ¶ 39, Exh. 38 at p. 20; ¶ 40, Exh. 39 at p. 15.<br><br>The testimony of Chuck Hong Plaintiff cites to is contradicted by his own |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA."), p.8 ("We also purchase some of these component products from Samsung under the terms of the JDLA.")<br><br>• Dkt. 150-2 [Samsung MSJ Ex. 4] at p.5 ("We have purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p. 8 ("We also purchase some of these component products from Samsung under the terms of the JDLA, and from alternative suppliers, for the purpose of resale to customers | admissions in the same deposition that the Parties understood the antecedent provisions in the term sheets and MOU that eventually became Section 6.2 to pertain to supply of products for NVDIMM-P only. See Defendant's SUF Nos. 26, 28-30. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | directly"). | |
| | • Dkt. 150-4 [Samsung MSJ Ex. 38] at p.5 ("We have purchased certain of these products, including SSDs, NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p.7 ("We also purchase some of these component products from Samsung under the terms of the JDLA"). | |
| | • *See also* Ex. 85 to 8-30-21 LaMagna Decl. (Gail Sasaki Dep. Tr.) at 305:14-306:3, 309:1-21 (In connection with the SEC filings' statements concerning the absence of long- term supply contracts, Gail testified that the statement appeared in portions of Netlist's filings | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | concerning "risk factors" in which its general approach was to "be[ ] very conservative to say all the negative things that [it] would to make sure that should anything go wrong with anything" all risks had been fully disclosed to "the public."). <br> • Ex. 96 to 8-30-21 LaMagna Decl. (Q2 2016 Earnings Call) ("[T]hat was part of the partnership and agreement that we have with Samsung to have access to their raw materials as well as their – some of their selected product lines and we are seeing the benefit of that."). <br> • Ex. 97 to 8-30-21 LaMagna Decl. (Q3 2016 Earnings Call) ("In our | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | partnership with Samsung, we continue to benefit from the unique access we have . . . to certain Samsung products in the enterprise space. This includes enterprise-grade, high-capacity SSDs and high-density DRAM modules. Product lines [that] Samsung is committed to supporting for the long-term. We have continued to grow the customer base for these products since we began shipments earlier this year."). <br>• Id. ("Further, the Samsung Corporation products provide synergistic value for our own product portfolio and open doors allowing our sales team to establish relationships with OEMs and data center | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | customers.").<br><br>• Ex. 98 to 8-30-21 LaMagna Decl. (Q1 2017 Earnings Call) ("The year-over-year increase in revenue primarily reflects the multiple benefits of our Joint Development Agreement with Samsung, which added the synergistic Samsung high- end memory products to our product offering. On a consecutive quarterly basis, product revenue improved by 70%.).<br><br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24 (testifying that Netlist never "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P.") | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | 220:3-24, 222:19-223:8, 221:11-14, 238:15-24 (Netlist "absolutely [did] not" understand that the JDLA's supply provisions were "limited to NVDIMM-P" and it would not have executed the JDLA had that been its understanding because it would not have provided sufficient consideration to Netlist. Nor did Samsung ever state to Netlist that its mandatory supply obligation was "limited to components for making NVDIMM-P products.")<br><br>*See also* Defendant's response and evidence to SUF Nos. 21, 37 incorporated herein. | |
| 21. Samsung's supply | Disputed. Samsung's own | No genuine dispute of |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| obligations would only arise if and to the extent that the NVDIMM-P product was commercialized but this never occurred.<br><br>Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 80:13-23, 92:4-12, 109:9-110:1, 116:3-9; ¶ 22, Exh. 21 at NL069668-69. | employees understood that it had a supply obligation to Netlist, and that this supply obligation was **not** dependent on the commercialization of NVDIMM-P. *See* Defendant's response and evidence to SUF No. 20 incorporated herein.<br><br>Evidence:<br>• Dkt. 145-18 [Netlist MSJ Ex. 14] (NL119258) (P.K. Hong's notes from meeting with Samsung in February 2016: "HS mentioned that he is now being told to support Netlist and will", "HS stated he will support any requests"; "But the positive note is Samsung will support")<br>• Dkt. 142-10 [Netlist | material fact. None of Plaintiff's evidence supports its contention that Section 6.2 is an unlimited supply obligation. None of the cited emails explicitly state that the JDLA creates a supply obligation outside of NVDIMM-P products.<br><br>Moreover, the two emails from Mr. Hwangbo are not admissible evidence, as they are *post hoc* statements by a Samsung employee "not even alleged to have participated in drafting or negotiating [Section 6.2 of the JDLA]", and |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | MSJ Ex. 23] (SEC000263) (February 2018 email from Yong Hwangbo, "there is an obligation to supply NAND/DRAM at a competitive price if N company makes a request.") <br>• Dkt. 145-12 [Netlist MSJ Ex. 8] (SEC000315) (February 2018 email from Yong Hwangbo, "there is an obligation to supply NAND/DRAM at a competitive price if N company makes a request.") <br>• Dkt. 145-11 [Netlist MSJ Ex. 7] (SEC001269) (January 2018 email from Hojung Kim, "Pursuant to the agreement, supply for NAND and DRAM products is necessary if there is a request from Netlist.") | are therefore inadmissible "and may not be considered on a motion for summary judgment." *Faulkner v. National Geographic Soc.*, 452 F.Supp.2d 369, 379 (S.D.N.Y. 2006). <br><br>In addition, Plaintiff's cherry-picked quotes from Netlist's public disclosures omit the fact that Netlist has repeatedly and consistently disclosed the risks associated with not having a long-term supply contract for DRAM and NAND in its annual reports before and after execution of the JDLA, each time |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | From "day one," Netlist's position from 2015 to present has always been that Section 6.2's supply obligation was not limited to NVDIMM-P products. See Defendant's response and evidence to SUF Nos. 20, 37 incorporated herein.<br><br>Netlist understood that by entering into the JDLA, it had transitioned from an "at-will customer . . . into a contractual supply customer, which means [it] would go right to the front of the line" in obtaining the products that Samsung had for sale and that its requests "must be filled ahead of everyone" else.<br><br>Evidence: | stating that Netlist had "no long-term supply contracts" for these products. Choi Decl. ¶ 74, Exh. 73 at p. 18; ¶ 75, Exh. 74 at p. 22; ¶ 4, Exh. 3 at p. 14; ¶ 37, Exh. 36 at p. 13; ¶ 19, Exh. 18 at p.13; ¶ 38, Exh. 37 at p. 19; ¶ 7, Exh. 6 at p.  20; ¶ 5, Exh. 4 at p. 21; ¶ 39, Exh. 38 at p. 20; ¶ 40, Exh. 39 at p. 15.<br><br>The testimony of Chuck Hong Plaintiff cites to is contradicted by his own admissions in the same deposition that the Parties understood the antecedent provisions in the term sheets and |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • E.g., Dkt. 150-4 [Samsung MSJ Ex. 37] at p.5 ("We also resell certain Samsung products that we purchase under the terms of our JDLA"); p.7 ("we resell certain Samsung products that we purchase under the terms of our JDLA"), p.8 ("[O]ur JDLA with Samsung contractually commits Samsung to supply NAND flash and DRAM products to us upon our request at competitive prices.") <br> • Dkt. 150-2 [Samsung MSJ Ex. 6] at p.5 ("We have purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA."), p.8 ("We also purchase some | MOU that eventually became Section 6.2 to pertain to supply of products for NVDIMM-P only. See Defendant's SUF Nos. 26, 28-30. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | of these component products from Samsung under the terms of the JDLA.")<br><br>• Dkt. 150-2 [Samsung MSJ Ex. 4] at p.5 ("We have purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p. 8 ("We also purchase some of these component products from Samsung under the terms of the JDLA, and from alternative suppliers, for the purpose of resale to customers directly").<br><br>• Dkt. 150-4 [Samsung MSJ Ex. 38] at p.5 ("We have purchased certain of these products, including SSDs, NAND flash and DRAM products, from Samsung under the terms of the | |

| | Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|---|
| | | JDLA"), p.7 ("We also purchase some of these component products from Samsung under the terms of the JDLA"). | |
| | | • See also Ex. 85 to 8-30-21 LaMagna Decl. (Gail Sasaki Dep. Tr.) at 305:14-306:3, 309:1-21 (In connection with the SEC filings' statements concerning the absence of long- term supply contracts, Gail testified that the statement appeared in portions of Netlist's filings concerning "risk factors" in which its general approach was to "be[ ] very conservative to say all the negative things that [it] would to make sure that should anything go wrong with anything" all risks had been | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | fully disclosed to "the public."). | |
| | • Ex. 96 to 8-30-21 LaMagna Decl. (Q2 2016 Earnings Call) ("[T]hat was part of the partnership and agreement that we have with Samsung to have access to their raw materials as well as their – some of their selected product lines and we are seeing the benefit of that."). | |
| | • Ex. 97 to 8-30-21 LaMagna Decl. (Q3 2016 Earnings Call) ("In our partnership with Samsung, we continue to benefit from the unique access we have . . . to certain Samsung products in the enterprise space. This includes enterprise-grade, high-capacity SSDs and high-density DRAM modules. | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Product lines [that] Samsung is committed to supporting for the long-term. We have continued to grow the customer base for these products since we began shipments earlier this year."). <br><br> • Id. ("Further, the Samsung Corporation products provide synergistic value for our own product portfolio and open doors allowing our sales team to establish relationships with OEMs and data center customers."). <br><br> • Ex. 98 to 8-30-21 LaMagna Decl. (Q1 2017 Earnings Call) ("The year-over-year increase in revenue primarily reflects the multiple benefits of our Joint Development Agreement with Samsung, which added | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | the synergistic Samsung high-end memory products to our product offering. On a consecutive quarterly basis, product revenue improved by 70%.). <br><br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 124:5-9 (testifying that "the JDLA represented to move us from a non-customer and bypass the at-will customer . . . and tun us into a contractual supply customer."); 124:13-19 ("contracted customers, their obligations . . . must be filled ahead of everyone".). | |

**Defendant's Allegation that the Negotiating History Shows That Section 6.2 Is Limited To Joint Development**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 22. Netlist's first proposal to Samsung in April 2015 focused on the cash consideration, and did not mention a long term supply agreement. ("Q Now, at least on this proposal, Netlist didn't list supply as a component of the deal; correct? A Yes, it's not here.")<br><br>Choi Decl. ¶ 18, Exh. 17 at pp. 2-4;<br>¶ 18, Exh. 17 at NL107807;<br>¶ 8, Exh. 7 at 51:3-52:18. | Undisputed that the document does not mention a long-term supply agreement, but also immaterial.<br><br>Disputed that Netlist's proposal to Samsung in April 2015 focused on any one item.<br><br>Also disputed as to the materiality of the April 2015 proposal given that the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement.").<br><br>Evidence:<br>• Dkt. 151-1 [Samsung | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Plaintiff does not cite to any evidence that disputes that Netlist's April 2015 proposal was focused on cash consideration, and did not mention a long -term supply agreement. Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | MSJ Ex. 17] (NL107804) at NL107807.<br>•   Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | Parties' negotiation history. |
| 23. When Netlist sent Samsung the first draft of the term sheet on April 21, 2015, Netlist proposed, as part of the "Joint development and marketing" for the "Technology Collaboration," that Samsung supply NAND and DRAM product.<br><br>Choi Decl. ¶ 23, Exh. 22; ¶ 24, Exh. 23 at § II. | Undisputed that the document contains a section header titled "Technology Collaboration," which contains reference to "joint development and marketing," but immaterial.<br><br>Disputed as to the materiality of the April 2015 proposal given that the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation history. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Parties relating to the subject matter of this Agreement."). | In addition, Plaintiff offers no evidence to support its characterization of items listed in the April 2015 term sheet as "examples of possible options." To the contrary, the term sheet indicates that these are provisions that "would need to be negotiated and finalized." Choi Decl. ¶ 24, Exh. 23. |
| | Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014.<br><br>Disputed that as to the characterization that supply of NAND and DRAM products are "as part of" the joint development and marketing. The cited document merely lists examples of possible options ("Joint development and marketing (TBD) – i.e., Samsung supplies Netlist HV ASIC controller, Flash and DRAM; Samsung includes HV in its product roadmap.") (emphasis | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | added). | |
| | Evidence: | |
| | • Dkt. 151-1 [Samsung MSJ Ex. 23] (NL100004) at § II. | |
| 24. In Netlist's June 9, 2015 revision to the term sheet, under the heading "Technology Collaboration," Netlist proposed: "Raw Materials: Samsung will supply NAND, DRAM on mutually agreed terms." <br><br> Choi Decl. ¶ 25, Exh. 24, § II.5. | Undisputed but immaterial. <br><br> The JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."), so what the earlier term sheets stated is not material. | Undisputed. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. <br><br> Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation history. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 25. Netlist CEO Chuck Hong testified that "Technology Collaboration" in Netlist's revised term sheet referred to the parties' joint efforts to standardize NVDIMM-P.<br><br>Choi Decl. ¶ 8, Exh. 7 at 91:4-17. | Disputed to the extent that Defendant's statement implies that Chuck Hong testified that the proposed "technology collaboration" was limited exclusively to "efforts to standardize NVDIMM-P" as opposed to the inclusion of such efforts.<br><br>While Chuck Hong testified that NVDIMM-P standardization certainly fell under the parties' proposed collaboration, he did not testify that this would be the only thing that would be covered by the Technology | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. Plaintiff does not dispute the content of Chuck Hong's testimony.<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question was a binding contract, but simply that |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Collaboration. To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P." Evidence: • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24. In fact, Mr. Hong repeatedly testified that the proposed supply term was not worded to be limited to NVDIMM-P. Evidence: • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 225:17-19, 227:4- | it is evidence of the Parties' negotiation history. The testimony of Chuck Hong Plaintiff cites to is contradicted by his own admissions in the same deposition that the Parties understood the antecedent provisions in the term sheets and MOU that eventually became Section 6.2 to pertain to supply of products for NVDIMM-P only. See Defendant's SUF Nos. 26, 28-30. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | 23, 228:16- 229:7, 229:16- 230:11, 231:11- 21, 232:5- 233:2, 234:20-25 (testifying that prior iterations of the supply provision in earlier drafts from the negotiation history are not worded to be limited to NVDIMM-P). <br><br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:19-22 (testifying that "the supply commitment was never about NVDIMM-P"); 220:3- 221:3 (testifying that it was never his understanding that the supply provision was to be limited to NVDIMM-P) <br><br> • See also Ex. 84 to 8-30- 21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:6-11 (testifying that "it's not even within the realm of possibility" to limit the supply provision | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | to NVDIMM- P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all products," and that "it would make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"; this "was clearly understood, and I believe that is reflected in the JDLA")<br><br>In addition, the alleged fact is immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting in differences between the MOU and the JDLA.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7.<br><br>Moreover, the alleged fact is immaterial because the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement.").<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 26. Netlist CEO Chuck Hong testified that the "Raw | Disputed to the extent that Defendant is characterizing Chuck Hong's testimony | No genuine dispute of material fact. Plaintiff's response is an argument, |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Materials" in Netlist's revised term sheet referred to various DRAM and NAND flash components necessary for the parties' joint efforts to standardize NVDIMM-P.<br><br>Choi Decl. ¶ 8, Exh. 7 at 92:4-12. | about "raw materials" as being limited exclusively to "components necessary for the parties' joint efforts to standardize NVDIMM- P" as opposed to the materials being inclusive of such components.<br><br>Mr. Hong expressly testified that raw materials included "DRAM, various DRAMs, and various NAND Flash components" without limitation.<br><br>Evidence:<br><br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 92:4-8.<br><br>To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever | not a statement of fact, and should be disregarded. Plaintiff does not dispute the content of Chuck Hong's testimony.<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question was a binding contract, but simply that it is evidence of the Parties' negotiation history.<br><br>The testimony of Chuck Hong Plaintiff cites to is contradicted by his own admissions in the same |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P." | deposition that the Parties understood the antecedent provisions in the term sheets and MOU that eventually became Section 6.2 to pertain to supply of products for NVDIMM-P only. See Defendant's SUF Nos. 26, 28-30. |
| | Evidence: | |
| | • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24. | |
| | In fact, Mr. Hong repeatedly testified that the proposed supply term was not worded to be limited to NVDIMM-P. | |
| | Evidence: | |
| | • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 225:17-19, 227:4-23, 228:16- 229:7, 229:16-230:11, 231:11- 21, 232:5-233:2, 234:20-25 (testifying that prior iterations of the | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | supply provision in earlier drafts from the negotiation history do not contain a reference to NVDIMM-P). <br><br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:19-22 (testifying that "the supply commitment was never about NVDIMM-P"); 220:3-221:3 (testifying that it was never his understanding that the supply provision was to be limited to NVDIMM-P) <br><br> • *See also* Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:6-11 (testifying that "it's not even within the realm of possibility" to limit the supply provision to NVDIMM- P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | products," and that "it would make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"; this "was clearly understood, and I believe that is reflected in the JDLA") | |
| | In addition, it's immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA. | |
| | Evidence: | |
| | • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7. | |
| | Moreover, it's immaterial because the JDLA contains an | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). <br><br> Evidence: <br> • Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 27. In Netlist's June 25, 2015 updated term sheet, under the heading "Phase 2: Technology Productization," Netlist proposed: "1. Parties will work together to bring an | Undisputed that the quoted language appears in that order in the term sheet. <br><br> Disputed to the extent that Defendant is implying that the supply language is limited exclusively to the Phase II stage simply because of its the order in which the terms are | Undisputed. The remainder of Plaintiff's response is an argument, not a statement of fact. <br><br> Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| NVDIMM-P product to market. Details of the technical collaboration to be negotiated at a later date" and "Raw Materials: Samsung will supply NAND and DRAM on mutually agreed terms."<br><br>Choi Decl. ¶ 26, Exh. 25 at NL005090, NL005092. | placed under the headers.<br><br>To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P."<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24.<br><br>In fact, Mr. Hong repeatedly testified that the proposed supply term was not worded to be limited to NVDIMM-P.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong | that the document in question was a binding contract, but simply that it is evidence of the Parties' negotiation history.<br><br>The testimony of Chuck Hong Plaintiff cites to is contradicted by his own admissions in the same deposition that the Parties understood the antecedent provisions in the term sheets and MOU that eventually became Section 6.2 to pertain to supply of products for NVDIMM-P only. See Defendant's SUF Nos. 26, 28-30. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Dep. Tr.) at 225:17-19, 227:4-23, 228:16- 229:7, 229:16-230:11, 231:11- 21, 232:5-233:2, 234:20-25 (testifying that prior iterations of the supply provision in earlier drafts from the negotiation history do not contain a reference to NVDIMM-P). <br><br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:19-22 (testifying that "the supply commitment was never about NVDIMM-P"); 220:3- 221:3 (testifying that it was never his understanding that the supply provision was to be limited to NVDIMM-P) <br><br> • See also Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:6-11 (testifying that "it's not even within the realm of | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | possibility" to limit the supply provision to NVDIMM- P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all products," and that "it would make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"; this "was clearly understood, and I believe that is reflected in the JDLA")<br><br>In addition, it's immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7.<br><br>Moreover, it's immaterial because the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement.").<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 28. CEO Chuck Hong testified that the "Raw Materials" in Netlist's updated term sheet referred | Disputed to the extent that Defendant is characterizing Chuck Hong's testimony about "raw materials" as being limited exclusively to | No genuine dispute of material fact. Plaintiff does not dispute the content of Chuck Hong's testimony. The |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| to various DRAM and NAND flash components necessary for commercialization of the NVDIMM-P product which the parties were developing.<br><br>Choi Decl. ¶ 8, Exh. 7 at 101:25-102:7. | "various DRAM and NAND flash components necessary for commercialization of the NVDIMM-P product which the parties were developing" as opposed to the materials being inclusive of such components.<br><br>To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P."<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24.<br><br>In fact, Mr. Hong repeatedly | remainder of Plaintiff's response is an argument, not a statement of fact.<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question was a binding contract, but simply that it is evidence of the Parties' negotiation history. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | testified that the proposed supply term was not worded to be limited to NVDIMM-P.<br><br>Evidence:<br><br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 225:17-19, 227:4-23, 228:16- 229:7, 229:16-230:11, 231:11- 21, 232:5-233:2, 234:20-25 (testifying that prior iterations of the supply provision in earlier drafts from the negotiation history do not contain a reference to NVDIMM-P).<br><br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:19-22 (testifying that "the supply commitment was never about NVDIMM-P"); 220:3- 221:3 (testifying that it was never his understanding that the supply | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | provision was to be limited to NVDIMM-P)<br><br>• *See also* Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:6-11 (testifying that "it's not even within the realm of possibility" to limit the supply provision to NVDIMM- P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all products," and that "it would make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"; this "was clearly understood, and I believe that is reflected in the JDLA")<br><br>In addition, it's immaterial because as Mr. Hong testified, after the MOU was | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA. | |
| | Evidence: | |
| | • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7. | |
| | Moreover, it's immaterial because the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). | |
| | Evidence: | |
| | • Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | SEC000014. | |
| 29. In the drafts leading up to the final and executed MOU, Netlist understood that Samsung's supply obligations would only arise in the event of commercialization of the NVDIMM-P product subject to the parties' joint development but this never occurred.<br><br>Choi Decl. ¶ 8, Exh. 7 at 104:6-24. | Disputed.<br><br>In the cited testimony, Chuck Hong testified that the proposed supply provision "applies to the dash-P product to the extent it ever got commercialized."<br><br>Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 104:21-24.<br><br>But Mr. Hong does not ever testify that that term applied to NVDIMM-P to the exclusion of components for all other products.<br><br>To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung | No genuine dispute of material fact. Plaintiff does not dispute the content of Chuck Hong's testimony, and does not offer any evidence that the supply provision of the MOU applied to anything other than NVDIMM-P product, to the extent it was commercialized. Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P." <br><br> Evidence: <br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24. <br><br> In fact, Mr. Hong repeatedly testified that the proposed supply term was not worded to be limited to NVDIMM-P. <br><br> Evidence: <br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 225:17-19, 227:4-23, 228:16- 229:7, 229:16-230:11, 231:11- 21, 232:5-233:2, 234:20-25 (testifying that prior iterations of the supply provision in earlier | history. <br><br> Moreover, while the MOU is not a binding contract, it is not immaterial as evidence of the Parties' negotiation history because it was *Netlist's* position that the MOU shall govern in terms of demonstrating the Parties' intent with regards to the supply provision of the JDLA. *See* Defendant's SUF Nos. 35-36. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | drafts from the negotiation history do not contain a reference to NVDIMM-P). <br><br> • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:19-22 (testifying that "the supply commitment was never about NVDIMM-P"); 220:3- 221:3 (testifying that it was never his understanding that the supply provision was to be limited to NVDIMM-P) <br><br> • See also Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:6-11 (testifying that "it's not even within the realm of possibility" to limit the supply provision to NVDIMM- P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all products," and that "it would | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"; this "was clearly understood, and I believe that is reflected in the JDLA") In addition, it's immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA. Evidence: • Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7. Moreover, it's immaterial because the JDLA contains an integration clause ("Except as | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). Evidence: • Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 30. Netlist CEO Chuck Hong testified that Netlist's intent underlying the MOU was to get Samsung's commitment to supply NAND and DRAM products for the NVDIMM-P product so that Netlist would have sufficient supply if | Disputed. Defendant's cited supporting evidence does not state the characterization ascribed to it by Defendant. For example, nowhere in Chuck Hong's deposition testimony cited by Defendant does Mr. Hong testify as to Netlist's intent underlying the MOU. | No genuine dispute of material fact. None of Mr. Hong's testimony cited by Plaintiff disputes his testimony *with regards to Section 6 of the MOU*, saying that the supply obligation contained therein would arise only if and to the extent that the |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| and when it was able to commercialize the technology.<br><br>Choi Decl. ¶ 8, Exh. 7 at 109:9-110:1. | Furthermore, to the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P."<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24.<br><br>In fact, Mr. Hong repeatedly testified that the proposed supply term was not worded to be limited to NVDIMM-P.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:19-22 (testifying | NVDIMM-P product was ever commercialized. Choi Decl. ¶ 8, Exh. 7 at 109:17-25 ("Q: And, again, that section on raw materials relates to the dash P product that was being standardized and hopefully commercialized; correct? A: Yes, it was in reference to the product if it – if it ever became commercialized[.]")<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | that "the supply commitment was never about NVDIMM-P"); 220:3- 221:3 (testifying that it was never his understanding that the supply provision was to be limited to NVDIMM-P) <br>• See also Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 222:6-11 (testifying that "it's not even within the realm of possibility" to limit the supply provision to NVDIMM-P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all products," and that "it would make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"; this "was clearly understood, and I believe that is reflected in the JDLA") | it is evidence of the Parties' negotiation history. <br><br>Moreover, while the MOU is not a binding contract, it is not immaterial as evidence of the Parties' negotiation history because it was *Netlist's* position that the MOU shall govern in terms of demonstrating the Parties' intent with regards to the supply provision of the JDLA. *See* Defendant's SUF Nos. 35-36. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Mr. Hong testified that raw materials for standardization of NVDIMM-P would fall within the supply provision, not that that was the only thing that would be covered by the supply provision.<br><br>In addition, it's immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7.<br><br>Moreover, it's immaterial because the JDLA contains an | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). | |
| | Evidence: | |
| | • Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 31. According to Chuck Hong, NVDIMM-P was "industry changing" technology and Netlist's attempt to standardize a NVDIMM-P product was a significant business | Disputed. Defendant's cited supporting evidence does not state the characterization ascribed to it by Defendant. The document speaks for itself. Chuck Hong did not testify that NVDIMM-P was industry | No genuine dispute of material fact. Plaintiff does not dispute the content of Chuck Hong's testimony, simply arguing, *ipse dixit*, that Defendant's characterization is wrong and that the "document |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| opportunity and one that Netlist had invested more than $10 million in engineering costs into.<br><br>Choi Decl. ¶ 8, Exh. 7 at 79:13-80:23, 139:7-141:6. | changing technology, but that hybriDIMM was a game changing technology and "was supposed to sync up with the dash P." *See* Defendant's response and evidence to SUF No. 10 incorporated herein.<br><br>Evidence:<br><br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 139:10-21, 140:1-19.<br><br>In addition, the quoted material says the HybriDIMM product was "significant," not the attempt to standardize was a "significant business opportunity."<br><br>Evidence:<br><br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong | speaks for itself."<br><br>Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Dep. Tr.) at 139:12, 80:16.

Undisputed that Netlist spent $10 million on engineering costs related to the parties' joint development.

Evidence:
•      Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 212:10-14.

Disputed as to the remainder of the characterization. Nowhere in the quoted evidence does it reference "industry changing." See also Defendant's response and evidence to SUF No. 10 incorporated herein. | |
| 32. The MOU reflected | Undisputed that Section 6 of the | No genuine dispute of |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| both parties' intent on the important points of the parties' agreement. Section 6 of the MOU states in full (emphasis added): 6. Most Favored Nation (MFN): Netlist will provide Samsung any NVDIMM-P* controller at a price lower than the price Netlist provides to any other buyer. Either party may produce NVDIMM-P controller using its own technology and has no obligation to buy from the other party. Raw Materials: Samsung will provide competitive pricing (i.e. among | MOU contains the quoted language.<br><br>Disputed as to the remaining characterization.<br><br>To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P."<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24.<br><br>In fact, Mr. Hong repeatedly testified that the proposed supply term was not worded to | material fact. None of Mr. Hong's testimony cited by Plaintiff disputes his testimony *with regards to Section 6 of the MOU*, saying that the supply obligation contained therein would arise only if and to the extent that the NVDIMM-P product was ever commercialized. Choi Decl. ¶ 8, Exh. 7 at 109:17-25 ("Q: And, again, that section on raw materials relates to the dash P product that was being standardized and hopefully commercialized; correct?" A: Yes, it was in reference to the product if it – if it ever |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| customers purchasing the same products and similar volumes) for the supply of Samsung NAND and DRAM products. As to the MOU, Chuck Hong again testified in deposition that section 6.2 limited Samsung's supply obligation to the NVDIMM-P development and that this obligation would arise only if and to the extent that the NVDIMM-P product was ever commercialized.<br><br>Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 80:13-23, 92:4-12, | be limited to NVDIMM-P.<br><br>Evidence:<br><br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 225:17-19, 227:4-23, 228:16- 229:7, 229:16-230:11, 231:11- 21, 232:5-233:2, 234:20-25 (testifying that prior iterations of the supply provision in earlier drafts from the negotiation history do not contain a reference to NVDIMM-P).<br><br>• Id. at 222:19-22 (testifying that "the supply commitment was never about NVDIMM-P"); 220:3-221:3 (testifying that it was never his understanding that the supply provision was to be limited to NVDIMM-P)<br><br>• See also id. at 222:6-11 (testifying that "it's not even within the realm of possibility" | became commercialized[.]")<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation history.<br><br>Moreover, while the MOU is not a binding contract, it is not immaterial as evidence of the Parties' negotiation history because it was *Netlist's* position that the MOU shall govern in |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 109:9-110:1, 116:3-9; ¶ 22, Exh. 21 at NL069668-69. | to limit the supply provision to NVDIMM-P; "[i]t wouldn't make logical sense"); 233:10-22 (testifying that the supply provision was for "all products," and that "it would make no sense" for it to have meant a supply provision confined to raw material for NVDIMM-P"); this "was clearly understood, and I believe that is reflected in the JDLA")<br><br>In addition, it's immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 | terms of demonstrating the Parties' intent with regards to the supply provision of the JDLA. *See* Defendant's SUF Nos. 35-36. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7.<br><br>Moreover, it's immaterial because the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement.").<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 33. On October 8, 2015, when the parties began drafting the JDLA | Undisputed that in the October 8, 2015 draft of the JDLA, the language proposed by Samsung for Section 6.2 | No genuine dispute of material fact. Plaintiff offers no evidence that the content of the MOU |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| from the MOU, Samsung proposed the following language to Netlist: "6.2 Supply by Samsung. Samsung will supply NAND and DRAM to Netlist on Netlist's request at a competitive price similar to the customers purchasing similar volumes of similar products. For the avoidance of doubt, any of the provisions under this Agreement will not be deemed to require Netlist to purchase any products from | was as quoted.

Disputed that Samsung drafted this from the MOU. Defendant's cited supporting evidence does not support the fact.

In addition, it's immaterial because as Mr. Hong testified, after the MOU was signed, the parties engaged in further negotiations resulting differences between the MOU and the JDLA.

Evidence:
• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 133:1-7.

Moreover, it's immaterial because the JDLA contains an integration clause ("Except as | was unrelated to the drafting of the JDLA – which would defeat the purpose of having an MOU in the first place. The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded.

Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation history. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Samsung or to require Samsung to supply any products to Netlist." Choi Decl. ¶ 27, Exh. 26 at p. 1; ¶ 28, Exh. 27 at p. 5, § 6.2. | otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). Evidence: • Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | Moreover, while the MOU is not a binding contract, it is not immaterial as evidence of the Parties' negotiation history because it was *Netlist's* position that the MOU shall govern in terms of demonstrating the Parties' intent with regards to the supply provision of the JDLA. *See* Defendant's SUF Nos. 35-36. |
| 34. Whitley was Netlist's main contributor to the JDLA. Choi Decl. ¶ 8, Exh. 7 at 130:6-24. | Disputed. Chuck Hong testified that he did not know whether Mr. Whitley was "overseeing" the negotiation of the JDLA. He was working with outside counsel on the project. Mr. Hong testified that Mr. | No genuine dispute of material fact. Plaintiff does not dispute that Chuck Hong testified that Whitley was Netlist's "main contributor" to the JDLA, and it is immaterial whether |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Whitley is "a" main contributor to the JDLA, not "the" only main contributor.<br><br>Evidence:<br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 130:13-24. | Whitley was "a" main contributor or "the" only main contributor. |
| 35. On October 14, 2015, as to the new Section 6.2 of its proposed JDLA, Whitley wrote in bold "**Conflicts with MOU**" and "Samsung states that nothing in this agreement will 'require Samsung to supply any products to Netlist.' Netlist removed this qualification and | Undisputed that the quoted language appears in the document. Disputed as to the characterization.<br><br>The draft agreement was not Netlist's proposed JDLA. Netlist was responding to Samsung's proposed language.  Here, Netlist via Mr. Whitley is removing Samsung's prohibition that it would not be required "to supply any products to Netlist." | No genuine dispute of material fact. Plaintiff does not cite to any evidence that shows that the draft agreement was not proposed by Netlist. Its purported distinction between a proposal from Netlist and a "response" to Samsung's proposal is purely rhetorical and immaterial in this context.<br><br>The remainder of |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| returned the language to reflect what was agreed to in the MOU." Samsung agreed to this change.<br><br><br>Choi Decl. ¶ 29, Exh. 28 at p. 2; ¶ 30, Exh. 29 at p. 1; ¶ 31, Exh. 30 at p. 5; ¶ 32, Exh. 31 at NL118147 and NL118149. | Disputed to the extent Samsung is implying that Netlist believe that the supply provision should be limited to NVDIMM-P (as this SUF is cited in Samsung's brief). Nowhere does any of the cited material indicate that Netlist or Mr. Whitley were proposing to limit the supply provision to NVDIMM-P.<br><br>Also disputed as to the materiality of the statement, because the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). | Plaintiff's response is argument, not a statement of fact, and should be disregarded.<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation history. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br><br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 36. As expressed by Whitley, it was Netlist's position that the MOU should govern the supply term. As set forth in SUF nos. 20 and 31, the MOU only required that Samsung supply product in the event that the NVDIMM-P product was ever commercialized.<br><br>Choi Decl. ¶ 29, Exh. 28 at p. 2.;<br><br>¶ 8, Exh. 7 at 130:6-132:10. | Disputed.<br><br>Neither Mr. Whitley nor Netlist has ever taken the position that the MOU and not the final JDLA should govern the parties' obligations.<br><br>Plaintiff disputes the characterization of SUF 20 and 31. *See* Defendant's response and evidence to SUF No. 20 and 31 incorporated herein.<br><br>Nowhere does any of the cited material indicate that Netlist or Mr. Whitley were proposing to | No genuine dispute of material fact. Plaintiff does not dispute that Mr. Whitley revised the supply term in his email on the basis that it "Conflicts with [the] MOU." Choi Decl. ¶ 29, Exh. 28 at p. 2. This demonstrates an understanding that the MOU governs the supply term.<br><br>The remainder of Plaintiff's response is argument, not a statement of fact, and |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | limit the supply provision to NVDIMM-P.<br><br>Also disputed as to the materiality of the statement, because the JDLA contains an integration clause ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement.").<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | should be disregarded.<br><br>Plaintiff's legal argument regarding the JDLA's integration clause is misplaced given that Samsung is not arguing that the document in question is a binding contract, but simply that it is evidence of the Parties' negotiation history. |
| 37. Netlist wanted Samsung's assurance that it would supply NAND and DRAM | Disputed.<br><br>Netlist wanted Samsung's assurance that it would supply | No genuine dispute of material fact. Plaintiff does not dispute that this is what Chuck Hong |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| to support NVDIMM-P sales if the joint development proved successful, and demand for the product took off.<br><br>Choi Decl. ¶ 8, Exh. 7 at 80:13-23. | NAND and DRAM at Netlist's request, regardless of whether the joint development proved successful or the demand for the product took off, without limitation to NVDIMM-P.<br><br>Evidence:<br><br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC0000006-0007.<br><br>To the contrary, Mr. Hong testified that, "from day one" Netlist had not ever "communicate[d] to Samsung that Samsung's obligation to supply NAND and DRAM products would be limited to NVDIMM-P."<br><br>Evidence:<br><br>• Ex. 84 to 8-30-21 | testified. Choi Decl. ¶ 8, Exh. 7 at 80:13-23 ("Q: And to the extent that this product is a significant product for Netlist someday, it follows, then, that Netlist would need to have chips available for that product; correct? A: That – that's right."<br><br>Plaintiff also cites solely to the text of the *Joint Development* and License Agreement itself as evidence for the assertion that the supply provision therein was completely unmoored from any joint development. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Chuck Hong Dep. Tr.) at 238:15-24.<br><br>*See also* Defendant's response and evidence to SUF Nos. 20-21 incorporated herein. | |
| 38. During the contract negotiations, Netlist's CFO Gail Sasaki wrote to Samsung: "Both sides understood from the outset that this was a strategic deal, not a financial one. *The value that would be transferred and created resided in the patents and the technology.*"<br><br>Choi Decl. ¶ 33, Exh. 32 at p. 1. | Undisputed that the quoted sentence appears in the document. Disputed as to the characterization to the extent Defendant is suggesting that the supply provision was not a strategic consideration to the deal.<br><br>This sentence is taken out of context and in an email with a Samsung Semiconductor Industries employee, not a Samsung Electronics employee, about a separate negotiation from the JDLA negotiation. The email goes on to state that "*Samsung's top* | Undisputed. The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Moreover, the argument is misleading in suggesting that the $15 million convertible loan from Samsung Ventures related to a "separate negotiation, given that the recitals on the very first page of the JDLA explicitly state that "WHEREAS, the Parties |

5746305.1

94

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *management commented that this was not a financial deal* and that Samsung did not intend to make money using money," and that the terms "now introduced by Samsung Ventures are, in fact, those of a financial deal."<br><br>Evidence:<br>• Dkt. 151-2 [Samsung MSJ Ex. 32] (NL048993) at NL048993. | are concurrently executing an agreement for convertible note financing[.]" Choi Decl. ¶ 20, Exh. 19 at p. 1; *see also Id.* at ¶ 21, Exh. 20 (Netlist Form 8-K disclosing JDLA and convertible loan agreement). Plaintiff does not dispute that this recital in the JDLA refers to this $15 million loan. |

**Defendant's Allegation that Netlist Admits JDLA Is Not A Contract to Supply DRAM and NAND Beyond Joint Development**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 39. In his declaration to this Court, Netlist CEO Chuck Hong | Undisputed. | Undisputed. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| indicated that the purported supply arrangement that Netlist is litigating was "crucial" and "critical."<br><br>Dkt. 89-21 at ¶¶ 4, 5. | | |
| 40. Netlist disclosed an agreement with SK Hynix on April 5, 2021, stating that contract "entitles Netlist to purchase up to $600,000,000 of SK Hynix memory products during the term . . ."<br><br>Choi Decl. ¶ 34, Exh. 33 at p. 2. | Undisputed. | Undisputed. |
| 41. Netlist CEO Chuck Hong's presentation to the Board in November | Disputed.<br><br>Defendant's cited supporting evidence does not support the fact. Defendant does not cite | No genuine dispute of material fact. Plaintiff offers no evidence that shows that the "draft" |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 2015, prepared by Netlist CFO Gail Sasaki, describes the technology collaboration and the cross-licensing of patents but makes no mention of Netlist's supposed broad supply agreement.<br><br>Choi Decl. ¶ 35, Exh. 34 at p. 1; 36, Exh. 35 at p. 1. | to any board presentation, but rather to an email containing draft materials. Defendant fails to identify supporting evidence for its fact.<br><br>Also disputed as immaterial. The absence of a specific reference to Samsung's supply obligation in a presentation to Netlist's Board does not negate the existence of Samsung's contractual obligations, as stated in Section 6.2.<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at Section 6.2.<br><br>In addition, it's immaterial because the JDLA contains an integration clause | materials cited to by Defendant are not representative of what was presented to the board.<br><br>The remainder of Plaintiff's response is argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | ("Except as otherwise stated herein, this Agreement and all Appendices attached hereto supersede all prior proposals, consents, agreements, and discussions, oral or written, between the Parties relating to the subject matter of this Agreement."). | |
| | Evidence: Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at SEC000014. | |
| 42. In its first annual report following the JDLA, Netlist disclosed the risks associated with not having a supply contract: "Our ability to fulfill customer orders or | Undisputed that the language quoted appears in the cited document. Disputed as to the characterization that Netlist disclosed that it did "not hav[e] a supply contract" (*i.e.*, with Samsung), as the quoted language is taken out of | Undisputed. The Remainder of Plaintiffs' response is argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| produce qualification samples is dependent on a sufficient supply of field programmable gate arrays ("FPGAs"), DRAM ICs and NAND flash, which are essential components of our memory subsystems. There are a relatively small number of suppliers of FPGAs, DRAM ICs and NAND flash, and we purchase from only a subset of these suppliers. *We have no long-term FPGA, DRAM or NAND flash supply contracts.*" (emphasis added) | context. Samsung quotes only the generalized "risk factors" for the company—carried over from disclosures made in earlier years (*see* Ex. 3 (2014 10-K) at p. 14, Ex. 73 (2012 10-K) at p. 18, Ex. 74 (2013 10-K) at p. 22)—without regard to the specific disclosures expressly related to the JDLA made in the very same document.<br><br>First, Samsung ignores the express disclosure in the same cited document (Samsung MSJ Ex. 18, which is the same document as Samsung MSJ Ex. 36)   that expressly states that Netlist has a supply contract with Samsung: "Further, our JDLA with Samsung contractually | |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Choi Decl. ¶ 19, Exh. 18 at p. 13. | commits Samsung to supply NAND flash and DRAM products to us on our request at competitive prices." <br><br> Evidence: <br><br> • Dkt. 150-3 [Samsung MSJ Ex. 18 (see also Ex. 36, same)] at p. 6 (emphasis added). <br><br> Consistently and continuously, for every year since 2015, Netlist likewise repeatedly represented in other SEC filings that it had a supply contract with Samsung. <br><br> Evidence: <br><br> • E.g., Dkt. 150-4 [Samsung MSJ Ex. 37] at p.5 ("We also resell certain Samsung products that we purchase under the terms of | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | our JDLA"); p.7 ("we resell certain Samsung products that we purchase under the terms of our JDLA"), p.8 ("[O]ur JDLA with Samsung contractually commits Samsung to supply NAND flash and DRAM products to us upon our request at competitive prices.") <br>• Dkt. 150-2 [Samsung MSJ Ex. 6] at p.5 ("We have purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA."), p.8 ("We also purchase some of these component products from Samsung under the terms of the JDLA.") <br>• Dkt. 150-2 [Samsung MSJ Ex. 4] at p.5 ("We have | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p. 8 ("We also purchase some of these component products from Samsung under the terms of the JDLA, and from alternative suppliers, for the purpose of resale to customers directly").<br><br>• Dkt. 150-4 [Samsung MSJ Ex. 38] at p.5 ("We have purchased certain of these products, including SSDs, NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p.7 ("We also purchase some of these component products from Samsung under the terms of the JDLA"). | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • *See also* Ex. 85 to 8-30-21 LaMagna Decl. (Gail Sasaki Dep. Tr.) at 305:14-306:3, 309:1-21 (In connection with the SEC filings' statements concerning the absence of long- term supply contracts, Gail testified that the statement appeared in portions of Netlist's filings concerning "risk factors" in which its general approach was to "be[ ] very conservative to say all the negative things that [it] would to make sure that should anything go wrong with anything" all risks had been fully disclosed to "the public."). And this is consistent with Netlist's other public statements, such as on | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | investor earnings calls, when Netlist repeatedly referenced its agreement with Samsung, including the fact that the agreement covered the sale of NAND and DRAM product without being limited to components for NVDIMM-P. Evidence: • Ex. 96 to 8-30-21 LaMagna Decl. (Q2 2016 Earnings Call) ("[T]hat was part of the partnership and agreement that we have with Samsung to have access to their raw materials as well as their – some of their selected product lines and we are seeing the benefit of that."). | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Ex. 97 to 8-30-21 LaMagna Decl. (Q3 2016 Earnings Call) ("In our partnership with Samsung, we continue to benefit from the unique access we have . . . to certain Samsung products in the enterprise space. This includes enterprise-grade, high- capacity SSDs and high-density DRAM modules. Product lines [that] Samsung is committed to supporting for the long-term. We have continued to grow the customer base for these products since we began shipments earlier this year."). | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • *Id.* ("Further, the Samsung Corporation products provide synergistic value for our own product portfolio and open doors allowing our sales team to establish relationships with OEMs and data center customers."). Ex. 98 to 8-30-21 LaMagna Decl. (Q1 2017 Earnings Call) ("The year-over-year increase in revenue primarily reflects the multiple benefits of our Joint Development Agreement with Samsung, which added the synergistic Samsung high-end memory products to our product offering. On a consecutive quarterly basis, product revenue improved by 70%.). | |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 43. Netlist repeatedly and consistently disclosed the risks associated with not having a long-term supply contract for DRAM and NAND in its annual reports before and after execution of the JDLA, each time stating that Netlist had "no long-term supply contracts" for these products.<br><br>Choi Decl. ¶ 74, Exh. 73 at p. 18; ¶ 75, Exh. 74 at p. 22; ¶ 4, Exh. 3 at p. 14; ¶<br>37, Exh. 36 at p. 14; ¶ 19, Exh. 18 at p.13; ¶ 38, Exh. 37 at p. 19; ¶ 7, Exh. 6 at p. 20; ¶ 5, | Undisputed that the language quoted appears in the cited document.<br><br>Disputed as to the characterization that Netlist disclosed that it did "not hav[e] a supply contract" (*i.e.*, with Samsung), as the quoted language is taken out of context. Samsung quotes only the generalized "risk factors" for the company—carried over from disclosures made in earlier years (*see* Ex. 3 (2014 10-K) at p. 14, Ex. 73 (2012 10-K) at p. 18, Ex. 74 (2013 10-K) at p. 22)—without regard to the specific disclosures expressly related to the JDLA made in the same document.<br><br>First, Samsung ignores the | Undisputed.<br><br>The Remainder of Plaintiffs' response is argument, not a statement of fact, and should be disregarded. The quoted language stating that Netlist had "no long-term supply contracts" is not taken out of context. It is part of the disclosures regarding risk factors that Netlist is required by law to make. *See* 17 CFR § 229.105 ("provide under the caption 'Risk Factors' a discussion of the ***material factors*** that make an investment in the registrant or offering speculative or risky.") |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Exh. 4 at p. 22; ¶ 39, Exh. 38 at p. 20; ¶ 40, Exh. 39 at p. 15. | express disclosure in the quoted document (Samsung MSJ Ex. 18, which is the same document as Samsung MSJ Ex. 36) that expressly states that Netlist has a supply contract with Samsung: "Further, our JDLA with Samsung contractually commits Samsung to supply NAND flash and DRAM products to us on our request at competitive prices." <br><br> Evidence: <br><br> • Dkt. 150-3 [Samsung MSJ Ex. 18 (*see also* Ex. 36, same)] at p. 6. <br><br> Consistently and continuously, for every year | (emphasis added). To the extent Netlist is arguing that this disclosure was inaccurately "carried over from disclosures made in earlier years", it would be admitting to repeatedly making a material misrepresentation in its annual SEC filings. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | since 2015, Netlist likewise repeatedly represented in other SEC filings that it had a supply contract with Samsung.<br><br>Evidence:<br>*E.g.*, Dkt. 150-4 [Samsung MSJ Ex. 37] at p.5 ("We also resell certain Samsung products that we purchase under the terms of our JDLA"); p.7 ("we resell certain Samsung products that we purchase under the terms of our JDLA"), p.8 ("[O]ur JDLA with Samsung contractually commits Samsung to supply NAND flash and DRAM products to us upon our request at competitive prices.")<br>•    Dkt. 150-2 [Samsung | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | MSJ Ex. 6] at p.5 ("We have purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA."), p.8 ("We also purchase some of these component products from Samsung under the terms of the JDLA.")<br><br>• Dkt. 150-2 [Samsung MSJ Ex. 4 (2018 10-K)] at p.5 ("We have purchased certain of these products, including NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p. 8 ("We also purchase some of these component products from Samsung under the terms of the JDLA, and from alternative suppliers, for the purpose of resale to customers directly").<br><br>• Dkt. 150-4 [Samsung MSJ | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Ex. 38 (2019 10-K)] at p.5 ("We have purchased certain of these products, including SSDs, NAND flash and DRAM products, from Samsung under the terms of the JDLA"), p.7 ("We also purchase some of these component products from Samsung under the terms of the JDLA"). <br><br> • See also Ex. 85 to 8-30-21 LaMagna Decl. (Gail Sasaki Dep. Tr.) at 305:14-306:3, 309:1-21 (In connection with the SEC filings' statements concerning the absence of long- term supply contracts, Gail testified that the statement appeared in portions of Netlist's filings concerning "risk factors" in which its general approach was to "be[ ] very conservative to say all the negative things | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | that [it] would to make sure that should anything go wrong with anything" all risks had been fully disclosed to "the public.")<br><br>And this is consistent with Netlist's other public statements, such as on investor earnings calls, when Netlist repeatedly referenced its agreement with Samsung, including the fact that the agreement covered the sale of NAND and DRAM product without being limited to components for NVDIMM-P.<br><br>Evidence:<br>• Ex. 96 to 8-30-21 LaMagna Decl. (Q2 2016 Earnings Call) ("[T]hat was part of the partnership and | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | agreement that we have with Samsung to have access to their raw materials as well as their – some of their selected product lines and we are seeing the benefit of that."). <br><br> • Ex. 97 to 8-30-21 LaMagna Decl. (Q3 2016 Earnings Call) ("In our partnership with Samsung, we continue to benefit from the unique access we have . . . to certain Samsung products in the enterprise space. This includes enterprise-grade, high- capacity SSDs and high-density DRAM modules. Product lines [that] Samsung is committed to supporting for the long-term. <br> We have continued to grow the customer base for these products since we began shipments earlier this year."). | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • Id. ("Further, the Samsung Corporation products provide synergistic value for our own product portfolio and open doors allowing our sales team to establish relationships with OEMs and data center customers."). <br><br> • Ex. 98 to 8-30-21 LaMagna Decl. (Q1 2017 Earnings Call) ("The year-over-year increase in revenue primarily reflects the multiple benefits of our Joint Development Agreement with Samsung, which added the synergistic Samsung high-end memory products to our product offering. On a consecutive quarterly basis, product revenue improved by 70%.). <br><br> Samsung even ignores nearby | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | language in the "risk factors" disclosures in Netlist's statements where Netlist expressly discusses Samsung's supply of products to Netlist under the JDLA.<br><br>Evidence:<br>• E.g., Dkt. 150-4 [Samsung MSJ Ex. 37] at p. 24 ("we resell certain Samsung products that we purchase under the terms of our JDLA with Samsung")<br>• Ex. 6 (2017 10-K) at p. 17 (referring to Samsung's "failure to comply with the terms of the JDLA regarding the supply of these products")<br>• Ex. 4 (2018 10-K) at p. 19 (referring to Samsung's "failure to comply with the terms of the JDLA regarding the supply of these products") | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | •   Dkt. 150-4 [Samsung MSJ Ex. 38 (2019 10-K)] at p. 18 (referring to Samsung's "failure to comply with the terms of the JDLA regarding the supply of these products") | |
| 44. A November 2, 2015 press release announcing the JDLA that Netlist was preparing had a headline stating "Netlist and Samsung Announce Strategic Alliance To Commercialize the First Unified Memory-Storage Architecture" and makes no mention of a supply agreement. | Disputed and immaterial.<br><br>Defendant's cited supporting evidence does not support the fact. Defendant's cited evidence is a draft containing proposed edits in tracked changes. It is not a November 2, 2015 press release. Moreover, the JDLA contains a confidentiality clause whereby Netlist cannot disclose in a press release unless Samsung consents to that disclosure. Here, Defendant offers no evidence that it ever consented to that | No genuine dispute of material fact. Plaintiff does not contest the contents of the document. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Plaintiff speculates that it could not disclose the supply obligation due to the JDLA's confidentiality clause, but offers no evidence that |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Choi Decl. ¶ 41, Exh. 40 at pp. 2-5. | disclosure. Regardless, it is immaterial because the presence or the absence of a discussion about Section 6.2 in a press release does not negate the existence of Section 6.2 in the contract itself. | Samsung's consent was required or sought for the disclosure of any particular contractual term in the JDLA. Indeed, the press release explicitly references several other specific terms the JDLA. |
| 45. At a February 21, 2017 meeting, Netlist asked Samsung for a "New Partner Type" relationship that would require Samsung to provide "Product Allocation support for Netlist" and an "Official-Distributor Partnership Agreement." When Netlist made this | Disputed but immaterial.<br><br>Defendant's cited supporting evidence does not state the characterization ascribed to it by Defendant.<br><br>It is immaterial because the fact that Netlist wanted to discuss a "new partner type strategic development and distribution" with Samsung, which would include recognition of Netlist as "an Official-Distributor partner[]" even lower OEM | No genuine dispute of material fact. The undisputed evidence from Samsung demonstrates that this is what was discussed at the meeting, and Plaintiff does not dispute this. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| ask, Samsung told Netlist that the JDLA was not an avenue to support Netlist's standard products.<br><br>Choi Decl. ¶ 17, Exh. 16 at SEC008148, SEC008169; ¶ 42, Exh. 41 at p. 3; ¶ 43, Exh. 42 at 43:22-45:3. | pricing, inventory management by Samsung (instead of Netlist needing to take delivery of all orders), does not mean that Samsung did not have an existing supply obligation under the JDLA. Rather, on the face of the document cited by Samsung, Netlist is seeking additional benefits to what it had in the JDLA.<br><br>Evidence:<br>•    Dkt. 150-3 [Samsung MSJ Ex. 16] (SEC008145) at SEC008170. | |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

**Defendant's Allegation that the Parties' Course of Conduct Shows That Samsung Had No Obligation To Supply All Chips At Request**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 46. Netlist received all of the chips it needed to complete the initial phase of the NVDIMM-P product under the JDLA.<br><br>Choi Decl. ¶ 8, Exh. 7 at 88:10-89:5 | Disputed.<br><br>Defendant's cited supporting evidence does not support the fact. Mr. Chuck Hong did not testify as to this fact. As noted below, the development of the NVDIMM-P product itself was never finished under the JDLA.<br><br>Evidence:<br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 139:19-21 ("[D]ash P, again, dash P never became a product…").<br><br>Also disputed as immaterial because Section 6.2 of the JDLA is not limited to the completion of the initial phase of the NVDIMM-P product. | No genuine dispute of material fact. Chuck Hong testified that "We were not concerned about supply of DRAM and NAND on these prototypes," Choi Decl. ¶ 8, Exh. 7 at 88:10-88:15, and answered "no" to a question asking "[t]o do the joint development work . . . did Netlist ever not have a sufficient amount of DRAM or NAND chips?" *Id.* at 88:20-24.<br><br>Plaintiff does not dispute this. Whether the NVDIMM-P product was completed or not is |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at pp. 6-7, § 6.2. | irrelevant to Defendant's SUF No. 46.<br><br>The remainder of Plaintiff's Response is an argument, not a statement of fact, and should be disregarded. |
| 47. The NVDIMM-P product was never commercialized.<br><br>Choi Decl. ¶ 8, Exh. 7 at 109:21-110:1 | Undisputed. | Undisputed. |
| 48. Samsung's performance was satisfactory in 2015, 2016 and into 2017.<br><br>Choi Decl. ¶ 3, Exh. 2 at 52:21-53:10; ¶ 44, Exh. 43 at ¶ 4; ¶ 45, Exh. 44 at ¶ 7. | Disputed and immaterial.<br><br>As a predicate, Samsung does not define "satisfactory."<br><br>As discussed below, Netlist does not contend that Samsung was in material breach of the supply obligation prior to Q2 2017, which is not equivalent to | No genuine dispute of material fact. Plaintiff offers no evidence that disputes that Samsung's performance in 2015, 2016, and parts of 2017 was satisfactory to Netlist. Plaintiff's response is an argument, |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | the claim that no breach has occurred.<br><br>With respect to 2015, prior to November 2015 before the parties entered into the JDLA, is irrelevant to Samsung's contractual obligations under the JDLA. During the period between November 2015 and Q1 2017, Samsung largely supplied products requested by Netlist, and to the extent Samsung failed to supply products, Netlist worked with Samsung to resolve any issues.<br><br>Evidence:<br>• P.K. Hong Decl. [Dkt. 145-2], ¶¶ 3-4.<br>• Chuck Hong Decl. [Dkt. 145-3], ¶ 8. | not a statement of fact, and should be disregarded.<br><br>Moreover, none of the evidence cited to by Plaintiff supports their contention that "to the extent Samsung failed to supply products, Netlist worked with Samsung to resolve any issues."<br><br>In addition, the Chuck Hong and P.K. Hong Declarations are not admissible evidence. *See* Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's Motion for Partial Summary Judgment) at |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | | 9:2-16; 20:2-21:13 |
| | Starting in Q2 2017, Samsung made the express and intentional decision to severely limit product supply to Netlist, at times down to "zero allocation" or capped to no more than $500,000 per month. Samsung often refused to supply Netlist with products not because they weren't available, but because Samsung decided to provide them to other customers.<br><br>Evidence:<br><br>• Dkt. 142-5 [Netlist MSJ Ex. 18] (SEC058105) (May 2017 email from Steven Metz stating that he informed Netlist that "Samsung had zero allocation in Q3 to | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | support Netlist" or Netlist's customers) | |
| | • Ex. 87 to 8-30-21 LaMagna Decl. (NL063129) (April 2017 email from Raymond Jiang to Neal Knuth, in which Samsung refused to supply Netlist with SM863a and PM863a products not because they weren't available, but because Samsung decided to provide them to Ma Labs instead. Jiang emails Knuth, "with lack of support from Samsung, we may end up losing these OEM customers.") | |
| | • Ex. 88 to 8-30-21 LaMagna Decl. (SEC143892) (In September 2017, Lane Kim instructs Neal Knuth to not ship out $250k of products that Netlist requested in | |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | September 2017, even though the products were on hand in the warehouse ready for shipment because of the $1 million allocation cap)<br>• P.K. Hong Decl. [Dkt. 145-2], 5.<br>• Chuck Hong Decl. [Dkt. 145-3], ¶ 10. | |
| 49. In 2015, 2016 and into 2017, Samsung did not fulfill all of Netlist's requested orders.<br><br>Choi Decl. ¶ 3, Exh. 2 at 54:24-55:10; ¶ 44, Exh. 43; ¶ 46, Exh. 45; ¶ 47, Exh. 46; ¶ 48, Exh. 47; ¶ 49, Exh. 48; ¶ 50, Exh. 49 ¶ 8, Exh. 7 at 122:20-123:5, 152:15-24; ¶ 51, Exh. 50; ¶ 55, Exh. 51. | Undisputed.<br><br>As to the period preceding the JDLA, irrelevant to Samsung's contractual obligations under the JDLA. | Undisputed. Plaintiff's response is an argument, not a statement of fact. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 50. For all orders both before and after the JDLA, Netlist has always used purchase orders.<br><br>Choi Decl. ¶ 3, Exh. 2 at 29:7-24, 47:24-48:18; ¶ 13, Exh. 12 at 151:5-19. | Disputed and immaterial.<br><br>The cited evidence does not support their representation that Netlist has **_always_** used purchase orders for **_all_** orders ever placed universally.<br><br>Immaterial because Samsung's conduct before and after the JDLA is irrelevant to Samsung's contractual obligations under the JDLA.<br><br>To the extent that Defendant interprets SUF No. 50 as covering conduct during the JDLA, it is immaterial.  The alleged breach is that Samsung denied Netlist's requests to even submit purchase orders, and/or did not fulfill those purchase orders when | No genuine dispute of material fact. Plaintiff offers no evidence demonstrating that there were instances in which Netlist did not use purchase orders to controvert the unambiguous testimony of their own witnesses. Choi Decl. ¶ 3, Exh. 2 at 29:20-24 (P.K. Hong deposition testimony) ("Q: -- are you aware of any instance in which an order was made by Netlist for NAND and DRAM products without a purchase order? A: DRAM and NAND products were ordered with a purchase order."); ¶ 13, Exh. 12 (Raymond |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | submitted.<br><br>Evidence:<br><br>• Dkt. 142-3 [Netlist MSJ Ex. 15] (SEC005294) at SEC005295, SEC005301 (Samsung acknowledging that it had rejected requests for orders from Netlist)<br><br>As to the failure to fulfill, see Defendant's response and evidence to SUF No. 48 incorporated herein. | Jiang deposition testimony) at 151:5-19 ("Q: . . . When you purchase product from Samsung, there's always a purchase order, right? A: Correct.")<br><br>The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |
| 51. Netlist's purchase orders indicate as follows:<br><br>1. Acceptance<br><br>The terms and conditions hereof become the exclusive and binding agreement between the parties covering the purchase of goods owr services | Undisputed that some of Netlist's purchase orders contain the quoted terms among others.<br><br>The evidence provided does not confirm that all of Netlist's purchase orders over time have the same language. | No genuine dispute of material fact. Plaintiff does not dispute that Netlist's purchase orders contain the quoted terms, and does not cite to any evidence that suggests that there exist any Netlist purchase |

3746305.1

126

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| ordered herein when this purchase order is accepted by acknowledgment or commencement of performance. This order may be accepted only on these terms and conditions.<br><br>[…]<br>12. Entire Agreement<br><br>This agreement sets forth the entire agreement between parties with respect to the subject matter hereof and supersedes all prior agreements and discussion between them. No modification or amendment here will be effective unless in writing and signed by a daily authorized representative of each party. Any terms and conditions set forth in any order confirmation or acknowledgement or any other documents | Regardless, the cited language is immaterial.  The terms or contents of the Purchase Orders are not relevant to interpreting the JDLA. | orders that do not include the quoted terms.<br><br>Moreover, the undisputed evidence demonstrates that Netlist's purchase order format has not varied over time. *See* Choi Decl. ¶ 13, Exh. 12 (Raymond Jiang deposition testimony) at 151:5-19 ("Q: And it's been the same purchase order the whole time? A: It's been the same purchase format the whole time."). |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| shall be of no force or effect whatsoever.<br><br>All of Netlist's purchase orders contain the same terms and conditions for all its purchases from Samsung.<br><br>Choi Decl. ¶ 53, Exh. 52 at NL002028- 29; ¶ 13, Exh. 12 at 151:5-19; ¶ 3, Exh. 2 at 29:7-24, 47:24-48:18. | | |
| 52. After the JDLA, Samsung continued to supply Netlist with NAND and DRAM outside of the joint development context.<br><br>Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, | To the extent this is construed to mean after the JDLA (i.e., after termination July 15, 2020), it is undisputed that Samsung continued to supply Netlist with some NAND and DRAM products. But this is immaterial because conduct after the JDLA is | Undisputed. Plaintiff's response is an argument, not a statement of fact.<br><br>None of the evidence cited by Plaintiff disputes the uncontroverted evidence that Samsung supplied product to Netlist in every quarter from 2015 through |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 54:24-55:10, 183:3-15, 184:8-20. | not relevant to whether was a breach of the JDLA prior to termination.<br><br>To the extent Defendant is referring to the period after the *execution* of the JDLA, disputed to the extent it is construed as meaning in compliance with Section 6.2 of the JDLA.<br><br>In Q2 2017, Samsung began to refuse to supply any products to Netlist, and/or capped the amount of products that could be purchased. *See* Defendant's response and evidence to SUF Nos. 2, 48, 53 incorporated herein. | present, as demonstrated by a document produced by Netlist itself. Choi Decl. ¶ 52, Exh. 51. |
| 53. Samsung's sales to Netlist have continued from 2001 | Disputed and immaterial.<br><br>The fact that Samsung | No genuine dispute of material fact. The document cited to by |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| to the present day, according to the same course of dealing that existed before the JDLA, after the JDLA, and continue to this day after Netlist purported to terminate the JDLA and filed this lawsuit.<br><br>Choi Decl. ¶ 21, Exh. 11 at 25:6-25, 201:9-18; ¶ 3, Exh. 2 at 27:21-28:12, 35:23-36:13, 37:18-22, 47:24-50:4, 183:3-15, 184:8-20. | and Netlist conducted at-will sales transactions prior to or after the JDLA is immaterial to whether Samsung had a contractual obligation under the JDLA and whether Samsung breached it.<br><br>Disputed as to the representation that the "same course of dealing" existed or "continued" from 2001 to the present—it did not.  For example, in 2015 prior to the signing of the JDLA, Samsung sold close to no products to Netlist.<br><br>Evidence:<br><br>•     Ex. 75 to 8-30-21 LaMagna Decl. (excerpt of NL117869) (Samsung | Plaintiff does not support their response, as it is a cherry-picked subset of invoices from March-November 2015. *See* 8-30-21 LaMagna Decl. Exh. 75. There is nothing anywhere in the document that indicates that this is the entirety of invoices from Samsung to Netlist during that time period. *Id.*<br><br>None of the other evidence cited to by Plaintiff disputes Defendant's evidence regarding the Parties' course of dealing. *See also* Defendant's SUF Nos. 1, 2, 8, 52, and 58. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | invoices from 2015 prior to signing of the JDLA, totaling $23,343.00) <br><br>• Chuck Hong Decl. [Dkt. 145-3], ¶ 8 ("Before the JDLA was signed, Samsung supplied effectively no product to Netlist and the relationship was *ad hoc*."). <br><br>In 2016, Samsung largely supplied Netlist with NAND and DRAM products that Netlist requested. <br><br>Evidence: <br><br>• P.K. Hong Decl. [Dkt. 145-2], ¶¶ 3-4. <br><br>• Chuck Hong Decl. [Dkt. 145-3], ¶ 8. <br> But starting in Q2 2017 and until the termination | The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded. <br><br>In addition, the Chuck Hong and P.K. Hong Declarations are not admissible evidence. *See* Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's Motion for Partial Summary Judgment) at 9:2-16; 20:2-21:13 |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | of the JDLA, Samsung frequently and repeatedly rejected purchase orders and/or refused to supply products, including by imposing a "zero allocation" on Netlist, in derogation of the supply obligation.<br><br>Evidence:<br>• Dkt. 142-5 [Netlist MSJ Ex. 18] (SEC058105) (May 2017 email from Steven Metz stating that he informed Netlist that "Samsung had zero allocation in Q3 to support Netlist" or Netlist's customers)<br>• Ex. 87 to 8-30-21 LaMagna Decl. (NL063129) (April 2017 email from Raymond Jiang to Neal | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Knuth, in which Samsung refused to supply Netlist with SM863a and PM863a products not because they weren't available, but because Samsung decided to provide them to Ma Labs instead. Jiang emails Knuth, "with lack of support from Samsung, we may end up losing these OEM customers.")<br><br>• Ex. 88 to 8-30-21 LaMagna Decl. (SEC143892) (In September 2017, Lane Kim instructs Neal Knuth to not ship out $250k of products that Netlist requested in September 2017, even though the products were on hand in the warehouse ready for shipment because of the $1 million allocation cap) | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
|  | • Chuck Hong Decl. [Dkt. 145-3], ¶ 8.<br>• Dkt. 145-18 [Netlist MSJ Ex. 14] (NL119258) (PK Hong circulates notes from meeting with Samsung in February 2016: "*HS mentioned that up to a year ago – he was told not to support Netlist*. He actually was not allowed to visit Netlist. GAM conflict. This comes from our VLP business at IBM. He mentioned that he is now being told to support Netlist and will") Dkt. 142-5 [Netlist MSJ Ex. 18] (SEC058105) (in May 2017, Knuth conveyed to Netlist that *Samsung had no support* for Q3 2017; Metz also communicated to Paik Ki Hong that "Samsung had *zero allocation in Q3 to support* |  |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *Netlist and/or the end customers Netlist is currently supporting*") | |
| | • Dkt. 145-38 [Netlist MSJ Ex. 34] (NL020770) (January 2018 email from Paik Ki Hong to Steven Metz, "I was just told that Samsung North America had decided to give Netlis*t $0 allocation and no support*. This is a problem . . . We have a JDLA that states Samsung will support Netlist. We have on paper that Samsung will support Netlist with components for NVDIMM.") Ex. 89 to 8-30-21 LaMagna Decl. (SEC000379) at SEC000383 (February 2018 "Southwest Region Weekly Report" noting, "Netlist backlog is being addressed and *sales will be little/no* | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *moving forward.*"); SEC000387 ("Netlist: Account will be closed in 2018"). <br><br> • Dkt. 145-39 [Netlist MSJ Ex. 35] (NL020775) (In February 2018, Paik Ki Hong emailed Neal Knuth, "In Jan. '18, Samsung *stopped shipments all together. These drastic changes have impacted our business and impacted our ability to support our customers.* We need Samsung to support the forecast we have included in this email." <br><br> • Ex. 90 to 8-30-21 LaMagna Decl. (Knuth Dep. Tr.) at 165:19-24 (testifying that in February 2018, Samsung had imposed a zero allocation for Netlist). | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *See also* Defendant's response and evidence to SUF Nos. 2 and 48 incorporated herein. | |
| 54. Netlist understood that the JDLA did not guarantee it access to all of the Samsung product it requested, but only the product that Samsung actually agreed to sell.

Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 54:24-55:10, 91:10-93:24, 94:6-21, 183:3-15, 184:8-20; ¶ 53, Exh. 52 at NL002024-2027; ¶ 54, Exh. 53 at pp. 1, | Disputed.

Pursuant to the JDLA, Netlist expected that Samsung would be obligated under the supply provision to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price," not "only the product that Samsung actually agreed to sell."

Evidence:

• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at § 6.2.

Contrary to Defendant's representation of Mr. Paik Ki Hong's deposition testimony, | No genuine dispute of material fact. Plaintiff does not cite to any evidence disputing that Netlist's employees conducted their business with Samsung based on the understanding that they were not guaranteed access to product beyond what Samsung agreed to sell, regardless of what their purported understanding of Samsung's obligations under the JDLA may have been.

Moreover, Netlist cites |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 2; ¶ 46, Exh. 45; ¶ 49, Exh. 48. | Mr. Hong in fact testified that Samsung did not fulfill *Netlist's requests* for products.<br><br>• Ex. 83 to 8-30-21 LaMagna Decl. (Paik Ki Hong Dep. Tr.) at 261:23-262:22.<br><br>• Paik Ki Hong Decl. [Dkt. 145- 2], ¶ 3 ("Samsung agreed to supply NAND and DRAM to Netlist at Netlist's request and at a competitive price.").<br><br>• *See also* Dkt. 145-38 [Netlist MSJ Ex. 34] (NL020770) (January 2018 email from P.K. Hong to Steven Metz, "I was just told that Samsung North America had decided to give Netlist $0 | to *post hoc* statements by Netlist employees "not even alleged to have participated in drafting or negotiating [Section 6.2 of the JDLA]", and are therefore inadmissible "and may not be considered on a motion for summary judgment." *Faulkner v. National Geographic Soc.*, 452 F.Supp.2d 369, 379 (S.D.N.Y. 2006).<br><br>Whether Samsung fulfilled all of Netlist's requests or not is immaterial to Defendant's SUF No. 54.<br><br>In addition, the Chuck |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | allocation and no support. This is a problem . . . **We have a JDLA that states Samsung will support Netlist**. We have on paper that Samsung will support Netlist with components for NVDIMM.") <br><br> Likewise, Netlist's other employees held the same belief. <br><br> • Chuck Hong Decl. [Dkt. 145-3], ¶ 5 (the "supply obligation was firm and binding. Netlist and Samsung executed a Joint Development and License Agreement ("JDLA") in November 2015.") <br> Ex. 82 to 8-30-21 | Hong and P.K. Hong Declarations are not admissible evidence. *See* Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's Motion for Partial Summary Judgment) at 5:22-6:9; 19:15-27. |

3746305.1

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Raymond Jiang Dep. Tr.) at 206:6-19.<br><br>Netlist's reasonable accommodations to Samsung do not prove that Netlist believed that Samsung was only required to sell what it wanted to.<br><br>Evidence:<br><br>• Choi Decl. ¶ 53, Exh. 52 at NL002024-2027; ¶ 54, Exh. 53 at pp. 1, 2; ¶ 46, Exh. 45; ¶ 49, Exh. 48.<br><br>• Dkt. 151-1 [Samsung MSJ Ex. 2] (Paik Ki Hong Dep. Tr.) at 93:22-24 (testifying that Netlist "would submit POs for whatever Samsung told us they | |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | could support, *but it's still a fraction of our request*. To get parts, you have to issue a PO.") | |
| 55.    Due to Samsung needing led time for production, Netlist submitted forecasts of its requests, and discussed with Samsung how much material would be allocated and made available to it.<br><br>Choi Decl. ¶ 3, Exh. 2 at 48:10-12.; Choi Decl. ¶ 13, Exh. 12 at 152:5-153:24. | Disputed and immaterial.<br><br>Netlist did not submit forecasts due to Samsung needing lead time. Netlist submitted forecasts because that is what Samsung required Netlist to do. Even when Samsung had products in stock, they chose not to ship products to Netlist because of its product allocation cap and/or zero allocation.<br><br>Evidence:<br><br>•    Ex. 88 to 8-30-21 LaMagna Decl. (SEC143892) | No genuine dispute of material fact. Plaintiff does not dispute that Netlist submitted forecasts.<br><br>None of the evidence cited to in Plaintiff's response indicates any alternative reason for the submission of forecasts other than Samsung requiring lead time for production. The purported fact that forecasts were required by Samsung, or that Samsung did not always ship to Netlist when it |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | (In September 2017, Lane Kim instructs Neal Knuth to not ship out $250k of products that Netlist requested in September 2017, even though the products were on hand in the warehouse ready for shipment because of the $1 million allocation cap). <br><br> Defendant's cited supporting evidence does not support the fact. Defendant cites to the deposition transcripts of Netlist's Chuck Hong and Raymond Jiang. Neither witness testified as to Samsung's production schedule or knowledge regarding Samsung's need for lead time. <br><br> Also disputed that the parties | had availability, instead choosing to allocate product to other customers, does not dispute this fact. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | "discussed with Samsung how much material would be allocated and made available to it."  After Q2 2017, Samsung unilaterally decided what product it would sell to Netlist or not. There was no "discussion." *See* Defendant's response and evidence to SUF No. 53 incorporated herein. Regardless, it is immaterial because whether we submit forecasts or not, Samsung still refused to sell Netlist the requested product and/or did not fulfill orders placed by Netlist. *See* Defendant's response and evidence to SUF Nos. 8 and 53 incorporated herein. | |
| 56. Netlist only submitted purchase orders for specific quantities of product | Disputed. Defendant's cited supporting evidence does not support the | No genuine dispute of material fact. Plaintiff attempts to manufacture a dispute by ignoring the |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| after Samsung indicated that such product would be available.

Choi Decl. ¶ 12, Exh. 11 at 23:23-24:5; ¶ 3, Exh. 2 at 62:6-14, 93:18-24.; Choi Decl. ¶ 13, Exh. 12 at 154:3-20. | fact. Defendant refused orders even when it had products available but were expected to be forthcoming. From time to time, Samsung also took orders for products that were not immediately available and placed Netlist's orders on backlogs.

Evidence:
- Ex. 87 to 8-30-21 LaMagna Decl. (NL063129) (April 2017 email from Raymond Jiang to Neal Knuth, in which Samsung refused to supply Netlist with SM863a and PM863a products not because they weren't available, but because Samsung decided to provide | plain meaning of the term "available" and misconstruing it to mean "immediately available." The fact that a product may take some time to manufacture and ship these products plainly does not mean that they are not available.

The purported fact that Samsung did not always ship to Netlist when it had availability, instead choosing to allocate product to other customers, does not dispute SUF No. 56. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | them to Ma Labs instead. Jiang emails Knuth, "with lack of support from Samsung, we may end up losing these OEM customers.")<br><br>• Ex. 88 to 8-30-21 LaMagna Decl. (SEC143892) (In September 2017, Lane Kim instructs Neal Knuth to not ship out $250k of products that Netlist requested in September 2017, even though the products were on hand in the warehouse ready for shipment because of the $1 million allocation cap).<br><br>Evidence: | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • Paik Ki Hong Depo Tr. 62:8-9 ("*in most cases*, we would issue POs on what Samsung could support.") (emphasis added). | |
| 57.   According to their own terms, Netlist's purchase orders superseded any prior agreements or discussions with Samsung, such as forecasts and informal e-mail or oral requests to purchase product.<br><br>Choi Decl. ¶ 55, Exh. 54 at pp. 3, 6, 9, § 28; ¶ 53, Exh. 52 at NL002029 | Disputed.<br><br>Netlist's purchase orders do not "supersede any prior agreements or discussions with Samsung." There is nothing in the purchase orders that requires superseding the JDLA or absolves Samsung of its obligation to fulfill Netlist's requests for products. Section 28 of the cited purchase order (in Samsung MSJ Ex. 54) states the agreement sets forth the entire agreement for the subject matter hereof. The subject matter of the purchase | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact.<br><br>Plaintiff does not dispute that the "Entire Agreement" clause of the purchase orders explicitly indicates that it "supersedes all prior agreements and discussion between [the Parties]." Choi Decl. ¶ 55, Exh. 54 at pp. 3, 6, 9, § 28. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
|  | orders is the specific quantity, price, and delivery terms for the products listed in the purchase order. Those terms supplied by the purchase order are not in the JDLA, and therefore there is no tension between the two. The purchase order does not cover the requests for product that Samsung refuses that are then not memorialized in the purchase order to begin with.<br><br>Evidence:<br><br>•　Choi Decl. ¶ 55, Exh. 54 at pp. 3, 6, 9, § 28; ¶ 53, Exh. 52 at NL002029. | Plaintiff's strained argument that the "subject matter" of the purchase order includes the quantity, price, and delivery terms of products, yet somehow excludes any legal obligation by Samsung to sell product at all (if any existed) does not pass even the most rudimentary scrutiny. |
| 58. Netlist purchased a substantial amount of NAND and DRAM from Samsung in each quarter from | Undisputed that Samsung sold to Netlist some amount of product in every quarter from November 2015 to the present, but immaterial because | No genuine dispute of material fact. Plaintiff adopts an arbitrary definition of the term "a substantive amount" in |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| November 2015 to the present, although the amounts varied over time.<br><br>Choi Decl. ¶ 51, Exh. 50 at F-36, F-34, F-36, F-36, F-36, 77; ¶ 52, Exh. 51; Choi Decl. ¶ 3, Exh. 2 at 186:16-188:5; ¶ 7, Exh. 6 at p.8. | Netlist's claim is that not that Samsung failed to supply any product—Netlist's claim is that Samsung did not supply Netlist the amount of products requested.<br><br>Disputed as to the characterization of "a substantial amount." Starting in Q2 2017, Samsung at times allocated Netlist anywhere from zero allocation to no more than a $1 million per month, which was insubstantial to meet Netlist's product needs.<br><br>Evidence:<br>• Ex. 76 to 8-30-21 LaMagna Decl. (Akemann Opening Report), ¶ 123 ("from | order to manufacture a dispute. None of the evidence cited by Plaintiff disputes the uncontroverted evidence that Samsung supplied product to Netlist in every quarter from 2015 through present, as demonstrated by a document produced by Netlist itself. Choi Decl. ¶ 52, Exh. 51. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Q2 2017 through July 15, 2020, Netlist only received 48% of units ordered and 67% of dollar volume ordered. And in the period leading up to this lawsuit and Netlist's notice to cure and termination (i.e., from April 1, 2020 through July 15, 2020), Netlist only received 7% of units ordered and 51% of dollar volume ordered") <br><br> • Ex. 76 to 8-30-21 LaMagna Decl. (Akemann Report), Exhibit 4 (Monthly Samsung Orders) <br><br> • Ex. 90 to 8-30-21 LaMagna Decl. (Knuth Dep. Tr.) at | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | 165:19-24 (testifying that in February 2018, Samsung had imposed a *zero allocation* for Netlist). Dkt. 142-15 [Netlist MSJ Ex. 18] (SEC058105) (in May 2017, Knuth conveyed to Netlist that *Samsung had no support* for Q3 2017; Metz also communicated to Paik Ki Hong that "Samsung had *zero allocation in Q3 to support Netlist and/or the end customers Netlist is currently supporting*"; Metz also writes, "Heads up. | |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Since Samsung is nearly 100% of their support, and Revenue this will have a dramatic impact on their financials and future business.") <br><br> • Dkt. 145-38 [Netlist MSJ Ex. 34] (NL020770) (January 2018 email from Paik Ki Hong to Steven Metz, "I was just told that Samsung North America had decided to give Netlist *$0 allocation and no support*. This is a problem . . . We have a JDLA that states Samsung will support Netlist. We have on paper that Samsung will support Netlist with components for | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | NVDIMM.") Ex. 89 to 8-30-21 LaMagna Decl. (SEC000379) at SEC000383 (February 2018 "Southwest Region Weekly Report" noting, "Netlist backlog is being addressed and **sales will be little/no moving** forward.") SEC000387 ("Netlist" Account will be closed in 2018"). | |
| | • Dkt. 145-39 [Netlist MSJ Ex. 35] (NL020775) (In February 2018, Paik Ki Hong emailed Neal Knuth, "In Jan. '18, Samsung *stopped shipments all together.  These drastic changes have* | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *impacted our business and impacted our ability to support our customers*. We need Samsung to support the forecast we have included in this email.") <br><br> • Dkt. 152-2 [Samsung MSJ Ex. 58] (NL000078). <br><br> *See* Defendant's response and evidence to SUF Nos. 48 and 53 incorporated herein. | |
| 59. Samsung supplied to Netlist despite repeated credit issues and cancelled orders by Netlist. <br><br> Choi Decl. ¶ 13, Exh. 12 at 40:17-42:6; ¶ 56, Exh. 55 at NL008985; | Disputed and immaterial. <br><br> As to the characterization of "repeated credit issues," Netlist had a collateralized letter of credit with Samsung. Evidence: <br><br> • Ex. 83 to 8-30-21 | No genuine dispute of material fact. None of the evidence cited to by Plaintiff disputes that Netlist had repeated credit issues. <br><br> The evidence cited to in order to demonstrate |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| ¶ 57, Exh 56 at NL041573; Choi Decl. ¶ 3, Exh. 2 at 142:15-25; ¶ 56, Exh. 55 at NL008985; *see also* SUF Nos. 62-64, *infra.* | LaMagna Decl. (Paik Ki Hong Dep. Tr.) at 101:21-102:1, 137:25-138:15, 143:5-10, 264:25-265:3, 265:20- 266:14, 267:2-12.<br><br>Netlist was also willing to and did pay cash in advance for orders if it reached its credit limit.<br><br>Evidence:<br><br>• Ex. 82 to 8-30-21 LaMagna Decl. (Raymond Jiang Dep. Tr.) at 42:13-43:2.<br><br>Therefore, there was no credit issue that limited Samsung from supplying Netlist.<br><br>As to cancellations, it is undisputed that there was one | that Netlist was willing to pay cash in advance if it reached its credit limit actually ***supports*** Defendant's SUF No. 59, as it demonstrates that Netlist did regularly exceed its credit limit.<br><br>The remainder of Plaintiff's Response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | instance of a cancellation by Netlist. The only cancellation that Samsung cites is when Samsung refused to timely provide product to Netlist at a competitive. | |
| | Evidence: | |
| | - Dkt. 152-2 [Samsung MSJ Ex. 58] (NL000078) at NL000091. | |
| | - Ex. 81 to 8-30-21 LaMagna Decl. (Lane Kim Dep. Tr.) at 13:3-9; 22:22-23:24. | |
| | - *See* Defendant's response and evidence to SUF No. | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | 64 incorporated herein. | |
| | This cancellation was immaterial because the terms of the parties' purchase orders make clear that Netlist was entitled to alter or cancel its purchase orders even after they were accepted by Samsung. | |
| | Evidence: Dkt. 150-4 [Samsung MSJ Ex. 52] (NL002024) at NL002031 (§ 10: "Buyer may at any time . . . suspend performance hereunder, [or] increase or decrease the order quantities"), § 11 ("Buyer may . . . cancel this order in whole or in part if" specified conditions are met), § 12 ("In addition | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | to [Buyer's] right to reject delayed deliveries . . . , Buyer may cancel all or any undelivered portion of this order" if specified conditions are met). | |
| | Immaterial because Samsung's decision to limit or supply to Netlist was not made with regard to credit or cancellations. | |
| | Evidence: | |
| | Dkt. 142-5 [Netlist MSJ Ex. 18 (SEC058105) (in May 2017, Knuth conveyed to Netlist that *Samsung had no support* for Q3 2017; Metz also communicated to Paik Ki Hong that "Samsung had *zero* | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *allocation in Q3 to support Netlist and/or the end customers Netlist is currently supporting*"; Metz also writes, "Heads up. Since Samsung is nearly 100% of their support, and Revenue this will have a dramatic impact on their financials and future business.")<br><br>• Dkt. 145-36 [Netlist MSJ Ex. 32] (NL020700-703) (in December 2017, [at -701] Netlist informed Samsung that it was *losing business opportunities* as a consequence of not being allocated all of the products it | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | requested from Samsung) | |
| | • Dkt. 145-38 (Netlist MSJ Ex. 34) (NL020770) (January 2018 email from Paik Ki Hong to Steven Metz, "I was just told that Samsung North America had decided to give Netlist *$0 allocation and no support*. This is a problem . . . We have a JDLA that states Samsung will support Netlist. We have on paper that Samsung will support Netlist with components for NVDIMM.") Ex. 89 to 8-30-21 LaMagna Decl. (SEC000379) at | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | SEC000383 (February 2018 "Southwest Region Weekly Report" noting, "Netlist backlog is being addressed and *sales will be little/no moving forward.")*; SEC000387 ("Netlist Account will be closed in 2018"). <br><br> • Dkt. 145-39 [Netlist MSJ Ex. 35] (NL020775) (In February 2018, Paik Ki Hong emailed Neal Knuth, "In Jan. '18, Samsung *stopped shipments all together.  These drastic changes have impacted our business and impacted our ability to support our* | |

3746305.1

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | *customers*. We need Samsung to support the forecast we have included in this email.") <br> • Ex. 90 to 8-30-21 LaMagna Decl. (Knuth Dep. Tr.) at 165:19-24 (testifying that in February 2018, Samsung had imposed a *zero allocation* for Netlist). <br> No one at Samsung ever suggested to the Samsung employee in charge of overseeing the Netlist channel account that the allocation to Netlist should be lowered because of cancellations or credit concerns. <br><br> • Ex. 81 to 8-30-21 | |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Lane Kim Dep. Tr.) at 13:3-9; 22:22-23:24 (testifying that no one ever suggested that the allocation to Netlist should be lowered because of cancellations or credit concerns). | |

**Defendant's Allegation that Netlist Did Not Fully Perform Its Obligations**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 60. Netlist abandoned the NVDIMM-P standardization project and moved to a different product and never obtained a written amendment to the | Disputed. Netlist did not "abandon the NVDIMM-P standardization project" or "moved to a different product." <br><br> Under the JDLA, the initial phase of work was developing a | No genuine dispute of material fact. Plaintiff does not deny that Netlist did not do any work on NVDIMM-P *standardization*. To the extent that they engage in contract interpretation |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| JDLA allowing this alteration.<br><br>Choi Decl. ¶ 58, Exh. 57 at 45:4-49:3.; Choi Decl. ¶ 8, Exh. 7 at 198:21- 199:13. | NVDIMM-P **_product_**. Under Section 2.1.1 of the agreement, the "initial phase" was limited to "demonstrations of products and technologies" and other related high level discussions. Standardization was not listed as part of the initial phase. Under Section 2.1, the scope of the joint development "shall be "limited to demonstrations and high-level discussions . . . as provided in Section 2.1.1 unless the parties agree in advance to expand the scope . . ."  Here, Samsung never agreed to continue past the initial product development stage to the subsequent phases that would involve standardization. In sum, product development came first, under the JDLA, and | to argue that standardization was not contemplated under the JDLA, that is a legal argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | standardization came second. Samsung did not ever agree to move to the subsequent standardization phase. Netlist's discussion of HybriDIMM with Samsung was not discussion of a "different product" as Samsung alleges. HybriDIMM is Netlist's tradename for the NVDIMM-P product it was developing under the JDLA.<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001), § 2.1, Statement of Work.<br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 139:17-21 (testifying that HybriDIMM was being developed as an | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | NVDIMM-P product).<br><br>It was Samsung—not Netlist—that abandoned the joint development.<br><br>Evidence:<br>•      Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 119:6-7 ("Samsung left it, you know, abandoned it, whenever, and then afterwards we continued to work on it.")<br><br>Nor is it true that Netlist did not pursue standardization of the HybriDIMM product.<br><br>Evidence:<br>•      Ex. 92 to 8-30-21 LaMagna Decl. (SEC001918) (December 2018 internal | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Samsung email from Indong Kim, "recently, they have been moving ahead with standardization of HybriDIMM a bit more specifically via JEDEC.") | |
| 61. In 2017, Netlist asked Samsung for Embedded MultiMediaCard (eMMC) supply. Choi Decl. ¶ 3, Exh. 2 at 195:10-12. | Undisputed. | Undisputed. |
| 62. Samsung does not normally sell eMMC to channel distributors like Netlist, but, after CEO Chuck Hong asked President Jun for | Disputed and immaterial. Whether Samsung "normally" sells EMMC to channel distributors is irrelevant, because Netlist has a supply agreement with Samsung that others do not have. Evidence: • Dkt. 148-1 [Samsung | No genuine dispute of material fact. Plaintiff does not dispute that the decision to allocate eMMC to Netlist was not a typical decision for Samsung. Plaintiff's response is an argument, not a statement of fact, |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| support, Samsung agreed to support Netlist's requests.<br><br>Choi Decl. ¶ 11, Exh. 10 at 63:17-<u>64:16, 85:17-87:2</u> | MSJ Ex. 19] (SEC0000001), § 6.2.<br><br>Defendant's cited supporting evidence also does not support the fact.<br><br>Evidence:<br>Dkt. 150-2 [Samsung MSJ Ex 10] (Harrison Yoo Dep. Tr.) just states that it is "difficult to locate those products," not that Samsung "does not normally sell" eMMC. | and should be disregarded. |
| 63. Samsung allocated a significant amount of EMMC product to Netlist for 2017, much of which been allocated to another customer.<br><br>Choi Decl. ¶ 11, Exh. 10 at 85:17-87:2 | Undisputed that Samsung offered to sell eMMC products to Netlist in 2017.<br><br>Disputed in part as to the characterization of "significant amount."<br><br>Defendant's cited supporting evidence does not support the fact.  The deponent cited by | No genuine dispute of material fact. Plaintiff does not dispute that the allocation of product occurred. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Defendant (Samsung MSJ Ex. 10) does not say that it was a "significant" amount nor does he say that "much of" the products were previously allocated to another customer. | |
| 64. After purchases orders had been submitted and prices for eMMC dropped unexpectedly in the second half of 2017, Netlist cancelled half of its eMMC order. Netlist CEO Chuck Hong testified that cancelling a purchase order constitutes non-performance under the JDLA.

Choi Decl. ¶ 3, Exh. 2 at 194:8-196:10; ¶ 59, | Undisputed that Netlist cancelled part of the eMMC order but immaterial because Netlist's cancellation was not a violation of the JDLA (or of the related purchase order).

Netlist cancelled part of the eMMC order only after Samsung refused to timely provide product to Netlist at a competitive price as required by Section 6.2.

Evidence:
• Dkt. 152-2 [Samsung MSJ Ex. 58] (NL000078) at | No genuine dispute of material fact. Plaintiff does not dispute that the cancellation occurred. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Exh. 58 at NL000091. Choi Decl. ¶ 11, Exh. 10 at 85:17-87:2; Choi Decl. ¶ 8, Exh. 7 at 164:11-21. | NL000091.<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001), § 6.2.<br><br>Disputed that Chuck Hong testified that Netlist's cancellation of a purchase order constitutes non- performance under the JDLA.<br><br>Chuck Hong testified that *Samsung's* cancellation of purchase orders violates the Section 6.2 of the JDLA— Mr. Hong never testified that it was a violation of the JDLA for Netlist to cancel orders, much less to do so after Samsung had breached its obligations, e.g., by failing to provide a competitive price or by failing to deliver ordered products. | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br>• Dkt. 157-4 [Samsung MSJ Ex. 7] (Chuck Hong Dep. Tr.) at 164:11-21. | |

**Defendant's Allegation that Netlist Should Be Estopped From Arguing That Its Patent Licenses Provide Consideration For A Broader Supply Obligation**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 65. Netlist argued in its Korean tax appeal that: "the granting of cross licenses under the [JDLA] is limited to the joint research and development, and hence in cases where Samsung Electronics uses intellectual property rights of [Netlist] in the course | Netlist does not dispute that the quoted language appears in documents.<br>Disputed to the extent that Samsung characterizes this quote as suggesting that the patent license overall was limited to the parties' "joint research and development."<br><br>The document quoted is a submission to Korean tax | No genuine dispute of material fact. Plaintiff does not dispute that Netlist argued this to the Korean tax tribunal. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>In addition, the Kam Report is not admissible |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| of its own research and development, it does not constitute something that can be subject to the [JDLA]<br><br>Choi Decl. ¶ 60, Exh. 59 at p. 4. | authorities describing the applicability of the patent license to conduct with a territorial nexus to the Republic of Korea. Netlist has no Korean patents, and therefore no patent coverage as described in the quote.<br><br>Evidence:<br>• Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), ¶¶ 32-40.<br><br>Disputed as to the materiality of the statement and immaterial. Neither of Samsung's breaches are related to the scope of the licenses granted under the JDLA.<br><br>Evidence:<br>• Complaint, Dkt 13, at 4. | evidence because it is an expert opinion, not evidence of fact. |
| 66. The Korean tax | Disputed. | No genuine dispute of |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| tribunal relied on Netlist's position that the license was limited in making its ruling.<br><br>Dkt. 88-7 at p. 7. | Defendant's cited supporting evidence does not state the characterization ascribed to it by Defendant.<br>Defendant's citation to Dkt. 88-7 at p.7 does not show that the Korean tax tribunal relied on Netlist's position, but is rather a recitation of each party's positions.<br><br>Evidence:<br>• Dkt. 88-7 at p. 7.<br><br>Defendant's cited supporting evidence does not support the fact. Defendant fails to identify any relevant evidentiary citation for their claim that "the Korean tax tribunal relied on Netlist's position that the license was limited in making its ruling." | material fact.<br><br>In paragraph (f) of the cited page, the Tribunal explicitly notes Netlist's position, that "the license clause included in the [JDLA] is merely a typical cross-licensing provision . . . to proactively prevent legal problems caused by patent infringement that may occur during joint development." Dkt. 88-7 at p. 7.<br><br>In the very same paragraph, the Tribunal states that "hence it is unreasonable to consider the compensation paid in exchange for the services |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | | performed . . . as compensation paid in exchange for use of license[.]" Dkt. 88-7 at p. 7.<br><br>Given this, it is a plain mischaracterization of the document to argue, as Plaintiff does, that it does not show that the Tribunal relied on Netlist's position. |

**Defendant's Allegation that Samsung Is Entitled to Judgment on Plaintiff's Second Cause of Action for Breach of Contract (Tax Withholding)**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 67. Uncontroverted Fact Nos. 1-66 are incorporated | Plaintiff's responses to Nos. 1-66 are incorporated herein. | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| herein. | | |
| 68. Section 3.2 of the JDLA states, in pertinent part: "Taxes. . . . To the extent that any withholding taxes are required by applicable law for the payment set forth in this Agreement, Samsung may deduct any applicable withholding taxes due or payable under the laws of Korea . . . provided that Samsung shall pay such withholding taxes to the Korean tax authorities and promptly provide Netlist with a certificate | Disputed as to the characterization of the quoted language as "pertinent." Undisputed as to the quoted portion of the language from Section 3.2 of the JDLA. | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| of payment for such withholding tax, as required by applicable law or treaty, and reasonably cooperate with Netlist in any lawful efforts to claim a credit or refund or exemption with respect to any such withholding taxes. <br><br> Choi Decl. ¶ 20, Exh. 19 at p. 5, § 3.2 | | |
| 69. On November 5, 2015, shortly before the JDLA was signed, Samsung sent Netlist a tax form for Netlist to apply for a reduced tax rate as a foreign corporation. | Disputed that Samsung sent Netlist a tax form on November 5, 2015. The November 5, 2015 email referenced in the cited document does not attach a tax form. <br><br> Disputed as to the characterization that the tax | No genuine dispute of material fact. Plaintiff's assertion is simply false: Choi Decl. Exh. 60 attaches a tax form. *See* Choi Decl. ¶ 61, Exh. 60 at NL046088. <br><br> The remainder of |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| Choi Decl. ¶ 61, Exh. 60; ¶ 6, Exh. 5 at 140:23-141:22, 143:14-24. ¶ 15, Exh. 14 at RFA No. 17; ¶ 61, Exh. 60 at NL046086-89. | form was "for Netlist to apply for a reduced tax rate." Samsung sent this form to Netlist on October 29, 2015 (not November 5, 2015), among other documents including a vendor registration form, stating that the tax form was among the "necessary documents to remit NRE expenses." This is not factually accurate.  The NRE Fees were not subject to taxes in Korea, so Netlist never had a reason to apply for a reduced tax rate.<br><br>Evidence:<br>• Ex. 93 to 8-30-21 LaMagna Decl.  (NL044878), at 1.<br>• Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), at ¶¶ 22, 32-40. | Plaintiff's response is an argument, not a statement of fact. Moreover, Plaintiff's argument that the form was not "for Netlist to apply for a reduced tax rate" is simply not credible, given that the form is *titled* "Application for Entitlement to Reduced Tax Rate." *See* Choi Decl. ¶ 61, Exh. 60 at NL046088.<br><br>Plaintiff also mischaracterizes their own supporting evidence. Samsung's email to Netlist dated October 29, 2015 explicitly states that the |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | | form is an "Application for reduced tax rate (document necessary for discount on tax withholding)" *See* Ex. 93 to 8-30-21 LaMagna Decl. at NL044878.<br><br>In addition, the Kam Report is not admissible evidence because it is an expert opinion, not evidence of fact. |
| 70. The form indicated that the tax rate on royalties pursuant to a treaty with the US was 16.5%.<br><br>Choi Decl. ¶ 61, Exh. 60 at p. 3; ¶ 15, Exh. 14 at RFA No. 17; ¶ 61, Exh. 60 at NL046086- | Disputed. The form Samsung sent to Netlist does not indicate any tax rate or the type of income. It was Samsung that instructed Netlist to fill in certain information in the form, which Samsung claimed was one of the "necessary documents to remit NRE expenses." | No genuine dispute of material fact, as Plaintiff mischaracterizes the content of the document. The form plainly lists a tax rate of "15% plus 1.5% local rate" pursuant to "Tax Treaty between Korea and United States: Article 14 Paragraph 1" |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 89. | Evidence:<br><br>• Dkt. 150-5 [Samsung MSJ Ex. 60] (NL046086) at NL046088.<br><br>• Ex. 93 to 8-30-21 LaMagna Decl. (NL044878), at 1.<br><br>Regardless, the alleged fact is immaterial because filling in and signing the tax form does not transform untaxable income into taxable income, nor does filling in a particular percentage constitute a declaration or a determination that all or any of the payment are taxable at that rate. Not all royalties for patents are taxable in Korea at a rate of 16.5%, as foreign patents not registered in Korea are not taxable in Korea. | *See* Choi Decl. ¶ 61, Exh. 60 at NL046088. The fact that Samsung instructed Netlist to fill out the form does not dispute this.<br><br>In addition, the Kam Report is not admissible evidence because it is an expert opinion, not evidence of fact.<br><br>The remainder of Plaintiff's response is an argument, not a statement of fact. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br>• Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), ¶¶ 22, 32- 40. | |
| 71. Netlist CFO Gail Sasaki reviewed the form, signed, and returned it to Samsung.<br><br>Choi Decl. ¶ 61, Exh. 60 at pp. 1, 3; ¶ 6, Exh. 5 at 144:1-145:4. | Undisputed that Ms. Gail Sasaki signed and returned the form to Samsung.<br><br>Disputed as to the extent which Ms. Sasaki "reviewed" the form.<br><br>Disputed as to the extent to which Ms. Sasaki "reviewed the form." To the extent Defendant implies by review that Ms. Sasaki made an independent evaluation of the form and independently decided to sign and return it of Samsung, it was Samsung that instructed Netlist to fill in certain information in the form, which Samsung claimed was one of the "necessary documents to | No genuine dispute of material fact. Sasaki says herself that she reviewed the document. Choi Decl ¶ 6, Exh. 5 at 145:2-4. ("Q: And did you review the document before you signed it? A: Yes, I – I did review it.")<br><br>In addition, the Kam Report is not admissible evidence because it is an expert opinion, not evidence of fact.<br><br>The remainder of Plaintiff's response is an argument, not a |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | remit NRE expenses." | statement of fact. |
| | Evidence: | |
| | • Dkt. 150-5 [Samsung MSJ Ex. 60] (NL046086) at NL046088 | |
| | • Ex. 93 to 8-30-21 LaMagna Decl.  (NL044878), at 1. | |
| | Regardless, the alleged fact is immaterial because filling in and signing the tax form does not transform untaxable income into taxable income, nor does filling in a particular percentage constitute a declaration or a determination that all or any of the payment are taxable at that rate. | |
| | Evidence: | |
| | • Ex. 94 to 8-30-21 | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Kam Report), ¶ 22. | |
| 72. According to Netlist's CEO Chuck Hong, Sasaki had the authority to approve and sign such tax form without his approval. In her capacity as Netlist's CEO, was expected to consult with a tax expert before executing the form to ensure it was appropriate for Netlist to sign.<br><br>Choi Decl. ¶ 8, Exh. 7 at 175:9-176:14. | Undisputed that Netlist's CEO stated that Ms. Sasaki had the authority to approve and sign the tax form.<br><br>Disputed that Ms. Gail Sasaki "was expected to consult with a tax expert."<br><br>Ms. Sasaki testified that she consulted with tax professionals concerning an earlier version of Choi Exh. 60, which at that time did not identify any tax statutes or tax rates, after which Samsung asked her to fill in the very information on which Samsung now relies. She complied with Samsung's request because this was just one amongst "several other forms" | No genuine dispute of material fact. Chuck Hong testified that he would have expected that Sasaki would "get expert opinion before she executes this form[.]" Choi Decl. ¶ 8, Exh. 7 at 175:22-176:14.<br><br>Sasaki's testimony does not dispute that this is what Chuck Hong expected. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | that Samsung asked Netlist to fill out "in the process of setting [Netlist] up as a vendor."  Ms. Sasaki "just figured it was something going into a file . . . in [Samsung's] accounting system." She was not told, and did not understand, that rather than a submission that would be made to the Korean tax authorities. She trusted Samsung and "took it on face value what [they] said" as to why she was being asked to provide them with a new version of the form. She thought it "was of no importance" to Netlist and "didn't seem to affect [Netlist] one way or the other."  Evidence: • Ex. 85 to 8-30-21 LaMagna Decl. (Sasaki Dep. Tr.) at 146:6- 20, 147:21-150:13, | |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | 154:7-24, 155:21-156:8, 157:9-17;<br>• Ex. 93 to 8-30-21 LaMagna Decl. (NL044878), at 1;<br>• Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), ¶ 22. | |
| 73. After the JDLA was signed, Samsung made the contractually required cash payment to Netlist of $8 million, less 16.5% deducted for withholding taxes, and paid that amount to the tax authority.<br><br>Dkt. 18-2 at ¶ 16; Dkt. 88-7 at p. 4; Choi Decl. ¶ 62, Exh. 61 at NL118221 | Disputed.<br><br>Samsung did not make the contractually required cash payment of $8 million to Netlist, but instead only paid $6.68 million. The 16.5% deduction was not for withholding taxes, because no taxes were due on the $8 million of NRE fees.<br><br>Evidence:<br>• Dkt. 150-5 [Samsung MSJ Ex. 61] (NL118219) at NL118221. | No genuine dispute of material fact. Neither side disputes that Samsung paid $8 million, less 16.5% deducted for withholding taxes, or in other words, $6.68 million.<br><br>Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>In addition, the Kam Report is not admissible |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • Dkt. 88-7 at NL108752-8760.<br>• Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), ¶¶ 32-40. | evidence because it is an expert opinion, not evidence of fact. |
| 74. Samsung did so because it considered the $8 million as consideration for Netlist's grant of patent licenses, and Korean law requires withholding of payments on such royalties.<br><br>Choi Decl. ¶ 63, Exh. 62 at p. 1; ¶ 61, Exh. 60 at p. 3; Dkt. 88-7 at p. 4. | Disputed.<br><br>As to whether Samsung "considered $8 million as consideration for Netlist's grant of patent licenses," the contract Samsung signed expressly stated that the $8 million was for "non-refundable NRE fees."<br><br>Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at p. 5, § 3.1.<br><br>As to whether "Korean law requires withholding of | No genuine dispute of material fact. The fact that the language of the JDLA refers to the $8 million as a "non-refundable NRE fee" is not probative as to Samsung's state of mind at the time of the tax withholding, nor is the *post hoc* ruling of the Korean Tax Tribunal.<br><br>Moreover, omits the fact that Netlist was forced to appeal to the Korean Tax Tribunal because the East Suwon Tax Office |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | payments on such royalties," even if the NRE fees were royalties, they were not taxable under Korean law because none of Netlist's patents are registered in Korea. Also, the Korean Tax Tribunal has already found that the NRE fees were not taxable under Korean law.<br><br>Evidence:<br>• Dkt. 144-7 [Netlist MSJ Ex. 13] (NL108731) at 1, 29.<br>• Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), ¶¶ 32-40. | had rejected *Netlist's* arguments and found that the $8,000,000 was a royalty income. Dkt. 144-7 [Netlist MSJ Ex. 13] at pp. 13-14.<br><br>In addition, the Kam Report is not admissible evidence because it is an expert opinion, not evidence of fact. |
| 75. Samsung had numerous communications with Netlist and PWC, Netlist's tax consultant, shared drafts of what Samsung proposed to | Undisputed that Samsung had communications with Netlist and PWC, disclosed drafts (with redactions and content Netlist disagreed with), and nominally asked for proposed language. | No genuine dispute of material fact. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| submit to the tax authorities, and even asked Netlist and PWC to propose language that it wanted Samsung to use.<br><br>Choi Decl. ¶ 64, Exh. 63; ¶ 65, Exh. 64; ¶ 66, Exh. 65 at p. 1. ¶ 64, Exh. 63 at NL118533-34; ¶ 66, Exh. 65 at NL118544-48; ¶ 67, Exh. 66 at NL118556-57. | Disputed to the extent that Samsung is arguing that these communications reflect cooperation with Netlist. The fact that Samsung had communications with Netlist and PWC is immaterial to whether Samsung reasonably cooperated.<br><br>Samsung submitted responses to the Korean tax authorities (and sent draft to Netlist and PWC) that were inconsistent with the express language of the JDLA and adverse to Netlist's interests. Samsung also refused to disclose certain information in its intended submissions citing "trade secrets," included language that Netlist and PWC objected to in the submissions, and insisted that it would | In addition, the Kam Report is not admissible evidence because it is an expert opinion, not evidence of fact. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | represent to the NTS that the NRE fees were royalties despite Netlist's objection and disagreement.<br><br>Evidence:<br>•     Ex. 94 to 8-30-21 LaMagna Decl. (Kam Report), at pp. 8-12.<br>•     Ex. 95 to 8-30-21 LaMagna Decl. (NL005043), at NL005043.<br>•     Dkt. 150-5 [Samsung MSJ Ex. 62] (NL118609), at NL118609 | |
| 76. PWC even thanked Samsung for its cooperation, showing that cooperation is not what Netlist complains of here.<br><br>Choi Decl. ¶ 65, Exh. | Disputed. Plaintiff's response to No. 75 is incorporated herein.<br><br>In an effort to be polite, a PWC employee thanked Samsung for Samsung's email. This expression of professional courtesy does not transform | No genuine dispute of material fact. Plaintiff does not dispute that PWC thanked Samsung for its cooperation, and speculation as to the emotional state of the PWC employee who did |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 64 at p. 1; ¶ 65, Exh. 64 at NL118535. | Samsung's refusal to cooperate and its submission of factually inaccurate information into cooperation.<br><br>As noted in the response for No. 75, Samsung did not ultimately submit accurate information to the NTS and insisted that Samsung "should reply to the effect that the nature of the agreement was viewed as license" despite Netlist's disagreement. In fact, in the very next email exchange from the email Samsung cites, the same PWC employee notes that "there are instances where we Netlist do [sic] not agree," and asks Samsung to respond to NTS "on the basis that the $8 million is an NRE payment not a license fee and that you stick to the factual | so is immaterial.<br><br>The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | background." <br><br> Evidence: <br> • Dkt. 150-5 [Samsung MSJ Ex. 62] (NL118609), at NL118609-10. | |
| 77. What Netlist wanted was for Samsung to deny that the $8 million was for patent royalties, which Samsung did not believe to be true. <br><br> Choi Decl. ¶ 63, Exh. 62 at p. 1; Choi Decl. ¶ 61, Exh. 60 at p. 3; Dkt. 88-7 at p. 4; ¶ 67, Exh. 66 at NL118556; ¶ 6, Exh. 5 at 123:19-124:24. | Undisputed that Netlist wanted Samsung to accurately represent the provision of the JDLA, including Section 3.1, which provides "Samsung shall pay to Netlist eight million United States dollars (US $8,000,000) as non-refundable NRE fees." <br><br> Disputed that Samsung believed that the $8 million was for patent royalties when the JDLA expressly listed the payment under "Development Costs" and defined it as "non-refundable NRE fees." | No genuine dispute of material fact. Plaintiff does not dispute that Netlist wanted Samsung to deny that the $8 million was for patent royalties. Plaintiff's response is an argument, not a statement of fact, and should be disregarded. <br><br> Plaintiff provides no evidence to dispute Samsung's state of mind regarding the nature of the $8 million other than |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Evidence:<br>• Dkt. 148-1 [Samsung MSJ Ex. 19] (SEC0000001) at p. 5, §§ 3, 3.1. | quoting to the text of the JDLA. |
| 78. Netlist won its tax appeal, and received a full refund plus interest.<br><br>Dkt. 88-7 at p. 3; Choi Decl. ¶ 68, Exh. 67 at p. 2; ¶ 6, Exh. 5 at 136:13-137:6. | Undisputed that Netlist received a full refund, but immaterial. Whether Netlist ultimately received a refund is irrelevant to Netlist's claim because Netlist is not seeking to recover the wrongfully withheld taxes, but other damages instead.<br><br>Disputed as to the characterization that Netlist received "interest" for the tax refund. Under Art. 52 of the Republic of Korea's Framework Act on National Taxes, Netlist received a statutory refund named 국세환급가산금 (an additional Refund on National Taxes) after the Tax | Undisputed.<br><br>The remainder of Plaintiff's response is an argument, not a statement of fact.<br><br>Moreover, Art. 52 of the Republic of Korea's Framework Act on National Taxes, which Plaintiff relies on, explicitly states that a tax refund under Korean law includes interest. ("When the head of a tax office appropriates or pays a national tax refund . . . *he/she shall* |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Tribunal determined that the NRE payments on which Samsung withheld taxes were not taxable. Also, whether Netlist received interest on the refund of wrongfully withheld taxes is not relevant to Samsung's duty to reasonably cooperate with Netlist's efforts to seek a refund, nor is it relevant to whether Samsung breached by wrongfully withholding taxes in the first place. Netlist is seeking other damages, including those caused by Samsung's lack of cooperation in recovering the wrongfully withheld taxes that were ultimately returned to Netlist.<br><br>Evidence:<br>• Ex. 80 to 8-30-21 | *add, to the national tax refund, the amount calculated according to the interest rate* prescribed by Presidential Decree.") 8-30-21 LaMagna Decl. Exh. 80, Art. 52(1). |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | LaMagna Decl. (Art. 52 of the Framework Act on National Taxes). | |

**Defendant's Allegation that Netlist Is Barred From Recovering Consequential Damages**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 79. Uncontroverted Fact Nos. 1-78 are incorporated herein. | Plaintiff's responses to Nos. 1-78 are incorporated herein. | |
| 80. Netlist seeks damages including lost revenues and lost profits from allegedly lost business opportunities with third party customers.<br><br>Dkt. 18-2 at ¶ 14; Choi Decl. ¶ 69, Exh. 68 at | Undisputed.<br><br>Lost revenues and lost profits are only one component of damages. Lost revenues were from lost resales of Samsung products that were required to be supplied, which was a direct result of Samsung's breach of the contract. | Undisputed.<br><br>The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 5:23-26. | | |
| 81. Section 12.5 of the JDLA states: "IN NO EVENT SHALL (A) EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT, EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHERE EXCLUDED DAMAGES INCLUDE, BUT ARE | Undisputed that these words appear in the JDLA; disputed to the extent Samsung is making a legal argument in consequence of that language | Undisputed.<br><br>The remainder of Plaintiff's response is an argument, not a statement of fact, and should be disregarded. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| NOT LIMITED TO, LOSS OF PROFITS, LOSS OF SAVINGS, LOSS OF USE OR PUNITIVE DAMAGES."<br><br>Choi Decl. ¶ 20, Exh. 19 at p. 11. | | |

**Defendant's Allegation that Samsung Is Entitled to Judgment on Plaintiff's Third Cause of Action for Declaratory Relief: Termination of Contract**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 82. Uncontroverted Fact Nos. 1-81 are incorporated herein. | Plaintiff's responses to Nos. 1-81 are incorporated herein. | |

/ / /

/ / /

/ / /

**Defendant's Allegation that Netlist Waived Any Right To Terminate The JDLA**

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 83. Uncontroverted Fact Nos. 1-82 are incorporated herein. | Plaintiff's responses to Nos. 1-82 are incorporated herein | |
| 84. Netlist executives internally discussed whether to provide notice of breach over the tax withholding dispute in March 4, 2016, but decided not to send a breach notice because it wanted to reap the benefits of its business relationship with Samsung.<br><br>Choi Decl. ¶ 70, Exh. 69 at p. 1; ¶ 6, Exh. 5 at 57:4-64:2. | Immaterial, in that the allegation appears directed to Defendant's prior "election of remedies" defense, on which the Court has already ruled.<br><br>Undisputed that individuals at Netlist discussed whether to provide notice of breach.<br><br>Disputed as to the characterization that Netlist decided "not to send a breach notice because it wanted to reap the benefits of its business relationship with Samsung."<br><br>Gail Sasaki specifically testified | No genuine dispute of material fact. Plaintiff does not dispute that Netlist executives discussed a breach notice. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>None of the evidence cited by Plaintiff supports the assertion that the Netlist executives discussing whether to send a breach notice "Did not have |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | that, in part, "the breach comes from lack of cooperation, and [she] was still hopeful that [she] would get cooperation from Samsung," and that she thought Samsung "had not yet breached as [her] recollection was that [Netlist] was still trying to get cooperation." Because of this, the individuals involved in this email chain (who did not have authority to decide this issue) opted not to recommend sending notice at this time.<br><br>Evidence:<br>• Ex. 85 to 8-30-21 LaMagna Decl. (Sasaki Dep. Tr.) at 67:3- 8, 67:17-19. | authority to decide this issue." |
| 85. As to the supply claim, Netlist asserts that "starting as early as the second quarter of | Undisputed. | Undisputed. |

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| 2017, Samsung began to refuse and/or cancel orders from Netlist.<br><br>Choi Decl. ¶ 71, Exh. 70 at p. 13, ROG No. 8. | | |
| 86. Instead, Netlist waited to provide notice of alleged breach until May 27, 2020, more than four years after it first considered doing so.<br><br>Dkt. 18-2 at ¶ 19; Choi Decl. ¶ 72, Exh. 71. | Disputed.<br><br>Netlist as a company did not consider sending a breach notice in 2016. See Defendant's response and evidence to SUF No. 84 incorporated herein.<br><br>As to Samsung's wrongful withholding and failure to cooperate in the tax return, Netlist made repeated efforts throughout the time period to engage Samsung in cooperation.<br><br>Evidence: | No genuine dispute of material fact. Plaintiff does not dispute that they did not provide notice of the alleged breach until May 27, 2020. Plaintiff's response is an argument, not a statement of fact, and should be disregarded.<br><br>Plaintiff's assertion that "Netlist as a company did not consider sending a breach notice" is contradicted by the |

197

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | • Ex. 95 to 8-30-21 LaMagna Decl. (NL005043), at NL005043.<br>• Dkt. 150-5 [Samsung MSJ Ex. 62] (NL118609), at NL118609, NL118611-13.<br><br>As to the breach of the supply provision, Netlist does not allege any material breach in 2016.<br><br>After Samsung cut off product supply in Q2 2017, Netlist expended significant effort to try to work through the issues with Samsung.<br><br>Evidence:<br>• Ex. 84 to 8-30-21 LaMagna Decl. (Chuck Hong Dep. Tr.) at 187:15-188:14.<br>• Chuck Hong Decl. [Dkt. 145-3], ¶ 10. | evidence that its Chief Financial Officer and another executive considered this very issue. Choi Decl. ¶ 72, Exh. 71.<br><br>None of the evidence cited to here or in Defendant's response and evidence to SUF No. 84 supports the assertion that "Samsung's multiple breaches added up to a point where Netlist had to send an official notice of breach, and when Samsung failed to cure, Netlist terminated the contract."<br><br>In addition, the Chuck Hong Declaration is not |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S REPLY TO NETLIST INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Undisputed Facts and Supporting Evidence: | Plaintiff's Response: | Defendant's Reply |
|---|---|---|
| | Ultimately, Samsung's multiple breaches added up to a point where Netlist had to send an official notice of breach, and when Samsung failed to cure, Netlist terminated the contract. See Defendant's response and evidence to SUF No. 84 incorporated herein. | admissible evidence. *See* Dkt. 168-3 (Samsung's Evidentiary Objections to Declarations Filed in Support of Netlist's Motion for Partial Summary Judgment) at 12:14-13:14. |
| 87. The $15 million note is due December 31, 2021.<br><br>Choi Decl. ¶ 73, Exh. 72 at p. 1 § 2. | Undisputed. | Undisputed. |

DATED:  September 6, 2021        Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____
Ekwan E. Rhow
Attorneys for Defendant Samsung
Electronics Co., Ltd.