# EXHIBIT 5

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

1        UNITED STATES DISTRICT COURT
2      SOUTHERN DISTRICT OF CALIFORNIA
3

4   NETLIST, INC.,
5       Plaintiff,
6

7   VS.                    CASE NO.
8                   8:20-cv-00993-MCS-DFM
9   SAMSUNG ELECTRONICS,
10  CO., LTD.,
11      Defendant.
12      *****************************************
        ***CONFIDENTIAL ATTORNEYS' EYES ONLY***
13           DEPOSITION OF GAIL M. SASAKI
             Thursday, August 5, 2021
14              10:38 a.m. PDT
        *****************************************
15
16

   TAKEN BY:
17     MARC MASTERS, ESQ.
       ATTORNEY FOR DEFENDANT
18

19  REPORTED BY:
20     BELLE VIVIENNE, CRR
       CERTIFIED STENOGRAPHIC REALTIME
21     COURT REPORTER
22
23
24

   JOB NO. 4744081
25  PAGES 1 - 343

                                    Page 1

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1    you terminate?                           12:12:59
 2        A.    Maybe.  I -- I really don't    12:13:02
 3    remember.                                12:13:04
 4        Q.    And then above that, Mr. Kim   12:13:04
 5    responds to you, and he writes -- he gives  12:13:11
 6    you four reasons why he has different    12:13:17
 7    thinking than yours.  Do you see that?   12:13:24
 8        A.    I see that.                    12:13:28
 9        Q.    And so he -- the four reasons he  12:13:29
10    writes are "Number 1, purchasing many    12:13:35
11    kinds of SS products in order to increase  12:13:37
12    our revenue and profit."                 12:13:41
13            Did you understand SS to be      12:13:42
14    Samsung?                                 12:13:45
15        A.    Yes, I understand that.        12:13:47
16            (Reporter clarification.)        12:13:47
17        A.    I understand that to be Samsung.  12:13:52
18    BY MR. MASTERS:                           12:13:54
19        Q.    Ms. Sasaki, when you speak, you  12:13:54
20    have to speak directly into the monitor so  12:13:56
21    that the court reporter can hear you.    12:13:58
22            The second reason he gives you,  12:14:00
23    he says "Need to ask SS to tell IDT or   12:14:02
24    Inphi for designing HB chip set."        12:14:07
25            What did you understand that to  12:14:11
```

Page 57

***CONFIDENTIAL-ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | mean? | 12:14:13 |
| 2 | A.    I really don't recall. | 12:14:16 |
| 3 | Q.    And then the third reason he | 12:14:19 |
| 4 | gives is "Still ongoing SK hynix deal not | 12:14:21 |
| 5 | finished yet."  What did you understand | 12:14:25 |
| 6 | that to mean? | 12:14:27 |
| 7 | A.    Well, at the time it probably | 12:14:32 |
| 8 | meant because we were negotiating a | 12:14:36 |
| 9 | license deal with SK hynix. | 12:14:38 |
| 10 | Q.    And -- but it had not been | 12:14:40 |
| 11 | executed; is that correct? | 12:14:44 |
| 12 | A.    Yeah, that's why he says not | 12:14:49 |
| 13 | finished yet. | 12:14:51 |
| 14 | Q.    And then the fourth reason he | 12:14:52 |
| 15 | gives is "SS will evaluate our current | 12:14:53 |
| 16 | products like MV4 and EV3 for niche market | 12:14:56 |
| 17 | business which was new item developed on | 12:15:01 |
| 18 | today meeting with Dr. Jun." | 12:15:03 |
| 19 | Do you see that? | 12:15:06 |
| 20 | A.    Yes, I see that. | 12:15:07 |
| 21 | Q.    What did you understand that to | 12:15:08 |
| 22 | mean? | 12:15:10 |
| 23 | A.    I actually don't really know | 12:15:13 |
| 24 | what he's talking about here. | 12:15:15 |
| 25 | Q.    Do you know who Dr. Jun is? | 12:15:16 |

Page 58

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
1        A.    I've heard his name.  I don't          12:15:21
2   know him, no.                                     12:15:22
3        Q.    Do you know who he is?                 12:15:23
4        A.    I -- I think I know who he is.         12:15:25
5   I couldn't -- I couldn't pick him out on a        12:15:33
6   lineup.                                           12:15:34
7        Q.    What's your understanding of who       12:15:35
8   Dr. Jun is?                                       12:15:39
9        A.    I really don't have any               12:15:41
10  recollection of --                                12:15:42
11       Q.    Do you -- do you understand that       12:15:45
12  he's a Samsung executive?                         12:15:46
13       A.    Yes.  I understand that he works       12:15:49
14  for Samsung.                                       12:15:51
15       Q.    Okay.  And then did you speak          12:15:52
16  with Mr. Kim about these four reasons that        12:15:55
17  he gave you for having a different view           12:15:59
18  than yours?                                        12:16:02
19       A.    I did not speak with him.  I --        12:16:03
20  you know, he was -- in my response to             12:16:09
21  him --                                             12:16:15
22       Q.    We're going to get there on your       12:16:16
23  written response.  But I'm just asking if         12:16:19
24  you ever spoke to Mr. Kim about the four          12:16:21
25  reasons?                                           12:16:23
```

                                                      Page 59

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

1    A.    Let me see.  No, I did not speak                 12:16:23

2    with him in between -- between his e-mail              12:16:29

3    and my e-mail back.                                    12:16:32

4    Q.    And then after the four -- well,                 12:16:34

5    I'm not asking you about the timing of the             12:16:37

6    conversation.  I'm asking if at any point              12:16:39

7    in time you ever spoke to Mr. Kim about                12:16:41

8    the four reasons that we just went through             12:16:43

9    in his e-mail?                                         12:16:45

10    A.    Probably not.                                   12:16:47

11    Q.    Okay.  After he gives you the                   12:16:48

12    four reasons, he says "For these reasons              12:16:51

13    it's not desirable to send a letter to SS             12:16:54

14    with 30-day notice of breach."                        12:16:57

15          Do you see that?                                12:17:00

16    A.    Yes, I see that.                                12:17:01

17    Q.    Okay.  And what did you                         12:17:02

18    understand him to mean when you received              12:17:04

19    and read this e-mail?                                 12:17:06

20    A.    I'm guessing my frame of mind at                12:17:15

21    the time was, you know, there were -- JV              12:17:17

22    had business reasons why, you know, we --             12:17:20

23    we should not rock the boat with Samsung,             12:17:26

24    even though I was telling him we needed to            12:17:30

25    get the money back somehow, and it was not            12:17:35

Page 60

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | forthcoming. | 12:17:39 |
| 2 | Q.   And one way that you were | 12:17:40 |
| 3 | thinking of getting the money back was to | 12:17:41 |
| 4 | possibly put them on 30-day notice of | 12:17:43 |
| 5 | breach, right? | 12:17:46 |
| 6 | A.   It was -- yeah.  I mean, I'm | 12:17:49 |
| 7 | sure we were consulting with counsel. | 12:17:53 |
| 8 | We -- I don't remember exactly, you know, | 12:17:57 |
| 9 | what -- what -- | 12:18:00 |
| 10 | (Reporter clarification.) | 12:18:00 |
| 11 | A.   I'm sorry.  I don't remember | 12:18:05 |
| 12 | exactly what I was thinking legally, but, | 12:18:08 |
| 13 | you know, this was to be a tool in the | 12:18:15 |
| 14 | potential business toolbox after | 12:18:19 |
| 15 | everything else that I had already done. | 12:18:23 |
| 16 | That's -- that was it. | 12:18:27 |
| 17 | BY MR. MASTERS: | 12:18:28 |
| 18 | Q.   When you say, "This was a tool," | 12:18:28 |
| 19 | you're referring to the 30-day notice of | 12:18:30 |
| 20 | breach, right? | 12:18:32 |
| 21 | A.   Yeah.  The thought of | 12:18:34 |
| 22 | potentially going there was -- was | 12:18:36 |
| 23 | certainly available to me -- according to | 12:18:40 |
| 24 | me, but maybe not according to others | 12:18:45 |
| 25 | obviously.  So that's all I was | 12:18:48 |

Page 61

Ex 5                                                    371

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | presenting. | 12:18:53 |
| 2 | Q.   And you wouldn't consider that | 12:18:53 |
| 3 | possibility unless you believed that there | 12:18:55 |
| 4 | were grounds for that 30-day notice of | 12:18:57 |
| 5 | breach, correct? | 12:19:00 |
| 6 | A.   Again, it was only because I was | 12:19:04 |
| 7 | hoping for cooperation, and after four | 12:19:08 |
| 8 | months of getting a lot of pushback, you | 12:19:12 |
| 9 | know, I think we were willing to | 12:19:17 |
| 10 | continue -- as we did for three more | 12:19:19 |
| 11 | years, continue to work through the | 12:19:22 |
| 12 | process. | 12:19:23 |
| 13 | Q.   But you wouldn't contemplate the | 12:19:25 |
| 14 | possibility of a 30-day notice of breach | 12:19:29 |
| 15 | unless you thought there were grounds for | 12:19:31 |
| 16 | it, correct? | 12:19:33 |
| 17 | MR. LAMAGNA:   Scope and asked | 12:19:35 |
| 18 | and answered. | 12:19:39 |
| 19 | A.   Yeah.   Sorry.   Again, I think it | 12:19:39 |
| 20 | all has to do with cooperation, and it's | 12:19:42 |
| 21 | kind of hard to measure that piece of it. | 12:19:44 |
| 22 | BY MR. MASTERS: | 12:19:50 |
| 23 | Q.   That's not my question, and so | 12:19:50 |
| 24 | I've asked it twice, but I haven't gotten | 12:19:51 |
| 25 | an answer. | 12:19:54 |

Page 62

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | I'm just asking you whether you | 12:19:55 |
| 2 | would contemplate the possible use of a | 12:19:57 |
| 3 | 30-day notice of breach without grounds | 12:20:00 |
| 4 | for that notice? | 12:20:03 |
| 5 | A.    Of course not.  I mean, there | 12:20:06 |
| 6 | would have to be grounds for that notice, | 12:20:08 |
| 7 | right?  I'm not an attorney, but I would | 12:20:09 |
| 8 | hope so. | 12:20:12 |
| 9 | Q.    Okay.  After -- | 12:20:12 |
| 10 | MR. LAMAGNA:  And, objection. | 12:20:13 |
| 11 | It was -- it was beyond the scope. | 12:20:16 |
| 12 | BY MR. MASTERS: | 12:20:18 |
| 13 | Q.    After Mr. Kim wrote to you that | 12:20:18 |
| 14 | it is not desirable to send a letter to SS | 12:20:21 |
| 15 | with 30-day notice of breach, you wrote at | 12:20:24 |
| 16 | the top of the page of Exhibit 3, the | 12:20:28 |
| 17 | first page -- you wrote "Yes, of course -- | 12:20:31 |
| 18 | pardon me -- we have no intention of using | 12:20:36 |
| 19 | this breach notice until we are ready. | 12:20:38 |
| 20 | The notice of breach is something we will | 12:20:41 |
| 21 | use for a last resort and we will remain | 12:20:42 |
| 22 | coordinated on this as I noted." | 12:20:46 |
| 23 | Do you see that? | 12:20:49 |
| 24 | A.    I see that. | 12:20:49 |
| 25 | Q.    And you sent that e-mail to | 12:20:50 |

Page 63

Ex 5                                                      373

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1    Mr. Kim on or about March 4, 2016, right?        12:20:51
 2         A.    That's correct, March 4, 2016.        12:20:57
 3         Q.    Okay.  And this is after Mr. Kim      12:20:59
 4    reminded you that you still have the             12:21:02
 5    SK hynix negotiations going on, and you're       12:21:05
 6    still interested in purchasing product           12:21:11
 7    from Samsung to increase Netlist's revenue       12:21:13
 8    and profit, right?                               12:21:16
 9         A.    I think that was a well-known         12:21:19
10    fact, yes.                                       12:21:21
11         Q.    Okay.  And so when you wrote we       12:21:21
12    have no intention of using this breach          12:21:25
13    notice until we are ready, what did you          12:21:27
14    mean?                                            12:21:29
15         A.    I think I already explained it        12:21:31
16    to you that until we have seen that              12:21:33
17    Samsung was not cooperating and, you know,       12:21:40
18    we had ruled out everything else that we         12:21:44
19    could do.  Obviously, you could see from         12:21:48
20    what we actually did, we were very               12:21:50
21    patient.                                         12:21:52
22         Q.    You -- I'm sorry.  And when you       12:21:55
23    wrote this part about not using the breach       12:21:57
24    notice until we are ready, were you              12:21:59
25    responding to the reasons that Mr. Kim           12:22:02
```

Page 64

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | but it's not directly responsive to my | 14:26:00 |
| 2 | question. | 14:26:02 |
| 3 | I'm asking you very | 14:26:02 |
| 4 | specifically:  In Netlist's view, in order | 14:26:03 |
| 5 | for Samsung to cooperate with the request | 14:26:07 |
| 6 | for the refund, was Samsung required to | 14:26:11 |
| 7 | make statements even if Samsung did not | 14:26:13 |
| 8 | believe them to be true? | 14:26:15 |
| 9 | MR. LAMAGNA:  Outside the scope, | 14:26:18 |
| 10 | calls for speculation, calls for a | 14:26:21 |
| 11 | legal conclusion. | 14:26:23 |
| 12 | BY MR. MASTERS: | 14:26:23 |
| 13 | Q.    You can answer. | 14:26:25 |
| 14 | A.    So you're asking me if we | 14:26:27 |
| 15 | thought it was okay for them to lie and | 14:26:30 |
| 16 | then call that cooperation? | 14:26:34 |
| 17 | Q.    No.   No.  My question is very | 14:26:36 |
| 18 | different. | 14:26:39 |
| 19 | My question is this:  Was it | 14:26:40 |
| 20 | Netlist's view that in order for Samsung | 14:26:43 |
| 21 | to cooperate with Netlist, Samsung would | 14:26:45 |
| 22 | have to make statements even if those | 14:26:48 |
| 23 | statements were statements that Samsung | 14:26:51 |
| 24 | did not believe to be true? | 14:26:54 |
| 25 | MR. LAMAGNA:  Outside the scope. | 14:26:57 |

Page 123

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1        A.    Again, I can't read Samsung's        14:26:58
 2   mind.  That's not fair.                          14:27:00
 3   BY MR. MASTERS:                                  14:27:06
 4        Q.    Was Netlist's --                      14:27:06
 5              (Reporter clarification.)             14:27:07
 6              MR. LAMAGNA:   I'm trying to make     14:27:07
 7        an objection, so I apologize.   This        14:27:08
 8        line of questioning -- that question        14:27:11
 9        is outside the scope, calls for            14:27:13
10        speculation, calls for a legal             14:27:15
11        conclusion.   It assumes facts, and        14:27:17
12        it's an incomplete hypothetical.           14:27:19
13   BY MR. MASTERS:                                  14:27:21
14        Q.    Did Netlist want Samsung to make     14:27:21
15   any statements that Samsung itself did not       14:27:24
16   believe to be true in connection with the       14:27:26
17   refund --                                        14:27:28
18              (Reporter clarification.)             14:27:28
19   BY MR. MASTERS:                                  14:27:28
20        Q.    -- process?                           14:27:32
21              MR. LAMAGNA:   Same objections.      14:27:35
22        A.    How can we get inside Samsung's      14:27:39
23   head?  We could not.  All we could do is         14:27:42
24   say what was on paper is accurate, period.       14:27:44
25   BY MR. MASTERS:                                  14:27:44
```

Page 124

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1          Q.    And did -- does that mean that        14:41:33
 2    Netlist received a full refund of the            14:41:36
 3    entire amount withheld originally back in        14:41:39
 4    2015?                                            14:41:44
 5              MR. LAMAGNA:  Objection, vague.         14:41:45
 6          A.    We received what we got.  It          14:41:48
 7    was -- it should be the $1.3 --                  14:41:52
 8    $1,320,000, yes.                                 14:41:55
 9    BY MR. MASTERS:                                  14:41:55
10          Q.    Okay.  So let me just ask it          14:41:59
11    just to make sure we've got a clear              14:42:00
12    response.                                        14:42:03
13              Did Netlist receive a full             14:42:04
14    refund of the withholding of 1.32 million        14:42:06
15    U.S. dollars?                                    14:42:12
16          A.    Yes, we did.                          14:42:13
17          Q.    Okay.  On or about -- or in or        14:42:14
18    about December 2020?                             14:42:18
19          A.    Yes.  Almost five years later,        14:42:19
20    yes.                                             14:42:21
21          Q.    Okay.  And in addition to that,       14:42:21
22    Netlist also received accrued interest in        14:42:24
23    the amount indicated in the e-mail,              14:42:28
24    correct?                                         14:42:31
25              MR. LAMAGNA:  Objection, form.          14:42:33
```

Page 136

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1      A.     We -- we received some small        14:42:38

 2   amount.   I mean, I think it worked out to     14:42:42

 3   be less than a percent a year of interest.     14:42:45

 4   Just like the IRS, if they make a mistake,     14:42:48

 5   I'm sure they would give us -- you and I       14:42:51

 6   some money back.                               14:42:55

 7   BY MR. MASTERS:                                14:42:55

 8      Q.     Okay.  Whatever you want to          14:42:56

 9   characterize the amount as, it -- the          14:42:59

10   amount is indicated for accrued interest       14:43:01

11   in Mr. Kim's e-mail, is that accurate?         14:43:03

12          MR. LAMAGNA:  Objection, vague.         14:43:08

13      A.     It's probably the way that he        14:43:13

14   would best characterize it to me.  I don't     14:43:15

15   know if it -- if that's accurate for me, a     14:43:18

16   Korean -- a KTA point of view.  I'm not        14:43:24

17   sure if that's what they called it.            14:43:27

18   Sorry.  I couldn't read the Korean.            14:43:28

19   BY MR. MASTERS:                                14:43:30

20      Q.     Is it true as Mr. Kim indicated      14:43:30

21   that Netlist received accrued interest of      14:43:32

22   KRW 13,125,790?                                14:43:34

23          MR. LAMAGNA:  Objection, form.          14:43:41

24      A.     Yeah, I'd have to -- I'd have to     14:43:43

25   check our records exactly, but that's what     14:43:48
```

Page 137

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | document.  One moment. | 14:46:50 |
| 2 | THE COURT REPORTER:  Can we take | 14:46:54 |
| 3 | a break soon? | 14:46:55 |
| 4 | MR. MASTERS:  Sure.  Let's go | 14:46:56 |
| 5 | off the record. | 14:46:57 |
| 6 | THE WITNESS:  Okay. | 14:47:01 |
| 7 | THE VIDEOGRAPHER:  Stand by. | 14:47:03 |
| 8 | Thank you.  This marks the end of | 14:47:04 |
| 9 | media number 3.  Going off the record | 14:47:06 |
| 10 | at 2:47 p.m. | 14:47:07 |
| 11 | (Whereupon, a brief recess is | 15:02:24 |
| 12 | taken.) | 15:02:24 |
| 13 | THE VIDEOGRAPHER:  We are back | 15:10:42 |
| 14 | on the record at 3:11 p.m. Pacific, | 15:10:43 |
| 15 | and this marks the beginning of media | 15:10:46 |
| 16 | number 4 in the deposition of Gail | 15:10:49 |
| 17 | Sasaki.  You may proceed, Counsel. | 15:10:51 |
| 18 | BY MR. MASTERS: | 15:10:56 |
| 19 | Q.   Ms. Sasaki, I'm going to | 15:10:56 |
| 20 | introduce an exhibit marked Exhibit 9. | 15:10:58 |
| 21 | One moment.  You may want to try and | 15:11:01 |
| 22 | refresh now. | 15:11:14 |
| 23 | MR. MASTERS:  The Exhibit begins | 15:11:15 |
| 24 | with Bates number NL046086. | 15:11:17 |
| 25 | (Exhibit 9, Document beginning | 15:11:17 |

Page 140

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1        with Bates number NL046086, marked for      15:11:17
 2        identification.)                            15:11:22
 3   BY MR. MASTERS:                                  15:11:22
 4        Q.    Do you see the exhibit,               15:11:39
 5   Ms. Sasaki?                                      15:11:40
 6        A.    Yeah, I just clicked on it.           15:11:41
 7        Q.    Okay.  So, Ms. Sasaki, this is        15:11:43
 8   an e-mail chain with an attachment, and          15:11:44
 9   the subject line reads "reduced tax              15:11:47
10   form_foreign corporation."                       15:11:52
11        Do you see that?                            15:11:56
12        A.    I -- I see it, yes.                   15:11:56
13        Q.    And you see the e-mails are           15:11:58
14   dated November 4 and November 5, 2015?           15:12:00
15        A.    I -- I do see that.                   15:12:06
16        Q.    Okay.  And -- and you recall,         15:12:07
17   those are before the final execution of          15:12:09
18   the Joint Development and License                15:12:13
19   Agreement which was executed on                  15:12:16
20   November 12 of that year.                        15:12:17
21        Do you understand that?                     15:12:22
22        A.    Yes, I do.                            15:12:23
23        Q.    Now, the e-mail at the bottom --      15:12:24
24   I'm sorry, not at the bottom but the             15:12:33
25   second one from the bottom is from Jibum         15:12:34
```

Page 141

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | Q.    Okay.  And then who was Tanya | 15:13:43 |
| 2 | Nguyen or who is she? | 15:13:46 |
| 3 | A.    Tanya Nguyen was in charge of | 15:13:49 |
| 4 | our accounts receivable area. | 15:13:53 |
| 5 | Q.    Okay.  So she reported up to | 15:13:56 |
| 6 | you? | 15:13:59 |
| 7 | A.    She reported to our controller. | 15:13:59 |
| 8 | Q.    Okay.  And the controller then | 15:14:03 |
| 9 | reported to you? | 15:14:05 |
| 10 | A.    Yes.  The controller reported to | 15:14:08 |
| 11 | me. | 15:14:10 |
| 12 | Q.    Okay.  And just for the record, | 15:14:10 |
| 13 | Nguyen is spelled N-G-U-Y-E-N. | 15:14:13 |
| 14 | So there's an e-mail from | 15:14:18 |
| 15 | Mr. Kim to you and Ms. Nguyen stating -- | 15:14:20 |
| 16 | asking "Can you see the yellowed one?" | 15:14:24 |
| 17 | That's November 4, 2015. | 15:14:27 |
| 18 | And then Tanya responds on, it | 15:14:30 |
| 19 | looks like November 6, 2015, Korea time, | 15:14:35 |
| 20 | that -- she responds to Mr. Kim and copies | 15:14:42 |
| 21 | you stating "Attached please find the | 15:14:46 |
| 22 | signed revised document." | 15:14:49 |
| 23 | Do you see that? | 15:14:51 |
| 24 | A.    I see it. | 15:14:52 |
| 25 | Q.    And then there's another e-mail | 15:14:53 |

Page 143

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | at the top, but before we get to that, | 15:14:56 |
| 2 | let's look at the exhibit that's attached. | 15:15:00 |
| 3 | This is called "Application for | 15:15:03 |
| 4 | Entitlement to Reduce Tax Rate on Domestic | 15:15:07 |
| 5 | Source Income (for Foreign | 15:15:10 |
| 6 | Incorporation)." | 15:15:15 |
| 7 | Do you see that? | 15:15:18 |
| 8 | A.    I see that yes. | 15:15:19 |
| 9 | Q.    And that's Bates number | 15:15:20 |
| 10 | NL046088, correct? | 15:15:22 |
| 11 | A.    That's right. | 15:15:26 |
| 12 | Q.    Okay.  And then towards the | 15:15:30 |
| 13 | bottom of the page, do you see your name | 15:15:31 |
| 14 | spelled out -- typewritten Gail Sasaki, | 15:15:32 |
| 15 | CFO? | 15:15:35 |
| 16 | A.    I see it, yes. | 15:15:36 |
| 17 | Q.    And then do you see the date | 15:15:38 |
| 18 | next to your name November 5, 2015? | 15:15:41 |
| 19 | A.    Yes, I see it. | 15:15:48 |
| 20 | Q.    And is that your signature to | 15:15:49 |
| 21 | the right of the date? | 15:15:50 |
| 22 | A.    Yes, that's my signature. | 15:15:51 |
| 23 | Q.    Okay.  So you signed this | 15:15:53 |
| 24 | document on or about November 5, 2015, | 15:15:54 |
| 25 | correct? | 15:15:59 |

Page 144

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

| | | |
|---|---|---|
| 1 | A.      Yes, I believe so. | 15:16:02 |
| 2 | Q.      And did you review the document | 15:16:04 |
| 3 | before you signed it? | 15:16:05 |
| 4 | A.      Yes, I -- I did review it. | 15:16:08 |
| 5 | Q.      Okay.  It's a two-page document. | 15:16:11 |
| 6 | Do you know how much time it took you to | 15:16:15 |
| 7 | review the document? | 15:16:18 |
| 8 | A.      Well, I don't remember exactly | 15:16:21 |
| 9 | how much time I spent, but I did have it | 15:16:23 |
| 10 | sent to a international tax person. | 15:16:30 |
| 11 | Q.      Okay.  We're going to talk about | 15:16:34 |
| 12 | that in a moment, but in terms of your own | 15:16:38 |
| 13 | review, do you recall approximately how | 15:16:43 |
| 14 | much time you spent? | 15:16:46 |
| 15 | A.      I don't remember, Marc, sorry. | 15:16:50 |
| 16 | Q.      Okay.  And you see where it | 15:16:53 |
| 17 | indicates under type of entity, it | 15:16:55 |
| 18 | indicates corporation? | 15:16:59 |
| 19 | A.      Yes, I see that. | 15:17:04 |
| 20 | Q.      And then below that it gives the | 15:17:06 |
| 21 | name of Netlist Inc.? | 15:17:09 |
| 22 | A.      Yes, it says Netlist. | 15:17:12 |
| 23 | Q.      And then it indicates that | 15:17:13 |
| 24 | you're the corporate representative, Gail | 15:17:15 |
| 25 | Sasaki, correct? | 15:17:17 |

Page 145

***CONFIDENTIAL ATTORNEYS' EYES ONLY***

```
 1    BY MR. MASTERS:                              16:24:51
 2        Q.    So my next question, Ms. Sasaki,   16:24:53
 3    is:  Do you know the price that Netlist      16:24:55
 4    paid for NAND and DRAM products that         16:24:58
 5    Netlist purchased from hynix and Micron      16:25:02
 6    during the time period in question?          16:25:06
 7             MR. LAMAGNA:  Outside the scope,     16:25:08
 8        calls for speculation.                   16:25:09
 9        A.    Yeah, I -- again, it -- I have      16:25:12
10    no idea, and it's minimal.                   16:25:16
11        Q.    Okay.  But you don't know,          16:25:18
12    correct?                                     16:25:20
13        A.    I don't know.                       16:25:21
14        Q.    Okay.  Now, with regard to          16:25:22
15    the -- with regard to the Samsung NAND and   16:25:25
16    DRAM that was purchased during this period   16:25:35
17    of time, what did Netlist do -- how did      16:25:37
18    Netlist use that NAND and DRAM?              16:25:40
19        A.    Netlist mainly resold it.  We      16:25:47
20    also used -- used it in our own products,    16:25:52
21    but I say the majority of it was -- was      16:25:57
22    resold.                                      16:26:00
23             MR. LAMAGNA:  That's outside the    16:26:01
24        scope.                                   16:26:02
25    BY MR. MASTERS:                              16:26:02

                                          Page 194
```

***CONFIDENTIAL - ATTORNEYS' EYES ONLY***

```
1    a sentence that begins "we."                19:00:17

2           Do you see that?                      19:00:19

3    A.    Uh-huh.  I see that.                    19:00:19

4    Q.    It says -- I'll just read that          19:00:22

5    sentence.  "We have a limited number of       19:00:25

6    suppliers, including Arrow Electronics        19:00:27

7    which compromise more than 10 percent of      19:00:32

8    our total purchases in 2014 and SK hynix      19:00:33

9    Semiconductor America and Samsung             19:00:40

10   Semiconductor, Inc., each of which            19:00:44

11   comprised more than 10 percent of our         19:00:45

12   total purchases in 2013."                     19:00:47

13          Do you see that?                        19:00:49

14   A.    In 2013?  Yes, I see that.  Oh,          19:00:50

15   I'm sorry, in 2013?  Okay, yes.                19:00:54

16   Q.    The sentence that I just read,           19:00:57

17   is that an accurate statement?                 19:00:59

18   A.    Yes, I believe so.                        19:01:03

19   Q.    Do you know whether in 2013              19:01:09

20   there were any other suppliers that            19:01:13

21   supplied more than either Samsung or SK        19:01:16

22   hynix?                                         19:01:21

23   A.    In 2013?                                 19:01:23

24   Q.    Yeah.                                    19:01:24

25   A.    According to this, probably not.         19:01:26
```

                                                    Page 294

```
 1                CERTIFICATION

 2

 3       I, BELLE VIVIENNE, a Nationally

 4   Certified Realtime Reporter, do hereby

 5   certify:

 6       That the witness whose testimony as

 7   herein set forth, was duly sworn by me;

 8   and that the within transcript is a true

 9   record of the testimony given by said

10   witness.

11       I further certify that I am not

12   related to any of the parties to this

13   action by blood or marriage, and that I am

14   in no way interested in the outcome of

15   this matter.

16       IN WITNESS WHEREOF, I have hereunto

17   set my hand this 6th day of August 2021.

18

19
         Belle Vivienne
20

21       BELLE VIVIENNE, CRR, CCR, RPR

22               *      *      *

23

24

25

                                  Page 340
```