# EXHIBIT 65

| | |
|---|---|
| **From:** | "Michael Kim (KR)" <michael.kim@pwc.com> |
| **Sent:** | Mon, 2 Sep 2019 22:07:31 -0400 (EDT) |
| **To:** | Gail Sasaki <gsasaki@netlist.com> |
| **Cc:** | Marc Frechette <mfrechette@netlist.com>; "Lilliana Kang (KR)" <lilliana.kang@pwc.com> |
| **Subject:** | Fwd: Attorney Client Privileged |
| **Attachments:** | Netlist_Samsung's Position Paper_English_190903.docx |

Hi Gail,
As promised, please find attached a redacted Samsung's position paper for your review.

Best regards,

Michael

Michael Kim
Partner
Samil PricewaterhouseCoopers
Office: +82 2 709 0707
Mobile: +82 10 4945 9707
Email: michael.kim@pwc.com


---------- Forwarded message ---------
From: **Michael Kim (KR)** <michael.kim@pwc.com>
Date: Mon, Sep 2, 2019 at 6:24 PM
Subject: Fwd: Attorney Client Privileged
To: Gail Sasaki <gsasaki@netlist.com>
Cc: Lilliana Kang (KR) <lilliana.kang@pwc.com>, Marc Frechette <mfrechette@netlist.com>


Hi Gail,

The attached is English translation of Samsung's response to NTS.

We are currently working on our draft and will be able to send it to you by tomorrow.

In the meantime, it might be helpful to glance over Samsung's initial draft.

If there are any concerns or questions, feel free to ask.

Best regards,

Michael

**Michael Kim**
Partner
Samil PricewaterhouseCoopers
Office: +82 2 709 0707
Mobile: +82 10 4945 9707
Email: michael.kim@pwc.com




----------------------
From: **Gail Sasaki** <gsasaki@netlist.com>
Date: Sat, Aug 31, 2019 at 5:20 PM
Subject: Re: Attorney Client Privileged
To: Michael Kim (KR) <michael.kim@pwc.com>
Cc: Lilliana Kang (KR) <lilliana.kang@pwc.com>, Marc Frechette <mfrechette@netlist.com>
------------------------------------

Thanks Michael.

Sent from my iPhone

On Aug 31, 2019, at 1:16 AM, Michael Kim (KR) <michael.kim@pwc.com> wrote:

> I see. I thought you had an English translation already somehow. Let us draft the letter in English for your review. It may take a few days due to other schedules but we will try our best to send you as quickly as possible.
>
> Best regards,
>
> Michael
>
> 2019년 8월 31일 (토) 오후 5:10, Gail Sasaki <gsasaki@netlist.com>님이 작성:

Exhibit 0006

CONFIDENTIAL    NL118544

Not sure how i can do that when i have no idea what the questions or answers are since remember i can't read Korean

Sent from my iPhone

On Aug 30, 2019, at 4:14 PM, Michael Kim (KR) <michael.kim@pwc.com> wrote:

I thought you would be sending the technical revision in English for us to draft in Korean...

2019년 8월 31일 (토) 오전 8:12, Gail Sasaki <gsasaki@netlist.com>님이 작성:

Michael,

It is now Friday our time and had not heard back from you yet. Will you be forwarding an English draft soon?

Thanks and hope all is well,

Gail

..................................................................................................................................

<image001.png>
Tel:949.435.0025
Fax:949.435.0031
www.netlist.com

**Gail Sasaki**
Chief Financial Officer
175 Technology
Irvine, CA 92618
Direct: 949.679.0113
Cell: 714.337.2155
Fax: 949.435.0031
Email: gsasaki@netlist.com

**From:** Gail Sasaki
**Sent:** Wednesday, August 28, 2019 5:22 PM
**To:** Michael Kim (KR) <michael.kim@pwc.com>
**Cc:** Marc Frechette <mfrechette@netlist.com>; Lilliana Kang (KR) <lilliana.kang@pwc.com>
**Subject:** RE: Attorney Client Privileged

Hi Michael,

As soon as I see the draft in English I can let you know – but assuming we can get something turned back around to you in 24 hours.

..................................................................................................................................

<image001.png>
Tel:949.435.0025
Fax:949.435.0031
www.netlist.com

**Gail Sasaki**
Chief Financial Officer
175 Technology
Irvine, CA 92618
Direct: 949.679.0113
Cell: 714.337.2155
Fax: 949.435.0031
Email: gsasaki@netlist.com

**From:** Michael Kim (KR) <michael.kim@pwc.com>
**Sent:** Wednesday, August 28, 2019 5:15 PM
**To:** Gail Sasaki <gsasaki@netlist.com>
**Cc:** Marc Frechette <mfrechette@netlist.com>; Lilliana Kang (KR) <lilliana.kang@pwc.com>
**Subject:** Re: Attorney Client Privileged

CONFIDENTIAL   NL118545

Hi Gail,

When do you expect to have a draft version ready?

I think it would be good to communicate to Samsung about our timeline.

Best regards,

Michael

Michael Kim

Partner

Samil PricewaterhouseCoopers

Office: +82 2 709 0707

Mobile: +82 10 4945 9707

Email: michael.kim@pwc.com

On Thu, Aug 29, 2019 at 1:30 AM Gail Sasaki <gsasaki@netlist.com> wrote:

> Michael,
>
> Yes, please have it translated OR we can work on it together and you can redline as we go through it live.
>
> Let me know your preference.
>
> Thanks,
>
> Gail
>
> ..............................................................................................................................................................
>
> **Gail Sasaki**
> Chief Financial Officer
> 175 Technology
> Irvine, CA 92618
> Tel:949.435.0025    Direct: 949.679.0113
> Fax:949.435.0031    Cell: 714.337.2155
> www.netlist.com     Fax: 949.435.0031
>                     Email: gsasaki@netlist.com

**From:** Michael Kim (KR) <michael.kim@pwc.com>
**Sent:** Tuesday, August 27, 2019 11:09 PM
**To:** Gail Sasaki <gsasaki@netlist.com>
**Cc:** Marc Frechette <mfrechette@netlist.com>; Lilliana Kang (KR) <lilliana.kang@pwc.com>
**Subject:** Fwd: Attorney Client Privileged

Hi Gail,

CONFIDENTIAL    NL118546

Can you please let me know the technical changes to Samsung's draft responses that you would like to reflect?

I can have it translated into Korean if this is more convenient.

The NTS officer called me last Friday and told me that it is imperative he receives something from Samsung before he could either accept or reject our refund request. Otherwise, he said he cannot process it.

Please let me know.

Best regards,

Michael

Michael Kim

Partner

Samil PricewaterhouseCoopers

Office: +82 2 709 0707

Mobile: +82 10 4945 9707

Email: michael.kim@pwc.com

---------- Forwarded message ---------
From: **Byung Jeon** <byungyup.jeon@samsung.com>
Date: Wed, Aug 28, 2019 at 2:43 PM
Subject: RE: Attorney Client Privileged
To: Gail Sasaki <gsasaki@netlist.com>
Cc: Marc Frechette <mfrechette@netlist.com>, Michael Kim (KR) <michael.kim@pwc.com>, Jinho Jeon <jinho83.jeon@samsung.com>

+ Jinho, Jeon

Dear Gail,

Thank you for your feedback. We will not send our draft to NTS.

Then, could you give us Netlist's draft to the NTS's questions?

Once we receive the draft, we will review it and if there is no disagreement, we will send it to NTS

Thank you

**Byung, Jeon**

Business Development | Strategic Planning Team | Memory Division | Samsung Electronics co.,Ltd.
Office +82-31-208-3233 | Mobile +82-10-7222-7526 | byungyup.jeon@samsung.com

--------- **Original Message** ---------

CONFIDENTIAL　　　NL118547

**Sender** : Gail Sasaki <gsasaki@netlist.com>

**Date** : 2019-08-21 09:17 (GMT+9)

**Title** : Attorney Client Privileged

Dear Mr. Jeon,

Thank you for giving us an opportunity to review the letter you have prepared in relation to the National Tax Service's (NTS) request for additional information on our refund claim. Unfortunately your letter is factually incorrect and therefore Netlist can not provide written consent for Samsung to submit the letter to the NTS.

If you would like to talk further please let us know.

Best regards,

Gail

........................................................................................................................................

**Gail Sasaki**
**Chief Financial Officer**
175 Technology
Irvine, CA 92618
Tel:949.435.0025   Direct: 949.679.0113
Fax:949.435.0031   Cell: 714.337.2155
www.netlist.com    Fax: 949.435.0031
Email: gsasaki@netlist.com

 Netlist_Samsung's Position

The information transmitted in this electronic mail (e-mail) is intended for the named recipient(s) only, and may contain confidential and/or privileged material, disclosure of which is restricted by applicable law, including professional codes of conduct. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you have received this e-mail in error, please notify the sender and delete this e-mail, including any attachments, immediately. Unless otherwise noted, any views expressed in this e-mail and/or its attachments are those of the author and do not necessarily reflect the views of PwC.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

The information transmitted in this electronic mail (e-mail) is intended for the named recipient(s) only, and may contain confidential and/or privileged material, disclosure of which is restricted by applicable law, including professional codes of conduct. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you have received this e-mail in error, please notify the sender and delete this e-mail, including any attachments, immediately. Unless otherwise noted, any views expressed in this e-mail and/or its attachments are those of the author and do not necessarily reflect the views of PwC.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

--
Michael Kim
Partner
Samil PricewaterhouseCoopers
Office: +82 2 709 0707

CONFIDENTIAL    NL118548

Mobile: +82 10 4945 9707
Email: michael.kim@pwc.com

The information transmitted in this electronic mail (e-mail) is intended for the named recipient(s) only, and may contain confidential and/or privileged material, disclosure of which is restricted by applicable law, including professional codes of conduct.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you have received this e-mail in error, please notify the sender and delete this e-mail, including any attachments, immediately. Unless otherwise noted, any views expressed in this e-mail and/or its attachments are those of the author and do not necessarily reflect the views of PwC.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

--
Michael Kim
Partner
Samil PricewaterhouseCoopers
Office: +82 2 709 0707
Mobile: +82 10 4945 9707
Email: michael.kim@pwc.com

The information transmitted in this electronic mail (e-mail) is intended for the named recipient(s) only, and may contain confidential and/or privileged material, disclosure of which is restricted by applicable law, including professional codes of conduct.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you have received this e-mail in error, please notify the sender and delete this e-mail, including any attachments, immediately. Unless otherwise noted, any views expressed in this e-mail and/or its attachments are those of the author and do not necessarily reflect the views of PwC.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

--
Michael Kim
Partner
Samil PricewaterhouseCoopers
Office: +82 2 709 0707
Mobile: +82 10 4945 9707
Email: michael.kim@pwc.com

The information transmitted in this electronic mail (e-mail) is intended for the named recipient(s) only, and may contain confidential and/or privileged material, disclosure of which is restricted by applicable law, including professional codes of conduct.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited, and all liability arising therefrom is disclaimed. If you have received this e-mail in error, please notify the sender and delete this e-mail, including any attachments, immediately. Unless otherwise noted, any views expressed in this e-mail and/or its attachments are those of the author and do not necessarily reflect the views of PwC.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

### &lt;Additional Inquiries regarding the Refund Claim submitted by Netlist&gt;

1    **Project background and development schedule**

    **1.1**    **What is Samsung's objective of concluding the Joint Development License Agreement with Netlist, the project schedule and each party's roles and responsibilities?**

- ? Samsung entered the JDLA with Netlist who possess relevant technology in order to develop the NVDIMM-P product that meets Samsung's criteria. However, any intended joint development never happened as Samsung decided to move forward independently with the development of the NVDIMM-P product without Netlist' cooperation or technology. Regardless, Samsung still retain a preemptive right to purchase Netlist' NVDIMM-P technology if and when deemed necessary. The project schedule and roles/responsibilities can be found in the Appendix attached to the JDLA. Please note the project has not been carried on insofar as joint cooperation and development is concerned.

> **Formatted:** List Paragraph, Bulleted + Level: 1 + Aligned at: 0.69" + Indent at: 0.94"
>
> **Deleted:** ¶
> Cross-licensing of technologies to mitigate LRDIMM and NVDIMM patent infringement risks.¶
> **The project schedule and each party's roles and responsibilities**¶
> Refer to the Appendix attached to the JDLA¶
> **Basis of calculation of $8M**¶
> Mutual agreement between contracting parties¶
> **Samsung's expected return from the JDLA**¶
> Paid-up of all relevant patents owned by Netlist ¶

2    **Samsung's role in development of the HybriDIMM technology**

    **2.1**    **Netlist claims that Samsung only performed auxiliary activities such as product implementation test for the HybriDIMM technology/ product developed by Netlist using its own technologies such as NV Vault and HyperVault. What is Samsung's opinion on this argument?**

- Although the JDLA stipulates that Samsung will conduct implementation test, Samsung have not performed any detailed evaluation nor implementation regarding the HybriDIMM technology. Samsung has only received from Netlist demonstration and basic evaluation data of the concerned technology at initial phase.

3    **List of patents and other intellectual properties**

    **3.1**    **List of the 'Collaboration IPR' and the 'Sole Ownership Technology' in accordance with the Sole Collaboration Technology**

    **3.2**    **List of the 'Joint Patent' in accordance with the Joint Collaboration IPR**

    **3.3**    **Agreements, meeting minutes and other relevant documents prepared in**

**distinguishing intellectual properties between Samsung and Netlist**

- Despite the JDLA, there was no technical cooperation. Samsung did not file for any IPR as a result of the JDLA. There was no Collaboration IPR nor Joint Collaboration IPR.

- For your information, Samsung have separately and independently filed for a patent related to the JEDEC NVDIMM-P, which was unrelated to Netlist.

## 4 Samsung's Right of First Refusal

**4.1 Netlist claims that the HybriDIMM technology that enables production of the NVDIMM-P product (the Developed Product) is solely developed by Netlist and therefore should be solely owned by Netlist. As per the JDLA, Samsung has preemptive right for the Developed Product because Samsung has paid $8M as a R&D investment.**

**What is Samsung's opinion on the nature of $8M and the preemptive right?**

- Samsung have signed the JDLA, which includes technical cooperation as well as cross-licensing between the contracting parties, to manage any potential patent infringement risks related to the LRDIMM and NVDIMM.

- $8M was paid as an initial consideration for potential development, standardization and productization of the NVDIMM-P product. Regardless of joint development (which by the way never happened), Samsung retain a preemptive right to purchase the NVDIMM-P technology in the future for a price to be determined if and when deemed necessary.

> **Deleted:** for
>
> **Deleted:** that Samsung were developing. Yet joint development did not occur. Preemptive-right is something Netlist had first offered.

**4.2 Please elaborate how and when the preemptive right can be exercised including the exercise price.**

- As explained above, the exercise period and price are not predetermined, but to be negotiated between parties when exercising the right by Samsung.

> **Deleted:** The preemptive right is the first offer Netlist makes when Netlist trade the NVDIMM-P technology with third parties.
>
> **Deleted:** T

## 5 Production of the NVDIMM-P product and payment of royalty

**5.1 Since when the NVDIMM-P product is being produced? If the product produced in the future, will Samsung pay royalty to Netlist? If not, please**

CONFIDENTIAL   NL118551

elaborate reason.

- There was no technology transferred from Netlist to Samsung. Thus, Samsung has no plan to produce the NVDIMM-P containing Netlist's technology nor plan to pay royalty to Netlist.

- Aside from the above, Samsung plans to work on prototype of its own developed standard NVDIMM-P that is unrelated to Netlist.

## 6 Possibility of refund of $8M

### 6.1 In case of termination/ cancellation of the JDLA, will $8M be refunded to Samsung? If not, how will it be treated?

- In accordance with article 3.1 of the JDLA, $8M of 'non-refundable NRE fee' shall not be refunded to Samsung.

**Deleted:** <#>Notwithstanding the above, Samsung may claim for damages incurred by Netlist's breach of contract. In claiming such, NRE fee may be referred.¶

## 7 Nature of the $8M (royalty v. service fee)

### 7.1 Netlist claims that the concerned fee is service fee quoting article 9-132...7 of the guidance for the Korean Corporate Income Tax Law, article 93-132-6 of the enforcement decree of the Korean Adjustment of International Taxes Law, article 12 paragraph 10.2 of the commentary of the OECD Model Tax Convention. Please specify Samsung's opinion on each argument below:

### 7.2 Whether HybriDIMM technology that is necessary in development of the NVDIMM-P product (the Developed Product) is pre-existing and non-disclosed technical information

- Samsung is not aware of whether Netlist's HybriDIMM technology was existed before the JDLA or not.

### 7.3 Whether development of HybriDIMM technology can be achievable by any professional in the similar business area

- It requires Netlist's knowhow; however, the $8M was not paid directly to develop the NVDIMM-P using HybriDIMM technology but to explore potential compatibility of

**Deleted:** <#>Samsung considered that patents related to memory module (RDIMM, LRDIMM) that were owned by Netlist can be useful in development of the NVDIMM-P product and/or may bring patent infringement risks in Samsung's development of the NVDIMM-P. Therefore, Samsung have signed the JDLA including technical cooperation as well as cross-licensing between the contracting parties.¶

CONFIDENTIAL   NL118552

<ins>HybriDIMM technology in developing NVDIMM-P. Samsung's NVDIMM-P was ultimately developed not using the HybriDIMM technology</ins>

> **Deleted:** .

**7.4 Whether the confidentiality clauses of the JDLA is general clause or special clause with list of non-disclosure technology and/or specific scheme for non-disclosure**

- The article 11 of the JDLA shall be considered as general confidentiality clauses.

> **Deleted:** However, the JDLA imposes heavy responsibility on certain information that is stipulated under article 11.5 'Restricted Information'.

**7.5 Whether the concerned consideration excessively exceeds the following: expected costs incurred in performing promised service plus mark-up**

- The $8M was determined through negotiation between Samsung and Netlist.

- Samsung can not determine whether the concerned amount exceeds expected cost plus markup or not.

> **Deleted:** However there seems to be a room for interpretation that substantial margin has been added to the value Samsung had internally evaluated.

**7.6 Whether Netlist requires to perform specific role or Netlist guarantees result (please specify whether each party share blueprint/ source code or other equivalent technology, and who takes responsibility when the developed product has defect**

- The JDLA stipulates both parties will not bear any responsibility for result of the development during the initial phase. Both parties will decide whether to proceed with subsequent phase considering progress of the development.

- In accordance with the JDLA, each party will share their own deliverables as described in scope of work (attachment of the JDLA). Netlist will provide the final deliverable, the NVDIMM-P product, to Samsung and Samsung will decide its success or failure. In case the final deliverable fails Samsung's standard, Netlist will not solely bear the responsibility but both parties will cooperate to solve the problem. Notwithstanding the above, the joint development was never conducted.

- To summarize, Samsung entered the JDLA with Netlist who possess relevant technology in order to develop the NVDIMM-P product that meets Samsung's criteria. But the contracting parties will bear no responsibility for the development.

CONFIDENTIAL NL118553