# EXHIBIT 48

```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                      SOUTHERN DIVISION

 4     NETLIST INC., a Delaware       )
       corporation,                   ) CASE NO.
 5                                     ) 8:20-cv-993-JAK (DFMx)
                   Plaintiff,         )
 6     v.                             )
                                      )
 7     SAMSUNG ELECTRONICS CO.,       )
       LTD., a Korean corporation,    )
 8                                    )
                   Defendant.         )
 9     -----------------------------)

10                          - - -

11                  MONDAY, AUGUST 9, 2021

12                          - - -

13          ***CONFIDENTIAL - ATTORNEYS EYES ONLY***

14

15         Videotaped Deposition of KYUHAN (KENNY) HAN,

16     beginning at 2:19 P.M., before Nancy J. Martin, a

17     Registered Merit Reporter, Certified Shorthand

18     Reporter.  All parties appeared remotely.

19

20

21

22

23

24     Job no. 4743996

25     Pages 1 - 151

                                              Page 1
```

```
 1          MUNICH, GERMANY, MONDAY, AUGUST 9, 2021; 2:19 P.M.

 2                              -  -  -

 3              THE VIDEOGRAPHER:  We are on record at

 4      2:19 p.m. on August 9, 2021.  This is the deposition

 5      of Kyuhan Han.  We're here in the matter of Netlist

 6      vs. Samsung.  I'm John MacDonell, the videographer

 7      with Veritext.

 8              Before the reporter swears the witness and

 9      the interpreter, would counsel please identify

10      themselves, beginning with Ms. Lee, please.

11              MS. LEE:  I'm JungEun Lee, representing

12      Netlist.  I'm with the firm Gibson, Dunn & Crutcher.

13              MR. BEST:  This is Timothy Best, also Gibson,

14      Dunn & Crutcher, also for Netlist.

15              MS. CHOI:  Joyce Choi of Bird Marella for

16      Samsung.

17              MR. CHOI:  Jong-Min Choi with the firm Bird

18      Marella for Samsung.

19              MR. WIE:  Joe Wie from Samsung Electronics,

20      in-house counsel.

21

22                          KYUHAN HAN,

23          having been first duly sworn/affirmed,

24          was examined and testified as follows:

25      ///
```

Page 5

```
 1         Q.   Okay.  And again, as a reminder, most of my
 2    questions, unless I specify otherwise, are going to be
 3    related to your time in 2015 when you were in
 4    strategic planning team.
 5         A.   Okay.
 6         Q.   What were your communications with Mr. Kim
 7    about?
 8         A.   Those would be Netlist requests, as well as
 9    Netlist patents.
10         Q.   And what were "Netlist requests"?
11         A.   I believe it was licensing.
12         Q.   Could you please be a little more specific?
13    Do you mean Netlist wanted to license Samsung's
14    patents, or did Samsung want to license -- obtain
15    licenses to Netlist patents?
16         A.   My recollection is that Netlist wanted
17    Samsung to pay Netlist royalty in regards to patents
18    that were held by Netlist.
19         Q.   And were you involved in that negotiation
20    relating to the patent royalty arrangement?
21         MS. CHOI:  Objection.  Lacks foundation.
22    Assumes facts not in evidence.
23    BY MS. LEE:
24         Q.   Didn't you just mention that you spoke to
25    Samsung about licensing Netlist's patents?
```

```
1    the beginning of 2020.
2    BY MS. LEE:
3        Q.  And just to clarify, you cannot access your
4    E-mails that you sent or received before the end of
5    2019.  That is your testimony under oath?
6            MS. CHOI:  Objection.  Asked and answered.
7    Argumentative.  Harassing.
8            THE WITNESS:  Yes.  That's correct.
9    BY MS. LEE:
10       Q.  Are you familiar with a document called the
11   "joint development and licensing agreement" with
12   Netlist?
13       A.  I know of it, although I do not know what you
14   mean by "familiar," what that level is.
15       Q.  Okay.  Did you participate in the negotiation
16   of -- and I will shorten the word "joint development
17   and license agreement" as the "JDLA."
18       A.  Yes.  I did participate.
19       Q.  And who else participated in the negotiation
20   with you from Samsung?
21           MS. CHOI:  Objection.  Vague.
22           THE WITNESS:  I'm sorry.  I did not hear the
23   question.
24   BY MS. LEE:
25       Q.  Who else participated in the negotiation with
```

```
 1              THE INTERPRETER:  Hang on.  I haven't heard
 2     the answer.
 3              THE WITNESS:  Can you repeat your question
 4     once more?
 5     BY MS. LEE:
 6         Q.  From your perspective, was the purpose of the
 7     JDLA primarily for Samsung to acquire the rights or
 8     license to Netlist patents?
 9              MS. CHOI:  Same objections.
10              THE WITNESS:  My recollection is that what
11     the request that was made by Netlist was accepted.
12     BY MS. LEE:
13         Q.  That's not an answer to my question.
14              My question is what do you think was the
15     primary purpose of the JDLA from Samsung's
16     perspective?
17              MS. CHOI:  Same objections.  Lacks
18     foundation.  Calls for speculation.  Calls for a legal
19     conclusion.
20              THE WITNESS:  To my recollection, I think
21     some portion of it, it was for that purpose.
22     BY MS. LEE:
23         Q.  Do you recall communicating with Netlist
24     during the JDLA negotiation that the primary purpose
25     of the JDLA was for Samsung to obtain licenses for
```

Page 27

1        Do you recall if Samsung has ever done, to

2   your knowledge, any valuations of Netlist patents?

3        MS. CHOI:   Objection.   Lacks foundation.

4   Calls for speculation and a legal conclusion.   Assumes

5   facts not in evidence.

6        THE WITNESS:   Yes, there was.

7   BY MS. LEE:

8        Q.   And were you involved in the valuation of

9   Netlist patents?

10       A.   When you say, "involved," I did receive a

11  reporting in that regard.

12       Q.   And who did the valuation?

13       MS. CHOI:   Objection.   Vague and ambiguous.

14  Calls for a legal conclusion.   Calls for speculation.

15  Lacks foundation.

16       THE WITNESS:   I believe it was done by all

17  the departments that were involved at the time, such

18  as the technology, marketing, and sales.

19  BY MS. LEE:

20       Q.   Was your team involved in the valuation of

21  Netlist patents?

22       A.   My team was in charge of collecting

23  information.

24       Q.   And did Mr. Ho-Jung Kim collect that

25  information?

1          MS. CHOI: Objection. Vague.

2            THE WITNESS: Yes. That's correct.

3  BY MS. LEE:

4      Q. And do you recall, roughly, what the

5  valuation was?

6          MS. CHOI: Calls for a legal conclusion.

7          THE WITNESS: I don't recall the exact

8  figure. However, I think there was a minimum and

9  maximum amount.

10  BY MS. LEE:

11      Q. And compared to the NRE fee, was it higher or

12  lower? Do you have a general sense?

13          REPORTER MARTIN: I'm sorry. Can you repeat

14  your question, please.

15  BY MS. LEE:

16      Q. Compared to the NRE fee, was it much higher

17  or much lower, in your recollection?

18          MS. CHOI: Objection. Calls for speculation,

19  and vague and ambiguous.

20          THE WITNESS: May I ask why you are making

21  such comparison with the NRE fee?

22  BY MS. LEE:

23      Q. Unfortunately, you cannot ask me questions.

24  I get to ask the questions.

25      A. My recollection is that the NRE fee amount

Page 31

1    was less.

2        Q.   Do you know personally why Samsung decided to

3    enter into a joint development agreement instead of a

4    patent licensing agreement?

5            MS. CHOI:  Objection.  Asked and answered.

6    Lacks foundation.  Calls for speculation.  Calls for a

7    legal conclusion.  Assumes facts not in evidence.

8            THE WITNESS:  Is that true, that the

9    agreement was only limited to joint development?

10   Well, I don't really recall, but perhaps because it

11   was more advantageous to our side or perhaps to both

12   companies, that it was more advantageous.

13   BY MS. LEE:

14       Q.   Sorry.  I meant JDLA instead of joint

15   development agreement.  So that was my bad.

16       A.   So you're saying that JDLA is a joint

17   development that includes the licensing; correct?

18       Q.   Right.  I'm asking why did Samsung enter into

19   an agreement that's called "joint development

20   licensing agreement" instead of just a straight up

21   patent licensing agreement to get Netlist patent

22   licenses.

23           MS. CHOI:  Objection.  Same objections.

24   Lacks foundation.  Calls for speculation.  Calls for a

25   legal conclusion.

1    ahead and wait for the objection and do it question

2    and objection at the same time so it will be less

3    confusing to the witness.

4            MS. LEE:  That's fine.

5            (The Reporter requested clarification.)

6            MS. CHOI:  Can we repeat the question?  My

7    earphones went out for a little bit.

8            MS. LEE:  Nancy, can you please repeat the

9    question.

10           (Record read.)

11           MS. CHOI:  Objection.  Calls for a legal

12   conclusion.  Calls for speculation.  Lacks foundation.

13   Assumes facts not in evidence.  Vague and ambiguous.

14           THE WITNESS:  Yes, I do believe that is why.

15   BY MS. LEE:

16      Q.  And did Samsung agree to that request?

17           MS. CHOI:  Objection.  Calls for a legal

18   conclusion and speculation.  Lacks foundation.  Vague

19   and ambiguous.

20           THE WITNESS:  Yes, I believe Samsung did.

21   BY MS. LEE:

22      Q.  So was it your understanding that Samsung was

23   obligated to provide NAND and DRAM products to Netlist

24   under the JDLA?

25           MS. CHOI:  Objection.  Calls for a legal

Page 37

1    conclusion and speculation.   Lacks foundation.

2    Assumes facts not in evidence.   Vague and ambiguous.

3            THE WITNESS:   Yes, that's correct.   Pursuant

4    to the agreement.

5    BY MS. LEE:

6        Q.   And did you ever discuss with anybody at

7    Samsung whether -- sorry.   Strike that.

8            Did you ever discuss with anybody at Samsung

9    about this obligation?

10           MS. CHOI:   Objection.   Vague and ambiguous.

11   Calls for attorney-client privileged communications.

12   BY MS. LEE:

13       Q.   And let me remind you, you don't have to

14   discuss what you discussed with your lawyers or

15   Samsung's lawyers.

16           Did you discuss this obligation with anybody

17   that's not a lawyer at Samsung?

18       A.   No, I have not.

19           MS. LEE:   Okay.   I think I'm going to start

20   showing you some documents.   Give me one second so I

21   can mark this.

22           MS. CHOI:   Nicole, it's 7:00 o'clock.   Can we

23   take a short break before you move on to a new topic

24   or documents?

25           MS. LEE:   Sure.

                                                Page 38

1    I don't know how many I have done personally, and as
2    to the company level, you know, I have been aware
3    through articles and different routes.
4    BY MS. LEE:
5         Q.  Okay.  In your experience while at Samsung,
6    is it your understanding that Samsung generally only
7    offers terms that it can keep?
8              MS. CHOI:  Objection.  Calls for a legal
9    conclusion.  Lacks foundation.  Calls for speculation.
10   Assumes facts not in evidence.  Vague and ambiguous.
11             THE WITNESS:  I don't know.
12   BY MS. LEE:
13        Q.  Okay.  In your view, did Samsung offer the
14   supply of DRAM, NAND, and NVDIMM controllers because
15   you thought it was beneficial to Netlist?
16             MS. CHOI:  Objection.  Calls for a legal
17   conclusion.  Lacks foundation.  Assumes facts not in
18   evidence.  Calls for speculation.  Vague and
19   ambiguous.  Asked and answered.
20             THE WITNESS:  Do I need to answer this?
21   BY MS. LEE:
22        Q.  Yes.
23        A.  I believe that was the thought at the time.
24        Q.  Do you not believe that now?
25             MS. CHOI:  Objection.  Vague and ambiguous.

                                        Page 49

```
 1   Legal conclusion.
 2        THE WITNESS:  Well, the question seems
 3   somewhat hard to me.  Are you saying Netlist wanted
 4   that phrase removed, that is why it was removed?  Is
 5   that your question?
 6        MS. LEE:  I'll rephrase.
 7        Q.  So was it your understanding that Netlist
 8   crossed out the phrase "Nothing in this agreement will
 9   require Samsung to supply any products to Netlist"
10   because Netlist wanted Samsung to provide NAND and
11   DRAM products to Netlist?
12        MS. CHOI:  Objection.  Calls for speculation
13   and a legal conclusion.
14        THE WITNESS:  Well, your question is very
15   difficult.  Are you saying Samsung inserted that
16   sentence because Samsung thought Netlist did not want
17   to be supplied with those products?  Is that your
18   question?
19        MS. LEE:  Let me rephrase.  That was not my
20   question.
21        Q.  Was it your understanding at this point,
22   October 13, 2015, that Netlist wanted Samsung's NAND
23   and DRAM supply?
24        MS. CHOI:  Objection.  Calls for a legal
25   conclusion.  Speculation.  Assumes facts not in
```

                                             Page 65

1    evidence.

2              THE WITNESS:  Yes, that is my understanding.

3              MS. CHOI:  Nicole, is this a good time to

4    break?

5              MS. LEE:  Not yet.  I'm not done with this

6    document.  I'll go for a few more minutes.  Once I'm

7    done with this document, we can take a break.

8         Q.  Is it your understanding that the phrase

9    "Nothing in this Agreement will require Samsung to

10   supply any products to Netlist" means Samsung does not

11   have to supply any products to Netlist?

12             MS. CHOI:  Objection.  Calls for a legal

13   conclusion.  Speculation.

14             THE WITNESS:  Yes, that's correct.

15   BY MS. LEE:

16        Q.  And based on the reading of this E-mail and

17   the attachment, is it your understanding that

18   Mr. Whitley wanted to remove that sentence from the

19   JDLA?

20        A.  Can you repeat that question once more?  I

21   missed the latter portion.

22        Q.  Do you mean my question or the translation?

23             THE INTERPRETER:  The interpreter will

24   re-render the translation.

25             MS. CHOI:  Objection.  Calls for a legal

                                            Page  66

1    conclusion.  Calls for speculation.  Lacks foundation.

2    Assumes facts not in evidence.  Vague and ambiguous.

3         THE WITNESS:  Yes, that's what it looks like.

4    BY MS. LEE:

5         Q.  And was it your understanding that he wanted

6    that sentence removed from the JDLA because Netlist

7    wanted Samsung's supply of NAND and DRAM products?

8         MS. CHOI:  Objection.  Calls for a legal

9    conclusion.  Speculation.  Lacks foundation.  Assumes

10   facts not in evidence.  Vague and ambiguous.

11        THE WITNESS:  Correct.

12   BY MS. LEE:

13        Q.  And do you recall if Samsung put the sentence

14   back in the JDLA?

15        MS. CHOI:  Objection.  Calls for a legal

16   conclusion.

17        THE WITNESS:  I don't recall.

18        MS. LEE:  Okay.  We can take a break.  Is

19   this a good time to take a slightly longer break?

20   Does Mr. Han need like a dinner break or something?  I

21   know it's getting late for him.

22        THE WITNESS:  No.  We can proceed.

23        MS. LEE:  Okay.  So then we can take 10.

24        THE INTERPRETER:  The interpreter would like

25   15, if possible.

Page 67

1          THE WITNESS:  Well, as the title indicates,

2     it was a joint development.

3     BY MS. LEE:

4          Q.  Do you recall earlier this morning you said

5     that the joint development and license agreement was

6     primarily to license Netlist patents?

7               MS. CHOI:  Objection.  Misstates prior

8     testimony.  Lacks foundation.  Calls for a legal

9     conclusion.

10              THE WITNESS:  Yes, I remember.

11         MS. LEE:  So we can go back to his testimony

12    because I don't think I'm misstating his statement.

13    Before we do that, let me ask him one more time.

14        Q.  Do you recall telling me that the JDLA --

15    sorry.  Strike that.

16              Do you recall telling me that the primary

17    purpose of the JDLA was to access Netlist patents?

18        A.  Yes, but I think your description of that

19    word "access," that was somewhat different.

20        Q.  Okay.  So in your words, what was the purpose

21    of the JDLA?

22              THE INTERPRETER:  Can I have that question

23    back?  I'm not sure if that's --

24              MS. LEE:  Do you want me to reask the

25    question?

Page 89

```
 1    question which I can say yes or no to."
 2    BY MS. LEE:
 3        Q.   Okay.   But didn't you say earlier that the
 4    joint development was for a better amicable
 5    negotiation of the patent licensing?
 6             MS. CHOI:   Objection.   Misstates prior
 7    testimony and calls for a legal conclusion.
 8             THE WITNESS:   That's correct.
 9    BY MS. LEE:
10        Q.   So is it correct to say that the patent
11    licensing was a more pressing part of the joint
12    development and license agreement for Samsung?
13        A.   Yes, that is how it was started.
14        Q.   Okay.   Okay.   Let's look at Page 5 of the
15    final executed agreement.   Let me know when you're
16    there, please.
17        A.   Yes, I'm there.
18        Q.   Okay.   So it's 3.2, "Taxes" again.   Could you
19    read the last three rows starting with "and
20    reasonably."
21        A.   ..."Cooperate with Netlist in any lawful
22    efforts to claim a credit or refund or exemption with
23    respect to any such withholding taxes."   (In English)
24    .
25        Q.   Thank you.   Do you recall that we saw
```

Page 93

```
1              MS. CHOI:  Objection.  Calls for a legal

2     conclusion.  Speculation.  Lacks foundation.  Assumes

3     facts not in evidence.

4              THE WITNESS:  Yes.

5     BY MS. LEE:

6         Q.  Okay.  Scroll down to the bottom of Page 6.

7     The provision goes on to Page 7.  So Section 6.2 says,

8     "Samsung will supply NAND and DRAM products to Netlist

9     on Netlist's request at a competitive price."

10             Do you see that?

11        A.  Yes.

12        Q.  So in your understanding, does that mean

13    Samsung has to supply NAND and DRAM products to

14    Netlist on Netlist's request at a competitive price?

15             MS. CHOI:  Objection.  Calls for a legal

16    conclusion.  Lacks foundation.  Calls for speculation.

17    Assumes facts not in evidence.

18             THE WITNESS:  Yes.

19    BY MS. LEE:

20        Q.  And did you ever discuss with anyone at

21    Samsung about this obligation?

22        A.  Are you talking about after this agreement

23    had been entered into?

24        Q.  Let's start with after, yes.

25        A.  No.  No one.
```

Page 96

```
 1              MS. CHOI:  Objection.  Calls for a legal

 2      conclusion and speculation.

 3              THE WITNESS:  No, I do not agree with that

 4      statement.

 5      BY MS. LEE:

 6          Q.  So your view is that the JDLA is a licensing

 7      arrangement, not a joint development project.

 8              Is that your statement?

 9              MS. CHOI:  Objection.  Misstates prior

10      testimony.  Argumentative.  Vague.

11              THE WITNESS:  To me, it was both a joint

12      development and licensing agreement.

13      BY MS. LEE:

14          Q.  Okay.  Again, earlier, you said the primary

15      purpose of the JDLA was the patent licensing of

16      Netlist's patents.  Is that not what you said?

17              MS. CHOI:  Objection.  Misstates prior

18      testimony.

19              THE WITNESS:  That's correct.

20      BY MS. LEE:

21          Q.  So was it your understanding that the NRE fee

22      should have been taxed as patent royalties, then?

23              MS. CHOI:  Objection.  Calls for a legal

24      conclusion and speculation.

25              THE WITNESS:  I don't know since I'm not an
```

Page 126

```
 1              THE WITNESS:  Yes, Samsung cooperates

 2     reasonably and collaborates, works together.

 3              MS. LEE:  Can the translator maybe clean up a

 4     little bit?  I don't think this makes sense.

 5              THE INTERPRETER:  It was a fragmented

 6     utterance, and let me clean that up.

 7              Yes, Samsung collaborates, reasonably

 8     collaborates, works together.

 9     BY MS. LEE:

10         Q.  Okay.  In your understanding, what did

11     Samsung do to cooperate reasonably or collaborate or

12     work together with Netlist on the tax refund?

13              MS. CHOI:  Objection.  Calls for a legal

14     conclusion.  Speculation.  Lacks foundation.  Assumes

15     facts not in evidence.

16              THE WITNESS:  If you are asking me what I

17     did, my answer is that I didn't do anything in that

18     regard.

19     BY MS. LEE:

20         Q.  Are you aware of anybody else at Samsung

21     doing anything to cooperate reasonably or collaborate

22     or work together with Netlist on the tax refund?

23              MS. CHOI:  Objection.  Compound.

24              THE WITNESS:  Not that I am aware of.

25     BY MS. LEE:
```

Page 133

```
1              C E R T I F I C A T E

2         I do hereby certify that the aforesaid testimony

3    was taken before me, pursuant to notice, at the time

4    and place indicated; that said deponent was by me duly

5    sworn to tell the truth, the whole truth, and nothing

6    but the truth; that the testimony of said deponent was

7    correctly recorded in machine shorthand by me and

8    thereafter transcribed under my supervision with

9    computer-aided transcription; that the deposition is a

10   true and correct record of the testimony given by the

11   witness; and that I am neither of counsel nor kin to

12   any party in said action, nor interested in the

13   outcome thereof.

14

15

16              Nancy J. Martin, RMR, CSR

17

18   Dated:  August 10, 2021

19

20   (The foregoing certification of this transcript does

21   not apply to any reproduction of the same by any

22   means, unless under the direct control and/or

23   supervision of the certifying shorthand reporter.)

24

25
                                             Page  147
```