EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
MARC E. MASTERS (SB 208375)
mmasters@birdmarella.com
DAVID I. HURWITZ (SB 174632)
dhurwitz@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
JOSEPH R. O'CONNOR (SB 274421)
joconnor@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

MICHAEL G. YODER (SB 83059)
myoder@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Defendant Samsung
Electronics Co., Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE OPINION TESTIMONY OF NETLIST EXPERT DR. MICHAEL AKEMANN**<br><br>[Filed Concurrently with Declaration of David Hurwitz and [Proposed] Order]<br><br>Date:    November 15, 2021<br>Time:    2:00 pm<br>Crtrm.:  7C<br><br>Assigned to Hon. Mark C. Scarsi<br>Courtroom 7C |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 15, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Samsung Electronics Co. Ltd. ("Samsung") will and hereby does move *in limine* for an order to preclude Dr. Michael Akemann ("Akemann"), designated as an expert by Plaintiff Netlist Inc. ("Netlist"), from testifying at the trial of this action or offering any opinions, testimonial or documentary, in this case, and may not present argument or offer testimony of Akemann or any other witness as to alleged consequential damages, including but not limited to lost profits, lost business opportunities, and PwC fees incurred to obtain a tax refund.

This Motion is made pursuant to Federal Rules of Evidence 401, 402, 403, and 702 on the grounds that Akemann's proposed testimony does not meet the standard of Rule 702 that requires an expert's opinion to be reliable, based on sufficient facts or data, and applied to the facts of the case. Specifically, Akemann does not apply a cognizable or reliable methodology in reaching his opinions; he renders opinions that are irrelevant to the issues in dispute; and he renders opinions that would be prejudicial and confuse, rather than help, the jury.

This Motion is based on this notice, the attached memorandum of points and authorities, the concurrently filed Declaration of David Hurwitz, the pleadings, records and files in this case, and such other matters that may be raised at the hearing.

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on October 11, 2021, as well as follow up correspondence after the Court's ruling on the Motions for Summary Judgment, as set forth in the Declaration of David Hurwitz.

1 | DATED:  October 25, 2021       Bird, Marella, Boxer, Wolpert, Nessim,
2 |                                 Drooks, Lincenberg & Rhow, P.C.
3
4
5 |                                 By:     */s/ David I. Hurwitz*
6 |                                         David I. Hurwitz
  |                                 Attorneys for Defendant Samsung
7 |                                 Electronics Co., Ltd.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Dr. Akemann's opinion regarding the amount of Netlist's cover damages lacks foundation, conflicts with this Court's summary judgment finding that only unfilled orders of NAND and DRAM products are recoverable as damages for breach of §6.2 of JDLA, and is based on a fundamentally flawed methodology. The Court should not allow the jury to hear this unreliable and unhelpful testimony.

First, Dr. Akemann lacks foundation for his opinion because he made no effort to determine the quantity of Netlist NAND and DRAM orders Netlist had to cover due to unfilled Samsung orders within the scope of §6.2. Instead, he simply assumes that *all* reseller transactions trace back to a supply breach, without examining whether Netlist even requested such quantity from Samsung before purchasing from a reseller—much less whether Samsung was required to fill it. Akemann's assumption does not match Netlist's theory of damage, which as the Court recognized, turns on whether "Samsung breached the JDLA by failing to fulfill orders for NAND and DRAM products" (*see* Order re Motions for Summary Judgment at 6:2-3 (ECF No. 186)). Not even Netlist contends it is entitled to cover damages for orders that were not first placed with Samsung.

Second, Dr. Akemann's opinion is not the result of a reliable methodology. He does not account for the fact that the price of the products at issue fluctuated significantly during the damages period. Rather than run a regression analysis or other statistical model to control for time, he uses a randomly selected 90-day window to calculate the price premium Netlist alleges it paid to cover. This leads to unreliable results, as the alleged price premium captures rising and falling prices over time, instead of the delta between the price Netlist would have paid had Samsung filled the order and the price Netlist actually paid to cover the unfilled order.

Third, Akemann proposes to testify about qualitative matters about which he

3753409.3

4

SAMSUNG'S MOTION IN LIMINE NO. 1 TO EXCLUDE AKEMANN OPINION

has neither foundation nor credentials, including the value of Netlist's patents and the materiality of the supply provisions in the JDLA. These opinions are irrelevant, unfounded, and unhelpful to the trier of fact.

Accordingly, Akemann should be precluded from testifying or offering any opinion at trial.

## II. LEGAL STANDARDS FOR ADMISSIBLE EXPERT EVIDENCE

Federal Rule of Evidence 702 governs the admission of expert testimony, and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The ultimate goal of Rule 702 "is to protect juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.,* 644 F.3d 604, 613 (8th Cir. 2011). "[A]ny step that renders [an expert's] analysis unreliable ... renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 745 (3d Cir.1994).

In serving its gatekeeper role, the court should consider whether the expert is qualified to provide the proffered testimony, whether the testimony is relevant, whether the testimony is useful to a finder of fact, and whether the testimony is reliable and trustworthy. *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998); *Keegan v. American Honda Motor Co., Inc.,* 284 F.R.D. 504, 514 -520 (C.D. Cal. 2012).

Expert testimony is reliable only if the expert's underlying methodology is scientifically valid. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–90 (1993); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). When an expert's methodology is unsound, the expert's testimony should be excluded. *See Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004). Thus, when applying the *Daubert* factors, the Court must continue to function as a gatekeeper who "separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (citations omitted).

The Court must focus on the "reasonableness of using [the expert's] approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 154 (1999).

As the proponents of Akemann's testimony, Netlist has the burden of proving the factual prerequisites necessary to the admissibility of that testimony by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592; *Lust By and Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility").

### III. ARGUMENT

#### A. Akemann's Cover Damages Opinion Lacks Foundation And His Assumptions Contravene This Court's Summary Judgment Order

To reach his total cover damages calculation, Dr. Akemann attempted a two-step analysis: (1) calculate the premium Netlist allegedly paid to cover unfilled Samsung orders and (2) multiply the number of units Netlist covered by the price premium he calculated. But his analysis assumes a key component of his calculation—the quantity Netlist covered due to unfilled Samsung orders. (Hurwitz Decl. Ex. 1, Akemann Report ¶ 81) ("I assume for my damages analysis that

3753409.3
6
SAMSUNG'S MOTION IN LIMINE NO. 1 TO EXCLUDE AKEMANN OPINION

liability will be established such that all reseller purchases by Netlist were caused by the alleged breach of contract."). He therefore lacks foundation to opine on total cover damages.

Expert testimony based on speculation and assumptions without a proper factual foundation must be excluded. *Payan v. Los Angeles Cmty. Coll. Dist.*, No. 2:17-CV-01697-SVW-SK, 2019 WL 8163479, at *3 (C.D. Cal. June 13, 2019) (excluding damages testimony because expert "did not adequately provide a factual basis" for lost earnings opinion); *Navarro v. Hamilton*, No. 516CV1856CASSPX, 2018 WL 4156603, at *3 (C.D. Cal. Aug. 27, 2018) (precluding expert from testifying about photograph of unknown provenance); *Tyger Const. Co. v. Pensacola Const. Co.,* 29 F.3d 137, 144 (4th Cir.1994) (trial court erred in admitting expert testimony which was "based on assumptions which find no support in the record."). Akemann merely assumed a 1-to-1 correlation between unfilled Samsung orders and Netlist's reseller orders, without analyzing the purchase orders to determine (1) the quantity Netlist ordered from Samsung, (2) the amount Samsung failed to fulfill, or (3) the amount Netlist subsequently ordered from resellers to cover the unfilled orders.

This is no mere technical deficiency. To prove cover damages, Netlist must show Samsung failed to fulfill Netlist's specific requests for NAND and DRAM products, i.e., purchase orders, and that it paid more to purchase cover from resellers when Samsung failed to supply. *See* Court's Order on Summary Judgment Motions, at 11 n. 4, ECF No. 186 (describing "Netlist's theory of breach, which is predicated on Samsung's obligation to receive and fulfill Netlist's requests, i.e., purchase orders."). Thus, under its own theory, Netlist is not entitled to cover damages on orders it never placed with Samsung. Because Dr. Akemann's opinion fails to consider the quantity of unfilled Samsung orders that Netlist actually covered, he has no basis for his ultimate opinion that Netlist suffered between $1,932,638 and $2,474,993 in cover damages. The Court should exclude it.

## B.     Akemann's Methodology Fails to Control for Time

Akemann's opinion also fails at the first step—calculating the price premium—because his methodology fails to control for price movements over time. His calculation of a price premium of either 3.6% or 4.6% is entirely dependent on his arbitrary decision to compare prices of Samsung purchases 90 days before or after reseller purchases. Courts have roundly rejected expert testimony predicated on arbitrary and unreliable methodologies such as this. *See Ollier v. Sweetwater Union High School District*, 267 F.R.D. 339, 342 (S.D. Cal. 2010) (excluding expert witness testimony where conclusion appeared to be based on personal opinion and speculation rather than on systematic assessment of athletic facilities and programs at issue); *Stokes v. John Deere Seeding Group*, No. 4:12-cv-04054-SLD-JAG, 2014 WL 675820, at *4 (C.D. Ill. Feb. 21, 2014) (excluding expert's testimony where expert's methodology in arriving at a damages figure rested on unreliable methodology); *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, No. 8:11-cv-775-T-24-TBM, 2014 WL 1779283, at *5 (M.D. Fla. May 5, 2014) (excluding expert opinion regarding an allocation of damages to the different challenged conduct based on unreliable methodology).

Even a brief look at Dr. Akemann's data reveals how prices vary dramatically within these 90-day windows he selected, and unreliably skew the price premium. The following table prepared by Samsung's expert using the same Netlist data relied on by Dr. Akemann illustrates the problem.

**Table 1: Product M393A1K43BB0-CRC Transactions**

| Seller | Invoice Date | Quantity | Price/Unit |
|---|---|---|---|
| Techtronics | 1/18/19 | 412 | $73 |
| Fusion | 1/23/19 | 650 | $77 |
| Techtronics | 1/25/19 | 1,000 | $64 |
| Techtronics | 1/25/19 | 419 | $73 |
| Samsung | 3/5/19 | 1,000 | $54 |
| Set Tech | 3/20/19 | 1,031 | $65 |
| Samsung | 4/9/19 | 500 | $49 |
| Techtronics | 4/10/19 | 700 | $49 |

*Transactions from the original table are shown in orange.*

Shown in this way, it is clear that temporal price movements account for at least some of the alleged price premium captured in Akemann's opinion. The per unit prices from Samsung and Techtronics are identical for the April 9 and 10 transactions. But Akemann's arbitrary 90-day window compares Techtronics purchases from January—made at much higher prices—to Samsung purchases in March and April, resulting in a 41.7% price premium. Given the identical prices of the Samsung and Techtronic purchases in April, the alleged price premium appears to reflect the changing market price over time, not a difference between the Samsung price and the cover price.

This time dependency can be seen by looking the transactions for the same product over time, as shown by the following graph prepared by Samsung's damages expert Douglas Kidder (President of OKSR):

Graph 2: Purchase Price Over Time



The overall price trend is clear—the price declined by about 50% between January and December 2019, then rose during 2020.

The illustration above is not unique to this product but applies to other Samsung products. *See* Hurwitz Decl. Ex. 2 (other examples for specific Samsung products).The pricing data from Akemann's report shows the same pattern of rapidly changing prices and the prices charged by both Samsung and resellers following the market trend.

Akemann could have controlled for these temporal price changes by using regression analysis, but failed to do so. Kidder ran Akemann's model using different time windows, illustrating how strongly Akemann's price premium is affected by his choice of a 90-day time window:

**Chart 3: Time Window and Akemann's Price Premium**



Accordingly, Akemann's methodology is unreliable and biased as described in the *Reference Manual on Scientific Evidence*, 2 Ed, at 138, because he does not control for the time using generally accepted statistical techniques, such as multiple regression analysis, which could have allowed him to determine the effect on time to the relationship he seeks to describe between the reseller and Samsung transactions.

A related flaw in Akemann's methodology is the absence of any measure of the statistical reliability of his estimates. Akemann provides no degree of confidence or error with his model. While he estimates a price premium of 3.6% or 4.6%, Akemann does not examine whether his calculated premiums are, in a statistical sense, different from zero.

### C. Akemann's Qualitative Opinions Lack Foundation, Are Methodologically Unsound, and Unhelpful to the Trier of Fact.

In addition to his opinion on cover damages, Akemann offers qualitative

opinions on (1) the value of Netlist's patent rights; (2) the value of the supply agreement to Netlist; and (3) other consequential harm to Netlist from the alleged breach. None of these issues are relevant for his cover damages opinion, nor any other issue that remains to be tried. Moreover, Akemann has no foundation for any of these opinions. He does little more than summarize the opinions expressed by Netlist personnel. His references to the economic literature focus of the value of vertical supply agreements, not the kind of distribution or reseller agreement that Netlist alleges here.

Moreover, he has no foundation for his opinion on the value of Netlist's patents. He relies on Netlist's initial asking price in its negotiations with Samsung and a subsequent settlement of patent infringement claims with SK Hynix; he did not make an independent valuation of the license rights, or consider any of the factors that federal courts have approved for determining the value of patents. *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970) (setting forth test for courts to consider in patent context).

In short, Akemann's qualitative opinions do little more than vouch for the testimony of Netlist's executives on the value of Netlist's patents and the supply assurance provided by the JDLA. This is not proper expert testimony.

## IV.   CONCLUSION

For all these reasons, the Court should preclude Dr. Michael Akemann from testifying at the trial of this action or offering any opinions in this case.

DATED:  October 25, 2021

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

O'Melveny & Myers LLP

By: _____*/s/ David I. Hurwitz*_____

Attorneys for Defendant Samsung Electronics Co., Ltd.

3753409.3

12

SAMSUNG'S MOTION IN LIMINE NO. 1 TO EXCLUDE AKEMANN OPINION