EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
MARC E. MASTERS (SB 208375)
mmasters@birdmarella.com
DAVID I. HURWITZ (SB 174632)
dhurwitz@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

MICHAEL G. YODER (SB 83059)
myoder@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Defendant Samsung
Electronics Co., Ltd.

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
JOSEPH R. O'CONNOR (SB 274421)
joconnor@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NETLIST INC., a Delaware
corporation,

        Plaintiff,

   vs.

SAMSUNG ELECTRONICS CO.,
LTD., a Korean corporation,

        Defendant.

CASE NO. 8:20-cv-00993-MCS-ADS

**SAMSUNG'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE, TESTIMONY AND ARGUMENT OF PURPORTED CONSEQUENTIAL DAMAGES**

[Filed Concurrently with Declaration of David Hurwitz and Proposed Order]

Date:      November 15, 2021
Time:      2:00 pm
Crtrm.:   7C

Assigned to Hon. Mark C. Scarsi
Courtroom 7C

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        PLEASE TAKE NOTICE that on November 15, 2021, at 2:00 p.m., or as

3    soon thereafter as this matter may be heard, in Courtroom 7C of the United States

4    District Court for the Central District of California, located at 350 W. 1st Street, Los

5    Angeles, CA 90012, Defendant Samsung Electronics Co. Ltd. ("Samsung") will and

6    hereby does move *in limine* for an order to preclude Plaintiff Netlist Inc. ("Netlist")

7    from arguing or offering documentary evidence, and to preclude any Netlist

8    percipient or expert witness from testifying, as to alleged consequential damages,

9    including but not limited to (1) alleged lost profits or lost opportunities; (2) alleged

10   losses incurred by Netlist as a result of the purported sale of Netlist shares; and (3)

11   professional fees charged to Netlist by PwC or any other firm incurred by Netlist for

12   the purpose of obtaining a tax refund.

13       This Motion is made pursuant to Federal Rules of Evidence 401, 402, 403, on

14   the grounds that argument, documentary evidence, and testimony regarding alleged

15   consequential damages is irrelevant and highly and unfairly prejudicial to Samsung,

16   as well as a waste of time, following the Court's Order granting in part Samsung's

17   motion for partial summary judgment precluding Netlist from recovering

18   consequential damages. Additionally, with respect to argument, documentary

19   evidence, and testimony regarding the purported sale of Netlist shares, any damages

20   would not be reasonably foreseeable and, in fact, no damages to Netlist could have

21   been incurred.

22       This Motion is based on this notice, the attached memorandum of points and

23   authorities, the concurrently filed Declaration of David Hurwitz, the pleadings,

24   records and files in this case, and such other matters that may be raised at the

25   hearing.

26       This motion is made following a conference of counsel pursuant to Local

27   Rule 7-3, which took place on October 11, 2021, at which counsel discussed

28   Samsung's motion as to the consequential damages opinions of Gail Sasaki and

1  Larry Tedesco, as well as follow up correspondence after the Court's ruling on the

2  granting Samsung partial summary judgment as to Netlist's claim to recover

3  consequential damages, as set forth in the Declaration of David Hurwitz.

4  DATED:  October 25, 2021       Bird, Marella, Boxer, Wolpert, Nessim,
                                  Drooks, Lincenberg & Rhow, P.C.
5

6                                 O'Melveny & Myers LLP

7

8
                                  By:    _/s/ David I. Hurwitz_____
9                                          David I. Hurwitz
10                                Attorneys for Defendant Samsung
                                  Electronics Co., Ltd.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Netlist should be precluded from arguing or offering evidence at trial about alleged consequential damages suffered by Netlist as a result of any breach of the Joint Development and License Agreement ("JDLA") by Samsung.

Specifically, Netlist Chief Financial Officer Sasaki testified during her deposition about two forms of purported consequential damages that Netlist allegedly suffered. First, she testified about the amount of fees paid by Netlist to PwC for consultation in connection with Netlist's efforts to obtain a refund of the taxes withheld by Samsung from the NRE payments under the JDLA and then paid to the Korean tax authority. Second, she testified that Netlist purportedly suffered more than thirty million dollars in damages because Netlist supposedly had to sell more than four million shares of stock to raise money to fund its operations when it did not receive the full $8 million NRE payment in 2015.

Netlist's damages expert Dr. Michael Akemann also included consequential damages in his report, discussing Netlist's lost profits, reputational harm, and the PwC fees incurred by Netlist in connection with the Korean tax proceedings.

Finally, Netlist's other damages expert Larry Tedesco's report quantifies Netlist's alleged future lost profits allegedly due to Samsung's breach of the JDLA.

All of these are consequential damages that are not recoverable in this case in light of this Court's summary judgment order, and thus any argument, documentary evidence, and testimony about such damages should be precluded from the trial as irrelevant to any of the issues that remain to be tried, unfairly prejudicial to Samsung, and a waste of time.

## II.    LEGAL STANDARDS FOR ADMISSIBLE EVIDENCE

Fed. R. Evid. 401 defines evidence as "relevant" if "(a) it has any tendency to make a fact more or less probable or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action" Rule 402

1  states that irrelevant evidence is not admissible.

2      In addition, Fed. R. Evid. 403 states that "The court may exclude relevant

3  evidence if its probative value is substantially outweighed by a danger of one or

4  more of the following: unfair prejudice, confusing the issues, misleading the jury,

5  undue delay, waste of time, or needlessly presenting cumulative evidence."

6  **III.   ARGUMENT**

7      **A.   Argument, Documentary Evidence, and Testimony Concerning**

8           **Consequential Damages Should be Precluded at Trial.**

9      Netlist should be precluded from offering any argument, documentary

10  evidence, or testimony from any witness on consequential damages, based on the

11  Court's entry of summary judgment precluding Netlist from recovering

12  consequential damages as a remedy for its breach claims. (Order at 21, ECF No.

13  186.)

14      Netlist's discovery responses, deposition testimony, and expert reports reveal

15  that it sought to recover the following categories of consequential damages:

16      (1) alleged future lost profits and business opportunities as discussed in the

17  Akemann Report and quantified in the Tedesco Report;

18      (2) damages allegedly suffered as a result of having to sell shares to fund its

19  ongoing operations as a result of Samsung's withholding of taxes from the $8

20  million NRE fee, only to see its share price rise after the sale. (Sasaki Depo 124:1-

21  127:7); and

22      (3) Netlist's expenses in hiring PwC to purportedly help it obtain a refund of

23  the tax withheld and paid to the Korean tax authority, for which PwC invoiced

24  Netlist over $400,000. (Sasaki Depo 128:18-129:7; Akemann Report ¶ 79.)

25      Each of these categories seek to recover *consequential* damages precluded by

26  the Court's order. *See Schonfeld v. Hilliard*, 218 F.3d 164, 175–76 (2d Cir. 2000)

27  (distinguishing "general" and "consequential" damages; 3 Dan B. Dobbs, Dobbs

28  Law of Remedies § 12.2(3) (1993)).

General damages seek recovery of "the value of the very performance promised." *Id.*

"'Special' or 'consequential' damages, on the other hand, seek to compensate a plaintiff for additional losses (*other than the value of the promised performance*) that are incurred as a result of the defendant's breach." *Id.* (emphasis added). Netlist's claims to recover damages for lost profits, lost sales, lost customers, lost opportunities, reputational harm, and stock sales are all forms of consequential damages. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) ("Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements.")

The fees paid to PwC to obtain a tax refund are also consequential damages because they are not a measure of the promised performance. The alleged promised performance was that Samsung would not withhold $1.32 million in taxes and would cooperate in any effort by Netlist to obtain a refund.  Netlist ultimately obtained that money through a refund.  The PwC fees are at most an indirect cost resulting from the alleged breaches of Section 3.2.  *See PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc*., 73 F. Supp. 3d 358, 374 (S.D.N.Y. 2014) (ruling as a matter of law that "investigative audit" fees constitute consequential damages under New York law); *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 168 A.D.3d 505, 506 (2019) (consequential damages include expenses attributable to mitigating property damage that insured suffered when insurer failed to make timely payment of claim); *Qube Films Ltd v. Padell*, No. 13-CV-8405 (AJN), 2016 WL 881128, at *6 (S.D.N.Y. Mar. 1, 2016) (under New York law, "out-of-pocket" expenses paid after party breached were consequential damages).

**B.** **Argument, Documentary Evidence, and Testimony Concerning the Purported Sale of Netlist Shares Should be Precluded at Trial for Other Reasons As Well.**

Sasaki's testimony regarding the consequential damages allegedly suffered as a result of Netlist's purported sale of shares should be excluded even absent the Court's consequential damages ruling on the grounds that such damages would not have been reasonably foreseeable to Samsung, as no one could have reasonably foreseen the issuance of new shares as a result of the non-payment of $1.32 million in withheld taxes and the purported increase in the share price, and "[i]t is well-settled that consequential damages are not recoverable in an action to recover damages for breach of contract unless the plaintiff proves that such damages were foreseeable and within the contemplation of the parties at the time the contract was made." N.Y. Pattern Jury Instr.--Civil 4:20, citing *Panasia Estates, Inc. v Hudson Ins. Co.*, 10 NY3d 200, 856 NYS2d 513, 886 NE2d 135 (2008); *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 193, 886 N.E.2d 127, 130 (2008), and other cases.

Moreover, Sasaki's lay opinion as to damages makes no sense as a matter of basic finance. Netlist could not have suffered damages from the purported rise in its share price after it supposedly had sold shares at a lower price. Netlist shareholders may have had their shareholdings diluted by that purported sale, but Netlist itself suffered no injury when it sold shares at the then market price.

## IV.    CONCLUSION

For all these reasons, the Court should preclude Netlist from arguing or offering documentary evidence at trial, and Netlist's percipient and expert witnesses should be barred from testifying at trial, as to alleged consequential damages, including but not limited to (1) alleged lost profits; (2) alleged losses incurred by Netlist as a result of the purported sale of Netlist shares; and (3) the fees charged to Netlist by PwC in connection with its efforts to obtain a tax refund.

1    DATED:  October 25, 2021          Bird, Marella, Boxer, Wolpert, Nessim,
2                                      Drooks, Lincenberg & Rhow, P.C.

3                                      O'Melveny & Myers LLP

4                                      By:  _____/s/ David I. Hurwitz_____
5                                                  David I. Hurwitz
6                                            Attorneys for Defendant Samsung
                                             Electronics Co., Ltd.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28