EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
MARC E. MASTERS (SB 208375)
mmasters@birdmarella.com
DAVID I. HURWITZ (SB 174632)
dhurwitz@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

MICHAEL G. YODER (SB 83059)
myoder@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
JOSEPH R. O'CONNOR (SB 274421)
joconnor@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendant Samsung
Electronics Co., Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS <br><br> **DEFENDANT SAMSUNG'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF  THE COURT'S ORDER RE: MOTIONS FOR SUMMARY JUDGMENT GRANTING SUMMARY JUDGMENT ON THIRD CLAIM FOR DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:     November 22, 2021 <br> Time:     9:00 a.m. <br> Crtrm.:   7C <br><br> Assigned to Hon. Mark C. Scarsi <br> Courtroom 7C |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 22, 2021, at 9:00 A.M., or as soon thereafter as this matter may be heard in the above-entitled Court, before the Honorable Mark C. Scarsi, United States District Judge for the Central District of California, Western Division, located at 350 W. 1st Street, Los Angeles, CA 90012, in Courtroom 7C, Defendant Samsung Electronics Co., Ltd. ("Samsung") will, and hereby does, move the Court pursuant to Rule 54(b), Local Rule 7-18, and the Court's inherent authority for an order reconsidering and reversing this Court's Order re: Motions for Summary Judgment and Related Applications (Dkt. 186, filed provisionally under seal on October 14, 2021 ("Order"), to the extent it grants summary judgment in favor of Plaintiff Netlist Inc. ("Netlist") on its third claim for relief, for declaratory relief.[1]  This motion does not seek reconsideration of the Order to the extent it grants summary judgment in favor of Netlist on is first claim for relief, for breach of the supply obligation, and its second claim for relief, for failing to pay the full NRE fees.  Under Federal Rule of Civil Procedure 54(b) and Local Rule 7-18, reconsideration of an order is appropriate where the moving party demonstrates "a manifest showing of a failure to consider material facts presented to the Court before such decision."  C.D. Cal. L.R. 7-18.  Here, the Court's Order reflects that, in ruling on Netlist's summary judgment motion as to the third claim for relief, the Court did not consider material facts demonstrating that there are genuine issues of material fact with respect to (i) whether the alleged breaches of the Joint Development and License Agreement ("JDLA") were material, (ii) whether Netlist satisfied the contractual conditions precedent to terminating the JDLA, and (iii) whether Netlist waived its right to terminate the JDLA.

This Motion is based on this Notice, the accompanying Memorandum of

---

[1] On October 21, 2021, Netlist and Samsung jointly reported to the Court that they do not request that any portion of the Order be sealed.  (Dkt. 189.)

Points and Authorities, all pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 18, 2022.

DATED:  October 25, 2021            O'MELVENY & MYERS LLP


By:       /s/ *Michael G. Yoder*
                    Michael G. Yoder
          Attorneys for Defendant Samsung
          Electronics Co., Ltd.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 8

I.     INTRODUCTION ........................................................................................ 8

II.    THE COURT'S SUMMARY JUDGMENT ORDER ................................. 11

III.   LEGAL STANDARD ................................................................................. 11

IV.    THE COURT FAILED TO CONSIDER MATERIAL FACTS
       SHOWING TRIABLE ISSUES AS TO WHETHER SAMSUNG'S
       ALLEGED BREACHES WERE MATERIAL ........................................... 12

       A.     Materiality Is a Multi-Factor Test That Almost Always Presents
              Questions of Fact for the Jury ....................................................... 12

       B.     The Court Failed to Consider Material Facts Showing Triable
              Issues as to Whether the Withholding of Taxes Was a Material
              Breach of the JDLA ........................................................................ 15

       C.     The Court Failed to Consider Material Facts Showing Triable
              Issues as to Whether Samsung's Purported Breach of the Supply
              Provision Was Material .................................................................. 17

V.     THE COURT FAILED TO CONSIDER MATERIAL FACTS
       SHOWING GENUINE ISSUES OF MATERIAL FACT AS TO
       WHETHER NETLIST SATISFIED THE CONDITIONS
       PRECEDENT TO TERMINATING THE JDLA ....................................... 21

VI.    THE COURT FAILED TO CONSIDER MATERIAL FACTS
       SHOWING TRIABLE ISSUES AS TO  WHETHER NETLIST
       WAIVED ITS RIGHT TO TERMINATE THE JDLA ............................... 25

VII.   CONCLUSION ........................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Water Tech v. Amiad USA*,
  2019 WL 4805330 (S.D.N.Y. 2019) .......................................................................... 14

*ARP Films, Inc. v Marvel Entertainment Group, Inc.*,
  952 F2d 643 (2d Cir. 1991) .................................................................................... 15

*Balla v. Idaho State Bd. of Corr.*,
  869 F.2d 461 (9th Cir. 1989) .................................................................................. 11

*Bear, Stearns Funding, Inc. v Interface Group-Nevada, Inc.*,
  361 F. Supp. 2d 283 (S.D.N.Y. 2005) ............................................................. passim

*City of Amsterdam Indus. Dev. Agency v. Safari Enterprises Inc.*,
  279 A.D.2d 865 (3d Dept. 2001) ............................................................................ 22

*Conant v. Alto 53, LLC*,
  21 Misc. 3d 1147(A), 880 N.Y.S.2d 223 (Sup. Ct. 2008) ..................................... 26

*Cristobal v. Siegel*,
  26 F.3d 1488 (9th Cir. 1994) .......................................................................... 14, 24

*Crowley v. Epicept Corp.*,
  547 Fed. Appx. 844 (9th Cir 2013) ........................................................................ 14

*Elmhurst Dairy, Inc. v Bartlett Dairy, Inc.*,
  97 A.D.3d 781 (2d Dept 2012) ............................................................................... 21

*F. Garofalo Elec. Co., Inc. v New York Univ.*,
  300 A.D.2d 186 (1st Dept 2002) ............................................................................ 14

*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt.*, L.P.,
  7 N.Y.3d 96 (2006) ................................................................................................. 27

*In re 4Kids Entertainment*,
  463 B.R. 610 (Bankr. S.D.N.Y 2011) ................................................................... 22

*In re Gotham Silver Co.*,
  91 F. Supp. 520 (S.D.N.Y.1950) ........................................................................... 22

*Ixe Banco, S.A. v. MBNA America Bank*,
  2009 WL 3124219 (S.D.N.Y. 2009) ....................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

*Kamco Supply Corp. v. On the Right Track, LLC*,
149 A.D.3d 275, 49 N.Y.S.3d 721 (2017) ...................................................... 27

*KLS Diversified Master Fund, L.P. v McDevitt*,
507 F. Supp. 3d 508 (S.D.N.Y. 2020) ........................................................... 16

*Kuhbier v McCartney, Verrino & Rosenberry Vested Producer Plan*,
239 F. Supp. 3d 710 (S.D.N.Y. 2017) ..................................................... 14, 18

*Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty Assoc., LLC*,
191 A.D.3d 857 (2d Dept 2021) ................................................................... 27

*Macarthur Properties I, LLC v. Galbraith*,
2018 WL 3412830 (N.Y. Sup. Ct. July 13, 2018) ........................................ 26

*Merrill Lynch & Co. Inc. v Allegheny Energy, Inc*.,
500 F.3d 171 (2d Cir. 2007) ....................................................................... 14

*Metro. Life Ins. Co. v Trujillo*,
2020 WL 2838528 (C.D. Cal. June 1, 2020) ................................................ 11

*Newmaker v. City of Fortuna*,
842 F.3d 1108 (9th Cir 2016) ..................................................................... 15

*Orange County Water Dist. v Unocal Corp*.,
2018 WL 6133719 (C.D. Cal. Apr. 10, 2018) .............................................. 12

*Pegasus Satellite Tel., Inc. v DirecTV, Inc*.,
318 F. Supp. 2d 968 (C.D. Cal. 2004) ......................................................... 12

*Process America Inc. v. Cynergy Holdings, LLC*,
839 F.3d 125 (2d Cir. 2016) .................................................... 13, 15, 16, 18

*RES Exhibit Services, LLC v. Genesis Vision, Inc*.,
155 A.D.3d 1515 (4th Dept 2017) ............................................................... 19

*Septembertide Publishing v. Stein and Day, Inc.*,
884 F.2d 675 (2d Cir. 1989) .............................................................. 15, 16, 19

*Stassa v Stassa*,
123 A.D.3d 804 (2d Dept. 201) ................................................... 26, 27, 28

*Taub v Marchesi di Barolo S.p.A*.,
480 Fed. App'x 643 (2d Cir. 2012) ............................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

*Ulla-Maija, Inc. v Kivimaki*,
 2005 WL 2429490 (S.D.N.Y. Sept. 30, 2005) .......................................................22

*United States v. Desert Gold Mining Co.*,
 433 F.2d 713 (9th Cir. 1970) ...............................................................................11

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,
 373 F.3d 241 (2d Cir 2004) ..................................................................................14

**Rules**

C.D. Cal. L.R. 7-18..............................................................................................8, 12

Fed. R. Civ. Pro. 54(b)............................................................................................8

Fed. R. Civ. Pro. 56(a).......................................................................................13, 24

SAMSUNG'S MOTION FOR RECONSIDERATION

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

In its October 14, 2021 Order Re: Motions for Summary Judgment and Related Applications (the "Order"), the Court, *inter alia*, granted summary judgment in favor of Netlist on its third claim for relief, seeking a declaratory judgment that Netlist properly terminated the parties' Joint Development and License Agreement ("JDLA").  By this Motion, Samsung requests that the Court, pursuant to its inherent authority, Federal Rule of Civil Procedure 54(b), and Local Rule 7-18, reconsider and reverse this portion of the Order on the grounds that the Court manifestly failed to consider material facts demonstrating genuine issues of material fact as to whether Netlist's termination of the JDLA was effective.  Fed R. Civ. Pro. 54(b); C.D. Cal. L.R. 7-18.[2]

***First,*** the Court failed to consider material facts showing triable issues with respect to whether Samsung's alleged breaches of the JDLA were material.  Under New York law, which governs here, whether a contract breach is material is determined based upon a multi-factor test.  It was Netlist's burden to adduce evidence showing no triable issue as to whether the alleged breaches were material, but in its briefs in support of its motion for partial summary judgment, Netlist failed to discuss any of the relevant factors under this test.  Not surprisingly, therefore, the Court failed to address any of these factors in its Order, including the impact of the claimed breaches on Netlist relative to the overall value of the agreement, how termination would result in a forfeiture of Samsung's valuable patent license, and whether the behavior of Samsung comported with standards of good faith and fair dealing.  Had the Court considered these factors, drawing all reasonable inferences

_____

[2] Although Samsung disagrees with the Court's grant of partial summary judgment in favor of Netlist on its first and second claims for relief, for breach of the supply and tax withholding terms of the JDLA, Samsung does not seek reconsideration of those rulings.

1    in favor of Samsung as the non-moving party, the Court would have had to conclude

2    there are genuine issues of material fact as to whether Samsung's alleged breaches

3    were material.  Materiality is almost always an issue for the jury, and this case is no

4    different.

5         *Second,* the Court failed to consider material facts showing triable issues with

6    respect to whether Netlist met its burden of proving that it satisfied the contractual

7    conditions precedent to terminating the JDLA.  The termination provision of the

8    JDLA—section 13.2—expressly conditions a party's right to terminate on its giving

9    notice of a material breach and allowing 30 days to cure.  A party cannot satisfy this

10   condition if it intentionally delays giving notice of a breach and fails to identify the

11   specific instances of breach or describe how to cure them in the notice, and thereby

12   denies the other party a reasonable opportunity to cure.  But that is precisely what

13   Netlist did here.  Netlist waited until May 2020 to notice numerous breaches of

14   section 6.2 of the JDLA that allegedly began in May 2017, when Netlist claims

15   Samsung failed to supply NAND and DRAM products upon Netlist's request

16   causing Netlist to incur losses by having to pay a higher price to a substitute

17   supplier.  In the notice of breach, Netlist did not specifically identify any of the

18   alleged breaches or describe how Samsung could cure them.  Had Netlist given

19   timely and informative notice of those alleged breaches when they occurred,

20   Samsung would have had the opportunity to cure by fulfilling the requests before

21   Netlist incurred cover damages.

22        Netlist similarly failed to meet its burden of showing that it properly

23   terminated the JDLA based on Samsung's withholding of taxes in 2015.  The JDLA

24   permitted Samsung to withhold taxes from an $8 million non-recurring engineering

25   ("NRE") fee if required under applicable law, which Samsung did shortly after the

26   agreement was signed.  Netlist executives shortly thereafter discussed whether to

27   notify Samsung of their view that this was a breach of the JDLA.  But they decided

28   against it, instead deciding to reap the benefits of the JDLA including the potentially

                                                9

1  "game changing" joint development project.  Netlist then abruptly reversed course
2  five years later and sent formal notice to Samsung claiming that withholding the
3  taxes and failing to cooperate in Netlist's effort to obtain a refund were breaches.
4  But by that time, Netlist was already deep into the process of petitioning the Korean
5  tax authority for a refund, which it then received soon thereafter.  At a minimum,
6  disputed issues of material fact exist as to whether, by waiting to give notice until
7  long after the alleged breaches and failing to explain in the notice the cure it was
8  seeking, Netlist failed to satisfy the conditions precedent to terminating the JDLA.

9      **Third,** the Court failed to consider material facts showing triable issues with
10  respect to whether Netlist waived its right to terminate the JDLA.  The Court found
11  the no-waiver clause in the JDLA—section 16.2— essentially dispositive of this
12  question, but failed to consider that the no-waiver clause reasonably can be read as
13  only applying to prospective breaches, not retrospective breaches.  In other words,
14  the clause reasonably can be read as saying that if a party fails to assert its rights
15  based on preceding breaches of a contract term, the party does not waive its rights
16  based on subsequent breaches of the same term.  The clause cannot be reasonably
17  read as allowing a party to resurrect a past breach and avoid waiver where the party
18  made a calculated decision not to assert the breach and to leave it dormant for an
19  extended period.  In addition, the Court failed to consider that, even under a broad
20  interpretation of the no-waiver clause, there are material facts raising a triable issue
21  as to whether the clause was waived, including the fact that Netlist not only waited
22  three plus years after the alleged breaches before seeking to terminate, but Netlist's
23  delay denied Samsung a reasonable opportunity to cure, and during this entire time
24  Netlist continued to accept the benefits of the JDLA including millions of dollars of
25  NAND and DRAM products that Samsung supplied at Netlist's request at
26  competitive prices.

27      Samsung therefore respectfully asks the Court to reconsider these findings
28  and reverse its grant of partial summary judgment in favor of Netlist on its third

1 claim for relief.

2 **II.     THE COURT'S SUMMARY JUDGMENT ORDER**

3       On October 14, 2021, the Court issued its order deciding Netlist's and

4 Samsung's cross-motions for summary judgment.  (Order, Dkt. 186, filed

5 provisionally under seal on October 14, 2021.  In granting partial summary

6 judgment in favor of Netlist on its third claim for relief, which sought a declaratory

7 judgment that Netlist had properly terminated the JDLA, the Court made three

8 critical rulings.  First, the Court found that Samsung had materially breached the

9 JDLA by (a) withholding taxes from the NRE fee, and (b) not fulfilling Netlist's

10 "requests" for NAND and DRAM components.  (*Id.* at 19:1–27.)  Second, the Court

11 found that Netlist had validly terminated the JDLA by complying with the JDLA's

12 termination provision when on May 27, 2020 Netlist notified Samsung of its

13 purported breaches and subsequently sent a notice of termination on July 15, 2020.

14 (*Id.* at 18:12–27.)  And third, the Court found that Netlist did not waive its right to

15 terminate the JDLA because the JDLA included a no-waiver provision.  (*Id.* at 20:1–

16 24.)  The effect of these rulings was a determination as a matter of law that the

17 JDLA was terminated, forfeiting all of Samsung's rights under the JDLA.  As

18 discussed below, the Court, in making these findings, manifestly failed to consider

19 material facts demonstrating that genuine issues of material fact are central to all

20 three issues.

21 **III.    LEGAL STANDARD**

22       District courts "have inherent power to modify their interlocutory orders

23 before final judgment."  *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th

24 Cir. 1989); Fed. R. Civ. P. 54(b).  This includes the authority to reconsider an order

25 on a "motion for summary judgment at any time before entry of final judgment."

26 *Metro. Life Ins. Co. v Trujillo*, 2020 WL 2838528, at *2 (C.D. Cal. June 1, 2020)

27 (citing *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970)).

28 Courts may reconsider their orders based on "clear error or [if] the initial decision

was manifestly unjust." *Orange County Water Dist. v Unocal Corp*., 2018 WL 6133719, at \*4 (C.D. Cal. Apr. 10, 2018).  In addition, under the Central District's Local Rules, reconsideration is appropriate if the movant makes "a manifest showing of a failure to consider material facts presented to the Court before such decision," C.D. Cal. L.R. 7-18, which includes situations where the Court does not fully address issues previously presented.  *Pegasus Satellite Tel., Inc. v DirecTV, Inc*., 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (Because court's summary judgment order "did not fully address [] issues[]," movant had "demonstrated a manifest showing that the Court has failed to consider material facts presented to the court")  Here, reconsideration is appropriate for at least three reasons, as discussed below.

## IV. THE COURT FAILED TO CONSIDER MATERIAL FACTS SHOWING TRIABLE ISSUES AS TO WHETHER SAMSUNG'S ALLEGED BREACHES WERE MATERIAL

The Court should reconsider its ruling that, as a matter of law, Samsung's breaches of the JDLA were material.  Under controlling New York law, whether a breach is material depends on a number of fact-specific factors, and here, the Court manifestly failed to consider material facts showing that there were triable issues of fact with respect to whether Samsung's alleged breaches of the JDLA—by withholding taxes from the NRE fee in violation of section 3.2 and by not fully meeting certain of Netlist's requests for product in violation of section 6.2—were material.

### A. <u>Materiality Is a Multi-Factor Test That Almost Always Presents Questions of Fact for the Jury</u>

Netlist's third claim for relief seeks a declaration that Netlist "terminated the JDLA pursuant to Section 13.2 and that Samsung's licenses and rights under the agreement have ceased."  (First Amend. Compl., Dkt. 23, at 8 ¶(b).)  Because the JDLA could only be terminated upon notice of a "material breach," (Order at 18:14–

19, citing JDLA, Dkt. 144-1 § 13.2), Netlist had the burden of showing that there were no genuine disputes of material fact as to whether the claimed breaches of the JDLA were "material." Fed. R. Civ. Pro. 56(a). To make that showing, Netlist was required to satisfy a multi-part, fact-specific test. Specifically, under New York law, materiality turns on "the absolute and relative magnitude of the default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefited under the contract." *Process America Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016).

The case on which the Court relies in its Order—*Bear, Stearns Funding v. Interface Group-Nevada* (Order at 19:2–14)—explains that whether a breach is material turns on five factors:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
>
> e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Bear, Stearns Funding, Inc. v Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005).

Given the fact-intensive nature of these factors, "the determination whether a material breach has occurred is generally a question of fact" that must be resolved by the jury. *Advanced Water Tech v. Amiad USA*, 2019 WL 4805330, at *5

(S.D.N.Y. Sept. 30, 2019).[3]  Failure to make an adequate assessment of these materiality factors in deciding a summary judgment motion is reversible error. *Merrill Lynch & Co. Inc. v Allegheny Energy, Inc.*, 500 F.3d 171, 187 (2d Cir. 2007) (reversing district court's grant of summary judgment because the court did not conduct "an adequate assessment of the pertinent factors to determine whether the broken warranties amounted to a material breach").[4]  The district court may not grant a summary judgment motion "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir 2004).  Moreover, the court should deny a motion for summary judgment if the movant's papers "themselves demonstrate the existence of a material issue of fact." *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 (9th Cir. 1994).

Here, the Order does not analyze any of the factors going to materiality to determine whether Netlist met its burden.  (*See* Order at 19.)  Had the Court considered the material facts in the record bearing on the materiality factors, drawing all reasonable inferences in Samsung's favor as the non-moving party,

---

[3] *See also Bear, Stearns Funding, Inc.*, 361 F. Supp. 2d at 296 ("The application of each of these elements requires fact-intensive analysis not appropriate for summary disposition."); *F. Garofalo Elec. Co., Inc. v New York Univ.*, 300 A.D.2d 186, 189 (1st Dept 2002) ("The question of whether there has been substantial performance—or a breach—is to be determined, whenever there is any doubt, by the trier of fact."); *Kuhbier v McCartney, Verrino & Rosenberry Vested Producer Plan*, 239 F. Supp. 3d 710, 735 (S.D.N.Y. 2017) ("The determination whether a material breach has occurred is generally a question of fact.").

[4] *Crowley v. Epicept Corp.*, 547 Fed. App'x 844, 846 (9th Cir 2013) (reversing district court's grant of summary judgment because whether "Plaintiffs' purported breach was material is a question of fact, making summary judgment improper") (citations omitted); *see also F. Garofalo Elec. Co., Inc.*, 300 A.D.2d at 189 ("In the face of such unresolved factual issues [over materiality], it was error for the court to grant NYU's motion for summary judgment on plaintiff's breach of contract cause of action.").

*Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir 2016), the Court would have had to conclude there are genuine issues of material fact.

**B.**     **The Court Failed to Consider Material Facts Showing Triable Issues as to Whether the Withholding of Taxes Was a Material Breach of the JDLA**

Under the JDLA, Samsung was required to pay Netlist an $8 million NRE fee, and "to the extent that any withholding taxes are required," the JDLA permitted Samsung to "deduct any applicable withholding taxes due or payable under the laws of Korea in remitting" the payment to Netlist.  (Order at 4:3–9, citing JDLA §§ 3.1, 3.2; Samsung's Statement of Genuine Disputes of Material Fact, Dkt. 168-1 ("Samsung SGDF") Nos. 27, 28.)  Samsung paid the full NRE fee except $1.32 million (16.5%), which Samsung paid to the Korean tax authority.  (Order at 4:12–13.)  The Court found that Samsung committed a material breach because Samsung was "not required by applicable law to withhold" (*id.* at 16:7–9) and it is "axiomatic that failure to pay is a material breach of contract."  (*Id.* at 19:23–27.)  But the mere fact that the tax withholding involved the non-payment of money does not *per se* amount to a material breach under New York's multi-factor test.  *Septembertide Publishing v. Stein and Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989) (failure to pay final one-third of a royalty payment was "a far cry from a total failure to pay").  Here, Samsung only withheld 16.5% of the NRE fee, and, therefore, even if one puts aside the fact that it was part of a much larger, multi-faceted agreement, the "relative magnitude of the default" was small.  *Process America Inc.*, 839 F.3d at 136.[5]

---

[5] The two cases on which the Court relied are inapplicable because neither involved the payment of incidental taxes as part of a larger agreement.  *Taub v Marchesi di Barolo S.p.A.*, 480 Fed. App'x 643, 645 (2d Cir. 2012) (taking an improper set-off by a wine importer from a wine producer); *ARP Films, Inc. v Marvel Entertainment Group, Inc.*, 952 F.2d 643, 650 (2d Cir. 1991) (failure to make licensing payments, which were the "most important obligations").

Evidence in the record also showed that the tax withholding had no effect more broadly "on the contract's purpose," *Process America Inc.*, 839 F.3d at 136, which included to allow Samsung and Netlist to jointly develop a NVDIMM-P computer memory component that Netlist billed as a "game changer" in the industry.  (Netlist's Statement of Genuine Disputes of Fact, Dkt. 171-1, ("Netlist SGDF") No. 10, 14, 15.)  Samsung and Netlist also cross-licensed their patents and released claims against each other.  (*Id.* No. 16; Samsung SGDF No. 24.)  Netlist received $15 million in financing at a 2% interest rate (Netlist SGDF No. 17) and the purported supply rights under section 6.2.  (Samsung SGDF No. 111.)  Samsung in no way interfered with any of these aspects of the JDLA by withholding taxes. Indeed, far from "defeat[ing] the object of the parties making the contract," *Septembertide Publishing*, 884 F.2d at 679, seeking a refund of withheld taxes was part of the JDLA—section 3.2 provided that Netlist may "claim a credit or refund or exemption with respect to any such withholding taxes."  (Order at 4:7–9; JDLA § 3.2.)

The Court dismissed the fact that Netlist fully recouped the withheld tax on the basis that the "time for measuring materiality is when the breached occurred." (Order at 19:19–23.)[6]  But what the Court failed to consider is "the extent to which the injured party can be adequately compensated."  *Bear, Stearns Funding*, 361 F.

---

[6] The Court relied on *KLS Diversified Master Fund, L.P. v McDevitt*, 507 F. Supp. 3d 508 (S.D.N.Y. 2020) for the proposition that materiality is determined at the time of the breach.  (Order at 19:21–22.)  That case involved a distressed debtor who failed to pay taxes after entering into a financing agreement to keep his business afloat, *McDevitt*, 507 F. Supp. 3d at 515, and then failed to make tax payments to federal and state authorities, *id.* at 546.  The court found this was a material breach despite the debtor's efforts to later settle his tax liabilities.  But that case, where the failure to pay taxes in breach of a financing agreement could jeopardize the financing, bears no resemblance to the situation here in that Samsung's payment of taxes was part of a much larger agreement that had nothing to do with taxes.

1  Supp. 2d at 296.  Here, when noticing the breach, Netlist stood to receive a full

2  refund plus interest.  (Netlist SGDF No. 78.)

3          The Court also failed to consider that Samsung had a reasonable and good

4  faith basis to withhold taxes.  *See Bear, Stearns Funding*, 361 F. Supp. 2d at 296;

5  (Netlist SGDF No. 74; Samsung SDGF No. 49.)  Indeed, the Korean tax agency

6  initially determined the tax was properly withheld.  (Samsung SGDF No. 52.)

7  Netlist then appealed, and it was determined that the tax was not required.

8  (Samsung SGDF No. 53; Netlist SGDF No. No. 78.)  While the Court considered

9  this evidence in finding that a breach occurred (Order at 15:27–16:4), it did not

10  consider whether Samsung had a reasonable and good faith basis to withhold taxes

11  for purposes of materiality.

12          The Court additionally failed to consider that termination of the JDLA would

13  result in a forfeiture of Samsung's valuable patent license, as discussed below.

14          In short, evidence in the record shows Netlist did not meet its initial burden to

15  show no genuine issues of material fact as to whether the tax withholding was a

16  material breach.  The Court manifestly failed to consider material facts in light of

17  the materiality factors and should therefore reconsider its ruling.

18      **C.      The Court Failed to Consider Material Facts Showing Triable**

19              **Issues as to Whether Samsung's Purported Breach of the Supply**

20              **Provision Was Material**

21          The Court also failed to consider material facts showing that Netlist did not

22  meet its burden of showing as a matter of law that Samsung had materially breached

23  the supply provision.  The JDLA includes a provision that "Samsung will supply

24  NAND and DRAM products to Netlist on Netlist's request a competitive price."

25  (Order at 4:1–3; JDLA § 6.2.)  The Court found that as a matter of law Samsung's

26  breach of this provision was material because, "[b]egining in 2017, Samsung

27  declined to fulfill Netlist's forecasts, requests, and orders for NAND and DRAM

28  products" (Order at 4:20–22) and, "[u]nder the unambiguous meaning of the

17

provision, the term is an integral part of the parties' agreement, one that Netlist valued highly, as demonstrated by its negotiation and post-execution conduct." (Dkt. 186 at 19:15–19.)   The Order indicates that the Court focused on evidence tending to show that Netlist believed the supply *provision* was important—e.g., "the term is an integral part of the parties' agreement, one that Netlist valued highly"— without determining whether any particular *breach was material*.  *Kuhbier*, 239 F. Supp. 3d at 735 ("The determination whether *a material breach* has occurred is generally a question of fact") (emphasis added).

For example, the Court did not consider evidence in the record showing triable issues of fact as to the "relative magnitude of the default."  *Process America Inc.*, 839 F.3d at 136.  The Order makes no findings about the extent to which Netlist was harmed aside from pointing out that Netlist believed the supply provision was important.  Here, the evidence showed that the extent of harm to Netlist was in fact a disputed issue.  In support of its motion, Netlist argued that in 2017, Samsung began "drastically cutting back the NAND and DRAM that it would provide."  (Netlist MSJ Mot., Dkt. 145, at 7:25–27.)  Netlist relied on email traffic that Samsung was "rejecting new orders" and "directed the company to minimize sales to Netlist." (Netlist MSJ, Dkt. 145, at 8:1–14.)  But other evidence showed that the amount of purported lost sales was not as dramatic as Netlist suggested and that Netlist had in fact purchased a substantial amount of NAND and DRAM products from Samsung in each quarter from 2015 through the date of contract termination, (Netlist's SGDF No. 58), and there was only one month (February 2018) where Netlist did not purchase product from Samsung.  (Netlist Summary of Invoices, Choi Ex. 51, Dkt. 187-53 at Page ID# 9508.)

To be sure, the amount that Netlist purchased from Samsung decreased in mid-2017 through mid-2018, but the amount that Netlist purchased from mid-2018 through 2019 *increased*, with Netlist purchasing more than $3 million of products in January of 2020 alone, which was Netlist's second highest amount of purchases for

18

one month during the term of the JDLA.  (Netlist Summary of Invoices, Choi Ex. 51, Dkt. 187-53 at Page ID# 9509.)  Netlist's own damages expert opined that Netlist received 67% of the dollar volume of its orders from Samsung between the second quarter of 2017 and July 15, 2020.  (Akemann Opening Report, LaMagna Ex. 76, Dkt. 171-4 ¶ 123; Netlist SGDF No. 58).  But Netlist failed to demonstrate the amount of damages it allegedly suffered as a result of these shortfalls.  Was it able to cover?  At what price?  The evidence adduced by Netlist is woefully unclear on these important questions.  There was at the very least a triable issue of fact over whether this purported harm was material.  *See Septembertide Publishing*, 884 F.2d at 679 (satisfying 67% of royalty payment was not a material breach).

Because of material issues of fact as to whether the allocation of product to Netlist was reasonable, the evidence adduced by Netlist is further unclear as to the extent to which it was deprived of a benefit that it reasonably expected.  *Bear, Stearns Funding*, 361 F. Supp. 2d at 296.  Relying on *RES Exhibit Services, LLC v. Genesis Vision, Inc*., 155 A.D.3d 1515, (4th Dept 2017), the Court found the JDLA was sufficiently definite to be enforceable because it established a "framework by which the parties would engage in such transactions."  (Order at 11:10–22.)  But that turns on whether the parties' obligations could be measured by "objective criteria[, which] may be found in the agreement itself, commercial practice, or other usage and custom."  *Id.* at 1519.  Here, Netlist made no showing that all of its "requests" for NAND and DRAM product under the JDLA were reasonable based on the commercial practice in the memory chip industry or whether its expectations for an unlimited supply were commercially reasonable.  And how can the Court say on the record before it that it is clear and substantially uncontradicted that the allocation to Netlist was unreasonable in light of commercial practice?  That is a material issue of fact that must be left for trial.

The Court also did not consider "the extent to which [Netlist could] be adequately compensated" for Samsung's purported breaches.  *Bear, Stearns*

*Funding*, 361 F. Supp. 2d at 296.  Netlist admits that it was able to "seek Samsung NAND and DRAM on the secondary market rather than purchasing directly from Samsung."  (Netlist MSJ, Dkt. 145, at 9:14–18.)  Netlist asserted that its end users could not replace a Samsung product with a Micron or Hynix product.  (*Id.* at 9 n. 3.)  But Samsung submitted evidence that in fact end users could interchange products, and that Netlist could even source Samsung products from other divisions within Samsung.  (*See* Samsung SGDF No. 10, 82.)  The fact that Netlist was able to cover its purported lost sales is evidence that Netlist could be adequately compensated for Samsung's alleged breaches without resorting to the extreme remedy of terminating the JDLA.

Further, as mentioned above, terminating the JDLA would be an extreme remedy, resulting in Samsung's forfeiture of valuable license rights, which the Court also failed to consider.  *Bear, Stearns Funding*, 361 F. Supp. 2d at 296.  The JDLA granted Samsung a license to Netlist's patents, which Netlist contended was worth $85 million.  (Netlist MSJ, Dkt. 145, at 22:24–27.)  And the record is clear that Netlist sought a declaration that the JDLA had been terminated specifically so that it can get a ruling that "Samsung's licenses and rights under the Agreement have ceased."  (First Amend. Compl., Dkt. 23, at 8 ¶(b).)  Termination of the agreement would invalidate Samsung's patent licenses, exposing Samsung to potential infringement claims from Netlist.  The Court failed to consider how this forfeiture of Samsung's valuable patent license under the JDLA weighed against a finding of materiality.

In short, the Court manifestly failed to consider material facts demonstrating genuine issues of material fact as to whether Samsung's alleged breaches of section 6.2 were material.  The Court should therefore reconsider that ruling.

**V.   THE COURT FAILED TO CONSIDER MATERIAL FACTS SHOWING GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER NETLIST SATISFIED THE CONDITIONS PRECEDENT TO TERMINATING THE JDLA**

In the Order, the Court ruled that Netlist showed as a matter of law that it complied with the JDLA's termination provision because "Netlist sent Samsung a letter terminating the JDLA on July 15, 2020," and that as a result, "Netlist's termination comports with the JDLA's termination method." (Order at 18:12–27.) Under section 13.2, to terminate the agreement, Netlist had to provide notice to Samsung that it was "in material breach of [the] Agreement" and show that such breach "is not cured within thirty (30) days from [Netlist's] written demand." (Order at 18:14–19, citing JDLA § 13.2.) Under New York law, the notice of breach also had to meet timeliness and content requirements. Netlist failed to meet its burden as the moving party of showing no triable issues as to whether it met those requirements, and the Court manifestly failed to consider material facts showing that triable issues exist as to whether Netlist met those requirements and thus satisfied the conditions precedent to terminating.

Netlist had to provide timely notice of breach in order to terminate. The purpose of section 13.2 is to give the alleged breaching party notice of the alleged material breach in a manner that indicates that the other party is moving toward terminating and to give the alleged breaching party a period to cure. That purpose is defeated, however, if the party asserting a material breach delays giving notice of the breach and thereby deprives the other party of a reasonable opportunity to cure. Under New York law, "[i]mplicit in every contract is a covenant of good faith and fair dealing which encompasses any promise that a reasonable promisee would understand to be included." *Elmhurst Dairy, Inc. v Bartlett Dairy, Inc.*, 97 A.D.3d 781, 784 (2d Dept 2012). And it prohibits a contracting party from taking actions that "deprive the other party of the fruit or benefit of its bargain." *Id.* Here, Samsung negotiated for and had the right to avoid termination of the JDLA, including its license rights, by curing any claimed breach, and it had the right to

21

notice of any breach to allow it 30 days to cure.  The implied covenant required Netlist, as a condition precedent to termination of the JDLA, to give such notice in a timely manner, and at a minimum there are triable issues of fact as to whether Netlist did.  *See In re Gotham Silver Co.*, 91 F. Supp. 520, 524 (S.D.N.Y.1950) ("Notice following a lapse of over thirteen months after acceptance, and of over eighteen months from the time [the] buyer ought to have known of the breach is not, in the absence of unusual circumstances, given within a reasonable time").  Thus, in seeking to terminate the JDLA, Netlist could not satisfy the conditions precent by delaying giving notice of breach such that Samsung was deprived of a reasonable opportunity to cure.

Netlist also had to provide an informative notice of breach in order to terminate.  It is "fundamental" that "contractually-required notices of breach must provide sufficient information for the noticed party to determine what steps were necessary to cure the alleged breaches."  *In re 4Kids Entertainment*, 463 B.R. 610, 682 (Bankr. S.D.N.Y 2011).  For example, in *Ulla-Maija, Inc. v Kivimaki*, the court found as a matter of law that a license agreement **had *not*** been terminated because the breach and termination letter "was stated in terms so general as to be meaningless insofar as providing an opportunity to cure" and therefore "wholly lacking in the essential feature required by the License Agreement—i.e., providing a 30-day period to cure defects."  2005 WL 2429490, at *4–5 (S.D.N.Y. Sept. 30, 2005).[7]

Here, the Court did not consider material issues of disputed fact as to whether Netlist met its burden to show that it gave timely and informative notice of breach

---

[7] *See also City of Amsterdam Indus. Dev. Agency v. Safari Enterprises Inc*., 279 A.D.2d 865, 866 (3d Dept. 2001) (summary judgment on whether plaintiff complied with notification provision terminating lease overturned because notices of breach failed to specify delinquent amount of rent due and failed to notify defendant of the payment that was required under the agreement).

when seeking to terminate.  With respect to Samsung's alleged breach of the tax withholding provision of section 3.2, Samsung paid those taxes in 2015 shortly after the JDLA was signed.  (Order at 4:12–13.)  Netlist executives internally discussed whether to provide notice of breach over the tax withholding dispute on March 4, 2016, but decided not to send a breach notice because Netlist wanted to reap the benefits of its business relationship with Samsung, which it then did for several years.  (Netlist SGDF No. 84.)  Netlist then sent a notice of breach nearly four years later in 2020.  (Samsung SGDF No. 125.)  But by that time, Netlist had been working with PricewaterhouseCoopers since 2015 to handle the case for Netlist. (Sasaki Decl., Dkt. 145-1, ¶ 3.)  Had Netlist provided timely notice of breach, Samsung would have had an opportunity to avoid that expense.  The content of the notice of breach was also deficient because it failed to demand what Samsung needed to do to cure.  In the Order, the Court manifestly failed to consider these material facts.  Had the Court done so, it would have had to conclude there are genuine issues of material fact over whether Netlist met the conditions precedent to termination based on breaches of section 3.2.

Similarly, the Court manifestly failed to consider material facts showing genuine issues of material fact over whether Netlist provided timely and informative notice of the breaches of the supply obligation as required to meet the conditions precedent to termination.  Netlist contends that Samsung began breaching the supply obligation in the JDLA in 2017.  (Netlist MSJ, Dkt. 145, at 7:25–10:17.)  But Netlist did not provide notice to Samsung that it was in breach until May 2020.  (*See* Samsung SGDF No. 125.)  By then, Netlist had already purportedly incurred cover damages by purchasing NAND and DRAM products from alternate suppliers at a higher price.  (Netlist MSJ, Dkt. 145, at 9:14–10:4.)  Had Netlist given timely notice of these purported breaches, Samsung would have had an opportunity to cure by meeting the unfulfilled product requests.  While the JDLA does not by its terms include a time limit on notifying the other party of a breach, the parties were under

23

an "obligation to help facilitate the other's performance." *Ixe Banco, S.A. v. MBNA America Bank*, 2009 WL 3124219, at *5 (S.D.N.Y. Sept. 29, 2009).  But here, at a minimum, material disputed facts exist as to whether Netlist's failure to provide timely notice deprived Samsung of a fair opportunity to cure any purported breaches.

Nor did Netlist identify in the notice any specific breaches that it demanded that Samsung cure.  Netlist's May 27, 2020 notice of breach vaguely states that Samsung "repeatedly failed to fulfill Netlist's requests for NAND and DRAM products throughout the term of the Agreement."  (Dkt. 145-41, LaMagna Ex. 41 at Page ID# 3054.)  But its letter does not identify any specific breaches, when or how they occurred, or any action that Samsung could take to cure.[8]  As a result of Netlist's failure to identify any specific breaches or a potential cure in the notice of breach, there are additional triable issues as to whether Netlist met the conditions precent to terminating.

In its motion for partial summary judgment, it was Netlist's burden to explain, and adduce evidence showing, that there were no genuine issues of material fact that it met the conditions precedent to terminating.  Fed. R. Civ. Pro. 56(a); *Cristobal v. Siegel*, 26 F.3d at 1494-95.  Netlist failed to address the requirements for timeliness and content under New York law despite its burden.  The Order indicates that the Court manifestly failed to consider material facts showing the existence of genuine issues of material fact as to whether Netlist met those requirements.  Accordingly,

---

[8] The notification letter states that it was enclosing "a Copy of the Complaint" that had been filed in this case.  But that in no way means that Netlist had provided Samsung sufficient detail to determine what steps it could take to cure.  First, the initial complaint in this case also lacked sufficient detail, merely alleging in general and vague terms that "in 2018, Samsung began not to fulfill Netlist's requests"—the complaint does not identify any specific requests or what Samsung could have done to cure.  (Compl., Dkt. 1.)  Second, and in any event, the summary judgment record does not reflect that the complaint was actually enclosed with the letter.

1  the Court should reconsider the Order on this ground.

2
3  **VI.  THE COURT FAILED TO CONSIDER MATERIAL FACTS SHOWING TRIABLE ISSUES AS TO WHETHER NETLIST WAIVED ITS RIGHT TO TERMINATE THE JDLA**

4  In its Order, the Court found as a matter of law that Netlist had not waived its
5  right to terminate the JDLA "by delaying until years after the initial breaches."
6  (Order at 20:2–3.)  In coming to this conclusion, the Court primarily relied on the
7  fact that the JDLA included a "no-waiver provision."  The Order points out that
8  there was evidence in the record that "Netlist had not complained about NAND and
9  DRAM supply issues and had not acted on the purported breach for years." (*Id.* at
10  20:17–20.)  The Court found, however, that these "facts might be probative of a
11  wavier absent the [no-waiver] provision, but they do not evince an 'unmistakably
12  manifested intent to waive the no-waiver provision." (*Id.* at 20:21–24.)  The Court
13  should reconsider this ruling as well.

14  As a threshold matter, Netlist only argued that the no-waiver provision
15  applied in this case *in its opposition* to Samsung's motion for summary judgment.
16  (Netlist Opp., Dkt. 171, at 25:13–25.)  Netlist did not raise the no-wavier clause in
17  its opening brief in support of its motion for summary judgment (Netlist MSJ Mot.,
18  Dkt. 145) or its reply in support of its summary judgment motion (Netlist Reply,
19  Dkt. 178).  Netlist did not therefore even attempt to establish its burden that the no-
20  wavier provision applied as a matter of law—only that there were questions of
21  triable fact that defeated Samsung's summary judgment motion.  In Samsung's brief
22  in opposition to summary judgment, Samsung argued that the no-waiver clause was
23  waived in anticipation that Netlist would raise the clause, (Samsung Opp., Dkt. 168
24  at 30:22–31:2), but Netlist did not do so.  Yet the Court on its own still found as
25  matter of law that the no-wavier provision applied, (Order at 20:2–24), and as a
26  result did not consider evidence showing that there were at the very least issues of
27  material fact for the jury to decide.

28  First, the Court did not consider that the language of the no-waiver provision

indicates that it only applies to prospective breaches, not retrospective breaches.
The no-waiver provision states that the "the failure by either party to enforce any of
the terms and conditions of this Agreement shall not constitute a waiver of such
Party's right thereafter to enforce that or any other terms and conditions of this
Agreement." (Order at 20:8–11, JDLA §16.2.)  This provision reasonably can be
read as saying that a party's failure to enforce the termination provision in the JDLA
when there was a past material breach would not waive that party's right to enforce
the termination provision when there was a future material breach.  But here, the
Court allowed Netlist to use purported breaches of the JDLA from 2017 as a basis to
terminate the JDLA in 2020.  The Court failed to consider that the no-waiver
provision is narrow and does not avoid a waiver of retrospective breaches.

New York courts consistently apply this same narrow interpretation to similar
no-waiver clauses.  For example, in *Macarthur Properties I, LLC v. Galbraith*, the
court found that while a similar no-waiver provision may have applied
prospectively, the parties' "extended court of conduct" created an issue of fact over
whether the condominium board waived the right to recover past due fees.  2018
WL 3412830, at *5 (N.Y. Sup. Ct. July 13, 2018); *see also Conant v. Alto 53, LLC*,
21 Misc. 3d 1147(A), at *8, 880 N.Y.S.2d 223 (Sup. Ct. 2008) (plaintiff may have
"retain[ed] the option to terminate the contract for future breaches even where [he]
waived the payment provisions as to past breaches").

Second, even if the no-waiver provision were broadly construed and
applicable in this case, the Court's ruling still failed to consider material facts
creating at the very least a triable issue over whether Netlist waived the right to
terminate.  Waiver "is the voluntary and intentional relinquishment of a contract
right" and may be "accomplished by affirmative conduct or failure to act so as to
evince an intent not to claim the purported advantage." *Stassa v Stassa*, 123 A.D.3d
804, 806 (2d Dept. 201).  Generally, "the existence of an intent to forgo such a right
is a question of fact." *Fundamental Portfolio Advisors, Inc. v Tocqueville Asset*

26

1    *Mgt., L.P.*, 7 N.Y.3d 96, 104 (2006).  Importantly, the "mere existence of a

2    nonwaiver clause does not preclude waiver of a contract clause." *Stassa*, 123

3    A.D.3d at 806; *Long Is. Med. & Gastroenterology Assoc., P.C. v Mocha Realty*

4    *Assoc., LLC,* 191 A.D.3d 857 (2d Dept 2021) (a nonwaiver clause does not preclude

5    a finding of waiver").  For example, in *Kamco Supply Corp. v. On the Right Track,*

6    *LLC*, the court found that a seller of construction equipment could not rely on a no-

7    waiver clause in a supply contract because of the buyer's "persistent and repeated

8    failure to meet minimum purchase requirements, coupled with the [seller's]

9    continued acceptance of such conduct without any reservation or protest until a few

10   weeks before the expiration of the agreements (by which time it was of course too

11   late to insist upon strict compliance with the terms of the agreements)."  149 A.D.3d

12   275, 285–86 (2017).

13        Here, Netlist should similarly not be permitted to rely on the no-waiver

14   provision to shield it from its clear choice to forego notifying Samsung of its

15   purported breaches.  As for of the alleged breach of the tax withholding provision

16   section 3.2, the evidence showed that Netlist executives decided not to send a notice

17   of breach as early as March 2016 so that Netlist could continue benefiting from the

18   JDLA, which it then did for years.  (Netlist SGDF No. 84.)  As for the supply

19   obligation, Netlist apparently believed Samsung had breached in 2017, but did not

20   take any legal action—whether to terminate the JDLA or notify Samsung that

21   Netlist intended to sue for damages—until 2020.  All the while Netlist had for years

22   accepted the benefits of the JDLA, including, according to Netlist's interpretation of

23   section 6.2, by regularly purchasing NAND and DRAM products from Samsung at a

24   competitive price, adding to millions of dollars in purchases.   (Netlist Summary of

25   Invoices, Choi Ex. 51, Dkt. 187-53.)  The Court found that because there was a no-

26   wavier provision, these facts were not "probative."  But the "mere existence of a

27   nonwaiver clause does not preclude waiver of a contract clause." *Stassa*, 123

28   A.D.3d at 806.  Because the Court manifestly did not consider the scope of the no-

1  waiver clause or these other material facts, which create genuine issues of material
2  fact as to whether Netlist waived the right to terminate, the Court should reconsider
3  this ruling.

4  **VII.   CONCLUSION**

6       For all the foregoing reasons, the Court should reconsider and reverse its
7  grant of summary judgment in favor of Netlist on its third claim for relief, for
8  declaratory relief.

10  DATED:  October 25, 2021            O'MELVENY & MYERS LLP

13                                     By:    /s/ *Michael G. Yoder*
14                                          Michael G. Yoder
                                            Attorneys for Defendant Samsung
15                                          Electronics Co., Ltd.