1  JASON LO, SBN 219030
     jlo@gibsondunn.com
2  RAYMOND A. LAMAGNA, SBN 244821
     rlamagna@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
4  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
5  Facsimile:   213.229.7520

6  MATTHEW BENJAMIN, SBN 4533246
     mbenjamin@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
8  New York, NY  10166-0193
   Telephone:  212.351.4000
9  Facsimile:   212.351.4035

JASON SHEASBY, SBN 205455
  jsheasby@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
LOS ANGELES, CA 90067
Telephone:  310.203.7096
Facsimile:   310.203.7199

10 Attorneys for Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS COL, LTD., a Korean corporation,<br><br>　　　　Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**NETLIST INC.'S NOTICE OF MOTIONS AND MOTIONS IN LIMINE**<br><br>[Filed Concurrently with Declaration of Raymond LaMagna and [Proposed] Order]<br><br>Before Judge Mark C. Scarsi<br><br>**Final Pretrial Conference:**<br>Date:   November 15, 2021<br>Time:   2 p.m. PT<br><br>**Trial:** November 30, 2021 |

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE** that on November 15, 2021, at 2:00 p.m., or as soon

3    thereafter as this matter may be heard, in Courtroom 7C of the United States District

4    Court for the Central District of California, located at 350 W. 1st Street, Los Angeles,

5    CA 90012, Plaintiff Netlist Inc. will and hereby does move *in limine* for orders to

6    exclude from the testimony, presentations, and argument of Defendant Samsung

7    Electronics Co. Ltd. ("Samsung") and its witness and counsel the following:

8        **1.**   Any argument or evidence suggesting that Netlist terminated or desired

9              to terminate the JDLA so it can sue for patent infringement or concerning

10             collateral litigations or patent challenges between the parties;

11       **2.**   Any argument or evidence that damages should be limited because of

12             Netlist's credit worthiness, credit rating, or payment history with

13             Samsung;

14       **3.**   Any argument or evidence that damages should be limited because

15             Samsung was prevented from performing because of the impossibility or

16             impracticability of performance;

17       **4.**   Any argument or evidence that Samsung's sales practices with Netlist

18             before or after the JDLA should limit damages during the JDLA;

19       **5.**   The testimony of Mr. Joseph McAlexander.

20       These motions are made pursuant to Federal Rules of Evidence 401, 402, 403,

21   and 702, the authority and argument as presented in the following memorandum, the

22   exhibits filed herewith, the pleadings in this case, and such other matters as may be

23   raised at the upcoming Final Pretrial Conference and hearing.  The material sought to

24   be excluded is irrelevant and/or prejudicial to Netlist.  If these irrelevant matters were

25   brought to the attention of the jury, the jury would be confused and Netlist would be

26   unduly prejudiced in a way that could not be cured by any instruction to the jury.

27

28

1    These motions are made following a conference of counsel pursuant to L.R. 7-3

2    which took place on October 11, 2021, as well as follow up discussions of counsel

3    thereafter.

4    Dated:  October 25, 2021                    GIBSON, DUNN & CRUTCHER LLP

5

6                                                        By:  /s/ *Jason C. Lo*
                                                         Jason C. Lo
7                                                        333 South Grand Avenue
                                                         Los Angeles, CA 90071
8                                                        213.229.7000
                                                         jlo@gibsondunn.com
9
                                                         Attorneys for Plaintiff Netlist Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Netlist submits these motions *in limine* pursuant to the Court's *Order*

2    *Re: Jury Trial*, Dkt. 41, and Local Rule 16-4.  These motions are made following a

3    conference of counsel pursuant to L.R. 7-3 which took place on October 11, 2021.

4    **I.      Exclude Any Argument or Evidence Suggesting Netlist Terminated or**

5    **Desired to Terminate the JDLA so It Can Sue for Patent Infringement**

6    Pursuant to the Court's Summary Judgment Order (Dkt. 186), the only issue left

7    to be tried is damages.  Any argument or evidence as to why Netlist terminated or

8    desired to terminate the JDLA is irrelevant, and can only confuse and mislead the jury.

9    Evidence is only relevant if it proves or disproves a disputed fact of

10   consequence.  Fed. R. Evid. 401.  And "[e]vidence which is not relevant is not

11   admissible."  Fed. R. Evid. 402.  The Court ruled that Netlist properly terminated the

12   JDLA in response to Samsung's multiple material breaches.  And Netlist's reasoning

13   for terminating the contract—whatever it may be—has no bearing on how much

14   Samsung must pay for its breaches.  Were this a relevant input into damages, one

15   would expect that either Dr. Akemann or Mr. Kidder (Netlist's and Samsung's

16   economics experts, respectively) would have discussed the matter.  Neither did so.

17   Besides being irrelevant, such argument or testimony threatens to cast Netlist in

18   a negative light for no relevant reason.  Parties often attempt to impose a derogatory

19   characterization of patent owners, such as Netlist.  Courts typically forbid such tactics.

20   *See*, *e.g.*, *SPEX Techs. v. Apricorn, Inc*, No. CV 16-07349-JVS, 2020 WL 1289546, at

21   *2 (C.D. Cal. Jan. 21, 2020) ("Short of patent abuse, the manner in which [the

22   plaintiff] acquired its intellectual property and how it lawfully enforces its right is

23   irrelevant.").  Federal Rule of Evidence Rule 403 states that, even if relevant (although

24   that is not the case here) "evidence may be excluded if its probative value is

25   substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

26   misleading the jury."  The prejudicial impact of any argument or evidence suggesting

27   Netlist's motivation to terminate the JDLA—for example, to sue for patent

28   infringement—outweighs any probative value Samsung may argue it has.  Worse, such

NETLIST INC.'S MOTIONS IN LIMINE
CASE NO. 8:20-CV-993-MCS (ADS)

1    argument could have an inflammatory effect and skew the jury's perception on

2    damages in a manner that is not curable by cross-examination, the damage having been

3    done (as Samsung apparently intends).

4         For similar reasons, the Court should also exclude reference to the retaliatory

5    lawsuit Samsung filed challenging the scope of Netlist's patents in the District of

6    Delaware on October 15, 2021, just a day after this Court ruled on the parties' motions

7    for summary judgment (as well as parallel patent challenges filed in the Patent Office).

8    Any evidence of Samsung's challenges to Netlist's patents is irrelevant and would

9    confuse the jury as to whether this Court's decision is being questioned in other

10   forums.  This is particularly true given that the jury will not be provided with a full

11   context of those *other* matters.  *See, e.g.*, *HTC Corp. v. Tech. Properties Ltd*., No.

12   5:08-CV-00882-PSG, 2013 WL 4782598, at *3 (N.D. Cal. Sept. 6, 2013) ("Although

13   the court does agree that this district's jury pool is quite capable, it cannot countenance

14   the likely confusion that will result upon admission of evidence of a co-pending

15   investigation at the ITC on this litigation."); *Novartis Pharm. Corp. v. Teva Pharm.*

16   *USA, Inc.*, No. 05-CV-1887, 2009 WL 3754170, at *9 (D.N.J. Nov. 5, 2009)

17   (excluding evidence of collateral litigations as "likely to result in unfair prejudice,

18   confusion and undue delay").

19        For the foregoing reasons, Netlist respectfully requests that the Court issue an

20   order precluding Samsung, including its counsel and witnesses, from introducing any

21   argument or evidence as to why Netlist terminated or desired to terminate the JDLA, or

22   regarding collateral patent disputes between the companies.

23   **II.    Exclude Any Argument or Evidence of Netlist's Credit Worthiness, Credit**

24          **Rating or Limit, or Payment History with Samsung**

25        Samsung seeks to introduce evidence of Netlist's credit worthiness, credit rating

26   or limit, or payment history under the purported theory that this evidence is relevant to

27   the *damages* Netlist suffered from Samsung's breaches of the JDLA.  The introduction

28   of such evidence, however, is a disingenuous attempt to relitigate this Court's ruling

1    that Samsung breached the JDLA supply provision, and an improper effort to persuade

2    the jury that, even if there was a breach, Netlist should not be entitled to the significant

3    damages it suffered.

4         Samsung has indicated that it will argue that its breaches of the JDLA supply

5    provision should be excused because, at various times, Netlist had an overdue invoice

6    owing to Samsung or had reached its credit limit.  But, setting aside whether these

7    assertions are accurate,[1] these are defenses *to breach* (i.e., defenses to excuse

8    performance).  These are facts or defenses that should have been raised in opposition

9    to Netlist's summary judgment motion (but were not and are thus waived).  The Court

10   ruled on that motion and found that Samsung breached the supply obligation in the

11   JDLA.  Dkt. 186 at 22.  As such, the only remaining issue on this claim is *the amount*

12   of general damages Netlist suffered from that breach, *not whether* a breach occurred.

13        Netlist's credit worthiness, credit rating, or payment history with Samsung bear

14   no relevance on the *damages* Netlist suffered—neither party's economic expert even

15   mentions the issue.  Whether Netlist had a good or bad credit rating does not change

16   *the amount of damages* caused by Samsung's failure to supply it with NAND and

17   DRAM products.  Similarly, whether Netlist was late on some payments has nothing to

18   do with the *damages* suffered from the breach the Court already found.  Samsung has

19   not articulated any reason why this evidence has a "tendency to make" <u>the amount</u> of

20   Netlist's damages "more or less probable than it would be without the evidence."  This

21   evidence is irrelevant and should not be admitted.

22        Not only is evidence of Netlist's credit worthiness, credit rating, and payment

23   history not relevant, but its probative value (which is null) also is substantially

24   outweighed by the danger of unfair prejudice and confusing the issues.  *See* Fed. R.

25

26

27
     _____

28   [1]   On its face, Samsung's supply obligation under the JDLA did not depend on
          Netlist's credit worthiness, credit rating, or payment history with Samsung, nor
          excluded Netlist from paying cash up-front for purchases (i.e., without credit).

1   Evid. 403. Samsung seeks to introduce this irrelevant evidence for the sole reason that

2   it will serve to confuse the issues and the jury.

3        For instance, Samsung may try to argue that, because Netlist might have paid

4   Samsung late on a few invoices over the years, Netlist should not be permitted to

5   recover damages for Samsung's breach because Samsung did not then have to supply

6   NAND or DRAM products to Netlist.  The problem is that the Court already found that

7   Samsung *did* have to supply Netlist—these other arguments are simply an attempt at a

8   do-over on the Court's substantive ruling on breach.  Detailing Netlist's credit

9   worthiness, credit rating, and payment history will only cause the jury to confuse the

10  issues and believe this evidence bears some relevance to Netlist's damages—it does

11  not.  It simply ignores the Court's ruling and seeks to relitigate it.

12       Defendant cannot seek to introduce evidence in the sheer hopes that it will cast a

13  negative light on Netlist and convince the jury limit its damages award.  Introducing

14  evidence for that purpose would be unfairly prejudicial to Netlist.  Given the complete

15  lack of probative value, the evidence should be excluded.

16       Netlist respectfully requests that the Court exclude any argument or evidence of

17  Netlist's credit worthiness, credit rating, or payment history with Samsung.

18  **III.    Exclude Any Argument or Evidence that Samsung Was Prevented from**

19  **Performing Because of the Impossibility or Impracticability of Doing So**

20       Netlist understands that Samsung intends to attempt to avoid liability for its

21  breach of the JDLA supply provision by arguing that Samsung's performance was

22  variously impracticable or impossible.  For example, Samsung intends to argue that

23  Netlist cannot recover because it purportedly was impractical or impossible for

24  Samsung to fill Netlist's orders due to industry chip "shortages" or demands of other

25  customers, etc.  Such arguments pose multiple problems, each of which independently

26  requires exclusion.

27       First, Samsung never even asserted the defenses of impracticality or

28  impossibility in its Answer to Netlist's First Amended Complaint (the operative

1    pleading).  *See* Dkt. 27 at pp. 4–8.  Samsung cannot bring argument or evidence to the

2    jury on defenses that it never asserted in the case in the first instance.

3         Second, contract defenses sounding in impracticability and impossibility go to

4    the question of breach (i.e., whether the performance is excused).[2]  In fact, Samsung

5    argued on summary judgment that "[t]he fact Samsung could not fulfill all of Netlist's

6    orders was not a breach of the agreement." Dkt. 150 at 22.[3]  But the Court rejected that

7    argument and ruled that Samsung had breached the JDLA.  Dkt. 186 at 10, 15, 22.

8    Samsung now seeks to avoid the Court's prior order and relitigate breach.[4]  Samsung

9    cannot, however, pursue arguments that ignore and conflict with the Court's decision.

10        That Samsung may have had other customers who wanted to buy the same

11   products as Netlist, or that such products may have been from time to time in short

12   supply, is irrelevant—as the Court already ruled, Netlist had a contract with Samsung

13   obligating it to sell such products to Netlist.  Dkt. 186 at 9 ("Samsung was obliged to

14   'supply NAND and DRAM products to Netlist on Netlist's request. . .'"). Whether this

15   was at times uncomfortable or impractical for Samsung (e.g., because it would have

16   preferred to sell to other larger customers), or "impossible" (e.g., because Samsung in

17   fact sold products Netlist ordered to other customers instead) is irrelevant.  And

18   "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.

19

20

21   [2]  *See Kel Kim Corp. v. Cent. Markets, Inc.*, 70 N.Y.2d 900, 902 (1987) (describing "narrow[]" defense of impossibility as limited to excusing a party's performance); Williston on Contracts § 77:1 (4th ed. 2021) ("Impossibility is a common law contract doctrine that excuses what would otherwise be a breach of contract under very limited and narrowly-defined circumstances."); 28A N.Y. Prac., Contract Law § 20:11 (defining impracticability as an excuse to performance).

22

23

24   [3]  *See also* Dkt. 168 at 21; Dkt. 168-1 at 38, 39–40, 42, 49 (fact nos. 62, 63, 66, 74); Dkt. 150 at 13 (noting supply limits and allocations); Dkt. 150-8 at ¶¶ 4–8 (same).

25

26   [4]  In Samsung's responses to Netlist's interrogatories, Samsung also explained that its supply limitations "defense" supported its "position that Samsung has no supply obligation to Netlist under the Agreement." *See* Ex. C at Interrog. 10 at pp. 10:14–15, 11:23–34, 13:23–26 (asserting "supply is strictly limited and shortages are common").  But the Court ruled on summary judgment that "Samsung was obliged to 'supply NAND and DRAM products to Netlist on Netlist's request.'" Dkt. 186 at 9.  Samsung cannot now reargue either contract construction or breach.

27

28

NETLIST INC.'S MOTIONS IN LIMINE
                                     CASE NO. 8:20-CV-993-MCS (ADS)

1    Moreover, the probative value here (which is null) is substantially outweighed

2    by the danger of unfair prejudice and confusion of issues.  *See* Fed. R. Evid. 403.

3    Arguing to the jury that it was, for example, "difficult" to fill Netlist's orders, will no

4    doubt confuse the jury into thinking that Samsung's performance was excused, which

5    conflicts with the Court's ruling that Samsung materially breached the JDLA.  Dkt.

6    186 at 22.  It would no doubt also confuse the jury into thinking that Samsung had a

7    defense (impracticability or impossibility) that Samsung simply did not plead.

8    Netlist therefore respectfully requests that the Court exclude any argument or

9    evidence that Samsung's provision of NAND or DRAM products to Netlist on

10   Netlist's requests was impractical or impossible.

11   **IV.    Exclude Any Argument or Evidence that Samsung's Sales Practices with**

12   **Netlist Before or After the JDLA Should Limit Damages During the JDLA**

13   Samsung has also stated that it intends to argue that its sales practices with

14   Netlist either before the effective date of the JDLA (Nov. 12, 2015) or after its

15   termination (July 15, 2020) reduces Samsung's liability and Netlist's damages.  For

16   example, Samsung states that will argue that, because Samsung would refuse or fail to

17   fulfill orders prior to entering the JDLA, Samsung cannot be liable for refusing or

18   failing to fulfill orders *during* the term of the JDLA.  But again, this simply ignores the

19   Court's summary judgment order and tries to relitigate the Court's ruling on breach.

20   On summary judgment, Samsung argued that it could not be liable for breach

21   and that the Court could not construe the JDLA as containing a binding supply

22   obligation because, when the parties transacted sales on an at-will basis before the

23   JDLA, Samsung would refuse or cancel orders.  *See, e.g.*, Dkt. 168-1 at 37, 39, 41, 45,

24   47 [fact nos. 61, 63, 64, 66, 71, and 74] (suggesting the parties' pre-JDLA practices

25   indicated that Netlist knew its orders would not always be filled); Dkt. 150 at 23

26   ("Netlist's use of purchase orders [before] the JDLA's execution provides another

27   basis to dismiss Netlist's interpretation of Section 6.2.").  This, of course, was

28   irrelevant even on that posture—how the parties transacted business *without* a supply

1    contract does not inform how Samsung need act *with* a supply contract in place.  But

2    regardless, the Court ruled that under JDLA § 6.2 "Samsung was obliged to "supply

3    NAND and DRAM products to Netlist on Netlist's request" and that "Samsung

4    breached JDLA § 6.2."  Dkt. 186 at 9–10.  Samsung cannot argue to the contrary now.

5            Nor is Samsung's conduct before or after the JDLA relevant to Netlist's

6    damages for Samsung's failure to supply product *during* the term of the JDLA.  The

7    only remaining question for trial with respect to Netlist's claim for breach of the JDLA

8    supply provision is the quantum of damages.  Whether Samsung refused or cancelled

9    orders in the years before or after the JDLA has no bearing on the quantum of damages

10   in this case and is inadmissible.  Fed. R. Evid. 402.  It can only serve to improperly

11   confuse the jury as to the Court's construction of the JDLA supply provision and as to

12   the Court's finding of breach—it is therefore inadmissible.  Fed. R. Evid. 403.

13           Netlist thus requests that the Court exclude evidence or argument concerning

14   Samsung's sales practices with Netlist either before or after the term of the JDLA.

15   **V.       Exclude Testimony of Samsung's "Industry Expert" Mr. McAlexander**

16           Samsung proffers Joseph McAlexander as an expert witness to offer "opinions

17   regarding standard and acceptable industry practice."  Ex. A [McAlexander Report] at

18   ¶ 2.[5]  But no one disputes general "industry practice."  The parties simply dispute how

19   much money Samsung owes Netlist for breaching the obligations it voluntarily

20   assumed under the JDLA.  Mr. McAlexander "opinions" are irrelevant to that question.

21   And although he discusses general factors that *can* have effects on a relationship

22   between a semiconductor manufacturer and its customers, he concedes he did not

23   actually review, consider, analyze, or apply any such evidence *specific to Samsung or*

24   *to Netlist*.  Nor did he ask to see any such evidence.  McAlexander's proposed

25   testimony is neither relevant nor sufficiently reliable to assist the jury in evaluating the

26

27   _____

28   [5]   Mr. McAlexander's report and relevant excerpts of his deposition are filed herewith
          as Exhibits A and B respectively to the Declaration of Raymond LaMagna.

1    remaining factual disputes in the case.  But it threatens to confuse and mislead the jury.

2    The Court should exclude McAlexander's testimony entirely.

3            **A.       The Proposed Testimony Is Irrelevant**

4            Evidence is only relevant if it "make[s] a fact more or less probable" that "is of

5    consequence in determining the action."  Fed. R. Evid. 401.  But "[i]rrelevant evidence

6    is not admissible."  Fed. R. Evid. 402.  McAlexander proposes to testify concerning the

7    general state of the semiconductor manufacturing industry.  The problem is: the parties

8    have no dispute about the industry in general.  The parties' sole remaining disputes

9    concern how much money Samsung owes Netlist.  McAlexander's testimony promises

10    to be a needless frolic and detour in what should be a short trial on narrow issues.

11            Even on its own terms, McAlexander's proposed testimony would simply

12    address whether—in view of "industry practice"—Samsung had the ability to perform

13    its supply obligations under the JDLA.  But that argument does little more than restate

14    Samsung's argument on summary judgment that the contract should not be interpreted

15    to require Samsung to supply Netlist products on Netlist's request.  The Court has

16    conclusively decided that Samsung had that obligation.  Any purported relevance that

17    McAlexander's testimony ever had (there was none) has evaporated.  It is not relevant

18    to a determination as to the quantum of damages incurred as a result of breach.

19            **B.       The Proposed Testimony Is Not Reliable**

20            This Court must act as a "gatekeeper" to ensure, with respect to each proposed

21    expert witness and subject of expert opinion testimony, that "the reasoning or

22    methodology underlying the testimony is scientifically valid" and "properly can be

23    applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-

24    93 (1993).  Expert testimony is admissible only if it 1) is "based upon sufficient facts

25    or data," 2) "is the product of reliable principles and methods," and 3) is based on the

26    witness having "applied the principles and methods reliably to the facts of the case."

27    Fed. R. Evid. 702.  McAlexander's testimony fails to satisfy any of these factors.

28            McAlexander proposes numerous general factors that, in principle, purportedly

1    can affect transactions between a semiconductor manufacturer and its customers.

2    Ex. A at ¶¶ 106–127.  For example, he asserts that "disruption in the product flow"

3    may happen due to "delayed receipt of raw materials," "equipment malfunctions,"

4    "facility or chemical contamination," "equipment maintenance," or "breakage."  *Id.* at

5    ¶¶ 106, 110, 124.  But McAlexander concedes that he did not actually review,

6    consider, analyze, or apply any such evidence specific to Samsung or to Netlist.  *E.g.*,

7    Ex. B [Dep. Tr.] at 19:9–22; 20:24–21:5; 21:13–24.  *See also* 17:1–7; 19:3-7; 27:1–

8    29:22; 30:16–31:3; 37:2–8; 40:6–12; 41:5–17; 43:7–18; 43:24–44:13; 45:7–13; 46:21–

9    47:1; 47:11–19; 48:13–24; 49:13–19; 53:23–54:6; 54:22–55:2; 56:18–22; 57:14–18.

10    Although he muses that changes in a customer's forecasted product needs can have an

11    impact on product delivery (Ex. A. at ¶¶ 114, 116), McAlexander admits that he did

12    not review any forecasts provided to Samsung by its customers (Ex. B at 32:7–12;

13    36:5–12), and that he has no opinion that any changes in forecasts had any impact on

14    how Samsung allocated products (*id.* at 52:12–21).  He did not even try to link the

15    factors to which he referred to Samsung (much less to Netlist):

16        Q. And so, you did not focus on Samsung's particular production of

17        semiconductor products including NAND and DRAM products in

18        assessing the factors that can and do impact production of such devices;

19        correct?

20        A. If you're looking at whether or not I looked at data from Samsung to

21        provide some nexus of my opinion to what actually occurred at Samsung,

22        the answer is no.

23    Ex. B at 18:13–21; *see also* 13:1–6; 145:23–146:3.  Nor did he ask to see any such

24    evidence or talk to anyone at Samsung who might provide it.  *Id.* at 19:3–7; 96:12–19.

25       As the proponent of Mr. McAlexander's testimony, Samsung has the burden of

26    establishing its admissibility.  *Bourjaily v. United States*, 483 U.S. 171, 175–176

27    (1987).  But his "opinions" are not "the product of reliable principles and methods,"

28    nor are "based on sufficient facts or data . . . reliably applied . . . to the facts of the

NETLIST INC.'S MOTIONS IN LIMINE
CASE NO. 8:20-CV-993-MCS (ADS)

1  case." Fed. R. Evid. 702. They are, rather, the fancies of an individual whose last

2  experience making and selling microchips was in the 1980s, and who was neither

3  provided—nor sought to obtain, let alone review and apply—the facts relevant to this

4  case. That is not expert testimony; that is speculation.

5       **C.**     **The Proposed Testimony Will Confuse and Mislead the Jury**

6      The "added aura of reliability" (*United States v. Lumpkin*, 192 F.3d 280, 289 (2d

7  Cir. 1999)) that attaches to an expert witness's testimony creates a "substantial danger"

8  that McAlexander's testimony will confuse and unduly prejudice the jury (*United*

9  *States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979)). Samsung seeks to minimize the

10  damage to Netlist its actions caused, in part by suggesting its performance was a

11  hostage to the fortunes that regularly befall semiconductor manufacturers.

12  McAlexander's proposed testimony apparently would be elicited to establish that many

13  exigencies ***can*** impede the flow of products from semiconductor manufacturer to its

14  customers, in order to tacitly suggest that such events ***did occur*** at Samsung. But from

15  his own mouth he has no basis in the facts of this case to derive such a conclusion.

16      Nor will cross-examination relieve this threat—indeed, engaging with

17  McAlexander's hypothetical ruminations would only spotlight them and heighten the

18  risk of jury confusion. Permitting McAlexander's testimony despite his failure to

19  analyze the facts of this case presents exactly the sort of substantial danger of

20  "confusing the issues" and "misleading the jury" about what actually occurred between

21  Samsung and Netlist that Rule 702 exists to ameliorate. Mr. McAlexander should not

22  be permitted to testify in this matter.

23

24

25

26

27

28

NETLIST INC.'S MOTIONS IN LIMINE
CASE NO. 8:20-CV-993-MCS (ADS)

1  Dated:  October 25, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIBSON, DUNN & CRUTCHER LLP


By:  /s/ *Jason C. Lo*
Jason C. Lo
333 South Grand Avenue
Los Angeles, CA 90071
213.229.7000
jlo@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.