# EXHIBIT C

Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
    mmasters@birdmarella.com
David I. Hurwitz - State Bar No. 174632
    dhurwitz@birdmarella.com
Kate S. Shin - State Bar No. 279867
    kshin@birdmarella.com
Christopher J. Lee - State Bar No. 322140
    clee@birdmarella.com
Jong-min Choi - State Bar No. 329474
    jmchoi@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF NETLIST INC.'S SECOND SET OF INTERROGATORIES TO DEFENDANT SAMSUNG ELECTRONICS CO., LTD**<br><br>Assigned to Hon. Mark C. Scarsi<br>Courtroom 7C |

PROPOUNDING PARTY:   PLAINTIFF NETLIST INC.

RESPONDING PARTY:    DEFENDANT SAMSUNG ELECTRONICS CO., LTD

SET NO.:             2

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Samsung Electronics Co., Ltd. ("Defendant" or "Samsung") hereby responds to Plaintiff

3741927.2

Subject to the above objections, none of which are waived, Defendant responds as follows:

Samsung informed Netlist that if it desired a refund, it could do so by directly contacting the Korean National Tax Service. Samsung provided truthful information within its knowledge relating to the Agreement and the payment of any fees owed to Netlist under it upon request by the Korean National Tax Service. Samsung also (1) made additional communications with Netlist and PwC, Netlist's tax consultant; (2) shared drafts of what Samsung proposed to submit to the Korean tax authorities regarding the withholding; (3) asked Netlist and PwC to propose language that Netlist wanted Samsung to use. Furthermore, in the tax proceedings in Korea, in which Netlist took the position that the $8 million payment was not a patent royalty, Netlist received a full refund of the withheld taxes plus interest.

**INTERROGATORY NO. 14:**

Describe in detail the basis for and all facts Related to Your position that Samsung has no supply obligation to Netlist under the Agreement.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendant incorporates by reference its general objections. Defendant objects to this interrogatory to the extent that it attempts to characterize Defendant's legal position. Defendant objects to this interrogatory on the basis that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressing, and not proportionate to the needs of this case. Defendant objects to this interrogatory because it calls for a legal conclusion. Defendant objects to this interrogatory on the basis that it requires Defendant to marshal all proof it intends to offer at trial. Discovery is ongoing, and Defendant has not yet completed its investigation of the facts. Defendant also objects to this interrogatory to the extent that it seeks material protected by the attorney-client, work product, or other applicable privileges. Defendant reserves the right, without assuming any obligation, to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Defendant incorporates by reference its general objections. Defendant objects to this interrogatory to the extent that it attempts to characterize Defendant's legal position. Defendant objects to this interrogatory on the basis that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressing, and not proportionate to the needs of this case. Defendant objects to this interrogatory because it calls for a legal conclusion. Defendant objects to this interrogatory on the basis that it requires Defendant to marshal all proof it intends to offer at trial. Discovery is ongoing, and Defendant has not yet completed its investigation of the facts. Defendant also objects to this interrogatory to the extent that it seeks material protected by the attorney-client, work product, or other applicable privileges. Defendant reserves the right, without assuming any obligation, to supplement its response. Defendant reserves the right, without assuming any obligation, to amend or supplement its response in whole or in part.

Subject to the above objections, none of which are waived, Defendant responds as follows:

The Agreement speaks for itself. To the extent further response is required: (1) circumstances surrounding the negotiation of the Agreement, including the lack of substantive negotiations relating to Section 6.2; (2) the course of dealing between Samsung and Netlist, in particular the fact that Netlist continually accepted Samsung's routine declines of support requests for product during various times, and Netlist never asserted that this was a violation of the Agreement prior to commencement of this lawsuit; (3) the nature of the semiconductor market, in which supply is strictly limited and shortages are common. Because of this, it would be extremely unusual for Samsung to agree with a small buyer like Netlist to terms that amount to those of a requirements contract; (4) the fact that Section 6.2 of the Agreement contains no quantity term.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Defendant incorporates by reference its general objections. Defendant objects to this interrogatory to the extent that it attempts to characterize Defendant's legal position. Defendant objects to this interrogatory on the basis that it is vague, ambiguous, overbroad, unduly burdensome, harassing, oppressing, and not proportionate to the needs of this case. Defendant objects to this interrogatory because it calls for a legal conclusion. Defendant objects to this interrogatory on the basis that it requires Defendant to marshal all proof it intends to offer at trial. Discovery is ongoing, and Defendant has not yet completed its investigation of the facts. Defendant also objects to this interrogatory to the extent that it seeks material protected by the attorney-client, work product, or other applicable privileges. Defendant reserves the right, without assuming any obligation, to supplement its response. Defendant reserves the right, without assuming any obligation, to amend or supplement its response in whole or in part.

Subject to the above objections, none of which are waived, Defendant responds as follows:

The Agreement speaks for itself. To the extent further response is required: (1) the parties' longstanding business relationship of at least 15 years and $200 million in purchases, in which purchases of NAND and DRAM products outside the joint development contemplated by the Agreement were governed by individual purchase orders and their confirmations according to forecasts, allocations, and availability, with orders being accepted, rejected, or put on backlog, which was a practice that followed industry norms; (2) the negotiating history of the JDLA, which began with Netlist (which had cash flow issues at the time) approaching Samsung to discuss a strategic partnership involving joint development of a product based on a new standard called NVDIMM-P and licensing of Netlist's patents, but without mentioning any long-term supply agreement, and the communications and documents exchanged as a part of that negotiating history, including a Memorandum

of Understanding which referenced NAND and DRAM products as "raw materials," which was a subsection of "Technology Collaboration" and the testimony of both Chuck Hong on these issues, including their admissions that the supply by Samsung was only required if and to the extent that a NVDIMM-P-related product was ever commercialized, which did not occur, and that Netlist received all of the chips it needed to complete the initial phase of the NVDIMM-P product under the JDLA; (3) the fact that Samsung paid Netlist $8 million in cash pursuant to the Agreement, and concurrently provided an additional $15 million convertible loan at 2% interest (with documents showing the negotiating history and the eventual agreement for same), which allowed Netlist to pay off existing debt with less favorable financial terms; (4) Netlist's own press releases, public filings and minutes of its own board meetings and its own board resolutions and its conduct and disclosures related to other suppliers such as SK Hynix; (5) a meeting between Netlist and Samsung some 18 months after the JDLA had been signed, in which Netlist unsuccessfully sought a "New Partner Type" that would require Samsung to provide "Product Allocation support for Netlist" and an "Official-Distributor Partnership Agreement" from Samsung; (6) the course of dealing and conduct between Samsung and Netlist both before and after the purported termination of the JDLA, including the terms and conditions of the purchase orders that Netlist used before and after the JDLA, in particular the fact that Netlist continually accepted Samsung's routine decline of support requests for product during various times, and Netlist never asserted that this was a violation of the Agreement prior to commencement of this lawsuit; (7) the nature of the semiconductor market and other "industry norms" which both Chuck Hong and Paik Ki Hong testified to, in which supply is strictly limited and shortages are common, making it unlikely for Samsung to agree with a small buyer like Netlist to terms that amount to an indefinite and unlimited supply obligation; (8) the fact that Section 6.2 of the Agreement contains no quantity term; and (9) the tax proceedings in Korea, in which Netlist took the position that the $8 million payment

commencement of this lawsuit; (13) the nature of the semiconductor market and other "industry norms" which both Chuck Hong and Paik Ki Hong testified to, in which supply is strictly limited and shortages are common, making it unlikely for Samsung to agree with a small buyer like Netlist to terms that amount to an indefinite and unlimited supply obligation; (14) the fact that Section 6.2 of the Agreement contains no quantity term; (15) the tax proceedings in Korea, in which Netlist took the position that the $8 million payment was not a patent royalty, and received a full refund of the withheld taxes plus interest; and, cumulatively, (16) Netlist never alleged any breach of the Agreement until threatening this litigation despite the facts articulated above.

DATED:  August 16, 2021

Ekwan E. Rhow
Marc E. Masters
David I. Hurwitz
Kate S. Shin
Christopher J. Lee
Jong-min Choi
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: _____/s/ Jong-min Choi_____
Jong-min Choi
Attorneys for Defendant Samsung Electronics Co., Ltd.