JASON LO, SBN 219030
  jlo@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MATTHEW BENJAMIN, SBN 4533246
  mbenjamin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

JASON SHEASBY, SBN 205455
  jsheasby@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
LOS ANGELES, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

Attorneys for Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS COL, LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**NETLIST INC.'S OPPOSITION TO SAMSUNG'S MOTION IN LIMINE NO. 1 TO EXCLUDE OPINION TESTIMONY OF NETLIST EXPERT DR. MICHAEL AKEMANN**<br><br>Before Judge Mark C. Scarsi<br><br>**Final Pretrial Conference:**<br>Date: November 15, 2021<br>Time: 2 p.m. PT<br><br>**Trial:** November 30, 2021 |

Samsung's motion to exclude the opinion of Dr. Michael Akemann, Netlist's damages expert, relies on a misapplication of *Daubert* and a mischaracterization of Dr. Akemann's expert report.  Contrary to Samsung's motion, Dr. Akemann properly *assumed* liability, properly controlled for time, and is not offering qualitative opinions without foundation.  Samsung's motion should be denied in its entirety.

**I.     Dr. Akemann's Damages Opinion Properly *Assumes* Liability (as It Must)**

Contrary to Samsung's suggestion, Dr. Akemann does *not* opine on liability.  As with any damages expert, Dr. Akemann assumes that liability has otherwise been established.  Notably here, the Court has already ruled that the JDLA required Samsung to provide NAND and DRAM products to Netlist on Netlist's request, and that Samsung breached that obligation.  Dkt. 186 (MSJ Order) at 9–10.  Like any damages expert, Dr. Akemann's opinion then assumes that Netlist otherwise proves at trial the predicate facts for a finding of damages—namely that Netlist's NAND and DRAM purchases from third-party vendors during the period were made to cover for Samsung's breach.  Dkt. 201-2 (Akemann Report) at 4.

Samsung's argument here is like a defendant in a patent infringement case trying to exclude a damages expert because the defendant asserts that it has a non-infringement defense.  Dr. Akemann is allowed to assume, as he has, that liability "will be established such that all reseller purchases by Netlist were caused by the alleged breach of contract."  Dkt. 201-2 at 26.  Samsung certainly may challenge the factual premises for quantifying Netlist's damages by cross-examination of Netlist's witnesses or introduction of affirmative evidence.  The jury will decide if Netlist has carried its burden of proving the predicate facts.  If the jury does not agree that Netlist can establish that certain third-party purchases were made to cover Samsung's breaches, then of course Dr. Akemann's quantification of the price differences that measure those damages would be moot.  But that is not a cognizable basis to exclude Dr. Akemann's analysis *before* Netlist makes its factual showing at trial.  And Dr. Akemann's report, itself, cites to an ample proffer of evidence supporting his

1
NETLIST'S OPPOSITION TO SAMSUNG'S MOTION IN LIMINE NO. 1
CASE NO. 8:20-CV-993-MCS (ADS)

analysis that Netlist will present at trial.[1] That Dr. Akemann relies on the testimony of fact witnesses for his assumptions is unremarkable, given that there is no personal knowledge requirement for experts.[2] This contention does not merely fail as a basis for exclusion—it is the norm.

The cases Samsung cites are factually inapposite, as they involve instances in which the expert relied on assumptions that were *not supported* by the factual record. Dkt. 202 at 7; *Payan v. Los Angeles Cmty. Coll. Dist.*, No. 2:17-CV-01697-SVW-SK, 2019 WL 8163479, at *3–4 (C.D. Cal. June 13, 2019) (excluding expert testimony due to "a complete lack of evidence" supporting the expert's assumptions, which "lacked "adequate foundation in fact"); *Navarro v. Hamilton*, No. 5:16-CV-1856 CAS (SPx), 2018 WL 4156603, at *3 (C.D. Cal. Aug. 27, 2018) (precluding expert from basing his testimony on a Google Maps image in which the timing and precise location is not known, and barring expert from providing an opinion on proximate cause, an issue of law); *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 144 (4th Cir. 1994) (finding that the record lacked factual evidence supporting expert's assumptions).

In sum, Netlist has proffered through contemporaneous business records, data, and sworn declarations and deposition testimony *facts* that it will prove on the record at trial that will tie Samsung's breach to Netlist's cover purchases. Dr. Akemann can rely on those facts for his assumption of liability. Samsung's motion on this basis must be denied.

---

[1] Dr. Akemann cites to testimony from Mr. Paik Ki Hong and Mr. Raymond Jiang, as well as interviews conducted with both Mr. Hong and Ms. Gail Sasaki, all of whose testimony Netlist intends to offer at trial. *See* Dkt. 201-2 at 26–27.

[2] "An expert *may* base an opinion on facts or data in the case that the expert has been made aware of" regardless of personal knowledge. Fed. R. Evid. 703 (emphasis added); *see also id.* ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

**II.     Dr. Akemann Properly Controls for Time in Identifying Price Match Data**

To determine how much extra money Netlist had to pay to cover for Samsung's supply failures (i.e., for Samsung's breach), Dr. Akemann must identify a price estimate for what Samsung would have sold the products at issue to Netlist for had Samsung complied with its obligations. That is, for each cover purchase, Dr. Akemann must find a corresponding Samsung price for the same product, and then quantify the differences. Dr. Akemann does this by looking at the prices for products that Samsung did sell to Netlist (i.e., sales when Samsung opted to comply with the JDLA) in 90-day windows around when Netlist was forced to purchase products from other companies to replace the requests that Samsung refused to fill (i.e., Samsung's breach). Dkt. 201-2 at 29, ¶ 87. As such, Dr. Akemann controls for time in the first instance by only using comparative prices at similar points in time in his analysis. Because looking for comparable prices in narrower windows (e.g., a 60-day window) or wider windows yield slightly different results, Samsung challenges this method as "arbitrary and unreliable." Dkt. 202 at 8–11. It is neither.

Dr. Akemann explained *exactly* why he chose a 90-day window. As stated in his expert report, this 90-day time frame "is consistent with the economic evidence in this case" because pricing for many products is set no less frequently than quarterly. Dkt. 201-2 at 28 and n.96; Ex. A (Akemann Dep. Tr.) at 78:14–82:21 (citing facts from witnesses to support 90-day window).[3] Of course, the longer the time frame used to look for price matches, the more matches will be found (e.g., a 120-day search window yields more matches than does a 7-day window). And, since a narrower window will return less data (fewer price matches), the resulting data will be less robust (the overall estimate of a price differential will rely on less actual pricing data).

---

[3] Ironically, Samsung's own expert as quoted in Samsung's motion validates Dr. Akemann's 90-day window as reasonable. As shown in Samsung's "Chart 3" (Dkt. 202 at 11), Dr. Akemann's selection of a 90-day window results in a price premium of 4–5%, right in between the alternate data Samsung shows for a 120-day window (6%) or a 30- or 60-day window (3%). That is, as Samsung's own motion shows, Dr. Akemann took the reasonable middle road with a 90-day window.

*See*, *e.g.*, Ex. A (Akemann Dep. Tr.) at 111:15–112:16 (explaining why a 7-day window is inappropriate in this context). To balance these considerations, Dr. Akemann selected a 90-day price match window. *See id.* at 78:14–82:21. The task is to match the prices paid to cover with the prices Samsung charged for other orders it was filling—to do so, one must look for those pricing comparables within *some* defined time window. Here, Dr. Akemann had a valid, reasoned basis to select a 90-day window. *See* Dkt. 201-2 at 27–30, ¶ 80–92 ("Cover Damages").

Contrary to Samsung's motion (*see* Dkt. 202 at 8–11), Dr. Akemann's methodology *does* account for price movements over time. As noted above, it does so in the first instance by only using prices at similar points in time. Dr. Akemann also further recognizes that prices go up and down over time. As such, Dr. Akemann's analysis looks in *both* directions in time for comparable transactions and counts *both* negative and positive price differences. Dr. Akemann's analysis thus includes—and accounts for—instances when Netlist saved money by finding products from third parties that were cheaper than what Samsung was charging (e.g., in a falling market)— and Dr. Akemann reduces his calculated damages accordingly. Ex. A (Akemann Dep. Tr.) at 152:17–153:14. Time trends in the data therefore do not create any inherent bias given these attributes of Dr. Akemann's model.[4] Samsung is thus simply wrong that Dr. Akemann's analysis does not properly control for time.

Nor is Samsung's criticism accurate that Dr. Akemann provided no "measure of statistical reliability" (Dkt. 202 at 11). Dr. Akemann's 90-day price window returns unusually robust data—it returns *actual product-by-product price matches* for between 36–56% of the dollars at issue in the case. Dkt. 201-2 at 62 (Akemann Report, Exhibit 3). This is not a circumstance where Dr. Akemann is taking a small random sample

---

[4] Samsung's acknowledgement that prices fluctuate (Dkt. 202 at 9–10) is unremarkable and does not undermine Dr. Akemann's analysis. The fact that prices vary over time (i.e., go up and down, sometimes substantially) is a fact of the market. But Dr. Akemann's analysis is agnostic as to whether prices are moving up or down—in fact, Dr. Akemann gives Samsung credit for when prices moved down. There is thus no bias in his analysis from any market fluctuation effect.

from a large population. Rather, his "sample" covers more than half of the population—it is a very, very large *non-random* sample. This is not a circumstance where formal statistical tests of significance are applied. Such tests generally assume *random* samples. Samsung's criticism that Dr. Akemann has not conducted additional statistical analysis is a straw-man argument—no such analysis is required to validate the statistical and economic relevance of such a large *non-random* sample of *actual* product-by-product price matches.

Tellingly, neither Samsung nor its expert supplies some alternate window or methodology that they contend to be more correct or appropriate. Neither Samsung nor its expert say, for example, "Dr. Akemann should use seven days." Nor do they cite any academic literature to suggest that Dr. Akemann's approach is wrong. Nor does Samsung nor its expert conduct any statistical analysis to suggest that Dr. Akemann's analysis is either wrong or lacks statistical and economic significance. Nor do either Samsung or its expert dispute that *some* price match window must be selected.

In sum, damages experts are allowed to use reasonable estimates. Complete precision is not required and generally not feasible. Dr. Akemann has worked from the best available data and applied his expertise, which is unchallenged and extensive. *See* Dkt. 201-2 at 3-4 ("Qualifications"); *id*. at Attachment 1 (curriculum vitae). To the extent Samsung or its expert disagree with Dr. Akemann's approach, that is a role for cross-examination. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of critiquing an expert. *See* Fed. R. Evid. 702, Adv. Comm. Notes (2000) (citing *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 596 (1993) (internal quotes omitted)). Samsung's criticism of Dr. Akemann's data, his application of his methodology to the data, or his persuasiveness are all "matters for cross-examination." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237–38 (9th Cir. 2017).

"[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). "When an expert meets the threshold established by Rule 702" as is surely the case here, "the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). The Court here is "a gatekeeper, not a fact finder," and its role is not to weigh which expert is more convincing. *See United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006); *Primiano*, 598 F.3d at 568 ("Given that the judge is 'a gatekeeper, not a fact finder,' the gate could not be closed to this relevant opinion offered with sufficient foundation by one qualified to give it."). Thus, Samsung's motion on this basis must also be denied.

### III. Dr. Akemann Does Not Offer Qualitative Opinions Without Foundation

Samsung also claims that Dr. Akemann offers unsupported opinions on three additional topics: "(1) the value of Netlist's patent rights; (2) the value of the supply agreement to Netlist; and (3) other consequential harm to Netlist." Dkt. 202 at 11–12. Yet Samsung fails to back-up its claims with *any* citation to any such opinions in Dr. Akemann's report. This invitation to engage in shadow boxing and guesswork, alone, is a further basis for the Court to reject this motion.

Regardless, Samsung's again mischaracterizes Dr. Akemann's opinion. First, Dr. Akemann did not conduct *any* valuation of Netlist's patent rights or of the supply agreement. Ex. A (Akemann Dep. Tr.) at 156:13–16, 173:21–175:7. Since Dr. Akemann is not offering an opinion on *valuation*, Samsung's claim that Dr. Akemann did not "consider any of the factors the federal courts have approved for determining the value of patents" is a non sequitur. Dkt. 202 at 12. Dr. Akemann's report merely described the nature of the contract, and included a discussion regarding the importance of the supply provision and related consideration, simply to provide background and context for his analysis.

Likewise, Samsung's claim that Dr. Akemann opines on consequential damages is disingenuous. Dkt. 202 at 12. Dr. Akemann explicitly states in his report that his

1  "direct contract damages calculations . . . do not address all the economic harms that
2  Netlist suffered," including "lost sales, lost customers, reputational harm, or other
3  losses that Netlist suffered" (which were handled by a different expert no longer in the
4  case after summary judgment).  Dkt. 201-2 at 13, ¶ 34; *see also* Dkt 201-2 at 45, ¶ 132.
5  Dr. Akemann simply describes the aspects of damages he addresses (direct damages),
6  versus what he is *not* addressing.  The Court entered summary judgment removing
7  consequential damages as a remedy.  Dkt. 186 at 21.  Thus, this issue (and Netlist's
8  other expert) are no longer in the case and the point is moot.

* * * * *

For the reasons stated above, Samsung has failed to carry its burden of proving entitlement to *exclusion* of Dr. Akemann's testimony.  Netlist respectfully requests that Samsung's motion in limine be denied.

Dated:  November 1, 2021            GIBSON, DUNN & CRUTCHER LLP


By: /s/ *Jason C. Lo*
Jason C. Lo
333 South Grand Avenue
Los Angeles, CA 90071
213.229.7000
jlo@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.