# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS <br><br> **EXPERT REPORT OF SEUNG-SOON LIM** <br><br> Assigned to Hon. Mark C. Scarsi <br> Courtroom 7C |

CONFIDENTIAL – ATTORNEYS' EYES ONLY

PURSANT TO PROTECTIVE ORDER

3746748.3

CONFIDENTIAL – ATTORNEYS' EYES ONLY

decisions are not legally binding upon lower courts or other parties outside of the case, although they are persuasive in indicating how the Supreme Court might rule if any case were appealed there. Particularly for tax decisions, the tax authorities sometimes maintain their tax practices in opposition to a Supreme Court decision until the Supreme Court's position on the issue becomes settled through multiple consistent rulings. At the time in 2015-16, many corporations including Samsung, LG Electronics, Hyundai Motors, Kia Motors, and NTP Inc. were arguing to the tax authorities that royalties from foreign-registered patents were non-taxable. Yet, the tax authorities had maintained their position that, notwithstanding the caselaw from the Supreme Court, tax withholdings were required on patent income such as royalties from foreign-registered patents.

Supreme Court Decision No. 2016*Du*42883, issued December 27, 2018, finally convinced the tax authorities to change their practices. There, Samsung entered into a patent license agreement with a foreign patent holder (a U.S. corporation) around November 2010, whereby Samsung paid consideration for using the patents not registered in Korea but did not withhold tax from the payment. The tax authorities determined that this royalty income was subject to withholding as a domestic source income, ordering collection of corporate tax (including penalties) against Samsung at the rate pursuant to Article 14(1) of the Treaty (15%) in or around March 2012. Samsung appealed the determination to the Tax Tribunal, which also upheld the tax authorities' disposition June 2013. Until the above 2018 decision was finally rendered by the Supreme Court in the subsequent appeal, the tax authorities continued to hold that royalties for patents not registered in Korea should be withheld.

Samsung appears to have withheld the Taxes from the NRE Fees upon its determination that NRE Fees were royalty income for either Netlist's patents or its other technology and know-how. *See* SEC008499. Samsung's withholding was objectively reasonable at the time of its withholding and was understandable as an

CONFIDENTIAL – ATTORNEYS' EYES ONLY

effort to comply with law for the following reasons.

First, the NRE Fees have characteristics of business income, royalty income for patents, and royalty income for other technology and know-how in light of the JDLA. As discussed earlier, Samsung has obtained through the JDLA the indefinite right to use Netlist's patents or any patents to be registered within the next five years, transfer of Netlist's non-patent technology and know-how over the course of the joint development of the Technology, and particularly the indefinite license to the patents arising from the Technology if the Technology is successfully developed as a result of Netlist's research and development activities without any royalty. Samsung has also acquired the right of first refusal to acquire such patent rights if Netlist intends to transfer the patent rights to a third party. Thus, NRE Fees paid by Samsung to Netlist must be deemed to include consideration for the rights listed above. That Samsung would only acquire licenses, and not the ownership, to the Technology itself, if successfully developed, is suggestive. If the NRE Fees were just about work for hire, then Samsung would naturally own the resulting intellectual property. That was not the case here.

Second, as explained above, the tax authorities at the time maintained that royalty income from foreign-registered patents were taxable, notwithstanding past judicial precedent. The Korean Corporate Tax Act was amended on December 26, 2008, by Law No. 9267 so that the latter part of the proviso in Article 93(ix)[1] of the Corporate Tax Act was newly added to provide that "the relevant patent rights, etc. shall be deemed to have been used in the Republic of Korea, irrespective of whether they were registered in the Republic of Korea, in cases where the relevant patents, etc. were registered out of the Republic of Korea and have been used for manufacture, sale, etc. in the Republic of Korea." As such, the 2008 amendment of

---

[1] Due to a subsequent amendment in 2010, this provision is now Article 93(viii) of the Corporate Tax Act.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

an appellate one.

### C. Samsung Acted Reasonably With Respect to Netlist's Efforts to Obtain A Refund

During the reassessment process, Samsung responded to the inquiry of the tax authorities regarding (i) the background behind the execution of JDLA, (ii) patent license, (iii) payment of NRE Fees, and (iv) the nature of NRE Fees and the background behind withholding.

Netlist appears to take issue with Samsung's explanation that Samsung and Netlist entered into the JDLA mainly to resolve the risk of patent infringement lawsuit for such reasons as Samsung's infringement on Netlist's patents (i.e., regarding LRDIMM and NVDIMM) and incidentally to develop a NVDIMM-P product equipped with HybriDIMM technology to the satisfaction of both parties (items 1 and 4). However, this was a statement of the subjective motives or background behind the execution of the agreement from Samsung's perspective, and there is no suggestion of any falsity. Items 2 and 3 described objective facts provided in the agreement, and the phrase "Samsung paid NRE Fees in order to cooperate with the standardization and commercialization of NVDIMM-P that was under development" in item 3 even appears to be favorable to Netlist.

Meanwhile, the Framework Act on National Taxes prescribes a duty to cooperate in good faith with tax officials in their due inquiry, investigation, and submission order (Article 81-17 of the Framework Act on National Taxes), and a refusal to the inquiry is subject to administrative fines (Article 88 of the Framework Act on National Taxes).

> **[Framework Act on National Taxes]**
>
> **Article 81-17 (Taxpayer's Duty of Cooperation)**
>
> Every taxpayer shall cooperate in good faith with tax officials in their due inquiry, investigation, and submission order.

statement and the incorrect official action. Supreme Court Decision No. 96*Do*2825 (February 28, 1997). Samsung's response in the present case was not falsely provided from Samsung's perspective, which would make it even more difficult to find any causal relationship with the NTS refusal to reassess the tax disposition against Netlist.

> **[Supreme Court Decision No. 96*Do*2825 rendered on February 28, 1997]**
> When an administrative agency approves or permits an application, the agency deliberates on such approval or permit based on the assumption that the reasons for the application may not be consistent with facts. Therefore, if an agency simply relies on the false reasons for application or false documentation submitted by the applicant to grant an approval or permit without sufficient verification of facts, such an approval or permit derived from the agency's insufficient review, and it cannot be due to the applicant's fraud. Accordingly, it will not constitute an obstruction of performance of official duties by fraudulent means.

## VII. CONCLUSION

Based on the foregoing, it is my opinion as an expert on Korean law that (1) Samsung acted reasonably and prudently in withholding the NRE Fees pursuant to the JDLA and the administrative practices at the time, in an effort to comply with applicable law; (2) the Tax Tribunal decision is not a conclusive determination of Korean law; and (3) Samsung reasonably cooperated in Netlist's efforts to obtain a refund, and could not legally have given information to the Korean tax authority in Netlist's favor that Samsung did not subjectively, in good faith, believe to be true.

## VIII. RESERVATION OF RIGHTS

I reserve the right to supplement or amend the opinions herein as necessary to respond to positions taken by Netlist's expert(s), especially in response to

information not presently known to me or new information presented by Netlist or its expert(s). I will continue my research and study as needed.

## IX. CERTIFICATION

I certify that to the best of my knowledge and belief, the statements of fact in this report are true and correct, or I believe them to be true and correct; the reported analyses, opinions and conclusions are limited only by the reported assumptions and are my personal, unbiased and professional analyses, opinions and conclusions; I have no personal interest or bias with respect to the parties involved; I have never testified as an expert before; and my compensation is not contingent on an action or event resulting from the analyses, conclusions or opinions of this report. This certification is signed in Seoul, Korea.

DATED: September 14, 2021

By: _____*/s/ Seung-Soon Lim*_____
　　　　Seung-Soon Lim