EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
MARC E. MASTERS (SB 208375)
mmasters@birdmarella.com
DAVID I. HURWITZ (SB 174632)
dhurwitz@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

MICHAEL G. YODER (SB 83059)
myoder@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
JOSEPH R. O'CONNOR (SB 274421)
joconnor@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Attorneys for Defendant Samsung
Electronics Co., Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>       vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>            Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF NETLIST'S MOTIONS IN LIMINE**<br><br>Filed Concurrently with Samsung's Opposition to Plaintiff Netlist's Motions in Limine<br><br>Date:     November 15, 2021<br>Time:     9:00 a.m.<br>Crtrm.: 7C<br><br>Assigned to Hon. Mark C. Scarsi<br>Courtroom 7C |

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant Samsung Electronics Co., Ltd. ("Samsung") files this request for judicial notice of documents referenced in its Opposition to Netlist's Motions in Limine and previously filed in this case. These documents are attached as exhibits hereto and listed here:

- Exhibit 1 is a true and accurate copy of Samsung's Genuine Disputes of Material Fact. (Dkt. 168-1).

- Exhibit 2 is a true and accurate copy of Samsung's Separate Statement of Additional Material Facts.  (Dkt. 168-2).

- Exhibit 3 is a true and accurate copy of P.K. Hong's Declaration in Support of Netlist's Motion for Partial Summary Judgment.  (Dkt. 145-2).

The documents are properly subject to judicial notice.  Pursuant to Federal Rule of Civil Procedure 201, this court can judicially notice "facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  These exhibits are subject to judicial notice "because court filings are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." *See McVey v. McVey*, 26 F.Supp. 3d. 980, 984 (C.D. Cal. 2014) (citing *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir. 1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings)).

DATED:  November 1, 2021          O'MELVENY & MYERS LLP

By: _____/s/ *Michael G. Yoder*_____
                    Michael G. Yoder
              Attorney for Defendant Samsung

# EXHIBIT 1

1   Ekwan E. Rhow - State Bar No. 174604
       erhow@birdmarella.com
2   Marc E. Masters - State Bar No. 208375
       mmasters@birdmarella.com
3   David I. Hurwitz - State Bar No. 174632
       dhurwitz@birdmarella.com
4   Kate S. Shin - State Bar No. 279867
       kshin@birdmarella.com
5   Christopher J. Lee - State Bar No. 322140
       clee@birdmarella.com
6   Jong-min Choi - State Bar No. 329474
       jmchoi@birdmarella.com
7   Joyce J. Choi - State Bar No. 256165
       jchoi@birdmarella.com
8   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
9   1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
10  Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
11
12  Attorneys for Defendant Samsung
    Electronics Co., Ltd.

13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16

17   NETLIST INC., a Delaware corporation,        CASE NO. 8:20-cv-00993-MCS-ADS

18               Plaintiff,                        **DEFENDANT SAMSUNG**
                                                   **ELECTRONICS CO., LTD.'S**
19          vs.                                    **STATEMENT OF GENUINE**
                                                   **DISPUTES OF MATERIAL FACT**
20   SAMSUNG ELECTRONICS CO.,
     LTD., a Korean corporation,
21                                                 [Filed Concurrently with (1) Defendant's
                 Defendant.                        Opposition; (2) Defendant's Separate
22                                                 Statement of Additional Material Facts;
                                                   (3) Defendant's Evidentiary Objections
23                                                 to Declarations; (4) [Proposed] Order (5)
                                                   Declaration of Hyeoksang Yoo and (6)
24                                                 Lee Declaration].

25                                                 Assigned to Hon. Mark C. Scarsi
                                                   Courtroom 7C
26

27

28

# I.

## DEFENDANTS' RESPONSES TO PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. Netlist was founded in 2000.<br><br>C.K. Hong Decl. ¶ 3 | Undisputed. |
| 2. Netlist is an innovator in highperformance memory module technologies. It designs and manufactures a variety of highperformance products used in servers and storage systems, and its technology enables users to derive useful information from vast amounts of data in a short period of time.<br><br>C.K. Hong Decl. ¶ 2 | Disputed as this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 2 of the declaration of C.K. Hong. |
| 3. Customers engage Netlist to create custom, proprietary products to satisfy their unique requirements.<br><br>C.K. Hong Decl. ¶ 3 | Disputed as this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraphs 2 and 3 of the declaration of C.K. Hong. |
| 4. As of its 2015 Annual Report, Netlist had total assets of $24,666,000. | Undisputed. |

| | PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 4 5 | LaMagna Decl. Ex. 37 at F- | |
| 6 7 8 9 10 | 5. As of its 2015 Annual Report, Netlist had annual total net revenues of $8,012,000.<br><br>LaMagna Decl. Ex. 37 at F-4 | Undisputed. |
| 11 12 13 14 15 16 | 6. Samsung Electronics Co., Ltd.'s ("Samsung") Memory Business directly or indirectly employs approximately 30,000 individuals in 33 offices across the world.<br><br>Jung Bae Lee Decl., Dkt. 94-1, ¶ 2 | Undisputed. |
| 17 18 19 20 21 | 7. The revenue of Samsung's Memory Business in 2020 was in excess of $47 billion.<br><br>Jung Bae Lee Decl., Dkt. 94-1, ¶ 3 | Undisputed. |
| 22 23 24 25 26 27 | 8. Samsung's Memory Business accounts for a global market share of over 40% for DRAM products and 30% for NAND products.<br><br>Jung Bae Lee Decl., Dkt. 94-1, ¶ 3 | Undisputed. |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 9. The market for NAND and DRAM is effectively an oligopoly with Micron, SK Hynix and Samsung controlling approximately 95% of the world's supply.<br><br>C.K. Hong Decl. ¶ 6 | Disputed as this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 6 of the declaration of C.K. Hong. |
| 10. Micron, SK Hynix and Samsung memory chips are not interchangeable because each company implements different design and fabrication processes which result in varying speed, power and endurance characteristics when their products are used in server and storage systems.<br><br>C.K. Hong Decl. ¶ 6 | Disputed.<br><br>Netlist has been using Samsung, SK Hynix, and Micron's memory chips interchangeably. Even with respect to server or storage modules, these different manufacturers' products are interchangeable with one another once the customer qualifies them for its use—a process that "is not big issue, Customer can accept easily." Declaration of Christopher J. Lee ("Lee Decl.") ¶ 12, Exh. 64 at NL018660 (Raymond Jiang: "8Gb x8 DDP for GC's business, supporting with Hynix currently." P. K. Hong: "we will need to get Samsung qualified. Samsung offers a better chance at continuity of support than Hynix." Harrison Jin: "Samsung DRAM base LVP |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | qualification is not big issue. Customer can accept it easily.")

*See also*: Lee Decl. ¶ 13, Exh. 65 (P.K. Hong instructing Raymond Jiang to use Samsung's modules and DRAM instead of SK Hynix's products because of certain legal issues anticipated between Netlist and SK Hynix); *See also*: Lee Decl. ¶ 14, Exh. 66 (P.K. Hong and Raymond Jiang discussing purchasing the same DRAM product from Samsung, SK Hynix, or Micron); Lee Decl. ¶ 10, Exh. 62 (Raymond Jiang Deposition Transcript) at 78:2-11, 78:18-79:3 (admitting that certain customers are qualified for multiple products and that there were cases where Netlist covered customer requests with products from other brands when Samsung product was not available).

In addition, this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 6 of the declaration of C.K. Hong. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 11. Server or storage manufacturers cannot easily replace Samsung NAND or DRAM with Micron or SK Hynix NAND or DRAM.<br><br>C.K. Hong Decl. ¶ 6 | Disputed for the same reasons and evidence identified in response to No. 10, above. |
| 12. On April 16, 2015, Netlist proposed to Samsung that Netlist license its patents for five years to Samsung for $85 million and ongoing royalty payments ranging from 0.5% to 1.0%.<br><br>LaMagna Decl. Ex. 2 at -07; LaMagna Ex. 48 at 15:16-18 | Undisputed but irrelevant as it predates the September 23, 2015 MOU the parties executed. By the admission of C.K. Hong, Netlist's principal, the MOU memorialized the "common understanding" of the Parties at the time. *See* Dkt. 150-1 (Declaration of Joyce J. Choi in Support of Samsung's Motion for Summary Judgment ("Choi Decl.") ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 116:2-9.<br><br>Netlist's main contributor to the JDLA, Noah Whitley, also expressed it was Netlist's position that the MOU should govern the supply term. Choi Decl. ¶ 29, Exh. 28 at NL045877. |
| 13.    On May 18, 2015, Samsung provided a "counter-proposal" to Netlist, | Undisputed but irrelevant for the same reasons and evidence identified in response |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| in which Samsung would receive a perpetual patent license and listed three forms of "Consideration provided by Samsung," consisting of (1) a $5 million non-recurring engineering fee; (2) a $10 million debt instrument, and (3) "Supply of NAND, DRAM and/or NVDIMM-P controllers on terms to be negotiated."<br><br>LaMagna Decl. Ex. 3 at -68, -69 | to No. 12, above. |
| 14.     In its May 18, 2015 email, Samsung stated that its counter- proposal would "enable[ ] Netlist to expand it's [*sic*] business," that "the implicit backing of Samsung should help Netlist as it endeavours to expand it's [*sic*] business arrangements in the memory industry," and that Samsung "hope[d] the supply of NAND, DRAM, and NVDIMM-P related chipsets will help enable [Netlist's] vision of being a products company."<br><br>LaMagna Decl. Ex. 3 at -68 | Undisputed but irrelevant for the same reasons and evidence identified in response to No. 12, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 15.    Netlist viewed a commitment from Samsung to supply NAND and DRAM as being of "crucial value" and providing a "significant strategic advantage" to Netlist. "Because securing direct supply of NAND and DRAM was so critical to Netlist, Netlist was willing to make a number of important concessions to Samsung in exchange for Samsung's contractual commitment to provide supply."  C.K. Hong Decl. ¶¶ 4-5 | Disputed. C.K. Hong testified that the supply obligation under the JDLA was limited to "Raw Materials" necessary to support the commercialization of NVDIMM-P. Choi Decl. ¶ 8, Exh. 7 at 91:4-17; 92:4-12. See also  101:25-102:7 ("Q. And so those were raw materials that were provided in connection with commercialization of the dash P product; correct? A. That's correct.")  This is corroborated by the testimony of multiple Samsung employees that any supply obligation was intended to be limited to NAND and DRAM products necessary for joint development of NVDIMM-P. *See, e.g.,* Lee Decl. ¶ 8, Exh. 60 (Kyuhan Han deposition testimony) at 37:22-24, 38:3-4, 34:7-16 ("if we were to supply such a thing, definitely that would have been beneficial to their ***development***"); *Id.* ¶ 2, Exh. 54 (Byungyeop Jeon deposition testimony) at 43:25-44:10 (Samsung's 30(b)(6) witness testifies that supply was for NVDIMM-P |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | development components only); *Id.* ¶ 4, Exh. 56 (Hojung Kim deposition testimony) at 27:1-9 (Samsung employee personally involved with negotiating JDLA testifies that supply was contemplated as part of joint development); Lee Decl. ¶ 5, Exh. 57 (Hyeok-Sang Yoo deposition testimony) at 17:23-18:16; 19:25-20:5 (Samsung employee responsible for NAND and DRAM sales to Netlist states that supply under the JDLA is limited to products relevant to joint development).<br><br>Moreover, this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraphs 4 and 5 of the declaration of C.K. Hong. |
| 16. First, a supply commitment from Samsung would "reduce business risk stemming from the possibility that [intermittent semiconductor] shortages would disrupt the flow of products to [Netlist's] customers." | Disputed for the same reasons and evidence identified in response to No. 15, above.<br><br>Moreover, this statement not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 4 of the declaration of C.K. Hong. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| C.K. Hong Decl. ¶ 4 | |
| 17.   Second, a supply commitment from Samsung would "elevat[e] Netlist into an elite group of industry players and provid[e] assurances to Netlist's customers that if they engaged Netlist, they would have good access to supply." <br><br> C.K. Hong Decl. ¶ 4 | Disputed for the same reasons and evidence identified in response to No. 16, above. |
| 18.   On October 8, 2015, Samsung provided the initial draft of an agreement to Netlist. <br><br> LaMagna Decl. Ex. 4 | Undisputed but irrelevant for the same reasons and evidence identified in response to No. 12, above. |
| 19.   Section 6.2 of Samsung's October 8, 2015 draft provided: "Samsung will supply NAND and DRAM to Netlist on Netlist's request at a competitive price similar to the customers purchasing similar volumes of similar products. For the avoidance of doubt, any of the provisions under this Agreement will not be deemed to require Netlist to purchase any products from Samsung or to require Samsung to supply | Undisputed but irrelevant for the same reasons and evidence identified in response to No. 12, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| any products to Netlist." LaMagna Decl. Ex. 4 at -56 | |
| 20.     On October 13, 2015, Netlist provided to Samsung revisions to Samsung's draft agreement in which, among other changes, Netlist removed the following sentence: "For the avoidance of doubt, any of the provisions under this Agreement will not be deemed to require Netlist to purchase any products from Samsung or to require Samsung to supply any products to Netlist." LaMagna Decl. Ex. 5 at -85 | Undisputed that this is what the document says, but disputed to the extent this implies the parties contemplated a supply obligation under the JDLA that extends to product not related to joint development. C.K. Hong testified that the supply obligation under the JDLA was limited to "Raw Materials" necessary to support the commercialization of NVDIMM-P. Choi Decl. ¶ 8, Exh. 7 at 91:4-17; 92:4-12. See also  101:25-102:7 ("Q. And so those were raw materials that were provided in connection with commercialization of the dash P product; correct? A. That's correct.") This is corroborated by the testimony of multiple Samsung employees that any supply obligation was intended to be limited to NAND and DRAM products necessary for joint development of NVDIMM-P. *See, e.g.,* Lee Decl. ¶ 8, Exh. 60 (Kyuhan Han |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | deposition testimony) at 37:22-24, 38:3-4, 34:7-16 ("if we were to supply such a thing, definitely that would have been beneficial to their ***development***"); *Id.* ¶ 2, Exh. 54(Byungyeop Jeon deposition testimony) at 43:25-44:10 (Samsung's 30(b)(6) witness testifies that supply was for NVDIMM-P development components only); *Id.* ¶ 4, Exh. 56 (Hojung Kim deposition testimony) at 27:1-9 (Samsung employee personally involved with negotiating JDLA testifies that supply was contemplated as part of joint development); Lee Decl. ¶ 5, Exh. 57 (Hyeok-Sang Yoo deposition testimony) at 17:23-18:16; 19:25-20:5 (Samsung employee responsible for NAND and DRAM sales to Netlist states that supply under the JDLA is limited to products relevant to joint development). |
| 21. Netlist explained this change as follows: "In Section II.6 of the MOU, Samsung clearly agreed to provide Netlist with NAND and DRAM products. However, in Section 6.2 of its proposed | Disputed for the same reasons and evidence identified in response to No. 20, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| JDLA, Samsung states that nothing in this agreement will 'require Samsung to supply any products to Netlist.' Netlist removed this qualification and returned the language to reflect what was agreed to in the MOU." <br><br> LaMagna Decl. Ex. 5 at -77; *see also* LaMagna Ex. 48 at 65:21-67:11 (Samsung employee involved in negotiations understood Netlist struck provision because "Netlist wanted Samsung's supply of NAND and DRAM products"). | |
| 22.    Netlist and Samsung executed the agreed-upon Joint Development and License Agreement ("JDLA") on November 12, 2015. <br><br> C.K. Hong Decl. ¶ 5; LaMagna Ex. 1 at 1; Answer to First Amended Complaint, Dkt. 27, ¶ 9 | Undisputed |
| 23.    Section 2 of the JDLA is entitled "Collaborative Development Work" and addresses the parties' efforts to jointly | Undisputed |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| develop certain new technologies.<br><br>LaMagna Ex. 1 at § 2; *see also* LaMagna Ex. 49 at 21:10-11 (Samsung engineer: "It was a joint development project with Netlist in regards to next generation memory products.") | |
| 24.    Samsung's intent "was to enter into [the] joint project in order to avoid or prevent [a] lawsuit" by Netlist for patent infringement.<br><br>LaMagna Ex. 49 at 24:12-20; *see also id.* 38:17-39:4, 87:8-14 | Disputed as incomplete. Samsung's intent also included pursuing joint development of NVDIMM-P with the goal of standardization. Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony) at 22:20-23:22; at 32:17-34:9 (even a 1/10,000 chance of success made the joint development project worthwhile for Samsung); *Id.* ¶ 8, Exh. 60 (Kyuhan Han deposition testimony) at 126:6-12; *Id.* ¶ 6, Exh. 58 (Hyunki Ji Deposition Testimony) at 20:18-23. |
| 25.    Samsung "felt that Netlist did not have the capacity or capability" to develop "the technology that [Samsung was] seeking." | Disputed to the extent the timing is ambiguous. Samsung came to that conclusion "by 2017." Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony) at 31:20-32:7, 36:9-38:2. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| LaMagna Ex. 49 at 30:17-32:7; *see also id.* 29:5-20 | |
| 26.  Section 3 of the JDLA is entitled "Development Costs<br><br>LaMagna Ex. 1 at § 3 | Undisputed |
| 27.  Section 3.1 of the JDLA provides, in part: "<u>Fees and Costs</u>. Samsung shall pay to Netlist eight million United States dollars (US $8,000,000) as non-refundable NRE fees . . . ."<br><br>LaMagna Ex. 1 at § 3.1 | Undisputed |
| 28.  Section 3.2 of the JDLA provides, in part: "<u>Taxes</u>. . . . To the extent that any withholding taxes are required by applicable law for the payments set forth in this Agreement, Samsung may deduct any applicable withholding taxes due or payable under the laws of Korea in remitting payment to Netlist under this Agreement, providing that Samsung shall . . . reasonably cooperate with Netlist in any lawful efforts to claim a credit or refund or | Undisputed |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| exemption with respect to any such withholding taxes."<br><br>LaMagna Ex. 1 at § 3.2 | |
| 29.   "As part of this [joint development] effort, Netlist, among other things, spent nearly $10 million in research and development, reported on test results to Samsung, sent Samsung samples, met with Samsung regularly to discuss the results of Netlist's development efforts, and responded to Samsung's inquiries."<br><br>C.K. Hong Decl. ¶ 14 | Disputed because this statement is not supported by any admissible evidence. *See* Samsung's evidentiary objections to paragraph 14 of the declaration of C.K. Hong. |
| 30.   Section 5 of the JDLA is entitled "Technology Standardization and Productization," and it provides, in part, that "The Parties will work together" towards those goals.<br><br>LaMagna Ex. 1 at §§ 5, 5.1 | Undisputed |
| 31.   Section 5.2 of the JDLA provides: "Right of First Refusal. Netlist will provide Samsung a right of first refusal to | Undisputed |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| acquire Netlist's NVDIMM-P technology in a separate, subsequent transaction before Netlist offers such technology to any third party."<br><br>LaMagna Ex. 1 at § 5.2 | |
| 32.    Section 6 of the JDLA is entitled "Supply of Components."<br><br>LaMagna Ex. 1 at § 6 | Undisputed |
| 33.    Section 6.1 of the JDLA provides: "Supply by Netlist. Netlist will provide Samsung any NVDIMM-P controller on Samsung's request at a price lower than the price Netlist provides to any other buyer."<br><br>LaMagna Ex. 1 at § 6.1 | Undisputed |
| 34.    Section 6.2 of the JDLA provides: "Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (*i.e.*, among customers purchasing similar volumes of similar products)." | Undisputed |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| LaMagna Ex. 1 at § 6.2 | |
| 35.    Kyuhan Han, a Samsung employee who negotiated the JDLA, understood that it obligated Samsung to provide NAND and DRAM products to Netlist.<br><br>LaMagna Ex. 48 at 20:15-18, 37:22-38:4, 96:12-18 | Disputed as this statement misstates Mr. Han's testimony. Kyuhan Han testified that any supply obligation was "[p]ursuant to the agreement." Lee Decl. ¶ 8, Exh. 60 (Kyuhan Han deposition testimony) at 37:22-24, 38:3-4, and that supply under the JDLA was intended for joint development; at 34:7-16 ("if we were to supply such a thing, definitely that would have been beneficial to their *development*.")<br><br>That any supply obligation was limited to joint development is also supported by the testimony of other Samsung employees. Lee Decl. ¶ 2, Exh. 54(Byungyeop Jeon deposition testimony) at 43:25-44:10 (Samsung's 30(b)(6) witness testifies that supply was for NVDIMM-P development components only); *Id.* ¶ 4, Exh. 56 (Hojung Kim deposition testimony) at 27:1-9 (Samsung employee personally involved with negotiating JDLA testifies that supply |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | was contemplated as part of joint development); Lee Decl. ¶ 5, Exh. 57 (Hyeok-Sang Yoo deposition testimony) at 17:23-18:16; 19:25-20:5 (Samsung employee responsible for NAND and DRAM sales to Netlist states that supply under the JDLA is limited to products relevant to joint development). |
| | Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 36.    Samsung offered to supply NAND and DRAM to Netlist because it understood doing so would benefit Netlist.  LaMagna Ex. 48 at 49:13-23; *cf. id.* 65:21-66:2 | Disputed for the same reasons as identified in response to No. 35, above. |
| 37.    On June 1, 2016, Samsung's Principal Engineer for Memory Product Planning & Application Engineering, Indong Kim, sent an internal email in | Undisputed that this is what the document says. Disputed to the extent that this statement implies that Mr. Kim thought that Samsung had a supply obligation under |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| which he quoted JDLA § 6.2 and wrote that "It is a provision limited to the volume condition, so Netlist claiming that it is low cost is an overinterpretation that's extending beyond the agreement."<br><br>LaMagna Decl. Ex. 6 at -59 | the JDLA that extended beyond products necessary for joint development of N VDIMM-P. Mr. Kim testified his intention with this email was not to imply that Samsung had an obligation to supply Netlist with product beyond the scope of the joint development. Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony)  at 88:10-90:2 (Kim's statement is simply that Netlist is not entitled to a low cost); *see also id.* 86:23-87:14 (Kim explains that JS Choi was concerned that others would incorrectly perceive Netlist as a supplier and wanted to prevent that, showing the JDLA was not intended as a supply contract for resale products).<br><br>Moreover, this statement is not supported by admissible evidence, as Mr. Kim's email is a *post hoc* statement by a Samsung employee "not even alleged to have participated in drafting or negotiating [Section 6.2 of the JDLA]", and is therefore inadmissible "and may not be considered on |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | a motion for summary judgment." *Faulkner v. National Geographic Soc.*, 452 F.Supp.2d 369, 379 (S.D.N.Y. 2006). <br><br> Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 38.    On January 18, 2018, the Director of Samsung's Memory Sales Team, Hyeok-Sang Yoo, received an email from a Samsung colleague containing a screenshot of JDLA § 6.2 and stating that "Pursuant to the agreement, supply for NAND and DRAM products is necessary if there is a request from Netlist." <br><br> LaMagna Decl. Ex. 7 at -69 | Undisputed that this is what the document says. Disputed to the extent that this statement implies that Mr. Yoo or Mr. Kim thought that Samsung had a supply obligation under the JDLA that extended beyond products necessary for joint development of N VDIMM-P. Lee Decl. ¶ 5, Exh. 57 (Hyeok-Sang Yoo deposition testimony) at 17:23-18:16; 19:25-20:5 (Mr. Yoo testifies that supply under the JDLA is limited to products relevant to joint development); Lee Decl. ¶ 4, Exh. 56 (Hojung Kim deposition testimony) at 27:1-9 (Mr. Kim testifies that supply was contemplated as part of joint development). |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 39.    On February 2, 2018, Samsung's Vice President and Group Leader for Business Strategy in its Memory Division, Yong Hwangbo, sent an internal email in which he quoted and highlighted JDLA § 6.2, and wrote that "there is an obligation to supply NAND/DRAM at a competitive price if N company [*i.e.*, Netlist] makes a request." Mr. Hwangbo also added that "the supply price" for Netlist "is somewhat higher than other similarly sized company (Smart Modular)."<br><br>LaMagna Decl. Ex. 8 at -15-16; *see also* LaMagna Ex. 50 at 59:15-60:6 (sales leader acknowledged receipt of Mr. Hwangbo's email but testified "as far as [he] was concerned, it was not related to the [sales] business" so Samsung "just went ahead and supplied as [it was] doing on the | Disputed as out of context, incomplete, and misleading. Plaintiff attaches a version of the document that excludes a later email where another Samsung employee corrected Mr. Hwangbo, stating that Samsung's obligation was "to provide NAND/DRAM *for development.*" Lee Decl. ¶ 15, Exh. 67 at SEC003566 (emphasis added).<br><br>Moreover, this statement is not supported by admissible evidence, as Mr. Hwangbo's email is a *post hoc* statement by a Samsung employee "not even alleged to have participated in drafting or negotiating [Section 6.2 of the JDLA]", and is therefore inadmissible "and may not be considered on a motion for summary judgment." *Faulkner v. National Geographic Soc.*, 452 F.Supp.2d 369, 379 (S.D.N.Y. 2006). |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| business side") | Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 40.    Section 7.1 of the JDLA provides, in part: "<u>Release of Samsung</u>. Netlist . . . releases, acquits and forever discharges Samsung . . . from any and all actions, causes of action, suits, debts, liability, claims and demands for infringement of Netlist's Licensed Patents . . . prior to the Effective Date" of the JDLA.<br><br>LaMagna Ex. 1 at § 7.1 | Undisputed |
| 41.    Section 8.2 of the JDLA provides, in part: "<u>License to Samsung</u>. Netlist . . . hereby grants . . . to Samsung . . . a perpetual . . . paid-up, worldwide, non-exclusive, non- transferable, non-sublicensable license under Netlist's Licensed Patents to make and have made . . . Samsung's Licensed Products, and to use, sell, offer for sale, import and otherwise transfer or dispose of such | Undisputed |

23

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| products." <br><br> LaMagna Ex. 1 at § 8.2 | |
| 42.    Samsung stated to Korean tax authorities that its "main reason for entering into the [JDLA] was . . . to resolve the risk of Netlist, Inc. filing a patent infringement suit" against Samsung. <br><br> LaMagna Decl. Ex. 9 at -63; *see also*, *e.g.*, LaMagna Ex. 48 at 27:6-21, 30:1-32:1, 89:4-10, 93:3-13, 126:14-19 (Samsung employee who negotiated JDLA agreed and viewed the patent license as more valuable than non-recurring engineering fees Samsung paid to Netlist); LaMagna Ex. 51 at 24:9-22 (similar) | Undisputed as to content of the document. Disputed as to completeness. Samsung's stated reason to the Korean tax authorities was also "to engage in developing NVDIMM-P products" with Netlist. LaMagna Decl. Ex. 9 at NL107763. This is corroborated by the testimony of multiple Samsung employees. *See* Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony) at 22:20-23:22, 32:17-34:9; *Id.* ¶ 8, Exh. 60 (Kyuhan Han deposition testimony) at 126:6-12; *Id.* ¶ 6, Exh. 58 (Hyunki Ji deposition testimony) at 20:18-23. <br><br> Further disputed to the extent Netlist conflates the value of the patent to Netlist with the value of the license to Samsung. Lee Decl. ¶ 4, Exh. 56 (Hojung Kim deposition testimony) at 24:9-22; Lee Decl. ¶ 3, Exh. 55 (Byeungyeop Jeon deposition testimony) at 183:10-184:1 (valuation was |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | not done in connection with Samsung's activities). |
| 43.     Section 13.2 of the JDLA, provides, in part: "Termination. . . . the other party shall have a right to terminate this Agreement upon written notice to a Party if: 1) such party is in material breach of this Agreement and it is not cured within thirty (30) days period [*sic*] from the other Party's written demand, or as a consequence of the breach the purpose of this Agreement cannot be achieved . . . ." <br><br> LaMagna Ex. 1 at § 13.2 | Undisputed |
| 44.     Section 15 of the JDLA provides, in part: "All notices required hereunder shall be in writing and sent by registered or certified mail or facsimile and shall be valid upon receipt thereof by the addressee. The addresses of the Parties hereto shall be as follows . . . . If to Samsung: Name: Seung Min Sung[,] Title: Director[,] Address: San #16 Banwol-Dong, Hwasung City, Gyongi-Do 445- | Undisputed |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 701, Korea"<br><br>LaMagna Ex. 1 at § 15 | |
| 45.     Section 16.2 of the JDLA provides: "No Waiver. The failure by either Party to enforce any of the terms and conditions of this Agreement shall not constitute a waiver of such Party's right thereafter to enforce that or any other terms and conditions of this Agreement."<br><br>LaMagna Ex. 1 at § 16.2 | Undisputed |
| 46.     After the execution of the JDLA, Samsung withheld $1,320,000 of the $8,000,000 non-recurring engineering fee owed to Netlist.<br><br>LaMagna Decl. Ex. 10; LaMagna Decl. Ex. 11; Sasaki Decl. ¶ 3 | Disputed only to the extent that this statement implies that Samsung withheld the $1,320,000 and kept it for its own. Samsung deducted 16.5% from the $8,000,000 non-recurring engineering fee and paid that amount to the Korean National Tax Service. Samsung could not have returned the tax withholding to Netlist, as it had already been paid to the Korean National Tax Service. Dkt. 18-2 (First Amended Complaint) at ¶ 16; LaMagna Decl. Ex. 13 at 2; Choi Decl. ¶ 62, |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Exh. 61 at NL118221.<br><br>*See also* Samsung's evidentiary objections to paragraph 3 of the declaration of Gail Sasaki. |
| 47.    On December 16, 2015, Netlist wrote to Mr. Han requesting that the remainder of the non-recurring engineering fees be paid to Netlist because it "was not subject to [a] royalty withholding tax under the applicable law."<br><br>LaMagna Decl. Ex. 11; Sasaki Decl. ¶ 4 | Disputed only to the extent that this statement implies that Samsung withheld the $1,320,000 and kept it for its own. Samsung deducted 16.5% from the $8,000,000 non-recurring engineering fee and paid that amount to the Korean National Tax Service. Samsung could not have returned the tax withholding to Netlist, as it had already been paid to the Korean National Tax Service. Dkt. 18-2 (First Amended Complaint) at ¶ 16; LaMagna Decl. Ex. 13 at 2; Choi Decl. ¶ 62, Exh. 61 at NL118221.<br><br>Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | *See also* Samsung's evidentiary objections to paragraph 4 of the declaration of Gail Sasaki. |
| 48.     Mr. Han did not personally do anything to cooperate with Netlist's efforts to recover the $1,320,000 withheld by Samsung, nor was Mr. Han aware of any efforts by others at Samsung to cooperate with Netlist.<br><br>LaMagna Ex. 48 at 133:10-24; *see also* LaMagna Ex. 51 at 117:8-119:3 (similar) | Undisputed but misleading to the extent this implies Samsung did not do anything to cooperate with Netlist's efforts to recover the $1,320,000. Mr. Han was transferred to another department in December 2016. Lee Decl. ¶ 8, Exh. 60 (Kyuhan Han deposition testimony) at 129:13-130:3, 134:8-15.<br><br>Other employees at Samsung cooperated with Netlist's efforts to recover the $1,320,000. For example, Samsung had numerous communications with Netlist and PWC, Netlist's tax consultant, shared drafts of what Samsung proposed to submit to the tax authorities, and even asked Netlist and PWC to propose language that it wanted Samsung to use. Choi Decl. ¶ 64, Exh. 63; ¶ 66, Exh. 65 at NL118544.<br>¶ 64, Exh. 63 at  NL118533-34;<br>¶ 66, Exh. 65 at NL118544-48; |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | PWC acknowledged that Samsung submitting its response to the tax authorities was an essential step to Netlist getting a refund. Choi Decl. ¶ 67, Exh. 66 at NL118556-57. In fact, PWC even thanked Samsung for its cooperation, showing that cooperation is not what Netlist complains of here. *Id.* ¶ 65, Exh. 64 at  NL118535. |
| 49.    In a December 31, 2015 letter, Samsung stated to Netlist that the funds were withheld "according to the United States-Republic of Korea Income Tax Convention . . . and Republic of Korea Corporate Tax Act," and that "Netlist should discuss this matter directly with the NTS," referring to the Korean National Tax Service.<br><br>LaMagna Decl. Ex. 10; Sasaki Decl. ¶ 4; *see also* LaMagna Decl. Ex. 39 at 12 (Supplemental Response to Interrogatory No. 11: "Samsung informed Netlist that if it desired a refund, it could do so by | Undisputed |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| directly contacting the Korean National Tax Service.") | |
| 50.    On behalf of Netlist, PricewaterhouseCoopers "request[ed] that [Samsung] submit Samsung's Q&A to the [Korean National Tax Service] on the basis that the $8 million is an NRE payment not a license fee and that [Samsung] stick to the factual background." <br><br> LaMagna Decl. Ex. 12; Sasaki Decl. ¶ 5 | Undisputed |
| 51.    Samsung responded that "our company believes that we should reply" to the Korean National Tax Service "to the effect that the nature of the agreement was viewed as license and tax was withheld accordingly." <br><br> LaMagna Decl. Ex. 12; Sasaki Decl. ¶ 5 | Undisputed |
| 52.    Samsung told the Korean National Tax Service that the $8,000,000 non-recurring engineering fee owed to Netlist under the JDLA was a patent royalty | Disputed as misleading. Samsung was not a party to Netlist's appeal to the Korean Tax Tribunal, which was between Netlist and the East Suwon Tax Office (a local office of |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| payment.<br><br>LaMagna Decl. Ex. 9 at -68; Sasaki Decl. ¶ 6; *see also* LaMagna Decl. Ex. 13 at -44-45 (Korean Tax Tribunal decision summarizing Samsung's argument); LaMagna Decl. Ex. 39 at 12 (Supplemental Response to Interrogatory No. 11: "Samsung provided truthful information within its knowledge relating to the Agreement and the payment of any fees owed to Netlist under it upon request by the Korean National Tax Service.") | the Korean National Tax Service). LaMagna Decl. Ex. 13 at 1.<br><br>Therefore, Samsung did not make "arguments" in these proceedings. Samsung's sole involvement was to truthfully respond to inquiries made by the East Suwon Tax Office regarding the non-recurring engineering fee. LaMagna Decl. Ex. 13 at 13-14.<br><br>Moreover, omits the fact that Netlist was forced to appeal to the Korean Tax Tribunal because the East Suwon Tax Office had rejected *Netlist's* arguments and found that the $8,000,000 was a royalty income. LaMagna Decl. Ex. 2 at 13-14. |
| 53.    On November 17, 2020, the Korean Tax Tribunal rejected Samsung's arguments, finding that the $8,000,000 non-recurring engineering fee owed to Netlist under the JDLA was not a patent royalty payment. | Disputed for the same reasons as identified in response to No. 52, above.<br><br>*See also* Samsung's evidentiary objections to paragraph 7 of the declaration of Gail Sasaki. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| LaMagna Decl. Ex. 13; Sasaki Decl. ¶ 7 | |
| 54.    Netlist suffered harm as a direct result of Samsung's wrongful tax withholding and refusal to cooperate with Netlist in securing payment, including because Netlist was not able to use nearly 20% of the non-recurring engineering fee for five years and expended significant costs, resources and effort in recovering that amount.<br><br>Sasaki Decl. ¶ 8 | Disputed. Netlist won its tax appeal, and received a full refund plus interest. Choi Decl. ¶ 68, Exh. 67 at NL118871-118872; ¶ 6, Exh. 5 at 136:13-137:6<br><br>Also disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 8 of the declaration of Gail Sasaki. |
| 55.    After execution of the JDLA, Netlist invested heavily in sales and marketing efforts to expand the market for Samsung-based products.<br><br>C.K. Hong Decl. ¶ 9 | Disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 9 of the declaration of C.K. Hong. |
| 56.    Netlist convinced its customers who previously had not had access to Samsung products to qualify server systems with Samsung NAND and DRAM. | Disputed for the same reasons as identified in response to No. 55, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| C.K. Hong Decl. ¶ 9 | |
| 57.    Netlist actively promoted its access to Samsung memory chips, building relationships with customers who relied on Netlist's access. Netlist thus built important goodwill with its customers, who relied on Netlist for a supply of Samsung NAND and DRAM for products designed to utilize Samsung memory.<br><br>C.K. Hong Decl. ¶ 9 | Disputed for the same reasons as identified in response to No. 55, above. |
| 58.    Netlist mentioned the JDLA more than ten times in its 2015 Annual Report.<br><br>LaMagna Decl. Ex. 37 at 3-4, 6, 12, 14, 28, 34, 43, 46, F-7 | Undisputed. |
| 59.    Netlist's 2015 Annual Report explained that, among other provisions, the JDLA "contractually comit[ted] Samsung to supply NAND flash and DRAM products to [Netlist] on [its] request at competitive prices," and that the parties had agreed to "work together to jointly develop" certain new technologies | Undisputed but incomplete and misleading. Netlist's 2015 Annual Report also states that the JDLA includes "access to *raw materials* (DRAM and NAND flash) at competitive prices[.]" LaMagna Decl. Ex. 37 at 34. This shows the DRAM and NAND supply commitment was limited to raw materials necessary for the jointly |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| that they hoped would be adopted throughout the electronics industry.<br><br>LaMagna Decl. Ex. 37 at 6, 34 | developed NVDIMM-P product. *C.f.* Choi Decl. ¶ 8, Exh. 7 at 92:4-12, 101:25-102:7. (Netlist CEO C.K. Hong testifying that the term "Raw Materials" in a revised term sheet referred to various DRAM and NAND flash components necessary for the parties' joint efforts to develop NVDIMM-P.)<br><br>The 2015 Annual report also states that Netlist "[has] no long-term FPGA, DRAM or NAND flash supply contracts." LaMagna Decl. Ex. 37 at 13. |
| 60.     It was Samsung and Netlist's mutual understanding that Netlist would obtain Samsung products directly from Samsung. For Netlist to voluntarily go to a third-party for supply of Samsung NAND and DRAM would not make economic sense.<br><br>C.K. Hong Decl. ¶ 6; *see also* LaMagna Decl. Ex. 6 at -61 (internal Samsung email recognizing Netlist "are committed to selling 100% Samsung product"); P.K. | Disputed. There was no "mutual understanding" of supply obligation outside the limits of the parties' joint development. C.K. Hong testified that the supply obligation under the JDLA was limited to "Raw Materials" necessary to support the commercialization of NVDIMM-P. Choi Decl. ¶ 8, Exh. 7 at 91:4-17; 92:4-12. See also  101:25-102:7 ("Q. And so those were raw materials that were provided in connection with commercialization of the |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Hong MSJ Decl. ¶ 6 (explaining economic incentive to purchase directly from Samsung) | dash P product; correct? A. That's correct.")<br><br>This is corroborated by the testimony of multiple Samsung employees that any supply obligation was intended to be limited to NAND and DRAM products necessary for joint development of NVDIMM-P. *See, e.g.,* Lee Decl. ¶ 8, Exh. 60 (Kyuhan Han deposition testimony) at 37:22-24, 38:3-4, 34:7-16 ("'if we were to supply such a thing, definitely that would have been beneficial to their *development*'); *Id.* ¶ 2, Exh. 54 (Byungyeop Jeon deposition testimony) at 43:25-44:10 (Samsung's 30(b)(6) witness testifies that supply was for NVDIMM-P development components only); *Id.* ¶ 4, Exh. 56 (Hojung Kim deposition testimony) at 27:1-9 (Samsung employee personally involved with negotiating JDLA testifies that supply was contemplated as part of joint development); Lee Decl. ¶ 5, Exh. 57 (Hyeok-Sang Yoo deposition testimony) at 17:23-18:16; 19:25-20:5 (Samsung employee responsible for NAND and DRAM sales to |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Netlist states that supply under the JDLA is limited to products relevant to joint development). |
| | In addition, disputed to the extent this implies the only way to obtain product "Directly from Samsung" is through SSI. Netlist could have purchased product from other subsidiaries of Samsung as well. *See* Lee Decl. ¶ 9, Exh. 61 at 26:19-23 (Neal Knuth deposition testimony) ("I understood they could buy from anyone."); 117:16-118:16 (could purchase from sister division SEA or other branches of Samsung); 121:4-8 ("… Netlist was trying to find other non-Samsung sources for the NAND and DRAM products that Samsung…" was unable to supply to Netlist."); *see also* Lee Decl. ¶ 16, Exh. 68 at SEC005295 ("… I am rejecting new orders as they will buy Samsung from other sources…. I am afraid Netlist will buy from SEA and other branch possible also.") [Knuth Dep. Exh. PX144]; Lee Decl. ¶ 11, |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Exh. 63 at 127:16-129:2 (Steven Metz deposition testimony) (Netlist "… will procure product through the open markets in Taiwan, Hong Kong, and most likely the Branded group for SSD."); ¶ 17, Exh. 69 at SEC058106 ("I have let Netlist know that we have no support for Q3, and they will investigate getting support from SEA or SSD.")<br><br>Moreover, these statements are not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 6 of the declaration of C.K. Hong, and to paragraph 6 of the declaration of P.K. Hong. |
| 61.     The first step in the process of purchasing NAND and DRAM from Samsung involved the regular submission of forecasts by Netlist showing the amount of Samsung product Netlist would need going forward.  Such forecasts included line items with particular SKU numbers, volumes and delivery dates. | Disputed to the extent this statement implies Netlist's submission of forecasts is limited to post-JDLA transactions. As the undisputed evidence demonstrates, Netlist has consistently used forecasts since 2001 through present. *See* Choi Decl. ¶ 9, Exh. 8; ¶ 10, Exh. 9; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 35:10- |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| P.K. Hong MSJ Decl. ¶ 4; *see also* LaMagna Ex. 50 at 27:9-29:23, 55:2-19 | 36:13, 47:24-48:12, 54:24-55:10, 61:25-62:14.<br><br>*See also* Samsung's evidentiary objections to paragraph 4 of the declaration of P.K. Hong. |
| 62.    Upon receipt of a forecast, Samsung would inform Netlist which line items Samsung was willing to fulfill.<br><br>P.K. Hong MSJ Decl. ¶ 4; *see also* LaMagna Ex. 50 at 27:9-29:23, 55:2-19 | Disputed for the same reasons and evidence identified in response to No. 61, above.<br><br>Furthermore, the phrase "willing to fulfill" is argumentative and disputed because the fulfillment of forecasts was not a matter of Samsung's willingness—it was contingent upon the allocation and availability of product, which are widely accepted industry norms and practices. *See* Choi Decl. ¶ 14, Exh. 13; ¶ 52, Exh. 51; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 37:9-22, 49:15-20, 91:10-94:21; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5, 152:15-24; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth Deposition Testimony) at 60:16-23; 132:23-133:3; 149:2-150:5; 190:11-191:24. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 63.     Beginning in mid-2017, Samsung often refused to fill the entire quantity reflected in Netlist's forecasts.<br><br>P.K. Hong MSJ Decl. ¶ 5; *see also* LaMagna Ex. 50 at 27:9-29:23, 55:2-19 | Disputed because nonfulfillment of forecasts was a common practice between the parties since 2001 through present, not limited to post-2017. As the undisputed evidence demonstrates, since 2001 through present, Netlist has consistently used forecasts and never expected the entirety of forecasts be fulfilled. *See* Choi Decl. ¶ 9, Exh. 8; ¶ 10, Exh. 9; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 35:10-36:13, 47:24-48:12, 54:24-55:10, 61:25-62:14; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth deposition testimony) at 28:15-21, 76:2-19; ¶ 11, Exh. 63 (Steven Metz deposition testimony) at 11:21-12:4 ("backlogs were purchase orders that Netlist would try to place").<br><br>Furthermore, the phrase "refused to fill" is argumentative and disputed because the fulfillment of forecasts was not a matter of Samsung's willingness—it was contingent upon the allocation and availability of |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | product, which are widely accepted industry norms and practices. *See* Choi Decl. ¶ 14, Exh. 13; ¶ 52, Exh. 51; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 37:9-22, 49:15-20, 91:10-94:21; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5, 152:15-24; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth Deposition Testimony) at 60:16-23; 132:23-133:3; 149:2-150:5; 190:11-191:24.<br><br>June 2017, in particular, was a period of high demand, where Samsung " . . . received requests from lots of potential customers that wanted to buy product…." Lee Decl. (Steven Metz deposition testimony) ¶ 11, Exh. 63 at 103:11-15, 105:3-14.<br><br>*See also* Samsung's evidentiary objections to paragraph 5 of the declaration of P.K. Hong. |
| 64.    After receiving Samsung's response, Netlist would issue a purchase order reflecting the amount of product Samsung | Disputed to the extent that it implies Netlist's use of purchase orders is limited to post-JDLA transactions. As the undisputed |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| had stated it was willing to sell.<br><br>P.K. Hong MSJ Decl. ¶ 5 | evidence demonstrates, Netlist has consistently used purchase orders since 2001 through present. *See* Choi Decl. ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 28:16-29:24, 35:10-36:13, 48:16-18.<br><br>*See also* Samsung's evidentiary objections to paragraph 5 of the declaration of P.K. Hong. |
| 65.    If Samsung followed through on a purchase order, it would deliver NAND and DRAM products to Netlist.<br><br>P.K. Hong MSJ Decl. ¶ 5 | Disputed for the same reasons and evidence identified in response to No. 64, above. |
| 66.    Beginning in mid-2017, Samsung frequently failed to follow through on Netlist's purchase orders and instead required Netlist to cancel purchase orders that it had already placed.<br><br>P.K. Hong MSJ Decl. ¶ 5 | Disputed because nonfulfillment was a common practice between the parties since 2001 through present, not limited to post-2017. As the undisputed evidence demonstrates, since 2001 through present, Netlist understood its purchase orders—that were either pending or placed in the backlog—were not always going to be fulfilled. *See* Choi Decl. ¶ 9, Exh. 8; ¶ 10, |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Exh. 9; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 35:10-36:13, 47:24-48:12, 54:24-55:10, 61:25-62:14; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth deposition testimony) at 28:15-21, 76:2-19; ¶ 11, Exh. 63 (Steven Metz deposition testimony) at 11:21-12:4 ("backlogs were purchase orders that Netlist would try to place"). <br><br> Furthermore, the phrase "failed to follow through" is argumentative and disputed because the fulfillment of forecasts was not a matter of Samsung's willingness—it was contingent upon the allocation and availability of product, which are widely accepted industry norms and practices. *See* Choi Decl. ¶ 14, Exh. 13; ¶ 52, Exh. 51; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 37:9-22, 49:15-20, 91:10-94:21; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5, 152:15-24; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth Deposition |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Testimony) at 60:16-23; 132:23-133:3; 149:2-150:5; 190:11-191:24.<br><br>June 2017, in particular, was a period of high demand, where Samsung " . . . received requests from lots of potential customers that wanted to buy product…." Lee Decl. (Steven Metz deposition testimony) ¶ 11, Exh. 63 at 103:11-15, 105:3-14.<br><br>*See also* Samsung's evidentiary objections to paragraph 5 of the declaration of P.K. Hong. |
| 67.    Netlist only purchased Samsung NAND and DRAM on the secondary market from sellers other than Samsung when Samsung refused to fulfill Netlist's requests to purchase such products directly from Samsung.<br><br>P.K. Hong MSJ Decl. ¶ 6 | Disputed because this statement is not supported by any admissible evidence. *See* Samsung's evidentiary objections to paragraph 6 of the declaration of P.K. Hong. |
| 68.    At a meeting on February 22, 2016, Mr. Yoo, informed Netlist that "up to a year ago [ ] he was told not to support | Disputed. Mr. Yoo denies saying this. Declaration of Hyeok-Sang Yoo ("Yoo Decl.") at ¶ 3. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Netlist" and "actually was not allowed to visit Netlist."  LaMagna Decl. Ex. 14 | Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 69.    At that February 22, 2016 meeting, Mr. Yoo informed Netlist "that he is now being told to support Netlist and will."  LaMagna Decl. Ex. 14 | Disputed. Mr. Yoo denies saying this. Yoo Decl. at ¶ 4.  Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 70.    Before the JDLA was signed, Samsung supplied effectively no product to Netlist.  C.K. Hong Decl. ¶ 8 | Disputed. Netlist had purchased significant amount of NAND and DRAM products from Samsung starting in 2001 and continuously through the parties' execution of JDLA in November 2015. *See* Choi Decl. ¶ 2, Exh. 1 at SEC008161 ("$200M+ purchase history beginning in 2001"); ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-13:20, 14:8-15; ¶ 4, Exh. 3 (Netlist's 2014 10K) at pp. 6 and F-33.  Moreover, this statement is not supported |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | by admissible evidence. *See* Samsung's evidentiary objections to paragraph 8 of the declaration of C.K. Hong. |
| 71.    After Netlist and Samsung entered the JDLA, Samsung routinely supplied Netlist with its requests and needs for Samsung NAND and DRAM products. Overall, Netlist's orders with and fulfillment by Samsung went smoothly and continued to increase rapidly throughout 2016 and 2017.<br><br>P.K. Hong Decl., Dkt. 84-18, ¶ 4; P.K. Hong MSJ Decl. ¶ 3 | Disputed. From 2001 through present, the parties have maintained its usual course of conduct with the mutual understanding that Samsung would not fulfill all of Netlist's requests for the NAND and DRAM products, and that Netlist's requests for product would be subject to the practice of allocation. *See* Choi Decl. ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 35:10-36:13, 47:24-48:12, 54:24-55:10, 61:25-62:14; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5; ¶ 54, Exh. 53 at NL039164 (In April 2016, Raymond Jiang writes to Neal Knuth in hopes of buying more NAND: "I know it's insane but want to see try our luck . . . I know it's not something easy or possible, but want to give it a try"); Lee Decl. ¶ 21, Exh. 72 at NL024952.<br><br>Indeed, in 2015, 2016, and 2017, incidents |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | of nonfulfillment continued, and Netlist was subject to the cap on how much it could order from Samsung. *See* Choi Decl. ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 48:19-50:6, 54:24-55:10; ¶ 14, Exh. 13 at NL004680 ("2016/early 2017 … limited allocation support" "Need monthly allocation increased to $5M per month"). <br><br> Moreover, this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 3 of the declaration of P.K. Hong. |
| 72.    In 2016, Netlist purchased approximately $9 million worth of NAND and DRAM from Samsung. <br><br> C.K. Hong Decl. ¶ 8 | Undisputed |
| 73.    In the first half of 2017, Samsung's supply of NAND and DRAM to Netlist was approximately $16 million. <br><br> C.K. Hong Decl. ¶ 8 | Undisputed |
| 74.    On March 16, 2017, Samsung | Undisputed as to content of document. |

| | PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1 2 3 | | |
| 4 5 6 7 8 9 10 11 12 13 14 | Principal Professional Hyeok-sang Yoo, instructed others at Samsung that they should "delete any of non-confirmed [purchase orders] which Netlist placed without [Samsung's] commitment," explaining that while Samsung would "have to honor and support firm confirmed backlog," all "non confirmed won't be considered from now on."<br><br>LaMagna Decl. Ex. 15 at -302 | Disputed to the extent this implies a change in course of dealing in mid-2017. Nonfulfillment was a common practice between the parties since 2001 through present, not limited to post-2017. As the undisputed evidence demonstrates, since 2001 through present, Netlist understood its purchase orders—that were either pending or placed in the backlog—were not always going to be fulfilled. *See* Choi Decl. ¶ 9, Exh. 8; ¶ 10, Exh. 9; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 35:10-36:13, 47:24-48:12, 54:24-55:10, 61:25-62:14; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5; ¶ 54, Exh. 53 at NL039164 (In April 2016, Raymond Jiang writes to Neal Knuth in hopes of buying more NAND: "I know it's insane but want to see try our luck . . . I know it's not something easy or possible, but want to give it a try"); Lee Decl. ¶ 9, Exh. 61 (Neal Knuth deposition testimony) at 28:15-21, 76:2-19; ¶ 11, Exh. 63 (Steven Metz deposition testimony) at 11:21-12:4 |
| 28 | | |

3742594.2

47

Case No. 8:20-cv-00993-MCS-ADS
DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
50

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | ("backlogs were purchase orders that Netlist would try to place"; ¶ 5, Exh. 57 (Hyeok-sang Yoo deposition testimony) at 30:3-8 (supply to Netlist varied throughout 2015 to present); 36:2-22 (allocation quantity varied with quantity of product available since 2015); ¶ 21, Exh. 72 at NL024952.

Indeed, in 2015, 2016, and 2017, incidents of nonfulfillment continued, and Netlist was subject to the cap on how much it could order from Samsung. *See* Choi Decl. ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 48:19-50:6, 54:24-55:10; ¶ 14, Exh. 13 at NL004680 ("2016/early 2017 … limited allocation support" "Need monthly allocation increased to $5M per month").

Mid-2017, in particular, was a period of high demand, where Samsung " . . . received requests from lots of potential customers that wanted to buy product…." Lee Decl. (Steven Metz deposition testimony) ¶ 11, Exh. 63 at 103:11-15, 105:3-14. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Also disputed to the extent this implies fulfillment of Netlist's requests for product was a matter of Samsung's willingness—it was contingent upon the allocation and availability of product, which are widely accepted industry norms and practices. *See* Choi Decl. ¶ 14, Exh. 13; ¶ 52, Exh. 51; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 37:9-22, 49:15-20, 91:10-94:21; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5, , 152:15-24; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth Deposition Testimony) at 60:16-23; 132:23-133:3; 149:2-150:5; 190:11-191:24.<br><br>Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 75.    On March 23, 2017, Netlist's primary sales contact at Samsung, Neal Knuth, responded to Mr. Yoo, stating that Netlist had not submitted any unapproved | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| purchase orders to date and that "this [was] the first [he] hear[d] of an issue with Netlist backlog," although he had already "rejected many [purchase orders] from Netlist" for various products.<br><br>LaMagna Decl. Ex. 15 at -301 | identified in response to No. 74, above. |
| 76. On April 21, 2017, Samsung sales executive Arnold Kim referenced a prior discussion concerning Netlist and instructed several colleagues to "Please manage the sales to dwindle down slowly."<br><br>LaMagna Decl. Ex. 16 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 77. In or about May 2017, Samsung stopped agreeing to support Netlist's NAND and DRAM product requests and began refusing to allow Netlist to submit purchase orders for such products.<br><br>P.K. Hong Decl., Dkt. 84-18, ¶ 5; P.K. Hong MSJ Decl. ¶ 3; C.K. Hong Decl. ¶ 10 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 78. On May 15, 2017, Mr. Knuth, was | Undisputed as to content of document. |

50

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| instructed to "not accept" certain purchase orders from Netlist.<br><br>LaMagna Decl. Ex. 15 at -97, 99 | Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 79.    On or about May 18, 2017, Netlist and Samsung executives met, at which time Netlist requested product support for NAND and DRAM as previously provided by Samsung. Samsung did not indicate whether product support would be forthcoming.<br><br>P.K. Hong Decl., Dkt. 84-18, ¶ 7 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 80.    On May 21, 2017, Netlist emailed Mr. Knuth and others, reiterating that Netlist "need[s] certain allocation" in order "to maintain current business" and that Samsung's "product allocation is critical."<br><br>LaMagna Decl. Ex. 18 at -07 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 81.    On May 23, 2017, Mr. Knuth wrote to his supervisor, Steven Metz, that he had "let Netlist know that [Samsung had] no | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| support for Q3," further noting that "before issues" he "project[ed] $50M in 2017 revenue and $75M in 2018" from Netlist.<br><br>LaMagna Decl. Ex. 18 at -06; see also LaMagna Ex. 50 at 49:6-14 ("when Samsung communicates that it is unable to offer support . . . [w]hat its saying is that there is no availability to supply [requested products] during this period.") | for the same reasons and evidence identified in response to No. 74, above. |
| 82.   On May 24, 2017, Mr. Metz informed Mr. Knuth and others that Mr. Metz had also "let [Netlist] know that Samsung had zero allocation in Q3 to support Netlist." Mr. Metz further commented that "Since Samsung is nearly 100% of their support and Revenue this will have a dramatic impact on their financials and future business."<br><br>LaMagna Decl. Ex. 18; see also LaMagna Decl. Ex. 19 ("they have no other bread and butter") | Undisputed but misleading. Steven Metz meant that Samsung was nearly 100% of Netlist's memory resale revenue stream only. Lee Decl. ¶ 11, Exh. 63 (Steven Metz deposition testimony) at 91:13-92:15. Also disputed for the same reasons and evidence identified in response to No. 74, above.<br><br>In addition, disputed to the extent this implies the only way to obtain product "Directly from Samsung" is through SSI. Netlist could have purchased product from |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | other subsidiaries of Samsung as well. *See* Lee Decl. ¶ 9, Exh. 61 at 26:19-23 (Neal Knuth deposition testimony) ("I understood they could buy from anyone."); 117:16-118:16 (could purchase from sister division SEA or other branches of Samsung); 121:4-8 ("… Netlist was trying to find other non-Samsung sources for the NAND and DRAM products that Samsung…" was unable to supply to Netlist."); *see also* Lee Decl. ¶ 16, Exh. 68 at SEC005295 ("… I am rejecting new orders as they will buy Samsung from other sources…. I am afraid Netlist will buy from SEA and other branch possible also."); Lee Decl. ¶ 11, Exh. 63 at 127:16-129:2 (Steven Metz deposition testimony) (Netlist "… will procure product through the open markets in Taiwan, Hong Kong, and most likely the Branded group for SSD."); ¶ 17, Exh. 69 at SEC058106 ("I have let Netlist know that we have no support for Q3, and they will investigate getting support from SEA or SSD.") |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 83.    In the third quarter of 2017, Samsung was selling the products sought by Netlist to other Samsung customers.<br><br>LaMagna Ex. 50 at 50:10-16; *see also* LaMagna Ex. 52 at 128:12-18 ("businesses like Netlist" are not "high priority"), 129:12-130:10 ("Samsung consider[ed] Netlist to be a relatively . . . low value customer relative to other Samsung customers"). | Undisputed. |
| 84.    On May 25, 2017, Mr. I. Kim informed a colleague that he planned to meet with Netlist in June 2017, at which time he "intended to shut the door" on the parties' joint research and development efforts.<br><br>LaMagna Decl. Ex. 20 | Disputed to the extent that this statement implies that work on HYBRIDIMM was joint development work under the JDLA. Disputed. Netlist never attempted to demonstrate viability of the NVDIMM-P standardization project, which was the subject of the JDLA; Netlist instead abandoned NVDIMM-P standardization, |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | and its presentations were for its own HybriDIMM product, which was outside of the JDLA. Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony) at 36:9-38:2 (Netlist did not answer Samsung's questions for the joint development project, and instead simply asked for more funding in Phase 2 of the JDLA); 45:4-47:1 (Netlist ceased work on NVDIMM-P standardization effort to pursue its patent litigation, and shifted to HybriDIMM); 47:8-48:6 (the JDLA was for NVDIMM-P; HybriDIMM was Netlist's own, proprietary technology); 96:9-97:9 (Netlist's focus was on HybriDIMM); Choi Decl. ¶ 8, Exh. 7 (Chuck Hong deposition testimony) at 198:21-199:13 (Netlist went its "separate ways" from Samsung, instead of continuing work on NVDIMM-P standardization). Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 85. In June 2017, Samsung imposed a $500,000 cap on the amount of products that it would sell to Netlist each month.<br><br>*See, e.g.*, LaMagna Decl. Ex. 21 (Joo Sun Choi instructing that Netlist sales be "Minimize[d] at $0.5M"); LaMagna Decl. Ex. 40 ("JS Choi . . . said ok this $500k / m run rate"); LaMagna Decl. Ex. 43 at -07 ("Netlist: Sales limited to $500k/mo per SEC request."); LaMagna Ex. 53 at 93:22-94:17, 103:11-24, 135:1-11 | Disputed. Netlist's purchase data plainly demonstrates that there was no $500,000 monthly cap instituted as of June 2017. For the most part in 2017, Netlist placed orders and received products well in excess of $500,000 per month. Choi Decl., ¶ 52, Exh. 51.<br><br>Furthermore, the uncontroverted evidence demonstrates that as of 2017, Netlist's allocation cap was $1 million per month but even then, Netlist placed orders and received products well in excess of $1 million in most of the months in 2017. Choi Decl., ¶ 52, Exh. 51.; Lee Decl. ¶ 18, Exh. 70 at NL090356 (On July 24, 2017, Raymond Jiang states: "Inventory list - we would like a first look before anyone else so that we can make sure we purchase $1M by the end of the month … Can take 8GB eMMC to make up the difference of $1M if it's easier."); Choi Decl., ¶ 14, Exh. 13 at NL004680 (On December 4, 2017, P.K. Hong states: "Our goal is to get this |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | $1M/month allocation removed and get more support."). <br><br> Also disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 86.    Samsung continued to impose that cap thereafter. <br><br> *See, e.g.*, LaMagna Decl. Ex. 15 at -95-96 (July 2017, referencing "$500k a month limit" and "consensus guide $500k"); LaMagna Decl. Ex. 29 (July 2017, Mr. Knuth "realized that we are capped at $500k limit"); LaMagna Decl. Ex. 44 (July 2017, "we need to be very careful that we don't go over $500k per month"); LaMagna Decl. Ex. 22 at -57-58 (May 2018, referencing "$500k bar . . . decided by the corporate president" and stating sales representative "will be sure to follow the limit of $500k"); LaMagna Ex. 50 at 64:21-65:3 ("around February of 2018" | Disputed for the same reasons and evidence identified in response to No. 85, above. |

| | PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Samsung reaffirmed "that Netlist could purchase up to $500,000 per month") | |
| | 87.    Samsung recognized that it would face "a very dangerous situation" if Netlist learned that Samsung had placed a limit on how much it would sell to Netlist.<br><br>LaMagna Decl. Ex. 19 at -26-27 | Disputed for the same reasons and evidence identified in response to No. 85, above.<br><br>Further disputed to the extent the statement places the words "a very dangerous situation" out of context. Lee Decl. ¶ 5, Exh. 57 (Hyeoksang Yoo deposition testimony) at 45:23-46:15 (Yoo was concerned that customers would misunderstand the meaning of the word "cap" as being unrelated to available supply).<br><br>Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| | 88.    At times Samsung provided less than $500,000 of NAND and DRAM products per month.<br><br>*See, e.g.*, LaMagna Decl. Ex. 23 at -63 ("I | Undisputed. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| reported that $397k in January [2018] is the last of it and there would be no more from February onward") | |
| 89.    On June 8, 2017, in response to information provided by Netlist concerning the parties' joint research and development efforts, Mr. I. Kim, stated that the information provided by Netlist was "quite surprising and disappointing," as well as "extremely frustrating." Mr. I. Kim further referenced a "big challenge" as to the collaboration's future prospects.<br><br>LaMagna Decl. Ex. 24 at -73-74 | Disputed for the same reasons identified in response to No. 84, above. |
| 90.    Samsung informed Netlist "many times" during meetings that it was "not satisfied with the progress that was being made" on the parties' collaborative efforts.<br><br>LaMagna Ex. 49 at 49:4-18; *see also* LaMagna Decl. Ex. 25 at -16 (Mr. I. Kim: "As minimum, I've clearly told them we are . . . frustrated with their behavior", referring to meeting with Netlist as a | Disputed for the same reasons identified in response to No. 84, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| "waste [of] time," and joking with a colleague about needing "a pack of Alka-Seltzer" to withhold their "disgust and gag reflex" in order to meet with Netlist) | |
| 91. While Netlist "attempted to show" Samsung that the product on which they had collaborated "was commercially viable," Samsung nevertheless "determin[ed] that the [collaborative] activities were unlikely to result in a commercially viable product."<br><br>LaMagna Decl. Ex. 26 at 9 (Supplemental Response to Interrogatory No. 4); *see also* LaMagna Ex. 49 at 31:1-11 ("by 2017" Samsung determined "that Netlist [was] not capable") | Disputed. Netlist never attempted to demonstrate viability of the NVDIMM-P standardization project, which was the subject of the JDLA; Netlist instead abandoned NVDIMM-P standardization, and its presentations were for its own HybriDIMM product, which was outside of the JDLA. Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony) at 36:9-38:2 (Netlist did not answer Samsung's questions for the joint development project, and instead simply asked for more funding in Phase 2 of the JDLA); 45:4-47:1 (Netlist ceased work on NVDIMM-P standardization effort to pursue its patent litigation, and shifted to HybriDIMM); 47:8-48:6 (the JDLA was for NVDIMM-P; HybriDIMM was Netlist's own, proprietary technology); 96:9-97:9 (Netlist's focus was on HybriDIMM); Choi Decl. ¶ 8, Exh. 7 |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | (Chuck Hong deposition testimony) at 198:21-199:13 (Netlist went its "separate ways" from Samsung, instead of continuing work on NVDIMM-P standardization). |
| 92.　On June 9, 2017, Netlist met with Mr. Knuth and provided a presentation that stated, in part: Netlist was "Extending Samsung reach to high-end customers," which was "leading to consistent demand" and "require[d] ongoing support"; Netlist projected continuing to ramp up its purchases of Samsung products to more than $15 million per quarter by the end of 2017; Netlist "Need[ed] product support" from Samsung "to maintain and grow [Netlist's] business"; Netlist "Need[ed] confirmation of support & ship dates" for specific purchases; Samsung's "Product allocation support [was] critical"; and A "Revised ordering process would be appreciated." LaMagna Decl. Ex. 27; P.K. Hong Decl., Dkt. 84-18, ¶ 8 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 93.  At the June 9, 2017 meeting, Mr. Knuth informed Netlist that Joo Sun Choi, a Samsung executive overseeing memory sales in the United States, had instructed the Samsung U.S. sales team to cut Netlist's product allocation to zero.<br><br>P.K. Hong Decl., Dkt. 84-18, ¶ 8 | Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 94.  Between the second half of 2017 and the first half of 2018, several additional meetings were held between Netlist and Samsung in the United States and Korea.<br><br>C.K. Hong Decl. ¶ 10 | Disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 10 of the declaration of C.K. Hong. |
| 95.  Netlist explained to Samsung that its refusal to fulfill Netlist's requests for NAND and DRAM was causing Netlist to lose valuable business opportunities and tarnish the goodwill Netlist had established with a customer base that had come to rely on Netlist.<br><br>C.K. Hong Decl. ¶ 10 | Disputed for the same reasons identified in response to No. 95, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 96.    On July 6, 2017, Mr. Knuth stated in an internal email that he was "rejecting new orders [from Netlist" and had "rejected over $10 Million of business for Q3 already."<br><br>LaMagna Decl. Ex. 15 at -95 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 97.    On July 7, 2017, Mr. Knuth stated in an internal email that Netlist "want[ed] to help relationship" and he "ha[d] convinced them to cancel the $2M in backlog," adding a smiley face emoji.<br><br>LaMagna Decl. Ex. 15 at -95 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 98.    On July 12, 2017, Netlist wrote to Samsung to inquire as to "any decision made in regard to sales volume," noting that "It's a very critical matter for us."<br><br>LaMagna Decl. Ex. 28 at -80 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 99.    On July 12, 2017, Mr. Knuth informed Netlist that he could not fulfill an order it sought to submit. In a | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| subsequent discussion with Netlist, Mr. Knuth expressed that there was "Nothing he can do and he mentioned he is not even supposed to discuss with [Netlist] what he has available or he gets in trouble," further stating that he was "Not going to get fired for this." LaMagna Decl. Ex. 29 | for the same reasons and evidence identified in response to No. 74, above. |
| 100.   On July 13, 2017, Mr. Knuth stated that he had "rejected" a request from Netlist for "500-600" items from Netlist, and that he would "reject" another pending purchase order. LaMagna Decl. Ex. 15 at -97 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 101.   On July 20, 2017, Netlist wrote to Mr. Knuth that it was "Dropp[ing]" a request for certain products because Mr. Knuth had informed Netlist its request was "not realistic," and referencing discussions in which Netlist had been told that "partial of [its] requested items cannot ship." | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| LaMagna Decl. Ex. 30 | |
| 102.   On November 29, 2017, Netlist informed Samsung via email that Netlist "currently ha[s] a lot of complaints from [its] customers about disruption of supply," and that it "really need[s] Samsung's support to maintain the trust with [its] customers." Samsung responded by informing Netlist it "absolutely would not be able to supply the quantity" of products sought by Netlist.<br><br>LaMagna Decl. Ex. 31 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 103.   On December 5, 2017, Netlist provided Samsung with "slides/talking points" for an upcoming internal Samsung meeting concerning Netlist. Netlist's email reiterated that Netlist "need[s Samsung's] management support to get more allocation."<br><br>LaMagna Decl. Ex. 32 | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 104.   The slides that Netlist provided to | Undisputed as to content of document. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Samsung on December 5, 2017 stated, in part:<br><br>Netlist's "Efforts to convert customers from Micron" products to Samsung were "negatively impacted by allocation support"<br><br>Netlist "Need[ed its] monthly allocation increased . . . to maximize ability to support customers with Samsung products"<br><br>Netlist was "Losing qualification opportunities with inability to guarantee support when required due to limited allocation."<br><br>LaMagna Decl. Ex. 32 at -01 | Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 105.   On December 7, 2017, Mr. Knuth provided Mr. Metz with a presentation entitled "JS CHOI FINAL 3." The second slide of that presentation reflects 2016 and 2017 sales volume for ten Samsung customers, as well as their forecasted sales volumes for 2018. Samsung projected increased sales for eight of the ten | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |

66

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| customers, and it projected a decrease in sales for one customer by $2.6 million. Netlist's sales were projected to decrease from $21 million in 2017 to only $6 million in 2018, i.e., $500,000 per month.<br><br>LaMagna Decl. Ex. 33 at -95 | |
| 106.   In or about January 2018, Netlist was informed that Samsung "ha[d] decided to give Netlist $0 allocation and no support."<br><br>LaMagna Decl. Ex. 34; *see also, e.g.*, P.K. Hong Decl., Dkt. 84-18, ¶ 6 | Disputed to the extent that this implies that Netlist received a $0 allocation for any month other than February 2018. Lee Decl. ¶ 9, Exh. 61 (Neal Knuth deposition testimony) at 178:22-23. In addition, Netlist's own purchase data evinces that Netlist obtained allocation of Samsung NAND and DRAM products in 2018 and 2019 continuously. Choi Decl., ¶ 52, Exh. 51.<br><br>Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 107.   On February 2, 2018, Mr. Hwangbo | Undisputed as to content of document. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| acknowledged that "The quantity for N company [*i.e.*, Netlist] has decreased a lot to the level of '17.1Q $8.2M □ 4Q $2.5M, and the supply price is somewhat higher than other similarly sized company (Smart Modular)."<br><br>LaMagna Decl. Ex. 8 | Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |
| 108.   On February 19, 2018, Netlist provided a forecast of its 2018 demand to Samsung, explaining that Netlist "need[s] this supported" and "cannot accept partial support." Netlist further noted that "In the 1st half of 2017, we were growing our business and Samsung was supporting $8M/QTR. Then in 2H'17 Samsung lowered this support to under $3M/QTR, even though we had requested $15M/QTR for 2H'17 in June 2017. Then in Jan'18 Samsung stopped shipments altogether. These drastic changes have impacted our business and impacted our ability to support our customers. We need Samsung to support the forecast we have | Undisputed as to content of document. Disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above. |

Case No. 8:20-cv-00993-MCS-ADS

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| included . . . ."<br><br>LaMagna Decl. Ex. 35 | |
| 109.   On May 17, 2018, Mr. Knuth sent an email with the subject line "Netlist SSD" in which he stated that he "will not accept" purchase orders for certain Samsung products.<br><br>LaMagna Decl. Ex. 22 at -58 | Undisputed but misleading. Mr. Knuth actually wrote, "I will not accept PO for the highlighted *(not yet)*." (Emphasis added.) LaMagna Decl. Ex. 22 at SEC001358.<br><br>Also disputed to the extent Netlist implies changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above.<br><br>Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 110.   On February 25, 2019, Mr. Metz wrote that his sales team had been "specifically directed by [Joo Sun] Choi to minimize sales to Netlist."<br><br>LaMagna Decl. Ex. 36 at -86 | Undisputed but misleading, Dong Joon Shin of Samsung responded on the same day, "Yes, we have approval from JS to increase sales with Netlist…." LaMagna Decl. Ex. 36 at SEC005986.<br><br>Also disputed to the extent Netlist implies |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | changes in course of dealing in mid-2017, for the same reasons and evidence identified in response to No. 74, above.<br><br>Also disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. |
| 111.  Because the supply arrangement with Samsung was so uniquely valuable to Netlist, Netlist did not want to walk away from it.<br><br>C.K. Hong Decl. ¶ 10 | Disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 10 of the declaration of C.K. Hong. |
| 112.  When Netlist was unable to procure NAND and DRAM from Samsung, it had to scramble to find Samsung NAND and DRAM on the secondary market, often at higher prices and/or in insufficient quantities than if it had been supplied directly from Samsung. Products purchased on the secondary market purchases also required quality testing that was not necessary when purchasing | Disputed because this statement is not supported by uncontroverted, admissible evidence. Paragraph 9 of P.K. Hong's July 29, 2021 declaration (Dkt. 84-18) is controverted by Netlist's own purchase data evincing that Netlist obtained allocation of Samsung NAND and DRAM products in 2018 and 2019 continuously. Choi Decl., ¶ 52, Exh. 51. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| directly from Samsung.<br><br>P.K. Hong Decl., Dkt. 84-18, ¶ 9; C.K. Hong Decl. ¶ 6 | *See also* Samsung's evidentiary objections paragraph 6 of the declaration of C.K. Hong. |
| 113.    These higher prices and shortfalls in quantity resulted in Netlist's inability to fulfill its customers' orders.<br><br>P.K. Hong Decl., Dkt. 84-18, ¶ 9 | Disputed because this statement is not supported by uncontroverted, admissible evidence. Paragraph 9 of P.K. Hong's July 20, 2021 declaration (Dkt. 84-18) is controverted by Netlist's own purchase data evincing that Netlist obtained allocation of Samsung NAND and DRAM products in 2018 and 2019 continuously. Choi Decl., ¶ 52, Exh. 51. |
| 114.    Samsung "routinely rejected requests for product from Netlist."<br><br>LaMagna Decl. Ex. 39 at 17 (Supplemental Response to Interrogatory No. 16) | Undisputed but misleading. Samsung's inability to support all of Netlist's requests for products contingent upon the allocation and availability of product, which are widely accepted industry norms and practices. *See* Choi Decl. ¶ 14, Exh. 13; ¶ 52, Exh. 51; ¶ 3, Exh. 2 (Paik Ki Hong deposition testimony) at 11:21-12:12, 37:9-22, 49:15-20, 91:10-94:21; ¶ 8, Exh. 7 (C.K. Hong deposition testimony) at 121:24-123:5, 152:15-24; Lee Decl. ¶ 9, Exh. 61 (Neal Knuth Deposition |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Testimony) at 60:16-23; 132:23-133:3; 149:2-150:5; 190:11-191:24. |
| 115.    Samsung "indicated routinely" to Netlist that it was "unable to support individual requests for product." <br><br> LaMagna Decl. Ex. 26 at 6 (Supplemental Response to Interrogatory No. 2); LaMagna Decl. Ex. 38 at 3-32 (Response & Amended Response to Request for Admission Nos. 16-41) | Undisputed but misleading for the same reasons and evidence identified in response to No. 114, above. |
| 116.    Samsung "routinely declined to support requests for product" from Netlist. <br><br> LaMagna Decl. Ex. 39 at 13 (Supplemental Response to Interrogatory No. 14), 19 (Supplemental Response to Interrogatory No. 17), 23 (Supplemental Response to Interrogatory No. 20) | Undisputed but misleading for the same reasons and evidence identified in response to No. 114, above. |
| 117.    Samsung "indicated routinely" to Netlist that it would not "support every request for products from Netlist, and it "ultimately did not support [such] | Undisputed but misleading for the same reasons and evidence identified in response to No. 114, above. |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| requests." | |
| LaMagna Decl. Ex. 38 at 3-32 (Amended Response to Request for Admission Nos. 16-41) | |
| 118.    Samsung claims that through its "routine[ ]" failure to fulfill Netlist's requests for product, it acted "as it would with any other similarly situated customer." <br><br> LaMagna Decl. Ex. 38 at 3-32 (Response & Amended Response to Request for Admission Nos. 16-41) | Undisputed but misleading for the same reasons and evidence identified in response to No. 114, above. |
| 119.    As a result of Samsung's refusal to supply NAND and DRAM to Netlist, Netlist lost major customers, business opportunities and profits. <br><br> C.K. Hong Decl. ¶¶ 11-12 | Disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraphs 11 and 12 of the declaration of C.K. Hong. |
| 120.    As a result of Samsung's refusal to supply NAND and DRAM to Netlist, Netlist's reputation suffered. | Disputed for the same reasons and evidence identified in response to No. 119, above. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| C.K. Hong Decl. ¶¶ 11-12 | |
| 121.   As a result of Samsung's refusal to supply NAND and DRAM to Netlist, Netlist was prevented from growing into a stable products business.<br><br>C.K. Hong Decl. ¶ 12 | Disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 12 of the declaration of C.K. Hong. |
| 122.   As a result of Samsung's refusal to supply NAND and DRAM to Netlist, Netlist has suffered extreme commercial harm.<br><br>C.K. Hong Decl. ¶ 12 | Disputed for the same reasons and evidence identified in response to No. 121, above. |
| 123.   Netlist has no assurance that Samsung will not once again refuse to supply Netlist with NAND and DRAM in the future.<br><br>C.K. Hong Decl. ¶ 12 | Disputed for the same reasons and evidence identified in response to No. 121, above. |
| 124.   It eventually became clear to Netlist that Samsung would continue to decide unilaterally when, if ever, it would honor its obligations under the JDLA to supply Netlist. | Disputed because this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 10 of the declaration of C.K. Hong. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| C.K. Hong Decl. ¶ 10 | |
| 125.   On May 27, 2020, Netlist sent via registered mail to the addressee listed in JDLA § 15 a written demand (i) informing Samsung that it was in material breach of JDLA §§ 3.2 and 6.2, (ii) informing Samsung that these material breaches had "caused Netlist to suffer significant damages," (iii) expressing its "commit[ment] to resolving these issues amicably," and (iv) providing an opportunity for Samsung to cure those material breaches.<br><br>LaMagna Decl. Ex. 41 | Undisputed |
| 126.   On June 12, 2020, Netlist emailed a copy of its May 27, 2020 letter to Samsung.<br><br>LaMagna Decl. Ex. 46 | Undisputed |
| 127.   Samsung received Netlist's letter of May 27, 2020. | Disputed to the extent that it misstates the content of the cited Request for Admission and implies that Samsung received Netlist's |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| LaMagna Decl. Ex. 47 at 22-23 (Response to Request for Admission No. 51) | letter *on* May 27, 2020. *See* LaMagna Decl. Ex. 47 at 22-23 (Response to Request for Admission No. 51) ("admit that an email from Marc Frechette dated *June 12, 2020* (U.S. Pacific Time), which attached a letter from Netlist dated May 27, 2020, was transmitted to the email address jeff.sung@samsung.com") (emphasis added.) |
| 128.    On July 15, 2020, after having "not received a response from Samsung . . . let alone any cure of such breaches," Netlist sent a second letter by registered mail to the same addressee at Samsung stating that "Netlist ha[d] provided Samsung with notice of a material breach" but "ha[d] not received a response from Samsung regarding the material breaches set forth" in its earlier letter. Accordingly, Netlist terminating the JDLA, "effective immediately," because Samsung's breaches had "fundamentally undermined the purpose of the Agreement." | Disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. *See* FRE 801. Also disputed to the extent that this statement implies that Samsung committed any breaches of the JDLA. |

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| LaMagna Decl. Ex. 45; *see also* LaMagna Decl. Ex. 42 (emailed copy of same) | |
| 129.   Samsung has claimed that Netlist failed to comply with its obligations under the JDLA only through "Netlist's purported termination was improper." <br><br> LaMagna Decl. Ex. 39 at 18 (Supplemental Response to Interrogatory No. 18); *see also* Answer to First Amended Complaint, Dkt. 27, at 5 (asserting as affirmative defense that Netlist breached) | Disputed. Samsung's Response to Interrogatory No. 18 alleges Netlist failed to comply with its obligations under the JDLA through its "abandonment of the NVDIMM-P standardization project and instead moving on to other projects without Samsung and without obtaining a written amendment of the JDLA for this development." Lee Decl. ¶ 19, Exh. 71 (Second Supplemental Response to Interrogatory No. 18) at 26:15-20). <br><br> Netlist never attempted to demonstrate viability of the NVDIMM-P standardization project, which was the subject of the JDLA; Netlist instead abandoned NVDIMM-P standardization, and its presentations were for its own HybriDIMM product, which was outside of the JDLA. Lee Decl. ¶ 7, Exh. 59 (Indong Kim deposition testimony) at 36:9-38:2 (Netlist did not answer |

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT

| PLAINTIFF'S ALLEGEDLY UNDISPUTED FACT AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Samsung's questions for the joint development project, and instead simply asked for more funding in Phase 2 of the JDLA); 45:4-47:1 (Netlist ceased work on NVDIMM-P standardization effort to pursue its patent litigation, and shifted to HybriDIMM); 47:8-48:6 (the JDLA was for NVDIMM-P; HybriDIMM was Netlist's own, proprietary technology); 96:9-97:9 (Netlist's focus was on HybriDIMM); Choi Decl. ¶ 8, Exh. 7 (Chuck Hong deposition testimony) at 198:21-199:13 (Netlist went its "separate ways" from Samsung, instead of continuing work on NVDIMM-P standardization). |
| 130.   Netlist performed all material obligations owed to Samsung under the JDLA.<br><br>C.K. Hong Decl. ¶ 13 | Disputed for the same reasons and evidence identified in response to No. 129, above.<br><br>Moreover, this statement is not supported by admissible evidence. *See* Samsung's evidentiary objections to paragraph 13 of the declaration of C.K. Hong. |

## II.

## DEFENDANT'S RESPONSES TO PLAINTIFF'S CONCLUSIONS OF LAW

1. Netlist is entitled to summary judgment on its first cause of action for breach of the JDLA because Samsung failed to supply NAND and DRAM products to Netlist on Netlist's request at a competitive price.

**CONTESTED**

This is not a statement of law, but is instead a conclusory assertion involving facts of this action that remain in dispute. Defendant's opposition to Plaintiff's Motion, as well as its responses above to Plaintiff's Statement of Undisputed Facts, set out the reasons why this conclusory assertion is false, including, without limitation: (1) because Section 6.2 is limited to the supply and pricing of components for the joint development; (2) because Section 6.2 is too indefinite to be a valid supply contract; (3) because Section 6.2 was overridden by Netlist's purchase orders; (4) because Netlist failed to perform its obligations under the JDLA; and (5) because Netlist is estopped from arguing its misinterpretation of Section 6.2 is supported by expansive patent licenses.

2. Netlist is entitled to summary judgment on its second cause of action for breach of the JDLA because Samsung wrongfully withheld $1,320,000 of the $8 million owed to Netlist as consideration for its development costs, and because Samsung failed to reasonably cooperate with Netlist in its efforts to seek a refund from the Korean tax authorities for the $ 1,320,000 that was wrongfully withheld.

**CONTESTED**

This is not a statement of law, but is instead a conclusory assertion involving facts of this action that remain in dispute. Defendant's opposition to Plaintiff's Motion, as well as its responses above to Plaintiff's Statement of Undisputed Facts, set out the reasons why this conclusory assertion is false, including, without limitation: (1) because Samsung reasonably deducted withholding taxes from payment to Netlist; and (2)

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

because Samsung reasonably cooperated with Netlist's successful efforts to obtain a refund plus interest.

3. Netlist is entitled to summary judgment on its third cause of action for declaratory relief because it has properly terminated the JDLA under § 13.2 thereof.

**CONTESTED**

This is not a statement of law, but is instead a conclusory assertion involving facts of this action that remain in dispute. Defendant's opposition to Plaintiff's Motion, as well as its responses above to Plaintiff's Statement of Undisputed Facts, set out the reasons why this conclusory assertion is false, including, without limitation: (1) because there was no material breach of the JDLA; and (2) because Netlist waived any right to terminate the JDLA.

DATED: August 30, 2021        Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:    */s/ Ekwan E. Rhow*
        Ekwan E. Rhow
        Attorneys for Defendant Samsung
        Electronics Co., Ltd.

# EXHIBIT 2

Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Marc E. Masters - State Bar No. 208375
    mmasters@birdmarella.com
David I. Hurwitz - State Bar No. 174632
    dhurwitz@birdmarella.com
Kate S. Shin - State Bar No. 279867
    kshin@birdmarella.com
Christopher J. Lee - State Bar No. 322140
    clee@birdmarella.com
Jong-min Choi - State Bar No. 329474
    jmchoi@birdmarella.com
Joyce J. Choi - State Bar No. 256165
    jchoi@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>      vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>              Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br>[Filed Concurrently with (1) Defendant's Opposition; (2) Defendant's Statement of Genuine Dispute of Material Facts; (3) Defendant's Evidentiary Objections to Declarations; (4) [Proposed] Order (5) Declaration of Hyeoksang Yoo and (6) Lee Declaration].<br><br>Assigned to Hon. Mark C. Scarsi<br>Courtroom 7C |

| DEFENDANT'S ADDITIONAL MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. In early 2015, Netlist approached Samsung to discuss a strategic partnership involving joint development of a product based on a new standard called NVDIMM-P and licensing of Netlist's patents. | Dkt. 150-1 (Declaration of Joyce J. Choi in Support of Samsung's Motion for Summary Judgment ("Choi Decl.")) ¶ 15, Exh. 14 at RFA No. 18. |
| 2. The NVDIMM-P-related product was a "game changer" according to Chuck Hong and, based on presentation materials, was designed to take market share in a $15 billion industry. | Choi Decl. ¶ 8, Exh. 7 at 139:7-25; ¶ 17, Exh. 16 at SEC008159. |
| 3. At that time, Netlist also raised a licensing component and the potential that Samsung would be subject to an injunction for infringement of Netlist's patents. | Choi Decl. ¶ 18, Exh. 17 at NL107807; ¶ 8, Exh. 7 at 42:4-14. |
| 4. Netlist's first proposal to Samsung in April 2015 focused on the cash consideration, and did not mention a long term supply agreement. ("Q Now, at least on this proposal, Netlist didn't list supply as a component of the deal; correct? A Yes, it's not here.") | Choi Decl. ¶ 18, Exh. 17 at NL107807; ¶ 8, Exh. 7 at 51:3-52:18. |
| 5. When Netlist sent Samsung the first draft of the term sheet on April 21, 2015, | Choi Decl. ¶ 23, Exh. 22; ¶ 24, Exh. 23 at § II. |

| | |
|---|---|
| Netlist proposed, as part of the "Joint development and marketing" for the "Technology Collaboration," that Samsung supply NAND and DRAM product. | |
| 6. In Netlist's June 9, 2015 revision to the term sheet, under the heading "Technology Collaboration," Netlist proposed: "Raw Materials: Samsung will supply NAND, DRAM on mutually agreed terms." | Choi Decl. ¶ 25, Exh. 24, § II.5. |
| 7. Netlist CEO Chuck Hong testified that "Technology Collaboration" in Netlist's revised term sheet referred to the parties' joint efforts to standardize NVDIMM-P, and that "Raw Materials" referred to various DRAM and NAND flash components necessary to support the NVDIMM-P commercialization. | Choi Decl. ¶ 8, Exh. 7 at 91:4-17; 92:4-12. *See also* 101:25-102:7 ("Q. And so those were raw materials that were provided in connection with commercialization of the dash P product; correct? A. That's correct.") |
| 8. In Netlist's June 25, 2015 updated term sheet, under the heading "Phase 2: Technology Productization," Netlist proposed: "1. Parties will work together to bring an NVDIMM-P product to market. Details of the technical collaboration to be negotiated at a later date" and "Raw Materials: Samsung will | Choi Decl. ¶ 26, Exh. 25 at NL005090, NL005092. |

3

DEFENDANT'S SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| supply NAND and DRAM on mutually agreed terms." | |
| 9. In the drafts leading up to the final and executed MOU, Netlist understood that Samsung's supply obligations would only arise in the event of commercialization of the NVDIMM-P product subject to the parties' joint development but this never occurred. | Choi Decl. ¶ 8, Exh. 7 at 104:6-24. |
| 10. Netlist CEO Chuck Hong testified that Netlist's intent underlying the MOU was to get Samsung's commitment to supply NAND and DRAM products for the NVDIMM-P product so that Netlist would have sufficient supply if and when it was able to commercialize the technology. | Choi Decl. ¶ 8, Exh. 7 at 109:9-110:1. |
| 11. According to Chuck Hong, NVDIMM-P was "industry changing" technology and Netlist's attempt to standardize a NVDIMM-P product was a significant business opportunity and one that Netlist had invested more than $10 million in engineering costs into. | Choi Decl. ¶ 8, Exh. 7 at 79:13-80:23, 139:7-141:6. |
| 12. The MOU reflected both parties' intent on the important points of the parties' agreement. | Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 80:13-23, 92:4-12, 109:9-110:1, 116:3-9; ¶ 22, Exh. 21 at NL069668-69. |

Section 6 of the MOU states in full (emphasis added):

6.  Most Favored Nation (MFN): Netlist will provide Samsung any NVDIMM-P* controller at a price lower than the price Netlist provides to any other buyer. Either party may produce NVDIMM-P controller using its own technology and has no obligation to buy from the other party. *Raw Materials: Samsung will provide competitive pricing (i.e. among customers purchasing the same products and similar volumes) for the supply of Samsung NAND and DRAM products.*

As to the MOU, Chuck Hong again testified in deposition that section 6.2 limited Samsung's supply obligation to the NVDIMM-P development and that this obligation would arise only if and to the extent that the NVDIMM-P product was ever commercialized.

| | |
|---|---|
| 13. On October 8, 2015, when the parties began drafting the JDLA from the MOU, Samsung proposed the following language to Netlist:<br><br>"6.2 Supply by Samsung. Samsung will supply NAND and DRAM to Netlist on Netlist's request at a competitive price similar to the customers purchasing similar volumes of similar products. For the avoidance of doubt, any of the provisions under this Agreement will not be deemed to require Netlist to purchase any products from Samsung or to require Samsung to supply any products to Netlist." | Choi Decl. ¶ 27, Exh. 26 at NL049006; ¶ 28, Exh. 27 at NL049012, § 6.2. |
| 14. Whitley was Netlist's main contributor to the JDLA. | Choi Decl. ¶ 8, Exh. 7 at 130:6-24. |
| 15. On October 14, 2015, as to the new Section 6.2 of its proposed JDLA, Whitley wrote in bold "**Conflicts with MOU**" and "Samsung states that nothing in this agreement will 'require Samsung to supply any products to Netlist.' Netlist removed this qualification and returned the language to reflect what was agreed to in the MOU." Samsung agreed to this change. | Choi Decl. ¶ 29, Exh. 28 at NL045877; ¶ 30, Exh. 29 at NL049026; ¶ 31, Exh. 30 at NL049033; ¶ 32, Exh. 31 at NL118147 and NL118149. |

| | |
|---|---|
| 16. As expressed by Whitley, it was Netlist's position that the MOU should govern the supply term.  As set forth in SUF nos. 20 and 31, the MOU only required that Samsung supply product in the event that the NVDIMM-P product was ever commercialized. | Choi Decl. ¶ 29, Exh. 28 at NL045877; ¶ 8, Exh. 7 at 130:6-132:10. |
| 17. Netlist wanted Samsung's assurance that it would supply NAND and DRAM to support NVDIMM-P sales if the joint development proved successful, and demand for the product took off. | Choi Decl. ¶ 8, Exh. 7 at 80:13-23. |
| 18. During the contract negotiations, Netlist's CFO Gail Sasaki wrote to Samsung: "Both sides understood from the outset that this was a strategic deal, not a financial one. *The value that would be transferred and created resided in the patents and the technology.*" | Choi Decl. ¶ 33, Exh. 32 at NL048993. |
| 19. On November 12, 2015, after months of negotiations, Samsung and Netlist entered into the JDLA. | Choi Decl. ¶ 20, Exh. 19 at p.1. |
| 20. The structure and terms of the JDLA reflect that the parties intend "to work together to jointly develop an interface and associated technologies for certain memory modules and promote such | Choi Decl. ¶ 20, Exh. 19 at p.1. |

| | |
|---|---|
| interface to standards-setting organizations." | |
| 21. The "Developed Product" in the JDLA means an NVDIMM-P Product developed by the Parties hereunder pursuant the Statement of Work that meets the Product Specifications. | Choi Decl. ¶ 20, Exh. 19 at p.2. |
| 22. The JDLA also includes a grant of cross-licenses and a release of threatened claims. | Choi Decl. ¶ 20, Exh. 19 at p.7, § 7. |
| 23. The JDLA states that Netlist was to receive $8 million for non-recurring engineering on the NVDIMM-P development work, and concurrently with the JDLA, provide an additional $15 million convertible loan at 2% interest that allowed Netlist to pay off existing debt with less favorable financial terms. | Choi Decl. ¶ 20, Exh. 19 at p.5, § 3.1; ¶ 21, Exh. 20 at p.2; ¶ 22, Exh. 21 at NL069669, § II.7. |
| 24. In addition to its receipt of cash and financing from Samsung, Netlist stood to benefit from the relationship, especially if the parties were able to develop this "game changing" standard for NVDIMM-P and produce a commercially feasible product under this standard. | Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 33:12-34:6, 79:6-80:23, 139:7-25. |

| | |
|---|---|
| 25. The terms of the JDLA seek to implement these objectives, including terms for the collaborative development work in accordance with product specification and development milestones and a Statement of Work (Section 2, Appendices A and B); development costs (Section 3); IPR ownership (Section 4); schedule for standardization and productization (Section 5); supply (Section 6); a mutual release of claims (Section 7); and licensing of intellectual property (Section 8). | Choi Decl. ¶ 20, Exh. 19 at pp.4-8. |
| 26. Pursuant to the JDLA, Samsung and Netlist agreed to supply components to each other for the NVDIMM-P product which they had agreed to jointly develop and therefore did not yet exist. Specifically, Section 6.1 states: "Supply by Netlist. Netlist will provide Samsung any NVDIMM-P controller on Samsung's request at a price lower than the price Netlist provides to any other buyer." Section 6.2, the parallel provision, states: "Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a | Choi Decl. ¶ 20, Exh. 19 at p.6, §§ 6.1, 6.2. |

9
DEFENDANT'S SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| competitive price (i.e., among customers purchasing similar volumes of similar products)." | |
| 27. Samsung's supply obligations would only arise if and to the extent that the NVDIMM-P product was commercialized but this never occurred. | Choi Decl. ¶ 8, Exh. 7 at 31:9-12, 80:13-23, 92:4-12, 109:9-110:1, 116:3-9; ¶ 22, Exh. 21 at NL069668-69. |
| 28. Netlist received all of the chips it needed to complete the initial phase of the NVDIMM-P product under the JDLA. | Choi Decl. ¶ 8, Exh. 7 at 88:10-89:5. |
| 29. The NVDIMM-P product was never commercialized. | Choi Decl. ¶ 8, Exh. 7 at 109:21-110:1. |
| 30. Netlist disclosed an agreement with SK Hynix on April 5, 2021, stating that contract "entitles Netlist to purchase up to $600,000,000 of SK Hynix memory products during the term . . ." | Choi Decl. ¶ 34, Exh. 33 at p.2. |
| 31. Netlist CEO Chuck Hong's presentation to the Board in November 2015, prepared by Netlist CFO Gail Sasaki, describes the technology collaboration and the cross-licensing of patents but makes no mention of Netlist's supposed broad supply agreement. | Choi Decl. ¶ 35, Exh. 34 at NL117923; ¶ 36, Exh. 35 at p.1. |

| | |
|---|---|
| 32. In its first annual report following the JDLA, Netlist disclosed the risks associated with not having a supply contract:<br>"Our ability to fulfill customer orders or produce qualification samples is dependent on a sufficient supply of field programmable gate arrays ("FPGAs"), DRAM ICs and NAND flash, which are essential components of our memory subsystems. There are a relatively small number of suppliers of FPGAs, DRAM ICs and NAND flash, and we purchase from only a subset of these suppliers. *We have no long-term FPGA, DRAM or NAND flash supply contracts.*" (emphasis added) | Choi Decl. ¶ 19, Exh. 18 at p.13. |
| 33. Netlist repeatedly and consistently disclosed the risks associated with not having a long-term supply contract for DRAM and NAND in its annual reports before and after execution of the JDLA, each time stating that Netlist had "no long-term supply contracts" for these products. | Choi Decl. ¶ 74, Exh. 73 at p.18; ¶ 75, Exh. 74 at p.22; ¶ 4, Exh. 3 at p.14; ¶ 37, Exh. 36 at p.14; ¶ 19, Exh. 18 at p.13; ¶ 38, Exh. 37 at p.19; ¶ 7, Exh. 6 at p.20; ¶ 5, Exh. 4 at p.22; ¶ 39, Exh. 38 at p.20; ¶ 40, Exh. 39 at p.15. |
| 34. A November 2, 2015 press release announcing the JDLA that Netlist was | Choi Decl. ¶ 41, Exh. 40 at pp.2-5. |

| | |
|---|---|
| preparing had a headline stating "Netlist and Samsung Announce Strategic Alliance To Commercialize the First Unified Memory-Storage Architecture" and makes no mention of a supply agreement. | |
| 35. At a February 21, 2017 meeting, Netlist asked Samsung for a "New Partner Type" relationship that would require Samsung to provide "Product Allocation support for Netlist" and an "Official-Distributor Partnership Agreement." When Netlist made this ask, Samsung told Netlist that the JDLA was not an avenue to support Netlist's standard products. | Choi Decl. ¶ 17, Exh. 16 at SEC008148, SEC008169; ¶ 42, Exh. 41 at SEC000474; ¶ 43, Exh. 42 at 43:22-45:3. |
| 36. Netlist has been a customer of Samsung since at least 2001, purchasing over $200 million of products, including NAND and DRAM components. | Choi Decl. ¶ 2, Exh. 1 at SEC008161; ¶ 3, Exh. 2 at 11:21-12:12, 13:10-20, 14:8-15. |
| 37. Both before and after the JDLA and to the present, Samsung has been a significant and continuous supplier of NAND and DRAM to Netlist, as reflected in Netlist's annual reports. | Choi Decl. ¶ 4, Exh. 3 at p.6; ¶ 5, Exh. 4 at p.8; ¶ 6, Exh. 5 at 294:4-18; ¶ 7, Exh. 6 at F-36; ¶ 3, Exh. 2 at 185:10-186:1, 187:21-188:5. |
| 38. Netlist also purchased NAND and DRAM products from SK Hynix and | Choi Decl. ¶ 4, Exh. 3 at p.6; ¶ 6, Exh. 5 at 194:2-22, 294:4-18; |

| | |
|---|---|
| Micron, as well as from sellers who purchased the products from the manufacturers for resale. | ¶ 3, Exh. 2 at 205:23-206:18, 207:21-208:10. |
| 39. The amount of NAND and DRAM product that Samsung can manufacture for sale is limited and demand for its products oftentimes exceeds available supply. | Choi Decl. ¶ 8, Exh. 7 at 121:24-122:13; Dkt. 89-21 at ¶ 4. |
| 40. Due to the nature of the industry, Netlist, like other customers, provides Samsung with forecasts of the amount of product it wishes to purchase, and Samsung lets Netlist know how much product it can allocate to Netlist for purchase. | Choi Decl. ¶ 9, Exh. 8; ¶ 10, Exh. 9; ¶ 3, Exh. 2 at 35:10-36:13, 37:9-22, 61:25-62:5. |
| 41. Following these discussions regarding allocations and availability, Netlist issued purchase orders for specific amounts of product that Samsung approved beforehand. | Choi Decl. ¶ 12, Exh. 11 at 23:23-24:5; ¶ 3, Exh. 2 at 62:6-14; ¶ 13, Exh. 12 at 28:4-25. |
| 42. Samsung accepted and fulfilled some of the purchase orders, put some on backlog, and rejected others, just as it did with other customers. | Choi Decl. ¶ 12, Exh. 11 at 36:8-11; Choi Decl. ¶ 3, Exh. 2 at 45:2-46:8, 62:6-14. |
| 43. This business protocol—the use of backlogs, forecasts, allocations, and purchases orders—remained the same | Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 62:6-14; ¶ 14, Exh. 13 at NL004680. |

| | |
|---|---|
| throughout the parties' long standing business relationship and even after the JDLA was executed. | |
| 44. After the JDLA, Samsung continued to supply Netlist with NAND and DRAM outside of the joint development context. | Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 54:24-55:10, 183:3-15, 184:8-20. |
| 45. Samsung's sales to Netlist have continued from 2001 to the present day, according to the same course of dealing that existed before the JDLA, after the JDLA, and continue to this day after Netlist purported to terminate the JDLA and filed this lawsuit. | Choi Decl. ¶ 21, Exh. 11 at 25:6-25, 201:9-18; ¶ 3, Exh. 2 at 27:21-28:12, 35:23-36:13, 37:18-22, 47:24-50:4, 183:3-15, 184:8-20. |
| 46. Netlist understood that the JDLA did not guarantee it access to all of the Samsung product it requested, but only the product that Samsung actually agreed to sell. | Choi Decl. ¶ 3, Exh. 2 at 47:24-50:6, 54:24-55:10, 91:10-93:24, 94:6-21, 183:3-15, 184:8-20; ¶ 53, Exh. 52 at NL002024-2027; ¶ 54, Exh. 53; ¶ 46, Exh. 45; ¶ 49, Exh. 48. |
| 47. Due to Samsung needing lead time for production, Netlist submitted forecasts of its requests, and discussed with Samsung how much material would be allocated and made available to it. | Choi Decl. ¶ 3, Exh. 2 at 48:10-12.; ¶ 13, Exh. 12 at 152:5-153:24. |
| 48. Netlist only submitted purchase orders for specific quantities of product after Samsung indicated that such | Choi Decl. ¶ 12, Exh. 11 at 23:23-24:5; ¶ 3, Exh. 2 at 62:6-14, 93:18-24; ¶ 13, Exh. 12 at 154:3-20. |

| | |
|---|---|
| product would be available. | |
| 49. Netlist purchased a substantial amount of NAND and DRAM from Samsung in each quarter from November 2015 to the present, although the amounts varied over time. | Choi Decl. ¶ 51, Exh. 50 at F-36, F-34, F-36, F-36, F-36, 77; ¶ 52, Exh. 51; ¶ 3, Exh. 2 at 186:16-188:5; ¶ 7, Exh. 6 at p.8. |
| 50. According to their own terms, Netlist's purchase orders superseded any prior agreements or discussions with Samsung, such as forecasts and informal e-mail or oral requests to purchase product. | Choi Decl. ¶ 55, Exh. 54 at pp.3, 6, 9, § 28; ¶ 53, Exh. 52 at NL002029. |
| 51. In 2017, Netlist asked Samsung for Embedded MultiMediaCard (eMMC) supply. | Choi Decl. ¶ 3, Exh. 2 at 195:10-12. |
| 52. Samsung does not normally sell eMMC to channel distributors like Netlist, but, after CEO Chuck Hong asked President Jun for support, Samsung agreed to support Netlist's requests. | Choi Decl. ¶ 11, Exh. 10 at 63:17-64:16, 85:17-87:2. |
| 53. Samsung allocated a significant amount of EMMC product to Netlist for 2017, much of which been allocated to another customer. | Choi Decl. ¶ 11, Exh. 10 at 85:17-87:2. |
| 54. After purchases orders had been submitted and prices for eMMC dropped | Choi Decl. ¶ 3, Exh. 2 at 194:8-196:10; ¶ 59, Exh. 58 at NL000091; ¶ 11, Exh. |

| | |
|---|---|
| unexpectedly in the second half of 2017, Netlist cancelled half of its eMMC order. Netlist CEO Chuck Hong testified that cancelling a purchase order constitutes non-performance under the JDLA. | 10 at 85:17-87:2; ¶ 8, Exh. 7 at 164:11-21. |
| 55. Netlist argued in its Korean tax appeal that: "the granting of cross licenses under the [JDLA] is limited to the joint research and development, and hence in cases where Samsung Electronics uses intellectual property rights of [Netlist] in the course of its own research and development, it does not constitute something that can be subject to the [JDLA]." | Choi Decl. ¶ 60, Exh. 59 at p.4. |
| 56. The Korean tax tribunal relied on Netlist's position that the license was limited in making its ruling. | Dkt. 88-7 at p.7. |
| 57. Section 3.2 of the JDLA states, in pertinent part: "Taxes. . . . To the extent that any withholding taxes are required by applicable law for the payment set forth in this Agreement, Samsung may deduct any applicable withholding taxes due or payable under the laws of Korea . . . provided that Samsung shall pay such | Choi Decl. ¶ 20, Exh. 19 at p.5, § 3.2. |

| | |
|---|---|
| withholding taxes to the Korean tax authorities and promptly provide Netlist with a certificate of payment for such withholding tax, as required by applicable law or treaty, and reasonably cooperate with Netlist in any lawful efforts to claim a credit or refund or exemption with respect to any such withholding taxes. | |
| 58. On November 5, 2015, shortly before the JDLA was signed, Samsung sent Netlist a tax form for Netlist to apply for a reduced tax rate as a foreign corporation. | Choi Decl. ¶ 61, Exh. 60; ¶ 6, Exh. 5 at 140:23-141:22, 143:14-24. ¶ 15, Exh. 14 at RFA No. 17; ¶ 61, Exh. 60 at NL046086-89. |
| 59. The form indicated that the tax rate on royalties pursuant to a treaty with the US was 16.5%. | Choi Decl. ¶ 61, Exh. 60 at p. 3; ¶ 15, Exh. 14 at RFA No. 17; ¶ 61, Exh. 60 at NL046086-89. |
| 60. Netlist CFO Gail Sasaki reviewed, signed, and returned the form to Samsung. | Choi Decl. ¶ 61, Exh. 60 at pp.1, 3; ¶ 6, Exh. 5 at 144:1-145:4. |
| 61. According to Netlist's CEO Chuck Hong, Sasaki had the authority to approve and sign such tax form without his approval. In her capacity as Netlist's CFO, Sasaki was expected to consult with a tax expert before executing the form to ensure it was appropriate for Netlist to sign. | Choi Decl. ¶ 8, Exh. 7 at 175:9-176:14. |

| | |
|---|---|
| 62. Samsung withheld 16.5% tax and paid it to the Korean National Tax Service because it considered the $8 million as consideration for Netlist's grant of patent licenses, and Korean law requires withholding of payments on such royalties. | Choi Decl. ¶ 63, Exh. 62 at p.1; ¶ 61, Exh. 60 at p. 3; Dkt. 88-7 at p.4. |
| 63. What Netlist wanted was for Samsung to deny that the $8 million was for patent royalties, which Samsung did not believe to be true. | Choi Decl. ¶ 63, Exh. 62 at p.1; ¶ 61, Exh. 60 at p.3; Dkt. 88-7 at p.4; ¶ 67, Exh. 66 at NL118556; ¶ 6, Exh. 5 at 123:19- 124:24 |
| 64. Netlist executives internally discussed whether to provide notice of breach over the tax withholding dispute in March 4, 2016, but decided not to send a breach notice because it wanted to reap the benefits of its business relationship with Samsung. | Choi Decl. ¶ 70, Exh. 69 at p.1; ¶ 6, Exh. 5 at 57:4-64:2. |
| 65. As to the supply claim, Netlist asserts that "starting as early as the second quarter of 2017, Samsung began to refuse and/or cancel orders from Netlist. | Choi Decl. ¶ 71, Exh. 70 at p.13, ROG No. 8. |
| 66. Instead, Netlist waited to provide notice of alleged breach until May 27, 2020, more than *four years* after it first considered doing so. | Dkt. 18-2 at ¶ 19 (First Amended Complaint); Choi Decl. ¶ 72, Exh. 71. |

| | |
|---|---|
| 67. In consideration for the JDLA, Samsung provided a $15 million convertible note that offered the potential that Samsung would take an equity stake in Netlist. The $15 million note is due December 31, 2021. | Choi Decl. ¶ 73, Exh. 72 at NL000342 § 4; Choi Decl. ¶ 20, Exh. 19 at p. 1 ("WHEREAS, the Parties are concurrently executing an agreement for convertible note financing")<br><br>For note due date, *see* Choi Decl. ¶ 73, Exh. 72 at NL000339 § 2. |
| 68. Section 8.1 of the JDLA grants to Netlist and its subsidiaries "a perpetual (subject to Section 13.3), paid-up, worldwide, non-exclusive, non-transferable, non-sublicensable license under Samsung's Licensed Patents to make and have made (subject to Section 8.4) Netlist's Licensed Products, and to use, sell, offer for sale, import, and otherwise transfer or dispose of such products." | Choi Decl. ¶ 20, Exh. 19 at p. 8, § 8.1 |
| 69. Section 16.7 of the JDLA provides that any amendment "requires the signatures of the authorized representatives of the Parties." | Choi Decl. ¶ 20, Exh. 19 at p.14, § 16.7 |
| 70. Around the time the JDLA was being negotiated, Netlist was having cash flow issues. | Choi Decl. ¶ 19, Exh. 18 at F-7. |

| 71. Chuck Hong's close friend, YH Jun, who had been President of Samsung's memory division, moved to a separate company in 2017. Up until that point, Chuck Hong had been able to use this relationship to "push through" certain orders and obtain red-carpet treatment. | Choi Decl. ¶ 8, Exh. 7 at 119:6-120:7. |

DATED:  August 30, 2021

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


By:   _/s/ Ekwan E. Rhow_

Ekwan E. Rhow
Attorneys for Defendant Samsung
Electronics Co., Ltd.

# EXHIBIT 3

JASON C. LO, SBN 219030
    jlo@gibsondunn.com
MATTHEW BENJAMIN (*pro hac vice*)
    mbenjamin@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
    rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation, | CASE NO. 8:20-cv-993-MCS (ADS) |
| Plaintiff, | **DECLARATION OF PAIK KI HONG IN SUPPORT OF NETLIST INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, | |
| Defendant. | |

Gibson, Dunn &
Crutcher LLP

# **DECLARATION OF PAIK KI HONG**

I, Paik Ki Hong, declare:

     1.    I am submitting this declaration in support of Netlist, Inc.'s ("Netlist") Motion for Partial Summary Judgment. I have personal knowledge of the matters stated here and I could and would testify under oath to them if needed.

     2.    I am Executive Vice President and Chief Operating Officer at Netlist, Inc. ("Netlist"). Since at least 2015, I have been personally involved with and overseen the procurement of NAND and DRAM products from suppliers, including from Samsung. As a result, I have personal experience, involvement in, and knowledge of Netlist's process of purchasing supply directly from Samsung and in the secondary market.

     3.    Netlist and Samsung entered into a Joint Development and License Agreement ("JDLA") in November 2015 in which Samsung agreed to supply NAND and DRAM to Netlist at Netlist's request and at a competitive price. After signing the JDLA, Samsung routinely supplied Netlist's needs for Samsung NAND and DRAM products per Netlist's requests. Overall, our orders and fulfillment by Samsung went smoothly, and continued to increase rapidly throughout 2016 and 2017. During this period, Samsung reasonably complied with our requests and delivered supply consistent with our forecasts and purchase orders, despite periods of chip shortages. But in May 2017, Samsung suddenly stopped agreeing to support our NAND and DRAM product requests and started refusing to allow Netlist to submit purchase orders for such products.

     4.    Before Samsung unilaterally informed Netlist that its allocation would be cut to zero in May 2017, the purchase process generally worked as follows: On a regular basis, Netlist would provide Samsung with forecasts showing the amount of Samsung product it would need going forward. Our forecasts were detailed and included line items with particular SKU numbers, volumes, and delivery dates for the amount of Samsung NAND and DRAM we required based on specific customer needs. Samsung would then allow us to place purchase orders consistent with our forecasts.

1  Thus, for nearly two years, Samsung reasonably complied with our requests and

2  delivered supply consistent with our forecasts and purchase orders.

3       5.     The process changed in the second quarter of 2017 when Samsung

4  repudiated its supply obligation. Samsung began to refuse to supply us outright and/or

5  would cancel purchase orders. In particular, after we provided our forecasts, Samsung

6  indicated that it was only willing to fulfill a very limited number of line items, which

7  was substantially less than the quantity we had forecasted and not in compliance with

8  Samsung's supply obligation. We were then forced to place a far more limited

9  purchase order per Samsung's response that limited the quantity of product we could

10  order. If Samsung followed through on our purchase order at all, it would deliver the

11  limited amount of NAND and DRAM products we were allowed to submit an order

12  for. Moreover, Samsung frequently failed to follow through even on the purchase

13  orders it had approved (the ones with the quantity already limited by Samsung that

14  were already not in compliance with Samsung's supply obligation) and instead

15  required Netlist to cancel purchase orders it had already placed.

16       6.     Netlist only purchased Samsung NAND and DRAM on the secondary

17  market from sellers other than Samsung when Samsung refused to fulfill our requests.

18  That is because, among other reasons, Samsung products sourced from a third-party

19  middleman cost more than the same products purchased directly from Samsung, are

20  often of inferior quality, and take significantly more time, effort, and logistical

21  coordination by Netlist to procure. For example, it is nearly impossible for a single

22  third-party middleman to supply 1,000 pieces of Samsung product in a single purchase.

23  Thus, if Samsung refused to fulfill an order for 1,000 pieces of product, Netlist was

24  forced to try and cover the shortfall from multiple different suppliers. This required

25  substantially more involvement and investment from my team and me than if we were

26  dealing with a single stable supplier because we had to now identify multiple suppliers,

27  deal with invoices from multiple suppliers, coordinate logistics with multiple suppliers,

28  and pay separate shipping costs for multiple shipments—all in addition to paying

higher prices than if we had been able to purchase Samsung NAND and DRAM directly from Samsung as agreed. And even then, Netlist was often unable to find sufficient quantities of Samsung product on the secondary market.

I certify under penalty of perjury under the laws of the United States that the foregoing statements are true.

Dated: August 16, 2021

By: _____

Paik Ki Hong

DECLARATION OF PAIK KI HONG

Gibson, Dunn & Crutcher LLP