JASON C. LO, SBN 219030
  jlo@gibsondunn.com
MATTHEW BENJAMIN (pro hac vice)
  mbenjamin@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

JASON SHEASBY, SBN 205455
  jsheasby@irell.com
IRELL & MANELLA LLP
800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>                    Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**NETLIST INC.'S PRETRIAL BRIEF CONCERNING SAMSUNG'S PURPORTED AFFIRMATIVE DEFENSES** |

# TABLE OF CONTENTS

**Page**

I.   The Summary Judgment Order Adjudicated Samsung's Merits
     Defenses. ........................................................................................................2

II.  Samsung Lacks Valid Acquiescence and Estoppel Affirmative
     Defenses. ........................................................................................................6

     A.   Samsung's Acquiescence and Estoppel Arguments Are
          Untimely. ...............................................................................................6

     B.   Acquiescence Is Not a Cognizable Defense Under New
          York Law. ..............................................................................................8

     C.   Samsung Cannot Prove Netlist Should Be Equitably
          Estopped. ...............................................................................................8

III. The Court May Grant Summary Judgment on Samsung's
     Defenses. ......................................................................................................10

     A.   Summary Judgment on Acquiescence Is Merited. .............................10

     B.   Summary Judgment on Equitable Estoppel Is Merited. ....................12

IV.  Samsung Waived Any Additional Affirmative Defenses. ...........................14

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Antonini v. Petito*,
  946 N.Y.S.2d 133 (App. Div. 2012) ................................................. 12

*Beasley v. AZZ, Inc.*,
  2016 WL 8198320 (N.D. Okla. 2016) .............................................. 7

*Burr v. Inland Drilling Co., Inc.*,
  883 F.2d 1023 (9th Cir. 1989) ........................................................ 5, 6

*Cap. One, N.A. v. Auto Gallery Motors, LLC*,
  2019 WL 4805253 (E.D.N.Y. 2019) ........................................... 10, 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................... 10

*City of N.Y. v. N.Y. Cent. R.R. Co.*,
  275 N.Y. 287 (1937) ...................................................................... 8

*In re Com. Acceptance Corp.*,
  5 F.3d 535 (9th Cir. 1993) ............................................................. 3

*Corbello v. Valli*,
  974 F.3d 965 (9th Cir. 2020) ......................................................... 6

*Corning Glass Works v. Southern New England Telephone Co.*,
  674 F. Supp. 999 (W.D.N.Y. 1987) ............................................... 8

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*,
  841 F. Supp. 1339 (E.D.N.Y. 1994) ............................................. 7, 8

*Diversey Lever Inc. v. Ecolab, Inc.*,
  191 F.3d 1350 (Fed. Civ. 1999) .................................................... 4

*Duarte Nursery v., U.S. Army Corps of Engineers*
  2017 WL 3453206 (E.D. Cal. 2017) .............................................. 3

*Flushing Unique Homes, LLC v. Brooklyn Fed. Sav. Bank*,
  954 N.Y.S.2d 606 (App. Div. 2012) ............................................. 12

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgt., L.P.*,
7 N.Y.3d 96 (2006) ................................................................................. 9

*Kaffaga v. Steinbeck*,
2017 WL 5989039 (C.D. Cal. 2017) ..................................................... 3

*Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*,
56 N.Y.2d 175 (1982) .......................................................................... 8, 9

*Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*,
841 F.2d 918 (9th Cir. 1988) ............................................................... 14

*Pantry, Inc. v. Stop-N-Go Foods, Inc.*,
796 F. Supp. 1164 (S.D. Ind. 1992) ....................................................... 4

*Perlman v. M. Israel & Sons Co.*,
306 N.Y. 254 (1954) ......................................................................... 14, 15

*Portsmouth Square Inc. v. S'holders Protective Comm.*,
770 F.2d 866 (9th Cir. 1985) ............................................................. 9, 10

*Pullano v. No. 8170, CCDC Guard*,
2013 WL 1758999 (D. Nev. 2013) ......................................................... 4

*Ross v. CCS Int'l Ltd.*,
2000 WL 1804103 (S.D.N.Y. 2000) ..................................................... 10

*Rothschild v. Title Guar. & Tr. Co.*,
204 N.Y. 458 (1912) .............................................................................. 8

*In re Specialty Rest. Corp.*,
21 F. App'x 707 (9th Cir. 2001) .......................................................... 15

*Taylor v. United States*,
821 F.2d 1428 (9th Cir. 1987) ............................................................. 14

*United States v. Mottollo*,
26 F.3d 261 (1st Cir. 1994) .................................................................... 6

*Urban Archaeology Ltd. v. 207 E. 57th St. LLC*,
2009 WL 8572326 (N.Y. Sup. Ct. 2009) ............................................. 15

NETLIST'S PRETRIAL BRIEF CONCERNING
SAMSUNG'S PURPORTED  AFFIRMATIVE DEFENSES
CASE NO. 8:20-CV-993-MCS (ADS

*In re Vebeliunas*,
    332 F.3d 85 (2d Cir. 2003) ........................................................................... 9, 12, 14

*Waterbury v. T.G.&Y. Stores Co.*,
    820 F.2d 1479 (9th Cir. 1987) ............................................................................. 10

*Williams v. Univ. Med. Ctr. of S. Nev.*,
    2010 WL 3001707 (D. Nev. 2010) ......................................................................... 4

*Wilshire Assocs., Inc. v. Ashland Partners & Co., LLP*,
    2010 WL 11505571 (C.D. Cal. 2010) ................................................................... 15

*Wu v. Doucette*,
    2010 WL 1444505 (C.D. Cal. 2010) ..................................................................... 15

## Other Authorities

Wright & Miller, 10B Fed. Prac. & Proc. § 2736 (4th ed. 2021 update) .................... 2

## Rules

Fed. R. Civ. P. 8 ........................................................................................................... 14

Fed. R. Civ. P. 33 ..................................................................................................... 6, 7

This Court has consistently emphasized the importance of compliance with all applicable procedural rules and refused to countenance deviation from them.[1] Samsung does not seem to have received this message. Days after the Court granted summary judgment finding that Samsung breached two provisions of the parties' Joint Development and Licensing Agreement ("JDLA"), new counsel for Samsung filed a since-denied motion for reconsideration. Dkts. 195, 210, 215. Samsung now transparently attempts to relitigate arguments already **twice** rejected by the Court, and belatedly raises—for the first time—purported defenses that it previously waived. The Court should not entertain this continued effort to subvert the procedural guiderails that the Federal and Local Rules impose.

After a year of discovery in this matter, the parties cross-moved for summary judgment, submitting hundreds of pages of briefing, exhibits, affidavits, and other assorted papers to the Court. Based on that extensive record, and following oral argument, the Court issued a thorough, thoughtful opinion partially granting summary judgment in favor of Netlist on its breach of contract claims and granting Netlist's request for declaratory judgment. Dkt. 186 (the "Order"). "Nothing" gave the Court pause in determining that Samsung breached JDLA Section 6.2, as "Samsung does not dispute that it declined to fulfill all of Netlist's orders for NAND and DRAM products," leaving only "[d]amages [to] be proven at trial." *Id.* at 9-10, 15. The Court also held that Samsung "breached by withholding" $1.32 million owed to Netlist under the JDLA, which Samsung again "d[id] not genuinely dispute." *Id.* at 15-16.

---

[1] *See* Dkt. 116 at 1-2 (denying Samsung's "untimely" application that also "fail[ed] to demonstrate compliance with the prefiling conference requirement"); Dkt. 117 at 2 ("warn[ing] that abuse of ex parte procedures will result in sanctions"); Dkt. 120 at 5-7 (finding Samsung waived unpleaded affirmative defense, declining to consider arguments Samsung first raised in reply brief, and rejecting Samsung's improper attempt to strike allegations via Rule 12(f) motion); Dkt. 186 at 12-13 (denying "component of Samsung's motion for failure to comply with Local Rule 7-3"); Dkt. 215 (denying motion for reconsideration "as untimely" under the Court's scheduling order and "not a proper vehicle for Samsung's arguments" under Local Rule 7-18).

The Court found that both of these breaches were material, and Samsung did "not seriously contest" this fact either. *Id*. at 19. As the Court summarized, it "grant[ed] summary judgment in favor of Netlist and against Samsung ***as to all elements but damages***" in connection with both breaches. *Id.* at 22.

Samsung now seeks to raise five supposed affirmative defenses at trial, one of which is not even a cognizable defense under New York law. Each of these theories has already either been expressly argued to the Court and rejected, or has been waived because it was not discussed in Samsung's summary judgment briefing. First, Samsung expressly seeks to relitigate ***waiver***, a defense already twice rejected by this Court. Second, Samsung repackages waiver as a previously unbriefed (and therefore waived) ***acquiescence*** theory that is not recognized by New York law. Third, Samsung raises a new argument concerning ***equitable estoppel***, which was not expressly pleaded or previously litigated (and therefore waived), was not disclosed during discovery, and which is predicated on its defunct waiver theory. Fourth, although not previously pleaded or briefed (and therefore waived), Samsung wants to tell the jury that its conduct was justified by the doctrine of ***anticipatory breach***. Finally, Samsung also now seeks to litigate an unpleaded and unbriefed (and therefore waived) ***impossibility*** defense to excuse its non-performance. None of these merits-based theories should be presented at trial.

## I.   The Summary Judgment Order Adjudicated Samsung's Merits Defenses.

For more than seventy years, the Federal Rules of Civil Procedure have made clear that "when there is a genuine issue as to damages, but not as to the ultimate liability of [a] nonmoving party, an interlocutory summary judgment is appropriate" to resolve "the issue of liability." Wright & Miller, 10B Fed. Prac. & Proc. § 2736 (4th ed. 2021 update). Accordingly, "if the court establishes the existence of liability on summary judgment, "the case then will proceed for a determination of the damages issue" at trial. *Id.* That is precisely the situation here.

Netlist sought "summary judgment on Samsung's material breaches of contract

and Netlist's proper termination of the contract," with its "extensive damages" to be "prove[d] at trial." Dkt. 145 at 3. The appropriate time for Samsung to have raised all defenses against its liability was when it filed its opposition to that motion because "[t]he failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense." *In re Com. Acceptance Corp.*, 5 F.3d 535, *4 (9th Cir. 1993) (Boochever, J., concurring). Indeed, Samsung *did* address affirmative defenses in its opposition, including allegations of (i) Netlist's non-performance, (ii) the reasonableness of Samsung's conduct, (iii) judicial estoppel, and (iv) waiver. Dkt. 168. The Court rejected those defenses and "grant[ed] summary judgment in favor of Netlist and against Samsung as to all elements but damages" in connection with Samsung's breach of the JDLA's supply obligation and tax withholding provisions. Dkt. 186 at 22. Accordingly, in connection with those breaches of the JDLA the only remaining disputed fact—the sole proper subject of the forthcoming trial—are the damages Samsung owes to Netlist.

Given the Summary Judgment Order, opinions from this district and others make clear that Samsung is now barred from further advancing or presenting to the jury affirmative defenses related to its liability. In *Kaffaga v. Steinbeck*, for instance, defendants were "precluded from introducing argument, evidence and testimony regarding any affirmative defenses [they] might have had against Plaintiffs' claims for breach of contract" because the Court had already "granted partial summary judgment in favor of Plaintiffs on the issue of liability as to those claims," and any "[a]ffirmative defenses not raised in opposition to [the] motion for partial summary judgment as to liability [were] deemed abandoned." 2017 WL 5989039, *1 (C.D. Cal. 2017). Similarly, *Duarte Nursery v. U.S. Army Corps of Engineers* held that where a defense "is timely asserted in an answer, but then omitted in a summary judgment opposition where liability is determined," it may not be "presented at trial" because allowing such defenses "to lay dormant and then resurface at trial, after liability has been determined, would undermine judicial economy, efficiency, and fairness to the

opposing party" by "keep[ing] the court and parties in 'limbo'" and potentially allowing such "unargued affirmative defenses" to subsequently "unravel the court's prior dispositive liability decisions." 2017 WL 3453206, *2-3 (E.D. Cal. 2017); *see also*, *e.g.*, *Diversey Lever Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352-53 (Fed. Cir. 1999); *Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1164, 1166-68 (S.D. Ind. 1992); *Pullano v. No. 8170, CCDC Guard*, 2013 WL 1758999, *3 (D. Nev. 2013); *Williams v. Univ. Med. Ctr. of S. Nev.*, 2010 WL 3001707, *2 (D. Nev. 2010).

Those cases are on all fours with the instant dispute. In opposing Netlist's partial summary judgment motion, it was "incumbent upon" Samsung to raise ***all*** affirmative defenses it intended to litigate. *Pullano*, 2013 WL 1758999, at *3. Nevertheless, Samsung did not brief (i) acquiescence, (ii) equitable estoppel, (iii) anticipatory breach or (iv) impossibility. Having then failed to do so, those defenses "cannot now be raised to oppose damages." *Id.* Indeed, Samsung never even ***pleaded*** two of the purported defenses it now seeks to raise for the first time. *See infra* Pt. IV.

Nor should Samsung be permitted to relitigate the waiver defense that it presented during summary judgment. There, Samsung argued that "Netlist waived its claim by acquiescing in the alleged breaches" for years, "far too long for Netlist to have sat on its rights." Dkt. 150 at 33. The Court rejected that argument, explaining that even if Netlist had "not complained" and "not acted . . . for years," under New York law that would not "evince an unmistakably manifested intent to waive [the JDLA's] no-waiver provision" and therefore it did not constitute waiver of Netlist's contractual rights. Dkt. 186 at 20. Samsung subsequently sought reconsideration, again arguing that Netlist "should not be permitted to rely on the no-waiver provision to shield it from its clear choice to forego notifying Samsung of its purported breaches." Dkt. 210 at 27. The Court denied Samsung's waiver arguments for a second time. *See* Dkt. 215. Despite this Court's repeated rejection of this defense, Samsung now wants to argue to the jury that Netlist waived its contractual rights by "deliberately and unjustifiably fail[ing] to give timely notice" of Samsung's breaches,

and that "Netlist lulled Samsung into believing that Netlist did not intend to assert [such] breaches" because it "delayed giving notice." Dkt. 225-1 at 12-13. There is no basis for trying a waiver defense that has already been rejected by this Court. Twice.[2]

Samsung has had ample opportunity to prove *any* affirmative defenses that it saw fit to litigate. It took its ***first bite*** at that apple in moving for summary judgment. Dkt. 150. Samsung took a ***second bite*** when it opposed Netlist's motion for partial summary judgment, largely reiterating the same arguments. Dkt. 168. Most recently, Samsung's new counsel, retained after summary judgment was granted, Dkt. 195, took a ***third bite*** by bringing a frivolous motion for reconsideration, Dkt. 210. And now, Samsung asks this Court to permit it a ***fourth bite*** at that very same apple by allowing merits arguments on liability to be tried to the jury notwithstanding that judgment has already been entered that Samsung is liable for its breaches. Dkt. 186.

In denying the reconsideration motion, this Court appropriately "decline[d] Samsung's invitation to consider contentions Samsung failed to offer in its summary judgment papers on the eve of trial." Dkt. 215 at 2. Samsung cannot now argue at trial that it should not be liable for breaching the JDLA when it had an "obligation to raise [such] defense[s] as an issue in response to [Netlist's] motion for summary judgment." *Burr v. Inland Drilling Co.*, *Inc.*, 883 F.2d 1023, *4 (9th Cir. 1989). Because it "failed to do so," those defenses have "been waived." *Id.* Indeed, to hold otherwise and find

---

[2] To the extent Samsung attempts to distinguish its earlier arguments as addressing Netlist's waiver of its right to terminate the JDLA, rather than its right to seek damages, that would simply misrepresent its prior briefing, in which it expressly argued that "Netlist waived all of its claims ***and*** any right to terminate." Dkt. 179 at 14. Regardless, it would be a distinction without a difference. Nothing in the parties' arguments or the Court's analysis concerning waiver turned on the type of relief sought. Indeed, the bases for Samsung's current waiver argument are the very same conduct that the Court has already found do not constitute waiver as a matter of New York law. *Compare* Dkt. 225-1 at 13, *with* Dkt. 186 at 20. Any such distinction would also be unavailing because arguments Samsung did not make in opposing Netlist's summary judgment motion have been waived.

that "a defendant in these circumstances may bide his time by withholding such liability-negating affirmative defenses until after summary judgment has been entered against him . . . would make a mockery of the summary judgment process and do incalculable injustice to opposing parties who have played by the rules." *United States v. Mottolo*, 26 F.3d 261, 264 (1st Cir. 1994).

## II.      Samsung Lacks Valid Acquiescence and Estoppel Affirmative Defenses.

### A.      Samsung's Acquiescence and Estoppel Arguments Are Untimely.

By belatedly raising acquiescence and estoppel, Samsung is once again playing fast-and-loose with the Federal Rules. On June 8, 2021, Netlist served Samsung with an interrogatory requiring it to "[d]escribe in detail and separately by defense the basis for and all facts supporting each of the affirmative defenses in [its] Answer." Dkt. 145-43 at 21. In July, following an order compelling it to provide a substantive response, Samsung stated in general terms seven purported facts, none of which clarifies any of Samsung's purported defenses. *Id.* at 22-23. More importantly, Samsung's interrogatory response said nothing about Netlist's supposed acquiescence to Samsung's breaches via Netlist's "affirmative conduct," nor did the response address Samsung's equitable estoppel argument premised on Netlist allegedly having misrepresented or concealed material facts and Samsung's supposed "reliance" "on Netlist's conduct." Dkt. 225-1 at 8. A cursory comparison of Samsung's current theories and those disclosed during discovery just four months ago shows that Samsung once again hid the ball by failing to "*fully*" answer Netlist's interrogatory. Fed. R. Civ. P. 33(b)(3); *compare* Dkt. 225-1 at 7-16, *with* Dkt. 145-43 at 22-23.

This tactic was particularly prejudicial in connection with Samsung's estoppel defense, which Samsung summarily pleaded simply as "Estoppel," without clarifying which type of estoppel it intended to invoke. Dkt. 27 at 6. Samsung's summary judgment briefing relied on ***judicial*** estoppel. Dkt. 150 at 25-26. Now that this defense has been rejected, Dkt. 186 at 14-15, Samsung has pivoted and raised for the first time the distinct doctrine of ***equitable*** estoppel, Dkt. 225 at 50-51. Having lost on one

theory, Samsung introduced a fundamentally different legal theory with different elements and different applications. *See Corbello v. Valli*, 974 F.3d 965, 978 (9th Cir. 2020) (discussing different estoppel doctrines).

The Court has already refused to indulge Samsung's bait-and-switch tactics. Its order denying judgment on the pleadings rejected Samsung's attempt to raise a new affirmative defense "over seven months after filing its Answer" because the parties had already "expended resources litigating the case without factoring in th[at] defense and its possible impact on the validity of [Netlist's] claims." Dkt. 120 at 7. And in its Summary Judgment Order, this Court similarly refused to consider theories first disclosed in amended interrogatory responses that Samsung served at 10:57 p.m. on the day fact discovery closed and summary judgment briefs were due, because Samsung had violated rules "designed to prevent nonmoving parties from suffering the sort of unfair surprise Samsung's tactics have created here." Dkt. 186 at 12.[3]

Those rationales apply even more strongly now. Samsung first revealed the acquiescence and estoppel theories it intends to pursue on the eve of trial—after discovery closed, summary judgment briefing concluded, and a decision issued. As a result, Netlist has had no meaningful opportunity to challenge those theories (insofar as Samsung argues they differ from its already-denied arguments) through discovery or via dispositive motion. Because allowing Samsung to raise new theories at this late date "would greatly prejudice" Netlist, Samsung should be barred from presenting them. *Beasley v. AZZ, Inc.*, 2016 WL 8198320, *2 (N.D. Okla. 2016); *see also* Fed. R. Civ. P. 33 adv. cmte. comments ("reliance on an [interrogatory] answer may cause such prejudice that the court will hold the answering party bound to his answer").

---

[3] Samsung amended its interrogatory responses about affirmative defenses on the night of August 16th, 2021, but these belated responses still did not adequately disclose the theories revealed for the ***first time*** in its pre-trial filings. Even if these disclosures had fully illuminated Samsung's theories, Netlist would still be prejudiced by their literally eleventh-hour revelation at the deadline for fact discovery and summary judgment.

## B.    Acquiescence Is Not a Cognizable Defense Under New York Law.

As Samsung acknowledges, New York's pattern jury instructions do not include a defense of "acquiescence." Dkt. 226 at 45. That is because New York does not recognize acquiescence as an affirmative defense in contract actions. As a result, Samsung turned to an unlikely source for this defense: *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, a trademark dispute explaining that "[l]aches or acquiescence may estop the owner of a mark from asserting his or her rights in the mark" and "deprive him or her of any remedy for infringing use by others." 841 F. Supp. 1339, 1355-56 (E.D.N.Y. 1994) (cited at Dkt. 226 at 43). *Dial-A-Mattress* says nothing about New York contract law. To the extent that New York contract law references acquiescence, it generally uses that term interchangeably with waiver. *See, e.g.*, *City of N.Y. v. N.Y. Cent. R.R. Co.*, 275 N.Y. 287, 293 (1937) ("Unexplained delay is evidence of ***waiver and acquiescence in non-performance***.").[4]

Samsung's own language gives away the game. By changing its choice of words, Samsung is trying to launder its failed waiver defense. Samsung hopes to argue that Netlist acquiesced in Samsung's non-performance through Netlist's "actual or apparent consent" to Samsung's breaches. Dkt. 226 at 43. But here "consent" refers to no more than the fact that Netlist filed this litigation in 2020, rather than two or three years earlier. Samsung, itself, cannot keep its theories straight, having twice written that "Netlist ***waived*** its claim ***by acquiescing*** in the alleged breaches." Dkt. 150 at 33; Dkt. 168 at 31. That argument has already been rejected. *See supra* Pt. I.

## C.    Samsung Cannot Prove Netlist Should Be Equitably Estopped.

Equitable estoppel is a recognized defense under New York law, but even if

---

[4] New York courts also discuss "acquiescence" in connection with equitable estoppel, *see, e.g.*, *Corning Glass Works v. Southern New England Telephone Co.*, 674 F. Supp. 999, 1013 (W.D.N.Y. 1987), but that doctrine is also unavailing, *see supra* Pt. II.A, *infra* Pt. II.C. Even in that context, acquiescence typically refers to a party having ratified an otherwise-invalid contract. *See, e.g.*, *Rothschild v. Title Guar. & Tr. Co.*, 204 N.Y. 458, 464 (1912). That plainly has no bearing here.

Samsung had not waived this defense, it can lay no claim to it. Samsung seeks to raise what amounts to a "waiver-plus" defense, which it is advancing notwithstanding the fact that the Court has already rejected the predicate waiver argument. *Cf. Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982) ("While estoppel requires detriment to the party claiming to have been misled, waiver requires no more than the voluntary and intentional abandonment of a known right.").

In order to estop Netlist's enforcement of the JDLA, Samsung must show (1) "a false representation or concealment of material facts" by Netlist, (2) Netlist's "intention that such conduct [would] be acted upon" by Samsung, (3) Netlist's "knowledge of the real facts," (4) Samsung's "lack of [such] knowledge," (5) Samsung's "reliance upon the conduct of" Netlist, and (6) "prejudicial changes to [Samsung's] positions." *In re Vebeliunas*, 332 F.3d 85, 93-94 (2d Cir. 2003). But the only specific manner in which Samsung claims in the pre-trial order that Netlist falsely represented or concealed material facts is by "deliberately and unjustifiably delay[ing]" prior to "giving [Samsung] notice of the alleged breach of Section 6.2." Dkt. 225-1 at 11; *see also* Dkt. 208 at 11 (same). Indeed, Samsung's Memorandum of Contentions of Fact and Law expressly acknowledges that the evidence it intends to rely on for its estoppel defense is "substantially the same" as that supporting waiver. Dkt. 208 at 12. That is because it is using estoppel to repackage the same waiver argument that has already been rejected. *See* Dkt. 186 at 20; *supra* Pt. I.

Furthermore, neither the pretrial order nor Samsung's Memorandum of Contentions of Fact and Law provide any explanation as to how it purportedly "relied on Netlist's conduct," nor how it "acted differently than it would have if it knew the true facts." Dkt. 225-1 at 11; *see also* Dkt. 208 at 11 (same). Samsung's pre-trial filings also do not identify ***any*** alleged misrepresentation or concealment that it relied on when breaching Section 3.2 of the JDLA in connection with its improper tax withholdings. *See* Dkt. 225-1 at 11-12; Dkt. 208 at 11. "Thus, in the absence of evidence that [Samsung] was misled by [Netlist's] conduct or that [Samsung]

significantly and justifiably relied on that conduct to its disadvantage, an essential element of estoppel is lacking." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 106-07 (2006). Because Samsung has not identified any way in which it "change[d its] position to [its] injury" in reliance on Netlist's conduct, it cannot pursue an estoppel defense at trial. *Nassau Tr.*, 56 N.Y.2d at 184; *cf. Portsmouth Square Inc. v. S'holders Protective Comm.*, 770 F.2d 866 (9th Cir. 1985) (affirming *sua sponte* dismissal of claim at pre-trial conference where facts alleged in plaintiff's pre-trial filing failed to "establish[ ] a right to relief").

## III.    The Court May Grant Summary Judgment on Samsung's Defenses.

Should the Court find that Samsung's acquiescence or estoppel defenses are cognizable and remain unresolved (although they are neither), the Court should promptly grant summary judgment against Samsung. Indeed, if the Court entertains these defenses, the Court ***must*** decide them. Samsung concedes that acquiescence and estoppel are equitable defenses. Dkt. 225-1 at 8. Accordingly, as Netlist has explained elsewhere, trying them to the jury would be improper. *See* Dkt. 226 at 47, 52.

This Court has already recognized that it has the "authority to grant summary judgment *sua sponte* in the context of a final pretrial conference." Dkt. 227; *see also*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Waterbury v. T.G.&Y. Stores Co.*, 820 F.2d 1479, 1480 (9th Cir. 1987). Doing so "conserves scarce judicial resources" by narrowing the issues in advance of trial. *Portsmouth*, 770 F.2d at 869. Moreover, in light of this matter's procedural history, *see supra* Pt. I, Samsung has had more than a "full and fair opportunity" to develop arguments and present facts in support of its affirmative defenses. *Portsmouth*, 770 F.2d at 869. It failed to do so. There are no material facts in dispute, and Netlist is entitled to summary adjudication.

### A.    Summary Judgment on Acquiescence Is Merited.

Even if acquiescence were a cognizable defense in this action, Samsung's defense would nevertheless fail on its own terms. Samsung asserts that it "must prove"

Netlist's "consent" to Samsung's breaches, Dkt. 225-1 at 8, but under New York law such consent would "require an *intentional* relinquishment of rights," *Ross v. CCS Int'l Ltd.*, 2000 WL 1804103, *4 (S.D.N.Y. 2000); *see also Cap. One, N.A. v. Auto Gallery Motors, LLC*, 2019 WL 4805253, *3 n.6 (E.D.N.Y. 2019) (same). The Court has already held as a matter of law that there was no such intentional relinquishment of rights by Netlist. *See* Dkt. 186 at 20.

That finding rests on a firm foundation in the record. As soon as Samsung stopped filling Netlist's orders in May 2017, Netlist made repeated pleas for Samsung to reinstate its supply of NAND and DRAM because that supply from Samsung was "critical" for Netlist, such that Samsung's "drastic changes" to its allocation "impacted [Netlist's] business and impacted [Netlist's] ability to support [its] customers." Dkt. 168-1 ¶¶ 80, 92, 95, 98, 102, 103, 108. Nor is it genuinely disputed that at the same time that Netlist was pleading for more NAND and DRAM, Samsung employees discussed internally how Samsung accounted for "nearly 100% of [Netlist's] support and Revenue" such that Samsung ceasing to supply Netlist would "have a dramatic impact on their financials and future business" because "they have no other bread and butter." *Id.* ¶ 82. These facts were addressed in Netlist's summary judgment briefing, *see, e.g.*, Dkt. 142-1 at 7-10, and show that Samsung knew of the harm its breaches were causing to Netlist. Far from consenting to Samsung's conduct, Netlist was pleading with Samsung to stop breaching. That Samsung continued to breach anyway reflects Samsung's bad faith, not Netlist's consent.

Similarly, with respect to Samsung's improper tax withholding, the undisputed facts show that Netlist petitioned Samsung to remit the $1.3 million shortly after Samsung wrongfully withheld it. *See* Dkt. 168-1 ¶ 47; Dkt. 145-15. The Tax Tribunal's ruling later confirmed that Korean law had never required Samsung to withhold any of the money owed to Netlist under the JDLA. *See* Dkt. 168-1 ¶ 53. Samsung nevertheless improperly chose to withhold the money owed to Netlist over

Netlist's repeated protests. Among other things, Netlist's CFO expressly informed Samsung that Netlist **would not "provide written consent**" for Samsung to mislead the Korean government as to the nature of the non-taxable funds that Samsung owed Netlist because what Samsung sought to tell the Korean government was "factually incorrect." Dkt. 150-5 at 49. Netlist's consultants from PricewaterhouseCoopers further requested that Samsung inform the Korean government that the funds owed to Netlist under the JDLA were "not a [taxable] license fee," and asked Samsung not to make representations "relat[ing] to $8 million being paid in consideration for the use of all Netlist' [*sic*] patents" precisely because Netlist consistently made clear that it was not a taxable patent royalty payment. *Id.* at 48. Samsung nevertheless refused Netlist's entreaties. *See, e.g.*, Dkt. 168-1 ¶¶ 51-52. Samsung's unilateral decision to ignore Netlist's requests in no way reflects Netlist's consent. The record is clear there was no acquiescence to Samsung's breaches.

### B.   Summary Judgment on Equitable Estoppel Is Merited.

As with acquiescence, Samsung's estoppel defense is based on the same waiver argument the Court has already rejected. *See* Dkt. 208 at 11 (acknowledging both theories rely on "substantially the same" evidence that Netlist allegedly "delayed for as long as three years before giving notice of the alleged breach").

Because estoppel requires reliance, *Vebeliunas*, 332 F.3d at 93, waiver and equitable estoppel defenses are often closely tied together in contract cases where, as here, defendants claim to have relied on plaintiff's waiver. New York courts thus find that estoppel does not apply where the contract in question has a no-waiver clause because such provisions preclude finding that the defendant could have "***justifiably relied*** upon [the plaintiff's] conduct to its detriment." *Flushing Unique Homes, LLC v. Brooklyn Fed. Sav. Bank*, 954 N.Y.S.2d 606, 609 (App. Div. 2012) (affirming grant of summary judgment); *see also, e.g.*, *Antonini v. Petito*, 946 N.Y.S.2d 133, 133 (App. Div. 2012) (granting summary judgment to plaintiff absent any "merit to defendants'

waiver and estoppel arguments in view of the 'no waiver' provision . . . and their failure to show detrimental reliance on anything plaintiff said or did"). In other words, where a no-waiver provision prevents a court from finding that a plaintiff has waived its rights, as here, it necessarily follows that the no-waiver provision also prevents finding that the defendant could have justifiably and detrimentally relied on that same non-existent waiver. That same rationale applies here.

Even absent the no-waiver clause, Netlist is still entitled to summary judgment on Samsung's estoppel defense. The record contains no indication of false representation or concealment of material facts by Netlist. To the contrary, there is no genuine dispute that Netlist vigorously objected to Samsung's failure to supply NAND and DRAM at Netlist's request. And Samsung concedes its refusal to remit the NRE fee notwithstanding Netlist's complaints to Samsung's senior management. *See supra* Pt. III.A. Samsung knew it was breaching the JDLA, Samsung knew that Netlist objected, and Samsung knew that its continued breaches were causing Netlist significant harm. For instance, Samsung executives acknowledged that they had "an ***obligation*** to supply NAND/DRAM" to Netlist and that doing so was "***necessary*** if there [was] a request from Netlist," Dkt. 168-1 ¶¶ 38-39, and they further recognized that they would face "a very dangerous situation" if Netlist learned that Samsung had placed artificial limits on how much it was willing to sell to Netlist, *id.* ¶ 87. Samsung nevertheless intentionally sought to minimize its sales to Netlist, such as by placing an arbitrary supply cap on Netlist's monthly purchases, even as it continued selling greater quantities of computer chips to other customers. *Id.* ¶¶ 76-78, 83, 85-86, 88, 108, 110. And even as it intentionally breached the JDLA, Samsung executives discussed how their conduct would "have a dramatic impact on [Netlist's] financials and future business" because Netlist had "no other bread and butter" as Samsung provided "nearly 100% of [Netlist's] support and revenue." *Id.* ¶ 82.

Samsung's bad faith—as clearly reflected in its internal communications and

as discussed at length in Netlist's summary judgment briefing, Dkt. 142-1 at 7-10, 14-17, 23-24; Dkt. 171 at 12-13, 22-23—belies any argument that Samsung was lulled into thinking its breaches were acceptable to Netlist. These facts preclude any possibility of finding that Samsung could have justifiably and detrimentally relied on any such non-existent belief. Because Samsung cannot show any facts supporting the notion that it justifiably and detrimentally relied upon Netlist's conduct, its equitable estoppel defense fails. *See In re Vebeliunas*, 332 F.3d at 93-94.[5]

## IV.   Samsung Waived Any Additional Affirmative Defenses.

Although the Final Pretrial Conference Order raises only acquiescence, estoppel and waiver, Dkt. 225-1 at 7, Samsung's Memorandum of Contentions of Fact and Law suggests that it intends to litigate additional affirmative defenses at trial. Samsung should not be allowed to introduce evidence or argument concerning affirmative defenses that it did not plead. *See* Fed. R. Civ. P. 8(c) (when answering a complaint "a party must affirmatively state any . . . affirmative defense"); Dkt. 120 at 7 ("The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver."). Because "[a] pretrial order has the effect of amending the pleadings and controls the subsequent course of action in the litigation," any defense not included in the parties' Final Pretrial Conference Order "was waived." *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988).[6]

For instance, Samsung suggests its breach of its supply obligation should be excused, even though its liability has already been found, "because Netlist did not have sufficient cash or credit to pay for the product requested." Dkt. 208 at 3. That Netlist would be unable to pay is an argument based on the doctrine of anticipatory

---

[5] To the extent the Court allows Samsung to present an equitable estoppel defense to the jury, Samsung's efforts to prove its justifiable reliance would also necessarily open the door to Netlist rebutting any such showing by introducing evidence of Samsung's bad faith.

[6] Netlist does not contest the propriety of trying mitigation of damages, which is not an affirmative defense. *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987).

breach, *see Perlman v. M. Israel & Sons Co.*, 306 N.Y. 254, 257 (1954), as Netlist's payments were to follow *after* Samsung's acceptance of purchase orders and delivery of product, *see*, *e.g.*, Dkt. 150-4 at 583-84. Not only is Samsung's claim factually incorrect, but it is also an affirmative defense, *id.*, which Samsung did not plead, *see* Dkts. 27, 225-1, nor raise during summary judgment. It is waived.

Similarly, Samsung also intends to introduce evidence that it could not supply goods to Netlist upon Netlist's request because (i) "the products requested had reasonably been allocated to other customers and were not available to sell to Netlist," (ii) "Netlist's orders were not commercially reasonable," and (iii) "Samsung at times did not have the specific parts Netlist requested." Dkt. 208 at 3-4. To the extent that performance would have been difficult, that is not a valid defense because "[t]he law in New York is well settled that once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome." *Urban Archaeology Ltd. v. 207 E. 57th St. LLC*, 2009 WL 8572326, *4 (N.Y. Sup. Ct. 2009). On the other hand, if Samsung intends to argue that it could not supply the computer chips requested by Netlist, that too would be unavailing. While "[t]he impossibility of performing the contract may be raised as an affirmative defense in a breach of contract action," *id.*, Samsung did not do so, *see* Dkt. 27, 225-1, nor did it argue this on summary judgment.

Neither of these affirmative defenses was "delineated in its answer or preserved in the pretrial conference order," so Samsung cannot advance either of them at trial. *In re Specialty Rest. Corp.*, 21 F. App'x 707, 707 (9th Cir. 2001); *see also Wilshire Assocs., Inc. v. Ashland Partners & Co., LLP*, 2010 WL 11505571, *24 n.273 (C.D. Cal. 2010); *Wu v. Doucette*, 2010 WL 1444505, *8 (C.D. Cal. 2010).

## CONCLUSION

For the foregoing reasons, Samsung should not be allowed to try issues concerning whether or why it breached its supply or tax withholding obligations.

1   Dated: November 10, 2021

GIBSON, DUNN & CRUTCHER LLP

2

By: /s/ Jason C. Lo

3

Jason C. Lo
333 South Grand Avenue

4

Los Angeles, CA 90071
213.229.7000

5

jlo@gibsondunn.com

6

7

Attorneys for Plaintiff Netlist Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28