# ATTACHMENT 1

2006 WL 5986588 (E.D.Cal.) (Trial Motion, Memorandum and Affidavit)
United States District Court, E.D. California.

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff,

v.

HARDIN CONSTRUCTION COMPANY, LLC,

Computer Methods International Corp., Defendants.

COMPUTER METHODS INTERNATIONAL CORP. And

Hardin Construction Company, LLC, Counterclaimants,

v.

MERIDIAN PROJECT SYSTEMS, INC., James Olsen,

John Bodrozic and Mike Carrington, Counterdefendants.

No. 204CV02728.

February 3, 2006.

Date: February 24, 2006
Time: 10:00 a.m.
Courtroom: 2

**Defendant Hardin's Brief In Opposition to Plaintiff's Motion for Partial Summary Judgment**

Chris Gibson, SBN 073353, Michael E. Chase, SBN 214506, Tammy L. McCabe, SBN 340316, Boutin Dentino Gibson Di Giusto Hodell Inc., 555 Capitol Mall, Suite 1500, Sacramento, CA 95814-4603, (916) 321-4444, (916) 441-7597 Fax, Attorneys for Defendants and Counterclaimants Computer Methods International Corp., And Hardin Construction Company, LLC.

Michael A. Jacobs, SBN 111664, Morrison Foerster LLP, 425 Market Street, San Francisco, California 94105-2482, (415) 268-7000, (415) 268-7522 Fax.

J. Michael Stusiak, SBN 142952, Morrison Foerster LLP, 400 Capitol Mall, Suite 2600, Sacramento, California 95814, (916) 448-3200, (916) 448-3222 Fax, Attorneys for Defendant and Counterclaimant Hardin Construction Company, LLC.

Judge: Hon. Frank C. Damrell, Jr.

TABLE OF CONTENTS

| | |
|---|---|
| I. INTRODUCTION ................................................................................................................. | 1 |
| II. FACTUAL BACKGROUND ............................................................................................... | 2 |
| III. MERIDIAN IS NOT ENTITLED TO SUMMARY JUDGMENT IF THERE IS AN ISSUE OF FACT ON ANY ELEMENT OF ITS CLAIMS, OR ANY DEFENSE ................................. | 4 |
| IV. MERIDIAN IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CONTRACT CLAIM .......... | 5 |
| A. Meridian Presented No Evidence of Damages. ................................................................ | 5 |
| B. There is an Issue of Fact About the Existence of a Contract... .......................................... | 5 |
| C. Meridian Submitted No Evidence of Breach .................................................................... | 6 |
| D. Federal Copyright Law Preempts Meridian's Contract Claim ......................................... | 8 |
| V. MERIDIAN IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS COPYRIGHT CLAIM .......... | 9 |
| A. Meridian Must Show Hardin Copied Protectable Elements of Copyrightable Work ........ | 9 |
| B. There is an Issue of Fact Whether Prolog Help Files are Protectable Elements of Expression ....... | 9 |
| C. Meridian Must Prove the Parties' Works are "Virtually Identical," Not Just "Substantially Similar." ........ | 11 |


Case 8:20-cv-00993-MCS-ADS   Document 236-1   Filed 11/15/21   Page 3 of 14   Page ID #:12009

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

| | |
|---|---|
| D. There is an Issue of Fact Whether the Parties' Works are Virtually Identical or Substantially Similar ...... | 12 |
| 1. Prolog and the Hardin-CMiC Contract... .................................................................................. | 13 |
| 2. Prolog and the April 12, 2001 Email .................................................................................. | 14 |
| E. There is an Issue of Fact on Hardin's "Scenes a Faire" Defense .................................................. | 15 |
| F. There Is an Issue of Fact on Hardin's "Fair Use" Defense .................................................. | 16 |
| G. There is an Issue of Fact Whether Schedule H and the April 12, 2001 Email Attachments are Derivative Works .................................................. | 18 |
| VI. CONCLUSION .................................................. | 19 |

TABLE OF AUTHORITIES
Cases

| | |
|---|---|
| *Adobe Systems, Inc. v. One Stop Micro, Inc.,* 84 F.Supp.2d 1086, 1088 (N.D. Cal. 2000) .................................................. | 5 |
| *Adobe Systems, Inc. v Stargate Software, Inc.,* 216 F.Supp.2d 1051, 1054 (N.D. Cal. 2002) .................................................. | 5 |
| *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994) .................................................. | .9, 11, 12 |
| *Berkla. Corel Corp.,* 66 F.Supp.2d 1129, 1139 (E.D. Cal. 1999). .................................................. | 9, 12, 13, 15, 16 |
| *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1477 (9th Cir. 1992) .................................................. | 11 |
| *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002) .................................................. | .,9, 12 |
| *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) .................................................. | 4 |
| *Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1082 (9th Cir. 2000) .................................................. | 16 |
| *Grosso v. Miramax Film Corp.,* 383 F.3d 965, 968 (9th Cir. 2004) .................................................. | 8 |
| *Idema v. Dreamworks,* 162 F.Supp.2d 1129, 1177 (CD. Cal. 2001 .................................................. | 11, 12 |
| *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1175 (9th Cir. 1989) .................................................. | .9, 13 |
| *Kabehie v. Zoland,* 102 Cal.App.4th 513, 526 (2002) ................. | 8 |
| *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984) ....... | 13, 15 |
| *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) .................................................. | 4 |
| *Microstar v. Formgen, Inc.,* 154 F.3d 1107, 1113 (9th Cir. 1998) .................................................. | 6, 19 |
| *Microstarv. Formgen,* 942 F.Supp. 1312, 1315 (S.D. Cal. 1996) .................................................. | 6 |
| *New Kids on the Block v. News America Publishing, Inc.,* 971 F.2d 302 (9th Cir. 1992) .................................................. | 16 |
| *Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102-1103 (9th Cir. 2000) .................................................. | 4 |
| *Novell v. Unicom Sales, Inc.,* 2004 WL 1839117 at *11 (N.D. Cal. 2004) .................................................. | 8 |
| *Portionpac Chemical Corp. v. Sanitech Systems, Inc.,* 217 F.Supp.2d 1238, 1246 (M.D. Fla. 2002) .................................................. | 10 |
| *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1173, 1088 (9th Cir. 1989) .................................................. | 8 |
| *Sega Enterprises Ltd. v. Accolade Inc.,* 977 F.2d 1510, 1524 (9th Cir. 1992) .................................................. | 9, 17, 18 |
| *Smart Inventions, Inc. v. Allied Communications Corp.,* 94 F.Supp.2d 1060, 1066 (C.D. Cal. 2000) .................................................. | 11 |
| *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir. 1996) ................. | 9, 16 |
| *Softman Products Co., L.L.C. v. Adobe Systems, Inc.,* 171 F.Supp.2d 1075, 1088 (C.D. Cal. 2001) .................................................. | 5 |

| | |
|---|---|
| *Sony Computer Entertainment, Inc. v. Connectix Corp.,* 203 F.3d 596, 600, 602 (9th Cir. 2000) .......................................... | 16, 17 |
| *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003) .................................................. | 4, 5 |
| *Swirsky v. Carey,* 376 F.3d 841, 844 (9th Cir. 2004) ................ | 9 |
| *Wilens v. TD Waterhouse Group, Inc.,* 120 CaI.App.4th 746, 757 (2004) ........................................................................ | 5 |
| Statutes | |
| 17U.S.C. §102 ........................................................................... | 8 |
| 17 U.S.C §106 ........................................................................... | 8 |
| 17 U.S.C. §301(a) ..................................................................... | 8 |
| Federal Rule of Civil Procedure 56(c) ....................................... | 4 |

Defendant and counterclaimant Hardin Construction Company, LLC submits this memorandum of points and authorities in opposition to plaintiff's motion for partial summary judgment.

## I. INTRODUCTION

Plaintiff Meridian Project Systems, Inc. ("Meridian") and defendant Computer Methods International Corp. ("CMiC") sell competing software. In its second amended complaint, Meridian alleges that CMiC's software "copies" Meridian's software. Meridian also claims that Hardin Construction Company, LLC ("Hardin"), a former Meridian customer, helped CMiC develop its competing software. Meridian has never had any evidence to support these claims. Its motion for summary judgment does not even argue that CMiC's software is similar to Meridian's software.

Meridian seeks summary judgment on its contract claim against Hardin. Meridian argues that Hardin breached an End User License Agreement ("EULA"). That agreement prevented Hardin from copying or transferring Meridian's "Software or Documentation." Meridian submits no evidence that Hardin did that.

Instead, Meridian bases its motion on an email attachment and a schedule to a contract between Hardin and CMiC. That schedule and attachment contain text which is similar to language which appears on a computer screen when a person operates Meridian's software. Meridian argues that a Hardin employee copied this text and inserted it into the attachment, which became part of the contract schedule. However, that copying could not be a breach of the EULA, because words appearing on a computer screen arc not "Software or Documentation" as defined by Meridian.

Similarly, Meridian submits no evidence of damages, and there is an issue of fact whether the parties even reached an agreement. In addition, Meridian's contract claim is preempted by the Copyright Act.

Meridian also seeks summary judgment on its copyright claim, though it fails to demonstrate it created a work containing original expression protectable under copyright law, or that any work created by Hardin is substantially similar to any work created by Meridian. Instead, Meridian claims ownership of words describing common tasks in the construction industry, words which predate Meridian's existence. Furthermore, to the extent that Hardin asked CMiC to produce software containing certain features, Hardin's acts were protected by the "scenes a faire" and fair use doctrines.

As discussed below, the court must deny Meridian's motion.

## II. FACTUAL BACKGROUND

Hardin is a construction company in Georgia and was a Meridian customer. In 1996, Hardin began using Meridian's project management software, Prolog. Declaration of Chris Gibson ("Gibson Decl.") ¶ 4, Ex. 2 (Traeger Depo. at 83:17-21), In its

Case 8:20-cv-00993-MCS-ADS   Document 236-1   Filed 11/15/21   Page 5 of 14   Page ID #:12011

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

printed form, Prolog version 5.1 has more than 5,000 pages. Gibson Decl. ¶ 2. Prolog software comes with an End User License Agreement ("EULA") which purports to bind users to certain terms. Declaration of J.R. Hamel ("Hamel Decl.") ¶ 9.

Meridian's Prolog does not perform accounting functions, and Hardin used separate accounting software purchased from another firm. In 1999, Hardin sought to replace its accounting software called Penta. Hardin organized a selection committee. Gibson Decl. Ex. 2 (Traeger Depo. at 77:17-78:12). The committee reviewed software to replace the existing Penta system, including software developed by CMiC, JD Edwards, CGC and Bidtek. Gibson Decl. Ex. 1 (Bensley Depo. at 65:7-19).

In addition to accounting software, CMiC had developed project management software. Hardin determined that using CMiC's integrated accounting and project management software was better than using software provided by two vendors. Gibson Decl. Ex. 2 (Traeger Depo. at 83:17- 84:11). CMiC offered fully integrated software that did not require entry of duplicative information into two databases. Gibson Decl. Ex. 2 (Traeger Depo. at 83:17-84:11). Therefore, Hardin decided to purchase not only CMiC's accounting software, but its project management module as well. Decl. Pink Ex. A (Traeger Depo. at 84:4-24).

Hardin did not develop the CMiC software, but only provided to CMiC information about tasks common in the construction industry, because Hardin wanted CMiC's software to perform these tasks. Gibson Decl. Ex.1 (Bensley Depo. at 103:22-104:2; 105:15-22; 106:16-19). In March of 2001, Chris Wright, a Hardin employee, prepared project management specifications. Pink Decl. Ex. B (Bensley Depo. at 83:4-9, 85:7-11). He compiled more than thirty pages of suggested specifications that were eventually emailed to CMiC on April 12, 2001, Pink Decl. Ex. B (Bensley Depo. at 84:3-9 & Ex. 57 pages H893-931). The specifications included job functions like keeping a record of conversations, common functions performed in the construction industry for decades.

Hardin and CMiC signed a written agreement on April 27, 2001. Gibson Decl. Ex, 2 (Traeger Depo. at 81:25-82:5), The contract has 112 pages. An appendix titled "Operations Management Software Requirements Document," also known as "Schedule H," has 17 pages. Pink Decl. Ex. A (Traeger Depo. at 239:14-19 & Ex. 34). This Schedule also cites common job functions performed in the construction industry. For example, the schedule refers to request for information forms, forms used throughout the construction industry.

Some text in Chris Wright's email message and "Schedule H" is similar to text in Prolog help screens. The text describes common construction industry functions such as keeping records of conversations, or creating requests for information. That similar text about these common functions is the basis for Meridian's motion.

Meridian supports its motion with ten pages of "factual information." Hardin disputes many of Meridian's "facts." Hardin refers the court to Hardin's Opposition to Plaintiffs Statement of Undisputed Facts for a thorough discussion.

After Meridian filed its motion, its counsel took Chris Wright's deposition. Mr. Wright testified that he prepared the specifications from Hardin documents. He does not recall copying text from Prolog. However, Hardin admits that some Prolog text appears in the specifications prepared by Mr. Wright, as well as schedule H, and it is fair to assume that the language came from Prolog's help files. But even if Mr. Wright copied that language, Meridian is not entitled to partial summary judgment, and this evidence has no significance for the case.

Hardin reminds the court that Meridian's case is based upon CMiC's software, not a schedule to a contract. In its original and amended and second amended complaints, Meridian claims that CMiC's software copies Prolog, and that CMiC and Hardin worked together to reverse engineer Meridian's product. Meridian has no evidence to support these claims, and it submits none in support of its motion.

Mr. Wright was a project manager, supervising large construction projects. Mr. Wright, other Hardin employees, other construction companies, subcontractors, property owners, architects, and engineers use standard processes, and exchange common forms. To create its project management software, Meridian took these industry processes and incorporated them into

Case 8:20-cv-00993-MCS-ADS   Document 236-1   Filed 11/15/21   Page 6 of 14   Page ID #:12012

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

its software. That software contains help files, which describe these common construction operations. The fact that Mr. Wright copied some text in the help files is insignificant, because Meridian does not own construction processes which predate its existence, or forms common in the industry. This copying has no significance for this motion or for Meridian's case, which will fail for lack of evidence that CMiC's software derives from Prolog.

### III. MERIDIAN IS NOT ENTITLED TO SUMMARY JUDGMENT IF THERE IS AN ISSUE OF FACT ON ANY ELEMENT OF ITS CLAIMS, OR ANY DEFENSE

In its notice of motion and its proposed order, Meridian seeks only "partial summary judgment establishing the liability of [Hardin] for breach of contract and copyright infringement...." Meridian asks for no other adjudication. The court can grant Meridian's motion only if there is no genuine issue as to any material fact and Meridian is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Meridian bears the burden to prove every essential element of its claims. *Southern California Gas Co. v. City of Santa Ana,* 336 F,3d 885, 888 (9th Cir. 2003). If Meridian fails to carry this burden, Hardin has no obligation to produce anything. *Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102-1103 (9th Cir. 2000), If Meridian meets its initial burden, Hardin may defeat the motion by showing a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Hardin's evidence is to be believed, and all reasonable inferences must be drawn in favor of Hardin. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### IV. MERIDIAN IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CONTRACT CLAIM

#### A. Meridian Presented No Evidence of Damages.

The court may not grant summary judgment unless Meridian establishes all elements of its claim. *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003). The elements of a breach of contract claim include the contract, plaintiff's performance or excuse from performance, defendant's breach and resulting damage to the plaintiff. *Wilens v. TD Waterhouse Group, Inc.,* 120 Cal.App.4th 746, 757 (2004).

In its brief, Meridian's argues that Hardin breached the EULA by copying portions of Prolog help screen text. Plt's MSJ part IV. However, Meridian does not identify any damages, or even discuss the relief that it seeks for this alleged breach. Because Meridian presented no evidence of damages, the court must deny its motion for summary judgment for breach of contract.

#### B. There Is an Issue of Fact About the Existence of a Contract.

Meridian presented no evidence that Hardin agreed to the terms of the EULA. Instead, Meridian argues that it shipped the EULA with its software, and the agreement is enforceable as a "shrinkwrap license." Meridian supports this argument with cases from other jurisdictions. Plt's MSJ at 14:7-9; 14:15-16; 15:20-21,

In California, however, "[w]hether contracts such as[a] EULA, often referred to as 'shrinkwrap' licenses, are valid is a much-disputed question." *Softman Products Co., L.L.C. v. Adobe Systems, Inc.,* 171 F.Supp.2d 1075, 1088 (CD. Cal. 2001). Accordingly, it would be premature to grant summary judgment, because the enforceability of shrinkwrap licenses is undecided.

Meridian cites California cases, but they are inapposite. In both the *Stargate* and *One Stop Micro* cases, the issue was not the validity or enforceability of Adobe's shrinkwrap EULA, but whether the document itself was a contract or a license. *Adobe Systems, Inc. v. Stargate Software, Inc.,* 216 F.Supp.2d 1051, 1054 (N.D. Cal. 2002); *Adobe Systems, Inc. v. One Stop Micro, Inc.,* 84 F.Supp.2d 1086, 1088 (N.D. Cal. 2000). In *Microstar,* the district court never even identified the licensing document in issue as a shrinkwrap license. *Microstar v. Formgen, Inc.,* 942 F.Supp. 1312, 1315 (S.D. Cal. 1996). On appeal, the Ninth Circuit declined to determine the license's validity, stating that under the facts and circumstances of the case "it doesn't matter."

Case 8:20-cv-00993-MCS-ADS   Document 236-1   Filed 11/15/21   Page 7 of 14   Page ID #:12013

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

*Microstar v. Formgen, Inc.,* 154 F.3d 1107, 1113 (9th Cir. 1998). Accordingly, the *Microstar* case may not properly he cited for the proposition that California enforces the validity of shrinkwrap licenses. Meridian failed to establish that the EULA was valid and enforceable against Hardin under California law.

### C. Meridian Submitted No Evidence of Breach.

Meridian argues that Hardin breached section 2a of the EULA. That section provides that Hardin may not copy or distribute "copies of the Software or Documentation." Meridian submitted no evidence that Hardin copied or distributed "copies of the Software or Documentation."

Meridian's EULA shows that "Software" and "Documentation" are two different things. That is why the agreement uses both words. Thus, section 1 of the EULA provides that Hardin may use "Software in accordance with the Documentation." Similarly, in section 5, Meridian warrants that "the Software ... will substantially conform to the Documentation."

The EULA distinguishes the two. In section 1, the agreement clarifies that the user "may use the Software only on a single processing unit" which "is executing the Software in a given instant" By contrast, the same section describes "Documentation" to mean "any accompanying documentation" provided with the Software,

J.R. Hamel is Meridian's director of operations. His declaration confirms that "Software" and "Documentation" are separate things. In paragraph 6, he describes Meridian's standard delivery practices:
"Meridian sends each customer a standard form of box containing a CD loaded with the Prolog software. The box also contains Meridian's applicable End User License Agreement ('EULA') and the user manual."


In other words, Meridian sends its customers its software on the CD, which the customer loads into his computer. The customer is supposed to use the software "in accordance with the Documentation," which means the EULA and user manual.

Meridian submitted no evidence that Hardin copied or transferred to CMiC any Software. There is no evidence that Hardin delivered to CMiC any CD containing Meridian's software. Similarly, Meridian presented no evidence that Hardin copied or distributed to CMiC any Documentation. There is no evidence that Hardin provided CMiC with copies of any EULA or user manual.

Instead, Meridian argues that Hardin copied "help files" and inserted language from those files into a schedule to a contract. Meridian never explains how this was done. Perhaps Mr. Wright looked at a computer screen while operating Meridian's software. He then copied language from the screen and included the language in his email attachments, which became a schedule to a contract. That would not be a breach of the EULA. Copying language from a computer screen and inserting it into a schedule to a contract is not the copying of either Meridian's "Software" or "Documentation." The evidence simply does not support a breach of the EULA,

Meridian ignores these key terms in its EULA. In fact, in one part of its brief, Meridian argues that the "help files are part of the Prolog software." Plaintiff's MSJ at 10, footnote 9. In another section of its brief, Meridian argues that its "help files are considered 'Documentation.'" Plaintiff's MSJ at 16:1-2. If the help files are "a part of the Prolog software," they cannot be Documentation. If they are part of Meridian's Documentation, they cannot be part of the Prolog software.

Under Meridian's own analysis, its EULA is ambiguous. Meridian itself is uncertain about the meaning of the words "Software" and "Documentation." If the EULA is uncertain, the court should interpret it against Meridian. California Civil Code section 1654. Additionally, the court should consider Hardin's understanding of the EULA. California Civil Code section 1649.

Case 8:20-cv-00993-MCS-ADS  Document 236-1  Filed 11/15/21  Page 8 of 14  Page ID #:12014

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

In his deposition testimony, Jeff Traeger, Hardin's vice president, stated his belief that Hardin employee Chris Wright "probably copied" portions of Prolog help screen text into the April 12, 2001 email attachments. However, Mr, Traeger denied that Hardin sent CMiC a copy of Prolog and stated that "it would be violating our EULA by providing a copy of the software to CMiC." Pink Decl. Ex. A (Traeger Depo. at 253:21-23; 225:5-14). These statements together with sections 2a and 2b of the EULA indicate that Hardin understood the term "Software" to mean the entire Prolog code, not sporadic portions of help file text appearing on a computer screen.

### D. Federal Copyright Law Preempts Meridian's Contract Claim.

The Copyright Act protects "works of authorship fixed in any tangible medium of expression ..." 17 U.S.C. §102. The Copyright Act grants the owner of a copyright exclusive rights to reproduce the copyrighted work, or to prepare derivative works based upon the copyrighted work. 17 U.S.C. §106. The Copyright Act has an express preemption provision. Under 17 U.S.C. §301(a), "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... are governed exclusively by this title." As the statute makes clear, "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. §301(a).

Federal copyright law controls license agreements which accompany software. *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1173, 1088 (9th Cir. 1989). License provisions which prohibit acts within the scope of copyright law may be preempted. *See Novell v. Unicom Sales, Inc.,* 2004 WL 1839117 at * 11 (N.D. Cal. 2004)(acknowledging that a license provision prohibiting copying of software for purposes of reverse engineering was preempted by the Copyright Act), "To survive preemption, the state [law] cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an 'extra element' that changes the nature of the action." *Grosso v. Miramax Film Corp.,* 383 F.3d 965, 968 (9th Cir. 2004). If a defendant breaches a promise not to copy material that is the subject of a valid copyright, "then the promisor has promised nothing more than that which was already required under federal copyright law" and the contract action is preempted. *Kabehie v. Zoland,* 102 Cal.App.4t 513, 526 (2002).

Meridian claims Hardin copied Meridian's help files. This one act supports both Meridian's contract and copyright claims. Thus, in section V of its brief, Meridian argues that Hardin infringed Meridian's copyright by copying the help files. In section IV of its brief, Meridian claims that same act as the breach of the EULA. There is no allegation of any other breach which might bring the claim outside the scope of copyright law. Because federal copyright law preempts Meridian's breach of contract claims, the court must deny its motion for summary judgment.

### V. MERIDIAN IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS COPYRIGHT CLAIM

### A. Meridian Must Show Hardin Copied Protectable Elements of a Copyrightable Work.

In a copyright infringement action, plaintiff must prove (1) ownership of a valid copyright and (2) copying of the protected elements of the work by the defendant. *Swirsky v. Carey,* 376 F.3d 841, 844 (9th Cir. 2004). To establish copying, plaintiff need only show that defendant had access to the protected work, and that the two works are "substantially similar," *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002). There can be no proof of "substantial similarity" or copyright infringement unless the parties' works are juxtaposed and compared. *Berkla v. Corel Corp.,* 66 F.Supp.2d 1129,1139 (E.D. Cal. 1999).

Summary judgment is not favored on questions of substantial similarity in copyright infringement cases. *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir. 1996). If the nonmoving party presents "an indicia of a sufficient disagreement concerning the substantial similarity of the two works," the case must be submitted to the trier of fact. *Swirsky v. Carey,* 376 F,3d 841, 844 (9th Cir. 2004).

### B. There is an Issue of Fact Whether Prolog Help Files are Protectable Elements of Expression.

Meridian did not establish that Prolog help files arc protectable elements of expression. Not every component of a copyrighted work is entitled to copyright protection. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1175 (9th Cir. 1989). In particular, computer programs pose unique problems, because "they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands." *Sega Enterprises Ltd. v. Accolade Inc.,* 977 F.2d 1510, 1524 (9th Cir. 1992). Protection does not extend to functional or factual elements, or to expressive elements "that 'must necessarily be used as incident to' expression of the underlying ideas, functional concepts or facts," *Id.* An infringement claim may not rest upon any similarity in expression which results from unprotectable elements. *Apple Comptuer. Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994).

The Prolog help files are not entitled to copyright protection merely because they are contained within Prolog and exist as digital files. And the Prolog help files are not entitled to copyright protection merely because "they serve as an electronic user manual." Thus, in *Portionpac Chemical Corp. v. Sanitech Systems, Inc.,* 217 F.Supp.2d 1238, 1246 (M.D. Fla. 2002), the court found the user "manual contains materials that are not copyrightable...."

Meridian never identifies its original expression subject to copyright protection. However, from the declaration of Thomas A. McManus, it appears that Meridian claims exclusive ownership of concepts such as "request for information" and "submittals." Exhibit A to the McManus declaration, lists "specifications" common to Prolog help files and schedule H of the CMiC-Hardin agreement. The first two items are "request for information" and "submittals."

Meridian does not own the concepts of "request for information" or "submittals." In fact, those concepts, and words expressing those tasks, existed before Meridian's formation. As one example, Hardin created a management plan in 1991, before Meridian's existence. That management plan has detailed information and lengthy text about requests for information. It contains a flow chart describing requests for information and has request for information forms. Declaration of Danny Bensley, Exhibit 2, pages 57-59. Similarly, a construction text published in 1997 includes two request for information forms, Declaration of Danny Bensley, Exhibit 5, pages 20 and 27.

The second item on Hardin's list is "submittals." Again, Meridian did not invent the concept of submittals, and text and forms describing the submittal process preexisted Meridian's existence. Thus, procedures and forms for submittals are described in a project book for a lardin project performed in 1984; a management plan provided by Hardin in 1991; a handbook and form contract prepared by the American Institute of Architects; and a construction textbook published in 1997. Meridian does not own the concept of submittals. Declaration of Danny Bensley, Exhibit 1, pages 2- 6, 9-13, 15 and 17; Exhibit 2, pages 52-54; Exhibit 3, pages 24-26; Exhibit 4, pages 12-14; and Exhibit 5, page 28.

Because Meridian has not shown Hardin copied any protectable expression protected by copyright, the court must deny the motion.

### C. Meridian Must Prove the Parties' Works are "Virtually Identical," Not Just "Substantially Similar."

Even if the court determines that the Prolog help files are protectable elements of the Prolog program, Hardin disputes Meridian's application of the "substantial similarity" test. To determine "substantial similarity," the court uses a two-part test which includes an extrinsic test and an intrinsic test. Under the extrinsic test, the court breaks down the copyrighted work into its concrete elements and filters out unprotecable elements. The court then compares the objective, protectable elements of plaintiff's work with defendant's work to determine whether there are substantial similarities in both ideas and expression. *Idema v. Dreamworks,* 162 F.Supp.2d 1129, 1177 (CD. Cal. 2001) (citing *Apple Computer*). Audiovisual works and computer programs are subject

Case 8:20-cv-00993-MCS-ADS   Document 236-1   Filed 11/15/21   Page 10 of 14   Page ID #:12016

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

to analytic dissection of their various standard components, including elements such as screens, menus and keystrokes. *Id.* at 1445; *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1477 (9th Cir. 1992).

Where there are few protectable elements in a copyrighted work, it is entitled only to "thin" protection. Such is the case where the idea merges with expression, where the work contains strong functional elements, or where the similarity arises from the obvious expression of basic ideas. *Apple Computer,* 35 F.3d at 1444; *Smart Inventions, Inc. v. Allied Communications Corp.,* 94 F.Supp.2d 1060, 1066 (C.D. Cal. 2000). Under the thin protection standard, a claim of illicit copying will only be supported by a finding that **the works, *taken as a whole,* are "virtually identical."** *Apple Computer,* 35 F.3d at 1444 (emphasis added). "Substantial similarity" is the standard applied to works entitled to broad protection, which requires something more than mere "similarity" and "must be measured at the level of the concrete elements of each work, rather than at the level of the basic idea it conveys." *Idema,* 162 F.Supp.2d at 1179.

Prolog help screen text is only entitled to thin protection. The concept of construction management software is not original to Meridian, Gibson Decl. Ex. 2 (Traeger Depo. at 102:6-22) (identifying Meridian competitors Hardin considered to provide both project management and accounting software). The idea of software help screens is likewise not original to Meridian. *Brown Bag Software v. Symantec Corp.,* 960 F.2d at 472-73. Help screens generally describe features and functions of the software program. Plt's MSJ at 17:27-18:1. The purpose, function and use of various construction management forms are virtually invariable within the industry. See, e.g., Pink Decl. Ex. A (Traeger Depo. at 263:2-6, 267:4-20) (indicating there are limited ways to express RFI functions). Prolog help screens describe these standard construction management documents, such as requests for information. They merge the idea of such help screen text with the expression of such text. Accordingly, Prolog help screen text is entitled to "thin" protection, and to satisfy the extrinsic test, Meridian must show that the Hardin-CMiC contract and the April 12,2001 email, are virtually identical to Prolog. *Apple Computer,* 35 F.3d at 1444, 1446 ("unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.").

The intrinsic test is a subjective comparison of fact which determines whether the reasonable, ordinary person would find the two works substantially similar in the total concept and feel of the work. *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822-23 (9th Cir. 2002). For purposes of summary judgment, the court only need apply the extrinsic test. If the court determines that there is a triable issue of fact under the extrinsic test, the intrinsic test must be left for the trier of fact. *Cavalier v. Random House, Inc.,* 297 F,3d 815, 824 (9th Cir. 2002).

### D. There is an Issue of Fact Whether the Parties' Works arc Virtually Identical or Substantially Similar.

In applying the extrinsic test, plaintiff has the initial burden to identify the source of the alleged similarity between its work and that of the defendant, *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1443, 1445 (9th Cir. 1994). The court must analyze the components identified by plaintiff using a process of "analytic dissection." *Id.* at 1443. The court must then compare the two works taking into account only the protectable elements of the copyrighted work. *Idema v. Dreamworks,* 162 F.Supp.2d 1129, 1177 (C.D. Cal. 2001).

Meridian's claim that Hardin infringed on its copyright in Prolog rests heavily upon allegations of factual copying. Copying alone, however, is insufficient to establish copyright infringement. Even if the defendant does not contest factual copying, the plaintiff must still prove the existence of "substantial similarity." *Berkla v. Corel Corp.,* 66 F.Supp.2d 1129, 1141 (E.D. Cal. 1999). The parties dispute whether the virtually identical standard or substantial similarity standard of review applies in this case. Under either application, however, plaintiff's claim fails to establish that Hardin impermissibly copied protectable elements of Prolog.

### 1. Prolog and the Hardin-CMiC Contract.

Case 8:20-cv-00993-MCS-ADS Document 236-1 Filed 11/15/21 Page 11 of 14 Page ID #:12017

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

To demonstrate substantial similarity, Meridian must establish that the two **works** are substantially similar in both idea and expression. *Johnson Controls, Inc. v. Phoenix Control Systems. Inc.,* 886 F.2d 1173, 1176 (9th Cir. 1989). Necessarily, the two "works" to be considered are Prolog as compared to the Hardin-CMiC contract. Mere exemplars offered for illustrative purposes are insufficient to establish substantial similarity, and the party with the obligation to produce must submit a comprehensive, line-by-line reproduction for the court to compare. *Berkla,* 66 F.Supp.2d at 1139-40.

To satisfy its initial burden to identify the source of the alleged similarity between Prolog and the Hardin-CMiC contract, Mcridian's attorney's paralegal offers a list. The list is comprised of twelve subject headings allegedly taken from twelve pages of Schedule H and consisting of from one to five words. These subject headings are matched to Prolog subject headings allegedly taken from seventy-nine pages of a printed version of the Prolog program. The list is accompanied by a blanket statement that a comparison of Schedule H and Prolog revealed "similar text." Declaration of Thomas A. McManus ("McManus Declaration") ¶ 3 & Ex. A. Meridian also provides an illustrative exhibit consisting of a side-by-side comparison of eight pages of Prolog help files and eight pages of Schedule H, McManus Declaration ¶ 5 & Ex. D. Nothing indicates this exhibit is a true and correct copy or representation of either document and in fact appears to cobble together pieces of information.

Under either the "substantial similarity" or "virtually identical" standard, Meridian's evidence fails. Meridian did not submit a comprehensive reproduction of the two works and instead offers merely a list of compared subject headings. Reliance upon a list of similarities between two works is permissible only "for 'illustrative purposes' [because] they are inherently subjective and unreliable. [The court is] particularly cautious where, as here, the list emphasizes random similarities scattered throughout the works." *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984). Certainly, Meridian's blanket statement of finding "similar text" and list of twelve subject headings is inherently subjective.

Moreover, the illustrative eight page side-by-side takes cobbled-together words and phrases taken from *seventeen pages* of the 112-page Hardin-CMiC contract and compares them against *seventy-nine of more than 5,000 pages* of the Prolog program. This establishes only that scattered bits of information in the two documents are similar, as arranged and prepared by Meridian. This fails to demonstrate that the two works are substantially similar within the meaning of the law.

Additionally, many of the identified similarities consist of single, isolated words or short phrases which are commonplace in the construction industry. McManus Decl, ¶ 5 & Ex. D (claiming infringement, for example, based upon the individual words "Subject,""Importance" and "Official" and such standard construction industry phrases as "Comments and Suggestions" and "Responding to an RFI"). McManus Decl. Ex. D, Meridian provided no authority for the proposition that individual words, scattered throughout a document, are protected under its copyright. Thus, to the extent that Hardin copied individual words or commonplace phrases, Hardin did not infringe any copyright.

Meridian provided the court with nothing more than a blanket statement of opinion and a short, isolated comparison of text that it arranged. This showing is not sufficient to establish that the two works are "substantially similar," much less "virtually identical," as required under application of the extrinsic test. The court cannot conclude that the two works, the 5,000 page Prolog program, and the CMiC-Hardin contract, are substantially similar.

Finally, because Meridian failed to identify any part of Prolog version 6.0 or establish similarity to the Hardin-CMiC contract, Meridian is not entitled to summary judgment on that claim.

### 2. Prolog and the April 12, 2001 Email.

To satisfy its initial burden to identify the source of the alleged similarity between Prolog and the April 12,2001 email, Meridian's attorney's paralegal compared the April 12, 2001 email attachments to Prolog version 5.1 help files and "found the same text" in the two documents. McManus Decl. ¶ 3. He also compiled a list "identifying Prolog Help Files by title and Bates stamp number and the corresponding CMiC Attachments [attachments to the April 12, 2001 email] by title and Bates stamp number that had text similar or identical to the text in the Prolog Help files." McManus Decl. ¶3 & Ex. B. This exhibit lists ten subject

headings identified as appearing on thirty-nine consecutive pages attached to the April 12,2001 email, each heading consisting of from one to five words. These subject headings are matched to allegedly corresponding Prolog subject headings identified as appearing on seventy-eight pages of a printed version of the Prolog program. Decl. McManus ¶3 & Ex. B.

Again, reliance upon a list of similarities between two works is permissible only for illustrative purposes because of inherent subjectivity and unreliability. *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984). In providing this list, Meridian fails to identify the alleged similarities, other than making a blanket assertion of "identical or near identical text." McManus Decl, at ¶4.

Further, there is no evidence that the entire seventy-eight pages of Prolog were copied into thirty-nine pages of the email attachment. Meridian offers another illustrative side-by-side comparison of text it cobbled together to "illustrate the extent of the copying of the Prolog Help Files." Decl. McManus ¶ 4 & Ex, C. This exhibit, however, establishes only that scattered bits of information in the two documents are similar,

"There can be no proof of 'substantial similarity' and thus of copyright infringement unless [the two works] are juxtaposed and their contents compared." *Berkla v. Corel Corp.,* 66 F.Supp.2d 1139, 1141 (E.D. Cal. 1999). Meridian has not offered a comparison of similarities between the two *works*. It has offered a list, its opinion, and illustrative exhibits it prepared, rather than the actual works themselves. This evidence is insufficient under the extrinsic test to prove the works are substantially similar.

### E. There is an Issue of Fact on Hardin's "Scenes a Faire" Defense.

The side-by-side comparison of certain Prolog help files with a portion of Schedule H also shows that four short paragraphs describing functions of Prolog are identical. Decl. McManus ¶ 5 & Ex. D For example, the first two sentences of one such paragraph which appears both in the Prolog help file text and in the Hardin April 12, 2001 email attachment state:
The Request for information form is used to create and follow up on questions, or requests for information (RFIs), about your project. You can use the Request for Information form to log and track the history of your RFI records from initiation to resolution.

Under the doctrine of scenes a faire, "courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea." *Ets-Hokin v. Skyy Spirits,* Inc., 225 F.3d 1068, 1082 (9th Cir. 2000). Application of the scenes a faire doctrine is proper at the summary judgment stage. *Smith v. Jackson,* 84 F.3d 1213, 1220 (9th Cir. 1996) (stating that proof of defendants access to plaintiff's copyrighted work has no bearing on whether similarity in works is attributable to scenes a faire motives). RFI's are commonplace within the construction industry and are used for a discrete, limited purpose. See, e.g., Pink Decl. Ex. A (Traeger Depo. at 263:2-6, 267:4-20) (indicating there are limited ways to express RFI functions). The Prolog help files merely describe commonplace construction tools such as RFIs. The scenes a faire doctrine precludes a finding of infringement.

### F. There is an Issue of Fact on Hardin's "Fair Use" Defense.

Not all copying of a copyrighted work, even direct copying, constitutes copyright infringement. *Berkla v. Corel Corp.,* 66 F.Supp.2d 1129, 1141 (E.D. Cal. 1999). At the summary judgment stage, it is proper for courts to consider the defense of "fair use." *New Kids on the Block v. News America Publishing, Inc.,* 971 F,2d 302 (9th Cir. 1992). Under the fair use doctrine, intermediate copying of a copyrighted work for the purpose of creating an original work does not infringe on the copyright. *Sony Computer Entertainment, Inc. v. Connectix Corp.,* 203 F,3d 596, 600, 602 (9th Cir. 2000). In determining whether use is fair, the court considers four factors: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyright work. *Connectix,* 203 F,3d at 602.

The *Connectix* case is instructive. In *Connectix,* the defendant maker of a software program called "Virtual Game Station" reverse engineered plaintiff Sony's software program which operated Sony's PlayStation product. Sony sued for copyright infringement. The court held that there was no infringement because any reverse engineering done by Connectix was fair use, and that "[a]ll of this copying was intermediate; that is, none of the Sony copyrighted material was copied into or appeared in, Connectix's final product, the Virtual Game Station." *Connectix,* 203 F.3d at 600. Recognizing that computer programs "contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility or industry demands" the court reasoned that the fair use doctrine allows for public access to the ideas and functional elements contained within computer programs. *Connectix,* 203 F.3d at 603.

Similarly, in seeking to collect and describe certain features Hardin sought in a project management program, it used functional descriptions of commonplace tools contained in some of the Prolog help files. As in *Connectix,* any copying was intermediate: the email document was a list used as a working reference. Meridian has no evidence that the end product, CMiC's Project Manager, infringes upon the Prolog copyright.

Considering the first factor under the fair use doctrine, the fact that the ultimate use was a commercial one tends to weigh against fair use. *Sega Enterprises Ltd. v. Accolade Inc.,* 977 F.2d 1510, 1522 (9th Cir. 1993). However, the *Sega* court noted that although copying for an ultimately commercial purpose generally weighs against the defendant, the court must take into consideration all aspects of the nature and use by defendant because **use is a matter of degree.** *Id.* at 1522. The *Sega* court found the copying legitimatc and essentially non-exploitative because the commercial use of the copying was minimal, the copying was intermediate, the copying was done to discover functional requirements for compatibility, and defendant produced its own creative work, using plaintiff's code information to write its own procedures. *Id.* at 1522-23.

Additionally, in analyzing the intermediate nature of any copying, the court must consider whether the defendant's product is "transformative," meaning that it adds something new of a different character to plaintiff's work. *Connectix,* 203 F.3d at 606. CMiC's product, Project Manager, provides a financial accounting module that is integrated with its project management module. This is different from Prolog, which provides only project management functions.

Under the second fair use element, nature of the copyrighted work, courts consider the fact that computer programs contain many functional elements which are not protectable, including logical, structural and visual display elements which are a function of the task to be performed, or external factors such as compatibility or industry standards. This "hybrid nature" of computer programs renders many aspects of a program unprotectable. *Sega,* 977 F.2d at 1524-25. Moreover, Meridian claims only that Hardin copied portions of its help file text, not the entire Prolog software or any of its source code. Because help files are functional aspects of the program, this factor weighs in Hardin's favor.

Under the third element, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, where the ultimate use was limited, the factor is of little weight. *Sega,* 977 F.2d at 1526-27. Here, any portion of Prolog help screens that was copied into the 30 or so pages of the Hardin email attachment are miniscule as compared to the entire Prolog program. Thus, this factor must weigh heavily in Hardin's favor.

Under the fourth element, the effect of the use upon the potential market for or value of the copyright work, the presence of a legitimate competitor in the same field as plaintiff cannot weigh against defendant. Where defendant's use merely permits him to enter the market as a legitimate competitor in the same field as plaintiff, the effect upon the market will weigh in defendant's favor. *Sega,* 977 F.2d at 1523. Here, CMiC is merely a competitor in the construction management software field. Although Meridian asserts that CMiC software was created to "replace Prolog," its infringement claims cannot be sustained merely based upon Meridian's agitation at the existence of a legitimate competitor.

Any copying by Hardin of certain portions of Prolog help file text was intermediate in nature. This was a fair use. Meridian's infringement claim must fail.

Case 8:20-cv-00993-MCS-ADS Document 236-1 Filed 11/15/21 Page 14 of 14 Page ID #:12020

MERIDIAN PROJECT SYSTEMS, INC., Plaintiff, v. HARDIN..., 2006 WL 5986588...

**G. There is an Issue of Fact Whether Schedule H and the April 12, 2001 Email Attachments are Derivative Works.**

In a final footnote in its brief, Meridian asserts that Schedule H of the Hardin-CMiC contract and the April 12, 2001 email attachments should be considered infringing derivative works. Plt's MSJ at 21 n.15. Meridian's argument is that Hardin "adapted and recast" Prolog help files as email attachments and specifications to be used by CMiC for the purpose of building a product to compete with and replace Prolog. Plt's MSJ at 21 n. 15.

Meridian fails even to state the test for determining whether a work is a derivative work. To show a work is an impermissible derivative work, plaintiff must show that the alleged infringing work (1) exists in a permanent and concrete form, and (2) substantially incorporates protected material from the preexisting work. *Microstar v. Formgen, Inc.,* 154 F.3d 1107, 1110-112 (9th Cir. 1998). There is an issue of fact whether Hardin "substantially incorporated" protected material from Prolog. However, since Meridian fails to make the argument or establish either element of the claim, it must fail as a matter of law.

## VI. CONCLUSION

To prevail on its motion for summary judgment, Meridian had to prove that there is no genuine issue of material fact and that Meridian is entitled to judgment as a matter of law. Meridian failed to even present evidence on some of the elements of its claims. Where it did, Hardin raised genuine issues of fact. The court must deny Meridian's motion for partial summary judgment.

DATED: February 3, 2006

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.