# ATTACHMENT 2

```
              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
               (SOUTHERN DIVISION - SANTA ANA)



NETLIST, INC,                  ) CASE NO: 8:20-CV-00993-MCS-DFMx
                               )
        Plaintiff,             )          CIVIL
                               )
    vs.                        )     Santa Ana, California
                               )
SAMSUNG ELECTRONICS CO, LTD,   )    Thursday, June 10, 2021
                               )
        Defendant.             )


              INFORMAL DISCOVERY CONFERENCE

    BEFORE THE HONORABLE DOUGLAS F. McCORMICK,
           UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:          JASON C. LO, ESQ.
                        RAYMOND A. LaMAGNA, ESQ.
                        Gibson Dunn & Crutcher, LLP
                        333 S. Grand Ave.
                        Los Angeles, CA 90071

For Defendant:          JUMIN (CHRIS) LEE, ESQ.
                        Bird Marella Boxer, et al.
                        1875 Century Park East
                        23rd Floor
                        Los Angeles, CA 90067

Court Reporter:         Recorded; AT&T; digital

Courtroom Deputy:       Nancy Boehme

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

**Santa Ana, California; Thursday, June 10, 2021**

**(Remote Appearances)**

**(Call to Order)**

**THE CLERK:** We're on Case SA CV 20-00993. It's *Netlist, Inc. versus Samsung Electronics*.

Counsel, your appearances, please.

**MR. LaMAGNA:** Hi, this is Raymond LaMagna of Gibson Dunn and Crutcher on behalf of Plaintiff Netlist, Inc. and I'm joined by my colleague Jason Lo.

**MR. LEE:** Good morning, Your Honor. This is Chris Lee of Bird Marella for Defendant Samsung.

**THE COURT:** Okay. Counsel, this is Judge McCormick. I received both sides' letters yesterday and I asked Ms. Boehme to -- I think after I read your letters yesterday and thought about them, I asked her to send you a resource that might help us as we work through some of these issues going forward. I found it helpful in the past when things would come up.

I've actually used it myself to raise issues with the parties and -- but I took a step forward today and actually shared it with you. And I've never done that before but before I did, I actually just kind of quickly went through it and highlighted some things that I thought might be helpful for us to touch on or at least think about as we work through these issues.

But before we get to that, let me get my notes from

1   proportionality of this information is not warranted by the

2   relevance of the claims and defenses.

3        Let's discuss a briefing schedule for that because

4   I'd like to get this teed up pretty quickly.  I think it's

5   something that can be done pretty quickly.  So we can do it one

6   of two ways.  Either you guys can go offline and say, hey, we

7   can get a brief to the judge by X date and we can get a brief

8   to the judge by Y date or we can talk about it right now.  What

9   do you think sounds better?

10       And let me put a pin in that.  Maybe we should wait

11  and see how many of these issues we have because there may be

12  other of these written discovery requests which we have to put

13  in this same bucket.

14       **MR. LaMAGNA:**  Sure.  Why don't we circle back to this

15  point at the end of our conversation in case there's anything

16  else that we want to put in this bucket?

17       **THE COURT:**  I don't know who was speaking but you

18  broke up a little bit.

19       **MR. LaMAGNA:**  Sorry, Your Honor. This is Mr. LaMagna

20  for Netlist.  Why don't we circle back at the end of the

21  conversation in case there happens to be, as you point out, any

22  other items that require updating the Court in writing?

23       **THE COURT:**  Okay, let's do that.  Let's move then to

24  Interrogatory Number 2.  And I've reviewed that also and I'll

25  sort of briefly characterize it, is make a list of all the

Case 8:20-cv-00993-MCS-ADS Document 236-2 Filed 11/15/21 Page 5 of 13 Page ID #:12025

11

1 orders, Samsung, that you wouldn't fill and why they -- why you
2 wouldn't fill them. That's what -- how I read the
3 interrogatory.
4 And as I understand, Mr. Lee, Samsung's position is
5 that you have the invoices. You have the purchase orders. You
6 could make that list. And I would characterize that, I guess,
7 as in the equally-available-to-you objection category. If
8 there's something I don't understand or something I'm missing
9 here, let me make sure I get it.
10 Mr. LaMagna, why don't I let you start again?
11 **MR. LaMAGNA:** Thank you, Your Honor. I mean, I think
12 that that's right. This is, I believe, clearly discoverable
13 from both parties. Now, of course, we will be reviewing our
14 records and identifying instances in which, based on our
15 records -- and this goes back several years -- that we contend
16 that there was a refusal to provide products.
17 I don't know that our records necessarily that we
18 have every example of that. They may not have every example of
19 that. Presumably we give them our list. They are going to
20 internally take issue with whether our list is correct or not.
21 All we're saying is that both parties should create a list. We
22 will create our own internal understanding as to what happened.
23 They should have an internal understanding as to what happened
24 and we can compare notes.
25 I don't think Mr. Lee is going to accept our list

**EXCEPTIONAL REPORTING SERVICES, INC**

1  when we go through and say, here are the 100 times or the 200
2  times this happened.  I don't think he's going to take that as
3  being dispositive of that factually.  I assume that they are
4  going to want internally to come back and say, no, no, here's
5  the times that this did or did not happen.
6          So, number one, we think that at the get-go, we
7  should get started on that and both sides should put their
8  cards on the table and identify the times when they contend
9  there was or perhaps Mr. Lee would disagree.  Maybe he'd only
10 five times and I'd have a hundred times but we should put those
11 cards on the table.
12         Secondly, regarding something unique about Rog 2, Rog
13 2 asks why Samsung declined to fill orders.  Now, I certainly
14 can't answer from Netlist's perspective that question for
15 Samsung.  So no matter what I do, if I identify -- we will, of
16 course, be providing our expert and the Court with
17 identification of instances when we contend there's a breach
18 but we can't fill in the why.
19         Only they can and that's one of the critical things
20 we need from Rog 2 and I don't see how they answer the why
21 unless they answer the when.  In other words, how would you
22 write an interrogatory response that says why they shorted
23 orders without identifying what the predicate event was that
24 you're answering the why for?
25         So in sum, I think it's clearly relevant the idea --

1  and it is true.  It is our burden to prove breach, of course,

2  but I don't think discovery under Rule 26 is limited to the

3  issues on which we have the burden and then they have to

4  produce discovery on the stuff where they have the burden.

5         I'll turn it back over to Mr. Lee.

6         **MR. LEE:**  Thank you, Your Honor.  You understand this

7  issue, well, it's simply an issue of the information is equally

8  available to both sides and there's a proportionality issue

9  here because both parties are going to be looking at the same

10 sets of invoices and purchase orders and both parties will be

11 exchanging productions.  I assume that those productions will

12 be consolidated in a way so everybody has the same set of ten

13 or a hundred or a thousand invoices and purchase orders.

14        And we just don't think it's necessary to have

15 Samsung duplicate work that Netlist will evidently going to be

16 doing and especially because Netlist is not going to be relying

17 on any representation Samsung makes in terms of instances where

18 we believe there was an undersupply.

19        Now, I think Mr. LaMagna has focused on the point of

20 intent and here as well, I would contend that intent is simply

21 not relevant.  ==This is a breach of contract claim.  There is no==

22 ==punitive damages issue.  So the issue of why Samsung did not==

23 ==supply in certain instances, if that happened at all, is not==

24 ==relevant to Netlist's damages.==

25        Now, of course, as an accommodation to the extent

**EXCEPTIONAL REPORTING SERVICES, INC**

1  that Netlist wants to identify specific instances and ask us to
2  describe why we did not supply in that instance, I think that's
3  something that -- an interrogatory my client would be willing
4  to answer. But I think kind of the intent issue is being used
5  as, oh, kind of a Trojan Horse here to get Samsung to answer a
6  discovery request that's just not proportional to the needs of
7  the case.
8        **MR. LaMAGNA:** If I could respond momentarily to that,
9  Your Honor, this is Ray again for Netlist. I think there is a
10 difference between whether we say something and whether they
11 say something. So, obviously, if Netlist puts forward a fact
12 that we contend on an issue that we have to prove, it is
13 something that Samsung could disagree with. It is then
14 disputed.
15       If Samsung puts forward a list and says, here are ten
16 times that we did not fill orders, then that becomes -- if we
17 agree with that list, that becomes an undisputed fact. And so
18 the value of them responding and identifying the undisputed
19 times when they at least agree on the fact that orders were
20 shorted or rejected, et cetera -- now, they may have -- they
21 may say that they're not under an obligation to have done
22 otherwise.
23       They may write that there was a good reason for that.
24 I'm not trying to put words in their mouth on that but if they
25 at least identify factually the times when it happened, then --

1   and we agree with that, then we basically are able to take

2   those facts out of dispute.  So that's the value from a fact

3   discovery point of having an interrogatory here.

4   　　　　　Regarding the point of materiality and intent, my

5   understanding here -- and I think you probably shared this,

6   Your Honor -- is that every time that there is a breach, that

7   is not necessarily a material breach.  Now, here Netlist has

8   terminated the contract because we contend that the breach that

9   occurred was a material breach.

10   　　　　　And so we have to show that there is more than just a

11   garden-variety breach but that the breach goes to the -- sort

12   of the heart of the agreement and one of the factors that is

13   looked at there is the intent or the willfulness of the breach.

14   　　　　　Now, if Samsung would like to concede that so long as

15   we prove that there is a breach that that will be deemed a

16   material breach regardless of that inquiry, then I think that

17   we could consider whether we should be taking some of these

18   questions of materiality or of willfulness or intent off the

19   table.

20   　　　　　I don't think they're going to do that.  In other

21   words, we have to prove for our declaration that the

22   termination was appropriate.  We have to prove more than --

23   that there was just a mere foot fault breach in the agreement.

24   And like I said, if Samsung wants to relieve us of that burden,

25   then I think we'd be open to discussing that with them but if

1  they're not going to relieve us of that burden, then we need

2  discovery that allows us to make our case.

3           **THE COURT:**  All right.  Do you guys want more

4  briefing on this or do you feel comfortable with what you've

5  stated?

6           **MR. LaMAGNA:**  I don't know that this is a topic that

7  really is going to be illuminated by further ink but -- unless

8  Your Honor, of course, feels like there's not -- you are not

9  being given something that you need here.

10           **MR. LEE:**  Your Honor, this is Mr. Lee.  The same

11  here, I think we're ready for a ruling on this issue unless

12  Your Honor wants more.

13           **THE COURT:**  Okay.  All right.  I have probably

14  written half a dozen times in various discovery orders that the

15  objection and a response to a written discovery request, that

16  that information is equally available to you is -- I think I

17  write that it's not appropriate or it's not about objections,

18  probably like most things in any discovery dispute that there

19  probably should be a little caveat in there and I should

20  probably couch that a little better because I'm going to have

21  someone cite it back to me someday and I'm not going to like it

22  in that case.

23           But I think here it probably is applicable that the

24  equally available fee objection is not appropriate.  I do tend

25  to agree that -- with Mr. LaMagna that Netlist really can't

1  answer the why and it doesn't make a lot of sense to answer the
2  why without telling Netlist which episodes are implicated by
3  the why. And I suspect quite strongly that Mr. LaMagna is
4  correct and that the issue of materiality is not going to go
5  away.
6        And so we can't have -- would you use -- use a tennis
7  term. Football -- okay, I'm not a tennis player but I think
8  that's probably correct.
9        So I think, Mr. Lee, your client does need to provide
10  a supplemental response to Interrogatory Number 2 that
11  identifies these orders you wouldn't fill and why. Give me an
12  estimate of what -- how much time you think you'll need to
13  complete that.
14        **MR. LEE:** Your Honor, for this I think we'd need
15  about 30 days.
16        **THE COURT:** Okay. Can you live with 28 days,
17  Mr. LaMagna?
18        **MR. LaMAGNA:** Well, I suppose we'll have to live with
19  what we can live with. I do have some concerns. We have
20  depositions coming up. My only caveat to that, Your Honor -- I
21  mean, is that we hope that what we get is a fulsome response.
22  In other words, if what we get in 28 days is a complete
23  response, that's helpful. We can proceed straight to any
24  depositions at that point. If we -- where that's critical but
25  if we need to come back in front of your --

1    **THE COURT:** If you don't, I have a feeling we'll be
2 talking with some regularity over the next several weeks.
3 We'll raise it -- you can raise it with me then.
4    **MR. LaMAGNA:** Okay, thank you, Your Honor.
5    **THE COURT:** All right. So I'm going to order Samsung
6 to provide a supplemental response to Interrogatory Number 2
7 within 28 days.
8    Let's then talk about RFA Number 2 and this is one I
9 haven't seen in at least a few years. So I had to kind of dust
10 off my memory about Rule 36(a)(1)(A). And I'll characterize
11 this as the -- admit that the agreement requires X versus admit
12 that the agreement provides quote (indisc./phonetic) from the
13 agreement.
14    There's some cases out there from both my district
15 and -- our district and others addressing this. I looked at
16 one as recently as early this year from my neighbor Judge
17 Early. And I've -- to be candid, I've never found all these
18 cases really that helpful but -- and I always sort of had to
19 muddle through on a case-by-case or even RFA-by-RFA basis.
20    So I'm hoping that you guys can say something that
21 will illuminate it a little better for me but -- and we can
22 kind of go from there.
23    **MR. LaMAGNA:** Thank you, Your Honor. The request --
24 I'll just read it. It's very short. It says, "Admit that
25    Section 6.2 of the agreement requires Samsung to

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

|  |  |
|---|---|
| _____ | August 5, 2021 |
| Signed | Dated |

*TONI HUDSON, TRANSCRIBER*