EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
MARC E. MASTERS (SB 208375)
mmasters@birdmarella.com
DAVID I. HURWITZ (SB 174632)
dhurwitz@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
JOSEPH R. O'CONNOR (SB 274421)
joconnor@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

MICHAEL G. YODER (SB 83059)
myoder@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Defendant Samsung
Electronics Co., Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NETLIST INC., a Delaware
corporation,

              Plaintiff,

        vs.

SAMSUNG ELECTRONICS CO.,
LTD. a Korean corporation,

              Defendant.

CASE NO. 8:20-cv-00993-MCS-ADS

**DEFENDANT SAMSUNG'S NOTICE
OF LODGING SUPPLEMENTAL
EXHIBITS REGARDING SAMSUNG'S
AFFIRMATIVE DEFENSES**

Final Pretrial Conference: Nov. 15, 2021

**TO THE COURT, PARTIES, AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 15, 2021, Netlist Inc. ("Netlist") and Samsung Electronics Co. Ltd. ("Samsung") (collectively the "Parties") appeared for the Final Pretrial Conference and conferred with the Court about Samsung's remaining affirmative defenses.  (Minutes, Dkt. 239.)  Counsel for Netlist directed the Court's attention to the summary judgment opposition brief that was filed in connection with the case *Meridian Project Systems, Inc. v. Hardin Construction Co.*, 429 F. Supp. 2d 110 (E.D. Cal. 2006)—a case that Samsung relies on for the proposition that "when a plaintiff seeks and obtains partial summary judgment on a claim but fails to address the defendant's affirmative defenses, the defenses 'remain viable in the litigation.'"  (Dkt. 233, at 5.)  At the Court's direction, Netlist lodged with the Court that opposition brief.  (Dkt. 236, 236-1.)

With this notice, Samsung hereby lodges with the Court the motion for summary judgment and reply brief filed in connection with *Meridian Project Systems, Inc. v. Hardin Construction Co.*, 429 F. Supp. 2d 110 (E.D. Cal. 2006), which should in fairness also be considered in conjunction with the opposition brief lodged by Netlist.  Specifically, Samsung lodges the following documents:

1. **Exhibit A**: Notice of Motion and Motion for Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof, *Meridian Project Systems, Inc. v. Hardin Construction Company, LLC*, Case No. CIV.S–04-2728 FCD DAD, Dkt. 94 (E.D. Cal. Jan. 3, 2006) ("Motion");

2. **Exhibit B**: Plaintiff Meridian Project Systems, Inc.'s Reply in Support of Motion for Partial Summary Judgment, *Meridian Project Systems, Inc. v. Hardin Construction Company, LLC*, Case No. CIV.S–04-2728 FCD DAD, Dkt. 140 (E.D. Cal. Feb. 16, 2006) ("Reply").

Samsung directs the Court's attention to the discussion in the plaintiff's Reply (Exhibit B) at pages 24–25 in which the plaintiff asserted that the "Court need not consider [defendant's] affirmative defenses at this time, as they were not raised in

1

[plaintiff's] opening brief.  It is axiomatic that where the movant has not raised the non-movant's affirmative defenses in its initial summary judgment motion, those defenses merely remain viable in the litigation."  (Reply, Exhibit B, at 24–25 (citing *Books a Million, Inc. v. H &N Enterprises, Inc.*, 140 F. Supp. 2d 846, 851 (S.D. Ohio 2001); *Stillman v. Travelers Ins. Co.*, 88 F.3d 991, 913–14 (11th Cir. 1996).)


DATED:  November 16, 2021          O'MELVENY & MYERS LLP

                              By:  ___/s/ *Michael G. Yoder*___
                                        Michael G. Yoder
                                Attorneys for Defendant Samsung

# EXHIBIT A

Case 8:20-cv-00993-MCS-ADS Document 240 Filed 11/16/21 Page 5 of 70 Page ID
Case 2:04-cv-02728-FCD-DAD Document 94 Filed 01/03/06 Page 1 of 26
#:12065

Sealed

1     SCOTT W. PINK (Bar No. 122383)
     MATTHEW G. JACOBS (Bar No. 122066)
2     **DLA PIPER RUDNICK GRAY CARY US LLP**
     400 Capitol Mall, Suite 2400
3     Sacramento, CA 95814-4428
     Tel: 916-930-3200
4     Fax: 916-930-3201

5     DAVID PRIEBE (Bar No. 148679)
     DAVID BANIE (Bar No. 217924)
6     RAJIV S. DHARNIDHARKA (Bar No. 234756)
     **DLA PIPER RUDNICK GRAY CARY US LLP**
7     2000 University Avenue
     East Palo Alto, CA 94303-2248
8     Tel: 650-833-2000
     Fax: 650-833-2001
9
     Attorneys for Plaintiff and Counter-defendant
10    MERIDIAN PROJECT SYSTEMS, INC. and
     Counter-defendant JOHN BODROZIC
11

**FILED**

**JAN - 3 2006**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14   MERIDIAN PROJECT SYSTEMS, INC., | CASE NO. CIV.S – 04-2728 FCD DAD |
| 15          Plaintiff, | **CONFIDENTIAL NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 16          v. | |
| 17   HARDIN CONSTRUCTION COMPANY, LLC, COMPUTER METHODS INTERNATIONAL CORP., and DOES 1 through 10, inclusive, | |
| 18 | |
| 19 | |
| 20          Defendants. | Judge: The Honorable Frank C. Damrell, Jr. |
| 21   COMPUTER METHODS INTERNATIONAL CORP., and HARDIN CONSTRUCTION COMPANY, LLC, | Date: February 10, 2006 |
| 22 | Time: 10:00 a.m. Courtroom: 2 |
| 23          Counterclaimants, | |
| 24          v. | |
| 25   MERIDIAN PROJECT SYSTEMS, INC., and JOHN BODROZIC, | |
| 26          Counter-defendants. | |
| 27 | |
| 28 | |

DLA PIPER RUDNICK
GRAY CARY US LLP

FM\7197178.5
350608-8

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT   CONFIDENTIAL
CASE NO. CIV.S – 04-2728 FCD

Case 8:20-cv-00993-MCS-ADS   Document 240   Filed 11/16/21   Page 6 of 70   Page ID
Case 2:04-cv-02728-FCD-DAD   Document 94   Filed 01/03/06   Page 2 of 26
#:12066

1                           **TABLE OF CONTENTS**

2                                                                                         Page

3    I.     INTRODUCTION ......................................................................................................... 2

4    II.    FACTUAL BACKGROUND ...................................................................................... 2

5           A.    Meridian Developed and Owns Prolog. ............................................................. 2

     B.    Hardin Had Access to Prolog. ............................................................................. 3

6    C.    Use of Prolog Is Governed By the EULA. ......................................................... 4

7    D.    Hardin Cuts Its Ties With Meridian and Adopts CMIC's Project
           Management Software. ........................................................................................ 6

8    E.    Hardin and CMIC Employees Worked Together to Prepare the CMIC
           Specifications. ..................................................................................................... 7

9    F.    Hardin Copied Certain Portions of Prolog And Incorporated Them Into the
10         CMIC Specifications. ........................................................................................ 10

     G.    Hardin's Recent Conduct Confirms that It Improperly Copied Prolog. ........... 10

11   III.   MERIDIAN IS ENTITLED TO SUMMARY JUDGMENT. ................................... 11

12   IV.    HARDIN BREACHED THE EULA. ......................................................................... 12

13         A.    Hardin Copied, Modified, And Distributed Prolog Without Meridian's
           Permission. ........................................................................................................ 12

14         B.    Hardin's Unauthorized Copying, Modification and Distribution of
           Meridian's Help Files Violate the Terms of the EULA. .................................. 13

15              1.    Meridian's EULA is Enforceable Against Hardin. .................................. 13

16              2.    The EULA Prohibited Hardin's Copying, Modification, and
                      Distribution of the Help Files in Connection with the Preparation of
17                    the CMIC Specifications. ........................................................................ 15

18   V.     HARDIN INFRINGED MERIDIAN'S COPYRIGHT IN PROLOG. ...................... 17

     A.    Meridian Owns Prolog, A Valid Copyrighted Work. ...................................... 17

19         B.    Hardin Copied Prolog. ...................................................................................... 18

20              1.    Direct Evidence Establishes that Hardin Copied Prolog. ....................... 18

21              2.    Indirect Evidence Also Establishes that Hardin Copied Prolog. ........... 19

     VI.    CONCLUSION ........................................................................................................... 21

22

23

24

25

26

27

28
                                              -i-

Case 8:20-cv-00993-MCS-ADS   Document 240   Filed 11/16/21   Page 7 of 70   Page ID
#:12067
Case 2:04-cv-02728-FCD-DAD   Document 94   Filed 01/03/06   Page 3 of 26

## TABLE OF AUTHORITIES

Page

### CASES

*Adobe Systems Inc. v. One Stop Micro, Inc.,*
  84 F. Supp. 2d 1086 (N.D. Cal. 2002) ............................................................................. 14

*Adobe Systems, Inc. v. Stargate Software, Inc.,*
  216 F. Supp. 2d 1051 (N.D. Cal. 2002) ...................................................................... 14, 15

*Barker v. Norman,*
  651 F.2d 1107 (5th Cir. 1981).......................................................................................... 11

*Baxter v. MCA, Inc.,*
  812 F.2d 421 (9th Cir. 1987)............................................................................................. 19

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.,*
  887 F.2d 399 (2d Cir. 1989).............................................................................................. 21

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).......................................................................................................... 11

*Cf. Cisco Systems, Inc. v. Huawei Technologies, Co., Ltd.,*
  266 F.Supp. 2d 551 (E.D. Tex. 2003) .............................................................................. 18

*Davidson & Associates, Inc. v. Internet Gateway,*
  334 F. Supp. 2d 1164 (E.D. Mos. 2004) .......................................................................... 14

*Engineering Dynamics, Inc. v. Structural Software, Inc.,*
  26 F.3d 1335 (5th Cir. 1994)............................................................................................. 20

*Ets-Hokin v. Skyy Spirits, Inc.,*
  225 F.3d 1068 (9th Cir. 2000)........................................................................................... 17

*Feist Publications, Inc. v. Rural Tel. Service Co.,*
  499 U.S. 340 (1991).......................................................................................................... 17

*Hill v. Gateway 2000, Inc.,*
  105 F.3d 1147 (7th Cir. 1997)........................................................................................... 14

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.,*
  886 F.2d 1173 (9th Cir. 1989)........................................................................................... 17

*Kamar International v. Russ Berrie & Co.,*
  657 F.2d 1059 (9th Cir. 1981)........................................................................................... 19

*Litchfield v. Spielberg,*
  736 F.2d 1352 (9th Cir. 1984)...................................................................................... 18, 20

*M.A. Mortensen Co. Inc. v. Timberline Software Corp.,*
  140 Wash. 2d 568 (2000).................................................................................................. 15

-ii-

## TABLE OF AUTHORITIES
(continued)

|  |  | Page |
|---|---|---|
| *Microstar v. Formgen,*<br>942 F. Supp. 1312 (S.D. Cal. 1996), *aff'd in part, rev'd in part on other grounds,*<br>154 F.3d 1107 (9th Cir. 1998) | | 14 |
| *Portionpac Chemical Corp. v. Sanitech Systems, Inc.,*<br>217 F.Supp. 2d 1238 (M.D. Fla. 2002) | | 18 |
| *ProCD, Inc. v. Zeidenberg,*<br>86 F.3d 1447 (7th Cir. 1996) | | 14 |
| *S.O.S., Inc. v. Payday,*<br>886 F.2d 1081 (9th Cir. 1989) | | 16 |
| *Sid & Marty Krofft Television v. McDonald's Corp.,*<br>562 F.2d 1157 (9th Cir. 1977) | | 20 |
| *Smith v. Jackson,*<br>84 F.3d 1213 (9th Cir. 1996) | | 20 |
| *Three Boys Music Corp. v. Bolton,*<br>212 F.3d 477 (9th Cir. 1984) | | 19 |
| *Twentieth-Century Fox Film Corp. v. MCA, Inc.,*<br>715 F.2d 1327 (9th Cir. 1983) | | 19 |
| *Wang Laboratories v. Mitsubishi Electronics,*<br>860 F.Supp. 1448 (C.D. Cal. 1993) | | 12 |

### STATUTES

| | | |
|---|---|---|
| 17 U.S.C. §101 | | 18, 21 |
| 17 U.S.C. § 102 | | 17 |
| 17 U.S.C. §102(a)(1) | | 18 |
| 17 U.S.C. §106 | | 18 |
| 17 U.S.C. §410(c) | | 17 |
| Fed. R. Civ. P. 56(a) | | 11 |
| Fed. R. Civ. P. 56(c) | | 11 |

-iii-

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
CASE NO. CIV.S – 04-2728 FCD

1 | **NOTICE OF MOTION AND MOTION**

2 |     Notice is hereby given that on February 10, 2006, at 10:00 a.m., or as soon thereafter as

3 | the matter may be heard, Plaintiff and Counter-defendant Meridian Project Systems, Inc. and

4 | Counter-defendant John Bodrozic's (collectively referred to herein as "Meridian") motion for

5 | partial summary judgment will be heard in Courtroom 2 of the above-captioned Court, located at

6 | 501 I Street, in Sacramento, California. Pursuant to Rule 56 of the Federal Rules of Civil

7 | Procedure, Meridian moves the Court for partial summary judgment establishing the liability of

8 | Hardin Construction Company, LLC ("Hardin") for breach of contract and copyright

9 | infringement, on the ground that there is no genuine issue as to any material fact and that

10 | Meridian is entitled to a determination of liability as a matter of law.

11 |     This motion for summary judgment is based upon this Notice and Motion; the

12 | accompanying Memorandum of Points and Authorities; the Declarations of Gabriel Nacht, J.R.

13 | Hamel, Scott Pink and Thomas A. McManus; the Statement of Undisputed Facts in Support of

14 | Motion for Summary Judgment; the Court's file; and such further authority or evidence as may be

15 | presented at or prior to the hearing on this matter.[1]

26 | [1] This confidential version of the motion (together with Confidential Statement of Undisputed Facts,
27 | Confidential Exhibits A and B to the Declaration of Scott Pink, and the Confidential Declaration of
28 | Thomas McManus) will be filed with the Court upon the Court's determination of Meridian's
    accompanying Motion for Order to File Documents Under Seal.

-1-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7197178.5
350608-8

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
CASE NO. CIV.S  04-2728 FCD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3    Meridian brought this action against Hardin and Computer Methods International Corp.

4 ("CMIC") for improperly using Meridian's flagship product, Prolog Manager (a project

5 management software solution tailored to serve the construction industry), to build a competing

6 project management software. Discovery has confirmed these allegations: There is indisputable

7 evidence that without Meridian's permission or knowledge, Hardin (a) copied Prolog and

8 distributed portions thereof to CMIC in order to facilitate CMIC's development of a competing

9 project management program; and (b) copied Prolog (including wholesale copying of entire

10 sections of the program) and incorporated it into certain specifications that governed the design

11 and operation of the CMIC's competing project management software in an effort to replace

12 Prolog. Hardin's actions not only violated the End User License Agreement ("EULA") that

13 governed Hardin's use of Prolog, but also infringed Meridian's copyright in Prolog. Meridian is

14 therefore entitled to summary judgment against Hardin on its claims for breach of contract and

15 copyright infringement.

16

## II. FACTUAL BACKGROUND

17

### A. Meridian Developed and Owns Prolog.

18    Meridian provides software solutions related to the management of physical infrastructure

19 management and programs. Declaration of J.R. Hamel ("Hamel Declaration") ¶ 3. One of

20 Meridian's primary products is a project management software called Prolog. Hamel Decl. ¶ 3.

21 This software enables users to automate all aspects of the lifecycle of a construction project –

22 from project design to close-out. Hamel Decl. ¶ 3. It also allows for project managers and other

23 users to collaborate and manage purchasing, scheduling, costs, documents and field

24 administration. Hamel Decl. ¶ 3.

25    Meridian released its first version of Prolog in 1994. Hamel Decl. ¶ 4. Since that time, it

26 has released over seven versions of Prolog, including versions 5.1 and 6.0. Hamel Decl. ¶ 4.

27 Prolog version 5.1 was released in 1999 and version 6.0 was released in 2000. Hamel Decl. ¶ 4.

28 Meridian developed and is the registered copyright holder of Prolog versions 5.1 and 6.0.

-2-

EM\7197178.5
350608-8
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
CASE NO. CIV.S – 04-2728 FCD

Case 8:20-cv-00993-MCS-ADS Document 240 Filed 11/16/21 Page 11 of 70 Page ID
Case 2:04-cv-02728-FCD-DAD Document 94 Filed 01/03/06 Page 7 of 26
#:12021

1  Declaration of Gabriel Nacht ("Nacht Declaration") ¶ 2; Hamel Decl. ¶ 4 ("Prolog versions 5.1

2  and 6.0 were independently created by Meridian (as opposed to copied from other sources), and

3  possess at least some minimal degree of creativity."); Exhibit C to First Amended Complaint.

4  Prolog version 5 has been registered with the U.S. Copyright Office under Registration No. TX 6-

5  054-146. Nacht Decl. ¶ 3, Ex. A.

### B.  Hardin Had Access to Prolog.

7  Meridian does not sell or license Prolog to the general public. Hamel Decl. ¶ 5. It only

8  licenses Prolog to approved customers, many of whom are in the construction industry. Hamel

9  Decl. ¶ 5. Users are required to accept Meridian's standard form of EULA and register the

10  software with Meridian before it can be used. Hamel Decl. ¶ 5. When customers purchase

11  Prolog from Meridian, they are sold one or more licenses to use the product. Hamel Decl. ¶ 5.

12  When they first install the product, they are provided a temporary one-time 30-day authorization

13  license which is contained on a special licensing diskette shipped out with the product. Hamel

14  Decl. ¶ 5. To receive a permanent authorization for the license(s) after the 30-day money back

15  guarantee period has passed (and after full payment has been received), customers are asked to

16  contact Meridian Project Systems by phone or email to receive a site key that "unlocks" the

17  software for full unlimited time use. Hamel Decl. ¶ 5.

18  Meridian licensed version 5 of Prolog to approved customers under the terms of the

19  EULA. Hamel Declaration ¶¶ 2 & 5.[2] Hardin was one such customer. Declaration of Scott W.

20  Pink ("Pink Declaration") ¶ 2, Ex. A (Deposition of Jeffrey Traeger ("Traeger Depo.") at 26:23-

21  27:1); Pink Decl. ¶ 3, Ex. B (Declaration of Danny Philip Bensley ("Bensley Depo.") at 55:5-

22  56:6); Hamel Decl. ¶ 8. Starting in 1996, Hardin purchased licenses to use various versions of

23  Prolog. TAC ¶ 11. More than 50% of Hardin's projects were using Prolog in 1999 and 2000.

24  Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 55:5-56:6). As of March 1, 2001, Hardin had licensed

27  [2] The EULA applicable to Version 5 is attached as Exhibit A to the First Amended Complaint. *See*
28  Defendants' Third Amended Answer to First Amended Complaint and Counterclaim ("TAC") ¶ 11; Pink
Decl. ¶ 3, Ex. A (Traeger Depo. at 232:16 233:2 & Ex. 33).

-3-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7197178.5
350608-8
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
CASE NO. CIV.S – 04-2728 FCD

1    101 copies of version 5 of Prolog. Hamel Declaration ¶ 8, Ex. C. [3, 4]

2          Each of Hardin's licenses were governed by the EULA. Hamel Decl. ¶¶6-7, Exs. A & B.

3   To this end, Meridian employs a standard practice and policy regarding the license and delivery

4   of Prolog versions 5.1 and 6.0 to its customers: Meridian sends each customer a standard form of

5   box containing a CD loaded with the Prolog software. Hamel Declaration ¶ 6. The box also

6   contains Meridian's applicable EULA and a user manual. Hamel Declaration ¶¶ 6-7, Exs. A & B.

7          Each copy of Prolog that was sent to Hardin was shipped in the standard form of box

8   containing the EULA and a user manual. Hamel Decl. ¶ 9. Hardin had an opportunity to return

9   Prolog to Meridian if it did not agree to the EULA, but did not do so. Hamel Decl. ¶ 9. In fact,

10   Hardin used the corresponding software in connection with its business since 1996 without ever

11   returning a single copy that it had registered and installed. Hamel Decl. ¶ 9. Hardin never

12   objected to the terms of the EULA. Hamel Decl. ¶ 9. Nor did it seek an amendment to the

13   EULA. Hamel Decl. ¶ 9.

14         C.    **Use of Prolog Is Governed By the EULA.**

15          Prolog's EULA apprises the licensee that his or her use of Prolog is governed by the

16   EULA. In particular, the first paragraph of the EULA sets forth (in bold and capital letters) the

17   following:

18                 NOTICE TO END USER: CAREFULLY READ THE
                 FOLLOWING LEGAL AGREEMENT. USE OF THE
19                 SOFTWARE PROVIDED WITH THIS AGREEMENT
                 CONSTITUTES YOUR ACCEPTANCE OF THESE TERMS. IF
20                 YOU DO NOT AGREE TO THE TERMS OF THIS
                 AGREEMENT, PROMPTLY RETURN THE SOFTWARE AND
21                 THE ACCOMPANYING ITEMS (INCLUDING WRITTEN
                 MATERIALS AND CONTAINERS) TO THE LOCATION
22                 WHERE YOU OBTAINED THEM FOR A FULL REFUND.

23   TAC ¶ 11. There can be no dispute that Prolog is copyrighted by Meridian. In order to license

24   Prolog, a licensee must acknowledge that Meridian owns the software. TAC ¶ 11 (Section 3 of

25

26   [3] The EULA that accompanied the version of Prolog licensed to Hardin is attached as Exhibit A to the First
     Amended Complaint. *See* Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 232:16 - 233:2 & Ex. 33).

27   [4] Hardin used Prolog project management software starting in 1996. Pink Decl. ¶ 2, Ex. A (Traeger Depo.
     at 78:19-23).

28

-4-

1  the EULA states: "You acknowledge that [Meridian] or its Suppliers retain exclusive ownership

2  of all copyright, trademarks, patents and/or other intellectual property rights in the Software. You

3  are not granted any rights in the Software other than the license rights expressly set forth

4  above."); Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 238:9-18). Prolog also contains copyright

5  notices on the side flap of its packaging and within the program itself indicating that the software

6  is copyrighted. Hamel Decl. ¶ 6, Ex. A (side flap of box indicates that "[u]se of the enclosed

7  software is subject to the license agreement contained in the package"); ¶ 11, Ex. E (Prolog

8  contains warning that "[t]his product is protected by copyright and international treaties.

9  Unauthorized reproduction and distribution of this program, or any portion of it, may result in

10  severe civil and criminal penalties and will be prosecuted to the maximum extent possible under

11  the law.").

12  The EULA also recites restrictions relating to the use of Prolog, including limitations on a

13  licensee's ability to copy and distribute the software. For example, Section 1 of the EULA

14  restricts a licensee's ability to copy Prolog. It states that:

15  The term "Software" includes all Meridian Project Systems, Inc.
("MPS") and third party ("Supplier") software provided with this
16  license, and any accompanying documentation (the "Software").
The term "Software" also includes any updates of the Software
17  provided to you by MPS at is option. Subject to the terms of this
Agreement, MPS grants to you, and you accept, a personal, non-
18  exclusive, and nontransferable (except as set forth below) license to
use the object code version of the Software in accordance with the
19  Documentation. You may use the Software only on a single
processing unit ("CPU") at a time, except that the Software may be
20  executed from a common disk shared by multiple CPUs provided
that only a single CPU is executing the Software at any given
21  instant. You may make two (2) copies of the Software for backup
or archival purposes only, so long as MPS' and its Suppliers'
22  copyright notice are reproduced on such copies.

23  Hamel Decl. ¶ 7, Ex. B. Furthermore, Sections 2a and 2b of the EULA prohibit a licensor from

24  distributing Prolog. They state, in pertinent part, that:

25  a. You may not copy, rent, lease, sell, sublicense, assign, loan, time-
share, or otherwise transfer or distribute copies of the Software or
26  Documentation, except as set forth in this agreement. . . . b. You
agree that you will not decompile, disassemble, or otherwise
27  reverse engineer the Software [Prolog], and you will use your best
efforts to prevent your employees and contractors from doing so,
28  except to the extent such restriction is expressly prohibited by
-5-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7197178.5
350608-8
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
CASE NO. CIV.S   04-2728 FCD

1                applicable law. You may not modify, adapt, create a derivative
                  work, merge, or translate the Software [Prolog] without the prior
2                written consent of Meridian.

3    TAC ¶ 11; Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 233:22-234:1; 234:24-235:5; 235:7-10 & Ex.

4    33).

5       **D.    Hardin Cuts Its Ties With Meridian and Adopts CMIC's Project**
6              **Management Software.**

7         In or around 1999, Hardin formed a committee to select a new enterprise software system.

8    Pink Decl. ¶ 2, Ex. A (Trager Depo. at 76:8-77:24). In or around 2000, Hardin first discussed

9    with CMIC the possibility of integrating Prolog with CMIC's existing accounting package. Pink

10   Decl. ¶ 2, Ex. A (Traeger Depo. at 80:25-81:10). In late March, 2001, however, Hardin's

11   Executive Committee decided to switch from Prolog to CMIC's project management software.

12   Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 85:4-24); ¶ 3, Ex. B (Bensley Depo. at 59:13-22). At no

13   time did Hardin inform Meridian that it intended to make a switch from Prolog to CMIC's project

14   management software. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 84:12-23).

15        In or around April, 2001, CMIC and Hardin met several times to discuss the terms of an

16   agreement in which CMIC would license to Hardin a suite of software products that included,

17   among other things, a financial management component and a project management component.

18   Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 73:6-9). At around this same time, CMIC's project

19   management software was still being developed. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 133:4-

20   8, 151:12-24, 171:5-8, 202:1-6). In or around March, 2001, Hardin and CMIC reached an

21   agreement in principle relating to Hardin's licensing of CMIC's software. Pink Decl. ¶ 3, Ex. B

22   (Bensley Depo. at 79:21-80:2). As part of this agreement, CMIC agreed to further develop its

23   project management software in accordance with specifications to be provided to CMIC by

24   Hardin. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 82:18-23, 84:16-18). CMIC and Hardin

25   ultimately reduced their agreement to writing. In doing so, they spent considerable time

26   negotiating numerous terms of the agreement, including the definition of the term "Acceptance"

27   that would ultimately become Section 1.2 of the Hardin/CMIC Agreement. Pink Decl. ¶ 3, Ex. B

28   (Bensley Depo. at 281:17-23).

-6-

1    Hardin and CMIC entered into a Master Software Acquisition Agreement on April 27,

2    2001 ("Hardin/CMIC Agreement") for CMIC's software package (which included CMIC's

3    project management software). Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 239:14-25 & Ex. 34).

4    Hardin accepted CMIC's project management software. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at

5    283:6-9).

6        Section 1.2 of the Hardin/CMIC Agreement defines "Acceptance" as:

7

8    "Acceptance", in respect of Software [CMiC and third party
     software] made available under this Agreement means the
9    determination by Customer of the following: (i) in respect of the
     Software for the Enterprise System Implementation (being all
10   software modules on "Schedule "A" to this Agreement excluding
     Project Management), that such Software has been tested by
11   customer and that such Software has been found to perform in all
     material respects in accordance with Schedules "D" and "E" to this
12   Agreement) [sic]; and (ii) in respect of the software for the Project
     Management System Implementation (being the Project
13   Management Software Module on Schedule "A" to his agreement),
     that such Software has been tested by Customer and that such
14   Software has been found to perform in all material respects in
     accordance with Schedules "D", "F" and "H" to this [sic]. The
15   Enterprise Implementation shall be collectively referred to as
     "System Implementations" and each individually as a "System
16   Implementation") [sic].

17   Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 281:22-282:1 & Ex. 34).

18       Per Hardin and CMIC's negotiations, CMIC agreed to develop its software in accordance

19   with certain specifications provided by Hardin. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 214:16-

20   20; 228:12-16 & Ex. 34 (Section 1.8 of CMIC Agreement provides that CMIC warrants that

21   "...CMiC Software will perform substantially in accordance with Schedule 'D' and 'E' allowing

22   for updates in functionality and technology and following the completion of the Project

23   Management Implementation also substantially in accordance with Schedules 'F' and 'H'.")).

24       **E.    Hardin and CMIC Employees Worked Together to Prepare the CMIC
             Specifications.**
25
         Hardin employees Danny Bensley, Mike Macon[5], and Chris Wright, and CMIC
26

27   _____
     [5] Mike Macon currently is a project manager for Hardin. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 41:18-
28   21).

-7-

1  employees Gord Rawlins[6] and Vera Rubisova worked together in connection with the

2  development of CMIC's project management software. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at

3  31:25-32:6, 102:20-103:10). Danny Bensley has been Chief Information Officer of Hardin since

4  September 2000, Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 49:5-7); and was in charge of the

5  implementation of the CMIC project management software. Pink Decl. ¶ 3, Ex. B (Bensley

6  Depo. at 31:9-17).

7      Chris Wright was a project manager for Hardin and left the company in or around 2002.

8  Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 54:5-6); Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 32:11-

9  13). While still employed by Hardin, Chris Wright was responsible for creating specifications for

10 the project management software developed by CMIC for Hardin. Pink Decl. ¶ 2, Ex. A (Traeger

11 Depo. at 253: 4-24); ¶ 3, Ex. B (Bensley Depo. at 83:4-10). Mr. Wright was assigned this

12 responsibility around late March, 2001. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 84:19-85:11).

13 On March 14, 2001, Chris Wright sent Danny Bensley and Jeff Traeger an email stating that

14 "Prolog is hands down best of bread (*sic*) at the present time." Pink Decl. ¶ 2, Ex. A (Traeger

15 Depo. at 220:22-25 & Ex. 30). In this email, Mr. Wright explained that "[f]or example at the

16 present time CMiC doesn't have the capabilities for the following: collaboration, no search

17 capabilities between documents, no links exist between many modules, many reports do not exist,

18 no spell check (ouch.. I'm in trouble), etc. This list including a time frame for each should be

19 made part of the contract. In addition if they fail to meet these requirements then they should pay

20 us the cost required to migrate back to Prolog. This may sound a little crazy, but in my mind its

21 the only way we will ever know if they intend to provide the complete functionality of a 'Prolog

22 type' systems as well as support those needs in the future." *Id.*

23     On April 12, 2001, Danny Bensley sent Jeff Weiss an email with attachments ("CMIC

24 Attachments") that had been prepared by Chris Wright in connection with the creation of the

25 CMIC Specifications. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 268:4-269:15 & Ex. 57).[7] On

---

[6] Gordon Rawlins currently is the President of CMIC. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 102:20-103:10).

[7] The following Meridian Prolog help files were copied into the CMIC Attachments: "Job Closeout Checklist", "Conversation Record", "Drawing Package", "Engineering", "HotList", "Issues", "Request for
-8-

1    November 30, 2001, Mike Macon issued a memorandum titled "Daily Reports, hBuilding Prjoect

2    Management," which was copied to Danny Bensley, Jeff Traeger and Bill Pinto, the President of

3    Hardin. Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 199:24-200:2 & Ex. 43). In this memorandum,

4    Mr. Macon stated that:

5               Over the past few months, Danny Bensley, Chris Wright and I have
                been involved with the design and development of the new project
6               management software package that will eventually be integrated
                with the current hBuilder accounting package. *The goal of this*
7               *endeavor is to produce a product that "mimics" the functionality*
                *of other project management software packages available within*
8               *the industry.* . . . We based our proposed revisions on the current
                Daily Report form listed in the P.O.G. and the information captured
9               in other project management software packages (ie. Prolog).

10   Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 199:24-200:2 & Ex. 43) (emphasis added).

11              On October 27, 2003, Hardin and CMIC publicly disclosed their collaboration in a press

12   release of the software development project, in which they stated as follows:

13              Industry leader Hardin Construction Co. has collaborated with
                enterprise software solutions provider [CMIC] to create a state-of-
14              the-art suite of software packages that enable project information to
                flow on the same fast-track as the construction industry. Hardin has
15              implemented two of CMIC's products – CMIC enterprise and
                CMIC Project Management – with the soon-to-be-released turnkey
16              collaborative solution, CMIC Collaboration Manager. The system
                was created from the outset specifically for the construction
17              industry.

18              "Rather than taking a standard ERP package and tweaking it for the
                construction industry, CMIC created this software in the field,"
19              stated Jeff Weiss, vice president and business development for
                CMIC. *"More than just a field test, Hardin Construction was*
20              *actually a concept partner, providing a dedicated full-time project*
                *manager to help CMIC work through the program design.* This
21              partnership enabled us to design the software around actual
                situations that commercial contractors manage on a daily basis, and
22              will eliminate the need for costly modifications or reprogramming
                by the end-user."[8]
23

24   Information", "Meeting Minutes", "Transmittals", and "Submittals". *See* Declaration of Thomas
     McManus ("McManus Declaration") ¶¶ 2-5, Exs. A-D (comparing the text of the Prolog help files with,
25   among other things, the CMIC Attachments). *See also* Pink Decl. ¶ 3, Ex. B. (Bensley Depo. at 270:4-
     271:5).
26   [8] A true and correct copy of the October 27, 2003 Hardin press release titled "Hardin Construction
     Company Works with CMIC to Tailor Enterprise Package for the Construction Management Industry," is
27   attached as Exhibit C to the Pink Declaration. *See also* Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 241:12-
     246:12 (discussing Hardin press release)).
28
                                                      -9-

1   Pink Decl. ¶ 4, Ex. C (October 27, 2003 Hardin press release) (emphasis added).

2       **F.    Hardin Copied Certain Portions of Prolog And Incorporated Them Into the
3             CMIC Specifications.**

4       Version 5 of Prolog Manager – the version of the software licensed by Hardin – contains

5   help files describing the features, functions, and operations of the program, including their

6   selection, sequence, and organization. Hamel Decl. ¶ 10, Ex. D.[9] The Master Software

7   Acquisition Agreement between Hardin and CMIC contains several attachments, including an

8   attachment named Schedule H. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 247:9-14). Schedule H

9   contains specifications for the CMIC project management software ("CMIC Specifications").

10  Pink Decl. ¶ 3, Ex. B (Bensley Depo at 90:15-21). *Hardin admits that Meridian's "read me"*

11  *help files for Prolog were copied and pasted into the CMIC Specifications. See* Pink Decl. ¶ 2,

12  Ex. A (Traeger Depo. at 249:18-281:19); ¶ 3, Ex. B (Bensley Depo. 89:1-6, 93:6-22).[10] The

13  CMIC Specifications were signed off by Jeff Traeger, Senior Vice President for Hardin, and Jeff

14  Weiss, Vice President of Sales and Marketing for CMIC. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at

15  248:2-5).

16      **G.    Hardin's Recent Conduct Confirms that It Improperly Copied Prolog.**

17      In December 2004 or January 2005 (*i.e.*, after this lawsuit was filed), Mr. Bensley

18  conducted a comparison of the Prolog help files and the CMIC Specifications. Pink Decl. ¶ 3,

19  Ex. B (Bensley Depo. at 93:2-11); ¶ 2, Ex. A (Traeger Depo. at 281:20-282:19). In doing so, he

20  prepared a written analysis of this comparison, in which he highlighted portions of the CMIC

21  Specifications that had been copied from Meridian's help files. Pink Decl. ¶ 3, Ex. B (Bensley

22  Depo. at 93:2-11); ¶ 2, Ex. A (Traeger Depo. at 282:9-13). *Based on this comparison, Mr.*

23

24  [9] These help files are part of the Prolog software. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 233:10-19)
    (term "Software" as used in the EULA includes the Prolog Manager help files). Hardin admitted that
25  unauthorized copying of the help files is a violation of Hardin's EULA with Meridian. Pink Decl. ¶ 2, Ex.
    A (Traeger Depo. at 225:5-225:14).
26
    [10] *See* McManus Decl. ¶ 3 ("I compared the text in the CMIC Attachments and CMIC Specifications to the
27  text in the help files from Meridian's [Prolog version 5.1.] I found the same text in the Prolog Help Files,
    on the one hand, and in CMIC Attachments and CMIC Specifications, on the other."), Exs. A & B; ¶ 5,
28  Ex. D (comparison of Prolog help files to CMIC Specifications).

-10-

1   ***Bensley concluded that Meridian help files had been copied into the CMIC Specifications***.

2   Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 89:1-22, 97:15-17).  Mr. Bensley then destroyed the

3   written analysis.  Pink Decl. ¶ 3, Ex. B (Bensley Depo. at 97:3-18, 98:8-25).  Mr. Bensley

4   informed Hardin's Senior Vice President of Finance about the comparison and the similarities he

5   had found to Meridian's help files in December 2004 or January 2005.  Pink Decl. ¶ 3, Ex. B

6   (Bensley Depo. at 101:5-24); ¶ 2, Ex. A (Traeger Depo. at 281:20-282:2).

7       Upon concluding that the Prolog help files had been copied into the CMIC Specification,

8   Hardin then informed Franklin Cockshutt, Chief Financial Officer of CMIC, about the copying of

9   Meridian's help files in December 2004 or January 2005.  Pink Decl. ¶ 2, Ex. A (Traeger Depo. at

10   268:11-13).[11]  Hardin, however, did not notify Meridian that it had copied Prolog help files into

11   the CMIC Specifications.  Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 254:12-18).  More

12   importantly, Hardin never obtained permission from Meridian to copy or modify Prolog help files

13   into the CMIC specifications.  Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 254:16-24).

14   **III.  MERIDIAN IS ENTITLED TO SUMMARY JUDGMENT.**

15       The court should enter summary judgment if the moving party shows there is no genuine

16   issue of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

17   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is "genuine" only "if the

18   evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

19   Federal Rule of Civil Procedure 56(a) permits summary adjudication on "any part" of a claim

20   upon a showing that there is no genuine issue of material fact as to a particular claim.  Fed. R.

21   Civ. P. 56(a); *see also Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981).  The standards

22   and procedures for summary judgment of a particular claim are the same as for summary

23   judgment of the entire case.  *Wang Laboratories v. Mitsubishi Electronics*, 860 F.Supp. 1448,

24   1450-1451 (C.D. Cal. 1993).

25       The facts set forth in this motion are based primarily on documents produced by Hardin

26

[11] CMIC's knowledge that Hardin improperly copied the Prolog help files raises a serious question about
whether CMIC's counterclaims for attempted monopolization and tortious interference have any legitimate
basis whatsoever, as these claims are based in substantial part on CMIC's allegation that Meridian's
lawsuit is objectively baseless.  *See generally* TAC.

-11-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7197178.5
350608-8
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT  CONFIDENTIAL
CASE NO. CIV.S – 04-2728 FCD

1   and CMIC in discovery and testimony provided by Hardin employees and officers, including the

2   depositions of Jeffrey Traeger, Senior Vice President for Hardin, and Danny Bensley, Chief

3   Information Officer of Hardin. These Hardin employees were responsible for the acquisition and

4   implementation of CMIC's project management software. Hardin cannot reasonably dispute any

5   of these facts. In addition, summary judgment at this point serves the purpose of conserving both

6   the parties' and the Court's resources by narrowing the issues involved in this litigation.

7   **IV.   HARDIN BREACHED THE EULA.**

8   **A.   Hardin Copied, Modified, And Distributed Prolog Without Meridian's
    Permission.**

9

10   It cannot reasonably be disputed that Hardin copied, modified and distributed the Prolog

11   help files in violation of the EULA. Hardin officers admitted during their depositions that the

12   CMIC Specifications contained material copied from the help files. *See* Sections II(E) & (F),

13   *supra.* In fact, these same Hardin officers even prepared a comparison highlighting the

14   similarities in December 2004 and January 2005 (after the lawsuit was filed). *See* Section II(G),

15   *supra.* Yet, rather than preserving this critical evidence of their culpability (which clearly was

16   responsive to Meridian's document requests), they destroyed it.

17   Hardin was responsible for creating the CMIC Specifications. *See* Section II(E), *supra.*

18   Moreover, CMIC's software was specifically designed to replace Prolog, which Hardin had been

19   using since 1996 in the majority of its projects. *See* Section II(D) & n.3, *supra.* In late March,

20   2001, Chris Wright from Hardin was assigned the responsibility for preparing the specifications

21   that would serve as the architecture for the subsequent design and development of the CMIC

22   project management software. *See* Section II(E), *supra.* Mr. Wright, who was a Hardin

23   employee at the time, prepared the CMIC Specifications, in substantial part, by copying the help

24   files from Prolog. *See* Section II(E), *supra.* Exhibits A and D to the McManus Declaration

25   illustrate the extent to which Hardin copied the text of the Prolog help files into the CMIC

26   Specifications. *See* McManus Decl. ¶¶ 3 & 5, Exs. A & D.

27   As part of this process, Wright sent an email on April 12, 2001, in which he provided

28   Hardin's Chief Information Officer, Danny Bensley, ten Word files called "CMIC Attachments,"

-12-

1  which contained over thirty pages of detailed description of specific structure, sequence and

2  organization – including the features Job Close-Out Checklist, Conversation Record, Document

3  Distribution & Control / Drawing Log, HotList, Issue List / Action Item List, Requests for

4  Information, Schedule Meetings / Meeting Minutes, Transmittals and Correspondence Log, and

5  Submittals – who then sent those documents Jeff Weiss, Vice President of Sales and Marketing

6  for CMIC, for his review later that same day. *See* Section II(E), *supra*. The CMIC Attachments

7  were clearly copied from the Prolog help files. Exhibits B and C to the McManus Declaration

8  illustrate the extent to which Hardin copied the text of the Prolog help files into the CMIC

9  Attachments. *See* McManus Decl. ¶¶ 3-4, Exs. B & C. Accordingly, the evidence

10 overwhelmingly establishes that Hardin's copying of Prolog was both blatant and obvious.

11 The fact that Wright was able to produce such a detailed set of specifications in a two-

12 week period by itself is suspicious. However, anyone looking at the CMIC Attachments should

13 have instantly recognized that they had been copied from Prolog. In fact, much of the CMIC

14 Attachments even specifically referred to Prolog by name. For example, the CMIC Attachment

15 for CMIC's "HotList" was copied verbatim from the Prolog help files. McManus Decl. ¶ 4, Ex.

16 C. Tellingly, the phrase "Prolog Manager" appears thirteen (13) times in this Attachment, and the

17 phrase "Prolog Messenger" appears once. McManus Decl. ¶ 4, Ex. C.

18
  **B.  Hardin's Unauthorized Copying, Modification and Distribution of Meridian's
       Help Files Violate the Terms of the EULA.**
19

20
  **1.  Meridian's EULA is Enforceable Against Hardin.**

21 There can be no doubt that Hardin's use of Prolog is governed by the terms of the EULA.

22 Hardin admits that it purchased licenses from Meridian, and that the Meridian EULA's

23 accompanied those copies of the Prolog software that it received. *See* Sections II(B) & (C),

24 *supra*; TAC ¶ 11. Hardin produced in discovery EULAs for several different versions of Prolog.

25 Pink Decl. ¶ 5. Furthermore, Hardin's Senior Vice President of Finance, who is responsible for

26 overseeing the company's information technology department, testified that Hardin's copying of

27 Prolog in connection with the creation the CMIC Specification was improper:

28
        Q:   Do you think it would have been improper for Hardin to

-13-

| 1 | | | have provided CMIC a copy of Prolog? |

2         A:    Absolutely.

3         Q:    And why is that?

4         A:    We would be violating our EULA by providing a copy of
the software to CMIC.[12]

Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 225:8-14). Thus, Hardin's use of Prolog for this purpose was a violation of the EULA. Numerous courts have held that EULAs shipped with a software package are enforceable binding contracts. *See, e.g, ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1450-51 (7th Cir. 1996) (terms of EULA shipped inside box with computer held enforceable); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997) (same).

The majority of courts interpreting California law have also enforced shrinkwrap licenses. *See, e.g., Adobe Systems, Inc. v. Stargate Software, Inc.*, 216 F. Supp. 2d 1051, 1060 (N.D. Cal. 2002) ("Though, the [shrinkwrap] EULA is packaged inside the box, the end user is given the opportunity to return the package if he or she is not in agreement with the terms of the contract."); *Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1091 (N.D. Cal. 2002) ("under the [shrinkwrap] EULA the end user is only granted a license to use the software."); *Davidson & Associates, Inc. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1177 (E.D. Mos. 2004) (under California law, shrinkwrap and clickwrap EULAs are valid and enforceable); *Microstar v. Formgen*, 942 F. Supp. 1312, 1317-18 (S.D. Cal. 1996) (shrinkwrap license valid), *aff'd in part, rev'd in part on other grounds*, 154 F.3d 1107 (9th Cir. 1998).

*Stargate Software* is instructive on this point. There, plaintiff Adobe, a software developer and publisher, shipped certain software products (*e.g.*, Adobe Illustrator) together with a EULA that was inside of the box containing the software. Defendant Stargate Software, a distributor of Adobe software, claimed that its conduct did not violate Adobe's copyrights. Adobe brought a copyright infringement action against Stargate Software, alleging, among other things,

---

[12] Mr. Traeger identified the EULA that is attached as Exhibit A to Meridian's First Amended Complaint as the EULA he was referring to in this testimony. Pink Decl. ¶ 2, Ex. A (Traeger Depo. at 232:16-233:2 & Ex. 33).

-14-

1    that Stargate was granted a license under the terms of the shrinkwrap EULA. *Stargate Software*,

2    216 F. Supp. 2d at 1059 (EULA at issue). The court held that the EULA – which provided that

3    "[t]his is a contract. . . By opening this package you accept all the terms and conditions of the

4    agreement" -- was enforceable against Stargate Software. *Id.* Moreover, the court noted that

5    Stargate had the opportunity to return the software if it did not agree with the terms of the

6    shrinkwrap agreement inside the box. *Id.* at 1060.

7         Like the EULA at issue in *Stargate Software*, Meridian's EULA sets forth a notice at the

8    top of the agreement that states, in bold type, the following:

9                     NOTICE TO END USER: CAREFULLY READ THE
                      FOLLOWING LEGAL AGREEMENT. USE OF THE
10                    SOFTWARE PROVIDED WITH THIS AGREEMENT
                      CONSTITUTES YOUR ACCEPTANCE OF THESE TERMS. IF
11                    YOU DO NOT AGREE TO THE TERMS OF THIS
                      AGREEMENT, PROMPTLY RETURN THE SOFTWARE AND
12                    THE ACCOMPANYING ITEMS (INCLUDING WRITTEN
                      MATERIALS AND CONTAINERS) TO THE LOCATION
13                    WHERE YOU OBTAINED THEM FOR A FULL REFUND.

14        Like the defendant in *Stargate Software*, Hardin had an opportunity to return Prolog to

15   Meridian if it did not agree to the EULA, but did not do so. *See* Section II(B), *supra.* To be

16   certain, Hardin purchased over 100 licenses from Meridian from 1996 through 2001. *See* Section

17   II(B), *supra.* More importantly, Hardin used the corresponding software in connection with its

18   business since 1996 without ever returning a single copy that it had registered and installed. *Id.*

19   Hardin never objected to the terms of the EULA. *Id.* Nor did it seek an amendment to the

20   EULA. *Id. See M.A. Mortensen Co. Inc. v. Timberline Software Corp.*, 140 Wash. 2d 568, 582-

21   83 (2000) (under Washington law, shrinkwrap license agreement is enforceable against

22   construction contractor that purchased bid analysis software from vendor).

23                   **2.    The EULA Prohibited Hardin's Copying, Modification, and
                             Distribution of the Help Files in Connection with the Preparation of**
24                   **       the CMIC Specifications.**

25        The EULA at issue here clearly prohibits the use of Meridian's help files. The EULA

26   applies to "Software", a defined term which includes the Prolog program itself as well as any

27

28
                                                    -15-

1   "Documentation".[13] *See* Section II(C), *supra*. Hardin concedes that Meridian's help files are

2   considered "Documentation" under the terms of the EULA. *See* Section II(C) & n.6, *supra*. The

3   license granted by the EULA limits use of Prolog only on a single computer at a time in

4   accordance with the Documentation. *See* Section II(C). In addition, the EULA specifically

5   imposes restrictions on a licensee's use of Prolog, including the following prohibitions set forth in

6   the section titled "Limitations of Use":

7           a.   You may not copy, rent, lease, sell, sublicense, assign, loan,
                 time-share, or otherwise distribute copies of the Software or
8               Documentation, except as set forth in this agreement. . . .

9           b.   You agree that you will not decompile, disassemble, or
                 otherwise reverse engineer the Software [Prolog], and you will use
10              your best efforts to prevent your employees and contractors from
                 doing so, except to the extent such restriction is expressly
11              prohibited by law. You may not modify, adapt, create a derivative
                 work, merge, or translate the Software [Prolog] without the prior
12              written consent of Meridian.

13  *See* Section II(C), *supra*.

14          The copying of the Meridian help files into the CMIC Attachments and CMIC

15  Specifications exceeded the scope of the license in Section 1 of the EULA. Nothing in

16  Meridian's EULA indicates that it authorized the use, copying and modifying of its help files to

17  create a specification for a replacement. Hardin admits that it did not tell Meridian about this

18  copying and modification and did not seek or obtain Meridian's permission. *See* Section II(G).

19  Such actions were *expressly prohibited* by Sections 2a and 2b of the EULA, and specifically

20  violated the restrictions on copying, modifying, adapting, or merging Prolog and restrictions on

21  using Prolog to create a derivative work. To this end, copyright licenses are presumed to prohibit

22  any use not authorized. *S.O.S., Inc. v. Payday,* 886 F.2d 1081, 1088-89 (9th Cir. 1989).

23          Hardin also violated the EULA by distributing a copy of the Prolog help files that were

24  incorporated into the CMIC Attachments that were emailed by Danny Bensley to Jeff Weiss on

25  April 12, 2001. *See* Section II(G), *supra*. Section 2a expressly prohibited Hardin from

26

27  _____
    [13] The EULA defines the term "Documentation" to mean any documentation accompanying the software
28  provided by Meridian. Pink Decl. ¶ 2, Ex. A (Traeger Depo., Ex. 33 (Exhibit A to First Amended
    Complaint)).
                                            -16-

EM\7197178.5
350608-8
                NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT  CONFIDENTIAL
                                            CASE NO. CIV.S – 04-2728 FCD

1    transferring or distributing copies of the Software or Documentation. Hardin has admitted that

2    providing a copy of Prolog to CMIC is a violation of the EULA. *See* Section II(F) & n.6, *supra*.

3    **V.      HARDIN INFRINGED MERIDIAN'S COPYRIGHT IN PROLOG.**

4           To establish copyright infringement, a plaintiff must establish (1) ownership of a valid

5    copyright and (2) copying of constituent elements of the work that are original. *Feist*

6    *Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1991); *Johnson Controls, Inc. v.*

7    *Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (internal citations omitted)

8    (plaintiff must prove ownership of copyright and copying of expression protected by the

9    copyright). Here, Hardin infringed Meridian's Prolog software, which is the subject of a

10   registered copyright, by copying, modifying, and distributing portions of Prolog without

11   permission from Meridian and in violation of the EULA.

12          **A.      Meridian Owns Prolog, A Valid Copyrighted Work.**

13          Meridian's Prolog software consists of wholly original material which is copyrightable

14   subject material under 17 U.S.C. § 102. The registration certificate for Prolog recites that

15   Meridian is the copyright claimant. *See* Section II(A), *supra*. Under the Copyright Act, this

16   certificate is *prima facie* evidence of the validity of the copyright and the facts stated in the

17   certificate, that is Meridian's ownership. 17 U.S.C. §410(c). *See Phoenix Control Sys.*, 886 F.2d

18   at 1175 (plaintiff's copyright registration in software was prima facie evidence of ownership and

19   originality).

20          In addition to the presumption, the Hamel Declaration furnishes undisputed evidence of

21   Meridian's creation of the work and its originality, *i.e.*, that Prolog versions 5.1 and 6.0 were

22   independently created by Meridian (as opposed to copied from other sources), and possess at least

23   some minimal degree of creativity. Hamel Decl. ¶ 4. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225

24   F.3d 1068, 1076 (9th Cir. 2000) "'[t]he *sine qua non* of copyright[ability] is originality' and that

25   '[o]riginal, as the term is used in copyright, means only that the work was independently created

26   by the author (as opposed to copied from other works), and that it possesses at least some

27   minimal degree of creativity'"), *quoting Feist*, 499 U.S. at 345. Moreover, the Prolog help files

28   consist of detailed text describing the structure, sequence and organization of the Prolog program,

-17-

LM\7197178.5
350608-8

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
CASE NO. CIV.S - 04-2728 FCD

Case 8:20-cv-00993-MCS-ADS  Document 240  Filed 11/16/21  Page 26 of 70  Page ID
Case 2:04-cv-02728-FCD-DAD  Document 94  Filed 01/03/06  Page 22 of 26
#:12086

1    including user screens, features and functions. *See* Section II(A), *supra*. Such files actually exist

2    as digital files that are integrated into the Prolog program. Therefore, the Prolog help files are

3    entitled to a presumption of originality because they are contained within Prolog. Meridian, the

4    owner of the copyright in Prolog, has the exclusive right to reproduce, prepare derivative works

5    based upon, and to distribute copies of these files. 17 U.S.C. §106.

6        The Prolog help files are copyrightable for an additional reason: They serve as an

7    electronic user manual, *i.e.*, they can be accessed and searched by the user as he or she is

8    operating the program. There can be no question that such text is copyrightable subject matter.

9    The Copyright Act protects "literary works" , which is defined as a work "expressed in words,

10   number or other verbal or numerical symbols or indicia, regardless of the nature of the material

11   objects...in which they are embodied." 17 U.S.C. §101. *See* 17 U.S.C. §102(a)(1) (literary works

12   considered one of the works of authorship protected by the copyright law.) Courts have held that

13   user manuals, such as the Prolog help files, are copyrightable. *See Portionpac Chemical Corp. v.*

14   *Sanitech Systems, Inc.*, 217 F.Supp. 2d 1238, 1246 (M.D. Fla. 2002) ("Because Plaintiff chose the

15   arrangement and selection of what was to be included in the reference manual, the Court finds

16   that the manual is entitled to copyright protection."). *Cf. Cisco Systems, Inc. v. Huawei*

17   *Technologies, Co., Ltd.*, 266 F.Supp. 2d 551 (E.D. Tex. 2003) (preliminary injunction issued

18   barring use of manuals and online help files by competitor of computer technology provider).

19   **B.    Hardin Copied Prolog.**

20       Copying can be shown by direct evidence, or indirectly, that is by showing that (1) the

21   defendant had access to the copyrighted work and (2) the defendant's work is "substantially

22   similar" to the copyrighted work. *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984).

23   Both bases for establishing that Hardin copied Prolog are present here.

24   **1.    Direct Evidence Establishes that Hardin Copied Prolog.**

25       Direct evidence establishes that Hardin copied Prolog. To be certain, Hardin ***admitted***

26   that it copied certain portions of Prolog (*i.e.*, the help files) and incorporated them into the CMIC

27   Attachment and the CMIC Specifications. *See* Section II(F), *supra*. In fact, prior to admitting

28   that it copied Prolog, Hardin conducted an internal analysis to discover the extent of its infringing

-18-

1  copyrighted work, on the other. *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887

2  F.2d 399 (2d Cir. 1989). In *Business Trends Analysts*, for example, plaintiff asserted that

3  defendant infringed its copyrighted study of the robotics industry by copying the text of the study.

4  *Id.* There, the Second Circuit reviewed on appeal the lower court's determination that the

5  accused infringing work was substantially similar to the copyrighted work. *Id.* at 403. In

6  affirming the lower court's finding of substantial similarity, the Second Circuit focused on the

7  similarities between the texts of the two works. *Id.* Here, like in *Business Trends*, the similarities

8  between the two works are "inexplicable," and the differences between them "amount only to a

9  crude effort to give the appearance of dissimilarity and thus are themselves evidence of copying."

10  *Id.* (internal citations and quotations omitted).

11      In view of these facts, there can be no question that such copying infringes Meridian's

12  copyright.[15]

13  **VI.   CONCLUSION**

14      For each of the above-mentioned reasons, Meridian is entitled to summary judgment on

15  the issues of breach of contract and copyright infringement against Hardin Construction

16  Company, LLC.

17

18

19  Dated: December 23, 2005            DLA PIPER RUDNICK GRAY CARY US LLP

20

21                        By
                            SCOTT W. PINK

22                              DAVID BANIE
                            RAJIV S. DHARNIDHARKA

23                              Attorneys for Plaintiff
                            Meridian Project Systems, Inc.

24

25  _____

26  [15] The CMIC Attachments and CMIC Specifications should also be considered infringing derivative works. A derivative work is a work based upon a preexisting work, and includes abridgements, condensations or any other form in which a work may be recast, transformed or adapted. 17 U.S.C. §101

27  (defining "derivative work"). Hardin has basically taken the Meridian help files and adapted and recast them in the form of attachments and specifications to be used by a competitor to build a competing project

28  management software, one that was ultimately used to replace Prolog.
                               -21-

EM\7197178.5          NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
350608-8                                   CASE NO. CIV.S - 04-2728 FCD

1    copyrighted work, on the other. *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887

2    F.2d 399 (2d Cir. 1989). In *Business Trends Analysts*, for example, plaintiff asserted that

3    defendant infringed its copyrighted study of the robotics industry by copying the text of the study.

4    *Id.* There, the Second Circuit reviewed on appeal the lower court's determination that the

5    accused infringing work was substantially similar to the copyrighted work. *Id.* at 403. In

6    affirming the lower court's finding of substantial similarity, the Second Circuit focused on the

7    similarities between the texts of the two works. *Id.* Here, like in *Business Trends*, the similarities

8    between the two works are "inexplicable," and the differences between them "amount only to a

9    crude effort to give the appearance of dissimilarity and thus are themselves evidence of copying."

10   *Id.* (internal citations and quotations omitted).

11   In view of these facts, there can be no question that such copying infringes Meridian's

12   copyright.[15]

13   **VI.   CONCLUSION**

14   For each of the above-mentioned reasons, Meridian is entitled to summary judgment on

15   the issues of breach of contract and copyright infringement against Hardin Construction

16   Company, LLC.

17

18

19   Dated: December 23, 2005                    DLA PIPER RUDNICK GRAY CARY US LLP

20

21                                               By
                                                    SCOTT W. PINK
22                                                  DAVID BANIE
                                                    RAJIV S. DHARNIDHARKA
23                                                  Attorneys for Plaintiff
                                                    Meridian Project Systems, Inc.

24

25   _____
     [15] The CMIC Attachments and CMIC Specifications should also be considered infringing derivative
26   works. A derivative work is a work based upon a preexisting work, and includes abridgements,
     condensations or any other form in which a work may be recast, transformed or adapted. 17 U.S.C. §101
27   (defining "derivative work"). Hardin has basically taken the Meridian help files and adapted and recast
     them in the form of attachments and specifications to be used by a competitor to build a competing project
28   management software, one that was ultimately used to replace Prolog.
                                                    -21-

DLA PIPER RUDNICK      EM\7197178.5              NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT – CONFIDENTIAL
GRAY CARY US LLP       350608-8                                                    CASE NO. CIV.S – 04-2728 FCD

# EXHIBIT B

1  SCOTT W. PINK (Bar No. 122383)
   MATTHEW G. JACOBS (Bar. No. 122066)
2  **DLA PIPER RUDNICK GRAY CARY US LLP**
   400 Capitol Mall, Suite 2400
3  Sacramento, CA 95814-4428
   Tel: 916-930-3200
4  Fax: 916-930-3201

5  DAVID PRIEBE (Bar No. 148679)
   DAVID BANIE (Bar No. 217924)
6  RAJIV DHARNIDHARKA (Bar. No. 234756)
   **DLA PIPER RUDNICK GRAY CARY US LLP**
7  2000 University Avenue
   East Palo Alto, CA 94303-2248
8  Tel: 650-833-2000
   Fax: 650-833-2001
9
   Attorneys for Plaintiff and Counterdefendant
10 MERIDIAN PROJECT SYSTEMS, INC. and
   Counterdefendant JOHN BODROZIC
11

**FILED UNDER SEAL**

**FILED**

**FEB 1 7 2006**

**JACK L. WAGNER, CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**
BY_____
    **DEPUTY CLERK**

12            UNITED STATES DISTRICT COURT

13            EASTERN DISTRICT OF CALIFORNIA

14

15  MERIDIAN PROJECT SYSTEMS, INC.,        CASE NO. CIV.S – 04-2728 FCD DAD

16            Plaintiff,                   **PLAINTIFF MERIDIAN PROJECT
                                           SYSTEMS, INC.'S REPLY IN SUPPORT OF
17       v.                                MOTION FOR PARTIAL SUMMARY
                                           JUDGMENT**
18  HARDIN CONSTRUCTION COMPANY,
    LLC, COMPUTER METHODS               Date: February 24, 2006
19  INTERNATIONAL CORP., and DOES 1     Time: 10:00 AM
    through 10, inclusive,              Courtroom: 2
20                                       Judge: The Honorable Frank C. Damrell, Jr.
             Defendants.
21

22  And Related Counterclaim

23                                       **SEALED**

24

25

26

27

28
                                        -1-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

ORIGINAL

Case 8:20-cv-00993-MCS-ADS   Document 240   Filed 11/16/21   Page 33 of 70   Page ID
#:12093
Case 2:04-cv-02728-FCD-DAD   Document 140   Filed 02/17/06   Page 2 of 39

1

# TABLE OF CONTENTS

2

                                                                                    **Page**

3   I.    Introduction ............................................................................................................. 1

4         A.    Meridian Is Entitled to Partial Summary Judgment ................................. 3

    II.   Meridian Has Established that Hardin Breached the EULA ................................. 3

5         A.    The Court Should Disregard the Extent of Meridian's Damages at this
                Time .............................................................................................................. 4

6         B.    Hardin Entered into a Legally Binding Agreement with Meridian ........................ 4

7               1.    Hardin Entered into the EULA with Meridian ............................... 4

8               2.    Shrinkwrap Licenses Are Valid and Enforceable Agreements ................... 5

9         C.    Hardin Breached the EULA ............................................................................. 7

                1.    Hardin Copied and Distributed the Prolog Help Files ..................... 7

10              2.    Hardin's Copying and Distribution of the Prolog Help Files
                      Violated the EULA ..................................................................... 8

11

                3.    Meridian's Breach of Contract Claim Is Not Preempted By the
12                    Copyright Act ............................................................................ 11

13  III.  Hardin Infringed Meridian's Copyright in the Prolog Help Files ...................... 13

14        A.    The Prolog Help Files Are Copyrightable Subject Matter .................... 15

15        B.    Hardin Copied Expression in Meridian's Copyrighted Prolog Help Files ........... 19

          C.    This Case Should Be Governed by the Substantial Similarity Standard .............. 23

16        D.    Hardin's Alleged Affirmative Defenses Do Not Raise Any Issues of Fact to
                be Considered on this Motion for Partial Summary Judgment. ........................... 24

17              1.    The Court Should Disregard Hardin's Alleged Affirmative
                      Defenses for the Purposes of Adjudicating this Motion ........................... 24

18              2.    The Scenes A Faire Doctrine Does Not Apply to Hardin's
19                    Wholesale Copying of Meridian's Text .................................................. 25

                3.    The Fair Use Defense Is Not Applicable ................................. 26

20        E.    The Infringing Works Do Constitute an Infringing Derivative Work ................. 29

21  IV.   Conclusion ............................................................................................................. 30

22

23

24

25

26

27

28

DLA PIPER RUDNICK
GRAY CARY US LLP

1

## TABLE OF AUTHORITIES

2

**Page**

3                                    **CASES**

4 | *Adobe Systems, Inc. v. One Stop Micro, Inc.,*
  84 F.Supp. 2d 1086 (N.D. Cal. 2000) ...................................................................... 6, 7, 14

5

6 | *Adobe Systems, Inc. v. Stargate Software, Inc.,*
  216 F.Supp. 2d 1051 (N.D. Cal. 2002) ............................................................................ 6, 7

7 | *Adventures in Good Eating v. Best Places to Eat,*
  131 F.2d 809 (7th Cir. 1942)............................................................................................... 8

8

9 | *Altera Corp. v. Clear Logic, Inc.,*
  424 F.3d 1079 (9th Cir. 2005)........................................................................................... 12

10 | *Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)............................................................................................................ 3

11

12 | *Apple v. Microsoft,*
   35 F.3d 1435 (9th Cir. 1994)....................................................................................... 23, 26

13 | *Balboa Ins. Co. v. Trans Global Equities,*
   218 Cal. App. 3d 1327 (1990)........................................................................................... 13

14

15 | *Bateman v. Mnemonics, Inc.,*
   79 F.3d 1532 (11th Cir. 1996)........................................................................................... 11

16 | *Bernath v. Potato Servs. of Michigan,*
   300 F.Supp.2d 175 (D. Me. 2004) ...................................................................................... 5

17

18 | *Books a Million, Inc. v. H & N Enterprises, Inc.,*
   140 F.Supp.2d 846 (S.D. Ohio 2001)................................................................................ 25

19 | *Bowers v. Baystate Techs., Inc.,*
   320 F.3d 1317 (Fed. Cir. 2003)........................................................................... 12, 13, 27

20

21 | *British Airways Bd. v. Boeing Co.,*
   585 F.2d 946 (9th Cir. 1978), *cert denied,* 440 U.S. 981 (1979)........................................ 3

22 | *Brobeck, Phleger & Harrison v. Telex Corp.,*
   602 F.2d 866 (9th Cir. 1979)............................................................................................. 10

23

24 | *Brown Bag v. Symantec Corp,*
   960 F.2d 1465 (9th Cir. 1992)........................................................................................... 24

25 | *Burgess v. Chase-Riboud,*
   765 F.Supp. 233 (E.D. Pa. 1991) ...................................................................................... 15

26

27 | *Business Trends Analysts, Inc. v. The Freedonia Group,*
   887 F.2d 399 (2d Cir. 1989)......................................................................................... 20, 24

28

-ii-

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

Case 8:20-cv-00993-MCS-ADS  Document 240  Filed 11/16/21  Page 35 of 70  Page ID
Case 2:04-cv-02728-FCD-DAD  Document 140  Filed 02/17/06  Page 4 of 39
#:12095

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3  *CSM Investors, Inc. v. Everest Development, Ltd.*,
   840 F.Supp. 1304 (D. Minn. 1994) ............................................................................... 15

4
   *Castle Rock Ent., Inc. v. Carol Pub. Group, Inc.*,
5     150 F.3d 132 (2d Cir. 1998) ......................................................................................... 30

6  *Central Tel. Co. of Virginia v. Johnson Pub. Co., Inc.*,
      526 F.Supp. 838 (D.C. Colo. 1981) ............................................................................... 8

7
   *Cf. Kahebie v. Zoland*,
8     102 Cal. App. 4th 513 (2002) ................................................................................. 11, 12

9  *Charter Communications VI, LLC v. Eleazer*,
      --- F.Supp.2d -- 2006 WL 218204 (S.D.W.Va. January 25, 2006) ................................... 5

10
   *Columbia Pictures Indus., Inc. v. Landa*,
11    974 F.Supp. 1 (D.D.C. 1997) ...................................................................................... 15

12 *Consul Tec. Inc. v. Interface Systems, Inc.*,
      22 U.S.P.Q.2d 1538, 1991 WL 427891 (E.D. Mich) ...................................................... 29

13
   *Continental Airlines, Inc. v. Lelakis*,
14    943 F.Supp. 300 (S.D.N.Y. 1996) ................................................................................ 25

15 *Davidson & Associates, Inc. v. Internet Gateway, Inc.*,
      334 F.Supp. 2d 1164 (E.D. Mo. 2004) ........................................................................... 6

16
   *Davidson & Assocs. v. Jung*,
17    422 F.3d 630 (8th Cir. 2005) ....................................................................................... 13

18 *De Malherbe v. Int'l Union of Elevator Constructors*,
      476 F.Supp. 649 (C.D. Cal. 1979) ................................................................................. 4

19
   *Design Options, Inc. v. BellePointe, Inc.*,
20    940 F.Supp. 86 (S.D.N.Y. 1996) .................................................................................. 15

21 *Educational Testing Services v. Katzman*,
      793 F.2d 533 ............................................................................................................... 21

22
   *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*,
23    499 U.s. 340 (1991) ..................................................................................................... 18

24 *Fitzpatrick v. Catholic Bishop of Chicago*,
      916 F.2d 1254 (7th Cir. 1990) ..................................................................................... 25

25
   *Frontline Test Equipment, Inc. v. Greenleaf Software, Inc.*,
26    10 F. Supp. 2d 583 (W.D. Va. 1998) ............................................................................ 12

27 *Gates Rubber Co. v. Bando Chemical Industries*,
      9 F.3d 823 (10th Cir. 1993) ......................................................................................... 22

28

-iii-

Case 8:20-cv-00993-MCS-ADS Document 240 Filed 11/16/21 Page 36 of 70 Page ID
Case 2:04-cv-02728-FCD-DAD Document 140 Filed 02/17/06 Page 5 of 39
#:12096

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3  *Hansen v. California Dept. of Corrections,*
   920 F.Supp. 1480 (N.D. Cal. 1996) ..................................................................................... 4

4

5  *Harms, Inc. v. F. W. Woolworth Co.,*
   163 F.Supp. 484 (S.D. Cal. 1958) ........................................................................................ 3

6  *Harper House v. Thomas Nelson, Inc.,*
   889 F.2d 197 (9th Cir. 1989)............................................................................................... 17

7

8  *Harper & Row Publishers, Inc. v. Nation Enterprises,*
   105 S.Ct. 2218 (1985)........................................................................................................ 21

9  *Harper & Row, Publishers, Inc. v. Nation Enters.,*
   471 U.S. 539 (1985)...................................................................................................... 22, 23

10

11  *Hill v. Gateway 2000, Inc.,*
    105 F.3d 1147 (7th Cir. 1997), *cert. denied,* 522 U.S. 808 (1997) ...................................... 6

12  *HotSamba, Inc. v. Caterpillar Inc.,*
    No. 01 C 5540 (N.D. Ill. Mar. 24, 2004) ........................................................................... 12

13

14  *I.Lan Systems, Inc. v. Netscout Service Level Corp.,*
    183 F.Supp. 2d 328 (D. Mass. 2002) .................................................................................... 6

15  *In re Marriage of Worth,*
    195 Cal. App. 3d 768 (1987)............................................................................................... 11

16

17  *JCW Investments, Inc. v. Novelty, Inc.,*
    289 F.Supp.2d 1023 (N.D.Ill. 2003) ................................................................................... 15

18  *Jacobsen v. Desert Book Company,*
    287 F.3d 936 (10th Cir. 2002)............................................................................................. 23

19

20  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,*
    50 F.Supp.2d 863 (W.D. Wis. 1998).................................................................................... 14

21  *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.,*
    973 F.2d 688 (9th Cir. 1992)............................................................................................... 10

22

23  *Junker v. Amana Co., L.P.,*
    240 F.Supp.2d 894 (N.D. Iowa 2003)................................................................................... 5

24  *Kepner-Tregoe, Inc.,*
    12 F.3d at 534.................................................................................................. 17, 18, 19, 20

25

26  *Kygen Co., Inc. v. Vo-Toys, Inc.,*
    223 F.Supp.2d 1065 (C.D. Cal. 2002)................................................................................. 14

27  *Landsberg v. Scrabble Crossword Games Players, Inc.,*
    736 F.2d 485 (9th Cir. 1984), *cert. denied,* 469 U.S. 1037 (1984)...................................... 26

28

-iv-

1 | <u>**TABLE OF AUTHORITIES**</u>
(continued)

2 | **Page**

3 | *Lexmark Intern., Inc. v. Static Control Components, Inc.,*
387 F.3d 522 (6th Cir. 2004)................................................................................................. 6

4 |
*Litchfield v. Spielberg,*
5 | 736 F.2d 1352 (9th Cir. 1984)..................................................................................... 19, 30

6 | *Local Motion, Inc. v. Niescher,*
105 F.3d 1278 (9th Cir. 1997)........................................................................................... 5

7 |
*Marcus v. Rowley,*
8 | 695 F.2d 1171 (9th Cir. 1983)............................................................................... 21, 28, 29

9 | *Maron v. Foster Wheeler Corp.,*
2002 WL 102605 (N.D. Cal. 2002)................................................................................. 11

10 |
*Microstar v. Formgen,*
11 | 154 F.3d 1107 (9th Cir. 1998)........................................................................................ 28

12 | *Microstar v. Formgen, Inc.,*
942 F.Supp. 1312 (S.D. Cal. 1996).................................................................................. 7

13 |
*Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Argonaut Ins. Co.,*
14 | 701 F.2d 95 (9th Cir. 1983)............................................................................................ 11

15 | *Nelson v. Insignia/Esg, Inc.,*
215 F.Supp.2d 143 (D.D.C. 2002) .................................................................................. 5

16 |
*Novell, Inc. v. Unicom Sales, Inc.,*
17 | No. C-03-2785 MMC, 2004 WL 18939117 (N.D. Cal. Aug. 17, 2004).......................... 12

18 | *O'Connor v. Cindy Gerke & Assocs., Inc.,*
300 F.Supp.2d 759 (W.D. Wis. 2002).............................................................................. 15

19 |
*Pacific Fruit Exp. Co. v. Akron, Canton & Youngstown R. Co.,*
20 | 524 F.2d 1025 (9th Cir. 1975)........................................................................................... 4

21 | *Pantry, Inc. v. Stop-N-Go Foods, Inc.,*
796 F.Supp. 1164 (S.D. Ind. 1992) ........................................................................... 25, 26

22 |
*Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,*
23 | 982 F.Supp. 503 (N.D. Ohio 1997).................................................................................. 14

24 | *Playboy Enterprises, Inc. v. Webbworld, Inc.,*
968 F.Supp. 1171 (N.D. Tex. 1997)................................................................................. 14

25 |
*Pollstar v. Gigmania, Ltd.,*
26 | 170 F.Supp. 2d 974, 981 (E.D. Cal. 2000)........................................................................ 6

27 | *Portionpac Chemical Corp. v. Sanitech Sys., Inc.,*
217 F.Supp. 2d 1238 (M.D. Fla. 2002) ............................................................... 17, 18, 29

28 |

-v-

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3 | *ProCD, Inc. v. Zeidenberg,*
86 F.3d 1447 (7th Cir. 1996)........................................................................................... 6, 11

4

*Qualcomm, Inc. v. Motorola, Inc.,*
5 | 185 F.R.D. 285 (S.D. Cal. 1999)........................................................................................... 4

6 | *Robinson v. Random House,*
877 F. Supp. 830 (S.D.N.Y. 1995).............................................................. 20, 21, 25, 26, 30

7

*Salinger v. Random House, Inc.,*
8 | 811 F.2d 90 (2nd Cir. 1987), *cert. denied,* 484 U.S. 890 (1987)....................................... 21

9 | *Sara Lee Corp. v. Quality Mfg.,*
201 F.Supp.2d 608 (M.D.N.C. 2002)..................................................................................... 5

10

*Sega Enterprises Ltd. v. MAPHIA,*
11 | 948 F.Supp. 923 (N.D. Cal. 1996) ..................................................................................... 14

12 | *Sega v. Accolade,*
977 F.2d 1510 (9th Cir. 1993)..................................................................................... 29, 30

13

*Siemens Credit Corp. v. Newlands,*
14 | 905 F.Supp. 757 (N.D. Cal. 1994) ........................................................................................ 5

15 | *Sony Computer Entertainment, Inc. v. Connectix,*
203 F.3d 596 (9th Cir. 2000).................................................................................... 29, 30

16

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
17 | 464 U.S. 417 (1984)............................................................................................................. 28

18 | *Stillman v. Travelers Ins. Co.,*
88 F.3d 911 (11th Cir. 1996).............................................................................................. 25

19

*Stomp, Inc. v. NeatO, LLC,*
20 | 61 F.Supp.2d 1074 (C.D. Cal. 1999) ..................................................................................... 6

21 | *Telex v. International Business Machines Corp.,*
367 F. Supp. 258 (N.D. Ok. 1973), *aff'd in part,* 510 F.2d 894
22 | (10th Cir. 1975)........................................................................................................ 17, 22, 29

23 | *UMG Recordings, Inc. v. Sinnott,*
300 F.Supp.2d 993 (E.D. Cal. 2004)...................................................................................... 4

24

*Vault Corp. v. Quaid Software, Ltd.,*
25 | 847 F.2d 255 (5th Cir. 1988)..................................................................................... 12, 13

26 | *Wilens v. TD Waterhouse Group, Inc.,*
120 Cal. App. 4th 746 (2003)................................................................................................ 3

27

*Wright v. Warner Books, Inc.,*;
28 | 953 F.2d 731 (2d Cir. 1991)............................................................................................... 21

-vi-

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

Case 8:20-cv-00993-MCS-ADS Document 240 Filed 11/16/21 Page 39 of 70 Page ID
Case 2:04-cv-02728-FCD-DAD Document 140 Filed 02/17/06 Page 8 of 39
#:12099

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

### STATUTES

4

17 U.S.C. § 101 ................................................................................................................... 17, 30

5

17 U.S.C. § 102................................................................................................................... 13

6

17 U.S.C. § 102(a)(1)......................................................................................................... 17

7

17 U.S.C. § 106................................................................................................................... 2, 11, 12

8

17 U.S.C. § 106(2) ............................................................................................................. 30

9

17 U.S.C. § 107................................................................................................................... 27

10

17 U.S.C. § 117................................................................................................................... 13

11

17 U.S.C. § 301................................................................................................................... 13

12

17 U.S.C. § 301(a) ............................................................................................................. 11, 12, 13

13

17 U.S.C. § 302(a) ............................................................................................................. 13

14

17 U.S.C. § 410(c) ............................................................................................................. 17

15

Fed. R. Civ. Proc. 56(c) .................................................................................................... 4

16

### MISCELLANEOUS

17

2 Nimmer on Copyright, §8.09[A], p. 8-138 (2004)........................................................ 30

18
19
20
21
22
23
24
25
26
27
28

-vii-

## I. INTRODUCTION

Meridian Project Systems, Inc. ("Meridian") has established that Hardin Construct Company ("Hardin") breached its shrinkwrap agreement with Meridian and infringed Meridian's copyright in the Prolog help files. Significantly, Hardin admitted that it copied portions of Meridian's Prolog help files for use in the development of Computer Method International, Inc.'s ("CMiC") competing software program. No reasonable interpretation of the shrinkwrap agreement between Meridian and Hardin could possibly legitimize Hardin's conduct. Nor do the copyright laws allow for such blatant misuse of Meridian's copyrighted text. Yet, despite uncontradicted evidence submitted by Meridian detailing Hardin's illicit activities, Hardin and its development partner CMiC continue to maintain that they have been falsely accused. CMiC even sued Meridian for violating the antitrust laws by filing a sham complaint against both Hardin and CMiC. *See generally* Third Amended Answer and Counterclaims to First Amended Complaint.[1] Completely ignoring all evidence supporting Meridian's claims – including the evidence presented with this motion – CMiC and Hardin have engaged in a harassing (and costly) campaign to discover all of Meridian's pre-litigation diligence in what appears to be an attempt to establish that Meridian had no legitimate basis to file suit.[2] However, the evidence in this case establishes that Meridian's claims are not just colorable – they have merit. Meridian has established that Hardin violated the End User License Agreement that accompanies Meridian's Prolog software ("EULA") and infringed Meridian's copyright by copying, transferring, modifying and distributing Prolog's on-screen help files in an effort to assist CMiC to develop a competing project management program. Meridian therefore seeks summary adjudication of the following issues: (1) that Hardin breached the EULA, a valid and enforceable shrinkwrap

---

[1] In response to an interrogatory propounded by Meridian, CMiC clarified that it contends that Meridian's claims against Hardin are objectively baseless. *See* Supplemental Declaration of Scott W. Pink In Support of Meridian's Reply ("Supp. Pink Decl."), at ¶ 2, Ex. A (CMiC contends that all of Meridian's causes of action against Hardin are objectively baseless).

[2] Hardin and CMiC propounded numerous interrogatories, document requests, and requests for admission seeking facts within Meridian's possession at the time it filed suit. Hardin and CMiC also took depositions throughout the country (*i.e.*, depositions in Dallas, Atlanta, and Boston) of those individuals that Meridian identified as persons with whom Meridian consulted before filing suit. Hardin and CMiC even filed a motion to compel production of a privileged Meridian document. The Court denied this motion on February 3, 2006.

-1-

1    agreement; and (2) that Hardin infringed Meridian's copyrighted Prolog help files.[3] Hardin,

2    however, argues that summary adjudication should be denied as to both issues.

3           In its opposition ("Opp."), Hardin argues that summary adjudication of the breach of

4    contract claim should be denied as a matter of law because (1) Meridian failed prove the extent of

5    its damages, (2) California law does not recognize shrinkwrap agreements, and (3) Meridian's

6    breach of contract claim is preempted by the Copyright Act. Hardin is wrong on all three counts.

7    First, Meridian need not prove the extent of its damages at this time because its motion for

8    summary adjudication is limited to issues of liability. Second, California law certainly recognizes

9    the validity and enforceability of shrinkwrap agreements. And third, the Copyright Act does not

10   preempt Meridian's breach of contract claim both because contract claims are not generally

11   preempted and the right to reverse engineer is not one of the exclusive rights under Section 106 of

12   the act.

13          Hardin further argues that summary adjudication of Meridian's breach of contract claim

14   should be denied because there are triable issues of fact concerning (1) whether Hardin agreed to

15   the EULA, (2) whether Hardin copied and distributed the Prolog help files, and (3) whether the

16   EULA prohibits copying and distributing the Prolog help files. Hardin is wrong. First, Hardin

17   agreed to the terms of the EULA, as evidenced by the uncontested fact that Hardin used Prolog

18   for several years. Second, Hardin admits (and circumstantial evidence establishes) that it copied

19   and distributed the Prolog help files. Third, the EULA unambiguously prohibits the unauthorized

20   copying and distribution of not only the Prolog software, but also the accompanying

21   documentation, such as the Prolog help files.

22          Meridian has also established that Hardin infringed Meridian's copyright in the Prolog

23   help files by copying, modifying, and distributing them in connection with its effort to assist

24   CMiC with developing a competing software. Hardin contends that this motion should be denied

25   because Meridian failed to establish copying of protected expression in the Prolog help files.

26   However, the evidence establishes that the specifications and other documents prepared by

27   ---
     [3] With this motion, and contrary to Hardin's characterization thereof, Meridian does not seek summary judgment of
28   its causes of action against Hardin for breach of contract and copyright infringement in their entirety.

-2-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7200455.1
350608-8
MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1
2
3
4

Hardin to guide CMiC's development of its project management software were copied, in most cases verbatim, from the Prolog help files. While Hardin attempts to explain away such copying by asserting a variety of defenses, it cannot avoid the inescapable – such blatant verbatim copying is copyright infringement.

5

### A.    Meridian Is Entitled to Partial Summary Judgment.

6
7
8
9
10
11
12
13
14
15
16
17
18
19

Courts may grant partial summary judgment on the issue of liability only. *See, e.g., Harms, Inc. v. F. W. Woolworth Co.*, 163 F.Supp. 484, (S.D. Cal. 1958) (granting partial summary judgment on subject of liability only in copyright infringement action). As the moving party, Meridian bears the burden of showing that there is no genuine issue of material fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978), *cert denied*, 440 U.S. 981 (1979). However, "once [Meridian] has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Federal Rule of Civil Procedure] 56(e) shifts to [Hardin] the burden of presenting specific facts showing that such contradiction is possible." *Id.* Of course, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Here, Hardin has failed to identify any material factual disputes. *See* Meridian Project Systems, Inc.'s Reply to Hardin's Response to Plaintiff's Statement of Undisputed Facts.

20

### II.    MERIDIAN HAS ESTABLISHED THAT HARDIN BREACHED THE EULA.

21
22
23
24
25
26

The elements of a breach of contract claim are (1) the contract, (2) plaintiff's performance or excuse from performance, (3) breach, and (4) the resulting damage. *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 757 (2003). Meridian seeks summary adjudication on liability for breach of contract, *i.e.,* elements (1), (2), and (3) only.[4] More specifically, Meridian seeks a finding that (1) the EULA is a valid and binding agreement between Hardin and Meridian,

27
28

[4] Hardin concedes that Meridian performed under the EULA as Hardin used the Prolog software, and therefore element (2) is not at issue.

-3-

1  (2) Meridian performed under the EULA, and (3) Hardin breached the EULA. Meridian has not

2  yet provided the Court with evidence establishing the extent of damages that it suffered as a result

3  of Hardin's breach of the EULA.

4

5      A.     **The Court Should Disregard the Extent of Meridian's Damages at this Time.**

        Meridian has not yet moved for summary judgment on the entirety of its claim for breach

6  of contract, as it has yet to seek adjudication of the extent of its damages. Hardin argues that the

7  Court must deny the Motion because Meridian presented no evidence of damages. Opp. Section

8  IV. But the Court need not consider the extent of Meridian's damages in order to grant

9  Meridian's motion for summary adjudication. Indeed, courts routinely consider motions for

10  summary judgment directed towards liability for a particular cause of action in the absence of

11  evidence of damages. Fed. R. Civ. Proc. 56(c) ("A summary judgment, interlocutory in character,

12  may be rendered on the issue of liability alone although there is a genuine issue as to the amount

13  of damages"); *Pacific Fruit Exp. Co. v. Akron, Canton & Youngstown R. Co.*, 524 F.2d 1025,

14  1029-30 (9th Cir. 1975) ("The issue as to quantum of damages was reserved by the Court below

15  for future proceedings... the Court below had no need to concern itself with the question of

16  damages, or indeed whether there was a factual dispute concerning the nature and extent of the

17  damages suffered by [plaintiff]. Clearly, therefore, as a matter of law, there was no genuine issue

18  of fact to be resolved, and summary judgment was wholly proper"); *UMG Recordings, Inc. v.*

19  *Sinnott*, 300 F.Supp.2d 993 (E.D. Cal. 2004) (granting motion for summary judgment as to

20  liability; damages remained undecided); *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 288

21  (S.D. Cal. 1999) (granting motion for partial summary judgment on defendants' liability only);

22  *Hansen v. California Dept. of Corrections*, 920 F.Supp. 1480 (N.D. Cal. 1996) (same); *De*

23  *Malherbe v. Int'l Union of Elevator Constructors*, 476 F.Supp. 649 (C.D. Cal. 1979) (granting

24  motion for partial summary judgment on liability only where plaintiff requested separate trial on

25  damages).

26      B.     **Hardin Entered into a Legally Binding Agreement with Meridian.**

27             1.     **Hardin Entered into the EULA with Meridian.**

28
                                                    -4-

1   Meridian has established that Hardin entered into the EULA with Meridian.  There is no

2   dispute that Hardin purchased licenses from Meridian for the use of Meridian's Prolog software.

3   Mot. at 3:18-4:1.  Hardin concedes that the EULA accompanied the Prolog software.  Opp. at 2:8-

4   10.  However, Hardin argues that there is an issue of fact as to whether the EULA is enforceable.

5   In particular, Hardin argues that there is an issue of fact as to whether it agreed to the terms of the

6   EULA "because the enforceability of shrinkwap licenses is undecided" in California.  Opp. at

7   5:18-22.  Hardin is wrong.  As a practical matter, whether shrinkwrap licenses are enforceable in

8   California is a question of law, not a question of fact.  Here, Hardin attempts to recast a legal

9   issue (the enforceability of shrinkwrap licenses) as a factual one (agreement).  However, there can

10  be no legitimate dispute that Hardin agreed to the EULA if the Court finds that the EULA is valid

11  and enforceable as a shrinkwrap license, as Hardin used Prolog.  *See* Opp. at 2:5-10 (conceding

12  that Hardin used Prolog); and Motion, at Section II(C) ("use of the [Prolog] software provided

13  with this agreement constitutes your acceptance of these terms.  If you do not agree to the terms

14  of this agreement, promptly return the software and the accompanying items")  Thus, Hardin

15  cannot reasonably dispute that it agreed to the terms of the EULA upon its use of Prolog, because,

16  as discussed in section 2 below, the EULA is valid and enforceable.

17

            2.   **Shrinkwrap Licenses Are Valid and Enforceable Agreements.**

18          The Court can and should hold that the EULA is a valid and enforceable contract.  Hardin

19  suggests that the Court should defer adjudicating this matter until some other court considers

20  whether shrinkwrap licenses are enforceable in California.  Opp. at 5:18-22.  This argument is

21  misguided.  As a practical matter, the Court may adjudicate whether the EULA is an enforceable

22  agreement, as courts certainly may consider the enforceability of a contract on a motion for

23  summary judgment.  *See, e.g., Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir.

24  1997); *Siemens Credit Corp. v. Newlands*, 905 F.Supp. 757, 765 (N.D. Cal. 1994); *Charter

25  Communications VI, LLC v. Eleazer*, --- F.Supp.2d ----, 2006 WL 218204, \*5 (S.D.W.Va.

26  January 25, 2006); *Bernath v. Potato Servs. of Michigan,* 300 F.Supp.2d 175, 182-4 (D. Me.

27  2004); *Junker v. Amana Co.,* L.P., 240 F.Supp.2d 894, 899 (N.D. Iowa 2003); *Nelson v.

28

-5-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

*Insignia/Esg, Inc.,* 215 F.Supp.2d 143, 158 (D.D.C. 2002); *Sara Lee Corp. v. Quality Mfg.*, 201 F.Supp.2d 608, 615 (M.D.N.C. 2002).

Many courts, including courts in California, have recognized that shrinkwrap licenses are valid and enforceable. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996) (software shrinkwrap license held valid), *cited with approval in Pollstar v. Gigmania, Ltd.*, 170 F.Supp. 2d 974, 981 (E.D. Cal. 2000); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), *cert. denied*, 522 U.S. 808 (1997) (expanded *ProCD* in enforcing Gateway's practice of shipping a computer in a box also containing license terms and an arbitration clause; Gateway "may invite acceptance by conduct" and that "[b]y keeping the computer beyond 30 days, the Hills accepted Gateway's offer, including the arbitration clause"); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 563 n.10 (6th Cir. 2004) ("the shrinkwrap agreement was clear and the district court could find that it supports the conclusion that there was a meeting of the minds and the agreement is enforceable"); *Davidson & Associates, Inc. v. Internet Gateway, Inc.*, 334 F.Supp. 2d 1164, 1177 (E.D. Mo. 2004) (licenses at issue were enforceable under California law; the agreement appeared when a user first installed computer software obtained from an online source or attempted to conduct an internet transaction and conditioned further access on the user's consent to certain conditions); *I.Lan Systems, Inc. v. Netscout Service Level Corp.*, 183 F.Supp. 2d 328, 338 (D. Mass. 2002) (upheld *ProCD* and applied it in enforcing a clickwrap licensing agreement). *See also Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074, 1081 n.11 (C.D. Cal. 1999) (shrinkwrap agreements are generally license agreements placed inside the cellophane "shrinkwrap" of computer software boxes that, by their terms, become effective once the "shrinkwrap" is opened).

Hardin has not cited a single case holding that shrinkwrap licenses are not valid or enforceable. Instead, Hardin attempts (unsuccessfully) to distinguish cases cited by Meridian in its opening brief, but to no avail. Specifically, Hardin argues that *Adobe Systems, Inc. v. Stargate Software, Inc.* 216 F.Supp. 2d 1051, 1054 (N.D. Cal. 2002) and *Adobe Systems, Inc. v. One Stop Micro, Inc.*, 84 F.Supp. 2d 1086, 1088 (N.D. Cal. 2000), did not consider the validity or

-6-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1  enforceability of the shrinkwrap agreement at issue those cases, but instead considered "whether

2  the [shrinkwrap agreement] itself was a contract or license." Opp. at 5:23-27. This argument

3  makes no sense. It cannot reasonably be disputed that in both *Adobe* cases, the United States

4  District Court for the Northern District of California recognized shrinkwrap agreements as legally

5  binding agreements.[5] Accordingly, Meridian has established that Hardin and Meridian entered

6  into the EULA, a valid and enforceable license.

7      C.    **Hardin Breached the EULA.**

8          1.    **Hardin Copied and Distributed the Prolog Help Files.**

9  Meridian has established that Hardin copied, modified, and distributed the text of the

10  Prolog help files in violation of the EULA.[6] *See* Mot. at Section IV(A). In this regard, Meridian

11  established that Hardin copied portions of the Prolog help files and incorporated them into the

12  CMiC Specifications.[7] *See* Mot. at Section IV(A). *See also* Opp. at 3:19-21 ("Hardin admits that

13  some Prolog text appears in the specifications prepared by Mr. Wright, as well as schedule H, and

14  it is fair to assume that the language came from Prolog's help files."). Meridian established that

15  Hardin modified the text of the Prolog help files and that Hardin incorporated its modifications

16  into the CMiC Specifications. *Id.*; Pink Decl. ¶ 3, Ex. B (Bensley Depo. At 270:7-271:5)(CMiC

17  Specifications virtually the same as the Prolog help files except Mr. Wright removed the words

18  "Prolog Manager" and replace them with "system."). Meridian also established that Hardin

19  distributed portions of the Prolog help files. Mot. at 8:23-25.

20  Yet Hardin argues that Meridian has not explained how Hardin distributed the Prolog help

21  files to CMiC. This ignores the fact that they were emailed to CMiC by Hardin as part of the

22  CMiC Attachments. By use of rhetoric, Hardin suggests that Hardin may not have breached the

[5] Even assuming *arguendo* that Meridian's reliance on *Microstar v. Formgen, Inc.*, 942 F.Supp. 1312, 1313-15 (S.D. Cal. 1996), for the proposition that California courts recognize the validity of shrinkwrap licenses is misplaced, Hardin cannot reasonably dispute that the *Adobe v. Stargate Software*, 216 F.Supp. 2d at 1054 and *Adobe v. One Stop Micro*, 84 F.Supp. 2d at 1088 support this very proposition.
[6] The Prolog help files are on-screen tutorials contained within the Prolog Software that describe the features, functions, and operations of the program, including their selection, sequence, and organization. Mot. at 10:4-6.
[7] Meridian does not contend that a document called "CMiC Specification" exists. Instead, Meridian uses "CMiC Specification" hereinafter to refer to Schedule H to the Hardin/CMiC Agreement, which contains the specifications for the project management software produced by CMiC.

-7-

1   EULA. Opp. at 7:3-9 ("Perhaps Mr. Wright looked at a computer screen while operating

2   Meridian's software. He then copied language from the screen and included the language in his

3   e-mail attachments, which became a schedule to a contract. That would not be a breach of the

4   EULA.") Hardin's use of this particular hypothetical scenario is somewhat disingenuous because

5   Hardin's knowledge of Mr. Wright's preparation of the CMiC Attachments and the CMiC

6   Specification differs substantially from this proposed hypothetical. *See* Pink Decl. ¶ 2, Ex. A

7   (Traeger Depo. at 253:13-23) ("Chris, in his zeal, I think, to get to the end zone, probably copied

8   this [Schedule H] out of the Meridian help files.").[8]

9       Hardin's contention that it may have innocently transcribed the text of the Prolog help

10  files also is unsupported by the evidence.[9] Hardin's hypothetical also is based on a suspect

11  premise, as Hardin does not cite a single case providing that transcribing copyrighted text does

12  not constitute infringement. Finally, Hardin fails to explain why the CMiC Attachments and the

13  CMiC Specifications contain what appear to be numerous inadvertent references to "Prolog". *See*

14  McManus Declaration ¶ 4, Ex. C. If Mr. Wright in fact manually transcribed the text of the

15  Prolog help files from an on-screen display, as Hardin suggests, he certainly would have had the

16  presence of mind to omit references to Prolog, which served no purpose whatsoever in the

17  specifications for a rival software (unless, of course, the purpose of the specifications was to copy

18  aspects of Prolog). Hardin's numerous inadvertent inclusions of the term "Prolog" in the CMiC

19  Attachments and the CMiC Specification also evidences that these files were in fact copied from

20  Prolog. Indeed, courts regard the existence of common errors in two similar works as the

21  strongest evidence of copying for the purposes of proving copyright infringement. *See*

22  *Adventures in Good Eating v. Best Places to Eat*, 131 F.2d 809 (7th Cir. 1942); *Central Tel. Co.*

23  *of Virginia v. Johnson Pub. Co., Inc.*, 526 F.Supp. 838 (D.C. Colo. 1981).

24

25
        2.    **Hardin's Copying and Distribution of the Prolog Help Files Violated
              the EULA.**

26
    _____

27  [8] To be certain, at no time during his deposition did Mr. Wright suggest that he manually transcribed the text of the
    Prolog help files. The court reporter has not yet produced a certified version of Mr. Wright's deposition transcript.
    [9] Even if this factual contention had any colorable merit, Hardin has provided no authority for the proposition that an
28  "innocent" breach negates liability.

                                                         -8-

1    Hardin cannot reasonably dispute that the EULA prohibited copying and distributing the

2    Prolog help files.  As a preliminary matter, Hardin concedes that the EULA places limitations on

3    a licensee's use of Prolog and its accompanying documents.  Opp. at Section IV(C).  And there is

4    no dispute that the EULA provides that:

5
            a. [The Licensee] may not copy, rent, lease, sell, sublicense, assign,
6           loan, time-share, or otherwise transfer or distribute copies of the
            Software or Documentation, except as set forth in this agreement. . .
7           . b. [The Licensee] agree[s] that [it] will not decompile,
            disassemble, or otherwise reverse engineer the Software [Prolog],
8           and [it] will use [its] best efforts to prevent [its] employees and
            contractors from doing so, except to the extent such restriction is
9           expressly prohibited by applicable law.  [The Licensee] may not
            modify, adapt, create a derivative work, merge, or translate the
10          Software [Prolog] without the prior written consent of Meridian.[10]

11          Hardin argues that Meridian submitted no evidence that Hardin copied or distributed

12   "copies of the Software or Documentation" within the meaning of section 2a of the EULA.  Opp.

13   at 6:7-9.  Specifically, Hardin argues that Meridian has not established that the Prolog help files

14   are either Software or Documentation within the meaning of the EULA.  *Id.*  Hardin is wrong.

15   Meridian established that the meaning of the term "Software" as that term is used in the EULA

16   includes the help files because the help files are an on-screen tutorial that is contained within the

17   Prolog software.  The term "Software" is broadly defined by the EULA, and covers both the

18   software in general *and the accompanying documentation*: "The term 'Software' includes all

19   Meridian Project Systems, Inc. and third party software provided with this license, and any

20   accompanying documentation[.]" Mot., at 5 (emphasis added).  Meridian also established that the

21   meaning of the term "Documentation" as that term is used in the EULA includes the help files

22   because such files are an on-screen document that accompanies the software.  *See* Motion at 16

23   n.13 ("The EULA defines the term 'Documentation' to mean any documentation accompanying

24   the software provided by Meridian.").  To the extent that the Court finds that the Prolog help files

25   can only be one or the other under the EULA (*i.e.*, Software or Documentation), but not both,

26   such distinction is immaterial for the purposes of this motion, as the EULA provides similar

27
28   [10] Mot. at Section II(C).
                                        -9-
DLA PIPER RUDNICK    EM\7200455.1                 MERIDIAN'S REPLY MEMORANDUM ISO MOTION
GRAY CARY US LLP     350608-8          FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1  prohibitions (*i.e.*, copying, transferring, and distributing, among other things) as to both

2  "Software" and "Documents". *See* Motion at II(C). Thus, Meridian has established that the

3  EULA governed Hardin's use of the Prolog help files.

4

5  Hardin also argues that the prohibitions set forth in the EULA are ambiguous and should

6  be interpreted against Meridian. Opp. at 7:16-18. Specifically, Hardin argues that it understood

7  that only copying, modifying, or distributing "the entire Prolog code, not sporadic portions of the

8  help file text appearing on a computer screen[,]" would violate the EULA's prohibitions. Opp. at

9  7:20-26. Thus, Hardin argues that under its own interpretation of the EULA, Hardin was
   authorized to copy any aspect of the software and the accompanying documents for any purpose

10  whatsoever so long as it did not copy the software in its entirety. This interpretation is absurd,

11  and cannot reflect the understanding of a sophisticated party such as Hardin at the time that it

12  entered into the EULA. More importantly, this proposed interpretation is contradicted by the

13  testimony of Jeff Traeger. Mr. Traeger testified that he understood that copying the Prolog help

14  files for the purpose of using them in connection with the CMiC Specification was prohibited by

15  the EULA. Motion, at Section IV(B)(1). This is significant, as Mr. Traeger was the Hardin

16  employee in charge of Hardin's compliance with its software licenses.

17

18  Furthermore, Hardin's interpretation of the contract is not reasonably supported by the

19  evidence, and therefore should be disregarded. Indeed, the Court does not need to consider

20  Hardin's interpretation of the EULA for purposes of this motion because no evidence offered

21  makes the contract reasonably susceptible to that interpretation. *Jones-Hamilton Co. v. Beazer
    Materials & Servs., Inc.*, 973 F.2d 688, 692-3 (9th Cir. 1992) (district court did not err in refusing

22  to consider the evidence J-H submitted to support his interpretation of the contract and holding

23  that there was no issue of fact as to the interpretation of the clause to preclude summary

24  judgment; "had the parties chosen to limit the scope of the clause in the manner J-H suggests,

25  they would have surely made this clear in the Agreement"); *Brobeck, Phleger & Harrison v.

26  Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979) (nonmovant did not make the contract reasonably

27  susceptible to its interpretation; the contract remained unambiguous and disposition of the case by

28

-10-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1   summary judgment was appropriate). Even if the Court finds that the EULA is reasonably

2   susceptible to more than one reading, summary judgment is appropriate where there is no

3   evidentiary support for a competing interpretation of a contract. *Nat'l Union Fire Ins. Co. of*

4   *Pittsburgh, Pennsylvania v. Argonaut Ins. Co.,* 701 F.2d 95, 96-7 (9th Cir. 1983) (summary

5   judgment was appropriate where the plaintiff offered no evidence to contradict the defendant's

6   amply supported interpretation of the contract); *Maron v. Foster Wheeler Corp.,* 2002 WL

7   102605, *4 (N.D. Cal. 2002) (same). Summary judgment is appropriate here because Hardin has

8   no evidentiary support whatsoever for its proposed interpretation of the EULA.

9       Accordingly, Meridian has established that Hardin copied, modified, and distributed

10   portions of the Prolog help files in violation of the EULA.

11
12                3.    **Meridian's Breach of Contract Claim Is Not Preempted By the
                        Copyright Act.**

13       Hardin argues that the express preemption provision of the Copyright Act, 17 U.S.C.

14   § 301(a) ("Section 301(a)"), bars the breach of contract claim based on Hardin's breach of its

15   promise in the EULA not to reverse engineer Prolog. *See* Opp. Section IV(D). Hardin is wrong

16   for two reasons. First, breach of contract claims based on the use of software in violation of the

17   contract survive preemption. Considering this very issue, the Seventh Circuit reversed a district

18   court's dismissal of a breach of contract claim, finding that the shrinkwrap software license

19   agreement at issue was valid and not preempted by Copyright Act. *See ProCD,* 86 F.3d at 1454;

20   *see In re Marriage of Worth,* 195 Cal. App. 3d 768, 778 (1987) ("State laws granting or

21   protecting other rights (such as breach of contract, conversion, defamation, etc.) have not been

22   preempted.").

23       Second, as Hardin acknowledges, Section 301(a) preempts only those claims that assert

24   that a defendant violated one of the copyright owner's exclusive rights under 17 U.S.C. § 106.

25   Opp. at 8:5-9. But the right to reverse engineer is not one of the exclusive rights under Section

26   106, nor is it equivalent to any of the exclusive rights. Thus, Hardin's promise to refrain from

27   reverse engineering was not a promise not to do something that copyright law already forbade it

28
                                                -11-

1   to do. *Cf. Kahebie v. Zoland*, 102 Cal. App. 4th 513, 526 (2002).[11] Rather, Hardin made a

2   promise beyond the scope of the Copyright Act, for which it may be held liable. Thus,

3   Meridian's claim for breach of that promise is not preempted by Section 301(a). So held the

4   Federal Circuit in a case squarely on point, in a thorough analysis applying the same "extra

5   element" test urged here by Hardin. *See Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1323-

6   1326 (Fed. Cir. 2003) (breach of contract claim based on provision in shrinkwrap licenses

7   prohibiting "reverse engineering" was not preempted by Section 301(a), where among other

8   things the "agreements in this case are far broader than the protection afforded by copyright

9   law"); *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (finding *Bowers*,

10  320 F.3d at 1324-25, "persuasive" on topic of §301(a) preemption).[12]

11       The extra element test urged by Hardin requires that a court assess the particular factual

12  circumstances of each breach of contract claim in assessing whether it is preempted. *Kahebie*,

13  102 Cal. App. 4th at 527-28. Notwithstanding this principle, Hardin ignores *Bowers*, which

14  considered a breach of contract claim based on a provision prohibiting reverse engineering.

15  Indeed, none of Hardin's cases considered such a provision (let alone held that a contract claim

16  based on that provision is preempted). The only even remotely relevant case is *Novell, Inc. v.

17  Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 18939117, *11 (N.D. Cal. Aug. 17, 2004),

18  which Hardin characterizes as "acknowledging a license prohibiting copying of software for

19  purposes of reverse engineering was preempted by the Copyright Act." Opp. at 8:12-14. *Novell*

20  did not hold this at all. Rather, in the course of rejecting an infringer's claim that shrinkwrap

21  licenses are unenforceable, the court distinguished as inapposite *Vault Corp. v. Quaid Software,

22  Ltd.*, 847 F.2d 255, 269-70 (5th Cir. 1988), described in dicta as involving a contract prohibiting

23

---

24    [11] *See also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1539 n.18 (11th Cir. 1996) (collecting cases in
     which reverse engineering may not constitute copyright infringement).

25    [12] *See also Bowers*, 320 F.3d at 1327 ("The shrink-wrap license agreement prohibited, *inter alia*, all
     reverse engineering of [plaintiff]'s software, protection encompassing but more extensive than copyright

26  protection, which prohibits only certain copying."); *Frontline Test Equipment, Inc. v. Greenleaf Software,
     Inc.*, 10 F. Supp. 2d 583, 593 (W.D. Va. 1998) (no §301 preemption of breach of contract claims where

27  "decompilation" was forbidden by the parties' contract but not by federal copyright law under 17 U.S.C. §
     106); *HotSamba, Inc. v. Caterpillar Inc.*, No. 01 C 5540, *15 (N.D. Ill. Mar. 24, 2004) (no §301(a)

28  preemption for breach of contractual provision that was more restrictive on licensor than Copyright Act).

-12-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7200455.1
350608-8
MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1    copying for reverse engineering. 2004 WL 18939117 at *11 ("No such provision is at issue

2    here."). Morever, *Vault* did not concern a contractual provision prohibiting reverse engineering.

3    Rather, *Vault* found that a Louisiana statute prohibiting any disassembly of software was

4    preempted, and on a completely different basis than asserted here by Hardin.[13] *Bowers*

5    distinguished *Vault* on the basis that a contractual provision was not involved in that case, and

6    held that a breach of a contractual provision prohibiting reverse engineering is not preempted by

7    Section 301.[14]

8         Thus, there is no preemption in this case. Nor may Hardin escape liability because the

9    precise measure it used to breach its promise not to reverse engineer – its outright copying of

10   Prolog help files – also constitutes copyright infringement. *See* Opp. at 8:21-24. This argument

11   was rejected by *Bowers*, which allowed both breach of contract and copyright claims where the

12   plaintiff's "copyright and contract claims both rest on [defendant]'s copying of [plaintiff]'s

13   software." 320 F.3d at 1327. Hardin, nevertheless, asserts that the nature of the "act" (Opp. at

14   8:21) underlying a copyright and contract claim is what matters here, such that a licensor may

15   breach a contract with impunity so long as it also infringes a copyright.[15] Hardin cites no

16   authority for the proposition that the nature of an infringer's act (as distinguished from the nature

17   of the rights asserted by a plaintiff) has anything to do with Section 301(a) preemption, or that the

18   same misconduct may not form the basis of two claims. Indeed, a case relied upon by one of

19   Hardin's cases rejects the latter proposition. *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.

20   App. 3d 1327, 1342 (1990) (*cited throughout Kahebie*, 102 Cal. App. 4th 513) ("In a proper case,

21

22   ---
     [13] Specifically, *Vault* decided that the Louisiana statute touched upon substantive copyright provisions set
23   forth in 17 U.S.C. §§ 102, 117, 302(a), and thus was preempted under the federal common law principle of
     conflict preemption. 847 F.2d at 269, *quoting Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229
24   (1964). *Vault* did not even consider the express statutory preemption under Section 301(a).
     [14] 320 F.3d at 1325 ("while the Fifth Circuit has held that a state law prohibiting all copying of a
25   computer program is preempted by the federal Copyright Act, … no evidence suggests that the First
     Circuit would extend this concept to include private contractual agreements supported by mutual assent
26   and consideration.") (*citing Vault*); *see also Davidson & Assocs. v. Jung*, 422 F.3d 630, 638-39 (8th Cir.
     2005) (distinguishing *Vault* on same basis and following *Bowers*).
27   [15] In other words, Hardin asks for extra credit from this Court because it actually copied the help files
     rather than merely looking at them as it wrote infringing software. This is indeed a curious ethical
28   position.
                                                    -13-

1  the same conduct may support relief under multiple theories," providing that there is an extra
2  element in the State law claim).

3  III. **HARDIN INFRINGED MERIDIAN'S COPYRIGHT IN THE PROLOG HELP**
4  **FILES.**

5      Hardin does not deny that it copied the Prolog help files because it can't. It cannot deny
6  that its purpose in creating the infringing documents was to "provide the complete functionality
7  of a "Prolog type" system[]". Nor can it deny that it intended to produce a product that "'mimics'
8  the complete functionality of other project management software packages available within the
9  industry." Mot. at 8:15-9:10.[16] Instead, Hardin tries to obfuscate and confuse the issues by
10  mischaracterizing Meridian's claims and asserting a litany of defenses and arguments for which it
11  provides no evidentiary support. These arguments should rejected.

12      It is also important to clarify the scope of Meridian's motion with respect to the copyright
13  claim. As discussed above, Meridian seeks summary adjudication on the specific issue that
14  Hardin infringed Meridian's copyright in certain of the Prolog help files by copying, modifying
15  and distributing those help files. In other words, the work at issue are the help files; the
16  copyrightability of the remainder of the Prolog program is irrelevant to this motion. Meridian has
17  submitted copies of the copyrighted work at issue and the infringing works and pointed out the
18  portions that are either identical or substantially the same. The evidence submitted by Meridian
19  in support of this motion identifies many pages of identical or nearly identical text, which in turn,
20  details Hardin's wholesale copying of Meridian's intellectual property.

21      Any suggestion that the Court cannot grant summary adjudication at this stage is without
22  merit. Courts routinely grant summary judgment on copyright infringement claims, *see, e.g.,*
23  *Kygen Co., Inc. v. Vo-Toys, Inc.*, 223 F.Supp.2d 1065 (C.D. Cal. 2002); *Adobe Systems, Inc. v.*
24  *One Stop Micro, Inc.*, 84 F.Supp.2d 1086 (N.D. Cal. 2000); *Sega Enterprises Ltd. v. MAPHIA*,
25  948 F.Supp. 923 (N.D. Cal. 1996); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 50
26  F.Supp.2d 863 (W.D. Wis. 1998); *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982

27

28  [16] Two key members of Hardin development team stated as much in written documents. Mot. at 8:15-9:10.

-14-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7200455.1
350608-8
MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1  F.Supp. 503 (N.D. Ohio 1997); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F.Supp. 1171

2  (N.D. Tex. 1997); *Design Options, Inc. v. BellePointe, Inc.*, 940 F.Supp. 86 (S.D.N.Y. 1996);

3  including in cases in which the substantial similarity between the copyrighted work and the

4  accused infringing work is at issue. *JCW Investments, Inc. v. Novelty, Inc.*, 289 F.Supp.2d 1023

5  (N.D.Ill. 2003); *O'Connor v. Cindy Gerke & Assocs., Inc.*, 300 F.Supp.2d 759 (W.D. Wis. 2002);

6  *Columbia Pictures Indus., Inc. v. Landa*, 974 F.Supp. 1 (D.D.C. 1997); *CSM Investors, Inc. v.*

7  *Everest Development, Ltd.*, 840 F.Supp. 1304 (D. Minn. 1994); *Burgess v. Chase-Riboud*, 765

8  F.Supp. 233 (E.D. Pa. 1991). Here, Meridian submitted undisputed evidence establishing

9  Hardin's direct copying of a substantial portion of Meridian's copyrighted text. This showing

10  warrants a finding of summary adjudication that Hardin's illicit copying infringed Meridian's

11  copyright in the Prolog help files.

12
### A.    The Prolog Help Files Are Copyrightable Subject Matter.

13  Meridian has established that the Prolog help files are copyrightable subject matter. Mot.

14  at 17:12-18:18. Hardin argues that there is a dispute of fact as to whether the Prolog Help files

15  are protectable expression. Opp. at 9:16-10:28. But the help files at issue contain numerous

16  pages of original text written by Meridian to describe the specific operation of its project

17  management software program. *See* Motion at 10:4-6 (*citing* Hamel Decl. at ¶ 10, Ex. D.); *see*

18  *also* Hamel Decl. at ¶ 4. It includes, among other things, detailed text that describes the purpose

19  of certain key modules; the sequence in which the program operates; the selection, order and

20  arrangement of inputs; and numerous creative examples and tips that are unique to Meridian's

21  Prolog software, and not industry-standard descriptions as Hardin would suggest. The following

22  are just some specific examples created by Meridian that appear in both the Prolog help files and

23  in Hardin's infringing works:

24

| Prolog Help Files | Infringing Work |
|---|---|
| Meeting Minutes (Hamel Decl., ¶ 10 Ex. D, MPS 017074): "On the Meeting Items tab, click Create New Meeting. Prolog Manager displays the message, "Do you wish to carry forward all open items?" | CMiC Attachment: Meeting Minutes: (Pink Decl., ¶ 3, Ex. B, H00914) (emphasis added)): "On the Meeting Items tab, click Create New Meeting. *Prolog Manager* displays the message, "Do you wish to carry forward all open items?" |

-15-

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

| | |
|---|---|
| 1 | Conversation Record: (*id.* at MPS017041): "Tip: For historical purposes, if the person tracking information about the conversation was not involved in the actual conversation, use the Other Party or Follow Up Notes fields to list the person who is recording the conversation information. You can use the Logged By and Telephone fields to track the name of the person who took part in the conversation." | CMiC Attachment : Conversation Record (*id.* at H00895): "Tip: For historical purposes, if the person tracking information about the conversation was not involved in the actual conversation, use the Other Party or Follow Up Notes fields to list the person who is recording the conversation information. You can use the Logged By and Telephone fields to track the name of the person who took part in the conversation." This also appears in the CMiC Specifications at CMiC00507 (Pink Decl., ¶ 2, Ex. A, CMiC00507). |
| 8 | Request for Information (*id.* at MPS17075): "The Request for Information form is also used to create and follow up on question, or requests for information (RFIs) about your project. You can use the Request for Information form to log and track the history of your RFI records from initiation to resolution. For example, a subcontractor can create and send an RFI regarding slab thickness at a column line to the project's general contractor. The general contractor can then send the RFI to an architect for an answer. After the architect responds, you can enter the answer and the date the answer was received in the Request for Information form. You can also indicate which RFI records require drawing updates or impact the project schedule or budget." | CMiC Specification: Requests for Information (*id.* at CMiC 00496), "The Request for Information form is also used to create and follow up on question, or requests for information (RFIs) about your project. You can use the Request for Information form to log and track the history of your RFI records from initiation to resolution. For example, a subcontractor can create and send an RFI regarding slab thickness at a column line to the project's general contractor. The general contractor can then send the RFI to an architect for an answer. After the architect responds, you can enter the answer and the date the answer was received in the Request for Information form. You can also indicate which RFI records require drawing updates or impact the project schedule or budget. |
| 17 | Issues (*id.* at MPS017069): "Updating Issue Information [-] You can track the progress and resolution of an issue in the Issues form by providing follow-up information for the issue. For example, if the concrete poured on the project was uneven or of poor quality, you can track the progress until the concrete is completely re-poured and evened out." | CMiC Specification: Issues (*id.* at CMiC 00500). "Updating Issue Information [-] You can track the progress and resolution of an issue in the Issues form by providing follow-up information for the issue. For example, if the concrete poured on the project was uneven or of poor quality, you can track the progress until the concrete is completely re-poured and evened out." |
| 22 | Closeout Log (*id.* at MPS017040): "Entering Updated Close Item Information [-] Once a closeout item has been returned, you can document the closeout item completion in the Close-Out Log form. For example, once a final inspection has been completed, you can update the close-out log to reflect that the Fire Marshall approved the building by changing the status of the close-out item and entering a completion date." | CMiC Specification: Close-out Log/Report (*id.* at CMiC 00502): Entering Updated Close Item Information [-] Once a closeout item has been returned, you can document the closeout item completion in the Close-Out Log form. For example, once a final inspection has been completed, you can update the close-out log to reflect that the Fire Marshall approved the building by changing the status of the close-out item and entering a completion date |

-16-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

| Daily Reports (*id.* at MPS01730): "Splitting Cost Codes for Labor [-] You can also split cost codes. By splitting cost codes, you can indicate that the work performed by an employee on one day affects different cost codes. For example, an employee might have spent half the day installing piper, and the other half of the day installing cable." | CMiC Specification: Daily Reports/Work Journal (*id.* at CMiC 00511): "Splitting Cost Codes for Labor – The System should also split cost codes. By splitting cost codes, you can indicate that the work performed by an employee on one day affects different cost codes. For example, an employee might have spent half the day installing piper, and the other half of the day installing cable." |
|---|---|

In nearly all of these cases, Hardin copied not only the text of the descriptions – all of which are terms referring to functions, features or fields named in Prolog – but also the punctuation, grammatical queues (*i.e.*, the document created by Hardin capitalized the same terms), and examples that were used in the Prolog help files.

It is axiomatic that text can be subject to copyright protection.[17]  Copyright law expressly protects "literary works", 17 U.S.C. §102(a)(1), which are defined as works…expressed in words, numbers, or other verbal or numerical symbols or indicia , regardless of the nature of the material objects." 17 U.S.C. §101.  Many courts have found that text in reference manuals or user manuals to be copyrightable expression. *See, e.g., Harper House v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989) (text of instructions copyrightable subject matter); *Kepner-Tregoe, Inc.,*12 F.3d at 534 (management training materials containing questions and processes copyrightable expression); *Telex v. International Business Machines Corp.*, 367 F. Supp. 258, 361-62 (N.D. Ok. 1973), *aff'd in part*, 510 F.2d 894 (10th Cir. 1975) (product manuals subject to copyright protection).  In addition, Meridian's copyright registration entitles it to a presumption of copyrightability, which Hardin fails to rebut with any substantial evidence. 17 U.S.C. §410(c).

Hardin's attempt to rely on *Portionpac Chemical Corp. v. Sanitech Sys., Inc.*, 217 F.Supp. 2d 1238, 1246 (M.D. Fla. 2002), for the proposition that the Prolog help files is not copyrightable subject matter is misguided.  Hardin argues that the *Portionpac* court noted that the reference manual at issue contained material that was not copyrightable. *See* Opp. at 10:3-5

---

[17] It is noteworthy that several of the examples attached to Danny Bensley's declaration to supposedly show that Meridian's help files are not copyrightable actually assert that they are copyrighted and contain copyright notices, including copyright notices for forms and letters. *See, e.g.,* Bensley Decl., Exhibit 3 at p.2 (Ex. 5) and 15-24. ("Copyright 1987 by the American Institute of Architects. All rights reserved….No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior permission of the AIA.").

-17-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(*Portionpac* court found "manual contains materials that are not copyrightable. . . ."). But Hardin's citation to the *Portionpac* holding omits a key distinction: the *Portionpac* court held that the reference manual at issue in fact contained copyrightable subject matter – that is, the compiler's choice as to the selection, coordination and arrangement of the work. *Portionpac*, 217 F.Supp. 2d 1246 ("the compiler's choice as to selection, coordination, or arrangement are the only parts of the compilation that are entitled to copyright protection"). Meridian's choice as to selection, coordination, and arrangement of the text contained in the Prolog help files is exactly that which entitles the Prolog help files to copyright protection. *See also Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.s. 340 (1991) (selection and arrangement of facts may be protected under copyright law).

Hardin also argues that certain of the modules contained in the Prolog help files are not copyrightable because the general subject matter discussed therein is common knowledge in the industry. Hardin's basic argument is that Meridian's help files are not protectable because Meridian does not own the concepts of "requests for information" or "submittals" because, among other things, these concepts (or words expressing these tasks) predate Meridian. Opp. at 10:11-18. Hardin incorrectly assumes that Meridian claims exclusive ownership of these broad concepts. *See* Opp. at 10:6-10. That is not Meridian's claim. To be certain, Meridian is not asserting that it owns the general concepts of "requests for information" or "submittals", but rather the textual expression in its help files that describe the way Meridian's own program operates, including the selection, order and arrangement of the items discussed in its help files, and the specific examples, tips and hints referenced above. *See Kepner-Tregoe*, 12 F.3d at 534 ("specific words, phrases and sentences selected to convey those ideas [processes for leadership management] is *protectable expression*.") (emphasis in original).

The documents Hardin submitted in support of its opposition confirm that the text in Meridian's help files is in fact copyrightable expression because they show the various different ways to express the underlying concepts. For example, the text describing the submittal process in Hardin's Exhibit 1, p. 9, Exhibit 3, p. 52 and Hardin's Exhibit 5, p. 3 are dramatically different.

-18-

1
2
3

The same hold true for RFIs. In other words, there are "countless ways of expressing" the concepts of submittals and RFIs so that "there was no need" for Hardin to "copy exactly the language" of Meridian's materials. *Id.* at 534.

4
5
6
7
8
9
10

Further, Hardin does not (and cannot) cite a single page from its voluminous exhibits that contains text either identical or similar to Meridian's help files. Hardin does not (and cannot) cite to any document (other than CMiC Specifications) that describe how Prolog operates. Nor do any of the exhibits purport to describe how to build a computer program for project management or the order and flow of that program. Put simply, none of the documents submitted by Hardin contain the specific examples described in both the Prolog help files and the CMiC Specifications.

11

### B.    **Hardin Copied Expression in Meridian's Copyrighted Prolog Help Files.**

12
13
14

Meridian established that Hardin copied expression in Meridian's copyrighted help files. Mot. at 20:1-21:12. Hardin disagrees, and is wrong in doing so. Meridian submitted ample undisputed evidence supporting a finding that Hardin copied protectable expression. Specifically:

15
16
17
18

1.  Meridian submitted to the Court direct evidence establishing that Hardin copied the Prolog help files. Mot. at Section V(B)(1). This includes the testimony of officers of Hardin where they admitted copying and acknowledge that text in the CMiC Specifications and CMiC Attachments was similar or identical to text in the Prolog help files. (*See* Bensley Depo. at 89:2-6; 90:15-21; 93:6-:22)

19

2.  Hardin concedes that it copied portions of the Prolog help files. Opp. at 3:19-21.

20
21

3.  Meridian submitted to the Court both the relevant Meridian help files (the copyrighted work) and the infringing documents: the ten CMiC Attachments that were produced by Hardin employee Chris Wright and sent to Gord Rawlins of CMiC in connection with preparing specifications for the agreement and the CMiC Specifications, prepared by Hardin and signed by CMiC.[18] *See* McManus Decl. ¶¶ 2-5, Exs. A-D.

22
23
24

4.  Meridian supplied testimony from Hardin employees where they admitted that the CMiC Attachments and CMiC Specifications contain text copied from Meridian's help files. Mot. at 8:7-25; Traeger Depo. at 253:21-23 ("Chris [Wright] in his eager zeal, I think, to get to the end zone, probably copied this [Schedule H] out of the Meridian help screens.").

25
26
27
28

[18] Meridian also submitted the declaration of Tom McManus where Mr. McManus listed the sections with identical or similar text or language as well as a number of illustrative examples. (*See* McManus Decl. at Exs. A, B, and C.) Hardin's reliance on *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984).that this such comparisons are inherently unreliable is misplaced. Here, unlike *Litchfield,* the comparison is between two written documents and involves a simple comparison of verbatim language, and therefore can be relied upon. Still even if this is not considered evidence, it can serve as an illustrative tool to assist the Court in comparing the copyrighted work with the accused infringing works.

-19-

FM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1    Here, the Court has an ample basis to juxtapose and compare the copyrighted work with

2    the infringing work. See *Kepner-Tregoe,* 12 F.3d at 534 ; *Business Trends Analysts, Inc. v. The*

3    *Freedonia Group*, 887 F.2d 399, 403 (2d Cir. 1989) (determination of similarity rest on

4    comparison of two works by court); *Robinson v. Random House*, 877 F. Supp. 830, 837

5    (S.D.N.Y. 1995)( stating "Even the briefest examination of the side-by-side comparision of the

6    two books demonstrates that Robinson used Daley's 'particular expression through similarities in

7    treatment, details, scenes, events and characterization'" and providing examples of identical text).

8    Contrary to what Hardin suggests, the Court does not need a word-by-word comparison of each

9    and every section.[19] The Court can make the comparison based on the documents themselves and

10   the testimony of the Hardin employees. Such a comparison inevitably leads to the conclusion that

11   there is a "damning similarity – nay identity – of organization and language". *Kepner-Tregoe*, 12

12   F.3d at 534. Here, a substantial amount of text in both the CMiC Attachments and the CMiC

13   Specifications is either identical or substantially the same to that of the Prolog help files; these

14   works also have the identical or substantially similar selection, order and arrangement of terms. It

15   is not simply a couple of similar random words, as Hardin suggests; entire portions of text were

16   copied. The fact this material is similar to Prolog and not to the various "industry" documents

17   submitted by Mr. Bensely is telling evidence that Hardin was nothing more than a blatant

18   plagiarist.

19   To further assist the court in that endeavor, Meridian has provided additional illustrative

20   exhibits showing the similarities between the CMiC Attachments and the CMiC Specifications

21   and the Meridian help files. One of those exhibits is a redline of the CMiC Attachments showing

22   the language copied from the Prolog help files. (Supplemental Declaration of Thomas McManus,

23   at ¶ 3, Ex. A). In many cases, 90 to 100% of the document is copied verbatim, including

24   references to Prolog Manager by name! In addition, Meridian has also counted the number of

25   words in the CMiC Specifications sections that are similar to the corresponding Prolog help files

26   _____

27   [19] Indeed, the suggestion that the Court is required to conduct some form of analytic dissection here is not necessary
     here where the copying is so extensive and involves verbatim copying of text. *See Kepner-Tregoe,* 12 F.3d at 534
     (application of abstraction-filtration-comparison test not absolutely necessary where comparison of literal language

28   provided strong evidence of infringement).

-20-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(*id.* at ¶ 4, Ex. B). The following table illustrates the scope and extent of the copying in the CMiC Specifications:

**CMIC Specifications**

| Section /<br>Bates Reference | #<br>Words<br>Copied | #<br>Words | % Words<br>Copied |
|---|---|---|---|
| Request for Information<br>CMiC 00496-8 | 733 | 969 | 75.6% |
| Issues<br>CMiC 00499-500 | 461 | 770 | 59.8% |
| Close-out Log / Report<br>CMiC 00501-3 | 536 | 746 | 71.8% |
| Punch List<br>CMiC 00503-4 | 480 | 674 | 71.2% |
| Drawing & Sketch Log<br>CMiC 00505-6 | 691 | 951 | 72.6% |
| Conversation Record & Log<br>CMiC 00507 | 204 | 236 | 86.4% |
| Meeting Minutes<br>CMiC 00508-10 | 558 | 676 | 82.5% |
| Daily Reports<br>CMiC 00510-11 | 608 | 822 | 73.9% |
| **Totals:** | **4,271** | **5,844** | **73.1%** |

Literal copying of an extensive amount of non-fiction text, such as what is at issue here, certainly supports a finding of copyright infringement. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 105 S.Ct. 2218, 2233-34 (1985) (copying of 300 to 400 words of non-fiction work (less than 2%) constituted infringement); *Marcus v. Rowley,* 695 F.2d 1171 (9th Cir. 1983) (summary judgment of copyright infringement granted where defendant teacher prepared "learning activity package" containing the substance of plaintiff teacher's copyrighted booklet on cake decorating); *Educational Testing Services v. Katzman,* 793 F.2d 533, 541-542 3rd Cir. 1986) (copying of test questions); *Robinson v. Random House, Inc.*, 877 F. Supp. 830, 838 (S.D. N.Y. 1995) (copying of numerous passages from historical book constituted copyright infringement); *Wright v. Warner Books, Inc.*; 953 F.2d 731, 736 (2d Cir. 1991) (use of only fourteen passages of one to three sentences long constituted taking of expression); *Salinger v. Random House, Inc.,* 811 F.2d 90 (2nd Cir. 1987), *cert. denied*, 484 U.S. 890 (1987) (defendant published author's copyrighted unpublished letters; court found that defendant copied 1/3 of 17 letters and at least

-21-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

ten percent of 42 letters and portions copied were "at least an important ingredient of the book as it now stands;" the court granted a preliminary injunction barring publication of the defendant's biography and did not find fair use).

Hardin tries gamely to minimize the significance of this copying by distorting the comparison to be made. It argues that the operative comparison should be between the Prolog software program (in its entirety) and the allegedly infringing works (in their entirety).[20] Hardin is wrong for two reasons. First, as noted above, the copyrighted works in question are the help files referring to the individual modules of the Prolog program. Hardin essentially wants the Court to look at the entire Prolog program,[21] including apparently its source code and object code, even though it has no bearing on the infringement analysis here. But the appropriate comparison is between the applicable Prolog help files and the infringing work. In this regard, no court has held that in a case involving text or screen displays from a computer program, the court must consider and compare the underlying source or object code, as Hardin so argues.

Second, Hardin cannot escape liability simply by claiming that the copyrighted work was not the only source for the material contained in the infringing product. In determining whether the portion copied is actionable, courts look primarily to the "qualitative value of the copied material, both to the originator and to the plagiarist." *Harper & Row,* 471 U.S. at 565. Indeed, "the exact proportion of the copied material to the total volume of the work is immaterial, and it is sufficient if a material and substantial part have been copied even though it be a small part of the whole." *Telex Corp.,* 367 F.Supp. at 362; *see* also *Gates Rubber Co. v. Bando Chemical Industries,* 9 F.3d 823, 838 (10th Cir. 1993) (comparison of similarities primarily a "qualitative rather than a purely quantitative analysis"). Here, the fact that a substantial portion of the Hardin infringing works were copied from Prolog help files shows the qualitative value of the copied

[20] Hardin argues that the Court should compare the entire Hardin-CMiC agreement because that is the "infringing work". Most of that agreement is simply boilerplate and irrelevant. The only portion relevant to project management software is Schedule H, which is a self-contained document, and separately executed by Hardin and CMiC.

[21] Hardin claims Meridian's program is 5,000 pages long (See Opp:14:3-5). While it fails to substantiate this claim, it presumably is asking the court to look at printed source code, even though it has nothing to do with the issue at hand.

-22-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1      material. *Harper & Row*, 471 U.S. at 565.[22]  Moreover, the copied text was indisputably

2      qualitatively important to Hardin because: it was sent to CMiC to assist them in developing their

3      software; and was made a part of the contract between the parties, and a condition to acceptance

4      of CMiC's software.[23]

5

6          C.    **This Case Should Be Governed by the Substantial Similarity Standard.**

           Meridian has established that the substantial similarity standard, and not the virtual

7      identity standard, applies here.  None of the cases on which Hardin relies involves the verbatim

8      copying of text, such as what is at issue here.  In addition, the case on which Hardin principally

9      relies, *Apple v. Microsoft*, 35 F.3d 1435 (9th Cir. 1994), is distinguishable for two reasons.  First,

10     *Apple v. Microsoft* involved a comparison of screen displays, not written text.  *Id.*  Second, more

11     than 90% of the protectable elements that were similar between the two programs were governed

12     by a license, and therefore were not considered.  *Id.* at 1442 ("[W]e don't start at ground zero in

13     resolving Apple's claims of infringement.").  Thus, all that was considered was a handful of

14     similar but unprotected elements.  For this reason, the Ninth Circuit held that the virtual identity

15     standard should apply to determine whether there was infringement.  *Id.* at 1446.

16         The Ninth Circuit further recognized that there is a continuum of protection and where a

17     particular work falls varies from case to case.  *Id.*[24]  Here, Hardin has not met its burden to

18     establish that the protection afforded to Meridian's copyright in the help files is a "weak one"

19     entitling it to only thin protection.  On this question, Hardin merely makes the conclusory

20     statements that the concept of help screens is not original and that "purpose, function and use of

21

22

23

24     ―――――――――――――――――――
       [22] Hardin once again tries to distort the comparison by claiming that the Meridian help files were 78 pages long and
       the CMiC Attachments were only 39 pages long.  The difference in page numbers is not because of any significant

25     quantitative difference in content, but because help files are printed on more pages because of the spacing and font.
       [23] Hardin's apparent incentive for doing so was to ensure that CMiC's project management software "mimic[ed]"
       Prolog and contained "Prolog-like" functions.  Hardin was able to accomplish this by sending CMiC the blueprint for

26     Prolog, *i.e.* the Prolog help files.

27     [24] In addition, other courts as well as commentator recognize the differences between factual works and that not all
       factuals work should be governed by the same heightened similarity requirements.  *See Jacobsen v. Desert Book*

28     *Company*, 287 F.3d 936, 944 (10th Cir. 2002) (*citing Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S.
       539, 563 (1985)).

                                                        -23-

1    construction management forms are virtually invariable."[25]  Hardin misses the point altogether.

2    The help files are not describing general industry processes; they describe the unique way in

3    which Prolog operates.[26]  Hardin offers no evidence that the specific way that Meridian expressed

4    the operation of its program is unprotected.  Nor does it provide any other credible evidence that

5    Meridian's copyright is entitled to thin protection.  In fact, it is noteworthy that Hardin has not

6    supplied any evidence as to help files from other project management programs.

7         The substantial similarity standard is appropriate here because of the extensive detail and

8    complex selection, sequence and organization of the Prolog help files at issue.  Other courts have

9    applied the substantial similarity test to works that have some functional or factual information,

10   such as industry studies.  *See, e.g., Business Trends Analyst*, 887 F.2d at 402 (applying substantial

11   similarity test in determining whether industry study was infringed).  Moreover, even if the Court

12   were to find that Meridian must show more similarity than for a purely fictional work, it has

13   easily met not just this stricter standard, but also the virtual identity standard.  As noted above,

14   there has been bodily appropriation of significant portions of text as well as an almost identical

15   selection, order and arrangement of items from the following Meridian help files: Requests for

16   Information, Meeting Minutes, Daily Reports, Drawing Packages, Closeout Log Record,

17   Conversation Record, Drawing Package, Engineering, Hot List, Issues, Transmittals, Submittals,

18   and Punch Lists.

19

20        **D.    Hardin's Alleged Affirmative Defenses Do Not Raise Any Issues of Fact to be
            Considered on this Motion for Partial Summary Judgment.**

21            **1.    The Court Should Disregard Hardin's Alleged Affirmative Defenses
                 for the Purposes of Adjudicating this Motion.**

22        Hardin argues that the Court should deny summary judgment because there is an issue of

23   fact on its affirmative defenses of "scenes a faire" and fair use.  Hardin is wrong for three reasons.

24   First, these affirmative defenses are not even at issue since Meridian is not seeking summary

25   ─────────────

26   [25] Hardin argues that the concept of help screens is not original, citing the *Brown Bag v. Symantec Corp*, 960 F.2d
     1465 (9th Cir. 1992).  Opp. at 11:26-12:9.  However, *Brown Bag* is easily distinguishable, as the work at issue there
     did not involve on- screen help files.

27   [26] Hardin's contention that the "merger" doctrine applies in unavailing, because it assumes that Meridian's help files
     describe a standard construction document.  They do not.  Rather, they describe Meridian's program, with tips and

28   hints on how to make effective use of that program.

                                                    -24-

1

2

3

4

5

6

7

8

9

adjudication of them. To be certain, Meridian only is seeking summary adjudication of liability, that is whether there is infringement. Thus, the Court need not consider Hardin's affirmative defenses at this time, as they were not raised in Meridian's opening brief. It is axiomatic that where the movant has not raised the non-movant's affirmative defenses in its initial summary judgment motion, those defenses merely remain viable in the litigation. *Books a Million, Inc. v. H & N Enterprises, Inc.*, 140 F.Supp.2d 846, 851 (S.D. Ohio 2001); *Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 913-14 (11th Cir. 1996) (district court may not enter summary judgment against a non-movant defendant on its affirmative defenses if those defenses have not been raised in the plaintiff's motion).

10

11

12

13

14

15

16

17

18

Second, even if the Court were to consider Hardin's scenes a faire and fair use defenses on this motion, Hardin raises no legitimate triable issue of fact because Hardin's wholesale copying of the Prolog help files by itself negates the application of these defenses. See *Robinson v. Random House, Inc.*, 877 F.Supp. 830, 839 (S.D.N.Y. 1995) (scenes a faire doctrine not applicable where defendant copied extensive portions of plaintiff's work either verbatim or through close paraphrasing). Significantly, Hardin simply cannot justify why it copied verbatim nearly 40 pages of Meridian help files in the CMiC Attachments and CMiC Specifications. Hardin also fails to provide any substantial evidence supporting these claims, relying instead on conclusory allegations and bald legal conclusions. Therefore, these defenses should be rejected.

19

20

21

22

23

24

25

26

27

28

Third, the burden is on Hardin to establish that these defenses might apply, and it is clear hat Hardin has failed to do so. Hardin concedes that there in fact exists triable issues of fact as to whether these affirmative defenses apply here. See Opp. at 15:23 & 16:14. Meridian, as the moving party, need not disprove Hardin's affirmative defenses in support of its motion for summary judgment. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990) ("[t]here is no requirement that the moving party negate his opponent's claim."); *Continental Airlines, Inc. v. Lelakis*, 943 F.Supp. 300, 304 (S.D.N.Y. 1996) ("[movant] need not support its summary judgment motion with affidavits or other materials that tend to disprove [the nonmovant's] defenses."); *Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F.Supp. 1164, 1167 (S.D.

-25-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

Ind. 1992) (granting summary judgment) (noting that a movant need not anticipate and raise non-movant's affirmative defenses). As discussed below, Hardin has failed to meet that burden.

### 2. The Scenes A Faire Doctrine Does Not Apply to Hardin's Wholesale Copying of Meridian's Text.

Even if the Court opts to consider Hardin's affirmative defenses on this motion, which it should not, the Court should find that scenes a faire doctrine is inapplicable here. Hardin makes the broad assertion that a triable issue of fact is created under the scenes a faire doctrine. Opp. at 16:4-10. However, the only issue actually raised by Hardin is that certain broad concepts such as requests for information (RFIs) and submittals are not protected subject matter. *Id.* Hardin makes no showing whatsoever that the specific text, examples, tips or the selection, order and arrangement of the text in these help files are "indispensable or at least standard in the treatment of a given idea." *See Apple*, 35 F.3d at 1444. Moreover, Hardin offers no credible evidence or explanation as to the scenes a faire doctrine as it might relate to the numerous other Prolog help files that were copied, such as Hot Lists, Issues, Drawing Packages, and Meeting Minutes.

Furthermore, even if some elements could be filtered out as unprotected under the scenes a faire doctrine, the Court must still find infringement because of the wholesale, verbatim copying or close paraphrasing of the Prolog help files text. *See Landsberg v. Scrabble Crossword Games Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984), *cert. denied*, 469 U.S. 1037 (1984). The similarities here are much more extensive than simply common use of industry terms. Here, the evidence suggests the wholesale copying of passages, including specific choice of words, descriptions, arrangements, and tips that were unique to the operation of Prolog. Therefore, the scenes a fair doctrine does not excuse the copying the occurred. *See Robinson v. Random House*, 877 F. Supp. 830, 838 (S.D.N.Y. 1995) (wholesale copying of significant portions of copyrighted work not permissible under scenes a faire doctrine).

### 3. The Fair Use Defense Is Not Applicable.

Similarly, the Court also should find that the fair use defense is inapplicable here. Hardin argues that Meridian's motion should be denied because there exists an issue of fact as to

-26-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1   Hardin's fair use defense. Opp. at 16:14. But this argument must fail for two reasons. First,

2   Hardin waived any fair use defense by agreeing to the terms of Meridian's EULA, and therefore

3   the fair use defense is inapplicable as a matter of law. *See Bowers*, 320 F.3d at 1325-1326

4   (holding that party agreeing to EULA waived right to reverse engineer under fair use doctrine).

5       Second, Hardin's contention that the fair use defense applies because it "used functional

6   description of commonplace tools contained in some Prolog help files" is meritless. *See* Opp. at

7   17:8-10. Hardin claims that its acts of copying, modification, and distribution of the Prolog help

8   files were permissible fair use because such acts constituted a "working reference" to build a

9   competing project management software by CMiC. The suggestion that this is fair use borders on

10  the frivolous: it would undermine the basic principles of copyright allow a company to copy a

11  competitor's written descriptions of its products to create detailed specifications to build a

12  competing product. Such an argument seems even more absurd when one considers that Hardin's

13  purpose in copying, modifying and distributing the protected work was to assist in the

14  development of a product designed to replace and compete directly with Prolog. *See* Pink Decl.,

15  ¶ 2, Ex. A (Traeger Dep. at 82:17 to 85:7); Third Amended Answer and Counterclaim ("TAC") at

16  ¶107 (Defendants allege that CMiC competes with Meridian); Opp. at 18:12-19 (CMiC is a

17  competitor of Meridian).

18      Finally, Hardin fails to submit any evidence in support of the application of the fair use

19  defense. The following four factors are applied in determining whether a work constitutes fair

20  use of a copyrighted work: (1) the purpose and character of the use, including whether such use is

21  of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted

22  work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as

23  a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted

24  work. 17 U.S.C. § 107. However, the Court need not even consider these four factors (or the fair

25  use defense at all) since Hardin offers no evidence to support its position as to any of them.[27]

26  Instead, Hardin makes unsupported and conclusory factual and legal allegations that should be

27  _____
    [27] Hardin's opposition brief does not make any citations to any evidence in discussing these four factors. *See* Opp. at

28  p. 17 and 18.

-27-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1

disregarded altogether.

2

In any event, the factors clearly weigh in favor of Meridian. As to the first factor, Hardin

3

acknowledges that its use of the Meridian help files was for a commercial purpose. *See* Opp. at

4

2:5-7, 17:13-14; TAC at ¶107. In fact, the Prolog help files were provided to a competitor of

5

Meridian for the purpose of providing them directions and specifications as to how to build a

6

project management software that was to replace Prolog. Opp. at 18:16-19. In addition, the

7

Prolog help files were ultimately incorporated into a contract that dictated the requirements of the

8

program CMiC was to deliver. The copyright laws clearly prohibit such competitive uses:

9

"[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the

10

monopoly privilege that belongs to the owner of the copyright." *Microstar v. Formgen*, 154 F.3d

11

1107, 1113 (9th Cir. 1998) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S.

12

417, 451 (1984)).[28] Indeed, the Ninth Circuit has "often articulated the principle that a finding

13

that the alleged infringers copied the material to use it for the same intrinsic purpose for which the

14

copyright owner intended to be used is strong indicia of no fair use." *Marcus. v. Rowley*, 695

15

F.2d 1171, 1175 (9th Cir. 1983) (copying of booklet with instructions on cake decorating by

16

public school teacher not a fair use).

17

Hardin introduces no evidence on the second factor, and merely makes the conclusory

18

statement that computer programs "contain many functional elements." Opp. at 17:27-28. This

19

argument misses the mark. First of all, the issue on this motion is that Hardin's copying of text

20

from Meridian's help files, not the copying of the underlying computer program itself. Second,

21

as discussed above, Hardin introduces no evidence to show that all elements of Meridian's text

22

are functional or unprotected. Just because Hardin quotes language from a case that computer

23

programs are of a "hybrid nature" does not relieve it from its burden of proof on this matter. As

24

discussed in Section III. B. above, the help files contain protectable subject matter, including

25

creative examples and suggestions. At best this factor is neutral. *See Marcus*, 695 F.2d at 1176

26

27

[28] The Courts have also recognized that this factor is given less weight when the new work is "transformative". *See Microstar*, 154 F.3d at 1113, n.6. However, here the infringing works "can be hardly be described as transformative; anything but." *Id.*

28

-28-

DLA PIPER RUDNICK
GRAY CARY US LLP

EM\7200455.1
350608-8

MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

(finding book on cooking to be both informational and creative).[29]

As to the third factor, for the reasons stated in Sections III A. & B. above, the operative analysis involves a comparison between the help files and the infringing work (*i.e.*, the CMiC Attachments and CMiC Specifications), not a comparison of the entire Prolog program and the infringing works. As also noted in Sections III A. & B. above, nearly all of the CMiC Attachments and several key sections of the CMiC Specifications consist of verbatim copying or nearly verbatim copying of the corresponding Meridian help files. Most of these sections involve wholesale copying or verbatim copying. Such verbatim copying of text precludes the application of the fair use defense. *Marcus*, 695 F.2d at 1177 (no fair use where there was verbatim copying of text).

As to the fourth factor, the impact on the market value of the copyrighted work, there can be no reasonable dispute that the help files were used in connection with development of software that competed directly with and in fact replaced Prolog. As a result, Hardin no longer purchased licenses from Meridian and ended its support agreement with Meridian. Mot. at Section II. D. This factor clearly favors Meridian.

Hardin's reliance on the cases of *Sega v. Accolade*, 977 F.2d 1510, 1522 (9th Cir. 1993) and *Sony Computer Entertainment, Inc. v. Connectix*, 203 F.3d 596 (9th Cir. 2000) is misplaced. Both cases involved whether reverse engineering software code through disassembly was a permissible fair use. In *Sega*, the Ninth Circuit recognized that intermediate copying could constitute copyright infringement even when the end product did not itself contain copyrighted material. *Id.* at 1518- 19.[30] But this copying nonetheless could be protected as a fair use if it was "necessary" to gain access to the functional elements of the software itself. *Id.* at 1524-26.

Furthermore, both *Sega* and *Connectix* involved situations where the defendant reverse

---

[29] The argument that help files in their entirety are not protectable because they are functional (See Opp at 18:5-6) is not supported by the law. Many cases have held that instructional works, such as help files and user manuals, are protected under copyright law. *Portionpac,* 217 F.Supp.2d at 1246-47; *Telex Corp*., 367 F.Supp. at 361-62; *Consul Tec. Inc. v. Interface Systems, Inc.*, 22 U.S.P.Q.2d 1538, 1991 WL 427891, *2-4 (E.D. Mich).

[30] In any event, the copying at issue here cannot be construed as intermediate copying since it resulted in the creation of a separate, stand-alone infringing document.

1  engineered the plaintiff's hardware in order to achieve compatibility. In *Sega*, plaintiff's purpose

2  for doing so was to develop games that could be played on the Sega system. *Sega*, 977. F.2d at

3  1520. The *Connectix* plaintiff's reason for reverse engineering the copyrighted subject matter

4  was to develop a new platform (the PC) on which players could play Sony games. Unlike the

5  plaintiffs in *Sony* and *Connectix*, Hardin did not copy Prolog for purposes of compatability.

6  Rather, Hardin's goal was to develop a competing software program that was intended to

7  "duplicate", "mimic", and ultimately replace Prolog. There can be no fair use when the purpose

8  is to develop a substitute product. *See Robinson v. Random House,* 877 F. Supp. 830, 843

9  (S.D.N.Y. 1995)

10

11  ### E.  The Infringing Works Do Constitute an Infringing Derivative Work.

Hardin finally claims that Meridian has failed to show that the CMiC Attachments and the

12  CMiC Specifications are infringing derivative works. A copyright owner has the exclusive right

13  to make a derivative work of his or her copyright. 17 U.S.C §106(2). A derivative work is a

14  "work based upon one or more preexisting works [including] any other form in which a work

15  may be recast, retransformed or adapted. 17 U.S.C. §101.

16  To show that Hardin has created a derivative work, Meridian need only show that

17  "sufficient of the pre-existing work is contained in the later work as to constitute the latter an

18  infringement of the former." 2 Nimmer on Copyright, §8.09[A], p. 8-138 (2004); *see Litchfield v.*

19  *Spielberg,* 736 F.2d 1352, 1357 (9th Cir. 1984). A court can find an infringing derivative work if

20  it copied or condensed a qualitatively important portion of the copyrighted work. *See Castle*

21  *Rock Ent., Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 138-39 (2d Cir. 1998). Here, Hardin

22  incorporated wholesale more than 10 separate modules of help files into the CMiC Attachments

23  and the CMiC Specifications. These works clearly are infringing derivative works.

24  ### IV.  CONCLUSION

25  For each of the reasons mentioned above, Meridian is entitled to summary adjudication on

26  the issues of breach of contract and copyright infringement against Hardin.

27

28

-30-

DLA PIPER RUDNICK
GRAY CARY US LLP
EM\7200455.1
350608-8
MERIDIAN'S REPLY MEMORANDUM ISO MOTION
FOR SUMMARY JUDGMENT / CASE NO. 04-2728 FCD DAD

1   Dated: February 17, 2006                           DLA PIPER RUDNICK GRAY CARY US LLP

2

3                                                      By _Scott W. Pink_

4                                                      SCOTT W. PINK
                                                       Attorneys for Plaintiff and Counterdefendant
                                                       Meridian Project Systems, Inc. and
5                                                      Counterdefendant John Bodrozic

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                -31-