UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br><br>　　　　　Defendant. | Case No. 8:20-cv-00993-MCS-ADS<br><br>**ORDER RE: MOTIONS IN LIMINE (ECF NOS. 200, 202–04, 211) AND PROCEEDINGS AT FINAL PRETRIAL CONFERENCE** |

Plaintiff Netlist Inc. moves in limine: (1) to exclude argument and evidence of Netlist's intent to terminate the Joint Development and Licensing Agreement ("JDLA"); (2) to exclude argument and evidence of Netlist's creditworthiness and payment history with Defendant Samsung Electronics Co., Ltd.; (3) to exclude argument and evidence of impracticability or impossibility due to industry shortages and other market conditions; (4) to exclude argument and evidence of sales practices between the parties before and after the effective period of the JDLA; and (5) to exclude the testimony of Samsung's industry practices expert, Joseph McAlexander. (Pl.'s MILs, ECF No. 211.) Samsung opposes the motions. (Opp'n to Pl.'s MILs, ECF No. 221.)

Samsung moves in limine: (1) to exclude the testimony of Plaintiff's damages expert, Dr. Michael Akemann, (Def.'s MIL No. 1, ECF No. 202);[1] and (2) to exclude evidence and argument on consequential damages, (Def's MIL No. 2, ECF No. 203.)[2] Netlist opposes the motions. (Opp'n to Def.'s MIL No. 1, ECF No. 217; Opp'n to Def.'s MIL No. 2, ECF No. 218.)

The parties' pretrial filings presented a dispute over whether Samsung's affirmative defenses may proceed to trial. (*E.g.*, Proposed FPTCO 7–8, 16, ECF No. 225-1.) The Court ordered supplemental briefing on the issue. (Order Requiring Briefing, ECF No. 227.) The parties submitted responses. (Pl.'s Br., ECF No. 234; Def.'s Br., ECF No. 233.)

The Court heard argument on the motions and the affirmative defenses at the final pretrial conference on November 15, 2021.

---

[1] Samsung filed an application to seal Akemann's unredacted expert report, which Netlist designated as confidential. (Appl., ECF No. 200.) For the compelling reasons stated in Netlist's response to the application, (LaMagna Decl., ECF No. 216), the application is granted. Samsung shall file the expert report under seal pursuant to Local Rule 79-5.2.2(c). In the interest of judicial economy, the Court has considered the provisionally sealed expert report in deciding the motion.

[2] Samsung filed a third motion in limine, (ECF No. 204), which it subsequently withdrew, (ECF No. 235).

# I. BACKGROUND

This is a contract dispute between two sophisticated parties. On November 12, 2015, the parties entered the JDLA, which obliges Samsung to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price," to pay Netlist $8 million in nonrefundable, non-recurring engineering ("NRE") fees less any withholding taxes due or payable under the laws of Korea, and to "reasonably cooperate with Netlist in any lawful efforts to claim a credit or refund or exemption with respect to any such withholding taxes."

After entering the JDLA, Samsung deducted $1.32 million (16.5%) of the NRE fees to pay to the Korean tax authority. The parties dispute whether Samsung reasonably cooperated with Netlist in its efforts to seek a refund of the withheld amount from the Korean tax authority. The tax authority ultimately determined that the NRE fees were not subject to tax withholding. Beginning in 2017, Samsung declined to fulfill all of Netlist's forecasts, requests, and orders for NAND and DRAM products, putting some on backlog and rejecting others. On May 27, 2020, Netlist sent a letter to Samsung claiming Samsung materially breached the JDLA. On July 15, 2020, Netlist sent another letter to Samsung terminating the JDLA.

Netlist alleged three claims: (1) breach of Samsung's NAND and DRAM supply obligation; (2) breach of Samsung's obligations to (a) pay the NRE fees without withholding taxes and (b) reasonably cooperate with Netlist's efforts to recover the withheld amount from the Korean tax authority; and (3) declaratory relief confirming Netlist terminated the JDLA. The Court granted summary judgment in Netlist's favor on Claim 3, and partial summary judgment as to liability on Claims 1 and 2(a). (S*ee generally* XMSJ Order, ECF No. 186.)

Samsung asserts four affirmative defenses: (1) acquiescence, (2) estoppel, (3) waiver, and (4) failure to mitigate. (Proposed FPTCO 7; Def.'s Br. 1–4.)[3]

---

[3] The Court deems any other affirmative defenses abandoned. (*See* Def.'s MCFL 7, ECF

3

## II. AFFIRMATIVE DEFENSES

The parties dispute whether Samsung's acquiescence, estoppel, and waiver affirmative defenses may be presented at trial. (*See* Proposed FPTCO 7–8, 16; *see also* Pl.'s Br. 14 n.6 (acknowledging that Samsung's failure-to-mitigate defense may be presented at trial).) Samsung did not assert these affirmative defenses in response to Netlist's motion for partial summary judgment as to liability on the breach claims or in its own motion for summary judgment. (*See* PMSJ Opp'n, ECF No. 168.)[4]

There is no binding law from the Ninth Circuit as to whether an affirmative defense timely asserted in an answer but omitted in a summary judgment opposition may be allowed to proceed to trial. Nonetheless, the Court finds persuasive the analysis of several courts that "allowing . . . defenses to lay dormant and then resurface at trial, after liability has been determined, would undermine judicial economy, efficiency, and fairness to the opposing party." *Duarte Nursery, Inc. v. U.S. Army Corps of Eng'rs*, No. 2:13-cv-02095-KJM-DB, 2017 U.S. Dist. LEXIS 128182, at *8–9 (E.D. Cal. Aug. 10, 2017); *accord, e.g.*, *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999) ("[A]n affirmative defense must be raised in response to a summary judgment motion, or it is waived."); *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 884 (Fed. Cir. 2017) (citing *Diversey Lever* with approval for the proposition that "a party cannot revisit theories that it raises but abandons at summary judgment" (quoting *USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994))); *Groves v. Am. Family Mut. Ins. Co., S.I.*, 479 F. Supp. 3d 796, 802 (E.D. Wis. 2020) ("Summary judgment is the 'put up or shut up' moment in a lawsuit. [Defendant h]aving failed to raise such a defense or explain its inability to do so, [the defense] must be considered waived." (citation omitted)); *Kaffaga v. Steinbeck*, No. CV 14-08699 TJH (FFMx),

---

No. 208 (asserting laches defense); Pl.'s MCFL 4, ECF No. 209 (indicating Samsung identified other affirmative defenses at Local Rule 16-2 conference of counsel).)

[4] Samsung asserted waiver as a defense to the declaratory judgment claim only. (PMSJ Opp'n 30–31; DMSJ 32–33.)

4

2017 WL 5989039, at *1 (C.D. Cal. Aug. 25, 2017) (rejecting argument that defendant could litigate affirmative defenses to breach of contract claim "despite the fact that the Court granted partial summary judgment in favor of Plaintiffs on the issue of liability" because "[a]ffirmative defenses not raised in opposition to a motion for partial summary judgment as to liability are deemed abandoned"). In line with these cases, allowing Samsung to resurrect its affirmative defenses would "unravel the court's prior dispositive liability decisions." *Duarte Nursery*, 2017 U.S. Dist. LEXIS 128182, at *10. The Court deems Samsung's failure to raise the waiver, estoppel, and acquiescence defenses at summary judgment as its abandonment of those defenses.

The Court briefly addresses two points Samsung made at oral argument. First, Samsung's counsel argued that according to the revised text of Rule 56(a), a movant must identify each claim and defense the movant intends the court to adjudicate in a motion for summary judgment. Accordingly, Samsung argues that if a movant fails to identify a specific affirmative defense in a summary judgment motion, that defense may be pressed at trial despite a dispositive court ruling on the underlying claim. Samsung believes the cases cited above are fundamentally flawed in that they are or rely upon decisions predating Rule 56(a)'s substantive amendment in 2010. Rule 56(a) has no bearing on the doctrine of abandonment applicable here. Samsung's argument speaks to whether the Court adjudicated (or could have adjudicated) Samsung's affirmative defenses at summary judgment—not to whether a party abandons defenses by failing to raise them in summary judgment proceedings. In any event, Samsung supports its Rule 56(a) argument with virtually no authority. As stated in the advisory committee's note, the 2010 amendment was designed to "make clear . . . that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. That purpose has no bearing on abandonment of defenses.

Second, Samsung encouraged the Court to adopt the reasoning of *United States v. Innovative BioDefense, Inc.*, No. SA CV 18-0996-DOC (JDEx), 2019 U.S. Dist.

LEXIS 222668, at *23–24 (C.D. Cal. Nov. 15, 2019), and *Meridian Project Systems, Inc. v. Hardin Construction Co.*, 426 F. Supp. 2d 1101, 1110 (E.D. Cal. 2006), in which district courts found that affirmative defenses survived motions for summary judgment because the plaintiffs did not specifically request summary judgment on the defenses. Neither court was presented with the abandonment issue described here. In both cases, the defendant raised and preserved its affirmative defenses in its opposition to the plaintiff's motion for summary judgment, unlike the situation here. *See Innovative BioDefense*, 2019 U.S. Dist. LEXIS 222668, at *23 (citing defendant's opposition brief); Def. Hardin's Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. 15–18, *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, No. 204CV02728, 2006 WL 5986588 (E.D. Cal. filed Feb. 3, 2006).

      The Court deems Samsung's acquiescence, estoppel, and waiver affirmative defenses abandoned.[5] Samsung may not present these defenses at trial. The Court will enter a final pretrial conference order consistent with this Order.

### III. MOTIONS IN LIMINE

#### A. Netlist's Motions In Limine Nos. 1–4

      Netlist moves to preclude Samsung from presenting evidence and argument on four broad topics. (Pl.'s MILs 1–7.) The Court expressly informed the parties that motions in limine "should address specific issues." (Order Re: Jury Trial § II(A)(1), ECF No. 41.) Netlist's motions fail to identify specific evidence and argument it

---

[5] The Court rejects the acquiescence defense for the additional reason that Samsung fails to show it is a cognizable affirmative defense to a breach of contract claim under New York law. In support of its position, Samsung cites two 25 year old nonbinding federal district court cases. Neither recounts an affirmative defense to a breach of contract claim. *Dial-A-Mattress Operating Corp. v. Mattress Madness*, 841 F. Supp. 1339, 1356 (E.D.N.Y. 1994) (discussing acquiescence defense to trademark claim); *Allen & Co. v. Occidental Petroleum Corp.*, 382 F. Supp. 1052, 1060–61 (S.D.N.Y. 1974) (finding that plaintiff "acquiesced in or consented to the termination of the agreement" upon which plaintiff brought a breach claim—in other words, finding that the existence-of-a-contract element of plaintiff's claim was not met).

anticipates Samsung will present at trial. The Court declines to enter the broad preclusion orders Netlist seeks without more detailed information about the subjects of the evidence and argument. The motions are denied on this basis.

Nonetheless, in the interest of judicial economy, the Court will provide some guidance on the issues presented in the parties' briefs. Nothing in this guidance prevents the parties from presenting or objecting to specific evidence at trial.

Netlist seeks to preclude argument and evidence that it terminated or desired to terminate the JDLA so it could pursue patent litigation, or that Samsung initiated litigation against Netlist in the District of Delaware. (Pl.'s MILs 1–2.) Samsung agrees that that evidence and argument regarding the District of Delaware lawsuit is not appropriate in this action. Samsung argues, however, that the remainder of this topic is relevant to the reasonableness of the position it took in the tax proceedings and to the waiver defense. (Opp'n to Pl.'s MILs 1–3.) As stated above, the waiver defense will not be presented to the jury. And while Netlist's reasons for terminating the JDLA in 2020 may be minimally relevant to whether Samsung reasonably cooperated with Netlist in the tax proceeding years before, the risk of undue prejudice and confusion would substantially outweigh the minimal probative value of this evidence.

Netlist asks the Court to preclude Samsung from discussing Netlist's creditworthiness, credit rating or limit, or payment history with Samsung. (Pl.'s MILs 2–4.) Netlist also argues that Samsung should be precluded from offering evidence that performing its supply obligation was impracticable or impossible due to industry chip shortages, demands by other customers, or other considerations. (*Id.* at 4–6.) Samsung confirms that it is not asserting impracticability or impossibility as affirmative defenses. (Opp'n to Pl.'s MILs 7.) Samsung claims that evidence of Netlist's creditworthiness "goes to whether Samsung had grounds to refuse requests for product or to limit Netlist's allocation," and that evidence of industry shortages and product allocation is relevant to show "its allocations of product to Netlist were reasonable and non-

discriminatory." (*Id.* at 5–6.)[6] These reasons for introducing the evidence are not relevant to any remaining issue to be decided by the jury. The reasonableness of Samsung's decision to breach its supply obligation has no bearing on the measure of damages resulting from the breach. Further, Samsung's arguments are inconsistent with the position it took in discovery. Samsung maintained that it elected not to honor Netlist's requests "based on overall market conditions"—that is, not based on any conditions particular to Netlist or its product orders. (Def. Samsung's 2d Suppl. Resps. to Pl. Netlist's 1st Set of Interrogatories 6, ECF No. 236-3.) As Samsung's counsel acknowledged, this position "put it[] in a lane . . . that's quite favorable to" Netlist. (Tr. of Informal Disc. Conf. 17, ECF No. 236-4.)

At the pretrial conference, Samsung argued that the supply obligation should be limited to what was commercially reasonable to provide to Netlist. Samsung proffers that Netlist "admits . . . that it was only entitled to a commercially reasonable amount" of NAND and DRAM products. (Opp'n to Pl.'s MILs 6.) The argument lacks merit. Nothing in the JDLA or the Court's order on summary judgment limits Samsung's supply obligation to a "commercially reasonable amount." The Court declines to read a new term into the JDLA to limit the obligation. *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (2014) ("[I]f parties to a contract omit terms[,] . . . the inescapable conclusion is that the parties intended the omission."). In any event, Samsung admitted in discovery that it declined to fulfill Netlist's product orders due to "overall market conditions"—not because any particular order was unreasonable. (Def. Samsung's 2d Suppl. Resps. to Pl. Netlist's 1st Set of Interrogatories 6.)

Finally, Netlist seeks an order precluding Samsung from offering evidence of its

---

[6] Although oral argument focused on these issues, Samsung also submits that evidence of Netlist's creditworthiness and payment history with Samsung may inform "whether Netlist would have been able to complete" NAND and DRAM purchases and whether it could have mitigated the price premium it paid for cover purchases. (Opp'n to Pl.'s MILs 4–5.) The evidence may be relevant for these purposes.

8

sales practices with Netlist before and after the JDLA was effective. (Pl.'s MILs 6–7.) In the abstract, the Court agrees with Samsung that such evidence may tend to show whether Netlist's purported cover purchases during the effective period of the JDLA were part of Netlist's regular course of business and not caused by Samsung's failure to meet its supply obligation. (Opp'n to Pl.'s MILs 7–8.)

### B. Netlist's Motion In Limine No. 5

Netlist seeks to preclude Samsung's expert on industry practice, Joseph McAlexander, from testifying at trial. (Pl.'s MILs 7–10.) Samsung submits that McAlexander would offer testimony that "will help the jury to decide whether Samsung's allocations of product to Netlist were commercially reasonable in light of industry custom and practice." (Opp'n to Pl.'s MILs 9.) As discussed above, whether Samsung's product allocations were commercially reasonable is not relevant to the measure of damages for Samsung's breach of its supply obligation. Samsung had an obligation to fulfill all of Netlist's requests, and Samsung has not placed the reasonableness of Netlist's product orders at issue.

Samsung has not identified a basis upon which McAlexander's testimony would be relevant, so the Court will preclude him from testifying. Fed. R. Evid. 402. The Court declines to address Netlist's other arguments for excluding McAlexander.

### C. Samsung's Motion In Limine No. 1

Samsung asks the Court to preclude Netlist's damages expert, Michael Akemann, on the basis that his testimony lacks foundation, relies on faulty methodology, and presents unhelpful qualitative opinions. (Def.'s MIL No. 1, at 6–12.)

Federal Rule of Evidence 702 authorizes "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide an opinion if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." For an expert's opinion to be admissible, the expert's opinion must be "based on sufficient facts or data," the testimony must be the "product of reliable principles and methods," and the expert must have "applied the principles

and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 183688, at *21–22 (N.D. Cal. Nov. 2, 2017) (excluding expert opinion under Rules 702 and 403 because expert's opinion did not rely on specialized knowledge). Federal courts have a gatekeeping responsibility to engage in objective screening to ensure that evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the gatekeeping obligation "applies not only to testimony based on 'scientific knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge"). The proponent of the expert testimony bears the burden of proving its admissibility. *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

Samsung contends that Akemann improperly assumes without sufficient factual basis that Samsung's breach of its supply obligation resulted in all of Netlist's purchases of NAND and DRAM products from resellers. (Def.'s MIL No. 1, at 6–7.) Akemann's assumption is not a product of mere speculation: Akemann predicates his opinion on facts Netlist submits will be presented at trial. (Akemann Report ¶¶ 81–82, ECF No. 201-2 (providing factual bases for assumption "that liability will be established such that all reseller purchases by Netlist were caused by the alleged breach of contract"); *see* Opp'n to Def.'s MIL No. 1, at 2 (promising to present evidence at trial).) Akemann may assume that Netlist will prove at trial that its purchases from third parties are cover purchases.

Samsung takes umbrage with Akemann's methodological decision to use 90-day price windows to estimate price premiums for cover purchases. (Def.'s MIL No. 1, at 8–11.) Although Samsung claims the decision was arbitrary, Akemann offers a cogent explanation for the 90-day price window. (*See* Akemann Report ¶ 87 ("A 90-day time frame is consistent with the economic evidence in this case, which I understand indicates that Samsung typically adjusts its pricing on a quarterly basis.").) Samsung's disagreement with Akemann's methodology presents a basis for cross-examining him,

not for excluding the opinion. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Finally, Samsung argues that Akemann's report provides unsupported opinions on (1) the value of Netlist's patent rights, (2) the value of the supply agreement to Netlist, and (3) other consequential harm to Netlist. (Def.'s MIL No. 1, at 11–12.) Netlist agrees that the third purported opinion should not be presented given the Court's order at summary judgment precluding Netlist from seeking consequential damages. Netlist submits that Akemann has not conducted any valuation of Netlist's patent rights and the JDLA. (Opp'n to Def.'s MIL No. 1, at 6–7.) The report is consistent with Netlist's position; Akemann recites facts from records he reviewed without rendering an opinion on valuation. (*E.g.*, Akemann Report ¶¶ 107 (recounting "economic evidence on the value of Netlist's patent rights" to support his opinion on the value of supply assurance).) Akemann's report does not present any improper qualitative opinion on these topics.

D. **Samsung's Motion In Limine No. 2**

Defendant seeks an order precluding Netlist from introducing evidence and argument concerning three categories of damages Samsung categorizes as consequential damages: (1) future loss profits and business opportunities; (2) damages incurred from selling shares to fund ongoing operations, and (3) expenses Netlist incurred hiring PricewaterhouseCoopers ("PwC") to help it obtain a refund of the withheld portion of the NRE fees. (Def.'s MIL No. 2, at 5.) Netlist agrees that it will not claim consequential damages at trial, but it disagrees that the third category of costs constitutes consequential damages. (Opp'n to Def.'s MIL No. 2, at 1–4.)

The Court warned that "[m]otions in limine should not be disguised motions for summary adjudication of issues." (Order Re: Jury Trial § II(A)(1).) Motions in limine should not be used "as a sweeping means of testing issues of law." 75 Am. Jur. 2d *Trial* § 42. To resolve Samsung's motion would require the Court to decide whether the PwC

expenses are properly categorized as consequential damages. The Court declines to summarily adjudicate this issue. Accordingly, the Court will not preclude Netlist from putting forth evidence of its expenses in hiring PwC.

## IV. OTHER MATTERS

Given the Court's rulings on the affirmative defenses and motions in limine, the Court orders the following:

- The Court estimates trial will take 2–3 days. Voir dire should conclude by lunch on the first day of trial. Each party will have 5.5 hours to present its case (including opening, direct examination, cross examination, and closing). Each party must reserve at least 30 minutes for closing argument.
- The Court directs the parties to confer on appropriate revisions to Samsung's proposed verdict form, the parties' witness lists, and the joint exhibit list in light of the decisions made in this Order.
- The Court rejects Disputed Instruction Nos. 9–11.

The Court provides the following guidance on the remaining disputes in the jury instructions:

- The parties agree on the text of Joint Instruction No. 16 (Breach of Contract—Damages) and 17 (Breach of Contract—Failure to Mitigate) but dispute when the instructions should be presented. (ECF No. 223, at iii.) The Court will give these instructions before closing argument.
- The Court orders the parties to confer further on Disputed Instruction No. 1 (Claims and Defenses). The parties should reach an agreement on a neutral statement of the remaining claims and defenses and the effect of the Court's summary judgment ruling.
- Instead of Disputed Instruction No. 2 (Elements of Breach of Contract), the Court will read New York Pattern Jury Instruction No. 4:1 without modification. Any additional clarifying information can be presented in the Claims and Defenses instruction and the parties' argument.

- The Court rejects Disputed Instruction Nos. 3–8 (Breach of Contract—Damages) as submitted. The instructions deviate from the model instruction and its commentary, borrow from inapposite California law, provide propositions from case law, and are argumentative as presented. If the parties agree on statements of law provided in the commentary to New York Pattern Jury Instruction No. 4:20, the Court will read those statements as a single damages instruction, appended to Joint Instruction No. 16. Substantive modifications to the commentary text will not be permitted.
- The Court takes Disputed Instruction No. 12 (Impeachment Evidence—Witness) under advisement. The Court will not read this instruction unless an applicable impeachment issue arises at trial.

The Court orders the parties to meet and confer and submit a revised joint verdict form, revised witness lists, a revised exhibit list, and revised disputed jury instructions by November 23, 2021.

## V. CONCLUSION

The Court orders as follows:

Netlist's Motion In Limine No. 5 is granted. Samsung is precluded from introducing the testimony of Joseph McAlexander. The other motions in limine are denied subject to the guidance in this Order. All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

The Court deems abandoned Samsung's acquiescence, estoppel, and waiver affirmative defenses. The Court will enter a final pretrial conference order consistent with this decision.

The parties shall submit a revised joint verdict form, revised witness lists, a revised exhibit list, and revised disputed jury instructions by November 23, 2021.

**IT IS SO ORDERED.**

Dated: November 17, 2021

*Mark C. Scarsi*
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE