**NOTE CHANGES MADE BY THE COURT**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>               Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>Trial Date:  November 30, 2021<br><br>Final Pretrial Conference: November 15, 2021<br><br>Judge: Hon. Mark C. Scarsi |

1

# TABLE OF CONTENTS

Page

1.   The Parties and Pleadings ........................................................................1

2.   Jurisdiction ...............................................................................................2

3.   Trial Duration...........................................................................................2

4.   Jury Trial .................................................................................................2

5.   Admitted Facts .........................................................................................3

6.   Stipulated Facts ........................................................................................3

7.   Parties' Claims and Defenses....................................................................3

     Plaintiff's Claims .....................................................................................3

     Defendant's Affirmative Defenses ...........................................................7

8.   Remaining Triable Issues ........................................................................17

9.   Discovery ................................................................................................17

10.  Disclosures and Exhibit List ...................................................................17

11.  Witness Lists ...........................................................................................17

12.  Motions in Limine...................................................................................17

13.  Bifurcation...............................................................................................18

14.  Admissions ..............................................................................................19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS HEREBY ORDERED:

**1. The Parties and Pleadings**

The parties are Plaintiff Netlist Inc. ("Netlist") and Defendant Samsung Electronics Co., Ltd. ("Samsung").  Netlist's First Amended Complaint, filed on August 31, 2020, alleged claims for (1) breach of contract as to the supply obligation in the Joint Development and License Agreement ("JDLA"); (2) breach of contract as to Samsung's failure to pay the full Non-Recurring Engineering ("NRE") fees; and (3) declaratory relief that Netlist effectively terminated the JDLA under Section 13.2 by July 20, 2020.  Dkt. 22.

Samsung's Answer to Netlist's First Amended Complaint, filed on November 6, 2020, asserted affirmative defenses based on statute of limitations, laches, no breach, breach by Netlist, failure of consideration, no damages, speculative damages, no causation, unclean hands, estoppel, waiver, acquiescence, ratification, failure to mitigate, unjust enrichment, good faith, justification, conformity with laws, and ripeness.  Dkt. 27.

On October 14, 2021, the Court entered partial summary judgment in favor of Plaintiff Netlist.  The Court determined that "Netlist has established the existence of a contract, its performance of the contract, and Samsung's breach of the supply provision of the contract," and that this breach was material.  Dkt. 186 at 15, 19, 21. The Court also determined that Samsung materially breached the contract by withholding taxes but that there were genuine issues of fact as to whether Samsung fulfilled its obligation to reasonably cooperate with Netlist in recovering the tax withholding.  *Id.* at 16, 19, 21.  The Court further stated its decision as follows:

- "The Court grants summary judgment in favor of Netlist and against Samsung as to all elements but damages for Netlist's first claim for breach of the supply obligation.

- The Court grants summary judgment in favor of Netlist and against Samsung as to all elements but damages for Netlist's second claim for breach of contract only as to Netlist's theory that Samsung breached by failing to pay the full NRE fees.

- The Court grants summary judgment in favor of Netlist and against Samsung on Netlist's third claim for declaratory relief.

- The Court grants summary judgment in favor of Samsung and against Netlist on Netlist's prayer for consequential damages. Netlist cannot recover consequential damages as a remedy for its claims of breach of contract."

*Id.* at 22.

### 2. Jurisdiction

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. § 1332(a) and 28 U.S.C. §§2201, 2202, and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b) and (c).

### 3. Trial Duration

The trial is estimated to take ~~three (3) to four (4) days.~~**2–3 days. Each party will have 5.5 hours to present its case. Each party must reserve at least 30 minutes for closing argument.**

### 4. Jury Trial

The trial is to be a jury trial.

~~Plaintiff and Defendant shall serve and file (1) joint proposed jury instructions; (2) disputed proposed jury instructions; (3) joint proposed verdict forms; (4) joint proposed statement of the case; and (5) proposed additional *voir dire* questions, if any, not later than November 1, 2021.~~ **The parties shall submit a revised joint verdict form, revised witness lists, a revised exhibit list, and revised disputed jury instructions by November 23, 2021.**

**5. Admitted Facts**

With respect to the remaining issues for trial, there are no facts that are currently admitted and which require no proof.

**6. Stipulated Facts**

With respect to the remaining issues for trial, there are no facts that are currently stipulated.

**7. Parties' Claims and Defenses**

**Plaintiff's Claims**

*Plaintiff's Statement of Its Claims & Defenses:*

(a) Plaintiff plans to pursue the following claims against Defendant at trial:

**Claim 1:** General damages that Netlist suffered based on its first claim, and the Court's finding, in its order granting summary judgement (Dkt. 186), that Samsung breached the supply obligation in the JDLA; and

**Claim 2:** That Samsung breached the JDLA by failing to reasonably cooperate with Netlist's efforts to recover the withheld amount from the Korean tax authority, and general damages that Netlist suffered based on its claim and on the Court's finding in its order granting summary judgment (*id.*) that Samsung failed to pay the full NRE fees in breach of the JDLA.

(b) The elements required to establish Plaintiff's claims are:

**Claim 1:** The general damages suffered by Netlist for Samsung's breach of the supply provision in the JDLA; and

**Claim 2:** The general damages suffered by Netlist for Samsung's breach of the NRE payment provision in the JDLA, and whether Samsung "reasonably cooperated" with Netlist in its efforts to recover the withheld amount from the Korean tax authority within the meaning of Section 3.2 of the JDLA.

(c) The key evidence Plaintiff relies on for each claim is:

**Claim 1:**  Witness testimony, which may include but is not limited to testimony from C.K. Hong, Paik Ki Hong, Steven Yu, Ji Bum Kim, Gail Sasaki, Neal Knuth, Raymond Jiang (by deposition designation), and Dr. Michael Akemann. Documentary evidence, including but not limited to the documents relied upon by Netlist's economic damages expert Dr. Michael Akemann.

**Claim 2:** Witness testimony, which may include but is not limited to testimony from C.K. Hong, Ji Bum Kim, Gail Sasaki, Byungwook Kam, and Dr. Michael Akemann.  Documentary evidence, including but not limited to the documents relied upon by Netlist's economics damages expert Dr. Michael Akemann and expert Byungwook Kam.

### *Defendant's Statement Concerning Plaintiff's Claims and Defenses:*

**Claim 1:** To recover actual damages on this claim at trial, Netlist must prove specific breaches of Section 6.2 of the JDLA that caused actual damages.  Contrary to Netlist's contention, the Court's finding in the summary judgment proceedings that Samsung breached the supply provision does not relieve Netlist of the burden at trial of proving specific breaches that caused actual damages.  The latter finding was simply that based on the evidence adduced there was no genuine issue of material fact that there was at least one breach of the supply provision.  But in the summary judgment proceedings Netlist did not request that the Court make, and the Court did not make, findings of specific breaches of Section 6.2, including dates and amounts of product requests that were unfulfilled.  There are therefore no findings on which the jury may go directly to the issue of quantum of damages, as Netlist proposes.

Samsung denies that Netlist's suffered damages resulting from any Samsung breaches of Section 6.2 because (1) Samsung's decisions not to fill certain of the orders at issue were not breaches of the JDLA and (2) there is no causal link between Netlist's claimed damages and any Samsung breach. Samsung will introduce evidence establishing that (i) Samsung did not supply certain of Netlist's requests

because Netlist did not have sufficient cash or credit to pay for the product requested; (ii) Samsung did not supply certain of Netlist's requests on commercially reasonable grounds including, for example, because the products requested had reasonably been allocated to other customers and were not available to sell to Netlist; (iii) Netlist purchased certain Samsung NAND and DRAM products from resellers (1) without first requesting such products from Samsung and/or (2) absent any refusal from Samsung to supply such products at Netlist's request; (iv) Netlist did not provide Samsung with timely and informative notice of any alleged breach and a reasonable opportunity to cure before covering; (v) Netlist's orders were not commercially reasonable given lead times and/or the amounts requested; (vi) Samsung at times did not have the specific parts Netlist requested; and (vii) Netlist often did not submit a request/order within the meaning of Section 6.2 of the JDLA. Samsung will introduce this evidence through witness testimony, which may include but is not limited to testimony from Hyeok-Sang ("Harrison") Yoo, Lane Kim (by deposition designation or live testimony), Steven Metz (by deposition designation), Byungyeop Jeon (by deposition designation), Neil Knuth, C.K. Hong, Paik Ki Hong, Steven Yu, Gail Sasaki, Raymond Jiang (by deposition designation), and Samsung's expert Joseph McAlexander.   Samsung will also introduce this evidence through documents identified in the Exhibit List which may include, but is not limited to, Netlist's notices of breach and termination and Samsung's responses thereto, emails exchanged between Netlist and Samsung employees concerning Netlist's product requests and purchase orders, Netlist's business proposals and presentations to Samsung, Samsung's internal emails and reports, the parties' financial and sales data concerning Netlist's purchase of Samsung products, Netlist's 10-K and 10-Q public filings, and documents relied on by expert Douglas Kidder.

**Claim 2**: To recover actual damages on its claim for breach of Section 3.1, which breach the Court has already determined, Netlist must prove that it suffered

recoverable damages as a result of Samsung's withholding $1.32 million in taxes and paying that amount to the Korea tax authority, which subsequently refunded the amount plus interest to Netlist. To recover actual damages on its claim for breach of Section 3.2, Netlist must prove that Samsung breached its obligation to reasonably cooperate in Netlist's efforts to claim a refund of the tax withholding and that Netlist suffered recoverable damages as a result of that breach. The Court has already determined that the JDLA excludes consequential damages. Accordingly, Netlist's damages for breach of Section 3.1 and 3.2 are limited to pre-verdict interest. Samsung will introduce evidence that (i) Netlist obtained a full refund of the withheld taxes plus interest; (ii) Samsung's communications and cooperation with Netlist and the Korean tax authorities did not cause any delay in Netlist obtaining its full refund plus interest; and (iii) Samsung's withholding and any resulting damage was caused at least in part by Netlist's own conduct. Samsung further denies any breach of the JDLA regarding Samsung's obligation to reasonably cooperate with Netlist's efforts to obtain a refund from the Korean tax authorities. Samsung will introduce evidence of Samsung's cooperation with Netlist and its Korean tax consultant, including without limitation Samsung's communications with the same; Samsung's communications with the Korean tax authorities were reasonable and consistent with Korean law; and Samsung's statements to the Korean tax authorities that the $8 million was a royalty payment, and not exclusively NRE, was accurate or, at a minimum, was made reasonably and in good faith. Samsung will introduce this evidence through witness testimony which may include, but is not limited to, testimony from Hyunki Ji (by deposition designation or live testimony), Hojung Kim (by deposition designation or live testimony), Indong Kim (by deposition designation or live testimony), Byungyeop Jeon (by deposition designation), C.K. Hong, Gail Sasaki, Jibum Kim, and Samsung's expert Seung Soon Lim. Samsung will also introduce this evidence through documents identified in the Exhibit List which may include, but is not limited

to, Netlist's notices of breach and termination and Samsung's responses thereto, emails exchanged between Netlist and Samsung employees concerning the JDLA, patent license, NRE fee payment and tax withholding issues, Netlist's internal emails regarding the same, Samsung's internal emails and reports, the parties' respective submissions to the Korean tax authorities concerning the JDLA and tax withholding, decisions rendered by the Korean tax authorities, related Korean tax codes and authorities, and documents relied on by Seung Soon Lim.

**Defendant's Affirmative Defenses**

> ***Defendant's Statement of Its Affirmative Defenses:***

> **For the reasons stated in a concurrently filed order, the Court deems abandoned all of Defendant's affirmative defenses except the failure-to-mitigate defense.**

(a) Defendant plans to pursue the following affirmative defenses:

**~~Defense 1:~~** ~~Acquiescence~~

**~~Defense 2:~~** ~~Estoppel~~

**~~Defense 3:~~** ~~Waiver~~

**Defense 4:** Failure to Mitigate

~~Defendant notes that Plaintiff's contention below that the Court already disposed of all of Defendant's affirmative defenses in granting partial summary judgment in Plaintiff's favor (*see* Plaintiff's Statement Concerning Defendant's Defenses) is incorrect. In moving for partial summary judgment, Plaintiff did not ask the Court to decide, and the Court did not decide, Defendant's affirmative defenses. Plaintiff's motion sought a determination that there was an enforceable contract, Netlist performed, and Samsung breached, (see Dkt. 186 at 6, 15), not that Defendant's affirmative defenses to Plaintiff's claims were invalid. Plaintiff argues that because the Court found that Samsung breached the contract, the Court must have rejected Samsung's affirmative defenses because they are purportedly defenses~~

1   to the breach, but that argument is also incorrect.  First, the Court's findings were
2   limited to elements of the affirmative claims for relief and were independent of
3   whether the affirmative defenses to those claims have merit.  Second, the affirmative
4   defenses are not defenses to breach per se but to an entire claim for relief.  Third,
5   with respect to Netlist's claim that Samsung repeatedly breached Section 6.2, each
6   of those claimed breaches is a separate claim for relief to which Samsung asserts its
7   affirmative defenses.  Fourth, there was no record in the summary judgment
8   proceedings on which the Court could have decided the merits of those defenses
9   because Netlist did not seek findings as to claims for specific breaches of Section
10  6.2, only a general finding of a breach of that provision.

11        Defendant also disagrees with Plaintiff's contention below that Defendant's
12  equitable defenses should not be tried, or mentioned, to the jury.  All of Samsung's
13  equitable defenses should go to the jury given that the facts relevant to those
14  defenses are interwoven with the facts relevant to Netlist's affirmative claims.  The
15  key evidence on which Defendant relies for each of the equitable defenses, as
16  described in Section (c) below), shows how the events giving rise to those defenses
17  occurred in close relationship with the events giving rise to Netlist's affirmative
18  claims.  Furthermore, under New York law, "[w]hether a party waived a contractual
19  provision is a question of fact for the jury because the party asserting waiver must
20  show that there was an intent to waive." *Fundamental Portfolio Advisors, Inc. v.*
21  *Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006).  The Court should
22  at least exercise its authority to put the equitable defenses to the jury in an advisory
23  capacity.  *See* Fed. R. Civ. Proc. 39(c). ("In an action not triable of right by a jury,
24  the court, on motion or on  its own: (may try any issue with an advisory jury ….").

25        (b) The elements required to establish Defendant's affirmative defenses are:

26
27
28

**Defense 1:** ~~Samsung must prove (1) Netlist's affirmative conduct that gives rise to actual or apparent consent to some or all of the alleged breaches of contract; and (2) Samsung's reliance on Netlist's consent.~~

**Defense 2:** ~~Samsung must prove: (1) Netlist concealed material facts, or made a false or misleading representation of material fact; (2) Netlist intended that Samsung would rely or act on that conduct; (3) Netlist knew the real facts; (4) Samsung did not know the real facts, and could not have found out; (5) Samsung relied on Netlist's conduct; and (6) in reliance, Samsung acted differently than it would have if it knew the true facts.~~

**Defense 3:** ~~Samsung must prove an intentional relinquishment of a known right after knowledge of all relevant facts.~~

**Defense 4:** Samsung must prove (1) plaintiff failed to make diligent efforts to mitigate its damages, and (2) such efforts would have diminished its damages.

(c) The key evidence Defendant relies on for each affirmative defense is:

**Defense 1:** ~~In support of this affirmative defense against Netlist's first claim for relief, Samsung will introduce: (1) evidence establishing that Netlist affirmatively agreed to modification or cancellation of certain previous requests, including cancellation of purchase orders; (2) evidence establishing that Samsung relied on such modifications or cancellations by shipping products based on the final modified requests and not on the original; (3) evidence establishing that Netlist consented to the amounts stated in purchase orders even if the amounts stated in related forecasts were greater; (4) evidence establishing that Samsung relied on such purchase orders; (5) evidence establishing that Netlist consented to the allocation protocol followed by Samsung; and (6) evidence establishing that Samsung relied on that consent. Samsung will introduce this evidence through witness testimony, which may include but is not limited to testimony from Hyeok Sang ("Harrison") Yoo, Lane Kim (by deposition designation or live testimony), Steven Metz (by deposition designation),~~

1   Byungyeop Jeon (by deposition designation), Neil Knuth, C.K. Hong, Paik Ki Hong,
2   Steven Yu, Gail Sasaki, Raymond Jiang (by deposition designation), and Samsung's
3   expert Joseph McAlexander.  Samsung will also introduce this evidence through
4   documents as identified in the Exhibit List which may include, but is not limited to,
5   Netlist's notices of breach and termination and Samsung's responses thereto, emails
6   exchanged between Netlist and Samsung employees concerning Netlist's product
7   requests and purchase orders, Netlist's business proposals and presentations to
8   Samsung, Samsung's internal emails and reports, the parties' financial and sales data
9   concerning Netlist's purchase of Samsung products, Netlist's 10-K and 10-Q public
10  filings, and documents relied on by expert Douglas Kidder.

11      In support of this affirmative defense against Netlist's second claim for relief,
12  Samsung will introduce: (1) evidence establishing Netlist's affirmative conduct that
13  gives rise to apparent consent to the tax withholding of the NRE Fees; (2) evidence
14  establishing Netlist's affirmative conduct that gives rise to apparent consent to
15  Samsung's conduct with respect to Netlist's efforts to obtain a refund from the Korean
16  tax authorities; and (3) evidence establishing that Samsung relied on Netlist's
17  apparent consent in all respects.  Samsung will introduce this evidence through
18  witness testimony which may include, but is not limited to, testimony from Hyunki Ji
19  (by deposition designation or live testimony), Hojung Kim (by deposition designation
20  or live testimony), Indong Kim (by deposition designation or live testimony),
21  Byungyeop Jeon (by deposition designation), C.K. Hong, Gail Sasaki, Jibum Kim,
22  and Samsung's expert Seung Soon Lim.  Samsung will also introduce this evidence
23  through documents identified in the Exhibit List which may include, but is not limited
24  to, Netlist's notices of breach and termination and Samsung's responses thereto,
25  emails exchanged between Netlist and Samsung employees concerning the JDLA,
26  patent license, NRE fee payment and tax withholding issues, Netlist's internal emails
27  regarding the same, Samsung's internal emails and reports, the parties' respective
28

1  submissions to the Korean tax authorities concerning the JDLA and tax withholding,
2  decisions rendered by the Korean tax authorities, related Korean tax codes and
3  authorities, and documents relied on by Seung Soon Lim.

4  **Defense 2:** In support of this affirmative defense against Netlist's first claim
5  for relief, Samsung will introduce: (1) evidence establishing that Netlist led Samsung
6  to believe that Netlist did not object to Samsung's practice of allocating NAND and
7  DRAM products among customers including Netlist; (2) evidence establishing that
8  Netlist intended that Samsung would rely or act on that conduct; (3) evidence
9  establishing that Netlist knew the real facts including its true intentions; (4) evidence
10 establishing Samsung did not know the real facts, and could not have found out,
11 including that Netlist would later challenge Samsung's allocation protocol; (5)
12 evidence establishing that Netlist deliberately and unjustifiably delayed for as long as
13 three years before giving notice of the alleged breach of Section 6.2; (6) evidence
14 establishing that Samsung relied on Netlist's conduct; (7) evidence establishing that,
15 in reliance, Samsung acted differently than it would have if it knew the true facts; and
16 (8) evidence establishing that by delaying giving notice of the alleged breaches,
17 Netlist deprived Samsung of a reasonable opportunity to cure. Samsung will
18 introduce this evidence through witness testimony, which may include but is not
19 limited to testimony from Hyeok Sang ("Harrison") Yoo, Lane Kim (by deposition
20 designation or live testimony), Steven Metz (by deposition designation), Byungyeop
21 Jeon (by deposition designation), Neil Knuth, C.K. Hong, Paik Ki Hong, Steven Yu,
22 Gail Sasaki, Raymond Jiang (by deposition designation), and Samsung's expert
23 Joseph McAlexander. Samsung will also introduce this evidence through documents
24 as identified in the Exhibit List which may include, but is not limited to, Netlist's
25 notices of breach and termination and Samsung's responses thereto, emails exchanged
26 between Netlist and Samsung employees concerning Netlist's product requests and
27 purchase orders, Netlist's business proposals and presentations to Samsung,
28

FINAL PRETRIAL CONFERENCE ORDER
CASE NO 8:20-cv-00993-MCS-ADS

Samsung's internal emails and reports, the parties' financial and sales data concerning Netlist's purchase of Samsung products, Netlist's 10-K and 10-Q public filings, and documents relied on by expert Douglas Kidder.

In support of this affirmative defense against Netlist's second claim for relief, Samsung will introduce, in addition to the evidence in support of the first defense: (1) evidence establishing that Samsung's conduct that Netlist complains of with respect to any cooperation with its effort to obtain a refund took place prior to any notice of breach by Netlist, and prior to this action being brought; (2) evidence establishing that Samsung lacked knowledge or notice that Netlist would later assert that Samsung's withholding was a breach of the JDLA; (3) evidence establishing that Samsung lacked knowledge or notice that Netlist would later assert that Samsung's conduct with respect to Netlist's efforts to obtain a tax refund was in breach of the JDLA; and (4) evidence establishing that Samsung was injured by this delay. Samsung will introduce this evidence through witness testimony which may include, but is not limited to, testimony from Hyunki Ji (by deposition designation or live testimony), Hojung Kim (by deposition designation or live testimony), Indong Kim (by deposition designation or live testimony), Byungyeop Jeon (by deposition designation), C.K. Hong, Gail Sasaki, Jibum Kim, and Samsung's expert Seung Soon Lim. Samsung will also introduce this evidence through documents identified in the Exhibit List which may include, but is not limited to, Netlist's notices of breach and termination and Samsung's responses thereto, emails exchanged between Netlist and Samsung employees concerning the JDLA, patent license, NRE fee payment and tax withholding issues, Netlist's internal emails regarding the same, Samsung's internal emails and reports, the parties' respective submissions to the Korean tax authorities concerning the JDLA and tax withholding, decisions rendered by the Korean tax authorities, related Korean tax codes and authorities, and documents relied on by Seung Soon Lim.

~~**Defense 3:** In support of this affirmative defense against Netlist's first claim
for relief, Samsung will introduce: (1) evidence establishing that Netlist deliberately
and unjustifiably failed to give timely notice of the alleged breaches of Section 6.2
despite having full knowledge; (2) evidence establishing that Netlist continued to
accept the benefits of the contract while it delayed giving notice of the alleged
breaches; (3) evidence establishing that Netlist lulled Samsung into believing that
Netlist did not intend to assert breaches of Section 6.2 and did not object to Samsung's
practice of allocating NAND and DRAM products among customers including
Netlist; and (4) evidence establishing that by delaying giving notice of the alleged
breaches, Netlist caused injury to Samsung including depriving it of a reasonable
opportunity to cure. Samsung will introduce this evidence through witness testimony,
which may include but is not limited to testimony from Hyeok Sang ("Harrison")
Yoo, Lane Kim (by deposition designation or live testimony), Steven Metz (by
deposition designation), Byungyeop Jeon (by deposition designation), Neil Knuth,
C.K. Hong, Paik Ki Hong, Steven Yu, Gail Sasaki, Raymond Jiang (by deposition
designation), and Samsung's expert Joseph McAlexander.  Samsung will also
introduce this evidence through documents as identified in the Exhibit List which may
include, but is not limited to, Netlist's notices of breach and termination and
Samsung's responses thereto, emails exchanged between Netlist and Samsung
employees concerning Netlist's product requests and purchase orders, Netlist's
business proposals and presentations to Samsung, Samsung's internal emails and
reports, the parties' financial and sales data concerning Netlist's purchase of Samsung
products, Netlist's 10 K and 10 Q public filings, and documents relied on by expert
Douglas Kidder.~~

~~In support of this affirmative defense against Netlist's second claim for relief,
Samsung will introduce: (1) evidence establishing that Netlist deliberately and
unjustifiably delayed before giving notice of the alleged breaches of Section 3.2~~

~~despite having full knowledge; (2) evidence establishing that Netlist continued to~~
~~accept the benefits of the contract while it delayed giving notice of the alleged~~
~~breaches; (3) evidence establishing that Netlist lulled Samsung into believing that~~
~~Netlist did not intend to assert breaches of Section 3.2; and (4) evidence establishing~~
~~that by delaying giving notice of the alleged breaches, Netlist deprived caused injury~~
~~to Samsung including depriving it of a reasonable opportunity to cure. Samsung will~~
~~introduce this evidence through witness testimony which may include, but is not~~
~~limited to, testimony from Hyunki Ji (by deposition designation or live testimony),~~
~~Hojung Kim (by deposition designation or live testimony), Indong Kim (by deposition~~
~~designation or live testimony), Byungyeop Jeon (by deposition designation), C.K.~~
~~Hong, Gail Sasaki, Jibum Kim, and Samsung's expert Seung Soon Lim. Samsung~~
~~will also introduce this evidence through documents identified in the Exhibit List~~
~~which may include, but is not limited to, Netlist's notices of breach and termination~~
~~and Samsung's responses thereto, emails exchanged between Netlist and Samsung~~
~~employees concerning the JDLA, patent license, NRE fee payment and tax~~
~~withholding issues, Netlist's internal emails regarding the same, Samsung's internal~~
~~emails and reports, the parties' respective submissions to the Korean tax authorities~~
~~concerning the JDLA and tax withholding, decisions rendered by the Korean tax~~
~~authorities, related Korean tax codes and authorities, and documents relied on by~~
~~Seung Soon Lim.~~

**Defense 4:** In support of this affirmative defense against Netlist's first claim for relief, Samsung will introduce: (1) evidence establishing that Netlist could have mitigated any damages by maintaining its credit worthiness with third-party suppliers, including a favorable credit rating or limit and payment history, and making diligent efforts to obtain the NAND or DRAM products that it contends it was entitled to under the JDLA from another source at a price lower than it did; and (2) evidence establishing that such diligent efforts would have allowed Netlist to obtain those

NAND and DRAM products at a price lower than what Netlist paid for them. Samsung will introduce this evidence through witness testimony, which may include but is not limited to testimony from Hyeok-Sang ("Harrison") Yoo, Lane Kim (by deposition designation or live testimony), Steven Metz (by deposition designation), Byungyeop Jeon (by deposition designation), Neil Knuth, C.K. Hong, Paik Ki Hong, Steven Yu, Gail Sasaki, Raymond Jiang (by deposition designation), and Samsung's expert Joseph McAlexander.  Samsung will also introduce this evidence through documents as identified in the Exhibit List which may include, but is not limited to, Netlist's notices of breach and termination and Samsung's responses thereto, emails exchanged between Netlist and Samsung employees concerning Netlist's product requests and purchase orders, Netlist's business proposals and presentations to Samsung, Samsung's internal emails and reports, the parties' financial and sales data concerning Netlist's purchase of Samsung products, Netlist's 10-K and 10-Q public filings, and documents relied on by expert Douglas Kidder.

In support of this affirmative defense against Netlist's second claim for relief, Samsung will introduce: (1) Evidence establishing that Netlist failed to make a diligent effort to mitigate any damages from the tax withholding, including by unnecessarily and unjustifiably delaying its effort to seek a tax refund, making unreasonable arguments to the Korean tax authority, failing to make reasonable arguments to the Korean tax authority, and otherwise failing to diligently prosecute its tax case in Korea; (2) Evidence establishing that Netlist's damages from the tax withholding would have been diminished had it made such diligent efforts as described above, which will include expert testimony on Korean law and Korean tax authority practices; (3) Evidence establishing that Netlist failed to reasonably cooperate with Samsung, or failed to enable further cooperation from Samsung, in its effort to obtain a tax refund, including Netlist's communications with Samsung; and (4) Evidence establishing that had Netlist cooperated with Samsung reasonably or

enabled further cooperation from Samsung, its damages would have been diminished, including expert testimony on Korean law and tax practices, Netlist's communications with Samsung, and testimony of percipient witnesses.  Samsung will introduce this evidence through witness testimony which may include, but is not limited to, testimony from Hyunki Ji (by deposition designation or live testimony), Hojung Kim (by deposition designation or live testimony), Indong Kim (by deposition designation or live testimony), Byungyeop Jeon (by deposition designation), C.K. Hong, Gail Sasaki, Jibum Kim, and Samsung's expert Seung Soon Lim.  Samsung will also introduce this evidence through documents identified in the Exhibit List which may include, but is not limited to, Netlist's notices of breach and termination and Samsung's responses thereto, emails exchanged between Netlist and Samsung employees concerning the JDLA, patent license, NRE fee payment and tax withholding issues, Netlist's internal emails regarding the same, Samsung's internal emails and reports, the parties' respective submissions to the Korean tax authorities concerning the JDLA and tax withholding, decisions rendered by the Korean tax authorities, related Korean tax codes and authorities, and documents relied on by Seung Soon Lim.

### *Plaintiff's Statement Concerning Defendant's Defenses*

~~**Defenses 1-3 (**Acquiescence, Estoppel, Waiver) are defenses to breach and therefore have each been disposed of by the Court's ruling granting in part Netlist's motion for summary judgment, which ruled that Samsung materially breached the JDLA.  Regardless, these defenses are each also equitable in nature and should not be tried to or mentioned to the jury.~~

**Defense 4** (Failure to Mitigate):  Samsung must prove that Netlist failed to make reasonable efforts to limit the resulting harm caused by Samsung's breach.

**8. Remaining Triable Issues**

In view of the elements required to establish the claims and affirmative defenses, both the aforementioned Claims 1 and 2, as well as any applicable affirmative defenses, remain to be tried.

**9. Discovery**

All discovery is complete.

**10. Disclosures and Exhibit List**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").  In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

**11. Witness Lists**

Witness lists of the parties were filed with the Court on October 25, 2021.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment or rebuttal).

**12. Motions in Limine**

Motions *in Limine* and motion matters were filed with the Court on October 25, 2021.  The parties met and conferred on the motions *in limine*.  The following motions *in limine*, and no others, are pending or contemplated:

***From Plaintiff:***

- Motion *in limine* to exclude any argument or evidence that Netlist terminated or desires to terminate the JDLA so that it can sue Samsung for patent infringement or of collateral resulting litigations;

- Motion *in limine* to exclude any argument or evidence that damages should be limited because of Netlist's credit worthiness, credit rating, or

payment history with Samsung (which was waived by and rendered moot by the Court's ruling on summary judgment);

- Motion *in limine* to exclude any argument or evidence that damages should be limited because Samsung was prevented from performing because of the impossibility or impracticability of performance (which defenses Samsung did not plead and which, regardless, are rendered moot by the Court's ruling on summary judgment, Dkt. 186 at 22);

- Motion *in limine* to exclude any argument or evidence that Samsung's sales practices with Netlist before or after the JDLA should limit damages during the JDLA; and

- Netlist's motion *in limine* to exclude testimony of Defendant's expert witness Joseph McAlexander.

***From Defendant***:

- Motion *in Limine* to Exclude the Testimony and Report of Netlist's Expert Dr. Michael Akemann

- Motion *in Limine* to Exclude Evidence, Testimony, and Argument of Consequential Damages

- Motion *in Limine* to Exclude References and Evidence Concerning Unrelated Criminal Proceedings Against Samsung-Affiliated Individuals

**The Court has adjudicated the motions in limine in a concurrently filed order.**

### 13. Bifurcation

No bifurcation has been ordered or is requested.

///

**14. Admissions**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Order shall supersede the pleadings, and govern the course of the trial of this case, unless modified to prevent manifest injustice.

DATED: November 17, 2021

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE