RICHARD DOREN, SBN 124666
  rdoren@gibsondunn.com
JASON C. LO, SBN 219030
  jlo@gibsondunn.com
MATTHEW BENJAMIN (*pro hac vice*)
  mbenjamin@gibsondunn.com
TIMOTHY BEST, SBN 254409
  tbest@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:    213.229.7520

JASON SHEASBY, SBN 205455
  jsheasby@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**DECLARATION OF JASON C. LO IN SUPPORT OF PLAINTIFF NETLIST INC.'S MOTION FOR FEES UNDER RULE 37(C)(2)** |

## DECLARATION OF JASON C. LO

I, Jason C. Lo., declare as follows:

1. I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, a member of the California State Bar, and admitted to this Court. I represent Plaintiff Netlist Inc. in the above-captioned matter, and have served as Netlist's lead attorney for all pretrial preparation matters, including discovery and summary judgment. I have also served as the lead attorney overseeing the preparation of Netlist's Motion for Fees per Rule 37(c)(2). I submit this declaration in support of that motion. I have personal knowledge of the matters set forth herein, except where stated otherwise, and if called to testify, I could and would competently testify thereto.

2. I have over 20 years of experience in complex litigation involving intellectual property and contract disputes. I have particular expertise in matters involving contract disputes concerning patent cross-licenses. I have litigated multiple such high-stakes licensing disputes over the last decade among large technology companies, including related patent, tort, and antitrust claims. Despite not being a member of the New York bar, I have litigated licensing disputes under New York law, and have substantial experience in that field as well. I also have particular expertise in litigating against Korean conglomerates, including with respect to the discovery challenges inherent in bilingual matters, having litigated several such actions over the last decade. Given my experience, Netlist hired me to direct and lead Netlist's prosecution of the above-captioned matter.

3. I provide this declaration to introduce the Firm's rate structure, expertise, and position in the market, as well as to attest to my own time and tasks spent in furtherance of proving the issues for which Samsung refused to admit Requests for Admission. I have also verified the billing of others, the fees and expenses claimed here, and Netlist's payment of the fees requested here. I address these issues in turn.

***Gibson Dunn's Expertise and Rates:***

4. Gibson Dunn is a premier, full-service international law firm with over 1500 lawyers and 20 offices in major cities throughout the United States, Europe, Middle East, Asia and South America. GDC consistently ranks among the world's top law firms in industry surveys and major

publications. The American Lawyer has named GDC the winner of its biennial "Litigation Department of the Year" competition for four of the last six competitions. In the California market at issue here, Chambers and Partners ranks Gibson Dunn's litigation team in "Band 1" of its "Elite" rankings list.

5. Gibson Dunn is known for the skill, ability, experience, and reputation of its attorneys in being able to handle large, complex, high-stakes litigation generally, and intellectual property, licensing, and contract litigation specifically. Gibson Dunn has deep talent pools, bench strength, and resources at its disposal to litigate cases like the current action.

6. I have over two decades of experience in the Los Angeles legal market, most of that at Gibson Dunn. I regularly work with clients on budgeting (including budgeting against peer firms), discuss competitive rates with clients, and have spoken with colleagues and friends at other large firms regarding billing rates and trends. I well understand the pricing trends among large national law firms.

7. Gibson Dunn's rates are commensurate with the rates charged by comparable firms in the Central District of California. As noted above, the rates at issue in this case are actual market rates, and the same or similar to those paid by the Firm's other clients. I believe that these rates are on par with those charged at peer firms for similarly experienced and capable counsel.

8. The Gibson Dunn attorneys selected for this matter each contribute a necessary component of expertise to our team, as further detailed in their individual declarations filed herewith. Each attorney whose fees are at issue in this motion performed an essential role in the process of proving the facts described below that Samsung refused to admit in response to Netlist's Requests for Admission. Biographical information concerning our team is attached to this declaration below.

*My Own Role and Time Spent in Furtherance of Proof:*

9. During discovery in this matter, I examined and deposed multiple Samsung employees, including Samsung's 30(b)(6) deponent (Harrison Yoo) concerning topics related to, inter alia, Samsung's limitations and caps on sales to Netlist starting in 2017. I also oversaw and directed associate efforts to prepare for and depose Samsung's other fact witnesses, including on the factual issues below. This work included giving guidance on and approving selection of witnesses, evidence, and related question outlines. I also oversaw Netlist's efforts to obtain discovery from Samsung that

1. ultimately led to Netlist's proof on the issues below, including multiple discovery disputes and motions to compel with Magistrate Judge Spaeth and Magistrate Judge McCormick. (To be conservative, however, I have not included in my calculations below my own time spent overseeing these discovery disputes, including my attendance at hearings with the Magistrate, as Mr. Raymond LaMagna took the primary lead on those issues, whose time is summarized below).

10. With respect to summary judgment, I again served as the lead attorney, outlining and approving evidence, legal issues, and responses, directing the team in implementation, and approving and submitting briefing, factual statements, and exhibits. As the Court will recall, I also argued for Netlist at the hearing on summary judgment.

11. I have reviewed the Requests for Admission that are the basis for Netlist's above-noted motion. Broadly speaking, these requests seek admissions concerning (i) the fact, scope, and timing of caps or limits on product allocation that Samsung placed on sales to Netlist starting in 2017, (ii) whether Samsung had withheld $1.32 million from NRE fees owed to Netlist under the parties' Joint Development and License Agreement (JDLA) and whether Korean tax authorities later determined that those fees to be taxable, and (iii) whether and when Samsung received a pre-termination notice from Netlist and whether and when Samsung responded. I have also reviewed the list of exhibits and evidence that Netlist submitted to the Court on summary judgment on these points, as well as the underlying submissions on summary judgment.

12. I have reviewed my billing records from these time periods to identify work specifically related to efforts undertaken to prove the above facts, along with related deposition transcripts, exhibits, and evidence. The work I undertook on depositions and summary judgment was, of course, not limited to proving the above facts. For this reason, as stated below, I have also estimated what portion of my work was related to proving the above issues versus supporting other tasks or issues.

13. I have endeavored to be conservative in this analysis. I have not, for example, included any general work I performed in the matter on document analysis, discovery disputes, or other issues not specifically related to and required for proving the above facts. Rather, I have considered for depositions only the relative portion of the deposition and deposition preparation directed to

questioning on the above topics or related exhibits. For summary judgment tasks, I have considered the relative portion of factual exhibits and support I provided that was directed to the above issues versus my efforts that were directed to other facts or issues of law.

14. Based on my review and analysis, I believe that the work I undertook in an effort to prove the above issues can be summarized as follows:

| Task | Total Time in Hours | Percentage Applicable | Applicable Time (hrs) |
|---|---|---|---|
| Oversee preparation deposition exhibits and question outline (work common to all witnesses or to witnesses not deposed by me) | 14 | 20% | 2.8 |
| Prepare for and depose of Ki Hoon "Lane" Kim (Samsung employee) | 9 | 25% | 2.2 |
| Prepare for and depose of Hyeoksang "Harrison" Yoo (Samsung employee, 30(b)(6) designee, deposed 2 days) | 26.5 | 35% | 9.3 |
| Preparation of Summary Judgment filings | 63.9 | 20% | 12.8 |
| ***Total***: | | | **27.1** |

15. In light of the above, I conclude that **27.1** hours of my billed time on this matter were directed to proving the facts concerning the above summarized issues.

16. Regarding preparation of the present motion, as noted below, the primary drafting and work on Netlist's Motion for Fees under Rule 37(c)(2) was carried out by Mr. Raymond LaMagna. I have spent time consulting with Mr. LaMagna, reviewing drafts, and overseeing preparation of that motion. I have evaluated my billing records and notes and confirm that **10** hours of my billed time on this matter were directed to overseeing the present motion for fees.

***Summary of Legal Fees Incurred to Prove Facts Samsung Failed to Admit:***

17. I have reviewed the declarations being submitted in this matter, as well as the underlying hours and billing. As lead attorney for Netlist overseeing the above work, I am familiar with the attorneys involved, the work they performed, and the resulting billing. I believe that the tasks

4
J. LO DECLARATION ISO NETLIST'S MOTION FOR FEES UNDER RULE 37(C)(2)
CASE NO. 8:20-CV-993-MCS (ADS)
Gibson, Dunn & Crutcher LLP

performed and work undertaken to prove the above factual issues were appropriate in this matter.

18. I have reviewed Netlist's billing records and can confirm that Netlist has paid in full for all of the fees summarized below at the rates listed. The rates and amounts listed below reflect the actual totals billed to and paid by Netlist net of any discounts or write-downs.

19. Moreover, and as described further below, the rates listed below for Gibson Dunn reflect the standard and customary billing rates for these attorneys, including myself. These are the same rates for these attorneys as paid by other clients of Gibson Dunn in 2021.

20. In summary, the attorneys' fees incurred by Netlist to prove the facts that Samsung did not admit as described in Netlist's motion under Rule 37(c)(2) are:

| Attorney | Hours Allocated to Proof of Facts | Hourly Rate | Total |
|---|---|---|---|
| Jason Lo | 27.1 | $1370 | $37,127.00 |
| Matthew Benjamin | 4.45 | $1370 | $6,096.50 |
| Timothy Best | 29.2 | $1,160 | $33,872.00 |
| Raymond LaMagna | 58.52 | $995 | $58,227.40 |
| Michael Nadler | 46.62 | $1060 | $49,417.20 |
| JungEun (Nicole) Lee | 133.9 | $965 | $129,213.50 |
| Soolean Choy | 43.84 | $845 | $37,044.80 |
| Contracted Attorneys (*see* Lee Decl., ¶ 15) | 2,447.51 | $67.842 (avg.) | $166,043.68 |
| **Total**: | **2791.14** | Weighted Avg.: $185.24/hr. | **$517,042.08** |

21. As shown above, we made a consistent effort in this litigation to work as cost efficiently as possible. While very experienced Gibson Dunn attorneys oversaw the discovery work that resulted in Netlist proving the above facts and its summary judgment submissions, the bulk of the work to identify evidence to prove the above facts was handled at a much lower rate by contract attorneys.

22. As a result, the blended rate for the work performed here is exceedingly low for a matter of this type due to our decision to use bilingual contract attorneys for the heavier initial and first-level tasks of identifying evidence. As reflected above, the weighted average rate per hour for attorney time to prove the facts Samsung refused to admit is just **$185.24**. This is well below any prevailing rate in this District for law firm work, much less for work headed by a national firm of Gibson Dunn's size and capabilities, or for a case of this nature.

23. Nor is the number of hours required overall here unusual given the circumstances flowing from Samsung's discovery recalcitrance. As the Court is aware from the parties' motion practice and discovery dispute docket, Samsung fought discovery at every turn. Not only did Samsung refuse to admit the RFAs at issue here, but Samsung refused to respond substantively to Netlist's requests for production (as well as interrogatories) on these same topics as well. Samsung put Netlist to multiple discovery hearings, and informal and formal motions to compel before Magistrate Judge McCormick and Magistrate Judge Spaeth. Netlist then obtained rulings requiring Samsung to respond to Netlist's discovery, which ultimately led to the evidence Netlist used to prove the above facts.

24. Once under a motion to compel, Samsung finally responded, but did so by dumping on Netlist over a hundred thousand documents (well over a million pages, mostly in Korean) in the last weeks of discovery. This, of course, resulted in substantial review and attorney time in order to find the documents relevant to the facts that Samsung had refused to admit.

25. All this, of course, could have been avoided by Samsung had it simply admitted, for example, that it had capped sales to Netlist (often at zero) starting in 2017. If that were the case, summary judgment could have been brought much earlier and framed as a straight-forward contract interpretation question for the Court. As it was, however, Samsung did not concede the facts at issue here until after Netlist presented them to the Court on summary judgment, at which time Samsung finally relented.

26. In sum, Samsung put Netlist to extensive discovery efforts and ultimately put Gibson Dunn to detailed summary judgment briefing to prove the facts at issue here, all of which Samsung should have admitted. For these reasons, while the above reflects substantial work, I believe it was

justified, necessary, and reasonable work under the circumstances in which Samsung placed Netlist.

27. As noted in my declaration above and in those of my colleagues, the fee totals here have been conservatively estimated overall, with extensive effort made to allocate to this motion only fees associated with proving the above facts. As such, this fee request is both justified and reasonable.

*Summary of Expenses Incurred to Prove Facts Samsung Failed to Admit:*

28. Netlist's request for expenses is exceedingly narrow here. Netlist is only seeking its costs for two items:

(1) translating six Korean-language documents that Netlist used in depositions and submitted to the Court in summary judgment to prove the facts that Samsung refused to admit, and

(2) a portion of the translation costs for four depositions used to prove the issues above (allocated to request only the portion of translation required for the related discussion).

29. As detailed in Ms. Lee's Declaration, ¶¶ 16–17, these expenses total **$4,952.44**.

30. Netlist's request here is conservative and reasonable. Netlist is not seeking any other costs related to these depositions, which Netlist will pursue, as appropriate, in its bill of costs. Nor is Netlist seeking any other expenses related to proving the facts that Samsung refused to admit.

*Summary of Legal Fees Incurred to Bring the Present Motion Under Rule 37(c)(2):*

31. As detailed above, and in the Declarations of Raymond LaMagna, Timothy Best, and JungEun (Nicole) Lee, Netlist also incurred the following fees in preparing its opening motion:

| Attorney | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Jason Lo | 10 | $1370 | $13,700.00 |
| Timothy Best | 13 | $1,160 | $15,080.00 |
| Raymond LaMagna | 97.3 | $995 | $96,813.50 |
| JungEun (Nicole) Lee | 9.8 | $965 | $9,457.00 |
| **Total**: | | | **$135,050.50** |

32. The above does not include forthcoming work to prepare a reply or to prepare for the Court's upcoming hearing. Netlist thus intends to later update its request for fees for this motion.

33. I have reviewed the accompanying attorney declarations and related billing. The present motion covers numerous RFAs and requires detailed drafting and citation to the record. Having reviewed the motion and related billing, I believe this fee request is justified and reasonable. I note that the above fees have not yet been paid by Netlist. Fees for work in December have been billed to Netlist, and fees for work this month will be billed at our Firm's higher 2022 rates. I have not, however, adjusted the above rates to reflect the increase. In that way, the above total underrepresents the actual fees that will be billed to and paid by Netlist for this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 10, 2022, in Los Angeles, California

_____
JASON C. LO

# Jason Lo



333 South Grand Avenue
Los Angeles, CA 90071-3197 USA
Tel +1 213.229.7153
JLo@gibsondunn.com

*Jason C. Lo is a partner resident in the Los Angeles office of Gibson, Dunn & Crutcher where he practices intellectual property law, with a focus on patent and trade secrets litigation.  He has successfully represented leading companies in various industries, including the video game, semiconductor, military defense, and pharmaceutical industries.  He has litigated high-stakes patent infringement cases in courts throughout the United States, as well as the U.S. International Trade Commission.*

Recognized as a leading intellectual property lawyer, Mr. Lo was named by the *Daily Journal* as one of its 2020 Top Intellectual Property Lawyers.  The *Los Angeles Business Journal* also named Mr. Lo to its 2017 list of Most Influential IP Attorneys and the 2012 list of Who's Who in Intellectual Property Law for his work representing clients in the video game, technology, and semiconductor industries in intellectual property litigation.

Mr. Lo graduated *cum laude* from Harvard Law School in 2001.  He earned a Bachelor of Arts Degree in Political Science and a Minor in Accounting from UCLA in 1998.  Prior to joining the firm, Mr. Lo served as a law clerk to The Honorable Mariana R. Pfaelzer in the United States District Court for the Central District of California.

Since 2015, Mr. Lo has served as a Lecturer in Law at the University of Southern California Gould School of Law, teaching courses in patent litigation and intellectual property litigation.

### Some of Mr. Lo's recent achievements and representations include:

- Represented four Taiwan-based consumer electronics device manufacturers (Foxconn, Pegatron, Compal, and Wistron) in multi-billion dollar action asserting antitrust, breach of contract, FRAND, and patent claims against wireless technology licensor, in which the manufacturers defeated a motion for preliminary injunction seeking to force them to pay billions of dollars in royalties under patent license agreements being challenged as anticompetitive and violating FRAND (*In re Qualcomm Litigation*);

- Represented Fitbit in a multi-patent, multi-case dispute against Jawbone spanning multiple federal district court cases and an International Trade Commission patent investigation, regarding technologies used to monitor activity and heart rate in activity trackers (*Jawbone v. Fitbit*);

- Represented Huy Fong Foods (makers of the famous Sriracha chili sauce) in its dispute with the City of Irwindale (*City of Irwindale, et al. v. Huy Fong Foods, Inc.*);

- Represented VIZIO in multi-patent infringement action in D. Delaware relating to LED edge-lit display technology (*Delaware Display Group LLC et al v. VIZIO, Inc.*);

- Represented Glenair in patent infringement action relating to connectors used in aerospace applications (*Radiall S.A. et al v. Glenair, Inc.*);

- Represented Discovery Communications in various intellectual property matters, including a patent litigation with Personal Audio, which ultimately resulted in a dismissal of the case by Personal Audio (*Personal Audio, LLC v. Howstuffworks.com*);

- Represented a large steel producer in U.S. patent and Lanham Act claims as part of multi-jurisdictional litigation resulting in a $250 million settlement in client's favor (*Nippon Steel & Sumitomo Metal v. POSCO*);

- Defended Amazon.com in multi-patent infringement action in D. Delaware relating to technology in Amazon's best-selling Kindle E-reader products (*Adrea, LLC v. Amazon.com, Inc.*);

- Defended Viacom in multi-patent infringement action in E.D. Texas relating to technology in critically acclaimed Rock Band video games (*Konami Digital Entertainment, Inc. v. Viacom, Inc., MTV Networks, and Harmonix Music Systems, Inc.*);

- Represented Johnson & Johnson and Ethicon in patent litigation against Inamed pertaining to bariatric surgical devices and methods (*Johnson & Johnson and Ethicon v. Inamed Corporation*);

- Represented a provider of advanced armoring solutions in a theft of trade secrets case involving armor packages for military vehicles (*ADSI v. Southern California Gold Products, et al.*);

- In a patent damages trial, helped persuade a jury to award only $446,000 when the plaintiff had been seeking damages in excess of $11 million (*Juicy Whip v. Orange Bang*);

- Defended an overseas company accused by British Petroleum of trade secret misappropriation relating to the manufacture of equipment for an acetic acid plant in China.  The defense team defeated BP's motion for preliminary injunction in federal court in Los Angeles on jurisdictional grounds, and then defeated BP's subsequent emergency stay motion in the Ninth Circuit.  After BP re-filed the case and sought an immediate TRO, the team obtained yet another dismissal, allowing the client to ship key equipment (*BP v. Yankuang Group*);

Mr. Lo is a member of the California Bar. He is fluent in Mandarin Chinese and a proficient speaker of Cantonese.

# Matt Benjamin



200 Park Avenue
New York, NY 10166-0193 USA
Tel +1 212.351.4079
MBenjamin@gibsondunn.com

*Matt Benjamin is a partner in the New York office of Gibson, Dunn & Crutcher.  He is a member of Gibson Dunn's General Commercial Litigation, White Collar Defense and Investigations, Crisis Management, and Privacy, Cybersecurity and Data Innovation Practice Groups, among others.  Mr. Benjamin has also served on the firm's Hiring, Diversity, and Community Affairs Committees.*

Mr. Benjamin's practice focuses on complex litigation, white collar criminal defense and internal investigations, and crisis management.  Mr. Benjamin has deep experience counseling prominent individuals and companies in sensitive and often confidential privacy and defamation matters, reputational recovery matters, private investigations, founders' disputes, and information technology-related litigation and investigations.

Representative public matters include:

- Tinder: Represents a group of Tinder early executives and employees, including cofounders Sean Rad, Justin Mateen, and Jonathan Badeen, in multibillion-dollar litigation against InterActiveCorp (IAC) and Match Group, Tinder's parent companies, in New York State Supreme Court, Commercial Division.

- Facebook and Mark Zuckerberg: Represented Facebook and Mark Zuckerberg in a high-profile breach of contract action brought by Paul Ceglia alleging a significant ownership interest in Facebook.  Obtained expedited discovery developing substantial evidence of forgery, manipulation of digital evidence, and spoliation.  Successfully moved for dismissal of the action as a fraud on the court and prevailed on appeal in the Second Circuit.  Relatedly, represented Facebook and Mr. Zuckerberg as victims in the federal criminal prosecution of Plaintiff who was indicted on two felony counts for bringing the lawsuit.

- Office of the Governor of the State of New Jersey: Represented the Office of the Governor of the State of New Jersey in a high-profile internal investigation related to allegations concerning the George Washington Bridge toll lane realignment in September 2013, including preparation of an exhaustive 340-page report of findings and recommendations.

- DraftKings: Represented DraftKings in wide-ranging internal investigation, defense of numerous criminal and regulatory investigations, and civil actions related to compliance with federal and state gaming laws,

including enforcement action brought by New York Attorney General seeking to enjoin DraftKings from ongoing operations.

- Yik Yak: Represented social media app Yik Yak and its two co-founders, Tyler Droll and Brooks Buffington, in a lawsuit brought by a former classmate alleging a significant ownership interest in Yik Yak.

- Netlist: Represented memory technologies provider Netlist, Inc. in a fraud and breach of contract action in New York State Supreme Court, Commercial Division filed by former investment adviser, securing dismissal at the pleading stage in full.

- Lavastone Capital: Represented life settlement investor Lavastone Capital, an AIG affiliate, in a civil RICO, fraud, and breach of contract action in the Southern District of New York, culminating in confidential post-trial settlement.

- Empire Merchants: Represented Empire Merchants LLC, the largest liquor distributor in New York, in its RICO lawsuit against a Maryland liquor distributor and numerous co-conspirators for their alleged involvement in a bootlegging scheme to smuggle tens of millions of dollars of liquor from Maryland to New York.

Mr. Benjamin maintains a robust pro bono practice.  In 2015, the Federal Bar Council selected Mr. Benjamin to receive the Thurgood Marshall Award for Exceptional Pro Bono Service, recognizing his "extraordinary contribution to public service and persistent dedication to enhancing access to justice for those most in need."  In particular, Mr. Benjamin was honored for his efforts in developing Gibson Dunn's groundbreaking pro bono program in support of the Alternatives to Incarceration programs of the U.S. District Court for the Eastern District of New York.  Through this program, Gibson Dunn attorneys have provided pro bono civil legal services, including representation in housing, public assistance benefits, immigration, professional licensing, transactional, and family law matters, to dozens of defendant participants in the ATI programs.  Mr. Benjamin has also represented individual clients in federal courts and agencies in immigration, veterans, criminal, and family court matters.  He currently represents the surviving family of a high-profile murder victim in law enforcement and related matters.

Mr. Benjamin graduated in 2006 from New York University School of Law, where he served as an Executive Articles Editor for the Annual Survey of American Law and a research assistant to Professor Amy Adler.  He graduated *cum laude* from Yale College with a Bachelor of Arts in the History of Art in 2003.

From 2008 to 2009, Mr. Benjamin served as a law clerk to the Honorable George Z. Singal in the United States District Court for the District of Maine.

*The Best Lawyers in America*® recognizes Mr. Benjamin as a leading Criminal Defense: White-Collar attorney. In addition, he has been consistently named in the Super Lawyers New York Metro "Rising Stars" list in the area of litigation since 2013.

Mr. Benjamin is admitted to practice in the State of New York, and before the United States District Courts for the Southern and Eastern Districts of New York.

# Timothy P. Best



333 South Grand Avenue
Los Angeles, CA 90071-3197 USA
Tel +1 213.229.7659
TBest@gibsondunn.com

*Dr. Timothy P. Best is a partner in the firm's Los Angeles office and a member of the firm's Intellectual Property Litigation Practice Group. In 2017, Dr. Best was selected as a Rising Star by Law360, a list that highlights top legal talent under the age of 40.  Tim was one of the five life sciences lawyers honored by Law360 in recognition of his scientific savvy guiding major drugmakers through high-stakes patent cases.*

For example, in March 2018, Tim played a second-chair role on a Gibson Dunn team that successfully defended Pfizer and Merck-Serono in a five-week jury trial against Biogen, in which Biogen sought in excess of $5.4 billion in damages for alleged infringement of a patent pertaining to the use of recombinant DNA technology in the treatment of multiple sclerosis. The jury unanimously rejected Biogen's damages claim and invalidated its patent, handing Pfizer and Merck-Serono one of the largest defense wins in patent litigation history.

Tim also recently second-chaired a Gibson Dunn trial team that successfully asserted three patents on behalf of Depomed and Grunenthal against several prospective generic drug competitors.  The Court ruled in favor of Depomed in holding all three patents infringed and rejected the defendants' attempts to invalidate the patents.

Tim's patent litigation experience has spanned work for clients in a variety of technological fields, including biotechnology and life sciences, pharmaceuticals, medical devices, image processing, semiconductor manufacture, and business methods.  He also has experience in copyright and trademark litigation.

Exemplary engagements include the following matters:

- *Mako Surgical v. Blue Belt Technologies* (representation of Blue Belt (now owned by Smith & Nephew) in patent litigation pertaining to robotic surgical devices and methods; judgment upholding validity of Blue Belt's patent claims and invalidity of Mako's patent claims following IPR challenges in the Patent Office);

- *Isis Pharmaceuticals v. Santaris Pharma* (representation of Santaris (now owned by Roche) in patent litigation pertaining to synthetic antisense DNA drugs);

- *Civolution v. Doremi* (representation of Doremi in patent litigation concerning electronic watermarking of feature films).

Tim is a member of the adjunct faculty at USC Gould School of Law, where he teaches Intellectual Property Litigation, and serves as a member of the Planning Committee of the USC IP Institute.  Tim is a member of the Judge Paul R. Michel Intellectual Property American Inn of Court.

Tim earned his Juris Doctor at the University of California at Berkeley (Boalt Hall) where he served on the Editorial Board of the *Berkeley Technology Law Journal* and served as an advisor for the *BTLJ Annual Review*.

Prior to law school, Tim earned his Doctor of Philosophy in Chemistry at the California Institute of Technology where his work included organic syntheses of DNA-binding small molecules, as well as the assessment of those molecules' in vitro and in vivo activity using molecular biology and cellular biology techniques.  Tim received his Bachelor of Science in Chemistry from Butler University, where he graduated summa cum laude with highest honors in chemistry.

# Raymond A. LaMagna



333 South Grand Avenue
Los Angeles, CA 90071-3197 USA
Tel +1 213.229.7101
RLaMagna@gibsondunn.com

*Raymond LaMagna is an attorney in the Los Angeles office of Gibson, Dunn & Crutcher and a member of the firm's Litigation department.*

Mr. LaMagna's practice focuses on complex intellectual property disputes.  He has represented numerous biotechnology companies and research universities in pharmaceutical patent litigation and licensing matters, as well as counseled Internet, technology, and media companies in patent, trademark, unfair competition, false advertising, copyright, and contract actions.  Mr. LaMagna's practice also extends to appellate advocacy, including in briefing before the Federal Circuit and United States Supreme Court.

Mr. LaMagna has been recognized by *Super Lawyers* as a "Rising Star" in Intellectual Property Litigation for 2012 to 2016.  Mr. LaMagna received his Juris Doctor at the University of Southern California where he was articles editor of the *Southern California Law Review*.  He graduated Order of the Coif and received the James C. Holbrook Award.  The Los Angeles Copyright Society also honored him with the Peter D. Knecht Award for excellence in contract, entertainment, and copyright law.  Mr. LaMagna has a Bachelor of Arts in Cinema/Television Production from the University of Southern California.  Prior to becoming a lawyer, he produced motion picture advertising and was a small business entrepreneur.

Mr. LaMagna is admitted to practice in state and federal courts in California, as well as the United States Court of Appeals for the Federal Circuit and the Ninth Circuit, the Eastern District of Texas, and the Northern District of Illinois.

Representative Matters:

- Represent world's third largest steel producer in U.S. patent and Lanham Act claims as part of multi-jurisdictional litigation resulting in a $250 million settlement in clients' favor.  Mr. LaMagna served as client liaison, managed the U.S. litigation, and advised on copending PTO, foreign, and appellate proceedings (*Nippon Steel & Sumitomo Metal v. POSCO*).

- Defend Discovery Communications and subsidiary against patent infringement claims by entity asserting to have invented podcasting and media distribution via the Internet.  Mr. LaMagna managed all aspects

- of the case, received critical rulings limiting damages, and obtained a dismissal of all claims (*Personal Audio v. Howstuffworks.com*).

- Defend VIZIO, Inc. and coordinate joint-defense group in multi-patent litigation over LED backlight technology, managing all aspects of case (*Delaware Display Group et al. v. VIZIO, Inc.*).

- Represent multiple media companies in district court, Federal Circuit, and Supreme Court writ proceedings involving patent infringement claims, resulting in favorable resolution for client (*1st Media v. Electronic Arts Inc., Harmonix Music Systems, Inc.,* and *Viacom, Inc.*).

- In defending pharmaceutical company in patent litigation against interferon-beta drug products, develop unenforceability and invalidity defenses for ongoing litigation (*Biogen Idec MA v. EMD Serono, Inc.*).

- Defend Viacom and Discovery Communications against patent infringement claims asserted against delivery of video and advertising via the Internet, resulting in favorable resolution for clients (*Intertainer v. Viacom, Inc.* and *Discovery Communications, LLC*).

- Represent leading Internet company in multi-jurisdictional federal and state litigation involving trademark, false advertising, unfair competition, copyright, and contract claims (*CoStar v. LoopNet*).*

- Obtain summary judgment for patentee and licensor on recoupment claims in litigation involving patented methods of antibody humanization and design asserted against the RSV biologic Synagis® (*MedImmune, LLC. v. PDL BioPharma*).*

- Defend against allegations of unenforceability and represent University of Pennsylvania in patent claims covering methods of inhibiting recurrence of HER2-related breast cancer asserted against Herceptin®, a leading biologic (*Genentech, Inc. v. Trustees of University of Pennsylvania*).*

- Manage discovery for ARIAD Pharmaceuticals, Harvard University, MIT, and Whitehead Institute in patent litigation over therapies for intracellular signal modulation, including Enbrel® (*Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*).*

*  *Representation involving prior employment*.

Pro Bono:

- Represent children in asylum and immigration proceedings in cooperation with Kids In Need of Defense (KIND); successfully obtain asylum for victims of gang violence in Central America.

- Represent National Association of Counsel for Children, including in briefing before the Supreme Court regarding the testimonial capacity of children (*Giles v. California*, 554 U.S. 353 (2008)).*

# Michael L. Nadler



200 Park Avenue
New York, NY 10166-0193 USA
Tel +1 212.351.2306
MNadler@gibsondunn.com

*Michael Nadler is an associate with Gibson, Dunn & Crutcher, where he is a member of the firm's Litigation Department. Mr. Nadler's practice has focused on all phases of civil litigation before both trial and appellate courts, with a particular emphasis on securities litigation and complex commercial disputes.*

His engagements have included:

- Currently representing Rio Tinto in securities litigation concerning a multi-billion dollar investment in Mozambique.

- Currently representing Lynn Tilton and her affiliated Patriarch entities in several matters pending before the Southern District of New York and the District of Delaware Bankruptcy Court.

- Currently representing Welltower in litigation concerning a nationwide series of construction projects.

- Currently representing Netlist in breach of contract litigation against one of the world's largest technology companies.

- Obtaining an injunction requiring the White House to immediately reinstate the press credentials of CNN reporter Jim Acosta.

- Achieving dismissal, and affirmance of the dismissal on appeal, of novel state law claims against AXA Equitable Life Insurance Company seeking the return of billions of dollars in premiums;

- Defending Merck and Pfizer in securities fraud litigation concerning the health risks posed by blockbuster pain medications;

- Representing Citigroup in disputes relating to residential mortgage-backed securities;

- Overturning on appeal a $340 million jury verdict against Becton Dickinson in an antitrust and false advertising matter;

- Achieving dismissal of numerous putative class actions brought against Airbnb under New York law, as well as representing Airbnb in connection with an investigation by the New York Attorney General;

- Recouping millions of dollars on behalf of a defrauded private equity fund in connection with investments in the hospitality industry;

- Representing Oaktree Capital Management in proceedings related to its investments in a bankrupt shipping company;

- Defending a credit ratings agency against allegations concerning manipulation of the market for auction rate securities;

- Counselling companies on antitrust issues in connection with their dealings with competitors; and

- Representing numerous companies in employment litigation and intellectual property disputes.*

In addition, Mr. Nadler has also maintained an active *pro bono* practice. Mr. Nadler is currently representing a journalist in pending state and federal court matters relating to his unlawful arrest and detention in connection with his coverage of a public demonstration. In addition, Mr. Nadler has a particular expertise in LGBTQ rights litigation and has worked on multiple matters before the United States Supreme Court, including representing the plaintiff in the landmark case of *Windsor v. United States*, which held that a federal law refusing to recognize same-sex marriages was unconstitutional. Mr. Nadler has obtained favorable verdicts in several *pro bono* trials, including a three-week trial in the Southern District of New York, and was awarded Sanctuary for Family's 2017 Above and Beyond Award for "outstanding *pro bono* representation and advocacy" in recognition of his successful efforts as first-chair trial counsel. Mr. Nadler currently serves on advisory committees for the Riverside Park Conservancy and the Association for a Better New York.

Prior to joining Gibson Dunn, Mr. Nadler served as a law clerk to Chief Judge Robert A. Katzmann of the Second Circuit Court of Appeals and to Judge Paul A. Crotty of the Southern District of New York. He earned his law degree *magna cum laude* from New York University in 2011, where he was elected to the Order of the Coif, received the Maurice Goodman Memorial Prize for Outstanding Scholarship and Character, and was chosen as a Housing and Urban Policy Scholar. Mr. Nadler received his bachelor's degree with honors from Columbia University in 2007. He is admitted to practice in the State of New York, the Second Circuit Court of Appeals, and the United States District Courts for the Southern District of New York and the Northern District of New York.

*List includes matters handled by Mr. Nadler prior to joining Gibson Dunn.

# Nicole Lee



1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306 USA
Tel +1 202.887.3717
NLee@gibsondunn.com

*Nicole (JungEun) Lee is an associate in Gibson, Dunn & Crutcher's Washington, D.C. office.  She currently practices in the firm's Litigation Department, focusing on white collar criminal defense and civil litigation.  Ms. Lee has represented clients in matters arising under the Foreign Corrupt Practices Act and U.S. securities regulations, as well as complex commercial litigation and trademark disputes.*

Before joining the firm, Ms. Lee was a litigation associate at a national law firm's Washington, D.C. office and worked on a variety of white collar defense matters and complex civil litigation, including but not limited to SEC and DOJ investigations, internal investigations, compliance policies & procedures review, securities litigation, commercial disputes, and environmental litigation.

Ms. Lee graduated *cum laude* from Northwestern University School of Law in 2014.  While in law school, Ms. Lee won an *Honorable Mention for Best Oralist* and an *Honorable Mention for Best Memorandum* in the Willem C. Vis International Arbitration Moot Court.  She also served as a senior editor for the *Northwestern Journal of International Law and Business*.  Ms. Lee earned her Bachelor of Law degree from Fudan University in Shanghai, China.

Prior to attending law school, Ms. Lee worked for a Korean conglomerate in Seoul, Korea for several years.  She is fluent in Korean, Mandarin Chinese, and English.