MICHAEL G. YODER (SB 83059)
myoder@omm.com
MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>       Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG'S NOTICE OF MOTION AND MOTION (A) FOR ENTRY OF JUDGMENT AS TO NETLIST'S FIRST AND SECOND CLAIMS FOR RELIEF, AND (B) AS TO NETLIST'S THIRD CLAIM FOR RELIEF, FOR ENTRY OF JUDGMENT OR, IN THE ALTERNATIVE, TRIAL ON THE THIRD CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    February 14, 2022<br>Time:   9:00 a.m. |

1   **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2       PLEASE TAKE NOTICE that on February 14, 2022 at 9:00 a.m., or as soon

3   thereafter as this matter may be heard in the above entitled Court, before the

4   Honorable Mark C. Scarsi, United States District Judge for the Central District of

5   California, Western Division, located at 350 W. 1st Street, Los Angeles, CA 90012,

6   in Courtroom 7C, Defendant Samsung Electronics Co., Ltd. ("Samsung") will, and

7   hereby does, move the Court pursuant to Rules 54, 58, and 59 of the Federal Rules

8   of Civil Procedure, and the Court's inherent authority to amend its prior

9   interlocutory orders, as well as Central District of California Court Local Rule 7-18

10  if applicable, for an order (1) entering judgment in Samsung's favor and against

11  Netlist on Netlist's first claim for relief in Netlist's First Amended Complaint (for

12  damages resulting from Samsung's alleged breach of its supply obligation under

13  Section 6.2 of the Joint Development and License Agreement ("JDLA")), (2)

14  entering judgment in Samsung's favor and against Netlist on Netlist's second claim

15  for relief in Netlist's First Amended Complaint (for damages resulting from

16  Samsung's alleged breach of Section 3.1 of the JDLA by withholding $1.32 million

17  of an $8 million fee due to Netlist and paying it to the Korean Tax Authority and

18  Samsung's alleged breach of Section 3.2 of the JDLA by not reasonably cooperating

19  with Netlist in seeking a refund of the tax withholding), and (3) vacating the portion

20  of the Court's prior summary judgment order (Dkt. 186 at 8:13–14) in Netlist's

21  favor on Netlist's third claim for relief in the First Amended Complaint (a request

22  for a declaration that Netlist validly terminated the JDLA including the patent

23  license granted therein) and entering judgment in Samsung's favor and against

24  Netlist on Netlist's third claim for relief or, in the alternative, setting a trial on

25  Netlist's third claim for relief.  Samsung has concurrently lodged a copy of its

26  proposed judgment.

27      This Motion is based on this Notice, the accompanying Memorandum of

28  Points and Authorities, Declaration of Marc F. Feinstein, Request for Judicial

2

Notice, all pleadings and records on file in this action, including without limitation the jury's verdict rendered in this action on December 3, 2021, and such other evidence and argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 3, 2022.

DATED:  January 10, 2022          O'MELVENY & MYERS LLP


By:  ___/s/ Michael G. Yoder___
                    Michael G. Yoder
          Attorneys for Defendant Samsung
          Electronics Co., Ltd.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................. 9

II. BACKGROUND ................................................................................. 10

    A.  Netlist's Complaint and the Court's Summary Judgment Order ........ 10

    B.  Final Pre-Trial Conference ................................................................. 13

    C.  Trial .................................................................................................... 14

III. ARGUMENT ..................................................................................... 15

    A.  The Court Should Enter Judgment In Samsung's Favor on Netlist's First Claim For Relief .................................................... 15

    B.  The Court Should Enter Judgment in Samsung's Favor on Netlist's Second Claim for Relief ...................................................... 18

    C.  The Court Should Enter Judgment in Samsung's Favor on Netlist's Third Claim for Relief ........................................................ 22

        1.  Because Netlist's Breach of Contract Claims Fail, There Was No Cognizable Breach ........................................ 24

        2.  The Jury's Verdict Establishes That Any Breach by Samsung of Section 6.2 Was Not Material .............................. 25

        3.  Any Breach of Section 3.1 by Samsung Also Was Not Material .......................................................................... 26

    D.  In the Alternative the Court Should Order a Trial on Netlist's Third Claim for Relief ........................................................ 28

    E.  Samsung Reiterates For Appellate Preservation Purposes Its Position That It Did Not Waive Any Affirmative Defenses, and That the Court Should Have Denied Netlist's and Granted Samsung's Summary Judgment Motions ........................................... 32

IV. CONCLUSION ................................................................................... 33

**Cases**

*Allergan Inc. v. Athena*,
    No. SACV 08-427, 2012 WL 12898344 (C.D. Cal. May 24, 2012)...................23

*American List Corporation v. U.S. News & World Report*,
    549 N.E.2d 1161 (N.Y. 1989).................................................................21

*American Railcar Industries, Inc. v. Gyansys, Inc.*
    No. 14-CV-8533 (JSR), 2017 WL 11501888 (S.D.N.Y. Nov. 14,
    2017), *aff'd,* 764 F. App'x 57 (2d Cir. 2019) ........................................21

*Aristocrat Leisure Ltd. V.. Deutsche Bank Trust Co.*,
    618 F. Supp. 2d 280 (S.D.N.Y. 2009) ......................................19, 21, 22

*Ashwood Cap. Inc. v. OGT Mgmt., Inc.*,
    948 N.Y.S.2d 292 (N.Y. App. Div. 2012) ..............................................24

*Barkley, Inc. v. Gabriel Bros.*, Inc.,
    829 F.3d 1030 (8th Cir. 2016) ...............................................................32

*Bear, Stearns Funding, Inc. v Interface Group-Nevada, Inc.*,
    361 F. Supp. 2d 283 (S.D.N.Y. 2005) ....................................27, 28, 29

*Biotronick A.G. v. Conor Medsystems Ireland, Ltd.*,
    11 N.E.3d 676 (N.Y. 2014).......................................................19, 20, 22

*Bucy v. Nevada Const. Co.*,
    125 F.2d 213 (9th Cir. 1942) ...........................................................15, 23

*Callanan v. Powers*,
    199 N.Y. 268 (1910) ...............................................................................25

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) ................................................................23

*Conant v. Alto 53, LLC*,
    No. 602408/2008, 2008 WL 5263810 (N.Y. Sup. Ct. Dec. 10, 2008).................31

*D.K. Prop. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, PA,
    92 N.Y.S.3d 231 (N.Y. App. Div. 2019) ..............................................21

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011) ....................................................................16

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*,
   872 F. Supp. 103 (S.D.N.Y. 1995) ........................................................25

*ERE LLP v. Spanierman Gallery*, LLC,
   942 N.Y.S.2d 472 (N.Y. App. Div. 2012)................................16, 22, 26

*Found. for Seacoast Health v. Hosp. Corp. of Am.*,
   71 A.3d 736 (N.H. 2013) ......................................................................25

*Freund v. Wash. Square Press, Inc.*,
   314 N.E.2d 419 (N.Y. 1974).................................................................18

*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset, Mgt.*, L.P.,
   850 N.E.2d 653 (N.Y. 2006).................................................................29

*Hamilton v. Water Whole Int'l Corp.*,
   302 Fed. Appx. 789 (10th Cir. 2008)....................................................17

*Hodges v. Cusanno*,
   941 N.Y.S.2d 772 (N.Y. App. Div. 2012) ............................................18

*Holland Loader Co., LLC v. FLSmidth A/S*,
   313 F. Supp. 3d 447 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d
   Cir. 2019) ..............................................................................................16

*Huss v. King Co., Inc.*,
   338 F.3d 647  (6th Cir. 2003) ...............................................................23

*In re 4Kids Ent.*,
   463 B.R. 610 (Bankr. S.D.N.Y 2011)....................................................31

*Kamco Supply Corp. v. On the Right Track*,
   49 N.Y.S.3d 721 (N.Y. App. Div. 2017) ..............................................31

*Kelly v. City of Oakland*,
   198 F.3d 779 (9th Cir. 1999) ...............................................................18

*Kenford Co. Inc. v. County of Erie*,
   73 N.Y.2d 312 (N.Y. 1989) .................................................................19

*Lee v. Wright*,
   485 N.Y.S.2d 543 (N.Y. App. Div. 1985)............................................30

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lexington 360 Assoc. v. First Union Nat. Bank of North Carolina*,
    651 N.Y.S.2d 490 (N.Y. App. Div. 1996) ............................................................. 16

*Macarthur Prop. I, LLC v. Galbraith*,
    No. 651504/2018, 2018 WL 3412830 (N.Y. Sup. Ct. July 13, 2018) .................. 30

*Metro. Life Ins. Co. v Trujillo*,
    No. 2:18-cv-09577-ODW (JPRx), 2020 WL 2838528 (C.D. Cal.
    June 1, 2020) ...................................................................................................... 23

*Miami Subs Corp. v. Murray Fam. Tr. and Kenneth Dash P'ship*,
    703 A.2d 1366 (N.H. 1997) ................................................................................ 26

*Pierce Cnty. Hotel Employees & Rest. Employees Health Trust v. Elks
    Lodge, B.P.O.E. No. 1450*,
    827 F.2d 1324 (9th Cir.1987) ............................................................................. 17

*PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*,
    73 F. Supp. 3d 358 (S.D.N.Y. 2014) ................................................................... 20

*Process Am. Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016) ..................................................................... 25, 26, 28

*Proper v. State Farm Mut. Auto Ins. Co.*,
    882 N.Y.S.2d 340 (N.Y. App. Div. 2009) ........................................................... 16

*Qube Films Ltd v. Padell*,
    No. 13-CV-8405 (AJN), 2016 WL 881128 (S.D.N.Y. Mar. 1, 2016) .................. 21

*Reading Int'l, Inc. v. Mululani Grp. Ltd.*,
    No. 13-00133 JMS-KSC, 2018 WL 2392500 (D. Haw. May 25,
    2018) ................................................................................................................... 25

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000) .......................................................................... 19, 20

*Septembertide Publishing v. Stein and Day, Inc.*,
    884 F.2d 675 (2d Cir. 1989) ............................................................................... 27

*Shred-It USA, Inc. v. Bartscher*,
    No. CV 02-4082 (JO), 2005 WL 2367613 (E.D.N.Y., Sept. 27, 2005) .............. 17

*Soltero v. Swire Dev. Sales, Inc.*,
    485 F. App'x 377 (11th Cir. 2012) ...................................................................... 18

7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Stassa v Stassa*,
   999 N.Y.S.2d 116 (N.Y. App. Div. 2014) ............................................................. 29

*Zamora v. Morphix Co., Ltd*.,
   No. 15-cv-6532 (KBF), 2018 WL 1033228 (S.D.N.Y. Feb. 21,
   2018), aff'd 764 Fed. App'x 96 (2d Cir. 2019) .............................................. 24, 26

**Rules**

Fed. R. Civ. P. 54(c) .......................................................................................... 15

Fed. R. Civ. P. 58(b)(2)(B) ................................................................................. 15

Fed. R. Civ. P. 58(d) .......................................................................................... 15

Fed. R. Civ. P. 59(a) .......................................................................................... 28

Fed. R. Civ. Pro. 51(d) ....................................................................................... 17

**Other Authorities**

N.Y. Pattern Jury Instr., Civil, 4:20 ................................................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The Court should enter judgment in Samsung's favor on all three of Netlist's claims for relief.

The jury's recent verdict demonstrates that Netlist's first claim for relief—for damages resulting from Samsung's alleged breach of its supply obligation under Section 6.2 of the Joint Development and License Agreement ("JDLA")—fails as a matter of law.  Damage as a result of a contract breach is an essential element of a contract claim under New York law.  Yet Netlist failed to prove that it suffered any compensable harm as a result of Samsung's alleged breach of Section 6.2.  After a three-day trial, the jury found that Netlist failed to prove that "it suffered damages as a result of Samsung's failure to fulfill Netlist's orders for NAND and DRAM products in breach of Section 6.2 of the JDLA."  (Dkt. 276, Jury Verdict.)  Although Netlist now asks the Court to award nominal damages on this claim, Netlist forfeited any right to nominal damages by not seeking it at trial, and it is not entitled to such damages in any event.  Therefore, Samsung is entitled to judgment in its favor on the first claim for relief.

So too with Netlist's second claim for relief—for damages resulting from Samsung's alleged breach of Section 3.1 of the JDLA by withholding $1.32 million of an $8 million fee due to Netlist and paying it to the Korean Tax Authority and Section 3.2 of the JDLA by not reasonably cooperating with Netlist in seeking a refund of the tax withholding.  As to the alleged breach of Section 3.1, having received a full refund of the withheld amount, Netlist claimed as its sole damages $427,015.60 in fees for third-party tax consulting services to obtain the refund, but its damages claim is barred by the consequential damages limitation in Section 12.5 of the JDLA and the Court's summary judgment order.  As to the alleged breach of Section 3.2, Netlist abandoned that claim prior to trial.  Because Netlist failed to establish any compensable damages for breach of Sections 3.1 and 3.2 of the JDLA,

9

1   Samsung is also entitled to judgment in its favor on the second claim for relief.

2   Given that Netlist did not suffer any compensable harm on any of its breach

3   claims, the Court should also vacate its prior summary judgment ruling granting

4   Netlist's third claim—a request for a declaration that Netlist validly terminated the

5   JDLA including the patent license granted therein.  That ruling was based on the

6   finding that Samsung breached the JDLA and that its breaches were material.  But

7   for the reasons just explained, Netlist has not even shown that Samsung breached

8   the contract, because under New York law mere violation of a contractual provision,

9   standing alone, does not constitute a "breach," and it certainly has not shown that

10  any technical, harmless breach was material.  The Court should therefore enter

11  judgment in Samsung's favor on Netlist's third claim for relief.  And even if the

12  Court declines to enter judgment in Samsung's favor, it is now at the very least clear

13  that disputes of fact preclude judgment for Netlist on its third claim for relief, and

14  the Court should order that a trial be held limited to the third claim for relief to

15  resolve those disputed issues.

16  **II.    BACKGROUND**

17  **A.    Netlist's Complaint and the Court's Summary Judgment Order**

18  Netlist's First Amended Complaint (Dkt. 18-2 ("FAC")) asserted three claims

19  for relief arising out of Samsung's alleged breaches of the JDLA, which Netlist and

20  Samsung entered into on November 12, 2015.  Netlist and Samsung cross-moved for

21  summary judgment on August 16, 2021, and on October 14, 2021, the Court granted

22  in part and denied in part the parties' motions.  (Dkt. 186 ("MSJ Order").)

23  ***Claim 1.***  Netlist alleged that Samsung breached Section 6.2 of the JDLA

24  when, beginning in 2017, Samsung declined to fulfill Netlist's requests for NAND

25  and DRAM memory chip products.  (FAC ¶¶ 25–29; MSJ Order at 4:20–24.)

26  According to Netlist, the JDLA required Samsung "to supply NAND and DRAM

27  products to Netlist on Netlist's request at a competitive price."  (MSJ Order at 4:1–

28  3.)  Netlist alleged that Samsung's failure to fulfill Netlist's requests resulted in

10

1    damages because Netlist was required to "purchase NAND and DRAM products at

2    higher prices in the secondary market" and because it "lost business opportunities

3    and profits it otherwise would have earned had Samsung performed."  (FAC ¶ 14.)

4         The Court concluded at summary judgment that Netlist had "established the

5    existence of a contract, its performance of the contract, and Samsung's breach of the

6    supply provision of the contract.  Partial summary judgment in Netlist's favor on

7    these elements is appropriate.  Damages must be proven at trial."  (MSJ Order at

8    15:7–12.)

9         *Claim 2.*  In its second claim for relief, Netlist alleged that Samsung breached

10   Section 3.1 of the JDLA by remitting $1.32 million of an $8 million fee to the

11   Korean Tax Authority, rather than paying the entire fee to Netlist.  (FAC ¶¶ 30–34.)

12   Section 3.1 of the JDLA required Samsung to pay Netlist an $8 million fee to

13   Netlist, (JDLA § 3.1), and Section 3.2 of the JDLA permitted Samsung to withhold

14   taxes to the extent "required by applicable law."  (Decl. of M. Feinstein in Supp. of

15   Samsung's Motion, filed concurrently ("Feinstein Decl.") Ex. D ("JDLA") § 3.2.)

16   Netlist alleged that remitting $1.32 million of the $8 million fee was not "required

17   by applicable law," and therefore Samsung's tax withholding breached Section 3.1

18   of the agreement.  (FAC ¶ 16.)  Further, Netlist alleged that it "suffered damages at

19   least in the amount of $1,320,000 . . . ."  (*Id.* ¶ 34.)  Netlist also alleged that

20   Samsung breached Section 3.2 of the JDLA by failing to reasonably cooperate with

21   Netlist in seeking a refund of the $1.32 million tax payment.  (*Id.* ¶¶ 32.)  Section

22   3.2 of the JDLA provides that, in the event Samsung withheld taxes, Samsung

23   would "reasonably cooperate with Netlist in any lawful efforts to claim a credit or

24   refund or exemption with respect to any such withholding taxes."  (JDLA § 3.2.)

25        At summary judgment, the Court concluded that because Korean Tax

26   Authority ultimately determined that "Samsung was not required by applicable law

27   to withhold," "Samsung breached by withholding."  (MSJ Order at 16:7–9.)  But the

28   Court found that there was a genuine dispute of material fact over whether Samsung

1    had reasonably cooperated with Netlist in seeking a refund because the evidence
2    showed that a "reasonable jury could return a verdict on the breach element in either
3    party's favor." (*Id.* at 16:20–21.) The Court therefore granted summary judgment
4    in Netlist's favor "as to all elements but damages for Netlist's second claim for
5    breach of contract only as to Netlist's theory that Samsung breached by failing to
6    pay the full NRE fees." (*Id.* at 22:10–12.)

7    **Claim 3.** Netlist also sought a declaration that Netlist had validly terminated
8    the JDLA under Section 13.2. (FAC ¶¶ 35–41.) Section 13.2 provides that a party
9    "shall have the right to terminate this Agreement upon written notice to a Party if []
10   such party is in material breach of this Agreement and it is not cured within thirty
11   (30) days period [sic] from the other Party's written demand . . . ." (JDLA § 13.2.)
12   Netlist alleged that Samsung had materially breached the JDLA by not fulfilling
13   Netlist's requests for NAND and DRAM memory products and by paying to the
14   Korean Tax Authority a portion of the fee. (FAC ¶ 20.) Netlist further alleged that
15   on May 27, 2020 it notified Samsung of its purported breaches of the JDLA and that
16   it was exercising its right to terminate, and that on July 15, 2020, Netlist issued a
17   written notice to Samsung that the JDLA had been terminated pursuant to Section
18   13.2. (*Id.* ¶¶ 19–22.)

19   The Court granted summary judgment in Netlist's favor on the ground that
20   Samsung's breaches of Sections 6.2 and 3.1 of the JDLA were material and Netlist
21   had complied with the JDLA's termination provision. Citing cases applying New
22   York's materiality standard for contract breach claims, the Court found that
23   Samsung's breach of Section 6.2's supply obligation was material because Section
24   6.2 was "an integral part of the parties' agreement, one that Netlist valued highly, as
25   demonstrated by its negotiation and post-execution conduct." (MSJ Order at 19:16–
26   19.) The Court found that Samsung's tax withholding was a material breach of
27   Section 3.1 based on the Court's determination that Samsung failed "to pay a
28   significant chunk of the NRE fees." (*Id.* at 19:25–27.) The Court found that Netlist

12

1  had complied with the contract's termination provision since "[o]n May 27, 2020

2  Netlist sent a letter to Samsung in the manner specified in § 15 [of the JDLA]

3  alleging material breach and demanding Samsung to cure" and then "sent a letter

4  terminating the JDLA on July 15, 2020." (*Id.* at 18:20–27.)  The Court also found

5  that the contract's no-waiver provision (*see* JDLA § 16.2) precluded a finding that

6  Netlist waived the right to terminate even though Netlist "had not acted on the

7  purported breach for years." (MSJ Order at 20:17–24.)

8      Finally, the Court agreed with Samsung that Netlist could not recover

9  consequential damages under the JDLA, which provides that "[i]n no event shall []

10 either party be liable for any special, incidental or consequential damages in

11 connection with or arising out of this agreement . . . ." (JDLA § 12.5; MSJ Order at

12 22–25.)  The Court found that this "contractual limitation on consequential damages

13 may not be pierced here," and Samsung is entitled to "summary judgment

14 precluding Netlist from recovering consequential damages as a remedy for its

15 breach claims." (MSJ Order at 21:22–25.)

16     **B.    Final Pre-Trial Conference**

17     Prior to the final pre-trial conference, the Court ordered the parties to submit

18 briefs addressing whether "the Court's summary judgment order adjudicated

19 Samsung's [affirmative] defenses" of acquiescence, estoppel, and waiver and

20 whether "the Court may grant summary judgment on any of Samsung's defenses" at

21 the final pre-trial conference. (Dkt. 227, Minute Order Requiring Briefing on

22 Affirmative Defenses.)  Netlist never moved for summary judgment on those

23 defenses, but the Court "deem[ed] Samsung's acquiescence, estoppel, and waiver

24 affirmative defenses abandoned" because Samsung did not raise them in opposition

25 to Netlist's motion for summary judgment, ruling that Samsung "may not present

26 these defenses at trial." (Dkt. 243, Order re: Motions *In Limine* and Proceedings at

27 Final Pretrial Conf. at 6:12–14.)  The only affirmative defense the Court permitted

28 Samsung to raise at trial was Netlist's failure to mitigate any damages.

13

### C.   Trial

Shortly before trial, Netlist withdrew part of its second claim for relief—that Netlist suffered damages due to Samsung's alleged breach of Section 3.1 of the JDLA because Samsung failed to "reasonably cooperate with Netlist" in Netlist's efforts to claim a refund of Samsung's payment to the Korean tax authorities.  (Dkt. 246 (Netlist's Notice Limiting Asserted Count Two (Breach of Contract).)  In addition, on the first day of trial, the Court ruled that the other part of Netlist's second claim for relief—that Netlist suffered damages due to Samsung's alleged breach of Section 3.1 of the JDLA by withholding $1.32 million in taxes—would be decided by the Court.  (*See* Feinstein Decl., Ex. A, Trial Tr. Day 1, a.m. at 7:13–13:11.)  Having already received a complete refund of the $1.32 million tax withholding, Netlist conceded that the only damages it was seeking in support of its second claim for relief was the $427,015.60 Netlist paid to PricewaterhouseCoopers ("PwC") for assisting Netlist in obtaining a refund from the Korean Tax Authority of the withheld funds.  (*Id.* at 11:1–12:8; *id.* Ex. B, PwC invoice to Netlist in the amount of $427,051.60.)  Because there was no dispute over the amount of the fees and the only issue to be resolved was legal—*i.e.*, whether those fees were consequential damages barred by Section 12.5 of the JDLA—the Court found that "this is going to be an issue for the Court, we will hear it outside the presence of the jury."  (*Id.* at 13:5–13:11.)

Thus, the only issue at trial was whether Netlist suffered harm as a result of Samsung's breach of the supply obligation under Section 6.2 of the JDLA.  Following a three-day trial, the jury returned a verdict in Samsung's favor.  In response to the question, "Did Netlist prove that it suffered damages as a result of Samsung's failure to fulfill Netlist's orders for NAND and DRAM products in breach of Section 6.2 of the JDLA?", the jury answered, "No."  (Dkt. 276, Jury Verdict.)

After trial, the Court ordered the parties to file post-trial motions and a joint

14

proposed judgment by January 10, 2022. (Dkt. 281.) The Court clarified that post-trial motions contemplated by the Court should include "any Rule 50(b) and 59 motions." (Dkt. 287.) Prior to filing the instant Motion, Samsung exchanged with Netlist proposed forms of judgment and met and conferred regarding the grounds raised in the instant Motion. As the parties could not reach agreement on the judgment that should be entered in this action, Samsung now files this Motion. (Feinstein Decl. ¶ 6.) Samsung's proposed judgment is being filed concurrently herewith along with a proposed order granting this Motion and ordering entry of judgment in conformity therewith.

## III.   ARGUMENT

The Court should enter judgment in Samsung's favor on all three of Netlist's claims for relief. A final judgment "should grant the relief to which each party is entitled . . . ." Fed. R. Civ. P. 54(c). A party may "request that judgment be set out in a separate document as required by Rule 58(a)." Fed. R. Civ. P. 58(d). The court must "promptly approve the form of judgment, which the clerk must promptly enter, when . . . the court grants other relief not described in this subdivision (b)." Fed. R. Civ. P. 58(b)(2)(B). Judgment should be entered under these Rules in Samsung's favor on Netlist's first and second claims for relief. Under the Court's inherent authority to amend or vacate its prior orders, *see Bucy v. Nevada Const. Co.*, 125 F.2d 213, 216–17 (9th Cir. 1942), and Rule 54(b), the Court should also vacate the portion of its order granting summary judgment in Netlist's favor on Netlist's third claim for relief, and enter judgment in Samsung's favor. Alternatively, the Court should order that Netlist's third claim be tried to a jury pursuant to Rule 54 or Rule 59 because, at the very least, issues of material fact make clear that summary judgment was improper.

### A.   The Court Should Enter Judgment In Samsung's Favor on Netlist's First Claim For Relief

The Court should enter judgment in Samsung's favor on Netlist's first claim

1    for relief.  As the Court instructed the jury, the essential "elements of a cause of

2    action for breach of contract are (1) formation of a contract between plaintiff and

3    defendant, (2) performance by plaintiff, (3) defendant's failure to perform, (4)

4    resulting damage."  (Dkt. 272, Jury Instructions at 30); *see also Diesel Props S.r.l. v.*

5    *Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011).  This Court granted

6    summary judgment for Netlist on the first three elements.  But the jury found as to

7    the fourth that Netlist did not "prove that it suffered damages as a result of

8    Samsung's failure to fulfill Netlist's orders for NAND and DRAM products in

9    breach of Section 6.2 of the JDLA":

10   QUESTION NO. 1:

11   Did Netlist prove that it suffered damages as a result of Samsung's failure to fulfill

12   Netlist's orders for NAND and DRAM products in breach of Section 6.2 of the JDLA?

13   _____ Yes      ⟋ No

14   (Dkt. 276, Jury Verdict.)  Samsung is thus entitled to judgment on Netlist's first

15   claim because "[f]ailure to prove the essential element of damages is fatal to a cause

16   of action for breach of contract."  *Proper v. State Farm Mut. Auto Ins. Co.*, 882

17   N.Y.S.2d 340, 341 (N.Y. App. Div. 2009).[1]  Judgment should therefore be entered

18   in Samsung's favor.  *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d

19   447, 480 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d Cir. 2019) (finding that even

20   though plaintiff proved defendant breached "its duties under the IP Agreement, the

21   Court is constrained to find in favor of Defendant because Plaintiff has failed to

22

23   [1] *See also ERE LLP v. Spanierman Gallery*, LLC, 942 N.Y.S.2d 472, 473–74 (N.Y.

24   App. Div. 2012) (a claim for breach of contract is "fatally deficient if 'it does not
     demonstrate how the . . . alleged breach of the agreement caused . . . any injury'");

25   *Lexington 360 Assoc. v. First Union Nat. Bank of North Carolina*, 651 N.Y.S.2d

26   490, 492 (N.Y. App. Div. 1996) ("Where a party has failed to come forward with
     evidence sufficient to demonstrate damages flowing from the breach alleged and

27   relies, instead, on wholly speculative theories of damages, dismissal of the breach of

28   contract claim is in order.").

1  prove by a preponderance of the evidence that it suffered damages as a result of

2  Defendant's breach").[2]

3      Netlist contends that the Court should disregard the jury's no-damages

4  verdict, award Netlist nominal damages, and enter judgment in Netlist's favor on the

5  first claim for relief.  The Court should reject Netlist's position.  As a threshold

6  matter, Netlist forfeited any claim for nominal damages.  It did not seek nominal

7  damages in the Final Pretrial Conference Order.  (Dkt. 244 at 3:11–18 (Netlist's

8  statement of its claims seeking only "General damages that Netlist suffered"); *id.* at

9  19:2–5 ("having specified the foregoing issues remaining to be litigated, this Final

10 Pretrial Order shall supersede the pleadings, and govern the course of the this

11 case"); *Pierce Cnty. Hotel Employees & Rest. Employees Health Trust v. Elks*

12 *Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1329 (9th Cir.1987) ("issues not

13 preserved in the pretrial order are eliminated from the action"); *Hamilton v. Water*

14 *Whole Int'l Corp*., 302 Fed. Appx. 789, 797 (10th Cir. 2008) ("claims, issues, or

15 theories of damages not included in the pretrial order are waived even if they

16 appeared in the complaint").  Nor did it seek nominal damages at trial or request a

17 jury instruction on nominal damages, despite an available instruction in the New

18 York Pattern Jury Instructions.  *See* N.Y. Pattern Jury Instr., Civil, 4:20; (*see* Dkt.

19 223, Joint Proposed Jury Instructions; Dkt. 226, Joint Disputed Jury Instructions;

20 Dkt. 254, Revised Joint Disputed and Undisputed Jury Instructions; Dkt. 272, Jury

21 Instructions); Fed. R. Civ. P. 51(d) (a party "may assign as error a failure to give an

22 instruction, if that party properly requested it and . . . also properly objected"); *Kelly*

23 *v. City of Oakland*, 198 F.3d 779, 785 (9th Cir. 1999) (in a case where party did not

24

25 [2] *See also Shred-It USA, Inc. v. Bartscher*, No. CV 02-4082 (JO), 2005 WL

26 2367613, at *16 (E.D.N.Y., Sept. 27, 2005) (directing entry of judgment in

   defendants favor because plaintiff "failed to prove actual damages resulting from

27 [defendant's] breach of contract and therefore cannot prevail on its first cause of

28 action notwithstanding its success in proving the breach itself").

present a defense until after trial, the court held that a party "in a civil action cannot wait until the last brief before the district court" to present a theory); *Soltero v. Swire Dev. Sales, Inc.*, 485 F. App'x 377, 380 (11th Cir. 2012) (plaintiff "waived any claim to nominal damages by not requesting a jury instruction on nominal damages and not asking that nominal damages be included on the verdict form"). Accordingly, for at least three separate and independent reasons, Netlist abandoned or waived any claim for nominal damages and cannot now obtain nominal damages.

Even if Netlist had not abandoned or waived any claim for nominal damages, though, the jury's determination that Netlist did not suffer any injury as a result of the alleged breach precludes an award of nominal damages.  Nominal damages may not be awarded unless, unlike here, the plaintiff establishes that it suffered some injury but is unable to prove at trial the amount of that injury with sufficient certainty.  *See, e.g.*, *Freund v. Wash. Square Press, Inc.*, 314 N.E.2d 419, 422 (N.Y. 1974) ("the amount of royalties plaintiff would have realized was not ascertained with adequate certainty and, as a consequence, plaintiff may recover nominal damages only"); *Hodges v. Cusanno,* 941 N.Y.S.2d 772, 774 (N.Y. App. Div. 2012) ("Since the proof as to damages incurred in repairing the lawn was, at best, speculative, we reduce the award for such aspect of the breach of contract to nominal damages of one dollar.").  But, here, the jury did not merely conclude that Netlist failed to prove the amount of damages it suffered; rather, the verdict was that Netlist failed to prove that it suffered any damages at all as a result of any breach. (See Dkt. 276 Verdict Form.)  That verdict means that Netlist failed to prove an essential element of its claim, and requires judgment for Samsung on the first claim.

## B.     The Court Should Enter Judgment in Samsung's Favor on Netlist's Second Claim for Relief

The Court should also enter judgment in Samsung's favor on Netlist's second claim for relief.  Netlist's only unabandoned theory of recovery under its second claim for relief is that Samsung breached Section 3.1 of the JDLA because, while

18

the JDLA permitted Samsung to withhold taxes "required by applicable law," the Korean Tax Authority determined that the tax withholding was not required and Netlist was entitled to a refund of the $1.32 million.  Because Netlist received a full refund of the $1.32 million tax payment, the only damages that Netlist sought were $427,051.60 in professional fees it paid to PwC to assist Netlist in seeking a refund and pre-verdict interest on that amount.  (Feinstein Decl. Ex. A, Trial Tr. Day 1, a.m. at 11:1–12:8; *id.* Ex. B, PwC invoice to Netlist in the amount of $427,051.60.) But the JDLA bars Netlist from recovering its professional fees under Section 12.5, which provides, "[i]n no event shall [] either party be liable for any special, incidental or consequential damages in connection with or arising out of this agreement, even if the other party has been advised of the possibility of such damages . . . ."  (JDLA § 12.5.)  In granting in part Samsung's motion for summary judgment, the Court ruled that this provision was enforceable and that Netlist was barred from "recovering consequential damages as a remedy for its breach claims." (MSJ Order at 21:24–26.)

The PwC fees Netlist seeks are consequential damages and, thus, barred by Section 12.5 of the JDLA.  A plaintiff "is seeking general damages when he tries to recover the value of the very performance promised." *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000).  General damages include, for example, "money that the breaching party agreed to pay under the contract." *Biotronick A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014).  "Once the fact of damages is established, a plaintiff is entitled to the general damages that are the natural and probable consequence of the breach." *Aristocrat Leisure Ltd. V.. Deutsche Bank Trust Co.*, 618 F. Supp. 2d 280, 292 (S.D.N.Y. 2009) (citing *Kenford Co. Inc. v. County of Erie*, 73 N.Y.2d 312, 319 (N.Y. 1989)).

Consequential damages, in contrast, "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." *Schonfeld*, 218 F.3d at 176.

19

Consequential damages are "one step removed from the naked performance promised by the defendant." *PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 374 (S.D.N.Y. 2014).

Here, Netlist is not suing for the $1.32 million fee that Samsung withheld and paid to the Korean Tax Authority in 2015—"the very performance promised" under Section 3.1 of the JDLA. *See Schonfeld*, 218 F.3d at 175; *Biotronick A.G.*, 80511 N.E.3d at 680 (general damages are the "money that the breaching party agreed to pay under the contract"). Netlist already obtained a full refund of that amount plus interest from the Korean Tax Authority. Netlist is instead suing for *additional costs*, in the form of professional fees, it voluntarily incurred for services by PwC to assist it in obtaining the refund. Those additional costs are consequential damages because they are not damages for the value of the promised performance, but "one step removed" from such damages. *See PNC Bank*, 73 F. Supp. 3d at 374. Accordingly, the JDLA's bar on consequential damages does not allow Netlist to recover the costs it incurred in seeking a refund.

Under New York law, fees resulting from a defendant's breach for failure to deliver payments or services are consequential damages where, as here, the fees were not the bargained-for value of the promised performance. For example, in *PNC Bank*, PNC sued its mortgage software provider after the software failed to timely deliver legally required mortgage disclosures to the bank's borrowers. *Id.* at 365-66. The bank hired KPMG to audit the disclosures to determine the number of late disclosures and calculate a proposed refund amount. *Id.* at 373. The court found that the audit fees that the bank paid were consequential damages and barred by a consequential damages waiver, explaining that these fees were not damages for the "value of the very performance promised." *Id.* at 373–374.

*American Railcar Industries, Inc. v. Gyansys, Inc.* is another example where consulting or accounting fees were found to be consequential, not general, damages. There, in a breach of contract action over software that defendant failed to deliver

on time, the company sought damages stemming from the delayed delivery,
including fees paid to a consulting firm "to assess and remediate" defendant's
breach.  No. 14-CV-8533 (JSR), 2017 WL 11501888, at *15–16 (S.D.N.Y. Nov. 14,
2017), *aff'd*, 764 F. App'x 57 (2d Cir. 2019).  The court found that "[a]ll the
damages" sought were "consequential in nature" because the company was "seeking
not the value of the [contracted for] software itself but rather damages for losses that
resulted from delayed receipt of that software."  *Id.* at *15; *see also D.K. Prop. Inc.
v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA*, 92 N.Y.S.3d 231, 233 (N.Y. App.
Div. 2019) (consequential damages include expenses attributable to mitigating
property damage that insured suffered when insurer failed to make timely payment
of claim); *Qube Films Ltd v. Padell*, No. 13-CV-8405 (AJN), 2016 WL 881128, *6
(S.D.N.Y. Mar. 1, 2016) (consequential damages waiver barred filmmaker from
recovering out-of-pocket expenses after movie production fell through due to
escrow agent's breach of escrow agreement, because expenses were "one step
removed" from defendant's obligation, "namely, to disburse $900,000 under the
terms of the agreement").

Cases finding damages to be general damages are also instructive as to why
the PwC fees claimed here are consequential damages.  In *American List
Corporation v. U.S. News & World Report*, U.S. News agreed to rent a mailing list
of college students from the plaintiff.  549 N.E.2d 1161, 1162 (N.Y. 1989).  U.S.
News cancelled the contract, and the court found that the plaintiff's claimed
damages were general because the plaintiff "sought only to recover moneys *which
defendant undertook to pay under the contract*, thereby assuming a definite
obligation."  *Id.* at 1163–64 (emphasis added).  In *Aristocrat Leisure Limited v.
Deutsche Bank Trust Company Americas*, a bond issuer failed to convert bonds into
stocks as required under the contract.  618 F. Supp. 2d 280, 286 (S.D.N.Y. 2009).
The court found that the bondholders' general damages included the value of the
shares the bondholders "would have received on the date of the breach" because the

value of the promised performance was the "price[] of the shares on the date the Bondholders were to receive the shares." *Id.* at 299–300. On the other hand, consequential damages included the increased cost incurred in obtaining replacement stocks on the open market because, even though those costs were "foreseeable and directly caused by [the] breach," they were "collateral to the direct breach" and therefore "properly considered consequential damages." *Id.* at 302 n.21; *see also Biotronik*, 11 N.E.3d at 681-82 (finding lost profits to be general damages because defendant "agree[ed] to pay them under the contract, as these profits flow directly from the pricing formula"). These cases involving general damages are in stark contrast to this case, where Netlist is not seeking to recover the value of money or property due, but the expense incurred as a result of the breach.

When, as here, the only damages a party asserts as a result of a breach of contract are consequential damages and thus barred by the agreement, New York law is clear that the contract-breach claim fails as a matter of law. *ERE LLP*, 942 N.Y.S.2d at 473–74 (a claim is "fatally deficient if it does not demonstrate how the . . . alleged breach of the agreement caused . . . any injury," and that element cannot be satisfied with consequential damages where the contract "specifically disclaim[s] consequential damages"). Because the only damages that Netlist seeks are consequential damages and thus barred by the JDLA, Netlist's second claim fails as a matter of law, and the Court should enter judgment in Samsung's favor.

## C.   The Court Should Enter Judgment in Samsung's Favor on Netlist's Third Claim for Relief

The Court should also vacate its prior summary judgment order and enter judgment in Samsung's favor on Netlist's third claim for relief. Changed circumstances since the Court's order now demonstrate that Samsung's alleged breaches of Sections 6.2 and 3.1 were not breaches at all, and are certainly not material breaches—a prerequisite for Netlist to terminate the JDLA and a fundamental premise of the Court's summary judgment order. Rule 54(b) provides

22

that interlocutory orders that adjudicate fewer than all claims "may be amended at any time before entry of a judgment."  District courts have long held the broad power to amend their interlocutory rulings "to deal with situations where in justice and good conscience, relief should be granted from manifest error."  *Bucy*, 125 F.2d at 217.[3]  This includes the authority to reassess an order on a "motion for summary judgment at any time before entry of final judgment," particularly if there is a subsequent, conflicting determination at trial.  *Metro. Life Ins. Co. v Trujillo*, No. 2:18-cv-09577-ODW (JPRx), 2020 WL 2838528, at *2 (C.D. Cal. June 1, 2020).  For example, in *Huss v. King Co., Inc*., the court made a liability determination on summary judgment, leaving the amount of damages to be determined at trial, but then vacated the summary judgment ruling following post-trial briefing because evidence at trial revealed that plaintiff was not entitled to any damages at all.  338 F.3d 647, 650–651 (6th Cir. 2003).  The Court should do the same here.  Samsung is entitled to judgment as a matter of law because the jury's no-damages verdict on Netlist's first claim for relief, and the fact that Netlist did not suffer any compensable damages for Samsung's breach of Section 3.1 under its second claim for relief, demonstrate that there was no material breach of the agreement.[4]

_____

[3] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001) (the power to modify interlocutory orders "in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment").

[4] While the Central District's Local Rule 7-18 permits motions for reconsideration on certain grounds such as the "emergence of new material facts or a change of law occurring after the Order was entered," L.R. 7-18, a court's "inherent authority to modify its own interlocutory orders is not subject to that standard." *Allergan Inc. v. Athena*, No. SACV 08-427, 2012 WL 12898344, at *3 (C.D. Cal. May 24, 2012).  In addition, a district court's "power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure."  *Santa Monica Baykeeper*, 254 F.3d at 886.  But even if the Court considered Samsung's request to modify its interlocutory order a motion for reconsideration pursuant to Local Rule 7-18, the jury's verdict and the fact that

1          1.    **Because Netlist's Breach of Contract Claims Fail, There Was**
2                   **No Cognizable Breach**

3          The JDLA can only be terminated "upon written notice to a Party if [] such

4    party ***is in material breach*** of this Agreement and it is not cured within thirty (30)

5    days period [sic] from the other Party's written demand . . . ."  (JDLA § 13.2

6    (emphasis added).)  Yet for the reasons explained above, there was no breach of

7    contract here, since Netlist has failed to satisfy the elements of contract breach as to

8    either of its claims for relief.  After all, the "mere violation of a contractual

9    provision, standing alone, does not constitute a 'breach' under New York law.

10   Plaintiff also must demonstrate that it suffered damages as a result of the violation."

11   *Zamora v. Morphix Co., Ltd.*, No. 15-cv-6532 (KBF), 2018 WL 1033228, at *7

12   (S.D.N.Y. Feb. 21, 2018), aff'd 764 Fed. App'x 96 (2d Cir. 2019).  And here, Netlist

13   has not suffered any damage as a result of the alleged violations.  *See supra* at III.A–

14   B.  The JDLA's termination provision must "as a rule be enforced according to its

15   terms."  *Ashwood Cap. Inc. v. OGT Mgmt., Inc.*, 948 N.Y.S.2d 292, 297 (N.Y. App.

16   Div. 2012).  Accordingly, because Netlist failed to demonstrate any legally

17   cognizable "breach" of the JDLA under New York law, the record now definitively

18   shows that Samsung was not "in material breach" of the JDLA, and Netlist's attempt

19

20   ─────────────────────

21   Netlist has not suffered any compensable damages for violation of Section 3.1 are
     "new material facts" that occurred "after the Order was entered" and that justify

22   amending the Court's summary judgment order.  L.R. 7-18(b).  Good cause exists to
     bring this motion more than 14 days after entry of the summary judgment order

23   because the jury verdict and the Court's determination that Netlist does not seek
     compensable damages for breach of Section 3.1 did not occur until more than 14

24   days after entry of the Court's summary judgment order.  L.R. 7-18 (14-day
     deadline applies "[a]bsent good cause shown").  Further, this motion was filed on

25   January 10, 2022 in accordance with the Court's schedule for filing post-trial

26   motions, which would include post-trial motions based on the jury's verdict and the

27   Court's no damages determination with respect to Section 3.1 requested by Samsung

28   herein.

to terminate the JDLA must fail.

### 2.   The Jury's Verdict Establishes That Any Breach by Samsung of Section 6.2 Was Not Material

Even if there were a technical violation of the JDLA constituting a breach, the jury's verdict requires a finding that any breach of Section 6.2 of the JDLA was immaterial as a matter of law.  Again, Netlist had the right to terminate the JDLA only if Netlist notified Samsung that it was in "material breach" of the JDLA. (JDLA § 13.2.)  This contractual provision is consistent with New York law that termination "is not permitted for a slight, casual, or technical breach, but as a general rule, only for such as are material."  *Process Am. Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) (citing *Callanan v. Powers*, 199 N.Y. 268, 284 (1910)).  Whether a breach is material turns on "the absolute and relative magnitude of the default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefited under the contract."  *Process America Inc.*, 839 F.3d at 136.

Now that Netlist had its chance and failed to prove to the jury that it suffered damages as a result of Samsung's breach of Section 6.2, the Court should find that Samsung's breach of Section 6.2 was immaterial.  If a plaintiff cannot show that it suffered any injury as a result of a breach, the breach was not material as a matter of law.  *Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc*., 872 F. Supp. 103, 110 (S.D.N.Y. 1995) (breach of a licensing agreement was not material where "there [was] no evidence [plaintiff] sustained any resulting injury"); *Found. for Seacoast Health v. Hosp. Corp. of Am.*, 71 A.3d 736, 747 (N.H. 2013) (breach of asset purchase agreement was not material because it "caused no injury" since "a breach [that] causes no damages or prejudice to the other party [] may be deemed not to be 'material'"); *Reading Int'l, Inc. v. Mululani Grp. Ltd.*, No. 13-00133 JMS-KSC, 2018 WL 2392500, at *5-6 (D. Haw. May 25, 2018) (breach of settlement agreement was not material where plaintiff "alleged no harm and no damage, much

less produced any evidence"); *Miami Subs Corp. v. Murray Fam. Tr. and Kenneth Dash P'ship*, 703 A.2d 1366, 1372 (N.H. 1997) ("even assuming that there was a breach, it was not material, as the trial court found [the party] suffered no damages"); 17 Am. Jur. 2d, Contracts § 670 (2021) ("Where a breach causes no damages or prejudice to the other party, it may be deemed not to be material."). Thus, if there was any breach of Section 6.2 here, it was not material, but only "a slight, casual, or technical breach" for which termination is not permitted. *Process Am.*, 839 F.3d at 136.

### 3.   Any Breach of Section 3.1 by Samsung Also Was Not Material

So too with the alleged breach of Section 3.1. The Court previously found on summary judgment that Samsung had committed a material breach of Section 3.1 by paying to the Korean Tax Authority $1.32 million of the $8 million fee. (MSJ Order at 19:24–25.) But as explained above, the only damages that Netlist seeks resulting from that breach are consequential damages and thus barred by the JDLA. Because Netlist did not suffer any compensable harm, Samsung's breach of Section 3.1 was not material and thus not a proper basis on which Netlist could terminate the JDLA. *Process Am. Inc.*, 839 F.3d at 136 (termination "is not permitted for a slight, casual, or technical breach"); *Zamora,* 2018 WL 1033228, at *7 ("[M]ere violation of a contractual provision, standing alone, does not constitute a 'breach' under New York law."); *ERE LLP,* 942 N.Y.S.2d at 473–74 (the essential element of damages cannot be satisfied with consequential damages where the contract "specifically disclaim[s] consequential damages").

Even if the Court were to conclude that the PwC fees are not consequential damages, the breach of Section 3.1 still would not be material. Samsung withheld a small portion of the fee, amounting to only 16.5% of the $8 million. The amount that Samsung paid to Netlist—$6,680,000—vastly exceeded the amount that Samsung paid as taxes to the Korean Tax Authority. The relative magnitude of

26

Samsung's breach was therefore small.  *Septembertide Publishing v. Stein and Day, Inc*., 884 F.2d 675, 679 (2d Cir. 1989) (failure to pay final one-third of a royalty payment was "a far cry from a total failure to pay").  In addition, Samsung had a good-faith basis to pay the tax withholding.  *See Bear, Stearns Funding, Inc. v Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005) (in determining materiality, the court should consider whether breach "comports with standards of good faith and fair dealing").  Indeed, even the Korean Tax Authority initially agreed with Samsung's position that the money was properly withheld, and Netlist received a refund only after Netlist appealed that decision.  (Dkt. 168-1, Samsung SGDF at 31, No. 52 (citing 192-8, LaMagna Decl. Ex. 13 at 3).)  Further, the JDLA, by including Section 3.2, specifically contemplated the possibility that a portion of the fee as "payment set forth in this Agreement" constituted "withholding taxes due" that Samsung would "pay … to the Korean tax authorities," requiring Netlist to claim a refund if it disputed the withholding.  Therefore, the fees incurred by Netlist to obtain a refund—conduct expressly contemplated by the agreement—cannot be material.  *See Bear, Stearns Funding*, 361 F. Supp. 2d at 296 (in determining the materiality of a breach, the court should consider the "extent to which the injured party will be deprived of the benefit which he reasonably expected").

Since the Court's summary judgment ruling, the record now shows that Netlist did not suffer any compensable harm as a result of Samsung's breaches of Sections 6.2 and 3.1 of the JDLA.  For these reasons, and the other reasons discussed above, there were no material breaches of the JDLA, and the Court should vacate its summary judgment order and enter judgment in Samsung's favor on Netlist's third claim for relief.

### D.   In the Alternative the Court Should Order a Trial on Netlist's Third Claim for Relief

If the Court does not enter judgment in Samsung's favor on Netlist's third claim for relief, it should at least order a trial solely as to the third claim for relief. Changed circumstances demonstrate that there is at least a genuine dispute of fact as to whether there was a material breach of the JDLA. The Court should thus exercise its authority under Rule 54(b) and its inherent authority to alter its original summary judgment ruling and to order a trial on the disputed issues underlying the third claim, if the Court does not enter judgment in Samsung's favor on that claim. *See also* Fed. R. Civ. P. 59(a) (the court may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court"). That is so for at least three reasons.

*First,* there is now at the very least a factual issue over whether Samsung's breaches were material under New York's multi-factor materiality test. *See Process Am.* 839 F.3d at 136; *Bear, Stearns Funding, Inc.*, 361 F. Supp. 2d at 295–96. Although the Court, in granting partial summary judgment to Netlist, cited cases applying that test (Dkt. 186 at 19), it had no opportunity to consider how that test would apply in light of a no-damages finding by the jury. If that jury finding does not entitle Samsung to judgment altogether, *see supra* at III.C., it at least makes clear that several of the factors—*e.g.*, the "absolute and relative magnitude of the default," *Process Amer. Inc.*, 839 F.3d at 136, the extent to which Netlist was "deprived of the benefit which [it] reasonably expected," and the extent to which Netlist can be "adequately compensated, " *Bear, Stearns Funding*, 361 F. Supp. 2d at 296—militate against a finding of materiality. The magnitude of Samsung's default was *de minimis* in light of the fact that Netlist did not suffer any compensable harm whatsoever, such that Netlist cannot even maintain a claim for breach of contract against Samsung. *See supra* Section III.A, B. Netlist was not deprived of any benefit since Netlist did not suffer damages. Again, that is all clear

28

1   on the face of the jury's verdict and as a matter of law, but if the Court disagrees,

2   that verdict at the very least requires putting the materiality question to a jury.

3   Furthermore, events that have unfolded since the jury's verdict also reinforce

4   that the jury should be permitted to consider the extent to which terminating the

5   JDLA would result in Samsung's forfeiture of important rights under the JDLA.

6   *Bear, Stearns Funding*, 361 F. Supp. 2d at 296 (the court must consider "the extent

7   to which the party failing to perform or to offer to perform will suffer forfeiture"

8   when determining whether a breach was material). The termination of the JDLA is

9   an extreme remedy that would result in Samsung's forfeiture of valuable license

10  rights. Indeed, on December 20, 2021—a little more than two weeks after the trial

11  in this case concluded—Netlist rushed to file a patent infringement lawsuit against

12  Samsung in the District Court for the Eastern District of Texas, claiming that this

13  Court's summary judgment decision terminated Samsung's license to Netlist's

14  patents. (*See* Request for Judicial Notice, filed concurrently; Feinstein Decl. Ex. C,

15  Complaint ¶ 35 (alleging that "Samsung was a licensee of Netlist until July 15,

16  2020. *See Netlist v. Samsung Elecs. Co. Ltd*., No. 20-cv-993, Dkt. 186 at 20-21

17  (C.D. Cal. Oct. 14, 2021).) The jury must be able to consider this new fact, which

18  weighs in Samsung's favor that any breach was not material.

19  **Second**, the changed circumstances since the Court's summary judgment

20  order raise questions of fact over whether Netlist waived its right to terminate the

21  JDLA based on Samsung's purported material breaches. Whether there was a

22  waiver depended on Netlist's "intent not to claim [a] purported advantage" under the

23  JDLA, *Stassa v Stassa*, 999 N.Y.S.2d 116, 119 (N.Y. App. Div. 2014), which is

24  generally "a question of fact." *Fundamental Portfolio Advisors, Inc. v Tocqueville

25  Asset, Mgt*., L.P., 850 N.E.2d 653, 658 (N.Y. 2006). The no-damages verdict

26  bolsters the argument that Netlist intended to forego reliance on its option to

27  terminate the JDLA: since Netlist was not injured by Samsung's alleged breach, it

28  had no reason to terminate while it was benefiting from the agreement, and only

29

1    decided to change its mind after it became strategically beneficial to do so.[5]

2            This Court held at summary judgment that the JDLA's no-waiver provision—

3    namely, that "failure by either Party to enforce any of the terms and conditions of

4    this Agreement shall not constitute a waiver of such Party's right thereafter to

5    enforce that or any other terms and conditions of this Agreement," (JDLA § 16.2.)—

6    precludes a finding of waiver.  But the fact that any breach was harmless strengthens

7    Samsung's waiver argument even despite the no-waiver clause, which itself can be

8    waived.  *Lee v. Wright*, 485 N.Y.S.2d 543, 544 (N.Y. App. Div. 1985) (plaintiff

9    could not rely on no-waiver clause after knowingly accepting non-performance

10   because "it has long been the rule that parties may waive a 'no-waiver' clause").

11   Moreover, especially in light of these changed circumstances, the Court should

12   entertain Samsung's argument that the no-waiver clause does not apply.  In

13   particular, under that provision's plain terms, it is prospective only, in that a party's

14   failure to enforce the termination provision when there was a past material breach

15   would not waive that party's right to enforce the termination provision when there

16   was a future material breach.  *Macarthur Prop. I, LLC v. Galbraith*, No.

17   651504/2018, 2018 WL 3412830, at *5 (N.Y. Sup. Ct. July 13, 2018) (finding that

18   while a no-waiver provision may have applied prospectively, the parties' "extended

19

20   _____

21   [5] The summary judgment record showed that one of Netlist's business objectives
     was to "monetize [its] intellectual property," including through "defense of [its]

22   patents through enforcement actions."  (Dkt. 150-2, Netlist Form 10-K for fiscal
     year ending December 30, 2017 at PageID#:3525.)  As mentioned in the preceding

23   paragraph, shortly after the trial in this case ended, Netlist filed a patent
     infringement suit against Samsung claiming that Samsung was infringing Netlist's

24   patents and that as a result of the summary judgment decision in this case, Samsung
     was no longer a licensee of Netlist's patents.  The fact that Netlist did not suffer any

25   damages only reinforces the inference that Netlist terminated the JDLA not because

26   of any material breach, but because it found it commercially expedient to do so in
     light of its business objectives to monetize its patents through litigation, which it is

27   now carrying out in the Eastern District of Texas.

28

30

court of conduct" created an issue of fact over whether the condominium board waived the right to recover past due fees); *see also Conant v. Alto 53, LLC*, No. 602408/2008, 2008 WL 5263810, at *8 (N.Y. Sup. Ct. Dec. 10, 2008) (plaintiff may have "retain[ed] the option to terminate the contract for future breaches even where [he] waived the payment provisions as to past breaches").  Therefore, the provision does not permit a party—like Netlist did here—to rely on years-old breaches from 2017 to terminate the agreement in 2020.  *See Kamco Supply Corp. v. On the Right Track*, 49 N.Y.S.3d 721, 730 (N.Y. App. Div. 2017) (plaintiff could not rely on a no-waiver clause because of its continued acceptance of non-performance and delay in asserting claim that defendant had breached a supply agreement).

     ***Third,*** the fact that Netlist failed to prove that it suffered any compensable damages raises issues over whether Netlist in fact fully satisfied the JDLA's conditions precedent to terminating the contract, and in particular the conditions of notice of a material breach and allowing 30 days to cure.  (*See* JDLA § 13.2.)  It is "fundamental" that "contractually-required notices of breach must provide sufficient information for the noticed party to determine what steps were necessary to cure the alleged breaches"  *In re 4Kids Ent.*, 463 B.R. 610, 682 (Bankr. S.D.N.Y 2011).  Here, Netlist's May 27, 2020 notice of breach vaguely states that Samsung "repeatedly failed to fulfill Netlist's requests for NAND and DRAM products throughout the term of the Agreement." (Dkt. 145-41, LaMagna Ex. 41 at Page ID# 3054.)  But the notice does not identify any specific breaches, when or how they occurred, or any action that Samsung could take to cure.  This issue takes on additional significance in light of the lack of any cognizable harm stemming from the alleged breaches.  Because any breach here was harmless, Samsung could not have been expected to understand how to cure such a breach, at least without explicit direction from Netlist.  The Court should thus allow a jury to determine whether Netlist's notice of those harmless breaches satisfied the JDLA's conditions precedent to termination.

SAMSUNG'S MOTION FOR ENTRY OF JUDGMENT

1  In short, if the Court does not grant judgment to Samsung on Netlist's third

2  claim, it should at least order a trial on that claim, and only that claim, in light of

3  disputed material facts.

### E. Samsung Reiterates For Appellate Preservation Purposes Its Position That It Did Not Waive Any Affirmative Defenses, and That the Court Should Have Denied Netlist's and Granted Samsung's Summary Judgment Motions

7  Although arguments raised opposing an adverse grant of summary judgment

8  are preserved for appeal and need not be raised in a post-trial Rule 50 motion, *see,*

9  *e.g., Barkley, Inc. v. Gabriel Bros.*, Inc., 829 F.3d 1030, 1038 n.1 (8th Cir. 2016),

10  out of an abundance of caution, Samsung reiterates for preservation purposes its

11  position that the Court should not have dismissed Samsung's affirmative defenses of

12  acquiescence, estoppel, and waiver following the final pre-trial conference (Dkt.

13  243, Order re: Motions *In Limine* and Proceedings at Final Pretrial Conf. at 6:12–

14  14), and that the Court should revisit that order for all the reasons stated in

15  Samsung's Response to the Court's November 6, 2021 Order for Briefing Regarding

16  Samsung's Affirmative Defenses (Dkt. 233) and the reasons argued by Samsung's

17  counsel during the final pre-trial conference.  Samsung thus submits that the Court

18  should revise its order dismissing Samsung's affirmative defenses because Netlist

19  did not move for summary judgment on Samsung's affirmative defenses, and

20  Samsung was not put on notice that its affirmative defenses were at risk of being

21  dismissed.  Netlist had the burden of producing sufficient evidence to allow the

22  Court to summarily adjudicate Samsung's affirmative defenses.  Netlist did not do

23  so, and the Court's summary judgment order understandably adjudicated only

24  Netlist's affirmative breach claims, not Samsung's affirmative defenses.  Samsung

25  respectfully submits that the proper disposition would have been to allow

26  Samsung's affirmative defenses to be tried rather than dismissed as a matter of law.

27  Samsung also reiterates, again for purposes of appellate preservation, its

28  position that the Court should have granted Samsung's motion for summary

32

judgment and denied Netlist's.  Samsung submits that the Court should revise its summary judgment order for all the reasons stated in Samsung's motion for summary judgment (Dkt. 157-1), its reply in support of summary judgment (Dkt. 179), and its opposition to Netlist's summary judgment motion (Dkt. 168).  In particular, in addition to the arguments set forth above, Samsung reasserts its summary-judgment-stage arguments and submits that the Court should revise its rulings denying Samsung's summary judgment motion including for the following reasons:

- The supply obligation under Section 6.2 was limited to the supply and pricing components for the joint development project between Samsung and Netlist.
- The Court should have considered extrinsic evidence demonstrating the scope of Section 6.2 of the JDLA.
- Samsung did not breach the JDLA by withholding a portion of the fee due under the JDLA to pay the Korean Tax Authority.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should (a) enter judgment in Samsung's favor on Netlist's first and second claims for relief, and (b) vacate its prior ruling granting summary judgment in Netlist's favor on its third claim for relief and instead enter judgment in Samsung's favor on that claim as well or, in the alternative, order a trial limited to the third claim for relief.

DATED: January 10, 2022             O'MELVENY & MYERS LLP


                                    By:       /s/ Michael G. Yoder
                                    _____
                                           Michael G. Yoder
                                    Attorneys for Defendant Samsung