1   RICHARD DOREN, SBN 124666
        rdoren@gibsondunn.com
2   JASON C. LO, SBN 219030
        jlo@gibsondunn.com
3   MATTHEW BENJAMIN (*pro hac vice*)
        mbenjamin@gibsondunn.com
4   TIMOTHY BEST, SBN 254409
        tbest@gibsondunn.com
5   RAYMOND A. LAMAGNA, SBN 244821
        rlamagna@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
7   Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
8   Facsimile:   213.229.7520

9   JASON SHEASBY, SBN 205455
        jsheasby@irell.com
10  IRELL & MANELLA LLP
    1800 Ave. of the Stars
11  Los Angeles, CA 90067
    Telephone: 310.203.7096
12  Facsimile: 310.203.7199

13

14  Attorneys for Plaintiff Netlist Inc.

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18  NETLIST INC., a Delaware          CASE NO. 8:20-cv-993-MCS (ADS)
    corporation,
19                                    **PLAINTIFF NETLIST INC.'S
                                      NOTICE OF MOTION AND MOTION
20              Plaintiff,            FOR JUDGMENT UNDER FEDERAL
                                      RULE OF CIVIL PROCEDURE 58(d)**
21        v.
                                      [Filed Concurrently with Declaration of
22  SAMSUNG ELECTRONICS COL,          Raymond LaMagna and [Proposed]
    LTD., a Korean corporation,       Judgment]
23
                Defendant.            Before Judge Mark C. Scarsi
24
                                      **Posttrial Hearing on Motions:**
25                                    Date:    February 14, 2022
                                      Time:   9 a.m. PT
26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 14, 2022, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff Netlist Inc. will and hereby does move for entry of judgment pursuant to Federal Rule of Civil Procedure 58.

The Court ruled on summary judgment in favor of Plaintiff Netlist Inc. on all three of its claims. *See* Dkt. 186 (ruling for Plaintiff on all three asserted claims recited in Dkt. 22, Netlist's First Amended Complaint). Trial having now been completed, there is no just reason for delaying entry of judgment for Plaintiff. Accordingly, Plaintiff Netlist hereby moves for entry of judgment:

1. In favor of Netlist on its first claim for breach of contract due to Samsung's confirmed liability for breach of the supply provision in the Joint Development and License Agreement ("JDLA"), with an award of nominal damages in the amount of $1.00;

2. In favor of Netlist on its second claim for breach of contract due to Samsung's failure to pay the full nonrecurring engineering ("NRE") fees due under the JDLA, with an award of direct damages in the amount of $664,065.24, consisting of the $427,051.60 Netlist paid to retrieve the improperly withheld NRE fees, and an additional $237,013.64 in prejudgment interest, calculated at 9% per annum simple interest. *See* CPLR §§ 5001(a), 5004; and

3. In favor of Netlist on its third claim for declaratory relief, because Samsung's breaches of the JDLA were material and Netlist properly terminated the JDLA on July 15, 2020, including the termination of all license and other rights granted to Samsung.

This motion is made pursuant to the Federal Rules of Civil Procedure, including Rules 54 and 58, the authority and argument as presented in the following

memorandum, the pleadings, rulings, decisions, verdicts, and record in this case, and such other matters as may be raised at the upcoming post-trial hearing.

This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on January 3, 2022, during which time counsel for Defendant Samsung indicated that it would not consent to entry of judgment as requested above, notwithstanding the rulings and decisions in favor of Netlist cited herein.

Dated:  January 10, 2022                    GIBSON, DUNN & CRUTCHER LLP


By: /s/ *Jason C. Lo*
Jason C. Lo
333 South Grand Avenue
Los Angeles, CA 90071
213.229.7000
jlo@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................. 1

II.  RELEVANT FACTS AND PROCEDURAL HISTORY ................................. 3

III.  ARGUMENT ...................................................................................... 5

    A.  Netlist Is Entitled to Judgment on Claim 1 (Breach of Supply Obligation) ................................................................................ 5

    B.  Netlist Is Entitled to Judgment on Claim 2 (Breach of NRE Payment) ..................................................................................... 8

        1.  The Stipulated $427,051.60 Constitutes General Damages .......... 10

        2.  Netlist Is Entitled to Prejudgment Interest of at Least $237,013.64 ........................................................................... 14

    C.  Netlist Is Entitled to Judgment on Claim 3 (Declaration of Termination) .......................................................................... 15

IV.  CONCLUSION .................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*,
769 F.3d 135 (2d Cir. 2014) .......................................................................... 7

*Aero Garage Corp. v Hirschfeld*,
586 N.Y.S.2d 611 (App. Div. 1992) ...................................................... 12, 13

*Am. List Corp. v. U.S. News & World Rep., Inc.*,
75 N.Y.2d 38 (1989) .................................................................................. 10

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
618 F. Supp. 2d 280 (S.D.N.Y. 2009) ........................................................ 11

*Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y.*,
10 N.Y.3d 187 (2008) ................................................................................ 11

*Brushton-Moira Cent. Sch. Dist. v Fred H. Thomas Assocs.*,
91 N.Y.2d 256 (1998) .......................................................................... 11, 14

*Chronister Oil Co. v. Unocal Ref. & Mktg.*,
34 F.3d 462 (7th Cir. 1994) ....................................................................... 16

*City of Elmira v. Larry Walter, Inc.*,
546 N.Y.S.2d 183 (App. Div. 1989) .............................................. 10, 12, 13

*City of New York v. Tavern on the Green Int'l LLC*,
2021 WL 1316956 (S.D.N.Y. Apr. 7, 2021) ............................................. 16

*Congel v. Malfitano*,
31 N.Y.3d 272 (2018) ................................................................................ 12

*Connaughton v Chipotle Mexican Grill, Inc.*,
53 N.Y.S.3d 598 (2017) .............................................................................. 6

*Duarte Nursery, Inc. v. U.S. Army Corps of Eng'rs*,
2017 U.S. Dist. LEXIS 128182 (E.D. Cal. Aug. 10, 2017) ....................... 5

*ESPN, Inc. v. Off. of Com'r of Baseball*,
76 F. Supp. 2d 416 (S.D.N.Y. 1999) ......................................................... 16

*Finley v. Atlantic Transp. Co.*,
220 N.Y. 249 (1917) .................................................................................... 6

*Freund v. Wash. Square Press, Inc.*,
34 N.Y.2d 379 (1974) ............................................................................. 6

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996) ............................................................................. 10

*Hirsch Elec. Co. v. Cmty. Servs., Inc.*,
536 N.Y.S.2d 141 (App. Div. 1988) ......................................................... 7

*J & J Structures, Inc. v. Callanan Indus., Inc.*,
626 N.Y.S.2d 891 (App. Div. 1995) ....................................................... 11

*Kennedy v. Applause, Inc.*,
90 F.3d 1477 (9th Cir. 1996) .................................................................. 5

*Kinney v Massachusetts Bonding Ins. Co.*,
210 A.D. 285 (App. Div. 1924) .............................................................. 12

*Kronos, Inc. v. AVX Corp.*,
81 N.Y.2d 90 (1993) ....................................................................... 2, 5, 6

*Manhattan Sav. Inst. v. Gottfried Baking Co.*,
286 N.Y 398 (1941) .............................................................................. 7

*McCoy Assocs. v. Nulux, Inc.*,
218 F. Supp. 2d 286 (E.D.N.Y. 2002) ....................................................... 1

*Perry v. McMahan*,
84 N.Y.S.3d 508 (App. Div. 2018) ......................................................... 5, 6

*Ross v. Sherman*,
944 N.Y.S.2d 620 (App. Div. 2012) .......................................................... 6

*Schonfeld v. Hilliard*,
218 F.3d 164 (2d Cir. 2000) ......................................................... 9, 10, 13

*Seidman v. Indus. Recycling Props., Inc.*,
967 N.Y.S.2d 77 (App. Div. 2013) ......................................................... 11

*Spodek v. Park Property Dev. Assoc.*,
96 N.Y.2d 577 (2001) ........................................................................... 14

**OTHER AUTHORITIES**

3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.2(3) (1993) ................................. 13, 14

*Restatement (Second) of Contracts* § 346(2) (1981) ....................................... 6

**RULES**

CPLR §§ 5001(a), (b) ...................................................................... 14

CPLR §§ 5004 ...................................................................... 10, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Despite the fact that Netlist prevailed at summary judgment on all three of its claims for relief, Samsung defiantly refuses to join in any submission that awards judgment to Netlist on any of those claims.[1]  Instead, in yet another attempt at reconsideration, Samsung will ask the Court to reverse its summary judgment rulings favoring Netlist (i.e., Dkt. 186).  Samsung's request should be denied (again).

This Court previously found for Netlist on its first claim for Samsung's breach of contract, save the amount of damages at issue.  *See* Dkt. 186 at 15:7–12 (citing *McCoy Assocs. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) (granting summary judgment as to liability for breach of contract claim, "regardless of the certainty of damages")).  As to Netlist's second claim for relief, this Court confirmed that Samsung breached by failing to pay the full NRE fees, but deferred confirming damages.  *See id.* at 16–17.  Finally, this Court ruled in favor of Netlist on its third claim for declaratory relief—without qualification—unequivocally confirming Netlist's rightful termination of the Joint Development and License Agreement ("JDLA") and its underlying licenses.  *See id.* at 20–21 ("There is no genuine dispute that Netlist completed the termination in the manner set forth in the JDLA, that the breaches it identified were material, and that it did not waive its right to terminate.").  Thus, as a matter of law, Netlist is entitled to a judgment in its favor.

The Court's rulings are not affected by the jury's verdict declining to award certain direct damages (namely, cost-of-cover damages) as to Claim One.

First, actual damages are not required to sustain a breach under New York law.  As this Court noted in its Summary Judgment Order, "Samsung provides no authority for the proposition that the Court may deny summary judgment to Netlist as to

---

[1]   The parties met and conferred on January 3, 2022, at which time Samsung stated that it would not agree to any form of judgment whereby Netlist was the prevailing party on any claim, and instead would be submitting its own motion for judgment.

liability, or enter summary judgment against Netlist, for failure to provide evidence of actual damages." Dkt. 186 at 17.  That is because "New York law 'infer[s] at least nominal damages at the moment of breach.'"  *Id.* (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)).  Because Samsung made no argument to the contrary and presented no disputed facts to the contrary, at the summary judgment stage, any such argument is waived.

Equally important, the Court's Summary Judgment findings on breach and materiality were based on numerous *undisputed* concessions by Samsung, including that Samsung was aware of its contractual obligations, yet "routinely" refused to live up to those obligations despite knowing that its actions would have a "dramatic impact on [Netlist's] financials and future business."[2]

Second, at least as to Claim Two, the parties *agree* that Netlist in fact sustained injury as a result of Samsung's breach.[3]  Samsung does not dispute that as a result of its breach of Claim Two, Netlist incurred at least $427,051.60 in fees payable and paid to PricewaterhouseCoopers ("PwC") for proceedings before the Korean tax authorities. Ex. A (Dkt. 283, 12/1/21 Trial Tr.) at 7:19–20.[4]  Samsung does not challenge that this damage occurred, it challenges only whether a contractual exclusion precludes recovery here.  But even if the exclusion applies (and it does not), that does not mean Netlist did not incur the damages in the first instance.

Finally, nothing in the jury's verdict touches upon the Court's determination that Netlist acted properly to terminate the JDLA as of July 20, 2020, in light of Samsung's

---

[2]  *See* Dkt. 168-1 [PMSJ Def. Stm. of GDMF] at ¶ 82 (p. 51) (citing PMSJ Ex. 18 at SEC058105 [*see* Dkt. 142-5] ), ¶ 114 (p. 71) (citing PMSJ Ex. 39 at 17 (Def. Supp. Response to Pl. Interrog. No. 2) [*see* Dkt. 145-43]); Dkt. 186 at 9–10 ("Samsung does not dispute that it declined to fulfill all of Netlist's orders for NAND and DRAM products. (*E.g.*, PMSJ [SUF] ¶¶ 61–66, 74–82, 106–08, 114–18; [P]MSJ GDMF ¶¶ 7–8.)"

[3]  Ex. A (Dkt. 283, 12/1/21 Trial Tr.) at 7:19–20, *see also id.* at 8:9–10, 9:19–24.

[4]  Netlist's Exs. A–D are filed concurrently in the Declaration of Raymond LaMagna.

1  material breach.  The jury's narrow decision on cost-of-cover damages on one claim

2  does not reverse the Court's well-founded determinations as to Netlist's claims.

3  Accordingly, Netlist asks that the Court adopt its proposed judgment.

4  **II.   RELEVANT FACTS AND PROCEDURAL HISTORY**

5          After a year of discovery, the parties cross-moved for summary judgment,

6  submitting hundreds of pages of briefing, exhibits, affidavits, and other evidence to the

7  Court.  That extensive record included undisputed evidence that Samsung breached its

8  supply obligation even though it understood that its "drastic" decision to cut Netlist's

9  allocation to zero "impacted [Netlist's] business and impacted [Netlist's] ability to

10  support [its] customers."  Dkt. 168-1 (PMSJ Def. Stm. of GDMF) at ¶ 108 (citing

11  PMSJ Ex. 35 at NL020775 [*see* Dkt. 145-39]).  The uncontroverted evidence also

12  established that, because Samsung provided "nearly 100% of [Netlist's] support and

13  Revenue," Samsung indisputably knew that its refusal to supply Netlist would "have a

14  dramatic impact on [Netlist's] financials and future business."  Dkt. 168-1 (PMSJ Def.

15  Stm. of GDMF) at ¶ 82 (citing PMSJ Ex. 18 at SEC058105 [*see* Dkt. 142-5]); *see also*

16  *id*. at ¶ 80 (same, notice that Netlist needed "allocation" to "maintain" business).

17          After consideration of this extensive record and oral argument, the Court issued

18  a thorough and carefully reasoned opinion partially granting summary judgment in

19  Netlist's favor on its breach of contract claims.  Dkt. 186 at 15:7–9, 16:5–11, 17:20–

20  21, 22:7–12.  The Court granted Netlist's request for declaratory judgment that it had

21  validly terminated the JDLA due to Samsung's material breaches.  *Id*. at 20:26–21:3;

22  22:13–14.  "Nothing" gave the Court pause in determining that Samsung breached

23  JDLA Section 6.2, as "Samsung does not dispute that it declined to fulfill all of

24  Netlist's orders for NAND and DRAM products," leaving only "[d]amages [to] be

25  proven at trial."  *Id*. at 9–10, 15.  The Court also held that Samsung "breached by

26  withholding" $1.32 million owed to Netlist under the JDLA, which Samsung again

27  "d[id] not genuinely dispute."  *Id*. at 15:26–16:11.

28

1    The Court further found that both of these breaches were material, and that

2    Samsung did "not seriously contest" materiality.  *Id.* at 19.  Accordingly, the Court

3    ruled that a "declaratory judgment that Netlist terminated the JDLA" was appropriate

4    and would "clarify the effectiveness of Netlist's termination" and "relieve the parties

5    from the uncertainty over the issue."  *Id.* at 20:26–21:3.[5]

6        But days after the Court's October 14, 2021, Summary Judgment Order finding

7    that Samsung materially breached two provisions of the JDLA and that Netlist validly

8    terminated the JDLA, Samsung filed a motion for reconsideration.  Dkts. 195, 210,

9    215.  In a transparent attempt to relitigate arguments already rejected by the Court,

10   Samsung argued that the Court failed to consider facts showing that Samsung's

11   breaches of the JDLA were not material and that Netlist's termination of the JDLA

12   was ineffective.  Dkt. 210.  The Court decisively denied reconsideration, finding that

13   "Samsung's motion identifies no *facts* the Court failed to consider."  Dkt. 215 at 2.

14   The Court noted that Samsung's mere "disagreement with the Court's analysis of the

15   facts [did] not present grounds for reconsideration."  *Id*.  The Court further "decline[d]

16   Samsung's invitation to consider contentions Samsung failed to offer in its summary

17   judgment papers on the eve of trial."  *Id.*

18       Undeterred, Samsung sought to undo the Court's Summary Judgment Order a

19   second time by improperly seeking to introduce merits arguments on liability before

20   the jury, notwithstanding the Court's determination as a matter of law that Samsung

21   was liable for its undisputed breaches of the JDLA.  *Compare* Dkt. 227, *with* Dkt. 186

22

---

23   [5]  Hours after Samsung lost summary judgment in this Court, it rushed to file an

24   anticipatory declaratory judgment action for non-infringement in Delaware making
     clear that it understood that any license it may have had to Netlist's patents is

25   terminated.  The other alternative is that Samsung was engaging in forum shopping
     seeking another judge that would rule differently from this Court.  *See Samsung v.*

26   *Netlist*, No. 1:21-cv-01453, Dkt. 1 at ¶ 2 (D. Del. Oct. 15, 2021) (alleging Netlist
     has "unilaterally *attempted* to terminate" the agreement and that Netlist "*claims* it

27   has terminated the Agreement"); *id.* at ¶¶ 18–20 (omitting reference to summary

28   judgment ruling).

at 9–10, 15–16.  The Court again rejected Samsung's improper maneuvering and held that "allowing Samsung to resurrect its affirmative defenses would 'unravel the court's prior dispositive liability decisions.'"  Dkt. 243 at 5 (quoting *Duarte Nursery, Inc. v. U.S. Army Corps of Eng'rs*, 2017 U.S. Dist. LEXIS 128182, at \*10 (E.D. Cal. Aug. 10, 2017)).

As demonstrated below, Samsung's opposition to this motion as well as its own motion for judgment are merely Samsung's latest attempts to "unravel" the Court's well-founded decisions.

## III.   ARGUMENT

Entering a Rule 58 judgment is typically a "ministerial task."  *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1483 (9th Cir. 1996).  Based on the rulings and decisions in this case, Netlist is unequivocally entitled to judgment in its favor on all three of its claims.  The proposed Judgment submitted herewith tracks the Court's prior rulings on Netlist's claims and recites the judgment to which Netlist is entitled.

## A.   Netlist Is Entitled to Judgment on Claim 1 (Breach of Supply Obligation)

On summary judgment, this Court found for Netlist on its claim that Samsung breached the supply obligation in the JDLA.  Dkt. 186 at 10:2–3, 15:7–9, 22:7–9.  "The Court determine[d] that Netlist has established the existence of a contract, its performance of the contract, and Samsung's breach of the supply provision of the contract."  *Id*. at 15:7–9.  The jury's verdict in this case cannot "undo" that ruling.  Thus, Netlist is entitled to judgment in its favor on this claim.

Under New York law, an award of actual damages is not required to prevail on a breach of contract claim.  New York law holds that "actual damages are not an essential element [for breach], and nominal damages are [instead] recoverable to vindicate contract rights."  *Perry v. McMahan*, 84 N.Y.S.3d 508, 510 (App. Div. 2018).  This follows the highest New York State court's clear recognition that "[n]ominal damages are always available in breach of contract actions."  *Kronos.*, 81 N.Y.2d at 95.

Thus, an award of nominal damages is available to Netlist regardless of whether direct damages have been awarded. *E.g., Perry*, 84 N.Y.S.3d at 509–10 (affirming trial court's "determination to award nominal damages to plaintiff" of $1 after "the jury found that the plaintiff suffered no damages from the breach" of a contract's confidentiality provision); *Ross v. Sherman*, 944 N.Y.S.2d 620, 621 (App. Div. 2012) (the court "properly awarded the plaintiffs only nominal damages on their cause of action alleging breach of contract [when] plaintiffs failed to submit sufficient evidence to demonstrate actual damages"); *Restatement (Second) of Contracts* § 346(2) (1981) ("If the breach caused no loss or if the amount of the loss is not proved … a small sum fixed without regard to the amount of loss will be awarded as nominal damages.").

The New York Appellate Division's 2018 decision in *Perry* is instructive here. In *Perry*, the plaintiff sued for breach of a confidentiality provision, and resolved the matter of liability before trial. *Perry*, 84 N.Y.S.3d at 510. The matter then "proceeded to trial on the issue of damages" alone, where the jury found the plaintiff had not proven any damages. *Id.* Accordingly, at the plaintiff's request, the court awarded $1 in nominal damages. The Appellate Division upheld the trial court's finding of breach, ruling that liability had been established, and that "[i]n breach of contract actions, actual damages are not an essential element, and nominal damages are recoverable to vindicate contract rights." *Perry*, 84 N.Y.S.3d at 509–10 (citing *Connaughton v Chipotle Mexican Grill, Inc.*, 53 N.Y.S.3d 598 (2017); *Ross*, 944 N.Y.S.2d 620).

This follows New York's "well-established rule of contract law that the law will infer at least nominal damages at the moment of breach." *Kronos*, 81 N.Y.2d at 94; *see also id.* at 96 ("Nominal damages allow vindication" of contract rights.); *Finley v. Atlantic Transp. Co.*, 220 N.Y. 249, 258 (1917) ("Whenever there is a breach of a contract or the invasion of a legal right[,] the law infers some damage."). As the New York Court of Appeals has explained, where damages "were not proved with the required certainty," nominal damages are recoverable. *Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 383–84 (1974). Indeed, as has been the rule set down by the New

York Court of Appeals over the last century, if a plaintiff proves "the defendant breached its contract," then, regardless of factual findings on damages, the plaintiff is "entitled as matter of law to an award of nominal damages." *Manhattan Sav. Inst. v. Gottfried Baking Co.*, 286 N.Y 398, 400 (1941). "[I]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Hirsch Elec. Co. v. Cmty. Servs., Inc.*, 536 N.Y.S.2d 141, 143 (App. Div. 1988) (citation omitted); *see also Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, 769 F.3d 135, 139 n.8 (2d Cir. 2014) ("Under New York law, nominal damages may be awarded to a party who has shown breach of contract, even in the absence of evidence of a related loss.") (citing *Hirsch*).

To the extent that Samsung suggests that the jury's refusal to award monetary damages somehow diminishes the extent or frequency of Samsung's documented breaches, that is a misplaced attempt to rewrite the undisputed facts of this case. At summary judgment, the undisputed record included the following facts: (1) Samsung was aware that pursuant to the JDLA, "supply for NAND and DRAM products is necessary if there is a request from Netlist." Dkt. 168-1 (PMSJ Def. Stm. of GDMF) at ¶ 38. (2) "Samsung "routinely rejected requests for product from Netlist." *Id*. at ¶ 114. (3) "[N]onfulfillment [by Samsung] was a common practice between the parties since 2001 through present, not limited to post-2017. *Id*. at ¶¶ 63, 66, 74. (4) "Samsung [took the position that it] would not fulfill all of Netlist's requests for the NAND and DRAM products, and that Netlist's requests for product would be subject to the practice of allocation." *Id*. at ¶ 71. (5) "In or about May 2017, Samsung stopped agreeing to support Netlist's NAND and DRAM product requests and began refusing to allow Netlist to submit purchase orders for such products." *Id*. at ¶ 77. (6) Samsung knew that "[s]ince Samsung is nearly 100% of [Netlist's resale] support and Revenue [Samsung's actions] will have a dramatic impact on their financials and

future business." *Id*. at ¶ 82.  (7) At the same time that Samsung was declining to fulfill Netlist's requests, "Samsung was selling the products sought by Netlist to other Samsung customers."  *Id*. at ¶ 83.  (8) "At times Samsung provided less than $500,000 of NAND and DRAM products per month."  *Id*. at ¶ 88.  (9) As of July 2018, Samsung had "rejected over $10 Million of [Netlist] business for Q3 already."  *Id*. at ¶ 96.

These undisputed facts establish both the frequency and the severity of the breach.  Indeed, as this Court already found on summary judgment, "Samsung does not dispute that it declined to fulfill all of Netlist's orders for NAND and DRAM products" and there "is no genuine dispute that Samsung breached JDLA § 6.2."  Dkt. 186 at 9:26–10:3.  The fact that damages were either not quantifiable for the jury or not recoverable because of a contractual limitation on consequential damages cannot change this result.  The Court should therefore enter judgment in Netlist's favor on its first claim for breach of contract (breach of the supply provision in JDLA § 6.2) and award it nominal damages in the amount of $1.00.

## B.    Netlist Is Entitled to Judgment on Claim 2 (Breach of NRE Payment)

The Court also found for Netlist on its second claim that Samsung materially breached the JDLA by failing to pay the full NRE fees due thereunder.  Dkt. 186 at 16:5–11, 18:22–25 ("[T]here is no genuine dispute that Samsung breached its obligation[] . . . to pay the NRE fees without withholding taxes" because "Samsung was not required by applicable law to withhold; therefore, Samsung breached by withholding."); *see also id.* at 17:20–21; 22:10–12 (granting summary judgment on the "first subclaim" as to "Netlist's theory that Samsung breached by failing to pay the full NRE fees").[6]

---

[6]  Netlist elected not pursue the second subclaim of its count for breach concerning NRE fees (i.e., for cooperation in tax proceedings).  *See* Dkt. 246.  Accordingly, that issue not included in the proposed Judgment submitted herewith by Netlist.

In assessing the quantum of damages, Netlist asserts a single item—the $427,051.60 paid to PwC to recover the $1.32M NRE payment that Samsung wrongly withheld.  And Samsung *does not dispute* that it harmed Netlist in at least this amount.

Prior to trial, Samsung acknowledged to the Court that the **$427,051.60** in fees that Netlist incurred from PwC "are undisputed in terms of amount."  Ex. A (Dkt. 283, 12/1/21 Trial Tr.) at 7:19–20.  As Samsung confirmed: "It's stipulated.  That's the amount."  *Id*. at 10:6–12, *see also id*. at 9:19–24.  According to Samsung, "the only issue is, under the law, based on briefing, is this a consequential damage or not."  *See id*. at 8:9–10.  That is, Samsung wrongly argues that this damage is a "consequential" damage, and thus falling under a contractual limitation on recovery in the JDLA.  Thus, according to Samsung, there is no question here as to actual injury: the sole question here is whether that $427,051.60 in actual damages is a *recoverable* injury in view of the JDLA's limitation on damages.

Settled New York law confirms this $427,051.60 *is* a direct "general" damage and hence recoverable by Netlist under Claim Two.[7]  Professional fees paid to obtain "the value of the very performance promised" and "directly occasioned and made necessary" by the breach are "general" damages under New York law, and so recoverable by Netlist in this action.  *E.g.*, *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) ("A plaintiff is seeking general damages when he tries to recover 'the value of the very performance promised.'"); *City of Elmira v. Larry Walter, Inc*., 546 N.Y.S.2d 183, 185 (App. Div. 1989) (professional fees to rebid construction contract after contractor breached were "recoverable" direct damages "'directly occasioned and made necessary by' the breach").  Netlist is thus entitled to judgment in that amount,

---

[7]   Based on Samsung's stipulation, the Court ruled that the question of whether the PwC fees constitute general or consequential damages would be decided by the Court in post-trial proceedings.  Ex. A (Dkt. 283, 12/1/21 Trial Tr.) at 13:5–7.  As such, this Motion for Entry of Judgment includes authorities showing that the fees constitute general damages.

combined with a mandatory award of 9% per annum prejudgment interest as required under New York law.  *See* CPLR §§ 5004.

### 1. The Stipulated $427,051.60 Constitutes General Damages

State law governs substantive damages issues in a case over which a federal court exercises diversity jurisdiction.  *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437 (1996).  Under New York law, general damages seek recovery of "the value of the very performance promised."  *Schonfeld*, 218 F.3d at 175.  And that is precisely what Netlist seeks by asking for payment of the $427,051.60 in PwC fees.[8]

Under Section 3.1 of the JDLA, Netlist was entitled to $8 million in NRE fees, minus only amounts *required* for taxes under applicable law.  *See* Dkt. 186 at 15:18–16:11.  Samsung breached its obligation under Section 3.1 by paying $1.32 million of those fees to Korean tax authorities when it was not required to do so.  *Id*. at 16:10–11, 22:10–12.  When Samsung refused to correct its breach, the only way for Netlist to remedy the breach and gain the value of Samsung's promised performance (i.e., to retrieve the missing $1.32 million in NRE fees) was to incur the expense of petitioning the Korean government directly.  Netlist was therefore forced to incur $427,051.60 to retrieve the full amount Samsung owed Netlist (i.e., the value of the very performance Samsung promised)**.**

"General damages are those which are the natural and probable consequence of the breach . . . while special damages are extraordinary in that they do not so directly flow from the breach."  *Am. List Corp. v. U.S. News & World Rep., Inc.*, 75 N.Y.2d 38, 42–43 (1989); *accord Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 618 F. Supp. 2d 280, 292 (S.D.N.Y. 2009) (general damages are "the natural and probable consequence of the breach" because "the purpose of damages in a breach of contract dispute is to put the non-breaching party in the same economic position it would have been in had the breaching party performed its contractual obligations"); *see also*

---

[8]  For avoidance of doubt and formal submission of the evidence, PwC's invoice for the $427,051.60 in fees is provided here as Ex. D (Trial Ex. 0307).

*Brushton-Moira Cent. Sch. Dist. v Fred H. Thomas Assocs.*, 91 N.Y.2d 256, 261 (1998) ("It has long been recognized that the theory underlying damages is to make good or replace the loss caused by the breach of contract."); *Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 195 (2008) (citation omitted); *Seidman v. Indus. Recycling Props., Inc.*, 967 N.Y.S.2d 77, 80 (App. Div. 2013).

Here, the fees Netlist incurred were not only the "natural and probable consequence" of Samsung's breach, they flowed from Samsung's explicit instructions that Netlist must act on its own to seek a refund of the withholding.  In December 2015, after Netlist complained to Samsung about the NRE fee shortfall,[9] Samsung expressly insisted that Netlist must itself "discuss this matter directly with the NTS." Ex. C (Trial Ex. 0182).

By its nature, petitioning a tax appeal in Korea is not a task that Netlist could have undertaken on its own.  Thus, Samsung's directive for Netlist to communicate directly with the Korean tax authorities necessitated retaining PwC to engage those authorities.  Netlist thus is "entitled to recover expenditures occasioned and made necessary by the breach." *J & J Structures, Inc. v. Callanan Indus., Inc.*, 626 N.Y.S.2d 891, 893 (App. Div. 1995).

Professional fees like the PwC fees—and even legal fees—are treated as general damages and are "recoverable expenditures" where, as here, they are "'directly occasioned and made necessary by the breach.'"  *City of Elmira*, 546 N.Y.S.2d at 185 (citation omitted); *see also Aero Garage Corp. v Hirschfeld*, 586 N.Y.S.2d 611, 612–13 (App. Div. 1992) (holding that legal expenses "incurred by plaintiff in attempting by itself to fulfill defendants' obligations under the contract" were "'directly

---

[9]   *See* Ex. B (Netlist's letter of December 16, 2015) (Trial Ex. 0138).  As stated there, Netlist offered "to indemnify Samsung for any tax liabilities" if Samsung complied with its obligations and completed the required payment to Netlist. *Id.*, ¶ 5.  But Samsung refused.  Ex. C (Trial Ex. 0182).  When Netlist raised this evidence with the Court on December 1, 2021, just before trial, Samsung stated on the record, "as an offer of proof, we are not going to dispute that."  Ex. A at 12:6–16.

NETLIST'S MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

occasioned and made necessary by' defendants' breach.").  As the New York Court of Appeals has explained, a plaintiff in a breach of contract case may seek compensation for professional fees that "were incurred as a direct result of defendant's breach." *Congel v. Malfitano*, 31 N.Y.3d 272, 291 (2018) (citing *City of Elmira*, 546 N.Y.S.2d 183, and *Aero Garage*, 586 N.Y.S.2d 611).  That is because professional fees "incurred in carrying out separate acts necessitated by the breach" are by definition the "direct result" of the breach.  *See Congel*, 31 N.Y.3d at 292.

For example, in *City of Elmira*, the court held that both professional engineering fees and legal fees incurred by the plaintiff were "directly occasioned and made necessary by the breach" and thus recoverable as actual direct damages.  546 N.Y.S.2d at 185.  In that case, the defendant contractor breached its construction contract with the city, requiring the city to submit the project to a rebidding process to complete the work for which it had contracted with defendant.  *Id*. at 184–85.  In the process of rebidding, the city incurred additional professional fees (both engineering and legal), which defendant sought to exclude, as Samsung does here.  *Id*. at 185.  There, the court recognized the rule that legal expenses incurred to *prosecute* a claim are not generally recoverable in a breach of contract case.  *Id*.  But, as the court clarified, "these charges are not, as [defendants] have characterized them, counsel fees.  Rather, they are legal expenses *[] incurred to rebid the contract.  As such they are recoverable expenditures 'directly occasioned and made necessary by' the breach."  Id*. (emphasis added) (quoting *Kinney v Massachusetts Bonding Ins. Co*., 210 A.D. 285, 293 (App. Div. 1924) (similarly holding that both architects' and lawyers' fees paid to complete a project after a contractor's breach were recoverable as "services [] directly occasioned and made necessary by the default")).[10]

---

[10]  Similarly, in *Aero Garage*, 586 N.Y.S.2d at 612, the plaintiff sued its landlord for breach of its lease for failing to obtain a certificate of occupancy.  The trial court awarded damages including fees plaintiff paid to an attorney to obtain a certificate. The Appellate Division ruled that "the court properly awarded attorney's fees incurred by plaintiff in obtaining the certificate of occupancy as an element of

Here, the professional fees (recognized as general damages in *City of Elmira*) were not paid to prosecute Netlist's claim for Samsung's breach, but rather, to deal with the direct consequence of that breach. As in *City of Elmira*, Samsung's breach of section 3.1 of the JDLA "directly occasioned and made necessary" Netlist's professional fees to enter into a petitioning process in order to obtain "the value of the very performance promised" (i.e., receipt of the remaining $1.32 million in fees unpaid by Samsung in breach). *City of Elmira,* 546 N.Y.S.2d at 185.; *Schonfeld*, 218 F.3d at 175. Netlist's fees were a direct expense of petitioning the Korean tax authority to forward the funds, which was made necessary by Samsung's breach by failing to complete that same performance. Like paying professionals to complete performance in *City of Elmira*, here, the only way that Netlist could obtain the performance that Samsung had promised (the payment of the $1.32 million) was to hire accountants, who in fact did secure that performance (absent the fee now being sought).

By definition, general damages constitute "the value of the very thing promised so that [the plaintiff's] balance sheet will reflect capital assets [the plaintiff] would have had upon the defendant's full performance." 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.2(3), at 40–41 (1993). Although Netlist ultimately obtained a return from the Korean tax authority of money that Samsung owed to Netlist, Netlist's balance sheet has not been made whole—it still does not reflect the "capital assets [Netlist] would have had upon the [Samsung's] full performance." *See id.* Netlist is still short the professional fees paid to PwC to obtain the return of the funds (i.e., fees paid to obtain the performance that Samsung promised)—funds this Court and the Korean Tax Tribunal both found were wrongfully withheld. *See* Dkt. 186 at 16:5–9 (The "JDLA leaves no room for Samsung's reasonable misinterpretation of Korean tax

compensatory damages. These legal expenses were incurred by plaintiff in attempting by itself to fulfill defendants' obligations under the contract and were 'directly occasioned and made necessary by' defendants' breach." *Id.* (citing *City of Elmira*). In sum, the expenses were incurred in completing the contract—not in enforcing the contract through litigation—and were thus general damages.

1  law. Samsung was not required by applicable law to withhold; therefore, Samsung

2  breached by withholding."); Dkt. 142-2 (PMSJ PSUF) at ¶ 53 (citing PMSJ Ex. 13).

3       As such, Netlist is entitled to recover the PwC fees as general damages to put it

4  back into the position it would have been in had Samsung not breached.  To be made

5  whole, Samsung must pay the undisputed sum of **$427,051.60** as general damages for

6  Netlist's second breach claim.

7       **2.    Netlist Is Entitled to Prejudgment Interest of at Least $237,013.64**

8       Under New York law, prejudgment interest "*shall* be recovered upon a sum

9  awarded because of a breach of performance of a contract."  CPLR §§ 5001(a)

10  (emphasis added).  The statute "mandates the award of interest to verdict in breach of

11  contract actions" and is "consistent with our long-standing recognition that the purpose

12  of awarding interest is to make an aggrieved party whole."  *Spodek v. Park Property*

13  *Dev. Assoc.*, 96 N.Y.2d 577, 581 (2001); *see also Brushton-Moira Cent. Sch. Dist.*, 91

14  N.Y.2d at 262 ("[I]nterest is awarded pursuant to statutory mandate….").  Prejudgment

15  interest is calculated at 9% per annum (i.e., at .75% per month) simple interest (non-

16  compounding).  CPLR §§ 5004.

17       New York law also requires that "[i]nterest shall be computed from the earliest

18  ascertainable date the cause of action existed."  CPLR §§ 5001(b).  Here, that would be

19  *no later* than December 10, 2015, when Samsung paid $1.32 million of the NRE fees it

20  owed to Netlist to the Korean National Tax Service in breach of the JDLA.  *See* Ex. C

21  (Trial Ex. 0182) ("Samsung reported and paid withholding tax of $1,320,000 to the

22  [Korean] National Tax Service (NTS) on December 10, 2015").[11]  Interest is thus owed

23  to Netlist on the sum of $427,051.60 from December 10, 2015 to the Court's date of

24  judgment (February 14, 2022 or later).

---

25  [11]  Samsung omitted the $1.32 million from the payment it made Netlist under Section

26      3.1 of the JDLA on the earlier date of November 19, 2015.  Ex. B (Trial Ex. 0138),

27      ¶ 2.  But for simplicity of issues, Netlist will accept interest calculated from the date

28      when Samsung later remitted the unpaid $1.32 million to the Korean National Tax
    Service in breach of the contract.

1       At New York's statutory rate, Netlist is entitled to $3,202.887 per month in

2 prejudgment interest ($427,051.60 × .09 ÷ 12), or **$237,013.64**.[12]

3 **C.    Netlist Is Entitled to Judgment on Claim 3 (Declaration of Termination)**

4       The Court found for Netlist on its third claim for declaratory relief (declaration

5 of termination of the JDLA).  The Court ruled that Samsung's breaches of the JDLA

6 were material and that Netlist properly terminated that agreement by written notice on

7 July 15, 2020.  Dkt. 186 at 20:26–21:3; 22:13–14 ("The Court grants summary

8 judgment in favor of Netlist and against Samsung on Netlist's third claim for

9 declaratory relief.").  Indeed, the Court recognized that "Samsung does not seriously

10 contest materiality" and there is "no genuine dispute that Netlist completed the

11 termination in the manner set forth in the JDLA."  Dkt. 186 at 19:15–27; 20:28–21:3.

12 Nothing on the record alters the Court's ruling on this claim.  No aspect of Netlist's

13 third claim was tried to the jury, and thus it could not be affected by the jury's verdict.

14 Netlist is accordingly entitled to entry of judgment on this claim per Rule 58(d) as

15 stated in Netlist's proposed Judgment.

16       To the extent Samsung argues that the jury's verdict on cover damages as to

17 Claim One somehow undermines the Court's ruling that Samsung's breaches were

18 material as a matter of law and a proper basis for Netlist's termination of the JDLA,

19 Samsung is wrong.  "Materiality does not depend upon the amount of provable money

20 damages, it depends upon whether the nonbreaching party lost the benefit of its

21 bargain." *ESPN, Inc. v. Off. of Com'r of Baseball*, 76 F. Supp. 2d 416, 421 (S.D.N.Y.

22 1999).  A plaintiff can establish materiality where, as here, there is "no question" that

23 it was "harmed by virtue of [a defendant's] breach" "regardless of whether it can prove

24 any monetary damage."  *Id*. at 421, n.4; *see also City of New York v. Tavern on the*

25 *Green Int'l LLC*, No. 17-CV-1376 (RJS), 2021 WL 1316956, at \*2–3 (S.D.N.Y. Apr.

26

27   [12]  A greater amount would be owed if the Court does not rule on this motion until

28 after the February 14, 2022 hearing.  In that event, the additional daily rate of interest owed would be $105.30 ($427,051.60 × .09 ÷ 365).

7, 2021) (finding material breach on summary judgment and awarding nominal damages); *Chronister Oil Co. v. Unocal Ref. & Mktg.*, 34 F.3d 462, 464–66 (7th Cir. 1994) (affirming finding of material breach justifying termination of contract while recognizing the lack of proof of monetary damages).

Further, as the Court correctly noted, Samsung's undisputed breach in failing to pay the full $8 million NRE fee itself constitutes a material breach under New York law. *See* Dkt. 186 at 19 (citing *Taub v. Marchesi Di Barolo, S.p.A.*, 480 F. App'x 643, 645 (2d Cir. 2012) ("It is axiomatic that failure to pay is a material breach of a contract.")); *see also Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 67–68 (S.D.N.Y.1990); *Truglia v. KFC Corp.*, 692 F. Supp. 271, 276–77 (S.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 308 (2d Cir. 1989).

Netlist is thus entitled to entry of judgment on this claim, as stated in Netlist's proposed Judgment submitted herewith.

## IV.   CONCLUSION

For the foregoing reasons, Netlist is entitled to prompt entry of judgment under Rule 58, and respectfully requests that the Court enter judgment in its favor on all claims for relief as set forth in the proposed Judgment submitted by Netlist herewith.

Dated: January 10, 2022                   GIBSON, DUNN & CRUTCHER LLP


By: */s/ Jason C. Lo*
Jason C. Lo
333 South Grand Avenue
Los Angeles, CA 90071
213.229.7000
jlo@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.