MICHAEL G. YODER (SB 83059)
myoder@omm.com
MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION**<br><br>Date:    February 14, 2022<br>Time:    9:00 a.m. PT<br><br>Assigned to Hon. Mark C. Scarsi<br>Courtroom 7C |

3770970.3

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................. 2

TABLE OF AUTHORITIES ........................................................... 4

I.    INTRODUCTION .............................................................. 6

II.   LEGAL STANDARD ......................................................... 8

III.  FACTUAL BACKGROUND ............................................... 9

    A.    Netlist's Prior Attempts to Expand Discovery Disputes Beyond the Fact Discovery Deadline. .................................................. 9

    B.    The Relevant Requests for Admission................................. 10

    C.    Samsung's Responses to the Supply RFAs (Nos. 5, 6, 27-32, 34-35, 37-41). ..................................................................... 11

    D.    Samsung's Responses to the Tax RFAs (Nos. 7, 10, 46). ........ 12

    E.    Samsung's Responses to the Termination RFAs (Nos. 13-15, 50, 52, 53, 55) .................................................................... 13

IV.   ARGUMENT ................................................................ 14

    A.    Netlist's Motion is Procedurally Deficient. .......................... 14

        1.    Sanctions Are Not Warranted Because Samsung Asserted Objections Which Were Either Upheld or Unchallenged. ......... 15

        2.    Netlist's Motion Attempts to Bypass Magistrate Judge Spaeth and Does Not Comply with Local Rule 37.................... 16

        3.    Netlist's Motion Does Not Comply with Local Rule 11-6. ....... 17

    B.    Netlist's Motion Is Substantively Meritless.......................... 18

        1.    Sanctions Are Not Warranted When Responses Are of No Substantial Importance or When a Party Has Reasonable Grounds to Believe That Its Responses Are Truthful. .............. 18

        2.    Sanctions Are Not Warranted for the Supply RFAs. ............... 19

        3.    Sanctions Are Not Warranted for the Tax RFAs....................... 21

        4.    Sanctions Are Not Warranted for the Termination RFAs.......... 22

    C.    Netlist's Requested Expenses Are Unreasonable. ................... 23

        1.    Netlist Fails to Carry its Burden to Provide Evidence of Reasonable Hourly Rates................................................. 24

3770970.3

2

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.    Netlist Fails to Carry its Burden to Provide Evidence of
      Reasonable Hours Spent. .............................................................26

3.    Based on the Evidence Provided, the Claimed Fees Are
      Unreasonable On Their Face. ......................................................28

V.    CONCLUSION ................................................................................30

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Amphastar Pharm., Inc. v. Aventis Pharma SA*,
5    2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) ...................................... 25, 26, 27

6

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*,
7    105 F.Supp.3d 1184 (D. Or. 2015) ..................................................... 6, 14, 15, 16

8 *Bird v. Wells Fargo Bank*,
9    2017 WL 4123715 (E.D. Cal. Sep. 18, 2017) ..................................................... 23

10 *Blum v. Stenson*,
   465 U.S. 886 (1984) ..................................................................................... 24
11

12 *Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ..................................................................... 24
13

14 *Garrison v. Warner Bros. Pictures*,
   226 F.2d 354 (9th Cir. 1955) ..................................................................... 19

15
*In re Gilman*,
16    2019 WL 3096872 (9th Cir. Jul. 12, 2019) ..................................................... 15

17 *Haiping Su v. NASA*,
18    711 Fed.App'x 444 (9th Cir. 2018) ............................................................*passim*

19 *Hensley* v. *Eckerhart*,
20    461 U.S. 424 (1983) ........................................................................ 23, 26, 28

21 *Hoffman v. Constr. Protective Servs., Inc.*,
   541 F.3d 1175 (9th Cir. 2008) ..................................................................... 17
22

23 *Holmgren v. State Farm Mut. Auto Ins. Co.*,
   976 F.2d 573 (9th Cir. 1992) ................................................................. 24, 27
24

25 *Kerr v. Screen Guild Extras, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ....................................................................... 23

26
*Magnetar Tech. Corp. v. Intamin, Ltd.*,
27    801 F.3d 1150 (9th Cir. 2015) ..................................................................... 19

28

4

*Mane v. Tri-City Healthcare Dist.*,
    2007 WL 935624 (S.D. Cal. Mar. 21, 2007)............................................8, 18, 20

*Marchand v. Mercy Med. Ctr.*,
    22 F.3d 933 (9th Cir. 1994) ......................................................................15, 19

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) ..............................................................................23

*Read-Rite Corp. v. Burlington Air Express, Inc.*,
    183 F.R.D. 545 (N.D. Cal. 1998) ...............................................................18, 22

*Role Models Am., Inc. v. Brownlee*,
    353 F.3d 962 (D.C. Cir. 2004).........................................................................26

*Russo v. Baxter Healthcare Corp.*,
    51 F.Supp.2d 70 (D.R.I. 1999) ....................................................................7, 15

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
    2020 WL 11232926 (C.D. Cal. Dec. 2, 2020)............................................25, 26

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    130 F.Supp.3d 1331 (C.D. Cal. 2015)..............................................................24

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    2015 WL 12733442, . (C.D. Cal. Mar. 10, 2015) ............................................25

*Wash. Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp*,
    59 F.3d 793 (9th Cir. 1995) ...................................................................8, 18, 20

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ...........................................................................26

**Federal Statutes**

False Claims Act, 31 U.S. Code § 3729 ...............................................................25

**Other Authorities**

Civ. L.R. 11..................................................................................................17, 18

Civ. L.R. 37.............................................................................................*passim*

Fed. R. Civ. P. 36.........................................................................6, 8, 9, 15

Fed. R. Civ. P. 37.....................................................................................*passim*

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

## I.     INTRODUCTION

Fact discovery in this matter, including all discovery-related motions, concluded on August 16, 2021. Dkt. 41 (Scheduling Order). Yet Netlist now moves to re-litigate what are essentially discovery disputes – long after the discovery cut-off and even after a three-day jury trial on damages.[1] *See Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F.Supp.3d 1184, 1196 (D. Or. 2015) ("Plaintiff provides no explanation for its decision to wait more than 18 months after issuing its RFAs to raise this issue, or for its decision not bring this [Rule 37 (c)(2) motion] to the Court's attention before trial as permitted by Rule 36(a)(5)").

Without explaining why it waited to file this Motion, Netlist now contends that it had to perform *2,791.14 hours* of additional attorney work which equates to *over $600,000* of time because Samsung purportedly provided insufficient responses to twenty-six largely duplicative requests for admissions, half of which were already litigated with Samsung's responses having been found adequate by Magistrate Judges McCormick and Spaeth. Initially, Netlist's declarations of fees and expenses purportedly flowing from Samsung's responses are both so vague as to make lodestar calculation impossible, as well as unreasonable on their face. Netlist provides only summary charts with vague task descriptions, offering the Court no information on what specific tasks it claims were necessitated by Samsung's responses, and when those tasks were performed. Revealingly, Netlist's declarations are so haphazard as to include multiple tasks that appear to have been performed *prior to service of the relevant requests.* On that basis alone, the Court has discretion to deny the Motion in its entirety. *Haiping Su v. NASA*, 711 Fed.App'x 444, 445 (9th Cir. 2018) (affirming the district court's denial of Rule 37(c)(2)

---

[1]   Netlist's Motion pertains to discovery responses which were served primarily in July and August 2021, and seeks only their expenses up to the Summary Judgment briefings, the last of which were filed four months ago on September 6, 2021. *See* Dkt. 178, 179.

3770970.3

6

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

1  sanctions on the basis that the fees sought were "plainly unreasonable").

2  Netlist's Motion independently fails based on subsection (A) of Fed. R. Civ.

3  P. 37(c)(2), which disallows sanctions when the requests were "held objectionable."

4  Here, Samsung lodged substantive and appropriate objections to each of the requests

5  at issue. For half of the requests, Netlist moved to overrule Samsung's objections

6  and compel further responses but were rebuffed by Magistrate Judges McCormick

7  and Spaeth.[2] For the other half, Netlist abandoned its challenges or failed to move at

8  all, waiving its right to seek sanctions. The Court should not vindicate Netlist's

9  inaction here by resurrecting these settled disputes, belatedly ruling on each of

10  Samsung's objections, and with regards to some of the requests, disturbing prior

11  rulings by the Magistrate Judge. *See Russo v. Baxter Healthcare Corp.*, 51

12  F.Supp.2d 70, 79 (D.R.I. 1999) (denying Rule 37(c)(2) sanctions on the basis that

13  "[t]his Court declines to undertake a task which was made necessary as a result

14  of . . . inaction").

15  Waiver is not Netlist's only procedural deficiency here. The Motion also

16  bypasses Magistrate Judge Spaeth, to whom all discovery matters have been

17  assigned, and also fails to follow the procedure for discovery disputes under Local

18  Rule 37. As a result, Netlist is forced to attach an unauthorized twelve-page

19  appendix to its twenty-five page brief. That Netlist must proceed in this improper

20  fashion only further highlights that, under the proper protocol governing what are in

21  reality discovery disputes, it should have followed the discovery conference process

22  and Local Rule 37.

23  Even assuming Netlist's Motion made procedural sense, it lacks substantive

24  merit. Sanctions under Fed. R. Civ. P. 37(c)(2) are inappropriate when "(B) the

---

[2]  All discovery issues in this matter were referred to Magistrate Judge Douglas F. McCormick prior to his recusal on July 19, 2021, when the matter was reassigned to Magistrate Judge Autumn D. Spaeth. Dkt. 77.

3770970.3

7

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

admission sought was of no substantial importance" or "(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter." Each of the relevant requests – whether pertaining to supply, tax withholding, or termination of the JDLA – fall under these exceptions, either because Samsung provided truthful denials or qualified admissions that differ from Netlist's desired admissions only in semantics, or because the subject matter was ultimately not material to Netlist's claims. *Wash. Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp*, 59 F.3d 793, 806 (9th Cir. 1995) (finding the challenged response to be of "no substantial importance" when it did not go towards required element of claim). Further, Netlist's claims of prejudice are contrived, given that for each of the requests, it already had in its possession the information it purported to need from Samsung. The law does not permit sanctions under these circumstances. *Mane v. Tri-City Healthcare Dist.*, 2007 WL 935624, at *4 (S.D. Cal. Mar. 21, 2007).

It is now five months past the close of discovery and nearly two months since the jury trial was completed. At this late stage, Netlist asks the Court to reopen the discovery record and belatedly rule on stale – and ultimately inconsequential – disputes. The Court should deny Netlist's Motion in its entirety.

## II.    LEGAL STANDARD

Rule 37(c)(2) provides that "if a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2). There are four exceptions within this rule, each of which is fatal to any motion for sanctions if found applicable: where "(A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." *Id.*

The Court has "considerable discretion" in determining whether fees asserted

8

by the moving party are reasonable. *Haiping Su*, 711 Fed.App'x at 445. If the fees are unreasonable, it is within that discretion to deny them in their entirety. *Id.*

## III.   FACTUAL BACKGROUND

### A.   Netlist's Prior Attempts to Expand Discovery Disputes Beyond the Fact Discovery Deadline.

Netlist initiated this action on May 28, 2020. Dkt. 1. Samsung filed its answer on November 6, 2020. Dkt. 27. Discovery, therefore, was available to Netlist since at least that date. *See* Dkt. 26 (Initial Standing Order for Civil Cases) at 6:9-17 ("[C]ounsel should begin to conduct discovery actively before the Scheduling Conference. Discovery is not stayed prior to the Scheduling Conference or after dates have been set unless otherwise ordered by the Court"). Subsequently, the Court set August 16, 2021 as the deadline for fact discovery. Dkt. 41 at 3. In its Scheduling Order, the Court specifically noted that "[t]he cut-off for discovery is not the date by which discovery requests must be served; it is the date by which all discovery, including all hearings on any related motions, must be completed." *Id.* § B.1.

Netlist elected to delay pursuing discovery necessary for its claims, declining to serve written discovery until March 4, 2021 (with the bulk of its written discovery being served in June and July), and noticing its first depositions on June 8, 2021. Declaration of Christopher J. Lee ("Lee Decl.") ¶ 2, Exh. 1. Since then, Netlist has made multiple efforts to extend the Court's discovery deadline by using self-created time crunches as a basis for untimely discovery disputes.

On August 3, 2021, Netlist filed an *ex parte* application to take the deposition of certain Samsung witnesses out of time. Dkt. 114. The Court denied its application on the same day. Dkt. 117. In that Application, Netlist argued that they should be granted relief because Samsung produced documents shortly before the fact discovery deadline, an argument it returns to in the instant Motion to justify sanctions. Mot. 31:3-11. The Court's rejection of that argument applies with equal

force here: Netlist "created the crisis giving rise to the need for ex parte relief." Dkt. 117 at 1-2.

Subsequent to the Court's denial of its *ex parte* application, Netlist redirected its efforts to Magistrate Judge Spaeth. On September 1, 2021, after the fact discovery deadline had already passed, Netlist requested an informal discovery conference with Magistrate Judge Spaeth, citing to various purported irregularities with Samsung's document production. Lee Decl. ¶ 3, Exh. 2. On the next day, September 2, 2021, Magistrate Judge Spaeth struck the request as untimely. Dkt. 175.

With the jury trial on damages now completed, Netlist belatedly moves for sanctions under Fed. R. Civ. P. 37(c)(2), demanding that the Court return to stale discovery issues that could have been resolved months earlier.

**B.    The Relevant Requests for Admission.**

Netlist's Motion focuses on twenty-six requests for admission, each of which Samsung objected to and then provided a qualified admission, or denied subject to those objections. While the requests may appear voluminous, they are largely duplicative requests pertaining to a few relatively straightforward issues.[3] Many of the requests are substantively identical save for slight differences in wording, and can be streamlined into the following issue areas:

**Issues Pertaining to Supply**

(1) Whether Samsung allocated zero or limited product to Netlist from February 1, 2017 to July 15, 2020 (RFA Nos. 5, 27, 28, 29, 30, 31, 32, 34, 35, 37, 38, 39, 40, 41);

(2) Whether Samsung sold product to customers other than Netlist when it limited product to Netlist (RFA No. 6)(the requests included in

---

[3]    In total Netlist propounded sixty-nine RFAs on Samsung. In comparison, Samsung propounded nineteen RFAs on Netlist. Lee Decl. ¶ 4.

3770970.3

10

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

(1)-(2) are collectively referred to herein as "**Supply RFAs**")

**Issues Pertaining to Tax Withholding**

(3) Whether Samsung withheld $1.32 million from the $8 million NRE fee to be paid to Netlist under the JDLA (RFA No. 7);

(4) Whether Samsung stated to the Korean Tax Authority that Samsung licensed Netlist patents through the JDLA (RFA No. 10);

(5) Whether the Korean Tax Authority Ruled that Samsung's withholding was improper (RFA No. 46) (the requests included in (3)-(5) are collectively referred to herein as the "**Tax RFAs**").

**Issues Pertaining to Termination of the JDLA**

(6) Whether Samsung received a letter from Netlist dated May 27, 2020 (RFA Nos. 13, 14, 50);

(7) Whether Samsung took any action after receiving that letter (RFAs 15, 50, 52, 53, 55) (the requests included in (6)-(7) are collectively referred to herein as the "**Termination RFAs**").

**C.     Samsung's Responses to the Supply RFAs (Nos. 5, 6, 27-32, 34-35, 37-41).**

On July 8, 2021, Samsung responded to each of the Supply RFAs, asserting various objections but, subject to those objections, admitting "that Defendant has indicated routinely to Plaintiff throughout the time period from November 12, 2015 to present – as it would with any other similarly situated customer during the same time period – that it is unable to support every request for products." Lee Decl. ¶ 5, Exh. 3. On August 9, 2021, Samsung amended its response to RFA Nos. 27, 28, 29, 37, 38, 39, 40, and 41, adding the further admission that Samsung "ultimately did not support requests that it indicated it is unable to support." Lee Decl. ¶ 7, Exh. 5.

The sum and substance of these responses was that, even though the requests were objectionable, Samsung was admitting that it did not always supply product to Netlist. Magistrate Judge Spaeth confirmed that Samsung's responses to the Supply

RFAs were adequate. At the parties' July 27, 2021 informal discovery conference,
Netlist moved to compel further admissions to RFA Nos. 16-41. Lee Decl. ¶ 8, Exh.
6. Magistrate Judge Spaeth found that Samsung's response was adequate so long as
Samsung would supplement to clarify that it ultimately did not support the orders it
indicated it was unable to support. *Id.* Samsung did so. *Id.*

### D.   Samsung's Responses to the Tax RFAs (Nos. 7, 10, 46).

RFA No. 7 asked Samsung to admit that it "withheld $1,320,000 from the $8
million NRE fee to be paid to Netlist under the Agreement." Lee Decl. ¶ 9, Exh. 7.
Samsung objected to and denied this request, and subject to its objections, clarified
that it had "reported and paid tax withholding of $1,320,000 to the Korean National
Tax Service (NTS)." *Id.* Despite RFA No. 7's imprecise phrasing which implies that
Samsung withheld and then kept the $1,320,000, Samsung admitted the substance of
the request and included an additional clarifying fact that the $1,320,000 was
actually paid to the NTS. Netlist did not move to compel a supplemental response.

RFA No. 10 asked Samsung to admit that it "stated to the Korean Tax
Authority that Samsung was able to use patents belonging to Netlist without paying
royalties as a result of entering into the Agreement." Lee Decl. ¶ 9, Exh. 7. Samsung
objected to this request on the basis that, among other things, the capitalized term
"Korean Tax Authority" was ambiguous, there was no government organization in
the Republic of Korea named the "Korean Tax Authority" and the term was not
otherwise defined. *Id.* The parties later met and conferred on this issue, and
Samsung informed Netlist that it would answer superseding requests for RFA Nos.
7-12 if those requests clarified the term "Korean Tax Authority" to refer to either the
Korean National Tax Service or the Korean Tax Tribunal. Lee Decl. ¶ 10, Exh. 8.
On June 8, 2021, Netlist served a new set containing superseding requests for RFA
Nos. 7-9, but not RFA Nos. 10-12. Lee Decl. ¶ 5, Exh. 3. During an informal
discovery conference on June 17, 2021, Netlist moved to compel further responses
from Samsung to RFA Nos. 10-12, notwithstanding Samsung's indicated

1  willingness to respond to superseding RFAs. Lee Decl. ¶ 11, Exh. 9. Judge

2  McCormick indicated that he would not order Samsung to supplement its responses.

3  Lee Decl. ¶ 12, Exh. 10 at 7:17-8:5. Netlist never served a superseding request.

4      RFA No. 46 asked that Samsung admit that "the Korean Tax Tribunal

5  determined that it was not necessary under Korean law to withhold $1.32 million for

6  taxes." Lee Decl. ¶ 5, Exh. 3. Samsung objected to this request on the basis that,

7  among other things, it sought a legal conclusion. Without waiving that objection,

8  Samsung denied the request because Netlist's statement was inaccurate: Samsung

9  was not a party to the Korean Tax Tribunal proceeding, and the Tribunal never

10  found that Samsung's withholding was unnecessary. Rather, the Tribunal's ruling

11  was limited to finding that Netlist was entitled to a refund. Lee Decl. ¶ 13, Exh. 11

12  at 2 ("We hereby revoke the 01/30/2020 disposition of the head of East Suwon Tax

13  Office whereby the tax reassessment petition filed by the Appellant was rejected.")

14  A finding that a party is entitled to a tax refund does not necessarily equate to a

15  finding that the initial withholding was unlawful. Netlist did not move to compel a

16  further response.

17      **E.     Samsung's Responses to the Termination RFAs (Nos. 13-15, 50, 52,**

18          **53, 55)**

19      Samsung responded to Netlist's RFA Nos. 13-15 on April 19, 2021, objecting

20  to each on the basis that they improperly requested that Samsung admit the legal

21  conclusion that Netlist's May 27, 2020 letter was a valid notification of breach. Lee

22  Decl. ¶ 9, Exh. 7. The parties met and conferred on the issue, and Samsung

23  indicated that it would answer superseding requests that were worded to resolve the

24  issue. Lee Decl. ¶ 14. On June 8, 2021, Netlist served its RFA Nos. 50-55, which

25  covered the same substance as Nos. 13-15. Samsung did not serve supplemental

26  responses to RFA Nos. 13-15 because it understood that those requests would be

27  superseded by Nos. 50-55.

28      While preserving its objections, Samsung provided truthful responses to RFA

3770970.3

13

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

Nos. 50, 52, 53, 55 on July 27, based on its reasonable understanding of the facts at the time. In response to RFA No. 50, Samsung admitted that "a letter dated May 27, 2020 was received by Defendant's mail room and returned to sender the next day." Lee Decl. ¶ 6, Exh. 4. This was and remains a true statement. In response to RFA No. 52, Samsung again responded truthfully that it could not determine when it had received the letter based on the records available to it. *Id.* In response to RFA Nos. 53 and 55, Samsung denied that it had not responded to Netlist's May 27 letter, based on its understanding that because this lawsuit was filed on May 28, 2020 – a day after the letter was sent – its counsel's subsequent correspondence with Netlist's counsel constituted a response. *Id.* Netlist did not move to compel further responses.[4]

## IV. ARGUMENT

### A. Netlist's Motion is Procedurally Deficient.

As detailed *supra*, each of the RFAs Netlist complains of were either: (1) found to be acceptable by the Magistrate Judge; (2) abandoned by Netlist; or (3) objected to and left unchallenged throughout discovery. A Rule 37(c)(2) motion allows a requesting party to be compensated when subsequently discovered information proves that the responding party's denial or qualified admission was untruthful. *See* Fed. R. Civ. P. 37(c)(2) (requesting party entitled to fees when it "***later proves*** . . . ***the matter true***") (emphasis added). It is not a vehicle to re-litigate stale discovery issues after months of unwarranted delay, when there is no new information proving the responses inaccurate. *See Benson*, 105 F.Supp.3d at 1196.

---

[4]   While Netlist moved to compel regarding previous versions of Samsung's responses to RFA Nos. 50 and 52, it never moved to compel on the responses at issue here, which were supplemented on July 26, 2021. Lee Decl. ¶ 6, Exh. 4.

3770970.3

14

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

### 1.   Sanctions Are Not Warranted Because Samsung Asserted Objections Which Were Either Upheld or Unchallenged.

Rule 37(c) sanctions are not available when the relevant request is "held objectionable under Rule 36(a)." Fed. R. Civ. P. 37(c)(2)(A). Therefore, Netlist cannot demand sanctions where it unsuccessfully moved to overrule Samsung's objections. *In re Gilman*, 2019 WL 3096872, at *13 (9th Cir. Jul. 12, 2019) (affirming denial of Rule 37(c)(2) sanctions on the basis of request for admission that was held objectionable by trial court).

Similarly, for requests where Samsung asserted substantive objections that are valid on their face, and Netlist did not move to overrule them, sanctions cannot be awarded as Netlist has waived its right to test the validity of the objections by waiting to file this Motion. *See Benson*, 105 F.Supp.3d at 1196 ("Plaintiff provides no explanation for its decision to wait more than 18 months after issuing its RFAs to raise this issue, or for its decision not [*sic*] bring this dispute to the Court's attention before trial as permitted by Rule 36(a)(5)"); *Russo*, 51 F.Supp.2d at 79 ("The task of looking back in time to determine whether particular objections would have been upheld fully or partially had they been challenged by the requesting party is not easily performed . . . This Court declines to undertake a task which was made necessary as a result of . . . inaction").[5]

As discussed *supra*, Samsung propounded objections to each of the twenty-six RFAs at issue here. Netlist challenged the validity of these objections before Magistrate Judges McCormick and Spaeth with regards to each of the Supply RFAs

---

[5]    Although parties do not need to separately challenge each and every boilerplate objection to preserve their ability to bring a motion under Rule 37(c)(2), *Marchand v. Mercy Medical Center*, 22 F.3d 933, 938 (9th Cir. 1994), that does not excuse parties that wait to challenge substantive objections for the first time until after trial, despite having ample opportunity to do so during discovery. *See Benson*, 105 F.Supp.3d at 1196-97 (distinguishing *Marchand*).

excluding Nos. 5 and 6 (Nos. 27, 28, 29, 30, 31, 32, 34, 35, 37, 38, 39, 40, 41), as well as RFA No. 10. In each instance, the Magistrate Judge declined to order a supplemental response. The fact that *fifty percent* of the objections and responses Netlist complains of here have already been ruled upon and found appropriate by the Magistrate Judge makes it apparent that the instant Motion is in fact a belated demand for the Court to second-guess these discovery rulings.

With regards to the remaining RFAs (Nos. 5, 6, 7, 13, 14, 15, 50, 52, 53, 55), Netlist never moved to challenge the validity of Samsung's objections. Therefore, Netlist has waived its right to demand sanctions.[6]

## 2. Netlist's Motion Attempts to Bypass Magistrate Judge Spaeth and Does Not Comply with Local Rule 37.

The Court's Standing Order states that "[a]ll discovery matters, including all discovery motions, are referred to the assigned United States Magistrate Judge." Dkt. 26 at 5:16-28. But Netlist ignores this instruction and proceeds directly to this Court with the instant Motion, despite the fact that its subject matter is inextricable from discovery issues previously adjudicated upon by Magistrate Judges McCormick and Spaeth. Netlist is forced to now do so because it failed to previously move to compel on many of the objections asserted to the RFAs at issue.

But even if this Court was the proper venue, Netlist's Motion is still improper due to a failure to comply with Local Rule 37. Local Rule 37 requires that "*[b]efore filing any motion relating to discovery under F.Rs.Civ.P. 26-37*, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." Civ. L.R. 37-1. The

---

[6] If and to the extent that the Court allows this Motion to proceed, an independent determination as to the validity of Samsung's objections must be made prior to awarding sanctions. *See Benson*, 105 F.Supp.3d at 1196 (holding that sanctions were not warranted under Rule 37(c)(2)(A) after analyzing validity of responding party's objection that the request demanded a legal conclusion).

moving party must request a Rule 37-1 conference through a formal letter "identify[ing] each issue and/or discovery request in dispute" and stating the moving party's position, any applicable legal authority, and the relief sought. Following the Rule 37-1 conference, the parties are required to prepare a joint stipulation that contains the contentions and legal authorities of both parties. Civ. L.R. 37-2.2. The parties are then afforded the opportunity to file supplemental memoranda 14 days prior to hearing. Civ. L.R. 37-2.3. "The Court will not consider *any discovery motion* in the absence of a joint stipulation or a declaration from counsel . . . establishing that opposing counsel" failed to cooperate in the relevant procedures. Civ. L.R. 37-2.4 (emphasis added). Failure to comply with Rule 37 may result in imposition of sanctions. Civ. L.R. 37-4.[7]

Here, Netlist first informed Samsung of its intention to file this Motion during a conference regarding post-trial motions on January 3, 2022. Lee Decl. ¶ 15. Netlist did not request a Rule 37-1 conference of counsel through a letter summarizing its position and identifying each request for admission in dispute. *Id.* Netlist unilaterally filed this Motion by piggybacking on the Court's post-trial briefing schedule instead of complying with the joint stipulation procedures of Local Rule 37.2, and has not provided a declaration averring that Samsung failed to cooperate.

### 3.    Netlist's Motion Does Not Comply with Local Rule 11-6.

"No memorandum of points and authorities, pre-trial brief, trial brief, or post-trial brief shall exceed 25 pages in length, excluding indices and exhibits, unless permitted by order of the judge." Civ. L.R. 11-6. In addition, the Court's Civil Case

---

[7]    The Ninth Circuit has found that the Local Rule 37 process is inapplicable to motions *in limine* under Fed. R. Civ. P. 37(c)(1). *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). This is unsurprising, given that pre-trial motions *in limine* do not involve discovery issues. The Ninth Circuit has made no analogous ruling with regards to motions relating to requests for admission under Fed. R. Civ. P. 37(c)(2).

3770970.3

17

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

Standing Order provides that "[o]nly in rare instances and for good cause shown will the Court grant an application to extend these page limitations." Dkt. 26 at 8:3-10. Here, Netlist attaches a 12-page appendix to its 25-page brief without seeking the Court's leave. *See* Dkt. 288-16.

Netlist's violation of Local Rule 11-6 is notable because it is a direct consequence of its violation of Local Rule 37-1. Parties generally require more pages to brief discovery disputes, as they often necessitate a listing of the relevant requests and responses. This is why Local Rule 37-2.1 specifically provides parties with leave to exceed the 25-page limit. The fact that Netlist had to exceed the page limit – without appropriate leave of the Court – only further confirms that it has chosen the wrong procedural vehicle to adjudicate discovery issues that should have been raised long ago.

**B.    Netlist's Motion Is Substantively Meritless.**

**1.    Sanctions Are Not Warranted When Responses Are of No Substantial Importance or When a Party Has Reasonable Grounds to Believe That Its Responses Are Truthful.**

To be of substantial importance under Rule 37(c)(2)(B), the subject matter of a response must be "material to the disposition of" a claim. *Haiping Su*, 711 Fed.App'x at 445; *see also Wash. Dep't of Transp.*, 59 F.3d at 806 (finding the challenged response to be of "no substantial importance" when it did not go towards required element of claim). But even if the subject matter pertains to a material issue such as a theory of liability, it is not of "substantial importance" unless that theory ultimately becomes material in the course of litigation. *Read-Rite Corp. v. Burlington Air Express, Inc.*, 183 F.R.D. 545, 547 (N.D. Cal. 1998) (theory of liability that was rejected by Court could not provide basis for sanctions under Rule 37). Sanctions are only justified where the admission would have allowed the requesting party to obtain information "it did not already have." *Mane*, 2007 WL 935624, at *4.

3770970.3

18

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

Courts have applied these exceptions broadly, finding that a party has "good reason" not to admit so long as "potentially valid arguments could have been made on both sides of this issue" upon which the admission was sought. *Magnetar Tech. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1161 (9th Cir. 2015); *see also Haiping Su*, 711 Fed.App'x at 445 (quoting *Magnetar*). "The true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." *Marchand*, 22 F.3d at 937. Therefore, even when a denial is made in error, sanctions are not warranted so long as "an honest and concerted effort had been made . . . to secure all available information concerning the request, and that the denial was made in the belief that it was accurate." *Garrison v. Warner Bros. Pictures*, 226 F.2d 354, 356 (9th Cir. 1955).

## 2. Sanctions Are Not Warranted for the Supply RFAs.

From the beginning of this litigation, Samsung has admitted that through all relevant time periods, it provided Netlist with only a limited allocation of product, and "routinely" indicated that it could not support orders. *See* Lee Decl. ¶¶ 7, 9 Exhs. 5, 8. Samsung did not deviate from this position during discovery, cross-motions for summary judgment, *See* Dkt. 186 at 9:28-10:1 ("Samsung does not dispute that it declined to fulfill all of Netlist's orders for NAND and DRAM products"), or at trial.

Samsung's responses to the Supply RFAs are a piece within this consistent position, functioning as an admission that Samsung did not always supply product to Netlist from February 1, 2017 to July 15, 2020. Netlist does not argue that these admissions were inaccurate, and therefore cannot argue that Samsung did not have "reasonable grounds" to propound them under Fed. R. Civ. P. 37(c)(2)(C)

Instead, Netlist claims that the admissions were inadequate because Samsung provided the same admission to its numerous requests asking for admissions that Samsung limited product in three separate time periods, instead of separate admissions for each request. This is pure semantics. Netlist did not need a separate

admission for each time period because Samsung admitted that it did not always supply product during *all* relevant time periods. Separate admissions would not have provided Netlist with anything that it did not "already have." *Mane*, 2007 WL 935624, at *4.

That Samsung did not specifically admit that it set Netlist's allocation to zero at some point is also immaterial. Indeed, the Court ruled on summary judgment that, under the terms of the JDLA, Samsung was obligated to "fulfill *all* of Netlist's orders[.]" Dkt. 186 at 9:26-10:1 (emphasis added). Given that Samsung had admitted to limiting product to Netlist during all relevant time periods, whether that limited allocation is zero or any other number was immaterial to Netlist's breach of contract claim.[8]

Netlist further claims that Samsung's responses were inadequate because it merely admitted to supplying product to customers other than Netlist in general, rather than specifically admitting that it supplied product to other customers "in the same fiscal quarters" that Netlist's requests were denied (RFA No. 6). This distinction again cannot be material given that, as discussed *supra*, Samsung admitted that it did not fully fulfil all of Netlist's requests during *every* fiscal quarter between February 1, 2017 to July 15, 2020.

Finally, sanctions are not appropriate because the Supply RFAs sought information that Netlist already had. Under Rule 37 and the applicable case law, sanctions are only authorized when new information is obtained and the requesting party "later proves . . . the matter true." Fed. R. Civ. P. 37(c)(2); *see Mane*, 2007

---

[8]   At most, these responses may have provided extrinsic evidence as to Samsung's intent. But the Court made clear in its summary judgment ruling that extrinsic evidence was not considered. Dkt. 186 at 8:9-11, 15-17 ("extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face"). Given this, whether Samsung allocated zero product to Netlist in a particular month was not of substantial importance. *See Wash. Dept. of Transp.*, 59 F.3d at 806.

WL 935624, at *4. Here, Netlist already knew that Samsung did not fulfill all of its requests as Samsung directly informed Netlist of its allocation decisions, and Netlist knew whether or not its product requests had been fulfilled by virtue of the products it did or did not receive. There was no new information that later proved otherwise. Thus, Netlist could not have been materially impacted by Samsung's responses to the Supply RFAs.

### 3.    Sanctions Are Not Warranted for the Tax RFAs.

In response to RFA No. 7, which requests an admission that "Samsung withheld $1,320,000 from the $8 million NRE fee[,]" Samsung admitted that it "reported and paid tax withholding of $1,320,000 to the Korean National Tax Service (NTS)." Lee Decl. ¶ 9, Exh. 7. This response was factually accurate, and Netlist does not claim otherwise. Samsung never disputed the $1,320,000 tax withholding at any point, nor did it contend that it was shielded from liability because it directly paid the Korean NTS rather than keeping the money for itself. Whatever minor semantic differences exist between the admission Netlist wanted and the admission it received, they could not have been of substantial importance.

As discussed *supra*, after meeting and conferring regarding the ambiguity of the term "Korean Tax Authority" in RFA No. 10, Samsung agreed that it would respond to a superseding RFA that requested the same admission while clarifying that the term referred to the Korean National Tax Service or the Korean Tax Tribunal. Lee Decl. ¶ 10, Exh. 8. Having elected not to serve this request throughout months of fact discovery, Netlist cannot turn around now and demand sanctions when any alleged lack of admission was caused by its own inaction. In any case, information provided by Samsung to the Korean government was of no substantial importance to Netlist's tax claim. And, as with the Supply RFAs, there is no subsequently discovered information that contradicts the response. Indeed, the Court did not consider such information when ruling on summary judgment that Samsung failed to pay the full NRE fee to Netlist, *See* Dkt. 186 at 15:26-16:9, and Netlist

21

abandoned its theory that Samsung violated its duty to reasonably cooperate with Netlist's efforts to obtain a refund pre-trial. Dkt. 246 (Netlist's Notice Limiting Asserted Count Two); *see Read-Rite Corp.*, 183 F.R.D. at 547 (RFAs pertaining to unsuccessful theories of liability cannot be a basis for Rule 37 sanctions).

In response to RFA No. 46, which requests an admission that "the Korean Tax Tribunal determined that it was not necessary under Korean law to withhold $1.32 million for taxes on the $8 million fee owed to Netlist under the Agreement," Samsung truthfully denied the request based on its reasonable understanding that it was not a party to the Korean Tax Tribunal proceeding, and that the Tribunal's decision only stated that Netlist was entitled to a refund – not that Samsung's initial withholding was unlawful. Lee Decl. ¶ 16. This is consistent with the Tribunal's published decision, a document Netlist itself produced early in discovery. *See* Lee Decl. ¶ 13, Exh. 12. Moreover, as with RFA No. 10, the distinction between Netlist's desired admission and Samsung's truthful response was of no substantial importance.

### 4.    Sanctions Are Not Warranted for the Termination RFAs

Samsung did not supplement its responses to RFA Nos. 13 and 14 because, as a result of the parties meet-and-confer efforts regarding Samsung's objection that the requests as worded required a legal conclusion, Samsung agreed to respond to superseding requests. Lee Decl. ¶ 14. Netlist did serve RFA Nos. 50-55, which cover the same substance as Nos. 13 and 14. As with RFA No. 10, Netlist now disregards compromises reached through the parties' meet and confer process to pursue sanctions.

Samsung responded truthfully to RFA No. 50 by admitting that Netlist's May 27 letter had been delivered to its mail room but returned to sender. Lee Decl. ¶ 6, Exh. 4. Netlist has never proven otherwise. With regards to RFAs No. 52-55, which pertain to Samsung's purported lack of response to Netlist's May 27 letter, Samsung's denial was also truthful: as Netlist commenced this litigation

immediately afterwards on May 28, 2020, Samsung reasonably understood that the subsequent communications between Samsung, Netlist, and their counsel regarding the conduct of the litigation and a potential resolution constituted a response. *Id.* Both of these responses were made based on a diligent investigation of the facts. Lee Decl. ¶ 17. And in any case, Samsung's post-litigation conduct was not of substantial importance to Netlist's claims.

### C.     Netlist's Requested Expenses Are Unreasonable.

Perhaps what is most notable about Netlist's Motion is that, while glossing over the legal issue of whether Netlist is entitled any fees at all (because it is not), it devotes ten pages to justifying the calculation of its $657,045.02 fee request.

In the Ninth Circuit, the customary way of determining reasonable fees is the lodestar method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *see also Bird v. Wells Fargo Bank*, 2017 WL 4123715 at *1 (E.D. Cal. Sep. 18, 2017) ("district courts have applied lodestar when sanctions are appropriate under Rule 37"). Under this method, the fee applicant has the burden of providing the Court with sufficient evidence "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983). The court then determines based on this evidence whether the rates and hours are reasonable, incorporating factors such as the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained. *Morales*, 96 F.3d at 363 (citing *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir.1988)). Once the Court determines reasonable rates and hours, the multiple of the two becomes the "lodestar," or starting point, for fee calculations. *Id.* at 363. If necessary, the Court then applies adjustments to the lodestar to account for specific facts and circumstances, based on the factors outlined in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

While Rule 37(c)(2) permits a party to seek reasonable fees that result directly

3770970.3

23

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

from untruthful responses to requests for admission, it is not a vehicle to obtain blanket reimbursement for all discovery that covers similar or related issues. Indeed, a court abuses its discretion when it awards sanctions for expenses that do not "flow" directly from the relevant admissions or denials. *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 581 (9th Cir. 1992) (items that accrued prior to discovery requests "[do] not flow from [the responding party's] wrongful failure to qualify its denials") (citing *Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 801 (4th Cir. 1975) (sanctions limited to "expenses which resulted from the failure of [the responding party] to perform")).

### 1.    Netlist Fails to Carry its Burden to Provide Evidence of Reasonable Hourly Rates.

The reasonable hourly rate for lodestar calculation is determined based on the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The fee applicant bears the burden of producing sufficient evidence that the requested rates are reasonable. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—*in addition* to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation") (emphasis added).

Here, Netlist does not provide the Court with sufficient evidence to determine whether the claimed hourly rates are reasonable in the Central District of California given the subject matter of the case. Netlist asks the court to authorize rates of $845 to $1,370 per hour. As support for these rates, Netlist cites to a seven-year-old case which determined that *intellectual property partners* at major law firms bill in the range of approximately $600 to $1,100 per hour. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F.Supp.3d 1331, 1337 (C.D. Cal. 2015).

*Universal Electronics* provides no relevant information for lodestar purposes in this case for two reasons: first, *Universal Electronics* was a patent infringement case involving complex technical issues. *See generally Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 2015 WL 12733442, at *1. (C.D. Cal. Mar. 10, 2015). In contrast, this is a contract case involving no intellectual property claims. *See* Dkt. 23 ¶¶ 25-41. Even Netlist agrees, having previously filed a motion *in limine* to exclude evidence that Netlist sought to sue Samsung for patent infringement from trial. *See* Dkt. 211. The degree of specialized technical analysis necessary in *Universal Electronics* simply did not exist here. As a result, Netlist's lodestar calculation which assumes an inflated rate based on the prevailing rate for intellectual property partners only (particularly given that its fee application also encompasses several associates), is inherently flawed.[9]

Second, Netlist assumes, with no evidence or supporting declaration from a fees expert, that "large firms have typically increased rates 4-5% per year" since 2015. (Mot. 22:18-20). Given this, the $600-$1,100 range authorized in *Universal Electronics* offers no basis for a finding that Netlist's current $845-$1,370 rates are reasonable. Indeed, the hourly rate range here far exceeds even what was claimed by Netlist's counsel Gibson Dunn in *Amphastar*, a 2020 decision where the Court authorized rates "ranging from $350 for associates to $1,090 for senior partners" in a multi-billion dollar False Claims Act case. *Amphastar Pharm., Inc. v. Aventis Pharma SA*, 2020 WL 8680070, at *5.

---

[9]   Netlist also cites to two other cases involving factual circumstances that are inapplicable here: *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 2020 WL 11232926, at *1 (involving state and federal antitrust claims); *Amphastar Pharm., Inc. v. Aventis Pharma SA*, 2020 WL 8680070, at *8 (C.D. Cal. Nov. 13, 2020) (multi-billion dollar *Qui Tam* action based on False Claims Act).

3770970.3

25

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

2.      **Netlist Fails to Carry its Burden to Provide Evidence of
Reasonable Hours Spent.**

"Block billing" – the manner by which Gibson Dunn tracked its bills in this matter – is disfavored in this circuit. Indeed, the Ninth Circuit "does not quarrel with the district court's authority to reduce hours that are billed in block format" because "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); *see also Hensley*, 461 U.S. at 437 (fee applicant must "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

In previous matters litigated by Gibson Dunn, District Courts have applied twenty to thirty percent reductions based on Gibson Dunn's block billing practices. *See Amphastar*, 2020 WL 8680070, at *5 (C.D. Cal. Nov. 13, 2020) (reduction applied "because Defendants routinely lumped together multiple tasks in the narrative portions of their billing entries or failed to provide an adequate description of the work performed in other entries, making it impossible for the Court to determine whether Defendants spent the appropriate amount of time on each task throughout this multi-year litigation"); *Trendsettah*, 2020 WL 11232926, at *5 (C.D. Cal., Dec. 2, 2020) (applying 30% reduction to block billed entries).

Here Gibson Dunn's "block billing" practice is even more vague than its application in *Amphastar* and *Trendsettah*. In their declarations, Gibson Dunn's attorneys pool together multiple disparate tasks performed over weeks or months into single entries, so that it is genuinely "impossible" for the Court to evaluate their reasonableness. *Brownlee*, 353 F.3d at 971. Gibson Dunn has conspicuously not provided the Court with a ***single*** actual time sheet (or any other document containing line item billing entries) for its attorneys other than contracted document

reviewers. Instead, they merely provide a consolidated chart from each attorney grouping their billing into vague and overbroad task areas – such as "Identify and analyze key documents" or "prepare for and attend deposition" – and arbitrarily assigning a percentage of each subject as relevant to the issues it contends that Samsung did not admit to. *See, e.g.*, Dkt. 288-2 (Declaration of Jungeun Lee) at ¶ 11.

Because Netlist fails to provide Gibson Dunn's billing records in this manner, there is no way for the Court to determine what specific tasks were performed, on which dates they were performed, and whether these tasks correspond to any particular issue implicated by the various RFAs at issue here. Nor can the Court determine if any of the tasks reflected "duplication of effort" or "overstaffing." *Amphastar*, 2020 WL 8680070, at *12. Indeed, Netlist does not even attempt to describe to the Court the specific nature of the "extra" work that Gibson Dunn did that would have been rendered unnecessary had Samsung delivered clean admissions. For example, Netlist does not list a single witness that would not have been deposed but for Samsung's responses, or identify any documents that would not have otherwise been reviewed. Further, Netlist does not inform the court whether the arbitrary percentage it assigns to each task pertains to work caused by Samsung's responses to any particular Supply RFA, Tax RFA or Termination RFA.

Netlist's failure to identify the dates on which individual tasks were performed is especially problematic because any expense that accrues prior to the relevant discovery response by Samsung cannot be awarded as sanctions. *See Holmgren*, 976 F.2d at 581. A cursory examination of Netlist's billing information indicates that ***no effort has been made to segregate time spent prior to the relevant discovery responses***. Jungeun Lee, for example, seeks expense for document review work performed from "May 1, 2021 to July 27, 2021," Dkt. 288-2 at ¶ 11, a time period that predates many of the responses covered by this Motion. Similarly, the time records for Gibson Dunn's contract attorneys include entries starting on May

3770970.3

27

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

15, 2021, at which point the majority of the requests Netlist complains of in their Motion had **not even been served, never mind answered.** *Id.* Exh. 1.

The conclusion here is inescapable: Netlist did not even bother going through its billing records to segregate work that had no connection to the purportedly deficient responses. Rather, it simply added up its total discovery and summary judgment expenses and then applied arbitrary multipliers ranging from 10% to as much as 80%. The sheer vagueness of the information provided here renders a lodestar calculation impossible. Netlist has not carried its burden of proof, and its motion should be denied on that basis. *See Hensley*, 461 U.S. at 437.

### 3.     Based on the Evidence Provided, the Claimed Fees Are Unreasonable On Their Face.

Independent of its vague and unspecific nature, the evidence that Netlist did provide indicates that the total hours claimed are unreasonable. Overall, Netlist claims that Gibson Dunn spent ***2,791.14*** attorney hours solely due to the discrete factual issues implicated by Samsung's responses to these RFAs. Dkt. 288-1 (Declaration of Jason Lo) at ¶ 20. Michael Nadler, the primary drafter of Netlist's Summary Judgment Motion, declares that twenty percent of his 233.1 hours spent on that task was caused solely by these responses. Dkt. 288-5 (Declaration of Michael Nadler) at ¶ 6. Jungeun Lee declares that ***41.6 percent of the nearly six-thousand hours*** Gibson Dunn's contract attorneys spent on document review in this matter would not have been necessary if Samsung provided clean admissions. Dkt. 288-2 at ¶ 15. In other words, Netlist is claiming that it would have left un-reviewed nearly half of the hundreds of thousands of pages of documents produced in this action but for the minor semantic differences between the admissions they wanted and the admissions they got from Samsung.[10]

---

[10]   As Netlist's comprehensive presentation of evidence at trial – which was limited to only damages – demonstrates, Gibson Dunn intended to review all of the

3770970.3

28

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

1    Raymond LaMagna, the "attorney principally involved . . . in managing
2    discovery" for Netlist, Dkt. 288-7 (Declaration of Raymond LaMagna) at ¶ 2,
3    declares that 27.8 percent of *all* of his discovery work was necessitated by
4    Samsung's responses to these RFAs. *Id.* ¶ 7. Moreover, Mr. LaMagna declares that
5    he spent *97.3 hours* drafting the instant Motion – an amount nearly equal to the total
6    he claims to have spent on non-deposition discovery throughout the life of this case
7    (99.2 hours). *Id.* ¶¶ 7, 12. Mr. LaMagna also represents to the Court that he believes
8    "that the above hours under-estimates the work that went into this motion." *Id.* ¶ 12.
9    Three other Netlist attorneys (Jason Lo, Timothy Best, and Jungeun Lee) also each
10   claim approximately ten hours each of additional work on this Motion, not including
11   future work necessary to draft a reply or prepare for hearing.
12        The insubstantial nature of the relevant factual issues, as discussed in more
13   detail *supra*, further supports the conclusion that Netlist's hours cannot reasonably
14   be tied to the RFA responses at issue. Each of the material factual issues here, to the
15   extent they exist, could have been resolved by reviewing information and documents
16   that were already in Netlist's possession. For example, Netlist already had the
17   purchase orders it issued to Samsung and knew which ones were not fulfilled. All
18   Netlist needed to do to prove that the Korean Tax Tribunal ruled in its favor was to
19   produce the Tribunal's published decision, as it did early on in discovery. *See* Lee
20   Decl. ¶ 13, Exh. 11. Samsung never disputed the accuracy of documents produced
21   by Netlist – in fact, the parties have stipulated to the authenticity of all documents
22   produced in discovery. Dkt. 137. Netlist cannot credibly argue that it expended
23   hundreds of thousands of dollars in fees in an effort to make the insubstantial factual
24   showings implicated by these requests for admission.
25        In sum, independent of Netlist's failure to provide adequate information to
26   apply the lodestar method, the actual numbers provided by Netlist – which total over
27
     _____
28   available documents no matter what responses were proffered by Samsung.

3770970.3

29

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S
MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION

$600,000 in fees and costs – are unreasonable on their face. That on its own is sufficient for the Court to deny Netlist's Motion in its entirety. *Haiping Su*, 711 Fed.App'x at 445 (no abuse of discretion where the Court denies unreasonable fees in their entirety).

## V.   CONCLUSION

Netlist's Motion lacks both procedural and substantive foundation. In addition, Netlist's arbitrary calculation of expenses flowing from the purportedly deficient responses is so vague and unreasonable as to doom the Motion on its own. Therefore, Samsung respectfully requests that the Court deny Netlist's Motion in its entirety.

DATED:  January 24, 2022

Ekwan E. Rhow
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:  _____

Ekwan E. Rhow
Attorneys for Defendant Samsung
Electronics Co., Ltd.

DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR FAILURE TO ADMIT REQUESTS FOR ADMISSION