# EXHIBIT 11

U.S.D.C CENTRAL DISTRICT OF CALIFORNIA
CASE NO. **8:20-cv-993-MCS (ADS)**
**Netlist Inc.**
VS. **Samsung Electronics Co., Ltd.**
PLAINTIFF'S EXHIBIT        **0192**
DATE _____ IDEN.
DATE _____ EVID.
BY _____
Deputy Clerk

Office for Government Policy Coordination
Prime Minister's Secretariat

"Go Korea!"

[logo:] **Go Korea!**

# TAX TRIBUNAL

Recipient:          See recipients below
(via)
Subject:            Notice of Tax Appeal Decision (Tax Appeal 2020-*Jeong*-1581)

| | |
|---|---|
| Appeal No.: | Tax Appeal 2020-*Jung*-1581 |
| Appellant: | Netlist, Inc |
| | 175 Technology, Suite 150, Irvine, California, United States |
| Agents: | PARK Joon-young, Attorney; PARK Kwang-jin, CPA |
| | 100, Hangang-daero (Hangang-ro 2-ga, 20th Floor), Yongsan-gu, Seoul |
| Disposition Agency: | Head of East Suwon Tax Office |

1. In accordance with the provisions of Articles 81 and Article 65(3) of the Framework Act on National Taxes (FANT), you are hereby notified of our decision on the subject appeal above.

2. The head of the relevant tax office (or head of customs office or local government) is hereby advised to enforce the disposition in accordance with the provisions of Article 80(2) of the Framework Act on National Taxes, prepare a final report on the "enforcement handling of tax appeal decision" pursuant to Article 32 of the FANT Enforcement Rules, and submit it to the Head of the Tax Tribunal (to the attention of the head of Administrative Office) within 14 days.

3. If you have an objection to the appeal decision, you may file an administrative lawsuit (in areas where an administrative court is not established, file with the main court of the district court) within 90 days from the date when you receive the written decision on your appeal.

Attachment: Written Decision 1 copy. The End.

## Head of the Tax Tribunal
[seal:] Seal of the Head of the Tax Tribunal

Recipients: Appellant (Agent); Head of the relevant tax office; Head of the National Tax Service (NTS)

| Assistant Clerk: | Clerk: | Adjudication Investigator: Final authorization issued |
|---|---|---|
| **KIM Soo-jeong** | **KIM Hyo-nam**  11/17/2020 | **JUNG Jeong-hee** |

Cooperator:

Enforcement: Standing Judge (1) – 1466 (11/17/2020)        Filed

Mailing address: Suite 431, 95, Dasom 3-ro (Eojin-dong), Sejong-si, Korea (zip) 30108 / http//www.tt.go.kr

Telephone No.: 044-200-1759  Fax No.: 047-200-1758 / ks1780@cpr.go.kr        /   Not open to public (6)

2-1

**Exhibit PX 0192**

NL108731

CONFIDENTIAL

# TAX TRIBUNAL

## Council of Tax Judges

## Decision

Appeal No.:    Tax Appeal 1581-*Jung*-2020

Appellant:    Netlist, Inc 175 Technology, Suite 150, Irvine, California, United States

Agents:    PARK Joon-young, Attorney; PARK Kwang-jin, CPA
100, Hangang-daero (Hangang-ro 2-ga, 20th Floor), Yongsan-gu, Seoul)

Disposition Agency:   Head of East Suwon Tax Office

## HOLDINGS

We hereby revoke the 01/30/2020 disposition of the head of East Suwon Tax Office whereby the tax reassessment petition filed by the Appellant was rejected.

CONFIDENTIAL                                                                     NL108732

# REASON

1. Disposition Overview

A.  Appellant is a foreign corporation established in the State of California, United States, in 2000. Its primary business is to provide high-performance memory module systems to original equipment manufacturers (OEMs). Appellant entered into an agreement called Joint Development and License Agreement (hereinafter referred to as the "Subject Agreement," or "JDLA," and said agreement memorialized in written form is referred to as the "Written Agreement") with Samsung Electronics Co., Ltd. (hereinafter referred to as "Samsung Electronics") on Nov. 12, 2015, and was to receive USD 8,000,000 (KRW 9,387,200,000, hereinafter "Subject Amount") as compensation in exchange therefor. Samsung Electronics paid the Appellant on Nov. 19, 2015, after deducting the combined sum of national corporate income tax (15%) and local corporate income tax, in the amount of USD 1,320,000 (KRW 1,548,888,000), as a royalty income from the Subject Amount pursuant to the "Convention between the Republic of Korea and the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and the Encouragement of International Trade and Investment" (hereinafter referred to as "Korea – U.S. Tax Treaty"). On Dec. 10, 2015, Samsung Electronics declared and paid KRW 1,408,080,000 as the withheld corporate income tax.

B.  Appellant filed a reassessment petition on Oct. 23, 2018, requesting refund of the corporate income tax in the amount of KRW 1,408,080,000 withheld by Samsung Electronics, and stating that the Subject Amount was "business income" not royalty income. The Disposition Agency rejected the Appellant's petition on Jan. 30, 2020, as it considered the Subject Amount as royalty income.

C.  Appellant disagreed with the disposition and filed an appeal on Apr. 1, 2020.

-2-

2. Argument of the Appellant and Opinion of the Disposition Agency

A. Argument of the Appellant

It is appropriate to consider the compensation provided in exchange for the Subject Service as business income, in light of the following points:

The service provided by the Appellant after entering into the Subject Agreement with Samsung Electronics (referred to as the "Subject Service") did not involve a transfer of information or knowhows; the Subject Service was performed to develop a new technology that does not already exist; The compensation does not exceed the amount of cost plus typical profits; Samsung Electronics bears the risks and responsibilities for the success or failure of the development as well as the burden of direct and indirect costs for development; Although a confidentiality clause is included in the Subject Agreement, it is a general provision typically included in joint development projects in general; and an agreement must be interpreted strictly according to the language of the agreement regardless of the objectives of the parties entering into the agreement.

(1) Not only did no transfer of information or knowhows occur from the provision of the Subject Service, but the Subject Service was an initial research and development service for joint development of technology (HybriDIMM, hereinafter referred to as the "Subject Technology") capable of producing the NVDIMM-P, a type of SCM (Service Class Memory); as such, the Subject Amount was compensation paid in exchange for "Personal Services," not royalty income.

(a) Article 93.8 of the Corporate Tax Act specifies royalty income as the cases where rights, assets, or information (equivalent to information or knowhows related to industrial, commercial, or scientific knowledge and experience) are used or the remuneration/compensation therefor is paid in the Republic of Korea.  This means that, for compensation to be classified as royalty income, there has to be a transfer of information or knowhows.

-3-

(b) The court also ruled that if it is purely and simply research and development activities *per se* without any transfer of information or knowhows, it is not royalty income, i.e., compensation paid in exchange for information or knowhows related to industrial, commercial, or scientific knowledge and experience, but business income. (See Seoul Administrative Court Decision on 01/30/2015; 2014-*GuHap*-62517)

(c) The National Tax Service (NTS) of Korea also interpreted that the compensation received in exchange for a research service provided by a foreign entity, a patent-holder, to determine applicability of patented technologies to Korean company's electronic product manufacturing methods constitutes business income (*GukIl* [Int'l Tax] 46017-523, 08/22/1995). In the case of this Exemplary Established Rule, it is substantially similar to the terms and conditions of the Subject Agreement in that: It is an initial service to develop a new technology; Refunds cannot be requested in the event of failure; Whether to proceed with the 2nd development will be determined according to the results of the 1st research; and technology, information, and knowhows gained from research and development will be jointly owned.

(d) In Section 2, "Joint Research and Development," of the Subject Agreement, the Subject Service is limited to the demos and general discussions of the technology according to the SOW (statement of work) and does not include disclosure of detailed technologies such as detailed specifications, algorithms, source code, and drawings, which indicates that transfer of technology held by the Appellant did not occur through the Subject Service.

(e) According to Section 4, "4.2 Solely and Jointly Owned Patents," of the Subject Agreement, the patents created from JDLA belong to the company with which the inventor employee is affiliated, but the patents jointly invented by both parties are jointly owned. Therefore, if the research and development of the Subject Technology is finally successful as a result of research and development activities according to the Subject Agreement, the Appellant will own the Subject

-4-

Technology according to Section 4 of the Subject Agreement. In case the Appellant desires to transfer the Subject Technology to a third party, Samsung Electronics will be granted the right of first rejection (ROFR). Therefore, if one were to say that the Subject Amount constitutes royalty income in exchange for knowhows, Samsung Electronics should be able to use the knowhows from the Appellant, but what is provided to Samsung Electronics through the project is merely the ROFR for the Subject Technology.

(f) Additionally, the license clause included in the Subject Agreement is merely a typical cross-licensing provision to describe the terms of release from royalties to proactively prevent legal problems caused by patent infringement that may occur during joint development. It is also confirmed that during the initial phase of research and development related to the compensation paid in exchange for the Subject Service, as a matter of fact, no patent was cross-used by the two companies, hence it is unreasonable to consider the compensation paid in exchange for the services performed in accordance with the development milestones and SOW (statement of work) as compensation paid in exchange for use of license on the basis of this clause.

(2) The Subject Agreement refers to a research and development service undertaken to develop new technologies that does not already exist. Put another way, what the Appellant has provided to Samsung Electronics according to the Subject Agreement is not the information or knowhows, but the research and development activities to develop the Subject Technology, called "HybriDIMM," which did not exist until the project was commenced. As such, the Appellant is not providing non-public technical information that it already had, and hence the compensation paid in exchange for the Subject Service must be regarded as business income, i.e., compensation paid in exchange for Personal Services.

(a) According to Article 93.8 of the Corporate Tax Act and Article 93-132···7 of the

-5-

Framework Rules of the same Act, the term, "royalty income gained from information or knowhows," refers to all pre-existing undisclosed technical information necessary for industrial reproduction of a product or process, regardless of whether it can be the target object of intellectual property rights. Therefore, 'royalty income' can be seen as compensation paid as a result of buyer receiving a preexisting technology transferred by the seller.

(b) Even in judicial precedents of other, relevant appeal decisions (refer to Tax Appeal 2011-*Gu*-937, 04/05/2013, etc.), royalty income was determined to be income obtained by using or providing a result that does not already exist or is not already completed, whereas the compensation paid in exchange for services to develop new technologies that does not already exist was determined to be business income. Additionally, Paragraph 10.2 under Article 12 of the Commentaries on the Articles of OECD Model Tax Convention states that "if the copyright owner of an already developed model or plan grants someone the right to modify or reproduce the model or plan without actually performing any substantial work, the copyright holder shall have the right to use the model or plan, the payment received by that owner in consideration for granting the right to such use of the model or plan would constitute royalties."

(3) It is appropriate to consider it as compensation paid in exchange for Personal Services, given that: The compensation paid in exchange for the Subject Service does not exceed the amount of cost plus typical profits; and all of the compensation was in fact used to reimburse labor cost and other expenses actually incurred.

(a) Basic Framework Rules of the Corporate Tax Act, 93-132···7, Paragraph 3(2) has the criteria for distinguishing Royalties versus Personal Services by looking into whether the cost for providing services significantly exceeds the cost of performing the services plus typical profits. In the case of a transaction that simply transfers a previously developed existing technology, etc., the

-6-

NL108737

additional cost for performing the services will be significantly smaller than the compensation paid in return, and on can expect that the cost of performing the services will substantially exceed the amount of the amount of cost plus typical profits. Hence, this legal clause is understood to mean that if a particular compensation significantly exceeds the amount of cost plus typical profits, it is regarded as royalty income.

(b) The Korean Supreme Court also ruled that, when determining Royalty income versus Personal Service income, if most of the service compensation was paid to reimburse labor cost and other expenses actually incurred, it is considered Personal Service income unless the compensation is excessively high to be considered Personal Service compensation (Supreme Court Decision on 06/24/2015; case no.: 2015-*Du*-950). In the case of the Subject Service, the compensation paid in exchange for the initial research and development service is USD 8,000,000, while the cost actually incurred from 2015 to 2018 for the service is found to be USD 9,660,951 in total. As such, the Subject Amount does not exceed. To the contrary, the amount of cost actually incurred for performing the research and development activities apparently exceeds the Subject Amount, i.e., the mutually agreed amount paid in exchange for the research and development service.

(4) Samsung Electronics bears the risks and responsibilities in accordance with success or failure of the development of Subject Technology, as well as the burden of direct and indirect costs required for the actual development. According to Corporate Tax Act Enforcement Standards 93-132-12, in the context of categorizing royalty income versus business income, when design service fees are paid, in case the service user bears the risks and responsibilities in accordance with success or failure of the development and actually pays for direct and indirect costs for development, and so on, it is categorized as business income.

In this case, even if the project fails, Samsung Electronics cannot be compensated for the Subject Amount paid to the Appellant, so it is fair to say that Samsung Electronics bears the risk of failure in research and development. Since the NRE Fee paid for the research and development

-7-

NL108738

cost constitutes Samsung Electronics' direct and indirect costs for development, it is appropriate to determine that the compensation paid in exchange for the Subject Service as business income.

(5) The confidentiality clause of the Subject Agreement is a comprehensive clause typically used service agreements in general and does not fall under the confidentiality protection regulation for specified information or knowhows. Therefore, it is unreasonable to regard the compensation paid in exchange for the Subject Service as royalty income based solely on the existence of confidentiality protection provisions.

(a) In Paragraph 3(1) of the Basic Framework Rules 93-132···7 of the Corporate Tax Act, if there is a confidentiality protection clause or there is a special mechanism that cannot be disclosed to a third party, it is regarded as royalty income. In relation to whether there is a contractual confidentiality protection clause or whether there is a special mechanism that prevents disclosure of information to a third party, the Tax Tribunal likewise also issued a decision (Tax Appeal 2015-*Seo*-2648, 5/9/2016) that it is difficult to see that the clause below is equivalent to a confidentiality protection clause for information or knowhows in cases where the burden of comprehensive confidentiality provisions is borne mutually by both parties for all information received and sent by and between the two parties without specifying the target object of confidentiality protection, it is not a unilateral/specific confidentiality protection clause that obligates the receiver of the information or knowhow to bear as to specific technology, etc., but a clause typically used in service agreements in general. It means that even though there is a confidentiality protection clause, it cannot be used as one-size-fits-all criteria for determining such compensation as royalty income.

(b) In this case, in the Subject Agreement, each party is obligated to maintain confidentiality regarding tangible and intangible assets such as deliverables as well as all sales, financial, contractual, and marketing information provided by the other party, which is a comprehensive

-8-

NL108739

confidentiality clause typically used in joint development projects. As such, this confidentiality clause is to protect tangible and intangible assets that may become incidentally known or transferred in carrying out the project between the two parties, and hence it cannot be called a confidentiality protection clause for specified information or knowhows.

(6) In this case, the nature of the project is joint research and development, and so there is no room for applying a clause on determination as to whether guarantee is provided. In Paragraph 3(2) of Article 93-123···7 of the Basic Framework Rules of the Corporate Tax Act, royalty income and Personal Service income are distinguished according to whether the user is required to play a special role in applying the information or knowhows provided to the user, or whether the provider guarantees the result of application. However, it is reasonable to say that the above categorization standards refer to the categorization standards for Personal Service income defined as income for the purpose of transferring the deliverables of professional services versus royalty income defined as income for the purpose of transferring information or knowhows. Therefore, the above categorization standards do not apply to this case where both success and failure could occur depending on the result of research and development.

(7) As the Subject Agreement specifies the compensation paid in exchange for the Subject Service as the research and development expense, it should be strictly interpreted according to the content of the language, not according to the intention of the service user. Even if the parties to the Agreement have different intentions for the Agreement, determination must be made strictly according to the language of the Agreement.

(a) According to the principle of taxation by substance, the Disposition Agency is of the opinion that the determination ought to be made by substance rather than the formality of a written agreement. Appellant is not saying that determination ought to be made by formality ignoring the substance. Appellant is saying that in determining the substance, if the parties to an agreement have different intentions with regards to the agreement, insofar as the objective meaning of the contractual language is clear, the existence and content of the expressed intention as is in the written language of the agreement ought to be accepted absent special circumstances. In other

-9-

words, Appellant is maintaining that that the substance ought to be determined by considering the content of the Subject Agreement and other documents of substantiation given that Appellant's and Samsung Electronics' purported intentions of entering into the agreement are not consistent with each other's.

(b) The court likewise delivered a decision (see Supreme Court Decision on 11/27/2014, Case No. 2012-*Da*-21621, and multiple other decisions) saying: Where certain contractual specifics are memorialized in the form of a written agreement, insofar as the objective meaning of the contractual language is clear, the existence and content of the expressed intention as is in the written language of the agreement ought to be accepted absent special circumstances, and especially where an interpretation different from the objective meaning of the written language would materially affect the legal relations between the parties, the content of the language ought to be interpreted even more strictly.

(c) In Article 3 of the Subject Agreement, entitled "Research and Development Expense," the Subject Amount is specified as an NRE (Non-Recurring Engineering) fee, which refers to the research and development expense for initial research and development. As a matter of fact, the Appellant commissioned the relevant workforce over a long period of time to perform the research and development service, incurring applicable costs, and when comprehensively considering the materials of substantiation and details of correspondence in reply, etc., related to the joint research and development, the actual substance of the Subject Agreement ought to be considered a joint research and development. Consequently, in determining the substance of the Subject Agreement, it is not tenable to say that Samsung Electronics' intentions, which were not discussed among the parties, alone were the true substance. Therefore, according to the written language of the Subject Agreement, it is appropriate to interpret the Subject Amount as compensation paid in exchange for research and development services.

(8) Based on Samsung Electronics' response, the Disposition Agency deemed the Subject Amount as compensation paid in exchange as royalties, on grounds that the main intention in signing the Subject Agreement was to resolve the risk of patent infringement that the Appellant

-10-

NL108741

could assert against Samsung Electronics, and joint research and development was secondary.

However, unless the intellectual property rights of the Appellant are used by Samsung Electronics uses for joint research and development purposes, the risk of patent infringement cannot be resolved through the Subject Agreement. According to the Subject Agreement, the Appellant expected to sign additional agreements by developing technologies that meet specifications of Samsung Electronics and to gain additional profits from selling the applicable technologies to Samsung Electronics. This can also be ascertained by the response of Samsung Electronics that the right of first refusal (ROFR) under Section 5.2 of the Subject Agreement was initiated by the Appellant. Therefore, the opinion of the Disposition Agency that the purpose of signing the Subject Agreement is to resolve the risk of patent infringement is not in comport with facts.

(a) According to the preamble recital of the Subject Agreement, it declares the intents and purposes of the Subject Agreement that Samsung Electronics and the Appellant would jointly develop a specific memory technology as well as an interface program, with the aim of registering it with an international standard setting organization (SSO), and that the two parties would grant cross licenses to each other with regards to the joint development. Given that the cross license granted under the Subject Agreement is limited to the purpose of joint research and development, if Samsung Electronics use the intellectual property rights held by the Appellant in the course of Samsung Electronics' independent research and development, it is not subject to the Subject Agreement. As to Samsung Electronics' development of relevant technology on its own, since this is not a joint development of the relevant technology stipulated in the preamble of the Subject Agreement, this Agreement may be terminated based on a material breach of obligation pursuant to Article 13.2 of the Subject Agreement. In such a case, the license granted in accordance with Article 13.3 shall be revoked, which then makes prevention of patent infringement risks or the grant of a perpetual license impossible.

(b) The Disposition Agency put forth a point that the Appellant filed a patent infringement suit, currently ongoing, against SK Hynix in order to prove that Samsung Electronics has attained the purpose of preventing patent infringement suits by means of the Subject Agreement. However,

-11-

NL108742

considering that the litigation between the Appellant and SK Hynix is valued at over hundreds of billions of Korean won (KRW), and the litigation values associated with past intellectual property infringement lawsuits among global semiconductor companies in the past exceeded tens of billions of Korean won (KRW), even hundreds of billions of Korean won (KRW), there would be absolutely no reason for the Appellant to sign an Agreement to prevent patent infringements with a mere amount of $8,000,000. On the contrary, this would rather prove that the Subject Amount was indeed compensation in exchange for the research and development, not compensation in exchange for prevention of patent infringement.

(9) The Disposition Agency opined that it cannot determine that any joint research and development indeed took place because Samsung is currently developing its own standard NVIDIMM-P and it could not confirm any documentation of the two companies' joint research and development. But, the fact that Samsung Electronics is moving ahead with a task of developing a standard NVIDIMM-P on its own after the joint research and development with the Appellant ended is not something that can be taken into consideration when determining the purpose and substance of the signing of the Subject Agreement. The Appellant and Samsung Electronics actually conducted joint research and development until and through the first half of 2018 according to the milestone targets of the Subject Agreement, holding relevant meetings on multiple occasions. These can be confirmed by looking at relevant e-mails and meeting materials related to the joint research and development.

Moreover, the Disposition Agency is of the opinion that Samsung Electronics ended the research and development services in the second half of 2017, but the Appellant did not receive any official notice from Samsung Electronics in this regard at the time. As such, it is merely an internal decision within Samsung Electronics or a unilateral assertion. As a matter of fact, it is clearly confirmed by looking at the e-mail specifics and meeting materials communicated between the Appellant and Samsung Electronics that the research and development services were indeed in progress even in 2018.

(b) Opinion of the Disposition Agency

-12-

The Subject Amount was paid by Samsung Electronics as compensation paid in exchange for being granted a license to lessen the risk of a patent infringement lawsuit, and as a result, incidentally, Samsung Electronics, jointly with the Appellant, engaged in research and development of the NVDIMM-P product (Developed Product) equipped with the HybriDIMM technology, and thus Samsung Electronics came to use patents created by the Appellant in the process of applicable research and development activities without paying separate royalties. Therefore, it is appropriate to regard the Subject Amount as royalty income.

(1) Disposition Agency inquired of Samsung Electronics regarding the reassessment petition filed by Appellant, and Samsung Electronics responded, as stated below, as to why it paid out the Subject Amount.

(a) The reason for entering into the Subject Agreement was to sign a comprehensive cooperation agreement to resolve the risk of LRDIMM and NVDIMM patent infringement that can be asserted by the Appellant. Appellant is a company that held patents for NVDIMM-N technology, i.e., the prior-stage technology of NVDIMM-P, and already held a technology concept for NVDIMM-P.

(b) The Subject Service was to be performed by the Appellant based on the technology that requires unique proprietary knowhows. Samsung Electronics was provided with demos and self-evaluation data for the HybriDIMM technology but has not implemented specific technology development tasks for this technology, and the Applicant [*sic*] is currently moving ahead with its own development of standard NVDIMM-P.

(c) Pursuant to the Subject Agreement, Samsung Electronics is to be granted a perpetual license for the existing patents held by the Appellant, as well as those to be filed by the Appellant for patent application over the course of next five years (8.2), and stricter confidentiality

-13-

obligations are imposed by specifically prescribing the provision of Restricted Information under Article 11.5, in addition to the typical confidentiality clause (11.1). With these and other reasons, the Subject Amount constitutes a "royalty income."

(2) Appellant argues that the compensation in exchange for the Subject Amount did not cause any transfer of information or knowhows and that the Subject Service is a joint research and development service performed to develop a new technology that did not already exist. However, the Appellant, a company founded in California, United States, in 2000, is a company specializing in hybrid memory semiconductors, and holds more than 80 patents related to special memory modules applicable to data center servers and network servers, and hence Samsung Electronics entered into the Subject Agreement mainly to resolve the risk of the Appellant filing a patent infringement lawsuit against Samsung Electronics with respect to the patents owned by the Appellant (patents related to LRDIMM and NVDIMM, etc.); and secondarily, to develop products equipped with the Subject Technology.

Under Article 8.2 of the Subject Agreement, Samsung Electronics was granted a perpetual license of, and can use without entering into royalty agreements or payments for patented technologies held by Netlist, Inc. before the effective date of the JDLA agreement as well as patents to be created by Netlist, Inc. within five years of the effective date. The service related to the Subject Amount requires specialized technology, and this is a technology that requires the unique proprietary knowhows of the Appellant, rather than knowledge or technology typically possessed by service performers of the same type. In relation to the Subject Agreement, the workforce commissioned by the Appellant are employees with a high level of knowhows, so it is difficult to regards the Subject Amount as compensation paid in exchange for simply providing Personal Services.

As argued in the appeal, if the Subject Amount is compensation paid in exchange for research and development services, and accordingly if research was carried out for new technology development, etc., there must be a record of delivering and/or receiving the statement of work or

-14-

NL108745

deliverables, etc., based on Article 2 (Collaboration-Based Development Work) of the Subject Agreement. Yet, the Appellant failed to present any documentation that may verify interim progress and deliverables related to the research service, and Samsung Electronics has stated that no details have ever been exchanged in relation to research and development [Samsung employee CHOI Seung-hwi stated over the phone (phone no. 031-277-0***) that he/she is unable to respond regarding whether deliverables exist or not due to the confidentiality provisions in the Subject Agreement].

(3) Appellant maintains that the amount it spent on the research and development of NVDIMM-P products equipped with the Subject Technology is USD 9,660,951 (520 HD ENGINEERING), which exceeded the amount of compensation received from Samsung Electronics, and given that the Subject Amount did not exceed the cost plus ordinary profits, the Subject Amount is the compensation in exchange for the research and development service. However, according to the documentation submitted by Samsung Electronics, it is determined that the development service with the Appellant ended in the second half of 2017 because it did not meet the specifications, etc., requested by Samsung Electronics during the development process. The amount of expense that the Appellant claim to have spent in relation to this development service was spent in 2018; All we have is the argument put forth by the Appellant when it comes to the above amount allegedly spent on the development service, and as the Appellant is unable to provide documentation establishing the above amount as an expense related to the development services, the amount above appears to have been incurred in research activities separate from the joint research and development process with Samsung Electronics.

Therefore, the Subject Amount includes the compensation in exchange for allowing Samsung Electronics use patents without paying royalties as it was granted a license for patents held by the Appellant before the effective date of the Subject Agreement and patents to be created by the Appellant within five years of the effective date. Thus, the argument that the Appellant's expenses do not exceed the amount including ordinary profits alone cannot be a basis to view that the Subject Amount was compensation for services.

-15-

NL108746

(4) The Appellant argues that the confidentiality clause in the Subject Agreement is a comprehensive clause typically used in a general service agreement and does not fall under the confidentiality clause on specific information or knowhows.

Yet it is confirmed that stricter confidentiality obligations are imposed on Restricted Information, the reason being that, among others:

Although the confidentiality provision provided in Article 11.1 (11.2) of the Subject Agreement can be seen as a standardized phrase typically used in a general service agreement or sales agreement, as it says, "Each party shall keep confidential all information on sales, finance, and contract (or marketing) provided by the other party, such as deliverables and other technologies, and shall not disclose it without the written consent of the other party,"

Article 11.3 stipulates that "Even if this Agreement expires or is terminated, the confidentiality obligation remains in full force and effect and remains valid for eight years with respect to Restricted Information and for five years for other confidential information," and notably in particular, it provides that "Restricted Information is subject to additional conditions specified in the SOW (statement of work)" in Article 11.5.

Meanwhile, when the Disposition Agency asked Samsung Electronics to submit relevant documents related to the reassessment petition while reviewing the reassessment petition, Samsung Electronics maintained that under the confidentiality clause above, "it is not possible for our company to submit information materials as the Appellant does not consent to our submission of materials." In response, the Disposition Agency sent an official letter to the Appellant requesting consent to submission of materials and the Appellant thereafter agreed to do so, allowing Samsung Electronics to submit relevant materials to the Disposition Agency. For this and other reasons, it would be difficult to regard the above-noted confidentiality clause as a general confidentiality clause.

(5) The Appellant argues that, given that the Subject Agreement expressly specifies the Subject Amount as the compensation in exchange for the research and development service, it must be strictly interpreted according to the content of the language, as opposed to the intention of the service user. However, looking into tax laws, the provisions on the calculation of tax base are

-16-

applicable according to the substance related to the income, proceeds, property, act, or transaction, regardless of the name or formality thereof. Hence, the compensation received by a foreign company without a domestic business office in exchange for substantially providing a domestic company with information on undisclosed knowledge and experience, technology, and knowhows, such as existing development technology, possessed by the former is equivalent to domestic source royalty income (Law & Regulation: Adjustment of International Taxes Act 2014-215, Sep. 17, 2014); and

In addition, the compensation received under an agreement--which stipulates that all rights (intellectual property rights, patent rights, knowhows, etc.) related to deliverables of technology development will be owned by a foreign company, a technology developer, after the completion of technology development, and that a company that requested joint technology development and shares development costs will be jointly granted a non-exclusive, worldwide license and a right to grant a sublicense for the deliverables--constitutes a royalty income. Therefore, it is appropriate to regard the Subject Amount as royalty income, which is compensation paid in exchange for being granted a license.

## 3. Tribunal Hearing and Determination

### a. Point of issue

Whether the Subject Amount is business income as compensation paid in exchange for research and development services, or royalty income as compensation paid in exchange for granting of license, etc.

### b. Related laws, etc.

(1) Corporate Tax Act

Article 93 [Domestic Source Income of Foreign Corporations] Domestic source income of

-17-

foreign corporations is categorized as described in the following subparagraphs:

5. Income prescribed by Presidential Decree and accrued from any business operated by a foreign corporation (including income taxable as domestic source business income under any tax treaty): Provided, however, that excluded therefrom shall be income referred to in subparagraph 6.

6. Income accrued by rendering personal services prescribed by Presidential Decree in the Republic of Korea (including the income deemed to have accrued in the Republic of Korea according to a tax treaty by rendering personal services prescribed by Presidential Decree, among personal services rendered abroad). In such cases, where the person provided with the personal services bears expenses prescribed by Presidential Decree, including airfares, in connection with the provision of such personal services, such income means an amount excluding such expenses.

8. Where any of the following rights, assets, or information (hereafter in this subparagraph, referred to as "rights, etc.") are used or the remuneration therefor is paid in the Republic of Korea, the relevant price and the income accrued from the transfer of such rights, etc.: Provided, however, that where the place of use rule applies, under an agreement for preventing double taxation on income, to determine whether the relevant income is domestic source income, the remuneration for rights, etc., used overseas shall not be deemed domestic source income, regardless of whether it was paid in the Republic of Korea. In such cases, rights requiring registration to exercise thereof, such as patent rights, utility model rights, trademark rights, and design rights (hereafter in this subparagraph, referred to as "patent rights, etc.") shall be deemed used in the Republic of Korea, irrespective of whether they were registered in the Republic of Korea, where the relevant patent rights, etc., were registered overseas and have been used for manufacture, sale, etc., in the Republic of Korea:

a. Copyrights, patent rights, trademark rights, designs, forms, and sketches of academic or artistic works (including movie films) or secret formulae or processes, film and tapes for radio and television broadcasts, and other similar assets or rights; and

b. Information or knowhows related to industrial, commercial, or scientific knowledge and experience

Article 98 [Special Cases concerning Withholding or Collection from Foreign Corporations]

-18-

(1) Where any person pays a foreign corporation the amount of domestic source income provided for in subparagraphs 1, 2, and 4 through 10 of Article 93 (excluding any resident or non-resident who pays the amount of domestic source income accrued from transfer of real estate, etc. provided for in subparagraph 7 of Article 93) which is not substantially related to the domestic place of business of the foreign corporation or does not revert to the domestic place of business of the foreign corporation (including an amount paid to a foreign corporation with no domestic place of business), he/she shall withhold, as the corporate tax, the following amounts from the income of the relevant foreign corporation for each business year, and pay it at the tax office having jurisdiction over the place of tax payment, etc., as prescribed by Presidential Decree, by the tenth day of the month following the month in which the date of withholding falls, notwithstanding Article 97: Provided, however, that the same shall not apply to income provided for in subparagraph 5 of Article 93, which is taxable as domestic source business income under the applicable tax treaty.

3. Income pursuant to subparagraphs 1, 2, 8, and 10 of Article 93: 20/100 (the amount prescribed by Presidential Decree for income under subparagraph 10 of Article 93) of the amount paid

(2) Enforcement Decree of the Corporate Tax Act

Article 132 [Scope of Domestic Source Income]

(6) "Personal services prescribed by Presidential Decree" in the former part of subparagraph 6 of Article 93 of the Act means the following services, and "personal services prescribed by Presidential Decree, among personal services rendered abroad" means the services specified in subparagraph 4:

1. Services provided by movie or stage actors, musicians, and public entertainers;

2. Services provided by professional specialists;

3. Services provided by lawyers/certified public accountants/architects/surveyors/patent attorneys/other freelancers; and

4. Services provided by a person with specialized knowledge or special skills in the field of science and technology/business management or other fields by utilizing the relevant knowledge or skills.

(7) "Expenses prescribed by Presidential Decree" in the latter part of subparagraph 6 of Article 93 of the Act means air fares, accommodation charges, or meal expenses directly paid by any person

-19-

provided with personal services to air carriers, accommodation business operators, or restaurant business operators in relation to the provision of such personal services.

* CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF KOREA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME AND THE ENCOURAGEMENT OF INTERNATIONAL TRADE AND INVESTMENT

**Article 6 [Sources of Income]**

For the purposes of this treaty, the sources of income shall be treated as follows:

(3) Royalties described in paragraph (4) of Article 14 (Royalties) for the use of, or the right to use, property (other than as provided in paragraph (5) with respect to ships or aircraft) described in such paragraph shall be treated as income from sources within one of the Contracting States only if paid for the use of, or the right to use, such property within that Contracting State.

Article 14 [Royalties]

(1) The tax imposed by one of the contracting countries on royalties derived from sources within that contracting country by a resident of the other contracting country shall not exceed 15% of the gross amount thereof, except as provided in Paragraphs (2) and (3) below.

(2) Royalties derived from copyrights, or rights to produce or reproduce any literary, dramatic, musical, or artistic work, by a resident of one contracting country, as well as royalties received as compensation paid in exchange for the use of, or the right to use, motion picture films including films and tapes used for radio or television broadcasting, may not be taxed by the other contracting country at a rate of tax which exceeds 10% of the gross amount of such royalties.

(3) Paragraphs (1) and (2) above shall not apply if the recipient of the royalties, being a resident of one of the contracting countries, has a perpetual establishment in the other contracting country, as well as if the right or property giving rise to the royalties is effectively connected with such perpetual establishment. In such a case, Paragraph (6) (a) of Article 8 (Business Income) shall apply.

-20-

(4) The term "royalties" as used in this Article means:

(a) Payment of any kind made as compensation paid in exchange for the use of, or the right to use, copyrights of literary, artistic, or scientific works, copyrights of motion picture films or films or tapes used for radio or television broadcasting, patents, designs, models, plans, secret processes or formulae, trademarks, or other like property or rights, or knowledge, experience, or functions (technologies), or ships or aircraft (but only if the lessor is a person not engaged in the operation in international traffic of ships or aircraft,

(b) Gains derived from the sale, exchange, or other disposition of any such property or rights (other than ships or aircraft) to the extent that the amounts acquired from such sales, exchanges, or other dispositions for compensation are contingent on the productivity, use, or disposition of such property or rights. Royalties shall not include any royalties, rentals, or other amounts paid in respect of the operation of mines, quarries, or other natural resources.

C. Facts and Determination

(1) The Appellant entered into the Subject Agreement with Samsung Electronics on Nov. 12, 2015, and agreed to receive the Subject Amount in return, and Samsung Electronics paid the Appellant on Nov. 19, 2015 an amount after deducting taxes from the Subject Amount in accordance with the Republic of Korea - United States Tax Convention. After deducting the amount of KRW 1,548,888,000, a combined sum of corporate income tax (15%) and local corporate income tax respectively levied on the royalty income,  Samsung Electronics declared and paid corporate income tax of KRW 1,408,080,000 withheld for the 2015 business year.  is equivalent to new business income. Appellant submitted a reassessment petition to the Disposition Agency on October 28 [*sic*], 2018 to request a refund of the corporate income taxed already withheld by Samsung Electronics , but the Disposition Agency rejected it on Jan. 30, 2020, as a result of regarding the Subject Amount as royalty income.

-21-

NL108752

(2) According to the Subject Agreement presented by the Appellant, the Subject Agreement is largely divided into a joint development contract and a license contract. Under the joint development contract, the Appellant and Samsung Electronics were to collaborate to develop the Subject Technology according to the development milestones and SOW (statement of work). The license contract is a contract under which the parties may grant each other licenses to the extent necessary for the joint development above, and no royalties will be paid between the parties in that regard. The main points of the Subject Agreement are as follows:

<Section 2. Collaborative Development Work>

- Section 2.1.3 [In All Phases] In all phases, the Appellant delivers the resulting deliverables to Samsung Electronics, and Samsung Electronics checks whether each deliverable is Non-Patent Background IPR or not before deciding whether to receive the product.

- Section2.3 [Acceptance] Acceptance (Y/N) is determined by evaluating if the product is developed according to product specifications, and when acceptance is decided, the relevant research and development of that product is considered complete.

<Section 3. Development Cost>
- Article 3.1 [Fees and Costs] Samsung Electronics shall pay the initial development cost (Non-Recurring Engineering fee] of USD 8,000,000 within 7 days from the date when it receives invoice from the Appellant.

<Section 4. IPR Ownership>

CONFIDENTIAL                                                                          NL108753

- Section 4 [IPR Ownership] Technologies, information, and knowhows jointly developed under the project shall be jointly owned, and technologies, information, and knowhows developed solely by one party alone shall be solely owned.

- Section 4.2 [Solely and Jointly Owned Patents] Patents created under the Subject Agreement shall belong to the company whose employees made the invention, but the patents jointly invented by both parties shall be jointly owned.

<Section 5. Technology Standardization and Productization>

- Section5.2 [Right of Fist[sic] Refusal] Samsung Electronics has the right of first refusal (ROFR) for the technology derived from the research results.

- Section 5.4 [Sole Collaboration IPR License] Each party, as licensor, agrees to grant license to the other party, as licensee, a fully paid-up, non-exclusive, perpetual, irrevocable, and non-transferable worldwide and the licensee will use, reproduce, and modify the licensor's Sole Collaboration IPR to create and distribute deliverables and product specifications.

<Section 8 Grant of License>

- Section 8.2 [License of Samsung] Samsung Electronics is granted a perpetual license for the existing patents already held by the Appellant and patents to be filed for application for the next five years.

<Section 11. Confidentiality>

-23-

CONFIDENTIAL

NL108754

-Section 11.1 [Confidential Information] Each party shall maintain the confidentiality of tangible and intangible assets such as deliverables as well as all business, financial, contractual, and marketing information provided by the other party.

- Section 11.5 [Restricted Information] Restricted Information is subject to additional terms and conditions set forth in the statement of work (SOW).

(3) In the Subject Agreement, it is stipulated that each step will be carried out according to the development milestones and with SOW (statement of work) separately prescribed for the joint development of the project. The main details of the development milestones and SOW (statement of work) are as shown in <Table 1> - <Table 2> below.

<Table 1> Development Milestones (Subject Agreement, Appendix A, 2. Development Milestone)

| Category | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| NVDIMM-P Specifications  NVDIMM-P Customer samples | Agreement execution and joint workshops | | Jointly develop and jointly standardize specifications | | Through 2020, continuously perform R&D, obtain patents solely or jointly, and make ownership transfer decisions | |

<Table 2> SOW (statement of work) (Subject Agreement, Appendix B, Statement of Work)

| Milestone | Appellant | Samsung Electronics |
|---|---|---|
| Workshops to be held on market landscape and technologies owned by the Appellant (~12/31/2015) | a. Discuss how to implement Appellant's NV Vault and Hypervault products | a. Share DRAM and NAND road maps and discuss how to implement Appellant's NV Vault and Hypervault products |
| | b. Provide definitions and specifications of current NV Vault and Hypervault products, including controller logic and data buffers and their components, and of other data IO products that can potentially allow establishment of partnership | b. Describe Samsung's views on key trends in DRAM and NAND industry, and reviewing the industry and product directions going forward |

-24-

| | | |
|---|---|---|
| | c. Provide Guidance on data buffers and NVDIMM product testing and qualitative evaluation | c. Share Samsung's current status and plans related to NVDIMM-P development |
| | d. Share usage analysis of current NV Vault and Hypervault products, such as benefits identified or measured through modeling when using products of the Appellant compared to alternative technology solutions for each use case and utilization of system resources | d. Share inputs and comments on Samsung's design constraints, including maximum allowable system resource usage, performance impact, costs, etc. |
| Joint development of VDIMM-P product specifications (~Mar. 31, 2016) | Specifications to be jointly developed; details to be discussed later | |
| Collaboration to standardize the "Developed Technology" (~Dec. 31, 2016) | The two parties cooperate to get NVDIMM-P specifications standardized as provided in Article 5.1 of the Subject Agreement via appropriate standard setting organization (SSO) | |
| Joint development of customer samples (~Dec. 1, 2016) | Jointly develop customer samples for designated products; after discussing details, incorporate the discussion outcome into the SOW (statement of work) going forward | |

(4) According to the above-noted development milestones and SOW (statement of work), the Appellant is to perform initial analysis and testing for technology development, and based on the results, decision would be made as to whether to further develop the technology with Samsung Electronics. The main points of the Subject Agreement are summarized in <Table 3> below, and as Samsung Electronics decided not to proceed with the Subsequent Phase after the Initial Phase for joint development was completed, the portion corresponding to the Subsequent Phase of the joint development was apparently not implemented.

-25-

<Table 3> Summary of joint development steps according to the Subject Agreement

| Phase | Key Specifics |
|---|---|
| Initial Phase | - Appellant performs initial analyses and testing for technical development to implement the product specifications defined in the Subject Agreement<br>- Samsung Electronics pays USD 8,000,000 to the Appellant as the NRE (Non-Recurring Engineering) fee |
| Subsequent Phase | - Management of the two companies decides whether to proceed to the Subsequent Phase based on the implementation results of the Initial Phase<br>- In case of proceeding with Subsequent Phase, the Appellant and Samsung Electronics jointly carry out standardization of technical specifications and commercialization of products<br>- Other development costs beside the above NRE fee are borne by each company om their own |

(5) The Subject Technology owned by the Appellant has a portion of its project dedicated to the development of technology that can produce SCM (Storage, CPU, Memory), a type of memory. This is a technology that produces memory that functions to increase the speed of storage by increasing the performance of storage. Samsung Electronics has DRAM and NAND manufacturing technologies, whereas the Appellant has patented technologies such as NV Vault and Hypervault.

(6) The Appellant maintains that they have spent a total of USD 9,600,951 (approx. KRW 11,336,159,903) as shown in <Table 4> below, in the course of conducting joint research and development of the Subject Technology under the Subject Agreement.

-26-

<Table 4> Expenses defrayed by the Appellant as a result of performing the Subject Service

(Unit: USD)

| Category | 2015 | 2016 | 2017 | 2018 | Total |
|---|---|---|---|---|---|
| Amount | 342,661 | 4,386,419 | 4,155,574 | 776,297 | 9,660,951 |

(7) Additionally, Samsung Electronics responded that the development service with the Appellant ended in the second half of 2017. But the Appellant maintains that in accordance with milestone targets of Subject Agreement, the Appellant in fact carried out joint R&D activities with Samsung Electronics until the first half of 2018, also holding multiple meetings in relation thereto. As paper trail substantiation, the Appellant presents relevant e-mails they exchanged with Samsung Electronics, as well as meeting materials, and the like.

(8) Disposition Agency is of the opinion that the Subject Amount was paid in exchange for Samsung Electronics to receive and/or use the transferred confidential proprietary technical information or knowhows of the Appellant, and hence it ought to be regarded as royalty income earned by the Appellant under the Korea – U.S. Tax Convention.

However, comprehensively examining the above-noted facts as well as relevant laws and regulations, given that the Subject Service falls under the initial research and development service for the Appellant and Samsung Electronics to jointly develop the Subject Technology, it is appropriate to say that the Subject Amount is business income, i.e., compensation in exchange for the research and development service, in light of the following points:

Point 1: Article 4.2 of the Subject Agreement stipulates that the patentable invention created under the Agreement shall belong to a party with which the inventor employee is affiliated, and that only the patents generated joint inventions shall be jointly owned. Accordingly, it further stipulates that in cases where the research and development of the Subject Technology turns out to be successful in the end as a result of said research and development carried out under the Subject Agreement, the Appellant shall be the owner of the Subject Technology, and if the Subject Technology were to be transferred to a third party, the right of first rejection shall be granted to Samsung Electronics. Hence, it can be said what Samsung Electronics receives from the Appellant through this project shall be the right of first rejection for the Subject Technology, not the knowhows. The license clause in Article 8.2 of the Subject Agreement is

-27-

apparently a typical cross-license clause since it stipulates that the patents already held by the Appellant prior to the effective date of the Agreement may be used without royalty payments in order to proactively prevent legal problems due to patent infringement that may arise in the course of a joint development.

Point 2: Disposition Agency viewed that another purpose of the payment of Subject Amount was to resolve the risk of patent infringement that the Appellant could assert against Samsung Electronics for infringement of the patent rights of the Appellant. However, the Subject Amount falls short of even the amount the Appellant says it spent to performance of the concerned service. Furthermore, Article 3.1 of the Subject Agreement specifies the amount as the initial non-recurring engineering (NRE) fee, and in general, the value of intellectual property infringement lawsuits ranges from tens of billions to hundreds of billions of Korean won (KRW), and hence it can be said that the Subject Amount is too small to be regarded as a license-related litigation value.

Point 3: Royalty income is defined as income earned from the use or provision of results that are already completed and already available. According to the Subject Agreement, the Subject Service is apparently to develop the Subject Technology (that did not already exist) through joint R&D activities based on the information and knowhows that the Appellant and Samsung Electronics already had prior to the project, and as such, each phase of development was agreed to be carried out in accordance with the development milestones and SOW (statement of work) set out separately.

Point 4: The Disposition Agency presents Samsung Electronics' response as a primary basis for the taxation in its disposition of this case. Although the Appellant's and Samsung Electronics' purposes of entering into the Subject Agreement were not consistent initially, by the time of the proceedings, it is appropriate to base the interpretation strictly on the language of the Subject Agreement that the parties drafted, barring special circumstances, given that Samsung Electronics did not clearly confirm the purpose and content of the Subject Agreement.

-28-

NL108759

Initially, Samsung Electronics responded to the Disposition Agency that the development service with the Appellant ended in the second half of 2017, but the Appellant maintains that in accordance with milestone targets of Subject Agreement, the Appellant in fact carried out joint R&D activities with Samsung Electronics until the first half of 2018, also holding multiple meetings in relation thereto. Appellant presented, as documentation for substantiating this point, relevant emails they exchanged with Samsung Electronics, as well as meeting materials, and the like. Hence it is difficult to totally trust the content of the response given by Samsung Electronics.

Point 4: Additionally, in the Subject Agreement, each party agrees to maintain the confidentiality of tangible and intangible assets such as the resulting deliverables and all sales, financial, contractual, and marketing information provided by the other party, which is considered a comprehensive confidentiality clause typically applied in joint development projects for the purpose of protecting tangible and intangible assets that may be incidentally known or transferred in carrying out the project between the two parties. As such, it is difficult to view it as a confidentiality protection clause for specific information or knowhows.

Therefore, the disposition of this case where the Disposition Agency rejected the Appellant's reassessment petition based on its consideration of the Subject Amount as royalty income from granting license, etc., is determined to be wrong.

4. Conclusion

As a result of hearing, we find that this appeal has merit, and therefore, pursuant to Article 81 and Article 65.1(3) of the Framework Act on National Taxes, we decide as set out in the holdings.

CONFIDENTIAL                                                                                      NL108760

Nov. 17, 2020

| | |
|---|---|
| Chief Tax Judge | LEE Sang-heon |
| Associate Tax Judges | HWANG Jeong-hoon |
| | LEE Gye-won |
| | LEE Man-woo |

-30-

CONFIDENTIAL

NL108761

# This is the original copy.

**Nov. 17, 2020**

**PARK Tae-eui, Chief Administrative Officer, Tax Tribunal (seal)**

[seal:] Seal of the Chief Administration Officer, Tax Tribunal

NL108762

# CERTIFICATION OF TRANSLATION

# and

# DECLARATION

State of California )
) S. S.
Los Angeles County )

      I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated <u>Document with Bates No. NL108731 - NL108762</u> from Korean to English and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

### <u>Description of Translated Documents</u>

<u>Document with Bates No. NL108731 - NL108762</u>

Executed on July 26, 2021

_____

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

"힘내라 대한민국!"


국 무 조 정 실
국무총리비서실

# 조 세 심 판 원



수신   수신자 참조

(경유)

제목   조세심판결정 통지(조심 2020중1581)

청구번호   조심 2020중1581

청 구 인   Netlist, Inc
175 Technology, Suite 150, Irvine, California, United States

대 리 인   변호사 박 준 영, 공인회계사 박 광 진
서울특별시 용산구 한강대로 100, 20층(한강로2가)

처 분 청   동수원세무서장

1. 「국세기본법」 제81조 및 제65조 제3항의 규정에 의하여 위 심판청구에 대한 결정을 통지합니다.

2. 해당 세무서장(세관장 또는 지방자치단체장)은 「국세기본법」 제80조 제2항의 규정에 따라 필요한 처분을 하고, 같은 법 시행규칙 제32조의 규정에 의한 조세심판 결정처리전말보고서를 작성하여 14일 이내에 조세심판원장(참조 : 행정실장)에게 제출하여 주시기 바랍니다.

3. 심판결정에 대하여 이의가 있는 때에는 심판결정서를 받은 날부터 90일 이내에 행정법원(행정법원이 설치되어 있지 않은 지역은 지방법원 본원)에 행정소송을 제기하실 수 있습니다.

붙임   결정서 1부.  끝.



# 조 세 심 판 원 장

수신자   청구인(대리인), 해당세무서장, 국세청장

---

| 주무관 | 김수정 | 행정사무관 | 김효남 | 조사관 | 전결2020. 11. 17.<br>정정희 |
|--------|--------|------------|--------|--------|------|

협조자

시행   상임심판관(1)-1466   (2020. 11. 17.)   접수

우  30108   세종특별자치시 다솜3로 95 (어진동), , 431호   /  http://www.tt.go.kr

전화번호  044-200-1759   팩스번호  044-200-1750   /  ksj1780@pr..go.kr   /  비공개(6)

2-1

CONFIDENTIAL

NL108731

# 조 세 심 판 원

## 조세심판관회의

## 결          정

청구번호          조심 2020중1581

청 구 인          Netlist, Inc

175 Technology, Suite 150, Irvine, California, United States

대리인   변호사 박 준 영, 공인회계사 박 광 진
서울특별시 용산구 한강대로 100, 20층(한강로2가)

처 분 청          동수원세무서장

### 주          문

동수원세무서장이 2020.1.30. 청구법인에게 한 경정청구 거부처분은 이를 취소한다.

- 1 -

NL108732

이             유

1. 처분개요

가. 청구법인은 2000년 미국 캘리포니아주에 설립되어 OEM(Original Equipment Manufacturer)에게 고성능 메모리 모듈 시스템을 제공하는 것을 주요 사업으로 하는 외국법인으로, 2015.11.12. 삼성전자 주식회사(이하 "삼성전자"라 한다)와 Joint Development and Licence Agreement(이하 "쟁점계약"이라 하고, 그 계약서를 "쟁점계약서"라 한다)를 체결하고 그 대가로 USD8,000,000(9,387,200,000원, 이하 "쟁점금액"이라 한다)를 지급받기로 하였고, 삼성전자는 2015.11.19. 청구법인에게 쟁점금액에서 '대한민국과 미합중국 간의 소득에 대한 이중과세의 회피와 탈세방지 및 국제무역과 투자의 증진을 위한 협약(이하 "한·미 조세조약"이라 한다)'에 따른 사용료소득에 대한 법인세(15%) 및 법인지방소득세 합계 USD1,320,000(1,548,888,000원)를 공제한 금액을 지급한 후 2015.12.10. 2015사업연도 원천징수분 법인세 1,408,080,000원을 신고·납부하였다.

나. 청구법인은 2018.10.23. 쟁점금액은 사용료소득이 아닌 사업소득에 해당하므로 삼성전자가 원천징수한 법인세 1,408,080,000원을 환급하여 줄 것을 요구하는 경정청구를 제기하였으나, 처분청은 쟁점금액을 사용료소득에 해당하는 것으로 보아 2020.1.30. 이를 거부하였다.

다. 청구법인은 이에 불복하여 2020.4.1. 심판청구를 제기하였다.

CONFIDENTIAL                                                                    NL108733

2. 청구법인 주장 및 처분청 의견

 가. 청구법인 주장

  청구법인이 삼성전자와 쟁점계약을 체결하고 제공한 용역(이라 "쟁점용역"이라 한다)은 정보 또는 노하우의 이전이 없는 점, 본래에 없던 새로운 기술을 개발하기 위하여 수행된 점, 대가가 통상이윤을 가산한 금액을 초과하지 아니하는 점, 개발 성공여부에 대한 위험과 책임, 개발에 소요되는 직·간접비용 등을 삼성전자가 부담하는 점, 쟁점계약상 비밀보호유지 조항이 있으나 이는 공동개발 프로젝트에 통상적으로 적용되는 포괄적인 규정에 불과한 점, 공동연구개발로서 보증 여부에 대한 판단 규정은 적용할 여지가 없는 점, 계약당사자 간에 계약체결 목적과 무관하게 계약 문언에 따라 엄격하게 해석하여야 하는 점 등에 비추어 쟁점용역 제공에 따른 대가는 사업소득으로 봄이 타당하다.

  (1) 쟁점용역 제공으로 인하여 정보 또는 노하우의 이전이 발생하지 아니하였을 뿐만 아니라 쟁점용역은 SCM(Storage Class Memory)의 일종인 NVDIMM-P를 생산할 수 있는 기술(HybriDIMM, 이하 "쟁점기술"이라 한다)의 공동개발을 위한 초기 연구개발용역에 해당하므로 쟁점금액은 사용료소득이 아닌 인적용역에 대한 대가에 해당한다.

  (가) 「법인세법」 제93조 제8호는 사용료소득을 산업상·상업상·과학상의 지식·경험에 관한 정보 또는 노하우 등에 해당하는 권리·자산 또는 정보를 국내에서 사용하거나 그 대가를 국내에서 지급하는 경우로 규정하고 있는데, 이는 사용료소득으로 분류하기 위해서는 정보 또는 노하우의 이전이 있어야 함을 의미하는 것이다.

- 3 -

NL108734

(나) 법원도 연구개발 활동 그 자체로서 정보 또는 노하우의 이전이
없다면 산업상·상업상·과학상의 지식·경험에 관한 정보 또는 노하우의
대가인 사용료소득이 아니라 사업소득에 해당한다고 판시(서울행정법원
2015.1.30. 선고 2014구합62517 판결 참조)한 바 있다.

(다) 또한 국세청도 특허를 보유한 해외기관이 특허관련 기술을
내국법인의 전자제품 제조공법에의 적용가능 여부에 대한 연구용역을
제공하고 받는 대가는 사업소득이라고 해석(국일 46017-523, 1995.8.22.)
하였다. 동 예규의 경우 새로운 기술을 개발하기 위한 초기 용역으로서
실패시 환불을 요구할 수 없고, 1차 연구결과에 따라 2차 개발진행
여부를 결정하도록 하고 있으며, 연구개발을 진행하면서 발생하는 기술,
정보, 노하우는 공동소유하는 조건이므로 쟁점계약의 내용과 상당히
유사한 면이 있다.

(라) 쟁점계약 제2조 "공동연구개발"에서 쟁점용역은 작업지시서에
따른 기술의 시연과 개괄적 논의로 제한되며, 청구법인이 보유하는
기술에 대한 세부적인 사양, 알고리즘, 소스코드, 도해 등 세부 기술의
공개는 포함되지 아니하였음을 명확히 하였는데, 이는 쟁점용역을 통
하여 청구법인이 보유한 기술의 이전이 발생하지 아니하였음을 나타
내는 것이라 할 것이다.

(마) 쟁점계약 제4조 "4.2 단독 및 공동소유 특허"에 따르면, 동 계
약에서 창출된 특허 출현 대상의 발명은 해당 발명을 한 직원이 속하는
당사자에게 귀속되고, 공동발명에 한하여 발생하는 특허를 공동으로
소유하도록 규정하고 있다. 따라서 쟁점계약에 따른 연구개발 활동의

- 4 -

CONFIDENTIAL

NL108735

결과로서 쟁점기술의 연구개발이 최종적으로 성공하게 된다면 쟁점계약 제4조에 따라 쟁점기술을 청구법인이 소유하게 되고, 청구법인이 쟁점 기술을 제3자에게 양도하고자 하는 경우 삼성전자가 그 우선매수권을 부여받게 된다. 따라서 쟁점금액이 노하우에 대한 대가로서 사용료소 득에 해당한다고 판단하기 위해서는 이 건 프로젝트로 인하여 삼성전 자가 청구법인으로부터 노하우를 전수받아 사용할 수 있어야 하나, 삼성전자가 동 프로젝트를 통하여 제공받는 것은 쟁점기술에 대한 우 선매수권에 불과하다.

　(바) 또한 쟁점계약에 포함된 라이선스 조항은 공동개발시 발생 가능한 특허권 침해에 따른 법적 문제를 사전에 방지하기 위한 기술료 미지급 조건의 통상적인 교차 라이선스(Cross-license) 조항에 불과하다. 쟁점용역의 대가와 관련된 청구법인의 초기 단계 연구개발에서는 실 제로 양사가 교차 사용한 특허도 없었던 것으로 확인되므로, 동 조항을 근거로 개발이정표 및 작업지시서에 따라 수행된 용역에 대한 대가를 라이선스 사용에 대한 대가로 보는 것은 불합리하다.

　(2) 쟁점용역은 본래에 없던 새로운 기술을 개발하기 위하여 수행되 는 연구개발용역이다. 즉, 쟁점계약에 따라 청구법인이 삼성전자에게 제공한 것은 이미 존재하고 있는 정보 또는 노하우가 아니라 이 건 프 로젝트가 수행되기 전까지는 존재하지 않던 기술인 'HybriDIMM'이라는 쟁점기술을 개발하기 위한 연구개발 활동으로서, 청구법인은 이미 보유 하고 있는 비공개 기술정보 등을 제공한 것이 아니므로 쟁점용역에 대한 대가는 인적용역에 대한 대가인 사업소득으로 보아야 한다.

　(가) 「법인세법」 제93조 제8호 및 같은 법 기본통칙 93-132…7

CONFIDENTIAL

NL108736

에 따르면, '사용료소득이 되는 정보 또는 노하우'란 지적재산권의 목적물이 될 수 있는지 여부와 관계없이 제품 또는 공정의 산업상 재생산을 위하여 필요한 모든 비공개 기술정보로서 동 정보를 제공하기 전에 이미 존재하는 것을 의미한다. 따라서 '사용료소득'이란 구매자가 판매자로부터 이미 존재하고 있는 기술을 이전받음으로써 지급하는 대가로 볼 수 있다.

(나) 관련 심판례(조심 2011구937, 2013.4.5. 등 참조)에서도 사용료소득은 이미 완성되어 존재하고 있는 결과물을 이용 또는 제공함으로써 얻게 되는 소득임에 반해, 본래에 없던 새로운 기술에 대한 개발용역의 대가로서 받는 소득은 사업소득으로 결정하였다. 또한 OECD 모델 조세조약 주석서 제12조 문단 10.2에서도 이미 개발된 기획의 저작권 소유자가 실질적인 추가 작업 없이 이러한 기획을 개선(Modify)하거나 모방(Reproduce)할 권리를 누군가에게 부여한다면 저작권 소유자가 이러한 기획의 사용권을 부여하고 받는 지급대가는 사용료이다."라고 규정하고 있다.

(3) 쟁점용역의 대가는 통상이윤을 가산한 금액을 초과하지 아니하고, 실제로 대가의 전부가 인건비 등 실비 변상적 요소로 지출되는 등 인적용역에 대한 대가로 봄이 타당하다.

(가) 「법인세법 기본통칙」93-132…7 제3항 제2호는 용역 제공 대가가 당해 용역 수행에 투입되는 비용에 통상이윤을 가산한 금액을 상당히 초과하는지 여부를 사용료와 인적용역 구분의 판단기준으로 삼고 있는바, 이러한 구분 기준은 이미 개발 등이 완료되어 존재하고 있는 기술을 단순히 이전하는 거래의 경우 동 용역 수행으로 인하여

CONFIDENTIAL

NL108737

추가적으로 투입되는 비용이 그 대가에 비하여 현저히 작을 것이며, 용역 수행 대가가 예상 비용에 통상이윤을 가산한 금액을 상당히 초과하게 될 것으로 예상되는바, 특정 대가가 예상 비용에 통상이윤을 가산한 금액을 상당히 초과하는 경우 이를 사용료소득으로 본다는 취지로 이해된다.

(나) 대법원도 사용료와 인적용역 판단시 용역 대가의 대부분이 인건비 등 실비 변상적 요소로 지출된 경우 해당 대가가 인적용역 대가로 보기에 지나치게 높은 금액이라고 판단되지 아니하면 인적용역소득에 해당한다고 판시(대법원 2015.6.24. 선고 2015두950 판결)하였는바, 쟁점용역의 경우 연구개발용역의 대가는 USD8,000,000인 반면, 2015년부터 2018년까지 용역비로 발생한 비용은 총 USD9,660,951로 확인되는바, 쟁점금액은 용역 대가에 통상의 이윤을 가산한 금액을 초과하지 않으며 오히려 연구개발 활동에 소요된 비용이 상호 합의된 연구개발용역의 대가인 쟁점금액을 초과하는 것으로 나타난다.

(4) 삼성전자가 쟁점기술 개발의 성공여부에 따른 위험 및 책임과 실제로 개발에 소요되는 직·간접비용을 부담하였다. 「법인세법 집행기준」 93-132-12에서는 사용료소득과 사업소득의 구분과 관련하여 설계용역대가 지급시 개발의 성공 여부에 따른 위험과 책임을 도입자가 부담하고 도입자가 개발에 소요되는 직·간접비용을 실제 부담하는 등의 경우에는 이를 사업소득으로 분류하고 있다.

이 건의 경우 이 건 프로젝트가 실패한다 하더라도 삼성전자는 청구법인에게 지급한 쟁점금액을 보전받을 수 없다는 점에서 연구개발의 실패에 대한 위험을 사실상 삼성전자가 부담한 것으로 볼 수 있고, 청구법

- 7 -

CONFIDENTIAL

NL108738

인에게 연구개발비로 지급한 NRE Fee는 개발에 소요되는 직·간접비용을 삼성전자가 부담한 것에 해당하므로 쟁점용역의 대가는 사업소득으로 판단함이 타당하다.

(5) 쟁점계약의 비밀유지조항은 일반적인 용역계약에서 전형적으로 사용되는 포괄적인 조항으로서 특정된 정보나 노하우에 대한 비밀보호 규정에 해당하지 아니한다. 따라서 비밀보호규정의 존재만으로 쟁점용역에 대한 대가를 사용료소득으로 봄은 불합리하다.

(가) 「법인세법 기본통칙」 93-132…7 제3항 제1호에서는 비밀보호규정이 있거나 제3자에게 공개되지 못하는 특별한 장치가 있는 경우 사용료소득으로 보고 있고, 조세심판원도 계약상 비밀보호규정이 있거나 제3자에게 공개되지 못하게 하는 특별한 장치가 있는지 여부와 관련하여 비밀보호대상에 대한 특정 없이 쌍방간 수수된 정보 전체에 대하여 서로가 부담하는 포괄적인 비밀유지규정은 정보 또는 노하우를 이전받는 자가 특정된 기술 등에 대하여 부담하는 편면적·구체적인 비밀유지규정이 아니고 일반적인 용역계약에서 전형적으로 사용되는 조항이라고 할 것이므로 동 규정이 정보나 노하우에 대한 비밀보호규정에 해당한다고 보기는 어렵다고 결정(조심 2015서2648, 2016.5.9.)하였는바, 이는 비밀보호규정이 있다 하더라도 이를 사용료소득으로 판단하는 일률적인 기준이 될 수 없음을 의미한다.

(나) 이 건의 경우 쟁점계약에서 각 당사자는 결과물, 상대방이 제공한 모든 영업, 재무, 계약 및 마케팅 정보 등 유·무형자산에 대하여 비밀을 유지하도록 약정하고 있는데, 이는 공동개발 프로젝트에서 전형적으로 적용되는 포괄적인 비밀유지 규정으로 쌍방간 프로젝트를

CONFIDENTIAL

NL108739

수행함에 있어서 부수적으로 알거나 이전될 수 있는 유·무형자산에
대한 보호를 위한 목적이므로 특정 정보나 노하우에 대한 비밀보호규
정이라고 할 수 없다.

(6) 이 건 프로젝트의 본질은 공동연구개발로서, 보증 여부에 대한
판단규정을 적용할 여지가 없다. 「법인세법 기본통칙」 93-123…7 제
3항 제2호에서 사용자가 제공된 정보 또는 노하우를 적용함에 있어서
제공자가 특별한 역할을 수행하도록 요구되는지 또는 제공자가 그 적용
결과를 보증하는지 여부에 따라 사용료 및 인적용역소득을 구분하고
있는데, 위 구분 기준은 전문적인 용역결과물의 이전을 목적으로 하
는 일반적인 인적용역과 정보 또는 노하우의 이전을 목적으로 하는
사용료소득의 구분기준을 의미한다고 봄이 합리적이므로, 연구개발의
결과에 따라 성공과 실패가 모두 발생할 수 있는 이 건의 경우에는
위와 같은 구분기준이 적용되지 아니한다.

(7) 쟁점계약에서 쟁점용역의 대가를 연구개발비로 명시하고 있는바,
용역도입자의 의도가 아닌 문언 내용에 따라 엄격히 해석하여야 하고,
설령 계약에 대한 계약당사자들의 의도가 서로 다를 경우에도 계약
문언에 따라 엄격하게 판단하여야 하다.

(가) 처분청은 실질과세의 원칙에 따라 계약서의 형식보다는 실질에
의하여 판단하여야 한다는 의견이나, 청구법인은 실질을 무시하고 형
식에 따라 판단하여야 한다는 것이 아니라 실질을 판단함에 있어서
계약에 대한 당사자들의 의도가 서로 다른 경우에는 계약 문언의 객
관적인 의미가 명확하다면 특별한 사정이 없는 한 문언대로의 의사표
시의 존재와 내용을 인정하여야 한다는 것이다. 즉, 청구법인과 삼성

· 9 ·

CONFIDENTIAL

NL108740

전자가 주장하는 쟁점계약 체결 취지가 서로 일치하지 아니하므로 쟁점계약의 내용과 기타 증빙자료 등을 고려하여 실질을 판단하여야 함을 주장하는 것이다.

(나) 법원도 계약당사자 사이에 어떠한 계약내용을 처분문서인 서면으로 작성한 경우에 문언의 객관적인 의미가 명확하다면 특별한 사정이 없는 한 문언대로의 의사표시의 존재와 내용을 인정하여야 하고, 특히 문언의 객관적 의미와 달리 해석함으로써 당사자 사이의 법률관계에 중대한 영향을 초래하게 되는 경우에는 그 문언의 내용을 더욱 엄격하게 해석하여야 한다고 판시(대법원 2014.11.27. 선고 2012다21621 판결 등 다수 참조)하였다.

(다) 쟁점계약의 경우 제3조 "연구개발비" 규정에서 쟁점금액을 초기연구개발에 대한 연구개발비를 의미하는 NRE(Non-Recurring Engineering) Fee로 명시하고 있고, 실제로 청구법인은 관련 인력을 장기간 투입하여 연구개발 용역을 수행함에 따라 관련 비용이 발생하였으며, 공동연구개발 관련 증빙자료 및 회신내역 등을 종합적으로 고려할 때 쟁점계약의 실질은 공동연구개발로 보아야 한다. 따라서 쟁점계약의 실질을 판단함에 있어서 당사자들 간에 논의되지 아니한 삼성전자의 의도만을 실질이라고 볼 수 없으므로, 쟁점계약의 문언에 따라 쟁점금액을 연구개발용역에 대한 대가로 해석함이 타당하다.

(8) 처분청은 삼성전자의 답변에 근거하여 쟁점계약 체결의 주된 취지가 청구법인이 삼성전자에 제기할 수 있는 특허권 침해 리스크 해소를 위한 것이고 공동연구개발은 부차적인 것이므로 쟁점금액을

CONFIDENTIAL

NL108741

사용료 대가로 보았으나, 삼성전자가 청구법인의 지적재산권을 공동 연구개발 목적으로 사용하지 아니한 이상 특허권 침해 리스크는 쟁점 계약으로 해소될 수 없다. 청구법인은 쟁점계약에 따라 삼성전자의 스펙에 맞는 기술을 개발하여 추가 계약을 체결하거나 관련 기술을 삼성전자에 매도함에 따른 추가 수익을 기대한 것이며, 이는 쟁점계약 제5.2조 우선매수권 조항을 청구법인이 먼저 제안하였다는 삼성전자의 답변 내용에서도 확인할 수 있으므로, 쟁점계약 체결 목적이 특허권 침해 리스크 해소라는 처분청의 의견은 사실에 부합하지 아니한다.

(가) 쟁점계약의 체결 목적 및 취지를 명시한 쟁점계약서 전문에는 삼성전자와 청구법인이 특정 메모리 관련 기술 및 인터페이스를 공동으로 개발하고 국제표준화기구에 등록하고자 한다는 내용과 공동개발과 관련하여 양당사자는 상호 라이선스를 허여한다는 것이 선언되어 있는바, 쟁점계약에 따른 상호 라이선스는 공동연구개발에 한정하여 허여되는 것이므로 삼성전자가 독자적인 연구개발 과정에서 청구법인이 보유한 지적재산권을 사용하는 것은 쟁점계약의 적용대상이 아니며, 삼성전자가 관련 기술을 독자 개발하는 경우 이는 쟁점계약 전문에서 규정한 관련 기술의 공동개발이 아니므로 쟁점계약서 제13.2조에 따라 중대한 의무 위반으로 본 계약이 해지될 수 있고, 이 경우 제13.3조에 따라 라이선스 허여가 취소되므로 특허권 침해 리스크를 방지할 수 없을 뿐만 아니라 영구적인 라이선스 허여도 불가능하게 된다.

(나) 또한 처분청은 청구법인이 SK하이닉스를 상대로 특허침해 소송을 진행 중이라는 점을 삼성전자가 쟁점계약을 통하여 특허침해 제소 방지 목적을 달성하였다는 방증으로 제시하였으나, 청구법인과 SK하이닉스와의 소송가액은 수천억원을 상회하고, 과거 글로벌

CONFIDENTIAL

NL108742

반도체업체간 지적재산권 침해 소송가액이 적게는 수백억에서 많게는 수천억을 상회한 점을 고려한다면 청구법인이 $8,000,000에 불과한 금액으로 특허침해 방지를 위한 계약을 체결할 하등의 이유가 없으며, 이는 오히려 쟁점금액이 특허침해 방지 대가가 아니고 연구개발 대가임을 방증하는 것이라 할 것이다.

(9) 처분청은 삼성전자가 현재 표준 NVIDIMM-P 자체 개발업무를 추진하고 있고 양사의 공동연구개발과 관련하여서는 어떠한 자료도 확인되지 아니하므로 공동연구개발이 실제로 진행되었음을 인정할 수 없다는 의견이나, 삼성전자가 청구법인과의 공동연구개발이 종료된 후에 NVDIMM-P 자체 개발업무를 추진하고 있다는 사실은 쟁점계약 체결 취지 및 실질을 판단할 때 고려대상이 아니다. 청구법인과 삼성전자는 쟁점계약의 이정표에 따라 2018년 상반기까지 실제로 공동연구개발을 수행하고 관련 회의도 여러 차례 진행하였는바, 이는 공동연구개발 관련 이메일 및 관련 회의 자료를 통하여 확인할 수 있다.

또한 처분청은 삼성전자가 2017년 하반기에 연구개발용역을 종료하였다는 의견이나, 청구법인은 당시 이와 관련하여 삼성전자로부터 어떠한 공식적인 내용도 통보받지 못하였는바, 이는 삼성전자 내부의 의사결정이거나 일방적 주장에 불과하다. 실제로 청구법인과 삼성전자 간에 교신한 이메일 내역 및 회의 자료를 통하여 2018년에도 연구개발용역이 진행되고 있었음이 명확하게 확인된다.

나. 처분청 의견

쟁점금액은 삼성전자가 특허권 침해 제소 리스크 해소 및 라이선스

CONFIDENTIAL

NL108743

허여에 대한 대가로서 지급한 것이고, 이로 인하여 삼성전자가 부수적으로 HybriDIMM 기술을 갖춘 NVDIMM-P 제품(Developed Product)을 청구법인과 공동으로 연구개발하면서 그 과정에서 창출된 청구법인의 특허를 별도의 사용료 지불 없이 사용할 수 있으므로 쟁점금액은 사용료소득으로 봄이 타당하다.

(1) 처분청이 청구법인의 경정청구와 관련하여 삼성전자에게 문의한 결과, 삼성전자는 쟁점금액을 지급한 사유에 대하여 다음과 같이 답변하였다.

(가) 쟁점계약 체결 사유는 청구법인이 제기할 수 있는 LRDIMM 및 NVDIMM 특허침해 리스크 해소를 위하여 포괄적 협력 계약을 체결한 것으로, 청구법인은 NVDIMM-P 이전단계 기술인 NVDIMM-N 특허를 보유하고 있을 뿐만 아니라 NVDIMM-P에 대한 기술 컨셉도 이미 보유하고 있는 업체이다.

(나) 쟁점용역은 청구법인이 고유의 노하우를 필요로 하는 기술을 바탕으로 수행하여야 하는 것으로, 삼성전자는 쟁점기술에 대한 데모 및 자체평가 Data를 제공받았으나 해당 기술에 대하여 구체적인 기술개발 업무를 구현한 사실은 없으며, 현재 청구법인은 자체적으로 표준 NVDIMM-P 개발업무를 추진하고 있다.

(다) 쟁점계약상 삼성전자는 청구법인이 기존에 보유하고 있는 특허 및 향후 5년간 출원될 특허에 대하여 영구 라이선스를 허여받기로 되어 있고(제8.2조), 비밀유지조항(제11.1조)은 통상적인 규정이나 제11.5조상 Restricted Information을 특별히 규정하여 좀 더 엄격한 비밀유지 의

CONFIDENTIAL

NL108744

무를 부여하고 있는 등 쟁점금액은 '사용료소득'에 해당한다.

(2) 청구법인은 쟁점금액 지급으로 인하여 정보 또는 노하우의 이전이 발생하지 아니하였고, 쟁점용역은 본래에 없던 새로운 기술을 개발하기 위하여 수행하는 연구개발 용역으로서, 삼성전자와의 쟁점기술을 공동연구개발한 것으로 주장하나, 청구법인은 2000년 미국 캘리포니아에서 설립되어 데이터센터 및 네트워크 서버에 적용되는 특수 메모리 모듈에 관한 특허를 80건 이상 보유한 하이브리드 메모리 반도체 전문기업이므로, 삼성전자는 청구법인이 소유하고 있는 특허(LRDIMM 및 NVDIMM 관련 등)에 대한 삼성전자의 특허침해에 따른 제소 리스크를 해소하고 부차적으로 쟁점기술을 갖춘 제품을 개발하는 것을 목적으로 쟁점계약을 체결하였다.

삼성전자는 쟁점계약서 제8.2조에 의하여 쟁점계약 발효일 이전에 청구법인이 보유하고 있는 특허기술 및 계약 발효일로부터 5년간 청구법인이 창출하는 특허는 영구적으로 청구법인으로부터 라이선스를 허여받아 사용료 계약 및 지불 없이 이용할 수 있고, 쟁점금액과 관련한 용역은 전문적인 기술을 요하는 것으로, 동종의 용역수행자가 통상적으로 보유하는 지식이나 기술을 활용하는 것이 아니라 청구법인 고유의 노하우를 필요로 하는 기술에 해당하고, 쟁점계약과 관련하여 청구법인이 투입한 인력은 고도의 노하우를 가진 직원이므로 쟁점금액을 단순한 인적용역 제공에 따른 대가로 보기는 어렵다.

청구주장과 같이 쟁점금액이 연구개발용역에 대한 대가로서, 새로운 기술개발 등을 위한 연구가 수행되었다면 쟁점계약 제2조 협업기반 개발업무에 따라서 작업지시서 및 결과물 등을 인수·인계한 내역이 존

CONFIDENTIAL

NL108745

재하여야 하나, 청구법인은 연구용역과 관련한 진행상황 및 결과물을 확인할 수 있는 어떠한 자료도 제시하지 못하고 있고, 삼성전자는 연구개발과 관련하여 어떠한 내역도 주고받은 사실이 없다고 진술하였다[삼성전자의 직원인 최승휘는 유선(031-277-0***)으로 쟁점계약 비밀규정으로 인하여 결과물 존재여부 등에 대하여는 회신할 수 없다고 진술함].

(3) 청구법인이 쟁점기술을 갖춘 NVDIMM-P 제품 연구개발비용으로 지출한 금액은 USD9,660,951(520HD ENGINEERING)로서, 삼성전자로부터 받은 대가인 쟁점금액을 초과하여 지출하는 등 통상의 이윤을 가산한 금액을 초과하지 아니하므로 쟁점금액이 연구개발용역에 대한 대가라고 주장하나, 삼성전자가 제출한 자료에 의하면 개발과정에서 삼성전자가 요구하는 스펙 등에 부합하지 아니하여 2017년 하반기 청구법인과의 개발용역을 종료한 것으로 확인되고, 청구법인이 개발용역과 관련하여 지출하였다고 주장하는 비용은 2018년에 지출되었으며, 청구법인은 상기 금액을 개발용역과 관련하여 지출하였다고 주장할 뿐 이를 입증할 수 있는 증빙자료 등을 제시하지 못하므로, 위 금액은 삼성전자와의 공동연구개발 과정과는 별개로 관련 연구활동을 수행하면서 발생한 것으로 보인다.

따라서 쟁점금액에는 삼성전자가 쟁점계약 발효일 이전 또는 이후 5년 동안 청구법인이 창출한 특허에 대하여 라인선스를 허여받아 사용료 지불 없이 사용하게 한 대가가 포함되어 있으므로 단순히 청구법인이 지출한 비용이 통상의 이윤을 가산한 금액을 초과하지 아니한다는 주장만으로는 쟁점금액을 인적용역에 대한 대가로 보기 어렵다.

CONFIDENTIAL

NL108746

(4) 청구법인은 쟁점계약상 비밀유지조항은 일반적인 용역계약에서 전형적으로 사용되는 포괄적인 것으로, 특정된 정보나 노하우에 대한 비밀규정에 해당하지 아니한다고 주장하는데, 쟁점계약 제11.1조(제11.2조)에서 각 당사자는 결과물 및 기타 기술 등 상대방이 제공한 모든 영업, 재무, 계약(또는 마케팅) 정보에 대한 비밀을 유지하여야 하고, 상대방의 서면 동의 없이는 공개할 수 없다고 규정하고 있는 내용 등은 일반적인 용역계약이나 판매계약에서 전형적으로 사용되는 표준화된 문구로 볼 수 있다 하더라도 제11.3조에서 '본 계약이 종료 또는 해지된 경우에도 비밀보장의무는 유지되며 제한정보에 대해서는 8년, 기타 비밀정보에 대해서는 5년간 유효하다'고 규정하면서 특히, 제11.5조에서 '제한정보에 대해서는 작업지시서에 명시된 추가조건의 적용을 받는다'고 규정하는 등 제한정보에 대해서는 보다 엄격한 비밀유지의무를 부여하고 있음이 확인된다.

한편 처분청은 청구법인이 이 건 경정청구를 제기함에 따라 삼성전자에 관련 서류의 제출을 요청하였으나, 삼성전자는 상기 비밀유지조항을 근거로 청구법인이 자료 제출에 동의하지 아니하여 자료를 제시하지 못한다고 회신하였고, 이에 따라 처분청은 청구법인에게 자료제출 동의 요청 공문을 발송한 이후 청구법인이 자료제출에 동의하여 삼성전자가 관련 서류를 제출한 점 등을 감안하면 상기 비밀유지조항을 일반적인 것으로 보기는 어렵다.

(5) 청구법인은 쟁점계약에서 쟁점금액을 연구개발용역의 대가로 명시하고 있으므로 용역도입자의 의도가 아닌 문언 내용에 따라 엄격하게 해석하여야 한다고 주장하나, 세법 중 과세표준의 계산에 관한 규정은 소득, 수익, 재산, 행위 또는 거래의 명칭이나 형식에 관계없이

CONFIDENTIAL

NL108747

그 실질 내용에 따라 적용하는 것으로서, 국내사업장이 없는 외국법인이 보유하고 있는 공개되지 아니한 지식·경험에 관한 정보 및 보유기술, 기존 개발기술 등 노하우 등을 실질적으로 내국법인에게 제공하고 지급받는 대가는 사용료소득에 해당한다(국조 2014-215, 2014.9.17.).

또한 기술개발 결과물과 관련된 모든 권리(지적재산권, 특허권, 노하우 등)를 기술개발을 완료한 후 기술개발업체인 외국법인이 소유하기로 하고, 공동기술개발 의뢰 및 개발비용 분담 업체가 그 결과물에 대한 비독점적·전세계적 사용실시권(Licenc) 및 재실시권(Sublicenc) 부여 권한 등을 공동으로 허여받는 계약에 대하여 지급하는 대가는 사용료소득에 해당하므로 쟁점금액은 라이선스 허여에 대한 대가인 사용료소득에 해당한다고 봄이 타당하다.


3. 심리 및 판단

가. 쟁점

쟁점금액이 연구개발용역에 대한 대가인 사업소득인지 라이선스 허여 등에 대가인 사용료소득인지 여부

나. 관련 법령 등

(1) 법인세법

제93조[외국법인의 국내원천소득] 외국법인의 국내원천소득은 다음

CONFIDENTIAL

NL108748

각 호와 같이 구분한다.

5. 외국법인이 경영하는 사업에서 발생하는 소득(조세조약에 따라 국내원천사업소득으로 과세할 수 있는 소득을 포함한다)으로서 대통령령으로 정하는 것. 다만, 제6호에 따른 소득은 제외한다.

6. 국내에서 대통령령으로 정하는 인적용역(人的用役)을 제공함으로 써 발생하는 소득. 이 경우 그 인적용역을 제공받는 자가 인적용 역의 제공과 관련하여 항공료 등 대통령령으로 정하는 비용을 부 담하는 경우에는 그 비용을 제외한 금액을 말한다.

8. 다음 각 목의 어느 하나에 해당하는 권리·자산 또는 정보(이하 이 호에서 "권리등"이라 한다)를 국내에서 사용하거나 그 대가를 국내 에서 지급하는 경우 그 대가 및 그 권리등을 양도함으로써 발생하는 소득. 다만, 소득에 관한 이중과세 방지협약에서 사용지(使用地)를 기준으로 하여 그 소득의 국내원천소득 해당 여부를 규정하고 있는 경우에는 국외에서 사용된 권리등에 대한 대가는 국내 지급 여부 에도 불구하고 국내원천소득으로 보지 아니한다. 이 경우 특허권, 실용신안권, 상표권, 디자인권 등 권리의 행사에 등록이 필요한 권리 (이하 이 호에서 "특허권등"이라 한다)는 해당 특허권등이 국외에서 등록되었고 국내에서 제조·판매 등에 사용된 경우에는 국내 등록 여부에 관계없이 국내에서 사용된 것으로 본다.

가. 학술 또는 예술상의 저작물(영화필름을 포함한다)의 저작권, 특 허권, 상표권, 디자인, 모형, 도면, 비밀스러운 공식 또는 공정(工程), 라디오·텔레비전방송용 필름 및 테이프, 그 밖에 이와 유사한 자 산이나 권리

나. 산업상·상업상·과학상의 지식·경험에 관한 정보 또는 노하우

제98조[외국법인에 대한 원천징수 또는 징수의 특례] ① 외국법인에

CONFIDENTIAL

NL108749

대하여 제93조 제1호·제2호 및 제4호부터 제10호까지의 규정에 따른
국내원천소득으로서 국내사업장과 실질적으로 관련되지 아니하거나 그
국내사업장에 귀속되지 아니하는 소득의 금액(국내사업장이 없는 외국
법인에 지급하는 금액을 포함한다)을 지급하는 자(제93조 제7호에 따른
소득의 금액을 지급하는 거주자 및 비거주자는 제외한다)는 제97조에
도 불구하고 그 지급을 할 때에 다음 각 호의 구분에 따른 금액을 해당
법인의 각 사업연도의 소득에 대한 법인세로서 원천징수하여 그 원천
징수한 날이 속하는 달의 다음 달 10일까지 대통령령으로 정하는 바에
따라 납세지 관할 세무서등에 납부하여야 한다. 다만, 제93조 제5호에
따른 소득 중 조세조약에 따라 국내원천사업소득으로 과세할 수 있는
소득은 제외한다.

 3. 제93조 제1호·제2호·제8호 및 제10호에 따른 소득 : 그 지급액(제
    93조 제10호 다목의 소득에 대해서는 대통령령으로 정하는 금액)의
    100분의 20


 (2) 법인세법 시행령


 제132조[국내원천소득의 범위] ⑥ 법 제93조 제6호 전단에서 "대통
령령으로 정하는 인적용역"이란 다음 각 호의 1에 해당하는 것을 말한다.
 1. 영화·연극의 배우, 음악가 기타 공중연예인이 제공하는 용역
 2. 직업운동가가 제공하는 용역
 3. 변호사·공인회계사·건축사·측량사·변리사 기타 자유직업자가 제공
    하는 용역
 4. 과학기술·경영관리 기타 분야에 관한 전문적 지식 또는 특별한 기
    능을 가진 자가 당해 지식 또는 기능을 활용하여 제공하는 용역
 ⑦ 법 제93조 제6호 후단에서 "대통령령으로 정하는 비용"이란 인적

CONFIDENTIAL

NL108750

용역을 제공받는 자가 인적 용역의 제공과 관련하여 항공회사·숙박업자 또는 음식업자에게 직접 지급한 항공료·숙박비 또는 식사대를 말한다.

※ 대한민국과 미합중국 간의 소득에 대한 이중과세의 회피와 탈세 방지 및 국제무역과 투자의 증진을 위한 협약

제6조[소득의 원천] 이 협약의 목적상 소득의 원천은 다음과 같이 취급된다.

(3) 제14조(사용료) (4)항에 규정된 재산(선박 또는 항공기에 관해서 본 조 (5)항에 규정된 것 이외의 재산)의 사용 또는 사용할 권리에 대하여 동 조항에 규정된 사용료는 어느 체약국 내의 동 재산의 사용 또는 사용할 권리에 대하여 지급되는 경우에만 동 체약국 내에 원천을 둔 소득으로 취급된다.

제14조[사용료] (1) 타방 체약국의 거주자에 의하여 일방 체약국내의 원천으로부터 발생되는 사용료에 대하여 동 일방 체약국이 부과하는 조세는, 하기(2)항 및 (3)항에 규정된 경우를 제외하고는, 그 사용료 총액의 15퍼센트를 초과해서는 아니된다.

(2) 저작권 또는 문학, 연극, 음악 또는 예술작품의 생산 또는 재생산권으로부터 일방 체약국의 거주자에 의하여 발생되는 사용료와, 라디오 또는 텔레비전방송용 필름과 테이프를 포함하여 영화필름의 사용 또는 사용권에 대한 대가로 받는 사용료는, 동 사용료 총액의 10퍼센트를 초과하는 세율로써 동 타방 체약국에 의하여 과세될 수 없다.

(3) 일방 체약국의 거주자인 사용료 수취인이 타방 체약국내에서 고정사업장을 가지며 또한 동 사용료를 발생시키는 권리 또는 재산이 동 고정사업장과 실질적으로 관련되어 있는 경우에는, 상기 (1)항 및

- 20 -

NL108751

(2)항이 적용되지 아니한다. 그러한 경우에는, 제8조(사업소득) (6) (a)
항이 적용된다.

(4) 본 조에서 사용되는 "사용료"라 함은 다음의 것을 의미한다.

 (a) 문학·예술·과학작품의 저작권 또는 영화필름·라디오 또는 텔
레비전 방송용 필름 또는 테이프의 저작권, 특허, 의장, 신안, 도
면, 비밀공정 또는 비밀공식, 상표 또는 기타 이와 유사한 재산
또는 권리, 지식, 경험, 기능(기술), 선박 또는 항공기(임대인이
선박 또는 항공기의 국제운수상의 운행에 종사하지 아니하는 자인
경우에 한함)의 사용 또는 사용권에 대한 대가로서 받는 모든
종류의 지급금

 (b) 그러한 재산 또는 권리(선박 또는 항공기는 제외됨)의 매각, 교환
또는 기타의 처분에서 발생한 소득 중에서 동 매각, 교환 또는
기타의 유상처분으로 취득된 금액이 그러한 재산 또는 권리의
생산성, 사용 또는 처분에 상응하는 부분. 사용료에는 광산, 채석
장 또는 기타 자연자원의 운용에 관련하여 지급되는 사용료, 임
차료 또는 기타의 금액은 포함되지 아니한다.


 다. 사실관계 및 판단


  (1) 청구법인은 2015.11.12. 삼성전자와 쟁점계약을 체결하고 그 대
가로 쟁점금액을 지급받기로 하였고, 삼성전자는 2015.11.19. 청구법인
에게 쟁점금액에서 한·미 조세조약에 따른 사용료소득에 대한 법인세
(15%) 및 법인지방소득세 합계 1,548,888,000원을 공제한 금액을 지급한
후 2015.12.10. 2015사업연도 원천징수분 법인세 1,408,080,000원을 신
고·납부하자 청구법인은 2018.10.28. 쟁점금액은 사용료소득이 아닌 사
업소득에 해당하므로 삼성전자가 기원천징수한 법인세의 환급을 요구

CONFIDENTIAL

NL108752

하는 경정청구를 제기하였으나, 처분청은 쟁점금액을 사용료소득에 해당하는 것으로 보아 2020.1.30. 이를 거부하였다.

(2) 청구법인이 제시한 쟁점계약서에 의하면 쟁점계약은 공동개발계약 및 라이선스계약으로 크게 구분되는데, 공동개발계약은 청구법인과 삼성전자가 개발이정표 및 작업지시서에 따라 협업으로 쟁점기술을 개발하는 프로젝트에 관한 것이고, 라이선스계약은 상기의 공동개발을 위하여 필요한 범위 내에서 서로의 라이선스를 부여할 수 있으며 이에 대하여는 상호간에 기술료를 지급하지 아니한다는 내용의 계약인바, 쟁점계약의 주요 내용은 다음과 같다.

<Section 2. Collaborative Development Work>

- 제2.1.3조[In All Phases] 모든 단계에서 청구법인은 삼성전자에 결과물을 인도하고 삼성전자는 해당 결과물 수령 여부를 결정하기 전에 각 결과물이 비특허 선행지적재산권인지 여부를 확인한다.

- 제2.3조[Acceptance] 제품사양에 따라 개발된 제품을 평가하여 수용여부를 결정하고 수용이 결정되면 해당 연구개발이 완료된 것으로 본다.

<Section 3. Development Cost>

- 제3.1조[Fees and Costs] 삼성전자는 청구법인으로부터 청구서를 받은 날로부터 7일 이내에 초기개발비(Non-Recurring Engineering)USD 8,000,000를 지급하여야 한다.

<Section 4. IPR Ownership>

CONFIDENTIAL

NL108753

- 제4조[IPR Ownership] 프로젝트에 따라 공동 개발되는 기술, 정보, 노하우는 공동소유하고 일방 당사자가 단독 개발하는 기술, 정보, 노하우는 단독 소유하게 된다.

- 제4.2조[Solely and Jointly Owned Patents] 쟁점계약에서 창출된 특허는 해당 발명을 한 직원이 속한 법인에게 귀속하되 양당사자가 공동 발명한 특허는 공동으로 소유한다.

<Section 5. Technology Standardization and Productization>

- 제5.2조[Right of Fist Refusal] 연구결과에 따라 파생되는 기술에 대해 삼성전자가 우선매수권을 갖는다.

- 제5.4조[Sole Collaboration IPR License] 각 당사자는 라이선스 부여자로서 라이선스 사용자인 상대방에게 사용료가 완전히 지출된 비독점적 영구 취소 및 양도 불가한 전세계 라이선스를 부여하기로 합의하고 그 사용자는 부여자의 단독협업 지적재산권을 사용, 복제, 수정하여 결과물 및 제품사양을 만들어 배포하도록 한다.

<Section 8. Grant of License>

- 제8.2조[License of Samsung] 삼성전자는 청구법인의 기존 보유 특허 및 향후 5년간 출원된 특허에 대하여 영구라이선스를 허여받는다.

<Section 11. Confidentiality>

CONFIDENTIAL

NL108754

- 제11.1조[Confidential Information] 각 당사자는 결과물, 상대방이 제공한 모든 영업, 재무, 계약 및 마케팅 정보 등 유·무형자산에 대하여 비밀을 유지하여야 한다.

- 제11.5조[Restricted Information] 제한된 정보는 작업지시서에서 제시하는 추가적인 조항 및 조건의 대상이다.

(3) 쟁점계약상 이 건 프로젝트의 공동개발은 별도로 규정한 개발이정표 및 작업지시서에 따라 각 단계가 수행되는 것으로 약정되어 있는바, 동 개발이정표 및 작업지시서의 주요 사항은 아래 <표1>·<표2>와 같다.

<표1> 개발이정표(쟁점계약 Appendix A, 2. Development Milestone)

| 구 분 | 2015년 | 2016년 | 2017년 | 2018년 | 2019년 | 2020년 |
|---|---|---|---|---|---|---|
| NVDIMM-P 사양 | 계약 및 공동워크숍 | | 사양 공동개발 및 공동표준화 | | 2020년까지 지속적인 연구개발 및 결과물에 대한 개별 또는 공동 특허 획득 및 소유권 이전 결정 | |
| NVDIMM-P 고객 샘플 | | | | | | |

<표2> 작업지시서(쟁점계약 Appendix B, Statement of Work)

| 이정표 | 청구법인 | 삼성전자 |
|---|---|---|
| 시장현황 및 청구법인 보유 기술에 대한 워크숍 실시(~2015.12.31.) | a. 청구법인의 NV Vault와 Hypervault 제품 구현 방법 논의 | a. DRAM 및 NAND 로드맵 공유, 청구법인의 NV Vault와 Hypervault 제품 구현 방법 논의 |
| | b. 컨트롤러 로직 및 데이터버퍼 등 현 NV Vault | b. DRAM 및 NAND 산업의 주요 추세에 대한 삼성 |

CONFIDENTIAL

NL108755

|  | 및 Hypervault 제품 및 그 구성요소 및 잠재적으로 협력관계 구축이 가능한 기타 데이터 IO 관련 제품의 정의 및 사양 제공 | 전자의 견해 설명, 향후 산업 방향에 대한 논의 |
|  | c. 데이터 버퍼 및 NVDIMM 제품 테스트 및 정성평가에 대해 지도 | c. NVDIMM-P 개발과 관련한 삼성전자의 현황 및 계획 공유 |
|  | d. 시스템 자원 활용 및 각 용례에 대해 대체기술 솔루션 대비 청구법인 제품 사용시 모델링을 통해 파악되거나 측정된 이점 등 현NV Vault 및 Hypervault 제품에 대한 용례분석 공유 | d. 허용되는 최대 시스템 자원 사용, 성능 영향 및 비용 등 삼성의 설계 제약사항에 대한 의견 공유 |
| VDIMM-P 제품 사양 공동 개발 (~2016.3.31.) | 사양 공동개발, 세부사항은 추후 논의 | |
| 개발기술에 대한 표준화를 위한 협업(~2016.12.31.) | 양당사자는 협력하여 쟁점계약 제5.1조에서 명시하는 바와 같이 적절한 표준화기구를 통하여 NVDIMM-P 제품 사양 표준화 | |
| 고객 샘플 공동 개발(~2016.12.1.) | 지정 제품고객 샘플 공동개발, 세부사항 논의 후 추후 작업지시서에 반영 | |

　(4) 위 개발이정표 및 작업지시서에 따르면, 청구법인은 기술 개발을 위한 초기 분석 및 테스트를 수행하고 이에 대한 결과를 바탕으로 삼성전자와 해당 기술의 추가 개발 여부를 결정하도록 되어 있는데, 쟁점계약에 따른 공동개발 단계의 주요사항은 아래 <표3>과 같이 요약되며, 삼성전자가 공동개발을 위한 초기 단계가 종료된 후 추가 단계를 진행하지 아니하기로 결정함에 따라 공동개발 단계 중 추가 단

– 25 –

NL108756

계에 해당하는 부분은 진행되지 아니한 것으로 나타난다.

<표3> 쟁점계약에 따른 공동개발 단계 요약

| 구 분 | 주요 내용 |
|---|---|
| 초기 단계 (Initial Phase) | – 청구법인은 쟁점계약에서 정의한 제품 사양을 구현하기 위한 기술 개발 목적 초기 분석 및 테스트 수행<br>– 삼성전자는 청구법인에게 USD8,000,000를 NRE(Non-Recurring Engineering) Fee로 지급 |
| 이후 단계 (Subsequent Phase) | – 양사의 경영진이 초기 단계 수행 결과를 바탕으로 이후 단계 진행 여부 결정<br>– 이후 단계 진행시 청구법인과 삼성전자가 공동으로 기술 사양 표준화 및 제품 상품화 수행<br>– 상기 NRE Fee를 제외한 개발비용은 양사가 각자 부담 |

(5) 청구법인이 보유한 쟁점기술은 메모리의 일종인 SCM(Storage, CPU, Memory)을 생산할 수 있는 기술 개발을 사업의 일부로 하고 있고, 이는 Storage의 성능을 증대시켜 전체적으로 속도를 증대시키는 기능을 하는 메모리를 생산하는 기술이며, 청구법인은 특허받은 기술인 NV Vault 및 HyperVault를 보유하고 있는 반면, 삼성전자는 DRAM 및 NAND 제조기술을 보유하고 있는 것으로 나타난다.

(6) 청구법인은 쟁점계약에 따라 쟁점기술의 공동연구개발을 진행하여 아래 <표4>와 같이 총 USD9,660,951(약 11,336,159,903원)의 비용을 지출하였다고 주장한다.

CONFIDENTIAL

NL108757

<표4> 쟁점용역 수행에 따른 청구법인의 지출비용

(단위 : USD)

| 구 분 | 2015년 | 2016년 | 2017년 | 2018년 | 합 계 |
|---|---|---|---|---|---|
| 금 액 | 342,661 | 4,386,419 | 4,155,574 | 776,297 | 9,660,951 |

(7) 그 밖에 삼성전자는 2017년 하반기에 청구법인과의 개발용역이 종료된 것으로 답변하였으나, 청구법인은 쟁점계약의 이정표에 따라 2018년 상반기까지 실제로 삼성전자와 공동연구개발을 수행하였을 뿐만 아니라 관련 회의도 여러 차례 진행하였다고 주장하며 그 증빙자료로 삼성전자와 교신한 관련 이메일 및 회의자료 등을 각각 제시하고 있다.

(8) 이상의 사실관계 및 관련 법령 등을 종합하여 살피건대, 처분청은 쟁점금액을 삼성전자가 청구법인 소유의 비공개 기술정보 또는 노하우를 이전받거나 사용한 대가로 지급한 것이므로, 한·미 조세조약상 청구법인의 사용료소득으로 보아야 한다는 의견이나,

쟁점계약 제4.2조에서 동 계약에서 창출된 특허 출원 대상의 발명은 해당 발명을 한 직원이 속하는 당사자에게 귀속되며, 공동발명에 한하여 발생하는 특허를 공동으로 소유하도록 약정하고 있으므로 쟁점계약에 따른 연구개발 활동의 결과로서 쟁점기술의 연구개발이 최종적으로 성공하게 되면 청구법인이 쟁점기술을 소유하게 되고, 쟁점기술을 제3자에게 양도하고자 하는 경우 삼성전자에게 우선매수권이 부여된다고 약정하고 있어서, 삼성전자가 이 건 프로젝트를 통하여 청구법인으로부터 제공받는 것은 노하우가 아니라 쟁점기술에 대한 우선매수권이라 할 수 있고, 쟁점계약 제8.2조의 라이선스 조항은 공동개발시 발생할 수 있는 특허권 침해에 따른 법적 문제를 사전에 방지

- 27 -

하기 위하여 청구법인이 계약 발효일 이전부터 보유하고 있던 특허
등에 대하여는 기술료 지급 없이 이용할 수 있다고 약정한 것으로 통
상적인 교차 라이선스(Cross-license) 조항으로 보이는 점,

처분청은 쟁점금액의 지급목적에는 삼성전자가 청구법인의 특허권
침해에 따른 제소 리스크를 해소할 목적도 있는 것으로 보았으나, 쟁
점금액은 청구법인이 당해 용역수행에 투입되었다고 주장하는 비용에
통상의 이윤을 가산한 금액에도 미치지 못할 뿐만 아니라, 쟁점계약
제3.1조에서 쟁점금액을 초기개발비(NRE fee)로 명시하고 있고, 일반적
으로 지적재산권 침해소송의 가액이 적게는 수백억원에서 많게는 수
천억원을 상회하는 점을 감안할 경우 쟁점금액을 라이선스 관련 소송
가액으로 보기에는 지나치게 과소하다 할 수 있는 점,

사용료소득은 이미 완성되어 존재하고 있는 결과물을 이용 또는 제
공함으로써 얻게 되는 소득으로 정의되나, 쟁점계약에 따르면 쟁점용
역은 청구법인 및 삼성전자가 이 건 프로젝트가 수행되기 전부터 이미
보유하고 있던 정보 또는 노하우를 바탕으로 공동으로 연구개발활동을
통하여 존재하지 않던 쟁점기술을 개발하는 것으로 나타나고, 이는
별도로 규정한 개발이정표 및 작업지시서에 따라 각 개발단계가 수행
되는 것으로 약정되어 있는 점,

처분청은 이 건 처분의 주요 과세근거로 삼성전자의 답변내용을 제
시하고 있으나, 당초에는 청구법인과 삼성전자가 주장하는 쟁점계약 체결
목적 등이 서로 일치하지 아니하였으나, 심판청구가 진행되는 시점에
이르러서는 삼성전자가 쟁점계약의 목적 및 내용 등에 대하여 명확하게
확인해 주지 아니하여 특별한 사정이 없는 한 당사자 간에 작성된 쟁점

- 28 -

CONFIDENTIAL                                                                NL108759

계약서의 문언에 따라 엄격하게 해석하는 것이 타당하고, 당초에 삼성전자는 2017년 하반기에 청구법인과의 개발용역이 종료된 것으로 처분청에 답변하였으나, 청구법인은 쟁점계약의 이정표에 따라 2018년 상반기까지 실제로 삼성전자와 공동연구개발을 수행하였을 뿐만 아니라 관련 회의도 여러 차례 진행하였다고 주장하며 그 증빙자료로 삼성전자와 교신한 관련 이메일 및 회의자료 등을 각각 제시하고 있어서 삼성전자의 답변내용을 전적으로 신뢰하기는 어려운 점,

그 밖에 쟁점계약에서 각 당사자는 결과물, 상대방이 제공한 모든 영업, 재무, 계약 및 마케팅 정보 등 유·무형자산에 대하여 비밀을 유지하도록 약정하고 있는데, 이는 공동개발 프로젝트에서 전형적으로 적용되는 포괄적인 비밀유지규정으로 쌍방간 프로젝트를 수행함에 있어서 부수적으로 알거나 이전될 수 있는 유·무형자산에 대한 보호를 위한 목적이므로 특정 정보나 노하우에 대한 비밀보호규정으로 보기는 어려운 점 등에 비추어 쟁점용역은 청구법인과 삼성전자가 쟁점기술을 공동개발하기 위한 초기 연구개발용역에 해당하므로 쟁점금액을 연구개발용역에 대한 대가인 사업소득으로 봄이 타당하다 할 것이다.

따라서 처분청이 쟁점금액을 라이선스 허여 등의 대가인 사용료소득으로 보아 청구법인의 경정청구를 거부한 이 건 처분은 잘못이 있는 것으로 판단된다.


4. 결 론

이 건 심판청구는 심리결과 청구주장이 이유 있으므로 「국세기본

- 29 -

CONFIDENTIAL

NL108760

법」 제81조 및 제65조 제1항 제3호에 의하여 주문과 같이 결정한다.


2020.    11.    17.



주심조세심판관      이 상 헌
배석조세심판관      황 정 훈
이 계 원
이 만 우

CONFIDENTIAL

NL108761

정본입니다.

2020년     11월     17일

조세심판원 행정실장     박 태 의     

CONFIDENTIAL