MICHAEL G. YODER (SB 83059)
myoder@omm.com
MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

EKWAN E. RHOW (SB 174604)
erhow@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Samsung
Electronics Co., Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>                Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG'S OPPOSITION TO PLAINTIFF NETLIST INC.'S MOTION FOR JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 58(d)**<br><br>Date:    February 14, 2022<br>Time:   9:00 a.m. |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 9

II.     ARGUMENT ..................................................................................... 10

    A.  Netlist Is Not Entitled to Judgment on Its First Claim for Relief ........ 10

        1.  Netlist Failed to Prove Damages—an Essential Element of Its Contract-Breach Claim ........................................................ 11

        2.  Netlist's Effort to Salvage Its First Claim by Asserting Its Entitlement to Nominal Damages Fails ................................... 12

            a.  Netlist is not entitled to nominal damages because it failed to prove any resulting damages ............................. 13

            b.  Netlist forfeited any claim to nominal damages ............. 18

    B.  Netlist Is Not Entitled to Judgment on Its Second Claim for Relief .................................................................................... 21

        1.  Netlist Did Not Suffer any Compensable Harm ....................... 21

        2.  Netlist Is Not Entitled to Prejudgment Interest ........................ 25

    C.  The Court Should Enter Judgment in Samsung's Favor on Netlist's Third Claim for Relief or at Least Order a Trial on That Claim ................................................................................... 27

III.    CONCLUSION ................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*,
   769 F.3d 135 (2d Cir. 2014) ...................................................................15

*Advanced Water Tech v. Amiad USA*,
   No. 18-CV-5473 (VSB), 2019 WL 4805330 (S.D.N.Y. Sept. 30,
   2019) ........................................................................................................33

*Aero Garage Corp. v. Hirschfeld*,
   185 A.D.2d 775 (1st Dep't 1992) ...........................................................23

*Amer. List Corp. v. U.S. News & World Report., Inc.*,
   75 N.Y.2d 38 (1989) ...............................................................................22

*Ample Bright Dev., Ltd. v. Comis Int'l*,
   913 F. Supp. 2d 925 (C.D. Cal. 2012) ...................................................18

*Aristocrat Leisure Ltd. v. Deutsche Bank*,
   618 F. Supp. 2d 280 (S.D.N.Y. 2009) ..............................................23, 25

*ARP Films, Inc. v Marvel Entm't Group, Inc.*,
   952 F.2d 643 (2d Cir. 1991) ...................................................................33

*Base Vill. Owner LLC v. Hypo Real Estate Capital Corp.*,
   92 A.D.3d 541 (1st Dep't 2012) .............................................................17

*Bear, Stearns Funding, Inc. v Interface Grp.-Nev., Inc.*,
   361 F. Supp. 2d 283 (S.D.N.Y. 2005) ....................................................29

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*,
   10 N.Y.3d 187 (2008) .............................................................................24

*Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*,
   91 N.Y.2d 256 (1998) .........................................................................24, 27

*C.K.S. Ice Cream Co., Inc. v. Frusen Gladje Franchise, Inc.*,
   172 A.D.2d 206 (1st Dep't 1991) ...........................................................18

*Chronister Oil Co. v. Unocal Re. & Mktg.*,
   34 F.3d 462 (7th Cir. 1994) ...............................................................30, 31

*City of Elmira v. Larry Walter, Inc.*,
   150 A.D.2d 129 (3d Dep't 1989) aff'd, 76 N.Y.2d 912 (1990) ..............23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*City of New York v. Tavern on the Green Int'l LLC*,
   No. 17-cv-1376 (RJS), 2021 WL 1316956 (S.D.N.Y. Apr. 7, 2021)..............30, 31

*Clarke v. Max Advisors, LLC*,
   235 F.Supp.2d 130 (N.D.N.Y. 2002)...................................................12

*Congel v. Malfitano*,
   31 N.Y.3d 272 (2018) ........................................................................23

*Daily News, L.P. v. Rockwell Int'l Corp.*,
   256 A.D.2d 13 (1st Dep't 1998) ........................................................17

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
   631 F.3d 42 (2d Cir. 2011) ................................................................11

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
   818 F. Supp. 2d 1193 (E.D. Cal. 2011) ............................................18

*Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*,
   872 F. Supp. 103 (S.D.N.Y. 1995) ....................................................29

*ERE LLP v. Spanierman Gallery, LLC*,
   94 A.D.3d 492 (1st Dep't 2012) ..................................................17, 25

*ESPN, Inc. v. Off. Of Com'r of Baseball*,
   76 F. Supp. 2d 416 (S.D.N.Y. 1999) ............................................29, 30

*Finley v. Atlantic Transp. Co.*,
   220 N.Y. 249 (1917) ..........................................................................15

*Flynn v. AK Peters, Ltd.*,
   377 F.3d 13 (1st Cir. 2004) ...............................................................19

*Found. for Seacoast Health v. Hosp. Corp. of Am.*,
   71 A.3d 736 (N.H. 2013) ...................................................................29

*Freund v. Wash. Square Press, Inc.*,
   34 N.Y.2d 379 (1974)..........................................................13, 15, 19

*Gelco Builders & Burjay Const. Corp. v. Simpson Factors Corp.*,
   301 N.Y.S.2d 728 (N.Y. Sup. Ct. 1969) ...........................................26

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gould Paper Corp. v. Madisen Corp.*,
614 F. Supp. 2d 485 (S.D.N.Y. 2009) ...................................................18

*Hamilton v. Water Whole Int'l Corp.*,
302 F. App'x 789 (10th Cir. 2008) .......................................................19

*Happy Dack Trading Co., Ltd. v. Agro-Indus.*, Inc.,
602 F. Supp. 986 (S.D.N.Y. 1984) .......................................................26

*Hirsch Elec. Co., Inc. v. Comm. Servs., Inc.*
145 A.D.2d 603 (2d Dep't 1988) ..........................................................15

*In re El-Roh Realty Corp.*,
74 A.D.3d 1796 (4th Dep't 2010) .........................................................25

*J & J Structures, Inc. v. Callanan Indus., Inc.*,
215 A.D.2d 890 (3d Dep't 1995) ..........................................................24

*Jafari v. Wally Findlay Gallaries*,
7 F. Supp. 64 (S.D.N.Y. 1990) .............................................................32

*Kinney v. Massachusetts Bonding & Ins. Co.*,
210 A.D. 285 (3d Dept. 1924) ..............................................................24

*Kronos, Inc. v. AVX Corp.*,
81 N.Y.2d 90 (1993) ............................................................................14

*Lager Assocs. v. City of New York*,
304 A.D.2d 718 (2d Dep't 2003) ..........................................................26

*Lavigny Holdings Ltd. v. Coller Int'l Partners V-A, LP*,
113 A.D.3d 424 (1st Dep't 2014) .........................................................17

*Lewin v. Levine*,
146 A.D.3d 768 (2d Dep't 2017)......................................................13, 16

*Lexington 360 Assoc. v. First Union Nat'l Bank of North Carolina*,
23 A.D.2d 187 (1st Dep't 1996) ...........................................................12

*Manhattan Sav. Inst. v. Gottfried Baking Co.*,
286 N.Y 398 (1941) .............................................................................15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McCoy Assocs., Inc. v. Nulux, Inc.*,
   218 F. Supp. 2d 286 (E.D.N.Y. 2002) ................................................................. 18

*McWeeney v. Lambe*,
   138 A.D.3d 796 (2d Dep't 2016) ......................................................................... 19

*Miami Subs Corp. v. Murray Fam. Tr. and Kenneth Dash P'ship*,
   703 A.2d 1366 (N.H. 1997) ................................................................................. 30

*Milan Music, Inc. v. Emmel Comm. Booking, Inc.*,
   37 A.D.3d 206 (1st Dep't 2007) .......................................................................... 12

*Mom's Bagels of New York, Inc. v. Sig Greenebaum, Inc.*,
   164 A.D.2d 820 (1st Dep't1990) ......................................................................... 17

*Mount Sinai Hosp. v. Borg-Warner Corp.*,
   527 F. Supp. 922 (S.D.N.Y. 1981) ...................................................................... 26

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
   No. 10 Civ 5762 (PAE), 2016 U.S. Dist. LEXIS 71493 (S.D.N.Y.
   June 1, 2016) ........................................................................................................ 18

*Ortiz v. Jordan*,
   562 U.S. 180 (2011) ............................................................................................ 16

*Perry v. McMahan*,
   84 N.Y.S.3d 508 (App. Div. 2018) ................................................................ 12, 14

*Perry v. McMahan*,
   164 A.D.3d 1488 (2d Dep't 2018) ....................................................................... 14

*Process Am. Inc. v. Cynergy Holdings, LLC*,
   839 F.3d 125 (2d Cir. 2016) ........................................................................... 29, 33

*Proper v. State Farm Mut. Auto Ins. Co.*,
   63 A.D.3d 1486 (3d Dep't 2009) ..................................................................... 12, 14

*Reading Int'l, Inc. v. Mululani Grp. Ltd.*,
   No. 13-00133 JMS-KSC, 2018 WL 2392500 (D. Haw. May 25,
   2018) ..................................................................................................................... 30

*Reuter v. Jax Ltd., Inc.*,
   711 F.3d 918 (8th Cir. 2013) ............................................................................... 28

SAMSUNG'S OPP. TO NETLIST'S MOTION FOR JUDGMENT

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007)..................................................................................18

*Ross v. Sherman*,
    95 A.D.3d 110 (2d Dept. 2012) ..............................................................15

*Sakamoto v. Duty Free Shoppers, Ltd.*,
    764 F.2d 1285 (9th Cir. 1985) ................................................................31

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000) ............................................................19, 22

*Seidman v. Indus. Recycling Props., Inc.*,
    106 A.D.3d 983 (2d Dep't 2013)............................................................24

*Soltero v. Swire Dev. Sales, Inc.*,
    485 F. App'x 377 (11th Cir. 2012) .........................................................20

*Spodek v. Park Prop. Dev. Assocs.*,
    96 N.Y.2d 577 (2001) .............................................................................27

*Tortu v. Las Vegas Metro. Police Dept.*,
    556 F.3d 1075 (9th Cir. 2009) ................................................................21

*Truglia v. KFC Corp.*,
    692 F. Supp. 271 (S.D.N.Y. 2008) .........................................................33

*Walker v. Anderson Elec. Connectors*,
    944 F.2d 841 (11th Cir. 1991) ................................................................20

*Watchhorn by and Through Christenson v. Town of Davie*,
    795 F. Supp. 1112 (S.D. Fla. 1992).........................................................20

*Zamora v. Morphix Co., Ltd.*,
    No. 15-cv-6532 (KBF), 2018 WL 1033228 (S.D.N.Y. Feb. 21,
    2018), *aff'd* 764 F. App'x 96 (2d Cir. 2019) ........................................28

**Statutes**

CPLR § 5001(b)...............................................................................30, 31

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

17 Am. Jur. 2d, Contracts § 670 (2021) ....................................................30

Article 59 (Representative), Framework Act on National Tax, Laws of
   Korea, *available at* Korean Law Translation Center,
   https://elaw.klri.re.kr/eng_service/lawView.do?hseq=46374&lang=E
   NG....................................................................................................28

*N.Y. Pattern Jury Instr.*, Civil, 4:20.........................................................22

**Rules**

Fed. R. Civ. P. 44.1.................................................................................28

Fed. R. Civ. P. 50(a) .........................................................................23, 24

Fed. R. Civ. P. 50(b).............................................................................24

Fed. R. Civ. P. 51(d)(1)(B).....................................................................22

Fed. R. Civ. P. 58(d) .............................................................................11

SAMSUNG'S OPP. TO NETLIST'S MOTION FOR JUDGMENT

## I.      INTRODUCTION

Netlist's request for entry of judgment should be denied as to each of its three claims for relief.  As to the first claim for relief—for failure to supply memory chips under Section 6.2 of the Joint Development and License Agreement ("JDLA")—the jury found that Netlist failed to prove that it suffered any damages as result of Samsung's alleged contract violation.  Netlist therefore failed to establish the essential element of resulting damages, and its claim for breach of Section 6.2 fails. Netlist's main argument in response is that it is automatically entitled to nominal damages, and thus a judgment in its favor.  That is wrong for two reasons.  First, under New York law, damages resulting from failure to perform under a contract is an essential element of a contract-breach claim.  If that element is not proven, then the contract-breach claim fails.  If that element *is* proven, then the plaintiff is entitled at least to nominal damages if it cannot prove the amount of actual damages. ***Netlist's contrary contention—that a plaintiff need not prove resulting damages at all—would essentially eliminate resulting damage as an element of a contract-breach claim, contrary to decades of black-letter New York law***.  Second, and in any event, under well settled law, Netlist waived any claim to nominal damages by making the strategic decision not to pursue them at trial, omitting the claim from the final pretrial order, and failing to submit the claim to the jury.  Because Netlist failed to satisfy the damages element of a breach of contract claim as to its first claim for relief, judgment should be entered in Samsung's favor on that claim.

The Court should also enter judgment in Samsung's favor on Netlist's second claim for relief for much the same reason.  Netlist failed to prove that it suffered compensable harm as a result of Samsung remitting $1.32 million of the $8 million Section 3.1 fee to the Korean Tax Authority.  The only damages that Netlist seeks are professional fees it paid to PricewaterhouseCoopers ("PwC") to assist in seeking a refund of the tax withholding.  But under well settled New York law, those professional fees are consequential damages not recoverable under the JDLA.  And

9

1  when the only damages that result from an alleged breach are not recoverable under

2  the contract, New York law is clear that the plaintiff has failed to satisfy the

3  resulting-damages element of a breach-of-contract claim, and the claim fails as a

4  matter of law.  Samsung is thus entitled to judgment as to Netlist's second claim.

5       Finally, the Court should enter judgment in Samsung's favor on Netlist's third

6  claim for relief or, in the alternative, order a trial on that claim.  The Court

7  previously granted summary judgment in Netlist's favor on that claim, finding that

8  Samsung had materially breached the JDLA and that Netlist had properly terminated

9  the JDLA based on those material breaches.  But the jury verdict that Netlist did not

10  suffer damages as a result of any failure of Samsung to comply with Section 6.2,

11  and the fact that Netlist did not suffer any compensable harm as a result of

12  Samsung's withholding of $1.32 million of the $8 million fee under Section 3.1,

13  confirm both that Netlist has not established a breach of contract at all, and that at

14  most it engaged in technical, immaterial violations of the contract terms.  There was,

15  in short, no "material breach" of the JDLA, and thus no basis for Netlist to have

16  terminated the agreement.  The Court should therefore amend its prior summary

17  judgment ruling and enter judgment in Samsung's favor on Netlist's third claim for

18  relief.  Alternatively, the Court should conclude that there are genuine issues of

19  material fact as to the third claim for relief and order a trial limited to that claim.

20  ## II.    ARGUMENT

21  ###     A.    Netlist Is Not Entitled to Judgment on Its First Claim for Relief

22       Netlist contends that judgment should be entered in its favor on its first claim

23  for relief for breach of Section 6.2 of the JDLA.  Not so.  Damages resulting from

24  any failure of Samsung to comply with Section 6.2 is an essential element of

25  Netlist's breach of contract claim under New York law, which governs here,[1] and

26  the jury determined that Netlist failed to satisfy that element.  Netlist's contention

27  _____

28  [1] The JDLA is governed by New York law.  (*See* JDLA § 14.)

1  that it is entitled to nominal damages despite its failure to satisfy an element of its

2  claim is wrong, and its claim for nominal damages was waived in any event.

3        1.    **Netlist Failed to Prove Damages—an Essential Element of Its**
              **Contract-Breach Claim**
4

5        Netlist argues that the Court should enter judgment in its favor on the first

6  claim for relief because on summary judgment, "this Court found for Netlist on its

7  claim that Samsung breached the supply obligation in the JDLA" and the "jury's

8  verdict in this case cannot 'undo' that ruling."  (Dkt. 290, Netlist's Mot. for

9  Judgment Under Fed. R. Civ. P. 58(d) ("Mot."), at 5:16–20.)  But that is not what

10 this Court found at summary judgment.  As the Court recognized (Dkt. 186, Order

11 Re: Mot. for Summ. J. ("MSJ Order"), at 5:26–6:1), the essential elements of

12 Netlist's breach of contract claim are "(1) the existence of a contract between itself

13 hand that defendant; (2) performance of the plaintiff's obligations under the

14 contract; (3) breach of the contract by that defendant; and (4) damages to the

15 plaintiff caused by that defendant's breach."  *Diesel Props S.r.l. v. Greystone Bus.*

16 *Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).[2]  The Court granted summary

17 judgment only as to the first three elements—namely, "the existence of a contract,

18 its performance of the contract, and Samsung's breach of the supply provision of the

19 contract."  (MSJ Order, at 15:7–9.)  The Court thus concluded that "[p]artial

20 summary judgment in Netlist's favor on these elements is appropriate," but that the

21 fourth element of "[d]amages must be proven at trial."  (*Id.*, at 15:9–12.)

22       Netlist failed to prove this fourth element of resulting damages at trial.

23 Specifically, the jury found that Netlist failed to "prove that it suffered damages as a

24 result of Samsung's failure to fulfill Netlist's orders for NAND and DRAM products

25 _____

26 [2] This is consistent with the Court's instruction to the jury that the "elements of a
   cause of action for breach of contract are (1) formation of a contract, (2)
27 performance by plaintiff, (3) defendant's failure to perform, (4) resulting damage."
   (Dkt. 272, Jury Instructions, at 30.)
28

in breach of Section 6.2 of the JDLA."  (Dkt. 276, Jury Verdict.)

Because Netlist failed to prove the resulting-damages element, its breach-of-contract claim fails.  "Failure to prove the essential element of damages is fatal to a cause of action for breach of contract."  *Proper v. State Farm Mut. Auto Ins. Co*., 63 A.D.3d 1486, 1487 (3d Dep't 2009); *see also Lexington 360 Assoc. v. First Union Nat'l Bank of North Carolina*,  23 A.D.2d 187, 190 (1st Dep't 1996) ("Where a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order."); *Milan Music, Inc. v. Emmel Comm. Booking, Inc*., 37 A.D.3d 206, 206 (1st Dep't 2007) ("Without a clear demonstration of damages, there can be no claim for breach of contract."); *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 141 (N.D.N.Y. 2002) (the "establishment of damages suffered is an essential element of a breach of contract cause of action").  Thus, Netlist could not prevail on its contract-breach claim unless it proved that it suffered recoverable damages resulting from Samsung's failure to perform under Section 6.2.  (*See* Dkt. 272, Jury Instructions, at 31:7–8 ("Where actual damages have been pleaded and are to be proved, plaintiff must establish a causal relationship between the breach of contract and damages").)  The jury having found that Netlist failed to do so, judgment should be entered for Samsung.

## 2. Netlist's Effort to Salvage Its First Claim by Asserting Its Entitlement to Nominal Damages Fails

Netlist's main argument for judgment on its first claim is that "actual damages are not an essential element for breach, and nominal damages are instead recoverable to vindicate contract rights."  (Mot., at 5:23–26 (citing *Perry v. McMahan,* 84 N.Y.S.3d 508, 510 (App. Div. 2018).)  Not so:  failure to prove damages resulting from a contract breach is fatal to its breach of contract claim as a matter of law, as the numerous cases cited above hold.  Netlist's cases merely stand for the proposition that a plaintiff who satisfies the resulting-harm element need not

12

also prove the **amount** of actual damages, and can instead recover nominal damages. The jury's verdict here shows that Netlist failed to prove not only the amount of damages, but failed to prove that **any damages** resulted from Samsung's failure to perform under Section 6.2 in the first place.  And even if nominal damages were available in this case (and they are not), Netlist has forfeited any right to nominal damages.  Netlist did not seek nominal damages at trial.  Instead, Netlist went to trial asserting only that it suffered actual damages.  As the Court instructed the jury, "[w]here actual damages are claimed, the plaintiff must show actual damages and must lay a basis for a reasonable estimate of the extent of the harm."  (Dkt. 272, Jury Instructions, at 31:7–8); *see also Lewin v. Levine*, 146 A.D.3d 768, 770 (2d Dep't 2017) ("Since the plaintiffs failed to demonstrate that they sustained actual damages, the complaint must be dismissed.").  Having failed to prove actual damages, Netlist cannot now salvage its contract claim with a belated request for nominal damages.

### a.   Netlist is not entitled to nominal damages because it failed to prove any resulting damages

By definition, the fact that damages resulting from a failure to fulfill a contractual promise is an **essential element** of a breach-of-contract claim means that the claim fails as a matter of law if resulting damages are not proven.  If Netlist were right, resulting damages would not be an essential element of a contract-breach claim.  But as this Court has recognized, the essential elements of a contract-breach claim include "damages to the plaintiff caused by that defendant's breach."  *Diesel Props S.r.l.*, 631 F.3d at 52; (Dkt. 272, Jury Instructions, at 30).  None of Netlist's cited authority is to the contrary.  Rather, what Netlist's cases hold is that a plaintiff who **does** satisfy each contract-breach element but cannot prove the **amount** of damages can still obtain nominal damages.  *See Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 384 (1974) (nominal damages are available as a "formal vindication of plaintiff's legal right to compensation which has not been given a sufficiently certain monetary valuation").  It is true that, unlike in tort claims, "nominal damages

are always available in breach of contract actions." *Kronos, Inc. v. AVX Corp*., 81 N.Y.2d 90, 95 (1993) (cited at Mot. at 5:26–28).  But that does not mean that nominal damages are available to plaintiffs who have not satisfied all the elements of their claim.  Certainly, *Kronos* does not stand for that proposition—that case explained that nominal damages are always available in a successful contract-breach claim, whereas that is not always true in tort claims.  *See* 81 N.Y.2d at 95–96.  But just because nominal damages are available for plaintiffs who satisfy the breach of contract elements does not mean that Netlist is entitled to nominal damages here where it failed to prove that any damages resulted from any failure by Samsung to perform under the JDLA.  Again, resulting damages is an essential element of a contract-breach claim, and "[f]ailure to prove the essential element of damages is fatal to a cause of action for breach of contract."  *Proper*, 163 A.D.3d at 1487.

Netlist's reliance on *Perry v. McMahan*, 164 A.D.3d 1488 (2d Dep't 2018), is misplaced.  (*See* Mot., at 6:11–20.)  The issue there was the remedy for breach of a confidentiality provision in a marital settlement agreement where the wife admitted she materially breached the agreement.  *Perry,* 84 N.Y.S.3d at 1489.  No one in *Perry* disputed that the confidentially provision had been violated or that the plaintiff was harmed, but damages resulting from a violation of a confidentiality clause are understandably difficult to quantify.  In that circumstance, the law permits a plaintiff to "vindicate contract rights," allowing a recovery of nominal damages in lieu of "actual damages" because the amount of actual damages cannot be proven.  *See id*.[3]  Netlist's other cases are similar to *Perry*, and for the same reasons do not

---

[3] *Perry* relies on *Connaughton v. Chipotle*, 53 N.Y.S.3d 598 (2017), for the proposition that "actual damages are not an essential element" of a breach of contract action.  *Perry,* 84 N.Y.S.3d at 1490.  *Connaughton v. Chipotle* merely reiterates, however, the holding in *Kronos* that nominal damages are not typically available for tort claims, even though they may be "available in contract cases." *Connaughton*, 53 N.Y.S.3d at 608.  It does not hold that nominal damages are available to plaintiffs like Netlist who fail to prove the resulting-damages element in

help Netlist here.  *See Freund*, 34 N.Y.2d at 383–84 (plaintiff could not prove lost royalties from the breach of a publishing contract with "required certainty"); *Finley v. Atlantic Transp. Co*., 220 N.Y. 249, 258 (1917) (court suggested that nominal damages may be available where the plaintiff's father died on a trans-Atlantic boat trip, and the transportation company cast the body into the sea—an act with obvious though potentially difficult-to-quantify harm); *Hirsch Elec. Co., Inc. v. Comm. Servs., Inc.* 145 A.D.2d 603, 605 (2d Dep't 1988) (permitting plaintiff to pursue nominal damages in lieu of lost profits that were "too speculative"); *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co*., 769 F.3d 135, 138-39 (2d Cir. 2014) (district court awarded nominal damages where plaintiff could not show damages with "reasonable certainty"); *Ross v. Sherman*, 95 A.D.3d 110 (2d Dept. 2012) (similar); *Manhattan Sav. Inst. v. Gottfried Baking Co*., 286 N.Y. 398, 399-400 (1941) (awarding nominal damages for breach of a loan agreement because the evidence was insufficient to establish the difference between the "contract rate for the loan and the market rate at the time of the alleged breach").

New York law thus sensibly provides that a plaintiff who has proven each contract-breach element, including resulting damages, but has difficulty quantifying those damages, can still obtain nominal damages as a remedy.  But New York law does not provide that a plaintiff need not satisfy the elements of a breach-of-contract claim in the first place.  Here, Netlist pursued a theory of ***actual*** damages consisting of cover damages—*i.e*., the difference in the contract price under the JDLA and the price Netlist purportedly paid third parties for substitute products due to Samsung's failure to supply.  And the jury verdict here makes clear that Netlist failed to prove that it suffered ***any*** resulting damages, so the jury did not have to reach the question

the first place. In other words, plaintiffs who establish the elements of their claim, including resulting-damage, may recover nominal damages even though the amount of damages—i.e., "actual damages"—cannot be quantified, so "actual damages" are not an element of a breach claim.

15

of the amount of any damages.  (Dkt. 276, Jury Verdict (Netlist failed to "prove that it suffered damages *as a result of* Samsung's failure to fulfill Netlist's orders for NAND and DRAM products in breach of Section 6.2 of the JDLA.") (emphasis added).)  In this situation, it is not a matter of the damages being difficult or impossible to quantify, but Netlist's complete inability to establish that it suffered any harm at all.  *Lewin*, 146 A.D.3d at 770 ("Since the plaintiffs failed to demonstrate that they sustained actual damages, the complaint must be dismissed.").

Netlist also argues that it somehow *did* prove damages at summary judgment. Netlist says it showed the "extent or frequency of Samsung's documented breaches," and points to "facts" it purportedly established on summary judgment that Samsung knew its actions would "have a dramatic impact on [Netlist's] financials and future business," and that "Samsung rejected over $10 million of Netlist business."  (Mot., at 7:13–8:5.)  But what happened at summary judgment does not matter:  "Once the case proceeds to trial, the full record developed in the court supersedes the record existing at the time of the summary-judgment motion." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).  Indeed, Netlist was clear that "Netlist has not moved for summary judgment with respect to damages, which it intends to prove at trial."  (Dkt. 178, Netlist's Reply ISO Mot. for Summ. J., at 9:10–12).  This Court agreed at summary judgment, concluding that that "[d]amages must be proven at trial."  (MSJ Order, at 15:7–12.)  And Netlist failed to prove damages at trial.

Netlist also argues that because it purportedly established at summary judgment the "frequency and [] severity" of Samsung's failure to supply products to Netlist, the "fact that damages were not quantifiable for the jury or not recoverable because of a contractual limitation" should not matter.  (Mot., at 8:10–12.)  To the extent Netlist is arguing that it satisfied the resulting-damages element because it showed at summary judgment that it purportedly suffered "nonrecoverable" consequential damages—*e.g.*, lost "future business"—that too does not satisfy Netlist's burden.  New York law is clear that if the only resulting damages are those

16

that the contract has expressly excluded, the plaintiff fails to satisfy the resulting-damages element and the claim fails.  *ERE LLP v. Spanierman Gallery, LLC*, 94 A.D.3d 492, 493-94 (1st Dep't 2012) (a claim is "fatally deficient if it does not demonstrate how the . . . alleged breach of the agreement caused . . . any injury," and that element could not be satisfied with consequential damages where the contract "specifically disclaimed consequential damages"); *Lavigny Holdings Ltd. v. Coller Int'l Partners V-A, LP*, 113 A.D.3d 424, 424 (1st Dep't 2014) (affirming dismissal of breach of contract action because plaintiffs had "no cognizable damages since the agreements provide that plaintiffs could not recover consequential damages arising under the agreements, including loss of profits.").[4] Here, the JDLA bars the recovery of consequential damages and lost profits (JDLA § 12.5), and Netlist therefore cannot rely on purported lost profits or other consequential damages to meet the resulting-damages element of its claim.

Netlist also argues that, since the availability of nominal damages prevented the Court from entering summary judgment against Netlist for failure to present evidence of damages, the Court should now award nominal damages and any contrary argument by Samsung "is waived."  (*See* Mot., at 1:23–2:6).  Netlist again is wrong.  First, the Court's discussion of nominal damages at summary judgment had nothing to do with Netlist's first claim for relief.  The Court ruled that nominal damages may be available under ***Netlist's second claim for relief under Sections***

---

[4] *See also Base Vill. Owner LLC v. Hypo Real Estate Capital Corp.*, 92 A.D.3d 541, 541 (1st Dep't 2012) (affirming dismissal of complaint pursuant to contractual bar against damages claimed); *Daily News, L.P. v. Rockwell Int'l Corp.*, 256 A.D.2d 13, 13 (1st Dep't 1998) (affirming dismissal of breach of contract claim for failure to satisfy resulting-damages element when plaintiff sought only consequential damages and contract at issue "expressly exclude[d] as a remedy the recovery of consequential damages"); *Mom's Bagels of New York, Inc. v. Sig Greenebaum, Inc.*, 164 A.D.2d 820, 822-23 (1st Dep't 1990) (granting defendants summary judgment when plaintiff failed to satisfy resulting-damages element when only damages shown were consequential damages and contract excluded those damages).

*3.1 and 3.2* of the JDLA (related to the tax withholding), even though Netlist's only evidence of damages at that stage was a "conclusory, self-serving affidavit." (MSJ Order, at 16:24–17:18.)[5]  Second, simply because Netlist's claim was able to survive summary judgment did not excuse Netlist from proving the essential resulting-damages element at trial—that is the entire point of having a trial after a summary judgment motion is denied.  And Samsung of course did not waive the argument that Netlist had not suffered damages:  the Court expressly held that "[d]amages must be proven at trial," (MSJ Order, at 15:7–12), and after a three day trial devoted entirely to that question, Netlist failed to meet its burden.  That ends the matter.

b.      **Netlist forfeited any claim to nominal damages**

Even if Netlist were in theory entitled to nominal damages, it forfeited its right to such damages by making a strategic choice not to pursue them at trial.

*First*, Netlist failed to include nominal damages in the Final Pretrial Order, and "theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Duhn Oil Tool, Inc. v. Cooper Cameron Corp*., 818 F. Supp. 2d 1193, 1207 (E.D. Cal. 2011) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475 (2007)).[6]  The Final Pretrial Order nowhere mentions that Netlist

---

[5] The Court primarily relied on authority denying summary judgment motions because nominal damages may be available at trial.  Those cases do not hold that nominal damages are still available when the plaintiff fails to prove any harm at trial.  *C.K.S. Ice Cream Co., Inc. v. Frusen Gladje Franchise, Inc*., 172 A.D.2d 206, 208 (1st Dep't 1991) ("plaintiff would seem entitled to proceed to trial at least on its contract cause of action if only to vindicate its right to nominal damages"); *McCoy Assocs., Inc. v. Nulux, Inc*., 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) (similar); *Gould Paper Corp. v. Madisen Corp*., 614 F. Supp. 2d 485, 490-91 (S.D.N.Y. 2009) (similar); *NAF Holdings, LLC v. Li & Fung (Trading) Ltd*., No. 10 Civ 5762 (PAE), 2016 U.S. Dist. LEXIS 71493, at *58-59 (S.D.N.Y. June 1, 2016) (similar).

[6] *See also Hunt v. Cnty. of Orange,* 672 F.3d 606, 617 (9th Cir. 2012) ("issues not preserved in the pretrial order are eliminated from the action"); *Ample Bright Dev., Ltd. v. Comis Int'l*, 913 F. Supp. 2d 925, 941 (C.D. Cal. 2012) (plaintiff did not include a theory of recovery in the final pretrial order, and as a result plaintiff

---

18

would seek nominal damages. Instead, it states that "Plaintiff plans to pursue . . . *General* damages that Netlist suffered based on its first claim . . . ." (Dkt. 244, at 3:11–18 (emphasis added.) "General damages" is a term of art that includes damages to compensate a plaintiff for the "value of the very performance promised" under a contract that was not performed. *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000). Nominal damages are entirely different—they are "damages in name only and not at all compensatory." *Freund*, 34 N.Y.2d at 384 (1974); *see also McWeeney v. Lambe*, 138 A.D.3d 796, 796–97 (2d Dep't 2016) (nominal damages are a "trifling sum," which are "formal damages as distinguished from real or substantial ones"). The Final Pretrial Order stated that "the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Order shall supersede the pleadings, and govern the course of the this case." (Dkt. 244, at 19:2–5.) Because Netlist never included in the Final Pretrial Order its nominal damages claim as an issue that remained to be litigated, it cannot now seek nominal damages.

**Second,** Netlist did not argue for nominal damages at trial and did not request a jury instruction or a question on the verdict form about nominal damages, despite available jury instructions on nominal damages in the New York Pattern Jury Instructions. *See N.Y. Pattern Jury Instr.*, Civil, 4:20 ("New York law permits nominal damages for breach of contract claims"). For this additional reason, Netlist waived its right to now request nominal damages. Fed. R. Civ. P. 51(d)(1)(B) (a party "may assign as error [] a failure to give an instruction, if that party properly requested it and . . . also properly objected"); *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 23 (1st Cir. 2004) (plaintiff "unmistakably forfeited her claim" to nominal damages

---

"waived any right it would otherwise have had to such a recovery"); *Hamilton v. Water Whole Int'l Corp.*, 302 F. App'x 789, 797 (10th Cir. 2008) (error to admit evidence going to a theory of damages not included in pretrial order because "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint").

by not proposing a nominal damages jury instruction and not arguing for nominal damages at trial); *Watchhorn by and Through Christenson v. Town of Davie*, 795 F. Supp. 1112, 1115 (S.D. Fla. 1992) (denying plaintiff's post-trial claim for nominal damages where plaintiff did not include a line item for nominal damages in the verdict form and did not object to jury instructions read by the court); *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 845 (11th Cir. 1991) (refusing to award nominal damages after jury returned a no-damages verdict because plaintiff "did not request a charge on nominal damages, nor did she object to the court's failure to make such a charge"); *Soltero v. Swire Dev. Sales, Inc*., 485 F. App'x 377, 380 (11th Cir. 2012) (plaintiff "waived any claim to nominal damages by not requesting a jury instruction on nominal damages and not asking that nominal damages be included on the verdict form"). Netlist's experienced counsel of course knew that it could pursue nominal damages—the Court in its summary judgment order notified them that nominal damages may be available at trial. (MSJ Order, at 17:2–18.) Netlist and its counsel have "***no one to blame but themselves for the zero dollar verdict***" where they did not include a line item for nominal damages in the verdict form and did not object to jury instructions read by the Court. *Watchhorn*, 795 F. Supp. at 115 (emphasis added ). Netlist cannot belatedly seek nominal damages simply because it has received an unfavorable jury verdict.

**Third,** Netlist never moved for judgment as a matter of law that it was entitled to nominal damages in the alternative pursuant to Rule 50(a) prior to the case being submitted to the jury. Netlist urges the Court to award Netlist damages as a matter of law in the amount of $1, notwithstanding the jury's verdict that Netlist suffered no damages. (Mot., at 6:28-7:4 (Netlist arguing that "regardless of the factual findings on damages, the plaintiff is entitled as a matter of law to an award of nominal damages.").) This request should have been brought as a motion pursuant to Rule 50. *See* Fed. R. Civ. P. 50(a) ("If a party has been fully heard on an issue during trial and the court finds that a reasonable jury would not have a legally

sufficient evidentiary basis to find for the party on that issue, the court may []
resolve the issue against the party").  But Netlist cannot bring a belated post-trial
Rule 50(b) motion because Netlist never moved for judgment as a matter of law
pursuant to Rule 50(a) prior to submitting the case to the jury.  Fed. R. Civ. P. 50(a),
50(b); *Tortu v. Las Vegas Metro. Police Dept*., 556 F.3d 1075, 1081 (9th Cir. 2009)
(a "Rule 50(b) motion may be considered only if a Rule 50(a) motion for judgment
as a matter of law has been previously made").

In short, Netlist failed to prove an essential element of its claim—i.e.,
damages resulting from Samsung's failure to supply memory chips under Section
6.2 of the JDLA—and waived any claim for nominal damages.  Thus, the Court
should enter judgment in Samsung's favor on Netlist's first claim for relief.

**B.**     **Netlist Is Not Entitled to Judgment on Its Second Claim for Relief**

The Court also should reject Netlist's request for judgment in its favor on
Netlist's second claim for relief.  Netlist failed to prove that it suffered any
cognizable harm as a result of Samsung remitting to the Korean Tax Authority $1.32
million of the $8 million fee due under Section 3.1,[7] and has therefore failed to
prove the essential element of damages for its claim.  The Court should also reject
Netlist's request for prejudgment interest, not only because Netlist did not prove that
it suffered damages on which interest could accrue, but also because Netlist offers a
plainly incorrect interest calculation based on a misstatement of New York law.

1.     **Netlist Did Not Suffer any Compensable Harm**

Netlist contends that it is entitled to judgment on its second claim for relief
because it incurred $427,051.60 in fees to hire PricewaterhouseCoopers ("PwC") to
help it seek a refund of the $1.32 million that Samsung paid to the Korean Tax

---

[7] As used herein, "Korean Tax Authority" refers generally to the agency responsible
for administering taxes in Korea.  Netlist initially filed for a refund with the East
Suwon Tax Office, which ruled against Netlist, which appealed that ruling to the
Tax Tribunal, which ruled in Netlist's favor.  (*See* 192-8, LaMagna Decl. Ex. 13.)

Authority.  (Mot., at 8:16–9:13.)  But as Samsung has explained, the PwC fees are consequential damages barred under Section 12.5 of the JDLA because they are not damages for "the value of the very performance promised."  (*See* Dkt. 289, Samsung's Mot. for Entry of J. ("Samsung Mot."), at 18–22.)  Indeed, Netlist agrees that "general damages seek recovery of 'the value of the very performance promised.'" (*See* Mot., at 10:6–7 (quoting *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000).)  Here, there can be no real dispute that the PwC fees were not the "very performance promised" under Section 3.1 of the JDLA and do not constitute general damages.  The promised performance was the payment of the full $8 million fee due under Section 3.1 of the JDLA.  Consistent with well-established law, (*see* Samsung Mot. at 20:16–21:16), the professional fees Netlist paid for assistance in seeking a refund of that amount are consequential damages.

Netlist has not presented the Court with any authority to the contrary. Instead, Netlist relies extensively on cases that do not even address the question of whether professional fees are consequential damages.  Two of Netlist's cases discuss New York's test for determining whether lost profits or lost income should be treated as general or consequential damages.  (Mot., at 10:6–8 (citing *Schonfeld*, 218 F.3d at 175–76); *id.,* at 10:19–21 (citing *Amer. List Corp. v. U.S. News & World Report., Inc.*, 75 N.Y.2d 38, 43 (1989)).)  These cases explain that general damages are for "the very promised performed" and consequential damages, like the PwC fees at issue here, are for "additional losses" incurred "***as a result*** of the defendant's breach." *Schonfeld*, 218 F.3d at 175–76 (emphasis added) (explaining that general damages for delivery of goods is the difference between the contract price and the market price, but other kinds of damages are a step removed from the promised performance and hence consequential); *Amer. List Corp,* 75 N.Y.2d at 43–44 (lost profits were recoverable as general damages only because the "profits" were "moneys ***which defendant undertook to pay under the contract***") (emphasis added).  The PwC fees therefore do not qualify as general damages since they are

not the promised performance under the JDLA.

*Aristocrat Leisure Limited v. Deutsche Bank*, on which Netlist also relies, undercuts rather than supports its position.  618 F. Supp. 2d 280, 302 n.21 (S.D.N.Y. 2009).  There, a bond issuer failed to convert convertible notes, as required under a bond agreement.  *Id.* at 286.  The court found that the bondholders' general damages were the value of the stocks they "would have received on the date of the breach" because that was the value of the promised performance.  *Id.* at 299–300.  But the court found that the damages the bondholders incurred to cover their hedge positions on the open market after the issuer failed to convert the bonds—though "foreseeable" and "directly caused" by the breach—were consequential damages because they were "collateral to the direct breach."  *Id.* at 302 n.21.

Netlist argues that "[p]rofessional fees like the PwC fees—and even legal fees—are treated as general damages."  (Mot., at 11:18–20.)  But none of the cases on which Netlist relies addressed whether the legal fees sought in those breach of contract actions were general or consequential damages—much less whether they would be recoverable in the face of a consequential damages waiver such as Section 12.5 of the JDLA.  *See City of Elmira v. Larry Walter, Inc*., 150 A.D.2d 129, 133 (3d Dep't 1989) aff'd, 76 N.Y.2d 912 (1990) (finding legal fees incurred to obtain substitute performance of a construction contract were recoverable, but not discussing whether those fees were general or consequential damages).[8]  Netlist's other cases do not support Netlist here because again they do not address the difference between general and consequential damages.[9]

---

[8] *See also Congel v. Malfitano*, 31 N.Y.3d 272, 290–91 (2018) (finding claim for attorneys' fees barred by American rule generally prohibiting recovery of litigation costs without discussing consequential damages); *Aero Garage Corp. v. Hirschfeld*, 185 A.D.2d 775, 776 (1st Dep't 1992) (finding legal fees recoverable under "unusual circumstances of this case" without discussing consequential damages).

[9] *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256,

Netlist's other arguments also fail.  Netlist argues that the PwC fees are general damages because "petitioning a tax appeal in Korea is not a task that Netlist could have undertaken on its own" and Netlist should be able to "recover expenditures occasioned and made necessary by the breach."  (Mot., at 11:12–17.)  But the PwC fees are ***not*** damages for the promised performance under the JDLA—*i.e.*, payment of the $8 million fee—regardless of whether Netlist could petition the Korean Tax Authority on its own or not.[10]  Netlist relies on *J & J Structures, Inc. v. Callanan Industries., Inc.*, 215 A.D.2d 890 (3d Dep't 1995), (Mot., at 11:15–17), but that case does not discuss the difference between consequential damages and general damages at all, and actually held that a plaintiff could recover the value of construction work it had to perform as of result of the defendant not completing that work.  215 A.D.2d at 892.  Here, Netlist is not seeking the value of the performance under the JDLA, but consequential professional fees.

Netlist also argues that that the PwC fees are general damages because Netlist

---

263 (1998) (plaintiff had not "claimed any consequential damages"); *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192 (2008) (permitting policyholder to assert claim for consequential damages against its insurer for loss of its business); *Seidman v. Indus. Recycling Props., Inc.*, 106 A.D.3d 983, 985 (2d Dep't 2013) (holding that counterclaimant failed to prove entitlement to damages as a matter of law, without discussing consequential damages); *Kinney v. Massachusetts Bonding & Ins. Co*., 210 A.D. 285, 293 (3d Dept. 1924) (allowing recovery of architect and legal fees in breach of construction contract action, without deciding whether those damages were general or consequential).

[10] For that reason, whether Netlist could petition the Korean Tax Authority on its own is irrelevant.  Netlist does not even cite evidence to support its assertion that it was required to retain PwC.  Korean law provides just the opposite:  a "person who files an objection or request ***may***, as his/her representative, nominate a lawyer [or] certified tax consultant…"  Article 59 (Representative), Framework Act on National Tax, Laws of Korea, *available at* Korean Law Translation Center, https://elaw.klri.re.kr/eng_service/lawView.do?hseq=46374&lang=ENG; Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source . . . .").  Netlist's hiring PwC was thus entirely optional.

"is still short the professional fees paid to PwC" since Netlist's balance sheet "does not reflect the capital assets Netlist would have had upon Samsung's full performance." (Mot., at 13:14–23)  But Netlist's argument if accepted would ***read the consequential damages limitation right out of the JDLA directly contrary to New York law***.  *In re El-Roh Realty Corp.*, 74 A.D.3d 1796, 1799 (4th Dep't 2010) ("Effect and meaning must be given to every term of the contract").  General damages do not necessarily include compensation for "all capital assets" a plaintiff may have lost as a result of a breach.  When parties agree to a consequential damages limitation, they are agreeing that they are not entitled to be made whole for contract breach to the extent their damages are consequential in nature.  *See Aristocrat Leisure Ltd.*, 618 F. Supp. 2d at 298–99 (noting that bondholders "can and will be made whole through *a combination* of general and consequential damages") (emphasis added).  The fact that Netlist paid PwC fees to assist in seeking a refund of the amount Samsung paid to the Korean Tax Authority does not make such fees general damages.  They are consequential damages because they are not compensation for the performance promised under the JDLA.

Thus, because Netlist failed to prove that it suffered any recoverable damages, Netlist's second claim for relief fails, and judgment should be entered in Samsung's favor.  *See, e.g., ERE LLP*, 94 A.D.3d at 493-94 (essential element of damages could not be satisfied with consequential damages where the contract "specifically disclaimed consequential damages"); *see also supra* at II.A.2.a. & n.4 (citing cases).

## 2.    **Netlist Is Not Entitled to Prejudgment Interest**

Because Netlist is not entitled to any damages for its second claim for relief, it is also not entitled to any prejudgment interest.  But even if Netlist had proven some amount of damages (it has not), Netlist's calculation of prejudgment interest is plainly wrong.  Netlist contends that if the $427,051.05 in PwC fees are recoverable direct damages, Netlist should receive prejudgment interest on that amount calculated from December 10, 2015 to the time of judgment.  According to Netlist,

1   New York law provides that "interest shall be computed from the earliest
2   ascertainable date the cause of action existed," and Samsung paid $1.32 million of
3   the fee due under the JDLA to the Korean Tax Authority on December 10, 2015.
4   (Mot., at 14:17–24 (citing CPLR § 5001(b).)

5        This is a misstatement of the law. New York's prejudgment interest statute
6   says that, "Interest shall be computed from the earliest ascertainable date the cause
7   of action existed, ***except that interest upon damages incurred thereafter shall be***
8   ***computed from the date incurred***." CPLR § 5001(b) (emphasis added). Netlist
9   inexplicably omitted the emphasized portion of the statute in its brief. (Mot., at
10  14:17–18.) Yet that language requires that in cases like this one, where the plaintiff
11  must pay a loss, interest begins to accrue only after a plaintiff has actually paid the
12  loss. *Happy Dack Trading Co., Ltd. v. Agro-Indus.*, Inc., 602 F. Supp. 986, 994
13  (S.D.N.Y. 1984) ("Since the loss plaintiffs incurred in this case was pecuniary loss
14  from having to pay . . . compensation, interest should be computed from the date the
15  payment was made"); *Lager Assocs. v. City of New York*, 304 A.D.2d 718, 724 (2d
16  Dep't 2003) ("[T]he appropriate date for the commencement of the accrual of
17  statutory interest with respect to the forbearance fees is . . . the date [the landlord]
18  paid the forbearance fees.").[11] Here Netlist did not incur the PwC fees in December
19  2015—indeed, PwC did not send Netlist a bill for its services until ***five years*** later
20  on December 30, 2020. (*See* Dkt. 290-6, Decl. of R. LaMagna Ex. D.)
21  Accordingly, the Court should reject Netlist's request for prejudgment interest.[12]

22

23  [11] *Mount Sinai Hosp. v. Borg-Warner Corp.*, 527 F. Supp. 922, 925 (S.D.N.Y. 1981)
    ("exception clause [in CPLR § 5001(b)] provides for the start of interest from the
24  date plaintiffs actually suffered damage" to avoid imposing "penalty upon the
    defendant rather than award plaintiffs their pecuniary loss"); *Gelco Builders &*
25  *Burjay Const. Corp. v. Simpson Factors Corp*., 301 N.Y.S.2d 728, 731 (N.Y. Sup.
26  Ct. 1969) ("The statutory test [for § 5001(b)] is not the date of breach, but rather the
    date the loss or damage was actually incurred.").
27

28  [12] The cases that Netlist relies on (Mot., at 14:12–16) do not stand for the

## C.   The Court Should Enter Judgment in Samsung's Favor on Netlist's Third Claim for Relief or at Least Order a Trial on That Claim

The Court should also deny Netlist's request that judgment be entered in Netlist's favor on its third claim for relief.  As explained in Samsung's Motion for Entry of Judgment, the Court should amend its prior summary judgment order and grant judgment in Samsung's favor on Netlist's third claim for relief or, in the alternative, order a trial on Netlist's third claim for relief.  (Samsung Mot., at 22–32.)  Netlist purported to terminate the JDLA because Samsung had materially breached the JDLA.  But since the Court's summary judgment order, it has become clear that there was no breach at all—let alone a material breach—because Netlist did not suffer any legally cognizable harm resulting from any failure to perform by Samsung.  In light of these changed circumstances, the Court should deny Netlist's request for entry of judgment in its favor.

Netlist's main argument to the contrary is that "[n]o aspect of Netlist's third claim was tried to the jury, and thus [the Court's summary judgment ruling] could not be affected by the jury's verdict."  (Mot., at 15:12–15.)  Netlist is wrong.  All agree that Netlist could only terminate the contract when there was a "material breach."  Yet as explained above, both the jury's verdict on Netlist's first claim and Netlist's failure to show any non-consequential damages on its second claim means ***there was no breach at all***, and certainly no material breach.  Afterall, a "mere violation of a contractual provision, standing alone, does not constitute a 'breach' under New York law.  Plaintiff also must demonstrate that it suffered damages as a result of the violation." *Zamora v. Morphix Co., Ltd*., No. 15-cv-6532 (KBF), 2018

---

proposition that Netlist may recover interest on money it had not paid.  The court in *Spodek v. Park Prop. Dev. Assocs*., 96 N.Y.2d 577, 580 (2001), addressed whether prejudgment interest could accrue on unpaid interest amounts under a loan (it could).  The court in *Brushton-Moira Cent. Sch. Dist*., P.C., 91 N.Y.2d at 261 (1998) addressed whether interest accrued starting at the time of trial (it did not).

WL 1033228, at *7 (S.D.N.Y. Feb. 21, 2018), *aff'd* 764 F. App'x 96 (2d Cir. 2019).

Thus, the consequence of Netlist's failure to prove damages resulting from any failure by Samsung to satisfy Section 6.2 of the JDLA is that there was no breach of Section 6.2. *See supra* at II.A.1. And the consequence of Netlist's failure to demonstrate damages resulting from any failure of Samsung to satisfy Section 3.1 of the JDLA is that there was no breach of Section 3.1 *See supra* at II.B.1. Netlist does not allege that Samsung breached any other provision of the JDLA,[13] so that is the end of the matter—Netlist's failure to demonstrate any breach means that its termination of the JDLA was improper as a matter of law.

The fact that a plaintiff's inability to satisfy the elements of breach of contract means that there was no "material breach" for purposes of a contract termination provision is self-evident. But if a case is required, *Reuter v. Jax Ltd., Inc*., 711 F.3d 918 (8th Cir. 2013), is instructive. There, the plaintiff alleged that the defendant materially breached a licensing agreement by not apprising plaintiff of unauthorized sales of a game plaintiff invented. *Id*. at 919. Plaintiff sought a declaration that he terminated the licensing agreement under a provision authorizing termination upon a default under the agreement, *id.* at 920-21, but the court rejected the argument. As with New York law, Minnesota law provides that "a breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach," and the plaintiff in *Reuter* failed to show that he suffered any damages as a result of the breach. *Id.* Thus, the court held that there was no breach that could justify the termination. *Id*. So too here. Because Netlist failed to establish any cognizable claim for contract breach, Netlist likewise failed to establish a "material breach" permitting it to terminate the JDLA. And, any purported "lost profits" Netlist may claim it suffered cannot satisfy Netlist's burden

---

[13] Netlist abandoned its claim for breach of Section 3.2 of the JDLA. (Dkt. 246 (Netlist's Notice Limiting Asserted Count Two (Breach of Contract).)

of showing a "material breach" since that type of recovery was specifically barred by the JDLA (JDLA § 12.5), and any alleged lost profits or lost business therefore cannot support any claim for breach of contract, *see supra* II.A.2.a. & n.4, let alone a "material breach" as the parties agreed to under the JDLA.

Netlist also argues that the jury's no-damages verdict does not undermine the Court's summary judgment ruling because according to Netlist, "[m]ateriality does not depend upon the amount of provable money damages." (Mot. at 15:19–22 (citing *ESPN, Inc. v. Off. Of Com'r of Baseball*, 76 F. Supp. 2d 416, 421 (S.D.N.Y. 1999).) Netlist's argument misses the point. Netlist's failure to satisfy the resulting-damages element as to its first two claims for relief means ***there was no breach in the first place***. That ends the story because breach is a requirement of Netlist's termination claim under Section 13.2(1) of the JDLA. But Netlist's argument is incorrect even on its own terms. Materiality most certainly depends in part on "the absolute and relative magnitude of the default," *Process Am. Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016), as well as the extent a plaintiff was "deprived of the benefit which [it] reasonably expected," and the extent to which plaintiff can be "adequately compensated," *Bear, Stearns Funding, Inc. v Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005). Whether Netlist suffered damages as a result of Samsung's failure to satisfy Sections 6.2 or 3.1 goes directly to these factors, and the fact that Netlist could not prove that it suffered any damages demonstrates that any technical violation by Samsung was immaterial. *See Dun & Bradstreet Corp. v. Harpercollins Publ'ers, Inc.*, 872 F. Supp. 103, 110 (S.D.N.Y. 1995) (breach of a licensing agreement was not material where "there [was] no evidence [plaintiff] sustained any resulting injury").[14]

---

[14] *Found. for Seacoast Health v. Hosp. Corp. of Am.*, 71 A.3d 736, 747 (N.H. 2013) (breach of asset purchase agreement not material because it "caused no injury" since "a breach [that] causes no damages or prejudice to the other party [] may be deemed not to be 'material'"); *Reading Int'l, Inc. v. Mululani Grp. Ltd.*, No. 13-00133 JMS-

For example, in *ESPN v. Officer of Commissioner of Baseball,* on which Netlist relies, the court ruled on a motion *in limine* that at trial Major League Baseball could not present evidence of its damages resulting from ESPN's refusal to broadcast baseball games because, "[a]lthough damage to Baseball's prestige and future value are difficult to prove, such difficulty does not allow Baseball to proceed with speculative claims of damages." 76 F. Supp. 2d at 421. The court declined, however, to preclude evidence on whether ESPN's breach was material because materiality depended on whether the breach "deprives the injured party of the benefit that it justifiably expected" and "does not depend upon the amount of provable money damages." *Id.* But there was no question in ESPN that the plaintiff had suffered harm, albeit harm that was "difficult to prove." *Id.* Netlist's claims, in contrast, fail because Netlist was unable to prove that it suffered any cognizable loss ***at all*** as a result of any failure by Samsung to comply with Sections 6.2 or 3.1 of the JDLA. *ESPN* does not hold that a contract breach is material despite a failure to prove any recoverable damages resulting from a breach.

Netlist's reliance on *City of New York v. Tavern on the Green International LLC*, No. 17-cv-1376 (RJS), 2021 WL 1316956 (S.D.N.Y. Apr. 7, 2021), and *Chronister Oil Company v. Unocal Refining & Marketing*, 34 F.3d 462 (7th Cir. 1994), (*see* Mot. at 15:24–16:4), is also misplaced. In *City of New York v. Tavern on the Green International* LLC, the court granted a declaration that the City of New York revoked a license to use its "Tavern on the Green" trademark and

---

KSC, 2018 WL 2392500, at *5-6 (D. Haw. May 25, 2018) (breach of settlement agreement not material where plaintiff "alleged no harm and no damage, much less produced any evidence"); *Miami Subs Corp. v. Murray Fam. Tr. and Kenneth Dash P'ship*, 703 A.2d 1366, 1372 (N.H. 1997) ("even assuming that there was a breach, it was not material, as the trial court found [the party] suffered no damages"); 17 Am. Jur. 2d, Contracts § 670 (2021) ("Where a breach causes no damages or prejudice to the other party, it may be deemed not to be material.").

awarded nominal damages.  2021 WL 1316956, at *3.  The court in *Chronister Oil Co. v. Unocal Refining* reversed the district court's damages determination in a dispute over a contract for the sale of oil.  34 F.3d at 466.  But neither of those decisions had any substantive discussion on when a breach is material, nor did they analyze whether a breach of contract could be material where, as here, the plaintiff failed to prove that it suffered any cognizable harm.  And "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Sakamoto v. Duty Free Shoppers, Ltd*., 764 F.2d 1285, 1288 (9th Cir. 1985).

Netlist further argues that paying $1.32 million of the Section 3.1 fee to the Korean Tax Authority was a "material breach."  (Mot., at 16:5–11.)  But again, that technical violation was not a breach at all because Netlist has not suffered any legally cognizable harm as a result.  *See supra* at II.B.1.  And even if it were, the lack of any cognizable harm from the breach means that the breach was not material.[15]  Even if the time for measuring materiality is when the breach occurred (*see* MSJ Order, at 19:21–22 (citing *KLS Diversified Master Fund, L.P. v McDevitt*, 507 F. Supp. 3d 508 (S.D.N.Y. 2020)), that does not mean the Court should not consider the magnitude of the breach—to the contrary, New York law's multifactor test requires the Court (or jury) to consider the damages sustained because of the breach.  *See Process Am. Inc*., 839 F.3d at 136.  Moreover, even if the Court considers only Samsung's decision to withhold $1.32 million in taxes rather than the damages Netlist actually sustained, there is no question that Samsung's withholding

---

[15] Even if the Court were to conclude the PwC fees are not consequential damages, the breach of Section 3.1 still would not be material, or at least there would be a genuine issue of fact, because (1) Samsung withheld only a small portion of the fee—16.5% of $8 million, (2) Samsung had an objective good faith basis for withholding the $1.32 million given the Korean Tax Authority originally ruled it was properly withheld, and (3) the JDLA specifically contemplated, and provided a process for Netlist to seek, a refund.  (*See* Samsung Mot., at 26:24–27:19.)

decision was confirmed by the East Suwon Tax Office before that decision was later reversed.  (See 192-8, LaMagna Decl. Ex. 13 at Page ID#10614–15); *see Bear, Stearns Funding, Inc*., 361 F. Supp. 2d at  296 (good faith is a materiality factor under New York law).[16]  In addition, the tax withholding is not a material breach merely because it involved the non-payment of money.  (*See* Mot. at 16:15–11 (citing *Taub v. Marchesi Di Barolo, S.p.A.,* 480 F. App.'x 643, 645 (2d Cir. 2012).)  While that may be true in situations where an entire sum constituting the primary consideration of a contract is not paid, under well settled New York law, the mere failure to pay a portion owed under a broader contract is not a *per se* material breach.  *Septembertide Publishing v. Stein and Day, Inc*., 884 F.2d 675, 679 (2d Cir. 1989) (failure to pay final one-third of a royalty payment was "a far cry from a total failure to pay").  This makes sense—failure to pay $99 out of $100 owed does not defeat the purpose of a contract.  Similarly here, Netlist received the bulk of the $8 million fee when it was due, and later received a complete refund of the tax withholding plus interest.[17]

_____

[16] *KLS Diversified Master Fund, L.P. v McDevitt*, 507 F. Supp. 3d 508 (S.D.N.Y. 2020), on which the Court relied for the proposition that materiality is determined at the time of the breach, (MSJ Order, at 19:21–22), involved a distressed debtor who failed to pay taxes after entering into a financing agreement to keep his business afloat, *McDevitt*, 507 F. Supp. 3d at 515, and then later tried to settle his tax liabilities with federal and state authorities, *id*. at 546.  The court found this was a material breach, but that case, where the failure to pay taxes could jeopardize the financing, bears no resemblance to the situation here in that Samsung's payment of taxes was part of a much larger agreement that had nothing to do with taxes.

[17] None of the cases Netlist relies on remotely resemble the situation here involving a routine tax payment.  Netlist received the bulk of the payment under Section 3.1, save for a small portion Samsung in good faith paid to the Korean Tax Authority, and Netlist eventually received a complete refund in due course.  In contrast, the cases Netlist relies on involved an outright failure to pay, where payment was the primary consideration.  *See Taub,* 480 Fed. App'x at 645 (improper set-off by wine importer from wine producer); *Jafari v. Wally Findlay Gallaries,* 741 F. Supp. 64, 67–68 (S.D.N.Y. 1990) (non-payment in contract to buy painting); *Truglia v. KFC*

At the very least, Netlist's contention that it properly terminated the JDLA, despite the lack of any cognizable harm, should be resolved by a jury.  (*See* Samsung's Mot., at 28:3–32:3.)  If Netlist's inability to establish damages is not dispositive, it is plainly relevant since termination of a contract is not permitted for "a slight, casual, or technical breach, but as a general rule, only for such as are material."  *Process Am. Inc*., 839 F.3d at 136.  The determination whether a material breach has occurred is "generally a question of fact."  *Advanced Water Tech v. Amiad USA*, No. 18-CV-5473 (VSB), 2019 WL 4805330, at *5 (S.D.N.Y. Sept. 30, 2019).  Given the jury's verdict that Netlist did not suffer any damages as a result of Samsung's failure to satisfy Section 6.2, and the fact that the only damages Netlist sought under Section 3.1 are non-recoverable, it is now clear—or at least arguable—that any "breach" by Samsung was merely a technical failure to perform.  Such a harmless violation is immaterial as a matter of law, but even if the Court disagrees, there is no basis to conclude that these breaches *are* material as a matter of law.

The Court should thus amend its prior summary judgment ruling and enter judgment for Samsung, or at least order a trial on Netlist's third claim for relief.

## III.   CONCLUSION

Samsung respectfully requests that for the reasons set forth above, the Court should deny Netlist's motion for entry of judgment.

DATED: January 24, 2022          O'MELVENY & MYERS LLP

By:    /s/ Michael G. Yoder

Michael G. Yoder
Attorneys for Defendant Samsung

_____

*Corp.,* 692 F. Supp. 271, 276–277 (S.D.N.Y. 2008) (franchisee who repeatedly failed to make royalty payments under franchise agreement).  The Court at summary judgment also relied on *ARP Films, Inc. v Marvel Entertainment Group, Inc*., (MSJ Order, at 19:23–27), but unlike here, the licensing payments at issue there were the "most important obligations" under the contract.  952 F.2d 643, 650 (2d Cir. 1991).