RICHARD DOREN, SBN 124666
  rdoren@gibsondunn.com
JASON C. LO, SBN 219030
  jlo@gibsondunn.com
MATTHEW BENJAMIN (*pro hac vice*)
  mbenjamin@gibsondunn.com
TIMOTHY BEST, SBN 254409
  tbest@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
  rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

JASON SHEASBY, SBN 205455
  jsheasby@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS COL, LTD., a Korean corporation,<br><br>                    Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**PLAINTIFF NETLIST INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT**<br><br>Before Judge Mark C. Scarsi<br><br>**Posttrial Hearing on Motions:**<br>Date:   February 14, 2022<br>Time:   9 a.m. PT |

1

# TABLE OF CONTENTS

2

Page

3    I.      INTRODUCTION ....................................................................................... 1

4    II.     RELEVANT FACTS AND PROCEDURAL HISTORY ............................. 3

5            A.     The Undisputed Factual Record of Samsung's Breaches ..................... 3

6                   1.     Samsung Knew Its Systematic and Repeated Breaches
                            Injured Netlist .......................................................................... 3

7
8                   2.     Samsung Breached Its Obligation to Pay NRE Fees ................. 5

9                   3.     Netlist Properly Terminated the JDLA ..................................... 6

10           B.     The Court's Rulings on Summary Judgment ..................................... 6

11           C.     Samsung's Serial Efforts at Reconsideration ..................................... 7

12   III.    ARGUMENT ............................................................................................. 7

13           A.     Netlist Is Entitled to Judgment on Claim 1 (Breach of Supply
                    Obligation) ..................................................................................... 7

14                  1.     Netlist Need Not Have Proven Damages at Trial to Prevail .......... 7

15                  2.     It Is Undisputed That Netlist *Was* Harmed by Samsung's
                           Breach .................................................................................. 10

16
17                  3.     Netlist Did Not "Forfeit or "Waive" Nominal Damages ............... 12

18           B.     Netlist Is Entitled to Judgment on Claim 2 (Breach of NRE
                    Payment) ...................................................................................... 15

19           C.     Netlist Is Entitled to Judgment on Claim 3 (Declaration of
                    Termination) ................................................................................. 19

20
21                  1.     Samsung's Motion Is an Improper *Second* Reconsideration
                           Demand .................................................................................. 20

22                  2.     Samsung's Request for a New Trial Likewise Lacks Merit .......... 24

23           D.     The Court Correctly Ruled on Samsung's Defenses ......................... 25

24   IV.     CONCLUSION ......................................................................................... 25

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

5

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*,
769 F.3d 135 (2d Cir. 2014) ..................................................................... 12

6

*Aero Garage Corp. v. Hirschfeld*,
7
586 N.Y.S.2d 611 (App. Div. 1992) .................................................. 16, 19

8

*Am. List Corp. v. U.S. News & World Rep., Inc.*,
9
75 N.Y.2d 38 (Ct. App. 1989) ........................................................... 15, 18

10

*American Railcar Industries, Inc. v. Gyansys, Inc.*,
11
2017 WL 11501888 (S.D.N.Y. Nov. 13, 2017) ........................................ 17

12

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
13
618 F. Supp. 2d 280 (S.D.N.Y. 2009) ............................................... 17, 18

14

*Baskin-Robbins Inc. v. S&N Prinja, Inc.*,
15
78 F. Supp. 2d. 226 (S.D.N.Y. 1999) ...................................................... 8

16

*Bear, Stearns Funding, Inc. v. Interface Group Nev., Inc.*,
17
361 F. Supp. 2d 283 (S.D.N.Y. 2005) ............................................... 23, 24

18

*Biotronik, A.G. v. Conor Medsystems Ireland, Ltd.*,
22 N.Y. 3d 799 (2014) ...................................................................... 18, 19

19

*City of Elmira v. Larry Walter, Inc.*,
20
546 N.Y.S.2d 183 (App. Div. 1989) .................................................. 16, 19

21

*City of New York v. Tavern on the Green Int'l LLC*,
22
2021 WL 1316956 (S.D.N.Y. Apr. 7, 2021) ............................................ 20

23

*Clearview Concrete Prod. Corp. v. S. Charles Gherardi, Inc.*,
24
453 N.Y.S.2d 750 (App. Div. 1982) ........................................................ 13

25

*Congel v. Malfitano*,
26
31 N.Y.3d 272 (2018) ........................................................................ 16, 19

27

*D.K. Property, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*,
92 N.Y.S.3d 231 (App. Div. 2019) .................................................... 17, 18

28

1

## TABLE OF AUTHORITIES (*continued*)

2

Page(s)

3

*ERE LLP v. Spanierman Gallery, LLC*,
4    942 N.Y.S.2d 472 (App. Div. 2012) ............................................................ 9

5    *ESPN, Inc. v. Off. of Comm'r of Baseball*,
6    76 F. Supp. 2d 416 (S.D.N.Y. 1999) ......................................................... 20

7    *Finley v. Atl. Transp. Co.*,
8    220 N.Y. 249 (1917) .................................................................................... 7

9    *Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*,
     51 F. Supp. 2d 204 (N.D.N.Y. 1999) ........................................................ 23

10   *Freund v. Wash. Square Press, Inc.*,
11   34 N.Y.2d 379 (1974) ................................................................. 8, 9, 11, 15

12   *Good Karma Productions v. Penthouse Int'l Ltd.*,
13   450 N.Y.S.2d 486 (App. Div. 1982) .......................................................... 13

14   *Hamilton v. Water Whole International Corp.*,
15   302 Fed. App'x 789 (10th Cir. Dec. 10, 2008) .......................................... 14

16   *Hirsch Elec. Co. v. Cmty. Servs.*,
17   536 N.Y.S.2d 141 (App. Div. 1988) ..................................... 9, 11, 12, 13, 14

18   *Hodges v. Cusanno*,
19   941 N.Y.S.2d 772 (App. Div. 2012) .......................................................... 11

20   *Holland Loader Co., LLC v. FLSmidth A/S*,
21   313 F. Supp. 3d 447 (S.D.N.Y. 2018) ....................................................... 10

22   *Ineos Americas LLC v. Dow Chemical Co.*,
     378 Fed. Appx. 74 (2d Cir. May 24, 2010) ................................................. 8

23   *J & J Structures, Inc. v. Callanan Indus., Inc.*,
24   626 N.Y.S.2d 891 (App. Div. 1995) ..................................................... 16, 19

25   *Kronos, Inc. v. AVX Corp.*,
26   81 N.Y.2d 90 (1993) .................................................... 2, 8, 13, 14, 20

27   *Lexington 360 Associates v. First Union National Bank of North Carolina*,
28   651 N.Y.S.2d 490 (App. Div. 1996) ............................................................ 9

iii

1

## TABLE OF AUTHORITIES (*continued*)

2

Page(s)

3

*Manhattan Sav. Inst. v. Gottfried Baking Co.*,
4
    286 N.Y 398 (1941) ..................................................................... 8, 12, 14

5

*McCoy Assocs. v. Nulux, Inc.*,
6
    218 F. Supp. 2d 286 (E.D.N.Y. 2002).................................................. 9, 11

7

*Perry v. McMahan*,
    84 N.Y.S.3d 508 (App. Div. 2018) ................................................... 8, 12, 13
8

9
*Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*,
10
    827 F.2d 1324 (9th Cir. 1987)................................................................ 14

11
*PNC Bank, National Association v. Wolters Kluwer Financial Services, Inc.*,
12
    73 F. Supp. 3d 358 (S.D.N.Y. 2014)....................................................... 17

13
*Proper v. State Farm*,
14
    882 N.Y.S.2d 340 (App. Div. 2009) ......................................................... 9

15
*Qube Films Ltd. v. Padell*,
    2016 WL 881128 (S.D.N.Y. Mar. 1, 2016) ............................................. 18
16

17
*Ross v. Sherman*,
    944 N.Y.S.2d 620 (App. Div. 2012) ......................................................... 9
18

19
*Samsung Elec. Co., Ltd. v. Netlist, Inc.*,
    No. 21-cv-1453 (D. Del. Jan. 18, 2022).................................................... 2
20

21
*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2002)............................................................. 16, 19

22
*Septembertide Publishing v. Stein and Day, Inc.*,
23
    884 F.2d 675 (2d Cir. 1989)................................................................... 23

24
*Shimko v. Guenther*,
25
    505 F.3d 987 (9th Cir. 2007)................................................................. 24

26
*Shred-It USA Inc. v. Bartscher*,
    2005 WL 2367613 (E.D.N.Y. Sept. 27, 2005).......................................... 10
27

28
*Soltero v. Swire Development Sales, Inc.*,
    485 Fed. App'x 377 (11th Cir. July 30, 2012) ......................................... 14

iv

1

**TABLE OF AUTHORITIES** (*continued*)

2

<u>Page(s)</u>

3

*Tradex Eur. SPRL v. Conair Corp.*,

4

    2008 WL 1990464 (S.D.N.Y. May 7, 2008)...............................................................11

5

*UV Indus. v. Sharon Steel Corp.*,

6

    631 F. Supp. 1219 (S.D.N.Y. 1986).........................................................................13

7

*V.S. Int'l, S.A. v. Boyden World Corp.*,

8

    862 F. Supp. 1188 (S.D.N.Y. 1994)........................................................................13

9

**TREATISES**

10

1 Kyle C. Bisceglie et al., *New York Commercial Litigation Guide* § 10.25 (2021) ......8

11

3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.2(3) (1993) .........................................16

12

5 *Corbin on Contracts* § 1001 (1951) ....................................................................8, 9

13

11 *Corbin on Contracts* § 55.10 (Lexis/Matthew Bender 2021) .............................9, 11

14

28A Glen Banks, *N.Y. Prac. Series – N.Y. Contract L.*, § 22:46 (2d. ed. 2017).......8, 11

15

*Restatement (Second) of Contracts* § 241 (1981)...........................................................24

16

*Restatement (Second) of Contracts* § 346(2) (1981) ............................................11, 12

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Having lost both its motion for reconsideration of this Court's summary judgment order (Dkt. 215), and its attempt to resurrect previously-waived affirmative defenses (Dkt. 243 at 6:12–14), Samsung now once again asks the Court to undo its summary adjudication as to Netlist's three claims for relief.  Samsung's current request suffers the same flaws as its prior two requests.  This Court should reject it, again.

In its summary judgment order (Dkt. 186), the Court found that Samsung breached its supply obligation as well as its obligation to pay money to Netlist (i.e., by improperly withholding money).  Applying the standard for finding material breach under New York law, this Court held that Samsung's breaches went "to the root of the agreement between the parties," that the evidence concerning materiality of breach in this case "is clear and substantially uncontradicted," and that "Samsung does not seriously contest materiality."  Dkt. 186 at 19:15, 19:5 (citations omitted).  The Court further found that Samsung's breach went to "an integral part of the parties' agreement, one that Netlist valued highly, as demonstrated by its negotiation and post-execution conduct," and that "a declaratory judgment would clarify the effectiveness of Netlist's termination and confirm the parties' present relationship with respect to the JDLA, relieving the parties from uncertainty over the issue." *Id.* at 19:17–19, 20:26–28.  Netlist did not move for summary judgment as to the amount of cover damages it incurred because of Samsung's breach.  The parties thus proceeded to trial on that issue.  Now, Samsung contends that, because it prevailed on the narrow monetary damages issue tried to the jury, the Court must reverse its prior rulings.  Samsung is wrong.

First, if Samsung's position were that this Court's ruling on liability as to Claim 1 was premature because Netlist did not move for summary judgment on cover damages, then Samsung needed to make that argument at summary judgment.  It did not, Dkt. 168 at 10–11, so the argument is waived.

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

Second, the jury's cover damages verdict does not impact—much less warrant reversal of—this Court's rulings.  As this Court held in its summary judgment order, citing binding New York Court of Appeals precedent (that Samsung avoids mentioning in its motion): "New York law 'infer[s] at least nominal damages at the moment of breach.'"  Dkt. 186 at 17:3–7 (quoting *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)).  Samsung's liability for breach, and thus Netlist's right to a vindicating award of nominal damages, was established when this Court correctly found material breach as a matter of law at summary judgment.  That holding cannot be undone by the jury finding insufficient proof of one category of monetary damages on one claim.  And as demonstrated below and in Netlist's own motion for judgment, Netlist is entitled to general damages on Claim 2 (and no less than nominal damages).

Third, Samsung's contention that Netlist "waived" its right to nominal damages by not asking the jury to award them contradicts over a century of New York Court of Appeals precedent holding that nominal damages apply *by operation of law* to vindicate a broken contractual promise.  Once this Court found Samsung materially breached the contract, nominal damages followed as a matter of law even if no further damage was proven.

Finally, Samsung's—now third[1]—attempt to reverse this Court's finding of materiality should be rejected again.  At summary judgment, Samsung argued that, because it *did not breach* the JDLA, there was "therefore no *material* breach of the JDLA."  Dkt. 168 at 30 (emphasis added).  Samsung did not separately argue that, if it *were* found in breach, such breach is not material.  It waived that argument.  The Court properly found that Samsung's breach went to "an integral part of the parties'

---

[1] In another case Samsung filed literally hours after this Court's summary judgment ruling, Samsung pretends as if this Court's ruling on materiality/termination does not even exist. *See* Dkt. 290 at 4, n.5.  Just last week, Samsung stated to the court there: "[Samsung] maintains that it did not breach the Agreement, that the Agreement has not been terminated, and that it continues to hold a paid-up, worldwide, non-exclusive license to Netlist's patents, including the Patents-in-Suit." *Samsung Elec. Co., Ltd. v. Netlist, Inc.*, No. 21-cv-1453, Dkt. 14 (D. Del. Jan. 18, 2022).

2

NETLIST OPPOSITION TO SAMSUNG MOTION FOR ENTRY OF JUDGMENT CASE NO. 8:20-CV-993-MCS (ADS)

agreement, one that Netlist valued highly, as demonstrated by its negotiation and post-execution conduct," and that "a declaratory judgment would clarify the effectiveness of Netlist's termination and confirm the parties' present relationship with respect to the JDLA, relieving the parties from uncertainty over the issue." *Id.* at 19:17–19, 20:26–28.

The jury's verdict on cost-of-cover damages does not undo Samsung's waiver, or this Court's finding that Samsung breached obligations going to the heart of the parties' agreement. Indeed, Samsung seems embarrassed to come right out and say what it is asking this Court to do: reverse itself and require Netlist to continue performing the contract—*including reinstating a royalty-free license in favor of Samsung to all of Netlist's patents for more than a decade to come*—despite this Court finding as a matter of law that Samsung's undisputed breaches destroyed "the root of the agreement between the parties."

Samsung's current attempt at undoing this Court's proper summary judgment ruling should be rejected, and the Court should enter judgment in Netlist's favor on all three causes of action, awarding damages to Netlist for Samsung's breach (Claim 2) of $664,065.24. *See* Dkt. 290 at 5–16; Dkt. 290-1 at 2–3.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. The Undisputed Factual Record of Samsung's Breaches

Last August, the parties filed cross-motions for summary judgment on Netlist's claims. The undisputed record showed that Samsung repeatedly and intentionally breached the JDLA, knowing that Netlist was being harmed. The Court found those breaches material and held that Netlist properly terminated the JDLA.

#### 1. Samsung Knew Its Systematic and Repeated Breaches Injured Netlist

On summary judgment, Samsung did not dispute it breached its supply obligation under the Court's construction of the JDLA. Nor did Samsung dispute the key facts about the impact of its actions. For example, Samsung understood its harsh decision to cut Netlist's allocation to zero "impacted [Netlist's] business and impacted

1  [Netlist's] ability to support [its] customers."  Dkt. 168-1 (PMSJ Def. Stm. of GDMF)

2  at ¶ 108 (citing PMSJ Ex. 35 at NL020775 [*see* Dkt. 145-39]).  Because Samsung

3  provided "nearly 100% of [Netlist's] support and Revenue," it knew that refusing to

4  supply Netlist would "have a dramatic impact on [Netlist's] financials and future

5  business.  *Id*. at ¶ 82 (citing PMSJ Ex. 18 at SEC058105 [*see* Dkt. 142-5]); *see also id*.

6  at ¶ 80 (same, notice that Netlist needed "allocation" to "maintain" business).

7       It also is undisputed that, in April 2017, Samsung executive, Mr. Arnold Kim,

8  instructed colleagues to "Please manage the sales [to Netlist] to dwindle down."  Dkt.

9  168-1 at ¶ 76 (citing PMSJ Ex. 16 [Dkt. 142-4] at -41).[2]  Then on May 15th,

10  Samsung's sales lead for Netlist, Mr. Neal Knuth, was instructed to "not accept"

11  certain purchase orders from Netlist.  *Id*. at ¶ 78 (citing PMSJ Ex. 15 [Dkt. 142-3] at

12  -97, -99).  The next week, Mr. Knuth and his supervisor, Mr. Steve Metz, each

13  respectively confirmed they had "let Netlist know that [Samsung had] no support" and

14  "zero allocation" in Q3 2017 for Netlist, with Mr. Knuth confirming he had previously

15  "project[ed] $50M in 2017 revenue and $75M in 2018" from sales to Netlist.  *Id*. at

16  ¶¶ 81–82 (citing PMSJ Ex. 18 [Dkt. 142-5] at -06 and Ex. 50 (PMSJ Ex. 50 [Dkt. 142-

17  19] at 49:6–14 (confirmation testimony from Samsung executive Kihoon "Lane"

18  Kim)).  Netlist implored Samsung to fulfill its orders, because—as Samsung already

19  knew—they were "a very critical matter for" Netlist.  *Id*. at ¶ 98 (citing PMSJ Ex. 28

20  [Dkt. 145-32] at –80).

21       It is undisputed that in mid-2017, Mr. Knuth was still "rejecting new orders"

22  from Netlist and had "rejected over $10 Million of business for Q3 already."  *Id*. at

23  ¶ 96 (citing PMSJ Ex. 15 [Dkt. 142-3] at -95); *see also id.* at ¶¶ 99–100 (citing PMSJ

24  Exs. 29 and 15 at -97 (showing further rejections).  Although Samsung accepted some

25  orders in later months, it again cut off supply entirely in 2018, with internal Samsung

26  records stating that "there would be no more from February [2018] onward."  *Id*. at

27  
_____

28  [2]  Evidence cited here to sealed filings at Dkt. 142 was later refiled publicly.  *E.g.*, Dkt. 192-8, -9, -10, -11 and Dkt. 193-7, -8, -9, -12, -13, -14, -15, -18, -21.

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

¶ 88 (citing PMSJ Ex. 23 [Dkt. 142-10] at -63).  Samsung did so despite Netlist's pleas that it "really need[ed] Samsung's support to maintain the trust with [its]customers," to which Samsung responded that it "absolutely would not" supply requested products. *Id.* at ¶ 102 (citing PMSJ Ex. 31).  Netlist's pleas went unheeded.

Netlist undisputedly told Samsung that Netlist's "[e]fforts to convert customers" was "negatively impacted" by Samsung's limits and that Netlist was "[l]osing qualification opportunities."  *Id.* at ¶ 104 (citing PMSJ Ex. 32).  Yet, Samsung admitted that it still "routinely rejected requests for product from Netlist."  *Id.* at ¶ 114 (citing PMSJ Ex. 39 [Dkt. 145-43] at 17 [Supp. Response to Netlist Interrog. No 16]).[3]

In sum, the summary judgment record established that Samsung repeatedly breached the JDLA supply provision, knowing that these breaches harmed Netlist.

## 2.    Samsung Breached Its Obligation to Pay NRE Fees

As the Court found, "[t]he parties [also] do not genuinely dispute whether Samsung was required to withhold taxes from the NRE fees."  Dkt. 186 at 15:27–28. It was undisputed that after the execution of the JDLA in 2015, "Samsung withheld $1,320,000 of the $8,000,000 non-recurring engineering fee owed to Netlist."  Dkt. 168-1 at ¶ 46 (p. 26).  Netlist promptly complained about the shortfall, Dkt. 290-4, but Samsung insisted that Netlist "discuss this matter directly with the NTS," Dkt. 290-5. Netlist then incurred $427,051.60 in fees from PricewaterhouseCoopers ("PwC") to obtain those funds from the Korean tax authorities.  *See* Dkt. 290-6; 290-3 (Dkt. 283, 12/1/21 Trial Tr.) at 7:19–20, 10:7 (Samsung's counsel: "It's stipulated.  That's the amount.").  In November 2020, the Korean Tax Tribunal found that the NRE fee owed to Netlist was not a patent royalty payment, as Samsung wrongly contended, and thus not taxable in Korea.  *See* Dkt. 144-7 [PMSJ Ex. 13] at NL108733).

---

[3]   For additional evidence that Samsung continued to cap sales to Netlist in breach of the JDLA, see Dkt. 288 at 4:23–5:24 & n. 5.

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

### 3. Netlist Properly Terminated the JDLA

It was also undisputed that, on May 27, 2020, Netlist sent Samsung a letter informing Samsung that it was in material breach of the JDLA and that these breaches had "caused Netlist to suffer significant damages." *See* Dkt. 168-1 at ¶¶ 125–26 (citing PMSJ Exs. 41, 46 [Dkt. 145-45, -50]); Dkt. 186 at 18:22–25. Samsung did not respond, and Netlist then followed that notice with a termination letter on July 15, 2020, per the termination provision in the JDLA. *Id.* at ¶ 127 (citing PMSJ Exs. 42, 45 [Dkts. 145-46, 145-49]); Dkt. 186 at 18:26–27.

## B. The Court's Rulings on Summary Judgment

In its Summary Judgment Order, the Court found for Netlist on liability for both of Netlist's breach of contract claims, found that Samsung's breaches were material, and that Netlist had properly terminated the JDLA. Dkt. 186 at 15, 17, 19, 21, 22.

With respect to Netlist's Claim 1, the Court found that "Samsung was obligated to 'supply NAND and DRAM products to Netlist on Netlist's request.'" Dkt. 186 at 9:26–28. Yet, "[b]eginning in 2017, Samsung declined to fulfill all of Netlist's forecasts, requests and orders," contrary to its supply obligation. *Id.* at 4:20–22. The Court noted that "Samsung does not dispute that it declined to fulfill" those orders and that it thus "breached JDLA § 6.2." *Id.* at 9:28–10:3.

On Claim 2, the Court found that, "[a]fter entering the JDLA, Samsung deducted $1.32 million (16.5%) of the NRE fees to pay to the Korean tax authority." Dkt. 186 at 4:12–13. The Court confirmed that "[t]he Korean tax authority ultimately determined that the NRE fees were not subject to tax withholding." *Id.* at 4:17–19. The Court then held that Samsung "breached by withholding" the money owed to Netlist, which Samsung "d[id] not genuinely dispute." *Id.* at 15:26–16:11.

The Court also granted summary judgment on Claim 3, finding that "[t]here is no genuine dispute that Netlist completed the termination in the manner set forth in the JDLA, that the breaches it identified were material, and that it did not waive its right to terminate." *Id.* at 20:28–21:3; *see also* 4:23–25, 18:20–27, 22:13–14.

C.      **Samsung's Serial Efforts at Reconsideration**

Samsung sought reconsideration, arguing that the Court failed to consider facts purportedly showing that Samsung's breaches were not material, Netlist's termination was not effective, and Netlist had waived the right to terminate.  Dkt. 210 (for waiver, see *id*. at 10:9–26, 25:2–28:3).  The Court denied reconsideration, observing that "Samsung's motion identifie[d] no *facts* the Court failed to consider."  Dkt. 215 at 2 (Samsung's "disagreement with the Court's analysis of the facts [did] not present grounds for reconsideration.").  And the Court "decline[d] Samsung's invitation to consider contentions Samsung failed to offer in its summary judgment papers."  *Id.*

Notwithstanding this, Samsung's pretrial filings again sought to reargue liability before the jury, specifically by continuing to assert that Netlist waived its claims or acquiesced to Samsung's breaches.  *See* Dkt. 225-1 at 7; Dkt. 233 at 1–4; Dkt. 243 at 3:25–26.  The Court again rejected Samsung's effort to relitigate liability and waiver, holding that "allowing Samsung to resurrect its affirmative defenses would 'unravel the court's prior dispositive liability decisions.'"  Dkt. 243 at 5:5–9.

III.    **ARGUMENT**

A.      **Netlist Is Entitled to Judgment on Claim 1 (Breach of Supply Obligation)**

Under New York law, where liability is established (as the Court found on summary judgment), a plaintiff is entitled to nominal damages as a matter of law.  This satisfies the damage element of a breach of contract claim.  Thus, that Netlist did not prove *additional* monetary damages at trial does not negate the Court's rulings as a matter of law.  Nor did Netlist waive its right to nominal damages by not asking a jury to decide what this Court already decided *as a matter of law* on summary judgment.  Samsung's motion should be denied, and judgment entered for Netlist.

1.      **Netlist Need Not Have Proven Damages at Trial to Prevail**

As Netlist's Motion for Entry of Judgment shows (Dkt. 290 at 5:22–7:12), the rule of New York law for over a century is that, "[w]henever there is a breach of a contract or the invasion of a legal right[,] the law infers some damage." *Finley v. Atl.*

NETLIST OPPOSITION TO SAMSUNG MOTION FOR ENTRY OF JUDGMENT CASE NO. 8:20-CV-993-MCS (ADS)

*Transp. Co*., 220 N.Y. 249, 258 (1917).  In granting summary judgment on liability, the Court recognized this principle, quoting New York's highest court in *Kronos, Inc. v. AVX Corp*., 81 N.Y.2d 90, 94 (1993): "New York law 'infer[s] at least nominal damages at the moment of breach.'"  Dkt. 186 at 17:3–7; *see also* 1 Kyle C. Bisceglie et al., *New York Commercial Litigation Guide* § 10.25 (2021) ("The right to nominal damages exists immediately on the breach of a contract[.]").  Consistent with other Court of Appeals binding precedent, *Kronos* further held that "[n]ominal damages are *always available* in breach of contract actions." *Kronos*, 81 N.Y.2d at 95 (emphasis added); *see also Manhattan Sav. Inst. v. Gottfried Baking Co*., 286 N.Y 398, 400 (1941) (plaintiff who proved breach but not actual damages was "entitled as a matter of law to an award of nominal damages"); *Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 383–84 (1974) (reversing damages award for breach of contract on appeal and awarding nominal damages as "a formal vindication of plaintiff's legal right"). This settled rule has been applied in the context of a breach of supply obligation where the plaintiff failed to prove cover damages at trial.  *See Ineos Americas LLC v. Dow Chemical Co.*, 378 Fed. Appx. 74, 79–80 (2d Cir. May 24, 2010) (affirming award of nominal damages for breach of a mandatory supply obligation despite failure to prove cover damages); *see also* 28A Glen Banks, *N.Y. Prac. Series – N.Y. Contract L.*, § 22:46 (2d. ed. 2017) ("[N]ominal damages are appropriate where . . . plaintiff can engage in a cover transaction at a better price than the breached contract such that it did not suffer damage as a result of the breach.").

Thus, contrary to Samsung, Netlist need not have proven damages to prevail on its claim of breach.  "In breach of contract actions [under New York Law], actual damages are not an essential element, and nominal damages are recoverable to vindicate contract rights." *Perry v. McMahan*, 84 N.Y.S.3d 508, 510 (App. Div. 2018); *see also Baskin-Robbins Inc. v S&N Prinja, Inc*., 78 F. Supp. 2d. 226, 232 (S.D.N.Y. 1999) ("Nominal damages . . . satisfy the damages element of a breach of contract claim under New York law.") (citing *Kronos*, 81 N.Y.2d at 95 and 5 *Corbin*

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

*on Contracts* § 1001 (1951) [provided here as Ex. 1 to the LaMagna Decl.]).[4]  "[E]ven the complete absence of damages resulting from the breach does not defeat a breach of contract claim."  *McCoy Assocs. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) (collecting cases); *see also Ross v. Sherman*, 944 N.Y.S.2d 620, 621 (App. Div. 2012); *Hirsch Elec. Co. v. Cmty. Servs.*, 536 N.Y.S.2d 141, 143 (App. Div. 1988).

Samsung's proffered authority (Mot. at 16:14–17:2 & nn. 1–2) does not support a contrary result.  The only New York Court of Appeals authority Samsung cites confirms that, where damages are "not proved with the required certainty," nominal damages still are recoverable.  *Freund*, 34 N.Y.2d at 383–84 (finding breach but no actual damages and therefore modifying judgment to award nominal damages of six cents).  Samsung misreads the other cases it cites, which are inapposite, and none of which involved a plaintiff requesting nominal damages.

For example, in *Proper v. State Farm*, the plaintiff asserted "that defendant breached its [insurance] contract by failing to fully" pay medical costs.  882 N.Y.S.2d 340, 341 (App. Div. 2009).  But the plaintiff had "no bills or statements" to prove she incurred expenses that were not paid—that is, plaintiff had no evidence *of breach*, which is the opposite of the situation here.  *Id*.  In *Lexington 360 Associates v. First Union National Bank of North Carolina*, the plaintiff had not even pled a viable claim for breach, let alone *proven* liability, as is the case here.  651 N.Y.S.2d 490, 492–93 (App. Div. 1996).  The same holds true for *ERE LLP v. Spanierman Gallery, LLC*, 942 N.Y.S.2d 472, 473–74 (App. Div. 2012)—the pleading was found "fatally deficient" because it "contain[ed] only boilerplate allegations of damage" rather than a factual

---

[4]   The full passage from Professor Corbin states: "A plaintiff who has proved the breach of a contractual duty by the defendant is always entitled to a judgment for damages therefor, except in cases where the contract is made unenforceable in this fashion by some statutory provision.  For this purpose it is not necessary for the plaintiff to prove the amount of harm that he has suffered by reason of the defendant's breach of duty.  If he makes no such proof, however, the judgment in his favor will be for nominal damages only."  5 *Corbin*, § 1001 (1951) [Ex. 1 here].  The current version of the treatise maintains the same view:  "If the aggrieved party has suffered no compensable damages, a judgment for nominal damages will be entered."  11 *Corbin on Contracts* § 55.10 (Lexis/Matthew Bender 2021).

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

basis for damage.  And in *Holland Loader Co., LLC v. FLSmidth A/S*, the court expressly recognized that the only relief the plaintiff sought was money damages, so there was nothing else for the court to award for the breach.  313 F. Supp. 3d 447, 483 (S.D.N.Y. 2018).  Nominal damages are not mentioned, and the plaintiff did not assert its entitlement to them under *Kronos*, *Manhattan Savings*, *Finley*, or their progeny, none of which are cited in the opinion.[5]  Similarly, in *Shred-It USA Inc. v. Bartscher*, an unpublished ruling from a bench trial before a Magistrate Judge, nominal damages were not litigated.  2005 WL 2367613, at *16 (E.D.N.Y., Sept. 27, 2005).

In summary, this Court properly found breach and with that finding, Netlist was automatically entitled to nominal damages as a matter of New York law.

## 2.    It Is Undisputed That Netlist *Was* Harmed by Samsung's Breach

Even if the rule were as Samsung suggests—that Netlist has must prove "harm" or "injury" to receive nominal damages—Netlist would still be entitled to judgment. As summarized in Section II.A.1 *supra*, Samsung never disputed that it repeatedly breached its obligations (as the Court construed them), knowing that Netlist was being harmed.  This Court thus correctly found on summary judgment that Samsung did not "dispute that it declined to fulfill all of Netlist's orders" and there was "no genuine dispute that Samsung breached JDLA § 6.2."  Dkt. 186 at 9:28–10:3.

In addition, Netlist was harmed when it could not fulfill its own customers' orders and was unable to make new sales because of Samsung's supply breaches.  This constitutes *harm* to Netlist, even though the Court ruled that Netlist could not recover monetary damages for that harm because of the JDLA's limitation on consequential damages.[6]  Samsung cites no case holding that nominal damages are not available

---

[5]  The same holds true for the *Zamora* case cited later in Samsung's motion papers.

[6]  As discussed below, the same holds true for Samsung's conceded failure to pay the full NRE fees owed under the JDLA, which necessitated that Netlist pay PwC to obtain the performance that Samsung promised to Netlist.  While Samsung incorrectly claims that the PwC costs are consequential damages, even if that were true, those costs still evidence harm to Netlist.

10

when a certain category of damage is subject to a contractual limitation.[7]  That is because it is not the law.  *See, e.g., Tradex Eur. SPRL v. Conair Corp.*, 2008 WL 1990464, at *6 (S.D.N.Y. May 7, 2008) (permitting nominal damages when "direct damages and consequential damages" were barred); 11 *Corbin on Contracts* § 55.10 ("If the aggrieved party has suffered no compensable damages, a judgment for nominal damages will be entered.").  Therefore, even if nominal damages may be awarded only if "the plaintiff establishes that it suffered some injury but is unable to prove at trial the amount of that injury," as Samsung contends (Mot. at 18:10–19),[8] Netlist would satisfy that standard and still be entitled to judgment in its favor.

To avoid this conclusion, Samsung mischaracterizes the jury verdict, arguing that the "issue at trial was whether Netlist suffered *harm* as a result of Samsung's breach" and that the jury determined that "Netlist did not suffer any *injury*" and that "any breach was *harmless*."  *E.g.*, Mot. at 14–16, 18, 30–31 (emphasis added).

But that is not what happened.  The only issue tried to the jury was whether Netlist proffered sufficient proof it had suffered economic damages under Claim 1

---

[7]  Samsung's reliance on *ERE LLP* (Mot. at 22:12–18) is misplaced.  *ERE* only states that a limitation on consequential damages "will be upheld."  *ERE* neither involved nominal damages nor mentioned nominal damages, nor states that the rule under New York law entitling a party to nominal damages in the face of breach does not apply where a contract contains a damages limitation.  492 N.Y.S.2d at 474.

[8]  Samsung commits an error of logical reversal to argue that nominal damages are *limited* to instances where a plaintiff "establishes that it suffered some injury" but is unable to prove "the amount."  Indeed, Samsung's cited cases like *Freund*, 34 N.Y.2d 379, and *Hodges v. Cusanno*, 941 N.Y.S.2d 772, 774 (App. Div. 2012), award nominal damages when actual damages were "speculative" or "uncertain."  But neither case states that nominal damages are *limited* to such facts.  Samsung has observed that poodles are dogs and told the Court that all dogs must be poodles.

To the contrary, under New York law, nominal damages are available even "if the breach of contract caused no loss."  *Hirsch*, 536 N.Y.S.2d at 143; *Restatement (Second) of Contracts* § 346(2); *see also McCoy*, 218 F. Supp. 2d at 294 (nominal damages available in "the complete absence of damages"); *see also* 28A Glen Banks, *N.Y. Prac. Series – N.Y. Contract L.*, § 22:46 ("An award of nominal damages is appropriate where: the defendant's breach of contract did not proximately cause any damage to the plaintiff; the existence of damage is uncertain or speculative; the amount of the loss caused by the breach cannot [be] proved with sufficient certainty; plaintiff failed to submit sufficient evidence . . .").

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

(specifically cover damages).  The question the jury answered was "Did Netlist prove that it suffered *damages*…?" (Mot. at 16:10–13 (emphasis added)), not the broader question of whether Netlist was injured or harmed at all.  The jury found that Netlist did not meet the standard of proof on its claim for cover damages, nothing more.  Failing to prove-up a quantifiable sum is not the same as concluding no harm ever occurred.  Indeed, as this Court held, Samsung's material breach went "to the root of the agreement between the parties" and deprived Netlist of "an integral part of the parties' agreement, one that Netlist valued highly, as demonstrated by its negotiation and post-execution conduct."  Dkt. 186 at 19:4–5; 19:17–19.  That is not "harmless."

### 3. Netlist Did Not "Forfeit or "Waive" Nominal Damages

Samsung's argument that the jury needed to award Netlist nominal damages (Mot. at 17) ignores well-settled New York case law.  As explained in Section III.A.1, *supra,* the New York Court of Appeals has long made clear that where a plaintiff "proved that the defendant breached its contract," the plaintiff is *"entitled as matter of law* to an award of nominal damages." *Manhattan Sav.*, 286 N.Y at 400 (emphasis added); *see also Perry*, 84 N.Y.S.3d at 509–10 (affirming court's "award of nominal damages to plaintiff" after "the jury found that the plaintiff suffered no damages from the breach").  Netlist's entitlement to nominal damages under New York law was no longer a question for the jury once the Court found breach.  "[I]f the breach of contract caused no loss or if the amount of loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any."  *Hirsch*, 536 N.Y.S.2d at 143 (quotes omitted); *see also Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, 769 F.3d 135, 139 n.8 (2d Cir. 2014) ("Under New York law, nominal damages may be awarded to a party who has shown breach of contract, even in the absence of evidence of a related loss.") (citing *Hirsch*); *Restatement (Second) of Contracts* § 346(2) (1981) ("If the

breach caused no loss or if the amount of the loss is not proved … a small sum fixed without regard to the amount of loss will be awarded as nominal damages.").[9]

Samsung's argument also ignores the law of the case.  This Court already rejected Samsung's argument that it should "deny summary judgment to Netlist as to liability, or enter summary judgment against Netlist, for failure to provide evidence of actual damages."  Dkt. 186 at 17:4–5.  In doing so, the Court recognized that controlling New York law infers "at least nominal damages at the moment of breach," and then found that Samsung committed multiple material breaches as a matter of law. Dkt. 186 at 17:6 (quoting *Kronos*, 81 N.Y.2d at 94).

Netlist cannot "forfeit" or "waive" relief (nominal damages) that this Court *granted* when it ruled that Samsung was liable for breach.  *E.g., Perry*, 84 N.Y.S.3d at 509–10 (affirming court's award of nominal damages *after* jury returned verdict of no economic damages in damages-only trial).  Seeking a duplicative "finding" from the jury would be both unnecessary and improper.[10]

The authority Samsung cites (Mot. at 17:16–18:5) does not support a different result, and tellingly, is not New York law.

_____

[9]  For further examples, see *V.S. Int'l, S.A. v. Boyden World Corp.*, 862 F. Supp. 1188, 1198 (S.D.N.Y. 1994) ("Plaintiffs failed to establish with any level of certainty that any profits were lost, or that any business that was executed" or any other "actual damages" and thus would "only be entitled to recover nominal damages as vindication of their contractual rights.") (citing *Hirsch*, 536 N.Y.S.2d at 143); *UV Indus. v. Sharon Steel Corp.*, 631 F. Supp. 1219, 1221 (S.D.N.Y. 1986) ("established law" states that "'for any breach that has occurred … the law will give an appropriate remedy'" and "the wronged party is entitled at least to recover nominal damages.") (quoting Corbin, *Contracts*); *Good Karma Productions v. Penthouse Int'l Ltd.*, 450 N.Y.S.2d 486, 486 (App. Div. 1982) ("[T]he record is completely devoid of proof of any damage sustained by plaintiff" and "'[t]he plaintiff was … entitled as a matter of law to an award of nominal damages.'"); *Clearview Concrete Prod. Corp. v. S. Charles Gherardi, Inc.*, 453 N.Y.S.2d 750, 756 (App. Div. 1982) ("Notwithstanding its failure to establish damages, [a party] is still entitled to nominal damages to vindicate its rights").

[10]  Samsung's citation to Rule 51(d) (Mot. at 17:21–22) is equally unpersuasive.  The Rule concerns the right to argue error from giving an erroneous jury instruction or the failure to give a requested jury instruction.  As discussed, the issue of nominal damages was not one for the jury to decide here.  Rule 51(d) has no application.

1      In *Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks*

2  *Lodge, B.P.O.E. No. 1450*, the district court *denied* summary judgment and made no

3  findings on plaintiff's claim that would have obviated including issues to be tried (in

4  that case, certain defenses to breach of contract) in the pretrial order.  827 F.2d 1324,

5  1329 (9th Cir. 1987).  But here, the Court granted summary judgment on Netlist's

6  claims for breach *before trial* which, as a matter of law, entitled Netlist to nominal

7  damages.  *See Kronos*, 81 N.Y.2d at 95; *Manhattan Sav.*, 286 N.Y at 400; *Hirsch*, 536

8  N.Y.S.2d at 143.  It would have been inappropriate to include in the pretrial order

9  issues that were *not* to be tried (Netlist's entitlement to nominal damages not being a

10  "Remaining Triable Issue," Dkt. 244 (Final Pretrial Conference Order) at § 8).

11      Samsung's reliance on *Soltero v. Swire Development Sales, Inc*. and *Hamilton v.*

12  *Water Whole International Corp.*, two unpublished out-of-Circuit cases, is also

13  unavailing.  *Soltero* involved Florida state law tort claims of fraud and

14  misrepresentation, for which "[a]ctual harm is an essential element."  485 Fed. App'x

15  377, 378–79 (11th Cir. July 30, 2012).  The *Soltero* court did not make a liability

16  finding before trial and was not presented with evidence or authority that Florida law

17  required nominal damages to be awarded as a matter of law; it is thus irrelevant here.

18  *Id*.[11]  In *Hamilton*, the court addressed Oklahoma state law fraud claims and found the

19  district court erred in allowing plaintiffs to testify at trial about mental distress because

20  "the final pretrial order contain[ed] no claim for damages from the alleged fraud under

21  a theory of mental or emotional distress, anguish, or suffering."  302 Fed. App'x 789,

22  797 (10th Cir. Dec. 10, 2008).  Here, in contrast, Netlist was entitled to nominal

23

24  _____

25  [11]  As the New York Court of Appeals has explained, under New York law: "There is
no anomaly in the fact that nominal damages are recognized in plaintiff's breach of
26  contract claim … but disallowed in [a] tort action, [even] in which the same
contractual breach is an element.  Fundamentally different functions are served by
27  an action in tort on the one hand, and an action in contract on the other, and …
nominal damages are appropriate in one and not in the other."  *Kronos*, 81 N.Y.2d
28  at 96; *see also id*. at 97 (declining to extend the entitlement of nominal damages to
a tort claim and ruling that a showing of "actual damages" is required for the tort).

14

damages as a matter of law *before* submitting the case to the jury, so there was no reason to include it as an issue to be tried.

As for Samsung's argument that there was allegedly "an available [jury] instruction on nominal damages" (Mot. at 17:16– 18:7), it is irrelevant because most cases that proceed to trial do so without a prior finding of liability on summary judgment.  In such cases, a court in theory could instruct the jury that it is required as a matter of law to award nominal damages if breach is proven.  But here there was a *pretrial* ruling that entitled Netlist to nominal damages *as a matter of law*, so there was no reason to include a jury instruction on it.  This is exactly why Samsung's own proffered authority includes *judges* imposing nominal damages, including on appeal. *See Freund*, 34 N.Y.2d at 383–84.

In sum, there is no question that once this Court granted summary judgment on liability, Netlist was at that moment entitled to nominal damages as a matter of law and nothing thereafter could possibly constitute a "waiver" of that right.  Netlist is therefore entitled to entry of judgment in its favor on Claim 1.

**B.     Netlist Is Entitled to Judgment on Claim 2 (Breach of NRE Payment)**

It is undisputed that Samsung failed to pay the full $8M NRE fee required by the JDLA.  Dkt. 186 at 16:5–11, 18:22–25.  Netlist requested Samsung remedy its breach (Dkt. 290-4), but Samsung refused and directed Netlist to recover the funds from the Korean tax authorities on its own (Dkt. 290-5).  The existence of this harm, and its exact monetary value, are undisputed.[12]

Under New York law, general damages are "those which are the natural and probable consequence of the breach . . . while special damages are extraordinary in that they do not so directly flow from the breach."  *Am. List Corp. v. U.S. News & World Rep., Inc.*, 75 N.Y.2d 38, 42–43 (Ct. App. 1989); *see also* Dkt. 290 at 10–13.

---

[12]  Dkt. 290-3 (12/1/21 Trial Tr.) at 8:9–10 (Samsung confirming the PwC fees are a harm and that "the only issue is, under the law, based on briefing, is this a *consequential damage or not*.") (emphasis added); *see also id*. at 7:19–20, 10:7.

Consequently, where expenses are incurred to obtain "the value of the very performance promised," they constitute general damages, *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2002), because a "plaintiff should be awarded the value of the very thing promised so that his balance sheet will reflect capital assets he would have had upon the defendant's full performance," 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.2(3), at 40–41 (1993).

This settled rule has been applied to the cost of using professional consultants "'directly occasioned and made necessary by the breach.'"  *City of Elmira v. Larry Walter, Inc.*, 546 N.Y.S.2d 183, 185 (App. Div. 1989) (citation omitted); *see also Congel v. Malfitano*, 31 N.Y.3d 272, 291 (2018) (professional fees were "'incurred by plaintiff in attempting by itself to fulfill defendants' obligations under the contract and were directly occasioned and made necessary by defendants' breach'" (citation omitted)); *J & J Structures, Inc. v. Callanan Indus., Inc.*, 626 N.Y.S.2d 891, 893 (App. Div. 1995) (party "entitled to recover expenditures occasioned and made necessary by the breach"); *Aero Garage Corp. v Hirschfeld*, 586 N.Y.S.2d 611, 612–13 (App. Div. 1992) (legal expenses "incurred by plaintiff in attempting by itself to fulfill defendants' obligations under the contract" were "'directly occasioned and made necessary by' defendants' breach.").

Samsung breached the JDLA by improperly withholding $1.32 million from the $8 million NRE fee promised to Netlist.[13]  This breach forced Netlist to incur $427,051.60 to obtain the value Samsung withheld from its promised performance. The PwC fees were therefore "directly occasioned and made necessary by" Samsung's breach and refusal to complete payment, obtain a refund from the Korean tax authorities, or otherwise remedy its breach; they are thus general damages that should

---

[13]  As the Court held, "Samsung was not required by applicable law to withhold; therefore, Samsung breached by withholding." Dkt. 186 at 16:7–8; *see also* Section II.A.2, *supra*; Dkt. 168-1 at ¶ 46 (p. 26) (Samsung did not dispute that it "withheld $1,320,000 of the $8,000,000 non-recurring engineering fee owed to Netlist."); Dkt. 186 at 15:27–28 ("The parties do not genuinely dispute whether Samsung was required to withhold taxes from the NRE fees.").

be awarded to restore Netlist's balance sheet to what it would have been had Samsung fully performed under the JDLA.[14]

Samsung's contrary argument—that the PwC fees are not general damages under New York state law (Mot. at 19–22)—is unavailing. None of Samsung's cited caselaw involves professional fees incurred to obtain the value of the promise that was not performed.

For example, Samsung cites *PNC Bank, National Association v. Wolters Kluwer Financial Services, Inc.*, 73 F. Supp. 3d 358, 373–74 (S.D.N.Y. 2014). In *PNC Bank*, the fees plaintiff sought were not to obtain the promise owed under the contract, but instead to *investigate* the scope of a possible breach. *Id.* at 374 ("investigative audit and legal fees that PNC incurred in determining how to respond to the disclosure deficiencies"). Similarly, in *American Railcar Industries, Inc. v. Gyansys, Inc.*, the contract was for software, but plaintiff sought to recover "reduced full time employees, missed growth opportunities, and reduced efficiency savings[], [and] added costs," including for consultants "to assess and remediate" (i.e., determine) the breach—all typical consequential damages and not like the direct harm Samsung's breach caused and for which Netlist seeks damages. 2017 WL 11501888, *15–16 (S.D.N.Y. Nov. 13, 2017). In *D.K. Property, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, the court found expenses were consequential damages because they were "attributable to mitigating *further* damage"—not at issue here. 92 N.Y.S.3d 231, 233 (App. Div. 2019). So too with respect to *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, which found plaintiff's costs at issue (taking short positions on a hedge) were an ancillary measure taken to mitigate risk and were therefore consequential damages because they were "collateral to the direct breach." 618 F. Supp. 2d 280,

---

[14] The amount of damages at issue ($427,051.60) is not disputed, or that these fees were incurred for this purpose. Dkt. 290-3 (12/1/21 Trial Tr.) at 8:9–10 (Samsung confirming the PwC fees are a harm and that "the only issue is, under the law, based on briefing, is this a *consequential damage or not*.") (emphasis added); *see also id*. at 7:19–20, 10:7.

NETLIST OPPOSITION TO SAMSUNG MOTION FOR ENTRY OF JUDGMENT CASE NO. 8:20-CV-993-MCS (ADS)

288, 302 n.21 (S.D.N.Y. 2009).  Unlike these cases, Netlist did not pay PwC to investigate whether Samsung paid or not, or assess the amount Samsung failed to pay, or mitigate any risk or "*further* damage" related to Samsung's breach.  *See D.K. Property,* 92 N.Y.S.3d at 233.  Instead, Netlist hired PwC to retrieve exactly what Samsung owed under the JDLA, from the agency Samsung wrongfully paid, after Samsung refused to cure or offer aid.

Samsung's citation to *Qube Films Ltd. v. Padell* is likewise misplaced.  In that case, the plaintiff conceded its losses were "indirect" and "one step removed from the naked performance promised by the defendant."  2016 WL 881128, at *6 (S.D.N.Y. Mar. 1, 2016) (quotes omitted).  Netlist's PwC fees were not "indirect"; they were the direct expense Netlist incurred to obtain "the naked performance promised" by Samsung (i.e., the full payment Samsung promised to make).

Samsung's citation to cases finding general damages (Mot. at 21:17–22:11) run counter to Samsung's argument that the PwC fees were somehow not directly occasioned and made necessary by its breach.  For example, in *American List Corp.*, the Court of Appeals found that the plaintiff's lost profits, which are typically considered consequential damages, constituted general damages because they were amounts "defendant undertook to pay under the contract, thereby assuming a definite obligation."  75 N.Y.2d at 43.  *American List Corp.* did not, however, go as far as Samsung suggests and hold that "moneys which [a] defendant undertook to pay under [a] contract" can be the *only* source of general damages.  Similarly, *Biotronik, A.G. v. Conor Medsystems Ireland, Ltd.*, found lost profits were general damages because they "flow[ed]" from a pricing formula in the contract, but did not conclude that general damages are limited to *only* dollar amounts that are written into a contract, or that expenditures for professional fees to obtain performance are not general damages. 22 N.Y. 3d 799, 809 (2014).  Indeed, in *Biotronik* the Court of Appeals rejected the proposition of a "bright-line" damages rule and stressed that New York law applies a "case-specific approach . . . to distinguish general damages from consequential

18

damages." *Id.* at 808.  And of course, neither *American List Corp.*, nor *Biotronik* overruled New York law that holds that damages are general where, as here, they are "directly occasioned and made necessary by the breach." *See City of Elmira*, 546 N.Y.S.2d at 185; *see also Congel*, 31 N.Y.3d at 291; *J & J Structures*, 626 N.Y.S.2d at 893; *Aero Garage*, 586 N.Y.S.2d at 612–13.

In sum, New York law does not limit general damages to only the dollar figures expressly typed in a contract, but instead recognizes that general damages include expenditures "directly occasioned and made necessary by the breach," such as fees "incurred by plaintiff in attempting by itself to fulfill defendants' obligations under the contract." *Congel*, 31 N.Y.3d at 291; *Elmira*, 546 N.Y.S.2d at 185; *see also J & J Structures*, 626 N.Y.S.2d at 893; *Aero Garage*, 586 N.Y.S.2d at 612–13; *Schonfeld*, 218 F.3d at 175 ("the value of the very performance promised").  That standard is undoubtedly met here.  And even if it were not met, at the very least Netlist is entitled to nominal damages for the already-established breach of Claim 2 for the same reasons as Claim 1 (*see, supra,* Section III.A).

## C.    Netlist Is Entitled to Judgment on Claim 3 (Declaration of Termination)

As Netlist's Motion for Entry of Judgment demonstrates, the Court correctly determined that Samsung's breaches of the JDLA were material and that Netlist properly terminated the JDLA.  *See, e.g.*, Dkt. 186 at 17:22–21:3; Dkt. 290 at 15–16.  The Court did not make this ruling contingent upon any future event, including the result of the limited damages trial to come, and in fact expressly held that summary judgment was the proper time to decide the issue of materiality and termination in this case.  Dkt. 186 at 20:26–21:3 ("A declaratory judgment that Netlist terminated the JDLA would clarify the effectiveness of Netlist's termination and relieve the parties from the uncertainty over the issue. . . . Summary judgment in Netlist's favor is appropriate on this claim.").  Nor does the jury verdict of no damages on Claim 1 conflict with this ruling, as "[m]ateriality does not depend upon the amount of provable money damages, it depends upon whether the nonbreaching party lost the

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

benefit of its bargain." *ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 416, 421 (S.D.N.Y. 1999); *see also City of New York v. Tavern on the Green Int'l LLC*, 2021 WL 1316956, at *2–3 (S.D.N.Y. Apr. 7, 2021) (finding material breach on summary judgment and awarding nominal damages).  Samsung's attempt to *re*litigate these findings (for the third time) lacks merit and should be denied.

### 1.    Samsung's Motion Is an Improper *Second* Reconsideration Demand

Samsung demands that this Court vacate its "prior summary judgment order" and "enter[] judgment in Samsung's favor" as to Claim 3.  Mot. at 2:19–24; *see also* Mot. 10:3–5, 15:18–22, 22:23–24, 27:23–25, 33:18–19.  Thus, Samsung again moves the Court for reconsideration, but avoids titling it so.  Yet, Samsung barely acknowledges its obligation to satisfy Local Rule 7-18 for such a challenge, stating only in a footnote that its new reconsideration motion is based on Samsung's view that the jury verdict and Court's future ruling on NRE fees are "new facts" that prompt reconsideration.  Mot. at 23 n.4.[15]  Samsung is incorrect for multiple reasons.

First, Samsung again ignores the ruling for which it seeks reconsideration—the Court granted summary judgment on Netlist's Claim 3, notwithstanding that Netlist might *not* recover general damages for either Claims 1 or 2.  The Court was aware when it granted declaratory judgment on Claim 3 that general damages had not yet been quantified and/or awarded for Claims 1 or 2.  As the Court correctly recognized, Netlist was entitled to judgment regardless of whether it *additionally* proved quantifiable general cover damages at trial for Claim 1, or that the PwC damages legally constitute general damages under Claim 2.  *See* Dkt. 186 at 17:5–7 ("New York law 'infer[s] at least nominal damages at the moment of breach.'") (quoting *Kronos*, 81 N.Y.2d at 94).  What the jury decided later (or the Court decides now on NRE fees) are

---

[15] Perhaps recognizing that it does not actually meet the requirements of Local Rule 7-18, Samsung also appeals to the Court's "inherent authority to modify its own interlocutory orders."  Mot. at 23 n.4.  The relief that Samsung requests—vacating a prior order—is not available under the other rules cited by Samsung (Rule 54, 58, or 59), making clear that Samsung is simply asking, yet again, for the Court to reverse itself.

not "new facts" the Court failed to consider when deciding Claim 3.  Nor did Samsung contend during summary judgment that the amount of cover damages proven at trial would dictate whether or not the Court could find that Samsung materially breached the JDLA supply provision.  Thus, there is no basis for reconsideration.

Second, even if the Court had failed to consider that Netlist might not obtain additional monetary damages (an implausible notion given the explicit treatment the Court gave this point in its opinion), as detailed in Sections III.A and B *supra*, New York law is clear that Netlist is the prevailing party on both Claims 1 and 2 and entitled to nominal damages on both (plus general damages on Claim 2).  Samsung's argument that later events now prove that "there was no breach" (Mot. at 24) fail.

Third, Samsung ignores the text of the termination provision of the JDLA, which states that the prerequisite for termination is that a party be "in material breach." Dkt. 144-1 (JDLA) at § 13.2(1).  To terminate the JDLA, Netlist does not need to *prevail* on a claim *for monetary damages*—Netlist need not even file a claim for monetary damages.  Samsung need only be in "material breach" (and not all material breaches result in monetary awards, as both New York law and this case illustrates). Netlist had to follow specific procedures in providing Samsung with notice and an opportunity to cure its breach, which the Court found Netlist did.  Dkt. 186 at 18.  It does not matter whether limitations on damages impair Netlist's pecuniary recovery— the Court's findings on breach and materiality are sufficient for judgment on Claim 3 even if Netlist did not prevail on Claims 1 or 2 for lack of recoverable general damages (which is not the case for Claim 2).  That is why this Court correctly ruled on materiality and termination at summary judgment, despite an upcoming trial on damages.

Finally, Samsung does not dispute that it breached Sections 3.1 and 6.2 of the JDLA as construed by the Court (it just disputes that Netlist can prevail on *a claim* for breach).  Samsung's true complaint is that its breaches were not, in its current view, material.  But as noted above, as to Claim 1, Samsung argued at summary judgment

1    only that it did not breach the JDLA and that therefore no material breach had

2    occurred; Samsung did not argue at summary judgment that if its interpretation of

3    Section 6.2 were wrong, that any resulting breach would not be material.  On that

4    record, this Court properly ruled that Samsung's breaches went "to the root of the

5    agreement between the parties," that the evidence concerning materiality of breach in

6    this case "is clear and substantially uncontradicted," and that Samsung's breach went

7    to "an integral part of the parties' agreement, one that Netlist valued highly, as

8    demonstrated by its negotiation and post-execution conduct."  Dkt. 186 at 19:4–5,

9    19:9–10, 19:17–19.  Samsung apparently *now* regrets that it did "not seriously contest

10   materiality" at summary judgment, Dkt. 186 at 19:15, but it does so with no new facts

11   or law.  Samsung's dissatisfaction with the result does not justify a misnamed and

12   meritless motion for reconsideration, and the Court should reject Samsung's *de facto*

13   renewed reconsideration motion. Dkt. 215 at 2 (denying reconsideration motion based

14   on Samsung's disagreement with the Court's analysis).

15        **With respect to Claim 1**, Samsung asserts that its breaches were not material

16   because Netlist "cannot show that it suffered any injury." Mot. at 25:16–26:8.[16]

17   Setting aside that this is incorrect—injury to Netlist is undisputed on the above record

18   and the jury addressed only cover damages—Samsung did not raise this issue on

19   summary judgment and has waived the argument.  Instead, Samsung argued that "there

20   was no supply obligation as alleged by Netlist and therefore no material breach."

21   Dkt. 168 at 30:2–5; Dkt. 186 at 19:15–16 (finding that Samsung rests its defense "on

22   its untenable interpretation of the supply provision").  Samsung sought to newly raise

23   the issue in its first motion for reconsideration:  Dkt. 210 at 18:25–19:8 (arguing

24

25   ────────────────────────

26   [16]  Netlist does not dispute that "slight, casual, or technical breaches" are not material.
     *Cf.* Mot. at 25:8–26:8 (citing various cases).  But that is not the case here where the
     undisputed record shows intentional, repeated breaches destroying the supply
27   assurance that the Court found to be "an integral part of the parties' agreement, one
     that Netlist valued highly." Dkt. 186 at 19:15–19, Section II.A.1, *supra*.  Telligly,
28   Samsung cites no case that says a breach cannot be material under New York law
     *unless* it results in substantial *recoverable* economic losses.

22                                    NETLIST OPPOSITION TO SAMSUNG
                                      MOTION FOR ENTRY OF JUDGMENT
                                      CASE NO. 8:20-CV-993-MCS (ADS)

"Netlist failed to demonstrate the amount of damages it allegedly suffered as a result of these shortfalls."). The Court rejected the issue as waived. Dkt. 215 at 2 ("The Court declines Samsung's invitation to consider contentions Samsung failed to offer in its summary judgment papers…."). The Court should reject the same argument now.

**With respect to Claim 2**, Samsung asserts that its breach was not material, arguing that Netlist did not suffer harm (which is not true) because (*i*) Netlist received payment from Korean tax authorities in the end, (*ii*) Samsung supposedly "had a good-faith basis" to withhold payment, and (*iii*) the "relative magnitude" of the withheld amount (16.5%) was "small." Mot. at 26–27. Samsung ignores that its first two arguments were raised on summary judgment and rejected by the Court then. Dkt. 186 at 16:2–9, 19:19–27. The third argument was not raised on summary judgment and therefore was waived. *E.g.*, Dkt. 215 at 2 (declining to consider arguments not raised at summary judgment). The third argument also conflicts with this Court's summary judgment ruling. *See* Dkt. 186 at p. 19 ("[T]he time of measuring materiality [is] when the breach occurred. At the time of the withholding, Samsung's failure to pay a significant chunk of the NRE fees was material.") (internal citations omitted). Moreover, Samsung briefed this third argument (magnitude) in its first reconsideration motion, while also repeating its first two arguments. Dkt. 210 at 15:15–22, 16:16–17:11 (citing the same cases as here).[17] All three arguments were then rejected by the

---

[17] For example, Samsung recycles *Septembertide Publishing v. Stein and Day, Inc.* and *Bear, Stearns Funding, Inc. v. Interface Group Nev., Inc.* from its first reconsideration motion. *Compare* Dkt. 289 at 27, *with* Dkt. 210 at 15:17–17:11.

*Septembertide* litigated a common-law rescission remedy for breach, not a right defined by contract as here, and it did so under authority applicable specifically to publication royalties (not at issue here). 884 F.2d 675, 678–79 (2d Cir. 1989). Samsung conveniently ignores cases outside of that context, where "[f]ailure to tender payment pursuant to the terms of a contract is generally considered a material breach." *E.g., Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 215 (N.D.N.Y. 1999) (subcontractor permitted to terminate for material breach when general contractor failed to make several timely payments).

As to *Bear, Stearns*, Samsung inverts its discussion—the case addresses that bad faith may support materiality, not that good faith cleanses what is otherwise a

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)

1  Court in denying reconsideration.  Dkt. 215 at 2.  Nothing has changed.  Samsung's

2  motion should likewise be denied now.

3          **2.**     **Samsung's Request for a New Trial Likewise Lacks Merit**

4        Samsung's request for a new trial is just its reconsideration request

5  masquerading as a Rule 59 motion.  To obtain a new trial, Samsung would need the

6  Court to reconsider and reverse itself on its summary judgment order.  As shown

7  above, there is no basis to do so.  Moreover, Samsung makes no effort to articulate

8  how the standard for a new trial is met here or even inform the Court what standard

9  applies.  A new trial is justified "only if the verdict is contrary to the clear weight of

10  the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of

11  justice." *Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007) (citation omitted).

12  Samsung has not even tried to show that the verdict was "contrary to the clear weight

13  of the evidence" much less "perjurious" or "a miscarriage of justice."

14        Regardless, for the same reasons that the Court should not reverse itself and

15  grant Samsung summary judgment, it should not reverse itself to order a new trial.

16  Samsung's arguments for a new trial (Mot. at 28–31) mirror those it raised in seeking

17  reconsideration, and fail for the same reasons discussed above.[18]  Samsung's waiver

18  argument (Mot. at 29:19–31:10), now in its third encore before the Court, remains the

19  same as when presented on reconsideration, *see* Dkt. 10:9–26, 25:2–28, and should be

20

21

22

23

---

24        breach.  361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005).  "A party's adherence to
standards of good faith and fair dealing (§ 205) will not prevent . . . a breach

25  (§ 236(2))."  Restatement (Second) of Contracts § 241 (1981).

26  [18]  Samsung also cites the parties' recently filed case in the Eastern District of Texas.
Mot. at 29.  Samsung fails to note, however, that it first sued Netlist in the District

27  of Delaware, along with multiple petitions for *inter partes* review within hours of
the Court's summary judgment ruling in October.  Netlist's Texas action is not a

28  "new fact, which weighs in favor that any breach was not material" (*id.*), despite
Samsung's assertions.

rejected for the same reason, *see* Dkt. 215 at 2; Dkt. 186 at 20.[19]  Samsung's motion should therefore be denied in its entirety.

**D.      The Court Correctly Ruled on Samsung's Defenses**

Netlist continues to agree that the Court correctly ruled on Samsung's defenses for the reasons stated by the Court (Dkt. 243 at 4–6) and previously briefed by Netlist (Dkt. 234).

## IV.   CONCLUSION

For the foregoing reasons, Samsung's motion should be denied in its entirety. Netlist is entitled to prompt entry of judgment in Netlist's favor on all claims as set forth in Netlist's cross-motion (Dkt. 290) and proposed Judgment submitted therewith.

Dated:  January 24, 2022          GIBSON, DUNN & CRUTCHER LLP

By:  /s/ *Jason C. Lo*
Jason C. Lo
333 South Grand Ave.,
Los Angeles, CA 90071
213.229.7000
jlo@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.

---

[19]  Samsung's final argument for a new trial (Mot. at 31:11–28) merits little discussion as it reduces to a tautological observation that Netlist could only terminate for material breaches, and, in Samsung's view, its breaches were not material so Netlist could not terminate.  This Court found the breaches were material.  Dkt. 186 at 19.

NETLIST OPPOSITION TO SAMSUNG
MOTION FOR ENTRY OF JUDGMENT
CASE NO. 8:20-CV-993-MCS (ADS)