RICHARD DOREN, SBN 124666
   rdoren@gibsondunn.com
JASON C. LO, SBN 219030
   jlo@gibsondunn.com
MATTHEW BENJAMIN (*pro hac vice*)
   mbenjamin@gibsondunn.com
TIMOTHY BEST, SBN 254409
   tbest@gibsondunn.com
RAYMOND A. LAMAGNA, SBN 244821
   rlamagna@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

JASON SHEASBY, SBN 205455
   jsheasby@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>               Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>              Defendant. | CASE NO. 8:20-cv-993-MCS (ADS)<br><br>**PLAINTIFF NETLIST INC.'S REPLY IN SUPPORT OF MOTION FOR FEES FOR DEFENDANT SAMSUNG'S FAILURE TO ADMIT REQUESTS FOR ADMISSION**<br><br>Before Judge Mark C. Scarsi<br><br>**Posttrial Hearing on Motions:**<br>Date: February 14, 2022<br>Time: 9 a.m. PT |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................2

    A.   Samsung's Responses to Netlist's RFAs Lacked Good Faith ...................2

        1.   Samsung Refused to Admit Facts about Capped Supply to Netlist ...............................................................................................2

        2.   Samsung Refused to Admit It Withheld NRE Payments ...............3

        3.   Samsung Refused to Admit It Received Netlist's Demand Letter .................................................................................................4

    B.   Netlist Did Not Waive or Abandon Its Right to Proper RFA Responses .....................................................................................................5

    C.   Netlist's Motion Is Procedurally Proper and Timely ...............................7

    D.   Netlist's Fee Summary Is Well Supported and Conservative ..................8

III. CONCLUSION ..................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Benson Tower Condo. Owners Association v. Victaulic Co.*,
   105 F. Supp. 3d 1184 (D. Or. 2015) ................................................................ 7

*Conlon v. United States*,
   474 F.3d 616 (9th Cir. 2007) ............................................................................ 3

*Dennis Fugnetti Photography Tr. v. Bird B Gone, Inc.*,
   2021 WL 3660755 (C.D. Cal. July 14, 2021) ................................................. 7

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
   377 F. App'x 665 (9th Cir. 2010) .................................................................... 6

*Hoffman v. Constr. Protective Servs.*,
   541 F.3d 1175 (9th Cir. 2008) ..................................................................... 1, 8

*Johnson v. Hooters, Inc.*,
   2020 WL 8614574 (D. Nev. Apr. 16, 2020) ................................................... 1

*Johnson v. Sandhu*,
   2015 WL 429673 (E.D. Cal. Feb. 2, 2015) ..................................................... 7

*Keithley v. The Home Store.com, Inc.*,
   2008 WL 2024977 (N.D. Cal. May 8, 2008) .................................................. 7

*Marchand v. Mercy Med. Ctr.*,
   22 F.3d 933 (9th Cir. 1994) .......................................................................... 2, 6

*Oculu, LLC v. Oculus VR, Inc.*,
   2015 WL 12720305 (C.D. Cal. May 8, 2015) ................................................ 8

**RULES**

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................... 8

Fed. R. Civ. P. 36 ........................................................................................... 2, 3, 6

Fed. R. Civ. P. 37 ........................................................................................ 1, 6, 7, 8

## I. INTRODUCTION

Netlist is not seeking to "re-litigate what are essentially discovery disputes." Dkt. 294 at 6. Netlist is seeking sanctions because Samsung refused to admit basic facts *during* discovery. Samsung's opportunity to admit facts in its possession and not subject to reasonable denial passed long ago. Samsung's refusal forced Netlist to unnecessarily pursue discovery and prove those facts *after* fact discovery closed.

Samsung's procedural objections are incorrect. Both the Notes to Rule 37 and case law affirm that Rule 37(c)(2) motions typically are filed *post-trial*. This is because the wronged party typically only can "[prove] . . . the matter true," as Rule 37 requires, late in litigation. Courts often can determine only after trial whether "the admission sought was of no substantial importance" or whether "the party failing to admit had a reasonable ground to believe that it might prevail on the matter." Fed. R. Civ. P. 37(c)(2)(B)–(C). Samsung is also wrong to assert that Local Rule 37-1 applies. *See, e.g., Johnson v. Hooters, Inc.*, 2020 WL 8614574, at *3 (D. Nev. Apr. 16, 2020) ("the Ninth Circuit noted that California's local rules required a meet and confer prior to filing motions relating to discovery. It concluded, however, that motions for sanctions are not 'motions relating to discovery.'") (citing *Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1179 (9th Cir. 2008)).

Sanctions are appropriate here. Samsung either evaded responding to the RFAs, and/or failed to respond truthfully to them. Samsung could have corrected, supplemented, or revised its responses—as Netlist repeatedly requested—but did not. Samsung's obstruction required Netlist to expend considerable resources identifying evidence, examining witnesses, and otherwise proving points that admissions to the RFAs would have avoided. Samsung tries to offset the weight of its actions by complaining that Netlist spent too much time proving the facts Samsung should have admitted. Samsung even asserts that these undisputed facts are "of no substantial importance" despite their being the basis for the Court's summary judgment rulings. Samsung's generalized accusations cannot rescue it from being sanctioned.

## II.   ARGUMENT

### A.   Samsung's Responses to Netlist's RFAs Lacked Good Faith

Remarkably, Samsung concedes that the RFAs here pertain to "a few *relatively straightforward* issues." Dkt. 294 at 10 (emphasis added).  Yet, Samsung did not admit these "relatively straightforward issues."  Samsung claims that "the sum and substance" of its responses were sufficient. *Id.* at 11.  But the Federal Rules do not permit a party to make up its own alternative statements to which it will respond. Rule 36 requires a party to "admit" or "specifically deny [the RFA] or state in detail why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(4). Even when denying, the answering party "must fairly respond to the substance of the matter." *Id*.  Samsung's boilerplate responses that neither clearly admit nor deny Netlist's specific RFAs do not meet the plain requirements of the Federal Rules.

####    1.   Samsung Refused to Admit Facts about Capped Supply to Netlist

Samsung's deficient responses required Netlist to prove particular facts that were highly relevant to establishing the materiality of Samsung's breaches and the breadth of harm they caused.  For example, Netlist sought more than Samsung's generic response that it "*indicated routinely to Plaintiff… that it is unable to support every request for products.*"  Rule 36 mandates the answering party to "specify the part admitted and qualify or deny the rest," and even when denying, "fairly respond to the substance of the mater."  Fed. R. Civ. P. 36(a)(4).  A limited admission only that Samsung "is unable to support every request for products," is legally equivalent to denying the remaining details the RFA seeks.  Having intentionally provided limited admissions only to certain *aspects* of RFAs (and effectively denying the remainder of the RFAs), Samsung cannot now claim that its statements were "technically true" and thus avoid the consequences. *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 937 (9th Cir. 1994) (a defendant cannot give misleading answers that significantly affected the cost of litigation without being liable for attorney's fees).

Samsung's vague and limited responses leave many questions unanswered. Does "routinely" mean once per year, per quarter, or per week? Does "unable to support every request" mean that Samsung in fact supported 99% of the requests, or just 1%? And if the answer to that question varies over time, how so?

Netlist sought to put such questions to rest and demonstrate material breach by proving that Samsung systematically imposed a cap, limit, or allocation on the amount of products Netlist could purchase (RFA Nos. 27, 28, 29, 30, 34, 35), that those limitations existed during multiple, specific time periods (RFA Nos. 27, 28, 29), that Samsung imposed a "zero allocation" on Netlist (RFA Nos. 30, 31), that Samsung informed Netlist of its "zero allocation" policy (RFA No. 32), and that the violations continued after Netlist offered Samsung an opportunity to cure by sending a letter to Samsung (RFA Nos. 39–41). These were straight-forward facts that Samsung failed to admit *but ultimately did not dispute* at summary judgment.

Samsung's assertion that "Netlist already knew that Samsung did not fulfill all of its orders" (Dkt. 294 at 21) is a strawman. "The very purpose of the request is to ascertain whether *the answering party is prepared* to admit or regards the matter as presenting a genuine issue for trial." Fed. R. Civ. P. 36 Advisory Committee Notes to 1970 Amend. (emphasis added). Admissions save resources because, once admitted, matters are "conclusively established unless the court on motion permits withdrawal or amendment of the admission" and "may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

### 2. Samsung Refused to Admit It Withheld NRE Payments

Samsung denied RFA No. 7, which asks Samsung to "admit that Samsung withheld $1,320,000 from the $8 million NRE fee to be paid to Netlist under the agreement." Dkt. 288-10 at 5. Incredibly, Samsung flips the narrative and says that it "*admitted* the substance of the request." Dkt. 294 at 12 (emphasis added). Samsung now says that it *denied* RFA No. 7 because it "implies that Samsung withheld *and then kept* the $1,320,000," *id.*, but the RFA states or suggests no such thing. One struggles

to understand Samsung's interpretation of "withheld" or how Samsung's *denial* is the same as *admitting* "the substance of the request."

Similarly, Samsung claims it denied RFA No. 46 because "the Tribunal never found that Samsung's withholding was unnecessary," but only that Netlist was entitled to a tax refund. Dkt. 294 at 13. Samsung creates distinction without a difference. The Tribunal's ruling hinged on whether Korean law justified withholding taxes from the NRE fee as a royalty income. The Tribunal determined that it did not. *See* Dkt. 144-7 [PMSJ Ex. 13] at NL108752, NL108759–8760. Samsung thus failed to "fairly respond to the substance of the matter" as required by Rule 36(a)(4).

### 3. Samsung Refused to Admit It Received Netlist's Demand Letter

Netlist asked Samsung to confirm specific facts about the letters and emails Netlist sent to Samsung in May and June of 2020, and whether Samsung responded to those specific communications. For example, RFA No. 50 asks Samsung to "admit that, by June 14, 2020, Samsung had received Netlist's letter dated May 27, 2020, in which Netlist asserted that Samsung had breached the Agreement." Dkt. 288-9 at 8. Samsung flatly refused to properly respond, stating instead, "admit only that *a letter* dated May 27, 2020 was received by Defendant's mail room and returned to sender the next day." Dkt. 288-12 at 22 (emphasis added). This statement does not acknowledge whether the letter was from Netlist or identify the sender or the content of the letter. In yet another attempt to rewrite history, Samsung now claims that it answered "truthfully… by admitting that *Netlist's May 27 letter* had been delivered to its mail room but returned to sender." Dkt. 294 at 22. But that is not what Samsung's RFA responses say. Rather, Samsung responded elsewhere that "the date on which Defendant received the letter *(or whether it was received at all) cannot be determined*." Dkt. 288-13 at 35 (emphasis added).[1]

---

[1] Samsung's supplemental response to RFA No. 52 (Dkt. 288-9 at 8) is mislabeled as No. 47 (*see* Dkt. 288-13 at 35).

Samsung also denied RFA Nos. 53–55, and, on reflection, states that it "understood that the subsequent communications between Samsung, Netlist, and their counsel *regarding the conduct of the litigation… constituted a response*" to Netlist's May 2020 letter and that "Samsung's *post-litigation conduct* was not of substantial importance to Netlist's claims." See Dkt. 294 at 23. RFA Nos. 53–55 ask whether Samsung responded to Netlist's May 27, 2020 letter, not about general communication between parties and their counsel. In addition, RFA No. 54 specifically asks whether Samsung responded to Netlist's letter *before Samsung was served the Complaint*. See Dkt. 288-9 at 8 (asking whether Samsung had responded by June 15, 2020). Thus, Samsung's claim that "counsel's subsequent correspondence" regarding the litigation justified its denials of straightforward factual statements is simply unavailing.

**B.     Netlist Did Not Waive or Abandon Its Right to Proper RFA Responses**

Samsung repeatedly suggests that its objections to the RFAs at issue are either proper in their own right, or that the RFAs at issue were somehow "held objectionable" by Magistrate Judge Spaeth. Dkt. 294 at 7. Neither contention is correct.

As to the latter, Samsung represents that "Magistrate Judge Spaeth confirmed that Samsung's responses to the Supply RFAs were adequate," and that a ruling in Netlist's favor here would disturb "prior rulings by the Magistrate Judge." Dkt. 294 at 7, 11–12. But Samsung does not cite any transcript or order to support this sweeping proposition. And Netlist is unaware of any order or statement by Magistrate Judge Spaeth that supports Samsung's representation. See LaMagna Decl.¶¶ 4–5.

Nor does examining Samsung's objections in their own right help Samsung. Samsung's Opposition fails to respond to the specific objections that Netlist addressed in its opening papers. Dkt. 288 at 19. Nowhere does Samsung describe to this Court a single objection to a single RFA that Samsung asserts is well-founded. None are.

Samsung objected to several RFAs claiming they seek legal conclusions. *See, e.g.*, Dkt. 288-10 at 4–5, 7 (RFA Nos. 6, 15); Dkt. 288-12 at 20, 22–23 (RFA Nos. 46, 50, 52–53). But, on its face, Rule 36(a)(1)(A) expressly allows parties to seek

admissions of matters related to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). The Advisory Committee Notes (1970) even clarify that Rule 36 "eliminates the requirement that the matters be 'of fact.'" In any event, those RFAs asked Samsung to confirm specific facts, not legal conclusions. RFA No. 6 asked whether Samsung supplied products to other companies in the same quarters that Netlist's orders were unfulfilled. Dkt. 288-8 at 4. RFA No. 46 asks whether the Korean Tax Tribunal made a particular decision. Dkt. 288-9 at 7. RFA Nos. 50, 52, and 53 ask whether Samsung received a specific letter or responded to it.

As another example, Samsung "objected" to facts that do not exist in the original RFAs. For example, Samsung refused to respond to RFA Nos. 13–15 on the basis that it "characterizes any communication by Netlist as a valid notification of breach," even though no such words exist in the RFAs. Dkt. 288-10 at 7.

Unwilling to defend its own objections, Samsung claims that Netlist's prior failure to obtain a ruling on those objections somehow shield them from scrutiny now. Dkt. 294 at 15. This is plainly wrong. *See Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 673 (9th Cir. 2010) ("[A] requesting party's 'failure to move for an order concerning the [other party's] objection [to the RFA]' does not bar him from later recovering expenses. . . .") (quoting *Marchand*, 22 F.3d at 938). Rule 36 does not provide for—much less require—a pretrial hearing on whether the response is warranted by the evidence thus far accumulated. *See* Fed. R. Civ. P. 37 Advisory Committee Notes to 1970 Amendment ("Rule 36 provides the mechanism whereby a party may obtain from another party in appropriate instances either (1) an admission, or (2) a sworn and specific denial, or (3) a sworn statement 'setting forth in detail the reasons why he cannot truthfully admit or deny.' If the party obtains the second or third of these responses, in proper form, Rule 36 does not provide for a pretrial hearing on whether the response is warranted by the evidence thus far accumulated.").

Thus, courts hold that a pretrial motion is not a prerequisite to relief under Rule 37(c)(2). *Marchand*, 22 F.3d at 938 (a requesting party is not required to oppose an

answering party's objections before moving for sanctions); *Dennis Fugnetti Photography Tr. v. Bird B Gone, Inc.*, 2021 WL 3660755, at *2 (C.D. Cal. July 14, 2021) (because Rule 36(a)(6) does not authorize the court to inquire into the substantive accuracy of the denial, the remedy to the propounding party is "a post-trial motion under Rule 37(c)(2)") (citations omitted).[2]

Finally, Samsung falsely asserts that certain RFAs "superseded" prior RFAs. But Netlist never stated that any RFAs would supersede others. LaMagna Decl. ¶¶ 6–7. Instead, as noted in its opening papers, Netlist issued multiple variations of RFAs in the hope Samsung might stop denying plainly factual statements based on unwarranted semantic distinctions. *Id*. at ¶ 6; Dkt. 288 at 8–9. Yet Samsung's obstruction persisted.

**C.     Netlist's Motion Is Procedurally Proper and Timely**

Samsung's timeliness argument ignores the Notes to Rule 37. Dkt. 294 at 6. "Rule 37(c) is intended to provide *posttrial relief* in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof *at trial*." Fed. R. Civ. P. 37 Advisory Committee Notes to 1970 Amendment (emphasis added). A requirement of Rule 37(c)(2) is that the requesting "party *later proves* a document to be genuine or the matter true." Fed. R. Civ. P. 37(c)(2) (emphasis added); *see also Johnson v. Sandhu*, 2015 WL 429673, at *2 (E.D. Cal. Feb. 2, 2015) (finding that Rule 37(c)(2) applies because defendant proved facts underlying RFAs in summary judgment). Without the benefit of later proceedings, the Court could not determine under Rule 37(c)(2) whether "the admission sought was of no substantial importance." *See Keithley v. The Home Store.com, Inc.*, 2008 WL 2024977, at *3 (N.D. Cal. May 8, 2008) (citation omitted).

---

[2] Samsung's reliance on *Benson Tower Condo. Owners Association v. Victaulic Co.* is misplaced. *See* Dkt. 294 at 14–15. *Benson* notes that, *if* a propounding party never opposes the objections, that fact *could* be considered in a sanction motion, but that, standing alone, it is insufficient to deny a motion for sanction. 105 F. Supp. 3d 1184, 1197 (D. Or. 2015). The court in *Benson* thus decided the sanction motion on a substantive, not a procedural, basis. *Id*. Here, Netlist repeatedly objected to Samsung's improper responses during fact discovery, so *Benson* is not applicable.

Samsung also is wrong to suggest Rule 37(c)(2) *only* applies if "subsequently discovered information" proves that the failure to admit was in bad faith. Dkt. 294 at 14. To the contrary, Rule 37(c)(2) applies equally when the failure to admit was in defiance of then *known* facts. Rule 37(c) "is silent with respect to the statement of reasons for an inability to admit or deny," because "the sanction provided in Rule 37(c) should deter all unjustified failures to admit." Fed. R. Civ. P. 37 Advisory Committee Notes to 1970 Amendment. If Samsung "subsequently discovered" that its failure to admit was unsupported, it had an obligation to correct its response. Fed. R. Civ. P. 26(e)(1)(A). But the sanction should be greater here, where Samsung knew *all along* there was no basis for failing to admit the RFAs.

Lastly, Samsung's attempt to invoke an inapplicable local rule is equally deficient. Courts within this Circuit have and routinely held the L.R. 37 procedural requirements inapplicable in motions for sanctions under Fed. R. Civ. P. 37. *See, e.g., Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 12720305, at *2 (C.D. Cal. May 8, 2015) (reading *Hoffman*, 541 F.3d at 1179, as "finding 'motion relating to sanctions pursuant to Rule 37' not subject to Local Rule 37-1's conference requirement").[3]

### D. Netlist's Fee Summary Is Well Supported and Conservative

Samsung baselessly says that Netlist "did not even bother going through its billing records to segregate work that had no connection to the purportedly deficient responses" and that it "applied arbitrary multipliers." Dkt. 294 at 28. Before signing their respective declarations, *every* Gibson Dunn lawyer personally reviewed *every* relevant time entry that forms the basis of the pending fee request. The task of reviewing and apportioning time entries was *not* delegated or automated in *any* manner. Each lawyer reviewed his or her own timesheets, making every effort to

---

[3] Samsung inaccurately cites *Hoffman* as creating a distinction between Rule 37(c)(1) and (c)(2). Dkt. 294 at 17 n.7. But *Hoffman* distinguished between motions to compel discovery and motions for sanctions, holding that "[a]ny local rule requiring a conference prior to the court's imposition of sanctions under Rule 37(c) would be inconsistent with Rule 37(c) and, therefore, unenforceable." 541 F.3d at 1179.

allocate only those tasks incurred to prove up the facts at issue in this motion. Where the time entries themselves would not have sufficient information to determine what amount of time was expended on the facts at issue here, the participating lawyers again made a collective effort to allocate only a percentage of the applicable entry for recovery pursuant to his motion. No part of the effort to identify total time or to allocate the applicable percentage was "arbitrary." *See generally* Dkt. 288-1 to 288-7.

Netlist also made significant efforts to segregate time spent on relevant discovery periods. Samsung served deficient responses as early as April 19, 2021. Dkt. 288-10. Netlist began working to prove the facts related to those RFAs as early as April 2021. In an effort to be conservative, Netlist decided not to seek any fees for the month of April and applied a significantly lower percentage to May, June, and the first part of July. The lower percentage accounts for the lower number of deficient RFA responses Netlist had to prove during that time, and this is a conservative estimate because Samsung served four more sets of RFA responses in the first half of July.

Samsung cites no authority for its argument that the lodestar method is *required* here. Dkt. 294 at 6. Rule 37(c)(2) makes no mention of a lodestar calculation, and Samsung does not cite to a single court in this Circuit *requiring* a lodestar calculation in the context of Rule 37(c)(2). And even if such method were applicable, Netlist has demonstrated that its hourly rates and the amount of work performed were reasonable.

Samsung also attempts to obscure the efforts that Netlist and its counsel made to litigate this case in a cost-effective manner, misleadingly stating that "Netlist asks the court to authorize rates of $845 to $1,370 per hour" and that "Gibson Dunn spent 2,791.14 attorney hours solely due to the discrete factual issues implicated by Samsung's responses to these RFAs." Dkt. 294 at 24, 28. Gibson Dunn lawyers did *not* spend 2,791 attorney hours on the factual proof at issue here. The overwhelming number of claimed hours (2,447) were from contract attorneys who reviewed the voluminous documents that Samsung produced, at an average rate of $67.82/hour. Samsung does not challenge the hourly rates of these contract attorneys or argue that

the amount of time they spent was not commensurate with the volume of documents produced and Netlist used in depositions and summary judgment.

Samsung baselessly claims that "Gibson Dunn intended to review all of the available documents no matter what responses were proffered by Samsung." Dkt. 294 at 28 n.10. Samsung is incorrect. Because Samsung produced the vast majority of its documents within a few weeks of the last day to file a motion for summary judgment, Dkt. 288-2 (Lee Decl.) ¶ 7, Netlist's counsel had *no ability* (let alone a plan) to review all of Samsung's production. Instead, Netlist's counsel employed targeted searches in an effort to find the key documents. *Id*. Samsung's refusal to admit the RFAs played a direct role in Netlist's selection of terms to search for, the actual documents that Netlist would review, and the actual time that Netlist's lawyers would expend.

To be sure, Netlist also seeks reimbursement of certain work performed by its lawyers at Gibson Dunn, but those hours (343.64) are a small proportion (about 12%) of the overall hours claimed. Gibson Dunn's rates are commensurate with the rates of its competitors in the Los Angeles and national market, including Samsung's counsel O'Melveny & Myers. As outlined in detail in the individual declarations of each Gibson Dunn attorney who performed relevant work, those hours were expended on more specialized tasks such as preparing and taking depositions, and preparing the summary judgment papers. Those tasks also utilized the specialized skills of certain Gibson Dunn attorneys, including those of two Korean speakers (because Samsung produced extensive Korean language documents), as well as a New York attorney (because the JDLA specifies New York law).

### III. CONCLUSION

For the reasons stated above, Netlist respectfully requests that the Court award it $657,045.02 in fees and costs under Rule 37(c)(2), and any other fees incurred in bringing this motion.

| | | |
|---|---|---|
| 1 | Dated: January 31, 2022 | GIBSON, DUNN & CRUTCHER LLP |

By: /s/ *Jason C. Lo*
Jason C. Lo
333 South Grand Avenue
Los Angeles, CA 90071
213.229.7000
jlo@gibsondunn.com

Attorneys for Plaintiff Netlist Inc.