UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


| | | |
|---|---|---|
| NETLIST, INC, | ) | CASE NO: 8:20-CV-00993-MCS-ADSx |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Santa Ana, California |
| | ) | |
| SAMSUNG ELECTRONICS CO, LTD, | ) | Tuesday, July 27, 2021 |
| | ) | |
| Defendant. | ) | |


INFORMAL DISCOVERY CONFERENCE


BEFORE THE HONORABLE AUTUMN D. SPAETH,
UNITED STATES MAGISTRATE JUDGE



**APPEARANCES:**          SEE PAGE 2


Court Reporter:          Recorded; AT&T; Wave


Courtroom Deputy:          Kristee Hopkins


Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

For Plaintiff:                RAYMOND A. LAMAGNA, ESQ.
                             MARISSA MULLIGAN, ESQ.
                             Gibson Dunn & Crutcher, LLP
                             333 S. Grand Ave.
                             Los Angeles, CA 90071


For Defendant:                EKWAN E. RHOW, ESQ.
                             MARC E. MASTERS, ESQ.
                             JUMIN LEE, ESQ.
                             Bird Marella Boxer, et al.
                             1875 Century Park East
                             23rd Floor
                             Los Angeles, CA 90067

1            **Santa Ana, California; Tuesday, July 27, 2021**

2                        **(Remote appearances)**

3                         **(Call to Order)**

4         **THE CLERK:**  Calling Case SA CV-20-993, *Netlist, Inc.*

5    *versus Samsung Electronics Company*.

6         Counsel, please state your appearances starting with

7    Plaintiff.

8         **MR. LAMAGNA:**  Raymond LaMagna of Gibson Dunn and

9    Crutcher on behalf of Plaintiff Netlist, Inc., and I'm joined

10   by my colleague, Marissa Mulligan.

11        **MR. MASTERS:**  Good afternoon, Your Honor.  Marc

12   Masters of Bird Marella on behalf of Samsung, and I'm joined by

13   my colleagues, Ekwan Rhow and Chris Lee.

14        **THE COURT:**  All right.  Good afternoon, everybody.

15        So hey, I assume that you now know that you have a

16   new discovery judge in this case.  I understand that you guys

17   were pretty active with Judge McCormick and so I set this

18   hearing so that I could make sure that I know everything, all

19   of the matters that are currently outstanding that we're going

20   to need to schedule or address.

21        So I'm not sure who wants to start with that process.

22        **MR. LAMAGNA:**  I'm happy to lead off.  This is Ray

23   LaMagna for Plaintiff Netlist.  I don't know if it helps

24   perhaps Your Honor to go through them at a high level first and

25   then address any questions or if you want to just sort of move

4

1  through some of the most exigent issues and discuss them more

2  fulsomely to start.

3            **THE COURT:**  let's start at the high level first.

4            **MR. LAMAGNA:**  Okay.  So and this is not specifically

5  in order of importance but we have a very important dispute

6  that counsel for Defendants will not allow all counsel of

7  record to view all of the documents that they are producing.

8  It's one.

9            A separate issue we submitted yesterday to Your Honor

10 proposed protective orders that are 99 percent the same.  There

11 is one discreet issue on which the parties disagree that we

12 could probably resolve today so that the Court could enter a

13 protective order of whichever of those the Court prefers or

14 thinks is appropriate.

15           **THE COURT:**  Okay.

16           **MR. LAMAGNA:**  We have some depositions coming up

17 scheduling -- we were scheduling imminent, like in the next

18 week we'll be starting depositions.  On those items we may have

19 some sort of more ministerial disputes over how the depositions

20 should proceed, that's sort of a more minor issue.

21           For the hearing last week with Judge McCormick that

22 unfortunately he wasn't able to complete -- this was on I think

23 it was last Monday, so eight days ago -- we had before the

24 Court both sides had argued rather vigorously as to what the

25 scope of document production should be in the case and had

1    submitted dueling orders to him on I believe it was the 15th

2    and 16th respectively.  The Court was going to consider the

3    parties' arguments on those orders and then enter either one of

4    them or some variant as the Court saw fit.  That is I think a

5    very priority item because of the nature of the upcoming

6    depositions that we have.

7            The Court should also be aware that we had dispute as

8    to whether or not there would be two depositions that Defendant

9    Samsung asserted an apex defense to.  Those should be fully

10   briefed by I guess midnight tonight.  Plaintiff submitted its

11   opening papers.  Judge McCormick requested no more than

12   10 pages in ordinary briefing format, which we submitted last

13   Tuesday, and then it was the opposition on that is due today

14   from Defendants.  We were following Your Honor's order that any

15   deadlines that had been previously set or obligations from

16   Judge McCormick be carried over so that's why we're on that

17   schedule for that.

18           We have a dispute as to -- and I apologize for the

19   list, Your Honor.

20           There are a fair number of interroga -- I'm sorry --

21   there are a fair number of 30(b)(6) deposition topics to which

22   Defendant has not agreed to respond, so we have depositions

23   that will be pending shortly and we will have to have that

24   resolved shortly.

25           There are some other items that are listed in our

1    July 16th letter to Judge McCormick.  There are a couple of

2    marginal -- shall I say "second-tiered disputes" that we have

3    regarding the scope of interrogatory responses, requests for

4    admissions, and requests for production, but I will say that

5    Defendant has just today in fact served some additional

6    discovery responses, so to the extent we have disagreement on

7    those topics, we probably need to confer again and look at the

8    discovery responses that in some cases were just served in the

9    last hour or so.

10          Lastly, I failed to omit -- I apologize, we were

11   discussing earlier an order that was submitted, dualling orders

12   that were submitted to Judge McCormick back on the 15th and

13   16th.

14          One of the issues that had been raised previously was

15   a different set of interrogatories that we contended the

16   Defendant needed to respond to and they disagreed.  Judge

17   McCormick sided with Plaintiff on that.  We had put into the

18   order that we had submitted to the Court on the 15th a line

19   item on that just to memorialize that.  Since then, Defendant

20   has responded to those; and again, I can't force them to write

21   whatever I want them to write.  Our only concern is that they

22   were to respond with the knowledge that they had available to

23   them at the time.  Obviously new discovery can come out in the

24   future.  And we want to make sure that we are not being

25   sandbagged, essentially, that if this is their response, then

1  we think that they should be held to that response and not get

2  to later supplement with the actual further facts that they are

3  aware of now that they have withheld during the course of

4  discovery.

5          By in large I think I've gone through quite a laundry

6  list and it may make sense, Your Honor -- and I'll certainly

7  open it up to Opposing Counsel to see if I've missed something.

8  It may make sense for us to just step through a few of the

9  higher priority items, given timing in more detail, but I think

10  that we're probably not going to obviously address the details

11  of that entire list today.

12          **THE COURT:**  Thank you.  Let me hear from Defense

13  Counsel.

14          What I have is a list of seven items.  Perhaps you

15  can tell me if you'd describe anything differently or if you

16  have items to add, or that items you believe should be removed

17  from that list.

18          **MR. MASTERS:**  Yes, Your Honor.  This is Marc Masters

19  speaking.

20          I think Counsel has accurately listed the items in

21  terms of what is on the table for discussion.  We obviously

22  have different takes on many of those items and we're happy to

23  discuss in whatever order the Court would prefer.

24          **THE COURT:**  Okay.  And just so that I'm clear, as I

25  understand it, the parties have largely agreed to proceed with

1    their discovery disputes with Judge McCormick at least through

2    his informal discovery procedures, right?  And I'm guessing --

3    please confirm that that's the case.  And then I guess I should

4    ask for you to confirm that that is how you would like to

5    continue to proceed when it comes to now that you have a

6    different judge.

7          **MR. LAMAGNA:**  So speaking for Plaintiff, Your Honor,

8    this is Ray LaMagna of Gibson Dunn.

9          Yes, you are correct, we were in the informal

10   tracking with Judge McCormick.  And I think given that

11   discovery closes in just over two and a half weeks on the

12   current schedule with summary judgment contemporaneously due, I

13   think that that is the wise approach to continue on that same

14   course, especially given the range of issues, many of which I

15   think are probably smaller issues that Your Honor could just

16   give us an indication left or right as to what you want to do.

17          **THE COURT:**  Okay.

18          **MR. MASTERS:**  Your Honor, this is Marc Masters on

19   behalf of Samsung.

20          We agree.  I think that the informal process should

21   be adhered to going forward.

22          **THE COURT:**  Okay.  All right.  Now so when I look at

23   this list -- at least my notes were Item Number 1, I wrote,

24   "Not all counsel is being allowed to review documents being

25   produced."  I have a feeling I mis-summarized that.  Does

1    someone in -- but then I do note that that one was considered

2    to be urgent.  Did I misstate that?

3             **MR. MASTERS:**  No, Your Honor.

4             **MR. LAMAGNA:**  This is -- I'm happy to let Opposing

5    Counsel lead off with this.  This is Ray for Plaintiff; but no,

6    you did not misstate that.

7             **MR. MASTERS:**  Your Honor, this is Marc Masters on

8    behalf of Samsung, I'll address that issue.

9             During the entire course of this litigation, Netlist

10   has been represented by Gibson Dunn, a very large and quite

11   capable law firm.

12            Just recently, they have associated-in counsel from

13   Irell.  And the concern that we have is that that same counsel

14   is also currently lead counsel in a lawsuit brought by Netlist

15   against Google for IP infringement and the basis for that claim

16   is a product that Samsung provides to Google.  And so our

17   concern is that the information that is gleaned from our

18   lawsuit could be used outside of this lawsuit which we believe

19   would be improper.

20            Now, there are and I think in a moment there's going

21   to be some discussion about the protective order and I think

22   that there is a provision in the protective orders that

23   requires counsel not to use information and documents obtained

24   in this litigation outside the litigation.  But our concern is

25   that it would be difficult, if not impossible, for the Irell

1   attorney to compartmentalize what he learns here and not use it

2   in other litigation.  And so we've -- we noted that the late

3   timing of his entry into this case and his lead involvement in

4   the other lawsuit, and our client and we are very concerned

5   about the potential for misuse of the information gleaned in

6   this litigation.

7           **THE COURT:**  Okay.

8           **MR. LAMAGNA:**  Would you like me to respond, Your

9   Honor, on behalf of Plaintiff?

10          **THE COURT:**  Yes.  Please.

11          **MR. LAMAGNA:**  So the factual predicate of that is

12  correct that as you may see from the docket, Defendant had

13  brought a Rule 12(c) motion I believe seven months after the

14  pleadings had closed.  And to assist initially with that

15  briefing, the -- my client brought in an extra lawyer from

16  Irell and Manella who appeared who's an officer of the Court.

17  We have an agreement under Judge McCormick that all production

18  right now would be treated on an attorneys-eyes-only basis and

19  used only for this litigation.  That particular lawyer at

20  Irell, that single lawyer, reaffirmed that he would be bound by

21  that agreement.  He's an officer of the Court.

22          We asked as part of the briefing for that motion or

23  our opposition which was due yesterday and filed yesterday,

24  that we be allowed since that lawyer, Mr. Sheasby, at Irell and

25  Manella was assisting in that document, that he be allowed be

1  review evidence that would be cited in that document or

2  submissions, exhibits that would be allowed and we identified

3  those exhibits by specific number to Defendant.  They had no

4  technical data in them about any of their products, they were

5  solely discussion about Netlist and this contract.  They still

6  refused to allow him to access that.

7        We had to then bifurcate our team into two halves.

8  We have asked Opposing Counsel to bring a motion that is

9  subject to a Rule 11 obligation or to paper their objection,

10 either to Your Honor on paper, as to what it is that their

11 objection is or to bring a motion to disqualify if they have

12 one before Judge Scarsi.  They have declined to do so.

13       To be clear, this case is about a contract dispute

14 between the parties and a joint development agreement between

15 Netlist and Samsung and whether or not Samsung would supply

16 product to Netlist.

17       The technical details of Samsung's products -- I have

18 no idea what product is in suit in the Google case but whatever

19 product it is, the technical schematics, research information

20 for that product are simply not part of discovery in this case.

21 Right now what Opposing Counsel is doing is blocking counsel of

22 record and an officer of this court from reviewing documents

23 that are produced in a case in which that outside counsel is

24 counsel of record accepted and admitted in this case.  And I

25 don't know that there is any precedent for that or any

12

```
 1    justification for it and so we would ask if they want to bring

 2    a motion to disqualify Mr. Sheasby, they should bring that

 3    motion; otherwise, he should be allowed to see documents.

 4              THE COURT:  Mr. Masters?

 5              MR. MASTERS:  Yes, Your Honor.  So let me just

 6    clarify something.

 7              Counsel just characterized the joint agreement in

 8    this case as a supply contract but in fact it has to do with

 9    patent licensing which is an IP issue which is similar to what

10    is at issue in the other litigation so there is an overlap

11    here.  And our concern is that whatever Mr. Sheasby learns in

12    this case, it would be impossible for him, for anyone -- not

13    just him -- for anyone in his position to compartmentalize that

14    information in his mind such that it would not influence or

15    taint anything that's occurring in the other litigation.  And

16    so we do have a genuine real concern about his late entry into

17    this case, a case that does deal with a contract that at its

18    heart has to do with patent licensing.  And so that's the

19    concern that we have.  And we asked them and it appears that

20    they've followed our request to block off Mr. Sheasby from

21    information documents in this case until the Court could

22    address the issue and so we wanted to raise it.  We were

23    originally planning to raise it earlier with the prior

24    magistrate judge before his recusal and now we're raising it

25    with Your Honor.
```

1           **MR. LAMAGNA:**  Your Honor, if I could just briefly

2    respond on behalf of Plaintiff.  This is Ray again.

3           **THE COURT:**  Sure.

4           **MR. LAMAGNA:**  I am a career patent litigator.  There

5    is -- I don't know any details of the case against Google, I'm

6    not involved in that case.  I assume that it is a patent

7    infringement case and Google's licensing and their -- and so

8    forth may be at issue.

9           It is true that this case also involves a patent

10   license and Mr. Sheasby obviously has a copy of that license,

11   it's a copy that our client has.  This is not their production,

12   it's our own document.  So we certainly have a copy of that

13   without this.

14          I hear Opposing Counsel saying that theoretically

15   there should be something in his knowledge that he sees and he

16   can't un-ring the bell and he can't bring it out of his head.

17   What I don't hear is any specific facts as to what that would

18   be.  It is true that at a high level, both cases involve

19   intellectual property.  They are both civil suits.  They are

20   both claims for say damages or something like that.  There are

21   certainly commonalities.  But what I don't understand is what

22   is the factual document that is secret to Samsung that they are

23   concerned that would somehow infect the Google case.  And if

24   that is their concern then I think that they can bring a

25   separate motion when that document appears in the case.  We

14

1  haven't seen it yet, it hasn't been produced, it hasn't come up

2  in this case.  This is an ethereal problem.  Then they could

3  bring a motion under Rule 26(c) and tell Your Honor why a

4  specific document or a specific group of documents should not

5  be circulated specifically to Mr. Sheasby and Defendant on that

6  basis and make that subject to Rule 11.

7          MR. MASTERS:  Or, Your Honor, what we could do is

8  build in another layer in the protective order that is AEO as

9  to Gibson only --

10          THE COURT:  I'm sorry.  And is this Mr. -- is this

11  still Mr. LaMagna?

12          MR. LAMAGNA:  No, this is --

13          MR. MASTERS:  I apologize -- I apologize, Your Honor.

14  This is Marc Masters responding to Counsel.

15          What I was suggesting is that we could build in a

16  second layer into the draft protective orders before you in

17  which we mark certain documents that we're concerned about with

18  a special AEO as to Gibson, allowing Gibson to see them.  And

19  then at that point, to the extent that Gibson believes that

20  they don't pose a problem, they can raise it with the Court as

21  per the terms of the protective order.

22          MR. LAMAGNA:  And Your Honor, again, I apologize.

23  This is Raymond LaMagna again on Gibson on behalf of Plaintiff.

24          THE COURT:  Uh-huh (affirmative).

25          MR. LAMAGNA:  That appears to be flipping the burden.

1   And with respect to yourself being a full employment program

2   for magistrates, if they believe that there is a particular

3   document that they are concerned about -- and so far there is

4   not one of these documents.  The documents that they refuse to

5   allow Mr. Sheasby to review were internal communications about

6   Netlist, had no products listed in them at all.  It was about

7   discussions about a contract and about Netlist's performance.

8            But setting that aside, on a forward-going basis, if

9   they think they have a problem, it is their burden to seek a

10  protective order.  And if they want to do that, they should,

11  and they should do that in a format that is governed by the

12  ethical obligations that require that to have a basis.  I

13  should not have to, Your Honor, when they designate god knows

14  how much discovery as in this tertiary category, I should not

15  have to run to this Court for each one of those documents to

16  somehow explain why they're wrong.  The burden is on them to

17  describe how they're right and generally Netlist has a First

18  Amendment right to select counsel of its choosing.  If they

19  don't like this counsel, they can bring a motion to disqualify

20  the counsel.

21           **THE COURT:**  All right.  Is there any further argument

22  on this matter?

23           **(No audible response)**

24           And I guess just so that I'm clear, is what I'm

25  dealing with specifically a -- is it a -- who's making the

1  request so that I make this decision?  And specifically, am I

2  being asked to deny something or am I being asked to grant

3  something?  And what I mean by that is, am I being asked to

4  grant a semi -- a protective order that precludes this

5  Mr. Sheasby from reviewing the documents or am I being asked --

6  I need somebody to tee up for me exactly what the ruling is

7  that you are -- that is being sought here.

8          **MR. MASTERS:**  Yes, Your Honor, this is Marc Masters

9  on behalf of Samsung.

10          What we're requesting in general broad terms is that

11  our materials are not shared with Mr. Sheasby, given his

12  involvement in the two cases and the overlap, the clear overlap

13  between the cases, one of which is based on a product sold by

14  Samsung to Google that allegedly is infringing a patent.  And

15  here, they have -- their argument in this case is that we're in

16  violation of a contract and therefore any further -- we no

17  longer have a valid license to the patent.  So there is a clear

18  overlap between the two cases and so we're asking that in

19  general terms.

20          But to narrow it for Your Honor, what we are

21  specifically requesting as a potential resolution to this is

22  that we have this second lawyer built into the protective order

23  so that we can mark those documents that we feel are

24  particularly at issue.  And then Gibson, if they have a good-

25  faith basis to challenge those documents as to why Mr. Sheasby

1   should be entitled to review those documents, they can bring

2   that up.  So that's the request that we're making.

3           **THE COURT:**  Okay.

4           **MR. LAMAGNA:**  And this is Ray again for Plaintiff.

5           I think just to clarify or sharpen that, this is

6   raised by Defendant in their July 16th letter to Judge

7   McCormick.  I take that to be a request for them for a

8   protective order so I think the burden is on them.  And Your

9   Honor would be ruling on granting a protective order or not,

10  but it's an unusual protective order insofar as it is an

11  anti-protective order over documents that we haven't seen and

12  therefore I don't think we have a basis for.

13          I don't think it should be within the grounds of the

14  stipulated protective order because the parties met and

15  conferred.  As we wrote in our submission to the courtroom

16  deputy last week, we have hammered out a protective order that

17  has one thing in it that the parties disagree on.  We did not

18  discuss this within the guise or meet and confer on putting

19  this into that document.  If Your Honor wants to rule on this

20  as a separate protective order, that's within Your Honor's

21  purview.

22          **THE COURT:**  All right.  I am ready to rule on this

23  matter based on the information that has been argued.

24          I do not agree that based on the arguments and the

25  facts that have been presented, that Mr. Sheasby should be

 1   precluded from reviewing the documents.  I'm not hearing any

 2   significant security concerns, any specific facts that lead me

 3   to be concerned about Mr. Sheasby maintaining his ethical and

 4   professional obligations, as well as obligations under the --

 5   you know, soon to be protective order; and specifically here,

 6   Mr. Masters, I believe that you said that you would be

 7   concerned about anyone being able to compartmentalize this

 8   information.  And if that was the standard that we looked at --

 9   which it's not -- then every IP lawyer who ever litigates

10   against Samsung would never be able to have another client.

11   And because you're not giving me any specific things to be

12   concerned about, any specific items, I tend to agree with the

13   arguments of Mr. LaMagna and so your request to preclude

14   Mr. Sheasby from viewing these documents is denied.

15           **MR. MASTERS:**  Okay.  Thank you, Your Honor, and let

16   me just clarify.

17           To the extent that we have specific concerns that

18   arise in the future, can we bring these up before Your Honor

19   without prejudice in light of this ruling?

20           **THE COURT:**  Yes.

21           **MR. MASTERS:**  Thank you, Your Honor.

22           **THE COURT:**  All right.

23           **MR. LAMAGNA:**  And this is Ray LaMagna for Plaintiff.

24           I believe our next priority issue would be the

25   parties doing orders that we had prepared for Judge McCormick

19

1  from about a week ago or so, and those were the submissions of

2  the 15th and the 16th I think respectively.

3          Plaintiff submitted a proposed order on the 15th and

4  I believe that Opposing Counsel responded with their own

5  version on the 16th.

6          **THE COURT:**  Okay.  So I am looking at the document

7  entitled "Proposed order granting Plaintiff's Motion to

8  Compel".  Is that one of the two that we're talking about?

9          "This matter came before the Court on Netlist's

10          request to compel responses regarding Interrogatories

11          10 to 11, 14 to 18," yada, yada?

12          **MR. LAMAGNA:**  That is the correct order.

13          And I should clarify that when we drafted this, Your

14  Honor, you'll see that there's a Romanette 2 in there.  We had

15  not had in hand yet Judge McCormick's order which it turned out

16  he had signed it, he just -- it hadn't been filed in the ECF.

17  And so for housekeeping, we included Romanette 2 but that

18  should be definitely redlined out, that's been addressed by a

19  separate order by the Court.  So we're looking at Romanette 1

20  and 3.

21          And I think as I said on Romanette 1, which is the

22  interrogatories, they have now responded.  The point that we

23  had made with the Court was that we wanted a response that

24  included all -- you know, all facts that are in -- you know,

25  these are various different interrogatories that asks for all,

20

1   you know, "What you know about X or Y," you know, those kinds

2   of interrogatories, and we wanted to make sure that what we

3   were getting was a response that included the facts that

4   they're aware of.  And I just want to make sure that that's

5   what we got.

6        They did serve a response on these, so we no longer

7   are asking I think for them to respond, I think the order can

8   stand as it is because we just want to make sure that that is

9   their complete response as to their present knowledge.

10       **THE COURT:**  Let me make sure I'm clear.  We're

11  talking about page 2, line 7, item little i?

12       **MR. LAMAGNA:**  Correct, the first little i, yes, Your

13  Honor.

14       **THE COURT:**  The language that says:

15       "Defendant is ordered to completely respond to

16       Interrogatories 10-11, 14-18 and 20 by identifying

17       any responsive facts in its possession, custody or

18       control."

19       **MR. LAMAGNA:**  Correct, Your Honor.  And those are the

20  ones as I believe we had previously addressed this with Judge

21  McCormick and we had taken the position that we wanted to get a

22  response that included all the facts that they are presently

23  aware of -- Obviously new things may come out in depositions,

24  et cetera.  And Defendant's position was that it wasn't soon

25  enough in the discovery process and they didn't -- since they

1    didn't have a complete answer yet, they wanted to hold off in

2    responding at all.  So the responses that were in front of the

3    -- Judge McCormick at the time were nonresponsive, if you will,

4    at all.

5         The Court disagreed with that position and agreed

6    with Plaintiff that we were entitled to a response that -- you

7    know, of whatever they knew as of now, at least, and they have

8    since responded.  And so I just want to clarify whether we

9    change the wording here a little bit or whatever that the

10   response that we got from counsel is of the facts that are in

11   their possession, custody or control, and the last day of

12   discovery I'm not going to get 20 more pages of interrogatory

13   responses with all of the facts that they are aware of sitting

14   here today but they just didn't include until after the last

15   day of discovery, for example.  That's what we're trying to

16   avoid.

17        **THE COURT:**  All right.  Didn't Judge McCormick

18   already rule on this issue?  Did he ask for there to be a

19   written order prepared with regard to this specific --

20        **MR. LEE:**  Your Honor, this is Christopher Lee.  I can

21   address that issue.

22        **THE COURT:**  Okay.

23        **MR. LEE:**  Your Honor, you're correct in that Judge

24   McCormick has already ruled on this.  It's not immediately

25   clear to me what the issue here is.  Judge McCormick ordered us

1   to supplement these responses.  We have since supplemented

2   these responses so I don't think there is a need for this to be

3   included in whatever proposed order Your Honor is considering.

4           To the extent that Opposing Counsel is asking whether

5   our responses are truthful and complete, I can represent to

6   Your Honor that they are indeed truthful and complete at the

7   time they were written.  To the extent that Opposing Counsel is

8   implying that we should not be allowed to supplement these

9   responses prior to the end of fact discovery, I think, (a),

10  Mr. LaMagna hasn't given Your Honor any legal basis for you to

11  impose such a restriction; and (b), I think such a restriction

12  will be highly problematic given that discovery is very much

13  still ongoing in this case.  We have not yet been able to take

14  a single deposition and the parties have been very actively

15  producing documents as recently as a few days ago.

16          **THE COURT:**  All right.  Mr. LaMagna, you'd like to be

17  heard?

18          **MR. LAMAGNA:**  Sure.  Thank you, Your Honor.

19          So the issue here is not -- I think I agree

20  completely with Opposing Counsel that they are entitled to

21  supplement with later identified facts.  The point that we

22  litigated and argued before Judge McCormick before was whether

23  they had to presently disclose what they know today or I guess

24  if you would prefer, a week ago when they -- or several days

25  ago when they provided us this -- their supplement.  So our

1   point being that Judge McCormick was of the belief that they

2   needed to give us the facts that are known to them now and that

3   they can supplement later to the extent they learn something

4   new and that's fine and that's all I want to confirm.  If

5   Counsel is telling me now that these are complete with what

6   they know as of the date of their having served them, that's

7   fine.  I just want to avoid being sandbagged with old facts at

8   a later date.

9          **THE COURT:**  Okay.  Here's my ruling on the issue at

10  least with regard to little item i.

11         I believe that Judge McCormick's oral ruling on this

12  matter should stand and I'm not hearing anything that would

13  give me cause to believe that I need to be issuing an order

14  based on his prior ruling for clarification on something at

15  least as it's described.  So I will not be including little i

16  in the proposed order.  If there ends up being a problem later

17  then we can address that in a motion if need be.

18         **MR. LAMAGNA:**  Thank you, Your Honor.

19         **THE COURT:**  Okay.  So --

20         **MR. LAMAGNA:**  So the main stay here is the third

21  item.

22         **THE COURT:**  Right, okay, and where are we on this?

23         **MR. LAMAGNA:**  So we have been -- just by way of

24  background, Plaintiff served our RFPs to Counsel I think it was

25  March 4th.  We gave them a two-week extension to respond

24

1  because they requested that we got back boilerplate responses

2  and no document production after 45 days.  We immediately

3  conferred and then began the alternative dispute process with

4  Judge McCormick by the end of April.  We've since been working

5  with him on a fairly long process of trying to get Samsung to

6  identify a basis for why it could not respond to the discovery

7  in the way that we had sort of requested or to the full scope

8  of certain discovery requests.

9              Just by way of a little bit more detail, one of the

10  things that Samsung had said that they wanted to do is they

11  said they wanted us to provide them with search terms and that

12  they would then look to see how many hit counts came up for the

13  search terms because they didn't want to over commit -- and

14  that's an understandable point -- and however, over the course

15  of about two months, Samsung failed to ever provide those

16  search terms so they never put forth in front of Judge

17  McCormick any specific evidence as to why our request was

18  unreasonable.

19              Judge McCormick then in the informal discovery

20  conference prior to last Monday said he was sort of done with

21  the process and asked me to submit an order -- which is what

22  you have in front of you -- and asked Opposing Counsel then to

23  submit the next day 24 hours later whatever their view was.

24              **THE COURT:**  Okay.

25              **MR. LAMAGNA:**  And I could walk through the specific

1  category -- I mean the specific wording of what's in here, I

2  just wanted to give the Court some background as to how we got

3  here.

4          **THE COURT:**  No, I appreciate that.  And so the

5  alternate order is then the one that Samsung submitted that

6  says:

7          "The matter came before the Court regarding the

8          parties' production of documents.  The Court having

9          considered the memoranda and letters submitted and

10          arguments of counsel at the informal discovery

11          conference, a good cause appearing, it is hereby

12          ordered as follows:

13          All parties are ordered to substantially complete

14          their productions by August 2nd.  All parties are

15          ordered to produce all documents for the relevant

16          witness at least seven days in advance of a witness'

17          deposition."

18          Is this the Samsung version?

19          **MR. LAMAGNA:**  Yes, Your Honor.

20          **MR. LEE:**  Yes, Your Honor, this is Chris Lee, that's

21  correct.

22          **THE COURT:**  All right.  So let's -- Mr. LaMagna, go

23  ahead.

24          **MR. LAMAGNA:**  Let me just start since you had it in

25  front of you, Your Honor, with Samsung's order.

1          Just to be clear, this is -- Samsung order is written

2    bilaterally.  There is no discovery dispute as to the

3    sufficiency of Netlist's production.  It hasn't been raised.

4    Quite frankly, they served their RFPs very late.  The response

5    to those which we're finalizing right now is due tomorrow.  So

6    we have produced I want to say just shy of 40,000 documents

7    covering 130-some thousand pages or so on that order (indisc.).

8    I don't have the exact counts in front of me.  There has been

9    no question in this case raised before Judge McCormick or this

10   Court or briefed or met and conferred on that our production is

11   in any way deficient.

12          So they are -- they have taken an invitation to

13   submit an order on our motion to compel, Plaintiff's motion to

14   compel, and to turn it into an order on a motion to compel that

15   Defendant has not raised on concerns that don't exist to make

16   it bilateral.  So I would object to that.

17          The question then comes as to what it is that Samsung

18   is supposed to produce and that goes to what our order was

19   requesting.

20          Now, we do have -- and this is a little bit

21   confusing, Your Honor.  This grew out of Netlist's first set of

22   requests for production.  We do have some other disputes we'll

23   probably table for a different conference on our second set of

24   requests for production but as to our first set of requests for

25   production, one of the very simple things that we asked them to

1   do and it's very burden -- you know, low burden and we

2   discussed with Judge McCormick is simply produce to us the

3   email for certain custodians that is sent to and from the

4   companies.  Now we -- obviously Netlist obviously has some of

5   that.  You know, sometimes people delete an email or there may

6   not be a one-to-one correspondence.  We said very easy things

7   since the dispute is about the negotiating history between the

8   companies and it's about the process of ordering products where

9   our representative and Samsung's sale representative would

10  email back and forth with requests or denials or POs or that

11  kind of thing.

12          And so the first sub-bullet under, you know, the

13  little iii category is just communications that are sent to or

14  from a Netlist.com email.  The reason we flagged those upfront

15  is because quite frankly, there's no burden there in that if

16  you've collected somebody's email with an electronic discovery

17  vendor, they can readily -- it's a very simple search to just

18  say where is the word "Netlist" that shows up in the to/from or

19  cc metadata field?  That produces a search result and that can

20  be produced without much review because it cannot be

21  privileged.  So if the parties are emailing each other, you

22  know, say drafts of agreements or purchase orders, there's no

23  privilege screen that needs to be done because it's

24  incognizable.

25          And so this is something as we discussed with Judge

1  McCormick a couple of weeks ago when we were addressing this

2  that we could have received from them -- I mean they could have

3  processed this as some machine time to create the images.  It's

4  probably -- takes a day or two to get it out the door with a

5  vendor because they have to have the machine running to make

6  the little .tiff images but this is something attorney review

7  time that's very nominal, ultralow burden and highly relevant

8  because what is at issue here is the negotiating history, is

9  the communications back and forth between the parties, the

10  orders that are exchanged and so forth.  So maybe we should

11  stop there and just deal with that first bullet and see if

12  Opposing Counsel has a view on that.

13          **THE COURT:**  All right.  I agree.

14          **MR. LEE:**  Your Honor, this is Christopher Lee, I'll

15  address that.

16          I actually think we can kind of address this entire

17  document production issue in one piece because Mr. LaMagna has

18  given you a great deal of history but I think it's important to

19  kind of address where we are right now with the document

20  production because it's been two weeks since this issue came up

21  before Judge McCormick and the landscape has changed

22  significantly since then.

23          So at the moment Samsung has produced approximately I

24  believe it's around 15,000 to 17,000 documents.  I believe the

25  total is in excess of around 50,000 pages so we're about

1   80 percent done.  That's what I understand regarding our

2   document production.  We expect that number to go up a little

3   bit by a few thousand by not by any order of magnitude.

4          And we put that order in front of Judge McCormick

5   initially and eventually to Your Honor because we anticipated

6   that a completion of our document production would be by August

7   2nd and we are well under way we think to meet that goal.  So I

8   think to the extent that my colleague, Mr. LaMagna, is

9   complaining about the late production of documents, that issue

10  doesn't really exist anymore.

11         Now, to the extent that Mr. LaMagna has an issue with

12  what we're reviewing, I think that issue also to an extent does

13  not exist anymore because we've been doing precisely what he

14  has described.  We have reviewed all documents containing

15  Netlist in the to/from or cc and those emails have actually

16  been produced this morning.  So with regards to timing of the

17  document production, I don't think there is an actual dispute.

18         With regards to the to/from cc Netlist emails, I

19  don't think there is an accurate dispute either.  There may

20  have been two weeks ago (inaudible) but there no longer is.

21         THE COURT:  And is that -- were the two/from cc, was

22  that from January 15th on?

23         MR. LEE:  I'm sorry, Your Honor, January --

24         THE COURT:  (inaudible) 2015 on, which is what I see

25  to be the date limitation that's issued here -- that's in the

1   order?

2           **MR. LEE:**  Yes, Your Honor.  It covered all of the

3   relevant periods for this case.

4           **MR. LAMAGNA:**  And this is Ray LaMagna for Gibson

5   Dunn.  I mean I just want to clarify that because I think we

6   have a difference of opinion on what the relevant periods are.

7   Is it from January 15th on and is it for all of the custodians?

8           As a side note, Your Honor, I believe we have a

9   footnote with custodians listed in our proposed order and that

10  there is a attachment, Exhibit A to Defendant's Proposed Order

11  and I believe those are roughly the same custodians.  So the

12  who gets -- whose email gets searched is not really an issue,

13  the question is just whether and to what extent.

14          But I would just want clarification, first of all,

15  that we are talking about the same time period and for all of

16  those custodians.

17          **THE COURT:**  Mr. Lee?

18          **MR. LEE:**  Your Honor, we -- our position is that the

19  relevant time period is from roughly the beginning of 2015 to

20  present but I can represent to you that we significantly

21  overshot that time period so there are going to be some older

22  records in there to the extent that exists.  We did not go

23  through these documents and exclude sways of them based on the

24  fact that they fall outside of the relevant time period.

25          **THE COURT:**  Okay.  And my specific question to you

1    was, did you search and have you produced the documents from

2    January 2015 on?  And I believe you said yes, is that correct?

3         **MR. LEE:**  Yes, Your Honor.

4         **THE COURT:**  All right.  And have you included all of

5    the custodians that are listed on -- it looks -- the proposed

6    order?

7         **MR. LEE:**  Your Honor, let me review the proposed

8    order again.  Again, it's been about two weeks, the state of

9    play has changed a bit since then so there might be a slight

10   difference but let me check that again, Your Honor.

11        **THE COURT:**  Okay.

12        **MR. LAMAGNA:**  And while counsel is doing that, Your

13   Honor, this is Ray again for Plaintiff.

14            I think one of the frustrations that we have and just

15   I don't know how to streamline this going forward is, as I

16   said, we served our -- this discovery the first couple of days

17   of March.  In the first four months of production of that

18   window after we served, there was only 26 pages of documents

19   that they had produced which was basically a copy of the

20   contract and some supporting correspondence that was produced

21   with the Rule 26 disclosures.

22            In the following month after that, there was up until

23   just this morning, there was 500 (inaudible) documents and

24   about 3,000 pages of material.  And so it isn't until we're

25   sitting here at the literally an hour or two before having this

```
 1   conference with Your Honor with the proposed order there that
 2   Samsung finally complies.  And the problem that we have with
 3   that, I mean from Plaintiff's position, is it -- in order for
 4   me (inaudible) a dispute, after then march it all the way down
 5   to bringing it before (inaudible) Honor or Judge McCormick and
 6   then at the 11th hour or 59th minute, we get discovery.  It's
 7   not a very -- how should I say -- efficient process.
 8            And I am not unwilling to take Mr. Lee's
 9   representation.  I wish we had that in writing versus -- I
10   guess there's a transcript hopefully for this hearing but
11   certainly if they've already complied with this and on the one
12   hand there is no downside to them having an order post against
13   them, there's no additional work for them to do, they've
14   already complied with it.  That (inaudible).
15            MR. LEE:  Your Honor, I -- may I address your
16   original question regarding the custodians?
17            THE COURT:  Yes.  And are you -- is this Mr. Lee?
18            MR. LEE:  Yes.  This is Chris Lee.  I apologize, Your
19   Honor, I forgot to identify myself.
20            So I'm looking through the list of custodians now.
21   I think there may have been one or two names that Netlist has
22   misspelled but I do think we have reviewed documents from all
23   of these custodians.  To the extent that our -- there are any
24   discrepancies, I will meet and confer with Netlist very quickly
25   on that.  I don't think we're going to have an issue with this
```

 1    list.

 2            **THE COURT:**  Okay.

 3            **MR. LAMAGNA:**  Should we move on to the second bullet,

 4    Your Honor, or do we have anything further we should discuss on

 5    the first bullet?

 6            **THE COURT:**  I think let's move on to the second

 7    bullet.

 8            **MR. LAMAGNA:**  So the second bullet then is trying to

 9    reach at -- you know, assuming that the first bullet we produce

10    all the documents exchanged between the parties, the second

11    bullet is looking for internal documents.  And one of the

12    things we started with is just like let's look for the word

13    "Netlist" or a variance thereof, synonyms, code names, that

14    kind of thing.  And so essentially what the second bullet was

15    was asking them to do that search.

16            The -- as part of the discovery process with Judge

17    McCormick, Samsung had indicated that it did not want to commit

18    to that until it ran a search hit report to determine what the

19    hit counts were so they understood for different custodians

20    what the universe of that would be.  And they had proposed

21    their own more narrow search terms that we -- we can discuss

22    that in a moment if Your Honor prefers.

23            But ultimately, they never brought forth to the Court

24    the answer to the question as to how many times does the word

25    "Netlist" or various equivalents show up in these people's

1    emails?  Is it a million times, is it 14 times?  We don't know.

2    And it may be different for different people.  Maybe it shows

3    up in one person's email hundreds and hundreds of thousands of

4    times and 26 times in a different person's email.

5             Since they never -- that's why I think Judge

6    McCormick ultimately got a little frustrated with the parties

7    since they never actually produced the hit counts over the

8    course of like basically a month of us wrangling about it, we

9    have no basis to support their assertion that this is overly

10   broad.  And so on that basis I would submit that the Court

11   should just order it.  If they had wanted to bring forth

12   evidence or a hit count and say well for this guy it's 800,000

13   documents we'd have to review or whatever in crazy number, then

14   we certainly would have listened to that, Your Honor, but they

15   just haven't done that and I suspect they haven't done that

16   because it's probably not so bad.  I suspect if they ran those

17   hit counts and had millions of hits, we'd probably seen those

18   numbers and that's probably why they haven't disclosed them.

19             **THE COURT:**  All right.  Defense Counsel?

20        **MR. LEE:**  Yes, Your Honor.  Obviously I --

21             **THE COURT:**  And sir, would you just -- again, it

22   truly will be better for you in the record too if you identify

23   yourself first.  That way, if a transcript is ever ordered,

24   everyone can know who's speaking.

25             **MR. LEE:**  Yes, Your Honor, apologize for that.  This

1    is Christopher Lee.

2           Obviously I disagree with my colleague, Mr. LaMagna's

3    characterization of the process before Judge McCormick.

4           We were never ordered to produce hit counts but I

5    don't think that's really the important issue here.  I think

6    the issue here is, is Samsung reviewing a sufficient number of

7    documents and is Netlist proposing reasonable things in the

8    order that they're putting before you?  And I would submit that

9    they are not.

10          Your order -- Your Honor can read what sort of search

11   terms that Netlist has proposed.  Under Roman Numeral Number 3,

12   they want everything that references Netlist.  I can tell you,

13   Your Honor, Netlist is a term of art in the semiconductor

14   industry, it's just not the name of a company.  So to the

15   extent that you're searching for documents from a semi-

16   conductor producer, if you search for Netlist, you will get a

17   tremendous amount of hits.  So (inaudible) problematic.

18          They're asking us to search for "Irvine" which is the

19   city that Netlist is in.  I'm sure Your Honor can imagine why

20   that would come up with a lot of hits that are not relevant

21   (inaudible) anything.

22          They asked us to search for "joint development and

23   license agreement".  I think the issue here is that a company

24   of Samsung's size will have a lot of joint development and

25   license agreements and you will come up with all sorts of

36

1    agreements that have nothing to do with Netlist.

2           So if Your Honor were to look at the search terms

3    that we had proposed and we attached those as an exhibit, I

4    believe, to our July 16th email (inaudible) to Judge McCormick,

5    you can see that the approach that we took is that we're

6    looking for hits that hit both a word that may refer to Netlist

7    -- and we've included a lot of words there.  There's Netlist

8    the company name, there's Netlist.com, the domain, there's

9    Netlist in Korean, in various variations, and there's Net Kune

10   (phonetic) which is a internal Samsung code word for Netlist

11   that we voluntarily provided but also hit one of the kind of

12   subject matter words that are relevant to this case and on this

13   basis we've accumulated a fairly large amount of documents for

14   review.  I understand that we're reviewing about 50,000 -- 40

15   to 50,000 documents total and so I think we have a healthy pool

16   of documents.  I think we're producing relevant documents and I

17   don't really think we're in a situation where Netlist can

18   complain that we're not conducting a fulsome review of the

19   record (inaudible) before it.

20          **MR. LAMAGNA:**  And this is Ray LaMagna for Plaintiff

21   if I can just respond to that.

22          I do think it's -- Counsel is correct.  The Court did

23   not order them to produce hit counts, they said -- Defendant

24   said that they needed to produce hit counts to show why what we

25   were doing was unreasonable and why what they are requesting is

37

1    reasonable.  The Court said, Okay, go ahead and do that; I want

2    to see those in the future.  It wasn't an order and they never

3    provided those.

4         So if we go back to the point that they're making

5    about the over-inclusiveness, we've endeavored in good faith to

6    capture some words that we thought were relevant here.  We

7    thought that they -- we understand that they may refer to we're

8    the only customer that they have in Irvine I believe and so we

9    thought that they may refer to us as the Irvine company or the

10   company in Irvine, you know, by -- to be anonymous.  We could

11   strike that, I don't feel married to that.  You know, same

12   thing with joint development and license agreement.  I don't

13   know that they have a lot of joint development and license

14   agreements, they have a lot of license agreements.  And if

15   Counsel wanted to come back and say well actually we have a

16   hundred of them or we have 10 of them or here's -- we ran the

17   hit counts on these individuals, I'd be happy to say, well

18   okay, we can modify that but they haven't done that so I'm

19   shooting in the dark again.

20        One of the things that they raised which Judge

21   McCormick already dispatched is this idea that Netlist is a

22   term of art.  It is true that it is a term of art I believe in

23   the software engineering space for, you know, for something

24   that is not related to necessarily what these people are doing.

25   So notice that our bullet here, we are asking for certain

1    custodians.  So the question is not what the company as a

2    universal company has and documents that have the word Netlist.

3    The question is what, for example, Neil Cannuth (phonetic),

4    first custodian up, has with the word Netlist and he's the

5    sales guy.  He's not a software engineer using the word Netlist

6    in a term of art sense.  And again, if that was a problem, then

7    of course Counsel would have an opportunity and has had an

8    opportunity now for literally months to say, hey, we can't run

9    that list because here's all of these false positives and

10   provide even one example.  So just to be clear, we don't have

11   one example from even one of these custodians showing a false

12   positive use of the word Netlist.

13           So one of the things I also -- the last thing I

14   wanted to hit on is why their list is inefficient or, you know,

15   unduly narrow.

16           Now, I suspect if these -- if their search terms,

17   it's their Exhibit A, were appropriate, they would have given

18   us some hit counts there for the different custodians and say,

19   Look, this guy has got a thousand of these, this guy's got 500

20   of those, these are robust search terms.  They're not returning

21   four hits or three hits on people that we know were factually

22   involved in the case.

23           But for example, one of the issues in our case is

24   whether, you know, whether orders or product was requested and

25   rejected and this could happen in an email.  So our procurement

guy would email Samsung's sales guy and say, you know, "Can we get a thousand units of this product code next month?"  Now notice I didn't use the word "order" or "request".  Instead he might email and say, "Can we get a thousand units" or "Attached is the forecast of what we'd like to receive next month."  None of those have the word "order" or "request" in them.

There's -- we already argued this to Judge McCormick unfortunately but we -- I apologize for putting Your Honor through it again but the -- there can be who knows how many synonyms in English for asking for something for somebody.

There is varying -- there's no basis in this case that every time we ordered a product, the word Netlist appears within five words of the word "order" or the word "request".  That's not based on any actual customer usage between the parties.  And so again, we have no reason to believe that what they're producing here or what they're offering to search internally has any robustness whatsoever and they've provided no evidence that what we're requesting is at all burdensome to them.  As I said, if Irvine is an issue, let's just strike Irvine.  You know, that -- we're just trying to help.  If this is not -- that is not the hill we're going to die on here.

        **THE COURT:**  All right.  Thank you.

        Mr. Lee --

        **MR. LEE:**  Your Honor, if I could --

        **THE COURT:**  Mr. Lee, how come I don't have any

40

1    information about hits -- hit list responses and why don't -- I

2    mean I understand you weren't ordered but I do also understand

3    that there were discussions about hit counts and that sort of

4    thing.  So why don't I have that information?

5           **MR. LEE:**  Yes, Your Honor, I can address this issue

6    and this is Christopher Lee, I apologize, I keep forgetting to

7    identify myself.

8           But I think the reason that process (indisc.)

9    negotiation broke down, Your Honor, is because we proposed our

10   search terms in good faith thinking that, you know, both

11   parties would propose their search terms, we'd take a look at

12   them mutually and then we would do -- engage in a process of

13   horse trading to reasonably narrow the scope of documents to be

14   reviewed by both parties.  And I think the issue we encountered

15   at some point was that Netlist would not disclose, and has not

16   disclosed to this day, what search terms they are using for

17   their document search.  They would not disclose what custodians

18   they collected documents from.  And in this situation, Your

19   Honor, I just think we felt that it was not good negotiation

20   strategy for us to (indisc.) our search terms to criticism by

21   Netlist unilaterally by providing them with hit counts when

22   they are not even giving us the most basic information of what

23   their hit counts are.

24          I do have some provisional search term numbers that

25   are -- that we've received recently, Your Honor.  I can address

1   some of the things that they provided in this proposed order,

2   not all of them.  I do know that, for example, the term

3   "Netlist," if added would add a total of 30,000 documents to

4   the review queue and that is independent of any documents that

5   are already in there.  So I think what that tells you, Your

6   Honor, there is a significant amount of documents where that

7   list is being used as a term of art and would be coming as a

8   false positive if we were to apply that search term.  Now the

9   reason Mr. LaMagna (inaudible) many of these false positives is

10  because we're not producing them because they are nonresponsive

11  documents.

12         I think if you -- I think the question you need to

13  ask yourself, Your Honor is, is Samsung reviewing enough

14  documents and is Samsung producing enough documents?  And I've

15  given you the information on that.  I submit that Samsung is

16  most certainly doing so.  I don't think it benefits anyone just

17  three weeks before the end of fact discovery to be adding a

18  pile of clearly nonresponsive documents to Samsung's review

19  queue solely to increase the burden on Samsung.

20         **MR. LAMAGNA:**  And I apologize, Your Honor, if I could

21  just respond.  This is Ray LaMagna of Gibson Dunn again on

22  behalf of Plaintiffs.

23         **THE COURT:**  Yes.

24         **MR. LAMAGNA:**  So first of all again, our --

25         **THE COURT:**  Well hold on.  Before I let --

42

1    Mr. LaMagna, let's make sure that Mr. Lee is --

2             **MR. LAMAGNA:**  Oh, apologies to Mr. Lee.

3             **MR. LEE:**  No, Your Honor, I'm finished.

4             **MR. LAMAGNA:**  Okay.

5             **THE COURT:**  All right.  Mr. LaMagna?

6             **MR. LAMAGNA:**  Again, our production is not in

7    question here.  There is no motion to compel our production,

8    there's no complaint about our production on which the parties

9    have met and conferred.

10            There is a couple of I think bending of the truth

11   there regarding our custodians and search terms.

12            We've never refused to provide custodians and search

13   terms.  I agree, I have not provided a comprehensive list and I

14   apologize to Opposing Counsel.  I do owe them a list of who the

15   main custodians are.  As I've said, it's all of the people that

16   they've -- I've told them this on the phone.  It's all of the

17   six or seven people that they've requested for depositions, as

18   well as there's a couple of additional procurement people that

19   I forget the names of on this call.  I think one of them is

20   named Devin Park, one of them -- the two lawyers that are

21   involved.  Everybody that we could find that was materially

22   involved with the procurement, you know, the process of

23   ordering and the process of -- or the legal side of negotiating

24   the contract with them, including the lawyers, were we pulled

25   all of their email that we could find, the whole mailbox in

1   whole and searched it.  We search it using not just -- this was

2   the issue.  We did not just use search terms as they are

3   proposing.  We have talked to witnesses, we've had witnesses

4   help us to go through their email to identify email threads,

5   we've tried to find threads from those threads.  We have used

6   words like "Samsung" and "Samsung.com" also as search terms but

7   we haven't exclusively relied on search terms.

8          And in terms of hit counts, I'm pleased to know that

9   there's 30,000 emails within -- that have the word "Netlist" on

10  them.  That is consistent with the fact that we've produced

11  30,000 emails to them, Your Honor, using not the same protocol

12  but using a, shall we say more robust, searching for "Samsung"

13  or "Samsung communications" and then seeing what we could move

14  from there to make sure that we're grabbing a wider net than

15  just what that would give us.  And so it doesn't surprise me

16  there's 30,000 communications.  We have parties that are doing

17  hundreds of orders over multiple years.  Samsung is I think one

18  of the very largest industrial companies in the world.  I think

19  they're one of like the top five.  Netlist is a small company.

20  This is a dispute that will have millions of dollars in

21  dispute.

22          As Mr. Masters pointed out earlier, there is a patent

23  license that is on the -- potentially at issue here that is

24  probably tens of millions of dollars if not more.  Maybe

25  it's -- it could be, you know, a nine-figure number.  I don't

44

1  know the details of exactly where the damages are going but

2  this is not a small case.  Samsung is not a small party.  And

3  the fact that they have 30,000 emails, considering I've already

4  had my own team spending months reviewing a much larger number

5  than that, it's unremarkable to me.

6         And they -- going back to the idea lastly, just to

7  close out on false positives.

8         What Mr. Lee has said, I think, is a bit topological.

9  He has said that he found 30,000 emails; therefore -- with the

10 word "Netlist" in them; therefore, that may -- that must be a

11 false positive.  I don't appreciate getting that information

12 just sitting here live on the call when we've been asking for

13 that literally for months; but nevertheless, we don't have a

14 breakdown by person so we don't know, if there is a false

15 positive issue, is it with a particular custodian.  There is

16 not one example provided to the Court of a single false

17 positive; and quite frankly, the number 30,000 seems entirely

18 consistent with what we would expect to have.  That's

19 consistent with what I'm seeing in my own documents for non-

20 false positives.

21        So I'll surrender the floor again.  I apologize for

22 going on, Your Honor.

23        **THE COURT:**  Mr. Lee, final comments?

24        **MR. LEE:**  Your Honor, this is Christopher Lee, just

25 one final word if I may?

1          **THE COURT:**  Yes.

2          **MR. LEE:**  So Your Honor, I don't want to belabor this

3  point -- you've already heard a lot about it but I do want to

4  correct the record on one point that I believe Mr. LaMagna has

5  misrepresented.

6          We did -- I personally asked Mr. LaMagna for search

7  term and custodian information during a meet-and-confer call.

8  This is the first time on this call that I'm getting this

9  information so this is not just some issue I'm pulling out at

10  the last minute to deflect.  This meet-and-confer process

11  regarding search terms did break down because we, quite

12  naturally, wanted reciprocity from Netlist in terms of

13  understanding what process they were using in order to identify

14  responsive documents and we didn't get that.  And Your Honor he

15  can tell you that their process is more robust, what I'm

16  hearing is that, (a), they used some search terms which they

17  won't disclose; and (b), they went through a process of

18  interviewing witnesses, asking them if they had any relevant

19  documents, and separately collecting those documents to the

20  extent that they exist.  And we've gone through that same

21  process, Your Honor.  There's no difference in the process that

22  Samsung and Netlist have gone through here, it's just a matter

23  of, we are willing to disclose what we've done and Netlist, for

24  whatever reason, is not.  So I do want to correct this idea

25  that we're the party who's not being transparent, that we're

1  the party that's hiding things because that simply isn't true.

2          **MR. LAMAGNA:**  Your Honor --

3          **THE COURT:**  All right.  Thank you.

4          No, not necessary.  I'm ready to rule and we've got

5  to move on because we have been on a call for over an hour,

6  okay guys?

7          With regard to this category -- well, you know what

8  I'm going to do?  I'm going to think about it some more, let's

9  move on to the next one.

10         **MR. LAMAGNA:**  I think, Your Honor, the next item that

11 we have is a fairly modest issue.

12         We've submitted two proposed orders to the Court that

13 are almost virtually identical.  The question is just regards

14 to the attorneys-eyes-only category and Plaintiff's request for

15 the ability to have the basically one or two executives inhouse

16 that are not lawyers --

17         **THE COURT:**  Hold on, Mr. LaMagna.  I'm still on this

18 proposed order where we've just talked about the first little

19 circle and the second little circle but now there's two more at

20 the -- on the second page, third page.

21         **MR. LAMAGNA:**  Apologies, Your Honor.  I'm cutting

22 myself short.

23         I don't know that there's that much of a dispute

24 about these.  For whatever reason, Plaintiff had, at least in

25 the written responses, said that they would not provide the

1    documents that are referenced or identified in their other

2    RF -- in later RFPs -- I mean, sorry -- interrogatories, my

3    apologies, Your Honor.  And so we just wanted a clarification

4    that that was being requested but I think that -- I don't know

5    that that's a live dispute.  Perhaps Counsel can tell me just

6    on the call here whether or not they are disagreeing to give us

7    documents that are identified or referenced in response to our

8    various interrogatories.

9         **MR. LEE:**  Your Honor, this is Chris Lee.  I agree

10   that this is not a live dispute.

11        **THE COURT:**  I'm sorry, say that again.  It is not

12   what?  A live --

13        **MR. LEE:**  (inaudible) this is not a live dispute,

14   Your Honor.  Samsung has amended its written discovery

15   responses.

16        **THE COURT:**  So does that mean that you should be in

17   the order from your perspective or should not be in the order

18   from your perspective?

19        **MR. LEE:**  We don't think it needs to be, Your Honor,

20   because we have already amended our responses to reflect this.

21        **THE COURT:**  Okay.  Mr. LaMagna?

22        **MR. LAMAGNA:**  And I think that the same may be

23   true -- I have to go and look at their responses on the tax

24   withholding issue.

25             So by way of background, Samsung had withheld a

1    certain amount for taxes under Korean law which was disputed

2    under the contract as to whether it was appropriate.  And then

3    Netlist went to the taxing authorities in Korea and obtained a

4    refund.  So there is a dispute about whether or not there was a

5    contractual violation there.

6           And I believe that -- well I guess we were just

7    asking that they give us documents regarding their withholding,

8    their decision to withhold and the correspondence with the

9    Korean tax service which seems pretty basic I think for that

10   kind of a dispute.  They had initially said no but I believe

11   that that is probably resolved now but perhaps Mr. Lee can tell

12   me if they're disagreeing with giving us the items that are in

13   that last bullet.

14           MR. LEE:  This is Chris Lee, Your Honor.  Again, this

15   dispute has been resolved.

16           MR. LAMAGNA:  Does that mean that we agree that we're

17   going to be getting those documents?  This is Ray again for

18   Netlist.

19           MR. LEE:  Yes -- yes, Ray, I agree that you will be

20   getting those documents.

21           MR. LAMAGNA:  So those bullets --

22           THE COURT:  And so just so I'm clear, do these

23   last -- what I'm hearing is these last two items do not need to

24   be in this order; is that correct?

25           MR. LAMAGNA:  I think that's correct.

1        **MR. LEE:**  Correct.

2        **THE COURT:**  All right.

3        **MR. LAMAGNA:**  This is Ray LaMagna again for Plaintiff

4 Netlist.

5        I believe the next item of priority is that on Monday

6 evening, we submitted to Your Honor's chambers a short cover

7 email and attached to it were two virtually identical versions

8 of a stipulated protective order.  We've been working on that

9 protective order for a bit of time and so I apologize, Your

10 Honor, it doesn't actually -- it was not built off of Your

11 Honor's model order, it was built off of something we're

12 working on with -- under Judge McCormick's time with the case.

13 But it's agreed to except for one point, and that point is

14 reflected in Plaintiff's version -- I think it's paragraph 8,

15 Romanette little -- three little i's.

16        **THE COURT:**  Right.

17        **MR. LAMAGNA:**  And basically the issue is that Netlist

18 is a very very small company -- well certainly relative to

19 Samsung -- and the litigation, you know, whether we're bringing

20 a certain motion or not and, you know, what is being directed

21 specifically by executives who are not -- not just the -- there

22 isn't like a legal department like you'd have at Samsung to

23 direct litigation.  There is a lawyer inhouse but there are

24 executives that are in charge of directing the litigation.

25        And so one concern we have is that if everything is

50

1    counsel-eyes only or attorneys-eyes only, that that would make

2    it so that we really -- we have to be sort of cut adrift on our

3    own to be deciding what to do in the litigation because we

4    can't -- we would not be able to get input from our client

5    essentially.  There is an inhouse lawyer that we could get

6    input on, he could not get authorization or client -- you know,

7    or approval for directions in the case from his boss.

8            So what I've done in many cases before is simply have

9    an exclusion where one or two people who are still signed on to

10   the protective order, bound by the court, can be, you know,

11   sanctioned if they violate the protective order, et cetera, are

12   allowed to see attorneys-eyes-only material which they're not

13   allowed of course to use for any business purposes.  So that's

14   why we've written that in.  And of course I think it goes

15   without saying, Opposing Counsel disagrees and would like to

16   see that as a strict attorneys-eyes-only provision.

17           **THE COURT:**  And this specific issue was not discussed

18   with Judge McCormick?

19           **MR. LAMAGNA:**  That is correct, Your Honor.

20           **THE COURT:**  All right.  Let me hear from Defense

21   Counsel.

22           **MR. LEE:**  Yes, Your Honor, this is Chris Lee again.

23           The one provision at issue here is, as Mr. LaMagna

24   described, a provision allowing Netlist to designate two

25   nonlawyer designees to look at all AEO documents.  And we think

1  there's a problem here because the fundamental purpose of an

2  AEO designation is the acknowledgement -- it's kind of a

3  separation of church and state.  You want to keep the business

4  parts of the company and the legal parts of the company

5  separate.  Now there are going to be certain documents that if

6  shown to the business side of the company, would grant that

7  company an unfair competitive advantage and that's particularly

8  salient here because Samsung and Netlist are in the same

9  industry and sells to I imagine some of the same customers.

10        Now, as far as Netlist's general counsel goes, he's

11 an officer of the court and, you know, any lawyers under him

12 would be the same and we trust them to kind of keep their

13 obligations to the court and their obligations to their clients

14 separate but I have met and conferred with Mr. LaMagna and

15 Mr. LaMagna has told me that the two people he intends to

16 designate, if this provision is allowed, are Netlist's CEO and

17 their CFO.  And these are kind of the quintessential business

18 executives of their company.  And if those people get

19 information regarding, for example, Samsung's sales,

20 semiconductor products, their pricing information, their

21 quantity information, it would be almost impossible, even

22 implicitly, for those people to not use that information to

23 undercut Samsung or exert a unfair competitive advantage in

24 some way.  So I think this provision that Mr. LaMagna wants

25 really kind of defeats the entire purpose of an AEO

52

1    designation.

2          And I do want to say, to the extent that Netlist's

3    CEO wants to direct litigation, that does not require him to

4    see the specific documents that contain, for example, Samsung's

5    sales figures.  His general counsel can inform him about the

6    general strategy and generally what those documents contain but

7    he doesn't really need to -- I don't think Netlist's CEO is

8    wading into document productions and looking at all of the

9    numbers and all of the minutiae.

10          **MR. LAMAGNA:**  Your Honor, if I could respond briefly

11   to that, Your Honor, this is Ray LaMagna for Plaintiff again.

12          So first of all --

13          **THE COURT:**  Yes.

14          **MR. LAMAGNA:**  -- yes, we weren't trying to hide the

15   ball.  It is, you know, Chuck Hong and Gail Sasaki are the CEO

16   and CFO directly.  It's a small company.  There isn't a lot of

17   executives that are involved in the company so it drops off

18   quickly after two or three people because that is what they do,

19   they are involved in directing the company.

20          As Your Honor can appreciate, we're under an ethical

21   obligation that if we have attorneys-eyes-only information that

22   say that a particular claim or a particular argument that we

23   can make in a brief is supportable, we can't -- you know, I

24   can't tell the client that, "Oh, I saw in attorneys-eyes-only

25   documents this information and so therefore we should bring

53

1    this motion" because I'm a bit stuck.  It's not just -- we're

2    not looking to show them the documents, we can't really talk

3    about the content of the documents.

4         One of the things Mr. Lee raised I think is a really

5    good point is he said, "Well we don't want them to see our

6    sales and pricing data."  One of the things that Judge

7    McCormick did on, you know, just before unfortunately he

8    recused himself, was from a prior dispute, he issued an order

9    requiring them to disclose some sales and pricing data for

10   third parties.  And as I told Mr. Lee when we conferred, I

11   said, look, I understand, we'll exclude that.  We won't -- we

12   won't -- we can treat that on a true, outside counsel basis and

13   not circulate that to, you know, into the company at all.  And

14   I think that that approach going forward would be appropriate.

15   If there's a particular class of documents that Mr. Lee thinks

16   are especially sensitive that he's really concerned that

17   Mr. Hong shouldn't see them, you know, like that, for example,

18   pricing data, if we can't agree then he can seek additional

19   protection from Your Honor in the form of --

20        **THE COURT:**  Is there a reason why we don't have a

21   heightened -- you know often I'll see attorneys eyes only's and

22   then a highly confidential attorneys eyes only where we will

23   separate out these two kinds of categories?

24        **MR. LAMAGNA:**  I think it's just how the process of

25   negotiating this came up.  It wasn't -- I don't think we were

54

1  looking at it that way.  And Judge McCormick ordered the

2  parties to produce one, a proposed protective order that had an

3  attorneys-eyes-only category, not a third tier.  I think it was

4  just by omission, Your Honor, that we didn't -- we didn't

5  consider that.  The only --

6          **THE COURT:**  Does that solve the problem here?

7          **MR. LAMAGNA:**  That could solve the problem.

8          I think the concern that I have in just in terms of

9  any future disputes is that I think that that type of a

10 category would need to be used sparingly because if discovery

11 is painted with a broad brush like that, then that's going

12 to --

13         **THE COURT:**  Well right but you could -- the two sides

14 could have a conversation about which categories of documents

15 would fit in that highest level of protection, right?

16         **MR. LAMAGNA:**  Absolutely, Your Honor, yes.  This is

17 Ray again.

18         **MR. LEE:**  Your Honor, this is Chris Lee, just to

19 briefly address that.

20         I guess one concern I would have with that solution

21 is that over 60,000 documents I think have already been

22 produced by both sides and those were all produced with coding

23 based on the two-tier system.  So that potentially creates an

24 issue where if we are creating a third tier, we'll have to go

25 back and review those documents to see what would fit on the

55

1   second tier and what would fit on the third tier.  And that

2   would be a mutual kind of burden for both parties, I think,

3   because we both designated certain documents attorneys eyes

4   only.

5          I think perhaps the more efficient solution in this

6   case if Your Honor is set on a three-tier system would be to

7   introduce a second tier so attorneys-eyes-only documents

8   produced to date would remain strictly on a attorneys-only

9   basis.  If for example, there was a middle category perhaps

10  called "highly confidential," that could be used to cover

11  documents where we would be willing to disclose not just to the

12  attorneys but also to these two designated business

13  representatives.

14         **MR. LAMAGNA:**  So this is Ray again for Plaintiff.

15         Just to clarify because I don't want -- this is not a

16  mutual problem.  I'm happy to allow two -- up to two inhouse

17  executives of Samsung's choosing to view any of the documents

18  that we've produced in this case.  And if there are any

19  particular documents that we produced going forward that we

20  have a problem with, I think that would -- we could treat that

21  separately.  I think we would treat certain sales documents I

22  think on a separate basis.  You know like when I say "sales" I

23  mean, you know, sales totals, dollar figures, those kind, you

24  know, pricing data, that kind of thing we could treat

25  separately.  But I agree with Your Honor that having a third

56

1    tier is a good way to go if that's what you want us to look

2    into.

3            I think to address Mr. Lee's retroactive point, I

4    don't know that there's anything in his production so far that

5    really falls into this category.  If there is, he can identify

6    what it is that he thinks needs to be reclassified.  I just

7    don't know that there is anything.

8            **MR. LEE:**  And Your Honor, just -- this is Chris Lee

9    again, just to briefly address.

10           I think this kind of illuminates what the problem

11   here is because we both certainly do believe that there are

12   documents within our production already that should not be

13   shown to Netlist's business executives because they do contain

14   confidential sales data, quantity information, edict

15   information regarding certain sellers that would cause

16   significant business harms to clients if they were exposed to

17   Netlist's business executives.

18           So if we adopt the third-tier system now, we're going

19   to have to go back, redo our production then reclassify all of

20   those documents and that would be a significant burden.

21           **MR. LAMAGNA:**  If I could just address one surgical

22   point, here, Your Honor, this is Ray again for Plaintiff.

23           I don't understand the competitive harm point because

24   they're not really competitors.  Samsung is a manufacturer of

25   memory devices, chips and so forth and Netlist takes those,

57

1   repackage -- you know, puts them onto a board or whatever and

2   then makes it into a server for people.  They're sort of --

3   there are different places in the distribution chain and so we

4   are not -- Netlist doesn't manufacture any chips so we are not

5   competitors with them.  I don't quite see the -- that issue but

6   that's my only point.

7           **MR. LEE:**  Your Honor, this is Chris Lee, just to

8   briefly correct the record on that.

9           Netlist produces product based on Samsung chips but

10  they also resell semi-conductor product.  In fact, I believe

11  Netlist's public filings indicate that two thirds of their

12  sales are from the resale market so they are out there selling

13  the same product we are.  And I think Mr. LaMagna and I both

14  know there are several instances of the same customer

15  potentially being supplied, either directly by Samsung or

16  through a Netlist resale.  So there is a competitive issue

17  here.

18          **MR. LAMAGNA:**  And --

19          **THE COURT:**  All right.  Gentlemen, I think I've heard

20  enough and I'll -- for me to make my decision.  I'll be

21  reviewing more thoroughly both of these proposed protective

22  orders and then I'll be issuing -- issuing one.

23          Now, as I understand, we have addressed Item Number

24  1, we have addressed Item Number 2 and Item Number 4 from the

25  list of 7, is that right?

1          **MR. LAMAGNA:**  I think that's correct.  I think the

2    issue that we skipped over were some of the deposition

3    mechanics.

4          **THE COURT:**  Right.  Okay.

5          At this point you know we're at 3:20 so I've given

6    you guys as much time as I can today -- I'm actually 20 minutes

7    late for a call.  And so what I was thinking is that I

8    understand that your original hearing date on your Apex Witness

9    Motion set by Judge McCormick for the 29th at 10:00 a.m.  And I

10   was thinking about moving the remainder of these issues and

11   taking that motion up, as well as -- as many of these issues as

12   we can fit within my schedule at that time for the 29th at

13   10:00 a.m.  Does that work?

14         **MR. LAMAGNA:**  For Plaintiff, this is Ray again; yes,

15   it does.

16         **MR. MASTERS:**  Your Honor, this is Marc Masters on

17   behalf of Samsung.

18         I would ask in terms of the apex issue, if that's

19   going to be argued, that that be -- the hearing be set for the

20   beginning of next week when my colleague, Ekwan Rhow, who is on

21   the call now, will be back in the country; but otherwise, for

22   the remainder of the issues, the 29th at 10:00 a.m. I believe

23   is fine for us.

24         **THE COURT:**  Well the 29th was the date set for that

25   issue by Judge McCormick, am I right?

1    **MR. MASTERS:**  Yes, I believe that's correct, Your

2    Honor; however, I believe your order took off the dates and we

3    were to reschedule them.  And so given that the 2nd would still

4    leave two weeks to the extent Your Honor ruled that any of

5    those depositions should go forward, we would have enough time

6    to conduct those depositions.

7            **MR. LAMAGNA:**  And this is Ray for Plaintiff again.

8            I think the order actually reinstated all of the

9    existing deadlines and so forth but I don't have Your Honor's

10   order in front of me.

11           **THE COURT:**  My recollection is I left the briefing

12   schedules but we didn't necessarily say anything about the

13   hearing.  I'm not sure if Ekwan is a male or a female or

14   (inaudible) here but Mr. or Ms. Rhow, did that person choose to

15   be out of the country after I issued my order?  I just -- you

16   know, you guys have a lot (inaudible) we need to get a lot done

17   and if Ms. -- if --

18           **MR. RHOW:**  Your Honor, this --

19           **THE COURT:**  -- it's possible to have that hearing on

20   the 29th, I think we'll all have the briefing by then, right?

21   Because as I understand it, that hearing was actually set by

22   the moving party for today, at least according to the noticed

23   motion I think.

24           **MR. RHOW:**  Your Honor, this is Ekwan Rhow.

25           **THE COURT:**  Ah, hello, Mr. Rhow.

1          **MR. RHOW:**  I apologize.  I'm the one -- I'm causing

2   all the issues here and I should get no sympathy since it is

3   true, I'm out of town partly for work but partly also with my

4   daughter.

5          But look, I'll make Thursday work.  I had asked Marc

6   -- Mr. Masters to raise the 2nd.  That would be a lot easier

7   for me, given where I'm at and the time zone I'm in, but if it

8   is easier for you, I certainly can accommodate.

9          If there are other issues to be done on the calendar

10  on the 29th, I would prefer the 2nd and would do it as early as

11  possible to make sure the ruling is quick.  The client,

12  Samsung, has asked me on this particular issue, which is of

13  import, to handle the hearing even though, frankly, Mr. Masters

14  and Mr. Lee are more than capable and probably more capable

15  than me of handling it.

16         **THE COURT:**  Well, Mr. Rhow, you are lucky that, one,

17  you mentioned your daughter; and two, that my schedule happens

18  to be clear.  So we can do the apex motion on the 2nd.

19         If I'm hearing from Mr. LaMagna that time -- date and

20  time works.  I guess I didn't say a time but the 2nd for that

21  matter, what time should we do?  How about in the afternoon,

22  say, 1:00 o'clock?

23         **MR. LAMAGNA:**  That would be fine, Your Honor, that's

24  Monday the 2nd?

25         **THE COURT:**  Specifically for the apex matter and

61

 1    then --

 2              **MR. LAMAGNA:**  And are we still having --

 3              **THE COURT:**  Let's keep the 29th on at 10:00 a.m. and

 4    we can handle the -- as many of the other issues as possible.

 5              Does that work for you-all?

 6              **MR. MASTERS:**  Yes, Your Honor.  This is Marc Masters

 7    on behalf of Samsung.  I believe that works.

 8              **THE COURT:**  I'm being very, very, very flexible with

 9    you-all.  I'm not usually this flexible but Judge McCormick let

10    me know that he had been very flexible with you-all and I'm

11    trying to maintain that so that you have as much relative

12    consistency as possible, despite the fact that you had to

13    change judges at this last point -- late date.

14              **MR. RHOW:**  Thank you, Your Honor.  Thank you.

15              **THE COURT:**  So August 2nd at 1:00 p.m. for the apex

16    matter.  Does that --

17              Do anyone say no to that?

18              **MR. RHOW:**  This is Ekwan Rhow.  I do not say no,

19    thank you, Your Honor.

20              **MR. LAMAGNA:**  Plaintiff is fine with that.

21              **THE COURT:**  All right.  So we will hear the Apex

22    Motion August 2nd at 1:00 p.m., and then I suppose I will --

23    we'll set a Continued Informal Discovery Conference for

24    July 29th at 10:00 a.m.

25              **MR. MASTERS:**  Thank you, Your Honor.

1        **THE CLERK:**  And Your Honor, this will be the same

2  call information as they called in today.

3        **THE COURT:**  Same call-in information, gentlemen.  Is

4  that okay?

5      **(Affirmative responses heard)**

6        Unless you hear from my courtroom deputy otherwise.

7  Every once in a while I will just warn you that we have these

8  telephone conference lines and sometimes they just don't

9  work -- and we don't know why.  And when that happens my CRD

10  generally finds out as quickly as possible and then we'll send

11  you-all an email to let you know an alternate number, okay?

12      **(Affirmative responses heard)**

13        All right.  I will be issuing the protective order

14  and the proposed order that we talked about today as in the

15  manner in which I end up deciding the issues and I'll get those

16  out to you ASAP.

17        Is there anything further we need to address today or

18  may I get on my conference call?

19        **MR. LAMAGNA:**  Thank you, Your Honor, for Plaintiff

20  we're done.

21        **MR. MASTERS:**  Yes, Your Honor, for Defendant Samsung

22  we're done, thank you very much for your time today.

23        **THE COURT:**  All right.  Hearing nothing else, nice to

24  meet you-all remotely over the phone.  At some point I will see

25  you in person but I will speak with you then on January 29th.

63

1              Have a good day.

2        **(Attorneys thank the Court)**

3              Okay, bye-bye.

4         **THE CLERK:**  Court is now adjourned.

5        **(Proceeding adjourned)**

64

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                                    **April 24, 2022**

          **Signed**                                                            **Dated**

*TONI HUDSON, TRANSCRIBER*