UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br><br>                    Defendant. | Case No. 8:20-cv-00993 MCS (ADSx)<br><br>ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF NETLIST INC.'S MOTION FOR FEES AND EXPENSES FOR DEFENDANT SAMSUNG'S FAILURE TO ADMIT REQUESTS FOR ADMISSION |

## I.    __INTRODUCTION__

Before the Court is Plaintiff Netlist Inc.'s Motion for Fees and Expenses for Defendant Samsung's Failure to Admit Requests for Admission ("Motion") pursuant to Federal Rule of Civil Procedure 37(c)(2).  (Dkt. No. 288, Mot.)  Netlist's Motion requests attorney's fees and expenses incurred for proving certain facts due to Samsung's alleged failure to admit 26 Requests for Admissions ("RFAs").  Samsung filed an Opposition to the Motion.  (Dkt. No. 294, Opp'n.)  Netlist filed a Reply.  (Dkt. No. 300, Reply.)  The Motion was referred to the undersigned magistrate judge by the Honorable Mark C.

Scarsi. (Dkt. No. 302.) A hearing on the Motion occurred on February 16, 2022 and appearances were noted on the record. (Dkt. No. 307.) After reviewing the parties' briefs, the relevant legal authority, and the record in this case, the Motion is granted, in part, and denied, in part.

## II.   BACKGROUND

This case involves a breach of contract dispute between Netlist and Samsung relating to Samsung's supply of NAND and DRAM products to Netlist. In particular, Netlist raised the following underlying claims against Samsung: (1) breach of contract for Samsung's breach of the Supply provision in the Joint Development and License Agreement ("JDLA"); (2) breach of contract for Samsung's breach of the Non-Recurring Engineering ("NRE") provision in the JDLA; and (3) declaratory relief that Netlist properly terminated the contract. (Dkt. No. 23.)

Between April 2021 and August 2021, Netlist propounded Requests for Admission on Samsung. (Mot. Exs. A-G.) During the same time period, Samsung took depositions of Samsung executives. (Id. Ex. H.) The Court also held multiple informal discovery conferences with both parties. (Dkt. Nos. 91, 95, 103, 130.) In August 2021, the parties cross-moved for summary judgment. (Dkt. Nos. 145, 150.) The Court granted, in part, and denied, in part, the motions for summary judgment. (Dkt. No. 186.)

In early December 2021, the parties had a three-day jury trial before Judge Scarsi regarding damages. The jury found that Netlist did not prove it suffered damages as a result of Samsung's failure to fulfill Netlist's orders. (Dkt. No. 280.) The Court entered judgment for Netlist on the two breach of contract claims and awarded nominal damages in the amount of $1.00 for both claims. (Dkt. No. 306.) The Court also

entered declaratory judgment that Netlist properly terminated the JDLA and that Samsung's licenses and rights under the JDLA have ceased.  (Id.)

### III.   SUMMARY OF LEGAL ARGUMENTS

In this Motion for Fees and Expenses, Netlist contends that Samsung failed to admit certain facts and Netlist incurred expenses associated with proving those facts through other means.  (Mot. at 7[1].)  Netlist argues that pursuant to Rule 37(c)(2), it is entitled to its fees and expenses, as sanctions, incurred as a result of proving these facts through depositions, document discovery, and its summary judgment motion.  (Id.) Netlist asserts Samsung must pay these sanctions because none of the exceptions to Rule 37(c)(2)(A)–(D) apply.  (Id. at 25.)

Specifically, Netlist moves for fees and expenses related to 26 RFAs within three categories.  The first category (RFA Nos. 5, 6, 27-29, 30-32, 34-41) pertain to whether Samsung fulfilled Netlist's orders for NAND and DRAM products (referred to later as the "Supply RFAs").  (Id. at 8.)  The second category (RFA Nos. 7, 10, 46) relate to tax proceedings in Korea, which adjudicated Samsung's withholding of $1.32 million (referred to later as the "Tax RFAs").  (Id. at 12.)  The final category (RFA Nos. 13, 14, 15, 50, 52, 53, 55) relate to Netlist's termination of the JDLA (referred to later as the "Termination RFAs.")  (Id. at 13.)

Netlist seeks a total of $657,045.02 in fees and costs under Rule 37(c)(2).  (Id. at 31.)  It supports the reasonableness of its fee request with declarations from its counsel, information regarding rates in comparable forums, and evidence of its attorneys' skills and expertise.  (Id. at 27–30; see also Dkt. No. 288-1, Decl. of Jason Lo ("Lo Decl.").)

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

In opposition, Samsung claims that Netlist's Motion is procedurally deficient and substantively meritless.  (Opp'n at 14–23.)  In support of its procedural argument, Samsung contends that the Motion fails to comply with Local Rule 37's meet-and-confer requirement, and that the Motion exceeds Local Rule 11-6's 25-page limit for briefs.  (Id. at 14–18.)  Samsung also argues that its objections to the at-issue RFAs were either upheld or unchallenged.  (Id. at 15–16.)  In particular, Samsung argues that Netlist cannot demand sanctions where it unsuccessfully moved to overrule Samsung's objections to the RFAs.  (Id. at 15.)  Samsung claims that this was the circumstance in half of the at-issue RFAs, namely for RFA Nos. 10, 27, 28, 29, 30, 31, 32, 34, 35, 37, 38, 39, 40, 41.  (Id. at 16.)  Samsung further claims that Netlist waived its right to demand sanctions when it did not move to challenge the validity of Samsung's objections, namely for RFA Nos. 5, 6, 7, 13, 14, 15, 50, 52, 53, 55.  (Id. at 16.)  Lastly, Samsung asserts that its original objections must be ruled on prior to awarding sanctions.  (Id.)

Regarding its substantive argument, Samsung maintains that its responses were factually accurate or that its responses fall within one of the Rule 37(c)(2)(A)–(D) exceptions, thereby precluding the imposition of sanctions.  (Id. at 18–21.)  Finally, Samsung argues that Netlist's requested expenses are unreasonable, and lack sufficient evidence to support the reasonableness of Netlist's proposed hourly rate and hours spent.  (Id. at 23—27.)

## IV.  **LEGAL STANDARD**

In determining whether to award sanctions based on the failure to admit requests for admission, the Court applies Rule 37(c)(2).  Rule 37(c)(2) states the following:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the

reasonable expenses, including attorney's fees, incurred in making that proof.  The court must so order unless:

> (A) the request was held objectionable under Rule 36(a);
> (B) the admission sought was of no substantial importance;
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).  Enforcement of Rule 37 "encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs."  Marchand v. Mercy Med. Ctr., 22 F.3d 933, 936 (9th Cir. 1994).  For Rule 37(c) motions, a district court abuses its discretion if it "does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact."  Id. (citation omitted).

After reviewing the parties' arguments, it appears the parties seek to apply Rule 37(c)(2) differently.  For example, the parties differ on when the Court decides whether objections are well-founded.  One party argues the Court first decides whether objections are well-founded in order to decide whether a sanction is granted.  The other party suggests objections are not part of the analysis unless they fit one of the Rule 37(c)(2) exceptions.  Also, the parties disagree on who bears the burden at each stage of the analysis.  At the hearing for this Motion, the Court asked each party their view on how Rule 37(c)(2) should be applied and where the burdens lay.  (Dkt. No. 307.)  As the moving party, Netlist contends that the language of Rule 37(c)(2) and the Ninth Circuit's decision in Marchand require the moving party first demonstrate that the RFAs were on issues it later proved.  (Id.)  Netlist further argued that it then falls upon the other side to seek refuge in any of the Rule 37(c)(2) exceptions.  (Id.)  Samsung did not offer an opinion regarding which party bears the burden of proving the matters true, but suggested that that the burden of proof lies with Netlist as the moving party to establish

1    that none of the Rule 37(c)(2)(A)–(D) exceptions apply.  (Id.)  Specifically, Samsung

2    argued at the hearing that Netlist must prove that Samsung's responses were

3    unreasonable, made in bad faith, or material to its claims.  (Id.)

4           In this case, the methodology of the analysis and related burdens may be issue

5    determinative.  As a result, this Court must first decide the proper framework for

6    determining Rule 37(c)(2) sanctions.  Upon review of dozens of cases within the Ninth

7    Circuit, the Court finds that there is no consistent framework being applied to evaluate

8    whether to award Rule 37(c)(2) sanctions.  These cases analyzed Rule 37(c)(2) motions

9    by utilizing various methods, such as:  (1) applying the most applicable exception;

10   (2) analyzing whether the responding party failed to admit the request for admission

11   and/or whether the moving party later proved the matter true, and then considering the

12   exceptions; or (3) assessing the sufficiency of the request or employing a mixed

13   approach.

14          In most cases, the first and only step in the analysis is to identify and apply the

15   most applicable Rule 37(c)(2)(A)–(D) exception.  See, e.g., In re Gilman, No. 1:11-BK-

16   11603-VK, 2019 WL 3096872, at *13 (B.A.P. 9th Cir. July 12, 2019), aff'd sub nom.

17   Phillips v. Gilman, 836 F. App'x 511 (9th Cir. 2020) (applying exceptions first); Su v.

18   Nat'l Aeronautics & Space Admin., No. 5:09-CV-02838-EJD, 2016 WL 4719274, at *4

19   (N.D. Cal. Sept. 9, 2016), aff'd sub nom. Haiping Su v. Nat'l Aeronautics & Space

20   Admin., 711 F. App'x 444 (9th Cir. 2018) (same); Mane v. Tri-City Healthcare Dist., No.

21   05CV397-WQH (CAB), 2007 WL 935624, at *4 (S.D. Cal. Mar. 21, 2007) (same).

22   Although the majority of cases applied the Rule 37(c)(2)(A)–(D) exceptions as the first

23   step in its analysis, it is unclear to the Court whether these cases were doing so out of

24   judicial efficiency, because they addressed only the parties' arguments, or for another

1   reason.

2       On the other hand, some cases have closely followed the explicit language of the

3   rule and its presumptive methodology.  These cases analyzed first whether the

4   responding party failed to admit the request for admission and/or whether the moving

5   party later proved the matter true, before considering the Rule 37(c)(2) exceptions.  See,

6   e.g., Johnson v. Sandhu, No. 2:13-CV-01783 JAM, 2015 WL 429673, at *2 (E.D. Cal.

7   Feb. 2, 2015) (finding that opposing party failed to admit RFA and that moving party

8   later proved the fact before applying exceptions); Magnetar Techs. Corp. v. Intamin,

9   Ltd, No. SA CV 07-1052 GAF (JCGx), 2013 WL 12081817, at *3 (C.D. Cal. July 25, 2013),

10   aff'd sub nom. Magnetar Techs. Corp. v. Intamin, Ltd., 801 F.3d 1150 (9th Cir. 2015)

11   (determining whether moving party proved the truth of the RFAs before applying

12   relevant exceptions).

13       Finally, some cases first assessed the sufficiency of the original request for

14   admission and the response, or employed a mixed approach of the above frameworks.

15   See, e.g., Marchand, 22 F.3d at 937–39 (analyzing the sufficiency of opposing party's

16   response for an RFA, but applying the reasonable grounds exception for the rest of the

17   RFAs); Graham v. Cnty. of Los Angeles, No. CV 10-05059 DDP (Ex), 2012 WL 5363533,

18   at *2 (C.D. Cal. Oct. 30, 2012) (applying the reasonable grounds exception for some

19   RFAs, but analyzing whether opposing party's response was justified for other RFAs).

20   In short, none of these decisions specifically discussed a methodology nor described in

21   detail the respective burdens of proof for Rule 37(c)(2) sanctions.

22       Because there is no clearly established binding framework to assess Rule 37(c)(2)

23   motions, the Court turns to the explicit language of the rule.  Rule 37(c)(2) provides that

24   "[i]f a party fails to admit what is requested under Rule 36 and if the requesting party

later proves a document to be genuine or matter true," then the Court must impose a sanction "*unless*" an exception applies.  Fed. R. Civ. P. 37(c)(2) (emphasis added).  Rule 37(c)(2)'s conditional language makes clear that that the moving party must first establish that the matter at issue was not admitted and it was later proven true.  See Johnson, 2015 WL 429673, at *2 ("Because Plaintiff failed to admit . . . and Defendant later proved this fact when moving for summary judgment, Rule 37(c)(2) does, arguably, apply."); see also Magnetar, 2013 WL 12081817, at *3 ("The motion requires the Court to determine whether [Defendant] adequately proved the truth of Requests Nos. 2 and 3.").

     If the moving party meets this burden, then the Court must order sanctions in the amount of reasonable expenses unless an exception applies.  See Fed. R. Civ. P. 37(c)(2)(A)–(D).  It makes sense, then, to place the burden on the party seeking to avoid the sanction to prove that one of these exceptions applies.  Case law supports this.  See Marchand, 22 F.3d at 939 (finding that reasonable grounds exception did not apply because opposing party "present[ed] no other evidence that could reasonably support his denial of causation."); see also Diamond State Ins. Co. v. Deardorff, No. 1:10-CV-00004 AWI, 2011 WL 2414391, at *4 (E.D. Cal. June 8, 2011) (evaluating opposing party's evidence for reasonable grounds exception).  Moreover, a similar burden of proof framework applies in the motion to compel context, where the responding party must establish its objections are well-founded to avoid an order to compel.  See United States v. McGraw-Hill Cos., Inc., No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) ("Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance.  In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of

clarifying, explaining, and supporting its objections with competent evidence."). There is no reason to believe Rule 37(c)(2) sanctions would alter the burden on a responding objecting party.

The purpose of requests for admission as a discovery device is to reduce the number of material facts to be tried. See Fed. R. Civ. P. 36 advisory committee notes to 1970 amendment. This Court seeks to effectuate the purpose of requests for admissions and the language of Rule 37(c)(2). See Marchand, 22 F.3d at 936 ("Enforcement encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify those issues wastes the resources of parties and courts."); see also Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.").

## V.    ANALYSIS

After considering dozens of cases, the purpose of Rules 36 and 37, the explicit language of Rule 37(c)(2), and the issues raised by the parties in this Motion, it is the Court's belief that the following framework should be applied in determining whether to award Rule 37(c)(2) sanctions: First, the burden is on the moving party to demonstrate that the matter asserted in a request for admission was not admitted by the responding party and was later proven true by the moving party. Once the moving party has made this showing, the Court must issue a sanction. Then, to avoid a sanction, the responding party has the burden to establish that one of the Rule 37(c)(2)(A)–(D) exceptions applies. See Fed. R. Civ. P. 37(c)(2)(A)–(D). The Court applies this methodology below.

### SUPPLY RFAS

The first set of RFAs, referred to by the parties as the "Supply RFAs" (Nos. 5, 6,

27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 40, and 41), relate to whether Samsung placed a limit on the amount of NAND and DRAM products Netlist can purchase.

### A.    Request for Admission No. 6

Beginning with RFA No. 6, Netlist asked Samsung to admit that Samsung supplied NAND and DRAM Products to other companies at the same time as Netlist's requests for orders.  The RFA and Samsung's response are as follows:

**Request for Admission No. 6:**

Admit that Samsung supplied NAND and DRAM Products to other companies in the same fiscal quarters that Netlist's requests for products were unfulfilled, denied, restricted, limited, or reduced.

**Response to Request for Admission No. 6:**

Defendant incorporates by reference its general objections.  Defendant objects to this request on the [sic] to the extent that it calls for a legal conclusion.  Defendant also objects to this request on the basis that the terms "unfulfilled," "denied," "restricted," "limited," or "reduced" are vague, ambiguous, and nonsensical.  Defendant also objects to this request to the extent that it seeks confidential, proprietary, or trade secret information.

Subject to and without waiving those objections, Defendant responds as follows: Admit that Defendant, directly and through its subsidiary, supplies NAND and DRAM products to companies other than Netlist.

(Mot. Ex. C, at 6–7.)

Netlist argues that Samsung refused to admit RFA No. 6 when it responded with "the vague statement that Samsung supplies products 'to companies other than Netlist.'" (Mot. at 12.)  Samsung counters that it did not fail to admit the RFA but rather sufficiently responded based on its response to the RFA and its response to Netlist's Statement of Undisputed Facts ("SUF"), where Samsung "admitted that it did not fully

1  fulfil all of Netlist's requests during *every* fiscal quarter between February 1, 2017 to

2  July 15, 2020."  (Dkt. No. 168-1 at 37–43, 46–54[2]; Opp'n at 20.)

3      The Court finds that Samsung admitted RFA No. 6.  Samsung states:  "Admit that

4  Defendant, directly and through its subsidiary, supplies NAND and DRAM products to

5  companies other than Netlist."  (Mot. Ex. C, at 6–7.)  As such, applying the framework

6  set forth above, Netlist has not established that Samsung failed to admit RFA No. 6.

7  Rule 37(c)(2) sanctions are not appropriate.  See Fed. R. Civ. P. 37(c)(2).

8      **B.    Request for Admission Nos. 27 to 29**

9      Next, RFA Nos. 27 to 29 concern whether Samsung placed a cap or limit on

10 Netlist between February 1, 2017 and May 18, 2017.  The text for RFA Nos. 27 to 29 are

11 nearly identical, as well as the responses.  For brevity's sake, the Court notes the

12 differences in brackets.

13 **Request for Admission Nos. 27–29:**

14 Admit that at some point between February 1, 2017 and May 18, 2017,
   Samsung set a cap or [allocation limit] on the amount of NAND and DRAM
15 Products that Netlist could purchase from Samsung [or that Samsung would
   support].
16

17 **Amended Response to Request for Admission Nos. 27–29:**

   Defendant incorporates by reference its general objections.  Defendant
18 objects to this request on the basis that it is vague, ambiguous, and
   nonsensical.  Defendant further objects to this request to the extent that it
19 calls for facts not within Defendant's knowledge.

20 Defendant also objects to this request to the extent that it seeks confidential,
   proprietary, or trade secret information.  Defendant's fact investigation is
21

22 [2] Netlist did not attach exhibits of certain evidence that it relied on, nor did it request
   the Court to take judicial notice of the record.  Nevertheless, the Court takes judicial
23 notice of its own records.  See Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011,
   1034 (C.D. Cal. 2015) (citing to various authorities permitting judicial notice of court
24 records and taking judicial notice of court's own files and records).

not yet complete, and Defendant reserves the right, without assuming any obligation, to supplement its response.

Subject to and without waiving its objections, Defendant responds as follows:  admit only that Defendant has indicated routinely to Plaintiff throughout the time period from November 12, 2015 to present – as it would with any other similarly situated customer during the same time period – that it is unable to support every request for products, and that Samsung ultimately did not support requests that it indicated it is unable to support.

(Mot. Ex. G, at 16–19.)

Netlist contends that Samsung failed to admit these RFAs because it merely copied and pasted the same response without answering the substance of Netlist's requests.  (Mot. at 9.)  Samsung replies that its responses were an admission that it "did not always supply product to Netlist from February 1, 2017 to July 15, 2020."  (Opp'n at 19.)

The Court finds that Samsung failed to admit RFA Nos. 27 to 29.  In particular, RFA Nos. 27 to 29 ask Samsung to admit that it set a "cap or allocation limit" on NAND and DRAM products.  (Mot. Ex. G, at 16–19.)  Samsung responded in relevant part, "admit only that Defendant has indicated routinely to Plaintiff throughout the time period from November 12, 2015 to present . . . that it is unable to support every request for products, and that Samsung ultimately did not support requests that it indicated it is unable to support."  (Id.)  Samsung's response did not admit whether it set a "cap or allocation limit" within the time period in the RFA.

Netlist must next establish it later proved these RFAs true.  In order to do so, among other things, Netlist points to two items:  an email written by a Samsung executive and Samsung's Statement of Genuine Disputes of Material Fact ("Statement of Genuine Disputes").  (Dkt. Nos. 142-4, 168-1.)  Through the Samsung executive's email, Netlist demonstrated that on April 21, 2017, Samsung executive Mr. Arnold Kim

instructed colleagues in an email to "[p]lease manage the sales [to Netlist] to dwindle

down." (Dkt. No. 142-4.)  Netlist points to SUF 76, regarding the same email.  SUF 76

states:  "On April 21, 2017, Samsung sales executive Arnold Kim referenced a prior

discussion concerning Netlist and instructed several colleagues to 'Please manage the

sales to dwindle down slowly.'" (Dkt. No. 168-1 at 50).  Samsung responded to SUF 76,

"Undisputed," and did not cite to any controverting evidence.  (Id.); see C.D. Cal. R. 56-3

(the Court "may assume that the material facts as claimed and adequately supported by

the moving party are admitted to exist" unless controverted by evidence).

Netlist also points to SUF 78.  SUF 78 states:  "On May 15, 2017, Mr. Knuth, was

instructed to 'not accept' certain purchase orders from Netlist." (Dkt. No. 168-1 at 50–

51.)  Samsung responded:  "*Disputed to the extent* Netlist implies changes in course of

dealing in mid-2017, for the same reasons and evidence identified in response to No. 74,

above." (Id. (emphasis added).)  The Court interprets the phrase "disputed to the

extent" to mean *admitted except*.  Read in this manner, Samsung's response admits the

content of SUF 78, which demonstrates that Samsung's sales lead for Netlist, Mr. Neal

Knuth, was instructed to "not accept" orders from Netlist.

Therefore, the Samsung email and Samsung's responses to SUF 76 and 78 prove

true RFA Nos. 27 to 29.  Specifically, Netlist proves that Samsung set a cap or limit on

the amount of NAND and DRAM Products that Netlist could purchase from Samsung

between February 1, 2017 and May 18, 2017.  Finding that Samsung did not admit, and

Netlist later proved RFA Nos. 27 to 29 to be true, Rule 37(c)(2) sanctions are

appropriate unless Samsung is able to establish an exception applies.

Relevant here, pursuant to Rule 37(c)(2)(B), the Court must order Samsung to

pay reasonable expenses and attorney's fees incurred in proving the matter true unless

1    "the admission sought was of no substantial importance." Fed. R. Civ. P. 37(c)(2)(B).

2    An admission is substantially important if it is "'material to the disposition of the case,'

3    meaning that it tends to prove or disprove one of the disputed elements of the claim.

4    The importance of the disputed fact is assessed at the time the request for admission is

5    made, not at the end of the case." McCarthy v. Ameritech Pub., Inc., 763 F.3d 488, 492

6    (6th Cir. 2014) (citations omitted).

7             In both its papers and at the hearing, Samsung argues that the "[s]upply RFAs

8    sought information that Netlist already had." (Opp'n at 20–21; Dkt. No. 307.)  The

9    Court interprets this as asserting the substantially important exception under Rule

10   37(c)(2)(B).  Samsung relies upon Mane v. Tri-City Healthcare District, where the court

11   held that two RFAs were not substantially important because the moving party already

12   had "uncontroverted evidence" in the form of deposition testimony that proved each of

13   the RFAs at issue and therefore denied sanctions.  2007 WL 935624, at *4.  In Mane, the

14   moving party deposed the relevant party in August 2004, and served the two RFAs at

15   issue in January 2006.  Id.  Here, as Netlist argued at the February 16, 2022 hearing,

16   Netlist served its RFAs and deposed key individuals contemporaneously.  (Dkt. No.

17   307.)  As such, the Court finds Mane distinguishable from the circumstances here.

18            Samsung also argues that Netlist had invoices and purchase orders in its

19   possession and thus, "Netlist could not have been materially impacted" because it

20   obtained no new information from the RFAs.  (Opp'n at 21.)  In contrast, Netlist

21   maintains that RFA Nos. 27 to 29 are substantially important to proving a "material

22   breach" under the JDLA because they establish that Samsung continuously imposed a

23   cap or limit on Netlist's orders.  (Dkt. No. 144-1 at 13; Reply at 5.)

24

Samsung's assertion that Netlist already had evidence in their possession does not absolve Samsung of its duty to admit the RFAs at issue. See Brockmann v. Bd. of Cnty. Comm'rs of Cnty. of Shawnee, 404 F. App'x 271, 288 (10th Cir. 2010) ("The fact that Plaintiffs had already provided the information in another form does not relieve Plaintiffs of their obligation to comply with Rule 36(a)(4)"). As such, the Court disagrees with Samsung. RFA Nos. 27 to 29 are important because they are relevant to establishing a "material breach" under the JDLA. Cf. Wash. State Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp, 59 F.3d 793, 806 (9th Cir. 1995) (holding that RFA asking plaintiff to admit pollutants posed an immediate risk was not substantially important because plaintiff's claim did not require such a showing). The exception under Rule 37(c)(2)(B) does not protect Samsung from sanctions.

Second, Samsung also argues that the reasonable grounds exception of Rule 37(c)(2)(C) applies. (Opp'n at 19.) The rule states that the Court must order sanctions unless "the party failing to admit had a reasonable ground to believe that it might prevail on the matter." Fed. R. Civ. P. 37(c)(2)(C). Here, Samsung asserts that "Netlist did not argue that these admissions were inaccurate, and therefore cannot argue that Samsung did not have 'reasonable grounds'" to believe it would prevail on the matter under [FRCP] 37(c)(2)(C). (Opp'n at 19.) Samsung does not cite to any evidence to support that it had a reasonable ground to believe it would prevail on the matter.

Samsung attempts to shift the burden to Netlist to prove that Samsung did not have reasonable grounds to believe that it would prevail. However, this Court will not do so. Placing the burden for this issue on Netlist is not supported by any case law or the language of the rule. Instead, the burden is on Samsung, and Samsung fails to establish that it had reasonable grounds to believe it would prevail on the matter. The

exception under Rule 37(c)(2)(C) does not apply.  Accordingly, the Court finds that neither of Samsung's proffered Rule 37(c)(2) exceptions apply and sanctions are appropriate for Samsung's failure to admit the matters in RFA Nos. 27 to 29.

## C.   Request for Admission Nos. 32, 34, and 35

RFA Nos. 32, 34, and 35 relate to whether Samsung allocated any orders of NAND or DRAM products for Netlist in May 2017.  The RFAs and Samsung's relevant responses are as follows:

**Request for Admission No. 32:**

Admit that in May 2017, Samsung informed Netlist that it would not allocate any NAND or DRAM Products for sale to Netlist.

**Request for Admission No. 34–35:**

Admit that in May 2017, Samsung stopped accepting [supporting] any orders for NAND or DRAM Products from Netlist.

**Amended Response to Request for Admission Nos. 32, 34–35:**

Defendant incorporates by reference its general objections.  Defendant objects to this request on the basis that it is vague, ambiguous, and nonsensical.  Defendant further objects to this request to the extent that it calls for facts not within Defendant's knowledge.

Defendant also objects to this request to the extent that it seeks confidential, proprietary, or trade secret information.  Defendant's fact investigation is not yet complete, and Defendant reserves the right, without assuming any obligation, to supplement its response.

Subject to and without waiving its objections, Defendant responds as follows:  admit only that Defendant has indicated routinely to Plaintiff throughout the time period from November 12, 2015 to present – as it would with any other similarly situated customer during the same time period – that it is unable to support every request for products, and that Samsung ultimately did not support requests that it indicated it is unable to support.

(Mot. Ex. G, at 22–26.)

16

Netlist argues that Samsung's responses fail to admit the RFAs.  (Mot. at 9.)  In relevant part, Samsung's amended responses stated, "admit only . . . that it is unable to support every request for products" from "November 12, 2015 to present."  (Id.)  The Court agrees the responses do not amount to an admission by Samsung because they do not specify whether Samsung stopped accepting or supporting orders by Netlist during the relevant time period in May 2017.  As such, Samsung failed to admit RFA Nos. 32, 34, and 35 for purposes of Rule 37(c)(2).

Netlist asserts it later proved these matters true.  Netlist points to its Partial Motion for Summary Judgment, where it relies on an email from two Samsung employees.  In the email, the two Samsung employees confirmed they notified Netlist that it would not allocate any NAND or DRAM products to Netlist in the third quarter of 2017. (Dkt. No. 142-5 at 2–3.)  Further, Netlist points to SUF 77, concerning the same email, to which Samsung responded "[u]ndisputed as to content of document."  (Dkt. No. 168-1 at 50.)  As such, Netlist has established it proved the matters true and sanctions are appropriate unless Samsung establishes that an exception applies.

Samsung asserts the same two exceptions under Rule 37(c)(2)(B) and (C) for all Supply RFAs.  However, RFA Nos. 32, 34, and 35 are substantially important to proving a "material breach" under the JDLA.  (Dkt. No. 144-1 at 13.)  Additionally, Samsung did not establish it had reasonable grounds to believe it may prevail.  (Opp'n at 19.)  Therefore, Netlist is entitled to sanctions for RFA Nos. 32, 34, and 35 because Samsung has not established any of the Rule 37(c)(2) exceptions.

## D.   Requests for Admission Nos. 5, 30, and 31

Netlist also seeks sanctions with regard to RFA Nos. 5, 30, and 31, which are duplicative of RFA Nos. 32, 34, and 35.  Specifically, RFA Nos. 5, 30, and 31 asked

Samsung to admit that the cap or limit it set on Netlist was set at "zero" at times. Samsung claims these RFAs are immaterial because the Court ruled on summary judgment that Samsung was obligated to "fulfill *all* of Netlist's orders."  (Opp'n at 20 (quoting Dkt. No. 186 at 9-10).)  The Court finds that RFA Nos. 5, 30, and 31, which utilize the same language of "zero" allocation or amount, are duplicative of RFA Nos. 32, 34, and 35.  The Court thus declines to award Netlist sanctions for RFA Nos. 5, 30, and 31.  See Unity Courier Serv. Inc. v. Hudson Ins. Co., No. 2:18-CV-08143-RGK-GJS, 2019 WL 6974309, at *5 (C.D. Cal. Nov. 6, 2019) (denying motion for fees when one RFA was duplicative of another RFA).

### E.   Request for Admission Nos. 36 to 38

RFA Nos. 36 to 38 concern whether Samsung placed a cap or limit on Netlist between May 19, 2017 to June 14, 2020.  The RFAs and Samsung's responses are as follows:

**Request for Admission Nos. 36–38:**

Admit that from May 19, 2017 to June 14, 2020, Samsung maintained a cap or [allocation limit] on the amount of NAND and DRAM Products that Netlist could purchase from Samsung [or that Samsung would support].

**Amended Response to Request for Admission Nos. 36–38:**

Defendant incorporates by reference its general objections.  Defendant objects to this request on the basis that it is vague, ambiguous, and nonsensical.  Defendant further objects to this request to the extent that it calls for facts not within Defendant's knowledge.  Defendant also objects to this request to the extent that it seeks confidential, proprietary, or trade secret information.  Defendant's fact investigation is not yet complete, and Defendant reserves the right, without assuming any obligation, to supplement its response.

Subject to and without waiving its objections, Defendant responds as follows:  admit only that Defendant has indicated routinely to Plaintiff throughout the time period from November 12, 2015 to present – as it would with any other similarly situated customer during the same time period –

that it is unable to support every request for products, and that Samsung ultimately did not support requests that it indicated it is unable to support.

(Mot. Ex. G, at 26–29.)

Netlist asserts Samsung failed to admit these RFAs.  (Mot. at 8.)  Although the word "admit" is present, the response does not fairly address whether Samsung maintained a cap or limit during the relevant time period, namely between May 19, 2017 to June 14, 2020.  The Court finds that Samsung's response does not amount to an admission.

To establish it proved these matters true, Netlist proffers emails and Samsung's Statement of Genuine Disputes.  (Id. at 19.)  A review of this evidence reflects Netlist proved the matter true only for the time period of 2017 to 2019.  Netlist does not provide evidence that Samsung maintained a cap or limit in *2020*.[3]  Accordingly, Netlist has failed to establish it proved the matter true for 2020.  Sanctions are unwarranted under Rule 37(c)(2) for RFA Nos. 36 to 38.

## F.      Request for Admission Nos. 39 to 41

RFA Nos. 39 to 41 concern whether Samsung placed a cap or limit on Netlist between the specific time frame of June 15, 2020 to July 15, 2020.  The RFAs and Samsung's relevant responses are as follows:

### Request for Admission Nos. 39–41:

Admit that from June 15, 2020 to July 15, 2020, Samsung maintained a cap or [allocation limit] on the amount of NAND and DRAM Products that Netlist could purchase from Samsung [or that Samsung would support].

---

[3] RFA Nos. 36 to 38 asks about Samsung's supply from May 19, 2017 to June 14, 2020.

**Amended Response to Request for Admission Nos. 39–41:**

Defendant incorporates by reference its general objections. Defendant objects to this request on the basis that it is vague, ambiguous, and nonsensical. Defendant further objects to this request to the extent that it calls for facts not within Defendant's knowledge. Defendant also objects to this request to the extent that it seeks confidential, proprietary, or trade secret information. Defendant's fact investigation is not yet complete, and Defendant reserves the right, without assuming any obligation, to supplement its response.

Subject to and without waiving its objections, Defendant responds as follows: admit only that Defendant has indicated routinely to Plaintiff throughout the time period from November 12, 2015 to present – as it would with any other similarly situated customer during the same time period – that it is unable to support every request for products, and that Samsung ultimately did not support requests that it indicated it is unable to support.

(Mot. Ex. G, at 29–33.)

Similar to RFA Nos. 36 to 38, Netlist establishes that Samsung failed to admit these RFAs because Samsung's response does not address whether it maintained a cap or limit during the relevant time period. Also similarly, Netlist fails to establish it proved RFA Nos. 39 to 41 true because, relying on the same evidence, it did not establish Samsung maintained a cap or limit in *2020*. (Mot. at 19.) Accordingly, Netlist has not established it is entitled to sanctions for RFA Nos. 39 to 41.

**TAX RFAS**

RFA Nos. 7, 10, and 46 are referred to by the parties as the "Tax RFAs." The Tax RFAs concern Samsung's withholding of $1.32 million from Netlist and whether Korean tax authorities ultimately ruled that the withholding was not necessary. For context, Samsung deducted $1.32 million of the NRE fees to pay to the Korean tax authority. (Dkt. No. 168-1 at 29–31.) After Netlist sought a refund from Samsung, Samsung referred Netlist to the Korean tax authorities who ultimately held that the withholding was not necessary. (Dkt. Nos. 144-7, 145-4.)

### A.    Request for Admission No. 7

RFA No. 7 and Samsung's response are as follows:

### Request for Admission No. 7:

Admit that Samsung withheld $1,320,000 from the $8 million NRE fee to
be paid to Netlist under the Agreement.

### Response to Request for Admission No. 7:

Defendant incorporates by reference its general objections.  Subject to and
without waiving those objections, Defendant responds as follows:  *Deny*.
Defendant reported and paid tax withholding of $1,320,000 to the Korean
National Tax Service (NTS).  Defendant did not withhold the funds.

(Mot. Ex. C, at 7 (emphasis added).)

Netlist establishes Samsung explicitly denied and thus failed to admit RFA No. 7.
In order to establish it proved the matter true, Netlist proffers Samsung's Statement of
Genuine Disputes, particularly its response to SUF 46.  SUF 46 states:  "After the
execution of the JDLA, Samsung withheld $1,320,000 of the $8,000,000 non-recurring
engineering fee owed to Netlist."  (Dkt. No. 168-1 at 26.)  Samsung's response to SUF 46
states, in part:  "Disputed only to the extent that this statement implies that Samsung
withheld the $1,320,000 and kept it for its own.  Samsung deducted 16.5% from the
$8,000,000 non-recurring engineering fee and paid that amount to the Korean
National Tax Service."  (Id.)  This more limited dispute language used by Samsung
reflects some concession.  But its similarity to the original RFA response cannot be
denied.  As such, Netlist has established it proved RFA No. 7 true.  Sanctions are
appropriate unless Samsung establishes an exception applies.

Samsung appears to assert that the reasonable grounds exception applies under
Rule 37(c)(2)(C) by arguing that its response was "factually accurate."  (Opp'n at 21.)
Samsung's response to RFA No. 7 was that it "reported and paid tax withholding of

21

$1,320,000 to the Korean National Tax Service (NTS).  Defendant did not withhold the funds." (Mot. Ex. C, at 7.)  For this reason, Samsung argues that it "never disputed the $1,320,000 tax withholding at any point." (Opp'n at 21); see Marchand, 22 F.3d at 938 (holding that sanctions were not warranted when other party answered the question asked in the RFA).  The Court agrees.  Consequently, sanctions are not appropriate for RFA No. 7 because the exception under Rule 37(c)(2)(C) applies.

### B.   Request for Admission No. 10

Netlist asked Samsung to admit that Samsung told the Korean Tax Authority that Samsung can use patents belonging to Netlist without paying royalties.  The RFA and Samsung's response are as follows:

**Request for Admission No. 10:**

Admit that Samsung stated to the Korean Tax Authority that Samsung was able to use patents belonging to Netlist without paying royalties as a result of entering into the Agreement.

**Response to Request for Admission No. 10:**

Defendant incorporates by reference its general objections.  Defendant objects to this request on the grounds that the terms "Korean Tax Authority" and "patents belonging to Netlist" are vague, ambiguous, and nonsensical.

(Mot. Ex. C, at 8.)

Applying the Rule 37(c)(2) framework, Samsung's response to RFA No. 10 constitutes a failure to admit because it only asserts objections.  To establish it proved the matter true, Netlist cites to Samsung's Statement of Genuine Disputes, specifically its response to SUF 42. (Mot. at 13.)  SUF 42 states:  "Samsung stated to Korean tax authorities that its 'main reason for entering into the [JDLA] was . . . to resolve the risk of Netlist, Inc. filing a patent infringement suit' against Samsung." (Dkt. No. 168-1 at 24.)  Samsung responded to SUF 42 as follows:  "Undisputed as to content of the

document." (Id.)  Although the SUF is similar to the RFA, Samsung's response to SUF

42 does not prove true RFA No. 10.  RFA No. 10 asks about Samsung's statements to the

Korean Tax Authority about the use of patents without paying royalties.  SUF 42, on the

other hand, involves Samsung's motivations for entering into the JDLA.  Netlist has not

met its burden and sanctions are not appropriate for RFA No. 10.

### C.    Request for Admission No. 46

RFA No. 46 asks Samsung to admit the Korean Tax Tribunal's decision.  The RFA

and Samsung's response are as follows:

**Request for Admission No. 46:**

Admit that the Korean Tax Tribunal determined that it was not necessary
under Korean law to withhold $1.32 million for taxes on the $8 million fee
owed to Netlist under the Agreement.

**Response to Request for Admission No. 46:**

Defendant incorporates by reference its general objections.  Samsung
further objects to the extent that it seeks information protected by the
attorney-client or tax practitioner privilege or attorney work product
doctrine.  Defendant objects to this request to the extent that it seeks a legal
conclusion.   Subject to and without waiving its objections, Defendant
responds as follows:  *deny*.

(Mot. Ex. E, at 21 (emphasis added).)

Here, Samsung's response to "deny" constitutes a failure to admit RFA No. 46.

To establish it proved the matter true, Netlist provides multiple pieces of evidence.

Netlist points to a decision from the Korean Tax Tribunal establishing RFA No. 46 to be

true.  (Dkt. No. 144-7.)  The decision is accompanied by a declaration from its counsel,

Raymond Lamagna, which certifies that the Notice of Tax Appeal Decision is from the

Korean Tax Tribunal.  (Dkt. No. 145-4 at 4.)  In addition, Netlist proffers Samsung's

response to SUF 47 which effectively admits that the $1.32 million "was not subject to

[a] royalty withholding tax under the applicable law" because Samsung did not dispute that part of the SUF.  (Dkt. No. 168-1 at 27.)  Finally, Netlist points to the Order for Motion of Summary Judgment in which the Court found, "[t]he Korean tax authority ultimately determined that the NRE fees were not subject to tax withholding."  (Dkt. No. 186 at 4.)  As to RFA No. 46, Netlist has established it later proved the matter true.

Samsung nevertheless argues sanctions are inappropriate because two exceptions apply.[4]  First, Samsung argues it had reasonable grounds to not admit the matter true.  See Fed. R. Civ. P. 37(c)(2)(C).  Samsung argues that it "truthfully denied" RFA No. 46 based on its "reasonabl[e] understanding that it was not a party to the . . . proceeding" and that "the Tribunal's decision only stated that Netlist was entitled to a refund – not that Samsung's initial withholding was unlawful."  (Opp'n at 22.)  Samsung fails to provide any evidence, other than the Korean Tax Tribunal's decision, to support its reasonable belief.

The Court is unpersuaded by Samsung's arguments.  RFA No. 46 does not ask Samsung to admit whether it was a party to the proceeding, nor does that fact impact Samsung's or Netlist's claims or defenses.  Moreover, the distinction that Samsung makes between a "refund" and whether the initial withholding is "unlawful" does not

---

[4] The Court finds that Samsung waived certain of its asserted objections when it did not reassert them in its Opposition.  Rather than asserting each original objection and providing the relevant explanations and evidence in its Opposition, Samsung merely refers to the RFAs and generally claims that it asserted substantive objections to them.  (Opp'n at 15–16).  Therefore, the Court determines that Samsung waived the objections that it failed to reassert and elaborate on in its Opposition.  See Orchestrate HR, Inc. v. Trombetta, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) ("[A] party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection.").

address the RFA and is unwarranted because it does not affect the Korean Tax Tribunal's ruling that the NRE fees were not subject to tax withholding.  (Id.)

Second, Samsung asserts the substantially important exception under Rule 37(c)(2)(B).  Samsung argues, without further explanation, that "the distinction between Netlist's desired admission and Samsung's truthful response was of no substantial importance."  (Id.)  In response, Netlist argues that Samsung failed to respond to the RFA because the Tribunal's ruling was based on whether Korean law allowed the withholding of taxes.  (Reply at 7.)  The Court finds that RFA No. 46 is substantially important to Netlist's breach of contract claim and Samsung denied it.  The NRE provision of the JDLA explicitly allows Samsung to "deduct any applicable withholding taxes" if such taxes are "required by applicable law."  (Dkt. No. 144-1 at 6.)  Because the Korean Tax Tribunal held that the NRE fees were not subject to tax withholding and RFA No. 46 asked Samsung to admit this fact, the RFA is substantially important to Netlist's claim.  Samsung has not established a Rule 37(c)(2) exception applies and, therefore, sanctions are appropriate.

**TERMINATION RFAS**

The final set of RFAs, referred to by the parties as the "Termination RFAs" (Nos. 13, 14, 15, 50, 52, 53, and 55), relate to Netlist's right to terminate the JDLA upon written notice to Samsung.

### A.   Request for Admission Nos. 13, 14, and 50

RFA Nos. 13, 14, and 50 ask Samsung to admit that it received Netlist's May 27, 2020 letter and a follow-up email informing Samsung of its breach.  RFA Nos. 13 and 14 and Samsung's responses are as follows:

**Request for Admission No. 13:**

Admit that Samsung received Netlist's letter dated May 27, 2020, notifying Samsung that Samsung had breached the Agreement.

**Request for Admission No. 14:**

Admit that Samsung received Netlist's email on or around June 12, 2020 or June 13, 2020, notifying Samsung that Samsung had breached the Agreement.

**Response to Requests for Admission Nos. 13 and 14:**

Defendant incorporates by reference its general objections.  Defendant objects to this request to the extent that it characterizes any communication by Netlist as a valid notification of breach.  Defendant also objects to this request on the basis that it has not yet completed its investigation of the facts relating to this action, and reserves the right, without assuming any obligation, to supplement its response.

(Mot. Ex. C, at 8–9.)

The Court finds that Samsung's response failed to admit RFA Nos. 13 and 14 because Samsung only asserted objections.  RFA No. 50 and Samsung's response are as follows:

**Request for Admission No. 50:**

Admit that, by June 14, 2020, Samsung had received Netlist's letter dated May 27, 2020, in which Netlist asserted that Samsung had breached the Agreement.

**Response to Request for Admission No. 50[5]:**

Defendant incorporates by reference its general objections.  Defendant objects to this request to the extent that it seeks or implies a legal conclusion.  Defendant also objects to this request on the basis that it has not yet completed its investigation of the facts relating to this action, and reserves the right, without assuming any obligation, to supplement its response.

---

[5] RFA No. 50 is mislabeled as RFA No. 45 in Exhibit F.

Subject to and without waiving its objections, Defendant responds as follows:  admit only that a letter dated May 27, 2020 was received by Defendant's mail room and returned to sender the next day.

**Supplemental Response:**  Defendant incorporates by reference its general objections.  Defendant objects to this request to the extent that it seeks or implies a legal conclusion.  Defendant also objects to this request on the basis that it has not yet completed its investigation of the facts relating to this action, and reserves the right, without assuming any obligation, to supplement its response.

Subject to and without waiving its objections, Defendant responds as follows:  admit only that *a* letter dated May 27, 2020 was received by Defendant's mail room and returned to sender the next day.  Otherwise, denied.

(Mot. Ex. E, at 23; Ex. F, at 34 (emphasis added).)

Netlist argues that Samsung refused to admit it received its May 27, 2020 letter. (Mot. at 20.)  In relevant part, Samsung's Supplemental Response states, "admit only that *a* letter dated May 27, 2020 was received by Defendant's mail room and returned to sender the next day.  Otherwise, denied."  (Id. Ex. F, at 34 (emphasis added).)  The Court agrees with Netlist that Samsung's response serves as a denial because it admitted that it received *a* letter dated May 27, 2020, not that it received Netlist's letter.  (Mot. at 14.)  The Court finds that Samsung's response failed to admit RFA No. 50.

To establish it proved the matters true, Netlist proffers Samsung's Statement of Genuine Disputes, specifically its response to SUF 127.  (Dkt. No. 168-1 at 75–76.)  SUF 127 states, "Samsung received Netlist's letter of May 27, 2020."  (Id.)  Samsung responded, "Disputed to the extent that it misstates the content of the cited Request for Admission and implies that Samsung received Netlist's letter *on* May 27, 2020."  (Id.)  Construing "disputed to the extent" to mean "admitted except," Samsung's response effectively admits that it received Netlist's May 27, 2020 letter.  Whether Samsung

received Netlist's letter *on* May 27, 2020 is immaterial to the RFAs.  As such, Netlist has proven true RFA Nos. 13, 14, and 50.

Samsung argues that it did not supplement its responses to RFA Nos. 13 and 14 because it agreed to respond to superseding requests which involve the same substance. (Opp'n at 23; Dkt. No. 294-1, Decl. of Christopher Lee ("Lee Decl.") at 3.)  The Court construes this argument as one falling under the reasonable belief exception pursuant to Rule 37(c)(2)(C).  Samsung provided as evidence its counsel's declaration to support its reasonable belief.  In contrast, Netlist's counsel stated in his declaration that it "never agreed that subsequent RFAs superseded or replaced earlier ones, and Netlist never waived or withdrew its earlier RFAs."  (Dkt. No. 300-1, Decl. of Raymond Lamagna ("Lamagna Decl.") at 3.)  Given the conflicting accounts of both counsels, the Court finds that Samsung has not met its burden for this exception.

Regarding RFA No. 50, Samsung contends that it "responded truthfully . . . by admitting that Netlist's May 27 letter had been delivered to its mail room but returned to sender."  (Opp'n at 22.)  However, the fact that Samsung "responded truthfully" does not relieve itself of its duty to admit or deny the RFA.  Furthermore, Samsung's argument does not fall within any of the enumerated exceptions under Rule 37(c)(2).  Therefore, this argument is unavailing.

With respect to all Termination RFAs, Samsung argues, without further explanation, that sanctions are inappropriate because the RFAs are not substantially important to the case.  (Id. at 23.)  Netlist contends that its requests were substantially important to its declaratory relief claim that "Netlist had properly served pre-termination and termination notices in conformity with the JDLA."  (Mot. at 20.)  The Court agrees with Netlist.  Netlist's termination rights under the JDLA are triggered

upon "written notice" to Samsung.  (Dkt. No. 144-1 at 13; Dkt. No. 186 at 4, 18.)  Netlist
propounded RFA Nos. 13, 14, and 50 to demonstrate it provided "written notice" by
asking Samsung to admit it received its May 27, 2020 letter.  Consequently, RFA Nos.
13, 14, and 50 are substantially important to establishing Netlist's right to terminate the
JDLA by written notice.  See McCarthy v. Ameritech Pub., Inc., 763 F.3d at 492
(defining substantial importance as "prov[ing] or disprov[ing] one of the disputed
elements of the claim").  As such, the Court finds that sanctions are warranted for
Samsung's failure to admit RFA Nos. 13, 14, and 50.

### B.    Request for Admission Nos. 15 and 52

Netlist also served RFA Nos. 15 and No. 52 relating to Samsung's lack of response
to Netlist's May 27, 2020 letter.  The RFAs and Samsung's response are as follows:

**Request for Admission No. 15:**

Admit that Samsung did not take action to cure the breach or to otherwise
respond to Netlist's letter dated May 27, 2020, notifying Samsung that
Samsung had breached the Agreement, within thirty days of receiving
the notification.

**Response to Request for Admission No. 15:**

Defendant incorporates by reference its general objections.  Defendant
objects to this request to the extent that it characterizes any communication
by Netlist as a valid notification of breach.  Defendant objects to this request
on the basis that it calls for a legal conclusion.

**Request for Admission No. 52:**

Admit that Samsung did not respond to Netlist's letter dated May 27, 2020,
within 30 days of Samsung having received the letter.

**Response to Request for Admission No. 52[6]:**

Defendant incorporates by reference its general objections.  Defendant objects to this request to the extent that it seeks or implies a legal conclusion.  Defendant also objects to this request on the basis that it has not yet completed its investigation of the facts relating to this action, and reserves the right, without assuming any obligation, to supplement its response.  Defendant objects to this request on the basis that the phrase "Samsung having received the letter" is vague and ambiguous.

**Supplemental Response:**  Defendant incorporates by reference its general objections.  Defendant objects to this request to the extent that it seeks or implies a legal conclusion.  Defendant also objects to this request on the basis that it has not yet completed its investigation of the facts relating to this action, and reserves the right, without assuming any obligation, to supplement its response.  Defendant objects to this request on the basis that the phrase "Samsung having received the letter" is vague and ambiguous.

Subject to and without waiving its objections, Defendant responds as follows:  as the date on which Defendant received the letter (or whether it was received at all) cannot be determined, Defendant refers Plaintiff to its response to Request for Admission No. 53.

(Mot. Ex. C, at 9; Ex. E, at 24; Ex. F, at 36.)

To establish it proved the matter true, Netlist points to Samsung's Statement of Genuine Disputes and Judge Scarsi's Order on the Motion of Summary Judgment.

Samsung's response to SUF 128 states:

On July 15, 2020, after having "not received a response from Samsung . . . let alone any cure of such breaches," Netlist sent a second letter by registered mail to the same addressee at Samsung stating that "Netlist ha[d] provided Samsung with notice of a material breach" but "ha[d] not received a response from Samsung regarding the material breaches set forth" in its earlier letter. Accordingly, Netlist terminating the JDLA, "effective immediately," because Samsung's breaches had "fundamentally undermined the purpose of the Agreement."

---

[6] RFA No. 52 is mislabeled as RFA No. 47 in Exhibit F.

(Dkt. No. 168-1 at 76.)  Samsung responded to SUF 128 that it "disputed on evidentiary grounds to the extent the document cited to in this statement is being offered to prove the truth of the matter asserted. . . . [and] to the extent that this statement implied that Samsung committed any breaches of the JDLA."  (Id.)  Samsung did not cite to any evidence to controvert the content of SUF 128.  See C.D. Cal. R. 56-3 (requiring evidence to controvert material facts in a summary judgment motion).  Netlist also cited to Judge Scarsi's Order on the Motion of Summary Judgment.  (Mot. at 16.)  In particular, Netlist asserts the Court held that the breaches "remain[ed] uncured" as of the termination, and that "Netlist's termination comport[ed] with the JDLA's termination method."  (Id.; Dkt. No. 186 at 18.)  As such, Netlist has established it proved the matters true as to RFA Nos. 15 and 52.

Samsung argues sanctions are nevertheless inappropriate because "the request was held objectionable under Rule 36(a)."  See Fed. R. Civ. P. 37(c)(2)(A).  Samsung argues that Netlist "improperly requested that Samsung admit the legal conclusion that Netlist's May 27, 2020 letter was a valid notification of breach."  (Opp'n at 13.)  Netlist counters that Federal Rule of Civil Procedure Rule 36(a)(1)(A) allows for admissions related to "facts, the application of law to fact, or opinions about either."  (Reply at 8–9.) The Court agrees with Netlist.  Therefore, the Court finds that RFA No. 15 does not improperly call for a legal conclusion.

Samsung also claims that it understood RFA Nos. 13-15 would be "superseded" by RFA Nos. 50-55 as a result of meet and confer efforts.  (Id.)  However, as described above, Netlist's counsel, Raymond Lamagna, stated in his declaration that "Netlist never agreed that subsequent RFAs superseded or replaced earlier ones, and Netlist never

1    waived or withdrew its earlier RFAs." (Lamagna Decl. at 3.)  As such, the Court finds

2    that none of the Rule 37(c)(2) exceptions asserted by Samsung apply to RFA No. 15.

3         Regarding RFA No. 52, Samsung contends that it "reasonably understood that

4    the subsequent communications between Samsung, Netlist, and their counsel regarding

5    the conduct of the litigation and a potential resolution constituted a response" to

6    Netlist's May 27, 2020 letter.  (Opp'n at 22–23.)  Samsung based its understanding on

7    the fact that this lawsuit was filed on May 28, 2020.  (Id. at 14.)  The Court is not

8    persuaded by Samsung's argument because it does not provide a basis for a reasonable

9    belief that "subsequent communications . . . constituted a response" to Netlist's letter.

10   (Id. at 22–23.)  To the contrary, such a belief is not reasonable and does not relieve

11   Samsung of its duty to respond to the RFAs.

12        Finally, Samsung asserts the substantially important exception.  See Fed. R. Civ.

13   P. 37(c)(2)(B).  Samsung claims, without any further explanation, that its "post-

14   litigation conduct was not of substantial importance to Netlist's claims."  (Id.)

15   Samsung's lack of response to Netlist's letter within 30 days of written notice triggered

16   Netlist's termination rights under the JDLA.  (Dkt. No. 144-1 at 13.)  Thus, the Court

17   finds that RFA No. 52 is substantially important to Netlist's breach of contract claim.

18   Samsung fails to establish an exception applies.  Accordingly, the Court finds that

19   Netlist is entitled to sanctions for RFA Nos. 15 and 52.

20        **C.    Request for Admission Nos. 53 and 55**

21        Netlist served RFA Nos. 53 and 55 asking Samsung to admit it "never responded"

22   and "had not asked to meet" one year after receiving Netlist's May 27, 2020 letter.  The

23   requests and responses are as follows:

24

1

**Request for Admission No. 53:**

2     Admit that Samsung never responded to Netlist's letter dated May 27, 2020, in which Netlist asserted Samsung had breached the Agreement.

3

4     **Response to Request for Admission No. 53:**

5     Defendant incorporates by reference its general objections. Defendant objects to this request to the extent that it seeks or implies a legal conclusion.  Defendant also objects to this request on the basis that it has not yet completed its investigation of the facts relating to this action, and reserves the right, without assuming any obligation, to supplement its response.

6

7

8     Subject to and without waiving its objections, Defendant responds as follows: *deny*.

9

10    **Request for Admission No. 55:**

11    Admit that, as of May 27, 2021, Samsung had not asked to meet with Netlist to discuss its letter dated May 27, 2020, in which it asserted Samsung had breached the Agreement.

12

13    **Response to Request for Admission No. 55:**

14    Defendant incorporates by reference its general objections.  Subject to and without waiving those objections, Defendant responds as follows:  *deny*.

15

16    (Mot. Ex. E, at 24–25 (emphases added).)

17         Samsung explicitly denied both RFA Nos. 53 and 55.  (Id.)  To establish it proved

18    the matters true, Netlist points to the same evidence as RFA Nos. 15 and 52.  (Mot. at

19    15–16.)  Nevertheless, Samsung argues, and the Court agrees, that RFA Nos. 53 and 55

20    are of no substantial importance to Netlist's claims.  Specifically, Samsung again asserts

21    that its "post-litigation conduct was not of substantial importance to Netlist's claims."

22    (Opp'n at 23.)  With regard to RFA No. 53, whether Samsung "never" responded to the

23    letter is immaterial.  Netlist's termination rights under the JDLA are implicated only if

24    Samsung does not respond within 30 days after written notice.  See McCarthy, 763 F.3d

at 492 (citations omitted) ("A fact is of substantial importance when it is 'material to the disposition of the case.'").  Similarly, with regard to RFA No. 55, whether or not Samsung had asked to meet with Netlist "as of May 27, 2021" is also immaterial because it concerns Samsung's actions one year after it was obligated to respond to Netlist under the JDLA.  As such, the Court finds that sanctions are not appropriate for RFA Nos. 53 and 55 because they are not substantially important.

## PROCEDURAL DEFICIENCIES

As a final matter, Samsung contends that Netlist's Motion is "procedurally deficient."  In particular, Samsung argues that Netlist failed to comply with Local Rule 37's meet and confer requirement, does not abide by Local Rule 11-6's page limit, and "bypasses" Magistrate Judges McCormick and Spaeth's adjudication of the discovery disputes.  (Opp'n at 14–18.)  With respect to Samsung's first argument, the Court finds that Local Rule 7-3, not Local Rule 37, applies to this motion regarding sanctions.  See Oculu, LLC v. Oculus VR, Inc., No. SACV 14-0196- DOC (JPRx), 2015 WL 12720305, at *2 (C.D. Cal. May 8, 2015) (finding Local Rule 37 inapplicable to a Rule 37 motion for sanctions).  The Court further finds that Netlist complied with Local Rule 7-3's conference requirement by conferring with opposing counsel at least seven days before filing the Motion.  See C.D. Cal. R. 7-3; (Mot. at 6) ("This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on January 3, 2022, during which time counsel for Defendant Samsung indicated that it would not consent to Netlist's motion or agree to any payment of fees or costs requested therein.")

Samsung also asserts that Netlist's Motion does not comply with Local Rule 11-6.  Netlist's Motion complies with Local Rule 11-6 because its memorandum of points and authorities is 25 pages in length.  See C.D. Cal. R. 11-6.  In addition, Samsung argues

that Netlist improperly attaches a twelve-page appendix to its Motion.  (Opp'n at 7, 18.)

Local Rule 11-7 states, "Appendices shall not include any matters which properly belong

in the body of the memorandum of points and authorities or pre-trial or post-trial brief."

C.D. Cal. R. 11-7.  Here, Appendix A is merely a table that consolidates the RFAs and

responses at issue.  (Mot. App. A.)  Netlist does not include additional legal arguments

into Appendix A.  Cf. Cheng Jiangchen v. Rentech, Inc., No. CV 17-1490-GW(FFMx),

2017 WL 10363990, at *4 (C.D. Cal. Nov. 20, 2017) (striking Appendix A as violating

Local Rule 11-6 because it "allows Defendants to make further arguments").  As such,

the Court exercises its discretion and will consider Appendix A.  See id. at *2 ("Courts

have discretion to strike documents for failing to comply with the local rules.").

Finally, Samsung argues that Netlist attempts to "bypass" the adjudication of

discovery disputes by Magistrate Judges McCormick and Spaeth and fails to move to

compel on the RFAs at issue.  (Opp'n at 16.)  However, a pre-trial motion to compel is

not required to seek sanctions under Rule 37(c)(2).  See House v. Giant of Md. LLC, 232

F.R.D. 257, 260 (E.D. Va. 2005) ("The courts therefore uniformly hold that a pre-trial

motion is not a prerequisite to relief under Rule 37(c)(2)."); see also Fed. R. Civ. P. 37

advisory committee notes to 1970 amendment (emphasis added) ("Rule 37(c) is

intended to provide *posttrial* relief in the form of a requirement that the party

improperly refusing the admission pay the expenses of the other side in making the

necessary proof at trial.")  Thus, the Court finds that this post-trial motion is proper.

## **SANCTIONS**

Rule 37(c)(2) allows for an award of "reasonable expenses, including attorney's

fees, *incurred in making that proof*."  Fed. R. Civ. P. 37(c)(2) (emphasis added).

Pursuant to Rule 37(c)(2), Netlist seeks a total of $657,045.02 in attorney's fees and

costs incurred to prove the facts within the RFAs at issue.  (Mot. at 31.)  In particular, Netlist seeks part of its fees for six depositions.  These depositions consist of two Rule 30(b)(6) designees, a Samsung sales representative and his boss, and two Samsung executives.  (Id. at 21–22.)  Netlist also seeks 20% of the fees for its motion for summary judgment.  (Id. at 23.)  Netlist seeks costs associated with both (1) translating documents used in its motion for summary judgment, and (2) a pro-rata cost for the deposition translators.  (Id. at 24.)  Lastly, Netlist seeks the fees for this Motion.  (Id. at 23.)

        In opposition, Samsung argues that Netlist's requested rates are unreasonable.  (Opp'n at 24.)  In particular, Samsung states that "no effort has been made to segregate time spent prior to the relevant discovery responses."  (Id. at 27.)  Samsung further contends that Netlist's rates are unreasonable based on the assertion its attorneys, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), spent 2,791.14 attorney hours on the issues presented by these RFAs.  (Id. at 28.)  In reply, Netlist states that many of these hours were performed by reasonably priced contract attorneys who reviewed "voluminous documents that Samsung produced" at an average rate of $67.84 per hour.[7]  (Reply at 12.)  Netlist claims that its attorneys' rates are conservative and well-supported because each participating lawyer made efforts to allocate their time only for the tasks necessary to prove the RFAs at issue.  (Id. at 11–12.)

---

[7] In its Reply, Netlist claimed that the average rate for its contract attorneys was $67.82. However, the declarations from Jason Lo and JungEun (Nicole) Lee state that the average rate is $67.84.  (See Lo Decl. at 6; Dkt. No. 288-2, Decl. of JungEun (Nicole) Lee, ("JungEun Lee Decl.") at 6–7.)

### A.   <u>Hourly Rate</u>

Rule 37(c)(2) mandates the award of reasonable expenses, including attorney's fees, incurred in proving the facts that resulted from a failure to admit.  <u>See</u> Fed. R. Civ. P. 37(c)(2).  It follows that recoverable fees must be caused by the opposing party's failure to admit.  <u>See</u> <u>Diamond State Ins. Co.</u>, 2011 WL 2414391, at *11 (declining fees for drafting summary judgment motion because they were not caused by the failure to admit the facts).  A district court abuses its discretion when it awards sanctions for expenses that do not "flow" directly from the responding party's failure to admit.  <u>See</u> <u>Holmgren v. State Farm Mut. Auto Ins. Co.</u>, 976 F.2d 573, 581 (9th Cir. 1992); <u>see also</u> <u>Marchand</u>, 22 F.3d at 939 (finding a "causal nexus between the awarded expenses and [defendant's] failure to admit.")  A party seeking attorney's fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).

The Court has determined that sanctions are warranted for 12 RFAs that Samsung failed to admit (Nos. 13, 14, 15, 27, 28, 29, 32, 34, 35, 46, 50, and 52).  To prove these RFAs true, Netlist provides evidence that it conducted the depositions of six individuals.  Netlist asks the Court to authorize rates ranging from $845 to $1,370 per hour for Gibson Dunn associates and partners.  <u>See</u> Lo Decl. at 5.  To ascertain the reasonableness of a rate under the lodestar method, courts evaluate "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  <u>See</u> <u>Camacho v. Bridgeport Fin., Inc.</u>, 523 F.3d 973, 980 (9th Cir. 2008).  "The party requesting fees bears the burden of adducing 'satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

1  reputation.'" ScripsAmerica, Inc. v. Ironridge Glob. LLC, No. CV 14-03962 SJO (AGRx),

2  2016 WL 6871280, at *4 (C.D. Cal. Jan. 12, 2016) (citations omitted).  When the

3  requesting party fails to meet its burden, "the court may exercise its discretion to

4  determine reasonable hourly rates based on its experience and knowledge of prevailing

5  rates in the community." Bademyan v. Receivable Mgmt. Servs. Corp., No. CV 08-

6  00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).  The Ninth Circuit

7  has found that affidavits of counsel are "satisfactory evidence of the prevailing market

8  rate." Camacho, 523 F.3d at 980.

9        Through its counsel's declaration, Netlist provides sufficient evidence of Gibson

10 Dunn's reputation in contract litigation cases, each principal attorney's experience and

11 expertise, and the prevailing rate in the community.  (See Lo Decl. at 2–3, 10–20.)  Mr.

12 Lo's declaration describes that Gibson Dunn is an international firm with over 1500

13 lawyers and 20 offices in major cities and "is known for the skill, ability, experience, and

14 reputation of its attorneys in being able to handle large, complex, high-stakes litigation

15 generally . . . and contract litigation specifically." (Id. at 2–3.)  Mr. Lo also highlights

16 how The American Lawyer has named Gibson Dunn "Litigation Department of the

17 Year" for four of the last six competitions.  (Id. at 3.)  With respect to the reasonableness

18 of Netlist's proposed rate, Mr. Lo declares that "Gibson Dunn's rates are commensurate

19 with the rates charged by comparable firms in the Central District of California" and

20 "the rates at issue in this case are actual market rates." (Id.); see also Trendsettah USA,

21 Inc. v. Swisher Int'l Inc., No. SACV 14-1664 JVS (DFMx), 2020 WL 11232926, at *6

22 (C.D. Cal. Dec. 2, 2020) ("The Court agrees that [Gibson Dunn's] rates are reasonable

23 given the prevailing rates in the Central District of California.").

24

Also included in Mr. Lo's declaration are each principal attorneys' biographies, notable cases, accolades, and educational background. (See Lo Decl. at 10–20.) Beginning with the partners, Mr. Lo's biography reflects that he has two decades of experience in the Los Angeles legal market, graduated from Harvard Law School, and clerked for a federal judge. (Id. at 10.) Matt Benjamin has over 15 years of legal experience, represented a high-profile client in a breach of contract case, and also clerked for a federal judge. (Id. at 12–13.) Timothy Best has a Doctor of Philosophy in Chemistry, represented a high-profile client in a $5.4 billion patent trial, and teaches Intellectual Property Litigation at USC Gould School of Law ("USC"). (Id. at 14–15.) Based on these extensive qualifications, the Court finds that Netlist has met its burden in proving that partner hourly rates between $1,160 to $1,370 are reasonable.

Regarding the associates, Netlist requests hourly rates ranging from $845 to $1,060. Raymond Lamagna's biography represents that he graduated Order of the Coif at USC and was recognized as a *Super Lawyers* "Rising Star" in Intellectual Property Litigation from 2012 to 2016. (Id. at 16.) Michael Nadler has worked on matters before the United States Supreme Court, clerked for two federal judges, and graduated Order of the Coif at New York University School of Law. (Id. at 19.) JungEun Lee graduated *cum laude* from Northwestern and won honorable mentions in moot court. (Id. at 20.) Ms. Lee is also fluent in various languages, including Korean, which is the language of the primary evidence of the case. (Id.; Mot. at 28.) Netlist did not provide a biography for Soolean Choy and her declaration does not discuss her qualifications. Nevertheless, the Court finds Ms. Choy's proposed hourly rate of $845 to be reasonable based on the Court's familiarity with the prevailing market rate in the Central District. See Bademyan, 2009 WL 605789, at *5. With respect to the other Gibson Dunn associates,

the Court finds that Netlist has met its burden in proving that hourly rates ranging from $965 to $1,060 are reasonable.

Samsung failed to provide any declaration from its counsel challenging the reasonableness of the proposed rates. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Camacho, 523 F.3d at 980 (citation omitted). Samsung's counsel's declaration does not contest Netlist's proposed rates. (See generally Lee Decl.) Rather, Samsung contends in its opposition that Netlist's proposed rates are unreasonable by distinguishing the cases that Netlist provided. (Opp'n at 24–25.) Without more, Samsung did not meet its burden to rebut the reasonableness of Netlist's proposed rates. As such, Netlist provided satisfactory evidence to support the reasonableness of hourly rates ranging from $845 to $1,370 and the Court finds the specifically asserted Gibson Dunn attorney hourly rates to be reasonable.

Netlist also asks the Court to authorize an average rate of $67.84 per hour for its contract attorneys. (See Lo Decl. at 5; JungEun Lee Decl. at 5–6.) Netlist did not provide any evidence by way of affidavit or in its Motion or Reply to support the reasonableness of the contract attorneys' hourly rate. However, Samsung did not challenge the reasonableness of Netlist's proposed rate for its contract attorneys. Given the modest rate proposed by Netlist, the Court finds the average rate of $67.84 per hour for its contract attorneys to be reasonable based on the Court's familiarity with the prevailing market rate in the Central District. See Bademyan, 2009 WL 605789, at *5.

**B.**   **Hours Billed**

The Court next determines the reasonableness of the attorney hours for which recovery is sought.  "In determining reasonable hours, [the party requesting fees] bears the burden of submitting detailed time records justifying the hours claimed to have been expended."  ScripsAmerica, Inc., 2016 WL 6871280, at *5.  As a preliminary matter, Samsung asserts that Netlist's proposed rates for its attorneys are unreasonable.  Samsung alleges that Netlist engaged in "block billing" by "pool[ing] together" different tasks that span weeks or months into single entries.  (Opp'n at 26.)  Netlist replies by explaining that each of its attorneys reviewed his or her time records and allocated only the tasks incurred to prove the RFAs at issue.  (Reply at 11–12.)  The Court agrees with Netlist.  Netlist provided sufficient evidence through its attorneys' declarations demonstrating that each attorney verified its billing records and ensured that they only reported the tasks incurred in proving the RFAs at issue.  (See, e.g., Lo Decl. at 4.)

Netlist asserts it deposed six individuals to "obtain testimony establishing the facts that Samsung refused to admit" and to "confirm the documentary evidence that Netlist ultimately used to prove those facts."  (Mot. at 22.)  The declarations from Netlist's counsel reflect that Mr. Lo spent 14.3 hours on the depositions, Ms. Lee spent 46.8 hours, Mr. Best spent 20.2 hours, Ms. Choy spent 34.84 hours, and Mr. Lamagna spent 5.46 hours.  (See Lo Decl. at 5; JungEun Lee Decl. at 4–5; Dkt. No. 288-4, Timothy Best Decl. ("Best Decl.") at 3–4; Dkt. No. 288-6, Soolean Choy Decl. ("Choy Decl.") at 3; Lamagna Decl. at 5.)  Netlist utilized the deposition testimony to corroborate and confirm its documentary evidence.  (Mot. at 22.)  The Court finds Netlist's requested hours for the depositions to be reasonable because they flow from Samsung's failure to admit.  See Diamond State Ins. Co., 2011 WL 2414391, at *11

1   (awarding fees for taking depositions that were relied upon to prove facts).

2   Consequently, the Court finds Netlist is entitled to the requested attorney's fees for the

3   six depositions.

4       Apart from the depositions, Netlist also seeks attorney's fees for its discovery

5   efforts related to proving the RFAs at issue.  Ms. Lee spent a total of 57.58 hours

6   "[i]dentify[ing] and analyz[ing] key documents" and "direct[ing] [the contract attorney]

7   bilingual review team."  (Lee Decl. at 4 ("I believe that the work I undertook in an effort

8   to prove the above issues can be summarized as follows . . .").)  Mr. Lamagna spent

9   29.76 hours on "[d]irect[ing] and undertak[ing] discovery efforts to obtain evidence to

10  prove facts not admitted by Samsung."  (Lamagna Decl. at 5.)  The Court also finds these

11  hours to be reasonable given that the tasks were caused by Samsung's failure to admit.

12  See Holmgren, 976 F.2d at 581.

13      With respect to the reasonableness of the contract attorney's hours, Netlist

14  requests fees for 2,447.51 hours of its contract attorneys' work.  Netlist submitted time

15  records to justify the 2,447.51 hours claimed.  (See JungEun Lee Decl. Ex. 1.)  Netlist

16  allocated 30% for the time period between May 1, 2021 to July 27, 2021 and 80% for the

17  time period between July 28, 2021 to August 16, 2021.  (See JungEun Lee Decl. at 5–6.)

18  Samsung responds that the time records for the contract attorneys precede the time

19  when the majority of the RFAs at issue had not even been served, much less answered.

20  (Opp'n at 27–28.)  Samsung also claims that Netlist's request for 41.6 percent of the

21  nearly 6,000 hours spent on document review is unreasonable.  (Id. at 28.)

22      Although Netlist seeks only a portion of the contract attorney time for document

23  review, documents are produced in response to Requests for Production of Documents

24  and document review necessarily occurs as a result.  In short, Netlist would have had to

incur this expense whether or not Samsung admitted the RFAs at issue.  Netlist argues

that since Samsung produced documents within a few weeks of the summary judgment

deadline, Netlist had to employ "targeted searches" to the document review.  (See Reply

at 13.)  However, Netlist provides no evidence that this expense, or any portion thereof,

was incurred as a result of Samsung's failure to admit the RFAs.  For this reason, the

request for contract attorney time is denied.  See Fed. R. Civ. P. 37(c)(2); see also

Diamond State Ins. Co., 2011 WL 2414391, at *11 (declining to award fees for drafting

the summary judgment motion because they were "not *caused* by the failure to admit

the facts nor were they incurred toward proving the RFA improperly denied.").

## C.   **Fees Related to Summary Judgment**

Netlist requests fees related to its attorneys' work on its summary judgment

motion.  (Mot. at 23.)  Netlist argues that it is entitled to 20% of its attorneys' billed

hours for its summary judgment motion, which includes marshaling the relevant

evidence, preparing a Statement of Genuine Undisputed Facts, and preparing its

briefing.  (Id.)  Samsung argues that Netlist did not segregate the work it did for the

RFAs at issue and that Netlist "applied arbitrary multipliers" to its total discovery and

summary judgment expenses.  (Opp'n at 28.)

The requested fees are not the result of Samsung's failure to admit the RFAs.

Netlist would have had to prepare a summary judgment motion even if Samsung

admitted the RFAs at issue.  See Diamond State Ins. Co., 2011 WL 2414391, at *11

(declining to award fees for drafting the summary judgment motion because moving

party "still would have had to file a motion for summary judgment").  Therefore, Netlist

is not entitled to attorney's fees related to its motion for summary judgment.

### D.    <u>Fees Related to Present Motion</u>

Netlist also seeks attorney's fees incurred in bringing the present motion. (Mot. at 23.) The language of Rule 37(c)(2) contemplates an award of "reasonable expenses, including attorney's fees, *incurred in making that proof*." Fed. R. Civ. P. 37(c)(2) (emphasis added). The plain language of Rule 37(c)(2) suggests that only reasonable expenses incurred in proving the facts at issue in the RFAs are recoverable. Rule 37(c)(2) is silent on whether a moving party is entitled to attorney's fees incurred in preparing a Rule 37(c)(2) motion. Netlist has failed to cite to, and the Court has not found, any case law demonstrating that Netlist is entitled to fees incurred in preparing this Motion under Rule 37(c)(2). Netlist has failed to establish it is entitled to $135,050.50 of its request related to the present motion. (Mot. at 21.)

### E.    <u>Costs</u>

Netlist seeks $4,952.44 in costs associated with (1) translating documents used in its motion for summary judgment ($3,863.69), and (2) a pro-rata cost for the deposition translators ($1,088.75). (<u>Id.</u> at 24; JungEun Lee Decl. at 6–7.) The Court declines to award costs related to translating documents for the motion for summary judgment because these costs were not incurred as a result of Netlist's failure to admit the 12 RFAs. <u>See</u> Fed. R. Civ. P. 37(c)(2). However, the Court finds that Netlist is entitled to a pro-rata cost for the deposition translators because this cost flowed from Samsung's failure to admit. <u>See</u> <u>Holmgren</u>, 976 F.2d at 581.

### F.    <u>Calculation of Rule 37(c)(2) Sanctions</u>

Because the Court granted sanctions for 12 out of 26 RFAs, it awards a 46% pro rata amount for the attorney's fees and costs found to be recoverable under Rule 37(c)(2). The Court finds that Netlist is entitled to $93,735.03 in attorney's fees and

$500.83 in costs pursuant to Rule 37(c)(2).  Accordingly, Netlist is entitled to a total award of $94,235.85, as summarized in the tables below.

| DEPOSITIONS | | | |
|---|---|---|---|
| **Attorney** | **Hours Billed** | **Hourly Rate** | **Total** |
| Lo | 14.3 | $1,370 | $      19,591.00 |
| Lee | 46.8 | $965 | $      45,162.00 |
| Benjamin | 0[8] | $1,370 | $              - |
| Best | 20.2 | $1,160 | $      23,432.00 |
| Nadler | 0 | $1,060 | $              - |
| Choy | 29.56 | $845 | $      24,978.20 |
| Lamagna | 5.46 | $995 | $        5,432.70 |
| | | **Total** | $    118,595.90 |
| | | **46%** | $      54,554.11 |
| DISCOVERY TASKS | | | |
| **Attorney** | **Hours Billed** | **Hourly Rate** | **Total** |
| Lamagna | 29.76 | $995 | $29,611.20 |
| Lee | 57.58 | $965 | $55,564.70 |
| | | **Total** | $85,175.90 |
| | | **46%** | $39,180.91 |
| COSTS | | | |
| Deposition Translators | $1,088.75 | | |
| **46%** | $500.83 | | |
| TOTAL AWARD | | | |
| **Depositions** | $      54,554.11 | | |
| **Discovery** | $      39,180.91 | | |
| **Costs** | $           500.83 | | |
| **Total** | $      94,235.85 | | |

---

[8] The entirety of Mr. Benjamin and Mr. Nadler's requested hours were based on their work on Netlist's summary judgment motion.  (See Dkt. No. 288-3, Decl. of Matthew Benjamin; Dkt. No. 288-5, Decl. of Michael Nadler.)  Therefore, the table reflects "0 hours billed" for Mr. Benjamin and Mr. Nadler's work on depositions.

## VI.   **CONCLUSION**

IT IS THEREFORE ORDERED that:

Plaintiff Netlist's Motion for Fees and Expenses for Defendant Samsung's Failure to Admit Requests for Admission (Dkt. No. 288) is granted, in part, and denied, in part.

Netlist is awarded Rule 37(c)(2) sanctions against Samsung in the amount of $94,235.85.

IT IS SO ORDERED.

Dated:  June 13, 2022

$\overline{\phantom{xxxxxxxxx}}$ /s/ Autumn D. Spaeth $\overline{\phantom{xxxxxxxxx}}$
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge