**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NETLIST INC., a Delaware corporation, | No. 22-55209 |
| Plaintiff-Appellee, | D.C. No. 8:20-cv-00993-MCS-ADS |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| NETLIST INC., a Delaware corporation, | No. 22-55247 |
| Plaintiff-Appellant, | D.C. No. 8:20-cv-00993-MCS-ADS |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted June 8, 2023
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  M. SMITH and DESAI, Circuit Judges, and AMON,** District Judge.
Partial Dissent by Judge DESAI.

This appeal arises from a contract dispute between Samsung Electronics Co., Ltd. and Netlist Inc.  Samsung appeals the district court's (1) grant of partial summary judgment in favor of Netlist on Netlist's breach of contract claims, (2) award of nominal damages, (3) grant of a declaratory judgment that Netlist properly terminated the contract, and (4) preclusion of Samsung's affirmative defenses at trial.  Netlist cross appeals the district court's preclusion of certain fees pursuant to the contract's consequential-damages bar.  We assume the parties' familiarity with the briefing and record.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

1.    The district court erred in granting Netlist summary judgment on its claim that Samsung violated § 6.2 of the Joint Development and License Agreement ("JDLA"), because the provision is ambiguous as to whether Samsung's supply obligation is limited to the now-failed joint development project (the "JDP") or applies more broadly to the parties' overall business relationship.  *See L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020) (grant of summary judgment reviewed de novo).  Section 6.2 requires Samsung to "supply NAND and

---

\*\*    The Honorable Carol Bagley Amon, United States District Judge for the Eastern District of New York, sitting by designation.

DRAM products to Netlist on Netlist's request at a competitive price." The substantive law of New York governs this dispute. To assess contract ambiguity, we consider "the intention of the parties . . . [as] gathered from the four corners of the instrument." *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007). And in determining the parties' intent as to a particular provision, New York courts read "the entirety of the agreement in the context of the parties' relationship and circumstances," rather than isolating distinct provisions of the agreement. *In re Riconda*, 688 N.E.2d 248, 252 (N.Y. 1997).

Standing alone, the plain language of § 6.2 favors Netlist's interpretation: that Samsung must fulfill all NAND and DRAM orders by Netlist for whatever purpose. *See Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." (citation omitted)). Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 "reasonably susceptible of more than one interpretation." *See Chimart Assocs. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986).

*First*, the JDLA has two stated purposes: (1) developing a new NVDIMM-P product (*i.e.*, the JDP), and (2) patent cross-licensing. The title and preamble of the agreement exclusively reference these two topics, and each substantive section

corresponds entirely to one of the two goals. In this context, it is reasonable to interpret § 6.2 as tethered to one of those projects rather than as a separate, freestanding obligation. *See Hooper Assocs., Ltd. v. AGS Comps., Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) ("Words in a contract are to be construed to achieve the apparent purpose of the parties.").

*Second*, the title and structure of § 6 support a finding of ambiguity. Section 6, "Supply of Components," requires both parties to supply certain products to the other upon request. Section 6.1 requires Netlist to "provide Samsung any NVDIMM-P controller," while § 6.2 requires Samsung to "supply NAND and DRAM products." Netlist's view is that because § 6.1 explicitly links Netlist's supply obligation to the JDP, while § 6.2 does not, that omission must be viewed as intentional. That is one plausible reading. It would also be reasonable to read §§ 6.1 and 6.2 as complementary mirror provisions that describe the parties' obligations to provide components of the NVDIMM-P product. *See N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) ("The *expressio unius* canon applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded." (internal quotation marks and alteration omitted)).

*Third*, if Netlist's interpretation of § 6.2 is correct, then the provision would be a significant outlier in the overall agreement. As noted, all other substantive provisions of the JDLA concern either the JDP or cross-licensing and describe the

4

parties' rights and obligations related to those elements in detail. But if § 6.2 is properly understood as an unbounded supply obligation, it would represent a separate, third element of the JDLA. In addition, it would be unusual for this purportedly important, discrete obligation to be referenced only once in a single sentence in the entire agreement. Accordingly, we conclude that § 6.2 could reasonably be understood as restricted to the NVDIMM-P project.[1] *See Hooper*, 548 N.E.2d at 905 ("Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view." (internal quotation marks and citation omitted)).

Because we conclude that § 6.2 is ambiguous as a matter of law, we remand to the district court to consider in the first instance whether the extrinsic evidence "creates a genuine issue of material fact" as to the provision's meaning. *See MacIntyre v. Carroll Coll.*, 48 F.4th 950, 956 (9th Cir. 2022) ("[T]he remaining issues are not purely legal and require us to determine whether the evidence creates a genuine issue of material fact. The district court is thus better suited to consider these issues in the first instance.").

    2.    The district court erred in granting Netlist judgment on its claim that

---

[1] To the extent Samsung contends that the district court independently erred by awarding nominal damages following the jury's finding that Netlist had not suffered actual damages from the breach of § 6.2, we disagree. *See Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993).

Samsung breached § 3 of the JDLA by erroneously withholding $1.32 million of its $8 million payment to Netlist and paying that sum to the Korean tax authority. Section 3 requires Samsung to pay Netlist $8 million in non-recurring engineering fees, less any withholding taxes required by Korean law. The Korean tax authority ultimately concluded that the fees were not subject to withholding. The district court determined that "the reasonableness of Samsung's position [on whether the taxes were properly withheld] is immaterial to whether it breached its obligation." We disagree. Section 3.2 provides that if Samsung deducts withholding taxes, it must "reasonably cooperate with Netlist in any lawful efforts to claim a credit or *refund* or exemption with respect to any such withholding taxes." Because § 3.2 contemplates that Samsung may reasonably but erroneously withhold taxes, we do not interpret § 3.1 as providing for strict liability upon an erroneous withholding. *See Beal Sav. Bank*, 865 N.E.2d at 1213–14. A contrary holding that Samsung breached § 3 by reasonably misinterpreting Korean tax law would also produce absurd results and be inconsistent with the parties' reasonable expectations. *See Uribe v. Merchs. Bank of N.Y.*, 693 N.E.2d 740, 743 (N.Y. 1998) (construing contract in accordance with the "reasonable expectation and purpose of the ordinary businessperson" (alteration and citation omitted)). Accordingly, we reverse the district court's entry of judgment in Netlist's favor on the § 3 breach of contract

claim and remand with instructions to enter judgment for Samsung.[2]

    3.    The district court erred in granting a declaratory judgment that Netlist properly terminated the JDLA because disputed fact issues precluded summary judgment on the materiality of Samsung's alleged breach of § 6.2. "Under New York law, for a breach of a contract to be material, it must 'go to the root of the agreement between the parties.'" *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (citation omitted). New York courts consider several factors in assessing materiality, including, among others: the extent to which the injured party will be deprived of the benefit which he reasonably expected, the likelihood that the party failing to perform or to offer to perform will cure his failure, the quantitative character of the default, and the breaching party's good faith or willfulness. *See Hadden v. Consol. Edison Co. of N.Y., Inc.*, 312 N.E.2d 445, 449 (N.Y. 1974); Restatement (Second) of Contracts § 241 (Am. L. Inst. 1981). The record reflects that several of these factors hinge upon disputed facts. For example, the parties dispute whether—assuming that the district court correctly construed § 6.2—the exchange of Samsung's mandatory supply obligation in return for Netlist's patent

---

[2] On cross appeal, Netlist challenges the district court's conclusion that the JDLA's provision concerning consequential damages barred recovery of the fees Netlist paid to its tax consultant, PricewaterhouseCoopers, for assistance in obtaining a refund of the erroneously withheld taxes. Because we hold that Samsung did not breach § 3 of the JDLA, and therefore that Netlist is not owed damages resulting from the purported breach, we need not address whether the district court properly barred recovery of the fees.

licenses was "the centerpiece" of the agreement.

We reject Samsung's contention that Netlist's declaratory-judgment claim fails for the independent reason that Netlist waived its right to terminate the contract by delaying termination proceedings until 2020. The district court properly determined that given the JDLA's no-waiver provision, Netlist's failure to act upon notice of the breach does not constitute a clear manifestation of intent to waive its termination rights. *See Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988) (requiring "clear manifestation of intent by [one party] to relinquish [contractual] protection"). We reverse the district court's entry of a declaratory judgment and remand for further proceedings.

4. The district court correctly precluded Samsung from asserting at trial affirmative defenses of waiver, estoppel, and acquiescence. Samsung pleaded all three defenses in its answer, but did not raise them in response to Netlist's motion for partial summary judgment or in its own motion for summary judgment. Samsung therefore abandoned the defenses. Where a movant puts liability at issue on summary judgment, a defendant opposing summary judgment may not decline to raise an affirmative defense that, if successful, would defeat the movant's claim, and then seek to assert that defense at trial. *See* Fed. R. Civ. P. 56(a).[3]

---

[3] The district court also properly precluded Samsung from raising an election of remedies affirmative defense. Samsung failed to plead the defense in its answer, *see In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007); Fed. R. Civ. P. 8(c)(1), and the

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

The parties shall bear their own costs.

---

court did not abuse its discretion in finding that Samsung had not shown "good cause" to amend its answer at the close of discovery, *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).

FILED

OCT 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 22-55209

DESAI, Circuit Judge, dissenting in part:

I respectfully dissent from Section 1 of the memorandum disposition. The majority's means-to-an-end analysis of § 6.2 is a departure from longstanding rules of contract interpretation, particularly when interpreting a contract negotiated at an arm's length between two sophisticated parties. Worse, my colleagues' perfunctory conclusion that § 6.2 is ambiguous makes doing business harder. It forces contracting parties to anticipate and expressly disclaim every conceivable limiting construction to avoid an alleged ambiguity. I would not impose that burden.

Section 6.2 is clear and unambiguous: Samsung agreed to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price." That provision means what it says. The majority concedes, as it must, that "the plain language of § 6.2 favors Netlist's interpretation." Mem. Disp. at 3. Yet my colleagues bend over backwards to invent an ambiguity based on the agreement's "apparent purpose as derived from its title, structure, and related provisions." Mem. Disp. at 3.[1] Their arguments are unpersuasive.

---

[1] The majority's decision relies on Samsung's made-for-litigation theory that § 6.2 is ambiguous. But Samsung never even argued the agreement was ambiguous until after it decided to stop fulfilling its supply obligations. In fact, Samsung raised its ambiguity argument for the first time only after the district court denied its motion for judgment on the pleadings.

1

For starters, my colleagues overreach by concluding without any basis that § 6.2 is "a significant outlier in the overall agreement." Mem. Disp. at 4. The majority's own notions about the fairness of Samsung's supply obligation go far beyond interpreting the "four corners of the contract," *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014), and instead infer, "under the guise of judicial construction, . . . additional requirements to relieve a party from asserted disadvantage flowing from the terms actually used." *Collard v. Inc. Vill. of Flower Hill*, 421 N.E.2d 818, 823 (N.Y. 1981). Those inferences violate New York's "established contract law, which focuses on the parties' chosen language, by injecting considerations untethered to the words that the parties included in their agreement." *Donohue v. Cuomo*, 184 N.E.3d 860, 870 (N.Y. 2022). When "a contract 'was negotiated between sophisticated, counseled business people negotiating at arm's length,' courts should be especially 'reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.'" *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 103 N.E.3d 774, 780 (N.Y. 2018) (quoting *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004)). Yet that is what the majority did here.

Although the majority's decision purports to rely on the plain text of § 6.2, it goes further than the plain text; it takes a simple clause—"Samsung will supply NAND and DRAM products to Netlist"—and inserts the words "in connection with

the JDP." But if the parties meant to limit Samsung's supply obligation to NAND and DRAM used *only in connection with the JDP*, they would have said so. *See Ellington*, 21 N.E.3d at 1004 ("If the parties intended to bind future affiliates they would have included language expressing that intent."); *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 920 N.E.2d 359, 365 (N.Y. 2009) (holding that the plain language of a contract's sunset clause applied to the entire agreement when "the parties could have drafted an agreement that restricted the scope of the sunset clause" but declined to do so). Indeed, the majority acknowledges that the parties did exactly that in Netlist's supply obligation in § 6.1. Other parts of the agreement similarly include limiting language where the parties saw fit to include it. *See, e.g.*, § 4.1 (discussing ownership of inventions "arising out of the JDP"); § 1 (defining a term used in the agreement to describe technology created "in the course and within the scope of the JDP"). We must give meaning to the omission of similar language in § 6.2. *E.g.*, *Quadrant Structured Prods. Co. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014) (explaining that the *expressio unius* maxim precludes courts from reading language into a contract provision that a "sophisticated drafter" omitted). Respectfully, my colleagues overstep by rewriting § 6.2 to add language Samsung failed to include.

The majority's analysis next turns to the title and structure of § 6 to justify its conclusion that § 6.2 is ambiguous. But the title and structure confirm just the

3

opposite. Section 6's title ("Supply of Components") is general, and both Samsung and Netlist develop and manufacture components generally, not just for the JDP. All but one of the provisions in § 6 discuss the parties' rights and obligations related to the supply of components generally. Section 6.3 preserves both parties' rights to make "semiconductor components" and sell them to third parties. Section 6.4 provides that neither party must buy "any products" from the other. And Section 6.2 requires Samsung to supply "NAND and DRAM products" to Netlist at competitive prices. In the *only* provision tied to a JDP-specific product (§ 6.1), the parties expressly said so. It runs afoul of basic principles of contract interpretation to imply a similar limitation into any other provision in § 6.

    Finding no support in the terms of the agreement, the majority's decision settles on the recitals as the basis for its finding that § 6.2 is ambiguous. Mem. Disp. at 3. But nothing in the recitals makes § 6.2 ambiguous. The recitals state that two main goals of the agreement were developing a new NVDIMM-P product through the JDP and cross-licensing patents. In their quest to find an ambiguity where none exists, my colleagues again read too much into the plain text. Parties often have many reasons for executing contracts, and they need not list every form of consideration in the recitals. In any event, the supply obligation as written in § 6.2 furthers these goals or, at a minimum, there is nothing inconsistent about the agreement's general purposes and the clear supply obligation in § 6.2. Nor can the

recitals alter the plain language of a substantive term. *See Jones Apparel Grp., Inc. v. Polo Ralph Lauren Corp.*, 791 N.Y.S.2d 409, 410 (App. Div. 2005) ("Since the contract is unambiguous on its face, there is no need to refer to its recitals, which are not part of the operative agreement.").

In short, every purportedly "reasonable" justification the majority's decision constructs to conclude that § 6.2 is ambiguous requires inserting words in § 6.2, implying policy considerations, and looking beyond the four corners of the agreement. That is not this court's role. A contract "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).

I respectfully dissent from the portion of the majority's decision holding that § 6.2 is ambiguous. I would affirm the district court's summary judgment on Netlist's breach of contract claim over § 6.2.