UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD. a Korean corporation,<br><br>                    Defendant. | Case No. 8:20-cv-00993-MSC-ADS<br><br>**JOINT STATUS REPORT**<br><br>Hearing Date:<br>Joint Report Due: |

Pursuant to this Court's minute order dated November 13, 2023 (Dkt. 341), Plaintiff Netlist Inc. ("Netlist") and Defendant Samsung Electronics Co., Ltd. ("Samsung"), by their undersigned attorneys, hereby file this Joint Status Report.

## I.     CASE STATUS

### A. Prior District Court Proceedings

Netlist filed this case on May 28, 2020, alleging that Samsung had breached the parties' Joint Development and License Agreement ("JDLA") by, among other things, failing to supply Netlist with certain memory products (NAND and DRAM) on request. Dkt. 1. Netlist also sought a declaration that it had properly terminated the JDLA as a result of these breaches. *Id.* On August 16, the parties cross moved for summary judgment on the issues of breach and termination. Dkts. 142, 150. The Court

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

11277536

- 1 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

granted Netlist's motion and denied Samsung's. Dkt. 186. The case then proceeded to a trial on Netlist's claim for damages for breach of the supply obligation under Section 6.2 of the JDLA. The jury returned a verdict of no damages. Dkt. 276. This Court awarded nominal damages and entered judgment. Dkt. 306.

## B. Ninth Circuit Appeal

On October 17, 2023, the Ninth Circuit partially reversed the Court's summary judgment ruling.  As it pertains to the issues remaining before the Court, the Ninth Circuit concluded that "the district court erred in granting Netlist summary judgment on its claim that Samsung violated § 6.2 of the Joint Development and License Agreement ('JDLA')." *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *1 (9th Cir. Oct. 17, 2023). The Ninth Circuit "remand[ed] to the district court to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's meaning." *Id.* at *2.

The Ninth Circuit also concluded that "[t]he district court erred in granting a declaratory judgment that Netlist properly terminated the JDLA because disputed fact issues precluded summary judgment on the materiality of Samsung's alleged breach of § 6.2." *Id.* at *3.

Netlist additional statement:

The Ninth Circuit concluded that "The district court correctly precluded Samsung from asserting at trial affirmative defenses of waiver, estoppel, and acquiescence." *Id.* The panel also "reject[ed] Samsung's contention that Netlist's declaratory-judgment claim fails for the independent reason that Netlist waived its right to terminate the contract by delaying termination proceedings until 2020. The district court properly determined that given the JDLA's no-waiver provision, Netlist's failure to act upon notice of the breach does not constitute a clear manifestation of intent to waive its termination rights." *Id.* The Ninth Circuit also rejected Samsung's argument that nominal damages were not appropriate upon a finding of material breach of Section 6.2. *Id.* at *2, n.1.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## II.      PROPOSED SCHEDULE

### A. Netlist's Proposal

#### 1.      Motion to Stay This Case Until After the April 15, 2024 East Texas Trial

Netlist will soon file a motion to stay this case until after the April 15 trial in the Eastern District of Texas during which the jury will consider Samsung's claim that (1) the JDLA grants it license rights to Netlist's patents that covers its commercial products, and (2) that the license has not been properly terminated. The issues that remain to be decided in the Central District case are: whether the extrinsic evidence "creates a genuine issue of material fact as to [§ 6.2's] meaning," and if so, a trial on the proper interpretation of § 6.2; and materiality of breach of § 6.2 for purposes of Netlist's termination of the JDLA. These same issues will be addressed in a patent infringement case (the "Infringement Action") in the Eastern District of Texas between Netlist and Samsung that is scheduled for trial on April 15, 2024 before Chief Judge Rodney Gilstrap. In East Texas, Samsung has formally raised the JDLA as an affirmative defense to a claim of patent infringement. There are two elements to Samsung's defense that will be heard by the Jury on April 15: (a) Netlist did not properly terminate the agreement because there was no material breach; (b) the JDLA grants a license to Samsung's current commercial products (the "Complete JDLA Defense"). (a) is the same issue that is before the Central District; (b) is an issue that is only before the Eastern District. Events have occurred since this Court entered judgement that strongly support trying (a) and (b) together as a matter of due process. Netlist thus intends to formally move for a brief stay of this case pending completion of the trial on the Infringement Action.

The Infringement Action was prompted by Samsung's decision to rush to a different court one day after this Court issued its summary judgment order and seek a declaration in the District of Delaware (the "Declaratory Relief Action") that Samsung did not infringe certain Netlist patents. *Samsung Elecs. Co. v. Netlist, Inc.*,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

Case No. 1:21-cv-01453, Dkt. 1 (D. Del. Oct. 15, 2021). Despite this Court's summary judgment ruling, Samsung asserted in Delaware that "[it] believes that it is licensed to the Patents-in-Suit under [the JDLA]." *Id.* ¶ 2. Samsung also asserted a license defense in response to Netlist's counter claims for infringement. *Id.*, Dkt. 62 at 26-30. It is unclear why Samsung filed in Delaware as opposed to the Central District, but the effect was to create a waste of resources. Samsung memory modules are manufactured outside of the United States. Samsung's lead US affiliate, Samsung Electronics America, did not join in the Declaratory Relief Action and cannot be sued in Delaware. Because of the states of incorporation and facility locations for Samsung's relevant US subsidiaries, Netlist in response filed two patent infringement suits against Samsung and its US affiliates in the Eastern District of Texas. As between Delaware, the Central District, and East Texas, all of the relevant Samsung affiliates can only be sued in East Texas. Judge Andrews in the District of Delaware concluded that Netlist's suit against Samsung should appropriately proceed in Texas. *Id.,* Dkt. 37 at 6-10. Since this Court entered final judgment, Samsung filed its appeal to the Ninth Circuit, and those infringement suits have been proceeding apace. The first suit ("*Samsung I*") has already been tried to a verdict of infringement and validity. The second suit is the Infringement Action which goes to trial on April 15, 2024.

Samsung is attempting to vacate the *Samsung I* judgment based on the Complete JDLA Defense. And Samsung has formally pled the Complete JDLA Defense as an affirmative Defense in the Infringement Action. Samsung has moved to stay the Infringement Action on the ground that its license defense should be adjudicated in this Court. Netlist has opposed that motion on the ground that the Eastern District of Texas is the proper forum to adjudicate Samsung's license defense. As explained above, the Eastern District is the only court currently addressing both the scope of the JDLA's license and Netlist's termination of the JDLA, as well as Netlist's claim for infringement. That motion to stay is fully briefed, and a decision from Judge Gilstrap is pending. If Judge Gilstrap grants Samsung's request for a stay,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

Netlist requests that it be permitted to amend its claims here to include a declaration regarding the scope of the JDLA's license grant so both license scope and termination can be addressed in the same proceeding.

Samsung wants to get away from East Texas because it has adopted opposite positions in the Ninth Circuit and East Texas regarding the scope of Netlist's license grant in the JDLA, and mutually inconsistent positions regarding the scope of the supply clause and scope of the license grant in the JDLA. As seen below, neither Samsung's supply commitment nor Netlist's license grant make any reference to the joint development project:

Below are the four clauses in the JDLA that Samsung relied on before the Ninth Circuit:

WHEREAS, in connection with their collaboration hereunder, the Parties wish to grant to each other a cross license under each Party's patents.

3.1    Fees and Costs. Samsung shall pay to Netlist eight million United States dollars (US $8,000,000) as non-refundable NRE fees within seven (7) business days from the date of Samsung's receipt of invoice issued by Netlist on or after the Effective Date. Except as provided herein, each Party shall bear its own costs and expenses with respect to any development work and provision of any Deliverables under this Agreement.

6.2    Supply by Samsung. Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (*i.e.*, among customers purchasing similar volumes of similar products).

8.2    License to Samsung. Netlist, on its own behalf and on behalf of its Subsidiaries, hereby grants, and shall grant, to Samsung and its Subsidiaries a perpetual (subject to Section 13.3), paid-up, worldwide, non-exclusive, non-transferable, non-sublicensable license under Netlist's Licensed Patents to make and have made (subject to Section 8.4) Samsung's Licensed Products, and to use, sell, offer for sale, import and otherwise transfer or dispose of such products.

Dkt. 289-1.  In East Texas, Samsung stated that "the reality is that JDLA was in no way limited to jointly developed products." *Netlist, Inc. v. Samsung Elec. Co. Ltd.* No. 2:21-cv-463-JRG (E.D. Tex.), Dkt. 426, 28:8-29:14.  In Ninth Circuit Samsung argued "And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. ***The licenses are being given in***

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

1 ***connection with the collaboration. That's the joint development project***." *Netlist v.*
2 *Samsung*, No. 22-cv-293 (E.D. Tex.) Dkt. 210-2 (9th Cir. Hearing Tr. excerpt) at
3 15:20-21. If Samsung had told the Ninth Circuit that the license grant was not limited
4 to the joint development, the basis for its argument that the supply clause is implicitly
5 limited to joint development would have collapsed.

6    Samsung represented (as an undisputed fact) that "it considered the $8 million
7 as consideration for Netlist's grant of patent licenses . . . ." Dkt. 168-2, fact #62.
8 However, in the Ninth Circuit, Samsung represented that "there's an $8 million NRE
9 fee that's paid. It's clearly for the joint development project, but it doesn't say it's
10 specifically for the joint development project." *Netlist v. Samsung*, No. 22-cv-293
11 (E.D. Tex.) Dkt. 210-2 (9th Cir. Hearing Tr. excerpt) at 8:16-24.

12    Samsung's complete JDLA defense requires it to argue that a joint development
13 product limitation should be read into the supply clause, but this same limitation
14 should not be read into the license grant.[1] East Texas is the only forum in which this
15 litigation tactic of taking entirely opposite positions can be addressed, because the
16 scope of the license grant is not currently at issue here.  There is pending briefing
17 before Judge Gilstrap seeking a finding that Samsung is estopped from claiming that
18 the license covers its commercial products.  If this motion is granted, or if the East
19 Texas jury finds that the license does not include Samsung's commercial products
20 (consistent with Samsung's representations to the Ninth Circuit), the breach of
21 contract case before this Court becomes effectively moot.

## 2.    Netlist's Proposed Schedule If There Is No Stay

23    If, however, the Court declines to stay this action, Netlist requests that the Court
24 set a trial date and proposes the dates set forth below consistent with this Court's

---

[1] Samsung represents that Judge Gilstrap already decided the scope of the license grant.  Judge Gilstrap ruled the exact opposite: "So you've got a license -- Samsung's got a license defense up until July 15th, 2020, and you don't have one after July 15th, 2020. What falls within that license as prescribe by the other terms of the JDLA is a fact question." *Netlist, Inc.*, No. 2:21-CV-463-JRG (E.D. Tex.) Dkt. 426, 59:19-25.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 6 -

default case schedule worksheet. In the event that this Court denies a stay, Netlist also requests following:

**Amended Pleadings.** If the Court declines to stay this case and Judge Gilstrap grants Samsung's motion to stay the Infringement Action, Netlist will file a motion seeking leave to amend its pleadings to include a declaration regarding the scope of Samsung's license.  Samsung has already indicated it opposes this motion, allowing it to continue to take entirely inconsistent statements.

**Production of discovery from Eastern District of Texas.** There is no need for additional fact discovery in this case; however, if this case proceeds, Netlist will file a motion seeking leave to cross-use of fact depositions and documents from the Eastern District of Texas litigations (just as the parties have agreed to cross-use of fact depositions and documents from this case in the Eastern District). Fact discovery from the Eastern District of Texas is directly relevant to this dispute. For example, Samsung's corporate representative on the JDLA in East Texas (Vice President Indong Kim) testified that Samsung's failure to supply product to Netlist was unethical and that he treated the supply obligation as applying to product beyond the joint development project.

Samsung reports below that it will oppose the use of the testimony of its corporate representatives as to JDLA issues from the Eastern District of Texas proceeding.  Samsung appears to believe corporate representatives have the right to take entirely inconsistent factual positions in different courts without consequence because discovery is closed.  Fed. R. Civ. Pro. 32(a)(1)(3) definitively answers this question: "an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer . . . or designee under Rule 30(b)(6) . . . ." "A deposition lawfully taken . . . in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." Fed. R. Civ. Pro. 32(a)(8).  In the Ninth Circuit, a corporation

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

cannot contradict the theory of facts presented by a Rule 30(b)(6) witness. *Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) ("[A] corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative….").

**Supplemental Expert Reports.** Netlist will also seek leave to file supplemental expert reports, not to include new opinions, but to update prior opinions including based on information from the Eastern District.

**Proposed case schedule:**

| Event | Date |
|---|---|
| Deadline to amend complaint to add declaration as to license scope | 20 weeks before final pre-trial conference |
| Supplemental expert reports | 18 weeks before final pre-trial conference. |
| Last day to hear arguments on whether the extrinsic evidence creates a genuine issue of material fact as to the meaning of JDLA § 6.2.[2] | 12 weeks before final pre-trial conference<br><br>• Briefs due 5 weeks before hearing<br><br>• Oppositions due 2 weeks after briefs are filed<br><br>• Replies due 1 week after oppositions |
| Deadline to complete settlement conference | 10 weeks before final pre-trial conference |
| Trial filings (first round)<br>• Motions in Limine<br>• Memoranda of Contentions of Fact and Law [L.R. 164]<br>• Witness Lists [L.R. 165]<br>• Joint Exhibit List [L.R. 166.1]<br>• Joint Status Report Regarding Settlement | 3 weeks before final pre-trial conference |

---

[2] The Ninth Circuit explicitly remanded to this Court "to consider in the first instance whether the extrinsic evidence "'creates a genuine issue of material fact'" as to the provision's meaning.'". *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 8 -

| Event | Date |
|---|---|
| Trial filings (second round)<br>• Oppositions to Motions In Limine<br>• Joint Proposed Final Pretrial Conference Order [L.R. 167]<br>• Joint/Agreed Proposed Jury Instructions<br>• Disputed Proposed Jury Instructions<br>• Joint Proposed Verdict Forms<br>• Joint Proposed Statement of the Case<br>• Proposed Additional Voir Dire Questions, if any | 2 weeks before final pre-trial conference |
| Final pre-trial conference | 4 weeks before trial |
| Trial | — |

### B. Samsung's Proposal

Netlist's request to stay this case in favor of its later-filed patent litigation in the Eastern District of Texas is meritless from start to finish, and Samsung will oppose it.

This sort of blatant forum shopping should be rejected out of hand. Netlist—not Samsung—filed this suit in the Central District of California in May 2020, asserting that Samsung breached Section 6.2 and Section 3.1 of the Joint Development and License Agreement ("JDLA"), and seeking a declaration that Netlist's termination of the JDLA was legally valid. After Netlist prevailed on liability before this Court at summary judgment in October 2021, thereby invalidating Samsung's license to practice Netlist's patents, Netlist filed a patent infringement action in the Eastern District of Texas in December 2021, specifically citing as a basis for its infringement allegations this Court's summary judgment decision.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 9 -

Netlist successfully insisted before the Texas court that this Court's invalidation of Samsung's patent license precluded Samsung's license defense against its infringement allegations. Netlist also successfully opposed Samsung's motion to stay the Texas proceedings pending the Ninth Circuit's resolution of Samsung's appeal; and was awarded hundreds of millions of dollars in infringement damages by a jury. Only now that the Ninth Circuit has reversed this Court's determinations that Samsung breached the supply provision and that Netlist properly terminated the JDLA (and remanded for further proceedings), Netlist has decided it no longer likes this forum and would prefer that the Eastern District of Texas consider the very breach-of-contract and license termination claims that Netlist originally filed in this Court—claims that the Ninth Circuit, in its mandate, ordered this Court to decide on remand..

A court may stay proceedings only if equity warrants a stay, and Netlist's inequitable forum shopping is reason enough to deny its request. *See, e.g.*, *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876-77 (9th Cir. 2000) ("[T]he unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness of bad faith relative to the matter in which he seeks relief . . . .'" (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (2000)); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1053 (9th Cir. 1998) (holding that party's "inequitable conduct precludes it from receiving equitable relief"). But even setting Netlist's inequitable conduct aside, a stay must be denied for five simple reasons, which are discussed in more detail below in section II.B.1.

- The Ninth Circuit mandate precludes the stay requested by Netlist. In its October 17, 2023 memorandum decision, the Ninth Circuit remanded to this Court "to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to [Section 6.2 of the Joint Development and License Agreement]'s meaning." Memorandum, ECF No. 334. When the Court reopened the case on November 13, 2023, the Court made clear to the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 10 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

parties that the case "will proceed consistent with the memorandum decision and mandate" of the Ninth Circuit.  Minute Order, ECF No. 340.  Granting Netlist's request for a stay so that Netlist can go ask a *different* court to consider the very issues the Ninth Circuit directed this Court to consider would be irreconcilable with the Ninth Circuit's mandate.

- Netlist's request for a stay violates the well-established first-to-file rule, which precludes the very type of forum shopping in which Netlist is engaged by mandating that when two federal courts are considering the same or substantially similar issues, the issue should be decided by the Court that first obtained jurisdiction (here, this Court).

- Netlist's request for a stay contradicts Netlist's own prior arguments before the Eastern District of Texas that this Court's determination of the validity of Samsung's license must control the patent infringement proceedings in that court.

- Discovery in this case is complete as to the license interpretation and breach issues the Ninth Circuit mandated this Court to address, and those issues could be dispositive of the Eastern District of Texas patent litigation, where discovery is ongoing.  Efficiency dictates resolving those issues here on an already-complete record.

- And, finally, Netlist's primary argument for a stay—namely, that both the validity (which is before this Court) *and* scope (which is not) of Samsung's patent license must be considered together and only the Eastern District of Texas can consider both issues—is not only wrong on the merits but is precluded as a matter of law (via collateral estoppel, as explained in more detail later):  Netlist somehow fails to mention that Judge Gilstrap in the Eastern District of Texas already ruled against Netlist as to the scope of Samsung's patent license, and that the court's judgment as to the scope of the license absolutely precludes Netlist from further trying to reargue that decision, which

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  has now matured into a final decision in the Eastern District of Texas

2  Consistent with the Ninth Circuit's memorandum decision and mandate,
3  Samsung thus requests that the Court deny a stay and enter a schedule for
4  supplemental summary judgment briefing on the question whether the extrinsic
5  evidence creates a genuine issue of material fact as to the meaning of Section 6.2.
6  Samsung proposes 30 days for each side to file opening briefs, and 15 days thereafter
7  for each side to file responsive briefs.  The purpose of the supplemental briefing is to
8  allow the parties to focus on the specific evidence, facts, and legal arguments related
9  to the narrow question the Ninth Circuit directed this Court to decide.  Contrary to
10 Netlist's suggestion, ***the parties should be limited to the original summary judgment***
11 ***record already before the Court***.  Both parties already had a full and fair opportunity
12 in this case to conduct discovery and introduce evidence in the prior summary
13 judgment proceedings, and it would be an obvious waste of time to reopen that already
14 completed process.  Netlist has also failed to show any cause to reopen discovery or
15 the summary judgment record in this case.

16 Indeed, Netlist now likely realizes that the extrinsic evidence developed in
17 discovery in this case forecloses its position that Section 6.2 imposes an unlimited
18 supply obligation on Samsung (which is what Netlist would have to show to prevail
19 in this case), and now somehow wants to take another stab at discovery in this case—
20 but it is too late for that.  As Samsung will show based on the established summary
21 judgment record, the undisputed facts are that Netlist entered into a Memorandum of
22 Understanding with Samsung that set forth the supply obligation later memorialized
23 in the JDLA, and both the text of the MOU, as well as Netlist's testimony about it,
24 confirm that the supply obligation was intended to be limited to raw materials for the
25 Joint Development Project.

26 And the undisputed evidence further confirms that Netlist insisted that the final
27 deal—*i.e.*, the JDLA—must track the MOU in its particulars, which is exactly what
28 happened.  Thus, there is simply no question that at the time the parties entered into

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 12 -

the JDLA, they intended that Samsung's supply obligation in Section 6.2 be limited to the parties' Joint Development Project, and not an unlimited obligation to supply memory chips as Netlist now claims.  Unsurprisingly, the extrinsic evidence will indisputably shows that the parties' course of dealing confirmed the parties' original understanding that Section 6.2 was limited to memory for use in certain products—specifically, NVDIMM-P—created through the Joint Development Project.

If, following consideration of the parties' supplemental briefing, the Court were to adopt Samsung's interpretation of Section 6.2 as a matter of law, there would be no need for a trial on materiality, and the Court should enter judgment in Samsung's favor on both Netlist's first claim for breach of Section 6.2 and its third claim for termination of the JDLA, and find that the JDLA was not validly terminated.  If, on the other hand, the Court determines that genuine issues of material fact exist, then the case should be set for trial for a date as soon as the Court's calendar permits, and a pretrial schedule set consistent with the pre-trial filing schedule outlined in the Court's Order re: Jury Trial, ECF No. 41

### 1.     Netlist's Request for a Stay Should Be Denied.

Netlist's request for a stay should be denied not only because it is blatantly inequitable for the reasons discussed above, but also for several additional reasons discussed in more detail below.

*First*, a stay would contradict the Ninth Circuit's mandate.  The Ninth Circuit's October 17, 2023 memorandum decision, ECF No. 334, and mandate, ECF No. 340, remanded two issues to this Court.  This Court had granted summary judgment in favor of Netlist on its claim that Samsung violated Section 6.2 of the JDLA, finding that the provision "unambiguously requires Samsung to supply product on Netlist's request at a competitive price."  Order at 6, ECF No. 186 (capitalization removed). The Ninth Circuit, however, concluded that Section 6.2 of the JDLA is ambiguous as a matter of law, and remanded to the Court to "consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 13 -

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

meaning."  Mem. at 5, ECF No. 334.  This Court also found on summary judgment that Netlist was entitled to a declaratory judgment that Netlist properly terminated the JDLA. Order at 20, ECF No. 186.  But the Ninth Circuit reversed, "because disputed fact issues precluded summary judgment on the materiality of Samsung's alleged breach of § 6.2," and remanded to this Court for further proceedings.[3]

The Court made clear in its November 13, 2023 minute order that this case "will proceed consistent with the [Ninth Circuit's] memorandum decision and mandate."  Minute Order, ECF No. 341. And, of course, the Court is required to execute the mandate.  *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023) (internal quotation marks omitted) ("A district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it.").  But Netlist's request for a stay is in effect asking the Court to ignore the Ninth Circuit's mandate—that is, Netlist is asking the Court *not to* consider the extrinsic evidence concerning the scope of Section 6.2 and *not to* resolve (through a jury trial) disputes of fact concerning the materiality of any breach (if necessary), and instead to stay the matter and allow a different court in a different Circuit to consider and resolve those issues unburdened by the Ninth Circuit's directives.  *See, e.g.*, *In re A.F. Moore & Assocs., Inc.*, 974 F.3d 836, 841 (7th Cir. 2020) ("A district court would be in obvious dereliction of duty if it reopened a remanded case but refused to do anything more because it still thought it lacked jurisdiction. . . . [T]he clear spirit of our mandate entailed more than flipping a flag on the docket sheet from 'closed' to 'reopen.' We presupposed that further proceeding would be had at an ordinary pace.").  This case must proceed forthwith, consistent with the Ninth Circuit's clear instructions, as the Court has already indicated it intends to do.

*Second*, Netlist's stay request blatantly flouts the longstanding first-to-file

---

[3] The Court also reversed outright this Court's determination that Samsung had breached Section 3.1 of the JDLA by erroneously but in good faith withholding taxes on the $8 million payment Samsung made to Netlist under the agreement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 14 -

rule, which provides that ordinarily, when two substantially overlapping actions are filed in courts of concurrent jurisdiction, "the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The first-to-file rule "was developed to serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (internal quotation marks omitted). "When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

Here, the first-to-file rule dictates that this Court resolve the questions of contract interpretation and, if necessary, materiality of the alleged breach. *Id.* (stay of second-filed case was appropriate where plaintiff in second-filed case asked court to resolve issue at "heart" of first-filed case). But Netlist seeks to upend "sound judicial administration" to manipulate the staging of the cases in its favor. Netlist openly admits that it wants its later-filed Eastern District of Texas action to decide the very issue that Netlist originally put before this Court—whether Netlist properly terminated the JDLA because of a material breach. As the Ninth Circuit has made clear, where the second-filed case between identical parties involves "*the issue* to be determined" in the first-filed action, the rule militates in favor of a stay by the second court, not the first. *Id.* at 1241.

To be sure, "exceptions to the rule have been allowed" where equity militates against applying the rule. *Alltrade*, 946 F.2d at 628. These exceptions include where the first-filed suit was brought in "bad faith" or involved "forum shopping." *Id.* But none of those reasons applies here because *Netlist* is the party that originally chose to sue in this Court, and *Netlist* is the party that now seeks to engage in inequitable forum shopping, because it changed its mind about which court it prefers. There is no reason to take the extraordinary step of departing from the first-

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 15 -

to-file rule and allowing Netlist to ask the Eastern District of Texas to usurp this Court's authority to decide the contract-interpretation and termination issues.

*Third*, Netlist's request for a stay is directly contrary to *Netlist's own prior arguments* in the Eastern District of Texas that this Court's decision on contract interpretation must be followed.  For example, in a motion *in limine* filed in March 2023, Netlist sought to preclude Samsung from "presenting any argument or evidence that contradicts the findings of the Central District of California's Summary Judgment and Final Judgment."  MIL at 7, 2:21-CV-00463, ECF No. 391 (E.D. Tex., Mar. 17, 2023).  The next month, in a pretrial conference, Netlist told the Texas court that this Court had "ruled dispositively on four issues," including that there was a broad supply obligation under Section 6.2 and that the breach of that clause was material.  Tr. at 15:20-24, 2:21-CV-00463, ECF No. 426 (E.D. Tex. Apr. 3, 2023).  It would reward Netlist's duplicity to permit Netlist to now reverse course on which court is the correct forum to decide the issues of contract interpretation and, if necessary, materiality.  *Kendall-Jackson Winery, Ltd.*,150 F.3d at 1053 (holding that party's "inequitable conduct precludes it from receiving equitable relief").

*Fourth*, fact discovery and expert discovery in this case are completed, there is an established record as to the issues subject to the Ninth Circuit's remand, and there are only two narrow issues left to be determined as set forth in the Ninth Circuit's mandate.  Thus, efficiency dictates that this matter proceed in this Court as to those two issues.  Moreover, resolution in this first-filed case could be dispositive of all of the issues in the Eastern District of Texas case—if there is no material breach of Section 6.2, then Netlist's termination of the JDLA was invalid, and its patent infringement claims cannot survive because Samsung was licensed.  There is no basis in efficiency to defer resolution of these potentially dispositive issues on an established record in favor of a different case in a different court in which discovery is ongoing and there are still complex patent infringement issues to be determined.

*Finally*, Netlist's argument for a stay incorrectly contends that two issues

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 16 -

should be tried together and may only be tried together in the Eastern District of Texas:  (1) contract interpretation, breach, and termination (*i.e.*, whether Netlist validly terminated the JDLA on the ground of a material breach of Section 6.2), and (2) license scope (*i.e.*, whether the JDLA grants a broad license covering Samsung products, as Samsung contends, or a narrow license limited to the Joint Development Project, as Netlist now contends).  These issues are obviously distinct, as evidenced by the fact that the license's interpretation and validity was and is being litigated in this Court and (though Netlist does not mention it) the license's scope was never at issue here but was already litigated in the Eastern District of Texas (as discussed further below).

Indeed, Netlist's counsel asserted in oral argument before Judge Gilstrap that the question whether the pre-termination license scope was broad or limited to the JDLA "wasn't relevant to any issue that was before [the Central District of California]."  Tr. at 20:13-21:5, 2:21-CV-00463 (E.D. Tex.), ECF No. 426.  Netlist now asserts that these issues must be tried together, but it did not think so when it filed suit in this Court—Netlist's request for a declaratory judgment sought a ruling that it properly terminated the patent license (along with the rest of the JDLA), but did not request a declaration concerning the license scope.

Netlist offers no explanation for why it is so important that these two separate issues be tried together, and yet Netlist did not ask this Court to do so in the first instance.  Certainly, Netlist offers no explanation for why its newfound desire for these issues to be tried together can overcome the Ninth Circuit's mandate and the fundamental principles of equity discussed above.

Most importantly, Netlist fails to inform the Court that Judge Gilstrap has *already adjudicated* the scope of Samsung's pre-termination license and has already rejected Netlist's argument—Judge Gilstrap decided as a matter of law on summary judgment that the pre-termination license in the JDLA was not limited to only jointly developed products, *see* Order at 2, 2:21-CV-00463 (E.D. Tex.), ECF No. 432,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 17 -

finding it "replete in the record time and time again, both from the terms of the JDLA itself and the affirmative statements made by Netlist, that until July 15th, 2020, Samsung had a license defense." Tr. at 56:12-17, 2:21-CV-00436, ECF No. 426; *see also id.* at 25:21-29:19, 39:7-40:22 (Samsung addressing the dispute over the scope of the license grant); *id.* at 48:6-24 (Netlist arguing Samsung's license under the JDLA "was limited to products that were part of the joint development relationship" and the accused HBM products were "not part of the joint development relationship").

Netlist attempts to misrepresent that Judge Gilstrap sent the scope of the license to the jury, *supra*, n.1, but that is likewise incorrect.  While the Texas court initially permitted the scope of the pre-termination license as to foundry products to go to the jury, the court subsequently ruled against Netlist on that issue during trial as well, granting judgment as a matter of law in Samsung's favor on the remaining issues as to the scope of the pre-termination license. *See* 2:21-CV-00463 (E.D. Tex.), ECF No. 494 (4/20/23 Trial Vol. 5 Tr.) at 1266-67.  That determination is part of a final judgment issued in Texas and is thus binding as a matter of collateral estoppel. *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).  Thus, due to collateral estoppel, Netlist cannot seek to reargue the scope of the JDLA license anywhere; it is conclusively bound by Judge Gilstrap's prior decision on this issue, which has now matured into a final decision of the Eastern District Court of Texas.

And while it is true that Samsung is seeking to vacate that judgment in light of the Ninth Circuit's decision—the jury previously found patent infringement based on this Court's determination that Netlist had properly terminated Samsung's patent license, and the Ninth Circuit has now vacated that predicate determination—the Eastern District of Texas judgment remains in place and continues to estop Netlist's scope-of-license argument.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 18 -

1  Nor is there any merit to Netlist's claim that Samsung has taken inconsistent
2  positions in the Eastern District of Texas and the Ninth Circuit concerning the scope
3  of the license under the JDLA.  As Samsung has consistently asserted across all these
4  actions, the license is broad and not limited to patents developed through the
5  NVDIMM-P joint development project.  What Samsung did argue was that Netlist
6  granted Samsung a patent license in exchange for monetary payments and Samsung's
7  agreement to work with Netlist on the NVDIMM-P joint development project—
8  Netlist did not, contrary to Netlist's contention, grant Samsung a license in exchange
9  for an unlimited memory-chip supply obligation.

10  That was the point of the Ninth Circuit oral argument passage that Netlist
11  blatantly misrepresents above.  Netlist quotes Samsung's counsel stating at oral
12  argument that, based on the JDLA's opening recitals, the "licenses [were] being given
13  in connection with the collaboration," i.e., the NVDIMM-P joint development project.
14  As Netlist well knows, that statement had nothing to do with the *scope* of the patent
15  license granted in the JDLA, an issue not at issue in the appeal.  Rather, it was a
16  response to Netlist's argument that "the supply obligation was a primary
17  consideration for getting the licenses."  Tr. at 15:7-8, 22-CV-293 (E.D. Tex.), ECF
18  No. 210-2.  The obvious point of Samsung's argument was that Netlist did not grant
19  Samsung a patent license in exchange for an unlimited supply obligation.  Rather,
20  Netlist granted Samsung a license in exchange for promised collaboration on the joint
21  development project, as well as up front monetary compensation.  As the very next
22  line in the argument transcript (which Netlist does not quote) reflects, the point of
23  Samsung's argument was not about the scope of the license but that "Netlist got a
24  whole bunch of consideration in addition to this supply obligation."  *Id. at* 15:22-23.

25  But the fact that the parties promised collaboration on the NVDIMM-P joint-
26  development project was part of the consideration for the patent license obviously
27  does not mean that the *scope* of the patent license was limited to the NVDIMM-P
28  joint-development project, and Samsung has never made any such argument—indeed,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 19 -

1 Netlist's assertion about the scope of the license is plainly incorrect, as Judge Gilstrap
2 has already determined, *see supra* at 15-16.

3      Nor is there any conflict in asserting that the patent license is broad but the
4 supply obligation is limited to the Joint Development Project, as there were two
5 distinct purposes of the JDLA as expressed therein:  the joint development of the new
6 NVDIMM-P product, and (2) patent cross-licensing.  Indeed, the Ninth Circuit agreed
7 that these are the two stated purposes of the JDLA, and that "each substantive section
8 corresponds entirely to *one of the two goals*."  Mem. at 3, ECF No. 334 (emphasis
9 added).  Given those two separate purposes, it is entirely reasonable that the supply
10 obligation of Section 6.2 is limited to joint development, whereas the licenses are not.
11 And in all events, there is no reason to inject this issue into the proceedings before
12 this Court, particularly when Judge Gilstrap has already decided the scope of the pre-
13 termination license.

14      For these reasons, any attempt by Netlist to thwart the mandate of the Ninth
15 Circuit and have the issue of contract breach and termination decided in the Eastern
16 District of Texas, rather than this Court, where Netlist first filed its contract claims
17 against Samsung over three years ago, should be denied.

18
19     **2.**    **Samsung's Response to Netlist's Requests for Additional Relief**

20      Samsung will also oppose the other relief that Netlist intends to request, all of
21 which is an improper attempt to circumvent deadlines in this case that are long past.
22 Netlist states that in the event its motion for a stay of this case is not granted, it intends
23 to request that the Court permit it to file an amended pleading to add a request for
24 declaratory relief on the scope of Samsung's license, reopen fact discovery to allow
25 Netlist to use fact depositions and documents from the Eastern District of Texas
26 litigations, and reopen expert discovery to submit a supplemental expert report.  Since
27 such relief would require modifying this Court's prior scheduling order, Netlist must

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 20 -

show "good cause."  Fed. R. Civ. P. 16(b)(4).  But Netlist has failed to cite any justification for the relief sought, let alone anything approaching good cause.

*Amended Pleadings.*  The Court's February 12, 2021 Order re: Jury Trial sets out April 5, 2021 as the last date to hear a motion to amend pleadings.  Order, ECF No. 41.  Netlist's request to amend its pleadings at this stage to seek a declaration on the scope of the licenses should summarily be denied as untimely under the Court's scheduling order.  Netlist has made no effort to demonstrate good cause here.  Nor could it satisfy this standard.  Netlist had every opportunity to seek a declaration on the scope of the license in this case.  It chose not to do so and instead chose to litigate the scope of the pre-termination license in Texas, where—despite Netlist's attempt to misrepresent the Texas court's rulings, *see supra* at 19—the court ruled against Netlist on that issue.  Netlist must live with that.

*Use of Discovery from Eastern District of Texas.*  Fact discovery closed in this case years ago, on August 16, 2021.  *See* Order re: Jury Trial, ECF No. 41.  Now Netlists seeks to expand the record by porting over wholesale deposition transcripts and documents obtained in discovery in the Eastern District of Texas.  Yet again, Netlist has made no effort to show good cause for reopening discovery.  Netlist's request to expand the record in this case with discovery from the Eastern District of Texas is a blatant attempt to circumvent prior discovery orders in this case.

For example, in this case, Magistrate Judge Spaeth denied Netlist's motion to compel the deposition of Jung-Bae Lee on apex grounds.  Minutes of Hearing, ECF No. 103.  Netlist, however, successfully compelled Dr. Lee's deposition in the Eastern District of Texas case by arguing that Dr. Lee had "personal knowledge of Netlist's technologies, patent portfolio, product design, and the parties' history of license negotiations" that Netlist said was relevant to "Netlist's willful infringement case and Samsung's patent license defenses" and Dr. Lee did not qualify for apex doctrine protection.  *See* 2:21-CV-00436, ECF No. 134 at 1-7 (public version of ECF No. 121) at 14-19).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 21 -

Netlist's reference to an agreement to cross-use fact depositions from this case in the Eastern District of Texas is misleading.  There Samsung agreed to produce certain deposition transcripts from this case in exchange for Netlist's agreement, *inter alia*, not to take certain depositions again.  What Netlist seeks here is the ability to use deposition transcripts from the Eastern District of Texas in place of depositions it was expressly prohibited from taking in this case.[4]  Netlist also seeks to use depositions taken in the Texas litigation of witnesses such as Indong Kim who were already deposed in this case, apparently because Netlist feels the need to augment the record in this case despite having already had a full opportunity to depose the witnesses in this case.[5]

Netlist's attempt to expand the discovery record would—in addition to end running the discovery orders in this case—create unfair prejudice and cause unnecessary delay, as there was no reason to anticipate that discovery in Texas would be used in this case given that discovery in this case was closed, and the parties would have to be able to engage in further discovery here to respond to the discovery in Texas.  Moreover, Netlist has failed to show that it did not have an adequate opportunity to conduct discovery in this case.  Thus, any request by Netlist to reopen fact discovery should be denied.

***Updated Expert Reports.***  Netlist opaquely asks the Court to grant leave to file "supplemental expert reports, not to include new opinions, but to update prior opinions including based on information from the Eastern District." *Supra* at 6. Netlist fails to explain what issues these could possibly be or why they are relevant to the issues in the Ninth Circuit's mandate, and there is no reason for the parties to undertake the vast expense of another round of expert discovery.  The expert discovery cut off in this case likewise passed years ago.  Because there should be no

---

[4] As discussed above, the Court can and should decide the meaning of Section 6.2 on the original summary judgment record before it.

[5] Netlist also mischaracterizes the testimony of Mr. Kim in support of its attempt to open the discovery record in this case.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 22 -

1 new discovery, there is no need to update any expert reports. Nor has Netlist identified
2 *any* justification for supplementing expert reports, let alone a justification satisfying
3 the good cause standard.

### 3. Samsung's Proposed Schedule

5     In view of the Ninth Circuit's mandate, this Court ordered the parties to
6 "propos[e] a schedule for further proceedings." The threshold issue before the Court
7 is whether the extrinsic evidence creates a genuine issue of material fact as to the
8 meaning of Section 6.2 of the JDLA. As this issue was already briefed once, there is
9 adequate evidence in the summary judgment record for the Court to make this
10 determination. Because the prior briefing did not focus solely on the issue the Ninth
11 Circuit has now mandated be considered, Samsung proposes targeted supplemental
12 briefs to specifically address the meaning of Section 6.2, to be concurrently filed
13 within 30 days of the Court's decision following the filing of this Joint Status Report,
14 with each side having the right to file a responsive brief 15 days thereafter. This
15 supplemental briefing will allow the Court to focus its attention on the relevant
16 evidence and law and comply with the Ninth Circuit's mandate.

17     Samsung contends that the extrinsic evidence in the record demonstrates there
18 is no genuine issue of material of fact as to the meaning of Section 6.2, that Section
19 6.2 is limited to the supply of DRAM and NAND as raw materials for the parties'
20 joint development project, and that the Court should adopt Samsung's interpretation
21 as a matter of law. If the Court adopts Samsung's interpretation of Section 6.2, there
22 is no need for a trial on whether any alleged breach of Section 6.2 is material, and
23 Netlist's request for a declaration that it validly terminated the JDLA must be denied.
24 Samsung proposes that if the Court declines to adopt its interpretation of Section 6.2
25 as a matter of law, then at that time the Court should set the case for a jury trial on the
26 issues of interpretation in light of the extrinsic evidence, breach and materiality as
27 soon as the Court's schedule permits allowing for pre-trial filings on a schedule in
28 accordance with the Court's Order re: Jury Trial, ECF No. 41.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 23 -

III.   **ALTERNATIVE DISPUTE RESOLUTION**

The parties have met and conferred regarding the Court's offer to stay this case for sixty days pending alternative dispute resolution. The parties do not believe that settlement discussions would be productive at this time.

Respectfully submitted,

Dated:  November 27, 2023                    Irell & Manella, LLP


By:        /s/ A. Matthew Ashley

A. Matthew Ashley

Attorney for Plaintiff
Netlist, Inc.


Dated:  November 27, 2023                    O'Melveny & Myers, LLP


By:        /s/ Michael Yoder

Attorneys for Defendant
Samsung Electronics Co., Ltd.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

JOINT RULE 26(f) REPORT
Case No. 8:20-cv-00993-MSC-ADS

- 24 -