| | |
|---|---|
| 1 | IRELL & MANELLA LLP<br>Jason G. Sheasby (205455) |
| 2 | jsheasby@irell.com<br>Michael D. Harbour (298185) |
| 3 | MHarbour@irell.com<br>1800 Avenue of the Stars, Suite 900 |
| 4 | Los Angeles, California 90067<br>Telephone:    (310) 277-1010 |
| 5 | Facsimile:    (310) 203-7199 |
| 6 | IRELL & MANELLA LLP<br>A. Matthew Ashley (198235) |
| 7 | mashley@irell.com<br>840 Newport Center Drive, Suite 400 |
| 8 | Newport Beach, CA 92660<br>Telephone:    (949) 760-0991 |
| 9 | Facsimile:    (949).760-5200 |
| 10 | Attorneys for Plaintiff Netlist Inc. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,, | Case No. 8:20-CV-0993-MCS (ADS) |
| Plaintiff, | **NETLIST INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,, | Judge Mark C. Scarsi |
| Defendant. | Final Pretrial Conference:<br>Date:   March 18, 2024<br>Time:   2:00 p.m. |
| | Trial:  March 26, 2024 |

**TABLE OF CONTENTS**

                                                     **Page**

I. NETLIST'S CLAIMS ................................................................................. 1

II. SAMSUNG'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES ................................................................................................ 4

III. STATEMENT OF THIRD-PARTY CLAIMS ............................................. 4

IV. ANTICIPATED EVIDENTIARY ISSUES .................................................. 4

    A.    Motions In Limine ............................................................................. 4

    B.    Other Evidentiary Issues .................................................................... 7

V. ISSUES OF LAW ......................................................................................... 8

VI. BIFURCATION ........................................................................................... 8

VII. JURY TRIAL ............................................................................................... 8

VIII. ATTORNEYS' FEES .................................................................................. 8

IX. ABANDONMENT OF ISSUES .................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*,
   361 F. Supp. 2d 283 (S.D.N.Y. 2005) ................................................................. 2

*Doner-Hedrick v. New York Inst. of Tech.*,
   874 F. Supp. 2d 227 (S.D.N.Y. 2012) ................................................................. 2

*ESPN v. Office of Com'r*,
   76 F. Supp. 2d 416 (S.D.N.Y. 1999) ................................................................... 2

*Facebook, Inc. v. Power Ventures, Inc.*,
   252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th
   Cir. 2019) ............................................................................................................ 3

*Fed. Ins. Co. v. Americas Ins. Co.*,
   258 A.D.2d 39, 691 N.Y.S.2d 508 (1999) .......................................................... 5

*Netlist Inc. v. Samsung Elecs. Co.*,
   No. 22-55209, 2023 WL 6820683 (9th Cir. Oct. 17, 2023) ........................... 2, 3

**Other Authorities**

Restatement (Second) of Contracts § 241 ................................................................ 2

Rule 26 ...................................................................................................................... 6

Plaintiff Netlist Inc. ("Netlist") submits the following Memorandum of Contentions of Fact and Law pursuant to this Court's Order Re: Jury Trial, Dkt. 41, and Central District of California Local Rule 16-4.

## I. NETLIST'S CLAIMS

The only claim to be tried to the jury is Netlist's claim that Samsung materially breached its contract with Netlist by failing to supply NAND and DRAM products to Netlist as required by § 6.2 of the parties' Joint Development and License Agreement ("JDLA"). Section 6.2 requires Samsung to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (i.e., among customers purchasing similar volumes of similar products)."

The parties dispute how to interpret this provision. Netlist claims that Section 6.2 required Samsung to supply Netlist with NAND and DRAM products on Netlist's request. Samsung claims that it was only required to supply NAND and DRAM chips for manufacturing a specific NVDIMM-P product if the parties jointly developed it.[1]

<u>Elements of Material Breach</u>

Under New York law,[2] a breach is material if it goes to the root of the agreement between the parties. Materiality does not depend upon the amount of provable money damages, if any. The following are the non-exhaustive factors for materiality:

1. The extent to which Netlist will be deprived of the benefit which it reasonably expected;

2. The extent to which Netlist can be adequately compensated for the part of that benefit of which it will be deprived;

---

[1] *See* Dkt. 390 at 8 ("Netlist argues that the provision should be interpreted consistent with its express language: Samsung promised to supply NAND and DRAM products to Netlist at a competitive price. (E.g., Netlist Mem. 12.) Samsung contends the provision obliged it to supply NAND and DRAM products to Netlist only in connection with the parties' NVDIMM-P joint development project. (E.g., Samsung Mem. 12.)").

[2] New York law governs the contract issues. *See* Dkt. 390 at 8.

   3. The extent to which the party failing to perform, Samsung, will suffer forfeiture;

   4. The likelihood that Samsung will cure its failure, taking account of all the circumstances including any reasonable assurances;

   5. The extent to which the behavior of Samsung comports with standards of good faith and fair dealing.

 Materiality does not depend upon the amount of provable money damages. *See, e.g., ESPN v. Office of Com'r*, 76 F. Supp. 2d 416, 421 (S.D.N.Y. 1999) ("Baseball's ability to recover only nominal damages does not impede its ability to present testimony and evidence regarding the materiality of ESPN's breach"); *Doner-Hedrick v. New York Inst. of Tech.*, 874 F. Supp. 2d 227, 242 (S.D.N.Y. 2012) ("Materiality does not depend upon the amount of provable money damages, it depends upon whether the nonbreaching party lost the benefit of its bargain."); *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *3 (9th Cir. Oct. 17, 2023); Restatement (Second) of Contracts § 241 (setting forth the materiality factors listed above); *Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005) (holding that New York law applies the Second Restatement factors to determine materiality);[3] *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023) ("To the extent Samsung contends that the district court independently erred by awarding nominal damages following the jury's finding that Netlist had not suffered actual damages from the

---

[3] *Bear Stearns* lists the Second Restatement materiality factors as: "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Bear Stearns,* 361 F. Supp. 2d at 296.

breach of § 6.2, we disagree.") (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993)).

Netlist has also pled and maintains its claim for declaratory relief that it terminated its contract with Samsung, and that all licenses and rights previously granted thereunder ceased, on July 15, 2020. Upon a jury verdict in Netlist's favor regarding material breach, this claim will also be established, as the Court has already concluded that Netlist properly followed the termination procedures of the JDLA, and Samsung did not appeal that ruling. Dkt. 186 at 18:11-27 ("Netlist Complied with the Termination Term.").

<u>Law Of The Case And Key Evidence Regarding Material Breach</u>

There is no dispute that the parties entered into the JDLA, and Netlist performed its obligations under the JDLA. Court's Ruling on Summary Judgment (Dkt. 186) at 13:28-14:1 ("There is no genuine dispute that Netlist performed its obligations under the JDLA."). Samsung did not appeal this ruling thus making it law of the case. *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 775 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) ("[I]ssues that were previously resolved and were not raised on appeal are the law of the case and are not subject to relitigation absent a motion for leave to file a motion for reconsideration").

Further, this Court also previously determined that under Netlist's contract interpretation, Netlist at least suffered nominal damages. Dkt. 186 at 17:3-18. Samsung appealed this ruling, and the Ninth Circuit affirmed. *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023) ("To the extent Samsung contends that the district court independently erred by awarding nominal damages following the jury's finding that Netlist had not suffered actual damages from the breach of § 6.2, we disagree.")).

The only remaining issue is thus whether Samsung materially breached Section 6.2 of the JDLA by failing to supply NAND and DRAM products to Netlist on Netlist's request at a competitive price. Netlist will prove this element primarily

through the testimony of its witnesses, documents, and the testimonial and documentary admissions from current and former Samsung employees, as disclosed in Netlist's witness list submitted concurrently with this Memorandum.

## II. SAMSUNG'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Samsung has not pleaded any counterclaims. Samsung has also informed Netlist that it does not intend to raise any affirmative defenses at trial.

## III. STATEMENT OF THIRD-PARTY CLAIMS

Not applicable. There are no third-parties involved in this matter.

## IV. ANTICIPATED EVIDENTIARY ISSUES

### A. Motions In Limine

The Court will hear the parties' motions in limine at the Final Pretrial Conference scheduled on March 18, 2024, decisions on which will resolve the primary anticipated evidentiary issues. Netlist's positions are set forth in detail in the motions in limine it has filed concurrently with this Memorandum. The following is a brief summary:

First, Netlist moves to exclude any evidence or argument relating to the prior jury's finding that Netlist suffered no direct (i.e. cover) damages. This evidence is irrelevant and prejudicial because (1) the Court already found that nominal damages are sufficient to sustain Netlist's breach of contract claim and termination for material breach (and that decision was affirmed on appeal); and (2) as the Court previously held, the amount of recoverable damages is not relevant to materiality. Dkt. 305 at 8:7-9 ("Materiality does not depend upon the amount of provable money damages, it depends on whether the nonbreaching party lost the benefit of its bargain.") (quoting *Doner-Hedrick v. N.Y. Inst. of Tech.*, 874 F. Supp. 2d 227, 242 (S.D.N.Y. 2012)).

Second, Netlist moves to permit Netlist to introduce testimony given by Samsung's witnesses during the patent litigation between the parties in the Eastern District of Texas. This evidence is highly relevant and admissible because the testimony that Samsung's witnesses gave in Texas either undermines or flatly

contradicts the positions that Samsung is taking in this case.

Third, Netlist moves to exclude any argument or evidence on Samsung's rejected or abandoned defenses. As noted above, Samsung is not raising any affirmative defenses; however, Samsung is still improperly attempting to introduce evidence and argument relating to these defenses in an effort to prejudice and confuse the jury.

Fourth, Netlist moves to exclude any argument or evidence that the JDLA's non-recurring engineering ("NRE") fee constitutes payment for a patent license. In the Ninth Circuit, Samsung successfully argued that the NRE fee was payment for Netlist's joint development efforts, not a patent royalty. Samsung should thus be precluded from arguing that the NRE was the consideration Netlist received in exchange for a patent license.

Fifth, Netlist moves to exclude any argument relating to post-termination sales or purchase orders of NAND and DRAM products. Contrary to Samsung's position, such evidence is wholly irrelevant to the parties' course of dealing under the agreement because, post-termination, there was no such agreement. Under New York law, course of conduct is only relevant for the period before a dispute arose. *See, e.g.*, *Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 44, 691 N.Y.S.2d 508, 512 (1999) (The parties "course of performance *under* the contract" is relevant if it occurs "before [the contract] comes to be the subject of controversy.") This makes sense, otherwise a party could manipulate its post-dispute behavior for the purpose of assisting itself in the dispute. Post termination evidence can have no bearing on how the JDLA is to be interpreted or materiality of breach.

Samsung has indicated that it intends to file the following motions in limine. Netlist will provide a full response to these motions in due course. The following is a brief summary of Netlist's position based on the information that Samsung has disclosed to Netlist:

First, Samsung intends to move to exclude Netlist witnesses Scott Milton,

Devon Park, and Noel Whitley from testifying at trial on the basis of Samsung's argument that they were not properly disclosed. Netlist's position is that these witnesses were both adequately disclosed in Netlist's Rule 26 disclosures and during the discovery process. Moreover, numerous witnesses on Samsung's witness list were never included on Samsung's Rule 26 disclosures. If Mr. Milton, Park, and Whitley are precluded from testifying (and they should not be), then these Samsung witnesses should be excluded from Samsung's case as well.

Second, Samsung intends to move to preclude Netlist's CEO, Chuck Hong, from testifying regarding what Samsung refers to as "uncommunicated subjective intent" as to the JDLA's meaning. Netlist disputes that the testimony that Samsung has identified constitutes Mr. Hong's "uncommunicated subjective intent." Moreover, this evidence is directly relevant to materiality, i.e., what the parties viewed as the root of the agreement and whether Netlist received the benefit of its bargain. Indeed, this Court cited Mr. Hong's testimony in the Court's analysis of materiality at summary judgment, amply demonstrating that it is not irrelevant. Dkt. 186 at 19 (citing Netlist's PMSJ GDMF ¶¶ 14–17, 55–59).

Third, Samsung intends to move to preclude Netlist fact witnesses from testifying regarding what Samsung refers to as "consequential damages." Netlist has informed Samsung that it does not intend to offer any consequential damages calculation in this case given the Court's prior ruling that Netlist cannot seek such damages under the JDLA. Netlist, however, will present evidence regarding the harm that Samsung's breach caused Netlist's business as this evidence, including related testimony, is directly relevant to whether Samsung's breach was material. This is the proper subject of fact witness testimony.

Fourth, Netlist has identified its expert, Larry Tedesco, as a "may call" witness in view of Samsung's attempt to preclude fact witnesses from testifying regarding the harm that Netlist suffered as result of Samsung's breach. Samsung has indicated it will move to preclude Mr. Tedesco from offering any "consequential damages"

analysis. Again, Netlist's position is that Mr. Tedesco will not be proffering a consequential damages number, but he is qualified to testify regarding the harm Samsung's breach caused Netlist's business and other points related to materiality of breach.

### B. Other Evidentiary Issues

The parties have met and conferred about two other potential evidentiary issues. First, both Netlist and Samsung have identified Samsung's former employee, Steven Metz, as a trial witness. Netlist properly served a trial subpoena on Mr. Metz and he has not moved to quash the subpoena. Samsung has requested that Mr. Metz only appear on March 29, 2024, the final day of trial, because he is scheduled to attend a three day work conference near San Diego earlier in the week. This has the effect of allowing Samsung to call Mr. Metz on direct, but precluding Netlist from doing so. Netlist has informed Samsung that this is not workable, as Netlist needs call Mr. Metz as part of its case-in-chief. Netlist has offered to identify the specific date and period of time (morning or afternoon) during which Mr. Metz will be called and to arrange for a car service to take Mr. Metz back and forth from his conference. Netlist has also asked for information on particular periods during the conference when Mr. Metz's attendance is most crucial (if any). A juror would not be released from service based on a work conference. A witness subject to a duly-issued trial subpoena is under no less grave of an obligation. The parties are continuing to meet and confer to determine whether there are other ways to accommodate Mr. Metz's schedule.

Second, the parties have met and conferred over whether they are willing to accept service of trial subpoenas behalf of certain witnesses. Samsung has listed three witnesses on its witness list—Hyun-Ki Ji, Hyeok-Sang Yoo, and Lane Kim—who are employees of Samsung but reside in Korea. Samsung has stated it will not accept trial subpoenas for these witnesses. This has the effect of allowing Samsung to call these witnesses in its case in chief but precluding Netlist. Netlist's position is that, if Samsung is not willing to accept subpoenas for these individuals, they should not be

permitted to testify at trial. If Samsung is actually going to call one of these witnesses, they will obviously be in California, and Netlist should have equal right to call a witness in California.

## V. ISSUES OF LAW

In light of this Court's past summary judgment rulings (Dkts. 186 and 390) and the Ninth Circuit's opinion on appeal, there are no issues of law that remain outstanding. As this Court previously stated, the only issues remaining for trial are "did Samsung beach the contract . . . [a]nd if so, is that breach material," Dkt. 391 at 7:8-12, both of which involve questions of fact.

## VI. BIFURCATION

Netlist does not seek bifurcation of any issues.

## VII. JURY TRIAL

Netlist is entitled to, and timely demanded, a jury trial, as reflected in this Court's Order Re: Jury Trial, Dkt. 41.

## VIII. ATTORNEYS' FEES

Netlist does not seek the recovery of attorneys' fees.

## IX. ABANDONMENT OF ISSUES

Netlist has not abandoned any claims pleaded in its First Amended Complaint. As addressed above, Samsung does not intend to raise any affirmative defenses.

Dated:  February 26, 2024

Jason G. Sheasby
A. Matthew Ashley
Michael Harbour

By: */s/ Jason G. Sheasby*
A. Matthew Ashley
Attorneys for Plaintiff
Netlist Inc.