JASON SHEASBY, SBN 205455
jsheasby@irell.com
MICHAEL HARBOUR, SBN 298185
mharbour@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

A. MATTHEW ASHLEY, SBN 198235
mashley@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949.760.0991
Facsimile: 949.760.5200

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No. 8:20-cv-00993-MCS (ADS)<br><br>**NETLIST INC.'S OPPOSITION TO SAMSUNG'S MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF NETLIST EXPERT MR. LARRY TEDESCO [REDACTED]**<br><br>Date: March 18, 2024<br>Time: 2 p.m. PT<br>Location: Courtroom 7C<br>Judge: Hon. Mark C. Scarsi |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. Projections On What Sales Would Have Been If Samsung Complied ............................................................................................. 1

        i. Projected Revenues If Samsung Would Have Complied ................................................................................ 2

        ii. Incremental Costs ................................................................ 6

    B. Qualitative Opinions ...................................................................... 7

        i. License to Netlist's Patents ................................................. 7

        ii. Samsung's Supply Commitment ...................................... 10

III. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ........................................................................................................... 10

*Diabetes Centers of Am., Inc. v. Healthpia Am., Inc.*,
  No. CIV. H-06-3457, 2008 WL 375505 (S.D. Tex. Feb. 11, 2008) ..................... 4

*Dominion Assets LLC v. Masimo Corp.*,
  No. 14-CV-03002-BLF, 2018 WL 11452321 (N.D. Cal. Aug. 1, 2018) ................................................................................................................... 10

*Glob. Videos, Inc. v. Niekerk*,
  187 F. App'x 689 (9th Cir. 2006) ......................................................................... 2

*Humetrix, Inc., v. Gemplus S.C.A.*,
  268 F.3d 910 (9th Cir. 2001) ................................................................................ 2

*Jacked Up, LLC v. Sara Lee Corp.*,
  291 F. Supp. 3d 795 (N.D. Tex. 2018) ................................................................. 3

*JMJ Enters, Inc. v. Via Veneto Italian Ice, Inc.*,
  No. CIV. A. 97-CV-0652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998) .............................................................................................................. 4, 5

*JRL Enters, Inc. v. Procorp Assocs., Inc.*,
  No. CIV.A. 01-2893, 2003 WL 21284020 (E.D. La. June 3, 2003) ..................... 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ................................................................................ 8

*Oracle Am., Inc. v. Google Inc.*,
  No. C 10-03561 WHA, 2016 WL 2342365 (N.D. Cal. May 3, 2016) .......... 4, 5, 6

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
  257 F.R.D. 607 (E.D. Cal. 2009) .......................................................................... 2

*Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*,
  No. CV 17-1734-RGA, 2021 WL 982732 (D. Del. Mar. 16, 2021) ................. 8, 9

*SUNOCO Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*,
   No. CV 17-1390-LPS-CJB, 2020 WL 7330715 (D. Del. Jan. 13, 2020) ............................................................................................................... 9

*TC Tech. LLC v. Sprint Corp.*,
   No. 16-CV-153-RGA, 2019 WL 2515779 (D. Del. June 18, 2019) ..................... 7

*Trekeight, LLC v. Symantec Corp.*,
   No. 04-CV-1479, 2006 WL 5201349 (S.D. Cal. May 23, 2006) .......................... 2

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ................................................................................ 7

*Youngevity Int'l, Inc. v. Smith*,
   No. 16-CV-704, 2018 WL 893810 (S.D. Cal. Feb. 13, 2018) .............................. 2

*ZF Meritor LLC v. Eaton Corp.*,
   646 F. Supp. 2d 663 (D. Del. 2009), aff'd, 696 F.3d 254 (3d Cir. 2012) ................................................................................................................ 4

**Other Authorities**

ITC-337-TA-1089, Notice of Final Determination (April 7, 2020) ........................... 8

## I. INTRODUCTION

Samsung moves to preclude certain testimony by Netlist expert Larry Tedesco.[1] Mr. Tedesco will not request that the jury award a consequential damages number. Instead, he will provide an expert analysis of: (1) the objective value of Netlist's portfolio at the time of the JDLA (Dkt. 420-8 at ¶¶ 11-13, 35-51, 79-85, 117-127) and (2) the objective value of the product supply clause to Netlist, as evidenced by what the benefit to Netlist's business would have been if Samsung complied with its supply obligations (*Id.* at ¶¶ 53-57, 70, 74-115, 129-130).

Samsung in a footnote challenges the relevance of Mr. Tedesco's opinions, referencing Samsung's MIL No. 4. Dkt. 416 at 3, 7. However, as explained in Netlist's opposition to Samsung's MIL No. 4, filed concurrently, the jury in this case will be asked to decide one question: whether Samsung materially breached the JDLA's supply provision. The jury is entitled to hear evidence regarding the extent to which Samsung's breach deprived Netlist of the benefit of its bargain.

Samsung mischaracterizes and ignores Mr. Tedesco's analysis and complains about certain inputs and conclusions reached. Such criticisms are for cross-examination, not exclusion of expert testimony. Samsung's motion should be denied.

## II. ARGUMENT

### A. Projections On What Sales Would Have Been If Samsung Complied

As part of the ▓▓▓▓▓▓▓▓▓▓ Mr. Tedesco ▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 420-8 at ¶ 89. Mr. Tedesco's quantitative analysis involved two primary steps: (1) calculating Netlist's revenues if Samsung would have continued to behave as it did in 2016; (2) calculating the costs of achieving these increased revenues. *Id.* at ¶¶ 88, 100-115.

---

[1] Samsung addresses only some of Mr. Tedesco's opinions. For example, Samsung does not move to strike Mr. Tedesco's report § IV (¶¶ 32-73).

1    Samsung does not challenge Mr. Tedesco's methodology for this analysis, but
2    instead alleges the analysis involved "speculation" and "disregard for highly relevant
3    facts." Dkt. 416 at 3. But even if true (it is not), Samsung's complaints provide no
4    basis for excluding testimony. "[L]ost profits are 'necessarily an estimate' [and] their
5    'amount cannot be shown with mathematical precision.'" *Humetrix, Inc., v. Gemplus*
6    *S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001); *Glob. Videos, Inc. v. Niekerk*, 187 F. App'x
7    689, 690–91 (9th Cir. 2006) ("lost profits is inherently an estimate"). And complaints
8    about factual inputs go to weight, not admissibility. *See, e.g., Trekeight, LLC v.*
9    *Symantec Corp.*, No. 04-CV-1479, 2006 WL 5201349, at *4 (S.D. Cal. May 23, 2006)
10   ("to the extent that Trout's analysis is incomplete in that it fails to consider other
11   possible market factors that could have negatively impacted Plaintiff's sales, such
12   possible shortcomings typically go to the weight of the evidence rather than to its
13   admissibility"); *Youngevity Int'l, Inc. v. Smith,* No. 16-CV-704, 2018 WL 893810, at
14   *3 (S.D. Cal. Feb. 13, 2018) (denying challenge to "underlying facts that [expert's]
15   analysis relied upon" because such objections "go to the weight and credibility of the
16   testimony rather than its admissibility"); *S. Yuba River Citizens League v. Nat'l*
17   *Marine Fisheries Serv.*, 257 F.R.D. 607, 616 (E.D. Cal. 2009) ("The fact that
18   additional information was available … go[es] to the weight of such evidence").

### i. Projected Revenues If Samsung Would Have Complied

20   Mr. Tedesco performed multiple independent analyses to quantify Netlist's
21   revenue growth under the JDLA. He analyzed Netlist's actual revenue for six quarters
22   (Q1 2016 – Q2 2017) where the JDLA was in place and before Samsung's breach.
23   Dkt. 420-8 at ¶¶ 100-103, 113. He performed analysis based on Netlist's purchases of
24   Samsung goods for resale, and converted quarterly purchase estimates into revenues.
25   *Id*. at ¶¶ 104-108. He reviewed Netlist's and Samsung's projections of Netlist
26   purchases. *Id*. at ¶¶ 99-108. Mr. Tedesco identified three independent growth models
27   to project Netlist's revenue but-for Samsung's breach. *Id*. at ¶ 109. Forecasts were
28   consistent among the three growth models: ███████████████

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

[REDACTED] *Id.* at ¶¶ 113-114; Dkt. 420-9 (Exs. 1.1-1.3). Contrary to Samsung's assertion that Mr. Tedesco "estimates five years of future sales revenue based entirely on just one or two quarters" (Dkt. 416 at 1), Mr. Tedesco's projections through 2019 rely on data from 2016-2017, and after 2019 Mr. Tedesco assumed no further growth in revenue per quarter.

Samsung complains Mr. Tedesco's "linear-growth models do not use Netlist's *actual sales data* but instead Netlist's projections of *purchases* of Samsung products." Dkt. 416 at 4-5. But as explained above, Mr. Tedesco performed analyses using actual sales data, actual purchases, and projections. Dkt. 420-8 at ¶¶ 99-108. Analyzing sales and purchases provides a more complete picture. Ex. A at 166:20-167:07 ("[REDACTED]"). Further, Mr. Tedesco explained the strong relationship between Netlist's purchases and sales. Dkt. 420-8 at ¶¶ 93-97 (lack of committed Samsung supply impacts resale and Netlist-branded product revenue). Further, Samsung's complaint at most goes to weight (see, § II.A. supra), and Samsung cites nothing to the contrary: in the single out of circuit and inapposite case Samsung cites, the plaintiff "point[ed] to no actual revenue data on which [the expert] relied in calculating lost profits" and "failed to show … that [the expert] assessed whether the … Pro Forma on which he relied is valid." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 802-804 (N.D. Tex. 2018).

Samsung next alleges that Mr. Tedesco's linear growth models relied on "Q2 2017 projections provided by Netlist to Tedesco, which he adopted wholesale with no independent analysis[.]" Dkt. 416 at 3. Not so. Mr. Tedesco explained in detail why the Q2 2017 forecast was reasonable, including that Samsung's internal projections were consistent with Netlist's forecast. Dkt. 420-8 at ¶ 66. Netlist's Q2 2017 forecast was provided to Samsung in May 2017, well into the second quarter, and was based

---

[2] Mr. Tedesco determined [REDACTED] Dkt. 420-8 at ¶¶ 113-114.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

on the actual sales data to date. Mr. Tedesco analyzed the data, spoke to the source of the projection about the underlying methodology, and verified its accuracy. *Id.* at ¶¶ 62-66, 99, 104-108; Ex. A at 168:06-169:24, 171:10-172:20. Again, Samsung fails to identify any case that supports the exclusion it seeks. In *ZF Meritor*, the expert relied on a "business plan" where the "source is both unknown to, and untested by" the expert. *ZF Meritor LLC v. Eaton Corp.*, 646 F. Supp. 2d 663, 667–68 (D. Del. 2009), aff'd, 696 F.3d 254 (3d Cir. 2012); *see also Diabetes Centers of Am., Inc. v. Healthpia* Am., Inc., No. CIV. H-06-3457, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008) (expert "simply accepted DCOA's projection that their number of patients would increase from 7,000 in 2006 to 284,000 in 2007" and "was not sure how the projected numbers were developed or who developed them"); *JRL Enters, Inc. v. Procorp Assocs., Inc.*, No. CIV.A. 01-2893, 2003 WL 21284020, at *5 (E.D. La. June 3, 2003) (expert performed no analysis and instead was "merely taking the facts as given to me by [plaintiff] and putting them in a format").

Next, Samsung takes issue with Mr. Tedesco's focus on the last two quarters before the breach. Dkt. 416 at 3-4. But Mr. Tedesco explained at length why the most recent two quarters were the most relevant for estimating future sales, including because the "agreement was in its infancy" and earlier quarters did not provide as reliable of growth data. Dkt. 420-8 at ¶¶ 99, 106-108. Mr. Tedesco did not assume Netlist's revenue growth would be constant as Samsung alleges (Dkt. 416 at 4); rather, he generated models using linear and percentage based growth, and all models provided consistent results, supporting the validity of his projections. Dkt. 420-8 at ¶¶ 104, 115. The citations from Samsung offer no support. In *JMJ*, the expert's opinions went "beyond his area of expertise" to areas he "knew almost nothing about," and he relied on tax returns—without any verification—despite knowing of inaccuracies. *JMJ Enters, Inc. v. Via Veneto Italian Ice, Inc.*, No. CIV. A. 97-CV-0652, 1998 WL 175888, at *6, *8 (E.D. Pa. Apr. 15, 1998). And in *Oracle*, the expert "calculated lost profits based on a forecast of licensing revenue" but "offered ***no***

1  *analysis* regarding whether the forecast … would be a reliable basis for making such
2  projections." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 WL
3  2342365, at *7, *8 (N.D. Cal. May 3, 2016) (emphasis added).

4  Samsung then criticizes Mr. Tedesco's third revenue growth model which
5  applied a ▮ rate. According to Samsung, "this fixed-rate model ignores that, as a
6  business grows, its growth rate naturally slows." Dkt. 416.  Samsung cites no support
7  for its made up rule of business; instead, it repeats cites to *JMJ* and *Oracle,* neither of
8  which says anything about Samsung's bald allegation, let alone finding this as a basis
9  to exclude testimony. Mr. Tedesco performed a detailed analysis to support the ▮
10 growth rate, analyzing the actual quarterly observed growth rates in all the sales data
11 available up to Samsung's breach, including compounded average quarterly growth
12 rates from Q1 2016 – Q2 2017.  Dkt. 420-8 at ¶¶ 100-103, Table 1.  Mr. Tedesco
13 conservatively chose the lowest result: ▮ *Id*; Dkt. 420-9 (Exs. 1.1-1.3).  Samsung
14 cites no error in this methodology.

15 Samsung further argues that the "fixed-rate model is based on data reflecting
16 resale of products from all suppliers, not just Samsung" and allegedly improperly
17 incorporates "products not contemplated by the parties' agreement."  Dkt. 416 at 8-9.
18 Not so.  Mr. Tedesco's analysis incorporates Netlist's resale of Samsung products and
19 sales of Netlist-branded products, which include products utilizing Samsung NAND
20 and DRAM.  Mr. Tedesco explained in detail ▮
21 ▮
22 ▮
23 Dkt. 420-8 at ¶¶ 93-97. Mr. Tedesco's analysis excluded explicitly unrelated sales,
24 including resales of SK Hynix products.  Dkt. 420-9 (Exs. 1.1-1.3).

25 Finally, Samsung argues that "all three of Tedesco's lost revenue models [] fail
26 to account for actual industry trends and market shifts during the relevant time."  Dkt.
27 416 at 6.  This is wrong, and even if true, is not a basis for exclusion.  *See,* § II.A.  Mr.
28 Tedesco evaluated the semiconductor memory market and supply uncertainty at

length. Dkt. 420-8 at ¶¶ 15-30.  Moreover, Samsung cites no evidence that any alleged macroeconomic trend in commodity memory would have impacted Netlist's sales but for Samsung's breach. *Id.* at ¶¶ 114.  Netlist has a unique business model, tailoring to particular opportunities and clientele, and makes up a tiny fraction of the overall market. *Id.* at ¶¶ 10, 17-21, 57.  For example, Netlist's customers undergo extensive qualification processes, after which demand for components is unlikely to track with the overall market. *See, e.g., id.* at ¶¶ 55-56, 67 at fn. 92, 70 at fn. 98, and 71.

Samsung criticizes Mr. Tedesco's selection of inputs but identifies no alternative data he should have considered.  Samsung's disagreements with Mr. Tedesco's analysis are at best suited for cross-examination.

### ii. Incremental Costs

Mr. Tedesco then analyzed and determined incremental costs avoided. *Id.* at ¶¶ 94, 110-112.  Mr. Tedesco subtracted over ▮▮▮ in total incremental costs avoided from projected revenues based on (1) cost of sales, (2) additional sales commissions, (3) incremental operating expenses (e.g. additional sales employees, operations staff employees, marketing staff employees, and warehouse space for every additional $30 million in Samsung resale sales), and (4) additional incremental working capital costs to finance the business growth. *Id.* Samsung does not challenge this methodology.

Samsung argues that Mr. Tedesco's incremental cost "estimations are based solely on information obtained from Netlist's CFO, which Tedesco again blindly adopted, with no independent analysis." Dkt. 416 at 6-7.  Samsung is wrong.  Mr. Tedesco reviewed Netlist's annual income statements and calculated Netlist's annual selling, general, and administrative expenses as a percentage of revenue. Dkt. 420-8 at ¶¶ 110-111; Ex. A at 201:3-203:16 (Mr. Tedesco explaining he performed independent research to test the reasonableness of the incremental costs).  He observed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 420-8 at ¶ 110, FN 136, Exs. 2-2.1.  This is consistent with Ms. Sasaki's explanation

that Netlist's SGA expenses for resale products ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at ¶ 110, fn. 136. Samsung fails to engage this analysis.

### B. Qualitative Opinions

Samsung also seeks to strike Mr. Tedesco's opinions related to Netlist's patent portfolio and Samsung's supply agreement.

#### i. License to Netlist's Patents

Mr. Tedesco analyzed the substantial value and importance of the Netlist license agreement to the JDLA. Mr. Tedesco does not assign a dollar value to Netlist's patent portfolio. Rather, Mr. Tedesco opines that the negotiation between the parties "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Dkt. 420-8 at ¶ 82.

Samsung complains Mr. Tedesco's analysis is improper for "rel[ying] on Netlist's opening $85M asking price." As Mr. Tedesco explains, Netlist proposed a five year license in exchange for $85M and a running royalty, and ultimately Netlist agreed to a lifetime portfolio license in exchange for a supply commitment. This supports a finding that the supply commitment was of critical importance to Netlist. Samsung's reasoning—that "[t]he irrelevance of such a negotiating position is well-settled, and Tedesco's opinions concerning this offer should be excluded"—is contradicted by both cases Samsung cites. *TC Tech. LLC v. Sprint Corp.*, No. 16-CV-153-RGA, 2019 WL 2515779, at *8 (D. Del. June 18, 2019) (holding announced licensing rates are generally admissible; excluding because the expert "adopt[ed] the rates without further analysis."); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29–30 (Fed. Cir. 2012) ("We acknowledge that proposed licenses may have some value for determining a reasonable royalty"). Samsung cites no case suggesting the details of negotiations are "irrelevant" to materiality, and Samsung intends to rely extensively on negotiations at trial. Dkt. 157-2 at 7-13.

1  Samsung then alleges it was improper for Mr. Tedesco to consider the license agreement between SK Hynix and Netlist given an ITC decision in Netlist's favor. While Netlist did secure an initial ITC exclusion order in 2019, Samsung ignores that in 2020—before the SK Hynix settlement agreement was reached—the ITC effectively reversed the initial determination and declined to issue remedial orders. ITC-337-TA-1089, Notice of Final Determination (April 7, 2020).  Further, Mr. Tedesco does not allege the SK Hynix agreement is the "market value" for Netlist's patents; he concludes that the agreement "demonstrates both the value of Netlist's patent portfolio as well as the value of Samsung's supply obligation given in return for that patent license." Dkt. 420-8 at ¶ 83.  The cases cited relate to the damages framework for the hypothetical negotiation, and say nothing about the assessment of materiality of a contract term. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (settlement "three years after the hypothetical negotiation date, is in many ways not relevant to the hypothetical negotiation analysis"); *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982732, at *10 (D. Del. Mar. 16, 2021) (discussing hypothetical negotiation).

Samsung next references the Georgia-Pacific factors and standards for comparable licenses for patent infringement damages. Dkt. 416 at 8 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009) (addressing "burden to prove that the licenses were sufficiently comparable to support the lump-sum damages"). But Mr. Tedesco relied upon the SK Hynix and JDLA licenses and negotiations as indications of value of the supply obligation.  Mr. Tedesco is not performing a hypothetical negotiation analysis for patent infringement.  Samsung cites no authority that such factors are relevant to analyzing materiality.

Samsung next argues that Mr. Tedesco ███████████ ███████████ in the JDLA and SK Hynix agreements and ███████ ███████████ Dkt. 416 at 8-9.  This again is false.  Mr. Tedesco closely analyzed the JDLA and value of

the license. Dkt. 420-8 at ¶¶ 34, 51, 55, 78-85, 117-120. While the SK Hynix agreement was not produced in this case, Mr. Tedesco confirmed from public information and interviews with Netlist employees ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at ¶¶ 121-127; Ex. A at 127:17-128:20, 227:18-228:07. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id*. This was more than sufficient for Mr. Tedesco to perform his analysis and determine the license provides an indication of value.

Samsung next alleges that Mr. Tedesco "opines that the entire value of Netlist's patent license to Samsung must be equal to the value of the 'supply obligation'[.]" Dkt. 416 at 9. Mr. Tedesco offered no such opinion. Rather, he explained ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 420-8 at ¶ 82. Samsung suggests Mr. Tedesco erred by failing to consider Samsung's contributions to joint development, but the evidence shows Netlist contributed more than Samsung (financially and know how), and the NRE fee and loan were not compensation for Netlist's patent license. *Id.* at ¶ 82 fn. 116; Ex. B at 9 (Samsung stating that "joint development activities consisted of in-person meetings where Plaintiff demonstrated their product to Defendant and attempted to show that it was commercially viable."); Ex. C at 2-3 (Samsung conceding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Samsung's lone citation to a patent litigation apportionment case bears no relation to the issues here. *See*, *SUNOCO Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. CV 17-1390-LPS-CJB, 2020 WL 7330715, at *7 (D. Del. Jan. 13, 2020).

Finally, Samsung alleges Mr. Tedesco ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 416 at 9. Mr. Tedesco analyzed

1  ████████████████████████████████████████████████████
2  ████████████████████████████████████████ and determined it was
3  reliable and an additional indicator of the immense value of Netlist's portfolio. *Id.* at
4  ¶ 13, fn. 8 and 9; Ex. A at 20:2-8. The parties discussed ████████████████
5  ███████████████████████ during negotiations, confirming the parties
6  understanding of the value of Netlist's portfolio. Ex. D at 3.

### ii. Samsung's Supply Commitment

Mr. Tedesco analyzed the supply agreement and explained the substantial value and importance of the agreement to the JDLA. Samsung complains Mr. Tedesco's opinions are "devoid of any real expert analysis." Dkt. 416 at 10. Mr. Tedesco has first-hand experience negotiating such an agreement. Dkt. 420-8 at ¶ 74. Mr. Tedesco explained how the agreement to supply NAND and DRAM products—that are "subject to periodic supply uncertainties" and ████████████████████████ ████████████████████████████████████████—is of particular importance. *Id.* at ¶¶ 74-78. And Mr. Tedesco's analysis of the value of Netlist's patent license (*see* § II.B.i) supports his conclusions regarding the supply agreement. Samsung's citations are inapposite. In *Dominion*, the expert plucked a 4% royalty rate out of nowhere, "never explicitly explain[ing] the starting point of his royalty rate and merely stat[ing] that the impact of the Georgia-Pacific factors is either 'Upward' or 'Neutral.'" *Dominion Assets LLC v. Masimo Corp.*, No. 14-CV-03002-BLF, 2018 WL 11452321, at *9 (N.D. Cal. Aug. 1, 2018). Mr. Tedesco does not put a number on the supply agreement; he explains in detail why it is material to the JDLA. And in *Aya*, the unopposed motion was granted to exclude testimony about the "Defendant's reputation" that "lack[ed] any basis in [the experts] experience or in any methodology." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1323 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021).

### III.  CONCLUSION

For the foregoing reasons, Samsung's motion should be denied.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

-10-

Dated:  March 4, 2024            Respectfully submitted,

IRELL & MANELLA LLP
Jason Sheasby
A. Matthew Ashley
Michael Harbour

By: */s/ Jason Sheasby*
Jason Sheasby

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 3,397 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 4, 2024            By: */s/ Jason Sheasby*
Jason Sheasby

-11-