DARIN SNYDER (SB 136003)
dsnyder@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
AMY R. LUCAS (SB 264034)
alucas@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6400

*Attorneys for Defendant*
Samsung Electronics Co. Ltd.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No.: 8:20-cv-00993-MCS-ADS<br><br>**SAMSUNG'S OPPOSITION TO NETLIST'S *EX PARTE* APPLICATION FOR EXPEDITED RESOLUTION OF NETLIST'S MOTION TO QUASH** |

Netlist fails to demonstrate that *ex parte* relief is warranted to expedite resolution of its motion to quash the trial subpoena of Gail Sasaki, Dkt. 486, and deny Samsung the opportunity to be heard on the motion at the final pretrial conference on May 6, 2024—the very date on which Netlist itself requested that the conference be held, *see* Dkt. 483.[1]

A party seeking the extraordinary remedy of *ex parte* relief must support its application with "evidence that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures and a showing that the moving party is without fault in creating the crisis that requires ex parte relief" or that the crisis was due to "excusable neglect." Dkt. 117 (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). Netlist does not even mention that standard, let alone attempt to explain why *ex parte* relief is appropriate to address a "crisis" regarding the timing of Ms. Sasaki's vacation that it (a) failed to mention when rescheduling the trial date and final pretrial conference, (b) failed to promptly seek relief once the Court reset trial for May 14, and (c) that it first raised just last week.

While Netlist claims that an expedited schedule is necessary because Ms. Sasaki's vacation is scheduled to begin on May 8, *see* Dkt. 487 at 1, this is a situation ***entirely*** of Netlist's own making. Ms. Sasaki had been served with a subpoena on March 1, 2024, and when the parties conferred on March 11 to discuss Samsung's anticipated request for a continuance in light of its former lead counsel's medical unavailability, the parties agreed that if the Court continued trial, the trial subpoena would be effective as to the new date. Lucas Decl. ¶¶ 2-3, Ex. 1. During the March 18 hearing, Netlist informed the Court that it had "significant availability" in "the first three weeks of May," but said nothing about Ms. Sasaki being unavailable, due to travel or otherwise. *See* Dkt. 478-1 at 24:11-14.

---

[1] Samsung addresses in this opposition why Netlist has failed to meet the standard justifying extraordinary *ex parte* relief. Samsung will more fully address Netlist's motion to quash in its April 15 opposition brief.

Nor did Netlist say anything about Ms. Sasaki's availability when the Court set the trial date for May 14. Once the Court reset trial for May 14 in its March 22 order, *see* Dkt. 479, Netlist could have promptly moved to quash the subpoena the parties had agreed would apply to the new trial date and noticed the motion for hearing on April 29, well in advance of the start of Ms. Sasaki's vacation. Or it could have said something in the other *ex parte* Netlist recently filed to move the pretrial conference. *See* Dkt. 483. Nor did Netlist say anything about Ms. Sasaki's availability or immediately seek to meet and confer when Samsung served her (again) with a trial subpoena on March 30, 2024.[2] Lucas Decl. ¶¶ 4-5, Ex. 2.

Instead, Netlist waited until Thursday, April 4, 2024, to inform Samsung for the first time that Ms. Sasaki had a prepaid vacation from May 8 to May 22[3] and that Netlist therefore intended to file a motion to quash the trial subpoena served on Ms. Sasaki. *Id.* ¶ 5. Even under a regularly noticed motion, Netlist's meet and confer request was untimely, *see* L.R. 7-3, yet Samsung accommodated the request as a courtesy. During the April 5 meet and confer, Netlist said *nothing* about filing any *ex parte* motion, and the first time Netlist told Samsung it would file an *ex parte* to expedite decision was on Monday, April 8. Lucas Decl. ¶¶ 6-8.

Samsung has repeatedly tried to compromise and avoid this unnecessary motion practice. When the parties conferred on April 5, Samsung's counsel

---

[2] Netlist's motion to quash and the declaration Netlist submitted in connection with it incorrectly aver that Ms. Sasaki was served on April 4. Dkt. 486 at 1 (motion); Dkt. 486-1 at ¶ 3 (Sasaki Declaration). Ms. Sasaki was re-served on March 30. Lucas Ex. 2.

[3] While Netlist stated in an email shortly before the March 18 hearing that Ms. Sasaki was "not available" during that period, Netlist provided no detail as to the nature of her scheduling conflict. Nor did Netlist suggest that the unspecified conflict could not be moved, let alone disclose that Ms. Sasaki had a nonrefundable international vacation such that Netlist would take the position that her live testimony could not be accommodated whatsoever. *See* Dkt. 486-4 at 1. And most importantly, when asked by the Court at the March 18 hearing about Netlist's availability for trial in May, despite knowing that Netlist had just made a deal that the trial subpoena already served on Ms. Sasaki would automatically be applicable to the new trial date, Netlist's counsel said nothing about it and instead said that Netlist had "significant availability" in May. *See* Dkt. 478-1 at 24:11-14.

suggested that Ms. Sasaki could testify remotely from Japan via videoconference to avoid disrupting her travel plans. *Id.* ¶ 6. On Monday, April 8, Netlist stated that it believed remote testimony would not be feasible and that it would be filing its motion to quash that same day. *Id.* ¶ 7. Netlist also revealed—for the first time—that it would seek *ex parte* relief for an expedited resolution of the motion. *Id.* Again seeking to avoid needless *ex parte* motion practice, Samsung's counsel requested an opportunity to confer with its client (which is in Korea and cannot be reached immediately), and the following day, Samsung suggested yet another proposal to obviate the need for both the *ex parte* application and the motion to quash itself. *Id.* ¶¶ 9-10. Netlist indicated that it would consider the proposal and that it would hold off on filing its *ex parte* application in the interim, but the following morning, April 10, Netlist reversed course and filed the instant application. *Id.* ¶¶ 10-11.[4]

      Given Netlist's inability (and failure to even attempt) to show that *ex parte* relief is warranted, there is no basis to deny Samsung the opportunity to be heard on this issue at the final pretrial conference—at which time all the other remaining pretrial issues will be heard. Ms. Sasaki—Netlist's Chief Financial Officer—is an important witness whom Netlist repeatedly disclosed as a central witness with relevant knowledge of key issues, including overseeing the negotiation of the JDLA. Samsung would be prejudiced if it is precluded from addressing at the hearing the points raised in Netlist's reply brief. Additionally, the Court's other pretrial rulings at the final pretrial conference, including on which witnesses will testify at trial and what they will be permitted to testify about, will bear directly on whether Samsung can obtain sufficient testimony from other witnesses were Ms.

---

[4] Netlist indicated that it is still considering Samsung's proposal, but that it was nonetheless filing this *ex parte* application to "preserve [its] right to expedited relief." *Id.* ¶ 11. Samsung's opposition to the *ex parte* is not based on any delay while the parties attempted in good faith to resolve the dispute; indeed Samsung believes this *ex parte* should not have been filed at all while the parties attempt to resolve the dispute.

Sasaki not to appear, and Samsung would be prejudiced if the Court were to decide the motion to quash the undisputedly valid and properly served trial subpoena on Ms. Sasaki in a vacuum without consideration of the impact on the larger picture. And hearing Netlist's motion on May 6, along with other witness and pretrial issues, will still resolve the matter two days before Ms. Sasaki's vacation is scheduled to begin. Netlist has not even suggested, much less shown, that Ms. Sasaki would suffer any prejudice, burden, or expense if the motion is heard on May 6.

The Court should therefore deny Netlist's *ex parte* application.

Dated: April 11, 2024               O'MELVENY & MYERS LLP


                                    By: */s/ Darin Snyder*
                                    Darin Snyder
                                    Attorneys for Defendant Samsung
                                    Electronics Co., Ltd.