DARIN SNYDER (SB 136003)
dsnyder@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:   (415) 984-8700
Facsimile:    (415) 984-8701

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
AMY R. LUCAS (SB 264034)
alucas@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6400

*Attorneys for Defendant*
Samsung Electronics Co. Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No.: 8:20-cv-00993-MCS-ADS<br><br>**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO QUASH TRIAL SUBPOENA ON GAIL SASAKI**<br><br>**Final Pretrial Conference:**<br><br>Date: May 6, 2024<br>Time: 2:00 p.m.<br>Judge: Hon. Mark C. Scarsi<br>Location: Courtroom 7C |

1

# TABLE OF CONTENTS

|  |  | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 3 |
| III. | LEGAL STANDARD | | 6 |
| IV. | ARGUMENT | | 7 |
|  | A. | Netlist's Lack of Diligence and Failure to Properly Meet and Confer by Warrants Denial of the Motion. | 7 |
|  | B. | Netlist Fails to Meet its Burden to Show an "Undue Burden" on Ms. Sasaki. | 9 |
|  | C. | Any Burden on Ms. Sasaki Is Attributable to Netlist's Refusal of Reasonable Compromises in an Effort to Prejudice Samsung. | 13 |
| V. | CONCLUSION | | 17 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alston v. Jones*,
    2022 WL 1809422 (M.D.N.C. June 2, 2022)................................................9

*Goodman v. United States*,
    369 F.2d 166 (9th Cir. 1966) ...................................................................6

*In re Funeral Consumers Antitrust Litig.*,
    2005 WL 2334362 (N.D. Cal. Sept. 23, 2005)....................................12

*In re Yassai*,
    225 B.R. 478 (Bankr. C.D. Cal. 1998) ...................................................6

*Leader Technologies v. Facebook*,
    2010 WL 761296 (N.D. Cal. Mar. 2, 2010) ................................12, 13

*Lister v. Hyatt Corp.*,
    2020 U.S. Dist. LEXIS 14802 (W.D. Wash. Jan. 24, 2020) ...........13

*Mount Hope Church v. Bash Back*,
    705 F.3d 418 (9th Cir. 2012) .................................................................12

*Pac. Oil & Gas, LLC v. Chesapeake Energy Corp.*,
    2017 WL 1397538 (D. Kan. April 18, 2017) ........................................11

*Pate v. Pac. Harbor Line, Inc.*,
    2023 WL 2629867 (C.D. Cal. Feb. 6, 2023) ..........................................9

*Realtime Data, LLC v. MetroPCS Tex., LLC*,
    2012 WL 1905080 (S.D. Cal. May 25, 2012) ........................................9

*Shawnee Holdings, Inc. v. Travelers Indem. Co. of Am.*,
    2004 WL 234369 (M.D. Pa. Feb. 4, 2004) ...........................................11

*Sheetz v. Wal-Mart Stores, Inc.*,
    2018 WL 8344383 (M.D. Pa. Mar. 28, 2018) ........................................4

*Silva v. Aviva PLC*,
    2016 WL 1169441 (N.D. Cal. Mar. 25, 2016) .....................................12

*U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*,
    2022 WL 18012008 (D. Minn. Dec. 30, 2022) ......................................9

*U.S. ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*,
    2022 WL 15092294 (M.D. Ga. Oct. 26, 2022) ...................................12

*United States v. 62.64 Acres of Land, More or Less*,
    2013 U.S. Dist. LEXIS 194819 (C.D. Cal. Jan. 4, 2013).................13

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*United States v. Thoms,*
   684 F.3d 893 (9th Cir. 2012) ............................................................................ 12

**RULES**

Fed. R. Civ. P. 45 .......................................................................................... 6, 13

SAMSUNG'S OPP. TO NETLIST'S MOTION TO QUASH TRIAL SUBPOENA ON GAIL SASAKI

I.      **INTRODUCTION**

Netlist's belated motion to quash the valid and properly served trial subpoena on its Chief Financial Officer, Gail Sasaki—an undisputedly relevant witness Netlist disclosed as having knowledge of the JDLA, the products ordered by Netlist, and Samsung's alleged failure to fulfill orders, and who Netlist also designated as its 30(b)(6) witness on the purchases of NAND and DRAM at issue—should be denied for several independent reasons.

*First*, in what has now become a pattern and practice, Netlist has once again failed to properly meet and confer in advance of filing this motion.  Ms. Sasaki was served on March 1, 2024 with a subpoena to appear on the original trial date—which subpoena the parties agreed would apply to any new date if the Court continued trial.  However, at the March 18th hearing regarding a new trial date, Netlist's counsel said nothing about Ms. Sasaki's vacation plans and represented that May would work for trial.[1]  Nor did Netlist disclose her vacation plans after the Court's March 22 order setting trial for May 14, 2024.  And Netlist said nothing after Samsung, in an abundance of caution, served Ms. Sasaki again on March 30th with a subpoena bearing the new trial date.  Instead, Netlist informed Samsung about Ms. Sasaki's apparently long-planned vacation and that it intended to move to quash for the first time on April 4—just two court days before it filed the instant motion.

*Second*, Netlist does not—and cannot—show that enforcing the subpoena would unduly burden Ms. Sasaki.  While Samsung is sympathetic to Ms. Sasaki's desire to go on a long-awaited vacation that Netlist's counsel failed to inform Samsung or the Court about, that inconvenience to Ms. Sasaki cannot outweigh the

---

[1] Netlist's counsel stated in an email shortly before the March 18 hearing that Ms. Sasaki was "not available" from May 8 to May 22.  *See* Dkt. 486-4 at 1.  But counsel did not provide any details regarding her conflict or represent it was immovable, let alone disclose that it was a nonrefundable international vacation that could not be rescheduled, such that Netlist would contend that her live testimony could not be accommodated in any way.

importance of presenting the jury with the live testimony of a witness that Netlist itself designated as being most knowledgeable on several key topics central to the May 14th trial and that no other witness on Samsung's list can cover.

*Third*, any burden on Ms. Sasaki is attributable to Netlist, not Samsung, as Netlist has doggedly refused Samsung's reasonable compromise proposals that would have allowed Ms. Sasaki to go on her vacation without depriving Samsung of a live witness.  Instead, Netlist seeks to prevent Samsung from calling *any* live Netlist witnesses on Samsung's list other than CEO Chuck Hong.  In that regard, Netlist refuses to voluntarily produce its Chief Operating Officer P.K. Hong, claiming without any support that he is medically unavailable.  Therefore, as a compromise to Ms. Sasaki not attending trial, Samsung proposed that Netlist produce its Commodity Manager Steven Yu, who reports to P.K. Hong and has handled all of Netlist's purchases of NAND and DRAM since 2018—nearly the entire period of the alleged breach—and could therefore testify live on those topics in lieu of Ms. Sasaki (and P.K. Hong).  There is no dispute that Mr. Yu is subject to the subpoena power of the Court, but he has been evading service for nearly two months now despite Samsung's substantial efforts to serve him.  Netlist's counsel has never disputed that Mr. Yu is available and or that they *could* accept service of a subpoena on him, but refuses to do so without any reasonable explanation.

Unless Samsung is able to call Steven Yu, Ms. Sasaki is the only Netlist witness on Samsung's list other than Chuck Hong who will testify live.  Ms. Sasaki has knowledge of key issues in dispute, even according to Netlist's own discovery disclosures.  Quashing Ms. Sasaki's subpoena so she can go on a vacation that Netlist's counsel knew about but willfully failed to disclose to the Court or Samsung until now, while depriving Samsung of any replacement live witness, would materially prejudice Samsung's ability to defend itself—all while Netlist seeks to present its own case by ambush through multiple undisclosed and undeposed witnesses.

The only way the Court should grant this motion is on the conditions in Samsung's compromise offer that requires Netlist to accept service and produce for trial Steven Yu.  Otherwise, Netlist should not be permitted to capitalize on its own gamesmanship by removing from live cross-examination a relevant witness with key knowledge of the very transactions that Netlist alleges were a breach of the JDLA.

## II.    BACKGROUND

Ms. Sasaki was one of two company witnesses—along with Netlist's CEO, Chuck Hong—that Netlist identified in February 2021 in its initial Rule 26 disclosures as likely to have discoverable information to support Netlist's claims. Ex. 13 at 3.  Netlist identified Ms. Sasaki as knowledgeable about, among other things, the JDLA, products ordered by Netlist, Samsung's fulfillment or nonfulfillment of Netlist's orders, and harm to Netlist.  *Id.*  In interrogatory responses, Netlist also identified Ms. Sasaki as one of the individuals "primarily involved in the drafting, negotiation, and execution" of the JDLA.  Ex. 15 at 5-6 (emphasis added).  Ms. Sasaki, along with Mr. Hong, was responsible for "approv[ing] the final terms and structure of the agreement."  *Id.*  Netlist designated Ms. Sasaki as Netlist's 30(b)(6) witness on the quantity and prices for Netlist's NAND and DRAM purchases.  Ex. 10; Ex. 11 at 17:20-19:5.

Shortly before discovery ended, Netlist identified three more Netlist witnesses knowledgeable about "[p]roducts ordered by Netlist" and Samsung's fulfillment or nonfulfillment of orders: Paik Ki Hong, Steven Yu, and Raymond Jiang.  Ex. 14 at 3-4; *see also* Ex. 15 at 7.[2]  Mr. Yu is directly responsible for handling all of Netlist's purchases of NAND and DRAM chips from Samsung and others and has been in that position since 2018.  *See* Ex. 16 104:4-18.  He therefore has direct knowledge of the very transactions that underlie Netlist's claims of

---

[2] Netlist also identified Jibum Kim, a Netlist employee based in Korea, as knowledgeable about the JDLA and its negotiation.  Ex. 14 at 4.

3

breach and about which Ms. Sasaki was designated to testify as Netlist's 30(b)(6) witness.

Samsung included all five Netlist witnesses it deposed on its witness list for the upcoming trial.  Dkt. 401.  Four of those five witnesses—Chuck Hong, Paik Ki Hong, Gail Sasaki, and Steven Yu—reside and work within the Court's subpoena power.[3]  *See* Lucas Decl. ¶¶ 2-5, 13, 17-18.  Yet Netlist seeks to deprive Samsung of the opportunity to examine ***any*** of them live at trial except for Chuck Hong.  Notably, P.K. Hong lives in Irvine, owns a house there, and works in Netlist's Irvine office, but Netlist's counsel has claimed—without providing any evidentiary support—that he is in China and will not be returning to the United States or appearing at trial due to his poor health.[4]  Lucas Decl. ¶¶ 13-15.

Mr. Yu is undisputedly within the Court's subpoena power ***and*** apparently available to testify at trial, *see* Ex. 6, but has been evading service for nearly two months.  After Netlist refused to accept service on his behalf, Samsung initially attempted to serve Mr. Yu on Saturday, February 24 at his home in Diamond Bar.  Lucas Decl. ¶ 6.  Although Mr. Yu's car was parked in the driveway along with several others, no one answered the door.  *Id*.  Since then, Mr. Yu and his car have disappeared, family and colleagues have given conflicting stories as to his whereabouts, and Netlist's counsel has continued to refuse to accept service or provide additional information beyond claiming that Mr. Yu is "in town."[5]

---

[3] It is undisputed that Raymond Jiang, who lives in Las Vegas, Nevada, is beyond the Court's subpoena power.  Samsung has not asked Netlist to accept service of a trial subpoena on behalf of any Netlist employee who is beyond the subpoena power of the Court.  Lucas Decl. ¶ 24.  At trial, the parties plan to present designated testimony from his deposition.

[4] Netlist has not met its evidentiary burden to establish that P.K. Hong is unavailable to testify due to his poor health, which requires objective evidence, such as health records or the declaration of a medical professional.  *See Sheetz v. Wal-Mart Stores, Inc.*, 2018 WL 8344383, at *1 (M.D. Pa. Mar. 28, 2018) (claims of medical unavailability require "objective medical support").  Nonetheless, despite Samsung's substantial efforts to serve a subpoena requiring P.K. Hong's appearance at trial, *see* Lucas Decl. ¶ 13, Samsung has been unable to do so.

[5] Lucas Decl. ¶¶ 7-10, 15.  Mr. Yu's family initially told a process server on

4

As for Ms. Sasaki, Samsung served her with a trial subpoena on March 1, which on March 11 the parties agreed would remain effective as to the new trial date set by the Court. *See id.* at ¶¶ 4, 14. Despite knowing about Ms. Sasaki's planned vacation and the prior agreement to make her available, Netlist's counsel represented to the Court on March 18 that Netlist had "significant availability" in the "first three weeks of May." *See* Dkt. 478-1 at 24:11-14. Thereafter, the Court issued its March 22 order resetting trial for May 14, yet Netlist's counsel again failed to raise the issue—despite the parties' explicit agreement that the subpoena previously served on Ms. Sasaki remained effective as to the new date. Lucas Decl. ¶ 16. Even after Samsung (out of an abundance of caution) re-served Ms. Sasaki with a trial subpoena on March 30, Netlist's counsel ***still*** did not raise the issue or disclose Ms. Sasaki's vacation plans.[6] *Id.* ¶ 17. It was not until April 4 that Netlist finally informed Samsung that Ms. Sasaki had a prepaid vacation that could not be rescheduled and that it intended to move to quash the subpoena. *Id.* ¶ 19.

In an effort to accommodate Ms. Sasaki's previously undisclosed vacation plans, minimize the prejudice to Samsung's ability to examine Netlist's witnesses live at trial, and avoid motion practice, Samsung first proposed that Ms. Sasaki testify remotely via videoconference from abroad. *See id.* ¶ 20. However, Netlist declined that proposal and proceeded to file the instant motion. *Id.* ¶ 21.

Thereafter, in a further effort to accommodate Ms. Sasaki and obviate the instant motion, Samsung proposed another compromise, under which it would withdraw the subpoena to Ms. Sasaki if Netlist agreed to accept service of a trial

---

February 29 that he was out of town for work, but they did not know where and had no way to reach him. *Id.* ¶ 7. A few days later, employees at Netlist's headquarters told a process server that he was out of the country with P.K. Hong and Chuck Hong. *Id.* ¶ 8. Mr. Yu's family members then stated on March 29 that he was in the United States, though they would not disclose where, and said he would not be back until after July 4. *Id.* ¶ 10.

[6] Netlist's brief and Ms. Sasaki's declaration both wrongly represent to the Court that she was served on April 4, the same day that Netlist reached out to Samsung. Dkt. 486 at 1; Dkt. 486-1 ¶ 3. That is incorrect, because Ms. Sasaki was served at her home nearly a week prior, on March 30th.

subpoena for Mr. Yu so he could provide live testimony (in lieu of Ms. Sasaki), and if Netlist agreed to the orderly designation of Ms. Sasaki's prior deposition and trial testimony and admission of certain trial exhibits without testimony. *Id.* ¶ 22. But Netlist rejected that proposal as well, indicating that it would agree to the designation of testimony and admission of exhibits (which would be admissible in any event), but adamantly refusing to accept service of a trial subpoena for Mr. Yu. *Id.* Netlist has refused to provide any reasoned basis for its refusal to produce Mr. Yu as a live witness. *Id.* at ¶ 24.

All the while, Netlist has attempted to present its case through various Netlist employees—Scott Milton, Devon Park, and Noel Whitley—despite them never having been properly disclosed as potential witnesses, which caused Samsung to not depose any of them prior to the close of fact discovery.[7] The result Netlist plainly seeks is to deprive Samsung of live examination of any Netlist witness on Samsung's list other than Chuck Hong, while presenting its own case in a trial by ambush.

## III.   LEGAL STANDARD

A subpoena may be modified or quashed where complying with the subpoena would impose an "undue burden" on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv). As the party opposing the subpoena (which no one disputes was validly served and enforceable), Netlist bears the burden of showing that the subpoena to Ms. Sasaki, the CFO of Netlist, is unduly burdensome. *See Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). This burden "is a heavy one" and requires showing that compliance with the subpoena would be "unreasonable and oppressive." *In re Yassai*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998) (quotations omitted).

---

[7] As explained in Samsung's Motion *in Limine* No. 1, the Court should preclude Netlist from calling those witnesses at trial. Dkt. 403.

A court has "ample discretion" to modify a subpoena, *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994), and, even where a court grants a motion to quash, it may impose conditions in doing so, *see Trebby v. Goodyear Tire & Rubber Co.*, 129 F.R.D. 468, 469 (S.D.N.Y. 1990).

## IV.   ARGUMENT

Netlist's motion to quash fails for three independent reasons.  *First*, Netlist failed to be forthcoming with Samsung and the Court regarding Ms. Sasaki's vacation and belatedly brought this motion without properly meeting and conferring.  *Second*, Netlist has failed to meet its burden of showing that changing Ms. Sasaki's personal vacation plans would be so unduly burdensome as to warrant depriving Samsung of the opportunity to examine a key Netlist employee with relevant knowledge live at trial that cannot be otherwise obtained.  And *third*, any burden on Ms. Sasaki is squarely attributable to Netlist, as Netlist not only failed to promptly disclose her vacation plans, but has rejected all of Samsung's reasonable compromises to accommodate Ms. Sasaki's personal vacation plans, including accepting service on behalf of Mr. Yu.

### A.   Netlist's Lack of Diligence and Failure to Properly Meet and Confer Warrants Denial of the Motion.

The issues raised in Netlist's motion to quash are problems entirely of Netlist's own making.  The motion should be denied not only for that reason, but also because Netlist failed to adequately meet and confer before belatedly filing its motion.  Samsung previously served Ms. Sasaki with a trial subpoena, which the parties agreed would be effective as to the new trial date set by the Court.  *See* Lucas Decl. ¶¶ 4, 14.  Netlist's counsel knew of Ms. Sasaki's vacation plans well before the March 18th hearing—indeed, she has been planning this vacation for two years.  *See* Dkt. 486-1 ¶ 5.  Yet when the Court asked at the March 18th hearing about Netlist's availability for a May trial, Netlist's counsel represented to the Court that Netlist had "significant availability."  *See* Dkt. 478-1 at 24:11-14.  Nor

did Netlist's counsel promptly raise the issue once the Court issued its March 22 order resetting trial for May 14, or once Samsung re-served Ms. Sasaki on March 30.  Lucas Decl. ¶¶ 16-17.  Instead, Netlist waited until Thursday, April 4, 2024, to inform Samsung for the first time that Ms. Sasaki had a prepaid international vacation from May 8 to May 22 and that it intended to file a motion to quash.

Remarkably, Netlist seeks to blame Samsung for not raising Ms. Sasaki's vacation plans with the Court, claiming that it "expressly informed Samsung" of Ms. Sasaki's unavailability.  Dkt. 486 at 1, 3.  But Samsung had no reason to know what those plans were much less that they supposedly cannot be moved, because Netlist's counsel failed to disclose that to anyone.  Lucas Decl. ¶¶ 15-16.  Samsung had every reason to believe any conflict had been resolved and any plans were flexible when Netlist's counsel represented to the Court that Netlist had "significant availability" the first three weeks of May for trial.  Dkt. 478-1 at 24:11-14.  And Samsung continued to believe that Ms. Sasaki would be available for trial when Netlist said nothing after the Court set the new trial date and after Samsung re-served her.  Lucas Decl. ¶¶ 16-17.

When Netlist finally did disclose Ms. Sasaki's vacation plans on April 4th, instead of complying with Local Rule 7-3's requirement to meet and confer at least seven days before filing any motion, Netlist unilaterally demanded that Samsung confer the very next day, Friday, April 5th, telling Samsung that absent Samsung withdrawing Ms. Sasaki's subpoena, Netlist would file its motion the following Monday, April 8th.  *See id.* ¶¶ 19-20.  Had Netlist's counsel been forthcoming about Ms. Sasaki's vacation plans from the outset or with the Court, the trial could have scheduled for a different date.  And had Netlist's counsel been diligent in addressing this issue once the Court reset trial for May 14, the parties could have properly met and conferred, and explored various compromise positions without resorting to the present motion practice, including Netlist's *Ex Parte* Application, Dkt. 487, to expedite resolution of its motion to quash.  Netlist's lack of candor,

lack of diligence, and continued refusal to meaningfully participate in the meet and confer process, *see also infra* at §IV.C, are reason enough to deny Netlist's motion. *See* Dkt. 390 at 5-6 (denying Netlist's motion to supplement due to failure to properly meet and confer).

## B.   Netlist Fails to Meet its Burden to Show an "Undue Burden" on Ms. Sasaki.

Even if the Court reaches the merits of Netlist's motion, Netlist cannot meet its heavy burden of showing that Ms. Sasaki—a key witness Netlist repeatedly disclosed as being the most knowledgeable on critical issues—changing her personal vacation plans that Netlist failed to disclose constitutes an "undue burden" that would justify quashing the subpoena and depriving Samsung of a live witness.

Determining whether a subpoena imposes an "undue burden" requires balancing the relevance of the information and the subpoenaing party's need for that information against the burden on the subpoena recipient. *Pate v. Pac. Harbor Line, Inc.*, 2023 WL 2629867, at *9 (C.D. Cal. Feb. 6, 2023). Courts regularly deny motions to quash subpoenas issued to witnesses—even third-party witnesses,[8] which Ms. Sasaki is not—with far more compelling burdens than changing vacation plans where the witnesses' testimony is important. *See, e.g.*, *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 2022 WL 18012008, at *3 (D. Minn. Dec. 30, 2022) (denying motion to quash trial subpoena even though it would require non-party to take time away from "busy surgical schedule" treating "elderly and financially disadvantaged patients" given the importance of his testimony); *Alston v. Jones*, 2022 WL 1809422, at *1-2 (M.D.N.C. June 2, 2022) (denying motion to quash trial subpoena issued to non-party physician despite burdens of

---

[8] Third-party witnesses are given special consideration in the undue burden analysis. *See Realtime Data, LLC v. MetroPCS Tex., LLC*, 2012 WL 1905080, at *2 (S.D. Cal. May 25, 2012).

9

"reschedul[ing] patient appointments" given the "critical importance" of his
testimony).

Netlist attempts to minimize the significance of Ms. Sasaki, who is Netlist's
Chief Financial Officer, by arguing that Samsung "has not demonstrated any need
for Ms. Sasaki's live testimony." Dkt. 486 at 3. Netlist first argues that Ms. Sasaki
was only "peripherally" involved in the JDLA negotiations. *Id*. at 3-4. This is
disingenuous at best, as Netlist itself has repeatedly disclosed Ms. Sasaki as a key
witness in the case with knowledge of and final authority over not only the JDLA,
but also knowledge of Netlist's purchases from Samsung and Samsung's alleged
failure to fulfill orders. Ex. 13 at 3; Ex. 15 at 5-6.  Indeed, Netlist designated Ms.
Sasaki as its 30(b)(6) witness on the quantity and prices for Netlist's NAND and
DRAM purchases—the very transactions at issue as the purported breaches in this
case. *See* Ex. 10; Ex. 11 at 17:20-19:5. Ms. Sasaki's live testimony on these
NAND and DRAM purchases is especially critical because Netlist is seeking to
deprive Samsung of the opportunity to examine the other Netlist witnesses most
knowledgeable about those purchases—P.K. Hong and Steven Yu.

Netlist also implies that Ms. Sasaki's testimony is not critical because
Samsung called Ms. Sasaki only briefly in the previous trial in this case. Dkt. 486
at 5. But that trial was about damages only, not about the parties' intent regarding
Section 6.2 or materiality of any breach. And both P.K. Hong and Steven Yu
testified live at the damages trial, meaning that Ms. Sasaki's testimony on NAND
and DRAM purchases was unnecessary. Similarly, at the time the witness lists for
this trial were submitted, Samsung believed that P.K. Hong or Steven Yu would
cover Netlist's purchases of NAND and DRAM from Samsung. *See* Dkt. 401 at 1,
4. Without either of them, Ms. Sasaki—who Netlist disclosed as also having such
knowledge—is critical.[9]

---

[9] For that reason, any suggestion by Netlist that Ms. Sasaki was not designated to
testimony on NAND and DRAM purchases in Samsung's witness list is unavailing.

Nor is Netlist correct that Samsung can obtain adequate testimony regarding Netlist's "financial documents and public disclosures" from CEO Chuck Hong. Dkt. 486 at 6.  As CFO, Ms. Sasaki is the most knowledgeable witness regarding these issues—courts often recognize the importance of testimony from those executives who are most informed about the relevant issues.  Indeed, Mr. Hong repeatedly did not know about or deferred to Ms. Sasaki on financial issues, including those directly related to the JDLA, at his deposition.  Ex. 12 at 57:8-24 (no knowledge of pre-JDLA cash-flow issues or existing debt secured by patents, referred to Ms. Sasaki), 137:19-138:9 (no knowledge of whether Netlist was losing money in 2015), 142:16-144:11 (no knowledge of net losses in SEC filings), 159:20-163:17 (no knowledge of customers referenced in SEC filings or major customers lost), 171:12-172:7 (no knowledge of Netlist's credit line with Samsung, referred to Ms. Sasaki).  *See Shawnee Holdings, Inc. v. Travelers Indem. Co. of Am.*, 2004 WL 234369, at *1 (M.D. Pa. Feb. 4, 2004) (compelling testimony of executives with "important decision-making positions within the defendant corporations" that were "key participants in the circumstances" of the case); *see also Pac. Oil & Gas, LLC v. Chesapeake Energy Corp.*, 2017 WL 1397538, *6 (D. Kan. April 18, 2017) (transferring case because "top executives" "involved with [the] transaction" at issue "will likely have material testimony").

Netlist also argues that Ms. Sasaki's live testimony is unnecessary because Samsung can simply designate her prior testimony.  Dkt. 486 at 4.  But while the designation of prior testimony is sometimes a necessary substitute where live testimony is truly unavailable, that hardly means that videotaped or recited excerpts are interchangeable with live testimony, which permits the jury to "better assess

---

At the time there was no need to question Ms. Sasaki on those topics about which she has knowledge, because Samsung intended to question other witnesses about them.  But Netlist seeks to prevent those other witnesses from testifying, too.  And Chuck Hong made clear at his deposition that he does not know this information. Ex. 12 at 164:18-166:14 (no knowledge of Netlist cancelling purchase orders), 207:13-209:11 (no knowledge of Netlist's resale revenue from Samsung products).

demeanor and credibility." *In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at \*5 (N.D. Cal. Sept. 23, 2005).  Indeed, it is widely recognized that "live testimony is the bedrock of the search for truth in our judicial system." *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012); *see also Silva v. Aviva PLC*, 2016 WL 1169441, \*5 (N.D. Cal. Mar. 25, 2016) ("for trial, live testimony is as a general matter preferable over deposition excerpts"); *U.S. ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, 2022 WL 15092294, at \*2 (M.D. Ga. Oct. 26, 2022) (no undue burden where inconvenience of attending trial "pales in comparison to the essential role that live testimony can play in the ascertainment of the truth").

Netlist cites no case in which a court has quashed a trial subpoena on the basis of a witness's undisclosed vacation plans, let alone a key witness who is employed as the plaintiff's CFO and was disclosed as having knowledge of the key issues in dispute.  Netlist first cites *Mount Hope Church v. Bash Back*, 705 F.3d 418 (9th Cir. 2012), which quotes from the advisory committee notes that there "might be an undue burden" to compel a party witness "to incur substantial travel burdens" to testify if they "have no personal knowledge of matters in dispute."  *Id.* at 427-28 (quotations omitted).  But *Mount Hope Church* had nothing to do with quashing a trial subpoena due to a witness's vacation—it concerned a subpoena *duces tecum* seeking the identities of certain email account holders.  *Id.* at 422. And even the general statement of law that Netlist cites is irrelevant here.  The "travel burdens" that Rule 45 is concerned with are those burdens from traveling ***to court*** to testify—not having to cut short a pre-planned but undisclosed vacation— and, in any case, as discussed above, Ms. Sasaki has direct personal knowledge on important issues in the case.

Netlist also points to two other cases that are likewise completely inapposite. Netlist cites *Leader Technologies v. Facebook*, 2010 WL 761296 (N.D. Cal. Mar. 2, 2010), but in that patent infringement case, the court quashed deposition

subpoenas because all of the subpoenaed witnesses had left Facebook before the patent in question was issued and thus lacked relevant knowledge. *Id.* at *3. Similarly, in *United States v. 62.64 Acres of Land, More or Less*, 2013 U.S. Dist. LEXIS 194819 (C.D. Cal. Jan. 4, 2013), the court denied the defendants' motion to compel the deposition of a third-party witness who previously represented them in real estate negotiations because the defendants themselves were involved in those negotiations and thus already had all the relevant information. *Id.* at *6. Unlike in those cases, Ms. Sasaki—Netlist's long-time CFO and 30(b)(6) designee on the very transactions in dispute here—is the most knowledgeable witness on several key issues in the case.

Netlist's other cited case, *Lister v. Hyatt Corp.*, 2020 U.S. Dist. LEXIS 14802 (W.D. Wash. Jan. 24, 2020), is equally inapposite. There, the court in a slip-and-fall case quashed a trial subpoena served on one the defendant's employees in light of competing "family obligations" because he did not start working for the defendant until over a year after the accident and therefore had no relevant personal knowledge. *Id.* at *7, 9-10. But Ms. Sasaki does have relevant personal knowledge, and she has been at Netlist since 2006 and served as Netlist's CFO during the entire time period relevant to this case. And it goes without saying that a vacation with friends is not the same as "family obligations."

### C. **Any Burden on Ms. Sasaki Is Attributable to Netlist's Refusal of Samsung's Reasonable Compromises Positions.**

Even though Netlist has failed to meet its burden of showing that Ms. Sasaki's attendance at trial would be unduly burdensome, Samsung is sympathetic to Ms. Sasaki's situation. Mindful of its obligation to take reasonable steps to reduce the burdens on subpoenaed witnesses, *see* Fed. R. Civ. P. 45(d)(1), and in an effort to avoid burdening the Court with unnecessary motion practice, Samsung has repeatedly sought to reach a compromise with Netlist to accommodate Ms. Sasaki's desire to go on vacation with her friends, while minimizing the prejudice to

Samsung in her absence.  However, Netlist has refused all compromise offers, even though any inconvenience to Ms. Sasaki from testifying is entirely attributable to Netlist and its counsel, who insist on trying to deprive Samsung of the opportunity to examine any of the Netlist witnesses on Samsung's witness list besides Chuck Hong live at trial, while simultaneously seeking to ambush Samsung with undisclosed and undeposed witnesses in Netlist's own case.

When Netlist initially raised its intention to move to quash given Ms. Sasaki's vacation, Samsung suggested that Ms. Sasaki testify remotely via videoconference from Japan so as to minimize the disruption of her vacation, and offered to accommodate her at counsel's Tokyo office.  Lucas Decl. ¶ 20. However, on Monday, April 8, Netlist stated that it did not believe remote testimony would be feasible, declined, and proceeded with the motion.  *Id.* ¶ 21; *see also* Dkt. 486 at 6-7.[10]

In a further effort to accommodate Ms. Sasaki and obviate further motion practice, Samsung proposed another compromise.  Samsung would agree to withdraw the subpoena to Ms. Sasaki provided that Netlist agreed to an orderly designation of Ms. Sasaki's prior testimony and admission of trial exhibits, if Netlist agreed to accept service of a trial subpoena for Netlist employee Steven Yu, who could testify to at least *some* of the topics on which Ms. Sasaki would have testified.  Lucas Decl. ¶ 22.  But Netlist likewise rejected that proposal too, because it refuses to agree to accept service of a trial subpoena for Mr. Yu to testify as a live witness.  Lucas Decl. ¶¶ 22-24.

Netlist's only offer—that the parties designate Ms. Sasaki's testimony and stipulate to two exhibits—is no offer (or compromise) at all.  Ms. Sasaki's testimony is always admissible under Rule 32(a)(3), and Netlist's own motion

---

[10] Netlist does not appear to have made any effort to contact the US Embassy in Japan to inquire to the availability of room or applicability of the regulations it cites in these circumstances, which do not involve a deposition.  *See* Dkt. 486-2.

acknowledges that Ms. Sasaki's prior testimony could be designated pursuant to Rule 32(a)(4).  *See* Dkt. 486 at 4.  And under the Court's trial order, Netlist is under an ongoing obligation to confer and stipulate as far as possible to the admissibility of exhibits.[11]  *See* Order Re: Jury/Court Trial § II.B.

Netlist has no reasonable basis for its refusal to accept service for Mr. Yu. Steven Yu, who lives in Diamond Bar and works at Netlist's headquarters in Irvine, is both within the Court's subpoena power ***and*** available for trial.  *See* Ex. 6.  Mr. Yu is the Netlist employee primarily responsible for handling all of Netlist's purchases of NAND and DRAM chips from Samsung and others beginning in 2018.  *See* Ex. 16 104:4-18; Ex. 14 (Rule 26 disclosures); Ex. 15 (interrogatory responses).  Besides Ms. Sasaki, who was designated on NAND and DRAM purchases, Mr. Yu is the ***only*** other witness on Samsung's witness list who can testify to the very sales transactions and purported breaches that are at issue in this case.[12]

However, despite Samsung's extensive efforts to serve Mr. Yu with a trial subpoena—including spending over $44,000 on service attempts through March alone, ***exclusive*** of the substantial attorney time dedicated to attempting to serve him, Lucas Decl. ¶ 12, Ex. 3-4—Mr. Yu has successfully evaded service.  His family and colleagues have given conflicting stories as to his whereabouts, and

---

[11] One of the exhibits is not even new, as it is the original version of an email Ms. Sasaki already authenticated.  Lucas Decl. Ex. 9 at 9.  And neither is controversial. *Id*.

[12] Netlist has suggested that its refusal to compromise by accepting service for Steven Yu is because Samsung refuses to accept service on behalf of Samsung witnesses.  Lucas Ex. 9 at 3.  But the only Samsung witnesses Samsung's counsel has not agreed to accept service for are Korean citizens who—like Netlist witness Raymond Jiang who lives and works in Nevada—live and work in Korea, are outside the subpoena power of the Court, and cannot be compelled to trial.  And even then, Samsung has offered to make available to plaintiffs to examine in their case in chief HK Ji, who is not subject to subpoena but Samsung will call in its case.  *Id*. at 2.  This is not a scenario where Samsung is unwilling to compromise, the issue is that Netlist demands that it be a one-way street solely in Netlist's favor without ever providing any compromise in return.

15

Netlist's counsel have refused to accept service or provide additional information despite representing that he is "in town." *See supra* at 4.

Netlist is now seeking to deprive Samsung of the ability to examine ***both*** Gail Sasaki and Steven Yu live at trial (in addition to depriving Samsung of any live examination of P.K. Hong in addition to Raymond Jiang).  That would unfairly prejudice Samsung, both because it would leave Samsung with only one Netlist witness on Samsung's witness list—Chuck Hong—to examine live at trial, and because it would deny Samsung the ability to examine either of the two other witnesses on Samsung's list who are knowledgeable about the very NAND and DRAM purchases underlying Netlist's breach claim.  Netlist's refusal to agree to Samsung's reasonable compromise proposal and accept service for Mr. Yu—when it could easily do so—is all the more egregious given that Netlist is trying to conduct a trial by ambush and present its case through several undisclosed and undeposed witnesses, as addressed in Samsung's motion *in limine* regarding those witnesses.  *See* Dkt. 403.[13]

Such blatant gamesmanship should be rejected, and Netlist's motion to quash should be denied.  If, however, the Court is inclined to grant Netlist's motion, it should do so on the reasonable conditions Samsung proposed in its proposal, namely, that Netlist agree to accept service of a trial subpoena for Steven Yu and produce him live at trial.

---

[13] Indeed, shortly before this opposition brief was due, Netlist proposed that it simply present evidence of Netlist purchases of NAND and DRAM through one of those improperly disclosed and undeposed witnesses, Devon Park.  In addition to the obvious prejudice to Samsung, Netlist fails to mention that Mr. Park was not even a Netlist employee for some 15 months of the alleged breaches, having left Netlist from March 2019 until 2022 to start his own company.  Lucas Decl. ¶ 23.  And Netlist still has not explained why it cannot accept service on behalf of the Netlist employee who *was* there from 2018 to the present and who did have primary responsibility for those purchases—Steven Yu.  *Id.*

## V.    <u>**CONCLUSION**</u>

For all the foregoing reasons, the Court should deny Netlist's motion to quash the trial subpoena served on Gail Sasaki.

Dated:  April 15, 2024                    O'MELVENY & MYERS LLP


By:  */s/ Darin Snyder*
Darin Snyder
Attorneys for Defendant Samsung
Electronics Co., Ltd.

17

1

## **CERTIFICATE OF COMPLIANCE**

2

The undersigned, counsel of record for the Samsung, certifies that this brief

3

contains 5,739 words, which complies with the word limit of Local Rule 11-6.1.

4

DATED:  April 15, 2024            By:  _____

5

                                                    */s/ Darin Snyder*
                                                    Darin Snyder

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPP. TO NETLIST'S MOTION TO QUASH TRIAL SUBPOENA ON GAIL SASAKI