DARIN SNYDER (SB 136003)
dsnyder@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

MARC F. FEINSTEIN (SB 158901)
mfeinstein@omm.com
AMY R. LUCAS (SB 264034)
alucas@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6400

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co. Ltd.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No.: 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S MOTION FOR EVIDENTIARY HEARING AND LIMITED DISCOVERY RELATED THERETO**<br><br>[Filed Concurrently with Declaration of Amy Lucas and [Proposed] Order]<br><br>Hearing Date: August 26, 2024<br>Time: 9:00 AM<br>Location: Courtroom 7C<br>Judge: Hon. Mark C. Scarsi |

# NOTICE OF MOTION

**TO THE PARTIES AND THEIR ATTORNEYS:**

**PLEASE TAKE NOTICE** that that, pursuant to Federal Rules of Civil Procedure 37, 16, and the Court's statements at trial and inherent authority, on August 26, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Samsung Electronics Co. Ltd. ("Samsung") will and hereby does move the Court to set an evidentiary hearing regarding Netlist's compliance with its discovery obligations and failure to produce relevant documents during discovery, and to grant Samsung leave to take limited discovery in connection therewith.

The Court should set an evidentiary hearing and grant leave for limited discovery because (1) Netlist withheld relevant discovery, which Netlist then attempted to use at trial—without disclosing to Samsung or the Court that it had not been produced in the case; (2) in light of Samsung's subsequent investigation, it is clear that, both in 2021 during discovery and at the 2024 trial, Netlist misrepresented to the Court the scope and adequacy of its discovery efforts; and (3) only limited discovery followed by an evidentiary hearing will enable the Court to fully assess the extent of Netlist's misconduct and appropriate remedy.

This motion is based on this Notice, Memorandum of Points and Authorities, the Declaration of Amy R. Lucas filed concurrently herewith, all pleadings and records on file in this action, matters of which this Court may take judicial notice, and such other evidence and argument as may be presented to the Court.

//
//
//
//
//
//

SAMSUNG'S MOTION FOR EVIDENTIARY HEARING AND LEAVE FOR LIMITED DISCOVERY

Pursuant to Local Rule 7-3 and the instructions of the Court, this motion is made following conference of counsel, including on May 28, 2024 and in subsequent communications.

Dated:  June 21, 2024                    O'MELVENY & MYERS LLP


By:  */s/ Marc J. Pensabene*
Marc J. Pensabene
Attorneys for Defendant Samsung
Electronics Co., Ltd.

# TABLE OF CONTENTS

|  |  |  | **Page** |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | BACKGROUND | 3 |
| | A. | In 2021, Netlist Represented to This Court and Samsung That Its Document Collection Was *Not* Limited to Search Terms | 3 |
| | B. | Netlist's Attempt to Use a Highly Relevant Unproduced Document at the 2024 Trial | 5 |
| | C. | Netlist's 2024 Explanation of Its Discovery Efforts | 8 |
| | D. | Netlist's 2021 and 2024 Representations to the Court Were False | 10 |
| III. | | ARGUMENT | 14 |
| | A. | An Evidentiary Hearing Is Necessary | 16 |
| | B. | Limited Discovery Into Netlist's Document Collection, Review, and Production Prior to the Evidentiary Hearing Is Necessary | 18 |
| IV. | | CONCLUSION | 19 |

iv

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cal. Sansome Co. v. U.S. Gypsum*,
    55 F.3d 1402 (9th Cir. 1995) .................................................................... 15

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ...................................................................................... 15

*Colyer v. City of Chicago, Gildardo Sierra*,
    2016 WL 25710 (N.D. Ill. Jan. 4, 2016) ................................................... 15

*Greatbatch Ltd. v. AVX Corp.*,
    179 F. Supp. 3d 370 (D. Del. 2016), *aff'd*, 813 F. App'x 609 (Fed.
    Cir. 2020) .................................................................................................... 15

*Henry v. Sneiders*,
    490 F.2d 315 (9th Cir. 1974) ..................................................................... 16

*Hewlett v. Davis*,
    844 F.2d 109 (3d Cir. 1988) ....................................................................... 14

*Lew v. Kona Hosp.*,
    754 F.2d 1420 (9th Cir. 1985) ................................................................... 15

*Qualcomm Inc. v. Broadcom Corp.*,
    2008 WL 66932 (S.D. Cal. Jan. 7, 2008) ................................................... 15

*Rodriguez v. IBP, Inc.*,
    243 F.3d 1221 (10th Cir. 2001) ........................................................ 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On May 15, 2024, the second day of trial, Netlist's counsel attempted to sneak a document into evidence as a trial exhibit, even though that document had not been produced in the case and was not on Netlist's exhibit list.  Netlist's counsel does not dispute that this document was responsive to Samsung's discovery requests and should have been produced in the case.  Netlist's counsel also confessed they had been aware of this document well before trial and knew that Samsung intended to question Devon Park about its subject matter.  But rather than promptly disclose the unproduced document as the rules require, Netlist's counsel prepared a version that looked like a trial exhibit, stamped it with IX0013, sat on it, and waited for Samsung to "walk into a trap," as the Court aptly observed.  Declaration of Amy Lucas (Lucas Decl.), Ex. 4 at 602:11-19.

After the Court noted that sanctions may be appropriate and ordered Netlist to provide more information about the non-production and intentional withholding of IX0013, Netlist submitted a carefully worded description of its document collection and production efforts.  Dkt. 543.  In particular, Netlist's counsel admitted that IX0013 was collected by Netlist's outside vendor, but claimed it was not produced because it did not hit on the exceptionally limited search terms that Netlist claims to have used: "Samsung," "Joint Development and License Agreement," or "JDLA."  *Id*.  While the Court struck the testimony related to IX0013, it declined to further sanction Netlist in the middle of trial, and instead, at Netlist's own suggestion, invited Samsung to request an evidentiary hearing after trial.  Lucas Decl., Ex. 4 at 806:9-21.  Samsung now does so, for two primary reasons.

*First*, Netlist's document collection, review, and production efforts were not only materially deficient, but were far less comprehensive than Netlist led the Court and Samsung to believe when discovery was open in 2021.  During discovery,

Netlist represented to this Court and to Samsung that Netlist was "***not limiting our search efforts by search terms***" but instead "***we are brute force going through all of the documents that we think are potentially relevant and trying to make sure that we are capturing everything that is potentially relevant or responsive to this relationship***."  Lucas Decl., Ex. 8 (7/13/21 Tr.) at 10:9-10, 12:20-24; *see also* Ex. 10 (7/27/21 Tr.) at 40:8-23, 42:12-43:15.  But as it turns out, Netlist never did that back in 2021.  And now, in 2024, Netlist claims that it did exactly what it told the Court in 2021 it was not doing, *i.e.*, limiting its review to only the subset of documents that hit on artificially narrow search terms—search terms that Netlist still refuses to fully disclose with any specificity.  Lucas Decl. at ¶ 24; Lucas Decl., Ex. 12.

*Second*, despite Netlist's counsel representing to the Court just weeks ago that Netlist had produced every single non-privileged hit on "Samsung" or "JDLA," ***Samsung has now confirmed that Netlist withheld <u>at least 50 highly relevant and responsive documents that contain those very terms</u>***.  Lucas Decl., Ex. 13 (6/8/24 A. Lucas email to Irell) at 1-3.  Amazingly, Netlist withheld these documents here but produced them in at least three of its other litigations, including against sk Hynix ("Hynix") and Micron.  Lucas Decl. at ¶¶ 9-11.  These unproduced documents are not only highly relevant, but squarely support Samsung's arguments in this case, to wit, that even Netlist understood Section 6.2 of the JDLA ***not*** to be a general, unlimited supply obligation, as Netlist argued in this case.

And the documents Netlist withheld plainly fall within the relevant timeframe, involve the relevant Netlist witnesses who testified at trial and from whom Netlist produced documents, and are about the very issues that were litigated and tried here.  Yet, Netlist has offered no explanation for why it failed to produce any of these highly relevant documents in this case, much less how or why it managed to withhold over 50 such highly relevant documents.  *See* Lucas Decl., Ex. 14 at 1-2.  Nor has it responded, let alone agreed, to Samsung's request that Netlist

2

consent to presenting these documents to this Court so the Court can see firsthand the breadth and scope of Netlist's discovery misconduct. *Id.*

These facts render the necessity of an evidentiary hearing even more acute, because Netlist's shifting representations and explanations fail to justify the compelling evidence that Netlist withheld scores of highly relevant documents from discovery. In point of fact, ***to this day, Netlist refuses to disclose the exact search terms it used for its production back in 2021***, but the shifting statements it has provided only confirm that Netlist's recent representations to the Court during in trial were not true. *See* Lucas Decl., Ex. 12. And it has refused to even address Samsung's inquiries regarding the over 50 key documents it withheld from discovery. *See* Lucas Decl., Ex. 14 at 1-2. Given Netlist's stonewalling, the Court should grant Samsung leave to take limited, targeted discovery in advance of that hearing. Samsung accordingly requests that the Court set an evidentiary hearing and grant leave to take, as a preliminary matter, the Rule 30(b)(6) deposition of Netlist on the adequacy of Netlist's document collection, search, and production efforts in advance thereof.

## II.   <u>BACKGROUND</u>

### A.   <u>In 2021, Netlist Represented to This Court and Samsung That Its Document Collection Was *Not* Limited to Search Terms</u>

In 2021, when discovery was underway in this case,[1] Netlist sought to have Samsung produce documents from certain custodians using specific search terms that Netlist apparently believed were relevant to this case. Lucas Decl., Ex. 6 (6/28/2021 IDC Letter). In the course of discussing Netlist's request first with Magistrate Judge McCormick and later with Magistrate Judge Spaeth,[2] Samsung

---

[1] Under the case management schedule, fact discovery in this case closed on August 16, 2021. Dkt. 41.

[2] When Netlist's current counsel at Irell & Manella appeared as counsel of record a month before discovery closed on July 15, 2021, Judge McCormick was forced to recuse himself in light of family ties to the firm. Judge Spaeth took over handling discovery issues. Dkts. 74, 77; Lucas Decl. Ex. 9 (7/19/21 Tr.) at 2:24-3:5.

asked that Netlist also disclose a list of the custodians and search terms that Netlist

was using.  Lucas Decl., Ex. 7 (7/12/21 IDC Letter).

     To avoid disclosing its own search terms and custodians, however, Netlist

repeatedly represented to the Court and Samsung that its document collection and

review was broad and comprehensive, and not limited to search terms.  During a

July 13, 2021 discovery conference, for example, Netlist's counsel represented that:

> Netlist is "***not limiting our search efforts by search terms***" and "***we are***
> ***brute force going through all of the documents that we think are potentially***
> ***relevant and trying to make sure that <u>we are capturing everything that is</u>***
> ***<u>potentially relevant or responsive to this relationship</u>***."

Lucas Decl., Ex. 8 (7/13/21 Tr.) at 10:9-10, 12:20-24 (emphasis added).

     When Samsung again raised Netlist's refusal to disclose its custodians and

search terms at a July 27, 2021 discovery conference, Netlist's counsel claimed that

"we've never refused to provide custodians and search terms," but acknowledged

that they "ha[d] not provided a comprehensive list."  Lucas Decl., Ex. 10 (7/27/21

Tr.) at 40:12-13.  Netlist's counsel went on to represent to the Court and Samsung

how Netlist had collected documents from its custodians:

> [W]e pulled all of their email that we could find, the whole mailbox in whole
> and searched it.  We search it using n– just -- this was the issue. ***We did not***
> ***just use search terms as they are proposing***. ***We have talked to witnesses,***
> ***we've had witnesses help us to go through their email to identify email***
> ***threads, we've tried to find threads from those threads***. We have used words
> like 'Samsung' and 'Samsung.com' also as search terms ***but we haven't***
> ***exclusively relied on search terms***.

*Id.* at 42:24-43:7 (emphasis added).

     Touting the 30,000 documents Netlist had produced, Netlist's counsel

described their process as "***more robust***" than the protocol Samsung was using, in

that Netlist was supposedly "searching for 'Samsung' or ' Samsung

communications,' ***and then seeing what we could move from there to make sure***

4

1    *that we're grabbing a wider net than just what that would give us*." *Id.* at 43:2-15
2    (emphasis added).

3           On the basis of those representations, Netlist avoided ever having to disclose
4    the full list of its own search terms and custodians, or the details of how it was
5    going about its own document production, while simultaneously securing a broad
6    order compelling Samsung to produce (i) all non-privileged communications with
7    Netlist from January 2015 on and (ii) all documents from January 2015 that
8    reference Netlist, *Netlist.com, or 네트리스트 or 넷리스트 (Netlist in Korean); N
9    사 or N 社 (NCompany) or 'Neptune' or any other Samsung code for Netlist; or the
10   JDLA or 'Joint Development and License Agreement', including any family
11   documents such as forwarding, attaching, or transmittal materials." Dkt. 133
12   (08/06/2021 Amended Order).  Samsung ultimately produced over 135,000
13   documents and nearly 1,000,000 pages, compared to Netlist's 30,000 documents.[3]
14   Lucas Decl. at ¶¶ 5, 8.

15        **B.**   **<u>Netlist's Attempt to Use a Highly Relevant Unproduced Document
16   at the 2024 Trial</u>**

17          During the 2024 trial, Samsung's counsel questioned Netlist's Devon Park
18   about Samsung Trial Exhibit 1400, in which Mr. Park suggested that Netlist could
19   offer up the name of a company called SLY in order to secure hard-to-get eMMC
20   NAND memory cards from Samsung.  *See* Lucas Decl., Ex. 1 (Trial Exhibit 1400).
21   As Mr. Park testified at trial, there actually was no end customer called SLY lined
22   up for the purchase.  Lucas Decl., Ex. 3 at 486:6-11.  Instead, Mr. Park had taken it
23   upon himself to come up with a name to give Samsung, carefully selecting a false
24   company that—in Mr. Park's own words—"will be hard for Samsung to track
25   down."  Lucas Decl., Ex. 1 (Trial Exhibit 1400) at 1.  That way, "[i]f [Samsung]

26   ---
     [3] Following summary judgment, O'Melveny & Myers joined the case as counsel for
27   Samsung.  Understanding discovery was closed, and having no reason to question
     the representations Netlist made to the Court and Samsung during the discovery
28   period, O'Melveny was aware of no basis to challenge Netlist's productions.

1   ask[ed] for more details, [Netlist could] tell them they make something called

2   Ematic Touchscreen MP3/Video player.  Sold at Frys so they'll find it's a

3   legitimate company." *Id.* at 2.

4   The point of this cross-examination questioning cut right to the heart of

5   Netlist's claim that § 6.2 of the JDLA was a general supply agreement that entitled

6   Netlist to any NAND or DRAM memory products it wanted from Samsung:  If the

7   parties had actually intended Netlist to have such an agreement, Netlist obviously

8   would have no need to make up a fictitious end customer to obtain products from

9   Samsung.

10   In response to Samsung's cross-examination, Mr. Park had been prepared to

11   volunteer at least five different times that he was acting at the instruction of

12   Samsung's sale representative Neal Knuth.  Lucas Decl. Ex. 3 at 479:13-18,

13   484:12-19, 484:20-24, 485:11-13, 486:25-487:2.  And during Netlist's redirect

14   examination, Netlist's counsel elicited testimony that Mr. Park provided the name

15   SLY to Samsung because Samsung's sale representative Neal Knuth allegedly told

16   Mr. Park to "just give [Samsung] a name" in connection with the purchase order.

17   Lucas Decl., Ex. 3 at 502:2-5, *see also* 501:9-21.

18   Netlist's counsel then attempted to admit into evidence an unproduced email

19   thread from Mr. Park's files containing notes purportedly memorializing this

20   conversation.  *Id.* at 502:6-13.  Netlist had never produced the email during

21   discovery, had never told Samsung about it before, and had never put it on the

22   exhibit list.  Yet incredibly, ***Netlist's counsel had stamped the document with***

23   ***number "IX0013," making it look like an official document to be used at trial***.

24   And Netlist's counsel handed the document to Samsung's counsel as he sought its

25   admission without any mention that it was a new exhibit, much less that it was an

26   entirely new document that had never been produced in discovery.  *See* Lucas

27   Decl., Ex. 3 at 502:8-15.

28

6

1    Netlist's counsel attempted to introduce IX0013 as Trial Exhibit 999, and
2    only when questioned did Netlist admit that the document was not on Netlist's
3    exhibit list, but claimed Netlist was "*reintroducing* it for purposes of rehabilitating
4    the witness."  Lucas Decl., Ex. 3 at 502:17-23.  When Samsung's counsel objected
5    and pointed out that, not only was the document missing from the exhibit list, but it
6    also appeared to not have even ***been produced*** in the case, Netlist's counsel
7    admitted that it had not been.  Lucas Decl., Ex. 3 at 503:20-22, 504:3-4 (The Court:
8    "It wasn't produced then, right?"  Mr. Harbour: "It was not produced, no.").

9    Notably, Netlist's counsel knew full well that Samsung would question
10   Devon Park about making up a customer name from exhibits, including Exhibit
11   1400, that Samsung had disclosed to Netlist weeks before trial.  Lucas Decl., Ex. 1
12   (Trial Exhibit 1400).  And Netlist's counsel also knew full well that Netlist would
13   use IX0013 with Mr. Park, as well as with Neal Knuth, to try and blame Samsung
14   for the made-up customer name—yet Netlist chose not to disclose IX0013 to
15   Samsung and instead, lie in wait for Mr. Park's redirect.  The Court should not
16   condone such "trial by ambush" tactics.

17   As a result of Netlist's failure to produce IX0013 despite its obvious
18   relevance, the Court did not allow the document to come into evidence, and ordered
19   Netlist to investigate the reasons that the document was not produced and provide
20   an explanation to the Court:

21   THE COURT: Why wouldn't it have been produced?

22   MR. HARBOUR: I don't know. I wasn't counsel at the time. I
23   don't know if it was responsive to a particular request.

24   THE COURT: I can't see how it would not be responsive to a
     discovery response.

25   First of all, it doesn't come i[n] because it wasn't produced.

26   And second of all, I've got a concern about why this -- why
27   this wasn't produced. And so I would ask counsel to go back,
     dig into that, and let me know tomorrow why this wasn't
28   produced.

7

MR. HARBOUR: We can do that, Your Honor. I will say that counsel of record at the time is not counsel --

THE COURT: I don't care who counsel of record was, and anything like that, ***but I do care if there was documents that you've got in your back pocket that haven't been produced that appear relevant***. That seems to be a pretty big discovery violation to me. One that might merit sanctions. So I just want you -- before I go that far I want to hear a little bit more about it.[4]

## C.   Netlist's 2024 Explanation of Its Discovery Efforts.

The next day, Netlist's counsel attempted to explain why exhibit IX0013 was not produced, but the explanation raised more questions than answers.  In a carefully worded filing, Netlist represented:

"Netlist used an outside vendor to perform a broad initial document pull from Netlist, and Netlist's current counsel has confirmed that this email was not within the documents provided to prior counsel by the outside vendor.  Notably, [IX-0013] ***does not contain any reference to Samsung or the JDLA*** (or any abbreviation thereof) which is why it was not identified."[5]

In response to the question whether Netlist had excluded internal communications regarding purchase orders, Netlist's lead trial counsel, Jason Sheasby, represented to the Court that Netlist had not only produced internal communications, but had produced ***every single non-privileged document that hit on "Samsung" or "JDLA"***:

MR. SHEASBY:  Your Honor, I just want to clarify. We actually did do an internal search as well. We did not exclude internal communications. The point of saying that is, we went above and beyond. So there are many, many internal communications that have been produced. ***The reason why this was not produced was because it didn't hit the key word Samsung or JDLA.***

So I want to be very clear, that was a secondary argument. So

---

[4]   Lucas Decl., Ex. 3 at 504:5-25 (emphasis added).  Notably, contrary to Netlist's suggestion, Netlist's current counsel was counsel of record during discovery and the production of the vast majority of Netlist's documents in CDCA.  Lucas Decl. at ¶ 2; Lucas Decl., Ex. 15; *see supra*, n. 2.

[5] Dkt. 543 at 1 (emphasis added).

1   there is no ambiguity, we did not exclude for a search for
    internal communications. There are a massive number of
2   internal communications that were produced. . . . **There was
    no decision not to produce some category of document. There**
3   **was no partial searching done.  Every single internal /
    external communication that hit on our search terms was**
4   **produced. Every single one. And I just want to make that
    emphatically clear**.[6]
5

6        Samsung requested sanctions against Netlist, as well as an adverse inference

7   instruction to the jury based on Netlist withholding plainly relevant documents it

8   was required to produce.  Dkt. 544 at 6; Lucas Decl., Ex. 4 at 602:1-8.  Mr. Sheasby

9   objected to such an "extreme sanction" without an evidentiary hearing:

10       MR. SHEASBY:  … We think post-trial, if the Court wants to
         have a hearing to determine the quality of our search, the Court
11       should do so. But to give that level of instruction **without an
         evidentiary hearing**, I think is beyond. Because if it turns out
12       that that is incorrect, that we did do a good faith search, we
         may have to redo the trial.[7]
13

14       The Court agreed with Netlist, and struck the testimony at issue by Mr. Park,

15   but declined to further sanction Netlist without an evidentiary hearing, inviting

16   Samsung to seek one:

17       THE COURT:  I think we instructed the jury with respect to
         just disregard the testimony. And the question is, think about
18       whether we need to give them that same instruction again or
         whether it's done and over with and they don't have to worry
19       about it.

20       With respect to whether we need to sanction Netlist further, I
         will -- **I think the appropriate course is the one that Mr.**
21       **Sheasby indicated earlier, is that if Samsung wants to bring a
         motion for an evidentiary hearing on this discovery issue, we**
22       **can do that at some point after the trial, and deal with that**.

23       Then depending on that, we could issue a sanction that would
         require some, you know, vacating of the --whatever happened
24       at trial.

25       But for now, we'll leave that to post-evidentiary hearing.

26   _____

27   [6] Lucas Decl. Ex. 4 at 591:19-593:6 (emphasis added).

28   [7] Lucas Decl., Ex. 4 at 605:24-606:25 (emphasis added).

1    That was your suggestion, right?

2    MR. SHEASBY: It was, Your Honor.

3    THE COURT: I think that makes good sense.[8]

4    **D.    Netlist's 2021 and 2024 Representations to the Court Were False**

5    Samsung has since investigated Netlist's representations regarding its

document productions, and has discovered Netlist's discovery failings are far more

serious than just the one document Netlist surreptitiously attempted to use at trial.

Not only were Netlist's prior representations false, but as the Court expressed

concerns might be the case, it turns out Netlist had scores of documents in its "back

pocket that haven't been produced that appear relevant."  Lucas Decl. Ex. 3 at

504:19-25.

12    After trial, Samsung told Netlist it needed to gather information for an

evidentiary hearing, including "information regarding Netlist's collection of

responsive documents (e.g., search terms and other parameters used for any

electronic search), the failure to disclose relevant and responsive documents, and

the discovery of the undisclosed document Netlist attempted to use at trial."  Lucas

Decl., Ex. 12 (5/31/24 M. Pensabene email to Irell) at 6-7.  When Netlist evaded

Samsung's request, Samsung asked Netlist to provide, "at least, an identification of

the search terms and custodians used by Netlist in its collection of documents."  *Id.*

(6/4/24 M. Pensabene email to Irell) at 5.

21    Netlist refused to provide any additional information beyond a list of the

custodians from whom it ***produced*** documents (as opposed to those from whom it

***collected*** documents)—information Samsung obviously already has in the custodial

metadata.  *Id.* (6/11/24 M. Harbour email to O'Melveny) at 4-5.  Samsung

investigated further, and learned that Ex. IX0013 was just the tip of the iceberg;

Netlist failed to produce ***dozens*** of highly relevant documents in this case, despite

27

28    [8] Lucas Decl., Ex. 4 at 806:9-21 (emphasis added).

having produced those same documents in other cases, including in Netlist's case against Hynix.  Lucas Decl. at ¶¶ 9, 11.

**First**, Netlist's 2021 representations about employing a broad, extensive review **not** limited by search terms is at best, grossly misleading.  Of the 39,127 documents Netlist produced, nearly every single one—99.5%, or 38,937 documents to be exact—is a hit or family hit[9] on "Samsung," "Joint Development and License Agreement," or "JDLA."[10]  Lucas Decl. at ¶ 5.

Further, **not a single document** Netlist produced hit **only** on terms like those Netlist successfully forced Samsung to run—such as "Neptune" (an internal code name adopted by both sides), Netlist's frequently used "SS" abbreviation, or even "Samsung" in the Korean language—strongly suggesting Netlist did not use those terms for its production despite arguing their relevance for Samsung's production.[11] Lucas Decl. at ¶ 7; *see* Dkt. 133 (08/06/2021 Amended Order).  And Netlist admits that it did not bother reviewing any documents hitting only on the names of

---

[9] A family hit is a document that is either the parent or attachment to a document that hit on search terms, and is customarily produced regardless of responsiveness unless it is privileged.

[10] Of the 190 documents Netlist produced that did not hit on "Samsung," "JDLA," or "Joint Development and License Agreement," 92 of them are privilege slip sheets.  *Id.*  The remaining 98 documents are almost entirely cherry-picked from Gail Sasaki's and "Netlist's" custodial files and are, at best, marginally relevant to the issues in the case.  Of these documents, 57 relate to Netlist's failed tax claim; 21 are Netlist's own public SEC documents; 6 are records of delivery attempts for Netlist's notice of breach and termination; 5 are calendar invites or emails between PK Hong and a company called Mrcy; 2 are copies of Netlist's promissory note to Samsung's affiliate company, 2 are purchase orders with a third party; 2 are irrelevant photos from Steven Yu's files; 1 is a list of patents; 1 is a vendor list, and lastly, 1 is an irrelevant Netlist logo image.  Lucas Decl. at ¶ 6.

[11] In 2021, in connection with making broad sweeping representations about the thoroughness of its own supposedly comprehensive document collection and production, Netlist obtained an order requiring Samsung to produce: "[1] Any email and attachments sent to, from, or cc'ing a netlist.com email address, Netlist, or a Netlist employee, from January 2015 on; and [2] All documents from January 2015 on, that reference Netlist, *Netlist.com, or 네트리스트 or 넷리스트 (Netlist in Korean); N 사 or N 社 (NCompany) or "Neptune" or any other Samsung code for Netlist; or the JDLA or "Joint Development and License Agreement", including any family documents such as forwarding, attaching, or transmittal materials."  Dkt. 133 (08/06/2021 Amended Order).

Samsung witnesses who frequently communicated with Netlist, such as Neal Knuth, Steven Metz (Netlist's primary sales contacts at Samsung) or Indong Kim (Netlist's primary contact at Samsung on the joint development efforts).[12]  *See* Dkt. 543 at 1; Lucas Decl., Ex. 4 at 591:19-593:6.  That is hardly the type of "brute force" production designed to capture "everything that is potentially relevant or responsive to this relationship."  Lucas Decl., Ex. 8 (7/13/21 Tr.) at 12:20-24.

By artificially limiting its collection and review to documents hitting on "Samsung" and "JDLA," without bothering to account for even the most basic well-known variations or translations of those terms or references to—and communications with—key Samsung employees, Netlist categorically screened out relevant and responsive documents by preventing them from ever reaching the review stage.  There is no telling how many other relevant and responsive documents Netlist successfully withheld from discovery because of Netlist's use of those restrictive key words.  But, as explained below, there is more.

*Second*, Mr. Sheasby's 2024 representations to the Court in which he made it "emphatically clear" that "every single internal/external communication that hit on our search terms was produced" turned out to be demonstrably false.  Lucas Decl. Ex. 4 at 591:19-593:6.   Contrary to Mr. Sheasby's assurances that Netlist produced "every single one" of the non-privileged hits on "Samsung" or "JDLA," *id.*, Samsung has discovered that Netlist did no such thing.  Instead, Samsung discovered that Netlist withheld from discovery **more than 50 highly relevant documents specifically referencing** "Samsung" and/or the "JDLA."  Lucas Decl. at ¶¶ 9, 11.  And Netlist's most recent admissions likewise confirm that Mr. Sheasby's emphatic representations to the Court were false.  *See* Lucas Decl. Ex. 12.

---

[12] Netlist's process did not even sweep exhibit IX0013 into the corpus of documents provided to counsel for review.  While the top email does not mention "Samsung," the next one in the chain is between Netlist and Samsung's Neal Knuth concerning purchase orders.

SAMSUNG'S MOTION FOR EVIDENTIARY HEARING AND LEAVE FOR LIMITED DISCOVERY

1       The over 50 recently discovered documents Netlist withheld from discovery

2  are documents that are not merely relevant to the issues in the case, but involve

3  Netlist's key witnesses such as Chuck Hong, Noel Whitley, and other executives;

4  were marked as exhibits at their prior depositions in Netlist's other proceedings

5  against sk Hynix; and plainly show, among other things, that the parties never

6  intended Section 6.2 of the JDLA to impose a general supply obligation on

7  Samsung, as Netlist now argues.

8       Netlist produced these documents that it withheld here between 2016 and

9  2023 in other litigations—first against sk Hynix and later in a patent litigation

10  against Micron in the Eastern District of Texas ("EDTX").  Lucas Decl. at ¶¶ 9-10.

11  Yet, Netlist withheld these documents from discovery here, apparently because they

12  would contradict Netlist's newly minted theory that Section 6.2 is somehow a

13  general supply provision.  And even though the Micron EDTX patent case had been

14  consolidated with Netlist's EDTX patent case against Samsung, Netlist withheld

15  them from Samsung in EDTX while producing them to Micron.  Lucas Decl. at

16  ¶ 10.  Just a few weeks before trial here, Netlist was finally compelled to produce

17  them to Samsung in the second EDTX Samsung patent action in response to a

18  Samsung motion to compel.[13]  *Id.*

19       Make no mistake, while Samsung is restricted by the EDTX Protective Order

20  from discussing the documents in detail here, there is no question Netlist knew that

21  these documents existed, knew they were squarely responsive to Samsung's

22  discovery requests, and knew they were highly damaging to Netlist's claims here.

23  Netlist has now produced them in ***three other*** litigations, before and after discovery

24  in this case.  Lucas Decl. at ¶¶ 9-10.  The only explanation for Netlist's failure to

25

26  [13] Because that motion to compel related solely to EDTX patent expert valuation issues, the undersigned counsel did not learn the content of all of these unproduced

27  documents and of Netlist's discovery abuses until after the CDCA trial, in the course of investigating Netlist's representations about the scope of its productions.

28  Lucas Decl. at ¶ 10.

SAMSUNG'S MOTION FOR EVIDENTIARY HEARING AND LEAVE FOR LIMITED DISCOVERY

produce them here is that Netlist deliberately withheld them from production in this case, as they refuted Netlist's argument that the supply provision was unlimited.

Netlist refuses to consent to presenting these documents to this Court in connection with the present motion, so they remain under seal in EDTX. Samsung is applying to EDTX for leave to submit the documents here.[14]  Lucas Decl. at ¶ 12.  If the EDTX Court grants Samsung leave to do so, Samsung will promptly submit these withheld documents to the Court for review so the Court can see for itself Netlist's discovery abuses.  *Id.*

## III.   **ARGUMENT**

During trial, the Court invited Samsung to bring a motion for an evidentiary hearing to determine whether further sanctions are necessary given Netlist's apparent discovery misconduct.  Lucas Decl., Ex. 4 at 806:9-21 ("[T]he appropriate course is the one that Mr. Sheasby indicated earlier," that is, "if Samsung wants to bring a motion for an evidentiary hearing on this discovery issue, we can do that at some point after the trial, and deal with that.").  Because grave issues have since come to light, not just about serious defects in Netlist's document production, but also regarding Netlist's willful withholding of vast numbers of highly relevant documents, and its contradictory and demonstrably false representations to this Court, the need for such a hearing has become even more compelling.

"The court has discretion to order discovery in post-trial matters and may direct that the procedures of the rules be used."  *Hewlett v. Davis*, 844 F.2d 109, 115 (3d Cir. 1988); *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) ("[c]ontrol of discovery . . . lies in the sound discretion of the district court . . . we find nothing in this court's authority indicating that this discretion ends upon the completion of the trial."); *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 381

---

[14] The Court also has the power to order Netlist to submit them here, as they appear to have been designated highly confidential by Netlist rather than by any third party, and Netlist has failed to provide any explanation or reason for its refusal.

(D. Del. 2016), *aff'd*, 813 F. App'x 609 (Fed. Cir. 2020) (granting post-trial discovery "is clearly a matter of 'docket control and conduct of discovery' that comes within the Court's broad case management authority").

This includes where it has become clear at trial that a party improperly failed to disclose relevant evidence prior to trial, *Rodriguez*, 243 F.3d at 1230, or to "determine the extent of [a] discovery violation," *Colyer v. City of Chicago, Gildardo Sierra*, 2016 WL 25710, at *2 (N.D. Ill. Jan. 4, 2016) (court ordering post-trial discovery "[i]n order to determine the extent of [a] discovery violation," and granting new trial on basis of discovery showing withholding evidence and negligence in discovery); *Greatbatch Ltd.*, 197 F. Supp. 3d at 370 (permitting post-trial discovery to allow party to understand why non-moving party produced key documents late in the case).

In addition to sanctions, the extent of Netlist's discovery misconduct is also directly relevant to Samsung's post-trial renewed motion for judgment as a matter of law or, in the alternative, motion for new trial, as "failure to produce relevant documents in response to discovery requests" is one type of attorney misconduct that could warrant a new trial. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995) (trial court did not abuse discretion in ordering new trial where withheld evidence "could serve as valuable impeachment evidence … and could lead to more evidence … upon further discovery"). Under Rule 37, the court likewise "has great latitude in imposing sanctions." *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

Of course, courts also have "inherent power[]" to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932, at *8 (S.D. Cal. Jan. 7, 2008) (issuing sanctions under Rule 37 and inherent powers in form of monetary sanctions, referral to California State Bar, and mandatory participation in Case Review and Enforcement of Discovery Obligations

15

program, where evidence learned at trial revealed tens of thousands of documents had been withheld during discovery).

### A. An Evidentiary Hearing Is Necessary

An evidentiary hearing is necessary because it is now clear that Netlist's document collection, review, and production was not only materially deficient, but also far narrower and significantly less comprehensive than Netlist previously led the Court and Samsung to believe during discovery in 2021 and at trial in 2024.

As described above, Netlist, in 2021, represented to the Court that it was "not limiting our search efforts by search terms," but rather was "brute force going through all of the documents that we think are potentially relevant and trying to make sure that we are capturing everything that is potentially relevant or responsive to this relationship."  Lucas Decl., Ex. 8 (7/13/21 Tr.) at 10:9-10, 12:20-24.  This alone should have led to the production in this case of IX0013 and the more than 50 other documents Samsung has identified that were produced in other litigations, as well as any additional documents like them that Netlist withheld.  Netlist should be held to its clear representations to the Court.[15]  *Cf. Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) ("Where oral proceedings unequivocally give a litigant notice that certain documents are to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply").

But what Netlist told the Court it was doing in 2021 is not at all what Netlist did.  As Netlist admitted at trial in 2024, it did in fact use search terms—albeit unreasonably narrow search terms—to artificially limit the documents that were being collected and reviewed:  "Samsung or the JDLA (or any abbreviations thereof)."  Dkt. 543 at 1.  Everything that did not hit on those terms, regardless of

---

[15] And statements to the Court aside, Netlist agreed in Response to Request for Production No. 1 to produce "non-privileged documents regarding the negotiating history of the Agreement, to the extent such documents may be located subject to a reasonable search. Lucas Decl., Ex. 5 (Netlist's RFP Responses).  That too would cover a number a number of key documents relating to the negotiation of the JDLA that Samsung has discovered were not produced.

relevance, apparently remained quarantined at Netlist's outside vendor, except for a handful of cherry-picked documents, such as tax and SEC documents.  Dkt. 543; *see supra*, n.10.  That is not what a "brute force" search "potentially relevant or responsive" standard looks like.  Lucas Decl., Ex. 8 (7/13/21 Tr.) at 12:20-24.

Nor is Netlist's document collection and production close to the standard to which Netlist successfully asked the Court hold Samsung to when it demanded, and obtained, an order requiring Samsung to produce *all* communications with Netlist and *all* documents referencing Netlist, including numerous code names and Korean language versions and counterparts, or the JDLA or Joint Development License Agreement, as well as any family documents, from January 1, 2015 on.  Dkt. 133 (08/06/2021 Amended Order).

The consequence of Netlist's tactical decision to apply such artificially narrow search terms at an early stage of the collection process is that that Netlist categorically screened out relevant and responsive documents **before** they even reached Netlist's counsel for review.  This appears to include scores of unproduced documents that mention Samsung by code names or shorthand, such as "SS," or Samsung in Korean language (삼성), documents that use the code name "Neptune," and documents that mention Samsung employees key to the Netlist relationship by name, but not the word "Samsung."  But we cannot know with certainty what actually happened because Netlist's counsel refuses to provide any additional information beyond what it has been forced to disclose.  Lucas Decl., Ex. 14 at 1-2.

An evidentiary hearing is likewise necessary because just weeks ago, in order to avoid sanctions, Mr. Sheasby emphatically assured the Court that every single non-privileged document that hit on "Samsung" or "JDLA" was produced in this case, but that likewise turned out to be demonstrably false.  Netlist has now all but admitted as much, but has done nothing to correct its misrepresentations.  *See* Lucas Ex. 12.  As detailed above, we now know that Netlist had in its possession **at least 50 highly relevant documents** hitting on the terms "Samsung" or "JDLA"

17

involving the same custodians here that it produced in at least three other litigations, both prior to and after the close of discovery in this case.  And, although Netlist refuses to agree to let this Court see them, we know that these documents would have been highly beneficial to Samsung had they been produced, as they uniformly support Samsung's arguments in this case and undermine Netlist's.  Yet, Netlist intentionally withheld those documents from production in this case, apparently aware that they are damaging to its theory that the JDLA contained an unlimited supply obligation.  Had Netlist produced them, it would have changed the entire trajectory of the case, including written discovery and depositions, summary judgment briefing, and presentations at trial.  At this stage, if the Court determines that Netlist in fact withheld damaging documents from discovery, it could serve as a basis for, *at minimum*, a new trial, if not more severe sanctions.

**B.    Limited Discovery into Netlist's Document Collection, Review, and Production Prior to the Evidentiary Hearing Is Necessary**

More than a month has passed since Netlist's discovery abuses came to light at trial, and weeks since the larger scope of abuse became apparent, yet Netlist still refuses to disclose what it actually did to collect, review, and produce documents. Samsung has asked numerous times for more information about Netlist's discovery process, and Netlist will not even provide a definitive list of search terms it used. *See* Lucas Decl., Ex. 12.   The only thing that is clear is none of Netlist's representations to the Court was true, but it is unknown exactly what Netlist did.

So while Samsung has been able to uncover through its own investigation that Netlist's representations to the Court in 2021 and 2024 were not true, it is unable to determine exactly what search terms Netlist used and how they were applied, what documents were collected from whom and how, how Netlist determined what documents should ultimately be produced or withheld, how so many obviously relevant documents were not produced, and most importantly, the

true scope and identity of all the other relevant documents that Netlist withheld in this case.

Assuming Netlist complies with its discovery obligations under Rule 30, Samsung expects that the appropriate path forward is a targeted Rule 30(b)(6) deposition of Netlist on the topics identified in Samsung's proposed notice, attached to the Lucas Declaration as Ex. 11.  Only after such a deposition—which will allow Samsung to obtain the limited information about Netlist's discovery processes that Netlist has strenuously avoided providing voluntarily—can a meaningful evidentiary hearing be held.[16]  Otherwise, what Netlist actually did will never come to light, because it is evident that unless Netlist is ordered to provide this basic information, it will never do so.

## IV.   **CONCLUSION**

For the forgoing reasons, Samsung respectfully requests that the Court set an evidentiary hearing, and grant Samsung leave to take the Rule 30(b)(6) deposition of Netlist on topics related thereto before the evidentiary hearing.  The parties should be ordered to file a status report following the deposition to inform the Court of their positions regarding the adequacy of the discovery provided for the evidentiary hearing.

Dated:  June 21, 2024                    O'MELVENY & MYERS LLP


By: */s/ Marc J. Pensabene*
Marc J. Pensabene
Attorneys for Defendant Samsung
Electronics Co., Ltd.

---

[16] Should Netlist refuse to provide forthcoming or adequate answers at such deposition, additional targeted discovery of Netlist's counsel and/or outside vendors may be necessary and appropriate.  At this time, however, Samsung asks only for leave to take this limited deposition of Netlist.

SAMSUNG'S MOTION FOR EVIDENTIARY HEARING AND LEAVE FOR LIMITED DISCOVERY