JASON SHEASBY, SBN 205455
jsheasby@irell.com
LISA GLASSER, SBN 223406
lglasser@irell.com
MICHAEL HARBOUR, SBN 298185
mharbour@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile:  310.203.7199

A. MATTHEW ASHLEY, SBN 198235
mashley@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949.760.0991
Facsimile:  949.760.5200

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>            Defendant. | Case No. 8:20-cv-00993-MCS (ADS)<br><br>**PLAINTIFF NETLIST INC.'S OPPOSITION TO DEFENDANT SAMSUNG ELECTRONICS CO., LTD.'S MOTION FOR AN EVIDENTIARY HEARING AND DISCOVERY RELATED THERETO**<br><br>Judge Mark C. Scarsi<br><br>Hearing Date:  August 26, 2024<br>Time:  9:00 AM<br>Location:  Courtroom 7C |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

1

## <u>TABLE OF CONTENTS</u>

2

**<u>Page</u>**

3   I.      INTRODUCTION ......................................................................................... 1

4   II.     BACKGROUND ........................................................................................... 3

5           A.      Samsung Sought To Narrowly Limit Discovery and Invoked The
                    Discovery Cut-Off To Block Inquiry Into Its Discovery Violations ...................... 3

6

7           B.      At Trial, Netlist Sought to Introduce A Non-Responsive Email For
                    The Sole Purpose of Rehabilitating a Witness on Redirect ..................... 5

8           C.      Netlist Investigates Overnight And Samsung Requests Sanctions ........................ 6

9           D.      Post-Trial Investigation Confirms The Document Was Not
                    Responsive ......................................................................................... 9

10

11          E.      Samsung Changes Tactics Again, Seeking to Re-Open Discovery To
                    Probe The Entire Document Collection ................................................ 10

12  III.    SAMSUNG HAS NOT SHOWN GOOD CAUSE FOR REOPENING
            DISCOVERY AND SEEKING AN EVIDENTIARY HEARING ................................. 13

13          A.      The Good Cause and Excusable Neglect Standard ................................ 14

14

15          B.      Samsung's Other Arguments Are Also Untimely and Inaccurate ....................... 19

    IV.     CONCLUSION ........................................................................................... 21

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

0.0  01

- i -

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Acacia Rsch. Corp. v. Nat'l Union Fire Ins.,*
2009 WL 10671395 (C.D. Cal. June 12, 2009)...........................................................16

5

6

*Cal. Inst. of Tech. v. Broadcom Ltd.,*
2022 WL 17345911 (C.D. Cal. Oct. 26, 2022) ..........................................................18

7

8

*California Sansome Co. v. U.S. Gypsum,*
55 F.3d 1402 (9th Cir. 1995)....................................................................................21

9

*Centeno v. City of Carlsbad,*
2021 WL 2400226 (S.D. Cal. June 11, 2021) ......................................................14, 18

10

*Colyer v. City of Chicago, Gildardo Sierra,*
2016 WL 25710 (N.D. Ill. Jan. 4, 2016) ...................................................................17

11

12

*Crowley v. Epicept Corp.,*
883 F.3d 739 (9th Cir. 2018).......................................................................................8

13

14

*Davis v. Cal. Dep't of Corr. & Rehab.,*
2013 WL 1208965 (N.D. Cal. Mar. 25, 2013) ...........................................................18

15

16

*Davis v. Davison Hotel Co., LLC,*
2013 WL 3337669 (C.D. Cal. July 1, 2013) ..............................................................21

17

18

*Engel v. Cable,*
2019 WL 8889959 (C.D. Cal. Dec. 13, 2019) ............................................................14

19

*Finjan, Inc. v. Eset, LLC,*
2019 WL 424606 (S.D. Cal. Feb. 4, 2019) ................................................................18

20

21

*Greatbatch Ltd. v. AVX Corp.,*
179 F. Supp. 3d 370 (D. Del. 2016) ..........................................................................17

22

23

*Hewlett v. Davis,*
844 F.2d 109 (3d Cir. 1988).....................................................................................17

24

*Holder v. Gienapp,*
2007 WL 1560342 (D.N.H. May 23, 2007) ...............................................................21

25

26

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992)....................................................................................14

27

28

*King v. GEICO Indem. Co.,*
712 F. App'x 649 (9th Cir. 2017)..............................................................................20

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

0.0  01

- i -

**Page**

*Lauris v. Novartis AG,*
    2016 WL 7178602 (E.D. Cal. Dec. 8, 2016)........................................................16, 17

*Lee v. Lee,*
    2021 WL 4462337 (C.D. Cal. Jan. 29, 2021)...............................................................16

*McKay v. Ingleson,*
    558 F.3d 888 (9th Cir. 2009)......................................................................................13

*Mester v. Walker,*
    675 F. App'x 793 (9th Cir. 2017)................................................................................14

*N. Am. Photon Infotech, Ltd. v. ZoomInfo LLC,*
    2022 WL 4132941 (S.D.N.Y. Sept. 7, 2022)..............................................................21

*Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik,*
    2009 WL 4049396 (C.D. Cal. Nov. 19, 2009)...........................................................18

*Netlist Inc. v. Samsung Elecs. Co., Ltd.,*
    No. 22-cv-293, Dkt. 729 (E.D. Tex. July 16, 2024).............................................15, 16

*Paul v. Pacheco,*
    No. 22-2921, 2023 WL 7153245 (8th Cir. Oct. 31, 2023)...........................................8

*Rodriguez v. IBP, Inc.,*
    243 F.3d 1221 (10th Cir. 2001)..................................................................................17

*Sheridan v. Reinke,*
    611 F. App'x 381 (9th Cir. 2015)................................................................................14

*Swofford v. Eslinger,*
    2009 WL 1025223 (M.D. Fla. Apr. 14, 2009) ...........................................................21

*Wright v. Old Gringo, Inc.,*
    2020 WL 804927 (S.D. Cal. Feb. 18, 2020) ..............................................................18

**Rules**

Fed. R. Civ. P. 16 (b)...................................................................................................14

Fed. R. Civ. P. 37 ...........................................................................................1, 7, 8, 10

Fed. R. Evid. 801...........................................................................................................6

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

0.0  01

- ii -

# I.    INTRODUCTION

At trial, Samsung filed a Rule 37 motion based on Netlist's alleged failure to produce a document (the "Internal Devon Park Email"). Samsung represented to the Court that this document contained an unproduced e-mail from Netlist to Samsung regarding a purchase order, and therefore was within the scope of Netlist's response to RFP No. 3.[1] The Court determined that one of the remedies sought by Samsung—an adverse inference instruction—was an extreme sanction that could be considered, if at all, only after an evidentiary hearing.

Samsung's representation upon which its motion was based was inaccurate. Netlist's counsel confirmed after trial and communicated to Samsung: (i) the portion that Samsung told the Court was an e-mail to Samsung was an internal reference to a recurring calendar notice, (ii) the actual calendar invite sent to Samsung *was* produced, and (iii) the search terms used by Netlist included the Samsung e-mail domains, and thus were sufficient to capture all e-mails within the response to RFP No. 3. In a lengthy post-trial exchange, Samsung never disputed these facts.

Given that the only document at issue was non-responsive, Samsung does not argue in its motion for new trial and JMOL that the Court's failure to give the adverse inference instruction Samsung sought is a basis to disturb the verdict.

These indisputable facts negate Samsung's pending Rule 37 motion—the sole contemplated reason for an evidentiary hearing. Notably, Samsung does not identify anything incomplete about Netlist's disclosure regarding the Internal Devon Park Email and RFP No. 3, or any discovery it needs on those issues.

Instead, Samsung adopts a new tactic, demanding to re-open discovery and hold a much broader evidentiary hearing regarding *all aspects of Netlist's document collection, review, and production throughout the litigation*, including a 30(b)(6)

---

[1] Specifically, Samsung counsel stated, "the first e-mail in the chain is a communication sent by Netlist to Raymond Jiang to Samsung's Neal Knuth." TT at 594:18-21.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

deposition on that topic and access to Netlist's document production in the Eastern District of Texas ("EDTX") case. Samsung's motion is meritless.

Samsung's motion does not even mention its burden to show good cause, much less attempt to meet it. Nor could Samsung show good cause, which requires among other things, diligence during the discovery period. Netlist designated a corporate representative on Netlist's "efforts to collect and respond to Samsung's discovery requests," but Samsung did not ask a single question about this topic.

Samsung's decision to avoid discovery on the collection process was strategic. At the end of discovery, Netlist identified substantial evidence that Samsung spoliated evidence. After Samsung was ordered to produce documents from specific custodians, Samsung revealed that it had been automatically destroying all emails of these custodians and refused to identify what document preservation measures, if any, it implemented. There is objective evidence of spoliation.  Samsung failed to produce responsive emails sent by Netlist to a custodian *during* this lawsuit, evidencing that no proper preservation order was implemented. Samsung avoided the consequences of this misconduct by invoking a provision of the scheduling order that no discovery complaints could be raised after the close of fact discovery. Dkt. 41 § B.1; Dkt. 175 at 1.

Samsung now has changed its mind and asserts, after trial, that Netlist's production was too narrow. Its primary argument is that Netlist's EDTX production contains "highly relevant documents." Mot. at 3:4-6. However, Samsung *expressly refused Netlist's offer for the parties to use their respective EDTX productions at trial*. Netlist proposed on November 27, 2023, "cross-use of fact depositions and documents from the Eastern District of Texas litigations . . . ." Dkt. 343 at 7:8-12. Samsung opposed, arguing that this was "a blatant attempt to circumvent prior discovery orders." *Id.* at 7:9-11, 21:17-19.  After having its counsel in this case make appearances in EDTX to access the EDTX production, Samsung continued to oppose any use of the EDTX discovery. Dkt. 382 at 8 ("Netlist's attempt to expand the

discovery record would—in addition to end running the discovery orders in this case—create unfair prejudice and cause unnecessary delay, as there was no reason to anticipate that discovery in Texas would be used in this case given that discovery in this case was closed.").

Samsung vigorously opposed use of the EDTX production because it revealed another Samsung discovery violation: that Samsung failed to produce supply agreements in this case in violation of a Court order. Samsung was ordered to produce any agreements that "obligate[] it to provide NAND and DRAM products to U.S. customers, excluding Apple." Dkt. 135 at 68:19-22. In response, Samsung produced four agreements with the identities redacted.  In EDTX Samsung produced these same four contracts in unredacted form as well as *22 additional agreements*.

Now that the jury verdict went against Samsung, and Samsung has nothing further to lose, it attempts to reverse position. This conduct is the opposite of the good cause required to re-open discovery, and Samsung's motion should be denied.

## II.    BACKGROUND

### A.    Samsung Sought To Narrowly Limit Discovery and Invoked The Discovery Cut-Off To Block Inquiry Into Its Discovery Violations

Throughout this case, Samsung employed a strategy of seeking to narrowly limit discovery. By mid-July 2021—one month before the fact discovery closed—Samsung had only produced 500 documents. Dkt. 324 at 31:14-21. As part of this strategy, Samsung chose not to pursue broad discovery against Netlist. Samsung served just one set of Requests for Production, shortly before the close of discovery.

Netlist clearly described the scope of production it was making. In response to RFP No. 3, for example, Netlist objected as overly broad and agreed to a more limited scope, specifically: "non-privileged purchase orders and related communications sent by Netlist to Samsung." Ex. 4[2] at 7:8-10. Samsung did not object to any of Netlist's

_____

[2] All exhibits are attached to the Declaration of Michael Harbour ("Harbour Decl.").

narrowing, and did not file any motions to compel.

Netlist also made available a corporate representative on Netlist's "efforts to collect and respond to Samsung's discovery requests." Ex. 2 at 1, Ex. 3 at 8:2. Samsung chose not to ask any questions about this topic. Ex. 5.

The only motions to compel were filed by Netlist, and only at the end of discovery once it was apparent that Samsung would otherwise not produce custodial documents for its witnesses. Judge Spaeth granted Netlist's motions in substantial part. *See, e.g.*, Dkt. 93 at 2 (ordering email production from specified custodians), Dkt. 135 at 68:19-22 ("So the order will be that Samsung will produce a witness and its—a 30(b)(6) witness and its contract[s] that it believes obligates it to provide NAND and DRAM products to U.S. customers, excluding Apple.").

After the Court's order, Samsung made its e-mail production, and Netlist observed that Samsung failed to produce ***any*** e-mails for 12 of the custodians that the Court had ordered Samsung to collect from. Ex. 6 at 11. In response, Samsung revealed for the first time to Netlist that its emails are subject to a two-week automatic destruction policy. *Id.* at 3. There was also objective evidence that Samsung did not implement a hold. In particular, Samsung initially claimed in this case it never received the notices of material breach and termination. Dkt. 22 ¶ 19 (FAC); Dkt. 27 ¶ 19 (Answer to FAC). Netlist's emails providing notice of breach and termination were both sent after initiation of this lawsuit to a custodian from whom Samsung was ordered to produce records. Exs. 7-8. None of these emails were produced. Ex. 26. Netlist sought a discovery hearing, *id.*, but Samsung successfully evaded inquiry into its document retention and collection practices by relying on the close of discovery. Dkt. 175 at 1 ("The pretrial scheduling order provides that '[t]he cut-off for discovery *is not* the date by which discovery requests must be served; it is the date by which all discovery, *including all hearings on any related motions*, must be completed.' (*Id*. § B.1.) Accordingly, the Court STRIKES the request as untimely.").

### B.      At Trial, Netlist Sought To Introduce A Non-Responsive Email For The Sole Purpose of Rehabilitating a Witness On Redirect

At trial, Samsung's counsel cross-examined Netlist witness Devon Park about an email chain (Ex. 1400) relating to a purchase order for eMMCs (a type of NAND memory). Ex. 9. This email chain started with an external communication with Samsung, followed by internal emails debating what end-customer name Netlist could provide because it did not know the end user. The email chain was produced by Netlist during discovery. *Id.* It involved one purchase order from December of 2016, months before Samsung announced it would breach by no longer supplying Netlist with NAND and DRAM on request. TT at 199:15-19 (C. K. Hong testimony); *id.* at 204:25-205:3. Samsung never made any argument during discovery that this had any relevance, and did not use the document at depositions or in motions.

Ex. 1400 was not included in Samsung's original exhibit list filed with the Court. Dkt. 470-1 at 35-56. Samsung first included it on an amended exhibit list served (but not filed) on March 21, 2024, Ex. 10, five days before the original scheduled trial date (Dkt. 390 at 10). After Samsung added this exhibit, Netlist's counsel asked Mr. Park whether he had any recollection of it. Harbour Decl. ¶ 28. Mr. Park recalled that Netlist was unable to identify an end customer because they were selling to a distributor. *Id.* ¶ 29. He also recalled a conversation with Neal Knuth, Samsung's regional sales manager, around December of 2016 in which Mr. Knuth told Netlist to simply provide him with any name. *Id.* On or around April 19, 2024, Mr. Park found his colleague, Raymond Jiang's, notes from this conversation. Ex. 11 (the "Internal Devon Park Email").

> 3.  8GB and 16GB eMMC - PO on hold until we provide a name. He needs it to make a case to get support.
>      a.  Told him Plexus as the CM and we don't have much info as deal was done from the top
>      b.  He doesn't care who the end customer is, but need to provide one or few Chinese customers and so he can put a story in

Netlist did not produce the document because it was not within the agreed scope of production, discovery was closed—indeed, by this point the Court had ruled in favor of Samsung that the evidentiary record was closed (Dkt. 391 at 12:22-16:22) ("[D]iscovery closed, and that's the world of evidence that can be submitted into the trial.")—and Netlist did not intend to use it to prove its case.  The only potential use was to rehabilitate Mr. Park pursuant to Federal Rule of Evidence 801 if Samsung attempted to use Ex. 1400 misleadingly to attack Mr. Park's honesty. Fed. R. Evid. 801(d)(ii) (statements used "to rehabilitate the declarant's credibility as a witness when attacked on another ground" are not hearsay).

That scenario occurred, with Samsung's counsel accusing Mr. Park of making false statements. TT at 479:6-7 ("Mr. Park, do you remember any instances in which you personally made false statements to Samsung?"). On re-direct, Netlist thus sought to introduce the document, which corroborated that Mr. Park was simply doing exactly as Samsung asked.

Netlist's counsel was upfront about the fact that the document was not on Netlist's exhibit list, and confirmed it was not produced. TT at 502:17-19 ("MR. HARBOUR: It's IX13. ***This is not in the exhibit list***, but I'm reintroducing it for purposes of rehabilitating the witness."); *id.* at 504:4 (at sidebar: "MR. HARBOUR: It was ***not produced, no***.") (emphasis added). The Court excluded the document and ordered counsel for Netlist to investigate why this document was not included in Netlist's production by the following day. *Id.* at 504:14-16 ("And so I would ask counsel to go back, dig into that, and let me know tomorrow why this wasn't produced.").

### C.    Netlist Investigates Overnight And Samsung Requests Sanctions

Netlist's trial counsel, who first appeared just before the close of fact discovery and did not participate in document collection or production, investigated that evening as the Court requested, including speaking with Netlist's prior counsel, Gibson Dunn. Harbour Decl. ¶ 31.  The overnight investigation found:

First, the document was not responsive to any document request to which Netlist agreed to respond. Samsung served a single set of Requests for Production. The only potentially relevant Request was RFP No. 3, which sought "All DOCUMENTS AND COMMUNICATIONS RELATING TO purchase orders sent by YOU to SAMSUNG." Ex. 4 at 6:18-19. Netlist, however, objected to this request as overly broad, and agreed to a more limited scope, specifically: "non-privileged purchase orders and related *communications sent by Netlist to Samsung*." *Id.* at 7:8-10 (emphasis added). The Internal Devon Park Email was a wholly internal email between Netlist employees. Harbour Decl. ¶ 33; Ex. 11.

Second, a third-party vendor had conducted a broad collection of documents from custodians at Netlist and ran search terms to create a review set for Gibson Dunn, and the review set did not contain the Devon Park Email. Harbour Decl. ¶ 31.

The next morning, Samsung moved for sanctions under Rule 37 based on the document. Dkt. 544. Samsung sought three sanctions: (1) that Mr. Park's testimony regarding the Internal Devon Park Email be stricken, (2) that the Court instruct the jury to disregard it, and (3) that the Court give a further adverse instruction that Netlist had withheld documents during discovery that may have harmed its case. *Id.* at 3.

The threshold issue on a Rule 37 motion is whether the disputed document was required to be produced. If not, the inquiry ends. Here, Samsung argued to the Court that the document fell within Netlist's response to RFP 3 because, according to Samsung's counsel, one of the emails within the chain was sent to a Samsung employee:

> It's an e-mail chain. That is the document. And if you -- if you look, the document -- the first e-mail in the chain is a communication sent by Netlist to Raymond Jiang to Samsung's Neal Knuth. So that is a communication by Netlist to Samsung.

TT at 594:12-21. As discussed in Section II.D, this statement was inaccurate.

Inexplicably, Samsung's brief states: "Netlist's counsel does not dispute that this document was responsive to Samsung's discovery requests and should have been

produced in the case." Mot. at 1. Netlist was clear throughout the proceedings on Samsung's Rule 37 motion that the document was not responsive. *See, e.g.*, TT at 593:25-594:4 ("THE COURT: Right but I think from the Court's standpoint, I think it matters whether it was responsive to a discovery request and not produced or not. MR. SHEASBY: The answer is I don't think it was responsive."); Dkt. 543 at 2 ("[T]he document was not responsive to any discovery request to which Netlist agreed to respond"). Nonetheless, Netlist was also conscious that trial counsel was not involved in discovery, which occurred years earlier, and noted "we have only had 24 hours to sort of investigate this[.]" TT at 606:9-10, 17-19. Therefore, in an abundance of caution, Netlist agreed to the curative instruction and not to discuss the email—mooting all but the adverse inference part of Samsung's motion. *Id.* at 602:10-22, 608:7-23.

If there was any question of the Court granting the adverse inference instruction, the Federal Rules give Netlist the right to be heard (i.e., an evidentiary hearing). Fed. R. Civ. P. 37(c)(1). The Court therefore did not give the adverse inference instruction, noting that Samsung could request to proceed with the evidentiary hearing after trial if warranted. TT at 806:9-807:1.

Samsung has not proceeded with a request for evidentiary hearing on the Rule 37 motion, which was solely addressed to the Internal Devon Park Email and RFP No. 3. Samsung's present motion does not identify any allegedly open issue specific to the Internal Devon Park Email or RFP No. 3. Notably, Samsung filed its motions for new trial and JMOL, and does not in either motion argue that the Court should have given the adverse inference instruction , or that failure to give such an instruction is a basis for new trial or JMOL. *See, e.g.*, *Crowley v. Epicept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018) ("Challenges to jury instructions may be waived" when a party "fails to make a timely assertion of [the] right" to an instruction); *Paul v. Pacheco*, No. 22-2921, 2023 WL 7153245, at *1 (8th Cir. Oct. 31, 2023) (objection to late produced evidence and request for adverse instruction waived where party failed "to

present the issue in a motion for new trial").

**D.    Post-Trial Investigation Confirms The Document Was Not Responsive**

As noted above, Samsung had represented that "the first e-mail in the chain is a communication sent by Netlist to Raymond Jiang to Samsung's Neal Knuth": TT at 595:18-21; Ex. 11 at 1-2. Netlist's post-trial investigation confirmed that this was incorrect:

-----Original Appointment-----
From: Raymond Jiang
Sent: Tuesday, September 20, 2016 11:55 AM
To: Paik Ki Hong; Devon Park; Neal Knuth

Subject: Weekly Market Update
When: Monday, December 05, 2016 4:00 PM-4:30 PM (UTC-08:00) Pacific Time (US & Canada).
Where: Call 303-928-2617 Bridge # 1750463

Please dial in 303-928-2617 Bridge # 1750463

Agenda:

• Market update
• Backlog Review
• Forecast Review

- No portion of the Devon Park Internal Email was ever sent to Samsung. Harbour Decl. ¶ 33.

- The first part of the chain, on which Samsung relied, is an internally generated reference to a recurring calendar notice, not an email. There is no email address to Neil Knuth behind his name and the reminder was not sent to him. *Id.*

- The calendar invite itself, which *was* sent to Samsung's Neal Knuth, *was* included in Netlist's production. *Id.* ¶ 34; Ex. 12 (calendar invite).

- Moreover, the search by prior counsel for responsive documents included application of search terms even broader than Netlist's trial counsel had understood based on its mid-trial overnight investigation.  To comply with RFP 3, prior counsel ran searches for Samsung.com or Samsung.co as to/from/cc/bcc, inclusion of those domains in the text of the message body

or any attachments, and all family members associated with the documents containing those keywords. This was more than sufficient to capture documents within the scope Netlist agreed to produce in response to RFP 3, i.e., "communications sent by Netlist to Samsung" regarding purchase orders. Harbour Decl. ¶ 32. .

Netlist expressly communicated these facts to Samsung post-trial. *E.g.*, Ex. 1 at 6 ("Contrary to your representation to the Court, the reference to Neil Knuth at the bottom of the document in question was not part of an email that ever went to Samsung."); *id* at 3 ("The search term that would capture the superset of documents within the agreed scope of RFP 3 production was to/from/cc/bcc either of Samsung.com or Samsung.co, and inclusion of those domains in the text of the message body or any attachment, i.e., in the text of any member of a document family. As a result the [Internal Devon Park Email] was not in the review database. As previously noted, the document at issue is not within the scope of documents that Netlist agreed to produce.").

**E.     Samsung Changes Tactics Again, Seeking To Re-Open Discovery To Probe The Entire Document Collection**

Faced with the fact that the Internal Devon Park Email was not responsive and thus the Rule 37 motion cannot support any further relief, Samsung essentially ignores it. Samsung does not dispute that its representation to the Court that the document includes an external email to Samsung was incorrect.

Instead, Samsung has filed a *different* motion seeking to re-open discovery and conduct an evidentiary hearing to fish for *different* supposed discovery insufficiencies. Samsung argues that documents produced by Netlist in the EDTX litigation warrant re-opening discovery in this case. Mot. At 12-16. This has no basis. These documents, exhibits to depositions from Netlist's ITC litigation with SK Hynix in 2017, were produced in EDTX because Samsung in that action specifically requested the SK Hynix deposition transcripts and exhibits. Ex. 13. Samsung made

no such request here even though Samsung questioned Netlist's CEO about the SK Hynix ITC case during his deposition. Ex. 14 at 193-94.

Moreover, Samsung's assertion that Netlist "withheld" the EDTX document production has no merit. Netlist proposed cross-use of the parties' EDTX productions in this case, and Samsung refused, after having full access to the productions. Multiple Samsung CDCA counsel of record appeared in the EDTX case on December 15, 2023. Exs. 15-17. The SK Hynix ITC documents were produced on January 8, 2024. Harbour Decl. ¶ 36. Another Samsung CDCA counsel appeared shortly after the production.  These documents were not buried in any way. The entire production consists solely of exhibits to depositions of Netlist's executives in the ITC proceeding. *Id.*

Netlist asked Samsung when it became aware of the EDTX documents, and Samsung refused to give a straight answer. Ex. 18 at 1-13. In this motion, all Samsung could represent was that O'Melveny "did not learn the content ***of all*** of these unproduced documents . . . until after the CDCA trial . . . ," Mot. at 13, n.13 (emphasis added), meaning it was aware of at least some before trial. In a subsequent filing in EDTX, Samsung walked back even this carefully hedged statement, asserting only "***[l]ead counsel*** . . . did not learn the content of these unproduced documents . . . until after the CDCA trial." Ex. 19, n.3 (emphasis added). This reflects that eventual lead counsel Darin Snyder, was not involved at the time. Samsung trial counsel Amy Lucas and Anton Metlitsky both appeared in the EDTX case in December 2023, before the production at issue, and Marc Pensabene appeared just after, on February 16, 2024. None had participated in the EDTX case, nor has Samsung identified any reason for their appearance just before and after the document production, other than to review EDTX documents. Moreover, Samsung was assisted in the CDCA trial by Michael McKeon from Fish & Richardson, who was Samsung's lead day-to-day partner in EDTX. He sat in court throughout the CDCA trial, and was fully aware of the ITC exhibit production given that he examined Mr. Hong in EDTX on the ITC

proceedings. Harbour Decl. ¶ 37.

If Samsung believed the documents produced in EDTX were relevant, it had every opportunity to use them at trial. Netlist proposed "cross-use of fact depositions and documents from the Eastern District of Texas litigations . . . ." Dkt. 343 at 7:8-12. Samsung declined, insisting that any use of production from EDTX was unnecessary and procedurally improper. It took this position both before and *after* the EDTX production of ITC exhibits. *Id.* at 7:9-11, 21:17-19; Dkt. 382 at 8 ("Netlist's attempt to expand the discovery record would—in addition to end running the discovery orders in this case—create unfair prejudice and cause unnecessary delay, as there was no reason to anticipate that discovery in Texas would be used in this case given that discovery in this case was closed."). To the extent Samsung claims the EDTX production shows there was a defect in the CDCA collection, this information was available before the CDCA trial.

Samsung had strategic reasons not to raise the EDTX productions in this Court. Samsung's EDTX production shows that Samsung produced numerous supply agreements in EDTX that it withheld in violation of this Court's orders. The Court in this case held:

> So the order will be that Samsung will produce a witness and its—a 30(b)(6) witness and its contract[s] that it believes obligates it to provide NAND and DRAM products to U.S. customers, excluding Apple.

Dkt. 135 at 68:19-22.

In response to this order, Samsung produced only four documents, all redacted to hide the signatories. Exs. 20-23. The EDTX production includes these four and 22 additional supply contracts directly responsive to the CDCA discovery order. Harbour Decl. ¶ 38. Unlike in the CDCA production, none of the agreements were redacted. *Id.*

By rejecting Netlist's offer that the parties use the EDTX productions in this

case, Samsung sought to shield itself from a contempt finding,[3] and also affirmatively leverage the absence of these documents to misrepresent to the jury that Samsung does not enter into broad supply agreements:

> How reasonable would it be to have a contract that is as broad as Netlist suggests? Mr. Ji testified that in his 30 years of experience, Samsung has never entered into ***an agreement like this***.

TT at 861:23-862:2 (emphasis added). The agreements Samsung produced in EDTX but withheld in CDCA directly contradict this assertion. This was also why Samsung was so intent on keeping out of the CDCA case the testimony of its corporate representative from East Texas who knew about the 22 agreements and testified that the Netlist supply agreement is of a standard type that requires best efforts.  Dkt. 417 at 1, 5..   Netlist's review of Samsung's EDTX production also revealed other documents not produced in CDCA within the scope of discovery Samsung was ordered to produce. *See* Harbour Decl. ¶ 39.

## III.   SAMSUNG HAS NOT SHOWN GOOD CAUSE FOR REOPENING DISCOVERY AND SEEKING AN EVIDENTIARY HEARING

Samsung does not even mention, much less attempt to meet, its burden to satisfy the good cause standard for re-opening discovery. In the Ninth Circuit, a movant must present the required basis for a motion in its opening papers or "it has been waived." *See, e.g.*, *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) . Nor could Samsung meet its burden. Samsung's conduct in refusing during discovery and before trial exactly what it now seeks, to shield itself from sanctions and harmful documents, then reversing course in an attempt to fish for "missing" documents post-trial, is the antithesis of good cause.

---

[3] Netlist does not believe it is appropriate to re-open discovery, nor for the parties to use the EDTX productions to seek post-trial sanctions. If the Court disagrees, however, that should apply to both sides. In that instance, Netlist will pursue contempt proceedings against Samsung, including the instances specifically identified herein.

## A. The Good Cause and Excusable Neglect Standard

In the Ninth Circuit, a party seeking to modify the scheduling order to re-open discovery bears the burden to show good cause, including that it could not have timely obtained the requested discovery. Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. . . . If th[e moving] party was not diligent, the inquiry should end."); *Sheridan v. Reinke*, 611 F. App'x 381, 384 (9th Cir. 2015) (*Johnson* standard applies to motions to reopen discovery); *Mester v. Walker*, 675 F. App'x 793 (9th Cir. 2017) (same). When the request is made after a "discovery deadline has passed," the party seeking relief must also demonstrate "excusable neglect." *Centeno v. City of Carlsbad*, 2021 WL 2400226, at *3 (S.D. Cal. June 11, 2021); *Engel v. Cable*, 2019 WL 8889959, at *1 (C.D. Cal. Dec. 13, 2019) (Because moving party did not show that failure to seek discovery "occurred as a result of excusable neglect, the Court will not re-open the discovery deadline.").

Samsung has not even attempted to, and cannot, show it was diligent, or that its failure to seek the discovery it now seeks was excusable neglect. Netlist presented a 30(b)(6) witness on its document collection efforts and Samsung did not ask that witness a single question on the subject. Harbour, Decl. ¶ 6. Nor did it move to compel on the scope of what Netlist agreed to produce, or ask Netlist to use any particular search terms. Samsung expressed no concern about the issues it now raises, which were stated in written responses and apparent on the face of the production. To the contrary, throughout the case until after the verdict, Samsung sought to minimize discovery, requesting few documents from Netlist and producing virtually no documents of its own until ordered to do so, violating the Court's discovery orders, and successfully arguing that discovery had closed so it was too late for Netlist to enforce them.

Samsung's current motion relies almost entirely on its unsupported argument that that the EDTX production contains "scores of highly relevant documents." Mot. at 3:3-6. Netlist disagrees, but in any event the EDTX production cannot possibly constitute good cause because Samsung had the full opportunity to use it, and declined. If Samsung believed that the EDTX production contained relevant documents, then Samsung could and should have agreed to use of the EDTX productions at trial, or brought the issue to the Court before trial. Samsung did not, because Samsung knew that its EDTX production revealed, among other things, Samsung's contempt of discovery orders.

Samsung recognizes that it cannot satisfy the basis for re-opening discovery under controlling Ninth Circuit precedent. As a result, after filing the present motion before this Court, it filed a motion in EDTX seeking an order compelling Netlist to produce the ITC exhibits for use in CDCA post-trial motion practice. Unlike the sealed transcript of a court proceeding in EDTX that Netlist previously sought to use (Dkt. 417 at 1, Dkt. 417-6), which required release by the convening court because Samsung refused to agree to cross-use, the ITC exhibits were available to Samsung before the trial in this case--Netlist had offered to allow the use of the entire EDTX production. Samsung simply chose strategically not to use them. It has candidly admitted why in an EDTX brief: "Samsung was unwilling to grant Netlist carte blanche to use any and all discovery from this case to prove its substantive claims at trial in CDCA[.]" *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, No. 22-cv-293, Dkt. 729 (E.D. Tex. July 16, 2024) at 3. In short, Samsung was unwilling to permit use of the EDTX production because it would harm its case as this production contained documents Samsung was ordered to produce in CDCA but failed to do so.

Samsung's decision not to seek to use the EDTX production was also driven by its legal strategy to argue that early communications and internal communications are irrelevant. Throughout this case including in its post-trial briefing, Samsung claims that communications before preparation of the MOU are irrelevant because the

only thing that "matters is the parties' intent at the time of contracting." Dkt. 597 at 15:15-27. Likewise, Samsung claims in post-trial briefing that internal communications of intent are irrelevant because "unilateral expression[s] of one party's postcontractual subjective understanding of the terms of [an] agreement" are "not probative as an aid to the interpretation of the contract." *Id*. at 17:5-9. Samsung has made these same arguments throughout this dispute. *See, e.g.*, Dkt. 408 at 1:22-24 ("Because New York law precludes consideration of such uncommunicated subjective understandings, such evidence is irrelevant to any issue before the Court . . .").

As one court in this District noted in denying post-trial relief based on alleged discovery violations:

> In conducting discovery, Defendant chose not to take the appropriate courses of action, choosing instead to adopt a particular strategy that it now regrets using. And it is to that strategy that Defendant must now be held. To allow otherwise would give parties an undeserved "second bite of the apple" due to what in hindsight amounts to poor strategic decisions.

*Acacia Rsch. Corp. v. Nat'l Union Fire Ins.*, 2009 WL 10671395, at *6 (C.D. Cal. June 12, 2009).

Moreover, the Federal Rules require proportionality, and only require a party to "conduct a reasonable search when responding to the requests," not "perfection." *Lee v. Lee*, 2021 WL 4462337, at *11 (C.D. Cal. Jan. 29, 2021); *see also Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) ("A litigant does not have to examine every document in its voluminous files to comply with discovery obligations."). The idea that a litigant who loses a jury trial can thereafter hunt around for some perceived missing discovery is completely contrary to the Federal Rules and the law of the Ninth Circuit.

Here, these general principles apply with even greater force given that Samsung invoked the discovery cutoff as a basis to block all inquiry into Samsung's discovery violations. As noted above, when Netlist moved for discovery into

Samsung's document retention policy in 2021, promptly after uncovering evidence that Samsung failed to timely implement a litigation hold, the Court denied Netlist's motion as untimely because the discovery cutoff had passed. Dkt. 175 at 1. The Court similarly denied Netlist any relief relating to Samsung's failure to produce any documents from 12 of the custodians that the Court had previously ordered to collect and produce documents from on this same basis. *Id.* Samsung must be held to the same standard, especially when trial is already complete and, unlike Samsung, Netlist diligently conducted discovery, successfully moved to compel, and then discovered evidence indicating that Samsung had violated the Court's order compelling production —yet still was not able to pursue relief due to the discovery cutoff.

The only cases Samsung cites regarding discovery after trial are from outside the Ninth Circuit and do not address the good cause standard at all. Moreover, the cited cases are readily distinguishable. Each involved discovery served during the discovery period which the Court found necessary to resolve a pending motion. *Hewlett v. Davis*, 844 F.2d 109, 115 (3d Cir. 1988) (discovery relevant to the "resolution of motions still pending before the court"[4]); *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1228 (10th Cir. 2001) (production of social security records within scope of interrogatory served during discovery, party requested that court order production before trial); *Colyer v. City of Chicago, Gildardo Sierra,* 2016 WL 25710, at *2 (N.D. Ill. Jan. 4, 2016) (motion for directed verdict when plaintiff learned mid-trial that defendant intentionally concealed requested discovery, which "hurt [plaintiff's trial presentation] beyond repair."); *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 380 (D. Del. 2016) ("core technical documents" timely requested but produced on eve of trial). Neither circumstance exists here. Instead, Samsung seeks the opposite: to *re-open* discovery to broadly explore issues it chose *not* to explore during the discovery

---

[4] In *Hewlett*, the term "post-trial" appears to be used to distinguish from the time period before and after the liability trial on the federal claims. There is no indication that discovery had formally closed, and the decision notes that state law claims were still also pending.

period, with the stated aim of later filing some sort of *new* motion.

Moreover, any suggestion that CDCA did not appreciate the relevance of the EDTX production—that four separate CDCA lawyers specially appeared in EDTX to access before trial—is both inaccurate and no excuse. It is inaccurate because in EDTX Samsung admitted that only its "lead" counsel did not review the ITC exhibits. Ex. 19, n.3. And if the CDCA lawyers had ignored the production, this is equally fatal. *Wright v. Old Gringo, Inc.*, 2020 WL 804927, at *1 (S.D. Cal. Feb. 18, 2020) (finding that the moving party had failed to show excusable neglect because she "chose not to pursue additional avenues of discovery".); *Davis v. Cal. Dep't of Corr. & Rehab*., 2013 WL 1208965, at *3-5 (N.D. Cal. Mar. 25, 2013) (denying a motion to reopen discovery because of a lack of excusable neglect where the moving parties' counsel "made a deliberate decision" not to take depositions); *Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik*, 2009 WL 4049396, at *4 (C.D. Cal. Nov. 19, 2009) (finding a lack of excusable neglect where the moving party "voluntarily decided not to participate in discovery").

Put simply, Samsung could have sought exactly the discovery it now seeks within the discovery period or before trial, and elected not to do so for a host of strategic reasons. That it failed to do so ends the inquiry. *See Centeno*, 2021 WL 2400226, at *4 (lack of diligence and thus no good cause where discovery "could (and should) have propounded before fact discovery expired"); *Cal. Inst. of Tech. v. Broadcom Ltd.*,  2022 WL 17345911, at *4 (C.D. Cal. Oct. 26, 2022) (decision "to forego further investigation" demonstrates lack of diligence); *id*. at *4 (party cannot argue that issue was unforeseeable when they did not "investigate [it] during the initial discovery period or use available information to realize it was foreseeable"); *Finjan, Inc. v. Eset, LLC*, 2019 WL 424606, at *2 (S.D. Cal. Feb. 4, 2019) (finding lack of diligence where party "intentionally did not pursue this discovery" during the discovery period).

### B.    Samsung's Other Arguments Are Also Untimely and Inaccurate

In addition to its argument based on the EDTX production, Samsung also makes a series of other accusations in its motion. As discussed below, Samsung's accusations contain numerous factual inaccuracies. Moreover, all are topics that, if they were problems at all, Samsung should have addressed during discovery—not held back and attempted to invoke after an unfavorable verdict.

For example, Samsung now contends there is something suspicious about the fact that most documents in the production refer to Samsung. Mot. at 11:3-7. Leaving aside the specious nature of that position given the subject matter of the case (a contract with Samsung and Samsung's breach), this is not new information. Samsung has had Netlist's production since 2021. If Samsung believed that Netlist's production was improper, or merited further exploration, Samsung had full opportunity to meet-and-confer, depose the Netlist 30(b)(6), and file any motions it felt were appropriate.

Samsung also suggests it believed during discovery that Netlist had produced *every* document in the company with the word "Samsung" on it. *Id.* at 2.  Samsung points to no RFP, much less agreed scope of production, that would have called for such a search. Nonetheless, as discussed above and confirmed to Samsung during meet-and-confer, with respect to RFP No. 3, Netlist confirmed that prior counsel searched for documents with the "Samsung.com" and "Samsung.co" in the domains (to, from, cc, bcc), as well as all documents in the same family, during the defined time period, commensurate with its production agreement. Harbour Decl. ¶ 32, Ex. 1 at 3. [5]

Samsung's contention that Netlist should have keyword searched "Neal Knuth, Steven Metz (Netlist's primary sales contacts at Samsung) or Indong Kim," Mot. at

---

[5] During trial, Netlist's counsel stated his understanding that the Internal Devon Park Email did not hit on search terms "JDLA" and "Samsung, while clarifying present counsel was not involved in discovery, and "we have only had 24 hours to sort of investigate this[.]" TT at 606:9-10, 17-19. The Internal Devon Park Email indeed does not contain those terms. However, those terms were not used to limit the response to RFP No. 3. *See* Ex. 4 at 6-7.

11-12, is neither meritorious nor new information. Samsung never requested that Netlist keyword search for these names, Netlist never indicated it was using those search terms, and Samsung does not identify any RFP calling for such a search. Netlist originally proposed search terms to Samsung that included particular names of Netlist employees, but Samsung opposed.  Ex. 24 at 1; Ex. 25 at 1.

Samsung's motion insinuates that Netlist's prior counsel misled Samsung about its collection process, "avoid[ing] ever having to disclose the full list of its own search terms and custodians[.]" Mot. at 5:3-5. Not so. Netlist produced a 30(b)(6) designee on document collection during discovery, and *Samsung chose not to take the deposition*, asking no questions at all on the topic.

Similarly, Samsung cites to parts of statements by Netlist's prior counsel about manual and keyword aspects of its collection efforts, and attempts to show that they are incorrect in view of Netlist's explanation provided during meet-and-confer in advance of this motion. However, Samsung conflates different issues: Netlist addressed during meet-and-confer after trial the Internal Devon Park Email and RFP No. 3. Ex. 1. With respect to the issues relevant thereto, Netlist's prior counsel made clear in the same hearing transcript Samsung cites that Netlist was searching specifically for *emails sent to or from Samsung*. Dkt. 126 at 10:9-17 ("We are collecting and providing all emails with relevant custodians that are sent to or from Samsung, you know, related to this litigation without using -- other than needing to identify that it's an email going to Samsung, but we are not then further curating down those emails to exclude them based on search terms."). Netlist counsel never stated that it was searching for individual employee names, or "SS" or "Neptune," yet Samsung said nothing.

It is well established that a party cannot wait until after discovery closes, then challenge the production it received for the first time. *See, e.g.*, *King v. GEICO Indem. Co.*, 712 F. App'x 649, 652 (9th Cir. 2017) (affirming denial of post-trial discovery where "GEICO did not request the documents or object to what King produced during

discovery."); *Davis v. Davison Hotel Co., LLC*, 2013 WL 3337669, at *2 (C.D. Cal. July 1, 2013) ("Evidentiary sanctions are therefore inappropriate because plaintiff never moved to compel production of the documents"); *N. Am. Photon Infotech, Ltd. v. ZoomInfo LLC*, 2022 WL 4132941, at *10 (S.D.N.Y. Sept. 7, 2022) (denying sanctions where "ZoomInfo never moved to compel"); *Swofford v. Eslinger*, 2009 WL 1025223, at *3 (M.D. Fla. Apr. 14, 2009) ("Plaintiffs did not file a timely motion to compel, which might have served to resolve this issue during the discovery period. Sanctions are not warranted."); *Holder v. Gienapp*, 2007 WL 1560342, at *2 (D.N.H. May 23, 2007) ("Because Holder did not apply for an order to compel discovery, he cannot move for sanctions.").[6]

## IV.    CONCLUSION

Samsung's motion for additional discovery and an evidentiary hearing should be denied.


Dated:  July 19, 2024                    Counsel for Plaintiff

                                         */s/ Jason Sheasby*
                                         _____

                                         Jason Sheasby
                                         Lisa S. Glasser
                                         A. Matthew Ashley
                                         Michael Harbour
                                         **IRELL & MANELLA LLP**
                                         840 Newport Center Drive, Suite 400
                                         Newport Beach, CA 92660

                                         ***Attorneys for Plaintiff Netlist, Inc.***

---

[6] Samsung cites *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402 (9th Cir. 1995), but in that case, after trial, a former associate for the prevailing party's law firm disclosed that the firm intentionally withheld relevant and responsive documents. *Id.* at 1404 n.3. Samsung has not shown that Netlist failed to produce any responsive documents let alone that it intentionally did so.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1.

Dated:  July 19, 2024                                     By: */s/ Jason Sheasby*

Jason Sheasby