1  JASON SHEASBY, SBN 205455
   jsheasby@irell.com
2  LISA GLASSER, SBN 223406
   lglasser@irell,com
3  MICHAEL HARBOUR, SBN 298185
   mharbour@irell.com
4  IRELL & MANELLA LLP
5  1800 Ave. of the Stars
   Los Angeles, CA 90067
6  Telephone: 310.203.7096
   Facsimile:  310.203.7199
7
8  A. MATTHEW ASHLEY, SBN 198235
   mashley@irell.com
9  IRELL & MANELLA LLP
10 840 Newport Center Drive, Suite 400
   Newport Beach, CA 92660
11 Telephone: 949.760.0991
   Facsimile:  949.760.5200
12
13 Attorneys for Plaintiff Netlist Inc.

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17 NETLIST INC., a Delaware                Case No. 8:20-cv-00993-MCS (ADS)
   corporation,
18                                         **NETLIST INC.'S OPPOSITION TO**
                                           **SAMSUNG ELECTRONICS CO.,**
19            Plaintiff,                    **LTD.'S MOTION FOR JUDGMENT**
                                           **AS A MATTER OF LAW**
20      v.                                 **PURSUANT TO FED. R. CIV. P.**
                                           **50(B) OR, IN THE ALTERNATIVE,**
21 SAMSUNG ELECTRONICS CO.,                **NEW TRIAL PURSUANT TO FED.**
   LTD., a Korean corporation,             **R. CIV. P. 59**
22                                         **[REDACTED]**
              Defendant.
23                                         Date:      August 26, 2024
                                           Time:      9:00 am PT
24                                         Location:  Courtroom 7C
                                           Judge:     Hon. Mark C. Scarsi
25
26
27
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

# **TABLE OF CONTENTS**

**Page**

I.   The Record Evidence Is More Than Sufficient To Support
     Netlist's Contract Interpretation ........................................................1

     A.   Evidence Cited By Samsung in its Motion...............................1

     B.   Evidence Presented By Netlist Discussed in
          Samsung's Motion ....................................................................5

     C.   Jury instructions.......................................................................8

II.  New Trial ............................................................................................10

     A.   Clear Weight of the Evidence And Jury Instructions...............10

     B.   Samsung Failed to Apply the Legal Standard
          Governing Juror *Voir Dire* Answers .......................................10

          i.    Samsung Waived Its Argument.......................................12

          ii.   Samsung Fails To Show Any Juror
                Intentionally Lied ..........................................................13

          iii.  Samsung Has Not Shown That the Jurors
                Could Have Been Removed For Cause...........................17

III. Conclusion..........................................................................................20

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*67 Wall St. Co. v. Franklin Nat. Bank*,
   37 N.Y.2d 245, 333 N.E.2d 184 (1975) ................................................................. 9

*ABC Radio Network, Inc. v. Lens Am., Inc.*,
   1999 WL 771360 (S.D.N.Y. Sept. 28, 1999) ...................................................... 8

*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*,
   No. 18 CIV. 3976 (JCM), 2022 WL 4080663 (S.D.N.Y. Sept. 2,
   2022) ...................................................................................................................... 9

*Apple, Inc. v. Samsung Elecs*. Co.,
    2012 WL 6574785 (N.D. Cal. Dec. 17, 2012) .................................................. 12

*Barton Grp., Inc. v. NCR Corp.*,
   796 F. Supp. 2d 473 (S.D.N.Y. 2011), *aff'd*, 476 F. App'x 275 (2d
   Cir. 2012) .............................................................................................................. 9

*Burden v. CSX Transp., Inc.*,
   2011 WL 3793664 (S.D. Ill. Aug. 24, 2011)............................................. 12, 13

*Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*,
   36 F. Supp. 3d 336 (S.D.N.Y. 2014) ................................................................. 1

*Coughlin v. Tailhook Ass'n*,
   112 F.3d 1052 (9th Cir. 1997) ......................................................................... 19

*Dyer v. Calderon*,
   151 F.3d 970 (9th Cir.1998) .............................................................. 11, 13, 14

*Green v. White*,
   232 F.3d 671 (9th Cir. 2000) ........................................................................... 20

*Int'l Multifoods Corp. v. Com. Union Ins. Co*.,
   309 F.3d 76 (2d Cir. 2002) ............................................................................... 9

*Johnson v. Hill*,
   274 F.2d 110 (8th Cir. 1960) ........................................................................... 12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

*Levinson v. Shapiro*,
   238 A.D. 158, 263 N.Y.S. 585 (App. Div.), aff'd, 263 N.Y. 591, 189
   N.E. 713 (1933) ................................................................................ 9

*McDonough Power Equip., Inc. v. Greenwood*,
   464 U.S. 548 (1984) ....................................................................*passim*

*Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*,
   No. 88-CV-819, 1992 WL 265941 (N.D.N.Y. Oct. 2, 1992) ............................... 9

*Owen v. Thermatool Corp.*,
   155 F.3d 137 (2d Cir. 1998) ................................................................ 8

*Pope v. Man-Data, Inc.*,
   209 F.3d 1161 (9th Cir. 2000) ................................................... 14, 17

*Pratcher v. Grounds*,
   2013 WL 5443047 (N.D. Cal. Sept. 30, 2013) .................................... 17

*Price v. Kramer*,
   200 F.3d 1237 (9th Cir. 2000) .............................................................. 16

*Proteus Books Ltd. v. Cherry Lane Music Co.*,
   873 F.2d 502 (2d Cir. 1989) ................................................................ 9

*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ..................... 1

*Selzer v. Fleisher*,
   629 F.2d 809 (2d Cir. 1980) ................................................................ 10

*Smith v. Phillips*,
   455 U.S. 209 (1982) .......................................................................... 19

*Snapp v. United Transportation Union*,
   889 F.3d 1088 (9th Cir. 2018) ............................................................... 6

*Suppa v. Costa Crociere, S.p.A.*,
   2008 WL 3926446 (S.D. Fla. Aug. 26, 2008) ..................................... 16

*Tanner v. United States*,
   483 U.S. 107 (1987) .......................................................................... 10

*Tomhannock, LLC v Roustabout Res., LLC*,
   33 N.Y. 3d 1080 (2019) ................................................................ 1, 8

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

-iii-

*Torres v. First Transit, Inc.*,
    2021 U.S. Dist. LEXIS 144608 (S.D. Fl. 2021)................................ 12, 14

*Torres v. First Transit, Inc.*,
    No. 19-12185, 2022 WL 4482715 (11th Cir. Sept. 27, 2022) ........................... 15

*Townsend v. Allen*,
    2008 WL 4756644 (W.D. Wis. Oct. 29, 2008) ...................................... 12, 15, 20

*U.S. v. Gonzalez*,
    214 F.3d 1109 (9th Cir. 2000) ................................................ 17

*United States v. Brugnara*,
    856 F.3d 1198 (9th Cir. 2017) ................................................ 17

*United States v. Cooper*,
    714 F.3d 873 (5th Cir. 2013) ................................................. 19

*United States v. Edmond*,
    43 F.3d 472 (9th Cir. 1994) .................................................. 16

*United States v. Eubanks*,
    591 F.2d 513 (9th Cir. 1979) ................................................. 20

*United States v. Perkins*,
    748 F.2d 1519 (11th Cir. 1984) ............................................... 20

*United States v. Stewart*,
    317 F. Supp. 2d 432 ......................................................... 16

*United States v. Warner*,
    2006 WL 2583722 (N.D. Ill. Sept. 7, 2006), *aff'd*, 498 F.3d 666 (7th
    Cir. 2007)................................................................... 15

**Rules**

Fed.R.Civ.P. 51(c)(1)........................................................... 8

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

Samsung's motion for JMOL, or in the alternative, a new trial, should be denied.

## I.   The Record Evidence Is More Than Sufficient To Support Netlist's Contract Interpretation

The evidence must be viewed in a light most favorable to Netlist. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135, 120 S. Ct. 2097, 2102, 147 L. Ed. 2d 105 (2000).

### A. Evidence Cited By Samsung in its Motion

***First***, Samsung alleges that "by far the best evidence of the parties' intent at the time of the contract" is the term sheets and memorandum of understanding ("MOU"). JMOL at 1:9-16. The JDLA itself is the best evidence. N.Y. Pattern Jury Instr.--Civil 4:1 ("the best evidence of the parties' intent is what they express in their written contract.") (citing *Tomhannock, LLC v Roustabout Res., LLC*, 33 N.Y. 3d 1080, (2019)). Even the lone case Samsung cites, which involved an ambiguous contract, expressly states, "the 'best evidence' of the parties' intent [is] the parties' words as memorialized in the agreement[.]" *Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 341-42 (S.D.N.Y. 2014).

Moreover, the MOU supports Netlist's interpretation. It states, "Samsung will provide competitive pricing … for supply of Samsung NAND and DRAM products," without limiting the obligation to the JDP. Ex. 1 [Ex. 1111B.1-2]. Further, it is in a section that includes other terms not limited to the JDP, such as a "no solicitation" clause. Ex. 1 [Ex. 1111B.2]. The term sheets likewise support Netlist's interpretation by making no reference to the JDP while describing Samsung's supply obligation. Ex. 2, 3 [Exs. 1129A, 1037A].

Even if any aspect of the MOU or term sheets supported Samsung's interpretation, the MOU states it is not final [*e.g.,* Ex. 1 [Ex. 1111B.1]; TT 542:9-22 [Whitley]] while the executed JDLA states that it "supersedes all prior proposals" [Ex. 4 [JX-47.14]; TT 542:23-543:11 [Whitley]].

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

-1-

Samsung points to self-serving testimony of Samsung executive Hyun Ki Ji alleging Netlist never proposed "changing the supply agreement" to go beyond the JDP. JMOL at 6:21-23.[1]  Samsung ignores that Samsung sent a first draft of the JDLA to Netlist stating, "this Agreement will not…require Samsung to supply any products to Netlist." Ex. 5 [Ex. 1085A] at 5; TT 521:16-525:17 [Whitley].  Netlist promptly rejected Samsung's proposal. TT 522:6-13 [Whitley].

Further, in the JDLA, the Supply Clause is in an independent section (§ 6, "Supply of Components") separate from the section Samsung describes as relating to the JDP (§ 5 "Technology Standardization and Productization"); TT 521:11-15, 525:18-526:3 [Whitley] (placing the Supply Clause separate from the section relating to the JDP made sense to Netlist).

Samsung contends that reference to "raw material" in some term sheets establishes intent to limit supply to the JDP.  First, even if the term "raw materials" were limited to the JDP (it is not), the final JDLA does not use this phrase.  Moreover, "raw materials" is ***not*** limited to materials for the JDP.  TT 355:2-16 [Hong]; 520:2-6 [Whitley].

---

[1] Although because Netlist prevailed any motion is moot, Mr. Ji's trial testimony was objectively false. At his deposition, Mr. Ji disclaimed knowledge of negotiations of the JDLA supply agreement. Moreover, his recollection could not have been refreshed by his own materials, as Samsung destroyed Mr. Ji's emails under an auto-destruction policy and did not produce any email listing Mr. Ji as a custodian despite being ordered to produce his emails. Ex. 6 [Ji Depo.] 53:14-19 ( ███████████████████ : *id.* 65:2-65:14;  *id.* ( ████████████ "): *id.* 36:13-25 ( ████████████ ): *id.* 39:15-24 ( ███ ████████████ ); Ex. 7 (Aug. 13, 2021 email memorializing Samsung's representation "that Samsung has a company-wide two-week document preservation policy").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

***Second***, Samsung contends "statements Netlist made contemporaneously with the JDLA's signing are incompatible with Netlist's interpretation of Section 6.2." JMOL at 7:4-6. However, Samsung ignores that Netlist's 2015 10-K specifically stated that the "JDLA with Samsung contractually commits Samsung to supply NAND flash and DRAM products to us on our request at competitive prices." Ex. 8 [Ex. 481]. *See also* Ex. 9 [8-K filing, Ex. 688].

Samsung also cites to a statement in the "risk disclosures" of the 10-K regarding "long-term" contracts; but Mr. Hong explained this risk disclosure relates to "potential things that can go wrong in the future"; for example, if Samsung were to breach the JDLA (as it did).  TT 259:16-25 [Hong].

***Third***, Samsung contends that course of conduct supports its interpretation. The opposite is true. Following the signing of the JDLA, Samsung initially made what appeared to be good faith efforts to fill Netlist's orders. *See, e.g*., TT 527:13–528:5 [Whitley] 453:17-454:12 [Park]; 200:9-202:9 [Hong]. This included "leading edge parts" that were previously unavailable to Netlist. TT 449:9-15 [Park]. Additionally, after the JDLA Netlist provided Samsung long-term forecasts of product demand. TT 453:17-454:1 [Park]. Further, Samsung instructed its executives to cooperate in ensuring supply to Netlist.  Ex. 10 [Ex. 140] at 1; TT 212:21-213:2 [Hong]; 448:10-14 [Park]; 665:23-666:4 [Kim].

Samsung references a letter signed by the vice president of Samsung's memory business which states: "This letter is to confirm that Netlist is authorized to purchase Samsung Electronics Co., Ltd.'s full line of memory semiconductor products to support Netlist's products and customers. Netlist is a direct customer of Samsung Semiconductor Inc." Ex. 11 [Ex. 135]. Samsung argues "Samsung refused to sign Netlist's draft because Netlist's ability to purchase products from Samsung was unrelated to the JDLA." JMOL at 9:5-6. No evidence supports this argument. To the contrary, the internal Samsung email related to this letter states: "in the letter, it refers to the N company reseller agreement that SSI recently executed, so ***I believe the***

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

1 *wording in the letter is aligned with the details of the agreement executed by our*

2 *company*." Ex. 12 [Ex. 35].  In response, Samsung witness Indong Kim stated in the

3 email that "*it is true that there is a sales agreement for SSD, etc*., so I believe *it*

4 *would be appropriate to proceed as you mentioned*." *Id.*

5        Likewise, Samsung's arguments regarding Netlist's requests for additional

6 allocation or an improved distributor relationship also fail. JMOL at 9:9-17. First,

7 Samsung's argument hinges on the incorrect premise that Netlist believes the Supply

8 Clause is "limitless." JMOL at 9:13-14.  Netlist explained that the Supply Clause is

9 limited by the language in the JDLA and the duty of good faith. TT 479:4-5 [Park]

10 ("–[T]here were limits written right into the agreement itself"); TT 511:12-19

11 [Whitley] ("We were also limited in terms of our requests. The request had to be in

12 good faith."). Second, when Samsung began refusing to perform, Netlist worked with

13 Samsung to attempt to increase allocation and improve the relationship because of the

14 immense resources Netlist and its customers had expended to qualify Samsung

15 products.  TT 451:5-452:7 [Park].  Netlist could not simply switch its customers to

16 other products when Samsung stopped supporting Netlist.  TT 471:18-24 [Park].

17 Third, a distributor relationship is different from and additive over a supply

18 obligation.  TT 447:3-19 [Park].

19        **Finally**, Samsung argues, "Netlist's interpretation would be commercially

20 unreasonable," giving "Netlist absolute front-of-the-line status."  JMOL at 2:1-4.

21 However, Netlist never argued that, and agreed its requests were subject to good faith.

22 TT 511:12-19 [Whitley].

23        Samsung further alleges that a "general supply right never existed at Samsung,

24 and there was no evidence such an agreement ever existed in the industry."  JMOL at

25 2:4-6. But the evidence established that sophisticated industry companies routinely

26 exchange patent rights for supply, consistent with the JDLA. TT [Hong] 237:17-

27 238:5 (trading supply for patent license is typical); 242:21-243:2 [Hong] (Samsung's

28

President, who was involved in JDLA negotiations, was aware of industry practices to exchange supply for patent licenses).

Finally, Samsung alleges that "the actual supply agreements of both Netlist and Samsung contain basic features absent from the JDLA, including typically the word 'supply' in the title and/or recitals." JMOL at 10:20-23. First, none of the agreements Samsung introduced include a patent license like the JDLA, so any comparison is incomplete. TT 755:10-19 [Metz]. Second, there was no evidence that any term absent from the JDLA is required; rather, Samsung's witness discussed only what is allegedly "typical," and ultimately conceded that in a supply agreement one way "someone could do it is exactly what Netlist negotiated for with Samsung, which was that the request would be made and honored at a competitive price." TT 756:13-757:19 [Metz].

## B. Evidence Presented By Netlist Discussed in Samsung's Motion

*First*, Samsung's argument that Netlist relied only on the language of the Supply Clause, JMOL at 1:15-16, is incorrect. Consistent with Netlist's position, the Ninth Circuit found that "the plain language of § 6.2 favors Netlist's interpretation: that Samsung must fulfill all NAND and DRAM orders by Netlist for whatever purpose" and this clause is "reasonably susceptible" to Netlist's interpretation. *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *1 (9th Cir. Oct. 17, 2023).

However, the overall structure of the JDLA also supports Netlist's interpretation: the Supply Clause is in its own section (§ 6, "Supply of Components") independent from the section Samsung identified as relating to the JDP (§ 5 "Technology Standardization and Productization"). Ex. 4 [Ex. 47] at 6; TT 521:11-15, 525:18-526:3 [Whitley].

Further, the parties knew how to limit clauses of the JDLA when they wanted to do so. For example, § 6.1 of the JDLA requires that "Netlist will provide Samsung any NVDIMM-P controller on Samsung's request." Ex. 4 [Ex. 47] at 6. The difference in language between § 6.1, which is expressly limited to "NVDIMM-P,"

and § 6.2, which does not mention "NVDIMM-P" or the JDP, further supports that § 6.2 is not limited to the JDP. *Netlist*, 2023 WL 6820683 at *4 ("Netlist's view is that because § 6.1 explicitly links Netlist's supply obligation to the JDP, while § 6.2 does not, that omission must be viewed as intentional. That is one plausible reading.").

*Second*, Samsung alleges that Mr. Hong's testimony supporting Netlist's construction contradicted prior 30(b)(6) testimony. JMOL at 5:14-16, 15:5-13. However, consistent with his trial testimony, Mr. Hong testified at deposition that "raw materials" is *not* limited to the JDP.  Ex. 13 [Hong Dep. Tr.] (where term sheet Ex. 14 [Ex. 76] states: "Raw Materials: Samsung will supply NAND and DRAM to Netlist on mutually agreed terms," Mr. Hong testifying: "Q In this draft, is that limited there in any way to NVDIMM-P? A No."). Second, as the lone case cited by Samsung confirms, "30(b)(6) testimony is not binding in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018).  Samsung's position on JMOL is truly remarkable given that it successfully blocked testimony from its corporate representative in EDTX admitting that the supply obligation in the JDLA was of a standard type entered into by Samsung, the exact opposite of what it argued here.  Dkt. 417 (motion to admit Calandra Dep.) (JDLA supply agreement is similar to other customers and requires best efforts). Netlist respects the Court's ruling that EDTX evidence cannot come in, and does not seek to have the Court weigh or consider the Calandra testimony on JMOL, but the idea that it is *Netlist* who engaged in the sharp practice of having witnesses contradict the previous position of the company is not well taken.

*Third*, Samsung argues that Netlist's complaints to Samsung regarding supply (*e.g.,* Ex. 70 [JX152]; Ex. 71 [JX119]) do not establish a "practical construction" because Samsung did not acquiesce. JMOL at 16:3-17. But Netlist has no need to seek a "practical construction" (where a "doubtful meaning" is read into a contract based on a uniform course of conduct); here the plain meaning supports Netlist, and it is

Samsung that seeks a "doubtful meaning." *See, e.g., Netlist*, 2023 WL 6820683 at *3 ("the plain language of § 6.2 favors Netlist's interpretation"). Rather, Netlist introduced evidence of its complaints to Samsung in response to Samsung's inaccurate argument that Netlist never complained.

*Fourth*, Samsung attempts to sweep its party admissions under the rug. Samsung ignores the numerous Samsung witnesses who admitted the JDLA was not limited to the JDP. For example, Mr. Knuth expressly testified that "the JDLA obligated Samsung to provide Netlist with NAND and DRAM products on request." TT 548:20-549:2 [Knuth]. And it was undisputed that the products Mr. Knuth was supplying Netlist were unrelated to the JDP: there was no joint developed product to place orders for. TT 436:7-9 [Hong]; 728:13-16, 731:5-8 [Kim]; 714:1-5 [Samsung Counsel]. Kenny Han, a Samsung executive who participated in JDLA negotiations, similarly testified the contract was not limited.  TT 437:21-22 [Han] (agreeing that pursuant to the JDLA "Samsung was obligated to provide NAND and DRAM products to Netlist").

*Fifth*, Samsung simply ignores additional evidence supporting Netlist's interpretation. For example, immediately following the signing of the JDLA, Samsung provided Netlist with the contact information for the general manager of the sales team and informed Netlist that he had been informed about the supply agreement. Ex. 10 [Ex. 140]; TT [Hong] 220:2-18.  The email makes no reference to the Supply Clause being limited to the JDP.  Further, it would make no sense for Samsung to introduce Netlist to the sales manager if the Supply Clause were limited to the joint developed product: there was no joint developed product at that time. Further, when Samsung stopped complying with the agreement, Netlist repeatedly told Samsung it was obligated to provide supply, and Samsung never challenged those assertions. *See, e.g.,* Ex. 15 [Ex. 0010] ("We have a JDLA that states Samsung will support Netlist.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

### C. Jury instructions

Samsung complains about two jury instructions. No authority supports that either of these instructions is erroneous, let alone a basis to overturn a verdict. "In reviewing the district court's charge to the jury, [the court of appeals] consider the charge as a whole." *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 (2d Cir. 1998)

Samsung's first objection – to the "best evidence" instruction – fails for multiple reasons. TT 832:14-17 [Jury Instructions] ("The best evidence of the parties' intent is what they express in their written contract"). First, as explained above in § I.a, the law is clear that the language of an agreement is the best evidence of the parties' intent. N.Y. Pattern Jury Instr.--Civil 4:1 ("the best evidence of the parties' intent is what they express in their written contract.") (citing *Tomhannock, LLC v Roustabout Resources*, *LLC*, 33 N.Y. 3d 1080, (2019)). Samsung cites no authority for its argument to the contrary. Notably, extrinsic evidence is admissible to "explain, clarify or elucidate," but cannot vary the terms of the agreement, as the actual terms remain the "best evidence" even for an ambiguous contract. *See, e.g., ABC Radio Network, Inc. v. Lens Am., Inc.*, 1999 WL 771360, at *3 (S.D.N.Y. Sept. 28, 1999).

Second, Samsung waived its objection. At trial, Samsung never argued that the language of the JDLA was not the best evidence; rather, Samsung asked that the instruction expressly state that the entire contract, not only the Supply Clause, was the best evidence. TT 801:25-802:2 ("We just want to clarify, consistent with what we just discussed, including the surrounding language and the contract as a whole"). This Court denied Samsung's objection, explaining that the Court's instruction already made clear to the jury it should look to the contract as a whole. TT 821:5-11, 822:16-22. Samsung's new objection—that the "best evidence" instruction should not have been provided at all—was never made. Fed.R.Civ.P. 51(c)(1) (objection must be made by "stating distinctly the matter objected to and the grounds of the objection").

1    Samsung's second objection, that the jury should have been instructed it "must"
2    consider the extrinsic evidence, JMOL at 11:15-22, fares no better.  The Court's
3    instruction properly recited the standard: that extrinsic evidence "may" be considered.
4    N.Y. Pattern Jury Instr.--Civil 4:1 ("Where a contract is ambiguous, extrinsic
5    evidence ***may*** be considered to determine the parties' intent"); *Alessi Equip., Inc. v.*
6    *Am. Piledriving Equip., Inc.*, No. 18 CIV. 3976 (JCM), 2022 WL 4080663, at *10
7    (S.D.N.Y. Sept. 2, 2022) ("the jury was instructed that they ***could*** consider extrinsic
8    evidence to clarify ambiguous terms"); *Proteus Books Ltd. v. Cherry Lane Music Co*.,
9    873 F.2d 502, 509 (2d Cir. 1989) ("extrinsic evidence … ***may*** be admitted to aid in
10   interpreting ambiguous terms"); *Int'l Multifoods Corp. v. Com. Union Ins. Co*., 309
11   F.3d 76, 83 (2d Cir. 2002) ("If an ambiguity is found, 'the court ***may*** accept any
12   available extrinsic evidence to ascertain the meaning intended by the parties'"); *67*
13   *Wall St. Co. v. Franklin Nat. Bank*, 37 N.Y.2d 245, 248, 333 N.E.2d 184 (1975) ("if
14   several such constructions are possible, the court ***can*** look to the surrounding facts
15   and circumstances to determine the intent of the parties[.]").

16   The Ninth Circuit instructed this Court to "consider in the first instance whether
17   the extrinsic evidence 'creates a genuine issue of material fact' ***as to the provision's***
18   ***meaning***." *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at
19   *2 (9th Cir. Oct. 17, 2023). As the Court explained when Samsung made this
20   argument previously, "the Ninth Circuit is focusing on the summary judgment
21   standard, not necessarily what a jury may or must consider." TT 819:24-820:2
22   [Court].  The language of the Supply Clause itself (along with the rest of the JDLA)
23   is, of course, central to determining the provision's meaning.  *See, e.g., Levinson v.*
24   *Shapiro*, 238 A.D. 158, 160, 263 N.Y.S. 585 (App. Div.), aff'd, 263 N.Y. 591, 189
25   N.E. 713 (1933) ("The intent of the parties … is to be gathered ***from the language***
26   ***used***"); *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 486 (S.D.N.Y. 2011),
27   *aff'd*, 476 F. App'x 275 (2d Cir. 2012) ("[T]he jury was directed ***first to consider the***
28   ***'plain and ordinary meaning of the words used'*** in interpreting the 2003 Contract.");

*see also Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, No. 88-CV-819, 1992 WL 265941, at \*3 (N.D.N.Y. Oct. 2, 1992) ("One of the court's instructions explained that in interpreting the contract, the jury 'may consider ***the terms of the contract itself*** . . . .").

Moreover, the Court made abundantly clear to the jury that the Supply Clause is ambiguous and the jury should look at extrinsic evidence, including the parties' conduct, to discern the parties' intent:

- "***Section 6.2 is ambiguous***[.]" (TT 831:22-25)
- "In interpreting the contract, ***you must decide what the parties' intended at the time they entered into the contract***."  (TT 794:6-11)
- "[I]n … interpreting the agreement, ***you should look at the parties' conduct***[.]" (TT 832:11-13)

Finally, even if Samsung were right on the law (it is not), Samsung has failed to show it suffered any prejudice in light of the instructions the jury was given to look at extrinsic evidence, requiring denial of Samsung's motion. *See, e.g., Selzer v. Fleisher*, 629 F.2d 809, 811 (2d Cir. 1980)

## II.   New Trial

### A. Clear Weight of the Evidence And Jury Instructions

As explained above, Samsung fails to establish that the clear weight of the evidence supports Samsung's construction or the instructions were improper or prejudicial.

### B. Samsung Failed to Apply the Legal Standard Governing Juror *Voir Dire* Answers

Samsung's motion fails to disclose, much less engage, the standard set out by the Supreme Court for seeking a new trial based on *voir dire* answers. "[A] party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then [second] further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*,

464 U.S. 548, 556 (1984). This test is demanding because post-trial allegations of juror bias risk undermining "the important end of finality." *Id; Tanner v. United States*, 483 U.S. 107, 120 (1987) ("Allegations of juror misconduct . . . raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.").

Courts only grant a new trial on this basis under "exceptional circumstances." *McDonough*, 464 U.S. at 556. Samsung's statement that "[b]ias is presumed where a juror 'lies in order to secure a seat on the jury'" significantly misstates the law.  In *Dyer v. Calderon*, 151 F.3d 970 (9th Cir.1998), the primary case on which Samsung relies, a juror failed to disclose that her brother was murdered in a manner similar to how defendant was accused of killing his victims. *Id.* That alone was not enough. Only when she further "lied, and lied repeatedly" both during *voir dire* and upon examination during trial, did "the magnitude of [the juror's] lies and her remarkable display of insouciance-her expressed feeling that only she would decide what matters- . . . add up to that ***rare case where we must presume juror bias***." *Id.* at 981, 984 (emphasis added).

Contrary to Samsung's representations to the Court, it never seriously engaged with Netlist in meet and confer on this issue. Samsung simply represented in an email, "there is ample authority holding that incorrect statements during *voir dire* are the basis for post-trial relief such as a new trial[.]" Ex. 16.  The Supreme Court holds just the opposite. Incorrect statements in *voir dire* are not a basis for a new trial.  There must be intentional falsehoods that would have resulted in for cause exclusion.

Samsung does not come close to satisfying either prong of the *McDonough* test. Samsung's motion focuses primarily on ▮▮▮▮▮▮ failure to raise her hand when the Court asked has "[a]nybody here ever have a lawsuit filed against you" or "[h]as anyone ever filed a lawsuit themselves" or after describing the complex nature of the dispute, have "any of the jurors have ever been involved in a contract dispute."  Dkt. 563 (TT) at 51:16-21. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

-11-

When faced with similar allegations, another district court held that a defendant's motion for a new trial was not only meritless, but borderline frivolous:

> Defendant's strongest argument is that Juror A may have failed to disclose that he had been a defendant in **a significant number of lawsuits, mostly small claims actions**. **_It is certainly plausible that Juror A simply failed to understand that "lawsuits" included small claims actions_** and cases that were dismissed with out being adjudicated. . . . However, even I assume that Juror A answered this question untruthfully, defendant cannot show that a truthful answer would have provided grounds to strike that juror for cause. **If anything, a person who had been sued for money damages so many times would be more likely to be sympathetic for defendant, who was also being sued for money damages. The allegations regarding the jurors are so weak that it is puzzling why defendant chose to include them in his motion.**

*Townsend v. Allen*, 2008 WL 4756644, at *3 (W.D. Wis. Oct. 29, 2008) (emphasis added).

### i.  Samsung Waived Its Argument

The Court should not reach the merits of Samsung's *McDonough* claim because Samsung has waived it. "It is established that failure to object at the time the jury is empaneled operates as a conclusive waiver if the basis of the objection is known **or might have been known or discovered through the exercise of reasonable diligence**." *Apple, Inc. v. Samsung Elecs*. Co., 2012 WL 6574785, at *7–8 (N.D. Cal. Dec. 17, 2012) (quoting *Johnson v. Hill*, 274 F.2d 110, 116 (8th Cir. 1960)) (emphasis in original). Courts accordingly reject juror bias claims where a party could have conducted an investigation before trial concludes, but instead waited until after it received an unfavorable verdict. *Id.* at *7-*8 (waiver investigation performed only after suffering "a very large damages award")*; Torres v. First Transit, Inc.,* 2021 U.S. Dist. LEXIS 144608 (S.D. Fl. 2021) (waiver where "Mr. Esco's Declaration makes it

-12-

abundantly clear that Defendant only sought to investigate the jurors after it received an unsatisfactory verdict"); *Burden v. CSX Transp., Inc*., 2011 WL 3793664, at *9 (S.D. Ill. Aug. 24, 2011) (waiver where "defendant made no efforts to investigate jurors until after the verdict.").

Here, Samsung's declaration admits Samsung waited until "after the trial concluded" to conduct any investigation. Lucas Decl. ¶ 5; *see also* Dkt. 599 ¶ 3 (stating that Samsung's investigation had "had only just begun" by May 28, 2024, two weeks after *voir dire*). Samsung gives no explanation for waiting. The information on which Samsung relies consists of publicly available court records, many of which Netlist was able to uncover in a simple online background check that takes less than 30 minutes. Decl. ¶21. *See Burden*, 2011 WL 3793664, at *9 (waiver where "all the information about Juror Nos. 2 and 9 submitted by defendant was found in public documents, primarily by internet searches."). Moreover, Samsung had present in the courtroom a jury consultant, one of whose primary functions was to investigate the background of jurors.

In another case in which Samsung belatedly alleged juror bias, the Court observed: "[w]hat changed between Samsung's initial decision not to pursue questioning or investigation of Mr. Hogan, and Samsung's later decision to investigate was simple: the jury found against Samsung, and made a very large damages award. This is precisely the situation that courts have consistently found constitutes a waiver of the juror misconduct claim." *Samsung Elecs. Co*., 2012 WL 6574785, at *10.

### ii. Samsung Fails To Show Any Juror Intentionally Lied

Samsung's argument fails the first prong of *McDonough* because it has not demonstrated that any juror intentionally lied. *McDonough*, 464 U.S. at 548 ("[A] juror's mistaken, though honest response to a question" is not a basis for a new trial). Incorrect answers are not sufficient. This is because jurors "may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." *Id.* at 555. Samsung's cited case *Dyer* explains that "[w]e must be tolerant, as jurors

may forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment." *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

Samsung must do more than make a "plausible argument" that a juror lied during *voir dire*; it must definitively demonstrate that the juror's statement was deliberately false. *See Pope v. Man-Data, Inc.*, 209 F.3d 1161, 1163–64 (9th Cir. 2000) ("Plausible argumentation and plausible reasoning do not rise to the level of demonstration.") (reversing grant of new trial for juror bias).

Samsung has not met this burden. **First**, Samsung claims that *"four of the 16 jurors (3, 12, 13, and 16) questioned during *voir dire* (three of the eight empaneled— Jurors 3, 12, and 16) failed to disclose prior litigations [.]"* Mot. at 21. The questions to the venire about lawsuits and contract disputes asked if they were "*ever*" involved. But the record indicates that members of the venire misheard the questions. Juror 2 specifically stated that he understood the Court to be asking "never", not "ever." Dkt. 563 (TT) at 61:13-18.  Samsung had every opportunity to ask the Court to re-examine the venire, but chose not to.

Second, Samsung grossly exaggerates the matters



IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

_



Dkt. 597-3 at Exs. 26-27

"It is certainly plausible that [a juror] simply failed to understand that 'lawsuits' included small claims actions." *Townsend*, 2008 WL 4756644, at *3. Indeed, at least one court has noted that legally untrained jurors might not understand what exactly constitutes a "lawsuit," which is the exact terminology the Court used here. *Torres v. First Transit, Inc.*, No. 19-12185, 2022 WL 4482715, at *2 (11th Cir. Sept. 27, 2022) ("At worst, the jurors failed to understand that 'having been sued' meant 'having participated in a lawsuit,' despite the language in the jury questionnaire that defined the word 'lawsuit.'").

(*Best,* Dkt. 597-3 at Exs. 31-32). *See United States v. Warner*, 2006 WL 2583722 at *38 (N.D. Ill. Sept. 7, 2006), *aff'd*, 498 F.3d 666 (7th Cir. 2007) (denying motion for new trial where juror was in "good company in believing that [a]

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

question" about having "been involved in any lawsuit or court proceeding" "was not
asking about divorce actions"); *Suppa v. Costa Crociere, S.p.A.*, 2008 WL 3926446,
at *2 (S.D. Fla. Aug. 26, 2008) (denying motion for new trial juror "didn't realize that
divorce proceedings would be considered a "civil case.").

(4) ████████████████████████████████████
████████████████████████████████████████████████
████████████████  Notably, Samsung did not request that the Court *voir dire* the
venire about criminal proceedings, much less misdemeanors. Dkt. 465 (Samsung's
Proposed *Voir Dire* Questions). *United States v. Stewart*, 317 F. Supp. 2d 432, 437
("The parties in this case had the opportunity to draft [] questions exactly as they
wanted them. They cannot now demand a new trial because a juror failed to place the
broadest possible construction on those questions.")

████████████████████████████████████████████████
████  It is reasonable that a juror might not remember these cases.  *See, e.g., Price
v. Kramer*, 200 F.3d 1237, 1255 (9th Cir. 2000) ("[I]t was understandable that [a juror]
had simply forgotten about" an event "which occurred approximately fourteen years
earlier."); *United States v. Edmond*, 43 F.3d 472, 474 (9th Cir. 1994) (juror's "simple
forgetfulness" regarding a crime that occurred 26 years earlier did not fall "within the
scope of dishonesty as defined by *McDonough*.").

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████  TT at 120:3-23.

Even if Samsung had shown that it is ***possible*** that the jurors knowingly made
false statements during *voir dire*, this is plainly insufficient to satisfy *McDonough*,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

under which even a "plausible" inference that a juror lied does not demonstrate bias sufficient to support for cause removal.  *Pope*, 209 F.3d at 1163-64.

### iii.   Samsung Has Not Shown That the Jurors Could Have Been Removed For Cause

Samsung also has not satisfied *McDonough's* second prong of showing that "a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556.  Samsung entirely ignores ▓▓▓▓▓▓ under this prong, and does not assert that it could have successfully removed ▓▓▓▓▓  Instead, Samsung asserts only that ▓▓▓▓▓▓▓ "deprived Samsung and the Court of an opportunity to explore her litigation history to uncover any actual or implied bias." Mot. at 22. This is plainly insufficient. *See, e.g., United States v. Brugnara*, 856 F.3d 1198, 1211-12 (9th Cir. 2017) ("[T]he record does not show that Brugnara could have validly challenged [a juror] for cause if she had answered truthfully, *a point he effectively concedes by arguing only that an honest response would have prompted further inquiry and may have led to a challenge for cause*"); *see also Pratcher v. Grounds*, 2013 WL 5443047, at \*32 (N.D. Cal. Sept. 30, 2013) ("The most counsel can say is that he would have asked further questions that may have provided a basis for a cause challenge. Under *McDonough*, this is insufficient to support a motion for a new trial."). Samsung's claim fails for this reason alone.

Nor could Samsung have established removal for cause, as none of the matters relate to the complex patent license and supply dispute between Netlist and Samsung. *U.S. v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000), the other case Samsung primarily cites shows exactly why Samsung did not attempt to make out a cause for removal in its motion. "We have found implied bias in cases where the juror in question has had some personal experience that is similar or identical to the fact pattern at issue in the trial or where the juror is aware of highly prejudicial information about the defendant." In that case the juror, Camacho, was on a criminal jury involving cocaine trafficking. The Ninth Circuit emphasized that "all within

approximately five years of sitting on the jury" she had married, had a child with, and divorced an individual involved in cocaine trafficking and this trafficking was the basis for the dissolution of her marriage.  Even that was not enough to justify for cause exclusion based on implied bias.  Samsung quotes the language from the opinion that "doubts regarding bias must be resolved against the juror" but this statement was made in the context of the fact that Camacho "[was] unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances[.]".

TT at 42:5-43:4; 48:16-50:5.

Objective evidence that past involvement with contract disputes is not a proper for cause basis to strike comes from the fact that

TT at 51:2-15.  In *none* of those instances did Samsung raise a for cause challenge.  TT at 126:16-18.



1 ██████████████████████████████████████████████████

2 ████████████

3      In *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1062 (9th Cir. 1997) the Ninth

4 Circuit declined to order a new trial when a juror dishonestly answered *voir dire*

5 questions hiding that he had been convicted of misdemeanors involving drug

6 possession, subject to domestic violence restraining order and had filed civil

7 proceedings involving assault. The case at issue involved the Tailhook convention

8 where female officers were assaulted by intoxicated aviators. *Id.* at 1054-55. The

9 Court found no juror bias sufficient to order a new trial, noting for example that the

10 juror's prior litigation involved facts that were "significantly different from the facts

11 underlying this dispute" even though the juror's litigations involved assault as well.

12 *Id.* at 1062. *See also Smith v. Phillips*, 455 U.S. 209, 212, 220 (1982) (no basis for a

13 new trial when juror applied for a job with the district attorneys' office prosecuting

14 the case during the trial).

15     ██ █ █ █ █ █ █ █ █ ██ █

16 ████████████████████████████████████████████████

17 ████████████████████████ Mot. 21:17-20. Once again,

18 Samsung does not argue it would have been a basis for a removal for cause, nor could

19 it. Two of the three witnesses that Netlist called live at trial, including Netlist's CEO,

20 are of Korean descent. Netlist's CEO testified that he "was born in Seoul, Korea," TT

21 at 206:16, and Netlist's other employee witness, Devon Park, *shares the same last*

22 *name as the plaintiff in the landlord/tenant dispute*. Three other Netlist witnesses

23 called at trial (Paik Ki Hong, Gail Sasaki, and Steven Yu) were also of Asian descent.

24 *United States v. Cooper*, 714 F.3d 873, 878-79 (5th Cir. 2013) (affirming district

25 court's decision denying to strike juror for cause because he had been the victim of a

26 crime by individuals who were the same race as the Defendant).

27     Moreover, Samsung neglects to mention that ████████████████████

28 ████████████████████████████████████████████████

1   ████████████████ Decl. ¶¶ 22-38. "If anything, a person who had been

2   sued…so many times would be more likely to be sympathetic for defendant."

3   *Townsend*, 2008 WL 4756644, at *3.

4       Samsung's other cases confirm that it has not met the high bar for a new trial.

5   In *Green v. White*, 232 F.3d 671, 677 (9th Cir. 2000), the jury foreperson in a criminal

6   trial hid the fact that he had been convicted of a felony and spent six months in prison.

7   This, however, was not sufficient to vacate the trial. Instead, the Ninth Circuit required

8   evidence of "pattern of lies" in subsequent examination of the juror after he was seated

9   and troubling behavior during trial including threats against the defendant. *Id.*

10      In *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) the Ninth

11  Circuit held that the concealed information been revealed, the "court undoubtedly

12  would have excused him from serving on the jury" for cause.  His two sons were in

13  prison for felonies committed to obtain heroin, and the case was about conspiracy to

14  distribute heroin.  *Id.*

15      In *United States v. Perkins,* 748 F.2d 1519, 1532-1533 (11th Cir. 1984), the

16  juror hid the fact that he personally knew the defendant, and that the juror was a

17  defendant in a six-year long case alleging "misapplication of funds," in particular

18  "misappropriating union health and welfare funds" at the union at which he was an

19  administrator, while the case at bar involved misappropriating funds from the bank

20  at which the defendant work.  It was not simply lying in *voir dire*.  When the juror

21  was examined after he had been seated he continued to lie.

### III.   <u>Conclusion</u>

    For the foregoing reasons, Samsung's motion should be denied.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Dated:  July 19, 2024                Respectfully submitted,

                                     IRELL & MANELLA LLP


                                     By: */s/ Jason Sheasby*
                                         Jason Sheasby


## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 6,930 words, which complies with the word limit of L.R. 11-6.1.


Dated: July 19, 2024                 By: */s/ Jason Sheasby*
                                         Jason Sheasby

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

-21-