1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
NETLIST INC.,                          Case No. 8:20-cv-00993-MCS-ADS
11
                    Plaintiff,          **ORDER RE: POST-TRIAL**
12                                       **MOTIONS (ECF NOS. 589, 593, 596–**
              v.                         **97, 618, 623, 625, 630)**
13
14
SAMSUNG ELECTRONICS CO.,
15  LTD.,
16
                    Defendant.
17
18
19
20
21
22
23
24
25
26
27
28

After a second jury trial in this contract case, the parties filed several motions, which are fully briefed. Plaintiff Netlist Inc. filed a motion for entry of judgment under Federal Rule of Civil Procedure 58. (Netlist Mot. for J., ECF No. 593; Netlist Mot. for J. Opp'n, ECF No. 600; Netlist Mot. for J. Reply, ECF No. 615.) Defendant Samsung Electronics Co., Ltd., filed a motion for an evidentiary hearing and limited discovery concerning Netlist's purported failure to comply with its discovery obligations. (Samsung Mot. for Disc., ECF No. 589; Samsung Mot. for Disc. Opp'n, ECF No. 605; Samsung Mot. for Disc. Reply, ECF No. 610.) Samsung also moves for judgment in its favor as a matter of law and for a new trial. (Samsung Mot. for J., ECF No. 596; Samsung Mot. for J. Opp'n, ECF No. 606; Samsung Mot. for J. Reply, ECF No. 611.)[1] Finally, Netlist moves to strike assertions made in Samsung's replies in support of its motions. (Netlist Mot. to Strike, ECF No. 625; Netlist Mot. to Strike Opp'n, ECF No. 629.) The Court heard oral argument on part of Samsung's motion for a new trial on August 26, 2024. (Mins., ECF No. 633.)

## I.    BACKGROUND

As recounted on numerous occasions,

> what remains of this case is a straightforward contract dispute. The parties entered a Joint Development and License Agreement ("JDLA") in 2015 that obliges Samsung to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (i.e., among customers purchasing similar volumes of similar products)." (JDLA § 6.2, ECF No. 144-1.) Beginning in 2017, Samsung declined to fulfill all of Netlist's forecasts, requests, and orders for

---

[1] Where appropriate, the Court cites public-facing redacted versions of the motion materials.

1         NAND and DRAM products, putting some on backlog and
2         rejecting others. In 2020, Netlist sent correspondence to
3         Samsung attempting to terminate the JDLA, in part based on
4         Samsung's purported material breach of the NAND and
5         DRAM product–supply provision. Netlist claims breach of
6         contract and seeks a declaration that it terminated the JDLA,
7         ceasing Samsung's licenses and rights thereunder.

8 (Order Re: MILs 2, ECF No. 510.)

9     A jury, tasked with interpreting the JDLA and determining whether Samsung's
10 breach thereof was material, rendered a verdict in favor of Netlist. (Verdict, ECF No.
11 556.)

12

13 **II.    SEALING APPLICATIONS**

14     The Court previously adjudicated several applications to seal documents
15 submitted in connection with the motions but has yet to resolve those filed in connection
16 with the motion to strike. (Appls., ECF Nos. 618, 623, 630.)[2] The Court finds good
17 cause and compelling reasons to seal the information subject to the applications, which
18 presents identifying information about a juror. *See Kamakana v. City & County of*
19 *Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *see also Press-Enter. Co. v. Super. Ct.*
20 *of Cal.*, 464 U.S. 501, 513 (1984). The parties shall file the documents under seal
21 pursuant to Local Rule 79-5.2.2(c). In the interest of judicial economy, the Court has
22 considered the provisionally sealed documents to decide the motion to strike.

23

24 **III.   MOTION TO STRIKE**

25     Netlist moves to strike arguments Samsung made in its reply briefs in support of
26 its motions on the basis that they purportedly introduce new information and arguments

27 _____

28 [2] Netlist's applications at ECF Nos. 618 and 623 seek the same relief.

not presented in the opening briefs. (Netlist Mot. to Strike 1.) Curiously, Netlist uses its motion brief to respond to those arguments. (*E.g.*, *id.* at 1–5.) The Court might strike Netlist's motion to strike as an unauthorized surreply to Samsung's motions that fails to articulate a legal standard under which the motion to strike might be granted.[3] C.D. Cal. Rs. 7-5(a), 7-10. Instead, in the interest of judicial economy, the Court considers Netlist's substantive points addressing the offending reply arguments—and the effective sur-surreply arguments presented in Samsung's brief opposing the motion to strike.

That said, the parties had adequately availed the Court of their robust advocacy before this extra briefing. "The parties are advised to chill." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002). The motion is denied.

## IV.   MOTION FOR EVIDENTIARY HEARING AND LIMITED DISCOVERY

### A.   Legal Standard

"[D]istrict judges have broad discretion to manage discovery and to control the course of litigation . . . ." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011). This discretion extends to post-trial discovery. *See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (finding no "authority indicating that this discretion [over control of discovery] ends upon the completion of the trial and before a notice of appeal has been filed"); *Hewlett v. Davis*, 844 F.2d 109, 115 (3d Cir. 1988)

---

[3] Although courts frequently exercise discretion not to consider arguments raised by a party for the first time in the reply brief, *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-00993-MCS-ADS, 2021 U.S. Dist. LEXIS 245394, at *8 n.2 (C.D. Cal. Aug. 5, 2021) (Scarsi, J.) (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)), the Court is unaware of any rule allowing a party to move to strike a reply brief on that basis, *see, e.g.*, *Tolbert v. Antioch Police Dep't*, No. 22-cv-02026-JSC, 2024 U.S. Dist. LEXIS 208142, at *4 (N.D. Cal. Nov. 15, 2024) (observing that Rule 12(f) does not authorize a motion to strike arguments from a reply brief).

1  ("The court has discretion to order discovery in post-trial matters and may direct that
2  the procedures of the rules be used.").

3      Fact discovery in this case closed years ago. In general, a scheduling order can
4  only be modified "upon a showing of good cause." *Zivkovic v. S. Cal. Edison Co.*, 302
5  F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975
6  F.2d 604, 608 (9th Cir. 1992)); *accord* Fed. R. Civ. P. 16(b)(4).[4] "The . . . schedule may
7  be modified 'if it cannot reasonably be met despite the diligence of the party seeking
8  the extension,'" but "[i]f the party seeking the modification 'was not diligent, the
9  inquiry should end' and the motion to modify should not be granted." *Zivkovic*, 302
10  F.3d at 1087 (quoting *Johnson*, 975 F.2d at 609).

11      For lapsed deadlines, relief from the case schedule requires both good cause and
12  excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). To determine whether neglect is
13  excusable, courts consider (1) the danger of prejudice to the opposing parties; (2) the
14  length of the delay and the potential impact on judicial proceedings; (3) the reason for
15  the delay, including whether it was reasonable control of the party seeking relief; and
16  (4) whether that party acted in good faith. *See Pincay v. Andrews*, 389 F.3d 853, 855
17  (9th Cir. 2004) (en banc) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*
18  *P'ship*, 507 U.S. 380, 395 (1993)).

---

[4] Samsung argues that Rule 16 does not control the motion. (Samsung Mot. for Disc. Reply 5–6.) Neither case it cites for this position is on point; neither considered a motion to reopen discovery toward a Rule 37 inquiry, before or after trial. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 48 n.13 (1991) (noting Rule 16's sanctioning provisions "provide courts with an additional tool by which to control the judicial process" without displacing courts' inherent power); *Aldapa v. Fowler Packing Co. Inc.*, No. 1:15-cv-00420-DAD-SAB, 2021 U.S. Dist. LEXIS 116384, at *24 (E.D. Cal. June 22, 2021) (observing that a Rule 37(c)(1) automatic sanction is not beholden to the good cause standard). Even if the discretion to allow post-trial discovery and an evidentiary hearing toward a Rule 37 sanction derives from the Court's inherent power and not Rule 16, the good cause and excusable neglect standards offer a helpful lodestar for the exercise of that inherent power here, so the Court employs them.

1    **B.    Discussion**

2    During trial, Samsung objected to Netlist's attempt to rehabilitate the testimony

3    of witness Devon Park using a document not set forth in the exhibit list and not produced

4    in discovery. (Tr. 502–04.)[5] The Court sustained the objection and asked Netlist's

5    counsel to provide an explanation why the document was not produced. (*Id.* at 504.)

6    Netlist filed a written response, taking the position that its discovery efforts were

7    diligent and that the document was not responsive to any discovery request to which

8    Netlist agreed to respond. (Resp. to Info. Req., ECF No. 543.) The Court struck Mr.

9    Park's testimony pertaining to the document but, on the suggestion of Netlist's counsel,

10   invited Samsung to file a post-trial motion to air the issue further:

11   With respect to whether we need to sanction Netlist

12   further, I will—I think the appropriate course is the one that

13   Mr. Sheasby indicated earlier, is that if Samsung wants to

14   bring a motion for an evidentiary hearing on this discovery

15   issue, we can do that at some point after the trial, and deal

16   with that.

17   Then depending on that, we could issue a sanction that

18   would require some, you know, vacating of the—whatever

19   happened at trial.

20   (Tr. 806.)

21   Samsung now argues the Court should order an evidentiary hearing and authorize

22   a Rule 30(b)(6) deposition of Netlist toward investigation of potential discovery

23   violations meriting Rule 37 sanctions. (Samsung Mot. for Disc. 16–19.) Samsung, now

24   questioning Netlist's discovery conduct throughout this litigation and in another case

25

26   ———————————

27   [5] The parties submitted various excerpts from the trial transcript, including at ECF Nos.
     596-2, 589-4 to -5, 610-8. The Court cites the consecutive pagination assigned by the

28   court reporter.

between the parties, seeks relief far beyond what the Court contemplated when it solicited a motion pertaining to the document Netlist attempted to introduce at trial.

The Court is satisfied with Netlist's explanation for the nonproduction of the document it sought to introduce at trial. (Resp. to Info. Req.; Harbour Decl. ¶¶ 31–34, ECF No. 605-1.) The sanction already imposed—disallowing use of the document and striking testimony pertaining to it—is sufficient to address the issue.[6]

Samsung does not provide cause to open a can of worms and call into question Netlist's conduct throughout the discovery period, which Samsung declined to investigate until the second trial of this case. Notably, Samsung elected to take the deposition of a Netlist representative qualified to testify about its "efforts to collect and respond to Samsung's discovery requests" but decided not to question her about that topic. (Harbour Decl. ¶ 6; *id.* Ex. 3, at 8, ECF No. 605-4; *id.* Ex. 5, at 20, ECF No. 605-6.) In other words, Samsung exercised its opportunity to inquire into Netlist's discovery efforts during the discovery period and now seeks relief from its decision not to make good use of it. The Court finds no good cause or excusable neglect to give Samsung a second bite at the apple. Exercise of discretion to allow further inquiry into Netlist's discovery conduct at this stage is inappropriate.

The motion is denied. Discovery remains closed.

## V.    MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.    Legal Standard

Federal Rule of Civil Procedure 50(b) authorizes a party to renew a motion for judgment as a matter of law submitted under Rule 50(a). In ruling on the renewed motion, a court may: "(1) allow judgment on the verdict, if the jury returned a verdict;

---

[6] Samsung effectively concedes as much by failing to raise the issue as a ground for a new trial. (*See generally* Samsung Mot. for J. 18–23.)

(2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ.
P. 50(b).

"The standard for judgment as a matter of law . . . 'mirrors' the summary
judgment standard." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting
*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). A court may
grant the motion only if "there is no legally sufficient basis for a reasonable jury to find
for that party on that issue." *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003)
(citation and internal quotation marks omitted); *accord Ostad v. Or. Health Scis. Univ.*,
327 F.3d 876, 881 (9th Cir. 2003) ("Judgment as a matter of law is proper when the
evidence permits only one reasonable conclusion and the conclusion is contrary to that
reached by the jury.").

The court may not weigh the evidence or assess the credibility of witnesses;
instead, the Court must "draw all reasonable inferences in favor of the nonmoving
party" and "disregard all evidence favorable to the moving party that the jury is not
required to believe." *Reeves*, 530 U.S. at 150–51. Any part of the verdict supported by
"substantial evidence" must be upheld. *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir.
2011). "Substantial evidence is evidence adequate to support the jury's conclusion, even
if it is also possible to draw a contrary conclusion from the same evidence." *Id.* (quoting
*Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)).

**B.    Discussion**

Samsung submits that the Court must enter judgment as a matter of law in its
favor because no reasonable juror could have determined the parties intended Netlist's
construction of the JDLA. (Samsung Mot. for J. 4–18.)[7]

The Court need not look beyond the JDLA itself to find substantial evidence
requiring the denial of Samsung's motion. A reasonable juror reviewing the text of the

---

[7] Samsung does not call into question the jury's finding as to materiality.

parties' contract could interpret the provision consistent with its text—Samsung was unqualifiedly obliged to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (i.e., among customers purchasing similar volumes of similar products)," irrespective of the NVDIMM-P joint development project. (JDLA § 6.2.) Indeed, before reversal by a divided circuit panel, the Court opined that this interpretation was the *only* reasonable interpretation of the JDLA. (Order Re: MSJs 6–10, ECF No. 186.) That reasoning remains pertinent insofar as a reasonable jury could have adopted it and declined to give weight to other parts of the JDLA or the extrinsic evidence tending to tie the supply obligation to the joint development project.

Samsung argues that the jury is required to look to extrinsic evidence to determine the JDLA's meaning, so the Court similarly must look beyond the contract to find substantial evidence to support the verdict. (Samsung Mot. for J. 11–12, 14.) That simply is not the law, which permits the factfinder to assign weight freely to whatever part of the evidentiary record moves it. *See New York Pattern Jury Instructions* No. 4:1 ("Where a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent." (ample citations omitted)). To conclude otherwise would be to usurp the factfinder's role and require the jury to give weight to the extrinsic evidence, even if it finds the extrinsic evidence valueless. *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* No. 1.12 ("It is for you to decide how much weight to give to any evidence."). Accordingly, the text of JDLA § 6.2 alone provides substantial evidence from which a jury could have interpreted the contract in Netlist's favor.

The motion is denied.

## VI.    MOTION FOR NEW TRIAL

### A.    Legal Standard

"The court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in

federal court." Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify the grounds upon which a new trial may be granted, but the Ninth Circuit recognizes that courts are bound by historically recognized grounds. For example, a new trial may be granted "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Courts "enjoy[] considerable discretion" in deciding a new trial motion. *Cassiday*, 320 F.3d at 918 (internal quotation marks omitted).

## B.    Discussion

The Court reaches only one issue raised in Samsung's motion for a new trial because it is dispositive[8]: whether a new trial is warranted due to juror bias. (Samsung Mot. for J. 19–22.)

### 1.    Juror 16 Provided False Answers in Voir Dire

Juror 16 was not truthful in responding to voir dire questioning, calling into question her impartiality.[9] As is its practice in voir dire in civil cases, before individual questioning the Court polled the jury venire on several topics probative of juror impartiality, asking potential jurors to raise their hands if they answered questions in a manner inviting further individual questioning. (*E.g.*, Tr. 32.) The Court asked whether the potential jurors had ever been involved in a contract dispute or had ever been a party to a lawsuit. (*Id.* at 51.) Juror 16 did not raise her hand to these questions, though she raised her hand to another. (*See id.* at 51–52.) The Court's individual questioning of

---

[8] That said, the Court's decision on the Rule 50(b) motion signals its thoughts as to one of Samsung's claims of instructional error. (Samsung Mot. for J. 14–15, 19.)

[9] Samsung also sought a new trial based on the voir dire responses of three other jurors, (Samsung Mot. for J. 21), but the Court rests its decision solely on Juror 16's conduct.

Juror 16 did not touch upon her involvement in contract disputes or litigation, though she did represent that she had "a little bit" of experience with contracts in her professional capacity. (*Id.* at 120; *see id.* at 116–20.)

Samsung's research after trial revealed that Juror 16 should have raised her hand to the questions concerning her involvement in contract disputes and litigation. (*See* Lucas Decl. ¶¶ 3–38, ECF No. 596-1.) To avoid sealing this Order for the protection of the anonymity of Juror 16, the Court does not recount the numerous civil and criminal cases, including contract disputes, to which she or the business of which she was an officer had been named as a party. (*Id.* Exs. 2–37, ECF Nos. 597-2 to -5.) Notably, at the time of voir dire, Juror 16 had been named personally as a defendant to two then-pending civil cases concerning a landlord-tenant contract dispute filed by a person of Korean descent. Before the time of trial in this case, the plaintiff in those cases had emailed Juror 16 a settlement demand and served her with process. (*See id.* ¶¶ 6–10 & Exs. 2–5; Suppl. Lucas Decl. ¶ 10, ECF No. 627-1.)

### 2.    Samsung Did Not Waive Its Juror Bias Argument

Before reaching the substance of Samsung's argument, the Court addresses Netlist's argument that Samsung waived a new trial motion on the basis of juror bias by not objecting before empanelment or making an inquiry into the juror's impartiality until after suffering an unfavorable verdict. (Samsung Mot. for J. Opp'n 12–13.)[10]

A party may waive a juror bias challenge when it fails to object at the time of empanelment "if the basis of the objection is known *or might have been known or discovered through the exercise of reasonable diligence*, or if the party is otherwise chargeable with knowledge of the ground of the objection." *Apple, Inc. v. Samsung*

---

[10] The Court assumes without deciding that a challenge based on actual or implied bias can be waived. *See infra* Section VI(B)(3). The nonbinding authorities cited in Netlist's brief toward its waiver argument dealt exclusively with claims of *McDonough*-style bias. (Samsung Mot. for J. Opp'n 12–13.)

*Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 U.S. Dist. LEXIS 179533, at *46 (N.D. Cal. Dec. 17, 2012) (quoting *Johnson v. Hill*, 274 F.2d 110, 116 (8th Cir. 1960)). The record does not demonstrate Samsung knew about Juror 16's litigation history before or during trial. (*See* Lucas Decl. ¶ 3 (indicating investigation began "after the trial concluded").)

Nor did Samsung have reason to know or to exercise reasonable diligence to investigate the veracity of Juror 16's answers at the time of empanelment. Netlist points out that Samsung brought a jury consultant to trial, and the consultant or counsel could have run a relatively quick search of potential jurors' litigation history, but they did not do so until after an unfavorable verdict. (Samsung Mot. for J. Opp'n 13.) The jury venire took an oath to provide truthful answers; in other words, Juror 16 swore she had not been party to a lawsuit or contract dispute. Her answers did not give Samsung cause to research her litigation history, let alone any prospective juror's except the two who raised their hands in response to the questions at issue. (*See* Tr. 51.) Effectively, Netlist asks the Court to find that a party confronted by a jury pool that has attested under oath not to have been party to a lawsuit waives any juror bias argument based on litigation history if the party does not conduct a litigation search on the spot during voir dire. The entire voir dire process here lasted just over two hours. Although in theory Samsung might have been able to undertake that kind of breakneck investigation with its wealth of trial resources, doing so would far exceed what might be deemed reasonable diligence for even the most profligate litigants.

In any event, in this case real-time research would not have uncovered much of the information forming the basis of Samsung's motion, as Juror 16 used several different names in the past and was a party to litigation in numerous jurisdictions, and information about one of her cases pending at the time of trial was not readily available at the time. (*See* Lucas Decl. ¶ 5; Suppl. Lucas Decl. ¶¶ 8–10.) Samsung simply could not have presented its challenge before empanelment.

The Court declines to deem the argument waived and turns to the merits.

1          3.      Juror 16's Conduct Demonstrates Implied Bias

2          An "impartial trier of fact" is a "touchstone of a fair trial." *McDonough Power*

3    *Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Given the constitutional

4    guarantee of an impartial jury to "both criminal and civil litigants," *Warger v. Shauers*,

5    574 U.S. 40, 50 (2014), juror bias is a recognized ground for a new trial, *see United*

6    *States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013). The Ninth Circuit

7              recognizes three forms of juror bias: (1) actual bias, which

8              stems from a pre-set disposition not to decide an issue

9              impartially; (2) implied (or presumptive) bias, which may

10             exist in exceptional circumstances where, for example, a

11             prospective juror has a relationship to the crime[11] itself or to

12             someone involved in a trial, or has repeatedly lied about a

13             material fact to get on the jury; and (3) so-called *McDonough*-

14             style bias, which turns on the truthfulness of a juror's

15             responses on voir dire where a truthful response would have

16             provided a valid basis for a challenge for cause.

17    *Olsen*, 704 F.3d at 1189 (internal quotation marks omitted).

18         The parties disagree about which form of bias (if any) is present here, implied

19    bias or *McDonough*-style bias. (Samsung Mot. for J. Opp'n 10–11; Samsung Mot. for

20    J. Reply 6–7.) This is a close issue, but the Court finds support for a finding of implied

21    bias in the Ninth Circuit's en banc decision in *Dyer v. Calderon*, 151 F.3d 970 (9th Cir.

22    1998).

23         *Dyer* was a habeas case. The petitioner was accused of driving hostages to a

24    remote location, instructing them to lie down alongside the road, and shooting them. *Id.*

25    _____

26    [11] This framework largely derives from criminal and habeas jurisprudence, but it is
      equally applicable to civil cases. *See Dominguez v. City of Los Angeles*, 836 F. App'x
27    489, 492 (9th Cir. 2020) (reciting framework, including use of the word *crime* in
28    description of implied bias, in review of new trial motion in 42 U.S.C. § 1983 case).

at 972. At the murder trial, a juror provided false negative answers to two questions in a written voir dire questionnaire: "Have you or any of your relatives or close friends ever been the victim of any type of crime?" and "Have you or any of your relatives or close friends ever been accused of any offense other than traffic cases?" *Id.* at 972. Years earlier, the juror's brother had been shot and killed in a manner similar to the victims in the case at bar, her husband had been arrested for rape a month before trial, and she had been the victim of a kidnapping and numerous burglaries, among several other reasons she should have answered both questions in the affirmative. *Id.* at 972, 979–81.

In analyzing whether the juror's conduct deprived the petitioner of his right to a fair trial, the en banc majority taught that implied bias may be found only in "extraordinary cases" or "exceptional circumstances"; "an honest yet mistaken answer to a voir dire question rarely amounts to a constitutional violation," and "even an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality." *Id.* at 973, 981. But a court may find implied bias where "there is every indication that [a juror] was not indifferent to service on the jury," *id.* at 982, and "where a juror lies in order to secure a seat on the jury," as "[a] perjured juror is as incompatible with our truth-seeking process as a judge who accepts bribes," *id.* at 983. Because the juror "lie[d] materially and repeatedly in response to legitimate inquiries about her background," "fatally undermin[ing]" the court's confidence in her impartiality, it presumed the juror's bias. *Id.* at 983–84.

The situation here admittedly is not quite as colorful as the scenario in *Dyer*: Juror 16 failed to raise her hand in response to three questions posed to the jury venire regarding contract disputes and prior litigation. She should have raised her hand because she had been a party to over a dozen lawsuits, including two contract cases that were pending at the time of voir dire. Netlist argues her conduct could be attributed to something other than intentional dishonesty; she could have misunderstood the questions or failed to recall in the moment her prior court cases, some of which are

decades old. (*See* Samsung Mot. for J. Opp'n 14–15.) But Juror 16's conduct "defies an innocent explanation." *Dyer*, 151 F.3d at 981. She raised her hand in response to the venire poll question that immediately followed the questions about prior litigation, indicating she had been paying attention to and understood the show-of-hands questions. (Tr. 51–52.) The Court individually questioned another juror who had raised his hand in response to the contract dispute question before calling Juror 16 for individual questioning, making it clear to her and the rest of the jury pool that information about contract disputes was pertinent to the voir dire process. (*See id.* at 82.) In individual questioning Juror 16 discussed with the Court her business and professional experience and prior contracting with vendors. (*Id.* at 116–17, 119.) Juror 16 did not mention the contract litigation to which she was a party and of which she was surely aware given that she was served process and emailed a settlement demand, (*see* Lucas Decl. ¶¶ 6–10 & Exs. 2–5; Suppl. Lucas Decl. ¶ 10), nor did she mention that a business of which she was an officer had recently been named as a defendant to a civil suit, (Lucas Decl. Exs. 35–36, ECF No. 597-4).

This is not the sort of case where Juror 16 could have "forg[otten] incidents long buried in [her] mind[], misunderst[ood] a question or ben[t] the truth a bit to avoid embarrassment." *Dyer*, 151 F.3d at 973. Being a party to litigation is not an easily forgettable experience; it is implausible to believe Juror 16 failed to recall any of her prior court cases, let alone two live ones. Like the juror in *Dyer*, Juror 16 provided false answers to voir dire questions and must have been aware that providing true answers would diminish her likelihood of securing a seat on the jury.

Netlist, approaching the issue under the lens of *McDonough*, downplays the false answers Juror 16 gave at voir dire, noting that any racial animus Juror 16 might harbor against her Korean party opponent cuts against both parties to this case given that numerous witnesses of Korean and East Asian descent testified on both sides, and that Juror 16's prior litigation experience as a defendant might bias her in favor of Samsung here. (Samsung Mot. for J. Opp'n 18–20.) But an impartial juror deprives *both* parties

of their right to a fair trial. And the information Juror 16 chose to conceal here "bespeak[s] a lack of impartiality" and undermines the Court's confidence in her capacity to have fairly adjudged this action, whether because she preferred to see the domestic party prevail over the Korean one, because she disliked both sides for putting on witnesses who reminded her of her party opponent, or because she would have preferred to see a defendant win but was persuaded otherwise in deliberations. *Dyer*, 151 F.3d at 973. Regardless, the Court need not and does not speculate about Juror 16's reasons for providing false answers because her intent is beside the point in the implied bias inquiry:

> The individual who lies in order to improve his chances of serving has too much of a stake in the matter to be considered indifferent. Whether the desire to serve is motivated by an overactive sense of civic duty, by a desire to avenge past wrongs, by the hope of writing a memoir or by some other unknown motive, this excess of zeal introduces the kind of unpredictable factor into the jury room that the doctrine of implied bias is meant to keep out.

*Dyer*, 151 F.3d at 982.

Accordingly, the Court concludes that *Dyer* controls, and Juror 16's bias must be implied. Thus, a new trial is required. *Dyer*, 151 F.3d at 973 n.2.

Given the disposition on Samsung's motion for a new trial, Netlist's motion for entry of judgment is denied.

## VII. CONCLUSION

The parties' sealing applications (ECF Nos. 618, 623, 630) are granted. The parties shall file the documents subject to the applications under seal pursuant to Local Rule 79-5.2.2(c).

16

1    Netlist's motion to strike (ECF No. 625) is denied. Samsung's motion for an
2    evidentiary hearing and limited discovery (ECF No. 589) is denied. Samsung's motion
3    for judgment as a matter of law (ECF Nos. 596–97) is denied. Samsung's motion for a
4    new trial (ECF Nos. 596–97) is granted. Netlist's motion for entry of judgment (ECF
5    No. 593) is denied.

6        The Court orders the parties to meet and confer and file a joint statement by
7    January 7, 2025, proposing dates for a jury trial to begin no later than April 1, 2025.
8    Alternatively, the parties may stipulate for a referral to alternative dispute resolution
9    proceedings.

10

11    **IT IS SO ORDERED.**

12

13    Dated: December 26, 2024

14                                              _____
                                                MARK C. SCARSI
15                                              UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28