DANIEL M. PETROCELLI (SB 97802)
dpetrocelli@omm.com
RYAN YAGURA (SB 197619)
ryagura@omm.com
DREW BREUDER (SB 198466)
dbreuder@omm.com
LEAH GODESKY (SB 336854)
lgodesky@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York  10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No.: 8:20-cv-00993-MCS-ADS<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION TO COMPEL NETLIST INC.'S COMPLIANCE WITH TRIAL SUBPOENA OR, IN THE ALTERNATIVE, TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE SK HYNIX AGREEMENTS**<br><br>[*Declaration of Marc J. Pensabene and [Proposed] Order filed concurrently herewith*]<br><br>**Final Pretrial Conference:**<br><br>Date:  March 10, 2025<br>Time:  2:00 pm<br>Location:  Courtroom 7C<br>Judge:   Hon. Mark C. Scarsi |

**TO THE PARTIES AND THEIR ATTORNEYS:**

PLEASE TAKE NOTICE that on March 10, 2025, at 2:00 pm, in Courtroom 7C of the above-captioned court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Samsung Electronics Co., Ltd. ("Samsung") will, and hereby does, respectfully move the Court for an order compelling Plaintiff Netlist, Inc. ("Netlist") to produce the documents identified in Samsung's January 28, 2025 trial subpoena—namely, a 2021 "Strategic Product Supply and License Agreement" and a "Product Purchase and Supply Agreement" between Netlist and SK hynix (collectively, the "SK hynix Agreements" or the "Agreements").  Alternatively, and in the event the Court declines to order production of the SK hynix Agreements, Samsung requests that the Court preclude Netlist from presenting evidence or argument at the upcoming March 2025 trial concerning the SK hynix Agreements.

This motion is made on the grounds that, in the May 2024 trial, Netlist repeatedly elicited witness testimony and presented argument to the jury concerning the alleged terms of the SK hynix Agreements based solely on a purported summary of those agreements.  By eliciting testimony and presenting argument regarding the terms of the SK hynix Agreements at last year's trial, Netlist has put the underlying agreements squarely at issue.  Pursuant to Federal Rule of Civil Procedure 45 and consistent with the "best evidence" rule, Federal Rule of Evidence 1002, Samsung is entitled to inspect and review the actual agreements so that it can adequately prepare for trial and meaningfully cross-examine Netlist's witnesses on this subject.

This motion is based on this Notice of Motion, the attached memorandum of points and authorities, the Declaration of Marc Pensabene filed concurrently herewith, the pleadings, records, and files in this case, and such other matters that may be raised at or before the hearing.

SAMSUNG'S MOTION TO COMPEL NETLIST'S COMPLIANCE WITH TRIAL SUBPOENA

Pursuant to Local Rule 7-3 and the Court's instructions, this motion is made following a conference of counsel which took place on February 3, 2025.

DATED: February 10, 2025                O'MELVENY & MYERS LLP


                                        By: */s/ Daniel M. Petrocelli*
                                            Daniel M. Petrocelli
                                            Attorneys for Defendant Samsung
                                            Electronics Co., Ltd.

2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Samsung requests that the Court order Netlist to produce the SK hynix Agreements or, alternatively, preclude Netlist from introducing evidence or argument concerning those agreements at the March 18, 2025 trial.

During last year's trial, Netlist elicited testimony concerning the alleged terms of the SK hynix Agreements from Netlist's C.E.O., C.K. Hong, and from its Vice-President of Marketing and Sales Operations, Devon Park, to explain Netlist's conduct following Samsung's alleged breach and how "Samsung's behavior impact[ed] the terms Netlist sought from SK hynix." *See* Declaration of M. Pensabene ("Pensabene Decl.") Ex. C at 244:13-247:16, 473:7-16 (excerpts of May 2024 trial transcript). Netlist's counsel also made the SK hynix Agreements a focal point of closing argument, including using those agreements to advance Netlist's interpretation of Section 6.2 of the Joint Development & License Agreement ("JDLA") with Samsung, to refute "[t]he suggestion that general supply clauses are not given," and to persuade the jury why Samsung was supposedly willing to provide a "dramatically more lucrative" supply guarantee than SK hynix. *See id*. at 870:8-871:2.

Significantly, and despite the fact that the SK hynix Agreements were directly responsive to discovery Samsung served years ago, neither the Court, nor Samsung, nor the jury ever saw actual copies of the SK hynix Agreements. Instead, Netlist, over Samsung's repeated objection, was permitted to present evidence and argument concerning the SK hynix Agreements' alleged terms by having Mr. Hong read a summary of the supposedly "relevant" terms as described in a financial disclosure form prepared by Netlist. *See*, *e.g*., *id*. at 245:12-14 ("Q. Is [Exhibit 487] the SEC filing that was prepared to describe the relevant terms of the SK hynix agreement? A. Yes."); *id*. at 246:16-19 ("Q. And what were the terms that SK hynix and Netlist agreed to? A. It is stated here, $40 million upfront payment, plus $600 million of SK hynix memory products over five years."). While Netlist

#:27536

knows the full and complete terms of the SK hynix Agreements, Samsung does not, and without access to these documents Samsung cannot meaningfully cross-examine Netlist's witnesses on the Agreements' terms, impeach their testimony, or identify substantive differences between the Agreements and the JDLA.

To avoid a repeat scenario where Netlist is allowed to present evidence and argument concerning the alleged terms of the SK hynix Agreements, which will undoubtedly again be hidden from the jury and never admitted into evidence, Samsung served a trial subpoena on Netlist seeking production of the SK hynix Agreements. Pensabene Decl. ¶ 2, Ex. A. During the parties' subsequent meet and confer, Netlist indicated—without any substantive explanation—that it intends to object to Samsung's trial subpoena and will not produce the SK hynix Agreements for trial. *Id.* ¶ 3, Ex. B. There is no conceivable basis for Netlist's refusal to produce the SK hynix Agreements.

*First*, Samsung's trial subpoena is narrowly tailored. The subpoena seeks only the SK hynix Agreements, and requiring Netlist to provide these documents is not remotely burdensome. *See id.*, Ex. A (commanding Netlist to produce "[t]rue and correct copies of the agreements that Netlist … entered with SK hynix, Inc. in 2021, which were described in Item 1.01 of Netlist's April 6, 2021 Form 8-K [Trial Exhibit 487]").

*Second*, the SK hynix Agreements are plainly relevant given the testimony elicited and positions advanced by Netlist in last year's trial. Netlist deliberately injected the SK hynix Agreements into the trial by examining multiple witnesses about the Agreements' supposed terms and by arguing to the jury that those documents support Netlist's overly broad interpretation of the JDLA. *See supra*. Netlist cannot credibly now resist turning over the SK hynix Agreements to Samsung when Netlist made the tactical decision to put those agreements at issue in the first instance. Production of the SK hynix Agreements, as opposed to testimony and argument based on purported summaries of those documents, also comports

with the "best evidence" rule.  *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.").  That rule applies where, as here, "a witness seeks to testify about the contents of a writing … without producing the physical item itself."  *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004).  "Where the rule applies, the proponent must produce the original … or explain its absence."  *Id.*

*Third*, trial subpoenas are specifically permitted in circumstances such as these.  Trial subpoenas are, by definition, for obtaining documents before trial.  *See*, *e.g.*, Fed. R. Civ. P. 45(a)(1)(C) (noting "a command to produce documents … may be included in a subpoena commanding attendance at a *deposition, hearing, or trial*") (emphasis added); *id*. at 45(c)(1) (identifying a Rule 45 subpoena's "Place of Compliance" for a "*trial, hearing, or deposition*") (emphasis added).  Trial subpoenas are also expressly permitted where the documents sought will be used for trial preparation, to refresh witnesses' recollection, or for cross-examination and impeachment.  *See*, *e.g.*, *Inland Empire Foods, Inc. v. Zateca Foods, LLC*, 2010 WL 11519370, at *2 (C.D. Cal. Apr. 27, 2010) (noting a Rule 45 subpoena "could be used to produce documents for the purpose of memory refreshment or trial preparation") (internal citation omitted); *Cleveland v. The Behemoth*, 2022 WL 22902582, at *3 (S.D. Cal. Nov. 22, 2022) (recognizing "courts have treated Rule 45 subpoenas issued after the close of discovery as permissible trial subpoenas when the documents sought will only be used for impeachment"); *Joseph P. Carroll Ltd. v. Baker*, 2012 WL 1232957, at *2 (S.D.N.Y. April 12, 2012) (denying motion to quash where trial subpoena was "limited in scope and will not lead to additional discovery [n]or delay the trial date").

Samsung specifically requested documents relating to Netlist's patent licenses during discovery, which encompassed and included the SK hynix Agreements, but Netlist objected on relevance grounds and refused to produce any

1    responsive materials. *See* Pensabene Decl. Ex. D (Netlist's Objections &

2    Responses to Samsung's First Set of RFPs) at Request No. 23 (seeking "ALL

3    DOCUMENTS RELATING TO any 'Netlist Licensed Patents' as defined on page

4    3 of the [JDLA]."). Nor did Netlist ever identify the SK hynix Agreements in its

5    initial or supplemental trial disclosures. *See* Fed. R. Civ. P. 37(c)(1) ("If a party

6    fails to provide information … as required by Rule 26(a) or (e), the party is not

7    allowed to use that information … at a trial, unless the failure was substantially

8    justified or is harmless."); Pensabene Decl. Exs. E-F (Netlist's initial and

9    supplemental disclosures). But Netlist has since elected to put the SK hynix

10    Agreements at issue in the trial. The only fair and equitable result is for Netlist to

11    produce the Agreements so that Samsung can adequately prepare for trial and use

12    the documents to refresh Netlist's recollection, including with respect to terms not

13    mentioned in the purported summary document used at trial last year, and/or for

14    impeachment purposes.

15        Alternatively, the Court should preclude Netlist from eliciting evidence or

16    argument concerning the SK hynix Agreements at trial. "A district court is vested

17    with broad discretion to make discovery and evidentiary rulings conducive to the

18    conduct of a fair and orderly trial." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24,

19    27 (9th Cir. 1980). That discretion includes the power to exclude evidence that

20    "would unfairly prejudice an opposing party" and where a defendant is precluded

21    "from any opportunity to inspect the evidence." *Unigard Sec. Ins. Co. v. Lakewood*

22    *Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

23        Absent access to full and complete copies of the SK hynix Agreements,

24    Samsung's ability to rebut testimony and argument concerning the alleged terms of

25    those agreements—including the ability to compare, contrast, and differentiate the

26    terms of the SK hynix Agreements with the terms of the JDLA—will be severely

27    prejudiced. Samsung should not be forced to defend this issue based solely on a

28    summary document that Netlist prepared, and without any opportunity to review

1    and cross-examine witnesses concerning the actual agreements. If Netlist does not

2    want to produce these documents, then the only just remedy is to preclude Netlist

3    from mentioning or relying on those documents at trial. *See, e.g.*, *Bennett*, 363 F.3d

4    at 953-54 (excluding witness testimony regarding the contents of a GPS because the

5    plaintiff "did not produce the GPS itself … which would have been the best

6    evidence of the data").

7        For all the foregoing reasons, Samsung respectfully requests that the Court

8    compel Netlist to produce the SK hynix Agreements or, in the alternative, preclude

9    Netlist from introducing evidence or argument concerning the SK hynix

10   Agreements at trial.

11

12       Dated:  February 10, 2025          O'MELVENY & MYERS LLP

13

14                                          By: */s/ Daniel M. Petrocelli*

15                                          Daniel M. Petrocelli
                                            Attorneys for Defendant Samsung
16                                          Electronics Co., Ltd.

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES