DANIEL M. PETROCELLI (SB 97802)
dpetrocelli@omm.com
RYAN YAGURA (SB 197619)
ryagura@omm.com
DREW BREUDER (SB 198466)
dbreuder@omm.com
LEAH GODESKY (SB 336854)
lgodesky@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York  10019
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co., Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-MCS-ADS<br><br>**DEFENDANT SAMSUNG'S NOTICE OF MOTION AND MOTION TO MODIFY JURY INSTRUCTIONS, VERDICT FORM, PRETRIAL CONFERENCE ORDER, WITNESS LIST, AND EXHIBIT LIST; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*[Proposed] Order and Declaration of Marc J. Pensabene filed concurrently herewith*]<br><br>Date:  March 10, 2025<br>Time:  2:00 pm<br>Location:  Courtroom 7C<br>Judge:  Hon. Mark C. Scarsi |

i

**TO ALL PARTIES AND THEIR ATTORNEYS:**

PLEASE TAKE NOTICE that on March 10, 2025, at 2:00 pm, in Courtroom 7C of the above-captioned court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Samsung Electronics Co., Ltd. ("Samsung") will, and hereby does, move the Court, pursuant to its order of January 13, 2025, to modify the jury instructions, verdict form, pretrial conference order, witness list, and exhibit list in effect during the May 2024 trial.

Good cause exists for the relief sought in Samsung's motion because the scope of the case has materially changed since the May 2024 trial and Samsung's proposed modifications to the jury instructions will more closely align the instructions with the Ninth Circuit's holding that Section 6.2 is ambiguous, and with New York law on the construction of ambiguous contract provisions.

This motion is based on this Notice of Motion, the attached memorandum of points and authorities, the Declaration of Marc J. Pensabene filed concurrently herewith, the pleadings, records, and files in this case, and such other matters that may be raised at the hearing.

Pursuant to Local Rule 7-3 and the instructions of the Court, this motion is made following conference of counsel, which took place on January 27, 2025.


DATED: February 10, 2025          O'MELVENY & MYERS LLP


By:     */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
Attorneys for Defendant Samsung
Electronics Co., Ltd.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................... 1

II.    ARGUMENT ......................................................................................... 4

    A.    The Significant Narrowing Of The Case In Light Of This Court's Rule 50(a) Motion And Samsung's Decision Not To Contest Materiality Is Good Cause To Modify Several Trial Documents.......... 4

        1.    Instruction No. 29 Is Unnecessary Because The Question Of Breach Under Either Side's Interpretation Of Section 6.2 Should Not Be Put Before The Jury ...................................... 5

        2.    Instruction No. 30 Is Unnecessary Because Samsung Will Not Contest Material Breach If The Jury Adopts Netlist's Interpretation Of Section 6.2 ........................................ 7

        3.    The Court Should Not Give Instruction No. 27 So Long As It Excludes Evidence Of Materiality Per Samsung's Concurrently Filed Motion *In Limine*........................................... 8

        4.    The Court Should Modify The Statement Of The Case, Verdict Form, And Pretrial Conference Order To Conform With Its Rule 50(a) Ruling In The Previous Trial And Samsung's Materiality Concession ............................................ 8

    B.    The Court Should Modify Jury Instruction No. 28 To Conform To The Ninth Circuit's Holding That Section 6.2 Of The JDLA Is Ambiguous. ...................................................................................... 10

        1.    The Court's Instruction Should Define What It Means That Section 6.2 Has Been Found To Be Ambiguous ............. 10

        2.    The Court's Instruction That The Written Contract Is The "Best Evidence" Of The Parties' Intent And That The Jury Need Not Consider Extrinsic Evidence Is Legally Incorrect ........................................................................ 12

    C.    Modification To Witness List ................................................................. 21

    D.    Modification To Exhibit List ................................................................. 22

III.   CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*67 Wall St. Co. v. Franklin Nat'l Bank*,
  37 N.Y.2d 245 (N.Y. 1975) ................................................................ 20

*A.J. Temple Marble & Tile, Inc. v. Long Island R.R.*,
  256 A.D.2d 527 (N.Y. App. Div. 1998) ............................................. 18

*ABC Radio Network, Inc. v. Lens America, Inc.*,
  1999 WL 771360 (S.D.N.Y. Sept. 28, 1999) ...................................... 16

*Aeneas McDonald Police Benevolent Ass'n v. City of Geneva*,
  92 N.Y.2d 326 (1998) ......................................................................... 20

*Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*,
  253 F.R.D. 524 (C.D. Cal. 2008) ....................................................... 22

*Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*,
  36 F. Supp. 3d 336 (S.D.N.Y. 2014) ................................................. 16

*Chimart Assocs. v. Paul*,
  489 N.E.2d 231 (N.Y. 1986) ........................................................ 11, 14

*Evans v. Famous Music Corp.*,
  1 N.Y.3d 452 (2004) ........................................................................... 20

*Ezrasons, Inc. v. Travelers Indem. Co.*,
  89 F.4th 388 (2d Cir. 2023) ............................................................... 17

*Goldman v. White Plains Ctr. for Nursing Care, LLC*,
  11 N.Y.3d 173 (2008) ......................................................................... 15

*Greenfield v. Philles Recs., Inc.*,
  98 N.Y.2d 562 (2002) ......................................................................... 18

*Hartford Accident & Indem. Co. v. Wesolowski*,
  33 N.Y.2d 169 (1973) ......................................................................... 16

*Hoover v. HSBC Mortg. Corp. (USA)*,
  9 F. Supp. 3d 223 (N.D.N.Y. 2014) .............................................. 17, 19

*Hoyt v. Andreucci*,
  433 F.3d 320 (2d Cir. 2006) ............................................................... 20

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re MPM Silicones, LLC,*
    874 F.3d 787 (2d Cir. 2017) ..................................................................... 20

*Joseph v. Rubinstein Jewelry Mfg. Co.,*
    18 A.D.3d 615 (2d Dep't 2005) ........................................................... 17, 19

*Kramer v. Greene,*
    142 A.D.3d 438 (N.Y. App. Div. 2016) ................................................... 12

*Mallad Const. Corp. v. Cnty. Fed. Sav. & Loan Ass'n,*
    32 N.Y.2d 285 (1973) ............................................................................... 16

*Marin v. Const. Realty, LLC,*
    28 N.Y.3d 666 (2017) ............................................................................... 15

*Netlist Inc. v. Samsung Electronics Co., Ltd.,*
    2023 WL 6820683 (9th Cir. Oct. 17, 2023) .................................... passim

*Robinson v. Transworld Sys., Inc.,*
    876 F. Supp. 385 (N.D.N.Y. 1995) .......................................................... 18

*Schron v. Troutman Sanders LLP,*
    20 N.Y.3d 430 (2013) ............................................................................... 15

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*
    959 F.2d 425 (2d Cir. 1992) ..................................................................... 14

*Tomhannock, LLC v. Roustabout Res., LLC,*
    33 N.Y.3d 1080 (2019) ............................................................................. 15

**Rules**

Fed. R. Civ. P. 16(e) .................................................................................... 9

Fed. R. Evid. 1002 ...................................................................................... 22

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION

On January 13, 2025, this Court informed the parties that it intends to conduct the forthcoming trial based on the May 2024 trial jury instructions, verdict form, pretrial conference order, witness list, and exhibit list (collectively, the "trial documents"), unless there is good cause to modify any of those documents. Samsung respectfully submits that good cause exists to modify the trial documents, for two principal reasons.  First, and as explained in more detail below, the scope of the trial will be substantially narrower than the May 2024 trial, given:  (i) *the Court's ruling on Samsung's Rule 50(a) motion immediately before the case was submitted to the jury at the May 2024 trial*, and (ii) *Samsung's decision to concede materiality under Netlist's interpretation in the impending trial*.  This necessitates various modifications to the trial documents to reflect this narrowed scope.  Second, the Court's Instruction No. 28 concerning contract interpretation should be modified to better reflect the Ninth Circuit's conclusion that Section 6.2 of the Joint Development and License Agreement ("JDLA") is ambiguous.

**Modifications Based On Narrowed Scope Of Trial**.  In the May 2024 trial, the parties contested three issues:  (i) whether the parties intended Samsung's or Netlist's interpretation of Section 6.2; (ii) whether Samsung breached Section 6.2 under Samsung's interpretation; and (iii) whether any breach under either interpretation was material.  But the second and third questions need not be put to the jury in the upcoming trial.  The question of breach is no longer relevant because this Court has already held that, as a matter of law, Samsung did not breach Section 6.2 under its own interpretation of that provision, and Samsung does not dispute that it breached Section 6.2 under Netlist's interpretation.  Thus, the jury's determination of what the parties intended in Section 6.2 will automatically determine whether Samsung breached that provision.  And the question of

1

materiality is no longer relevant because, to streamline the proceedings and avoid unnecessary juror confusion, Samsung will not dispute at trial that, if the jury adopts Netlist's interpretation of Section 6.2, Samsung's breach of that provision was material.  The only question before the jury is thus what the parties intended Section 6.2 to mean.

In light of this substantial narrowing of the trial, there is good cause to modify the trial documents in several respects.

*First*, the Court should not give Instruction No. 29, which concerned breach of contract.  That instruction correctly explained to the jury that if it adopts Netlist's interpretation of Section 6.2 then Samsung breached, and that if it adopts Samsung's interpretation of Section 6.2, Samsung did not breach.  That instruction was only necessary because Netlist was allowed to argue to the jury that Samsung breached Section 6.2 even under Samsung's interpretation, but the Court concluded before the case went to the jury that Netlist had offered no evidence to that effect.  Now that the Court has rejected Netlist's theory that Samsung breached under its own interpretation of Section 6.2 as a matter of law, there is no question of breach for the jury to consider, and no need for Instruction No. 29.

*Second*, the Court should not give Instruction No. 30.  That instruction concerns materiality, and Samsung will not dispute that, under Netlist's interpretation of Section 6.2, Samsung's breach was material.

*Third*, Instruction No. 27, which instructed the jury about the pre-appeal jury's zero-damages finding, is unnecessary.  That instruction was relevant only to materiality.[1]

---

[1] Samsung has separately moved the Court *in limine* to exclude evidence and argument relevant only to breach or materiality but irrelevant or minimally relevant to contract interpretation.  Samsung reserves the right to request that Instruction No. 27 be given if the Court permits Netlist to present evidence of alleged harms it

*Fourth*, the narrowed scope of the trial also requires that conforming modifications be made to the statement of the case (Instruction No. 19), the verdict form, and the pretrial conference order.[2]  Those modifications are described below and reflected in the accompanying redline documents requested by the Court.

**Modification to Instruction No. 28 On Contract Interpretation.**  There is good cause to modify Instruction No. 28 in two ways that will more closely align that instruction with the Ninth Circuit's holding that Section 6.2 is ambiguous, and with New York law on the construction of ambiguous contract provisions.

*First*, while the Court correctly instructed the jury that Section 6.2 of the parties' JDLA is ambiguous, the jury was not told what that means.  As Netlist's lead counsel observed in the 2024 trial, jurors are unlikely to know what the word "ambiguous" means, so the Court should instruct the jury on that crucial point by explaining that the parties offer competing interpretations of Section 6.2 and that each is reasonable.

*Second*, the Court should not instruct the jury that (i) the parties' written contract is the "best evidence" of the parties' intent and (ii) the jury "may" (rather than "must" or "should" or "is to") consider extrinsic evidence.  For the reasons explained in detail below, each of those instructions—and especially the two in combination—is inconsistent with the Ninth Circuit's decision in this case and with New York law.  The Court should instead instruct the jury that it is to consider not only the contract language, but also the extrinsic evidence, and explain to the jury

---

suffered as a result of Samsung's alleged breach.

[2] As explained above, and in view of Samsung's decision to concede materiality under Netlist's interpretation, Samsung has separately moved *in limine* to preclude evidence or argument concerning various documents on the trial exhibit list which pertain to the issues of breach or materiality.

SAMSUNG'S MOTION TO MODIFY TRIAL DOCUMENTS

what categories of extrinsic evidence are relevant to direct the jury's deliberations and avoid confusion.

**Modification to Witness List.**  There is good cause to modify the witness list.  Samsung does not seek to add or remove witnesses not previously identified in the parties' witness lists, but seeks the ability to call live three witnesses who testified by deposition at the 2024 trial.

**Modification to Exhibit List.**  Finally, there is good cause to modify the exhibit list.  In the May 2024 trial, Netlist elicited testimony and introduced a document describing the contents of an agreement that Netlist entered with SK Hynix Inc. in 2021.  *See, e.g.*, May 2024 Tr. 244:13-247:18.  That agreement itself was not on the exhibit list because it was never produced in this litigation.  Samsung has served a trial subpoena for Netlist's agreements with SK Hynix Inc., and the documents should be added to the exhibit list, so that the parties may establish the terms of those agreements using the agreements themselves, consistent with the best evidence rule.

## II.    ARGUMENT

There is good cause to modify the trial documents for the reasons explained below, and the proposed modifications to the pretrial conference order satisfy the Rule 16(e) standard.  *See* ECF No. 649 at 1.  Per the Court's January 13, 2025 Order, Samsung submits redline documents reflecting the modifications described below as Exhibits A through E.

### A.    The Significant Narrowing Of The Case In Light Of This Court's Rule 50(a) Motion And Samsung's Decision Not To Contest Materiality Is Good Cause To Modify Several Trial Documents

During the May 2024 trial, the parties contested three separate issues:  (i) the parties' intent as to the meaning of Section 6.2; (ii) whether Samsung breached Section 6.2 under Samsung's interpretation; and (iii) whether any breach under

either interpretation was material.  Since then, however, the trial has been substantially narrowed in two respects.

*First*, immediately before the May 2024 trial went to the jury, the Court granted Samsung's Rule 50(a) motion, holding that no reasonable juror could conclude that Samsung breached Section 6.2 if the jury accepts Samsung's interpretation of that provision.  And Samsung had already agreed prior to the May 2024 trial that, if the jury accepts Netlist's interpretation, Samsung breached Section 6.2.  The Court thus correctly instructed the jury that the question of breach was no longer in the case:  if the jury adopted Netlist's interpretation of Section 6.2 then Samsung breached that provision, and if the jury adopted Samsung's interpretation of Section 6.2, then Samsung did not breach.  *See* ECF No. 553 at 32 (Instruction No. 29).

*Second*, to streamline the proceedings and minimize unnecessary jury confusion, Samsung no longer disputes that if the jury concludes that the parties intended Netlist's interpretation of Section 6.2, then Samsung not only breached Section 6.2 but the breach was material.

Thus, the questions of breach and materiality are out of the case, and the only issue left for the jury to decide is whether Netlist has met its burden of proving the parties intended its interpretation of Section 6.2 when the parties signed the JDLA.  As a consequence, good cause exists to modify several of the trial documents to conform to the forthcoming trial's narrowed scope.

> **1.    Instruction No. 29 Is Unnecessary Because The Question Of Breach Under Either Side's Interpretation Of Section 6.2 Should Not Be Put Before The Jury**

In the May 2024 trial, prior to the Court's ruling on Samsung's Rule 50(a) motion, the Court allowed Netlist (over Samsung's objection) to argue to the jury that Samsung breached Section 6.2 *even if the jury adopted Samsung's*

*interpretation—i.e.*, that Samsung failed to provide Netlist with NAND and DRAM during the development phase of the NVDIMM-P project.[3]  But Netlist was unable to offer any evidence that Samsung breached under Samsung's interpretation of Section 6.2, and the Court thus granted Samsung judgment as a matter of law under Federal Rule of Civil Procedure 50(a) before the case went to the jury.  May 2024 Tr. 773:19-23 ("[U]nder Samsung's definition that [Section] 6.2 obligated them to supply NAND and DRAM components for the NVDIMM-P joint development project," "there was no evidence that they failed to do that").

To inform the jury that the issue of breach under Samsung's interpretation was no longer in dispute after the Court's Rule 50(a) ruling, the Court gave Instruction No. 29:  "If you interpret the contract to be consistent with Netlist's interpretation, then the Court instructs you that Samsung breached the JDLA under that interpretation.  If you interpret the contract to be consistent with Samsung's interpretation, then the Court instructs you that Samsung did not breach the JDLA under that interpretation."  ECF No. 553 at 32.

That instruction is no longer necessary because there is no reason to mention breach of Section 6.2 at all.  Samsung concedes that it breached Section 6.2 under Netlist's interpretation (and that any such breach would be material, *see supra* at 5), and the Court has already ruled as a matter of law that Samsung *did not* breach Section 6.2 under Samsung's interpretation.  May 2024 Tr. 773:19-23.  Thus, the jury need not consider breach, and all that matters is whether Samsung or Netlist is right about what Section 6.2 means.  There is accordingly no longer any need for Instruction No. 29.

---

[3] Under Samsung's interpretation, Section 6.2 would also require Samsung to provide Netlist with NAND and DRAM for the NVDIMM-P product if it were ever developed and sold, but it is undisputed that scenario never transpired.

Nor is there any possible good cause to allow Netlist to relitigate the issue of breach under Samsung's interpretation.  The ground on which this Court granted a new trial—a juror's false *voir dire* answers, *see* ECF No. 640 at 10-16—could not possibly have affected the Court's Rule 50(a) ruling, since the Court held that *no* reasonable juror could have found breach under Samsung's interpretation.  Indeed, Netlist's CEO, Chuck Hong, testified at trial and at deposition that Netlist had received all the memory chips he needed during the development phase, *see* May 2024 Tr. 390:18-391:13; ECF No. 187-9 at 88:10-89:5, so Netlist's argument that Samsung breached under its own interpretation of Section 6.2 was always entirely unsupported by any evidence (as this Court ultimately concluded).  And yet Netlist attempted to confuse the issue by arguing that it asked for but did not receive memory chips relating to *other* NVDIMM products—*i.e.*, not the NVDIMM-P product that the parties had agreed to develop in the JDLA.  *See* May 2024 Tr. 771:16-773:17.  Netlist already had every opportunity to prove its case but lost as a matter of law.  It should not now be allowed to again introduce this confusing and prejudicial sideshow into a trial about what Section 6.2 means.

### 2. Instruction No. 30 Is Unnecessary Because Samsung Will Not Contest Material Breach If The Jury Adopts Netlist's Interpretation Of Section 6.2

As a result of Samsung's concession of materiality under Netlist's interpretation, that question is out of the case and need not be put to the jury.[4]  There is thus no reason to potentially confuse the jury with instructions about materiality, and the Court should not give Instruction No. 30.

---

[4] If the Court permits Netlist to relitigate the question of breach under Samsung's interpretation of Section 6.2 despite its previous Rule 50(a) ruling, then Samsung will dispute that any such breach was material, and Instruction No. 30 should be given.

**3.    The Court Should Not Give Instruction No. 27 So Long As It Excludes Evidence Of Materiality Per Samsung's Concurrently Filed Motion *In Limine***

The Court's Instruction No. 27 informed the jury about the jury's zero-damages verdict in the pre-appeal damages trial, *see* ECF. No. 553 at 30, because that issue was relevant to whether Samsung's breach of Section 6.2 under Netlist's interpretation was material.  As explained, Samsung will not dispute materiality.  In light of that concession, moreover, Samsung is seeking leave to file a motion *in limine* to exclude evidence and argument relevant to breach or materiality but irrelevant or minimally relevant to the interpretation of Section 6.2 the parties intended.  If that motion is granted, then instructing the jury about the prior jury's zero-damages finding will also be unnecessary and thus should not be given.[5]

**4.    The Court Should Modify The Statement Of The Case, Verdict Form, And Pretrial Conference Order To Conform With Its Rule 50(a) Ruling In The Previous Trial And Samsung's Materiality Concession**

Modifications conforming to this narrowing of the case will also be required to the statement of the case, verdict form, and pretrial conference order.  Those conforming changes are reflected in the concurrently-filed redline documents, and are explained briefly below.

**Statement of the Case (Instruction No. 19)**.  Because the only question to be tried is the proper interpretation of Section 6.2, Samsung requests the following modifications to the statement of the case—*i.e.*, Instruction No. 19, which was read

---

[5] If the Court allows Netlist to offer evidence that is relevant to materiality even though the question of materiality will not be decided by the jury—such as the harm Netlist purportedly suffered from Samsung's failure to fulfill every NAND or DRAM order—then Instruction No. 27 will still be required to put that evidence in its proper context.

SAMSUNG'S MOTION TO MODIFY TRIAL DOCUMENTS

to the jury before opening statements—which will focus the jury on the issue in dispute and away from issues not properly before it:

> "The parties disagree about what the provision means~~, whether Samsung breached the provision, and whether the breach was material~~.  <u>I instruct you that this provision is ambiguous, which means that each party's interpretation of the provision is reasonable.</u>"

**Verdict Form**.  In light of Samsung's materiality concession, Question 2 (materiality) should not be included on the verdict form.  The italicized instructions directly below Question 1 should also be removed from the verdict form.

**Pretrial Conference Order**.  The concurrently-filed redline of the pretrial conference order reflects several changes meant to give effect to this Court's Rule 50(a) ruling and Samsung's materiality concession, including by ensuring that the description of the claims to be tried reflect the manner in which the scope of the upcoming trial will be significantly narrower than the previous one.[6]

The Court's January 13, 2025 Order suggests that any modifications to the pretrial conference order must comply with Rule 16(e).  *See* ECF No. 649 at 1. Rule 16(e) provides that the "court may modify the order issued after a final pretrial conference only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  It would be manifestly unjust to require Samsung to defend again against a claim it has already won as a matter of law, and to try an issue that it has chosen to concede.

---

[6] The accompanying redline document also reflects a modification to the motion-*in-limine* portion of the pretrial conference order, which should reflect the one additional motion *in limine* Samsung has sought the Court's leave to file.  *See supra* at 8.

**B.    The Court Should Modify Jury Instruction No. 28 To Conform To The Ninth Circuit's Holding That Section 6.2 Of The JDLA Is Ambiguous.**

In light of the narrowing of the case just described, the only substantive instruction remaining will be Instruction No. 28, which instructs the jury about how to determine the meaning of Section 6.2—a provision that the Ninth Circuit held in this case to be ambiguous as a matter of law. *See Netlist Inc. v. Samsung Electronics Co., Ltd.*, 2023 WL 6820683, at *1 (9th Cir. Oct. 17, 2023) (holding that Section 6.2 of the JDLA "is ambiguous as to whether Samsung's supply obligation is limited to the now-failed joint development project (the 'JDP') or applies more broadly to the parties' overall business relationship"). Samsung submits that Instruction No. 28 as currently written does not give full effect to—and was, in some respects, inconsistent with—the Ninth Circuit's holding that Section 6.2 is ambiguous, and with related principles of New York law. Because the modifications described below will conform the Court's instruction to the Ninth Circuit's mandate and New York law, there is good cause to adopt them.

**1.    The Court's Instruction Should Define What It Means That Section 6.2 Has Been Found To Be Ambiguous**

Jury Instruction No. 28 states that "Section 6.2 is ambiguous as to whether Samsung's supply obligation is limited to the joint development project or applies more broadly to the parties' overall business relationship." ECF No. 553 at 31. But the instruction does not define what "ambiguous" means, and there is good reason to believe that the jury would not understand the Court's instruction without further explanation—as lead counsel for Netlist argued during the May 2024 trial, "[a] jury will not understand what 'ambiguous' means." May 2024 Tr. 28:24.

As this Court recognized, it is crucial that the jury be made aware that Section 6.2 is ambiguous—*i.e.*, that it is "reasonably susceptible of more than one interpretation." *Netlist Inc.*, 2023 WL 6820683, at *1 (quoting *Chimart Assocs. v.*

*Paul*, 489 N.E.2d 231, 233 (N.Y. 1986)); *see also id.* at *2 (concluding that it is reasonable to interpret Section 6.2 as either an "unbounded supply obligation" or "as restricted to the NVDIMM-P project"). That is, after all, why there is a trial about the meaning of Section 6.2 in the first place. *See id.* at *1-2; ECF No. 390 at 9 (denial of summary judgment post-remand). But without an explanation of what "ambiguous" means, the jury will be left guessing about the import of this crucial point. Thus, Samsung respectfully requests that the first two paragraphs of Instruction No. 28 read as follows:

> "Section 6.2 of the Joint Development and License Agreement reads: 'Samsung will supply NAND and DRAM products to Netlist on Netlist's request at a competitive price (i.e., among customers purchasing similar volumes of similar products).' ~~Section 6.2 is ambiguous as to whether Samsung's supply obligation is limited to the joint development project or applies more broadly to the parties' overall business relationship.~~

> "Netlist claims that the words mean that Samsung agreed to supply NAND and DRAM products to Netlist without limitation to the parties' NVDIMM-P joint development project on Netlist's request at a competitive price. Samsung claims that the words mean that Samsung agreed to supply NAND and DRAM products to Netlist for the parties' NVDIMM-P joint development project on Netlist's request at a competitive price. <u>I instruct you that Section 6.2 is ambiguous, meaning both Netlist's and Samsung's interpretations are reasonable, and that</u> Netlist ~~must~~ <u>has the burden to</u> prove that its interpretation is correct by the preponderance of the evidence."

The proposed modifications do not change the Court's instruction in substance, but will make this centrally important issue much more understandable to

11

the jury.  Samsung thus respectfully requests that the Court charge the jury in accordance with the modifications proposed above.[7]

### 2. The Court's Instruction That The Written Contract Is The "Best Evidence" Of The Parties' Intent And That The Jury Need Not Consider Extrinsic Evidence Is Legally Incorrect

Samsung also respectfully submits that the last paragraph of Instruction No. 28 is erroneous under the Ninth Circuit's mandate and New York law, and there is accordingly good cause to modify that paragraph as follows:

> "In interpreting the contract, you must decide what the parties intended at the time they entered into the contract. <u>Because the written contract is ambiguous, you are to consider not only the contract language but also evidence outside the written contract, including evidence of the parties' prior negotiations; the circumstances surrounding the signing of the JDLA; the past practice of the parties; industry custom and practice; commercial reasonableness; and the parties' course of conduct under the contract.</u> ~~The best evidence of the parties' intent is what they express in their written contract. Evidence outside the written contract may be considered to determine the parties' intent.~~"

---

[7] The proposed instruction would also state that Netlist "has the burden to prove" (rather than "must prove") its interpretation.  That change is requested to more closely conform to the law, *see N.Y. Pattern Jury Instr.—Civil 4:1 (Contracts—Elements)* ("AB *has the burden of proving*, by a preponderance of the evidence, that (he, she, it) had a contract with CD requiring that CD [state nature of defendant's alleged contractual promise(s)]…."); *Kramer v. Greene*, 142 A.D.3d 438, 440 (N.Y. App. Div. 2016) ("[T]he party seeking to enforce the contract *bears the burden at trial to establish* that a binding agreement was made and to prove its terms.") (emphases added), and to conform to the burden-of-proof and materiality instructions that the Court gave in May 2024, *see* ECF No. 553 at 9, 33.

In the May 2024 trial, this Court charged the jury that it must decide the meaning of Section 6.2 the parties intended at the time they entered the JDLA, and that: "The best evidence of the parties' intent is what they express in their written contract. Evidence outside the written contract may be considered to determine the parties' intent." ECF No. 553 at 31 (Instr. No. 28). Samsung argued during the charge conference and in its post-trial motion that this was legally erroneous because it was inconsistent with the Ninth Circuit's determination that Section 6.2 is ambiguous and with New York law. May 2024 Tr. 801:19-802:6, 816:2-822:22; ECF No. 596 at 11-15, 19.

In its decision on Samsung's post-trial motion, the Court noted that the Ninth Circuit held that both Netlist's and Samsung's interpretations of Section 6.2 were reasonable, so the jury "could have adopted [Netlist's interpretation] and declined to give weight to other parts of the JDLA or the extrinsic evidence tending to tie the supply obligation to the joint development project." ECF No. 640 at 9. The Court rejected Samsung's contention that "the jury is required to look to extrinsic evidence to determine the JDLA's meaning," and held that "[t]o conclude otherwise would be to usurp the factfinder's role and require the jury to give weight to the extrinsic evidence, even if it finds the extrinsic evidence valueless." *Id.*

The Court's conclusion is erroneous, for several reasons.

*First*, the Ninth Circuit's holding that Section 6.2 is ambiguous precludes the Court's conclusion that the jury was authorized to rely on the written contract language alone in determining the parties' intent and its more particular charge that the written contract is the "best evidence" of that intent. Those instructions invite the jury to give short shrift to or ignore entirely the extrinsic evidence, contrary to the Ninth Circuit's mandate. A contract is ambiguous under New York law "[w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another." *Seiden Assocs., Inc. v. ANC Holdings,*

*Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). That is why the Ninth Circuit held that Section 6.2's language is "reasonably susceptible" to both parties' interpretations. *Netlist Inc.*, 2023 WL 6820683, at *1 (quoting *Chimart Assocs.*, 489 N.E.2d at 233). That means, by definition, that the language alone *does not resolve the provision's meaning*.

It is of course true, as the Court noted, that the Ninth Circuit's conclusion that both parties' interpretations of Section 6.2 are reasonable means that the jury was entitled to decide that the parties intended either one of them. But the jury was not allowed to make that choice by considering only the contract language, because the Ninth Circuit had already held that the contract language does not resolve the parties' intent, and remanded to this Court (and, if there were disputes of fact, the jury) to consider the extrinsic evidence. Put differently, charging the jury that the written contract is the "best evidence" of the parties' intent directly conflicts with the Ninth Circuit's holding for the Court to consider the extrinsic evidence on remand. An instruction that the contract is the "best evidence" invites the jury to truncate its review and potentially ignore entirely the wealth of extrinsic evidence that will be presented at trial and instead review—and only review—the plain language of the agreement.

The Court's contrary conclusion appears to rest on a sentence in the commentary accompanying New York's pattern jury instruction on contract interpretation, *see* May 2024 Tr. 822:17-18: "[a] fundamental tenet of contract law is that agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent is what they express in their written contract." *NY Pattern Jury Instr. —Civil 4:1* (commentary Section VI.A.1 ("Contract Construction—In General")). But that sentence *does not apply to ambiguous contracts*—every case the commentary cites for that proposition concerns an *unambiguous* contract. *See Tomhannock, LLC v. Roustabout Res., LLC*, 33 N.Y.3d

1080, 1082 (2019) (construing unambiguous contract as matter of law); *Marin v.
Const. Realty, LLC*, 28 N.Y.3d 666, 673-74 (2017) (same); *Schron v. Troutman
Sanders LLP*, 20 N.Y.3d 430, 436-37 (2013) (same); *Goldman v. White Plains Ctr.
for Nursing Care, LLC*, 11 N.Y.3d 173, 176-78 (2008) (same).

Indeed, while the "best evidence" sentence on which the Court relied appears
in a portion of the commentary concerning entitled "Contract Construction—In
General," there is a separate section of the pattern-instruction commentary entitled
"Contract Construction—*Ambiguous Contracts*." That is the relevant section with
respect to construction of ambiguous contract provisions like Section 6.2, and it
nowhere suggests that the written contract is the best evidence of the parties' intent.
Instead, it says that courts should look at the "contractual language, which
represents 'the best evidence' of the parties' intent,'" only when *deciding whether
a contract is ambiguous*." *NY Pattern Jury Instr.—Civil 4:1* (commentary VI.A.2
(entitled "Contract Construction—Ambiguous Contracts")) (emphasis added); *see
also Netlist Inc.*, 2023 WL 6820683, at *1-2 (deciding Section 6.2 is ambiguous
after considering the provision's "plain language" as well as the JDLA's "title,
structure, and related provisions"). But neither this "Ambiguous Contracts" portion
of the commentary nor any other source of New York law suggest that once a court
has determined that the relevant provision is ambiguous, the written contract
remains the "best evidence" of the parties intent.

To the contrary, the precise New York rule is that "*[w]here no ambiguity
exists*, the plain language of the contract is the best evidence of the intent of the
parties." *ABC Radio Network, Inc. v. Lens Am., Inc.*, 1999 WL 771360, at *3
(S.D.N.Y. Sept. 28, 1999) (emphasis added). Here, the Ninth Circuit determined
that Section 6.2 is ambiguous, and "[w]hen a court has determined that a contract is
ambiguous, it has determined that the 'best evidence' of the parties' intent—the
parties' words as memorialized in the agreement—failed to indicate the parties'

intent." *Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 341-42 (S.D.N.Y. 2014). That means that a jury *cannot* resolve the ambiguity based on the written contract alone.

*Second*, and relatedly, New York law forecloses the Court's conclusion that a jury may determine the parties' intent based entirely on the language of the contract without even considering the extrinsic evidence. In New York, the jury's *only task* in the case of an ambiguous contract is to examine the extrinsic evidence to determine the parties' intent. As New York's highest court has explained, "[i]f there is ambiguity in the terminology used … and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, *then such determination is to be made by the jury*." *Hartford Accident & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 172 (1973) (emphasis added). But "if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court." *Id.* Otherwise said, the question of the parties' intent with respect to an ambiguous contract provision "will rise to be a triable issue of fact [only] if relevant, disputed, extrinsic evidence is offered or present," *Mallad Const. Corp. v. Cnty. Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 293 (1973)—if there "is no disputed extrinsic evidence of intention, then a question of law only is present" that must be decided "by the court alone," *id.*, not by a jury.

That basic principle forecloses the Court's related conclusions that (i) the jury can rely only on the contract language to determine the parties' intent, and (ii) the jury need not consider the extrinsic evidence when determining that intent. The first conclusion is irreconcilable with the principle of New York law that when there is no extrinsic evidence, there is no jury factfinding at all. And the second conclusion cannot be right because the jury's only job in the case of an ambiguous contract is to consider "the credibility of extrinsic evidence or a choice among inferences to be

drawn from extrinsic evidence," since only when such disputes concerning extrinsic evidence exist is "the issue [of the parties' intent] is one of fact."  *Joseph v. Rubinstein Jewelry Mfg. Co.*, 18 A.D.3d 615, 615 (2d Dep't 2005).

Here, the Court has already concluded that the dispute concerning the parties' intent is one of fact.  On remand from the Ninth Circuit, the Court held that it "must decline to enter summary judgment *given the conflict in the extrinsic evidence*." ECF No. 390 at 9 (emphasis added).  Indeed, as the Court itself explained—quoting the Second Circuit's recent decision *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388 (2d Cir. 2023)—"[i]f a contract is ambiguous and 'one or both parties offer extrinsic evidence that is capable of resolving the ambiguity as to the meaning of the contract given its bearing on the facts, there is an issue of material fact to be resolved by the factfinder, which will dictate the interpretation of the contract.'" ECF No. 390 at 8 (quoting *Ezrasons, Inc.*, 89 F.4th at 400).  The consequence of that rule—as the *Ezrasons* court itself made clear—is that "[w]hen a contract is ambiguous, [the court] *must* determine whether extrinsic evidence provided by the parties can resolve the ambiguity."  *Ezrasons, Inc.*, 89 F.4th at 399-400 (emphasis added); *see also, e.g.*, *Hoover v. HSBC Mortg. Corp. (USA)*, 9 F. Supp. 3d 223, 241 (N.D.N.Y. 2014) (when a contract is ambiguous, the "Court *must* then turn to extrinsic evidence to determine the parties' intent") (emphasis added); *A.J. Temple Marble & Tile, Inc. v. Long Island R.R.*, 256 A.D.2d 527, 528 (N.Y. App. Div. 1998) ("Thus, the contract is ambiguous … and the Supreme Court *must* rely on extrinsic evidence to discern the intent of the parties.") (emphasis added).  And yet the Court's May 2024 jury charge not only expressly authorized the jury to decide the parties' intent without considering the extrinsic evidence at all, but also directed the jury away from the extrinsic evidence by instructing that the written contract was the best evidence of the parties' intent.

For the proposition that a jury can resolve the parties' intent without considering extrinsic evidence, the Court cited the pattern jury instruction commentary's statement that "[w]here a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent." *NY Pattern Jury Instr.—Civil 4:1* (commentary Section VI.A.2 ("Contract Construction—Ambiguous Contracts")); *see* ECF No. 640 at 9. But that statement appears in the legal commentary accompanying the pattern jury instruction, not in the language of the pattern instruction itself. And the statement does not mean that a factfinder can resolve a contract *ambiguity* without considering extrinsic evidence. *Rather, "may" is used in that sentence to contrast the rule for unambiguous contracts, where consideration of extrinsic evidence "may not" be considered at all—the point is that courts are allowed to (i.e., "may") consider only when the contract is ambiguous. See, e.g.*, *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002) ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide."). As one court applying New York law put it, "[w]hile extrinsic evidence generally *may not* vary or contradict the terms of a fully integrated document, it *may* be used to interpret facially ambiguous language in the contract." *Hoover*, 9 F. Supp. 3d at 241 (emphasis added); *compare NY Pattern Jury Instr.—Civil 4.1* (commentary Section VI.A.2 ("Contract Construction—Ambiguous Contracts")) ("[e]xtrinsic and parol evidence *may not* be considered unless it is determined that the document itself is ambiguous"), *with id.* ("Where a contract is ambiguous, extrinsic evidence *may* be considered to determine the parties' intent.") (emphases added).

But that does not mean that the factfinder is allowed to ignore extrinsic evidence when such evidence is offered in the case of an ambiguous contract. That is why the *Hoover* court explained in the same breath that (i) extrinsic evidence "may not" be used when the contract is not ambiguous but "may" be used if it is,

1  and that (ii) once a court finds a contract to be ambiguous, it "*must* then turn to

2  extrinsic evidence to determine the parties' intent." *Hoover*, 9 F. Supp. 3d at 241

3  (emphasis added).  Any other rule would be inconsistent with the basic principle that

4  the jury only has a role in contract cases when the contract is ambiguous *and* when

5  (as here) "the credibility of extrinsic evidence or a choice among inferences to be

6  drawn from extrinsic evidence" exists such that "the issue [of the parties' intent] is

7  one of fact." *Joseph*, 18 A.D.3d at 615.

8          None of this is to say that a jury must *credit* extrinsic evidence.  As the Court

9  rightly explained, there is no basis to "usurp the factfinder's role and require the jury

10  to give weight to the extrinsic evidence."  ECF No. 640 at 9.  Indeed, the Court

11  elsewhere correctly instructed the jury that "[i]t is for you to decide how much

12  weight to give to any evidence."  ECF No. 553 at 8 (Instr. No. 7).  But that principle

13  does not justify the Court's May 2024 instruction, because that instruction not only

14  (incorrectly) told the jury that the written contract is the "best evidence" of the

15  parties' intent with respect to an ambiguous contract, but also that the jury need not

16  even look at the extrinsic evidence *at all*.  *See* ECF No. 553 at 31 (Instr. No. 28)

17  ("Evidence outside the written contract *may be considered* to determine the parties'

18  intent." (emphasis added)).  A jury would have to first *consider* the extrinsic

19  evidence before determining that it deserves no weight.  And if the jury did consider

20  the extrinsic evidence and found it all valueless, the result would not then be that the

21  jury decides the case based only on the contract language—again, that is not the

22  jury's proper role, *see supra* at 16-17.  Rather, as the Court properly instructed the

23  jury, Netlist has the burden of proving that the parties intended Netlist's

24  interpretation, *see* ECF No. 553 at 31 (Instruction No. 28), and if Netlist does not

25  offer extrinsic evidence of value to support its interpretation, then it will have failed

26  to meet its burden of proof.

27

28

*Finally*, Samsung respectfully submits that the Court's instruction with respect to extrinsic evidence was incomplete because it did not explain to the jury what kind of "[e]vidence outside the written contract" could be relevant to determining the parties' intent with respect to Section 6.2.  But New York courts have articulated the types of extrinsic that are relevant to construing ambiguous contracts, including:

- Evidence of negotiations and circumstances surrounding execution can be relevant extrinsic evidence, *see 67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (1975);
- The "past practice of the parties," *Aeneas McDonald Police Benevolent Ass'n v. City of Geneva*, 92 N.Y.2d 326, 333 (1998).
- "Industry custom and practice," *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 459-60 (2004);
- "[W]hat would be commercially reasonable," *In re MPM Silicones, LLC*, 874 F.3d 787, 796 (2d Cir. 2017); and
- The parties' "course of conduct throughout the life of the contract," *Hoyt v. Andreucci*, 433 F.3d 320, 332 (2d Cir. 2006).

Samsung requests that the Court's instruction make the jury aware of what categories of evidence outside the contract it can consider.  Under the Court's May 2024 instruction, there is nothing to guide the jury concerning what is and is not relevant extrinsic evidence.  Instructing the jury on the types of evidence that are probative of the parties' intent under New York law will help the jury better understand and assess the extrinsic evidence on which the jury may properly rely.

\* \* \*

In light of the foregoing, Samsung respectfully submits that there is good cause to modify the last paragraph of Instruction No. 28 as described above.

Case 8:20-cv-00993-MCS-ADS   Document 656   Filed 02/10/25   Page 26 of 29   Page ID #:27932

## C.    Modification To Witness List

There is good cause to modestly modify the witness list.[8]  Samsung does not request to add any witness that was not identified on the parties' witness lists submitted for the May 2024 trial.  Rather, Samsung seeks the right to call live at trial three witnesses who testified by deposition at the 2024 trial:

- Gail Sasaki was subpoenaed by Samsung to appear live at the May 2024 trial, but that subpoena was quashed in view of a pre-planned vacation.  ECF No. 493.  Samsung, thus, was only able to present her testimony at the May 2024 trial by deposition.  Samsung has now subpoenaed Ms. Sasaki again and would like to reserve the right to call her live (or by deposition) at the upcoming trial.

- Netlist called Kyuhan Han and Ho-Jung Kim to testify at the 2024 trial by deposition.  Consistent with Netlist's own witness list, in which it reserves the right to call any witness on Samsung's witness list, Samsung requests the right to similarly call any witness on Netlist's witness list, including the right to bring Kyuhan Han and Ho-Jung Kim to testify live at this year's trial.  There would be no prejudice to Netlist, given that both witnesses are on Netlist's witness list (*see* ECF No. 522 at 3, 5) and Netlist relied on their testimony at the 2024 trial.[9]

---

[8] On the due date for filing the present motion, and without any meet and confer, Netlist identified additional modifications it wished to make to the Final Pretrial Conference Order to argue why Samsung should not be permitted to make its requested changes to the Witness List. The bases for Netlist's objections are without merit and have been previously addressed by this Court.  Samsung will address those objections in response to Netlist's motion and/or at the final pretrial conference.

[9] Though not a modification of the witness list, on January 31, 2025, Samsung provided Netlist with additional designations from the deposition of Netlist's

### D.    Modification To Exhibit List

Finally, there is good cause to modify the exhibit list.  In the May 2024 trial Netlist elicited testimony and introduced a document describing the contents of an agreement that Netlist entered with SK hynix Inc. in 2021.  *See, e.g.*, May 2024 Tr. 244:13-247:17.  The agreement itself was not on the exhibit list and not introduced at trial because Netlist never produced it in this litigation.  The Court admitted Netlist's secondary evidence describing the agreement's contents over Samsung's objection that this evidence was inadmissible under the best evidence rule, which provides that "[a]n original writing," such as a contract, "is required in order to prove its content."  Fed. R. Evid. 1002.  Samsung was, thus, precluded from verifying the characterization of the agreements by Netlist's witnesses. Samsung has served a trial subpoena for Netlist's agreements with SK Hynix Inc., and there is good cause to add these documents to the exhibit list so that the parties may establish their terms using written documents itself, consistent with the best evidence rule.

## III.   CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court modify the trial documents consistent with the arguments above and the redline documents submitted concurrently with this motion.

---

30(b)(6) witness, Chuck Hong.  Samsung reserved the right to play this testimony during its case in chief.  *See Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 525-26 (C.D. Cal. 2008) (testimony from a corporate designee "is the corporation's testimony, and if the corporation is a party, 'the testimony may be used at trial by an adverse party for any purpose'").  Doing so would create no prejudice to Netlist, as it may either call Mr. Hong live at trial or counter-designate his deposition testimony.

DATED: February 10, 2025          O'MELVENY & MYERS LLP

By:      /s/ Daniel M. Petrocelli
         Daniel M. Petrocelli
         Attorneys for Defendant Samsung

# CERTIFICATE OF COMPLIANCE

     The undersigned, counsel of record for Samsung Electronics Co., Ltd., certifies that this brief contains 6,987 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  February 10, 2025     By:  */s/ Daniel M. Petrocelli*
                                  Daniel M. Petrocelli

SAMSUNG'S MOTION TO MODIFY TRIAL DOCUMENTS