# Exhibit A

1

2

3

4

**NOTE CHANGES MADE BY THE COURT**

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10 **SOUTHERN DIVISION**

11

| | |
|---|---|
| 12  NETLIST INC., a Delaware corporation, | Case No. 8:20-cv-00993-MCS-ADS |
| 13          Plaintiff, | **[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER** |
| 14     v. | |
| 15  SAMSUNG ELECTRONICS CO.,<br>LTD., a Korean corporation, | |
| 16 | Judge:  Mark C. Scarsi |
| 17          Defendant. | Final Pretrial Conferences:<br>Date:   March 10 , 2025<br>Time:  2:00 p.m. |
| 18 | |
| 19 | Trial:  March 18, 2025 |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

1. THE PARTIES AND PLEADINGS ..................................................................1

2. JURISDICTION ..............................................................................................1

3. TRIAL DURATION .........................................................................................1

4. JURY TRIAL ...................................................................................................1

5. ADMITTED FACTS .........................................................................................2

6. STIPULATED FACTS ......................................................................................2

7. PARTIES' CLAIMS AND DEFENSES ............................................................2

8. REMAINING TRIABLE ISSUES ..................................................................14

9. DISCOVERY .................................................................................................15

10. DISCLOSURES AND EXHIBIT LIST ..........................................................15

11. WITNESS LISTS ..........................................................................................16

12. MOTIONS IN LIMINE..................................................................................17

13. BIFURCATION .............................................................................................19

14. ADMISSIONS ...............................................................................................23

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.**  **THE PARTIES AND PLEADINGS**

The parties are Plaintiff Netlist Inc. ("Netlist") and Defendant Samsung Electronics Co., Ltd. ("Samsung").  Netlist's First Amended Complaint, filed on August 31, 2020, alleged claims for (1) breach of contract as to the supply obligation in the Joint Development and License Agreement ("JDLA"); (2) breach of contract as to Samsung's failure to pay the full Non-Recurring Engineering ("NRE") fees; and (3) declaratory relief that Netlist effectively terminated the JDLA under Section 13.2 by July 20, 2020.  Dkt. 22.  The Ninth Circuit instructed the district court to enter judgment for Samsung on Plaintiff's second claim for relief.  Dkt. 334.

Samsung filed its Answer to Netlist's First Amended Complaint on November 6, 2020.  Dkt. 27.  The Ninth Circuit concluded that the district court correctly precluded Samsung from asserting at trial the affirmative defenses of waiver, estoppel, and acquiescence.  Dkt. 334.  No other affirmative defenses are at issue for trial.

**2.**  **JURISDICTION**

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. § 1332(a) and 28 U.S.C. §§ 2201, 2202, and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b) and (c).

**3.**  **TRIAL DURATION**

The trial is estimated to take four (4) days.  **Each party will be allotted seven hours to present its case.  Time will run against a party when it makes opening and closing arguments (if any) and when it questions a witness, whether on direct, cross, redirect, or recross.  Each party must reserve at least half an hour of its allotment for closing argument.**

**4.**  **JURY TRIAL**

The trial is to be a jury trial.  Netlist and Samsung have served and filed (1)

joint proposed jury instructions; (2) disputed proposed jury instructions; (3) competing proposed verdict forms; (4) proposed statements of the case; and (5) proposed additional voir dire questions, if any.

**5.    ADMITTED FACTS**

With respect to the remaining issues for trial, Samsung admits that it materially breached the JDLA under Netlist's interpretation.

**6.    STIPULATED FACTS**

With respect to the remaining issues for trial, there are no additional facts that are currently stipulated.

**7.    PARTIES' CLAIMS AND DEFENSES**

**Plaintiff's Claims:**

*Plaintiff's Statement Concerning Its Claims***:**

(a) Plaintiff plans to pursue the following claims against Defendant:

**Claim 1:**  Samsung breached its contract with Netlist by failing to supply NAND and DRAM products to Netlist as required by § 6.2 of the parties' Joint Development and License Agreement ("JDLA").

**Claim 2:**  Netlist has also pled and maintains its claim for declaratory relief that it terminated its contract with Samsung, and that all licenses and rights previously granted thereunder ceased, on July 15, 2020.

(b) The elements required to establish Plaintiff's claims are as:

**Claim 1:**  The sole question for the jury to decide on Netlist's breach of contract claim is whether Samsung failed to do "what it was required to do under" under Section 6.2 of the JDLA, N.Y. Pattern Jury Instr.--Civil 4:1, as the other elements of Netlist's breach of contract claim have already been determined in Netlist's favor or are not in dispute.[1]  This Court already determined that Netlist

---

[1] *Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (2014) ("The essential elements of a breach of contract cause of action are "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach.").

performed its obligations under the JDLA, and Samsung did not appeal this ruling. Court's Ruling on Summary Judgment (Dkt. 186) at 13:28-14:1 ("There is no genuine dispute that Netlist performed its obligations under the JDLA."). This Court also previously determined that Netlist suffered nominal damages as a result of Samsung's breach, Dkt. 186 at 17:3-18, and Ninth Circuit affirmed. *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023) ("To the extent Samsung contends that the district court independently erred by awarding nominal damages following the jury's finding that Netlist had not suffered actual damages from the breach of § 6.2, we disagree.") (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993)); Minute Order Requiring the Parties to Revise Trial Filings (Dkt. 453) at 2 ("The law of the case likely requires a finding for Netlist on the issue of breach if the jury adopts Netlist's interpretation of JDLA § 6.2.").

**Claim 2:**  Section 13.2 of the JDLA gives a party the right to terminate the agreement if the other party "is in material breach of this Agreement and it is not cured within thirty (30) days period from the other Party's written demand, or as a consequence of the breach the purpose of this Agreement cannot be achieved."  The Court has already concluded that Netlist properly followed the termination procedures of the JDLA, and Samsung did not appeal that ruling.  Dkt. 186 at 18:11-27 ("Netlist Complied with the Termination Term.").  Moreover, Samsung now does not contest that, if the jury accepts Netlist's interpretation of the JDLA, then Samsung's breach was material.  Thus, as to Claim 2, the only question for the jury to determine is whether Samsung materially breached the JDLA under other possible interpretations of the JDLA.  Under New York law,[2] a breach is material if it goes to the root of the agreement between the parties.  Materiality does not depend upon the amount of provable money damages, if any.  The following are the non-exhaustive

---

[2] New York law governs the contract. See Dkt. 390 at 8.

factors for materiality: "the extent to which the injured party will be deprived of the benefit which he reasonably expected, the likelihood that the party failing to perform or to offer to perform will cure his failure, the quantitative character of the default, and the breaching party's good faith or willfulness." *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *3 (9th Cir. Oct. 17, 2023).

Materiality does not depend upon the amount of provable money damages. *See, e.g., ESPN v. Office of Com'r*, 76 F. Supp. 2d 416, 421 (S.D.N.Y. 1999) ("Baseball's ability to recover only nominal damages does not impede its ability to present testimony and evidence regarding the materiality of ESPN's breach"); *Doner-Hedrick v. New York Inst. of Tech.*, 874 F. Supp. 2d 227, 242 (S.D.N.Y. 2012) ("Materiality does not depend upon the amount of provable money damages, it depends upon whether the nonbreaching party lost the benefit of its bargain."); *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023) ("To the extent Samsung contends that the district court independently erred by awarding nominal damages following the jury's finding that Netlist had not suffered actual damages from the breach of § 6.2, we disagree.") (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993)).

(c) The Key Evidence Plaintiff Relies on for Each Claims is as follows:

**Claim 1:**   Netlist's interpretation that section 6.2 of the JDLA required Samsung to supply Netlist with NAND and DRAM products at Netlist request without limitation to the parties' joint development project or product is supported by the plain language of the agreement, the parties' negotiations, Samsung's own admissions, and the parties' consistent course of dealing. *See* N.Y. Pattern Jury Instr.—Civil 4:1 ("[T]he best evidence of the parties' intent is what they express in their written contract.") (citing *Tomhannock, LLC v Roustabout Resources, LLC*, 33 NY3d 1080, 104 NYS3d 596, 128 NE3d 674 (2019)). *GE Funding Cap. Mkt. Servs., Inc. v. Nebraska Inv. Fin. Auth.*, No. 15 CIV. 1069 (LGS), 2017 WL 2880555, at *4 (S.D.N.Y. July 6, 2017), *aff'd*, 767 F. App'x 110 (2d Cir. 2019) ("Extrinsic evidence

may include 'the acts and circumstances surrounding execution of the ambiguous term,' . . . 'conversations, negotiations and agreements made prior to or contemporaneous with the execution of a written [agreement],' . . . and 'the parties' course of conduct throughout the life of the contract.'").

If the jury were to reject Netlist's interpretation, Netlist will present evidence demonstrating that Samsung breached JDLA's supply clause even under other interpretations. Samsung contends that, because the Court granted Samsung's Rule 50(a) motion for partial judgment as a matter of law on this issue at the last trial, there is no basis to retry it. This is incorrect.

First, nothing prevents Netlist from introducing additional evidence on retrial to support its theory that Samsung breached the JDLA even under its own interpretation. "A new trial proceeds de novo" and a court may allow "additional evidence" not introduced at the prior trial. *F.B.T. Prods., LLC v. Aftermath Recs.*, 827 F. Supp. 2d 1092, 1100 (C.D. Cal. 2011); *see also Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 2023 WL 4564748, at *2 (E.D. Cal. July 17, 2023) ("Thus, on retrial, the 'parties are not confined to the evidence previously adduced' at the first trial."). The fact that this Court found that Netlist had produced insufficient to support this theory at the first trial is thus irrelevant. "In the retrial" Netlist is "free to present additional evidence and change [its] emphasis to plug the hole that existed" under this theory. *Cooper v. Woodford*, 2010 WL 2571872, at *12 (N.D. Cal. June 22, 2010), *aff'd*, 498 F. App'x 734 (9th Cir. 2012); *see also Quiksilver, Inc. v. Kymsta Corp.*, 360 F. App'x 886, 888 (9th Cir. 2009) ("[L]aw of the case" does not apply where there is "substantially different evidence presented at retrial.")

Second, as this Court has recognized, Samsung's interpretation of the JDLA has repeatedly changed over time, and may yet change again in the retrial. Dkt. 510 at 20:24-24 ("Netlist's pleadings, discovery responses, and motion papers do not foreclose it from presenting a breach case upon the theory of the contract Samsung intends to proffer at trial. This is especially true given the several interpretations of §

6.2 Samsung offered over the course of its defense of this case.").

Samsung has changed its interpretation of the JDLA over time, including in its interrogatory responses. Its original interrogatory response stated that Section 6.2 was just a pricing clause:

> Subject to and without waiving its objections, **Defendant responds as follows: *Defendant's business understanding*** is that Section 6.2 of the Agreement is a price-setting term that creates only the obligation to sell products at a competitive price, without the obligation to sell any particular quantity of products. This ***understanding has not changed over time***.

Samsung Response to Interrogatory No. 21. Samsung then changed to a new position, which it ironically again stated has never changed, which is that Section 6.2 only obligated supply "if and when the NVDIMM-P standard underwent successful productization and commercialization":

> Subject to and without waiving its objections, ***Defendant responds as follows: Defendant's*** business understanding is that Section 6.2 of the Agreement is a price setting term that creates only the obligation to sell products at a competitive price, without the obligation to sell any particular quantity of products, where such products relate to and are required for the joint development of a new NVDIMM-P standard contemplated by the Agreement, and a supply of NAND and DRAM products as raw materials if and when the NVDIMM-P standard underwent successful productization and commercialization as Chuck Hong confirmed in his deposition testimony. This ***understanding has not changed over time***.

Samsung Supplemental Response to Interrogatory No. 21.

In the JDLA there are separate definitions of NVDIMM-P and the Joint Development Product:

> **"JDP"** or **"Joint Development Project"** means the collaborative efforts by the Parties to develop the Product Specifications and the Developed Product under this Agreement pursuant to, and within the scope of, the Statement of Work, and to promote a standard interface for the Developed Product pursuant to the Development Milestones and otherwise as set forth in this Agreement.

> **"NVDIMM-P Product"** means non-volatile dual in-line memory module, which combines a smaller density of fast memory like DRAM with a higher density of slower memory like NANO or other device such as PRAM and controller IC for the foregoing memory within the same package or on the same board, together with any supporting

circuitry. This module can be considered as large (non-volatile) memory or fast storage in system.

Tr. Ex. 47 at 2-3. As a result, a product can satisfy the definition of NVDIMM-P and still not satisfy the definition of the Joint Development Product. Samsung admitted that NVDIMM-P has in fact been standardized. Tr. Tr. at 730 (Indong Kim) ("Q. What was the result of the effort by Samsung and those other companies to standardize NVDIMM-P? . . . A. And eventually, to my understanding, the standardization -- or standard specification had been promulgated as of 2021.").

At trial, Samsung emphasized an email by a Netlist executive stating that Samsung had an obligation to supply NVDIMM:

> Here is one example, Exhibit 10. And it does -- this is a message from Paik Ki Hong, Netlist's sales executive to Samsung. It says, we have a JDLA that states Samsung will support Netlist. You must have heard that statement a dozen times during the trial. But they never pointed you to the next sentence. We have on paper that Samsung will support Netlist with components for NVDIMM.

Tr. Tr. at 862:13-19 (Samsung's Closing). And Netlist can present evidence that products used in NVDIMM were withheld. For example, internal Samsung documents indicate that it was withholding requests from netlist for NVDIMM pieces:

From: SuJin Park [mailto:s0015.park@samsung.com]
Sent: Monday, January 15, 2018 10:20 PM
To: Harrison Yoo <hsang.yoo@samsung.com>
CC: Changmok Kang <cm0716.kang@samsung.com>; Val (Valeriia) Pletneva <valeriia.p@partner.samsung.com>; Yoon-seok Yang <y.yang@samsung.com>; Ji-ho Han <jiho1224.han@samsung.com>; Song-won Kim <sean.sw.kim@samsung.com>
Subject: RE: FW: [Need to check] Sample confirmation from Netlist

Back in April of last year, we had a discussion on whether to go ahead with the components for Modular. Back then, there was an opinion that as for the components for use in NVDIMM, it would be advisable to just go ahead with other companies excluding NETLIST due to contractual (?) issues between the two companies.

Tr. Ex. 72 at 6. As a result, Samsung could be found to have breached its obligation if the obligations is limited to NVDIMM or NVDIMM-P but broader than the Joint Development Project.

Samsung obviously recognized this flaw and represented to the Court at the last trial that its position was the following:

> We have been very clear. Under our interpretation, our obligation to supply, to the extent there was an obligation in 6.2, it is for the NVDIMM-P joint development project.

Tr. Tr. at 773:10-13. It has now decided to change its position again. Below it announces that "Section 6.2 is limited to the needs of the joint development project—from the development and standardization through commercialization of the NVDIMM-P product the parties agreed to attempt to develop together," as stated below. To be clear, this new language is disclosed nowhere in its interrogatory responses.

And as evidence that Samsung cannot make up its mind, Samsung's proposed jury instructions are phrased differently: "Samsung claims that the words mean that Samsung agreed to supply NAND and DRAM products to Netlist for the parties' NVDIMM-P joint development project on Netlist's request at a competitive price." Samsung's Proposed Instruction 28.

Samsung's contention that "Netlist has only ever asserted a single theory of breach of Section 6.2" is also incorrect. As the Court previously held:

> Netlist at all times has maintained a claim of liability for breach of JDLA § 6.2 due to Samsung's failure "to supply [NAND and DRAM] products to Netlist on request." (Compl. ¶ 16, ECF No. 1.) The Court resists Samsung's call to read the pleading to cabin the breach claim only to Netlist's interpretation of the provision. Netlist is entitled to prove its claim of breach under ***any interpretation of the section to which the contract is reasonably susceptible, including Samsung's***.

Dkt. 510 at 21:2-8 (emphasis added).

The Court should thus not foreclose Netlist from proving breach under any interpretation that Samsung may offer or any other interpretation that is supported by the evidence introduced at trial. As this Court previously held, the jury could "reject[] both parties' interpretations and divines its own (for example, one of the

interpretations of § 6.2 Samsung previously advanced, (see Proposed FPTCO 4–5)).” Dkt. 453 at 2. As a matter of law, the jury is not bound to accept either party’s interpretation of the contract. *See, e.g., Pabban Dev. Inc. v. Sarl*, No. SA-cv-1000533-BRO-RN-BX, 2014 WL 12585802, at *5, n.4 (C.D. Cal. Aug. 8, 2014) (“[T]he jury here was not required to return a verdict that complied with the parties’ understanding of the [contract]. Rather, it was required to weigh the evidence presented to it by the parties and render its verdict.”); *see also Davis v. MPW Indus. Servs.*, 535 F. App'x 220, 222 (4th Cir. 2013) (unpublished) (refusing to “jettison the jury’s award because it is inconsistent with the parties' theories of the case”); *Gallo v. Crocker*, 321 F.2d 876, 879 (5th Cir. 1963) (“The jury was not required to accept, in its entirety, the theory of either party, and it was its duty to consider all the testimony of the witnesses in the light of the physical facts and the circumstances shown.”). Thus, as this Court previously held, “Netlist should be given an opportunity to prove breach under the jury’s interpretation even if that interpretation does not align with its own.” Dkt. 453 at 2.

Netlist will demonstrate that Samsung breached the JDLA’s supply clause through (1) witness testimony, which may include but is not limited to testimony from the witnesses named on Netlist’s Witness List filed on February 26, 2024. Dkt. 404; and (2) documentary evidence, which may include, but is not limited to, the exhibits numbered between 0 and 1000 on the Joint Exhibit List filed on February 26, 2024. Dkt. 407-1.

**Claim 2:**   Netlist will demonstrate that Samsung’s breach of the JDLA’s supply clause was material through the same witness testimony and documentary evidence discussed above.

### ***Defendant’s Statement Concerning Plaintiff’s Claims and Defenses*:**

There are two claims remaining to be resolved:  Netlist’s first claim for relief for breach of Section 6.2 of the parties’ Joint Development and License Agreement

("JDLA") and Netlist's third claim for declaratory relief.[3]

Netlist's first claim for relief requires the jury to determine the parties' intent with respect to Section 6.2 of the JDLA, namely, whether, as Netlist contends, the parties intended that Section 6.2 imposed on Samsung an obligation to supply Netlist with NAND and DRAM at Netlist's request with no limitation; or, as Samsung contends, the parties intended that the supply obligation under Section 6.2 is limited to the needs of the Joint Development Project—from the development and standardization through commercialization of the NVDIMM-P product the parties agreed to attempt to develop together.

If the jury finds that Netlist has met its burden of proving that its interpretation of Section 6.2 of the JDLA is correct, then Samsung does not dispute that it materially breached Section 6.2.  In that event, Netlist's third claim for relief does not present any further issues for the jury to decide.  If the jury finds that Netlist has ***not*** met its burden of proving that its interpretation of Section 6.2 is correct, then the Court has already concluded that Samsung did not breach the JDLA, granting Samsung's motion for partial judgment as a matter of law under Rule 50(a) on that ground.  *See* 5/16/24 Trial Tr. at 773:19-24.  There is no basis to retry that issue.  And because Samsung did not breach (and therefore did not materially breach) the JDLA in that event, then Netlist's third claim for relief similarly presents no further issues for the jury to decide.  If, however, the jury finds that Netlist has not met its burden of proving its interpretation ***and*** the Court permits Netlist to relitigate the issue of breach under Samsung's interpretation, then the jury must determine whether Samsung breached, and whether any breach was material.

Even setting aside the Court's Rule 50(a) ruling, as explained in detail in Samsung's statement in the parties' Joint Disputed Jury Instructions concerning the threshold issues of (1) whether the jury may make its own interpretation of the JDLA

---

[3] The Ninth Circuit ordered judgment for Samsung on Netlist's second claim for relief for breach of Section 3.1 of the JDLA. Dkt. 334.

and (2) whether Netlist may argue that Samsung breached Section 6.2 of the JDLA under Samsung's proffered interpretation, Netlist should not be permitted to now pursue a claim that Samsung breached Section 6.2 under any theory it has never raised at any stage in this litigation.

Netlist has only ever asserted a single theory of breach of Section 6.2:  that Samsung breached by failing to fulfill Netlist's requests for NAND and DRAM outside the context of the parties' joint-development project.  That is how Netlist pled its case, how it responded to discovery requests, how it opposed Samsung's motion for summary judgment both before and after remand, and how it argued its case to the Ninth Circuit.  And the Ninth Circuit held as a matter of law that Section 6.2 of the JDLA is reasonably susceptible to two interpretations.  Contrary to Netlist's contention, the law does not permit the jury to divine its own interpretation.  Netlist's attempt to conduct a "trial by ambush" contravenes fundamental fairness principles, would be highly prejudicial to Samsung, and should be rejected.

(a) Plaintiff's claims:

**Claim 1**[4]:  Netlist alleges that Samsung breached the supply obligation in Section 6.2 of the JDLA.  Specifically, Netlist claims that Section 6.2 required Samsung to supply unlimited amounts of NAND and DRAM for any purpose at Netlist's request, and that Samsung breached section 6.2 by failing to fulfill all of Netlist's requests.[5]  Netlist recently suggested that even if the jury determines Samsung's interpretation is correct, Netlist could argue Samsung breached Section 6.2 by failing to fill all of Netlist's requests for NAND and DRAM for the parties' Joint Development Project or the NVDIMM-P product.

---

[4] For purposes of this Final Pretrial Conference Order, to avoid confusion, Samsung is using Claim 1 to refer to Netlist's first claim for relief for breach of Section 6.2, and Samsung is using Claim 2 to refer to Netlist's third claim for declaratory relief.

[5] At the damages trial, the jury found Netlist suffered no damages, a finding Netlist did not appeal. If Netlist prevails, it is entitled only to nominal damages in the amount of $1. Dkt. 334.

**Claim 2:**  Netlist alleges that Samsung's breach of Section 6.2 was a material breach of the JDLA.  Netlist seeks a declaration that it properly terminated the JDLA under Section 13.2 as a result of Samsung's alleged material breach of Section 6.2.

(b) The elements required to establish Plaintiff's claims are:

**Claims 1 and 2:**  As explained above, the sole question for the jury to determine with respect to either remaining claim is the interpretation of Section 6.2 of the JDLA—whether, as Samsung contends, Section 6.2 required Samsung to supply Netlist with NAND and DRAM only as raw materials or components for the parties' collaboration to develop the NVDIMM-P product and for the manufacture and sale of the NVDIMM-P product if it were ever commercialized; or whether, as Netlist contends, Section 6.2 required Samsung to supply Netlist with NAND and DRAM at Netlist's request with no limitation and for any purpose.

Netlist has the burden of proving its interpretation of Section 6.2.  *See* N.Y. Pattern Jury Instr.—Civil 4:1 ("AB has the burden of proving, by a preponderance of the evidence, that (he, she, it) had a contract with CD requiring that CD [*state the nature of defendant's alleged contractual promise(s)*]") (brackets and italics in original).  Where, as here, a contract term is ambiguous, extrinsic evidence is necessary to determine the parties' intent "at the time they entered into the contract." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004); *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009); N.Y. Pattern Jury Instr.—Civil 4:1 ("Where a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent.").  Such extrinsic evidence includes "evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution" of the contract to ascertain the "intent of the parties" at the time of contracting, *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 248-49 (N.Y. 1975); industry custom and practice, *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458, 460 (2004); the parties' "course of conduct throughout the life of the contract," *Hoyt v. Andreucci*, 433 F.3d 320, 332 (2d Cir. 2006); and what would be commercially reasonable, *In re*

*MPM Silicones, LLC*, 874 F.3d 787, 796 (2d Cir. 2017).

What matters for purposes of determining the parties' intent is their expressed words or actions. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 126 (2d Cir. 2006). A parties' intent or understanding that was not communicated to the other party is not relevant extrinsic evidence of the parties' intent. *Id*. Nor is a party's claim of a right under the contract unless the other party knew of and acquiesced to that claim. *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 651 (1993).

If the jury determines that Netlist's interpretation is correct, Samsung does not dispute that it materially breached Section 6.2. Alternatively, if the jury determines that Netlist has not met its burden of proving that its interpretation is correct, then Samsung did not breach its obligation under Section 6.2, as the Court ruled in granting Samsung's Rule 50(a) motion on that issue. If the Court nevertheless permits Netlist to relitigate its claim of breach under Samsung's interpretation despite its previous ruling granting partial judgment as a matter of law to Samsung on that issue, the jury must determine whether Samsung breached and whether any such breach was material. For a breach to be material, it must go to the root of the agreement between the parties. *Process Am., Inc. v. Cynergy Holdings, Inc.*, 839 F.3d 125, 136 (2d Cir. 2016). Factors considered in determining whether a breach is material include the extent to which the injured party will be deprived of the benefit which he reasonably expected, the likelihood that the party failing to perform or to offer to perform will cure his failure, the quantitative character of the default, and the breaching party's good faith or willfulness. 9th Circuit Memorandum Opinion, Dkt. 334, at 7 (citing *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997); *Hadden v. Consol. Edison Co. of N.Y., Inc.*, 312 N.E.2d 445, 449 (N.Y. 1974); Restatement (Second) of Contracts § 241 (Am. L. Inst. 1981)).

(c) Key evidence in opposition to Plaintiff's claims.

**Claims 1 and 2:** Samsung will introduce evidence demonstrating that the

parties intended to limit Samsung's supply obligation under Section 6.2 of the JDLA to the parties' collaboration to develop the NVDIMM-P product; therefore, Samsung's failure to fulfill all of Netlist's requests for DRAM and NAND outside of the NVDIMM-P project or product did not constitute a breach of the JDLA.  If the Court permits Netlist to relitigate the issue of whether Samsung breached Section 6.2 even under Samsung's interpretation, notwithstanding its previous ruling granting partial judgment as a matter of law to Samsung on that issue, Samsung will also introduce evidence to rebut Netlist's claim of breach and materiality under this interpretation.  This evidence, described in further detail in Samsung's Memorandum of Contentions of Fact and Law, Dkt. 402, will include witness testimony, including the witnesses identified on Samsung's witness list, and documentary evidence, including the exhibits identified on the parties' joint exhibit list.

**Defendant's Counterclaims And Affirmative Defenses:**

Samsung has not pleaded any counterclaims and does not intend to raise any affirmative defenses at trial.

**8.    REMAINING TRIABLE ISSUES**

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

**Plaintiff's position:**

1. Did Samsung breach any of its obligations under Section 6.2 of the Joint Development and License Agreement?

2. If the jury accepts Samsung's interpretation of Section 6.2, was Samsung's breach of any of its obligations under Section 6.2 material?

**Defendant's position:**

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

1. Did Netlist prove that the parties intended at the time they entered into the JDLA that Section 6.2 of the JDLA required Samsung to supply Netlist

with NAND and DRAM products at Netlist's request for any purpose and not limited to components for the parties' Joint Development Project and the NVDIMM-P product.

If, on the other hand, the Court permits Netlist to relitigate its claim of breach under Samsung's interpretation of Section 6.2, then the following issues remain to be tried:

1. Did Netlist prove that the parties intended at the time they entered into the JDLA that Section 6.2 of the JDLA required Samsung to supply Netlist with NAND and DRAM products at Netlist's request for any purpose and not limited to components for the parties' Joint Development Project and the NVDIMM-P product.

2. If Netlist does not prevail on the first issue, did Netlist prove Samsung breached Section 6.2 of the JDLA by failing to supply NAND and DRAM products at Netlist's request for the parties' Joint Development Project or the NVDIMM-P product.

3. If Netlist prevails on the second issue, did Netlist prove that Samsung's failure to supply Netlist with NAND and DRAM products that Netlist requested for the parties' Joint Development project or the NVDIMM-P product was a material breach of the JDLA.

## 9.  <u>DISCOVERY</u>

All discovery is complete.

## 10.  <u>DISCLOSURES AND EXHIBIT LIST</u>

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").  In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

***Samsung's Position:*** In addition, Samsung is concurrently seeking leave to add to the Exhibit List the agreements that Netlist entered with SK hynix Inc. in 2021, which were described in Item 1.01 of Netlist's April 6, 2021 Form 8-K as "a Strategic Product Supply and License Agreement … and Product Purchase and Supply Agreement."

***Netlist's Position:*** Samsung's request to add a new exhibit that was not produced in discovery is wholly improper. The Court made clear in its January 13, 2025 Order, that the new trial would be tried upon the parties' final "exhibit lists used in the May 2024 trial" and that "[d]iscovery remains closed." Dkt. 649 at 1. To the extent that Samsung believes the SK hynix agreements are relevant, it should have moved to compel them before "[f]act discovery in this case closed years ago." Dkt. 640 at 5:3 (order denying Samsung's request to reopen discovery after May 2024 trial). Samsung cannot show any "excusable neglect" for its extreme delay, *Id.* at 5:11-18, and allowing Samsung to reopen discovery on the eve of retrial would be highly prejudicial to Netlist.

## 11. <u>WITNESS LISTS</u>

Witness lists of the parties were filed with the Court on February 26, 2024, and updated on May 10, 2024.

***Samsung's Position:*** In addition, Samsung is concurrently seeking leave to revise the witness list to identify Gail Sasaki as a witness Samsung may call live or by deposition,[6] and to reserve the right to call live or by deposition, any witness appearing on Netlist's witness list. Only the witnesses identified on the lists (or any amended lists) will be permitted to testify (other than solely for impeachment or rebuttal).

---

[6] Ms. Sasaki was subpoenaed by Samsung to appear live at the first trial but that subpoena was quashed based on a vacation Ms. Sasaki had planned. Samsung, accordingly, identified her as a witness to be presented by deposition at the May 2024 trial. Ms. Sasaki has again been subpoenaed and, absent that subpoena being quashed, Samsung reserves the right to call Ms. Sasaki live.

***Netlist's Position***: Netlist opposes Samsung's proposed amendments to its witness list, including Samsung's belated request "to reserve the right to call live or by deposition, any witness appearing on Netlist's witness list." In specific Samsung is reserving the right to call live two of its Korean employees – Ho Jung Kim and Kyuhan Han. Samsung did not disclose Mr. Kim nor Mr. Han in its initial disclosures and has never provided addresses for these witnesses. Samsung also had every opportunity to add these witnesses to its own witness list prior to the May 2024 trial, but did not do so. Samsung has not and cannot show "good cause" to add these additional witnesses now. Dkt. 649 at 1. This is not an innocuous change. It is designed to be vexatious because Samsung has refused to disclose the address of these witnesses in the United States when and if they come to this country, in violation of Rule 26. "[W]itnesses, . . . cannot evade service yet at the same time expect to testify at trial." *Hamilton v. TBC Corp.*, 2018 WL 9815592, at *2 (C.D. Cal. Sept. 24, 2018) ("A reasonable litigant, mindful of his or her duty pursuant to Local Rule 37-1 to confer in good faith to eliminate the necessity for hearing a discovery motion, would have cooperated in arranging the depositions. Plaintiffs, however, refused to accept service of deposition subpoenas or to assist in arranging the depositions, even though Plaintiffs presumably will want to present their testimony at trial."); *see also United States v. MY Left Foot Children's Therapy*, LLC, 2017 WL 10442698, at *2 (D. Nev. Dec. 13, 2017) (where a party "has obtained [witnesses' commitment to testify at trial . . . it is incumbent on the party to inform the individual that if she refuses to disclose her address . . . she may be barred from testifying at trial."). This has two impacts. First, it allows Samsung to bluff and force Netlist to reserve time for witnesses that could never conceivably be called live because they are not in the country. Second, it is unfair to Netlist's case, because Samsung gains the benefit of more impactful live testimony but Netlist would have to call these witnesses by deposition.

**12.    MOTIONS IN LIMINE**

Motions *in Limine* and motion matters were filed with the Court on February 26, 2024.  The parties met and conferred on the motions *in limine*.  The Court heard the parties' motions *in limine* at the Final Pretrial Conference on May 6, 2024, and issued a decision on May 8, 2024.  The following motions *in limine* were decided by the Court's order:

*From Plaintiff*:

- Motion *in limine* to exclude any argument or evidence that the JDLA's non-recurring engineering ("NRE") fee constitutes payment for a patent license.  Dkt. 413.
- Motion *in limine* to exclude any argument or evidence on Samsung's rejected or abandoned defenses.  Dkt. 414.
- Motion *in limine* to permit Netlist to introduce testimony given by Samsung's witnesses during the patent litigation between the parties in the Eastern District of Texas.  Dkt. 417.
- Motion *in limine* to exclude any evidence or argument relating to the prior jury's finding that Netlist suffered no direct (i.e. cover) damages. Dkt. 418.
- Motion *in limine* to exclude any argument relating to post-termination sales or purchase orders of NAND and DRAM products.  Dkt. 419.

Pursuant to the Court's January 13, 2025 order setting a trial date and pre-trial conference (Dkt. 649), Netlist intends to move for a special jury instruction instructing the jury to disregard any testimony regarding Samsung supply agreements that were not produced in the litigation in violation of discovery obligations.

*From Defendant*:

- Motion *in limine* to exclude Netlist witnesses Scott Milton, Devon Park, and Noel Whitley from testifying at trial.  Dkt. 403.

- Motion *in limine* to exclude opinion of Netlist Expert Larry Tedesco. Dkt. 416.
- Motion *in limine* to preclude Netlist from presenting evidence of "uncommunicated subjective intent" as to the JDLA's meaning.  Dkt. 408.
- Motion *in limine* to preclude Netlist from presenting evidence regarding "consequential damages."  Dkt. 409.
- Motion *in limine* to preclude Netlist from presenting evidence of the value of Netlist's patents licensed to Samsung or the value of the license itself.  Dkt. 410.

Pursuant to § II.A.1 of the Court's Order re: Jury/Court Trial, Samsung intends to move for leave to file a sixth motion *in limine* based on the significant narrowing of the issues remaining in the case as a result of (i) Samsung's conceding materiality under Netlist's interpretation of Section 6.2 and (ii) the Court having granted Samsung's motion under Rule 50(a) finding no breach under Samsung's interpretation of Section 6.2.

- (Assuming leave to file a sixth motion *in limine* is granted) motion *in limine* to preclude evidence or argument relevant to breach or materiality under Netlist's interpretation.

Netlist opposes Samsung's request for leave.

## 13.    BIFURCATION

Plaintiff's Position:

While neither party is requesting bifurcation, the Court's minute order issued on March 8, 2024 asked whether the trial should be "bifurcated so the parties may try the issue of breach after the jury interprets the contract given that the universe of evidence probative of breach might materially shift depending on the interpretation." Dkt. 453 at 3.  Here, bifurcation would be highly inefficient because the questions of contract interpretation, breach, and materiality are inextricably intertwined.

Under Fed. R. Civ. P. 42, a court may bifurcate a trial on separate issues or claims where this would "expedite and economize" the proceedings.  Fed. R. Civ. P. 42.  Courts thus routinely decline to bifurcate trials where, as here, the evidence needed to prove each disputed issue necessarily "overlaps."  *Strategic Partners, Inc. v. FIGS, Inc.*, No. 2:19-CV-02286-JWH-KS, 2022 WL 17348175, at *3 (C.D. Cal. Sept. 26, 2022) ("The Court heavily weighs judicial economy when making the discretionary decision to bifurcate . . . [and] the overlap in evidence between the two [issues] counsels against bifurcation."); see also *Dees v. Allstate Ins. Co.*, No. C12-0483JLR, 2012 WL 3877708, at *1 (W.D. Wash. Sept. 6, 2012) "Where an overlap of factual issues exists between the claims, courts are reluctant to bifurcate the proceedings.").  This is because bifurcation would require a jury to consider the same arguments, witness testimony, and documentary evidence twice.  *See, e.g., Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SA-cv-1502034-JVS-JC-GX, 2018 WL 6136784, at *2 (C.D. Cal. Apr. 17, 2018) ("This overlap would necessitate that the jury hear duplicative arguments, evidence, and witness testimony.  Therefore, contrary to the purpose of Fed. R. Civ. P. 42(b), 'bifurcation of these claims would not be convenient, expeditious, or economical.'"); *Kraif v. Guez*, No. CV 09-08463 MMM (Ex), 2013 WL 12133882, at *5 (C.D. Cal. Aug. 30, 2013) ("Because of this overlap, bifurcation would result in the duplicative presentation of evidence, which is contrary to the purpose of Rule 42.").

That is exactly what would happen here if the Court were to bifurcate the trial into separate phases regarding interpretation and material breach.  Interpreting the contract will require the jury to consider extensive extrinsic evidence of the parties' intent, including the "circumstances surrounding execution" of the agreement, the parties' "conversations [and] negotiations," and the parties' "course of conduct" before a dispute arose.  *Nuance Commc'ns, Inc. v. Int'l Bus. Machines Corp.*, 544 F. Supp. 3d 353, 369 (S.D.N.Y. 2021), aff'd, No. 21-1758-CV, 2022 WL 17747782 (2d Cir. Dec. 19, 2022).  This evidence will demonstrate that the parties' struck the

following bargain:  in exchange for a license to Netlist's patent portfolio and other valuable consideration, Samsung agreed to supply Netlist with NAND and DRAM products on Netlist's request.

This same evidence also goes to the question of whether Samsung materially breached the agreement.  Under New York law, a breach is material if it goes "to the root of the agreement between the parties." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997).  Thus, materiality depends first and foremost on "whether the non-breaching party lost the benefit of its bargain." *Doner-Hedrick v. N. Y. Inst. Of Tech.*, 874 F. Supp. 2d 227, 242 (S.D.N.Y. 2012).  To answer that question, the jury must determine what the nature of the parties' bargain was.  That issue is necessarily intertwined with the issue of contract interpretation.  *See J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, 341 F.3d 149, 153 (2d Cir. 2003) ("In determining the proper interpretation of any contract, it is appropriate to consider the subject matter of the bargain.") (quoting Williston on Contracts 4th ed. § 38.22).

For example, one of the key items of extrinsic evidence that Netlist will offer to support its interpretation of the JDLA is the parties' course of performance after the JDLA was signed but before any dispute arose.  Netlist's Motion for Partial Summary Judgment on Contract Interpretation (Dkt. 355-1) at 17-18; *Gulf Ins. v. Transatlantic Reinsurance*, 886 N.Y.S.2d 133, 143 (2009) ("[T]he parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties.").  This evidence demonstrates that, for a period time after the JDLA was signed, Samsung provided Netlist with NAND and DRAM at Netlist's request until Samsung announced to Netlist that it was reversing course and significantly cut Netlist's supply in the spring of 2017. Dkt. 355-1 at 17-18. This exact same evidence—i.e., Samsung's sudden refusal to fulfill Netlist's orders—also establishes:  (1) that Samsung breached the parties' agreement and (2) this breach was material because it deprived Netlist of the benefit of its bargain, i.e., a

commitment to supply Netlist with memory products in a supply constrained market.

As another example, one of the key areas of extrinsic evidence on contract interpretation is the exchanges leading up to the final version of the Section 6.2. Netlist initially proposed to Samsung that Netlist license its patents for five years for $85 million and ongoing royalty payments. Dkt. 142-2 ¶ 12. Samsung provided a "counter-proposal" under which Netlist would receive far less cash and forego ongoing royalties, but as an alternative, Netlist would receive a supply of memory components from Samsung. *Id.* Later during negotiations, Samsung tried to back out of this commitment by inserting the following language into the draft agreement: "For the avoidance of doubt, any of the provisions under this Agreement will not be deemed to require Netlist to purchase any products or to require Samsung to supply any products to Netlist." Dkt. 179-1 at 86-88. Netlist then struck this language because "Samsung clearly agreed to provide Netlist with NAND and DRAM products at competitive pricing." Dkt. 157-5 at 29. This evidence is likewise relevant to both contract interpretation and material breach because it demonstrates that an obligation to supply regardless of what Samsung desired was a central element of negotiation.

As another example, the parties' communications after the JDLA was signed but before this dispute arose are also relevant to both contract interpretation and material breach. For example, in February of 2018, Paik Ki Hong (of Netlist) sent Samsung an email stating that Netlist could no longer "accept partial support" and that Samsung's decision to cut Netlist's allocation to zero has "impacted our business and impacted our ability to support our customers." Dkt.145-39. Mr. Hong's statement demonstrates that Netlist clearly communicated to Samsung that its failure to supply NAND and DRAM was not consistent with the parties' agreement (contract interpretation) and that this was having a severe adverse effect of Netlist's business (material breach). Similarly, an internal Samsung email to the Executive Vice President of Samsung's memory division (JS Choi) acknowledged that "there is an

1   obligation to supply NAND/DRAM at a competitive price if N company makes a

2   request" and that Samsung was providing Netlist with far less NAND and DRAM

3   that it had been requesting.  Dkt. 145-12 at 9.

4        Thus, bifurcating this trial will not limit the "universe of evidence" the jury

5   has to consider.  The jury will still have to consider the parties' full course of dealing

6   and the full negotiation history before it can even decide which interpretation of the

7   contract is correct.  The only difference is that, if this case is bifurcated, the jury

8   might have to consider this evidence twice when considering material breach.  This

9   is why courts in this circuit routinely refuse to bifurcate breach of contract cases.  *See*

10  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)

11  ("Defendants' profits, financial condition, and financial statements helped establish

12  Defendants' alleged business strategies, incentives, and practices, all of which were

13  relevant to Hangarter's claim for breach of contract.") (affirming decision not to

14  bifurcate).  The Court should do the same here.

15       Defendant's Position:

16       In light of Netlist's refusal to disclose to Samsung what theories of breach it

17  intended to present at trial, Samsung was unable to meet and confer with Netlist about

18  whether it would be appropriate to bifurcate interpretation from breach.

19       **Based on the arguments of the parties, the Court declines to bifurcate trial**

20  **at this time.**

21  **14.    ADMISSIONS**

22       The foregoing admissions having been made by the parties, and the parties

23  having specified the foregoing issues remaining to be litigated, this Final Pre-Trial

24  Order shall supersede the pleadings, and govern the course of the trial of this cause,

25  unless modified to prevent manifest injustice.

26

27       **IT IS SO ORDERED.**

28

Dated:  March 10, 2025

By: _____
Mark C. Scarsi
United States District Judge