JASON SHEASBY, SBN 205455
jsheasby@irell.com
MICHAEL HARBOUR, SBN 298185
mharbour@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

LISA S. GLASSER, SBN 223406
lglasser@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949.760.0991
Facsimile: 949.760.5200

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No. 8:20-cv-00993-MCS (ADS)<br><br>**NETLIST INC.'S REPLY IN SUPPORT OF MOTION TO AMEND THE JURY INSTRUCTIONS AND VERDICT FORM**<br>**[REDACTED]**<br><br>Date:     March 10, 2025<br>Time:     2 p.m. PT<br>Location: Courtroom 7C<br>Judge:    Hon. Mark C. Scarsi |

## I. INTRODUCTION

Samsung's arguments against Netlist's proposed modifications to the jury instructions and verdict form are simply an attempt to artificially cabin Netlist's case and confuse the jury. Netlist's Motion should be granted in full.

## II. NETLIST CAN PROVE MATERIAL BREACH UNDER INTERPRETATIONS OTHER THAN ITS OWN

### A. Netlist is Not Precluded From Demonstrating Material Breach Under Alternative Interpretations

Samsung argues that law of the case doctrine precludes Netlist from proving breach of the JDLA's supply clause under any interpretation other than its own. This is wrong for several reasons.

First, as a threshold matter, "[t]he doctrine of the law of the case is applicable only to final judgments." *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1068 (C.D. Cal. 2009), aff'd, 404 F. App'x 496 (Fed. Cir. 2010) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir.1995)). Thus, as Samsung's own cited authority acknowledges, "[a] district court is not bound by law of the case doctrine with respect to an interlocutory order . . . ." *Hawkins v. SimplexGrinnel, L.P.*, 2017 WL 6344798, at *2 (S.D. Cal. Dec. 12, 2017) (quoting *Ventures Edge Legal PLLC v. GoDaddy.com LLC*, 2017 WL 1075059, at *3 (D. Ariz. Mar. 22, 2017)). The Court's prior Rule 50(a) determination did not result in a final judgment and is therefore not law of the case.

Second, even if law of the case could be applied to interlocutory orders, it would not apply to a Rule 50(a) determination once a retrial has been ordered. Samsung does not dispute that "[a] new trial proceeds de novo," as if the first trial never occurred. Mot. at 3 (quoting *F.B.T. Prods., LLC v. Aftermath Recs.*, 827 F. Supp. 2d 1092, 1100 (C.D. Cal. 2011)). Courts accordingly hold that, on retrial, parties may present theories for which they failed to produce sufficient evidence at the first trial. *Id.* Thus, at the retrial, Netlist has the opportunity to "present additional evidence and change [its] emphasis to plug the hole that existed" at the last trial.

*Cooper v. Woodford*, 2010 WL 2571872, at *12 (N.D. Cal. June 22, 2010), *aff'd*, 498 F. App'x 734 (9th Cir. 2012).[1]

Third, even when the law of the case doctrine is applicable, i.e., after appeal of a final judgment, a district court may decline to follow it if there is "substantially different evidence presented at retrial." Mot. at 4 (quoting *Quiksilver, Inc. v. Kymsta Corp.*, 360 F. App'x 886, 888 (9th Cir. 2009); *see also Ash v. Tyson Foods, Inc.,* 664 F.3d 883, 889 (11th Cir. 2011) (holding that "the parties are permitted to introduce new evidence" to support their theories on remand); *Stephens v. S. Atl. Canners (Coca Cola Co.),* 848 F.2d 484, 492, n.6 (4th Cir. 1988) ("This is not to say that the issue of punitive damages may not be submitted to a jury on retrial if Stephens presents additional, competent evidence.").

Here, the retrial will not involve the same argument and evidence. For example, at the last trial, Samsung contested materiality under Netlist's interpretation, and this was a significant portion of its case. *See, e.g.,* Tr. Tr. 863:23-24 (Samsung's closing). This required Netlist to make strategic choices regarding the evidence it chose to introduce and the theories it chose to develop. But Samsung is no longer disputing that, if Netlist's interpretation is correct, Samsung materially breached the JDLA. Moreover, as explained further below, Netlist can introduce additional evidence demonstrating that Samsung also materially breached under its own interpretation as well as other alternative interpretations the jury might adopt. Section II.B *infra.*

The authorities Samsung cites do not support its position. Samsung relies on *United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000) where the court refused to revisit "a partial **summary judgment ruling**." Opp. at 9. In contrast, here, the Court held prior to the last trial that Netlist was entitled to present its theory that

---

[1] Samsung tries to distinguish *Cooper* on the ground that, there, the appellate court ordered a retrial after finding the evidence introduced at trial was insufficient once improperly admitted evidence was excluded. Opp. at 10, n.2. But this procedural distinction makes no difference. The key point in *Cooper* was that a retrial is "a legally required do-over, but a do-over is not usually and was not here an exact replication." *Cooper*, 2010 WL 2571872, at *12.

Samsung breached under alternative interpretations to the jury. Dkt. 453 at 2-3 ("Netlist should be given an opportunity to prove breach under the jury's interpretation even if that interpretation does not align with its own."). In other words, unlike in *Lummi*, here there is a material dispute of fact based on the existing record as to whether Samsung committed material breach under multiple different interpretations of the JDLA's supply clause.

Samsung also incorrectly characterizes *Hawkins v. SimplexGrinnel, L.P.*, 2017 WL 6344798 (S.D. Cal. Dec. 12, 2017) as "on point." Opp. at 8. In that case, the only argument the plaintiff offered for retrying an issue was pure "speculation" that "the guilty conscience of one of the defendants' former employees' will prevail, and the truth will come out" or that the attorney would be "more effective." *Id.*, at *3. In contrast, here, both parties have shifted their case strategies and Netlist can present concrete evidence that Samsung committed material breach of the JDLA under various interpretations.

### B. Netlist Can Prove Material Breach Under Multiple Interpretations, Including Samsung's Interpretation

Samsung claims that Netlist cannot show any material breach under Samsung's most recent interpretation, which effectively inserts "NVDIMM-P joint development project" into Section 6.2. This is wrong for numerous reasons.

First, Samsung's brief admits that the project included joint efforts towards commercialization of NVDIMM-P, not just provision of chips for samples. Samsung's brief states that its position "has consistently been that Section 6.2 requires it to supply NAND and DRAM products for the parties' NVDIMM-P joint development project, whether during the development stage ***or for a commercial product*** if such a product had ever been developed." Opp. at 13.[2]

---

[2] This is why Samsung's assertion that "Chuck Hong testified that Netlist had received all the NAND and DRAM chips they needed for the ***joint development work***" is misleading and irrelevant. Opp. at 11. Mr. Hong was discussing the samples Netlist had made for Samsung during the initial phase. Tr. Tr. at 391:3-4.

1    There is substantial evidence that, when Samsung cut off all Netlist support in May of 2017, it stopped supplying (among other things) any emmc chips to Netlist, which is a component of NVDIMM-P. Tr. Tr. 428:9-17 (Hong). At the last trial, Samsung argued this was irrelevant because the parties never got to the point of working to standardize NVDIMM-P with the relevant standard setting organization, JEDEC. Tr. Tr. at 707:13-18 (JMOL argument). Samsung's witness Indong Kim testified that, "from early on," Netlist did not work with Samsung on standardization "[s]o we could not even begin our collaboration for those standardization efforts." Tr. Tr. at 728:17-729:16 (Kim).

But Netlist can produce evidence showing that Mr. Kim's testimony is false. For example, in an email dated March 7, 2017, Mr. Kim emailed Netlist discussing the parties' standardization efforts:



Ex. 1 (PX-571) at 8. This email was sent well over a year after the JDLA was signed, and just before Samsung told Netlist it was cutting Netlist's support. Thus, Mr. Kim's claim at trial that, "from the beginning," Netlist failed to work with Samsung on standardization, was not true.

The parties' continued joint development work was hampered, not because of Netlist's supposed failure to collaborate with Samsung on standardization, but by Samsung's decision to cutoff Netlist's supply in May of 2017, including by refusing to provide Netlist with emmcs, a component of NVDIMM-P. There is also evidence

1  that in cutting off Netlist's supply, Samsung was directly impeding Netlist's efforts
2  to commercialize NVDIMM-P. For example, in internal emails, Samsung
3  acknowledges that some of the chips that Netlist was requesting were specifically for
4  "customers that are interested in NVDIMM." Ex. 2 (Tr. Ex. 55) at 43. A Samsung
5  executive then instructs the team to "mange the sales [to Netlist] to dwindle down
6  slowly." *Id.* at 1. Netlist should have the opportunity to present this evidence at the
7  retrial.

8        Further, as explained in Netlist's Motion, the jury could also adopt an
9  alternative interpretation of the JDLA's supply provision. The JDLA's definition of
10 NVDIMM-P is broad. It consists of any non-volatile dual in-line memory module that
11 combines DRAM, NAND, and a controller. Mot. at 5. This encompasses a range of
12 NVDIMM products. Thus, the jury could conclude that that Samsung breached the
13 JDLA by failing to supply Netlist with NAND and DRAM for NVDIMM-P as defined
14 under the JDLA.

15       Samsung argues there is no evidence that the parties intended to tie "Samsung's
16 supply obligation to the defined term NVDIMM-P Product, independent of the
17 NVDIMM-P joint development project." Opp. at 12. This is wrong. As discussed
18 above, Samsung's employees were specifically discussing the joint efforts to identify
19 customers "interested in NVDIMM." Further, as discussed in Netlist's Motion, in
20 2018, Netlist sent Samsung an email stating "[w]e have on paper that Samsung will
21 support Netlist with components for NVDIMM." Mot. at 6 (quoting T. Ex. 72).
22 Especially if, as Samsung claims, the Joint Development Project itself had already
23 failed by this point, Tr. Tr. at 728:17-729:16 (Kim), the parties' discussions about
24 Samsung's contractual obligation to "support Netlist with components for
25 NVDIMM" and focus on customers for "NVDIMM" shows that they understood
26 Samsung's "contractual obligation" at least includes the contractual definition of
27 NVDIMM-P. This contradicts Samsung's constrained position that the Joint
28 Development Project is limited to the specific Developed Product.

Yet further support for this comes from an internal Samsung email from June of 2019 in which Indong Kim discusses providing supply to Netlist for NVDIMM-N, and states that the terms should be governed by the supply clause of the JDLA:

[redacted]

Ex. 3 (PX-36)

Samsung attempts to avoid all of this evidence by arguing that a jury is not "free to divine its own interpretation of an ambiguous provision." Opp. at 16. But this flatly contradicts this Court's prior holding that the jury could "reject[] both parties' interpretations and divine[] its own," Dkt. 453 at 2, and the settled law that juries "need not accept the theories of the parties." Opp. at 15; *see also* Mot. at 7 (citing authorities). Samsung tries to hand wave away Netlist's authorities on the ground that they did not involve a situation in which a jury was allowed to "invent an interpretation of a contract not set forth by the parties." Opp. at 15-16. But this is a strawman. Netlist is not arguing that the jury can simply "invent" a new interpretation whole cloth. Rather, "the standard is whether there was sufficient evidence presented at trial to sustain the jury's finding." *Pabban Dev. Inc. v. Sarl*, 2014 WL 12585802, at *5 (C.D. Cal. Aug. 8, 2014). Thus, the jury should be entitled to adopt any interpretation of the supply provision that is supported by the evidence.

Contrary to Samsung's assertion, nothing in the Ninth Circuit's remand order held the jury should be confined to just two possible interpretations of the JDLA's supply clause. The Ninth Circuit simply held that the JDLA supply provision was ambiguous because it was reasonably susceptible to an interpretation other than the

one upon which the Court's summary judgment order was based. Indeed, New York law is clear that "[a] contract is ambiguous when its terms are reasonably susceptible to *two or more* interpretations." *Thomas v. Jordan*, 116 N.Y.S.3d 486, 488 (N.Y. App. Term. 2020).

### III. THE ADDITION OF THE WORD "ONLY" TO SAMSUNG'S INTERPRETATION WILL PREVENT JURY CONFUSION

Samsung, whose counsel were present for the conversation with the juror foreman, does not dispute that the jurors at the last trial were confused regarding the difference between the two parties' interpretations. Mot. at 8. Yet Samsung opposes Netlist's simple solution to insert the word "only" in Samsung's instruction so that Samsung's interpretation is clear: "Samsung agreed to supply NAND and DRAM products to Netlist *only* for the parties' NVDIMM-P joint development project."

Samsung argues that "the most natural reading of that language suggests that Samsung agreed that it would supply NAND and DRAM products to Netlist for the NVDIMM-P joint development project, and that it would not supply NAND and DRAM products to Netlist otherwise." Opp. at 17. But that is not a natural reading at all, let alone the most natural one. There is a clear difference between Samsung being ***required*** to supply NAND and DRAM because it ***agreed*** to do so and Samsung voluntarily selling Netlist NAND and DRAM product at its own discretion.

Samsung also does not dispute that one of its own proposed instructions at the last trial used nearly identical language: "Samsung . . . contends that Section 6.2 required it to supply Netlist with NAND and DRAM products ***only*** as raw materials or components for the parties' collaboration to develop a product called NVDIMM-P." Mot. at 8 (quoting Dkt. 463 at 26:11-14). Samsung argues the concept that Samsung was "required" or "obligated" to supply NAND and DRAM is somehow materially distinct from the concept that it "agreed to" to supply NAND and DRAM. Opp. at 18. This is nonsensical. But even if it was, the Court could simply use the word "obligated" or "required" instead.

Samsung's fierce opposition to adding the word "only" to its interpretation is telling. Samsung knows that the fact it dramatically increased supply of NAND and DRAM to Netlist shortly after the JDLA and that these product sales had nothing to do with the joint development project, Tr. Tr. 204:13-34, flatly contradicts its interpretation of the JDLA. So Samsung is trying to equivocate and suggest to the jury that its interpretation might not be so strictly limited. This is improper, and the Court should adopt Netlist's minor proposed modification.

### IV.  THE COURT SHOULD ADOPT NETLIST'S PROPOSED MODIFICATIONS TO THE MATERIALITY INSTRUCTIONS

Samsung argues that Instruction No. 27, which informed the jury of the prior jury's finding of no direct damages, should still be given if Netlist is allowed to "offer evidence or argument of the harm that Netlist allegedly suffered due to Samsung's breach under Netlist's interpretation." Opp. at 19. But this makes no sense given that this instruction was included in the last trial only because Samsung was disputing that its breach was material under Netlist's interpretation.

As Netlist has explained elsewhere, some of the evidence that Samsung refers to as relating to "harm" is simply evidence of contract interpretation, including the highly relevant conduct by the parties consistent with Netlist's interpretation. Dkt. 674-1 at 2-10. For example, Netlist would not have built up its NAND and DRAM business, assembled a new sales team, or staked its reputation on being able to reliably supply its customers with NAND and DRAM unless it genuinely believed it had a supply commitment from Samsung that was not limited to the joint development project. *Id.* at 6-9. In contrast, whether Netlist suffered a narrow type of direct damages under New York law (cover damages) has no bearing on contract interpretation whatsoever.

Samsung also argues the Court should not modify instruction No. 29 to inform the jury that, if Netlist's interpretation is correct, Samsung materially breached the JDLA. But it is well established that a Court may instruct the jury on undisputed facts

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

and elements to provide the jury with necessary context. *See, e.g., Loc. 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 189 F.3d 473 (9th Cir. 1999) ("The Statement properly explained to the jury that the 'single employer' factors had been met and put into context the issue that remained for the jury-whether Pettit had the intent to avoid the collective bargaining obligations through a sham operation."); *United States v. Barkley*, 985 F.2d 574 (9th Cir. 1993) ("The district court may instruct the jury on a question of law which is based upon undisputed facts.").

Absent this instruction, the jury will have no understanding what the dispute between the parties is about or why it matters. Notably, at the last trial, the Court instructed the jury there was no dispute that Samsung had breached the JDLA under Netlist's interpretation: "[i]f you interpret the contract to be consistent with Netlist's interpretation, then the Court instructs you that Samsung breached the JDLA under that interpretation." Dkt. 553 at 32. Contrary to Samsung's assertion, this instruction was not given to "inform[] the jury that issue was no longer in dispute" at the close of evidence. Opp. at 19. That issue was decided at summary judgment and was ***never*** in dispute before the jury. This time, the Court should accordingly instruct the jury that Samsung committed ***material*** breach if Netlist's interpretation is correct.

Dated: February 24, 2025

Respectfully submitted,

IRELL & MANELLA LLP
Jason Sheasby
Lisa S. Glasser
Michael Harbour

By: */s/ Jason Sheasby*
    Jason Sheasby

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 2,999 words, which complies with the word limit of L.R. 11-6.1.

-9-

| | |
|---|---|
| Dated: February 24, 2025 | By: */s/ N. Isabella Chestney* <br> N. Isabella Chestney |

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations