DANIEL M. PETROCELLI (SB 97802)
dpetrocelli@omm.com
RYAN YAGURA (SB 197619)
ryagura@omm.com
DREW BREUDER (SB 198466)
dbreuder@omm.com
LEAH GODESKY (SB 336854)
lgodesky@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co., Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NETLIST INC. a Delaware corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,

Defendant.

CASE NO. 8:20-cv-00993-WLH-ADS

**SAMSUNG'S RESPONSE TO NETLIST'S RENEWED REQUEST FOR AN INSTRUCTION REGARDING NETLIST'S PERFORMANCE UNDER THE JDLA**

Trial Date: March 18, 2025
Location: Courtroom 9B
Judge: Hon. Wesley L. Hsu

## INTRODUCTION

Netlist asks the Court to instruct the jury to "disregard any suggestion by Samsung's attorneys or witnesses that Netlist did not perform its obligations under the JDLA" and to tell jurors that Netlist performed its obligations as an established fact. *See* Request at 1, ECF No. 745. Such an instruction is not only unnecessary, but it would prejudice Samsung severely, including by confusing the jurors into rejecting Samsung's defense against Netlist's claim that Samsung breached Section 6.2 under Samsung's own interpretation of that provision. Netlist's request should be rejected.

Netlist's request is premised on the suggestion that Samsung argued to the jury that Netlist breached the JDLA, which is contrary to Judge Scarsi's ruling at summary judgment. But Samsung *never argued* that Netlist breached the JDLA. Rather, Samsung offered evidence that Netlist did not move forward with the joint development project ("JDP") to respond to two arguments that *Netlist* introduced into the trial record. First, Netlist argued that Samsung decided to cut Netlist's allocation sometime in 2017 to try to bankrupt Netlist. In response, Samsung argued—supported by evidence and testimony that Netlist did not even object to—that what actually happened is the parties' relationship soured for numerous reasons, including because Netlist did not move forward with the JDP. Second, Netlist insisted on arguing that Samsung breached Section 6.2 *even under Samsung's own interpretation*—*i.e.*, that Samsung failed to fill Netlist's request for memory products for the JDP. Samsung's principal defense to that allegation is that Netlist never made any such requests *because it never advanced the JDP to the point where NAND and DRAM was needed for the project*.

Again, Samsung never argued to the jury that Netlist breached the JDLA. Especially because no instruction or verdict-form question will prod the jury into considering whether Netlist breached the JDLA, there is no risk the jury will believe

the evidence concerning Netlist's work (or lack of work) on the JDLA is relevant to anything other than Samsung's defensive trial position, and thus no need for a "curative" instruction. The prejudice to Samsung, however, would be severe. If the Court gives Netlist's requested instruction, there is a substantial risk that jurors will think the Court is asking them to disbelieve Samsung's witnesses and lawyers as to core factual issues in the case, discredit Samsung's legitimate arguments made in direct response to issues Netlist introduced into the trial, and reject Samsung's key defense against one of Netlist's two theories of breach.

Netlist's requested instruction should be rejected.

**ARGUMENT**

Judge Scarsi held at summary judgment that "Netlist's decision to prioritize development of its proprietary technology over NVDIMM-P does not, standing alone, contravene any of its obligations under the JDLA." ECF No. 186 at 13. By its terms, that holding does *not* conclude as a factual matter that Netlist in fact went forward with the JDP—only that any failure to do so was not a breach of the JDLA. For those reasons, Judge Scarsi held that "[t]here is no genuine dispute that Netlist performed its obligations under the JDLA." *Id.* at 13-14.

Thus, while Judge Scarsi's decision prevents Samsung from asserting a defense based on a Netlist breach of the JDLA, it cannot possibly prevent Samsung from introducing evidence of Netlist's lack of effort on the JDP if that evidence is relevant to other issues in the case—especially when these facts are necessary to rebut arguments that *Netlist* introduced. That is all Samsung did here—it never argued that Netlist breached the JDLA, and expressly explained in summation the relevance of the fact that Netlist did not move forward with the JDP. Netlist's requested curative instruction would not only confuse the jury and make them question the credibility of Samsung's attorneys and witnesses, but could easily be

understood by a lay jury as instructing them to reject Samsung's legitimate defenses in this case.[1]

### A. Samsung Offered Evidence And Argument That Netlist Did Not Move Forward With The JDLA To Rebut Arguments And Theories Of Breach Netlist Injected Into This Case, Not To Suggest Netlist Breached

Netlist's requested instruction is unnecessary because Samsung never argued that Netlist breached the JDLA, or failed to satisfy its legal obligations under the JDLA. Rather, Samsung made the factual point—based on evidence offered at trial—that Netlist did not commit resources to the JDLA, which is relevant to rebut arguments and legal theories Netlist injected into the case. Samsung's counsel made

---

[1] At the last trial, Judge Scarsi rejected Netlist's attempts to exclude evidence and obtain an "established fact" instruction based on the same misreading of Judge Scarsi's prior summary judgment order. When Dr. Indong Kim testified at the 2024 trial that Netlist failed to join JEDEC, Netlist objected on the ground that "it has already been decided that Netlist has complied with all of its obligations under [the JDLA]" and Mr. Kim's testimony was "clearly being elicited to try to subvert that previous determination." **Exhibit A** (5/16/24 Trial Tr.) at 729:20-23. Judge Scarsi overruled the objection. *Id.* at 729:25. Similarly, Judge Scarsi rejected Netlist's request to instruct the jury that it was an "established fact" that "Netlist complied with all its obligations" under the JDLA, explaining that such an instruction would not "help clarify the issues for the jury." *Id.* at 792:3-793:13

This Court suggested that Judge Scarsi did so because evidence of Netlist's failure to go forward with the JDP was relevant to materiality. *See* **Exhibit B** (3/20/25 Trial Tr.) at 444:18-23. Samsung respectfully disagrees. Judge Scarsi held that he did not "think we need these" requested instructions because "we are talking about the breach[] [and] whether it's material"—*i.e.*, the same arguments we are talking about now—and Judge Scarsi did not "think … that these [requested instructions] help clarify the issues [of breach and materiality] for the jury." **Exhibit A** (5/16/24 Trial Tr.) at 793:10-13. That is still true here. But even if Judge Scarsi was saying that Netlist's requested curative instruction was unwarranted because the evidence in question was relevant to an issue still in the case (*i.e.*, materiality), that would still support Samsung because evidence of Netlist's decision not to proceed with the JDP is directly relevant to live issues in the case for the reasons described in the text.

expressly clear in summation why this evidence was relevant, so there is no risk the jury will believe it relevant for any other reason. And the effect of Netlist's request would be to suggest to the jury that it should reject Samsung's legitimate factual defenses to arguments Netlist made. Netlist's request should be roundly rejected.

The facts surrounding the extent of Netlist's efforts on the JDP is relevant to rebut two arguments that Netlist made.

First, they are relevant to refute Netlist's argument that Samsung reduced Netlist's allocation in 2017 to bankrupt Netlist and obtain its patents. In response to that argument, Samsung offered evidence *without any objection from Netlist* that, in fact, the parties' relationship soured for entirely different reasons, including that Netlist declined to advance the JDP. For example, Netlist did not object to the introduction of Trial Exhibit 700, a January 2018 email chain in which Mr. Steve Metz wrote that Netlist had been "limited to $1M a month [of NAND and DRAM] by JS Choi due to issues with NVDIMM and past Political issues." *See* **Exhibit D** at 0700.3; **Exhibit B** (3/20/25 Trial Tr.) at 675:10-678:4. Mr. Metz testified that the "issues with NVDIMM" referred to the problems with the joint development project, **Exhibit B** (3/20/25 Trial Tr.) at 677:15-21, again without any objection from Netlist. And Netlist itself questioned Dr. Kim about his statement that, "from a technology channel perspective, there is no collaborative relationship" between Samsung and Netlist. About this statement, Netlist's counsel asked, "So at the time this e-mail was sent, you didn't believe there was any collaboration going on between Netlist and Samsung, correct?"—to which Dr. Kim responded, "Yes, because Netlist [was] not doing the NVDIMM-P standardization at all." *See* **Exhibit C** (3/21/25 Trial Tr.) at 727:5-12. Nor did Netlist object when Dr. Kim testified that "Netlist was … just not able to do anything when it comes to NVDIMM-P" and that Netlist never participated in any way in the collaborative work that was the joint development project. *Id.* at 742:25-743:18.

Samsung was fully entitled to argue in summation, based on this and other evidence, that the parties' relationship soured within two years of the JDLA's signing not because Samsung maliciously sought to bankrupt Netlist, but for other reasons, including that Netlist was not committed to the JDP. Indeed, in the passage in Samsung's summation to which Netlist objects, Samsung's counsel made the relevance of this evidence expressly clear. In the leadup to the discussion that Netlist highlights, Samsung's counsel explained that "things went downhill" with the parties' relationship and that "sales went down not because it was a breach of the supply obligation, but for other things that were happening." **Exhibit C** (3/21/25 Trial Tr.) at 911:14-20. Then, Samsung's counsel discussed at length the many "issues" plaguing the parties' relationship, *id.* at 912:15-916:21, including that Netlist was not "moving forward with the joint development project," *id.* at 914:17-20. Again, this argument was based entirely on evidence and testimony to which Netlist did not even object. And there is no reason for a juror to believe that this evidence is relevant to whether Netlist breached the JDLA when Samsung's counsel explained its relevance precisely.

Second, Netlist's (lack of) work on the JDP is relevant to defeating Netlist's argument that Samsung breached Section 6.2 under Samsung's own interpretation of that provision. To prevail under that theory, Netlist would have to prove that Netlist made a request for NAND and DRAM products for purposes of the NVDIMM-P joint development project, and Samsung failed to fulfill such a request. Samsung's response was that Netlist never made such a request because it never advanced the JDP to the point where Netlist actually needed NAND and DRAM. Samsung's counsel also made clear the relevance of this evidence in summation, arguing that Netlist's claim that Samsung "didn't supply [Netlist] product for the dash P development project" is entirely unsupported because "[t]he dash P development project never happened. They didn't go forward with it." *Id.* at 926:6-12. Again,

this argument has nothing to do with whether Netlist breached the JDLA. And jurors could easily understand Netlist's requested instruction as telling them to disbelieve Samsung's evidence and argument on this point, which would severely limit Samsung's ability to defend against Netlist's contention that Samsung breached Section 6.2 under Samsung's own interpretation of that provision.

Netlist also relies on certain testimony from Dr. Kim concerning whether Netlist continued with the JDP. Request at 2-3. As an initial matter, that testimony cannot possibly support a curative instruction, since the Court ruled on Netlist's objections to this testimony and precluded any testimony the Court believed was objectionable. **Exhibit C** (3/21/25 Trial Tr.) at 805:25-809:19. And when the Court warned Samsung's counsel not to "keep going down this road," Samsung's counsel immediately switched topics. *See id.* at 809:20-23. In any event, the testimony Netlist cites is also directly relevant to whether Samsung breached Section 6.2 under its own interpretation, and in fact was made necessary by Netlist's own misleading questioning of that witness.

In particular, Netlist's counsel showed Dr. Kim the first row of the Statement of Work from the JDLA, which contains the language "Enable NV Vault & Hypervault products," thus giving the false impression that the NVDIMM-P joint development project somehow involved Netlist's preexisting NVDIMM-N products like NV Vault and Hypervault. *Id.* at 736:8-738:7. The point of that questioning was to try to establish that NV Vault and Hypervault were part of the NVDIMM-P joint development project, such that Samsung's failure to fill a NAND or DRAM request for one of those products would breach Section 6.2 even under Samsung's interpretation. *See id.* at 822:4-9 (arguing that Netlist's requests for supply for Netlist's Hypervault product were evidence of breach under Samsung's interpretation). That is flat wrong, as the JDLA makes clear that the "Joint Development Project" was the "*collaborative* efforts by the Parties to develop the

Product Specifications and the *Developed Product* under this Agreement pursuant to … the Statement of Work"—not Netlist's preexisting products that are mentioned in the Statement of Work only by way of background to "level-set" on the state of technology. **Exhibit E** at 0047.2 (emphasis added).

It was thus entirely appropriate for Samsung's counsel to elicit testimony to clear up this misimpression, which was the whole point of the colloquy with Dr. Kim that Netlist cites. Dr. Kim clarified that the first row of the Statement of Work that Netlist's counsel showed him merely concerned the parties' "show and tell" of "whatever [the parties] already ha[d]" in terms of *existing* memory products. **Exhibit C** (3/21/25 Trial Tr.) at 808:9-12. Thus, Dr. Kim explained, the JDLA did not provide any obligation to support "NVvault, Hypervault, all [Netlist's] old products." *Id.* at 809:4-8. And to explain why, Dr. Kim highlighted rows "2 to 4" of the Statement of Work, which "is all about the joint portion"—that is, the "actual steps that were going to be done after [the parties] shared where [they] were." *Id.* at 808:19-809:2. Likewise, he explained that Appendix A showed deadlines for the joint development work. *Id.* at 805:25-806:25. Those deadlines correspond to the deadlines listed in the Statement of Work. *Compare* **Exhibit E** at 0047.16, *with* **Exhibit E** at 0047.17-.18. While the deadlines for rows 2-4 took place in 2016, the deadline for row 1 was December 1, 2015, mere weeks after the signing of the JDLA, which reinforces that row 1 involved "level-set[ting]" rather than the actual collaborative joint development work. That is the testimony Netlist believes was inappropriate, but Netlist's counsel opened the door by eliciting testimony giving the misleading impression that NV Vault and Hypervault were part of the joint development project. Samsung was entitled to question Dr. Kim on his understanding of the Statement of Work Netlist showed him to demonstrate that the joint development portions of the project were to come *after* the portion highlighted

by Netlist's counsel, and that they never happened, which shows that any request by Netlist for memory products could not have been for the joint development project.

**B. Netlist's Requested Instruction Is Not Only Unwarranted But Would Severely Prejudice Samsung**

Because Samsung's counsel never argued that Netlist breached the JDLA, and explained very clearly the relevance of the fact that Netlist did not move forward with the JDP—based on evidence offered at trial, often without any objection from Netlist—there is no basis for Netlist's requested instruction, or any other curative instruction.

Such an instruction, moreover, would be severely prejudicial to Samsung. For one thing, it would likely confuse jurors, who would not understand why they are being told about an issue that is not being presented to them. Moreover, it would be highly prejudicial to imply that "Samsung's attorneys and witnesses" suggested that Netlist breached the JDLA, and to tell the jury to disregard any and all such "suggestion[s]." Request at 1. The jury would naturally think that it is being told to discredit the evidence and argument that Samsung *did* put forth—all of which is highly relevant to the factual disputes just described. Giving the jury a "curative" instruction on an argument Samsung did not make would only confuse the jury and unduly weight the instructions in Netlist's favor.

Most important, though, Netlist's curative instruction threatens to cut Samsung's case off at the knees. The jury would naturally understand the instruction as telling it not to credit Samsung's evidence—which, again, came in *without any objection from Netlist*, *see supra* at 4—for why the parties' relationship soured, which Samsung offered to rebut Netlist's assertion that Samsung decided in 2017 that it would bankrupt Netlist. Moreover, the requested instruction could similarly be understood by a lay jury as suggesting that it should reject Samsung's primary defense to Netlist's claim that Samsung breached Section 6.2 under its own

interpretation of that provision—*viz.*, that Netlist never made any NAND or DRAM requests for joint development because Netlist never moved forward with the NVDIMM-P joint development project. Netlist has offered no basis whatsoever to support such a maximally prejudicial instruction.

Finally, it is worth noting that Netlist on several occasions elicited from its witnesses testimony that is entirely irrelevant and prejudicial to Samsung. For example, Netlist's Chuck Hong testified on direct examination that Samsung did not "[i]nitially" pay the $8 million NRE fee due under Section 3.1 of the JDLA. That testimony implied that Samsung violated its obligations under that provision, despite the Ninth Circuit's holding that, as a matter of law, Samsung did not breach the JDLA by initially withholding $1.32 million of the $8 million payment. *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *2 (9th Cir. Oct. 17, 2023). To take another example, the Court agreed with Samsung that evidence and argument about layoffs and lost customers based on Samsung's purported breach of Section 6.2 under Netlist's interpretation of that provision should be excluded under Rule 403. **Exhibit B** (3/20/25 Trial Tr.) at 712:11-21. But, before the Court made that ruling, the jury was allowed to hear—over Samsung's objection—highly prejudicial and irrelevant testimony from Netlist's Noel Whitley—again, given during direct examination—about how Netlist lost customers, and had to lay off a "big chunk of [its] sales force," "including friends of [Mr. Whitley's]," as a result of Samsung's alleged breach. *Id.* at 516:17-517:2. Unlike the evidence and argument to which Netlist's request is directed, this evidence was not relevant to any issue in this case, was highly prejudicial, and in the case of Mr. Hong's testimony suggested that Samsung breached a provision of the JDLA that the Ninth Circuit expressly held Samsung did not breach. Samsung is raising these points not to seek its own curative instruction, but to point out that if there was any party in this case soliciting irrelevant and prejudicial testimony, it was Netlist. Netlist's suggestion now that it

deserves a highly prejudicial instruction that will have the effect of charging the jury away from Samsung's crucial defenses is meritless and should be rejected.

DATED: March 23, 2025

O'MELVENY & MYERS LLP

By: */s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
Attorneys for Defendant Samsung Electronics Co., Ltd.