| | |
|---|---|
| DANIEL M. PETROCELLI (SB 97802) | MARC J. PENSABENE (*pro hac vice*) |
| dpetrocelli@omm.com | mpensabene@omm.com |
| RYAN YAGURA (SB 197619) | O'MELVENY & MYERS LLP |
| ryagura@omm.com | 1301 Avenue of the Americas |
| DREW BREUDER (SB 198466) | Suite 1700 |
| dbreuder@omm.com | New York, New York 10019 |
| LEAH GODESKY (SB 336854) | Telephone: (212) 326-2000 |
| lgodesky@omm.com | Facsimile: (212) 326-2061 |
| O'MELVENY & MYERS LLP | |
| 1999 Avenue of the Stars, 8th Floor | |
| Los Angeles, California 90067-6035 | |
| Telephone: (310) 553-6700 | |
| Facsimile: (310) 246-6779 | |

Attorneys for Defendant
Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-WLH-ADS<br><br>**SAMSUNG'S SURREPLY IN FURTHER OPPOSITION TO NETLIST'S RENEWED REQUEST FOR AN INSTRUCTION REGARDING NETLIST'S PERFORMANCE UNDER THE JDLA**<br><br>Trial Date: March 18, 2025<br>Location: Courtroom 9B<br>Judge: Hon. Wesley L. Hsu |

1. Netlist's unsolicited response unwittingly explains why Samsung's argument did not violate the summary judgment order. As Netlist rightly explains, uncontroverted testimony—including from Chuck Hong—showed that Netlist did indeed abandon the joint development project. ECF No. 747 ("Reply") at 1. What Judge Scarsi held was that *even if* that were true, Netlist did not breach the JDLA: "Netlist's decision to prioritize development of its proprietary technology over NVDIMM-P does not, standing alone, contravene any of its obligations under the JDLA." ECF No. 186 at 13. That means that Samsung is foreclosed from arguing that Netlist breached the JDLA, but it cannot possibly be foreclosed from offering evidence and explaining in argument that Netlist in fact did not move forward with the JDP if that fact is relevant to other issues in the case. Indeed, witnesses repeatedly testified to this fact without objection, and in at least one instance, in response to questioning from Netlist's counsel. *See* ECF No. 746 ("Response") at 4. Netlist offers no response to these crucial points.

Indeed, the fact it is essentially undisputed that Netlist did not move forward with the JDP makes Netlist's requested charge all the more prejudicial. Because there was no evidence at trial offered to show that Netlist actually *did* move forward with standardization or other aspects of joint development, the requested charge could only lead the jury to believe that Netlist's actions with respect to "NVDIMM," "NVvault," and "HyperVault" were actually part of the JDLA. Netlist tried to muddy the waters by arguing that these products were part of the NVDIMM-P joint development project even though these were Netlist's own products that existed before the JDLA. But if the Court gives the requested instruction, the jury will be led to think that these products are part of the parties' joint development project, because Netlist worked on these products but not on any aspect of the actual JDP.

2. Netlist's reply also raises a new argument not raised in its opening brief— *viz.*, that a Samsung interrogatory response about specific "instance[s]" in which

1

Samsung did not fill an order request forecloses Netlist from arguing that there were multiple reasons (including but not limited to the JDP) that the parties' relationship soured, which affected Samsung's allocation to Netlist. Reply at 2. That argument has nothing to do with the requested curative instruction concerning Netlist's failure to move forward with the JDP. Rather, it is a brand new request on a different subject that Netlist waived several times over, and is also wrong about.

*First*, Netlist waived this argument by failing to object to evidence and witness testimony making exactly this point. For example, as Samsung explained in its response brief, Samsung offered (without objection from Netlist) Trial Exhibit 700, which is an email from Mr. Steve Metz saying Netlist had been "limited to $1M a month [of NAND and DRAM] by JS Choi due to issues with NVDIMM and past Political issues." *See* ECF No. 746-4 at 0700.3; ECF No. 746-2 at 675:10-678:4. Mr. Metz then testified that the "issues with NVDIMM" referred to the problems with the joint development project, ECF No. 746-2 at 677:15-21, again without any objection from Netlist. If Samsung's interrogatory response had actually precluded evidence about why Netlist's allocation was cut, both this email and Mr. Metz's testimony would have been precluded, and Netlist should have objected.

*Second*, the portion of Samsung's summation concerning its explanation for why the parties' relationship deteriorated was not limited to Netlist's failure to move forward with the joint development project. To the contrary, that was just one of many reasons proffered. Samsung's counsel explained that "things went downhill" and "sales went down" (ECF No. 746-3 at 911:14, 18-19) because (i) Netlist "start[ed] to tell people that they were representative[s] of Samsung," and that "started to rub people the wrong way" because "the industry might be misinformed"; (ii) Netlist asked Samsung to sign a letter stating that Netlist is "authorized to purchase the full line of [Samsung] products" under the JDLA, which

2

was "not true"; (iii) people within Samsung were discussing how "Netlist [was] abusing the relationship"; (iv) Netlist was "undercutting the price" of products it was buying for resale; (v) Netlist "reneged" on a deal that "was an important and embarrassing event" for Samsung; (vi) "there were political issues," *i.e.*, "going over the head of an executive," (vii) "and then there were issues with the fact that they weren't moving forward on the joint development project." ECF No. 746-3 at 912:15-913:5, 913:21-25, 914:7-20.

If Netlist believed this pages-long argument was improper because it was barred by a previous interrogatory response, it should have said so at the time. This argument was not raised for the first time in Samsung's response brief—it was explained at length by Samsung's counsel in summation.

*Third*, and perhaps unsurprisingly in light of the above, Netlist is plain wrong about the interrogatory. The relevant interrogatory asked Samsung to "[d]escribe *each instance* in which Samsung" failed to fill "Netlist's requests or orders for NAND and DRAM products," and Samsung responded by saying that the "decision on whether Defendant can support *each individual request* is made based on overall market conditions." ECF No. 236-3 at 5-6 (emphasis added). The response might preclude Samsung from arguing that it declined to fill a particular request for a Netlist-specific reason. That is what Judge Scarsi held in the motion *in limine* decision Netlist quotes—that was a motion *in limine* Netlist filed in the *first*, 2021 trial, *see* ECF No. 243 at 8, which was all about whether Netlist could demonstrate that it suffered cover damages based on Samsung's refusal to fill *specific orders*. Samsung's interrogatory response cannot preclude Samsung from offering argument relevant to rebutting Netlist's story that Samsung lowered its overall monthly allocation to try to bankrupt Netlist, especially when Samsung's argument was based directly on evidence Samsung offered without objection. *See* ECF No. 746-4

3

at 0700.3 (Metz discussing how Netlist's allocation was "limited to $1M a month by JS Choi due to issues with NVDIMM and past Political issues").

DATED: March 24, 2025　　　　　　　O'MELVENY & MYERS LLP

　　　　　　　　　　　　　　　　　By:　　　　*/s/ Marc J. Pensabene*
　　　　　　　　　　　　　　　　　　　　Marc J. Pensabene
　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant Samsung
　　　　　　　　　　　　　　　　　　　　Electronics Co., Ltd.