DANIEL M. PETROCELLI (SB 97802)
dpetrocelli@omm.com
RYAN YAGURA (SB 197619)
ryagura@omm.com
DREW BREUDER (SB 198466)
dbreuder@omm.com
LEAH GODESKY (SB 336854)
lgodesky@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York  10019
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>          Defendant. | Case No. 8:20-cv-00993-WLH-ADS<br><br>**SAMSUNG ELECTRONICS CO., LTD.'S OBJECTIONS TO NETLIST'S APPLICATION TO THE CLERK TO TAX COSTS**<br><br>Hon. Wesley L. Hsu |

# TABLE OF CONTENTS

**Page**

I.    NETLIST'S COSTS FOR DEPOSITION TRANSCRIPTS ARE NOT
      TAXABLE ....................................................................................... 3

II.   NETLIST'S COSTS FOR "INTERPRETED PROCEEDING"
      SURCHARGES PAID TO STENOGRAPHIC REPORTERS ARE
      NOT TAXABLE .............................................................................. 5

III.  NETLIST'S COSTS FOR DOCUMENT TRANSLATION ARE NOT
      TAXABLE ....................................................................................... 6

IV.   NETLIST'S COSTS FOR THE REPRODUCTION OF TRIAL
      EXHIBITS ARE NOT TAXABLE .................................................. 6

V.    NETLIST'S COSTS FOR VISUAL AID PRODUCTION ARE NOT
      TAXABLE ....................................................................................... 9

VI.   NETLIST'S COSTS FOR SERVICE OF THE COMPLAINT ON A
      FOREIGN DEFENDANT ARE NOT TAXABLE.......................... 13

VII.  CONCLUSION ............................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affymetrix, Inc. v. Multilyte Ltd.*,
    2005 WL 2072113 (N.D. Cal. Aug. 26, 2005) ......................................................10

*Andresen v. Int'l Paper Co.*,
    2015 WL 3648972 (C.D. Cal. June 10, 2015).........................................................9

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    2008 WL 2020533 (N.D. Cal. May 8, 2008)..........................................................10

*Gunchick v. Fed. Ins. Co.*,
    2015 WL 4451041 (C.D. Cal. July 17, 2015).........................................................10

*Minass v. HHC TRS Portsmouth LLC*,
    2015 WL 12867304 (C.D. Cal. Mar. 23, 2015).......................................................12

*Pavo Sols. LLC v. Kingston Tech. Co.*,
    2021 WL 12300143 (C.D. Cal. Aug. 18, 2021) ...............................................11, 12

*Sedlik v. Drachenberg*,
    2024 WL 4327406 (C.D. Cal. Apr. 5, 2024) ....................................................11, 12

*Syneron Med. Ltd. v. Invasix, Inc.*,
    2019 WL 1878346 (C.D. Cal. Feb. 7, 2019) ..........................................................10

**Rules**

L.R. 54-2.1 ..............................................................................................3, 6, 7, 13

L.R. 54-3.10 .........................................................................................................8

L.R. 54-3.10(g) ....................................................................................................6

L.R. 54-3.12 ...........................................................................................2, 3, 9, 11

L.R. 54-3.12(a) ..................................................................................................10

L.R. 54-3.2 ........................................................................................................13

L.R. 54-3.5 ..........................................................................................................3

L.R. 54-3.5(a) ..................................................................................................1, 4

L.R. 54-3.5(b) .....................................................................................................5

L.R. 54-3.7 .....................................................................................................2, 6

SAMSUNG'S OBJECTIONS TO NETLIST'S APPLICATION TO TAX COSTS

# OBJECTIONS TO APPLICATION TO TAX COSTS

Pursuant to Local Rule 54-2.2, Defendant Samsung Electronics Co., Ltd. ("Samsung") hereby objects to the Application to the Clerk to Tax Costs (ECF No. 776 ("Application")) filed by Plaintiff Netlist Inc. ("Netlist"); *see also* ECF No. 776-1 ("Harbour Decl."). Netlist's Application seeks an incredible $275,296.25 in costs. But as detailed below, **$240,704.86** of the costs Netlist seeks are not properly taxable, and only the remaining $34,591.39 in Netlist's claimed costs should be taxed. Below is a summary of the costs claimed in Netlist's Application to which Netlist is not entitled, each of which is discussed in further detail below, *see infra* at 3-14:

- **$21,273.60 in deposition transcript costs** (ECF No.776 at 2; ECF No. 776-6 (Tab 5A) at 2; Harbour Decl. ¶ 6(a)) where Netlist fails to attach sufficient documentation to show which transcripts were "used … in connection with the case." L.R. 54-3.5(a).
  - Alternatively, the Clerk should disallow:
    - **$449.70** in deposition transcript costs based on an arithmetic error in Tab 5A of Netlist's supporting documentation (Netlist's counsel indicated in a meet and confer that Netlist will not pursue this $449.70 in costs), ***and***
    - **$991.50** for nontaxable rough draft transcripts.
- **$1,275.00 for surcharges paid by Netlist to deposition court reporters for depositions with interpreters** (ECF No. 776 at 2; ECF No. 776-7 (Tab 5B) at 4, 5, 6, 7, 8, 9, 11, 13, 15; Harbour Decl. ¶ 6(b)) that Netlist inaccurately characterizes as taxable fees for "time attending a deposition." L.R. 54-3.5(b).
- **$6,164.01 in "interpreter fees required for trial exhibits"** (ECF No. 776 at 3 (citing nonexistent Tab 7B)) because Netlist provides no

1

supporting documentation at all, and "[d]ocument translation costs are not taxable" in any event.  L.R. 54-3.7.  Netlist's counsel indicated in a meet and confer that Netlist will not pursue this $6,164.01 in costs.

- **$78,643.10 for copying three sets of trial exhibits for each of three trials in this case** (ECF No. 776 at 3; ECF No. 776-11 (Tab 10); Harbour Decl. ¶ 9) because trial exhibits are not taxable under L.R. 54-3.10 and because Netlist does not submit sufficient evidence to show that the costs it seeks were for copies that it was required to and actually did submit to the court.

  - o  Alternatively, the Clerk should disallow **$47,856.16** in costs for copying trial exhibits for the third (March 2025) trial because the exhibit list was the same as the second (May 2024) trial and thus no additional copying should have been required; ***or***

  - o  Alternatively, the Clerk should disallow **$28,007.27** because Netlist's claimed costs for the third trial are inexplicably excessive in light of its claimed costs for reproducing the same number of copies of the same exact exhibits at the second trial; ***and/or***

  - o  The Clerk should disallow **$22,568.35** because, at most, Netlist was required to submit two rather than three copies for the second and third trials; ***and/or***

  - o  The Clerk should disallow **$8,891.75** that represents nontaxable charges paid to the vendor that printed the trial exhibits.

- **$132,383.25 for the "cost of visual aid production" for the second and third trials** (ECF No. 776 at 3; ECF No. 776-12 (Tab 12); Harbour Decl. ¶ 10) because Netlist fails to submit an "order of the Court" authorizing taxation of such costs, L.R. 54-3.12; because such visual aids were not "reasonably necessary," *id.*; and because Netlist

2

provides no basis to determine which of its claimed costs are for taxable "physical preparation and duplication" of visual aids as opposed to nontaxable "intellectual effort," *id.*

- **$965.90 for service of the complaint on foreign defendant** (ECF No. 776 at 2; ECF No. 776-3 (Tab 2A); Harbour Decl. ¶ 5(a)) because such service was not necessary because Netlist attempted such service only "out of an abundance of caution" and Samsung ultimately waived service.

# I.    NETLIST'S COSTS FOR DEPOSITION TRANSCRIPTS ARE NOT TAXABLE

Netlist claims **$21,273.60** in costs for deposition transcripts. (ECF No.776 at 2; ECF No. 776-6 (Tab 5A); Harbour Decl. ¶ 6(a).) Deposition transcript costs are taxable only if the transcripts are "used … in connection with the case." L.R. 54-3.5. Yet Netlist does not even attempt to show that the transcripts for which it claims costs were in fact used in this case, apart from the conclusory statement that "[d]eposition transcripts not used in the case have been excluded." (Harbour Decl. ¶ 6(a).) That is plainly insufficient for the Clerk to determine whether the transcripts were used. Netlist has failed to "attach sufficient documentation to support" its claimed deposition transcript costs, warranting denial of its application to tax those costs. L.R. 54-2.1.

Even if the Clerk disagrees, the Clerk should disallow **$449.70** in deposition transcript costs that are the result of an arithmetic error and **$991.50** for rough draft transcripts.

<u>Arithmetic Error</u>: For Volume 1 of the deposition of Hyeok-Sang Yoo, Netlist claims $719.25 for an original transcript with one certified copy, $205.50 for a rough transcript, and $35 for electronic shipping and handling. ECF No. 776-6 (Tab 5A) at 2, 14. Yet it calculates the sum of these costs as $1,409.45—$449.70 more than the correct sum of $959.75—and carries this error over into the claimed total of

3

$21,273.60.  This mistaken **$449.70** should be disallowed in any event.  The parties met and conferred, and Netlist's counsel indicated that Netlist will not pursue this **$449.70** in costs.

<u>Rough Drafts</u>: Netlist correctly does not seek $2,806.50 in costs that the Clerk previously disallowed, representing the costs of rough draft transcripts for various depositions that Netlist took.  (*See* ECF No. 316 at 4-5 (Samsung's objection to those costs); ECF No. 321 at 2 (Clerk's bill of costs disallowing those costs); ECF No. 776-6 (Tab 5A) at 2 n.2 (Netlist's explanation that it does not now seek the disallowed $2,806.50).)

But beyond this $2,806.50 that Netlist no longer seeks, Netlist continues to seek **$991.50** for rough draft transcripts where Netlist was the party *defending* the deposition.  (*See* ECF No. 776-6 (Tab 5A) at 2 (original table claiming $3,798.00 in rough draft transcript costs).)  This sum is not taxable and should be disallowed.

Under the Local Rules, deposition transcripts are taxable under the following circumstances: (1) where a party *takes* the deposition and is responsible for purchasing the original, that party may tax the cost of the original and "one additional copy"; (2) where a party is not the one taking the deposition, and therefore not responsible for purchasing the original, that party is entitled to the reasonable cost of only one copy.  *See* L.R. 54-3.5(a).  Yet for several depositions that Netlist defended (and therefore did not purchase the original transcript), Netlist claims cost for both a "Certified Transcript" and a "Rough Draft":

| Witness: Steven Yu | Quantity | Price | Amount |
|---|---|---|---|
| Certified Transcript | 268.00 | $7.70 | $2,063.60 |
| Exhibits | 61.00 | $0.65 | $39.65 |
| Realtime Services - Remote | 268.00 | $1.85 | $495.80 |
| Realtime Services - Remote | 268.00 | $1.85 | $495.80 |
| Rough Draft | 268.00 | $1.50 | $402.00 |
| Litigation Package-Secure File Suite | 1.00 | $55.00 | $55.00 |
| Production & Processing | 1.00 | $50.00 | $50.00 |
| Veritext Exhibit Package (ACE) | 1.00 | $45.00 | $45.00 |
| Exhibit Share | 1.00 | $395.00 | $395.00 |
| Electronic Delivery and Handling | 1.00 | $35.00 | $35.00 |

(ECF No. 776-6 (Tab 5A) at 11; *see also id.* at 23 (Netlist claiming costs for a "Rough Draft" in the amount of $366.00 in addition to a "Certified Transcript"); *id.* at 24 (Netlist claiming costs for a "Rough Draft" in the amount of $223.50 in addition to a "Certified Transcript").)  In other words, for these three witnesses, Netlist seeks to recover the costs of two copies—a "Certified Transcript" and a "Rough Draft"—in violation of the plain terms of Rule 54-3.5(a), which allow only "one copy of the transcript … when purchased by a party that did not purchase the original."  Thus, even if the Clerk does not disallow the entire $21,273.60 in claimed deposition transcript costs, *see supra* at 3, the Clerk should disallow **$991.50** in costs for unauthorized "Rough Drafts."

## II.    NETLIST'S COSTS FOR "INTERPRETED PROCEEDING" SURCHARGES PAID TO STENOGRAPHIC REPORTERS ARE NOT TAXABLE

Of the $9,632.50 claimed by Netlist as "appearance fees charged by reporters" (*see* ECF No. 776 at 2; ECF No. 776-7 (Tab 5B); Harbour Decl. ¶ 6(b)), **$1,275.00** is untaxable because those sums were paid for surcharges charged by the court reporter because the deposition involved an interpreter.  (*See* ECF No. 776-7 (Tab 5B) at 4, 5, 6, 7, 8, 9, 11, 13, 15.)  Local Rule 54-3.5(b) allows taxation of the reasonable fees of a stenographic reporter "for time attending a deposition," but not for miscellaneous surcharges.  L.R. 54-3.5(b).  Thus, Netlist's costs of **$1,275.00** for paying these surcharges should be disallowed.

5

## III.    NETLIST'S COSTS FOR DOCUMENT TRANSLATION ARE NOT TAXABLE

Netlist's Application seeks **$6,164.01** in "interpreter fees required for trial exhibits."  (ECF No. 776 at 3.)  Yet the supporting declaration of Netlist's counsel makes no mention of this item, and while the Application labels this item as "Tab 7B," the supporting materials contain no Tab 7B.  (*See* Harbour Decl. ¶ 8.)  To the extent Netlist seeks these costs, they should therefore be disallowed because Netlist has failed to "attach sufficient"—or indeed any—"documentation to support" them.  L.R. 54-2.1.  Additionally the Local Rules make clear that "[d]ocument translation costs are not taxable."  L.R. 54-3.7.  Netlist's costs of **$6,164.01** for "interpreter fees" for "trial exhibits" are not taxable.  The parties met and conferred, and Netlist's counsel indicated that Netlist will not pursue this **$6,164.01** in costs.

## IV.    NETLIST'S COSTS FOR THE REPRODUCTION OF TRIAL EXHIBITS ARE NOT TAXABLE

Netlist improperly seeks **$78,643.10** in costs it incurred to re-produce exhibits for trial: $10,938.05 for the first trial in 2021, $19,848.89 for the second trial in 2024, and $47,856.16 for the third trial in 2025.  (ECF No. 776 at 3; ECF No. 776-11 (Tab 10); Harbour Decl. ¶ 9.)  Netlist contends that these costs are taxable because Judge Scarsi's Order Re: Jury Trial (ECF No. 41) ordered the parties to submit three sets of exhibit binders to the Court for each trial.  (Harbour Decl. ¶ 9.)  These costs are not taxable because they do not fall under any category of taxable "document preparation costs" under Local Rule 54-3.10.  For example, they are not taxable under Local Rule 54-3.10(a) because trial exhibits are not "documents necessarily filed and served," nor are they "Mandatory Chambers Copies" of documents filed with the Court.  Nor does submitting physical binders constitute "producing material in a required format."  L.R. 54-3.10(g).  In any event, Netlist has not provided any meaningful documentation to establish that these costs are

1  properly taxable. L.R. 54-2.1. Therefore, Netlist's costs of **$78,643.10** for printing

2  trial exhibits are not taxable.

3      Even if the Clerk disagrees, Netlist's claimed trial exhibit printing costs

4  should be denied or substantially reduced for numerous reasons. *First*, Netlist

5  claims that its claimed costs represent half of the cost of printing three copies of all

6  trial exhibits (for the first trial in 2021) and the cost of printing three copies of all

7  trial exhibits (for the second and third trials). But Netlist's supporting submitted

8  invoices do not establish what portion of the invoiced amounts are actually

9  attributable to reproducing three copies of the trial exhibits. Each invoice merely

10  states a number of pages, with nothing to indicate how many pages amounted to one

11  full set of trial exhibits. (*See* ECF No. 776-11 at 3-5 (invoices).) Absent

12  meaningful documentation to establish the number of copies that each invoice

13  reflects, Netlist's request for printing costs should be disallowed. L.R. 54-2.1.

14      *Second*, and in any event, Netlist's **$47,856.16** in claimed trial exhibit printing

15  costs for the third trial are not taxable. Netlist is already claiming $19,848.89 in

16  costs for printing three sets of exhibit binders prior to the second trial. And the third

17  trial proceeded on the same exhibit list as the second. (*See* ECF No. 649 ("The

18  Court intends to try the case upon the … exhibit lists used in the May 2024 trial.");

19  ECF No. 690 at 6-8 (denying motion to modify exhibit list).) There should therefore

20  be no additional expenses copying trial exhibits for the third trial.

21      Nor does Netlist provide any explanation for why the costs for copying trial

22  exhibits at the third trial were nearly $30,000 higher than at the second trial when, as

23  just discussed, the exhibit lists at the two trials were identical. Netlist claims that

24  both the $19,848.89 figure (for the second trial) and the $47,856.16 figure (for the

25  third trial) represent the cost of producing three sets of binders. (Harbour Decl. ¶ 9.)

26  Yet while Netlist used the same vendor and was charged nearly the same per-page

27  rates at the two trials (*see* ECF No. 776-11 (Tab 10) at 4, 5 (invoices from Keystone

28  Document Discovery for the 2024 and 2025 trials showing $0.18 or $0.19 per-page

black-and-white copying rate and $0.99 per-page color copying rate)), Netlist's invoice from the 2025 trial inexplicably charged Netlist for more than twice as many pages as in 2024. (*Compare* ECF No. 776-11 (Tab 10) at 4 (2024 invoice showing 19,196 black-and-white pages and 28,108 color pages), *with id.* at 5 (2025 invoice showing 38,862 black-and-white pages and 59,976 color pages).) The 2025 invoice also contains numerous unexplained charges not present in the 2024 invoice, including thousands for "Rush Delivery" and "Data Analyst" charges. (*Compare* ECF No. 776-1 (Tab 10) at 4, *with id.* at 5.) And because Netlist simply asserts without any supporting evidence that each invoice represents what it was charged for obtaining six copies of all the trial exhibits,[1] despite the discrepant page counts, it is impossible to determine from Netlist's submission how many copies it is actually seeking compensation for. Thus, at the very least, the $47,856.16 figure for the third trial should be reduced by **$28,007.27** to match the amount Netlist seeks for the costs of reproducing the exact some number of copies of the exact same exhibits at the second trial. *See* L.R. 54-3.10 (party seeking taxation of document reproduction costs must "set[] forth with *specificity, particularity, and clarity* the distinct tasks and services performed" (emphasis added)).

*Third*, even assuming that Judge Scarsi's Order Re: Jury Trial—and not the parties' agreement—governed the parties' obligations to submit copies of trial exhibits, that Order Re: Jury Trial was amended in 2022 to require only two sets of exhibit binders, not the three for which Netlist seeks reimbursement. *See* https://www.cacd.uscourts.gov/sites/default/files/documents/MCS/AD/Order%20re %20Jury%20Court%20Trial%20Jan.%202022.pdf at 12. Thus, even if the Clerk disagrees with all of the above objections, Netlist's claimed trial exhibit

---

[1] According to Netlist, each invoice reflects the charges for six sets of exhibit binders, so Netlist divides each invoice amount in half for the purported cost of complying with Judge Scarsi's Order Re: Jury Trial. (*See* Harbour Decl. ¶ 9; ECF No. 776-11 (Tab 10) at 2.)

reproduction costs should be reduced by **$22,568.35**—representing one-third of the costs Netlist claims for the second and third trials ( ($19,848.89 + $47,856.16) / 3 ).

*Fourth*, the invoices for both the second and third trials contain nontaxable items, such as "Production Labor," "Delivery" or "Rush Delivery," and "Data Analyst" charges. *See Andresen v. Int'l Paper Co.*, 2015 WL 3648972, at *9 (C.D. Cal. June 10, 2015) ("[C]laimed costs for … computer labor, overtime labor, and courier services should not be taxed …."). The amounts for these nontaxable charges across the second and third trials total $17,783.50. (*See* ECF No. 776-11 at 4 (2024 invoice containing charges for "Production Labor" ($3,476.00) and "Delivery" ($99.00)); *id.* at 5 (2025 invoice containing charges for "Production Labor" ($6,880.50), "Rush Delivery" ($2,950.00), and "Data Analyst" ($4,378.00)).) Netlist's Application seeks one-half of these nontaxable amounts. Thus, at the very minimum, **$8,891.75** ($17,783.50 / 2) in claimed trial exhibit printing costs should be disallowed.

## V.    NETLIST'S COSTS FOR VISUAL AID PRODUCTION ARE NOT TAXABLE

Netlist also improperly seeks **$132,383.25** for the "cost of visual aid production" for the second and third trials under Local Rule 54-3.12. (ECF No. 776 at 3; ECF No. 776-12 (Tab 12); Harbour Decl. ¶ 10.) This sum is not taxable for many reasons.

*First*, under the Local Rules, the "reasonable costs of the physical preparation and duplication of … visual aids" are taxable only "[u]pon order of the Court." L.R. 54-3.12. Accordingly, the Application to Tax Costs (Form CV-59) indicates that, to seek costs under Local Rule 54-3.12, a "[c]ourt order must be attached." (*See* ECF No. 776 at 3.) But the only court order Netlist points to in connection with its request for these costs is Judge Scarsi's Order Re: Jury Trial. As Netlist acknowledges, that Order merely *permitted* the parties to use visual aids. (*See* Harbour Decl. ¶ 10.) The Order does not *require* visual aids and, in any case, is

9

1  silent as to whether the costs of producing such visual aids are recoverable. (*Id.*)

2  Thus, Netlist's costs for visual aid production are not taxable.

3      *Second*, Netlist is limited to seeking costs of preparing visual aids that are

4  "reasonably necessary to assist the jury or the Court in understanding the issues at

5  the trial." L.R. 54-3.12(a). Thus, a court may tax costs for visual aids where the

6  "complicated subject-matter … made it reasonably necessary for the parties to

7  prepare visual aids to help educate the Court." *Syneron Med. Ltd. v. Invasix, Inc.*,

8  2019 WL 1878346, at *3 (C.D. Cal. Feb. 7, 2019) (costs for visual aids taxable in

9  complex patent-infringement suit involving complicated technology).

10      Here, by contrast, the second and third trials involved a simple contract

11  dispute that did not require any complex or technical exposition. While the parties

12  elected to create visual aids to make their presentations more persuasive, this is not

13  the sort of case where such aids were "reasonably necessary," and therefore the cost

14  of producing those visual aids is not taxable. *See, e.g.*, *Affymetrix, Inc. v. Multilyte*

15  *Ltd.*, 2005 WL 2072113, at *4 (N.D. Cal. Aug. 26, 2005) ("While using animated

16  PowerPoint presentations was admittedly a more engaging method of conveying

17  information, it was not *necessary*."); *Fresenius Med. Care Holdings, Inc. v. Baxter*

18  *Int'l, Inc.*, 2008 WL 2020533, at *5 (N.D. Cal. May 8, 2008) (costs for use of

19  software to present graphics to jury "may have been helpful" but were not

20  "*necessary* to present the issues" to the jury). Nor does Netlist present any evidence

21  that the visual aids for which it seeks reimbursement were anything other than

22  "enlarged copies of exhibits already entered into evidence," as opposed reasonably

23  necessary (and therefore taxable) aids containing "complicated or technical

24  information, diagrams, or blueprints for the jury's understanding." *Gunchick v. Fed.*

25  *Ins. Co.*, 2015 WL 4451041, at *2 (C.D. Cal. July 17, 2015). Netlist's claimed

26  visual aid costs are therefore not taxable.

27      *Third*, assuming Netlist can clear the above hurdles, the Local Rules limit

28  Netlist to recovering the cost of "physical preparation and duplication" of

reasonably necessary visual aids, and excludes any costs for the "intellectual effort involved in the production" of such materials.  L.R. 54-3.12; *see also, e.g.*, *Sedlik v. Drachenberg*, 2024 WL 4327406, at *1-2 (C.D. Cal. Apr. 5, 2024) (disallowing costs for "substantive," as opposed to "physical," work in creating visual aids). Thus, courts "frequently reject[]" attempts to tax costs incurred by the preparer of visual aids in reading briefs, planning demonstratives, and communicating with the lawyers or other team members.  *Id.* at *2; *see also Pavo Sols. LLC v. Kingston Tech. Co.*, 2021 WL 12300143, at *4 (C.D. Cal. Aug. 18, 2021) (costs for "onsite graphics," "onsite design," "consulting," and "support" related to visual aids preparation not taxable).

Here, Netlist has provided no basis to conclude that the costs it seeks to tax were for the mere physical preparation of visual aids, as opposed to nontaxable intellectual or substantive work.  For each of the three invoices Netlist submits, Netlist seeks to recover a line item for "Graphics Production."  (*See* ECF No. 776-12 (Tab 12) at 5 (invoice for $54,830.25 for "Graphics Production"); *id.* at 13 (invoice for $26,743.50 for "Graphics Production"); *id.* at 20 (invoice for $50,809.50 for "Graphics Production").  Each of those line items is broken down into block-billed time entries including such vague descriptions as "Trial preparation" and "Onsite trial support":

*Total Professional Services*
**CA2 – Samsung: Graphics Production – CDLA**
  **Alan Ruffier**

| | | | |
|---|---|---|---|
| 03/03/2025 | Revising trial presentations | 1.00 | |
| 03/04/2025 | Revising trial presentations | 2.00 | |
| 03/09/2025 | Revising trial presentations | 2.00 | |
| 03/10/2025 | Trial preparation | 6.00 | |
| 03/11/2025 | Trial preparation | 6.00 | |
| 03/12/2025 | Trial preparation | 6.00 | |
| 03/13/2025 | Trial preparation | 8.00 | |
| 03/14/2025 | Trial preparation | 8.00 | |
| 03/15/2025 | Finalizing trial presentations | 12.00 | |
| 03/16/2025 | Finalizing trial presentations | 12.00 | |
| 03/17/2025 | Onsite trial support; finalizing all presentations | 12.00 | |
| 03/18/2025 | Onsite trial support; finalizing all presentations | 12.00 | |
| 03/19/2025 | Onsite trial support; finalizing all presentations | 12.00 | |
| 03/20/2025 | Onsite trial support; finalizing all presentations | 12.00 | |
| 03/21/2025 | Finalizing closing presentation | 4.00 | |
| 03/21/2025 | Onsite trial support; finalizing all presentations | 10.00 | |
| 03/24/2025 | Onsite trial support; final day of trial | 8.00 | |
| | **$378.00**          per hour x total hrs | **133.00** | **$50,274.00** |

  **David Reeder**

| | | | |
|---|---|---|---|
| 03/12/2025 | Produce and revise graphics for trial. | 1.70 | |
| | **$315.00**          per hour x total hrs | **1.70** | **$535.50** |

**CA 2 – Samsung: Graphics Production – CDLA**                                    **$50,809.50**

(ECF No. 776-12 (Tab 12) at 21.)  Those entries almost certainly include "quintessential [nontaxable] intellectual effort," like reading, planning, and communicating with others.  *Sedlik*, 2024 WL 4327406, at *2.  Indeed, Netlist appears to seek to tax as costs *every single hour* billed by Alan Ruffier, the top biller on each of the three invoices, without providing any basis for distinguishing between physical and substantive or intellectual work.  Where, as here, an applicant fails to "provide[] the Court with any basis for determining which hours were billed to" taxable and which hours to nontaxable activities, the claimed costs are not taxable.  *Pavo*, 2021 WL 12300143, at *4.  Similarly, Netlist provides no basis to discern how much of the billed time was spent on visual aids that were "never presented at trial" and therefore cannot be taxed.  *Minass v. HHC TRS Portsmouth LLC*, 2015 WL 12867304, at *3 (C.D. Cal. Mar. 23, 2015).  Netlist's failure to

provide any meaningful supporting documentation warrants denying its request to tax.

Netlist's costs of **$132,383.25** for visual aid production are not taxable.

## VI. NETLIST'S COSTS FOR SERVICE OF THE COMPLAINT ON A FOREIGN DEFENDANT ARE NOT TAXABLE

Netlist seeks **$965.90** in costs for purportedly serving the complaint on Samsung via the Hague Convention in South Korea. (ECF No. 776 at 2; ECF No. 776-3 (Tab 2A); Harbour Decl. ¶ 5(a).) Netlist claims it paid this sum for "service of the Complaint on Defendant Samsung, a Korean corporation, which service was required in Korea via procedures outlines and required by the Hague Convention." (Harbour Decl. ¶ 5(a).) But Netlist claimed that it effected service upon Samsung in the United States on June 26, 2020, *see* ECF No. 15, and initiated service in Korea under the Hague Convention only "out of an abundance of caution," *see* ECF No. 21 at 2. Samsung ultimately waived service. *See id.* Netlist therefore cannot show that the $965.90 it paid to initiate service in Korea constitutes a "[r]easonable" fee for service in this case. L.R. 54-3.2.

Moreover, the invoice submitted by Netlist does not show that the $965.90 was paid for service through the Hague Convention, or that service was accomplished through the Korean Central Authority (as required for service under the Hague Convention service in South Korea). (*See* ECF No. 776-3 at 3.) Thus, even if the fee were reasonable, the Clerk should decline to tax it because Netlist fails to "attach sufficient documentation to support" it. L.R. 54-2.1.

Netlist's claim for **$965.90** for service of the complaint is not taxable.

## VII. CONCLUSION

For the foregoing reasons, the following costs should not be taxed:

- **$21,273.60** in deposition transcript costs (ECF No.776 at 2; ECF No. 776-6 (Tab 5A); Harbour Decl. ¶ 6(a)).

1        o  Alternatively, **$449.70** in deposition transcript costs based on an

2           arithmetic error in Netlist's supporting documentation (Netlist's

3           counsel indicated in a meet and confer that Netlist will not

4           pursue this $449.70 in costs), and **$991.50** for nontaxable rough

5           draft transcripts.

6   • **$1,275.00** for surcharges paid by Netlist to deposition court reporters

7      (ECF No. 776 at 2; ECF No. 776-7 (Tab 5B); Harbour Decl. ¶ 6(b)).

8   • $**6,164.01** in "interpreter fees required for trial exhibits" (ECF No. 776

9      at 3).  Netlist's counsel indicated in a meet and confer that Netlist will

10     not pursue this $6,164.01 in costs.

11  • **$78,643.10** for copying three sets of trial exhibits for each of three

12     trials in this case (ECF No. 776 at 3; ECF No. 776-11 (Tab 10);

13     Harbour Decl. ¶ 9).

14       o  Alternatively, **$47,856.16** in costs for copying trial exhibits for

15          the third trial because the exhibit list was the same as the second

16          trial; or **$28,007.27** because Netlist's claimed costs for the third

17          trial are inexplicably excessive; and/or **$22,568.35** because, at

18          most, Netlist was required to submit two rather than three copies;

19          and/or **$8.891.75** in nontaxable charges paid to Netlist's trial

20          exhibit vendor.

21  • **$132,383.25** for the "cost of visual aid production" for the second and

22     third trials (ECF No. 776 at 3; ECF No. 776-12 (Tab 12); Harbour

23     Decl. ¶ 10).

24  • **$965.90** for service of the complaint on foreign defendant (ECF No.

25     776 at 2; ECF No. 776-3 (Tab 2A); Harbour Decl. ¶ 5(a)).

26      Pursuant to Local Rule 54-2.2, the undersigned counsel conferred with

27  counsel for Netlist in an effort to resolve disagreement about the taxable costs

28

SAMSUNG'S OBJECTIONS TO NETLIST'S APPLICATION TO TAX COSTS

1    claimed in Netlist's Application.  Apart from the **$449.70** and **$6,164.01** that Netlist

2    has agreed not to pursue, parties were unable to come to an agreement.

3

4

5    DATED:  May 5, 2025                    O'MELVENY & MYERS LLP

6

7                                                  By:    _*/s/ Marc J. Pensabene*_____

8                                                           Marc J. Pensabene
                                                          Attorneys for Defendant Samsung
9                                                         Electronics Co., Ltd.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OBJECTIONS TO NETLIST'S APPLICATION TO TAX COSTS