DANIEL M. PETROCELLI (SB 97802)
dpetrocelli@omm.com
RYAN YAGURA (SB 197619)
ryagura@omm.com
DREW BREUDER (SB 198466)
dbreuder@omm.com
LEAH GODESKY (SB 336854)
lgodesky@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York  10019
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-WLH-ADS<br><br>**DEFENDANT SAMSUNG'S OPPOSITION TO NETLIST'S MOTION FOR FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(c)(2)**<br><br>[Declaration of Marc J. Pensabene and Declaration of Jihee Choi filed concurrently herewith]<br><br>Date:  May 30, 2025<br>Time:  1:30 pm<br>Location:  Courtroom 9B<br>Judge:   Hon. Wesley L. Hsu |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................. 3

III.  ARGUMENT ...................................................................................................... 6

A.  Magistrate Judge Spaeth has already ordered Samsung to pay—
and Samsung has already paid—the reasonable fees Netlist
incurred in proving the relevant facts. ...................................................... 7

B.  Any fees Netlist incurred in presenting the relevant facts at the
Second Trial were not necessarily incurred to prove the
unadmitted facts. ....................................................................................... 9

1.  Supply RFAs ................................................................................. 10

2.  Cure RFA ...................................................................................... 14

C.  In any event, Netlist's Motion should be denied in its entirety
because its request is plainly unreasonable on its face and
because Netlist provides no basis for determining its entitlement
to an award or the request's reasonableness. ......................................... 15

IV.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES
### (continued)

Page(s)

**Cases**

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
   377 F. App'x 665 (9th Cir. 2010) ............................................................. 1

*Haiping Su v. Nat'l Aeronautics & Space Admin.*,
   711 F. App'x 444 (9th Cir. 2018) ..................................................... 16, 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................. 18

*Hillside Prods. v. Cnty. of Macomb*,
   2009 WL 3059147 (E.D. Mich. Sept. 24, 2009) ..................................... 17

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
   976 F.2d 573 (9th Cir. 1992) .............................................................. 6, 17

*Marchand v. Mercy Med. Ctr.*,
   22 F.3d 933 (9th Cir. 1994) ................................................. 6, 10, 17, 18

*Netlist Inc. v. Samsung Elecs. Co.*,
   2023 WL 6820683 (9th Cir. Oct. 17, 2023) ............................. 11, 14, 15

*Perez v. Discover Bank*,
   74 F.4th 1003 (9th Cir. 2023) .................................................................. 8

*Read-Rite Corp. v. Burlington Air Express, Inc.*,
   183 F.R.D. 545 (N.D. Cal. 1998) ................................................... passim

*Unity Courier Serv. Inc. v. Hudson Ins. Co.*,
   2019 WL 6974309 (C.D. Cal. Nov. 6, 2019) ......................... 7, 9, 13, 14

*Wash. State Dep't of Transp. v. Wash. Nat. Gas Co.*,
   59 F.3d 793 (9th Cir. 1995) ..................................................................... 10

*Welch v. Metro. Life. Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ............................................................ 18, 20

# TABLE OF AUTHORITIES
**(continued)**

Page(s)

**Other Authorities**

8B Wright, Miller & Marcus, *Federal Practice and Procedure* § 2290
   (3d ed. 2025) ........................................................................................................7

**Rules**

Fed. R. Civ. P. 37(c)(2) ...............................................................................................1, 6

SAMSUNG'S OPPOSITION TO NETLIST'S MOTION FOR FEES UNDER FEDERAL RULE OF CIVIL
PROCEDURE 37(c)(2)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In its Motion for Fees Under Federal Rule of Civil Procedure 37(c)(2) (ECF No. 779, "Motion" or "Mot."), Plaintiff Netlist Inc. ("Netlist") seeks $309,244 in attorney's fees that it allegedly incurred in proving certain facts that Defendant Samsung Electronics Co., Ltd. ("Samsung") did not admit in response to Netlist's requests for admission ("RFAs") during discovery.  Netlist already persuaded Magistrate Judge Spaeth to rule—in an order that Netlist itself claims is binding law of the case—that Netlist "proved" these facts through discovery.  Magistrate Judge Spaeth awarded $94,235.85 in fees and costs "incurred in making that proof."  Fed. R. Civ. P. 37(c)(2).  Yet Netlist now claims that it had to "prove" these same facts again, seeking $309,244 in additional attorney's fees it claims it incurred in preparing to present the facts at the May 2024 trial in this action (the "Second Trial").

Netlist's outlandish fee request should be rejected out of hand.  Under Rule 37(c)(2), a party may seek reasonable fees "incurred in developing … proof" of a fact that a party does not admit in response to an RFA.  *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 672 (9th Cir. 2010).  But such an award must be limited to those fees the party was "forced" to incur to "prove [the unadmitted] facts" and that would have been "avoided by a proper admission."  *Read-Rite Corp. v. Burlington Air Express, Inc.*, 183 F.R.D. 545, 548 (N.D. Cal. 1998).  And in no event is a party entitled to fees for proving facts other than the specific ones at issue in the relevant RFAs.  *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 937-38 (9th Cir. 1994).  Netlist hardly engages with these basic principles, instead contending that it is entitled to fees for any time its attorneys spent leading up to the Second Trial preparing witnesses or reviewing documents on topics "related" to seven RFAs.  But Netlist was not "forced" to incur its claimed $309,244 in fees to "prove"

1

any unadmitted facts subject to the RFAs, *Read-Rite*, 183 F.R.D. at 548, for several reasons.

*First*, Magistrate Judge Spaeth already ruled in June 2022, following the 2021 damages trial in this case (the "First Trial"), that Netlist "proved" the facts subject to the relevant RFAs by obtaining pertinent documents from Samsung in discovery or admissions from Samsung in connection with summary judgment, and awarded Netlist a total of $94,235.85 in fees and costs "incurred in making that proof." *See* ECF No. 331 at 11-17, 29-32, 44, 46.  On *Netlist's own account*, those findings stand as law of the case and bind both parties.  Mot. 7-9.  Samsung paid that award in full on or around July 28, 2022, fully compensating Netlist for the attorney's fees it incurred to prove the relevant unadmitted facts.  Under the doctrines of law of the case and judicial estoppel, Netlist cannot now seek additional fees because it decided to *use* facts at the Second Trial that it had already convinced Magistrate Judge Spaeth it had "proven" for Rule 37 purposes before that trial—and for which Samsung already paid Netlist attorney's fees.

*Second*, even setting aside Magistrate Judge Spaeth's prior order awarding fees and costs for those RFAs, and the fact that Samsung already paid Netlist that award, Netlist does not (and cannot) show that it incurred its requested fees to "prove" the relevant unadmitted facts at the Second Trial, or that it would have avoided incurring the fees had Samsung admitted the facts at the outset.  *See Read-Rite*, 183 F.R.D. at 548.  None of the facts were necessary to establish any elements of Netlist's claims, and the jury made no implicit or explicit findings as to the facts in question.  Thus, Netlist cannot be said to have "prove[n]" the facts at the Second Trial.  And because the facts were not necessary to any element, but were instead introduced to bolster Netlist's case to the jury and tell a broader story about Samsung's alleged breach, Netlist does not (and cannot) show that it would have done anything differently at the Second Trial if Samsung had admitted the facts in

its RFA responses.  Netlist confirmed as much at the March 2025 trial in this case (the "Third Trial"), where it presented essentially the same case and same evidence as it had at the Second Trial, despite Samsung's concession of breach and materiality under any interpretation but its own prior to the Third Trial.

*Finally*, even if Netlist were entitled to additional fees incurred preparing for the Second Trial, its Motion should be denied for two additional independent reasons: (i) the amount Netlist seeks is plainly unreasonable given the narrowness of the specific unadmitted facts at issue, and almost certainly encompasses time spent preparing to present *other* facts not at issue in the relevant RFAs; and (ii) Netlist utterly fails to meet its burden to demonstrate the reasonableness of its hourly rates and to submit documentation of the time spent by its attorneys and paralegals— making it impossible to assess the award's reasonableness or what portion of Netlist's claimed $309,244 in fees are actually attributable to the specific unadmitted facts at issue and would not have been incurred had Samsung admitted the facts at the outset.

Samsung respectfully requests that the Court deny Netlist's motion in its entirety.

## II.    BACKGROUND

Netlist's Motion concerns seven RFAs—six which sought admissions that Samsung took certain actions relating to its supply of NAND and DRAM to Netlist in early 2017 (Nos. 27-29, 32, 34-35) (the "Supply RFAs"), and one which sought an admission that Samsung took no steps to cure its alleged breach of Section 6.2 in May 2020 (No. 15) (the "Cure RFA").  *See* Mot. 9-16.[1]  RFA Nos. 27-29 sought

---

[1] Although Netlist's factual recitation refers to four more RFAs relating to Netlist's purported termination of the JDLA (Nos. 13, 14, 50, and 52), *id.* at 3-4, the argument section of its brief makes no reference to these RFAs, *see id.* at 9-16, and the supporting declaration submitted by Netlist's counsel does not mention them,

admissions from Samsung that "at some point between February 1, 2017 and May 18, 2017, Samsung set [a cap or limit / an allocation limit] on the amount of NAND and DRAM Products that [Netlist could purchase from Samsung / Samsung would support for Netlist]."[2]  ECF No. 779-2 at ECF pp. 43-46.  RFA No. 32 sought an admission that "in May 2017, Samsung informed Netlist that it would not allocate any NAND or DRAM Products for sale to Netlist."  *Id.* at ECF p. 49.  RFA Nos. 34-35 sought admissions that "in May 2017, Samsung stopped [accepting / supporting] any orders for NAND or DRAM Products from Netlist."  *Id.* at ECF pp. 51-52.  And RFA No. 15 sought an admission that Samsung "did not take action to cure the breach or to otherwise respond to Netlist's letter dated May 27, 2020, notifying Samsung that Samsung had breached the [JDLA], within thirty days of receiving the notification."  *Id.* at ECF p. 5.

Following the First Trial on damages, Netlist moved under Rule 37(c)(2) for attorney's fees and costs it claimed to have incurred to prove facts that Samsung unreasonably failed to admit in response to these and various other RFAs.  *See* ECF No. 288.  In its motion, Netlist argued that it "prove[d]" facts that Samsung should have admitted in response to the Supply and Cure RFAs by obtaining and identifying evidence of those facts through discovery and referring to that evidence in its summary judgment papers.  *See, e.g.*, *id.* at 15-19.  Magistrate Judge Spaeth granted Netlist's request for discovery-related fees and costs as to twelve RFAs, awarding $93,735.02[3] in attorney's fees and $500.83 in costs.  ECF No. 331 at 44-

---

*see* ECF No. 778-1 (Declaration of Michael Harbour).

[2] As did Magistrate Judge Spaeth, Samsung groups together the RFAs that are substantively identical for present purposes.  Minor variations in the wordings of the RFAs are reflected in brackets.

[3] Magistrate Judge Spaeth's order contains a typographical error listing the amount

45.  But she denied Netlist's request for fees incurred in connection with summary judgment, finding that those fees were not caused by Samsung's failure to admit because "Netlist would have had to prepare a summary judgment motion even if Samsung admitted the RFAs at issue."  *Id.* at 43.  As relevant here:

RFA Nos. 27-29.  Magistrate Judge Spaeth ruled that Samsung failed to admit, and Netlist proved through discovery, that Samsung set a cap or limit on the amount of NAND and DRAM Products Netlist could purchase from Samsung at some point between February 1, 2017 and May 18, 2017.  ECF No. 331 at 12.  To conclude that Netlist "proved" the facts, Magistrate Judge Spaeth pointed to: (i) an April 2017 internal Samsung email Netlist obtained in discovery in which a Samsung employee referenced Netlist and instructed colleagues to "manage the sales to dwindle down slowly" (ECF No. 142-4); (ii) an entry from Samsung's Statement of Genuine Disputes of Material Fact ("SGDMF") submitted in connection with summary judgment not disputing the content of that email; and (iii) another entry from Samsung's SGDMF not disputing that Samsung employee Neal Knuth was instructed on May 15, 2017 to "not accept" orders from Netlist.  *Id.* at 12-13.

RFA Nos. 32, 34-35.  Magistrate Judge Spaeth grouped these three RFAs together, characterizing all three as pertaining to "whether Samsung allocated any orders of NAND or DRAM products for Netlist in May 2017."  ECF No. 331 at 16.  She ruled that Samsung failed to admit these facts, and that Netlist proved them true, pointing to: (i) a May 2017 internal Samsung email Netlist obtained in discovery in which a Samsung employee recounted telling a Netlist executive that Samsung had

---

of the attorney's fee award as $93,705.03.  *See* ECF No. 331 at 45.  The actual fee award was $93,705.02, as confirmed by both the chart of fees on page 45 of the order and the total $94,235.85 award (encompassing the fee award and $500.83 in costs).  *See id.*

SAMSUNG'S OPPOSITION TO NETLIST'S MOTION FOR FEES UNDER FEDERAL RULE OF CIVIL
PROCEDURE 37(c)(2)

"zero allocation in Q3" for Netlist (ECF No. 142-5 at 2-3); and (ii) an entry from Samsung's SGDMF not disputing the content of that email.  *Id.* at 17.

RFA No. 15.  Magistrate Judge Spaeth ruled that Samsung failed to admit this RFA, and that Netlist proved it true, pointing to: (i) an entry in Netlist's Statement of Undisputed Facts ("SUF") at summary judgment in which it asserted that, "after having 'not received a response from Samsung … let alone any cure of such breaches[]'" in response to Netlist's May 27, 2020 letter, Netlist "sent a second letter"; (ii) an entry from Samsung's SGDMF in which it did not controvert Netlist's SUF entry with evidence; and (iii) Judge Scarsi's summary judgment order stating that Samsung's breaches of Section 6.2 under Netlist's interpretation "remain[ed] uncured."  ECF No. 331 at 30-31.

Samsung did not seek district court or appellate review of Magistrate Judge Spaeth's ruling, and it paid the awarded fees and costs to Netlist on or around July 28, 2022.  Declaration of Jihee Choi ¶ 3.

## III.   ARGUMENT

Netlist's Motion should be denied in its entirety because Netlist has already been fully compensated for the fees it incurred in "prov[ing]" the relevant unadmitted facts "true" within the meaning of Rule 37(c)(2).  Fed. R. Civ. P. 37(c)(2).  "If a party fails to admit what is requested" in an RFA and the requesting party "later proves … the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, *incurred in making that proof.*"  Fed. R. Civ. P. 37(c)(2) (emphasis added).  A district court may not, however, award fees that do not "flow" from the wrongful failure to admit. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 581 (9th Cir. 1992); *see also Marchand*, 22 F.3d at 939 (award limited to expenses "that flowed directly from the improper answers" to RFAs).  Thus, a party may recover under Rule 37(c)(2) "only those fees and costs spent proving the truth of [the unadmitted

fact(s)] that it would not have spent otherwise." *Unity Courier Serv. Inc. v. Hudson Ins. Co.*, 2019 WL 6974309, at *5 (C.D. Cal. Nov. 6, 2019); *see also, e.g.*, *Read-Rite*, 183 F.R.D. at 548 (denying expenses that plaintiffs were not "forced" to incur to "prove [the unadmitted] facts"); 8B Wright, Miller & Marcus, *Federal Practice and Procedure* § 2290 (3d ed. 2025) ("The expenses that may be assessed are only those that could have been avoided by the admission[.]").

### A.  Magistrate Judge Spaeth has already ordered Samsung to pay—and Samsung has already paid—the reasonable fees Netlist incurred in proving the relevant facts.

Netlist's claimed fees are not recoverable because it has already persuaded Magistrate Judge Spaeth that it "proved" the relevant facts in discovery, and has been awarded and paid the fees incurred in making that proof.  The point of Rule 37(c)(2) is to "compensate" litigants for the "additional costs related to proving" unadmitted facts, *Cole v. Munoz*, 2013 WL 2456406, at *2 (E.D. Cal. June 6, 2013). A party may recover fees necessary to prove the facts not admitted.  But it is not entitled to fees beyond what was necessary to prove the unadmitted fact.  *See, e.g.*, *Unity Courier*, 2019 WL 6974309, at *5; *Read-Rite*, 183 F.R.D. at 548.

Here, Magistrate Judge Spaeth found that Netlist proved through discovery the facts that Samsung did not admit in response to the Supply and Cure RFAs.  *See supra* at 5-6.  She further awarded Netlist its reasonable expenses and attorney's fees incurred in making that proof.  *See id.*  Samsung did not appeal that order, and by Netlist's own account, the Ninth Circuit's opinion did nothing to disturb it.  *See id.*  In Netlist's telling, Magistrate Judge Spaeth's order and its findings therefore remain "binding law of the case."  Mot. 1, 8.

That should be the end of the matter with respect to fees under Rule 37(c)(2).  As Magistrate Judge Spaeth found—adopting Netlist's own argument in its prior Rule 37 motion—Netlist "proved" through discovery the facts that Samsung did not

admit in response to the relevant RFAs.  Magistrate Judge Spaeth awarded Netlist its "reasonable expenses, including attorney's fees, *incurred in making that proof*." ECF No. 331 at 35 (quoting Fed. R. Civ. P. 37(c)(2)).  That award fully compensated Netlist for the expense of proving those facts, putting Netlist in the same position it would have been had Samsung admitted them at the outset.  And Samsung paid the full amount of that award on or around July 28, 2022.  *See supra* at 6.

Netlist's argument now is that those same facts were not proven at the time Netlist made its original Rule 37 motion, so it needed to incur more fees to prove those facts at the Second Trial.  But Netlist is judicially estopped from making that argument.

A party is judicially estopped from making an argument when "1) its current position is clearly inconsistent with its previous position; 2) the party has succeeded in persuading a court to accept that party's earlier position; and 3) the party, if not estopped, would derive an unfair advantage or impose an unfair detriment on the opposing party."  *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023) (quotations omitted).  All of the elements of judicial estoppel are present here. Netlist's position is that it had to incur fees to "prove" the unadmitted facts at the Second Trial.  That is "clearly inconsistent" with Netlist's previous position that it already "proved" those same facts by obtaining and identifying evidence of them through discovery and submitting that evidence in connection with summary judgment.  *See* ECF No. 288 at 15-19.  And Netlist "succeeded in persuading" Magistrate Judge Spaeth that the facts were proven.  ECF No. 331 at 12-13, 16-17. Finally, Netlist would derive an unfair advantage if not estopped, because it has already been made whole for Samsung's failure to admit the relevant facts— Magistrate Judge Spaeth awarded, and Samsung paid, Netlist's reasonable fees and costs that it had to incur to prove the facts.  *See supra* at 4-6.

Having previously persuaded Magistrate Judge Spaeth that it "proved" the relevant facts through discovery, Netlist may not now seek fees by arguing that it had to "prove" them again at the Second Trial. Certainly, Netlist was entitled to *use* those already-proven facts at trial to try to prove its claims or to present its story to the jury. But Netlist identifies no basis for an award of fees for using facts that it had already convinced the Court that it had proven, and had already been compensated for proving under Rule 37. Netlist's unreasonable fee grab should be rejected.

### B.   Any fees Netlist incurred in presenting the relevant facts at the Second Trial were not necessarily incurred to prove the unadmitted facts.

Even setting aside Magistrate Judge Spaeth's prior ruling, the law of the case, and judicial estoppel, Netlist's motion fails under its own terms. Netlist makes no meaningful showing that any fees it seeks in connection with the Second Trial were fees "spent proving the truth" of unadmitted facts that Netlist "would not have spent otherwise"—*i.e.*, if Samsung had admitted the seven RFAs at issue. *Unity Courier*, 2019 WL 6974309, at *5; *see also Read-Rite*, 183 F.R.D. at 548 (expenses limited to those that "could have been avoided by a proper admission"). Indeed, Netlist makes no effort to explain how its trial expenses "proved" the facts subject to the relevant RFAs, or even what it would have done differently at the Second Trial had Samsung admitted those facts. To the contrary, although Netlist claims that it was forced to incur the claimed fees to prove "material breach" at the Second Trial, it presented essentially the same exact case at the Third Trial, in which Samsung had conceded breach and materiality under any interpretation of the contract other than Samsung's own. This conclusively establishes that Netlist incurred no additional expenses at the Second Trial that it would not have otherwise incurred. Netlist's fee request should thus be denied in its entirety.

1.      **Supply RFAs.**

Netlist argues that, because it had to establish that Samsung materially breached the JDLA at the Second Trial, it "had to spend significant resources" preparing for the Second Trial to prove facts that Samsung should have admitted in response to the Supply RFAs—namely, that (i) "in the first half of 2017 Samsung capped the amount of NAND and DRAM Netlist could purchase" and that (ii) Samsung "ultimately told Netlist [in May 2017] it would not be allocated any more product." Mot. 9. There are two problems. First, Netlist did not "prove" these facts at the Second Trial. Second, Netlist does not (and cannot) show that it would have done anything differently at the Second Trial had Samsung admitted the relevant facts at the outset.

a.      <u>*Netlist did not "prove" the relevant facts at the Second Trial.*</u>

Netlist makes no showing that it "proved" the relevant facts at the Second Trial. A party may, in theory, be entitled to fees for establishing an element of its claims at trial, or a fact critical to one of those elements, that its opponent unreasonably failed to admit. *See, e.g.*, *Marchand*, 22 F.3d at 939 (affirming award of fees in medical malpractice suit for failure to admit elements of negligence and causation); *cf. Wash. State Dep't of Transp. v. Wash. Nat. Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995) (fees not warranted under Rule 37(c)(2) where claim did not require showing the fact subject to the RFA). In that circumstance, a favorable verdict is evidence that the party "proved" the element or necessary fact.

Here, by contrast, the facts on which Netlist's Motion is premised were not necessary for Netlist to prevail. Netlist argues that it was forced prove the relevant facts to prove materiality. *See* Mot. 9-16.[4] But to prevail on materiality, Netlist was

---

[4] Netlist's Motion refers to "material[] breach[]" rather than materiality, Mot. 9, but

not required to prove either that Samsung "capped" supply to Netlist in early 2017 or that Samsung informed Netlist in May 2017 that it would not allocate product to Netlist—it merely had to prove that Samsung's breach under Netlist's interpretation went to the "root of the agreement between the parties." *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *3 (9th Cir. Oct. 17, 2023) (quotations omitted) (laying out multi-factor test for materiality under New York law). Nor did the jury find those facts established. *See* ECF No. 556 (Verdict). Nor does Netlist even attempt to show that Samsung contested the facts at the Second Trial. There is no way to know whether the jury at the Second Trial believed any of the facts on which Netlist's Motion is premised (or gave them any weight in reaching its conclusions as to materiality). Netlist thus cannot reasonably be said to have "proven" the facts at trial within the meaning of Rule 37(c)(2).

Indeed, Netlist would have offered exactly the same facts that it says it needed to prove materiality even if materiality were not at issue. We know that because in the Third Trial—where materiality was not at issue, *see* Mot. 15; ECF No. 693 at 1—*Netlist offered essentially the same evidence that it now argues was necessary to prove materiality at the Second Trial*. Prior to the Third Trial, Netlist vigorously argued that Samsung's setting of a supply "cap" and decisions relating to Netlist's "allocation" were admissible *despite* Samsung's concession of materiality because they were probative on the *contract interpretation* issue that remained before the jury. *See, e.g.*, ECF No. 675 at 4 ("A jury could infer that the behavior of setting caps … [was] the behavior of an entity who believes it has a contractual obligation …."); *id.* ("A jury can infer from [an email referring to "zero allocation"]

---

Samsung conceded the issue of breach under Netlist's interpretation before the Second Trial, *see* ECF No. 511 at 11.

1  that … Netlist was not a normal customer, but instead that it had a contractual right

2  to supply ….").

3      Thus, Netlist presented much of the evidence and argument it relies on in its

4  Motion *at the Third Trial*—for which it concedes it is *not* entitled to fees.  For

5  example, at both trials, Netlist asserted in its opening statement that Samsung

6  internally decided to cut off supply to Netlist in May 2017.  *Compare* Mot. 9, *with,*

7  *e.g.*, Declaration of Marc J. Pensabene ("Pensabene Decl.") Ex. 2 (3/18/25 Trial Tr.)

8  at 215:12-14, 218:24-25 (Netlist's Third Trial opening statement arguing that "no

9  later than May of 2017, Samsung internally decided to give zero allocation to

10  Netlist," and that "Samsung alone decided after May of 2017 what product we

11  would obtain").  Similarly, Netlist elicited testimony from Netlist's Chuck Hong at

12  both trials that "explained in detail Samsung's decision to cutoff and cap Netlist's

13  supply in 2017."  Mot. 11; *see also, e.g.*, Pensabene Decl. Ex. 3 (3/19/25 Trial Tr.)

14  at 345:20-346:1 (testifying that Samsung told Netlist at the end of Q2 2017 that it

15  would "no longer honor [Netlist's] product requests," using the phrase "zero

16  allocation").

17      Similarly, at both trials, Netlist elicited testimony from Netlist's Noel Whitley

18  that Samsung's behavior with respect to the supply of NAND and DRAM suddenly

19  changed in 2017.  *Compare* Mot. 11, *with, e.g.*, Pensabene Decl. Ex. 4 (3/20/25

20  Trial Tr.) at 549:1-6 (testifying that in 2017 Samsung began "arbitrarily sort of

21  limiting the amount of products that we could purchase").  And at both trials, Netlist

22  questioned former Samsung employee Neal Knuth about his knowledge of Netlist's

23  projected purchases absent an allocation limit or cap.  *Compare* Mot. 12, *with*

24  Pensabene Decl. Ex. 4 (3/20/25 Trial Tr.) at 575:11-576:1 ("Q:  … In order to

25  support an additional $50 million in 2017, and $75 million in 2018, like you knew

26  Netlist was planning, they would have to take some pretty substantial steps to

27  expand their employee base, correct?  A:  I would guess, yes.").

28

Netlist also points to the admission of four exhibits—Trial Exhibits 7, 63, 64, and 152—as evidence that Netlist had to prove unadmitted facts subject to the Supply RFAs at the Second Trial to establish materiality.  *See* Mot. 13-14.  Yet Netlist admitted the same *exact* four exhibits at the Third Trial.  *See* ECF No. 557 at 1, 4, 13.

These are just a few examples.  The fact that Netlist presented essentially the same case at the Third Trial refutes Netlist's contention that it was required to introduce the facts subject to the Supply RFAs to prove materiality.  And without that argument, Netlist has no argument at all.  Again, its whole theory is that it was forced to "prove" the facts implicated by the Supply RFAs to prove materiality, and should recover fees for offering those facts at the Second Trial.  Yet it offered the same evidence at the Third Trial, where materiality was not at issue and which Netlist admits is not subject to Rule 37.  Netlist would have (and did) spend its claimed fees whether it had to prove materiality or not, and thus it may not recover them under Rule 37(c)(2).

> **b.** *Netlist would not have avoided any of the fees it seeks had Samsung admitted the relevant facts in its RFA responses.*

Relatedly, and just as importantly, Netlist does not (and cannot) show that it would have avoided incurring the fees it seeks (or indeed done anything differently) at the Second Trial if Samsung had admitted the facts at the outset.  *See Unity Courier*, 2019 WL 6974309, at *5; *Read-Rite*, 183 F.R.D. at 548; *cf.* ECF No. 331 at 43 (Magistrate Judge Spaeth's ruling denying Netlist fees incurred in connection with summary judgment because "Netlist would have had to prepare a summary judgment motion even if Samsung admitted the RFAs at issue").  Because the relevant facts were not necessary to prove elements, but to tell a broader story, *see supra* at 10-13, Netlist does not explain why it would not have presented the same evidence—and incurred the same fees—had the facts been admitted.  The relevant

question is whether Netlist would have saved money by relying on RFA admissions instead of presenting the evidence the way it did, *see, e.g.*, *Read-Rite*, 183 F.R.D. at 548, and Netlist provides no basis whatsoever to find in its favor on that question. To the contrary, Netlist's ample use of the same evidence at both the Second and Third Trials make clear that it would have still introduced that evidence even if Samsung had admitted the RFAs. Any fees incurred in doing so are therefore not recoverable under Rule 37. *See Unity Courier*, 2019 WL 6974309, at *5; *Read-Rite*, 183 F.R.D. at 548.[5]

### 2. Cure RFA.

Netlist also seeks to recover fees it claims it incurred in proving that "Samsung did nothing to cure its prior breaches after Netlist sent it notice of breach on May 27, 2020." Mot. 15-16. But Netlist's argument as to the Cure RFA fails for the same reasons as with the Supply RFAs.

As with the Supply RFAs, Netlist makes no showing that it "proved" Samsung's failure to cure at the Second Trial. Proving failure to cure was not necessary for Netlist to prove materiality, *see Netlist Inc.*, 2023 WL 6820683, at *3 (laying out multi-factor test for materiality under New York law), and the jury made no finding on whether Samsung failed to cure, *see* ECF No. 556 (Verdict).

Indeed, Samsung never disputed at the Second Trial that it did nothing to cure any breaches after Netlist sent the May 27, 2020 notice. Since at least as early as October 2021, Samsung has consistently argued that any cure was impossible following Netlist's May 2020 notice because that notice did not "identify any of the alleged breaches or describe how Samsung could cure them." ECF No. 210 at 9; *see*

---

[5] Certainly, Netlist provides the Court no basis whatsoever to determine which, if any, of the many hours of attorney and paralegal work for which it seeks reimbursement would have been avoided if Samsung had admitted the relevant facts. *See infra* at 19-20.

*also* Pensabene Decl. Ex. 5 (Samsung's First Brief on Cross-Appeal) at 49-50 ("Samsung's ability to cure was made impossible by Netlist's failure to give timely notice."). In fact, Samsung's counsel reiterated that point in opening, contending that cure was impossible because the notice did "not identify a single order that Netlist supposedly wanted Samsung to fill" that would cure the alleged breach. Pensabene Decl. Ex. 1 (5/14/24 Trial Tr.) at 191:1-7. Thus, Netlist had no need to prove at the Second Trial that Samsung took no steps to cure, as that fact had long been undisputed.[6] And as with the Supply RFAs, Netlist makes no attempt whatsoever to show that it would have been spared any fees if Samsung had admitted the RFA at the outset, further demonstrating that Netlist's requested fees are unrecoverable. *See supra* at 13-14.

### C. In any event, Netlist's Motion should be denied in its entirety because its request is plainly unreasonable on its face and because Netlist provides no basis for determining its entitlement to an award or the request's reasonableness.

As discussed above, Netlist's Motion should be denied in its entirety because it fails to show that it seeks fees incurred in proving unadmitted facts that would not have been incurred had Samsung admitted the relevant RFAs. But even if the Court disagrees, it should deny Netlist's Motion for two additional independent reasons:

---

[6] Netlist argues that one of Samsung's "main themes" at the Second Trial was that Samsung "did everything it could to help Netlist" even after termination of the JDLA, including by continuing to sell Netlist products. Mot. 15-16. But Samsung never contended that any of these actions were meant to cure any breach, as Samsung's opening argument made clear. *See supra* at 14-15. To the contrary, Samsung presented this evidence to support its interpretation of Section 6.2 (because it illustrated Samsung's regular NAND and DRAM sales relationship with Netlist outside of Section 6.2) and because it went to several factors relevant to materiality, such as "the extent to which the injured party will be deprived of the benefit which he reasonably expected" and "the breaching party's good faith or willfulness." *Netlist Inc.*, 2023 WL 6820683, at *3.

(i) Netlist's fee request is plainly unreasonable on its face; (ii) Netlist's fails to meet its burden to show a reasonable hourly rate, entitlement to an award, and the appropriate hours expended by its attorneys and paralegals.

*First*, Netlist's fee request is plainly unreasonable on its face, which alone warrants denying its Motion. *See Haiping Su v. Nat'l Aeronautics & Space Admin.*, 711 F. App'x 444, 445 (9th Cir. 2018) (district court within its discretion to deny outright "plainly unreasonable" fee request under Rule 37(c)(2)). Netlist claims that it spent "hundreds of hours" preparing the relevant witnesses, and seeks fees totaling over $300,000. Declaration of Michael Harbour, ECF No. 778-1 ("Harbour Decl.") ¶¶ 13, 16.

That amount is plainly unreasonable given that none of the relevant facts were elements of Netlist's claims, *see supra* at 10-13, 14. Even assuming that Netlist had to "prove" these facts at the Second Trial, such proof would have been relatively straightforward, as Magistrate Judge Spaeth's ruling makes clear. She found RFA Nos. 27-29 proven based on a single email (along with Samsung's statement that it did not dispute the email's contents) and one additional admission from Samsung at summary judgment. *See supra* at 5. And she found RFA Nos. 32 and 34-35 proven based on a single email (along with Samsung's statement that it did not dispute the email's contents), and RFA No. 15 proven based on Samsung's failure to controvert a statement from Netlist's SUF with evidence. *Id*. at 5-6. Nor does Netlist make any showing that any of the relevant facts were at all contentious at trial. *See supra* at 11, 14-15. Indeed, for the Cure RFA, all Netlist points to is a few lines of testimony from Noel Whitley at the Second Trial and a few lines from Netlist's closing. Mot. 16. Yet Netlist seeks fees for hundreds of hours preparing the testimony of five witnesses and reviewing "potentially relevant" exhibits. Harbour Decl. ¶ 13. Netlist's request for $309,244 is a plainly unreasonable given the narrow facts at issue.

Netlist's Motion and supporting documents themselves make clear that its claimed $309,244 award encompasses work that goes well beyond the specific RFAs at issue.  As discussed above, those RFAs concerned narrow factual issues such as whether Samsung imposed a cap between February and May 2017 and whether Samsung conveyed to Netlist in May 2017 that it was cutting Netlist's allocation.  *See supra* at 3-4, 10.  Any award under Rule 37(c)(2) must therefore be limited to fees incurred in proving *those facts*—not other, albeit related, facts.  *See, e.g.*, *Marchand*, 22 F.3d at 937-38 (reversing Rule 37(c)(2) award for fees incurred in proving that *defendant* removed spinal immobilization device, where RFA asked merely whether the devices were removed); *Holmgren*, 976 F.2d at 581 (abuse of discretion to award fees under Rule 37(c)(2) that did not "flow" from wrongful failure to admit); *Hillside Prods. v. Cnty. of Macomb*, 2009 WL 3059147, at *2 (E.D. Mich. Sept. 24, 2009) (award under Rule 37(c)(2) not appropriate where requesting party "had to present evidence of a fact closely related to that denied").

Despite this, Netlist's Motion admits that its fee calculation is based on the time attorneys spent preparing the relevant witnesses and reviewing documents "related to … Samsung's failure to supply," Mot. 17—a much broader topic than any particular "limit" or "cap" set in early 2017 or any communication in May 2017 that product would not be allocated.  The supporting declaration of Netlist's counsel, too, makes clear that Netlist is seeking fees broadly "related to … Samsung's decision to stop supplying Netlist with NAND and DRAM and cap Netlist's NAND and DRAM allocation."  Harbour Decl. ¶ 13.

The examples Netlist cites in its Motion confirm Netlist's overreach.  For example, Netlist relies on testimony from its employee Devon Park that Samsung told Netlist in April 2017 that certain products were unavailable, but fails to explain how that has anything to do with a "cap" or a communication to reduce allocation.  Mot. 9-10.  Similarly, Netlist relies on extensive testimony about "how these caps

1    worked in practice," *see* Mot. 10, 12, even though the Supply RFAs at most asked

2    Samsung to admit *whether* it imposed a cap in early 2017—not how the caps

3    worked.  Netlist also claims fees for testimony that it says shows how much product

4    Netlist would have purchased absent the caps—also not at issue in the Supply RFAs.

5    *See* Mot. 12.  Whatever Netlist's entitlement to fees for presenting *the unadmitted*

6    *facts at issue in the relevant RFAs* at the Second Trial, it certainly may not recover

7    fees incurred in preparing to present these other, "related" facts.  *See Marchand*, 22

8    F.3d at 937-38.  When properly limited to the specific facts at issue in the Supply

9    and Cure RFAs, Netlist's $309,244 request is plainly unreasonable, which alone

10   warrants outright denial of its Motion.  *See Haiping Su*, 711 F. App'x at 445.

11        *Second*, Netlist has utterly failed to meet its burden to demonstrate that its

12   requested fees are reasonable.  In the Ninth Circuit, reasonable attorney's fees are

13   determined by the lodestar method.  *See Morales v. City of San Rafael*, 96 F.3d 359,

14   363 (9th Cir. 1996).  Under that method, the party seeking fees bears the burden of

15   demonstrating that its claimed hourly rates are reasonable by producing "satisfactory

16   evidence—*in addition to the attorney's own affidavits*—that the requested rates are

17   in line with those prevailing in the community for similar services by lawyers of

18   reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport*

19   *Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quotations omitted) (emphasis added).

20   The party seeking fees must also submit documentation of the "appropriate hours

21   expended in the litigation."  *Welch v. Metro. Life. Ins. Co.*, 480 F.3d 942, 948 (9th

22   Cir. 2007); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee applicant

23   "bears the burden of establishing entitlement to an award and documenting the

24   appropriate hours expended and hourly rates").

25        Here, Netlist's showing is woefully inadequate on both counts.  Apart from an

26   attorney declaration citing a few cases, one rate survey, and one new story, *see*

27   Harbour Decl. ¶ 18, Netlist submits no evidence of the prevailing market rates.  And

28

SAMSUNG'S OPPOSITION TO NETLIST'S MOTION FOR FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(c)(2)

while Netlist cites a small handful of cases in which courts have approved rates for Netlist's counsel (Irell & Manella LLP) or other law firms, *see* Mot. 18, these cases are all more than six years old, and Netlist makes virtually no attempt to show that they are comparable to the present case in complexity or required resources. Such a minimal showing plainly does not satisfy Netlist's burden to submit "satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community." *Camacho*, 523 F.3d at 980 (quotations omitted) (emphasis added).

Netlist's documentation of its attorneys' and paralegals' hours is also utterly inadequate to demonstrate "entitlement to an award" and the "appropriate hours expended." *Hensley*, 461 U.S. at 437. It does not submit a single time entry for any of its lawyers or paralegals, or even any general descriptions of the work done by any particular lawyer. Instead, Netlist's attorney-declarant reviewed Irell & Manella LLP's billing records and prepared a chart listing the number of hours each attorney or paralegal billed preparing the testimony of certain witnesses or "reviewing potentially relevant documents." Harbour Decl. ¶¶ 14, 16. The chart then multiplies each individual's hours billed by a percentage that represents the declarant's "estimate[]" of the portion of those hours dedicated to proving "facts related to … Samsung's decision to stop supplying Netlist with NAND and DRAM and cap Netlist's NAND and DRAM allocation and … Samsung's failure to cure." Harbour Decl. ¶¶ 13, 14, 16. Nothing in that submission permits the Court to determine which hours were spent on what tasks, assess whether any work was duplicative, evaluate the reasonableness of the hours spent on particular tasks, or evaluate the accuracy of its attorney-declarant's "estimates."

Netlist's scant showing is even more egregious where, as here, it is clear that at least some portion of Netlist's requested fee award is unrecoverable. Netlist is seeking fees for work on facts *related to* the relevant RFAs, not just fees incurred in

1    preparing to present the specific unadmitted facts at issue. *See supra* at 16-18. The

2    Court simply has no way, based on Netlist's submission, to determine which hours

3    were spent on tasks related to those specific facts, as opposed to other "related"

4    facts. Similarly, even if Netlist could show that *some* of its claimed hours of

5    attorney and paralegal work would have been avoided if Samsung had admitted the

6    relevant facts in its RFA responses—which it cannot, dooming its Motion in its

7    entirety, *see supra* at 13-15—it provides no basis to determine which hours satisfy

8    that basic causation requirement. The Court should thus deny Netlist's Motion, or at

9    the very least substantially reduce Netlist's claimed award, for failure to provide

10    sufficient documentation to show "entitlement to an award" and the "appropriate

11    hours expended." *Hensley*, 461 U.S. at 437.

12    **IV.   CONCLUSION**

13          For the foregoing reasons, Samsung respectfully requests that the Court deny

14    Netlist's Motion in its entirety.

16    DATED: May 9, 2025          O'MELVENY & MYERS LLP

18                      By:      */s/ Marc J. Pensabene*

19                          Marc J. Pensabene

                              Attorneys for Defendant Samsung

                              Electronics Co., Ltd.

20

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Samsung Electronics Co., Ltd.,

3

certifies that this brief contains 6,565 words, which complies with the word limit of

Local Rule 11-6.1.

4

5

DATED:  May 9, 2025                    By:  */s/ Marc J. Pensabene*

6

Marc J. Pensabene

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPPOSITION TO NETLIST'S MOTION FOR FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(c)(2)