JASON SHEASBY, SBN 205455
jsheasby@irell.com
MICHAEL HARBOUR, SBN 298185
mharbour@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

LISA S. GLASSER, SBN 223406
lglasser@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949.760.0991
Facsimile: 949.760.5200

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | Case No. 8:20-cv-00993-WLH(ADS)<br><br>**NETLIST INC.'S REPLY IN SUPPORT OF MOTION AND MOTION FOR FEES AND EXPENSES UNDER FEDERAL RULE OF PROCEDURE 32(c)(2)**<br><br>Date:     May 30, 2025<br>Time:    1:30pm<br>Judge:   Hon. Wesley L Hsu |

11443089.5 01

**TABLE OF CONTENTS**

**Page**

I.  NETLIST IS NOT BARRED FROM SEEKING ADDITIONAL FEES ................................................................................................................1

II. NETLIST IS ENTITLED TO FEES FOR THE UNADMITTED SUPPLY RFAs ..........................................................................................................3

    A.    Netlist Proved the Unadmitted Supply RFAs .......................................3

    B.    Samsung Cannot Escape Sanctions by Arguing Netlist Would Have Incurred Fees Regardless of Samsung's Improper Denials ..............................................................................6

III. Netlist is Entitled to Fees for the Unadmitted Cure RFA ...............................7

IV. NETLIST'S FEE REQUEST IS REASONABLE .........................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Marchand v. Mercy Med. Ctr.*,
  22 F.3d 933 (9th Cir. 1994) .......................................................................... 6, 9, 11

*McCarthy v. Ameritech Pub., Inc.*,
  763 F.3d 488 (6th Cir. 2014) .................................................................................. 4

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
  1997 WL 470138 (S.D.N.Y. Aug. 14, 1997) ......................................................... 2

*Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab'y, Inc.*,
  No. 02CV0046-B (JMA), 2006 WL 8455410 (S.D. Cal. June 21, 2006) ............................................................................................................................ 2

*Read-Rite Corp. v. Burlington Air Express, Inc.*,
  183 F.R.D. 545 (N.D. Cal. 1998) ........................................................................... 6

*In re Stauffer Seeds, Inc.*,
  817 F.2d 47 (8th Cir. 1987) .................................................................................... 2

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,
  591 F.3d 1167 (9th Cir. 2010) ................................................................................ 2

*Unity Courier Serv. Inc. v. Hudson Ins. Co.*,
  2019 WL 6974309 (C.D. Cal. Nov. 6, 2019) ......................................................... 6

**Rules**

Fed. R. Civ. P. 37(c)(2)(B) ............................................................................... *passim*

Samsung's Opposition is long on rhetoric, but short on evidence or authority showing that Netlist's fee request is unwarranted. None of its arguments have merit.

First, Netlist's fee request is not barred under the law of the case doctrine, as Netlist is not asking the Court to reconsider the prior fee award. That award was issued after Netlist prevailed on summary judgment, and thus only included fees through discovery. Netlist is now seeking compensation for the additional fees it incurred at trial proving the facts that Samsung improperly denied. Netlist is entitled to such fees under Rule 37(C)(2), and its current request is fully consistent with Magistrate Judge Spaeth's prior fee award and the positions that Netlist has taken in this litigation.

Second, contrary to Samsung's assertion, all of the facts at issue were necessary to prove material breach at the Second Trial. By setting caps on Netlist's allocation and ultimately reducing this allocation to zero, Samsung destroyed the root of the agreement and deprived Netlist of the benefit of its bargain. Moreover, Netlist proved these facts as demonstrated by the fact that the jury found for Netlist on material breach. Samsung's assertion that Netlist presented the same evidence at the Third Trial (for which Netlist is not seeking fees) is both wrong and irrelevant. For example, one of Netlist's key witnesses at the Second Trial (Devon Park) was not even called in the Third Trial. Regardless, even if Samsung were correct, this would only show that Netlist could have sought fees for the Third Trial as well, not that it is somehow barred from seeking fees for the Second Trial.

Third, Netlist has presented ample evidence that its fee request is reasonable and specifically apportioned to work performed to prove the unadmitted facts. Samsung does not even attempt to provide any counter evidence rebutting Netlist's surveys or cases demonstrating that Netlist's fee request is in line with what peer firms charge for comparable litigation. Netlist's request for fees should be granted.

**I.  NETLIST IS NOT BARRED FROM SEEKING ADDITIONAL FEES**

Samsung's argument that Netlist's fee request for the Second Trial is somehow barred by the law of the case doctrine is nonsensical. That doctrine applies to issues

that were either decided in a prior appeal or issues that could have been raised in the prior appeal but were not. Mot. at 7. Here, the Ninth Circuit could not possibly have determined that Netlist was not entitled to recoup fees it incurred proving unadmitted facts at the Second Trial during the prior appeal **because the Second Trial had not yet occurred.**

In contrast, Magistrate Judge Spaeth's finding that Samsung improperly denied certain RFAs and therefore entitled to fees incurred providing those face is binding law of the case because Samsung could have challenged that finding in the prior appeal but chose not to. Mot. at 7-8. Netlist is not in any way challenging the prior ruling, but rather seeking the additional fees incurred after the ruling. This is not barred by the law of the case. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 1997 WL 470138, at *6 (S.D.N.Y. Aug. 14, 1997) (holding that it was "law of the case that fees paid by [plaintiffs] are recoverable" and then awarding "additional fees and expenses incurred since the end of the first trial that were not part of the previous award."); *see also U.S. Life Ins. Co. v. Superior Nat. Ins. Co.,* 591 F.3d 1167, 1178–79 (9th Cir. 2010) (award of disgorgement was not barred by prior award of compensatory damages).

Samsung's argument that Magistrate Judge Spaeth already awarded Netlist the amount that Netlist incurred "through discovery," Opp. at 7, is irrelevant because Netlist's current motion does not seek any additional payment for fees incurred in discovery, but rather seeks only the additional fees incurred at trial. Rule 37(c)(2) permits a party to recover both the fees it incurred from discovery and from trial. Fed. R. Civ. P 37(c)(2); *see also Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab'y, Inc.*, No. 02CV0046-B (JMA), 2006 WL 8455410, at *4 (S.D. Cal. June 21, 2006) ("Rule 37(c) applies whether the fact was proven at trial or in a dispositive motion."); *In re Stauffer Seeds, Inc.*, 817 F.2d 47, 50 (8th Cir. 1987) ("Rule 37. . . authorizes an award encompassing 'all expenses, **whenever incurred**, that would not have been sustained had the opponent conducted itself properly.' ") (emphasis added)

Samsung's argument that Netlist is somehow "judicially estopped" from seeking trial fees similarly fails. As Samsung acknowledges, judicial estoppel only applies where a party takes a position that "is clearly inconsistent with its previous position." Opp. at 8 (quoting *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023)). There is nothing inconsistent whatsoever about Netlist seeking the fees it incurred proving unadmitted facts at trial in addition to fees it incurred developing these facts through discovery. This is exactly what Rule 37(c)(2) contemplates.

## II. NETLIST IS ENTITLED TO FEES FOR THE UNADMITTED SUPPLY RFAs

### A. Netlist Proved the Unadmitted Supply RFAs

Samsung's argument that Netlist failed to prove that the facts that were the subject of the Supply RFAs has basis in the record. Netlist's Motion detailed the testimony and documentary evidence that Netlist introduced to show that Samsung capped the amount of NAND and DRAM Netlist could purchase and ultimately told Netlist it would not be allocated any more product. Mot. at 8-15. Samsung does not argue that this evidence fails to establish these facts or that this showing was somehow rebutted by Samsung. Instead, Samsung argues that these facts "were not necessary for Netlist to prevail." Opp. at 10. This argument fails for two reasons.

First, Samsung is essentially arguing, not that Netlist failed to prove the unadmitted facts at trial, but that these facts "were of no substantial importance" to Netlist's case, which is the one exceptions to Rule 37(c)(2)'s mandatory fee requirement. Fed. R. Civ. P. 37(c)(2)(B). Magistrate Judge Spaeth, however, already held that these facts were substantially important, and thus this exception did not apply. Dkt. 331 at 15. Samsung does not dispute that this holding is binding law of the case.

Second, even setting this aside, the facts that were the subject of the Supply RFAs were essential to Netlist's case at the Second Trial. Samsung argues that "to

prevail on materiality, Netlist was not required to prove either that Samsung 'capped' supply to Netlist in early 2017 or that Samsung informed Netlist in May 2017 that it would not allocate product to Netlist—it merely had to prove that Samsung's breach under Netlist's interpretation went to the 'root of the agreement between the parties.'" Opp. at 10-11 (quoting *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *3 (9th Cir. Oct. 17, 2023)). But evidence that Samsung capped Netlist's allocation and at times even refused to supply Netlist with any product at all is precisely how Netlist showed that Samsung's breach went to "the root of the parties' agreement." As Netlist's counsel explained during closing statements:

> The second issue, Samsung is in material breach. The root of the parties' agreement. . . . Supply of NAND and DRAM. It doesn't say just for the JDP. And what they say is that it enables Netlist to expand its business. That is the root of the agreement. ***The root of the agreement has been destroyed. Zero allocation. Zero allocation***. And you see month after month after month until we terminated, until we terminated, they continued to choke off our business.

Ex. 13 (2nd Tr. Tr.) at 842:15-25 (emphasis added).[1]

Samsung also argues there is no evidence that "Samsung contested [these] facts at the Second Trial." Opp. at 11. But this is both irrelevant and false. It is irrelevant because Netlist bore the burden of proof at trial and thus had to prove facts demonstrating that Samsung cutoff Netlist's supply in material breach of the JDLA whether these facts were contested or not. Moreover, "nothing in the language of [Rule 37(c)(2)] prevents a party from obtaining sanctions when an opposing party initially refuses to admit a fact but later concedes its truth." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 491 (6th Cir. 2014). "[S]uch a concession will not provide the party with a safe harbor for the prior ill-advised denial where the adverse party has spent time and money to prove the fact denied." *Id.*

Regardless, Samsung did in fact contest the facts relating to the Supply RFAs.

---

[1] Exhibits 1-12 are attached to the Declaration of Michael Harbour filed in support of Netlist's Motion. Dkt. 779-1. Exhibit 13 is attached to Declaration of Michael Harbour filed in support of this Reply.

11443089 - 4 -

As Netlist's Motion explained, one Samsung's main themes at the Second Trial was that it did not materially breach the agreement because any failure to fulfill Netlist's order allegedly was simply due to occasional supply shortages, and Samsung always did everything it could to fulfill Netlist's requests. Mot. at 15. Samsung's counsel emphasized this during opening statements:

> The evidence will show that the market for memory parts experiences frequent supply shortages. And even during those shortages, Samsung went out of its way to help Netlist obtain memory products, even sometimes jumping Netlist in front of larger companies so that Netlist could get the parts more quickly.

Ex. 13 (2nd Tr. Tr.) at 170:16-21. Samsung also called one of Netlist's witnesses (Steven Yu) specifically to elicit testimony that Samsung had supposedly not capped Netlist's supply and introduced testimony from his deposition to support this assertion. Ex. 13 (2nd Tr. Tr.) at 741:22-741:25 (from Mr. Yu's deposition, "Question: Did Samsung ever set a sales cap, as far as you know, on Netlist? Answer: Not that I'm aware of. There wasn't any sales caps to Netlist."). Samsung further tried to elicit testimony from its own witness (Neal Knuth) that the reason it could not supply Netlist with product was that Netlist lacked sufficient credit. Ex. 13 (2nd Tr. Tr.) at 649:22-24 ("Q. And was Netlist credit from time to time an issue preventing them from getting parts from you? A. Yes. Sure.").

To counter this false narrative, Netlist had to present evidence showing that Samsung's failure to supply was not due to occasional product shortages or Netlist's lack of credit, nor did Samsung go "out of its way to help Netlist obtain memory products" as Samsung's counsel asserted. Instead, Samsung unilaterally and arbitrarily chose to cap Netlist's allocation of NAND and DRAM and informed Netlist that it would not be allocated any more products. These are the exact facts that Samsung improperly denied. Mot. at 3.

Finally, Samsung argues "[t]here is no way to know whether the jury at the Second Trial believed any of the facts on which Netlist's Motion is premised (or gave

them any weight in reaching its conclusions as to materiality)." Opp. at 11. But the jury found for Netlist on material breach, which clearly demonstrates that the jury accepted Netlist's account of events, not Samsung's, and, as explained above, the Supply RFAs were critical to Netlist's account. Regardless, Samsung fails to cite any authority holding that fees can only be awarded if the jury is given special interrogatories on the specific facts that were not admitted. The record clearly shows that Netlist introduced substantial evidence proving the unadmitted facts that were the subject of the Supply RFAs, and Samsung does not even attempt to argue that this evidence was somehow insufficient (nor can it).

### B. Samsung Cannot Escape Sanctions by Arguing Netlist Would Have Incurred Fees Regardless of Samsung's Improper Denials

Samsung next argues that Netlist has not shown that "it would have avoided incurring the fees it seeks (or indeed done anything differently) at the Second Trial if Samsung had admitted the facts at the outset." Opp. at 13. According to Samsung, this is shown by Netlist's supposed "use of the same evidence" at the Third Trial for which it is not seeking fees. This argument is wrong on both the law and the facts.

First, the Ninth Circuit rejected a nearly identical argument in *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933 (9th Cir. 1994). There, the defendant asserted that "no additional expenses flowed from his [non-admissions] because Marchand would have had to prove these issues against the other defendants." *Id.* at 939. But the Ninth Circuit held this did "not protect [defendant] from sanctions from his unreasonable conduct." *Id.* at 939. Likewise, Samsung cannot avoid sanctions here by asserting that Netlist would have had to prove the same facts absent Samsung's improper denials.[2]

---

[2] Samsung's authorities are distinguishable. *Read-Rite Corp. v. Burlington Air Express, Inc.*, 183 F.R.D. 545 (N.D. Cal. 1998) simply held that plaintiffs could not seek to recoup expenses that were wholly unrelated to the RFAs, i.e., travel expenses to take depositions that plaintiffs had scheduled even before the relevant RFAs had been served. *Id.* at 548. Samsung also cites *Unity Courier Serv. Inc. v. Hudson Ins. Co.*, 2019 WL 6974309 (C.D. Cal. Nov. 6, 2019), but in that case, the court held only that a plaintiff was not entitled for fees proving an issue that "was never litigated." *Id.* at *5.

Second, in any event, Samsung's assertion that Netlist presented "essentially the same exact case at the Third Trial" is incorrect. Opp. at 9. Samsung cherry picks a few statements from Netlist's opening and witness testimony, Opp. at 12, but it neglects to mention that one of Netlist's main witnesses at the Second Trial (Netlist's VP of Sales, Devon Park) *was not even called at the Third Trial.* As Netlist's Motion explained, Mr. Park was the primary witness on Samsung's material breach. Mot. at 9-10. His testimony detailed in length how Samsung first tried to hide that it was capping Netlist's allocation, but then later acknowledged that it was doing so. *Id*. He also explained in detail how Netlist's request far exceeded the amount of product that Netlist had requested. *Id*. Similarly, while Mr. Hong and Mr. Whitley mentioned the fact that Samsung had cut Netlist's supply in the spring of 2017 for context, this was not the focus of their testimony. Instead, their testimony focused on contract interpretation, as this was the primary dispute in the Third Trial.

Finally, even assuming Samsung was correct, this would only mean that Netlist should be entitled to collect fees for the Third Trial as well. Indeed, if the unadmitted Supply RFAs were, in Samsung's words "necessary . . . to tell a broader story" (Opp. at 13), then this just shows why it was necessary for Netlist to expend resources proving them. Netlist conservatively is not seeking fees for the Third Trial because Samsung conceded material breach under Netlist's interpretation of the JDLA as it should have done before the Second Trial. This in no way precludes Netlist from seeking fees for the Second Trial even assuming Samsung's mischaracterizations of the record were accurate (which they are not).

**III. Netlist is Entitled to Fees for the Unadmitted Cure RFA**

Samsung's arguments for why it should not have to compensate Netlist for its failure to admit to RFA 15 relating to Samsung's failure to cure are equally unavailing.

First, Samsung argues that "Netlist makes no showing that it 'proved'

Samsung's failure to cure at the Second Trial." Opp. at 14. But Samsung does not dispute that Netlist introduced witness testimony on this very issue, Mot. at 16, nor does Samsung claim that it somehow rebutted this testimony. Instead, Samsung argues "[p]roving failure to cure was not necessary for Netlist to prove materiality." Opp. at 14. But this again goes to this fact's *importance*, not whether it was proven at trial. Magistrate Judge Spaeth already rejected Samsung's argument that the "no substantial importance" exception of Rule 37(c)(2)(B) applied, and Samsung does not dispute that this is the law of the case. Dkt. 331 at 28-29.

Second, regardless, Samsung assertion is wrong. At the Second Trial, Samsung tried to argue that its breach was not material because it consistently tried to help Netlist and continued to supply Netlist with NAND and DRAM even after Netlist filed suit. Mot. at 15. While Samsung may not have used the technical term "cure," it was clearly trying to convince the jury it had done everything it could to supply Netlist would product and rectify any prior orders that it had been unable to fulfill. Netlist thus had to rebut this assertion by showing that Samsung in fact "did not take action to cure the breach or to otherwise respond to Netlist's letter dated May 27, 2020, notifying Samsung that Samsung had breached the Agreement." Ex. 1 (Netlist's RFAs) at 4; Dkt. 331 at 29.

Third, Samsung argues that its position at the Second Trial was that it could not cure the breach because Netlist failed to identify any specific order that Samsung failed to fulfill. Opp. at 14-15. But this is yet another reason why Netlist was forced to introduce evidence demonstrating that Samsung failed to take any action whatsoever when Netlist sent it a notice of breach, i.e., Netlist had to rebut Samsung's false assertion that Samsung's failure to cure was somehow due to *Netlist's* lack of diligence. Netlist should be compensated for the fees it incurred to make this showing, as it should never have been in dispute.

## IV. NETLIST'S FEE REQUEST IS REASONABLE

Netlist introduced evidence demonstrating (1) the portion of its fees that were attributable to the proving the unadmitted facts and (2) the reasonableness of the rates charged. While Samsung's Opposition is full of rhetoric—describing Netlist's request and supporting evidence "outlandish," "plainly unreasonable," or "egregious"—it tellingly fails to provide any contrary evidence. Samsung's arguments as to why Netlist's fee request is unreasonable are without merit.

Samsung first claims that Netlist is only entitled to fees for proving the supposedly "narrow factual issues" that were the subject of the RFAs at issue, which, according to Samsung should have been "straightforward." Opp. at 16-17. But this is not the law. Rather, as the Ninth Circuit has held, Rule 37(C)(2) entitles a moving party to recover any fees "that flowed directly from the improper answers." *Marchand*, 22 F.3d at 939. This is not limited to proving the specific fact that was the subject of the RFA, but any related fact that the moving party would not have had to prove absent the improper denial. For example, in *Marchand,* the Ninth Circuit noted that the recoupable fees "include[d] the pursuit of alternate theories of liability against other defendants occasioned by Farris's failure to admit he was negligent." *Id.* at 939, n.6.[3]

In any event, all of the fees that Netlist is seeking here were incurred to prove the facts that Samsung improperly denied. Contrary to Samsung's assertion, proving these facts was not "straightforward." For example, Netlist could not simply have a witness assert that Samsung capped its allocation in the spring of 2017 and at times reduced its allocation to zero. Netlist had to substantiate that assertion with supporting evidence and context.

---

[3] Samsung cites *Merchand* in support of its position that fees are only owed for proving the specific fact that was subject of the RFA. Opp. at 17. This is highly misleading. In the portion of the opinion that Samsung references, the panel concluded that no fees were owed for one specific RFA because there was no improper denial. *Marchand*, 22 F.3d at 937-38.

The testimony of Devon Park provides an illustrative example. Samsung argues that "Netlist relies on testimony from its employee Devon Park that Samsung told Netlist in April 2017 that certain products were unavailable, but fails to explain how that has anything to do with a 'cap' or a communication to reduce allocation." Opp. at 17. But the entire point of this testimony was that the products Netlist had requested *were available,* as Netlist learned when it discovered that another company was able to obtain them. Mot. at 9-10 (citing Ex. 8 (2nd Tr. Tr.) at 458:6-21). The only reason that Netlist was not able to obtain these same products was because, as Netlist later learned, Samsung had placed a cap on Netlist's allocation. In short, the fact that Netlist was not able to order products that were otherwise available *proves* that Samsung had placed a cap on those products in April of 2017, not that such products were simply unavailable due to supply shortages. Mr. Park also provided extensive testimony showing that the amount of NAND and DRAM products that Netlist received in 2017 and 2018 fell far short of what Netlist had requested, again showing that Samsung had placed caps on the amount of product Netlist could buy. Mot. at 10. Contrary to Samsung's assertion, this testimony was introduced to prove that "Samsung set a cap or limit on the amount of NAND and DRAM Products that Netlist could purchase from Samsung." Ex. 1 at 8 (RFA No. 27).

Samsung next argues that Netlist's fee request is unreasonable because Netlist failed to submit "evidence of the prevailing market rates." Opp. at 18. But Samsung just ignores the substantial evidence that Netlist provided. First, Netlist submitted a 2024 Am Law survey showing that the rates Netlist seeking for Irell & Manella's services are in line with what peer firms were charging in 2024. Dkt.779-1 ¶ 18. Samsung does not contend that this survey is inaccurate, nor does it provide any other survey evidence rebutting it. Second, Netlist cited a recent Reuters' article showing that rates Netlist seeking here are in fact lower than what peer firms are charging. *Id.* Again, Samsung does not claim this article is inaccurate nor has Samsung submitted any counter evidence. Third, Netlist cited authority holding that the fact that the rates

Netlist is seeking are the ones it was actually charged in this matter constitutes evidence that these rates are reasonable. Mot. at 18. Samsung cites no contrary authority. Fourth, Samsung does not dispute that this was a complex dispute involving a complicated intellectual property agreement where hundreds of millions of dollars were at stake, which also demonstrates that Netlist's fee request is reasonable. *Id.* Fifth, Netlist cited three prior cases within the Ninth Circuit approving Irell & Manella's rates as reasonable, and two other cases approving fee rates comparable to what Netlist is seeking here. Mot. at 17-18. Samsung's sole response is that these cases are six years old, but Samsung cites no evidence that law firm rates have gone ***down*** during this period, and the current survey evidence and Reuters' article that Netlist cites demonstrates that they have in fact gone up.

Finally, Samsung argues that Netlist has failed to produce detailed time entries to support its fee request. Opp. at 19. But Samsung cites no authority holding that such evidence is required. As Netlist's Motion explained the goal of fee shifting "is to do rough justice, not achieve auditing perfection." Mot. at 17 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Here, the Harbour Declaration provided a description of the work that attorneys and paralegals performed to prove the facts at issue and a reasonable of estimate of the portion of their time that was spent on this work. The Ninth Circuit has held that this is reasonable method for apportioning fees under Rule 37(C)(2). *See Marchand*, 22 F.3d at 939 ("[H]ad Farris admitted negligence and causation, Marchand would have been relieved of proving a significant portion of his case, but not all of it. Accordingly, his petition sought only one-half to one-third of the hours that were only partially dedicated to Farris."). Moreover, this is the exact same type of evidence that Netlist produced when Magistrate Judge Spaeth approved Netlist's prior fee request as reasonable. *See* Dkt. 288-1 ¶ 20. The Court should do the same here.

Dated: May 16, 2025

Respectfully submitted,

IRELL & MANELLA LLP
Jason Sheasby
Lisa S. Glasser
Michael Harbour

By: */s/ Michael Harbour*
Michael Harbour

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 3,960 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order.

Dated: May 16, 2025

By: */s/ Michael Harbour*
Michael Harbour

11443089

- 12 -