JASON SHEASBY, SBN 205455
jsheasby@irell.com
MICHAEL HARBOUR, SBN 298185
mharbour@irell.com
IRELL & MANELLA LLP
1800 Ave. of the Stars
Los Angeles, CA 90067
Telephone: 310.203.7096
Facsimile: 310.203.7199

LISA S. GLASSER, SBN 223406
lglasser@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949.760.0991
Facsimile: 949.760.5200

Attorneys for Plaintiff Netlist Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NETLIST INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>                    Defendant. | Case No. 8:20-cv-00993-WLH (ADS)<br><br>**NETLIST INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59**<br>**[REDACTED –PUBLICLY FILED]**<br><br>Date: July 11, 2025<br>Time: 2 p.m. PT<br>Location: Courtroom 9B<br>Judge: Hon. Wesley L. Hsu |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................... 1

II.   SAMSUNG WAIVED ITS ARGUMENTS OF JUROR BIAS ............... 2

III.  SAMSUNG HAS NOT DEMONSTRATED IMPLIED JUROR BIAS... 4

    A.   Samsung Has Not Shown That Any Juror Intentionally
       And Materially Lied in Response to Voir Dire Questions ................. 7

    B.   Samsung Has Not Even Attempted To Show A "Pattern
       Of Lies".......................................................................................... 11

IV.   SAMSUNG HAS WAIVED ITS COMPLETENESS OBJECTION TO
    EXHIBIT 117 ............................................................................ 15

V.    CONCLUSION ......................................................................... 16

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

11305095

- i -

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Apple, Inc. v. Samsung Elecs. Co.*,
5    2012 WL 6574785 (N.D. Cal. Dec. 17, 2012) .............................................2, 3, 4

6
*Brown v. City of Los Angeles*,
7    2015 WL 14095071 (C.D. Cal. May 4, 2015).....................................................15

8
*Burden v. CSX Transp., Inc.*,
9    2011 WL 3793664 (S.D. Ill. Aug. 24, 2011).....................................................3, 4

10
*Cabrera v. Boto Co.*,
11    2007 WL 3333479 (M.D. Fla. Nov. 7, 2007)..................................................8, 11

12
*Dominguez v. City of Los Angeles*, 2019 WL 13036407 (C.D. Cal. Apr.
       24, 2019),
13    *aff'd*, 836 F. App'x 489 (9th Cir. 2020) .......................................................2, 12

14
*Don v. Cruz,* 182 Cal. Rptr. 581, 585 (Ct. App. 1982)...........................................10

15
*Dyer v. Calderon*,
16    151 F.3d 970 (9th Cir. 1998) ......................................................................*passim*

17
*Estrada v. Scribner*,
18    512 F.3d 1227 (9th Cir. 2008) ............................................................................11

19
*Green v. White,*
20    232 F.3d 671 (9th Cir. 2000) ........................................................................13, 14

21
*Johnson v. Hill*,
22    274 F.2d 110 (8th Cir. 1960) ................................................................................2

23
*McDonough Power Equip., Inc. v. Greenwood*,
24    464 U.S. 548 (1984) ...................................................................................*passim*

25
*Milhouse v. Travelers Commer. Ins. Co.*,
       982 F. Supp. 2d 1088 (C.D. Cal. 2013)..............................................................15

26
*Pope v. Man-Data, Inc.*,
27    209 F.3d 1161 (9th Cir. 2000) .......................................................................7, 10

28

*Price v. Kramer*,
200 F.3d 1237 (9th Cir. 2000) ................................................................... 8

*Suppa v. Costa Crociere, S.p.A.*,
2008 WL 3926446 (S.D. Fla. Aug. 26, 2008) ........................................... 9

*Tanner v. United States*,
483 U.S. 107 (1987) .................................................................................. 2

*Tidewater Fin. Co. v. Fiserv Sols., Inc.*,
192 F.R.D. 516 (E.D. Va. 2000) ......................................................... 9, 11

*Torres v. First Transit, Inc.*,
2021 U.S. Dist. LEXIS 144608 (S.D. Fl. 2021) ...................................... 3

*Torres v. First Transit, Inc., No. 19-12185*,
2022 WL 4482715 (11th Cir. Sept. 27, 2022) ......................................... 9

*Townsend v. Allen*,
2008 WL 4756644 (W.D. Wis. Oct. 29, 2008) ...................................... 10

*United States v. Edmond*,
43 F.3d 472 (9th Cir. 1994) ...................................................................... 8

*United States v. Olsen*,
704 F.3d 1172 (9th Cir. 2013) ............................................................ 7, 12

*United States v. Rodriguez*,
2007 WL 9603651 (C.D. Cal. Sept. 11, 2007) ...................................... 13

*United States v. Stewart*,
317 F. Supp. 2d 432 (S.D.N.Y. 2004) .............................................. 10, 11

*United States v. Warner* (N.D. Ill. Sept. 7, 2006),
*aff'd*, 498 F.3d 666 (7th Cir. 2007) ........................................................ 9

# I.  INTRODUCTION

Having lost a jury trial again in this case, Samsung resorts to a familiar tactic: accusing multiple jurors of failing to disclose prior litigation. This time, Samsung argues that a new trial is required because certain jurors did not identify during voir dire that, years ago, they were involved in bankruptcies or minor proceedings such as small claims actions or debt collections.

After the last trial, as here, Samsung accused multiple jurors of lying during voir dire. Judge Scarsi granted the motion as to one of the four jurors who Samsung accused, finding that the juror failed to disclose more than a dozen lawsuits, including two breach of contract cases that were pending at the time of trial against an individual of Korean descent. Judge Scarsi described those circumstances as presenting a "close" issue. While Netlist respectfully disagrees with Judge Scarsi's decision, here the issue is not even "close." Samsung's motion for another new trial has no merit and should be denied for at least the following reasons.

First, Samsung has waived its argument. Each of the issues it raised was identifiable in minutes using readily-available online databases. To prevent a recurrence of what happened last trial, Judge Scarsi employed several "proactive tools" to ensure that the parties timely investigated and raised any issues. Dkt. 690, at 8–9. Samsung nonetheless failed to raise any issue with respect to two of the jurors until its new trial motion. For the third, it waited until the last day of trial, just before closing. This "wait and see" approach constitutes waiver, as other courts have held— including in prior cases where Samsung engaged in similar, strategically dilatory behavior and then raised alleged juror bias after a verdict was rendered against it.

Second, Samsung has not come close to meeting the *Dyer* standard it relies on: "a juror who 'lies materially and repeatedly'." Mot. At 3:12-13 (citing *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc)). There is no basis to find that any juror "lied" at all (let alone repeatedly). The matters Samsung identified occurred many years ago, involve minor proceedings with no alleged resemblance to the breach

of contract case here, and in several instances, the evidence indicates that the jurors were never served or appeared. To the extent that any jurors were even aware of these matters, Samsung offers nothing to satisfy its burden to show the jurors were intentionally dishonest about them, as opposed to having forgotten or not appreciated that they could be considered responsive to the questions about prior litigation.

Third, Samsung does not even allege that any juror's conduct was "material[] and repeated[]", as required under *Dyer*. This standard requires, among other things, "*a pattern of misleading statements' or outright lies to the court*." *Dominguez v. City of Los Angeles*, 2019 WL 13036407, at \*5 (C.D. Cal. Apr. 24, 2019), *aff'd*, 836 F. App'x 489 (9th Cir. 2020) (quoting *Dyer v. Calderon*, 151 F.3d 970, 982 (9th Cir. 1998) (emphasis added). At best, Samsung has shown that the jurors in question checked "no" in response to a question to which they arguably should have checked "yes."[1] That is clearly not a "pattern" of repeated, material lies, and falls far short of the type of "rare" and "exceptional" case in which a court can presume bias. *Dyer*, 151 F.3d at 982. Samsung's Motion should be denied.

## II.    SAMSUNG WAIVED ITS ARGUMENTS OF JUROR BIAS

The Court should not reach the merits of Samsung's argument because Samsung has waived it. "Allegations of juror misconduct . . . raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process." *Tanner v. United States*, 483 U.S. 107, 120 (1987). It is thus "established that failure to object at the time the jury is empaneled operates as a conclusive waiver if the basis of the objection is known *or might have been known or discovered through the exercise of reasonable diligence*." *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 6574785, at \*7–8 (N.D. Cal. Dec. 17, 2012) (quoting *Johnson v. Hill*, 274 F.2d 110,

---

[1] Samsung also refers to a second question, "Have you even been involved in a contract dispute[,] or have you ever been in a situation where you believe[d] that someone breached a contract"? However, Samsung does not argue that any of the witnesses were in contract disputes, much less that they intentionally failed to disclose any such dispute.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

116 (8th Cir. 1960)) (emphasis in original). Courts accordingly reject juror bias claims where a party could have raised its allegations during the jury selection process, or before trial concludes, but instead held the issue in reserve to see how the trial proceeded. *Id.* at \*7-\*8, \*10 (waiver where investigation performed only after suffering "a very large damages award")*; Torres v. First Transit, Inc.,* 2021 U.S. Dist. LEXIS 144608 (S.D. Fl. 2021) (waiver where "Mr. Esco's Declaration makes it abundantly clear that Defendant only sought to investigate the jurors after it received an unsatisfactory verdict"); *Burden v. CSX Transp., Inc*., 2011 WL 3793664, at \*9 (S.D. Ill. Aug. 24, 2011) (waiver where "defendant made no efforts to investigate jurors until after the verdict.").

Here, Samsung was on explicit notice that it needed to promptly raise any potential juror issues well before deliberations. To avoid the situation that occurred after the last trial, Judge Scarsi implemented various "proactive tools to protect against another juror bias problem that are available under Federal Rules of Civil Procedure 47–48, such as administering a written voir dire questionnaire, seating a 10-person petit jury, and providing *an additional opportunity to bring challenges for cause after empanelment but before deliberations*." Dkt. 690, at 8–9.

Samsung admittedly did not bring its challenges to the Court during voir dire, when it first learned of the supposed issue. Samsung admits that "a jury consulting firm conducted background checks into potential jurors" when it received the list of prospective jurors, and that four matters that Samsung relies on in its motion were identified for Juror 12 *before* voir dire completed. Dkt. 786-2 (Godesky Decl.) ¶¶ 2, 4 ("The research conducted *during voir dire* identified four actions involving similar names to that of Juror 12. … Continued research on the first day of trial identified three additional proceedings."). With the list of matters in hand, Samsung could easily have asked questions during voir dire—seeking details about the jurors is the very purpose of voir dire questions. Yet Samsung did not ask for any follow-up questions and proceeded to seat the jury, holding the alleged issue in reserve. Samsung suggests

1    that some "details" (it does not say what) required a private investigator. Samsung's

2    motion papers are silent about its investigation of the other two jurors. However, it is

3    clear that the matters it now relies on for those jurors easily could have been (and

4    presumably were) identified before the jury was seated. Each matter is returned by a

5    query of the jurors' names in a simple online background check or docket search that

6    takes less than 30 minutes. Declaration of Michael Harbour ("Harbour Decl.") ¶¶ 2-

7    3. *See Burden*, 2011 WL 3793664, at *9 (waiver where "all the information about

8    Juror Nos. 2 and 9 submitted by defendant was found in public documents, primarily

9    by internet searches.").

10         There are two possible conclusions: Samsung identified the matters and chose

11    not to raise any issue or ask any questions, or Samsung failed to run these very basic

12    searches despite being on explicit notice that they were expected to do so if they

13    wanted to raise any issue. Either way, Samsung has waived these arguments. *See*

14    *Samsung Elecs. Co*., 2012 WL 6574785, at *10 ("What changed between Samsung's

15    initial decision not to pursue questioning or investigation of Mr. Hogan, and

16    Samsung's later decision to investigate was simple: the jury found against Samsung,

17    and made a very large damages award. This is precisely the situation that courts have

18    consistently found constitutes a waiver of the juror misconduct claim.").

19    **III.    SAMSUNG HAS NOT DEMONSTRATED IMPLIED JUROR BIAS**

20         A party seeking a new trial based on alleged false statements made by jurors at

21    voir dire must clear a high bar. It is not enough to show that that the juror's statements

22    were inaccurate. As the Supreme Court explained in *McDonough,* "[t]o invalidate the

23    result of a . . . trial because of a juror's mistaken, though honest response to a question,

24    is to insist on something closer to perfection than our judicial system can be expected

25    to give." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984). A

26    new trial is thus only warranted where the moving party shows both that (1) "a juror

27    failed to answer honestly a material question on *voir dire*," and (2) "a correct response

28    would have provided a valid basis for a challenge for cause." *Id.* at 556. This second

requirement is critical because "even an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality." *Dyer,* 151 at 973. Samsung does not contend that this standard is met, and it clearly is not. There is no basis to conclude that any of the jurors were actually biased.

Samsung thus relies entirely on the narrow exception established by the Ninth Circuit in *Dyer*: "[i]n **extraordinary** cases, courts may presume bias" at the second step of the *McDonough* analysis, *id.* at 981 (emphasis added), if a juror "lies **materially** and **repeatedly** in response to legitimate inquiries about her background." *Id.* (emphasis added). at 983. *Dyer* illustrates just how "extraordinary" such a case needs to be to give rise to implied bias. There, a juror gave knowingly false responses to numerous questions about material issues she could not possibly have forgotten (including the recent murder of her brother, by being "shot in the back of the head" – just as the defendant was accused of murdering his victims, and the fact that her husband was in jail) to secure a seat on the jury. She then lied several times again when questioned later about her responses:

> After watching a number of potential jurors disclose relatively minor crimes and get dismissed, she chose to conceal a very major crime-the killing of her brother in a way that she knew was very similar to the way Dyer was accused of killing his victims. She also failed to disclose many other facts that would have jeopardized her chances of serving on Dyer's jury. Later on, when she was questioned about her brother's death, she lied once again by pretending she thought it was an accident, and by telling the judge that no one in her family had testified about the killing.

*Id.* at 982.

As the Ninth Circuit explained, incorrect answers to voir dire questions ordinarily are not a basis for a new trial, whether mistaken or even "intentionally dishonest." *Id*. at 973. "[W]e must be tolerant, as jurors may forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment." *Id*. As this case and the prior matter illustrate, a losing party can often identify some technical defect in responses by members of a venire to items on a jury questionnaire.

In *Dyer*, the "magnitude of [the juror's] lies and her remarkable display of insouciance-her expressed feeling that only she would decide what matters-. . . add up to that rare case where we must presume juror bias." *Id.* at 984. As discussed above, the juror lied about the fact that her brother had been murdered by being shot in the back of the head—the same way the victims in the trial were murdered. The Ninth Circuit described this misrepresentation about her brother's murder as "the tip of Pinocchio's nose." *Id.* at 980. The same juror also stated that none of her relatives had been accused of a crime, and she had never been the victim of a crime, after watching many prior jurors be eliminated from the juror pool for answering those questions affirmatively. *Id* at 980-81. In fact, her car and home had been burglarized many times, she had been kidnapped and assaulted, and "Nearly every close relative of hers had been arrested: Her husband for rape; her father for kidnapping; her uncle Jason for murder, and again for armed robbery; her brother Billy for possession of brass knuckles, and again for drug possession; her cousin Buddy for attempted rape of Freeland herself." *Id.* at 981. Indeed, her husband ended up in a shared jail cell with the very defendant in the case. As the Ninth Circuit noted, "Situations where a juror's husband lands in the same jail cell as the defendant are sufficiently rare and troublesome to merit a close look." *Id.* at 977.

Samsung's Motion does not come remotely close to establishing that this is the sort of "rare" and "extraordinary" case in which bias can presumed under *Dyer*. Rather, this Motion involves a situation so commonplace – a juror not remembering or otherwise failing to disclose minor legal proceedings from the distant past – that Samsung has now accused a total of seven jurors of such lapses (four in connection with the last trial, and three in connection with this one). This is far from the showing that Samsung is required to make: i.e., that the jurors intentionally ***lied***, and that the lies were ***material***, and that the material lies were ***repeated***. As discussed in further detail below, Samsung does make any of these showings, each of which is required.

**A.     Samsung Has Not Shown That Any Juror Intentionally And Materially Lied in Response to Voir Dire Questions**

As the Supreme Court emphasized in *McDonough,* jurors may inadvertently give incorrect responses in response to voir dire questions about their experience with litigation because they "may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." *McDonough*, 464 U.S. at 555. Likewise, the Ninth Circuit stressed in *Dyer* that courts "must be tolerant, as jurors may forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment." *Dyer,* 151 F.3d at 973, n. 9.

Thus, the moving party must provide substantial and conclusive evidence for a court to infer that juror plainly lied about a material fact: "[b]ias has been presumed only where the record 'conclusively' showed that the juror "plainly" lied, and "no rational trier of fact could find otherwise.'" *United States v. Olsen*, 704 F.3d 1172, 1194 (9th Cir. 2013) (quoting *Dyer*, 151 F.3d at 981). Moreover, Samsung must do more than make a "plausible argument" that the juror knew a statement was incorrect; it must definitively demonstrate that the juror's statement was deliberately false in a material way. *See Pope v. Man-Data, Inc.*, 209 F.3d 1161, 1163–64 (9th Cir. 2000) ("Plausible argumentation and plausible reasoning do not rise to the level of demonstration.") (reversing grant of new trial for juror bias). Samsung has made no such showing here. At best, Samsung shows that the jurors' responses were arguably inaccurate in a technical sense based on legal proceedings from many years ago. Samsung provides no evidence demonstrating that the juror's alleged failure to disclose these matters was anything but inadvertent and immaterial.



1 

2

3

4

5

6

7

8

9

10

11 *see also Price v.*

12 *Kramer*, 200 F.3d 1237, 1255 (9th Cir. 2000) ("[I]t was understandable that [a juror]

13 had simply forgotten about" an event "which occurred approximately fourteen years

14 earlier."); *United States v. Edmond*, 43 F.3d 472, 474 (9th Cir. 1994) (juror's "simple

15 forgetfulness [regarding a crime that occurred 26 years earlier]" does not "[fall] within

16 the scope of dishonesty" that would warrant a retrial).

17

18

19

20

21

22

23

24

25 *See, e.g., Cabrera v. Boto Co.*, 2007 WL

26 3333479, at *2 (M.D. Fla. Nov. 7, 2007) ("In a bankruptcy case, the debtor is not

27

28

---

² All exhibits are attached to the Harbour Decl.

technically a party to a lawsuit. . . The Court finds that the failure to disclose bankruptcy filings in response to the question asked does not equate with a dishonest answer on the part of those jurors."); *Tidewater Fin. Co. v. Fiserv Sols., Inc.*, 192 F.R.D. 516, 521 (E.D. Va. 2000) ("It is therefore not unlikely that the juror understood the question only to encompass traditional litigation, and not to require disclosure of his bankruptcy status."); *United States v. Warner*, 2006 U.S. Dist. LEXIS 64085, 130-131 (N.D. Ill. Sept. 7, 2006), *aff'd*, 498 F.3d 666 (7th Cir. 2007) (denying motion for new trial where juror was in "good company in believing that [a] question" about having "been involved in any lawsuit or court proceeding" "was not asking about divorce actions"); *Suppa v. Costa Crociere, S.p.A.*, 2008 WL 3926446, at *2 (S.D. Fla. Aug. 26, 2008) (denying motion for new trial juror "didn't realize that divorce proceedings would be considered a "civil case.").



. *See, e.g., Torres v. First Transit, Inc.*, No. 19-12185, 2022 WL 4482715, at *2 (11th Cir. Sept. 27, 2022) (alleged failure to disclose "foreclosures or debt

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

11305095

1    collections" did not warrant a new trial); *Townsend v. Allen*, 2008 WL 4756644, at \*3

2    (W.D. Wis. Oct. 29, 2008) ("It is certainly plausible that Juror A simply failed to

3    understand that 'lawsuits' included small claims actions and cases that were dismissed

4    with out being adjudicated."); *United States v. Stewart*, 317 F. Supp. 2d 432, 441

5    (S.D.N.Y. 2004) (Alleged failed disclosures were of "dubious significance" since

6    "[m]ost of the judgments were for less than $3,500, and several are over a decade old"

7    and "[s]everal others are default judgments, which indicates that [the juror] did not

8    appear in court in connection with them.").



24    *Don v. Cruz,* 182 Cal. Rptr. 581, 585 (Ct. App. 1982) ("In a personal

25    injury action the defendant's insurer is, in effect if not in law, the real party in interest

26    . . . .")

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

11305095



**B.    Samsung Has Not Even Attempted To Show A "Pattern Of Lies"**

Moreover, even if any of the three jurors knowingly lied in answering voir dire questions, this would still fall far short of the showing necessary to demonstrate implied bias under *Dyer*. *Dyer,* F.3d at 973 ("[E]ven an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality."). *Dyer* only applies where "the juror in question [is] found to have lied ***repeatedly*** to gain a seat on the jury." *Estrada v. Scribner*, 512 F.3d 1227, 1241 (9th Cir. 2008). Here, Samsung does not even attempt to satisfy this required element of repeated, material lies.

Samsung contends only that the jurors should have checked "yes" in response

to "Question 20. Have you[] [ever] filed a lawsuit, been sued, been charged with a crime, or otherwise been a party in a court proceeding?" At most, this is a single, technically incorrect answer. There is nothing repeated, much less a "pattern" of material lies.

Samsung also refers to Question 13 ("Have you ever been involved in a contract dispute, or have you ever been in a situation where you believed that someone breached a contract?"). However, Samsung does not allege, much less provide evidence, that any juror falsely answered this second question, let alone that the jurors knew the answer was false. ***None*** of the litigations that Samsung identifies list "breach of contract" as the cause of action. To the extent that Samsung is trying to argue that debt collections and unlawful detainer actions could technically be classified as breaches of contract, the form civil cover sheet in California (where all of the actions discussed above were filed) lists "breach of contract," "unlawful detainer," and "collections" as different "case types." Harbour Decl. ¶ 21.  In any event, lay jurors do not have precise command of legal terms, and such actions do not even remotely resemble the type of complex breach of contract dispute at issue in this case. *See McDonough*, 464 U.S. at 555 ("[J]urors are not necessarily experts in English usage . . . many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges.").

Moreover, even checking the incorrect box in response to two questions would not rise to the level of a repeated pattern of material lies. *See Olsen*, 704 F.3d at 1172 (finding no implied bias where juror gave incorrect to responses to two voir dire questions because these omissions were not "clearly intentional")." The types of 'repeated lies' necessary for a finding of implied bias rise above the mere failure to answer voir dire questions. For a juror to be characterized as a 'repeated liar,' he must 'engage[] in ***a pattern of misleading statements' or outright lies to the court***." *Dominguez*, 2019 WL 13036407, at *5 (emphasis added). Otherwise, *McDonough's* second requirement—that the moving party must also show that the juror would have

been removable for cause had a truthful answer been given—would be rendered a nullity. Any time one could show that a juror gave a dishonest response to a voir dire question, bias would be presumed. *See United States v. Rodriguez,* 2007 WL 9603651, at *6 (C.D. Cal. Sept. 11, 2007) ("These omissions do not constitute **a pattern of intentional lies**. To imply bias from his answers simply because they were misstatements would eliminate the second requirement of the *McDonough* standard, which clearly establishes that not all false answers warrant a new trial. Misstatements must be particularly egregious in order to allow for a presumption of bias.") (emphasis added).

Accordingly, even assuming that the jurors Samsung has identified knowingly lied in voir dire (which Samsung has not shown), and even assuming that the lies were material (which Samsung also has not shown), this case would still fall far short of the type of "rare" or "extraordinary" circumstances described in *Dyer*. There, the juror repeatedly lied (both at voir dire and later at deposition), and failed to disclose the fact that her brother had been the victim of a very similar crime as the defendant was accused of committing, numerous crimes committed by her relatives (including her husband, who was then in jail) and numerous crimes she had been a victim of. *Dyer*, 151 F.3d at 982. This occurred after she had seen other jurors get dismissed for disclosing far more minor crimes, which further created the inference that she was lying so that she could secure a seat on the jury. *Id.* In contrast, here, Samsung alleges that the jurors failed to accurately answer a voir dire question by not disclosing minor legal matters from many years (and in most instances decades) ago that bear no resemblance to the breach of contract suit between Netlist and Samsung.

The other authority on which Samsung relies is equally inapposite. Samsung cites *Green v. White,* but there the juror failed disclose that he had been convicted of and served jail time for assault, a fact which the court concluded he was unlikely to forget. 232 F.3d 671, 676 (9th Cir. 2000) ("It is hard to imagine that Adams could have forgotten about the six months he spent in the brig for the past assault, no matter how

1  much time had passed."). Moreover, as in *Dyer*, the juror in *Green* participated in a

2  "pattern of lies," by first giving knowingly dishonest answers to multiple voir dire

3  questions and then attempting to "cover up" his dishonesty during subsequent

4  questioning. He then engaged in additional "inappropriate behavior" demonstrating

5  that he had motive to lie to get on the jury:

> Adams' conduct raises serious questions about his ability to impartially
> serve on a jury. Adams **lied twice** to get a seat on the jury; **when asked
> about these lies, he provided misleading, contradictory, and outright
> false answers**. In addition to these lies, **he engaged in behavior that
> brings his impartiality into serious question, and provides strong
> circumstantial evidence of his motive for lying**: his stated desire to get
> a gun and kill Green himself; his statement that he knew Green was
> guilty from the moment he saw him; his statement to a friend that the
> wrong people receive too many rights; and his past "investigation"
> activities, which, of course, he boasted about to the jury. **All of these
> facts, considered as a whole**, create "destructive uncertainties"
> regarding Adams' ability to render a fair verdict. *Id.* 677-78 (emphasis
> added)

13  Samsung does not even allege (let alone prove) that any of the jurors engaged in

14  anything close to this type of conduct. Notably, *Dyer* and *Green* are the only precedent

15  Samsung cites in which a court found the implied bias standard met.

16      Finally, Samsung's allegations are also significantly removed from what the

17  findings that Judge Scarsi found warranted a new trial after the prior trial between

18  Netlist and Samsung. Judge Scarsi found that one of the jurors in responding to three

19  separate voir dire questions failed to disclose that she had been a party to "over a

20  dozen lawsuits, including two contract cases that were pending at the time of voir

21  dire." Dkt. 640 at 14. Moreover, those pending contract cases were both against an

22  individual of Korean decent. *Id.* at 15-16. This was significant in Judge Scarsi's view

23  because Samsung is a Korean company and two of Netlist's witnesses were also

24  Korean. *Id.* Thus, it was possible that the juror "preferred to see the domestic party

25  prevail over the Korean one, [or] she disliked both sides for putting on witnesses who

26  reminded her of her party opponent." *Id.* at 16. Even then, Judge Scarsi acknowledged

27  that whether this conduct was sufficient presented a "close issue." *Id.* at 13.

28      In contrast here, there is no basis whatsoever for inferring that Jurors 12, 15, or

19 deliberately withheld material information about prior litigation so that they could secure a seat on the jury. Indeed, if a new trial were warranted based on the Samsung's allegations here, then implied bias would be the norm—the exact opposite of the "rare" or "extraordinary" circumstance that Ninth Circuit precedent requires. *Dyer*, 151 F.3d at 983, 984. Samsung's Motion should be denied.

## IV.    SAMSUNG HAS WAIVED ITS COMPLETENESS OBJECTION TO EXHIBIT 117

The last section of Samsung's brief does not ask for any relief, but instead seeks to "clarif[y] the record." Mot. at 7. According to Samsung, the completeness objections it made at trial to Trial Exhibit 132 should also apply to Trial Exhibit 117. Samsung is apparently trying to retroactively object to Trial Exhibit 117 after trial has completed. This is improper.

Samsung had every opportunity to object to Trial Exhibit 117 on completeness grounds at trial and never did so, nor did Samsung ever seek a new trial based on the supposedly erroneous introduction of this exhibit. Instead, Samsung only objected to Trial Exhibit 117 on the grounds that the introducing witness lacked personal knowledge. Ex. L (Tr. Tr.) at 772:6-11. Samsung also failed to make any completeness objection to this exhibit during the pre-trial exchange of exhibits and objections. 524-1 at 10. Samsung has thus waived its objection and cannot resurrect it by way of a post-trial motion. *See, e.g., Brown v. City of Los Angeles*, 2015 WL 14095071, at *16 (C.D. Cal. May 4, 2015) ("[A] new trial motion based [on erroneous evidentiary rulings] requires a proper objection at trial and is limited to the basis of the objection argued when the evidence was offered for admission.' ... [T]he failure to object ordinarily results in a waiver of the issue for appeal (or as a grounds for seeking a new trial.") (internal quotation marks and citations omitted); *Milhouse v. Travelers Com. Ins. Co.*, 982 F. Supp. 2d 1088, 1104-06 (C.D. Cal. 2013) ("The Milhouses now contend that California's mediation privilege barred the admission of the mediation statements. Their post-trial objection, however, is not timely. … The

1  Milhouses' failure to object to disclosure of the parties' mediation statements, either
2  at or before trial, therefore waived their ability to raise the objection post-trial.").

3      In any event, Samsung's completeness arguments are baseless for the reasons
4  that the Court explained at trial. Dkt. 784-9 at 556:18-23, 652:10-16.   Finally,
5  Samsung does not actually move for a new trial, or attempt to satisfy the standard
6  application to a motion for a new trial, with respect to this document.

7  **V.**    **Conclusion**

8      For the foregoing reasons, Samsung's motion should be denied.

9

10  Dated: <u>June 2, 2025</u>        Respectfully submitted,

11

12          */s/ Jason Sheasby*

13          Jason Sheasby
14          Lisa S. Glasser
        Michael Harbour
15          **IRELL & MANELLA LLP**
16          840 Newport Center Drive, Suite 400
        Newport Beach, CA 92660
17
18          ***Attorneys for Plaintiff Netlist, Inc.***

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
11305095

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Netlist, Inc., certifies that this brief contains 5,662 words, which complies with the word limit of L.R. 11-6.1.


Dated: June 2, 2025                                    By: *<u>/s/ N. Isabella Chestney</u>*
                                                                  N. Isabella Chestney


## <u>CERTIFICATE OF SERVICE</u>

I, N. Isabella Chestney, hereby certify that this Declaration and the attached documents were emailed to counsel for Samsung Electronics Co., LTD on June 2, 2025

                                                      <u>By *<u>/s/ N. Isabella Chestney</u>*</u>
                                                      N. Isabella Chestney

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

11305095