DANIEL M. PETROCELLI (SB 97802)
dpetrocelli@omm.com
RYAN YAGURA (SB 197619)
ryagura@omm.com
DREW BREUDER (SB 198466)
dbreuder@omm.com
LEAH GODESKY (SB 336854)
lgodesky@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

MARC J. PENSABENE (*pro hac vice*)
mpensabene@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys for Defendant
Samsung Electronics Co., Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETLIST INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00993-WLH-ADS<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59**<br><br>Date: July 11, 2025<br>Time: 1:30 pm<br>Location: Courtroom 9B<br>Judge: Hon. Wesley L. Hsu |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.  ARGUMENT[1]

Netlist does not contest that three of the jurors that rendered a verdict in this case—████████████████—provided the Court with false or misleading answers during *voir dire*, each failing to disclose multiple past litigations when asked whether they had ever been a "party in a court proceeding." These multiple non-disclosures defy an innocent explanation and give rise to a presumption of bias under Ninth Circuit case law, which "presume[s] bias where a juror lies in order to secure a seat on the jury." *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998) (en banc).

Netlist's primary argument in its Opposition is that none of these jurors deliberately lied—instead, Netlist argues, they likely either forgot, or failed to understand, that they had been parties to court proceedings. But that is not a plausible explanation for each juror's multiple non-disclosures, particularly given that the Court instructed the prospective jurors to answer "yes" if they were uncertain of how to respond. The only plausible inference is that one or more of these jurors lied to secure a seat on the jury. Under such circumstances, *Dyer* instructs that a new trial is required. And while Netlist makes numerous legal arguments about the showing required under *Dyer*, those arguments misstate *Dyer*'s holding and mischaracterize its core rationale.

 Similarly unavailing is Netlist's perfunctory argument that Samsung waived its *Dyer* challenge by failing to conduct a full investigation definitively linking ████████████████ to their past litigations in the middle of a busy four-day

---

[1] "Motion" (or "Mot.") refers to Samsung's Motion for New Trial, ECF No. 784. "Opposition" (or "Opp.") refers to Netlist's Opposition to the Motion, ECF No. 795. "Godesky Decl." refers to the Declaration of Leah Godesky submitted concurrently with the Motion, ECF No. 784-1. All other capitalized terms have the same meanings as in the Motion.

trial. Samsung acted with all reasonable diligence to complete its investigation and brought its challenge at the earliest practical opportunity.

The Court should grant Samsung's Motion.

### A. A New Trial Is Required Under *Dyer* Because The Trial Was Tainted By Juror Bias

As Samsung explained in its Motion, a new trial is required because three of the empaneled jurors—███████████—materially lied during *voir dire* to preserve their status as jurors. Mot. 2-7. Under Ninth Circuit precedent, bias is presumed—and a new trial required—where a juror "lies in order to secure a seat on the jury." *Dyer*, 151 F.3d at 973 n.2, 983. Here, each of the three jurors failed to disclose multiple past lawsuits to which they were parties, despite the Court's clear admonitions of the importance of answering truthfully. *See* Mot. 2-7. As in *Dyer*, the Court must infer that the three jurors lied in order to serve on the jury, giving rise to a conclusive presumption of bias. *Id.* at 5-6 (citing *Dyer*, 151 F.3d at 982).

Nothing in Netlist's Opposition changes that analysis.

***First***, Netlist's Opposition makes several meritless attempts to impose on Samsung a higher standard than is required to establish implied bias. As the *en banc* Ninth Circuit made clear in *Dyer*, courts must "presume bias where a juror lies in order to secure a seat on the jury." *Dyer*, 151 F.3d at 983. That is because "[t]he individual who lies in order to improve his chances of serving has too much of a stake in the matter to be considered indifferent." *Id.* at 982. A juror who "treats with contempt the court's admonition to answer voir dire questions truthfully … can be expected to treat her responsibilities as a juror … with equal scorn," and indeed "may believe that the witnesses also feel no obligation to tell the truth and decide the case based on her prejudices rather than the testimony." *Id.* at 983.

Thus, the key factual question the Court must resolve is whether any of the three jurors lied in order to serve on the jury—or, put another way, whether their lies

give rise to the inference that they were "not indifferent to service on the jury"—in which case *Dyer* instructs that bias must be presumed. *Id.* at 982-83.

Netlist's Opposition misstates the standard in several respects. For example, Netlist asserts that "[b]ias has been presumed only where the record conclusively showed that the juror plainly lied, and no rational trier of fact could find otherwise." Opp. 7 (quoting *United States v. Olsen*, 704 F.3d 1172, 1194 (9th Cir. 2013)) (cleaned up). But the language Netlist quotes concerns the standard of review for *appellate* review where the trial court has already found a lack of bias—not the standard for the trial court's assessment of bias in the first instance. In *Olsen*, for example, the district court rejected the defendant's claim of juror bias, finding that the juror's inaccurate *voir dire* responses were "the result of honest oversights." 704 F.3d at 1188. The Ninth Circuit explained that it would not overturn those findings unless no rational factfinder could find that the juror was honest:

> [W]hether a juror has been dishonest[] remains "a question of fact," about which the district court here made findings. When *this court* has presumed bias from a juror's lies, it has done so either where there were no factual findings by the trial court about the juror's honesty or where those findings were clearly erroneous. Bias has been presumed only where the record "conclusively" showed that the juror "plainly" lied, and "no rational trier of fact could find otherwise[]" ….

*Id.* at 1194 (citations omitted) (emphasis added). Similarly, in *Dyer*, the Ninth Circuit explained that it was comfortable making a factual finding that the juror lied—despite the fact that the district court had made no such finding—because "no rational trier of fact could find otherwise." 151 F.3d at 979. That "no rational trier of fact" standard is inapplicable here, where the Court is acting as the factfinder in the first instance.

Similarly, Netlist attempts to raise the applicable standard by arguing that Samsung must establish that the jurors engaged in a "pattern of lies" or *repeated* lies to establish *Dyer* implied bias. Opp. 5-6, 11-15. That, too, misstates the law.

3
SAMSUNG'S REPLY IN SUPPORT MOTION FOR NEW TRIAL

Again, *Dyer* held that bias is presumed where a juror "lies in order to secure a seat on the jury." *Dyer*, 151 F.3d at 983. Nothing about that holding suggests that a "pattern" of "repeated" lies is a prerequisite to a finding of *Dyer* bias.

It is true that, in dictum, the *Dyer* court noted that the juror's lies were "material[] and repeated[]." *Id.* But nothing about the opinion suggests that repeated lies are a *requirement*. Indeed, such a reading cannot be squared with *Dyer*'s reasoning. As *Dyer* observed, "[t]he individual who lies in order to improve his chances of serving has too much of a stake in the matter to be considered indifferent." *Id.* at 982. And "a perjured juror is unfit to serve even in the absence of [actual] bias. If a juror treats with contempt the court's admonition to answer voir dire questions truthfully, she can be expected to treat her responsibilities as a juror … with equal scorn." *Id.* at 983. Similarly, "[a] perjured juror is as incompatible with our truth-seeking process as a judge who accepts bribes." *Id.* None of those rationales depend on the juror engaging in a pattern of repeated lies—a juror who tells one serious lie is "perjured" all the same. The Court should reject Netlist's baseless attempt to impose an additional prerequisite to establishing *Dyer* bias.[2]

---

[2] Netlist also suggests that, unless the movant is required to show a pattern of repeated lies, the second prong of the standard set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984)—that the juror would have been removable for cause had a truthful answer been given—would be a nullity. Opp. 12-13. But as Samsung has explained, under the Ninth Circuit's case law, implied bias under *Dyer* is different from "*McDonough*-style bias." Mot. 6. While *McDonough* asks whether the underlying truth (here, the jurors' litigation history) renders a juror biased and therefore challengeable for cause, *Dyer* focuses on the lies themselves and what they show about the juror's eagerness to serve on the jury. As the Ninth Circuit has explained, "[t]he *Dyer* court did not presume bias because of the juror's past history; in fact the court very clearly indicated that it did not know whether her past history made her biased. … [I]t wasn't the juror's history, but the *lies* about the history that created 'destructive uncertainties' about the fact-finding

4
SAMSUNG'S REPLY IN SUPPORT MOTION FOR NEW TRIAL

    ***Second***, Netlist posits that each of the three jurors' failure to disclose their involvement in multiple prior court proceedings was unintentional, either because the jurors forgot about those proceedings or did not understand that they were responsive to the *voir dire* questions. Opp. 7-11.

    But as *Dyer* itself made clear, these alternative explanations are not cure-alls. The *Dyer* court considered the possibility that the juror in question might have forgotten some responsive events, but concluded that she "overlooked too many incidents for us to attribute her responses to mere forgetfulness." 151 F.3d at 981. And while the juror claimed that she believed that her brother's killing was accidental and therefore did not qualify as a "crime," the *Dyer* court rejected that explanation. *Id.* at 979 n.13 ("That anyone would think such a reckless killing is not a crime itself stretches credulity.").

    Here, likewise, the innocent explanations that Netlist posits are implausible. As in *Dyer*, each juror failed to disclose *multiple* responsive events, and it is unlikely that they each forgot *all* of them. *See* Mot. 4-5; Godesky Decl. ¶¶ 6(e)-(k), 9(c)-(e), 12(b)-(h). Nor is it plausible that the three jurors would not have known that *any* of their past lawsuits were responsive to the *voir dire* questions. Question 20 asked whether the prospective jurors had ever "been sued" or "been a party in a court proceeding." Godesky Decl. Ex. 23 (3/18/25 Trial Tr.) at 58:2-4, 58:24-59:1; *see* ECF No. 694 at 3-4 (blank questionnaire). Each juror failed to disclose multiple ▮▮▮▮▮ to which they were parties. *See* Godesky Decl. ¶¶ 6(e)-(k), 9(c)-(e),

---

process." *Green v. White*, 232 F.3d 671, 677 n.7 (9th Cir. 2000). It is likewise untrue that, unless a "pattern" of lies is required, bias would be presumed under *Dyer* "[a]ny time one could show that a juror gave a dishonest response to a voir dire question." Opp. 13. As *Dyer* itself makes clear, many lies—such as "fail[ing] to mention a magazine [the juror] subscribes to" or "exaggerat[ing] the importance of [the juror's] job" are harmless and do not give rise to the inference that the juror was lying to secure a seat on the jury. 151 F.3d at 984.

12(b)-(h).³ It is unlikely that the each of the jurors believed that all of these ▮▮ ▮▮ were not "court proceedings." Each of the three jurors also failed to disclose ▮▮▮▮▮▮. Even assuming Netlist is right that ▮▮▮▮▮▮ ▮▮▮▮▮▮ Opp. 8-9, that is the sort of legal technicality that prospective jurors cannot reasonably be expected to understand. Nor, as Samsung explained, *see* Mot. 5, are lies about past lawsuits the sort of "immaterial" lies that ought to be excused, like a juror "fail[ing] to mention a magazine he subscribes to" or "exaggerat[ing] the importance of his job." *Dyer*, 151 F.3d at 984.

Netlist's posited innocent explanations are especially implausible because of the instructions the Court gave to the prospective jurors prior to *voir dire*. The Court made a special point of explaining that "providing false or misleading information" would violate the prospective jurors' oath and that the prospective jurors were required to "give truthful information regardless of whether or not you want to be on the jury." Godesky Decl. Ex. 23 (3/18/25 Trial Tr.) at 40:20-41:23. The Court also stressed that if any prospective juror was "unsure about how to respond to a question," she should "go ahead and mark it 'yes,' and we'll talk about it a little bit more." *Id.* at 55:22-24. And the Court asked follow-up questions of each prospective juror who answered "yes" to Question 13 or 20, making clear that the questions were material and important. *See id.* at 97:15-98:7, 98:19-23, 143:20-25, 159:7-16. If any of the prospective jurors had doubts about whether a

---

³ Netlist also brushes off Question 13—which asked whether the prospective jurors had been "involved in a contract dispute" or believed that someone had "breached a contract," *see* Godesky Decl. Ex. 23 (3/18/25 Trial Tr.) at 58:2-4; *see* ECF No. 694 at 3 (blank questionnaire)—by arguing that none of the jurors' past lawsuits listed "breach of contract" as the cause of action. Opp. 12. But the question used the more general term "contract dispute," and it is likely that the jurors' ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ involved contracts. *See* Godesky Decl. ¶¶ 6(e)-(k), 9(c)-(e), 12(b)-(h).

6
SAMSUNG'S REPLY IN SUPPORT MOTION FOR NEW TRIAL

1 ████████████████████████████ would qualify as a "court
2 proceeding," it was crystal clear that they should answer "yes" and "talk about it a
3 little bit more" with the Court.  *Id.* at 55:22-24.  Yet each of the three jurors
4 unequivocally answered "no" despite *multiple* responsive court proceedings.  Mot.
5 4-5; Godesky Decl. ¶¶ 6(e)-(k), 9(c)-(e), 12(b)-(h).

6       As *Dyer* teaches, a juror who "treats with contempt the court's admonition to
7 answer voir dire questions truthfully … can be expected to treat her responsibilities
8 as a juror … with equal scorn."  151 F.3d at 983.  Here, the Court's admonition
9 about the importance of telling the truth could hardly have been clearer.  The failure
10 of these three jurors to disclose multiple responsive lawsuits despite these clear
11 admonitions confirms that their empanelment introduced the sort of "destructive
12 uncertainties" that *Dyer* is meant to prevent.  *Id.*

13       **B.**    **Samsung Did Not Waive Its *Dyer* Challenge**

14       Relying primarily on out-of-Circuit district court cases, Netlist argues that
15 Samsung waived its challenge by not uncovering the jurors' lies during trial.  Opp.
16 2-3 (citing *Torres v. First Transit, Inc.*, 2021 WL 3361031 (S.D. Fla. Aug. 3, 2021),
17 and *Burden v. CSX Transp., Inc.*, 2011 WL 3793664 (S.D. Ill. Aug. 24, 2011)).  But
18 *Dyer* involved lies uncovered through *post*-verdict investigation, *see* 151 F.3d at
19 973, as do several other Ninth Circuit cases.  *See United States v. Eubanks*, 591 F.2d
20 513, 516 (9th Cir. 1979); *Green*, 232 F.3d at 672, 673 n.4, 678 n.8.

21       Netlist's only in-Circuit case illustrates why waiver is *not* applicable here.  In
22 *Apple, Inc. v. Samsung Electronics Co.*, the court found Samsung waived its claims
23 based on dishonesty during *voir dire* where twenty-five days passed between jury
24 selection and the verdict during which counsel could have investigated information
25 the juror revealed during *voir dire*.  2012 WL 6574785, at *10 (N.D. Cal. Dec. 17,
26 2012).  Here, by contrast, Netlist faults Samsung for not completing a full

7

SAMSUNG'S REPLY IN SUPPORT MOTION FOR NEW TRIAL

investigation in the middle of a busy four-day trial. *Apple* in no way suggests Samsung waived its challenge here.

In any event, contrary to Netlist's suggestion, Opp. 3-4, Samsung could not reasonably have brought its challenge in the middle of trial. Netlist asserts that all of the jurors' undisclosed litigations could have been identified in a matter of minutes. *Id.* at 4. But as Samsung has explained, *confirming* that these lawsuits actually involved ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ required a more extensive and time-consuming investigation. *See, e.g.*, Godesky Decl. ¶ 6(d) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Among other things, Samsung's investigators compared name histories, birth dates, and social security numbers across commercial databases. *See id.* ¶¶ 6(d), 9(b), 12(a). And the investigators confirmed that the lawsuits involved ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ by: (i) matching docket information with the jurors' known addresses and social security numbers, *see, e.g., id.* ¶¶ 6(e), 9(b); (ii) confirming that no other individuals had particular name-and-geography combinations, *see, e.g., id.* ¶¶ 6(f), (h), 9(d); and (iii) matching docket information to the jurors' known relatives, *see, e.g., id.* ¶ 6(j). Indeed, when Samsung raised ▇▇▇▇▇▇▇▇▇▇ potential misrepresentations with the Court on March 24, 2025, the Court acknowledged that it would take until after the beginning of deliberations to confirm that the lawsuits Samsung had identified in fact involved the empaneled jurors. *See* Godesky Decl. Ex. 27 (3/24/25 Trial Tr.) at 962:14-19 ("We are not going to know [whether the litigations actually involved ▇▇▇▇▇▇▇▇ today."). Samsung has acted with all reasonable diligence, and Netlist's waiver argument should be rejected.

### C. Samsung Is Not Belatedly Objecting To Exhibit 117

Finally, Samsung submitted with its Motion a copy of Trial Exhibit 132, which is substantively identical to admitted Trial Exhibit 117, to clarify the record

8
SAMSUNG'S REPLY IN SUPPORT MOTION FOR NEW TRIAL

for Samsung's appeal. Mot. 7-8. Contrary to Netlist's assertion, Samsung is not "trying to retroactively object to Trial Exhibit 117 after trial has completed." Opp. 15-16. As Samsung made clear—and Netlist acknowledges—Samsung's Motion does not seek any relief with respect to either Exhibit 117 or Exhibit 132. *See* Mot. 7-8; Opp. 15 (acknowledging that "[t]he last section of Samsung's brief does not ask for any relief"). Instead, Samsung submitted Exhibit 132 to ensure that it appears on the Court's electronic docket, so that—in the event the Court denies the present Motion—the exhibit will be readily accessible to the Ninth Circuit for purposes of Samsung's appeal from the judgment. Mot. 7. That is consistent with the guidance of the Ninth Circuit Rules Advisory Committee, which "encourage[s]" parties to "file documentary exhibits electronically" "during the course of the district court proceedings." 9th Cir. R. advisory committee's note to Rule 27-14.

Should Samsung argue on appeal that the Court erred in admitting Exhibit 117, Netlist is of course free to argue to the Ninth Circuit that Samsung has forfeited that objection. Samsung disagrees, but that is a question for the Ninth Circuit. There is no need for the Court to weigh in where, as here, Samsung seeks no relief with respect to Exhibit 117.

## II. CONCLUSION

For the foregoing reasons and those set forth in the Motion, Samsung respectfully requests that the Court vacate the jury's verdict and order a new trial pursuant to Rule 59.

DATED: June 16, 2025                    O'MELVENY & MYERS LLP

                                        By:    */s/ Marc J. Pensabene*
                                               Marc J. Pensabene
                                               Attorneys for Defendant Samsung
                                               Electronics Co., Ltd.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Samsung Electronics Co., Ltd., certifies that this brief contains 3,050 words, which complies with the word limits of Local Rule 11-6.1 and Paragraph G(4) of the Court's Standing Order for Newly Assigned Civil Cases, ECF No. 738.

DATED: June 16, 2025         By: */s/ Marc J. Pensabene*
                                  Marc J. Pensabene