1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   NETLIST INC.,                        Case No. 8:20-cv-00993-WLH-ADS

                     Plaintiff,           **ORDER RE MOTION FOR A NEW**
12                                         **TRIAL [784]**

13   v.

14   SAMSUNG ELECTRONICS CO.,
     LTD.,
15
                     Defendant,
16

17        The Court is in receipt of Defendant's Motion for a New Trial (the "Motion")

18   (Mot., Docket No. 784).  For the following reasons, the Court **DENIES** the Motion.

19   **I.    BACKGROUND**

20        **A.    _Voir Dire_ and Motion for New Trial**

21        The instant Motion for New Trial follows the third jury trial regarding a

22   contract dispute between Plaintiff Netlist Inc. ("Plaintiff") and Defendant Samsung

23   Electronics Co., Ltd. ("Defendant").  On March 24, 2025, the jury returned a verdict

24   answering a single contract interpretation question.  (Verdict Form, Docket No. 769 at

25   1).  The jury interpreted the contact according to Plaintiff's proffered interpretation:

26   that the supply provision of the contract meant that Defendant agreed to supply certain

27   products to Plaintiff on Plaintiff's request at a competitive price, not limited to use in

28   a designated joint development project.  (_Id._).  Because Defendant conceded that it

materially breached the contract under Plaintiff's interpretation of the contract
(Docket No. 693), judgment was entered in favor of Plaintiff on its claim for breach of
the supply provision.  (Docket No. 775).  In the instant motion for new trial,
Defendant contends that three jurors lied during *voir dire* such that the Court should
presume juror bias and order a new trial.  (*See generally* Mot.)

As part of the voir dire process, each prospective juror filled out a juror
questionnaire.  (Trial Transcript for Proceedings held on March 18, 2025 ("Day One
Trial Transcript"), Docket No. 753 at 55:8-19).  The then-presiding District Court
Judge[1] read each question aloud to the pool of prospective jurors and asked the jurors
to mark their answer on the form.  (*Id.* at 55:8-60:18).  The presiding judge instructed
the jurors as follows: "[i]f you are unsure about how to respond to a question, go
ahead and mark it 'yes,' and we'll talk about it a little bit more."  (*Id.* at 55:22-24).
The presiding judge then called up each juror individually and asked the juror, among
other questions, if the juror had answered "yes" to any of the questions on the juror
questionnaire.  (*Id.* at 55:22-24 (noting that the judge would follow-up on "yes"
answers); *id.* at 60:13-62:18 (explaining that each juror would be called up "one by
one, asking first juror which questions the juror answered "yes" to, and following up
on the answer)).

Defendant's Motion focuses on answers to two yes-or-no questions on the juror
questionnaire, which the Court reproduces below:

> Question 13: Have you ever been involved in a contract dispute or
> have you ever been in a situation where you believe that someone
> breached a contract?
>
> Question 20: Have you filed a lawsuit, been sued, been charged with
> a crime, or otherwise been a party in a court proceeding?

---

[1] Following jury selection, the then-presiding District Court Judge recused himself
from the proceedings and the trial was re-assigned to this District Court Judge.
(Docket No. 727).

(Day One Trial Transcript at 58:2-4; 58:24-59:1).  On May 5, 2025, Defendant filed
the instant Motion for New Trial.  (Mot.).  In support of the Motion, Defendant
submits evidence suggesting that three jurors—who the Court will refer to as Jurors
A, B and C—were involved in contract disputes and/or had been a party in a court
proceeding prior to answering the *voir dire* questionnaire but failed to indicate as such
during *voir dire*.  (Unredacted Godesky Decl., Docket No. 786-2; Exs. 3-18 to
Godesky Decl., Docket Nos. 786-3 through 786-20).

When asked by then-presiding judge if she answered "yes" to any questions on
the *voir dire* form, Juror A did not report answering "yes" to either Question 13 nor
Question 20.  (Day One Trial Transcript at 122:11-21).  Evidence submitted by
Defendant suggests that prior to trial, Juror A filed for bankruptcy three times; was
subject to an unlawful detainer action in the late 1990s; filed a dissolution of marriage
action; and was named as a defendant in a small claims action in 1999 and a
collections action in 2009.  (Godesky Decl. ¶ 6; Exs. 4 through 10 of Godesky Decl.)
Both the small claims actions and collections actions were dismissed less than three
months after the actions were commenced.  (Ex. 7 of Godesky Decl. (reflecting
dismissal of small claims case about one month after filing); Ex. 9 of Godesky Decl.
(reflecting dismissal about three months after filing)).

Juror B did not report answering "yes" to Question 13.  (Day One Trial
Transcript at 154:8-16).  Juror B reported answering "yes" to Question 20 but when
asked by the then-presiding District Court Judge about this answer, referenced only
one dispute stemming from a car accident.  (*Id.*, *id.* at 159:7-16).  Evidence submitted
by Defendant suggests that Juror B filed a bankruptcy case in 2009.  (Godesky Decl. ¶
12(h); Ex. 8 to Godesky Decl.).  Submitted evidence further suggests that Juror B was
a named defendant in three cases: a civil rights case brought against McDonnell
Douglas Corporation and seven employees (including Juror B) in 1995, a small claims
action brought against Juror B and 20th Century Insurance brought in 1998 and a
"motor vehicle – personal injury/property damage/wrongful death" case ("motor

1    vehicle case") brought in 2009.  (Godesky Decl. ¶ 12; Exs. 13 through 14-17 of

2    Godesky Decl.).  The civil rights case was filed in state court on March 30, 1995.  (Ex.

3    15 of Godesky Decl.).  By the time the case was removed to federal court about six

4    weeks later, Juror B was no longer listed as a defendant.  (Ex. 16 of Godesky Decl.).

5        Finally, Juror C did not report answering "yes" to either Question 13 nor

6    Question 20.  (Day One Trial Transcript at 137:6-9).  Evidence Submitted by

7    Defendant suggests that Juror C filed a Bankruptcy action in 2011 and was named as a

8    defendant in an unlawful detainer case and a collections case, both in 2010. (Godesky

9    Decl. ¶ 9; Ex. 11 through 13 of Godesky Decl.)

10       **B.    Evidentiary Hearing**

11       On July 30, 2025, the Court held an evidentiary hearing in a court conference

12   room to gather more information about the jurors' answers to the *voir dire* questions.[2]

13   (Docket No. 810).  Each juror appeared separately and responded to questions posed

14   by the Court and by counsel. The Court asked each juror (a) if they recalled Questions

15   13 and 20; (b) if they recalled the specific cases identified by Defendant; and, (c) in

16   light of the cases, why they answered Question 13 and 20 as they did.

17       Juror A testified that she recalled the three bankruptcy proceedings and the

18   dissolution of marriage action.  She further testified that she recalled a collections bill

19   from the plaintiff in the 2009 collections action.  Juror A initially testified that she did

20   not know about the unlawful detainer action.  When provided additional details by

21

22   _____

23   [2] The Court notes that it did not take the decision to hold an evidentiary hearing
     lightly. Other courts have written powerfully about the need to honor "the sacrifice
24   that being a juror entails" and ensure that "exposing [the juror's] personal lives will
     not become a method for easing the losing party's posttrial frustrations."  *Townsend v.*
25   *Allen*, No. 05-CV-204-BBC, 2008 WL 4756644, at *3 (W.D. Wis. Oct. 29, 2008)
     (explaining reasoning for denying plaintiff's motion for leave to interview jurors).
26   Summoning the jurors to the courthouse to discuss past evictions, divorces,
     bankruptcies and collections undoubtedly exacts a toll on jurors.  But given the long
27   history of litigation in this case—a history which includes an order for a new trial
     based on implied juror bias (Docket No. 640)—the Court found it prudent to hear
28   from the jurors directly about their *voir dire* answers.

4

counsel during question, Juror A shared that she had lost a home when she was unable

to pay homeowner fees through what she believe was a foreclosure.  She reflected that

she did not appear in court on the matter and simply moved out of the home by a

proscribed deadline.  Finally, Juror A testified that she did not recall the 1999 small

claims action. When asked by the Court why, in light of the cases Juror A

remembered, she answered "no" to Questions 13 and 20 in light, Juror A shared that

she did not think about the cases or "relate" the cases to the questions asked.  She also

shared that she never went to court on any of the matters and instead resolved the

issues through the mail and through paper such that she did not think of the cases as

court proceedings.

Juror B's testimony proceeded similarly to that of Juror A.  Juror B testified that

he recalled filing a bankruptcy case.  He further recalled the small claims case and the

motor vehicle case, each which related to separate car collisions.  He testified that the

small claims case was the case which he discussed with the presiding judge during

*voir dire*.  Juror B testified that he was not aware of the civil rights case in which he

was one of eight named defendants.  When asked why he did not mention the

bankruptcy case or second motor vehicle case during *voir dire*, Juror B explained that

he did not think it was necessary to identify those cases and he thought Question 20

was about "showing up in court and being sued."  He specifically noted that motor

vehicle case settled out of court.

Juror C testified that she filed for bankruptcy and that she remembered

appearing in court on the matter.  She testified that she remembered owing credit card

debt to the plaintiff in the collections case but that she was unaware of any court case

on the matter.  Finally, Juror C testified that her parents were evicted and because she

was living with her parents and was over the age of 18, she was named in the unlawful

detainer.  She testified that she remembers going to court with her parents.  When

asked why she had not reported the bankruptcy and unlawful detainer in responding to

Questions 13 and 20, Juror C explained that the cases had "just skipped my mind" and

that she "wasn't thinking of those" cases in the context of the questions.

During the evidentiary hearing, all three juror's facial expressions conveyed genuine dismay that they had not thought of nor reported the cases in question when responding to Questions 13 and 20.[3]

### C.    **Factual Findings**

Based on the jurors' answers and demeanor, the Court finds the testimony of all three jurors credible.  Specifically, the Court finds credible the jurors' explanations for why they answered Question 13 and Question 20 despite their knowledge of involvement in some of the cases identified by Defendant.  In some instances, the jurors did not conceive of the actions in which they were involved as instances in which they "filed a lawsuit" were "sued" or otherwise were a "party in a court proceeding."  Both Juror A and B specifically relayed that they did not consider certain actions as relevant to Question 20 because they were never required to go to court on those matters.  In other instances, the jurors simply did not think of the cases when answering Questions 13 and 20.

While the evidence submitted by Defendant suggests that the jurors were involved in each of the cases summarized in section I(A), the Court finds credible the jurors' testimony that they did not know about or could not recall certain cases.  It is reasonable that Juror A would either not know about or not recall a small claims cases purportedly brought against her in 1999, particularly given that the case was dismissed within three months of its filing.  (Ex. 7 of Godesky Decl. (reflecting dismissal of small claims case about one month after filing)).  It is likewise reasonable that Juror B would not know or about or would not recall a 1995 civil rights case where he was one of eight named defendants, particularly given that Juror B no longer appeared as a defendant by the time the case was removed to federal court about six weeks after its filing.  (Exs. 15, 16 of Godesky Decl).  Finally, it is reasonable that both Juror A and

---

[3] In fact, Juror C cried.

1  C recalled owing money in collections but did not know about or did not recall legal

2  actions regarding those collections.

3        In summary, the Court finds that neither Juror A nor Juror C lied when

4  answering "no" to Questions 13 and 20.  The Court further finds that Juror B did not

5  lie in answering "no" to Question 13 and that he did not lie by only disclosing one

6  action related to a car accident when asked by the then-presiding District Court Judge

7  about his "yes" answer to Question 20.

8  **II.    DISCUSSION**

9        **A.    <u>Legal Standard</u>**

10        The presence of a biased juror requires a new trial.  *United States v. Gonzalez*,

11  214 F.3d 1109, 1111 (9th Cir. 2000).  The Ninth Circuit recognizes three specific

12  forms of juror bias:

13

14        (1) "actual bias, which stems from a pre-set disposition not to decide an issue
       impartially"; (2) "implied (or presumptive) bias, which may exist in
15        exceptional circumstances where, for example, a prospective juror has a
       relationship to the crime itself or to someone involved in a trial, or has
16        repeatedly lied about a material fact to get on the jury"; and (3) "so-called
       McDonough-style bias, which turns on the truthfulness of a juror's responses
17        on voir dire" where a truthful response "would have provided a valid basis
       for a challenge for cause.
18

19

20  *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013); *Fields v. Brown*, 503

21  F.3d 755, 766–67 (9th Cir.2007) (en banc).  Defendant makes no argument that the

22  jury was tainted by actual bias nor *McDonough*-style bias.  Instead, Defendant argues

23  that the Court should presume three jurors were biased because each of the juror's lies

24  during *voir dire* "imply that the juror concealed material facts in order to secure a spot

25  on the … jury."  (Mot. at 3 (quoting *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir.

26  2007)).  The parties refer to this type of implied bias as *Dyer* implied bias.

27

28

7

The parties dispute the proper standard for determining when untrue answers to *voir dire* questions lead to a presumption of juror bias. (*See* Reply at 2-4 (describing areas of disagreement)).  Plaintiff contends that bias may only be presumed when the record conclusively showed that a juror plainly lied such that no rational trier of fact could find otherwise.  (Opp'n at 7 (citing *United States v. Olsen*, 704 F.3d 1172, 1194 (9th Cir. 2013)).[4]  Defendant argues that Plaintiff's articulated standard is the appellate standard of review and does not apply to the "trial court's assessment of bias in the first instance." (Reply at 4).  Additionally, Plaintiff argues that a court may only find implied bias "if the juror in question [is] found to have lied *repeatedly* to gain a seat on the jury." (Opp'n at 11 (emphasis in original) (citing *Estrada v. Scribner*, 512 F.3d 1227, 1241 (9th Cir. 2008)).  Defendant replies that "nothing about the [*Dyer*] opinion suggests that repeated lies are a requirement." (Reply at 4).  To resolve these conflicts, the Court details the three Ninth Circuit cases discussing *Dyer*-type implied bias.

In 1998, the Ninth Circuit held, for the first time, that a particular juror must be *presumed* to be biased based on lies told during *voir dire* and beyond.  *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998) (en banc).  Based on the record before it—which included the trial court judge's *in camera* hearing with the juror, a post-trial deposition and court records—the Ninth Circuit determined that the juror lied by responding "no" to two voir dire questions and lied again when she was questioned by the trial court judge about the voir dire questions.  *Id.* at 979.  In voir dire, the juror in question answered "no" to the following two questions:

> 13. Have you or any of your relatives or close friends ever been the victim of any type of crime? ... ("Question 13")

---

[4] Plaintiff similarly asserts that Defendant must "do more than make a 'plausible argument' that the juror knew a statement was incorrect; it must definitively demonstrate that the juror's statement was deliberately false in a material way." (Opp'n at 7 (quoting *Pope v. Man-Data, Inc.*, 209 F.3d 1161, 1163 (9th Cir. 2000)).

15. Have you or any of your relatives or close friends ever been accused of any

offense other than traffic cases? ("Question 15")

*Id.* at 972.  After the jury returned a verdict of "guilty," but before the jury sentenced the defendant to death, the defense learned that the juror's brother had been shot and killed.  *Id.*  The case file revealed that the brother, who was seventeen when he died, "was pistol-whipped four times and shot in the back of the head." *Id.* at 973.  Per the Ninth Circuit, this killing was "very similar to the way [defendant] was accused of killing his victims."  *Id.*  at 982.  When the trial judge held an informal, *in camera* hearing with the juror to discuss the juror's answer to question 13, the juror reported that she answered "no" because her brother's death was an accident, not a crime.  *Id.* at 974.  Based on the record developed during and after trial,[5] Ninth Circuit found that the juror plainly lied when responding "no" to Question 13 and lied again in during the *in camera* hearing.  *Id.* at 979.

The Ninth Circuit further concluded that the juror's lies regarding the death of her brother were "just the tip of Pinocchio's nose." *Id.* at 980.  "[The juror] also lied when she said she had never been a victim of a crime," because (1) her father had kidnapped her when she was a child; (2) her cousin had assaulted her when she was a teenager; and (3) she had been a victim of "many" burglaries.  *Id.* at 981.  Finally, the Ninth Circuit found that the juror's "no" answer to question 15 was "inexplicable" given the arrests of "her husband for rape; her father for kidnapping; her uncle Jason for murder, and again for armed robbery; her brother Billy for possession of brass knuckles, and again for drug possession; [and,] her cousin Buddy for attempted rape of [the juror] herself." *Id.* at 980.

---

[5] The Ninth Circuit found that the trial court's finding that the juror was unbiased was not entitled to a presumption of correctness given the court's failure to properly develop the facts. *Id.* at 979.

"The inference [the Ninth Circuit]  dr[ew] from all this is that [the juror] lied in order to preserve her status as a juror and to secure the right to pass on Dyer's sentence." *Id.* at 982.  The Ninth Circuit explained that this inference compelled it to presume bias, regardless of whether the juror was in fact biased. *Id.*  at 983 ("Just as we would presume bias if the brother of the prosecutor were on a jury, we presume bias where a juror lies in order to secure a seat on the jury.")  In doing so, the Ninth Circuit emphasized that juror who "who lies materially and repeatedly in response to legitimate inquiries about her background introduces destructive uncertainties into the process[]" because the juror (a) "has too much of a stake in the matter to be considered indifferent;" and, (b) has demonstrated contempt towards their obligations as a juror to comply with court instructions and to seek the truth.  *Id.*

Two years later, in *Green*, the Ninth Circuit again presumed bias based, at least in part, on a juror's lies during jury selection.  *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000).  The juror at issue "had several encounters with law, including a felony conviction for passing bad checks in 1965, a conviction for assault, and an arrest for robbery." *Id.* at 672.  A juror questionnaire form sent to the juror before trial asked if had been convicted of a felony; he replied in the negative. *Id.*  at 673.  During live *voir dire*, when asked if anyone had been arrested or charged for crimes similar to the crime at issue in the case, including "any kind of assault," the juror in question did not report his conviction for assault. *Id.*  The Ninth Circuit concluded "it is clear that [the juror] lied on both his jury questionnaire form and at voir dire." *Id.* at 676.  In concluding that the juror lied, the Ninth Circuit found that the California Court of Appeals finding to the contrary was unreasonable in light of the evidence presented, including the fact that the juror in question served six months in military prison for the assault. *Id.*  at 675.  The Ninth Circuit further found that "when asked about these lies, [the juror] provided misleading, contradictory, and outright false answers." *Id.*  at 678.

1    The Ninth Circuit additionally noted that the juror was "involved in several

2    incidents that impeach his impartiality." *Id.* at 673.  Two other jurors reported that the

3    juror in question said "something to the effect that he knew [the defendant] was guilty

4    the moment he saw him." *Id.*  Another juror reported that the juror in question said he

5    wished he could shoot the defendant. *Id.* at 674.  While the juror in question denied

6    this, he admitted to stating "something to the effect [of] it's a shame that this state has

7    to go through all of this and it just seems like the wrong people have too many rights."

8    *Id.*  at 674.

9    Applying *Dyer*, the Ninth Circuit determined that it must presume that the juror

10    was biased.  The court described *Dyer's* holding as "bias should be presumed where a

11    juror's actions create 'destructive uncertainties' about the indifference of a juror." *Id.*

12    at 677.  The court found that "all of these facts"—the same facts which the Court has

13    just summarized—"considered as a whole, create 'destructive uncertainties'  regarding

14    [the juror's] ability to render a fair verdict." *Id.* at 678.

15    The Ninth Circuit has not since found *Dyer* or *Green*-style implied bias.  *See*

16    *United States v. Olsen*, 704 F.3d 1172, 1192 (9th Cir. 2013) (describing the two cases

17    as those where the court "found implied bias 'not on the basis of the juror's past

18    history, but on the pattern of lies the juror engaged in to secure her seat on the jury.'")

19    In *Olsen*, however, the Ninth Circuit discussed the issue at length.  The court

20    described *Dyer* and *Green* as cases "where repeated lies in voir dire imply that the

21    juror concealed material facts in order to secure a spot on the particular jury." *Id.*

22    (citing *Fields*, 503 F.3d at 770).

23    The defendant in *Olsen* argued that a certain juror should be presumed biased

24    based on a pattern of lies in the juror's responses to a prospective juror questionnaire

25    and *voir dire* questions.  The defendant pointed to three categories of lies.  First, the

26    juror did not identify himself when defense counsel asked potential jurors if anyone

27    had talked about the case with others and if anyone had formed opinions about the

28    case. *Id.*  at 1188.  A credible witness testified that, about a year before the trial, the

juror in question followed the investigation of the case closely and communicated his strong opinions about the defendant's guilt to the witness.  *Id.*  at 1188-89.  Second, on the jury questionnaire, the juror in questioned indicated that he had never been convicted of a crime other than a traffic offense.  *Id.*  at 1194.  The juror had been actually been convicted of criminal trespass about nine years earlier.  *Id.*  Finally, the juror indicated on a questionnaire form that he had never had a lawsuit filed against him.  *Id.*  at 1193.  Court records reflected that a former landlord obtained a judgment against the juror for unpaid rent, that a bail bond company twice secured judgments against him and that the juror in question had been sued for writing bad checks.  *Id.*

About seven years after trial, district court held an evidentiary hearing on the juror's potential dishonesty.  *Id.*  at 1190.  The juror in question testified that he did not recall forming or discussing opinions about the case prior to being called as a juror.  *Id.*  The juror further testified that he did not disclose his civil and criminal history on the questionnaire because he did not regard himself as being sued in the civil matters and because he had forgotten about the criminal trespass conviction.  *Id.*  at 1193-94.  The trial court found his testimony credible.  *Id.*  at 1194.  The trial court determined that the juror's response to voir dire questions about his prior knowledge of the case were not false, *id.* at 1190, and that his responses regarding his own prior criminal and civil history were "mistaken, but honest juror responses."  *Id.*  at 1194.  In reviewing the record developed by the trial court, the Ninth Circuit explained the following:

> Although we review de novo the question of whether bias should be presumed, because implied bias is a mixed question of law and fact, our review is not carried out on an entirely blank slate. Concluding that a juror's "repeated lies in voir dire" warrant an inference of bias requires first concluding that the juror lied in voir dire. That determination—whether a juror has been dishonest—remains "a question of fact," about which the district court here made findings. When *this* court has presumed bias from a juror's lies, it has done so either where there were no factual findings by the

trial court about the juror's honesty or where those findings were clearly erroneous. Bias has been presumed only where the record "conclusively" showed that the juror "plainly" lied, and "no rational trier of fact could find otherwise," or where the trial court's "erroneous factual finding" that the juror was honest constituted "clear error ... not supported by any evidence" and the "only reasonable inference" from the facts was that the juror lied.

*Id.* (emphasis added) (citations omitted). The Ninth Circuit noted that while "one could fairly question the plausibility" of the juror's explanations, the Ninth Circuit did not find clear error in the district court's conclusion that the juror in question had not lied. *Id.* at 1194-95. The Ninth Circuit ultimately concluded, "[b]ecause the facts before us, as developed in an evidentiary hearing by the district court, do not amount to the type of 'extreme' situation in which manifest lies during voir dire justify a presumption of partiality, we do not find any implied bias here." *Id.* at 1195.

With the Ninth Circuit's three cases discussing *Dyer* and *Green*-type bias summarized, the Court now addresses the parties' dispute over the proper standard of review. First, the question of *whether* a juror was dishonest is a question of fact best answered by the trial court. *Olsen*, 704 F.3d at 1194; *see also Pope v. Man-Data, Inc.*, 209 F.3d 1161, 1163 (9th Cir. 2000) (remanding case involving alleged *McDonough* bias to district court to conduct evidentiary hearing) ("An evidentiary hearing would normally be necessary for demonstration of dishonesty of a juror to be made."). The trial court decides this question of fact as it would any other and the Ninth Circuit leaves the trial court's finding undisturbed unless the finding is clearly erroneous or the trial court failed to properly develop the record. *Olsen*, 704 F.3d at 1194 (discussing circumstances under which the Ninth Circuit has disturbed factual findings regarding juror honesty).

Second, "[b]ias should be presumed where a juror's actions create 'destructive uncertainties' about the indifference of a juror." *Green,* 232 F.3d at 677. In "extreme" or "extraordinary" circumstances, a court must draw the inference that the

1    juror lied in order to preserve their status as a juror and must presume juror bias.

2    *Olsen*, 704 F.3d at 1191-93.  While it is theoretically possible that a single lie could be

3    an extreme circumstance which creates destructive uncertainties about the indifference

4    of a juror, in both cases where the Ninth Circuit has found implied bias based on juror

5    dishonesty, it did so after juror "materially and repeatedly lied."  *Green*, 232 F.3d at

6    677; *Dyer*, 151 F.3d.at 983.

7    **B.   Analysis**

8         Based on the record before it, the Court cannot infer juror bias. The Court

9    therefore **DENIES** Defendant's Motion for New Trial.

10        "Concluding that a juror's 'repeated lies in voir dire' warrant an inference of

11   bias requires first concluding that the juror lied in voir dire."  *Olsen*, 704 F.3d at 1194.

12   The Court concludes that none of the jurors lied in *voir dire*.  While the records

13   suggests that Jurors A, B and C each failed to report court proceedings—and,

14   potentially, contract disputes—the jurors' answers to Questions 13 and 20 were

15   "mistaken, but honest juror response[s]."  *Id.*; *see also Tidewater Fin. Co. v. Fiserv

16   Sols.*, Inc., 192 F.R.D. 516, 520 (E.D. Va. 2000) (discussing McDonough-bias)

17   ("Under McDonough, the Plaintiff must first show that the juror answered a voir dire

18   question dishonestly. A mistaken, but honest, response to a question is insufficient to

19   satisfy this requirement and does not warrant granting a new trial.")  As detailed in

20   Section I(C), the Court accepts all three of the jurors' explanations for why they

21   answered Questions 13 and 20 as they did and why they did not report the specific

22   cases discovered by Defendant.  Because the Court concludes that none of the jurors

23   lied, it can make no inference that the juror's lies warrant an inference of bias.  *Olsen*,

24   704 F.3d at 1194.[6]

25   _____

26   [6] In cases evaluating claims of *McDonough* bias, courts have routinely found that
     jurors were not dishonest when they mistakenly did not disclose civil or criminal cases

27   in response to questions similar to Question 20.  *United States v. Warner*, No. 02 CR
     506-1,4, 2006 U.S. Dist. LEXIS 64085, at *135, 98 A.F.T.R.2d (RIA) 2006-7074

28   (N.D. Ill. Sep. 7, 2006) (finding no dishonesty where juror failed to report a

Because the jurors did not lie during *voir dire*, the Court cannot reach the question of whether any lies inserted "destructive uncertainties' about the indifference of a jurors. *Green,* 232 F.3d at 677. Even if the evidentiary hearing had revealed that a juror deliberately failed to mention the civil cases in question, however, the Court is skeptical that this would constitute an "extreme" or "extraordinary" circumstance where the Court would be compelled to draw the inference that the juror lied to preserve their status as juror. *Olsen*, 704 F.3d at 1191-93. *Dyer* and *Green* set a high bar for such a finding—in both cases the juror-in-question lied at multiple stages of the court process and in both of those criminal cases the court had reasons, beyond the mere fact that the juror lied, to question the jurors' impartiality. Finally, the Court need not dwell on the distinctions between Defendant's allegations regarding Juror A, B and C and the behavior of the jurors in *Dyer* and *Green* because the Court determines that Jurors A, B and C were not dishonest and did not lie during *voir dire.*

//

//

//

//

//

---

misdemeanor for purchasing a stolen bicycle when juror conveyed he did not think about the misdemeanor during the *voir dire* process and did not deliberately omit the incident); *Cabrera v. Boto Co.*, No. 805-CV-2209-T-26TGW, 2007 WL 3333479, at *1 (M.D. Fla. Nov. 7, 2007) (finding no dishonesty when jurors failed to mention bankruptcy cases); *Suppa v. Costa Crociere, S.p.A.*, No. 07-60526-CIVCOHNSELT, 2008 WL 3926446, at *3-4 (S.D. Fla. Aug. 26, 2008) (finding no intentional falsehoods where a juror failed to mention dissolution of marriage, domestic violence and business related cases and court determined "[i]t appeared from his responses that he only considered cases that went to court as 'civil cases' that needed to be disclosed."); *United States v. Edmond*, 43 F.3d 472, 473-74 (9th Cir. 1994) (holding district court abused discretion by finding that juror's answer was dishonest when juror did not disclose his experience as an armed robbery victim twenty-six years earlier but later testified that he simply did not think about the crime during *voir dire*).

III.    **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion.


**IT IS SO ORDERED.**


Dated: August 4, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE